**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW STEIN and JEROME LHOTE,<br><br>Plaintiffs,<br><br>*v.*<br><br>SKATTEFORVALTNINGEN,<br><br>Defendant / Third-Party Plaintiff,<br><br>*v.*<br><br>LUKE MCGEE<br><br>Third-Party Defendant. | Civil Action No. 02508<br><br>Honorable Naomi Reice Buchwald<br><br>April 12, 2023<br><br>**ANSWER, COUNTERCLAIMS &**<br>**THIRD-PARTY COMPLAINT** |

Defendant Skatteforvaltningen ("SKAT"), by its undersigned counsel, submits this Answer to Plaintiffs Matthew Stein ("Stein") and Jerome Lhote's ("Lhote") Complaint (the "Complaint") based on its current knowledge and asserts the following defenses, counterclaims and third-party claims.  All allegations not specifically admitted are denied.  To the extent the headings in the Complaint are not included in numbered paragraphs, no response is required.  To the extent a response is required, SKAT denies the allegations in the headings.  With respect to the numbered paragraphs in the Complaint, SKAT answers as follows:

1.      To the extent Paragraph 1 characterizes the Complaint, no answer is required.  To the extent a response is required, SKAT incorporates its denials set forth in the remainder of this Answer and denies the remaining allegations in Paragraph 1, except that SKAT admits it is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      To the extent Paragraph 2 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the May 28, 2019 Settlement Agreement between SKAT

and Plaintiffs Stein and Lhote, amongst others (the "Settlement Agreement"), which speaks for itself.  SKAT denies any remaining allegations in Paragraph 2.

3.     To the extent Paragraph 3 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases.  SKAT admits that in 2019 the entities and individuals with whom SKAT settled (the "Covered Parties") paid SKAT 950,000,000 Danish Kroner ("DKK").  SKAT denies any remaining allegations in Paragraph 3.

4.     To the extent Paragraph 4 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 4.

5.     To the extent Paragraph 5 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases.  SKAT admits that between June 2020 and April 19, 2022 Plaintiffs Stein and Lhote and third-party defendant Luke McGee ("McGee") (together, the "Covered Parties' Designees") paid SKAT approximately DKK 60.4 million in accordance with the Settlement Agreement but avers that most of this amount was a one-time payment by McGee. SKAT further admits the Covered Parties have produced more than 90,000 documents to SKAT. SKAT denies any remaining allegations in Paragraph 5.

6.     To the extent Paragraph 6 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT

denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 regarding Plaintiffs' purposes and motivations in entering the Settlement Agreement, except that SKAT admits that Plaintiffs' attorneys communicated to SKAT that Plaintiffs were concerned with potential criminal liability in Denmark.  SKAT denies any remaining allegations in Paragraph 6.

7. To the extent Paragraph 7 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 7.

8. To the extent Paragraph 8 characterizes the Complaint, no answer is required.  To the extent a response is required, SKAT incorporates its denials set forth in the remainder of this Answer.  To the extent Paragraph 8 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases.  SKAT denies that the Plaintiffs are entitled to the relief described in Paragraph 8 and any remaining allegations in Paragraph 8.

9. To the extent Paragraph 9 states conclusions of law, no response is required.  To the extent Paragraph 9 characterizes or summarizes the Settlement Agreement, the first Affidavit of Confession of Judgment (the "2019 Affidavit of Confession of Judgment"), and the second Affidavit of Confession of Judgment (the "2021 Affidavit of Confession of Judgment") (together, the "Affidavits of Confessions of Judgment"), SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any

remaining allegations in Paragraph 9, except it admits the Affidavits of Confession of Judgment are to aid SKAT in enforcing the Settlement Agreement.

10.     To the extent Paragraph 10 of the Complaint characterizes or summarizes the 2021 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to that document, which speaks for itself.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 10.

11.     Paragraph 11 states conclusions of law to which no response is required.

12.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 12 concerning Lhote's residence and present intentions.  To the extent Paragraph 12 states conclusions of law, no response is required.  SKAT denies any remaining allegations in Paragraph 12.

13.     To the extent Paragraph 13 summarizes the Complaint, no answer is required.  To the extent a response is required, SKAT incorporates its denials set forth in the remainder of this Answer.  SKAT denies that the Plaintiffs are entitled to the relief described in Paragraph 13 and denies any remaining allegations in Paragraph 13.

## PARTIES

14.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14.

15.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15.

16.     To the extent paragraph 16 states conclusions of law, no response is required. SKAT admits it is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

## JURISDICTION AND VENUE

17.     To the extent Paragraph 17 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  To the extent Paragraph 17 states conclusions of law, no response is required.  SKAT admits this Court has jurisdiction over this action under 28 U.S.C. §§ 1330(a) and 1605(a)(1).

18.     To the extent Paragraph 18 characterizes the allegations in the Complaint or states conclusions of law, no response is required.  To the extent paragraph 18 contains any factual allegations, SKAT denies them.

19.     To the extent Paragraph 19 states conclusions of law, no response is required. SKAT admits this Court has personal jurisdiction over SKAT under 28 U.S.C. § 1330(b).

20.     To the extent Paragraph 20 states conclusions of law, no response is required. SKAT admits venue in this District is proper under 28 U.S.C. § 1391(f), but denies that SKAT is "doing business" in this District.

21.     To the extent Paragraph 21 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT admits venue in this District is proper.

## FACTUAL ALLEGATIONS

**Background**

22.     To the extent Paragraph 22 states conclusions of law, no response is required.

23.     To the extent Paragraph 23 characterizes or summarizes the treaty on double taxation between the United States and Denmark (the "Treaty"),[1] SKAT respectfully refers the

---

1.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Court to the Treaty, which speaks for itself.  To the extent Paragraph 22 of the Complaint states conclusions of law, no response is required.

24.     SKAT denies the allegations in Paragraph 24, except that it admits that in or around Summer 2015 it began an investigation into fraudulent dividend withholding tax refund applications submitted by the Covered Parties, among others.

25.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25.

26.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26, except SKAT admits it entered settlement negotiations with the Covered Parties, among others.

27.     SKAT denies the allegations in Paragraph 27, except it admits SKAT and the Covered Parties entered into settlement negotiations in 2017 and entered into the Settlement Agreement in 2019.

28.     SKAT denies the allegations in Paragraph 28, except SKAT admits that it negotiated the Settlement Agreement in good faith and believed at the time that the Covered Parties negotiated the Settlement Agreement in good faith, and that SKAT has brought suits related to the payment of fraudulent dividend withholding tax refund applications against various pension plans, individuals, and/or other entities in the Southern District of New York, the United Kingdom, Malaysia, Dubai, and Canada, among other jurisdictions.

29.     To the extent Paragraph 29 states conclusions of law, no response is required. SKAT denies any remaining allegations in Paragraph 29, and avers that the multidistrict litigation Court denied the defendants' motion to dismiss SKAT's claims as barred by the revenue rule.  *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 307 (S.D.N.Y. 2019).

30.     SKAT denies the allegations in Paragraph 30, except SKAT admits that it negotiated the Settlement Agreement in good faith and believed at the time that the Covered Parties negotiated the Settlement Agreement in good faith, and that SKAT did not bring suit against the Covered Parties as SKAT and the Covered Parties entered into tolling agreements and were negotiating a potential settlement.

31.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 31.  To the extent the second sentence of Paragraph 31 states conclusions of law, no response is required.  To the extent a response is required, SKAT denies the allegations in Paragraph 31, except admits that what Plaintiffs refer to as SØIK (now named the National enhed for Særlig Kriminalitet or NSK) is part of the government of the Kingdom of Denmark with separate functions from those of SKAT.[2]

32.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32.

33.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33.

34.     SKAT denies the allegations of the first sentence of Paragraph 34, except admits that for some time, Plaintiffs proposed a resolution involving as a condition precedent an undertaking by SØIK not to initiate criminal charges.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence,

---

2.  To avoid confusion, SKAT, as the Plaintiffs do, will refer to the NSK as SØIK, its name at the time the parties entered into the Settlement Agreement, in answering the Plaintiffs' allegations.

except admits that following SKAT's rejection of the proposed condition precedent, Plaintiffs continued to negotiate a settlement without such a condition.

35.     To the extent Paragraph 35 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Plaintiffs' motivations described in Paragraph 35.  SKAT denies any remaining allegations in Paragraph 35.

**The Settlement Agreement**

36.     To the extent Paragraph 36 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 36.  SKAT denies any remaining allegations in Paragraph 36, except it admits it entered into the Settlement Agreement with the Covered Parties on or about May 28, 2019.

37.     To the extent Paragraph 37 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 37.

38.     To the extent Paragraph 38 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 38, except it admits that the Covered Parties and SKAT entered the Settlement Agreement in part to settle SKAT's claims without litigation.

39.     To the extent Paragraph 39 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 39.

40.     SKAT admits that it entered into a letter agreement dated May 28, 2019 with the Plaintiffs and certain other Covered Parties (the "Letter Agreement").  To the extent Paragraph 40 characterizes or summarizes the Settlement Agreement and the Letter Agreement (together, the "Agreements"), SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT denies any remaining allegations in Paragraph 40.

41.     To the extent Paragraph 41 characterizes or summarizes the Settlement Agreement and Letter Agreement, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT admits the Agreements are governed by New York law.

42.     To the extent Paragraph 42 characterizes or summarizes the Settlement Agreement and the Letter Agreement, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT specifically denies that the Agreements divide SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 42.

**Phase I of the Settlement Agreement**

43.     To the extent Paragraph 43 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases.

44.     To the extent Paragraph 44 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 44.

45.     To the extent Paragraph 45 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 45.

46.     SKAT admits that by August 8, 2019 the Covered Parties had paid SKAT DKK 950,000,000.  To the extent Paragraph 46 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 46.

47.     To the extent Paragraph 47 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 47, except it admits the Affidavits of Confession of Judgment are to aid SKAT in enforcing the Settlement Agreement.

48.     To the extent Paragraph 48 characterizes or summarizes the 2019 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to that document, which speaks for itself.  SKAT denies any remaining allegations in Paragraph 48, except that it admits the Covered Parties' Designees provided SKAT the 2019 Affidavit of Confession of Judgment on or about August 8, 2019.

49.     To the extent Paragraph 49 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 49.

**Phase II of the Settlement Agreement**

50.     To the extent Paragraph 50 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 50.

51.     To the extent Paragraph 51 characterizes or summarizes the Settlement Agreement and Letter Agreement, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT specifically denies that the Agreements divide SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 50, except SKAT admits the Covered Parties' Designees must pay SKAT at least DKK 600,000,000 by May 28, 2023.

52.     To the extent Paragraph 52 characterizes or summarizes the Settlement Agreement and the Letter Agreement, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT specifically denies that the Agreements divide SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 52.

53.     SKAT admits the Covered Parties' Designees have made payments totaling approximately DKK 60.4 million since around June 2020 but avers that most of this amount was from a one-time payment by McGee.  To the extent Paragraph 53 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 53.

54.     To the extent Paragraph 54 characterizes or summarizes the Settlement Agreement and the Letter Agreement, SKAT respectfully refers the Court to the Agreements, which speak for themselves.  SKAT admits that starting in or about August 2019 through in or about January 2022, the Covered Parties' Designees provided SKAT some quarterly reports required by the Letter Agreement but avers that the Covered Parties' Designees have not provided any of the reports required by the Letter Agreement since January 2022.  SKAT specifically denies that the Agreements divide SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 54.

55.     To the extent Paragraph 55 characterizes or summarizes the Settlement Agreement and the Letter Agreement, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT specifically denies that the Agreements divide SKAT's and the Covered Parties' obligations into two phases.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity as to the remaining allegations in Paragraph 55, except that it admits the Covered Parties have produced over 90,000 documents to SKAT and Plaintiffs' attorneys have responded to SKAT's requests for the documents produced to SKAT to be used in SKAT's prosecution of claims in its actions in Dubai, the United Kingdom, and the United States.

56.     To the extent Paragraph 56 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 56.

57.     To the extent Paragraph 57 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for

itself.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered

Parties' obligations into two phases.  SKAT denies knowledge or information sufficient to form

a belief as to the truth or falsity of the allegations in Paragraph 57 regarding Plaintiffs'

motivations in entering the Settlement Agreement.  SKAT denies any remaining allegations in

Paragraph 57.

59.58.     To the extent Paragraph 58 characterizes or summarizes the Settlement

Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for

itself.  SKAT denies any remaining allegations in Paragraph 58.

59.     To the extent Paragraph 59 characterizes or summarizes the Settlement

Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for

itself.  SKAT denies any remaining allegations in Paragraph 59.

60.     To the extent Paragraph 60 characterizes or summarizes the Settlement

Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for

itself.  SKAT denies any remaining allegations in Paragraph 60.

61.     To the extent Paragraph 61 characterizes or summarizes the Settlement

Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for

itself.  SKAT denies any remaining allegations in Paragraph 61.

62.     Paragraph 62 states conclusions of law, to which no response is required.  To the

extent Paragraph 62 contains any factual allegations, SKAT denies them.

63.     To the extent Paragraph 63 characterizes or summarizes the Settlement

Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for

itself.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations in Paragraph 63 regarding Plaintiffs' motivations in entering the Settlement

Agreement, except that SKAT admits that SKAT was the victim of the Covered Parties'
fraudulent scheme.  SKAT denies any remaining allegations in Paragraph 63.

66. 64.     To the extent Paragraph 64 characterizes or summarizes the Settlement
Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for
itself.  SKAT denies any remaining allegations on Paragraph 64.

65.     To the extent Paragraph 65 characterizes or summarizes the Settlement
Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for
itself.  To the extent Paragraph 65 states conclusions of law, no response is required.  SKAT
denies any remaining allegations in Paragraph 65.

66.     To the extent Paragraph 66 characterizes or summarizes the Settlement
Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for
itself.  SKAT denies any remaining allegations in Paragraph 66.

**Defendant Breaches the Phase II Obligations of the Settlement Agreement**

67.     To the extent Paragraph 67 characterizes or summarizes the Settlement
Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for
itself.  To the extent Paragraph 67 states conclusions of law, no response is required.  SKAT
denies any remaining allegations in Paragraph 67, but avers that SKAT brought the Settlement
Agreement and its terms to SØIK's attention; that SKAT provided a full copy of Section 8(f) to
SØIK; and that SKAT stated to SØIK, *inter alia*, that the Settlement Agreement reflected good
faith negotiations by the Covered Parties; that the Covered Parties' cooperation may result in the
recovery by SKAT of additional funds from third parties; and that the Settlement Agreement was
in SKAT's best interest.  SKAT further avers that it issued two press releases containing
information substantially similar to that described in Section 8(f); shared drafts of these press

releases with the Covered Parties' Designees; and provided the Covered Parties' Designees the opportunity to comment on the press releases before they were issued.

68.     Paragraph 68 states conclusions of law, to which no response is required.  To the extent Paragraph 68 contains factual allegations, SKAT denies them.

69.     Paragraph 69 states conclusions of law, to which no response is required.  To the extent Paragraph 69 contains factual allegations, SKAT denies them.

70.     To the extent Paragraph 70 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  To the extent Paragraph 70 states conclusions of law, no response is required.  SKAT specifically denies that the Settlement Agreement divides SKAT's and the Covered Parties' obligations into two phases and denies any remaining allegations in Paragraph 70.

71.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 71.

72.     To the extent Paragraph 72 states conclusions of law, no response is required.  SKAT denies any remaining allegations in Paragraph 72.

**Plaintiffs Are Charged in Denmark**

73.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 73.

74.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 74.

75.     To the extent Paragraph 75 states a conclusion of law, no response is required.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of the allegations in Paragraph 75, except SKAT admits it is aware Plaintiffs were indicted in Denmark in 2021.

76.     SKAT denies there is a "fair inference" that "SØIK considered Plaintiffs identically situated to these three other criminal defendants."  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 76.

77.     SKAT denies the allegations in Paragraph 77, except that SKAT admits that Stein's U.S. counsel requested the written communications from SKAT to SØIK required by Section 8(f) of the Settlement Agreement.  SKAT denies that the Settlement Agreement required SKAT to provide any written communications to the Covered Parties' Designees.

78.     To the extent Paragraph 78 characterizes or summarizes the Settlement Agreement and the 2021 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT admits that the Covered Parties' Designees provided the 2021 Affidavit of Confession of Judgment on or about June 9, 2021, and that the Affidavits of Confession of Judgment are to aid SKAT in enforcing the Settlement Agreement.  SKAT denies any remaining allegations in Paragraph 81.

79.     SKAT denies the allegations in first sentence of Paragraph 79, and avers that SKAT brought the Settlement Agreement and its terms to SØIK's attention; that SKAT provided a full copy of Section 8(f) to SØIK; and that SKAT stated to SØIK, *inter alia*, that the Settlement Agreement reflected good faith negotiations by the Covered Parties; that the Covered Parties' cooperation may result in the recovery by SKAT of additional funds from third parties; and that the Settlement Agreement was in SKAT's best interest.  SKAT further avers that it issued two press releases containing information substantially similar to that described in Section 8(f); shared drafts of these press releases with the Covered Parties' Designees; and provided the

Covered Parties' Designees the opportunity to comment on the press releases before they were issued.  SKAT denies the allegations in the second sentence of Paragraph 79.

80.     To the extent Paragraph 80 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  To the extent Paragraph 80 states conclusions of law, no response is required.  SKAT denies any remaining allegations in Paragraph 80, except it admits that the Settlement Agreement was executed on or about May 28, 2019.

**The 2021 Affidavit of Confession of Judgment Is Invalid and Unenforceable**

81.     To the extent Paragraph 81 characterizes or summarizes the Settlement Agreement and the Affidavits of Confession of Judgment, SKAT respectfully refers the Court to those documents, which speak for themselves.  SKAT denies all remaining allegations in Paragraph 81, except it admits that the Covered Parties' Designees provided SKAT the Affidavits of Confession of Judgment.

82.     SKAT admits the allegations in Paragraph 82.

83.     To the extent Paragraph 83 characterizes or summarizes the 2019 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to that document, which speaks for itself.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 83.

84.     To the extent Paragraph 84 characterizes or summarizes the Settlement Agreement and the 2021 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to those documents, which speaks for themselves.  SKAT denies any remaining allegations in Paragraph 84.

85.     To the extent Paragraph 85 states conclusions of law, no response is required.  To the extent Paragraph 85 contains any factual allegations, SKAT denies them.

86.     To the extent Paragraph 86 states conclusions of law, no response is required.

87.     To the extent Paragraph 87 characterizes or summarizes the 2021 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to that document, which speaks for itself.  SKAT admits the 2021 Affidavit of Confession of Judgment differed from the form affidavit attached to the Settlement Agreement because Plaintiff Lhote represented that he had changed his residence.  SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 87.

88.     To the extent Paragraph 88 characterizes or summarizes the Settlement Agreement and the 2021 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to those documents, which speak for themselves.  To the extent Paragraph 88 states conclusions of law, no response is required.  To the extent Paragraph 88 contains any factual allegations, SKAT denies them, except SKAT admits that a failure to complete payments required by the Settlement Agreement constitutes an event of default under the agreement.

89.     SKAT denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 89 regarding Lhote's places of residence.  To the extent Paragraph 89 states conclusions of law, no response is required.  SKAT denies any remaining allegations in Paragraph 89.

90.     To the extent Paragraph 90 characterizes or summarizes the Settlement Agreement and the 2021 Affidavit of Confession of Judgment, SKAT respectfully refers the Court to those documents, which speak for themselves.  To the extent Paragraph 90 states conclusions of law, no response is required.  SKAT denies any remaining allegations in Paragraph 90.

91.     Paragraph 91 states conclusions of law to which no response is required.  To the extent Paragraph 91 contains any factual allegations, SKAT denies them.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

92.     SKAT reasserts and incorporates its responses to all previous Paragraphs as if fully set forth herein.  SKAT denies all remaining allegations in Paragraph 92.

93.     SKAT admits that it entered into the Settlement Agreement and the Letter Agreement with Plaintiffs, among others, on or about May 28, 2019.

94.     SKAT denies the allegations in Paragraph 94.

95.     SKAT denies the allegations in Paragraph 95.

96.     SKAT denies the allegations in Paragraph 96.

97.     SKAT denies the allegations in Paragraph 97.

98.     SKAT denies the allegations in Paragraph 98.

99.     SKAT denies the allegations in Paragraph 99.

100.    SKAT denies the allegations in Paragraph 100.

101.    SKAT denies the allegations in Paragraph 101.

## SECOND CAUSE OF ACTION
### (28 U.S.C. § 2201 *et seq.*, Declaratory Judgment)

102.    SKAT reasserts and incorporates its responses to all previous Paragraphs as if fully set forth herein.  SKAT denies all remaining allegations in Paragraph 102.

103.    Paragraph 103 states conclusions of law to which no response is required.

104.    Paragraph 104 states conclusions of law to which no response is required.  To the extent Paragraph 104 contains any factual allegations, SKAT denies them.

105.     Paragraph 105 states conclusions of law to which no response is required.  To the extent Paragraph 105 contains any factual allegations, SKAT denies them.

106.     Paragraph 106 states conclusions of law to which no response is required.  To the extent Paragraph 106 contains any factual allegations, SKAT denies them.

## PRAYER FOR RELIEF

SKAT denies that Plaintiffs are entitled to any relief whatsoever in this action.  SKAT requests that this Court dismiss all claims asserted against it with prejudice and that the Court award to SKAT reasonable costs and expenses incurred in this action, including counsel fees, expert fees, and such other relief as the Court deems just and proper.

## AFFIRMATIVE  AND OTHER DEFENSES

SKAT sets forth the following affirmative and other defenses to the Complaint.  In so doing, SKAT does not assume the burden of proving any fact, issue, proposition, or element of a cause of action where such burden properly belongs to the Plaintiffs.  SKAT reserves the right to amend or supplement this Answer with additional defenses upon further discovery or other investigation concerning these claims.

## FIRST AFFIRMATIVE DEFENSE

107.     The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

108.     Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, laches, acquiescence, and/or estoppel.

## THIRD AFFIRMATIVE DEFENSE

109.     Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

110.    To the extent Plaintiffs have suffered any damages for which the law would provide a remedy, which SKAT denies, Plaintiffs are not entitled to rescission, in whole or in part, of the Settlement Agreement.

### FIFTH AFFIRMATIVE DEFENSE

111.    Plaintiffs are not entitled to the relief they seek of partial rescission of the Settlement Agreement.

### SIXTH AFFIRMATIVE DEFENSE

112.    Plaintiffs would be unjustly enriched if the relief they seek were to be granted.

### SEVENTH AFFIRMATIVE DEFENSE

113.    Plaintiffs have failed to mitigate or attempt to mitigate damages, if in fact any damages have been or will be sustained, and any recovery by Plaintiffs therefore must be diminished or barred.

### EIGHTH AFFIRMATIVE DEFENSE

114.    Plaintiffs have failed to join all necessary parties.

### NINTH AFFIRMATIVE DEFENSE

115.    To the extent Plaintiffs have suffered any damages for which the law would provide a remedy, which SKAT denies, any such damages resulted from the acts or omissions of persons or entities other than SKAT.

### TENTH AFFIRMATIVE DEFENSE

116.    Plaintiffs' claims and requested relief are barred by equity and the terms of the Settlement Agreement.

**SKATTEFORVALTNINGEN'S COUNTERCLAIMS AGAINST MATTHEW STEIN AND JEROME LHOTE AND THIRD-PARTY COMPLAINT AGAINST LUKE MCGEE**

Pursuant to Federal Rules of Civil Procedure 13 and 14, defendant/counterclaim-plaintiff/third-party plaintiff Skatteforvaltningen ("SKAT") brings the following counterclaims against plaintiffs/counterclaim-defendants Matthew Stein and Jerome Lhote and third-party claims against third-party defendant Luke McGee based on their refusal to honor the terms of the parties' May 28, 2019 settlement agreement.

**NATURE OF THE COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

117.   By its claims, SKAT, the Danish tax authority, seeks breach of contract damages from Stein, Lhote, and McGee arising from their repudiation of their obligations under the May 28, 2019 settlement agreement.

118.   Over the course of 2012 to 2015, Stein, Lhote, and McGee participated in a massive fraud to deceive SKAT into paying approximately 4 billion Danish Kroner ("DKK"), approximately $580 million, in purported refunds of tax that was supposedly withheld at source from dividends that Danish companies issued to their shareholders, but, which, in fact, was never withheld or owed in the first place.  In the settlement agreement, SKAT agreed to release its claims against Stein, Lhote, McGee, and others, collectively defined in the settlement agreement as the "Covered Parties," arising from the fraudulent tax refund applications in exchange for, amongst other consideration, the Covered Parties' return of the net proceeds they received from the fraud, *i.e.*, the amount of SKAT's money they retained after payment of certain fees and expenses.

119.   That the Covered Parties would pay to SKAT the full amount of their net proceeds from the fraud was a fundamental principal on which the settlement agreement was based.  The agreement thus established a preliminary settlement amount, an estimate of the

22

Covered Parties' net proceeds, of DKK 1.55 billion, subject to adjustment if a true-up process established their actual net proceeds were more than that amount.  In that event, Stein, Lhote, and McGee, collectively defined in the settlement agreement as the "Covered Parties' Designees," are required to pay SKAT an additional "True-Up Amount" to make up the difference.  If, on the other hand, the true-up process established that the Covered Parties' net proceeds were less than DKK 1.55 billion, there is no corresponding reduction of the DKK 1.55 billion preliminary settlement amount.

120.    Under the terms of the agreement, the Covered Parties were obligated to (and did) pay DKK 950 million of the preliminary settlement amount within a few months of the effective date of the agreement.  The agreement (as modified by a side letter) requires Stein, Lhote, and McGee, as the Covered Parties' Designees, to pay the remaining DKK 600 million balance of the preliminary settlement amount and any True-Up Amount no later than May 28, 2023, along with any interest thereon, which, under the contract, began to accrue on May 28, 2021, at the rate of 8.05 percent.  And if the Covered Parties' Designees fail to make any payment when due, SKAT is entitled to additional interest at the rate of 8.05 percent on any such unpaid amount, covering the period from January 1, 2014 to May 27, 2021.

121.    The true-up process established that the Covered Parties' actual net proceeds from the fraud were DKK 1,658,603,074, *i.e.*, DKK 108,603,074 more than the DKK 1.55 billion preliminary settlement amount.  Stein, Lhote, and McGee are thus obligated to pay SKAT a True-Up Amount of DKK 108,603,074.  As part of the true-up process, Stein, Lhote, and McGee, as the Covered Parties' Designees, provided to SKAT spreadsheets, and supporting documents, purporting to calculate the Covered Parties' actual net proceeds.  The Covered Parties' own calculations showed that the net proceeds were DKK 1,576,008,293, or

23

DKK 26,008,293 higher than the DKK 1.55 billion preliminary settlement amount.  As detailed below, SKAT's review of the spreadsheets and documents established that the Covered Parties' Designees failed to account for, or improperly deducted, an additional DKK 82,594,781 of net proceeds, resulting in a True-Up Amount of DKK 108,603,074.

122.    As such, Stein, Lhote, and McGee, collectively, were obligated to pay SKAT DKK 708,603,074, comprised of the DKK 600 million remaining balance of the preliminary settlement amount and the DKK 108,603,074 True-Up Amount, and interest accrued on both those amounts no later than May 28, 2023.  To date, Stein, Lhote, and McGee have paid SKAT only DKK 60,425,634, and DKK 104,381,310 in interest will have accrued on the unpaid balances by May 28, 2023.  Thus, under the settlement agreement, Stein, Lhote, and McGee are obligated to pay to SKAT DKK 752,558,750 by May 28, 2023, an amount on which interest will continue to accrue.

123.    On various occasions prior to the filing of this action, including on March 23, 2023, SKAT asked counsel for Stein, Lhote, and McGee for assurance that they intended to make the remaining payments due under the settlement agreement by the May 28, 2023 deadline.  No assurance was provided.  Instead, on March 24, 2023, Stein and Lhote commenced this action alleging that no debt to SKAT is due or justly to become due and seeking damages and discharge of their payment obligations.  McGee likewise has made clear to SKAT that he does not intend to pay the full amount the Covered Parties' Designees owe to SKAT by the May 28, 2023 deadline.

124.    By its counterclaims and third-party claims, SKAT seeks breach of contract damages arising from Stein, Lhote, and McGee's repudiation of their payment obligations under the settlement agreement.  In addition to the DKK 752,558,750 comprising the unpaid portion of

24

the DKK 600 million, the True-Up Amount, and accrued interest, SKAT is entitled to additional interest as a result of the Covered Parties' Designees breach in the amount of DKK 386,548,164 for the period January 1, 2014 to May 27, 2021.

125.    Accordingly, under the terms of the settlement agreement, SKAT is entitled to damages in the amount of DKK 1,139,106,914 for Stein, Lhote, and McGee's breach of the agreement, an amount for which they are jointly and severally liable and on which interest will continue to accrue.

## PARTIES

126.    Counterclaim-plaintiff/third-party plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Hannemanns Allé 25, DK.2300 Copenhagen, Denmark.

127.    Counterclaim-defendant Matthew Stein is a citizen of the United States, and on information and belief, a citizen of the State of New York.

128.    Counterclaim-defendant Jerome Lhote is a citizen of the United States, and on information and belief, a citizen of the State of Florida.

129.    Third-party defendant Luke McGee is a citizen of the United States, and on information and belief, a citizen of the State of Pennsylvania.

## JURISDICTION AND VENUE

130.    The Court has subject-matter jurisdiction over SKAT's counterclaims and third-party claims pursuant to 28 U.S.C. § 1332(a)(4) because the amounts in controversy exceed $75,000, exclusive of interest or costs, and the actions are between a foreign state and U.S. citizens.

131.    The Court has supplemental jurisdiction over SKAT's counterclaims and third-party claims pursuant to 28 U.S.C. § 1367(a) because the counterclaims and third-party claims form part of the same case or controversy as Stein and Lhote's claims.

132.    The Court has personal jurisdiction over Stein, Lhote and McGee because they agreed in the settlement agreement to submit to the jurisdiction of this Court with respect to any dispute arising out of, in connection with, or relating to the settlement agreement, and because, with respect to Stein and Lhote, SKAT's counterclaims arise out of the transactions and occurrences set forth in Stein and Lhote's complaint.

133.    Venue is proper in this District because Stein, Lhote and McGee agreed in the settlement agreement to venue in this District with respect to any dispute arising out of, in connection with, or relating to the settlement agreement, and because the factual allegations set forth in SKAT's counterclaims and third-party claims arise out of the same transactions and occurrences set forth in Stein and Lhote's complaint.

## FACTUAL ALLEGATIONS

134.    Under Danish law, when a Danish company issues a dividend to its shareholders, it is required to withhold 27 percent of the dividend as tax.  Under the U.S.-Denmark double taxation treaty, U.S. tax-exempt entities, such as qualified pension plans, that receive a dividend issued by a Danish company may be entitled to a full refund of the withheld tax.

**Stein, Lhote and McGee participated in a massive fraud on SKAT.**

135.    Beginning in 2012, Stein, Lhote, and McGee participated in a fraudulent scheme to deceive SKAT into paying purported refunds of tax supposedly withheld from dividends Danish companies issued to their shareholders that was never in fact owed or withheld in the first place.  As part of the scheme, Stein, Lhote, McGee, and others affiliated with them collectively

created 80 sham U.S. pension plans that would submit fraudulent dividend withholding tax refund applications to SKAT.

136.    The refund applications represented falsely that the pension plans owned massive amounts of Danish shares, on which the plans had received dividends, net of withholding tax, and that the plans were entitled to full refunds of the supposedly withheld tax under the treaty. Each refund application included a false dividend credit advice, or similar document, from the plan's purported custodian of Danish shares supposedly evidencing the plan's receipt of dividends and suffering of withholding tax.  In total, the 80 pension plans submitted approximately 1,300 fraudulent applications for refunds of approximately DKK 4 billion in supposedly withheld taxes, each of which SKAT paid.

137.    During the period from 2012 to 2014, Stein and Lhote, along with the two other members of their company Argre Management LLC ("Argre"), used 24 pension plans for the purpose of submitting their fraudulent tax refund applications to SKAT.  Solo Capital Partners LLP, a U.K. entity at the time owned and controlled by Sanjay Shah, served as the purported custodian of Danish shares for these 24 plans and issued the false dividend credit advices that the plans included in their tax refund applications.  SKAT has filed civil cases against Shah, Solo Capital, and other entities owned or controlled by Shah.  SØIK has brought criminal charges against Shah.

138.    Since at least 2013, Stein, Lhote, and McGee have owned a controlling interest in a German bank called North Channel Bank.  As of 2018, Stein, Lhote, and McGee owned more than 93 percent of North Channel Bank, with most of the remainder being owned by two other Covered Parties.

139.    In 2014, Stein and Lhote ended their affiliation with the two other members of Argre.  To continue the scheme, Stein, Lhote, McGee, and other non-parties created 56 new sham U.S. pension plans that would submit fraudulent tax refund applications to SKAT.  North Channel Bank, Indigo Securities Ltd, and Lindisfarne Partners served as the purported custodians of Danish shares for the 56 new plans and issued the false dividend credit advices that the plans included in their tax refund applications.

140.    In summer 2015, SKAT received information from a whistleblower and a foreign government indicating it may have been the victim of fraud, following which SKAT stopped paying dividend withholding tax refunds and commenced an investigation.

141.    On September 23, 2019, North Channel Bank pleaded guilty in a Danish criminal court to a charge of serious criminal fraud in connection with the refund scheme.  In its plea, North Channel Bank admitted that it had received DKK 55 million from the refunds paid by SKAT and was ordered to pay a fine of DKK 110 million.  North Channel Bank never paid the fine.

**The Settlement Agreement**

142.    On May 28, 2019, SKAT entered into the settlement agreement with Stein, Lhote, McGee, and the other Covered Parties to resolve its claims against them arising from the pension plans' fraudulent tax refund applications.  In addition to Stein, Lhote, and McGee, the Covered Parties included over 50 other individuals and over 100 pension plans, partnerships, and other entities formed to participate in or distribute proceeds of the fraud.

143.    As set forth in the agreement, it was the parties' understanding and a fundamental principle on which the agreement was based that, under its terms, the Covered Parties would pay to SKAT the full amount of the "Net Proceeds," as defined in the agreement, that the Covered Parties received, directly or indirectly, from SKAT's payments of the plans' refund applications.

28

Under section 2(c) of the agreement, the Covered Parties' obligation to pay the amounts due under the settlement agreement is "absolute and unconditional."

144.    As an estimate of the Covered Parties' Net Proceeds, the settlement agreement established a preliminary settlement amount to be paid to SKAT of DKK 1.55 billion, subject to increase if the Covered Parties' Net Proceeds were in fact more than that amount.  Under section 2(a) of the agreement, the Covered Parties were obligated to pay DKK 950 million of the preliminary settlement amount within a few months of the effective date.

145.    The Covered Parties' Designees, i.e., Stein, Lhote, and McGee, are obligated under sections 2(b)–(d) of the agreement, as modified by a contemporaneously executed side letter, to pay the remaining DKK 600 million of the preliminary settlement amount no later than May 28, 2023.  Further, in the event any part of the DKK 600 million remained unpaid 24 months after the effective date, i.e., on May 28, 2021, section 2(d) of the agreement entitles SKAT to 8.05 percent interest on the remaining unpaid amount.  The Covered Parties' Designees are obligated to pay all such accrued interest, along with the remaining unpaid portion of the DKK 600 million, by May 28, 2023.

146.    Section 2(e) of the agreement established a true-up process to determine the actual amount of the Covered Parties' Net Proceeds.  As part of the true-up process, the Covered Parties agreed to use best efforts to provide SKAT with documents sufficient to establish the total Net Proceeds they received from the plans' tax refund applications.  If the documents establish their Net Proceeds were higher than the DKK 1.55 billion preliminary settlement amount, then SKAT is entitled to an adjustment to the preliminary settlement amount, the True-Up Amount, equal to the difference between the Covered Parties' actual Net Proceeds and the preliminary settlement amount.  On the other hand, the Covered Parties are not entitled to any adjustment if the true-up

process establishes that the Covered Parties' Net Proceeds were less than the DKK 1.55 billion preliminary settlement amount.

147.    The Covered Parties' Designees are obligated to pay any True-Up Amount, and any interest thereon, by May 28, 2023, *i.e.*, the same date by which they are obligated to fully pay the DKK 600 million and interest accrued on that amount.  In the event of a dispute arising from the true-up process over more than DKK 20 million, section 10(a) of the agreement entitles either party to pursue available legal remedies in this Court.  And under section 4(c) of the agreement, Stein, Lhote, and McGee were required to (and did) confess judgment to the amounts due under the agreement by May 28, 2023, which confession of judgment SKAT was authorized to file in the event they failed to make any payment when due.

**Stein, Lhote and McGee have not paid the full DKK 600 million and accrued interest.**

148.    To date, Stein, Lhote, and McGee, as the Covered Parties' Designees, have paid only DKK 60,425,634 of the DKK 600 million balance of the preliminary settlement amount due by May 28, 2023.  As set forth in the chart below, DKK 86,896,215 in unpaid interest will have accrued on the unpaid balance pursuant to section 2(d) of the settlement agreement by the May 28, 2023 payment deadline, resulting in a total amount owed to SKAT of DKK 626,470,581.02 as of that date.

| Date | Principal Amount Outstanding (DKK) | Interest Accrued | |
|---|---|---|---|
| May 28, 2021 | 541,473,336.47 | - | |
| June 8, 2021 | 540,064,003.58 | 1,313,629.15 | |
| June 16, 2021 | 539,858,983.58 | 952,880.05 | |
| April 19, 2022 | 539,574,366.26 | 36,552,890.39 | |
| May 28, 2023 | 539,574,366.26 | 48,076,815.18 | |
| **TOTAL** | 539,574,366.26 | 86,896,214.76 | **626,470,581.02** |

**The true-up process established that the Net Proceeds were DKK 108,603,074 more than the Preliminary Settlement Amount.**

149.    Under section 2(e) of the settlement agreement, the Covered Parties' Net Proceeds are defined as:

> "(A) Gross Reclaims," *i.e.*, the total amount SKAT paid the pension plans, "less (B) all of the Covered Parties' expenses associated with Reclaim Applications for which [SKAT] made payments, specifically as follows: (1) reclaim agent fees, (2) tax reclaim advisory service fees, (3) brokerage fees and commissions, (4) custodial and clearing fees, (5) trading expenses, and (6) financial institution account charges[,] and less (C) any other portion of Gross Reclaims received by parties" excluded from the release SKAT provided in section 4 of the agreement "that were not otherwise subsequently provided to any Covered Party."

150.    As discussed above, the true-up process included two stages.  First, the Covered Parties provided SKAT detailed spreadsheets for each plan with their calculation of the Net Proceeds for that plan.  According to their own initial calculations, the Net Proceeds were DKK 1,576,008,293, *i.e.*, DKK 26,008,293 more than the DKK 1.55 billion estimated in the settlement agreement.

151.    Second, SKAT reviewed the spreadsheets and the supporting documents, which showed that the Net Proceeds the Covered Parties received from the fraud were higher by an additional DKK 82,594,781.  In particular, in the spreadsheets, the Covered Parties improperly deducted the following amounts from Net Proceeds.

152.    First, the Covered Parties improperly deducted DKK 55 million they paid as fees to North Channel Bank, notwithstanding that the Bank subsequently returned to the Covered Parties that DKK 55 million in the form of dividends.  Over the course of 2014 and 2015, North Channel Bank collected DKK 55 million in fees from its participation in the Danish fraud scheme, during which time it had little to no other business.  During that same period, North Channel Bank issued more than € 9.2 million (well over DKK 55 million) in dividends to its shareholders, including to Stein, Lhote, and McGee.  North Channel Bank did not issue

dividends in any other year during which the Covered Parties' Designees had a controlling interest in the bank.

153.     On the same day the settlement agreement was executed, SKAT entered into a side letter agreement with Stein, Lhote, McGee, and other Covered Parties.  The side letter provided that these individuals would liquidate certain assets, and the proceeds would be paid to SKAT.  When the side letter was executed, the parties understood that North Channel Bank would be sold by December 2021 for approximately DKK 320 million.  The side letter set out a series of cascading payments for when North Channel Bank was sold.  First, SKAT would receive the greater of DKK 50 million or the amount of fees North Channel Bank received from the refunds paid by SKAT (the "Bank Fees").  As discussed, North Channel Bank has admitted the Bank Fees totaled DKK 55 million.  After payment of the Bank Fees, the Belgian government would be repaid for tax refunds it paid to the Covered Parties.  Last, the remainder would be put toward the final amount owed to SKAT under the settlement agreement.

154.     Contrary to the parties' mutual expectations, North Channel Bank has not been sold.  On information and belief, the bank will not be sold before May 28, 2023, when the final payment under the settlement is due.  The Covered Parties' obligations under the settlement agreement to return the Bank Fees is not dependent on the realization through a sale of their interest in North Channel Bank.  The settlement agreement does not provide for the windfall that would arise if the Covered Parties' Designees kept the value of the Bank Fees, which would violate the guiding principle of the settlement agreement that the Covered Parties return all the proceeds from the fraud they perpetrated on SKAT.

155.     Second, the Covered Parties wrongly deducted DKK 19,625,360 in monthly custody fees paid to North Channel Bank, Indigo or Lindisfarne incurred after SKAT paid the

respective plan's last refund application.  Pursuant to Section 2(e) of the settlement agreement, the Covered Parties' Designees can only deduct "expenses associated with Reclaim Applications for which [SKAT] made payments."

156.    Third, the Covered Parties wrongly deducted DKK 3,709,941 for purported "tax advisory services" fees that the 24 plans that used Sanjay Shah's Solo Capital as their purported custodian paid to Shah's Ganymede Cayman Ltd.  Under the relevant agreements, Ganymede's "fees" were 66.67 percent of the net amount of SKAT's payments after certain payment agents took their fees, not, as the Covered Parties' Designees calculated, 66.67 percent of the gross amounts SKAT paid.

157.    Fourth, the Covered Parties wrongly deducted DKK 2,465,236 for custody and clearing fees paid to Solo Capital on account of the plans' purported trading in Belgian, not Danish, securities.  At the same time the Covered Parties and Solo Capital defrauded SKAT, they were perpetrating a similar fraudulent scheme against the Belgian tax authority.[3]  Under the settlement agreement, the Covered Parties are permitted to deduct expenses related to their Danish tax refund applications only, so during the true-up process, the Covered Parties' Designees purported to calculate the portion of the monthly custody fees the plans paid Solo attributable to purported Danish trading based on the relative proportion of the plans' purported Danish and Belgian trading, and did not deduct clearing fees paid to Solo related to Belgian trades.  But the Covered Parties' Designees failed to account for all the plans' Belgian trading in their calculations, resulting in them undercounting the Net Proceeds.

---

3.   Belgium has sued Stein, Lhote, McGee, and others for claims arising from fraudulent tax refund applications they submitted to the Belgian tax authority.  *See In re Kingdom of Belgium, Fed. Pub. Serv. Fin. Pension Plan Litig.*, No. 1:21-cv-06392-JGK (S.D.N.Y.).

158.    Fifth, the Covered Parties wrongly deducted DKK 702,805 for monthly custody fees paid to North Channel Bank and Lindisfarne on account of the plans' purported trading in Belgian, not Danish, securities.  The Covered Parties' Designees deducted the full amount of the monthly custody fees the plans paid to North Channel Bank and Lindisfarne, despite that the plans purportedly held both Danish and Belgian securities in their accounts.

159.    Sixth, the Covered Parties wrongly deducted DKK 686,990 because they used inaccurate exchange rates.  For the 56 plans that used North Channel Bank, Indigo, or Lindisfarne as purported custodians, the Covered Parties' Designees used the average exchange rate for the relevant year to convert fees paid in other currencies to Danish kroner, rather than the exchange rate for the day the fee was paid, which date is shown by the documents produced during the true-up process.

160.    Seventh, the Covered Parties wrongly deducted DKK 404,449 in fees paid to Lindisfarne because they deducted those fees twice.

161.    Under the terms of the settlement agreement, Stein, Lhote and McGee are obligated to pay SKAT the True-Up Amount of DKK 108,603,074, and interest thereon, no later than May 28, 2023.

**Stein, Lhote and McGee repudiated their payment obligations under the settlement agreement.**

162.    On various occasions prior to the filing of this action, including on March 23, 2023, SKAT asked Stein, Lhote, and McGee's counsel for assurance that they intended to make the remaining payments due under the settlement agreement by the May 28, 2023 deadline.  No assurances were given.  Also on March 23, 2023, SKAT discussed with Stein, Lhote, and McGee's counsel potential resolution of the True-up Amount, which SKAT's counsel believed to be undertaken by all counsel in good faith.  At no point during that March 23, 2023 discussion

did Stein, Lhote, and McGee's counsel inform SKAT that on March 20, 2023, Stein and Lhote

had submitted a motion to seal with the intention of filing their Complaint.

163.    On March 24, 2023, with their March 20, 2023 motion to seal having been

granted by the Court, Stein and Lhote commenced this action alleging that "[n]o debt by" Stein

and Lhote to SKAT "is justly due or to become due," and seeking damages and discharge of their

obligations to make any further payments based on SKAT's purported breach of the agreement,

thus making clear that they have no intention to pay the amounts they owe SKAT by the May 28,

2023 payment deadline.

164.    McGee has also made clear his intent not to pay the full amount owed to SKAT

by May 28, 2023.

## CAUSES OF ACTION

### COUNT I

**(Breach of Contract)**
**(Counterclaims against Stein and Lhote and third-party claim against McGee)**
**(DKK 600 million payment and accrued interest)**

165.    SKAT repeats and realleges paragraphs 1 through 164 above as if fully set forth

herein.

166.    The settlement agreement is a valid and enforceable contract.

167.    SKAT has substantially performed its obligations under the settlement agreement.

168.    Under the agreement, Stein, Lhote and McGee collectively are obligated to pay

SKAT the DKK 539,574,366 remaining unpaid balance of the Preliminary Settlement Amount

and DKK 86,896,215 in interest that will have accrued thereon no later than May 28, 2023.

169.    Stein, Lhote and McGee have repudiated and anticipatorily breached the

settlement agreement by unequivocally stating that they have no intention to pay SKAT the

DKK 626,470,581 currently due under the agreement.

170.     As a result of Stein, Lhote, and McGee's breach of the agreement, SKAT is entitled to additional interest on the unpaid DKK 539,574,366 for the period from January 1, 2014 to May 27, 2021, which interest totals DKK 321,781,456.

171.     As a result of Stein, Lhote, and McGee's breach of the provisions of the agreement requiring them to pay the unpaid portion of the preliminary settlement amount and accrued interest, SKAT has been damaged in the amount of DKK 948,252,037, an amount on which interest continues to accrue.

### COUNT II

**(Breach of Contract)**
**(Counterclaims against Stein and Lhote and third-party claim against McGee)**
**(True-Up Amount and accrued interest)**

172.     SKAT repeats and realleges paragraphs 1 through 171 above as if fully set forth herein.

173.     The settlement agreement is a valid and enforceable contract.

174.     SKAT has substantially performed its obligations under the settlement agreement.

175.     Under the agreement, Stein, Lhote, and McGee collectively are obligated to pay SKAT the True-Up Amount of DKK 108,603,074 and DKK 17,485,095 in interest that will have accrued thereon no later than May 28, 2023.

176.     Stein, Lhote, and McGee have repudiated and anticipatorily breached the settlement agreement by unequivocally stating that they have no intention to pay SKAT the DKK 126,088,169 True-Up Amount and accrued interest due under the agreement.

177.     As a result of Stein, Lhote, and McGee's breach of the provisions of the agreement obligating them to pay SKAT the True-Up Amount and interest thereon, SKAT is entitled, under the agreement, to additional interest on the True-Up Amount for the period from January 1, 2014 to May 27, 2021, which interest totals DKK 64,766,708.

36

178.    As a result of Stein, Lhote and McGee's breach of the provisions of the agreement obligating them to pay SKAT the True-Up Amount and interest thereon, SKAT has been damaged in the amount of DKK 190,854,877, an amount on which interest continues to accrue.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

179.    For Count I, breach of contract, DKK 948,252,037 plus further interest due under the settlement agreement, and fees, costs, and expenses.

180.    For Count II, breach of contract, DKK 190,854,877 plus further interest due under the settlement agreement, and fees, costs, and expenses.

181.    The costs of this action.

182.    All other and further relief that is just and proper.

Dated: New York, New York
       April 12, 2023

Respectfully submitted,

HUGHES HUBBARD & REED LLP

 /s/ Marc A. Weinstein
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
neil.oxford@hugheshubbard.com
dustin.smith@hugheshubbard.com
john.mcgoey@hugheshubbard.com

*Counsel for Defendant / Counterclaim-Plaintiff / Third-Party Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*