UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW STEIN and JEROME LHOTE,<br><br>    Plaintiffs,<br><br>        v.<br><br>SKATTEFORVALTNINGEN,<br><br>        Defendant. | 23 Civ. 2508 (NRB) |
| SKATTEFORVALTNINGEN,<br><br>    Counterclaim Plaintiff,<br><br>        v.<br><br>MATTHEW STEIN, JEROME LHOTE, and<br>LUKE MCGEE,<br><br>        Counterclaim Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS COUNTERCLAIMS

Oral Argument Requested

Daniel W. Levy
MCKOOL SMITH P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York  10001-8603
Telephone: (212) 402-9400

*Attorneys for Plaintiffs-Counterclaim
Defendants Matthew Stein and
Jerome Lhote*

4853-9715-0821

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

    I.      Source of Facts Contained in Summary of Factual Background ........................... 2

    II.     Danish Law Regarding Refunds of Taxes Paid on Dividends ............................... 3

    III.    The Settlement Agreement and Related Documents ............................................. 3

         A.     Stein, Lhote, and McGee's Efforts to Settle with SKAT ............................ 3

         B.     Exhibits to the Settlement Agreement ....................................................... 5

    IV.    Payment Obligations and Releases Under the Settlement Agreement .................. 5

         A.     The Covered Parties' Payment Obligations ................................................. 5

              1.     Payments Made Shortly After Execution of the Settlement Agreement ................................................................................ 6

              2.     Payments Made In the Years After Execution of the Settlement Agreement ................................................................... 7

              3.     Summary of Payment Obligations Under the Settlement Agreement ................................................................................ 9

    V.     The Affidavits of Confession of Judgment ....................................................... 9

         A.     The 2019 Affidavit of Confession of Judgment ........................................ 9

          B.     The 2021 Affidavit of Confession of Judgment ...................................... 11

    VI.    SKAT's Limited Remedies for Failure to Make Payments Under the Settlement Agreement .................................................................................... 12

    V.     SKAT's Counterclaims ..................................................................................... 14

ARGUMENT ........................................................................................................ 15

    I.      Relevant Legal Standards ................................................................................. 15

         A.     Standard on Motion to Dismiss Counterclaims ...................................... 15

         B.     The Court's Obligation to Interpret the Settlement Agreement ............... 16

<u>**TABLE OF CONTENTS**</u> **(cont'd)**

II.      The "Sole Remedy" Provision of the Settlement Agreement Is Enforceable....... 17

III.     The "Sole Remedy" Provision Is Unambiguous..................................................... 19

IV.     Bringing Breach of Contract Claims Is Not The Manner To Enforce An
        Affidavit of Confession of Judgment..................................................................... 22

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*,
    300 F. App'x 48 (2d Cir. 2008) ...................................................................................16

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*,
    136 F.3d 82 (2d Cir. 1998)..........................................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................16

*CBS Broad., Inc. v. Jones*,
    460 F. Supp. 2d 500 (S.D.N.Y. 2006)...........................................................17, 18, 19, 20, 21

*Citigroup Mortg. Loan Tr. 2007-AMC3 ex rel. US Bank, Nat Ass'n v. Citigroup Global
    Mkts. Realty Corp.*,
    2014 WL 1329165 (S.D.N.Y. Mar. 31, 2014) ..............................................................19

*Crowley v. Jones*,
    608 F. Supp. 3d 78 (S.D.N.Y. 2022)..............................................................................2

*Darwiche v. Cedar Capital Mgmt. Grp., Inc.*,
    No. 17 Civ. 9154 .........................................................................................................24

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)........................................................................................16

*Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*,
    643 F. Supp. 2d 317 (S.D.N.Y. 2008)..........................................................................16

*Greenfield v. Philles Records*,
    98 N.Y.2d 562 (2002) ..................................................................................................17

*In re: Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund
    Scheme Litig.*,
    338 F. Supp. 3d 1347 (J.P.M.L. 2018)...........................................................................3

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................................16

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ............................................................................................17

*J. D'Addario & Co., Inc. v. Embassy Indus., Inc.*,
    20 N.Y.3d 113 (2012) .............................................................................................18, 21

4853-9715-0821

## <u>TABLE OF AUTHORITIES</u> (cont'd)

**Page(s)**

*Jacob v. Lorenz,*
   626 F. Supp. 3d 672 (S.D.N.Y. 2022)....................................................................2

*Katzman v. Helen of Troy Texas Corp.,*
   2013 WL 1496952 (S.D.N.Y. Apr. 11, 2013).......................................................18

*Korpak, Ltd. v. Williams Lea Inc.,*
   2022 WL 375543 (S.D.N.Y. Feb. 7, 2022)............................................................2

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
   2006 WL 2807213 (S.D.N.Y. Sept. 28, 2006).......................................................2

*Mar. Grp. Co. v. Entrac, Inc.,*
   2019 WL 2482376 (S.D.N.Y. June 13, 2019) ......................................................23

*Metropolitan Life Ins. Co. v. Noble Lowndes Intl.,*
   84 N.Y.2d 430 (1994) .........................................................................................18

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.,*
   30 N.Y. 3d 572 (2017) ....................................................................17, 18, 19, 20

*Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.,*
   554 F. Supp. 3d 568 (S.D.N.Y. 2021)..................................................................15

*Ream v. Berry-Hill Galleries, Inc.,*
   2020 WL 5836437 (S.D.N.Y. Oct. 1, 2020) ..................................................23, 24

*Rodrigues v. Corona Advances, Inc.,*
   2018 WL 4043149 (S.D.N.Y. Aug. 24, 2018)................................................24, 25

*Sapon v. Hanbat Rest., Inc.,*
   2021 WL 621170 (S.D.N.Y. Feb. 16, 2021).........................................................23

*Town of N. Hempstead v. Corona Realty Holding, LLC,*
   182 N.Y.S.3d 235 (2d Dep't 2023).......................................................................19

*W.W.W. Assoc. v. Giancontieri,*
   77 N.Y.2d 157 (1990) .........................................................................................17

*Wade Park Land Holdings, LLC v. Kalikow,*
   589 F. Supp. 3d 335 (S.D.N.Y. 2022)............................................................20, 21

*Xerox Corp. v. West Coast Litho, Inc.,*
   251 F. Supp. 3d 534 (W.D.N.Y. 2017).........................................................23, 24

iv

**TABLE OF AUTHORITIES** (cont'd)

**Page(s)**

**STATUTES AND OTHER AUTHORITIES**

CPLR 3218................................................................................................ *passim*

CPLR 3218(a) .............................................................................10, 22, 23

CPLR 3218(a)(1) ........................................................................11 n.2, 22

CPLR 3218(b)............................................................................11, 24, 25

Dillon, McKinney's Practice Commentary, CPLR 3218 (2021)............................................22, 25

Fed. R. Civ. P. 12(b)(6)...............................................................................2, 16

Siegel, N.Y. Practice § 300 (6th ed. & Supp.) .......................................................11 n.2

State Senate Bill S5724-A ...........................................................................11 n.2

State Senate Bill S6395...............................................................................11 n.2

v

Plaintiffs-Counterclaim Defendants Matthew Stein ("Stein") and Jerome Lhote ("Lhote"; collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion to dismiss the counterclaims alleged by Defendant-Counterclaim Plaintiff Skatteforvaltningen ("SKAT").

## PRELIMINARY STATEMENT

This case concerns the breach of a heavily negotiated settlement agreement entered into by sophisticated parties represented by able counsel.  Stein and Lhote have asserted, among other claims, a breach of contract claim against SKAT for its failure to abide by a simple, straightforward obligation under the settlement agreement: to promptly upon execution of the settlement agreement provide a writing to Danish criminal authorities outlining, among other things, the settlement agreement, its terms, and that the settlement agreement is in the best interests of SKAT.  For its part, SKAT has asserted breach of contract counterclaims against Plaintiffs and Counterclaim-Defendant Luke McGee for their alleged failure to pay the full settlement amount by May 28, 2023, notwithstanding SKAT's own prior breach of the settlement agreement.

As a key part of the settlement agreement, SKAT, Stein, Lhote, McGee bargained for the simplicity of a *sole* remedy in the event of breach -- the filing of an affidavit of confession of judgment.  An affidavit of confession of judgment is a mechanism under New York law by which an aggrieved party obtains a judgment without litigation by simply filing the affidavit of confession of judgment and, thereby, obtaining a judgment.  It does not require and, indeed, is fundamentally inconsistent with, filing a breach of contract action.  A breach of contract action is one path to obtaining a judgment and the filing of an affidavit of confession of judgment is an entirely *different* path.  There is no precedent in New York law for combining them.  The settlement agreement between the parties unambiguously limits SKAT to one remedy -- and one

remedy alone -- for a failure to pay the final settlement amount -- the filing of the affidavit of confession of judgment.  The settlement agreement does not permit SKAT to invent a procedure that is outside the clear terms of the settlement agreement and contrary to New York law.

Because the procedure that SKAT seeks to use does not exist as a matter of law and because damages for breach of contract, the alternative remedy sought by SKAT, are not available under the settlement agreement, SKAT's counterclaims should be dismissed.

## FACTUAL BACKGROUND

I.  **Source of Facts Contained in Summary of Factual Background**

The following factual summary is derived from the counterclaims alleged by SKAT in its First Amended Answer, Affirmative Defenses & Counterclaims, dated June 15, 2023 (ECF No. 48) ("SKAT Countercl.").

It is also derived from allegations and admissions that SKAT made in answering the Complaint filed by Stein and Lhote, dated Apr. 6, 2023 (ECF No. 11) ("Pl. Compl.").  The Court may properly consider SKAT's statements on a motion to dismiss counterclaims under Rule 12(b)(6).  *See Korpak, Ltd. v. Williams Lea Inc.*, 2022 WL 375543, at *3 (S.D.N.Y. Feb. 7, 2022); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 WL 2807213, at *2 (S.D.N.Y. Sept. 28, 2006).

It is also derived from documents incorporated by reference or relied upon by SKAT in framing its counterclaims or that are otherwise integral to SKAT's counterclaims.  The Court also may properly consider these documents on a motion to dismiss under Rule 12(b)(6).  *See Crowley v. Jones*, 608 F. Supp. 3d 78, 86 (S.D.N.Y. 2022); *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 684 (S.D.N.Y. 2022).

II.     **Danish Law Regarding Refunds of Taxes Paid on Dividends**

Denmark withholds a 27 percent tax from dividends paid by a Danish company to its shareholders.  SKAT Countercl. ¶ 141.  For U.S. tax-exempt entities that own stock in Danish companies, like pension plans, a tax treaty between Denmark and the United States provides a mechanism whereby a U.S. tax-exempt entity may obtain a refund of the withheld 27 percent tax. *Id.* ¶¶ 141, 143; *see also id.* ¶ 23 & n.1.

SKAT alleges that, from 2012 to 2015, Stein, Lhote, and Counterclaim-Defendant Luke McGee ("McGee") "participated in a fraudulent scheme to deceive SKAT into paying purported refunds of tax supposedly withheld from dividends Danish companies issued to their shareholders that was never in fact owed or withheld in the first place."  *Id.* ¶¶ 142-47.  SKAT further alleges that, "[a]s part of the scheme, Stein, Lhote, McGee, and others affiliated with them collectively created 80 sham U.S. pension plans that would submit fraudulent dividend withholding tax refund applications to SKAT."  *Id.* ¶ 142.  SKAT alleges that these pension plans submitted claims for refunds of withheld dividend tax of approximately 4 billion Danish kroner ("DKK").  *Id.* ¶ 143.

III.    **The Settlement Agreement and Related Documents**

    A.     **Stein, Lhote, and McGee's Efforts to Settle with SKAT**

Before there was ever any litigation initiated against them, Stein, Lhote, and McGee entered into extensive and good faith negotiations with SKAT as part of an effort to resolve any potential claims that SKAT might have had against them as a result of various tax refund applications.  Those negotiations began in 2017.  *See id.* ¶¶ 27, 30; *see generally In re: Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347 (J.P.M.L. 2018) (reflecting centralization of 140 separate cases filed in 11 districts arising out of SKAT's "allegation that the defendants -- 141 U.S. retirement and pension

3

plans and their alleged representatives and agents -- engaged in a fraudulent scheme to obtain tax refunds from SKAT").

About two years later, on May 28, 2019, Stein, Lhote, and McGee entered into a settlement agreement with SKAT.  *See* SKAT Countercl. ¶ 124; Settlement Agreement, dated May 28, 2019 (the "Settlement Agreement").  Besides Stein, Lhote, and McGee, more than 50 other individuals and more than 100 pension plans, partnerships, and other entities entered into the Settlement Agreement.   SKAT Countercl. ¶¶ 124, 149; *see also id.* ¶ 3.  The Settlement Agreement is attached as Exhibit A to the Declaration of Daniel W. Levy, sworn to on July 13, 2023 ("Levy Decl.").

The Settlement Agreement was entered into "after extensive and good faith negotiations." Levy Decl., Exh. A at p. 2.  The parties to the Settlement Agreement were all represented by counsel and, in connection with entering into the Settlement Agreement, "conducted their own investigations of the relevant facts and circumstances and [were] not relying on any representations or warranties of any other Party," except as otherwise expressly indicated in the Settlement Agreement.  *Id.*, Exh. A at pp. 2, 19-29 & § 19.

The many settling parties are generally referred to in the Settlement Agreement as the Covered Parties.  *See* Levy Decl., Exh. A at p.1 & § 1(i); SKAT Countercl. ¶¶ 3, 124.

Stein, Lhote, and McGee are referred to in the Settlement Agreement as the "Covered Parties' Designees."  *See* Levy Decl., Exh. A at § 1(j) (defining "Covered Parties' Designees"); SKAT Countercl. ¶¶ 3, 126.

The Settlement Agreement is governed by New York law.  *See* Levy Decl., Exh. A at § 12; SKAT Countercl. ¶ 41.

### B.      Exhibits to the Settlement Agreement

The Settlement Agreement has several exhibits, all of which are included in Exhibit A to

the Levy Declaration, specifically:

(a)      Exhibits 1 and 2:  These Exhibits list the parties to the Settlement
Agreement, defined as the "Covered Parties" and divides the Covered
Parties into various sub-groups.  *See* Levy Decl., Exh. A at § 1(i) (defining
"Covered Parties") & Exhs. 1-2.

(b)      Exhibit 3:  This Exhibit lists persons and entities that were excluded from
the releases in the Settlement Agreement.  *See id.*, Exh. A at § 4(a)(iii) &
Exh. 3.

(c)      Exhibit 4:  Exhibit 4 is a form of affidavit of confession of judgment to be
executed by Stein, Lhote, and McGee as the Covered Parties' Designees.
They were required to provide the executed Affidavit of Confession of
Judgment simultaneously with the first payments required by the
Settlement Agreement.  *See id.*, Exh. A at § 4(c) & Exh. 4.

(d)      Exhibit 5:  Exhibit 5 is a form of affidavit of confession of judgment to be
provided by Stein, Lhote, and McGee as the Covered Parties' Designees
about two years after the execution of the Settlement Agreement.  *See id.*,
Exh. A at § 4(c) & Exh. 5.

## IV.      Payment Obligations and Releases Under the Settlement Agreement

The Settlement Agreement requires a series of payments by the Covered Parties.  Some

of those payments were required to be made in connection with execution of the Settlement

Agreement.  In exchange for these initial payments, SKAT released the Covered Parties from, in

general, all claims related to tax refunds applications made to SKAT.  SKAT Countercl. ¶ 125.

Other payments were required to be made later on.  Some of the amounts of these future

payments were subject to complicated fact-intensive inquiries to calculate.

### A.      The Covered Parties' Payment Obligations

The Settlement Agreement outlines, in general, two sets of payments that the Covered

Parties agreed to make to SKAT, each at different times: (i) the Initial Cash Payment to be paid

4853-9715-0821

within a short period after execution of the Settlement Agreement; and (ii) the Subsequent Cash

Payment Amount to be paid within a few years of the execution of the Settlement Agreement.

### 1.    Payments Made Shortly After Execution of the Settlement Agreement

The first set of payments required by the Settlement Agreement is the "Initial Cash

Payment."  The Initial Cash Payment is for a total of DKK 950 million and was to be made in

two installments within a specified time-period.  *See* Levy Decl., Exh. A at §§ 1(t), 2(a); SKAT

Countercl. ¶¶ 128, 131, 172.[1]

Upon completion of the Initial Cash Payment, SKAT agreed to "forever and finally

generally release, waive and discharge the Covered Parties" from any claims that SKAT had or

may have had against the Covered Parties arising out of and in connection with the tax refund

applications.  Levy Decl., Exh. A at §§ 1(bb) (defining "Settled Matters"), 4(a).  For their part,

upon completion of the Initial Cash Payment, the Covered Parties released SKAT from any

claims that they may have had.  *Id.*, Exh. A at § 4(b).  The releases by SKAT of the Covered

Parties and by the Covered Parties of SKAT are *not* contingent upon payment of *any* amounts

after the Initial Cash Payment.  *Id.*, Exh. A at §§ 4(a), 4(b).

The Covered Parties complied with their obligations under the Settlement Agreement

with respect to the Initial Cash Payment of DKK 950 million.  *See* SKAT Countercl. ¶¶ 3, 46,

128, 151.  The payment and receipt of the Initial Cash Payment of DKK 950 million in

compliance with the Settlement Agreement and the releases that are triggered by the Initial Cash

Payment are not in dispute in this action.

---

[1] The Settlement Agreement does not provide for any mechanism by which to translate one currency into another.  Elsewhere in its Counterclaims, SKAT alleges that DKK 4 billion is the rough equivalent of USD 580 million.  SKAT Countercl. ¶ 124.  This translates into about 6.896 DKK/1 USD.  At this rate, DKK 950 million roughly equals about USD 134.77 million.

### 2. Payments Made In the Years After Execution of the Settlement Agreement

The second set of payments required by the Settlement Agreement is the "Subsequent Cash Payment Amount." *See* Levy Decl., Exh. A at §§ 1(dd), 2(d).

The Subsequent Cash Payment Amount consists of two components, specifically:

(a) an "Additional Cash Payment" of DKK 600 million; and

(b) the True-Up Amount, which was defined, in general, as the difference between: (i) the Net Proceeds that the Covered Parties received as a result of the conduct that SKAT alleged had occurred; and (ii) DKK 1.55 billion.

*See id.*, Exh. A at § 1(dd) (defining "Subsequent Cash Payment Amount"); *id.*, Exh. A at §§ 1(a), 2(b) (defining "Additional Cash Payment"); *id.*, Exh. A at §§ 1(ff), 2(e)(iii) (defining "True-Up Amount"), 2(e) (defining "Net Proceeds"), 2(f) (representation by Covered Parties' Designees that DKK 1.55 billion plus True-Up Amount equals or exceeds Net Proceeds received by the Covered Parties); SKAT Countercl. ¶ 51.

The True-Up Amount was merely a placeholder for additional money that SKAT might be paid if the Net Proceeds, as defined, were greater than DKK 1.55 billion. *See* Levy Decl., Exh. A at §§ 2(e)(ii), (iii); SKAT Countercl. ¶ 126. When the Covered Parties executed the Settlement Agreement, there was a possibility the True-Up Amount might be zero. *See* Levy Decl., Exh. A at §§ 2(e)(ii), 2(f); SKAT Countercl. ¶ 126. Indeed, the Settlement Agreement provides that, even if the Covered Parties had received less than DKK 1.55 billion, there would be *no* reduction to the requirement that SKAT be paid DKK 1.55 billion. *See* Levy Decl., Exh. A at § 2(e)(ii); SKAT Countercl. ¶ 126.

The Settlement Agreement provides for a process to calculate the True-Up Amount and, to that end, it requires that the Covered Parties provide information necessary to calculate the Net Proceeds. *See* Levy Decl., Exh. A at § 2(e); SKAT Countercl. ¶¶ 126, 153, 156. This is the "True-Up process." *See* Levy Decl., Exh. A at §§ 2(e), 10(a); SKAT Countercl. ¶¶ 156-57. "At

7

the end of this process, the Covered Parties' Designees shall provide and certify the accuracy of a final list of Net Proceeds received by each Covered Party with respect to each Pension Plan." *See* Levy Decl., Exh. A at § 2(e)(i).

The Settlement Agreement also provides a means of dispute resolution relating to this "True-Up process." *See id.*, Exh. A at §§ 10(a, c, e), 12; SKAT Countercl. ¶¶ 127, 154. Importantly, Section 10(e) provides that any dispute related to the True-Up process will not in any way "limit the remedies available to [SKAT] upon the occurrence of an Event of Default pursuant to Section 5." Levy Decl., Exh. A at §§ 10(e), 5(c). In turn, Section 5 provides one remedy: a Default for failure to make a required payment "authorized [SKAT to] file the Confession of Judgment and to seek and enforce the judgment that the Court enters." *Id.*, Exh. A at § 5(b) (providing for default if Covered Parties' Designees do not make a required payment after 10 days' notice), § 5(c) (authorizing filing of confession of judgment).

The Subsequent Cash Payment Amount was originally required to be paid within three years, that is, by May 28, 2022. *Id.*, Exh. A at § 2(d)(i). On May 28, 2019, Stein, Lhote, and McGee executed a letter agreement that supplemented and amended the terms of the Settlement Agreement (the "Letter Agreement"). A copy of the Letter Agreement is attached as Exhibit B to the Levy Declaration. In effect, the Letter Agreement extended the Final Settlement Payment Date from May 28, 2022, to May 28, 2023. *See* SKAT Countercl. ¶¶ 128, 152; Levy Decl., Exh. B at §§ 1, 6. Like the Settlement Agreement, the Letter Agreement is governed by New York law. Levy Decl., Exh. B at § 10; SKAT Countercl. ¶ 41.

SKAT alleges that, as of May 28, 2023, Stein, Lhote, and McGee have paid DKK 60,425,634 toward the Subsequent Cash Payment Amount. SKAT Countercl. ¶¶ 129, 168.

4853-9715-0821

### 3.    Summary of Payment Obligations Under the Settlement Agreement

A graphical summary of the payments due under the Settlement Agreement, with references to the applicable sections, as alleged by SKAT, is outlined below:

| | | |
|---|---|---|
| **Final Settlement Amount**<br><br>§ 1(q) | **Initial Cash Payment**<br><br>DKK 950,000,000<br><br>§§ 1(t), 2(a) | **At least DKK 500,000,000**<br><br>§ 2(a)(i) |
| | | **Remainder of the Initial Cash Payment**<br><br>§ 2(a)(ii) |
| | **Subsequent Cash Payment Amount**<br><br>§§ 1(dd), 2(d) | **Additional Cash Payment**<br><br>DKK 600,000,000<br><br>§§ 1(a), 2(b) |
| | | **True-Up Amount, If Any**<br><br>To be calculated based on Net Proceeds<br><br>§§ 1(ff), 2(e)(iii) |
| | | **Interest, If Any, On Unpaid Amount of Additional Cash Payment and True-Up Amount**<br><br>§§ 1(c), 2(d)(ii) |

## V.    The Affidavits of Confession of Judgment

### A.    The 2019 Affidavit of Confession of Judgment

"Simultaneously with the execution of the Initial Cash Payment, the Covered Parties' Designees," Stein, Lhote, and McGee, were required to "together provide an executed and notarized Affidavit of Confession of Judgment . . . to [SKAT] in the form attached [to the Settlement Agreement] as Exhibit 4."  Levy Decl., Exh. A at § 4(c) & Exh. 4; SKAT Countercl. ¶¶ 131, 172.  The purpose of the affidavit of confession of judgment was "to aid SKAT in enforcing the Settlement Agreement."  SKAT Countercl. ¶¶ 9, 47.

As set forth more fully below, *see* Section IV, *infra*, an affidavit of confession of judgment is a creature of New York law, specifically CPLR 3218.  A copy of CPLR 3218 is

9

attached as an appendix to this Memorandum of Law.  In general, the filing of an affidavit of confession of judgment that satisfies the requirements of CPLR 3218 permits a plaintiff to obtain "a judgment by confession" "without an action, either for money due or to become due, or to secure the plaintiff against a contingent liability in behalf of the defendant."  CPLR 3218(a).  As explained below, an affidavit of confession of judgment does not require a party to bring an action for breach of contract and, indeed, CPLR 3218 is a mechanism that is inconsistent with the bringing of an action for breach of contract.  Counsel has found no case in which a party holding an affidavit of confession of judgment *first* brought an action for breach of contract and *then* filed the affidavit of confession of judgment that it already had *after* the breach of contract action was resolved.  The whole point of an affidavit of confession of judgment is to obviate a separate contract action.  Nor has counsel found any case in which a party with an affidavit of confession of judgment filed a breach of contract action, took discovery as part of it, resolved the contract action, including the amount of damages, and then filed an affidavit of confession of judgment that it already had, but with the newly determined amount of damages filled in.  That too is to mix-and-match provisions of the CPLR that are inconsistent with each other.

Stein, Lhote, and McGee executed the affidavit of confession of judgment in the form attached as Exhibit 4 to the Settlement Agreement on May 28, 2019 (the "2019 Affidavit of Confession of Judgment").  SKAT Countercl. ¶ 48; Levy Decl., Exh. C; *see id*., Exh. A at Exh. 4.  A copy of the executed 2019 Affidavit of Confession of Judgment is attached as Exhibit C to the Levy Declaration.  The 2019 Affidavit of Confession of Judgment represents, among other things, that Lhote "resides in New York County," McGee "resides in Philadelphia County and

authorizes entry of this Confession of Judgment in New York County," and Stein "resides in New York County."  Levy Decl., Exh. C at ¶ 1.[2]

### B.      The 2021 Affidavit of Confession of Judgment

Section 4(c) of the Settlement Agreement provides that within ten business days of May 28, 2021, Stein, Lhote, and McGee would provide an *updated* affidavit of confession of judgment in the form attached as Exhibit 5 to the Settlement Agreement.  *See* Levy Decl., Exh. A at § 4(c) & Exh. 5; SKAT Countercl. ¶ 172.  The reason for this was obvious: CPLR 3218 provides that an affidavit of confession of judgment may only be filed "within three years after the affidavit is executed."  CPLR 3218(b).

As required by Section 4(c), Stein, Lhote, and McGee provided an updated and executed affidavit of confession of judgment to SKAT on or about June 9, 2021 (the "2021 Affidavit of Confession of Judgment").  SKAT Countercl. ¶¶ 78, 81, 172; Levy Decl., Exh. D.  A copy of the 2021 Affidavit of Confession of Judgment is attached as Exhibit D to the Levy Declaration.

The 2021 Affidavit of Confession of Judgment differs in one material respect from both the form updated affidavit of confession of judgment attached as Exhibit 5 to the Settlement Agreement and from the 2019 Affidavit of Confession of Judgment.  The 2021 Affidavit of

---

[2] A few months after Stein, Lhote, and McGee provided the 2019 Affidavit of Confession of Judgment, CPLR 3218 was amended, effective August 30, 2019, by the New York State Legislature to eliminate the ability of a non-resident of the State of New York to authorize the entry of judgment in any county in New York and the ability of a non-resident to designate a county in New York in which an affidavit of confession of judgment may be filed.  *See* Siegel, N.Y. Practice § 300 (6th ed. & Supp.); *see also* New York State Senate Bill S6395, Text, Sponsor's Statement, and Legislative History (https://www.nysenate.gov/legislation/bills/2019/S6395); New York State Senate Bill S6395, Mark-Up of Prior Version of CPLR 3218 Against Amended Version of CPLR 3218 (https://legislation.nysenate.gov/pdf/bills/2019/S6395); Pl. Compl. at ¶¶ 85-86.

CPLR 3218(a)(1) was again amended, effective April 30, 2022, to require that an affidavit of confession of judgment state "the interest rate for consumer debt."  New York State Senate Bill S5724-A (https://www.nysenate.gov/legislation/bills/2021/S5724).

4853-9715-0821

Confession of Judgment indicates that Lhote "resides in Orange County, Florida, and authorizes entry of this Confession of Judgment in New York County" and that McGee resides in Philadelphia County, Pennsylvania, and authorizes entry of this Confession of Judgment in New York County."  Levy Decl., Exh. D at ¶ 1; *id.*, Exh. A at Exh. 5; SKAT Countercl. ¶ 87.

At the time the 2021 Affidavit of Confession of Judgment was executed, June 2021, the Subsequent Cash Payment Amount for which the Covered Parties' Designees confessed judgment was not certain because the True-Up Amount was not yet determined.  *See* Levy Decl., Exh. A at § 2(e); *see* SKAT Countercl. ¶¶ 127, 156-67.  For the same reason, it was equally unknown what amount of interest would have accrued if Stein, Lhote, and McGee did not make the Subsequent Cash Payment Amount by May 28, 2023.  *See* Levy Decl., Exh. A at §§ 2(d), (e); SKAT Countercl. ¶¶ 128-29.  Even after SKAT and the Covered Parties participated in the True-Up process, the True-Up Amount and the corresponding interest, if any, are still uncertain and in dispute.  *See* SKAT Countercl. ¶¶ 155-67 (outlining SKAT's allegation of True-Up Amount, including amounts alleged to have been "improperly deducted" from Net Proceeds).

## VI.    SKAT's Limited Remedies for Failure to Make Payments Under the Settlement Agreement

The Settlement Agreement provides for various means by which Stein, Lhote, and McGee could be in default.  One such means was "if the Covered Parties' Designees do not make any payment as and when required by [the Settlement] Agreement."  Levy Decl., Exh. A at § 5(a); SKAT Countercl. ¶¶ 88, 169.  Upon the failure to make a required payment, SKAT must provide the Covered Parties' Designees with a Default Notice.  Levy Decl., Exh. A at § 5(b).  On the eleventh day after receipt by the Covered Parties' Designees of the Default Notice and if the Covered Parties' Designees had not cured the default, SKAT "shall be authorized to file the Confession of Judgment and to seek and enforce the judgment that the Court enters."  *Id.*, Exh. A at §§ 5(c), 11; SKAT Countercl. ¶¶ 169, 172; *see also* Levy Decl., Exh. A at § 4(c) (SKAT "may

12

file or otherwise execute upon a Confession of Judgment in any of the New York Courts only if

an Event of Default, as defined in Section 5, has occurred.").

The Settlement Agreement also explicitly limits the remedies available to SKAT for

failure by the Covered Parties' Designees to pay the remainder of the Final Settlement Amount,

if, as is indisputably the case, the Initial Cash Payment of DKK 950 million was timely

completed.  *See* Levy Decl., Exh. A at § 2(c); *see* SKAT Countercl. ¶¶ 3, 46, 128 ("Covered

Parties were obligated to (and did) pay DKK 950 million of the preliminary settlement amount

within a few months of the effective date of the [Settlement Agreement]").

Specifically, the Settlement Agreement provides that:

> In the event that the Covered Parties timely complete the Initial Cash
> Payment pursuant to Sections 2(a)(i) and 2(a)(ii), **then [SKAT's] sole
> remedy for the Covered Parties' failure to pay the remainder of the
> Final Settlement Amount shall be the filing of the Affidavit of
> Confessions of Judgment against the Covered Parties' Designees as set
> forth in Section 5(c).**

*See* Levy Decl., Exh. A at § 2(c) (emphasis added).  This provision is simple and unambiguous.

The Settlement Agreement provides SKAT with one remedy for a failure to pay the unpaid

portion of the Final Settlement Amount and one remedy alone: the filing of the 2021 Affidavit of

Confession of Judgment.  Stated another way, in the Settlement Agreement, SKAT bargained

away the right to bring an action for breach of contract and the right to seek breach of contract

damages.

It is important to note another way in which SKAT bargained away its rights to seek

remedies for failures to make payments required under the Settlement Agreement.  The payment

obligations of the Settlement Agreement run from the *Covered Parties* to SKAT.  *See* Levy

Decl., Exh. A at § 2 (providing that "Covered Parties shall pay or cause to be paid to [SKAT]"

DKK 1.55 billion).  The Covered Parties are the more than 50 other individuals and more than

100 pension plans, partnerships, and other entities that entered into the Settlement Agreement.

SKAT Countercl. ¶¶ 124, 149; Levy Decl., Exh. A at § 1(i) (defining "Covered Parties") & Exhs. 1-2.  It is this large group of people and entities, the Covered Parties, that are contractually required to make the payments required by the Settlement Agreement.

However, if this large group does not make the payments required by the Settlement Agreement and assuming that the Initial Cash Payment was made, which it was, SKAT limited its remedy to seeking payment from the *Covered Parties' Designees only*, that is, from Stein, Lhote, and McGee.  *See* Levy Decl., Exh. A at § 2(c) ("[SKAT]'s sole remedy for the *Covered Parties'* failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavit of Confessions of Judgment against the *Covered Parties' Designees* as set forth in Section 5(c)"); *see id.*, Exh. A at § 5(b-c) (if not cured, failure by Covered Parties' Designees to make a required payment authorizes filing of affidavit of confession of judgment).  In effect, upon receipt of the Initial Cash Payment by SKAT and the effectiveness of the mutual releases, SKAT agreed that it had *no* remedy against the Covered Parties for a failure to pay amounts after the Initial Cash Payment and could only proceed against the Covered Parties' Designees.  *Id.*, Exh. A at §§ 2(c), 4(a).

Stated another way, the Settlement Agreement requires *X* and *Y* to make payments, but SKAT agreed to enforce a remedy for any failure by *X* and *Y* to pay against *Y* only.  And even then, SKAT agreed to proceed against *Y* only by filing an affidavit of confession of judgment provided by *Y*.

## VII.   SKAT's Counterclaims

By its counterclaims, *see* SKAT Countercl. ¶¶ 174-87, SKAT seeks payment of the portion of the Final Settlement Amount that it alleges remains unpaid, specifically:

(a)   the unpaid amount of the Additional Cash Payment of DKK 600 million that it alleges to be approximately DKK 539.6 million;

(b)     the unpaid True-Up Amount that it alleges to be approximately DKK 108.6 million; and

(c)     interest on the amounts that it seeks and that it alleges to be approximately DKK 493.4 million.

*See* SKAT Countercl. ¶¶ 167, 168, 171, 173; Levy Decl., Exh. A at § 1(q) (defining Final Settlement Amount as sum of Preliminary Settlement Amount, True-Up Amount, and interest on Subsequent Cash Payment Amount).

Count One of SKAT's counterclaims alleges a breach of contract for failure to pay the Additional Cash Payment and interest on that amount.  SKAT contends that these amounts total DKK 950.3 million.  SKAT Countercl. ¶¶ 177-78.  Count Two alleges a breach of contract for failure to pay the True-Up Amount and interest on it.  *Id.* ¶¶ 184-86.  SKAT alleges that these amounts total DKK 191,262,064.  *Id.* ¶ 187.

As set forth below, if SKAT is to have a remedy for the alleged failure of Stein, Lhote, and McGee to pay these amounts, it is to be had only by moving to file the 2021 Affidavit of Confession of Judgment -- the *sole* remedy agreed to by the parties to the Settlement Agreement.  A remedy cannot be obtained by bringing a breach of contract action, taking discovery as to the amount of damages for breach of contract, obtaining a judgment, and *then* filing the 2021 Affidavit of Confession of Judgment.  A procedure of SKAT's own invention is inconsistent with New York law and the Settlement Agreement.

## **ARGUMENT**

### I.     **Relevant Legal Standards**

#### A.     **Standard on Motion to Dismiss Counterclaims**

In evaluating a motion to dismiss counterclaims, courts apply "the same standard as a motion to dismiss a complaint."  *Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021).  Counterclaims should be dismissed if they fail to include

"sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The factual matter may be from "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

While a counterclaimant's allegations must be accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "The primary objective in contract interpretation is to give effect to the intent of the contracting parties as revealed by the language they chose to use." *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 324 (S.D.N.Y. 2008) (internal citations and quotation marks omitted).  A court need not "accept as truth conflicting pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).  Because contract interpretation is generally a matter of law, it is "suitable for disposition on a motion to dismiss." *Even St. Prods.*, 643 F. Supp. 2d at 324 (internal citations and quotation marks omitted).

## B.   The Court's Obligation to Interpret the Settlement Agreement

"Under New York law the initial interpretation of a contract is a matter of law for the court to decide." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (internal citations and quotation marks omitted).  "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Id.*  If the contract's terms are clear and unambiguous, a court may dismiss a claim rooted in contractual interpretation at the Rule 12(b)(6) stage.  *See, e.g.*, *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008).

4853-9715-0821

When sophisticated parties "set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Assoc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990).  "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002).  A parties' intent is unambiguous if "a reasonably intelligent and objective person who considers the language in the context of the entire agreement" reaches one interpretation and "'there is no reasonable basis for a difference of opinion.'"  *CBS Broad. Inc. v. Jones*, 460 F. Supp. 2d 500, 504 (S.D.N.Y. 2006) (internal citations omitted).  When a contract is unambiguous, the court is "not constrained to accept the allegations of the pleading in respect to the construction of the contract" and must consider a contract's terms to determine whether "any set of facts" entitle the counterclaimant to relief. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

## II.  The "Sole Remedy" Provision of the Settlement Agreement Is Enforceable

The Settlement Agreement's terms are clear and unambiguous: SKAT's "sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavit of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c)."  Levy Decl., Exh. A at § 2(c); *id.*, Exh. A at § 5(c) (in event of Default, Default Date is 11th day thereafter; "On Default Date, [SKAT] shall be authorized to file the Confession of Judgment and to seek and enforce the judgment that the Court enters.").

"Sole remedy" provisions, such as the one that the parties to the Settlement Agreement bargained for, are fully enforceable under New York law and, indeed, are routinely enforced. They are enforced because "sole remedy" provisions are "sufficiently clear to establish that no other remedy was contemplated by the parties at the time the contract was formed, for purposes of that portion of the transaction."  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v.*

*Nomura Credit & Capital, Inc.*, 30 N.Y. 3d 572, 581-582, 586 (2017) (explaining that sole remedy "provisions represent the parties' [bargained-for] agreement on the allocation of risk" associated with a potential breach of the contract and holding "sole remedy" provision was enforceable and precluded general contract damages); *see Katzman v. Helen of Troy Texas Corp.*, 2013 WL 1496952, at *6 (S.D.N.Y. Apr. 11, 2013) (distinguishing situations where parties "expressly anticipated a particular form of breach . . . and agreed upon an exclusive remedy for that breach" from those in which a party "did not unmistakably manifest an intent" to limit its available remedy); *see generally Metropolitan Life Ins. Co. v. Noble Lowndes Intl.*, 84 N.Y.2d 430, 436 (1994) (in case involving contractual limitation on type of damages that non-breaching party could obtain, noting that "[p]arties sometimes make agreements and expressly provide that they shall not be enforceable at all, by any remedy legal or equitable.  They may later regret their assumption of the risks of non-performance in this manner; but the courts let them lie on the bed they made.") (quoting 5 Corbin, Contracts, § 1068, at 386).

In this case, the parties to the Settlement Agreement, including SKAT, were all represented by able counsel and the final text of the Settlement Agreement was the result of "extensive and good faith negotiations."  *See* Levy Decl., Exh. A at pp. 2, 19-29.  These factors confirm what the unambiguous language already demonstrates, *i.e.*, that the "sole remedy" provision in Section 2(c) is fully enforceable.  *Nomura*, 30 N.Y. 3d at 582 ("Contract terms providing for a 'sole remedy' are sufficiently clear to establish that no other remedy was contemplated by the parties at the time the contract was formed, for purposes of that portion of the transaction, 'especially when entered into at arm's length by sophisticated contracting parties.'") (citations omitted); *J. D'Addario & Co., Inc. v. Embassy Indus., Inc.*, 20 N.Y.3d 113, 116-18 (2012) (holding that "sole remedy" provision, negotiated at "arm's length" with each party represented by counsel, was enforceable); *CBS Broad.*, 460 F. Supp. 2d at 505 (dismissing

complaint for breach of contract damages because agreement provided only for termination of future payments, not additional damages).

## III.   The "Sole Remedy" Provision Is Unambiguous

The Settlement Agreement's terms are purposefully simple: SKAT's *sole* remedy available for a failure to pay any remaining part of the Final Settlement Amount is filing the 2021 Affidavit of Confession of Judgment.  *See* Levy Decl., Exh. A at § 2(c) ("In the event that the Covered Parties timely complete the Initial Cash Payment … then [SKAT's] **sole** remedy . . . shall be the filing of the Affidavit of Confession of Judgment against the Covered Parties' Designees."); *id.* at § 5(c) ("In the case of an Event of Default . . . [SKAT] shall be authorized to file the Confession of Judgment and to seek and enforce the judgment that the Court enters.").

As written, Sections 2(c) and 5(c) do not provide a basis for SKAT to seek any other remedy, nor does any set of facts under the Settlement Agreement entitle SKAT to bring breach of contract claims or receive contract damages in the event the Covered Parties' Designees fail to pay the remainder of the Final Settlement Amount.  *See Town of N. Hempstead v. Corona Realty Holding, LLC*, 182 N.Y.S.3d 235, 237 (2d Dep't 2023) (affirming dismissal of complaint because "sole remedy" provision did not entitle plaintiff to seek specific performance or to sue for damages); *Nomura*, 30 N.Y. 3d at 585 (enforcing "sole remedy" provision); *Citigroup Mortg. Loan Tr. 2007-AMC3 ex rel. US Bank, Nat Ass'n v. Citigroup Global Mkts. Realty Corp.*, 2014 WL 1329165, at *5 (S.D.N.Y. Mar. 31, 2014) (dismissing claim for damages for failure to state a claim because "sole remedy "provision "foreclosed" damages); *CBS Broad.*, 460 F. Supp. 2d at 505 (dismissing complaint for breach of contract damages because agreement did not provide for damages as a remedy); Levy Decl., Exh. A at §§ 2(c), 5(c) (limiting remedy for failure to pay to filing affidavit of confession of judgment).

It is fatal to SKAT's breach of contract claims that SKAT clearly contemplated the risk that the Covered Parties' Designees would not pay the remainder of the Final Settlement Amount and bargained for one specific form of relief in that event.  *CBS Broad*, 460 F. Supp. 2d at 505 (noting agreements that spell out a specific remedy in the case of a breach evidence a party's contemplation of that breach).  Both Sections 2(c) and 5(c) provide one sole remedy against the Covered Parties' Designees in the event the rest of the Final Settlement Amount was not paid.  Levy Decl., Exh. A at § 2(c) (providing remedy "[i]*n the event*" the *Covered Parties* complete the Initial Cash Payment); *id.*, Exh. A at § 5(c) (providing remedy in an Event of Default).  SKAT bargained away its right to bring breach of contract claims against, and to seek discovery and breach of contract damages from, the Covered Parties' Designees for the remainder of the Final Settlement Amount and cannot now circumvent its bargained-for remedy of filing the 2021 Affidavit of Confession of Judgment.  *See Nomura*, 30 N.Y. 3d at 584 (a party cannot "subvert" its sole remedy by "re-characterizing its claims").

Section 10's provisions about the True-Up process confirm that SKAT's sole remedy for a failure to pay the remainder of the Final Settlement Amount is the filing the 2021 Affidavit of Confession of Judgment.[3]  *See* Levy Decl., Exh. A § 10(a) (providing SKAT "may pursue the resolution" of a dispute relating to the True-Up Amount "through other available remedies" in a court of law); *see Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 372 (S.D.N.Y. 2022) (internal citations and quotations omitted) (noting the specific clause of a contract "qualifies the meaning of the general one").  Section 10(e)'s language states the dispute resolution mechanisms related to the True-Up process do not "limit the remedies available to SKAT . . . pursuant to Section 5."  *See* Levy Decl., Exh. A at § 10(e).  And Section 5 provides

---

[3] The True-Up process contemplates one factual issue: what is the True-Up Amount, if any.  *See* Levy Decl., Exh. A at §§ 10(a), 2(e).  Accordingly, no part of Section 10 contemplates breach of contract claims to recover the remainder of the Final Settlement Amount.

4853-9715-0821

for one remedy, and one remedy only -- filing the Affidavit of Confession of Judgment.  *See* Levy Decl., Exh. A at § 5(c); s*ee Wade Park*, 589 F. Supp. 3d at 372 (holding "specific language" rather than "general clause" governed the court's interpretation).  Section 10 confirms that Section 5 means what it was intended to mean.  "Sole remedy" means sole remedy.

Beyond the clear language of the Settlement Agreement, SKAT's breach of contract claims and request for contract damages defy the very purpose behind the parties' agreement to the mechanism of an affidavit of confession of judgment.  As drafted, the 2021 Affidavit of Confession of Judgment provides a single remedy for the *entire* remainder of the Final Settlement Amount.  *See* Levy Decl., Exh. E (Stein, Lhote, and McGee confessed judgment for the "Subsequent Cash Payment Amount, which is the sum of six hundred million (600,000,000) Danish Kroner and the True-Up Amount," less payments made plus interest).  If SKAT intended to have a remedy for each component separately, the Additional Cash Payment and True-Up Amount, SKAT could have bargained for a remedy for each amount in the event the Covered Parties' Designees failed to pay either or both of them.  *See CBS Broad*, 460 F. Supp. 2d at 505 (noting agreements may spell out a specific remedy in the case of a specific breach); Levy Decl., Exh. A at §§ 2(c), 5(c).  However, SKAT bargained for only one remedy and accordingly provided affidavits of confessions of judgment in specific forms attached to the Settlement Agreement.  *See* Levy Decl., Exh. A at Exhs. 4-5; Levy Decl., Exhs. C-D.  A sophisticated party like SKAT, represented by counsel during the negotiation and drafting of the Settlement Agreement and the affidavits of confession of judgment, was "'free to chart [its] own course'" when bargaining for a remedy; that course should now be honored and its claims for breach of contract and contract damages should be dismissed.  *J. D'Addario*, 20 N.Y.3d at 119 (quoting *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 54 (1996)).

21

**IV.     Bringing Breach of Contract Claims Is Not The Manner
         To Enforce An Affidavit of Confession of Judgment**

As a matter of practice and procedure, it is inconsistent with the purpose of an affidavit of confession of judgment and the Settlement Agreement for SKAT to file a breach of contract claim or, as SKAT also does, seek breach of contract damages.  SKAT Countercl. ¶¶ 123, 132, 188, 189; *see* Dillon, McKinney Practice Commentary, CPLR 3218 (2021) ("A judgment by confession is . . . a confession by a defendant of an amount owed to the plaintiff, which may be entered and enforced as a judgment.").  Indeed, counsel has found no case in which a party holding an affidavit of confession of judgment *first* brought an action for breach of contract and, *later on*, filed the affidavit of confession of judgment after the breach of contract action was resolved.  These two paths -- filing an affidavit of confession of judgment and bringing an action for breach of contract -- are entirely different, and purposefully so.

The purpose of an affidavit of confession of judgment "has been, and remains, simple": a judgment debtor confesses that it owes the creditor a sum certain and provides the creditor the right to enforce "a judgment in th[at] desired sum without the cost, time, delay, and uncertainty of litigation."  Dillon, McKinney's Practice Commentary, CPLR 3218 (2021).  The sum to which the debtor confesses, which must appear on the face of the affidavit, CPLR 3218(a)(1), is one reason why an affidavit of confession of judgment is an efficient mechanism.  There is never a need to take discovery as to the amount owed because the debtor has already confessed to the sum certain.  An affidavit of confession of judgment "is a wormhole that allows two distant locations to be quickly reached, one to the other" "*without the need for litigating the matter in between*."  *Id.* (emphasis added); *see* CPLR 3218(a) (providing that "judgment by confession may be entered, without an action . . . upon an affidavit executed by the defendant" that satisfies specified requirements).  In other words, breach of contract claims are *inconsistent* with the purpose of an affidavit of confession of judgment because a party that wins a breach of contract

4853-9715-0821

action can obtain a judgment by virtue of having prevailed in the action, whereas a party does not need to prevail in a contract action just to file an affidavit of confession of judgment that it already has.  *See* CPLR 3218(a) (allowing entry of judgment "without an action").  Stein, Lhote, McGee *and SKAT* bargained for the streamlined approach an affidavit of confession of judgment provides.  SKAT's attempt to expand its available remedies -- and create additional procedural and evidentiary hurdles -- is improper.

Although an affidavit of confession of judgment is a creature of New York State law, federal courts have the authority to determine the validity of them and enter judgment upon them if they conform to the requirements of CPLR 3218.  *Xerox Corp. v. West Coast Litho, Inc.*, 251 F. Supp. 3d 534, 537 (W.D.N.Y. 2017) (applying requirements under CPLR 3218 and noting "[j]udgment by confession is a product of state law, having no analog in the federal rules"); *see Mar. Grp. Co. v. Entrac, Inc.*, 2019 WL 2482376, at *2-3 (S.D.N.Y. June 13, 2019) (applying requirements under CPLR 3218); *Ream v. Berry-Hill Galleries, Inc.*, 2020 WL 5836437, at *4-5 (S.D.N.Y. Oct. 1, 2020) (declining to enforce unnotarized affidavit of confession of judgment because it did not conform to strict requirements of CPLR 3218).

Typically, a federal court will enforce an affidavit of confession of judgment where the federal court retained jurisdiction over a settlement agreement pursuant to which the affidavit of confession of judgment was executed.  *See, e.g.*, *Sapon v. Hanbat Rest., Inc.*, 2021 WL 621170, at *1-2 (S.D.N.Y. Feb. 16, 2021); *Mar. Grp. Co.*, 2019 WL 2482376, at *1.

If there is no pending action, as here, a party seeking to enforce an affidavit of confession of judgment in federal court files a new action seeking solely entry of the confession of judgment and, in the newly initiated action, immediately moves to file the affidavit of confession of judgment.  But bringing breach of contract claims is entirely inconsistent with enforcing an affidavit of confession of judgment.  *See Xerox*, 251 F. Supp. 3d 536 n.2 (noting that, if action

under which settlement agreement was executed was dismissed, new lawsuit would have to be filed to enforce agreement); CPLR 3218(b) (permitting entry of judgment by confession "without an action").  There is no case known to counsel that requires, or allows, a party to bring breach of contract claims in order to enforce an affidavit of confession of judgment.  *See generally Rodrigues v. Corona Advances, Inc.*, 2018 WL 4043149, at *2 (S.D.N.Y. Aug. 24, 2018) (federal courts "require the party seeking entry of a confessed judgment to make a motion or (if there is no extant action in which such a motion can be made) 'file[ ] a new lawsuit'" to invoke court's jurisdiction) (citing *Xerox*, 251 F. Supp. 3d at 536 n.2, 537 n.3).

When parties have filed a new action to enforce an affidavit of confession of judgment, they do so by initiating a new action to invoke the court's jurisdiction and then immediately moving to enforce the affidavit of confession of judgment *without* bringing breach of contract claims.  *See, e.g.*, *Darwiche v. Cedar Capital Mgmt. Grp., Inc.*, No. 17 Civ. 9154, Second Amended Complaint & Motion, (S.D.N.Y. Jan. 24, 2018) (seeking entry of affidavit of confession of judgment through separate action) (attached as Exh. E to Levy Decl.).

The court then evaluates the affidavit of confession of judgment under CPLR 3218 and, if it grants the motion to file it, directs the clerk to enter the affidavit of confession of judgment. *See Darwiche v. Cedar Capital Mgmt. Grp., Inc.*, No. 17 Civ. 9154, Order (S.D.N.Y. Feb. 27, 2018) (granting motion to enter affidavit of confession of judgment in newly initiated action seeking solely that relief) (attached as Exh. E to Levy Decl.).

Having bargained for a "sole remedy" of filing an affidavit of confession of judgment, what SKAT may not do is bring breach of contract claims to obtain a judgment *and then* file the affidavit of confession of judgment that it already has.  No case permits mixing and matching provisions of the CPLR.  And nothing should permit SKAT to read the "sole remedy" provision out of the Settlement Agreement.

24

4853-9715-0821

As a matter of New York practice and procedure, SKAT should not have brought breach of contract claims to request that this Court enter the 2021 Affidavit of Confession of Judgment. *See* CPLR 3218(b) (requiring entry by a clerk); *Rodrigues*, 2018 WL 4043149, at *2 (requiring filing of a motion).  And the Settlement Agreement does not permit bringing breach of contract claims to enforce the 2021 Affidavit of Confession of Judgment.  *See* Levy Decl., Exh. A at §§ 2(c), 5(c).  SKAT's choice of an affidavit of confession of judgment as its *sole* mechanism for relief took advantage of the procedural simplicity built into CPLR 3218 and promised all parties "a means to a quick, easy, and inexpensive end."  Dillon, McKinney Practice Commentary, CPLR 3218 (2021).  SKAT cannot now seek to circumvent that sole remedy by pursuing breach of contract claims to enforce the 2021 Affidavit of Confession of Judgment, including breach of contract claims by which they seek to determine the sum that should have been stated on the face of the 2021 Affidavit of Confession of Judgment.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Stein and Lhote's motion to dismiss SKAT's counterclaims.

Dated:  New York, New York
        July 13, 2023

Respectfully submitted,

McKool Smith P.C.

/s/

By: _____

Daniel W. Levy
dlevy@mckoolsmith.com
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York  10001-8603
Telephone: (212) 402-9400

*Attorneys for Plaintiffs-Counterclaim Defendants Matthew Stein and Jerome Lhote*

25

## <u>CERTIFICATE OF SERVICE</u>

DANIEL W. LEVY, pursuant to Title 28, United States Code, Section 1746, declares under the penalty of perjury:

1.      I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court.  I am principal in the law firm of McKool Smith P.C. and counsel of record for Matthew Stein and Jerome Lhote.

2.      On July 13, 2023, I caused a true and correct copy of the foregoing MEMORANDUM OF LAW, together with the appendix thereto, the accompanying DECLARATION OF DANIEL W. LEVY, together with the exhibits thereto, and the accompanying NOTICE OF MOTION to be served via ECF, with a courtesy copy by e-mail, upon the following attorneys, who are filing users in connection with the above-referenced case:

> William R. Maguire, Esq.
> Marc Alan Weinstein, Esq.
> Neil John Oxford, Esq.
> John Thomas McGoey, Esq.
> Dustin Philip Smith, Esq.
> Hughes Hubbard & Reed LLP
>
> *Attorneys for Defendant-Counterclaim
> Plaintiff Skatteforvaltningen*
>
> Robert H. Pees
> Anne M. Evans
> Ilana R. Roberts
> Akin Gump Strauss Hauer & Feld LLP

Daniel S. Newman
Justin Kaplan
Nelson Mullins Riley & Scarborough

*Attorneys for Counterclaim Defendant*
*Luke McGee*

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on July 13, 2023, at New York, New York.

/s/

_____

Daniel W. Levy

2

*Stein et al. v. Skatteforvaltningen*,
23 Civ. 2508 (NRB)

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COUNTERCLAIMS,
dated July 13, 2023

# Appendix

McKinney's Consolidated Laws of New York Annotated
  Civil Practice Law and Rules (Refs & Annos)
    Chapter Eight. Of the Consolidated Laws
      Article 32. Accelerated Judgment (Refs & Annos)

McKinney's CPLR § 3218

§ 3218. Judgment by confession

Effective: April 30, 2022
Currentness

**(a) Affidavit of defendant.** Except as provided in section thirty-two hundred one, a judgment by confession may be entered, without an action, either for money due or to become due, or to secure the plaintiff against a contingent liability in behalf of the defendant, or both, upon an affidavit executed by the defendant;

1. stating the sum for which judgment may be entered, authorizing the entry of judgment, stating the county where the defendant resides and, if applicable, stating that the interest rate for consumer debt pursuant to section five thousand four of this chapter applies;

2. if the judgment to be confessed is for money due or to become due, stating concisely the facts out of which the debt arose and showing that the sum confessed is justly due or to become due; and

3. if the judgment to be confessed is for the purpose of securing the plaintiff against a contingent liability, stating concisely the facts constituting the liability and showing that the sum confessed does not exceed the amount of the liability.

**(b) Entry of judgment.** At any time within three years after the affidavit is executed, it may be filed, but only with the clerk of the county where the defendant's affidavit stated that the defendant resided when it was executed or where the defendant resided at the time of filing. The clerk shall then enter a judgment in the supreme court for the sum confessed. The clerk shall tax costs in the amount of fifteen dollars, besides disbursements taxable in an action. The judgment may be docketed and enforced in the same manner and with the same effect as a judgment in an action

in the supreme court. No judgment by confession may be entered after the defendant's death. For purposes of this section, a non-natural person resides in any county where it has a place of business.

Notwithstanding any other provision of law to the contrary, a government agency engaged in the enforcement of civil or criminal law against a person or a non-natural person may file an affidavit in any county within the state.

**(c) Execution where the judgment is not all due.** Where the debt for which the judgment is entered is not all due, execution may be issued only for the sum which has become due. The execution shall be in the form prescribed for an execution upon a judgment for the full amount recovered, except that it shall direct the sheriff to collect only the sum due, stating the amount with interest and the costs of the judgment. Notwithstanding the issuance and collection of such an execution, the judgment shall remain in force as security for the sum or sums to become due after the execution is issued. When further sums become due, further executions may be issued in the same manner.

**(d) Confession by joint debtors.** One or more joint debtors may confess a judgment for a joint debt due or to become due. Where all the joint debtors do not unite in the confession, the judgment shall be entered and enforced against only those who confessed it and it is not a bar to an action against the other joint debtors upon the same demand.

**Credits**
(L.1962, c. 308. Amended L.1963, c. 311, § 2, eff. Sept. 1, 1963; L.2019, c. 214, § 1, eff. Aug. 30, 2019; L.2021, c. 831, § 3, eff. April 30, 2022.)

McKinney's CPLR § 3218, NY CPLR § 3218
Current through L.2022, chapters 1 to 841. Some statute sections may be more current, see credits for details.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   2