

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

BY ECF

Honorable Naomi Reice Buchwald    August 3, 2023
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:      *Stein et al. v. Skatteforvaltningen*, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

      We write on behalf of defendant-counterclaim plaintiff Skatteforvaltningen ("SKAT"), the Danish tax authority, pursuant to section 2.E.1 of the Court's Individual Practices, to outline the substantive arguments advanced in SKAT's contemporaneously filed memorandum of law in opposition to plaintiff-counterclaim defendants Matthew Stein and Jerome Lhote's motion to dismiss SKAT's counterclaims.[1] SKAT respectfully requests that the Court hear oral argument on counterclaim defendants' motion to dismiss.

**SKAT's claims arising from the parties' settlement agreement.**

      On May 28, 2019, the parties entered into an agreement to settle SKAT's claims that counterclaim defendants Stein, Lhote and McGee, along with numerous others they recruited to their scheme, defrauded SKAT of some 4 billion Danish Kroner ("DKK"), by submitting fraudulent tax refund claims to SKAT. A fundamental principle of the agreement was that the parties settling SKAT's claims (collectively, the "Covered Parties") would repay SKAT all of the "Net Proceeds" (as defined in the settlement agreement) that they had obtained from their fraud, in return for which they would avoid joint and several liability for fraudulent proceeds obtained by others, who were not party to the settlement. The agreement established a "Preliminary Settlement Amount" of DKK 1.55 billion Danish Kroner, as an estimate of the Covered Parties' Net Proceeds, payable in two tranches: an initial payment of DKK 950 million due shortly after the agreement was executed and an additional DKK 600 million payment due no later than May 28, 2023.

      To make sure that the Covered Parties repaid SKAT all their Net Proceeds, the parties further agreed on a true-up process, pursuant to which the Covered Parties would provide documents to establish their actual Net Proceeds. If, as came to pass, the true-up process established that their Net Proceeds exceeded the DKK 1.55 billion Preliminary Settlement

---

1. *See* Mot. to Dismiss Counterclaims, ECF Nos. 50-55. Counterclaim defendant Luke McGee also joined Stein and Lhote's motion to dismiss. *See* Joinder re: Mot. to Dismiss Counterclaims, ECF No. 56.

Amount, then the Covered Parties would owe SKAT a "True-Up Amount," to be paid as part of the "Final Settlement Amount." If the true-up process resulted in a dispute over DKK 20 million about the True-Up Amount, the agreement provides that the parties may pursue available remedies in this Court. The true-up process resulted in an approximately DKK 86 million dispute over the True-Up Amount.

The Covered Parties failed to pay SKAT the full Final Settlement Amount by the settlement agreement's May 28, 2023 payment deadline. In such circumstances, where the initial DKK 950 million payment was made (which it was), the agreement provides that counterclaim defendants Stein, Lhote, and McGee alone, and not the rest of the Covered Parties, are liable for the unpaid Final Settlement Amount, including interest previously accrued thereon, plus additional default interest. Consistent with these terms limiting liability to Stein, Lhote, and McGee for the amounts due under the settlement agreement, the agreement includes a "sole remedy" clause. The clause provides that in those circumstances, SKAT's "sole remedy" shall be filing in federal or state court in New York an affidavit of confession of judgment that Stein, Lhote, and McGee executed confessing judgment in the amount they owe SKAT under the settlement agreement, in which case SKAT is authorized to seek and enforce the judgment that the Court enters.

SKAT's breach of contract counterclaims seek to enforce the agreed-on true-up process to determine the True-Up Amount that the Covered Parties obtained from their fraud and agreed to repay SKAT, and a judgment against Stein, Lhote, and McGee in the amount to which they confessed and owe SKAT under the settlement agreement.

**SKAT's counterclaims are consistent
with federal practice and procedure and with the settlement agreement.**

Counterclaim defendants' arguments for dismissal of SKAT's breach of contract claims seeking a judgment based on their affidavits confessing judgment are meritless. In federal court, a party must commence an action before it applies to the Court for entry of a judgment by confession. Thus, SKAT asserted its breach of contract claims seeking a judgment based on Stein's, Lhote's, and McGee's confessions and, once the parties' dispute over the True-Up Amount is resolved, SKAT intends to move the Court for entry of judgment by confession. The motion to dismiss confuses the applicable procedure in arguing that SKAT's breach of contract claims are inconsistent with the purpose of the New York procedural rule in CPLR § 3218 that allows a party to seek entry of a judgment by confession without an action, a rule that does not apply to this federal court action.

Nor is there any substance to the argument that SKAT was required to plead some other unspecified claim. As the Court in *Xerox Corp. v. West Coast Litho, Inc.* noted, a party seeking a judgment by confession in federal court for amounts due under a settlement agreement should "file[] a new lawsuit . . . in order to enforce the settlement agreement," which is precisely what SKAT's breach of contract claims seek to do. 251 F. Supp. 3d 534, 536 n.2 (W.D.N.Y. 2017). SKAT's breach of contract claims are no different in substance than the claim pleaded in *Darwiche v. Cedar Capital Management Group, Inc.*, which Stein, Lhote, and McGee hold up as an example of what SKAT should have done.

Finally, the argument that SKAT's breach of contract claims seek to expand its available remedies is baseless. The settlement agreement explicitly provides that SKAT may seek available remedies in this Court to resolve the parties' dispute over the True-Up Amount, and that SKAT may seek entry of judgment by confession in this Court if the Covered Parties fail to pay the remainder of the Final Settlement Amount.

**The sole remedy provision does not preclude SKAT's claims.**

The argument for dismissal of SKAT's claims seeking breach of contract damages in the amount to which Stein, Lhote, and McGee confessed likewise fails. SKAT has proceeded exactly how the settlement agreement contemplated—by seeking a judgment in federal court based on their confessions of judgment. The sole remedy provision in the agreement limited the liability of the Covered Parties for failing to pay the full Final Settlement Amount to just Stein, Lhote, and McGee, the three principal settling parties, and to the amount to which they confessed judgment—it did not, as counterclaim defendants argue, wed SKAT to a particular procedural path to obtain that judgment. Thus, the sole remedy provision provides that if the Covered Parties pay the initial DKK 950 million, then SKAT's "sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavits of Confessions of Judgment against the Covered Parties' Designees." Consistent with the sole remedy provision, SKAT's claims seek relief only against the three principal settling parties and only for the amount confessed, nothing more.

Whether judgment is entered against counterclaim defendants by filing the confession in state court or by filing a claim in federal court based upon the confession makes no material difference, and the settlement agreement expressly permits either procedural path. Counterclaim defendants' contrary interpretation, under which the parties intended SKAT to have no remedy at all for the Covered Parties' breach if the judgments by confession could not, for whatever reason, be entered in New York state court is contrary to the stated fundamental principle of the agreement that the Covered Parties would repay SKAT all the money they obtained from it by their fraudulent claims.

\* \* \*

SKAT's opposition provides two additional arguments why the motion should be denied: (i) even if the Court were to accept the motion's misinterpretation of the sole remedy clause, that would only mean that dismissal would be at best premature until the Court has an opportunity to determine whether that interpretation would cause the entire settlement to fail in its essential purpose; and (ii) SKAT's entitlement to default interest under the settlement provides yet a further reason to deny the motion to dismiss SKAT's claims.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

cc: all counsel of record (via ECF)