**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MATTHEW STEIN and JEROME LHOTE,

   Plaintiffs/Counterclaim-Defendants,

*v.*

SKATTEFORVALTNINGEN,

   Defendant/Counterclaim-Plaintiff,

*v.*

LUKE MCGEE

      Counterclaim-Defendant.

No. 23-CV-02508 (NRB)

**ORAL ARGUMENT REQUESTED**

---

**COUNTERCLAIM PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF
LAW IN OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Defendant / Counterclaim
Plaintiff Skatteforvaltningen*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................6

LEGAL STANDARD............................................................................................................12

ARGUMENT ........................................................................................................................12

I.   SKAT's Counterclaims Seeking Entry of the Confessed Judgment Are
     Consistent with the Federal Rules of Civil Procedure and the Settlement
     Agreement..................................................................................................................12

II.  The Sole Remedy Provision Does Not Preclude SKAT From Seeking Breach of
     Contract Damages For the Amount That Counterclaim Defendants Confessed. ..............18

III. The Sole Remedy Provision Would Be Unenforceable If the Confession of
     Judgment Were Invalid. .............................................................................................22

IV.  Counterclaim Defendants Make No Argument for Dismissing SKAT's Claims for
     the Default Interest Owed under Section 5(d)(iii) of the Settlement Agreement. .............24

CONCLUSION......................................................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACE Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543 (S.D.N.Y. 2014) ....................................................24

*Alland v. Consumers Credit Corp.*, 476 F.2d 951 (2d Cir. 1973)............................................12, 13

*Alland v. Consumers Credit Corp.*, 54 F.R.D. 252 (S.D.N.Y. 1971) ...........................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................12

*CBS Broad. Inc. v. Jones*, 460 F. Supp. 2d 500 (S.D.N.Y. 2006) .................................................21

*Citigroup Mortg. Loan Trust 2007-AMC3 v. Citigroup Glob. Mkts. Realty Corp.*, No. 13 Civ. 2843(GBD), 2014 WL 1329165 (S.D.N.Y. Mar. 31, 2014) ..............................21

*Deutsche Alt-A Secs. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods, Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013) ....................................................23

*Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 289 F. Supp. 3d 484 (S.D.N.Y. 2018)........................................................................23

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168 (2d Cir. 2004)................................................................................................16

*Express Trade Cap. v. Horowitz*, 198 A.D.3d 529 (1st Dep't 2021)............................................20

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) .........................................................12

*GEM Holdco, LLC v. RDX Tech. Corp.*, No. 653694/2015, 2017 WL 1281811 (Sup. Ct. N.Y. Cty. Apr. 6, 2017) ....................................................................................23

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274 (2d Cir. 1989)....................................18

*J. D'Addario & Co. v. Embassy Indus., Inc.*, 20 N.Y.3d 113 (2012) ...........................................21

*Jiras v. McKay*, 202 A.D.2d 640 (2d Dep't 1994)........................................................................20

*Katzman v. Helen of Troy Texas Corp.*, No. 12 Civ. 4220(PAE), 2013 WL 1496952 (S.D.N.Y. Apr. 11, 2013).................................................................................20

*Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133 (2d Cir. 2000) ................................................18

*Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11 CIV. 8440(PAC), 2012 WL 3822624 (S.D.N.Y. Sept. 4, 2012)...............................................................................19

*MASTR Adjustable Rate Mortg. Trust 2006-OA2 v. UBS Real Estate Secs. Inc.*,
No. 12 Civ. 7322(HB), 2013 WL 4399210 (S.D.N.Y. Aug. 15, 2013) ............................23, 24

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430 (1994) ....................21

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap.,
Inc.*, 133 A.D.3d 96 (1st Dep't 2015) ........................................................................23

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap.,
Inc.*, 30 N.Y.3d 572 (2017) ...............................................................................20, 21

*Orix Real Estate Cap. Mkts., LLC v. Superior Bank, FSB*, 127 F. Supp. 2d 981
(N.D. Ill. 2000) .................................................................................................22, 23

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) ...............................18

*Ray v. Ray*, 61 A.D.3d 442 (1st Dep't 2009) ...............................................14

*Ray v. Ray*, No. 604381/98, 2013 WL 3810124 (Sup. Ct. N.Y. Cty. July 15, 2013) ...................14

*Rodrigues v. Corona Advances, Inc.*, No. 15-CV-6815 (BCM), 2018 WL 4043149
(S.D.N.Y. Aug. 24, 2018) .............................................................................12, 13

*Speedfit LLC v. Woodway USA, Inc.*, No. 22-CV-4733 (CS), 2022 WL 17167985
(S.D.N.Y. Nov. 22, 2022) .................................................................................16

*Thurston v. Flyfit Holdings, LLC*, No. 18 Civ. 9044 (PAE) (SN), 2020 WL
2904065 (S.D.N.Y. June 3, 2020) ........................................................................13

*Town of N. Hempstead v. Corona Realty Holding, LLC*, 212 A.D.3d 863 (2d
Dep't 2023) .....................................................................................................21

*Tr. of United Plant & Prod. Workers Local 175 Benefits Fund v. Hudson Hills
Contracting, LLC*, No. 18-CV-2706 (JMA)(AYS), 2020 WL 8513504
(E.D.N.Y. Dec. 29, 2020) ...................................................................................14

*United Ass'n of Plumbers & Steamfitters Local No. 22 v. H & M Plumbing*, No.
14-CV-070S, 2015 WL 1735117 (W.D.N.Y. Apr. 16, 2015)..................................14

*Varbero v. Belesis*, No. 20-cv-2538 (LJL), 2020 WL 5849516 (S.D.N.Y. Oct. 1,
2020) .............................................................................................................14

*Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335 (S.D.N.Y.
2022) .............................................................................................................16

*Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352 (2003)............................16, 17

*Xerox Corp. v. W. Coast Litho, Inc.*, 251 F. Supp. 3d 534 (W.D.N.Y. 2017) ........................13, 20

*Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168 (S.D.N.Y. 2021) ....................................12

**Statutes and Rules**

CPLR § 3218.................................................................................................................. *passim*

U.C.C. § 2-719(2) .........................................................................................................22

**Other Authorities**

Hon. Mark C. Dillon, McKinney's Practice Commentary, CPLR 3218 (2021)......................14, 15

Defendant-counterclaim plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to plaintiff-counterclaim defendants Matthew Stein and Jerome Lhote's motion to dismiss SKAT's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6), in which counterclaim defendant Luke McGee joins.[1]

## PRELIMINARY STATEMENT

Stein, Lhote, and McGee perpetrated a massive fraud on SKAT, the Danish tax authority, for which they are facing a criminal trial in Denmark.  (Compl. ¶¶ 25-35, 73-75.)[2]  They defrauded SKAT of approximately $580 million in purported refunds of tax by submitting false tax refund claims through entities they controlled, falsely representing that their entities owned large amounts of shares in Danish public companies, and that a refundable withholding tax had been paid on dividends on those shares.  Stein, Lhote, and McGee settled SKAT's civil claims by undertaking to repay everything that they and numerous others whom they had recruited into the scheme (collectively defined in the settlement agreement as the "Covered Parties") obtained from their false claims to SKAT.  But, as the May 28, 2023 deadline to finish paying the "Final Settlement Amount" approached, plaintiffs Stein and Lhote commenced this action, seeking to evade making the remaining settlement payment—over $100 million at today's exchange rate, not counting interest—with spurious claims that SKAT had breached the settlement, and that the settlement agreement somehow denied SKAT any remedy for their failure to repay SKAT the remaining proceeds of their false claims.

---

1.   *See* Mot. to Dismiss Counterclaims, ECF Nos. 50-55; Joinder re: Mot. to Dismiss Counterclaims, ECF No. 56.

2.   Citations to "Compl. ¶ __" are to plaintiffs Stein and Lhote's March 24, 2023 Complaint (ECF No. 11).

SKAT counterclaimed to recover a judgment for the unpaid portion of the Final Settlement Amount plus default interest, and joined in the counterclaims McGee, who, like Stein and Lhote, has failed to pay the full Final Settlement Amount.  SKAT's counterclaims seek to:

(i)     enforce a process provided for under the settlement agreement to determine all the proceeds that the Covered Parties obtained from the false claims they submitted to SKAT, which amount Stein, Lhote, and McGee are responsible to pay SKAT (the "True-Up process"); and

(ii)    obtain a judgment against Stein, Lhote, and McGee based on their confession of judgment for the unpaid portion of the Final Settlement Amount plus default interest.

The motion to dismiss SKAT's contract claims is baseless.  There is nothing procedurally improper about SKAT's contract counterclaims.  Nothing in the settlement agreement deprives SKAT of its rights to enforce the settlement agreement by seeking and obtaining the judgment that Stein, Lhote, and McGee each confessed for the unpaid Final Settlement Amount and default interest or, alternatively, a judgment for precisely the same amount as required in their confession of judgment.  The motion's convoluted arguments aim not to effectuate the parties' settlement agreement, but to frustrate the fundamental principle on which the agreement was based, which was for the settling parties to repay the proceeds they obtained from their false claims to SKAT.  SKAT's contract claims simply seek what the parties' settlement expressly provides for—a true-up of precisely what the Covered Parties obtained from the false claims they made to SKAT, and a judgment for the remaining unpaid Final Settlement Amount (whether a confessed judgment or a judgment for breach of contract), and for default interest.

First, the motion provides no basis to dismiss SKAT's counterclaim to determine what Stein, Lhote, and McGee owe SKAT under the settlement agreement.  The agreement expressly provides for the True-Up process to determine the "True-Up Amount" that Stein, Lhote, and McGee owe SKAT.  SKAT claims that the True-Up process showed that the Covered Parties owe SKAT a True-Up Amount of 108 million Danish Kroner ("DKK"), but Stein, Lhote, and now McGee dispute all but DKK 26 million, which raises a DKK 82 million dispute about the True-Up Amount.  Where a dispute over the True-Up Amount exceeds DKK 20 million, the settlement agreement provides that (failing a mutual agreement to arbitrate) SKAT "may pursue the resolution of such matter through other available remedies in" this Court, which is precisely what SKAT's true-up counterclaim seeks.  (Settlement Agreement §10(a).)[3]  Thus, the pending motion provides no basis to dismiss contract claims to enforce a True-Up process that the parties' settlement agreement expressly contemplates.

Second, nor does the motion provide any colorable basis to dismiss SKAT's claims for a confessed judgment against Stein, Lhote, and McGee for the Final Settlement Amount (plus default interest), or alternatively, a judgment for breach of contract in the amount they owe SKAT (*i.e.*, the same amount as reflected in the confession of judgment).  In June 2021, Stein, Lhote, and McGee executed an affidavit confessing judgment in SKAT's favor for the unpaid amounts due under the settlement agreement.  Sections 4(c) and 5(c) of the settlement agreement authorize SKAT to file the confessions of judgment in this Court in the event of a breach of their agreement to pay SKAT.

---

3.   The settlement agreement is attached as Exhibit A to the Declaration of Daniel W. Levy, dated July 13, 2023 (the "Levy Decl.," ECF Nos. 51-53).

In New York State courts, the CPLR permits a person to obtain a judgment by submitting a confession of judgment to a court clerk without commencing an action.  Federal courts require a party seeking entry of a confession of judgment to first file an action, if one is not already pending, and to move the Court for entry of the confessed judgment.  That is exactly what SKAT has done by filing its counterclaims.  SKAT asserted its breach of contract claims against the counterclaim defendants, seeking as a primary remedy a confessed judgment against Stein, Lhote, and McGee.  And after obtaining a determination of the True-Up Amount, SKAT intends to move the Court for entry of the confessed judgment.  The moving parties cite no case or other authority supporting their contention that a party cannot plead a breach of contract claim for the purpose of seeking entry of a judgment based upon a confession of judgment.  And their claim that there is no precedent for SKAT's approach is belied by the cases cited in their own motion.

Worse, in an attempt to keep their ill-gotten gains, Stein, Lhote, and McGee ask the Court to misinterpret a sole remedy provision in the settlement agreement as somehow precluding SKAT from pursuing them for their failure to pay what they owe SKAT other than by filing their confessions of judgment in a particular way.  This specious argument is a predicate for a further ruse, set forth in their Complaint, in which they seek a finding that their confessions of judgment are somehow unenforceable.  The aim of all these convoluted arguments is nothing less than to seek this Court's sanction for Stein, Lhote, and McGee to keep the remaining over $100 million proceeds of their fraud plus the accrued and default interest they owe, and to violate the mutual understanding and the fundamental principle of the settlement, which was that they would repay SKAT every Kroner that they bilked from it.

Of course, the sole remedy provision of the settlement agreement does not deprive SKAT of its ability to recover what is due under the settlement agreement.  The purpose of the sole

remedy and related provisions was to effectuate the parties' agreement that, if the over 100 Covered Parties made an initial DKK 950 million payment, which they did, then the Covered Parties would no longer face liability for SKAT's underlying fraud and other claims, and the three principals Stein, Lhote, and McGee alone would be liable for the Covered Parties' failure to pay the remainder of the Final Settlement Amount.  The agreement further specified the damages that SKAT would be entitled to in those circumstances—the unpaid portion of the Final Settlement Amount plus interest—and required Stein, Lhote, and McGee to confess judgment in that amount.  Consistent with the agreement's limitations on the parties who would be liable and the amounts for which they would be liable if the remaining settlement payments were not made on time, the agreement provides that if the initial DKK 950 million is paid, SKAT's "sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of" Stein, Lhote, and McGee's confessions of judgment.  (Settlement Agreement §2(c).)  And the Agreement expressly provides that SKAT is fully authorized "to seek and enforce the judgment that the Court enters."  (*Id.* §5(c).)  SKAT's counterclaims seek to do precisely that—to seek a judgment based on Stein's, Lhote's, and McGee's admitted liability under their settlement and their confessions of judgment.  Thus, SKAT's claims for breach of contract damages ask for the precise remedy provided for in the agreement: a confessed judgment or, alternatively, a judgment against Stein, Lhote, and McGee in the same amount to which they confessed judgment, and that SKAT is entitled to for their breach of the agreement.

In any event, the moving parties' argument that they can escape their agreement to repay their ill-gotten gains is too cute by half.  Even supposing, for purposes of their motion to dismiss, that their confessions of judgment were invalid, as they contend, then the sole remedy provision in the settlement agreement would be unenforceable because it would fail of its essential purpose

and Stein, Lhote, and McGee would suffer no prejudice from entry of a judgment in the same amount to which they confessed.

Finally, although Stein, Lhote, and McGee seek to dismiss outright SKAT's contract claims in full, they fail to make any argument for dismissal of SKAT's claims seeking approximately DKK 386 million, or approximately $56 million at today's exchange rate, in damages, for counterclaim defendants' failure to pay the additional default interest they owe SKAT.  The settlement agreement provides that filing the confession of judgment is SKAT's "sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount," but the default interest that Stein, Lhote, and McGee owe SKAT on that amount is not part of the Final Settlement Amount.  Thus, even their mangled interpretation of the sole remedy provision does not save them from SKAT's contract claims for damages for the default interest. Accordingly, the default interest provisions of the parties' settlement agreement provide yet another reason why SKAT's contract claims should not be dismissed.

## STATEMENT OF FACTS

On May 28, 2019, SKAT and the Covered Parties, including Stein, Lhote, and McGee, entered into the settlement agreement to resolve SKAT's claims against the Covered Parties arising from certain fraudulent tax refund claims submitted to SKAT.  (Counterclaims ¶ 149.)[4] The Covered Parties included over 50 other individuals recruited by Stein, Lhote, and McGee and over 100 entities formed to participate in the fraud.  (*Id.*)

---

4.  Citations to "Counterclaims ¶ __" are to SKAT's June 15, 2023 First Amended Answer, Affirmative Defenses & Counterclaims (ECF No. 48).

**The Covered Parties' payment obligations under the settlement agreement.**

A "fundamental principle" of the agreement is that, under its terms, the Covered Parties would pay to SKAT all of the "Net Proceeds" they received from SKAT's payments of the fraudulent tax refund claims.  (Settlement Agreement Recital F.)[5]  Since the full amount of the Net Proceeds was uncertain at the time of the agreement, the parties agreed on a "Preliminary Settlement Amount" of DKK 1.55 billion as an estimate of the Covered Parties' Net Proceeds and a "Final Settlement Amount" to be determined based, in part, on a True-Up process to establish the amount of their actual Net Proceeds.  (Counterclaims ¶ 151; Settlement Agreement §§ 1(q), 1(y), 2(e)(i).)  If, as subsequently happened, the True-Up process established that the Covered Parties' Net Proceeds were more than the DKK 1.55 billion Preliminary Settlement Amount, then the Covered Parties would owe SKAT a True-Up Amount equal to the difference between the Net Proceeds and the Preliminary Settlement Amount that would be included in the Final Settlement Amount.  (Counterclaims ¶¶ 153, 155-67; Settlement Agreement § 2(e)(iii).)

The Covered Parties were obligated to pay SKAT the Preliminary Settlement Amount in two tranches: an "Initial Cash Payment" of DKK 950 million due within a few months and a DKK 600 million "Additional Cash Payment" due as payment deadlines set forth in the settlement agreement and contemporaneously executed letter agreement occurred.  (Settlement Agreement §§ 2(a)(i), 2(a)(ii), 2(b); Letter Agreement § 5.)[6]  The agreement defined this Additional Cash Payment plus the True-Up Amount as the "Subsequent Cash Payment Amount" and obligated the Covered Parties to pay the entire Subsequent Cash Payment Amount by the

---

5.   The Covered Parties' Net Proceeds is defined in the agreement as: "(A) Gross Reclaims," *i.e.*, SKAT's payments, "less (B) all of the Covered Parties' expenses associated with Reclaim Applications for which [SKAT] made payments . . . and less (C) any other portion of Gross Reclaims received by parties excluded from the releasees as set forth in Section 4" of the agreement "that were not otherwise subsequently provided to any Covered Party."  (Settlement Agreement § 2(e).)

6.   The letter agreement is attached as Exhibit B to the Levy Declaration.

May 28, 2023 "Final Settlement Payment Date," as subsequently extended under the terms of the letter agreement.  (Settlement Agreement §§ 1(dd), 1(r), 2(d); Letter Agreement § 6.)

In the event that, as came to pass, the Subsequent Cash Payment Amount was not paid in full by May 28, 2021, under section 2(d)(ii) of the agreement, interest on the unpaid amount would accrue and be included in the Final Settlement Amount due to be paid no later than the May 28, 2023 Final Settlement Payment Date.  (Settlement Agreement §§ 2(d)(ii), 1(c), 1(q).)  Thus, the Final Settlement Amount is the sum of the (i) DKK 1.55 billion Preliminary Settlement Amount; (ii) True-Up Amount; and (iii) interest accrued on any unpaid amount of the Subsequent Cash Payment Amount under section 2(d)(ii) of the agreement.  (*Id.* § 1(q).)

**The True-Up dispute.**

Under section 2(e)(i) of the agreement, the Covered Parties agreed to use "best efforts" to provide SKAT with documents sufficient to establish their Net Proceeds.  (*Id.* § 2(e)(i).)  By their own admission, the materials the Covered Parties provided to SKAT showed that their Net Proceeds were DKK 1,576,008,293, *i.e.*, DKK 26,008,293 more than the DKK 1.55 billion Preliminary Settlement Amount.  (Counterclaims ¶ 156.)  SKAT's review of the Covered Parties' documents showed that the Covered Parties' Net Proceeds were higher by an additional DKK 82,594,781, which counterclaim defendants dispute, resulting in a True-Up Amount of DKK 108,603,074.  (*Id.* ¶¶ 157-67.)

Section 10(a) of the agreement includes a dispute resolution clause for the True-Up process.  In particular, the parties agreed to arbitrate "any claim, controversy or dispute that amounts to less than" DKK 20 million "arising out of or relating to the True-Up process as described in Section 2(e), including, without limitation, the calculation of Net Proceeds."  (Settlement Agreement § 10(a).)  For any "claim, controversy or dispute" that "exceeds"

DKK 20 million, the parties agreed that such a dispute could be submitted to an arbitrator by "mutual agreement," or failing such mutual agreement, "any Party may pursue resolution of such matter through other available remedies in a Selected Court," which the agreement defined to include this Court.  (*Id.* §§ 10(a), 12.)

**The Covered Parties breached the settlement agreement.**

By the May 28, 2023 Final Settlement Payment Date, the Covered Parties had paid SKAT only DKK 60,425,634 of the DKK 708,603,074 Subsequent Cash Payment Amount, comprised of the DKK 600 million Additional Cash Payment and the DKK 108,603,074 True-Up Amount.  (Counterclaims ¶ 168.)  Further, the Covered Parties failed to pay SKAT any of the DKK 104,381,310 in interest accrued under section 2(d)(ii).  (*Id.*)  As such, on May 29, 2023, pursuant to section 5(a) of the agreement, SKAT provided counterclaim defendants Stein, Lhote, and McGee, as the "Covered Parties' Designees," written notice of the breach and a ten-business day opportunity to cure, which expired on June 13, 2023, with the Covered Parties having made no further payment.  (*Id.* ¶ 169.)

**The Covered Parties' Designees' obligations to SKAT as a result of the breach.**

Under section 5(b) of the agreement, the failure of the Covered Parties' Designees, *i.e.*, Stein, Lhote, and McGee, to cure the Covered Parties' breach within the cure period constituted an "Event of Default."  (Settlement Agreement § 5(b).)  Under section 5(d) of the agreement, in such an Event of Default, Stein, Lhote, and McGee, as the Covered Parties' Designees, but not the rest of the Covered Parties, were "required to pay [SKAT] an amount equivalent to:" (i) the "unpaid portion of the Subsequent Cash Payment Amount as of the Default Date;" plus (ii) the interest "owed pursuant to Section 2(d)(ii)" covering the period from May 28, 2021 onward; plus (iii) additional default interest "on the unpaid amount of the Subsequent Cash Payment Amount

as of the Default Date, for the period starting January 1, 2014 and running until the earlier of the
Default Date" or May 28 2021.  (*Id.* § 5(d).)  As such, on top of the remaining unpaid portion of
the Final Settlement Amount, Stein, Lhote, and McGee owe SKAT additional default interest on
the DKK 648,177,440 unpaid portion of the Subsequent Cash Payment Amount, covering the
period from January 1, 2014 to May 28, 2021, which additional interest totals DKK 386,548,164.
(Counterclaims ¶ 170; Settlement Agreement §§ 5(d), 1(c).)

**The confession of judgment.**

Under the settlement agreement, Stein, Lhote, and McGee were required to provide
SKAT an affidavit of confession of judgment at the time of the DKK 950 million Initial Cash
Payment and an updated confession of judgment approximately two years later.  (Settlement
Agreement § 4(c).)  In accordance therewith, Stein, Lhote, and McGee provided to SKAT an
updated confession of judgment executed by Lhote on June 9, 2021, and by Stein and McGee on
June 10, 2021.  (Counterclaims ¶ 172; *see also* Confession of Judgment.)[7]

In the June 2021 confession of judgment, Stein, Lhote, and McGee authorized entry of
judgment against themselves jointly and severally and in favor of SKAT in the amount they were
required to pay SKAT in case of an Event of Default under section 5(d) of the agreement: (a) the
Subsequent Cash Payment Amount, comprised of the DKK 600 million Additional Cash
Payment and the True-Up Amount determined pursuant to section 2(e)(iii) of the agreement,
(b) less any payments of the Subsequent Cash Payment Amount through the default date, (c) plus
interest accrued under section 2(d)(ii) of the agreement, (d) plus default interest accrued pursuant
to section 5(d)(iii) of the agreement.  (Counterclaims ¶ 173; Confession of Judgment ¶ 2.)  Stein,
Lhote, and McGee further agreed that the judgment amount would be set forth in an affidavit or

---

7.   The June 2021 confession of judgment is attached as Exhibit D to the Levy Declaration.

affirmation by SKAT or its attorney, respectively, attached to the confession of judgment at the time of entry.  (Confession of Judgment ¶ 3.)  Under sections 4(c) and 5(c) of the agreement, SKAT is authorized to file the confession of judgment in this Court based on the Covered Parties' breach of their payment obligations under the agreement.  (Settlement Agreement §§ 4(c), 5(c), 12.)

**The sole remedy provision.**

In section 2(c) of the agreement, SKAT agreed that if the Covered Parties timely paid SKAT the DKK 950 million Initial Cash Payment, but subsequently failed to pay the remainder of the Final Settlement Amount, then SKAT's "sole remedy . . . shall be the filing of the Affidavit of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c)."  (*Id.* § 2(c).)

**SKAT's counterclaims.**

On March 24, 2023, a little over three months before the May 28, 2023 Final Settlement Payment Date, Stein and Lhote commenced this action seeking partial rescission of the settlement agreement and a declaratory judgment that the June 2021 confession of judgment they (and McGee) executed is invalid.  (*See generally* Compl.)  On June 15, 2023, SKAT filed its operative responsive pleading, denying Stein and Lhote's allegations that SKAT breached the agreement and asserting breach of contract counterclaims against Stein, Lhote, and McGee for the Covered Parties' failure to pay the Final Settlement Amount and their additional failure to pay the default interest owed under section 5(d)(iii) of the agreement.  (*See generally* Counterclaims.)  In its prayer for relief, SKAT seeks a judgment based on Stein, Lhote, and McGee's June 2021 confession of judgment, or in the alternative, breach of contract damages for

11

DKK 1,141,537,135, *i.e.*, the same amount to which counterclaim defendants confessed. (Counterclaims ¶¶ 188-89.)

## LEGAL STANDARD

"In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint." *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021). Thus, on a Rule 12(b)(6) motion to dismiss, all the counterclaim's factual allegations are accepted as true and all reasonable inferences are drawn in the counterclaim plaintiff's favor. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000). A counterclaim should not be dismissed if it contains sufficient factual allegations that, "accepted as true, state a claim" for "relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

## ARGUMENT

### I. SKAT's Counterclaims Seeking Entry of the Confessed Judgment Are Consistent with the Federal Rules of Civil Procedure and the Settlement Agreement.

The argument that SKAT's breach of contract claims seeking entry of the June 2021 confessed judgment should be dismissed relies on New York procedural law that does not apply in federal court and ignores the relevant terms of the settlement agreement. (Defs. Br. 22-25.)

<u>First</u>, "entry of a confessed judgment is a matter of procedure where the federal rules," not the CPLR, "govern for purposes of *Erie*." *Alland v. Consumers Credit Corp.*, 476 F.2d 951, 954 (2d Cir. 1973) (internal quotation omitted; emphasis removed). Unlike in New York State courts, where CPLR § 3218 permits (but does not require) entry of a confessed judgment by the clerk "without an action," CPLR § 3218(a), federal courts "generally require the party seeking entry of a confessed judgment" to "file a new lawsuit," if one is not already pending, before moving for entry of the confession of judgment. *Rodrigues v. Corona Advances, Inc.*, No. 15-

CV-6815 (BCM), 2018 WL 4043149, at *2 (S.D.N.Y. Aug. 24, 2018) (internal quotation omitted).[8]

Where, as here, a party seeks a confessed judgment for amounts due under a settlement agreement, the party "file[s] a new lawsuit . . . in order to enforce the settlement agreement." *Xerox Corp. v. W. Coast Litho, Inc.*, 251 F. Supp. 3d 534, 536 n.2 (W.D.N.Y. 2017).  And "[a]ctions to enforce settlement agreements are, in essence, contract actions."  *Thurston v. Flyfit Holdings, LLC*, No. 18 Civ. 9044 (PAE) (SN), 2020 WL 2904065, at *2 (S.D.N.Y. June 3, 2020) (internal quotation omitted).  Thus, SKAT's breach of contract claims seeking a judgment by confession are not, as counterclaim defendants argue, "inconsistent" with "practice and procedure."  (Defs. Br. 22.)[9]

Stein, Lhote, and McGee assert that they know of "no case" that "requires, or allows, a party to bring breach of contract claims in order to enforce an affidavit of confession of judgment."  (Defs. Br. 24.)  But that is precisely what the court in *Xerox*, which they cite, noted that a party should do.  251 F. Supp. 3d at 536 n.2 (party should "file[] a new lawsuit . . . to enforce the settlement agreement").  And bringing a contract claim is no different in substance than the claim pleaded in the one case counterclaim defendants cite as an example of what they contend should be pleaded.  (Defs. Br. 24 (citing *Darwiche v. Cedar Cap. Mgmt. Grp., Inc.*, No. 17 Civ. 9154, Second Amended Complaint & Motion (S.D.N.Y. Jan. 24, 2018)).)  In *Darwiche*, the plaintiffs sought judgment in the amount to which defendants confessed based on allegations

---

8.  Counterclaim defendants concede that SKAT was required to file a counterclaim of some sort before moving for entry of the confessed judgment.  (Defs. Br. 23 ("If there is no pending action, as here, a party seeking to enforce an affidavit of confession of judgment in federal court files a new action seeking solely entry of the confession of judgment . . . .").)

9.  Counterclaim defendants confuse the procedure that applies in this case, accusing SKAT of "mixing and matching provisions of the CPLR" and asserting that SKAT should not have advanced breach of contract claims "[a]s a matter of New York practice and procedure."  (Defs. Br. 24-25.)  Again, the New York procedural rules of the CPLR do not apply in this action.  *See Alland*, 476 F.2d at 954.

that the parties entered into a settlement agreement that defendants subsequently breached, as a result of which plaintiffs were authorized to file the defendants' confessions of judgment.  (Levy Decl. Ex. E at 3.)  That is no different than SKAT's pleading against Stein, Lhote, and McGee.[10]

Moreover, where a claim for entry of a judgment by confession fails, courts treat the claim as one for breach of contract, rather than dismissing it, which only underscores that a claim for entry of a confessed judgment on a contractual obligation is a breach of contract claim.  *See Ray v. Ray*, 61 A.D.3d 442, 443 (1st Dep't 2009) ("court improperly dismissed the claim . . . on the ground that it was contained in a confession of judgment that was not filed within the three years" because the "failure to file . . . render[ed] it void as a confession of judgment" but "did not extinguish the underlying debt").[11]

Second, there is no merit to counterclaim defendants' argument that SKAT's breach of contract claims are inconsistent with the purpose of a confession of judgment.  (Defs. Br. 22-23.)  In arguing as much, counterclaim defendants ironically rely on a commentary discussing the procedural rule in CPLR § 3218(a) allowing entry of the confessed judgment by the clerk without an action, a rule intended for the benefit of the holder of the confessed judgment (here SKAT) and not debtors such as Stein, Lhote, and McGee.  *See* Hon. Mark C. Dillon, McKinney's Practice Commentary, CPLR 3218 (2021) ("The *plaintiffs' interest* in the CPLR

---

10.  Indeed, even with an executed confession of judgment in hand, parties may plead breach of contract claims to enforce a settlement agreement when the circumstances dictate.  *See Varbero v. Belesis*, No. 20-cv-2538 (LJL), 2020 WL 5849516, at *1-2 (S.D.N.Y. Oct. 1, 2020) (plaintiff with executed confession of judgment asserted breach of contract claim against defendant); *Tr. of United Plant & Prod. Workers Local 175 Benefits Fund v. Hudson Hills Contracting, LLC*, No. 18-CV-2706 (JMA)(AYS), 2020 WL 8513504, at *1 (E.D.N.Y. Dec. 29, 2020) (allegations in complaint were "sufficient to establish Defendants' liability" on claim for breach of settlement agreement "[i]n light of the Confession of Judgment"); *United Ass'n of Plumbers & Steamfitters Local No. 22 v. H & M Plumbing*, No. 14-CV-070S, 2015 WL 1735117, at *1, 3 (W.D.N.Y. Apr. 16, 2015) (plaintiffs brought "breach of contract action" "pursuant to the terms of the Forbearance Agreement and Confession of Judgment").

11.  *See also Ray v. Ray*, No. 604381/98, 2013 WL 3810124, at *1 (Sup. Ct. N.Y. Cty. July 15, 2013) (noting plaintiff "commenced" the action "seeking to enforce" a confession of judgment).

14

3218 procedure should be obvious, as *it provides the plaintiff* with a judgment in the desired sum without the cost, time, delay, and uncertainty of litigation." (emphasis added)).[12]  In any event, that state court procedure does not apply here.  "Under federal procedure . . . the process for entry of such judgment is not left to a clerk, but is presided over by a district judge exercising judicial discretion at each stage of the proceedings," with the "debtor . . . protected in that a determination is made as to whether there has been an actual default and as to the amount of the judgment demanded."  *Alland v. Consumers Credit Corp.*, 54 F.R.D. 252, 255-56 (S.D.N.Y. 1971).

Third, SKAT's breach of contract claims seeking a confessed judgment do not "expand its available remedies" under the settlement agreement.  (Defs. Br. 23.)  SKAT's counterclaims ask the Court for judgment pursuant to Stein, Lhote's, and McGee's confessions of judgment themselves, or a judgment in the same amounts as those confessed judgments—which is precisely the remedy that they contend the settlement agreement provides for failure to pay the full Final Settlement Amount.  And as a necessary predicate for entry of the confessed judgment, SKAT seeks the Court's determination of the True-Up Amount, as section 10(a) of the settlement agreement explicitly provides it may do.

The motion misreads the settlement agreement to argue that a sole remedy provision somehow precludes SKAT from asserting breach of contract claims to determine the True-Up Amount.  (Defs. Br. 25.)  They cite section 10(e) and argue that it somehow precludes SKAT from invoking its remedies under section 10(a) to resolve the parties' dispute over the True-Up Amount.  (Defs. Br. 20-21.)  But section 10(e) does not purport to limit SKAT's remedies.  To

---

12.  *See also id.* ("The procedure set forth in CPLR 3218 is a short cut from identifying the claim at the beginning to a judgment at the end, without the need for litigating the matter in between.  For readers of science fiction, it is a wormhole that allows two distant locations to be quickly reached, one to the other.").

the contrary, section 10(e) expressly provides "that the means of dispute resolution set forth in this Section 10 *shall not limit the remedies available to* [SKAT] upon the occurrence of an Event of Default pursuant to Section 5." (Settlement Agreement § 10(e) (emphasis added).) Thus, section 10(e) does not limit SKAT's remedies. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (an unambiguous contract provision "must be enforced according to the plain meaning of its terms"). Section 10(e) simply clarifies that if the Covered Parties default on a payment due under section 5, then SKAT can file the confession of judgment to seek to enforce the settlement payment, regardless of whether it has already taken advantage of the dispute resolution procedures in section 10, so that the section 10 true-up dispute resolution procedures do "not limit" SKAT's remedies for non-payment under section 5.

Stein, Lhote, and McGee invoke the contract interpretation principle that a specific provision governs over a general one, as if there were some inconsistency in the parties' settlement agreement. (Defs. Br. 20 (citing *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 372 (S.D.N.Y. 2022).) But section 10(a) is neither a general provision nor inconsistent with section 5(c). *Cf. Speedfit LLC v. Woodway USA, Inc.*, No. 22-CV-4733 (CS), 2022 WL 17167985, at *8 (S.D.N.Y. Nov. 22, 2022) ("Under New York law, where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls." (internal quotation omitted)). Under section 10(a), either party may seek "available remedies" in this Court to resolve a true-up dispute over DKK 20 million, and under section 5(c), SKAT is authorized to file the confession of judgment if an event of default occurs. (Settlement Agreement §§ 5(c), 10(a).) There is no reason these two provisions cannot be read harmoniously to give effect to both. *See Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d

352, 358 (2003) (contract must be read "as a harmonious and integrated whole," with "every part . . . interpreted with reference to the whole" and "if possible . . . interpreted to give effect to its general purpose").

Fourth, counterclaim defendants' argument that the sole remedy provision "took advantage of the procedural simplicity built into CPLR 3218" similarly misreads the agreement. (Defs. Br. 25.)  Section 4(c) of the settlement agreement provides that SKAT may file the confession of judgment "in any of the New York Courts," including this Court.  (Settlement Agreement §§ 4(c), 12.)  Thus, while the agreement permits SKAT to take advantage of the "procedural simplicity" of simply tendering the confession of judgment to a state court clerk under CPLR § 3218, a rule intended for the benefit of a holder of a confessed judgment like SKAT, it does not require SKAT to do so.  On the contrary, the agreement specifically permits SKAT to seek entry of the confessed judgment in this federal court regardless of whether by doing so SKAT might lose the benefit of a simpler procedure in state court.

Finally, counterclaim defendants' protests of "improper" "procedural and evidentiary hurdles" ring hollow.  (Defs. Br. 23.)  That some procedure may be necessary before SKAT moves for judgment by confession is a function of the parties' agreed-on true-up dispute resolution procedure, under which SKAT is expressly entitled to seek relief from this Court to resolve a dispute over the True-Up Amount of more than DKK 20 million, and Stein's and Lhote's own Complaint, seeking to renege on their settlement.  They cite no case or other authority even implying that SKAT cannot wait until some discovery is had and the true-up dispute is resolved before moving for judgment by confession for the Covered Parties' failure to pay the full Final Settlement Amount.

**II.     The Sole Remedy Provision Does Not Preclude SKAT From Seeking Breach of Contract Damages For the Amount That Counterclaim Defendants Confessed.**

The argument that the sole remedy provision in the settlement agreement somehow precludes SKAT from asserting its breach of contract damages claims is spurious. (Defs. Br. 19-21.)  Just the opposite, SKAT's breach of contract damages remedy is precisely what the parties bargained for in the sole remedy provision in just these circumstances.  Where the Covered Parties have failed to pay the full Final Settlement Amount, the agreement expressly contemplates that SKAT will seek and obtain a money judgment against Stein, Lhote, and McGee in the amount for which they are liable.

Under New York law, "the objective of contract interpretation is to give effect to the expressed intentions of the parties." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).  In construing its meaning, the sole remedy provision must be "examined" in "the context of the entire" settlement agreement.  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (internal quotation omitted).  And the settlement agreement must "be construed so as to give full meaning and effect to all of its provisions." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (internal quotation omitted).

The stated "fundamental principle" of the settlement agreement is that under its terms, the Covered Parties would pay SKAT the full amount of the Net Proceeds they received from their fraud.  (Settlement Agreement Recital F.)  Thus, the agreement provides that the Covered Parties' obligation to pay the full Final Settlement Amount is "absolute and unconditional." (*Id*. § 2(c).)  Once the Covered Parties paid SKAT the DKK 950 Initial Cash Payment, the agreement limited the liability of the Covered Parties for failing to pay the remainder of the Final Settlement Amount to the three principals, Stein, Lhote, and McGee, as the Covered Parties' Designees, and to an amount specifically set forth in the agreement.  In particular, under section

5(d), in such circumstances, Stein, Lhote, and McGee, but not the rest of the more than 100 Covered Parties, are required to pay SKAT the (i) unpaid portion of the Subsequent Cash Payment Amount; (ii) interest accrued under section 2(d)(ii) from May 28, 2021 onwards; and (iii) additional default interest covering the period from January 1, 2014 to May 28, 2021.  (*Id.* § 5(d).)  And, as security for their liability, the agreement required Stein, Lhote, and McGee to execute affidavits confessing to judgment in the amounts set forth in section 5(d).  (*Id.* § 4(c).)

Thus, consistent with the liability limitations set forth in section 5(d) (and the confessions of judgment), the parties agreed in the sole remedy provision that "[i]n the event that the Covered Parties timely complete the Initial Cash Payment . . . then [SKAT's] sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavits of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c)."  (*Id.* § 2(c).)  And section 5(c), in turn, provides that if an Event of Default has occurred, such as the Covered Parties' failure to pay the remainder of the Final Settlement Amount, then SKAT "may file or otherwise execute upon" counterclaim defendants' confessions of judgment (*Id.* § 5(c).)  Thus, SKAT is fully authorized to proceed as necessary "to seek and enforce the judgment that the Court enters."  (*Id.*)

The motion's argument to interpret the sole remedy provision to deprive SKAT of any remedy at all if, as Stein and Lhote argue, the confession of judgment is invalid and cannot be enforced, is contrary "to the reasonable expectations of the parties" in entering the agreement, the fundamental principle of which was that the Covered Parties would repay SKAT their Net Proceeds from the fraud.  *Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11 CIV. 8440(PAC), 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012) ("The Court must avoid interpreting a contract in a manner that would be absurd, commercially unreasonable, or contrary to the

19

reasonable expectations of the parties." (internal quotation omitted)).[13]  It is wholly implausible "to impute to the parties any such intent to dispense" with any remedy for SKAT in such circumstances because "there is no logical reason to assume that" SKAT "would have agreed to forego" one.  *Katzman v. Helen of Troy Texas Corp.*, No. 12 Civ. 4220(PAE), 2013 WL 1496952, at *6 (S.D.N.Y. Apr. 11, 2013).

Stein, Lhote, and McGee point to the principle that "contractual provisions that limit liability or damages" are enforceable "because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities," as if SKAT's claims for breach of contract damages seek to expand counterclaim defendants' liability under the agreement.  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (2017); *see* Defs. Br. 17-18.  But SKAT's counterclaims do no such thing. Consistent with the sole remedy provision, SKAT's breach of contract claims seek a judgment against the very parties that the contract explicitly provides will be liable, *i.e.*, Stein, Lhote, and McGee, in the precise amount for which the agreement explicitly provides they will be liable.

---

13. SKAT disputes Stein and Lhote's contention that the confessions of judgment are invalid under CPLR § 3218. First, the 2019 amendment to CPLR § 3218(a) on which Lhote relies to argue his confession of judgment is invalid because he is not a New York resident, (*see* Compl. ¶¶ 85-89), "is inapplicable" here, where SKAT has commenced an action against Lhote seeking entry of his confessed judgment.  *Express Trade Cap. v. Horowitz*, 198 A.D.3d 529, 530 (1st Dep't 2021) (2019 amendment to CPLR § 3218(a) only "concerns entry of a judgment against a nonresident without an action").  Second, there is nothing to Stein and Lhote's argument that their confessions of judgment do not "state a sum for which a judgment may be entered."  (Compl. ¶ 90.)  The confessions of judgment expressly state that the judgment amount is the Subsequent Cash Payment Amount, less any payments of that amount, plus the section 2(d)(ii) and 5(d)(iii) interest, and Stein and Lhote agreed therein that the precise judgment amount would be set forth in an affidavit by SKAT at the time of entry.  *See, e.g.*, *Xerox*, 251 F. Supp. 3d at 537, 539 (entering confession of judgment for settlement amount "or that amount less than [the settlement amount] that remains due and owing . . . on the date the confession of judgment is presented . . . whichever is less, plus costs and attorneys' fees").  There is nothing "impermissible in" Stein and Lhote "permitting" SKAT "to fill in the amount due (calculated pursuant to the terms of the [settlement agreement])."  *Jiras v. McKay*, 202 A.D.2d 640, 641 (2d Dep't 1994).  And while Stein and Lhote's pleading provides no explanation for their assertion that their confessed judgment "misstates the facts out of which the claimed debt might arise and the legal basis for any such debt," (Compl. ¶ 90), their affidavits concisely state that the debt arises from the settlement agreement in which SKAT agreed to release its claims against them arising from their tax refund applications.  (Confession of Judgment ¶ 4.)

There is no meaningful difference between whether that judgment is by confession (SKAT's primary request for relief) or a judgment for breach of contract damages in the same amount (SKAT's alternative request for relief).

By contrast, the cases on which counterclaim defendants rely, in which courts have found that sole remedy provisions precluded the claims at issue, involved instances where the plaintiff sought remedies of a different type or of a greater amount than what was provided for in their agreement. For instance, in *Nomura*, the Court of Appeals dismissed the plaintiffs' claims seeking "general contract damages" for the defendants' alleged breaches of the representations and warranties in agreements governing the parties' mortgage-backed securities transactions because the agreements "mandate[d] cure or repurchase" of the affected loans "as the sole remedy" for the breaches. 30 N.Y.3d at 577. Likewise, in *Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc.*, the Court dismissed the plaintiff's claim for "general and consequential damages," where the agreement at issue "absolved" defendant "from liability for loss of profit, loss of business, or other financial loss resulting from defendant's performance or non-performance." 84 N.Y.2d 430, 433 (1994) (internal quotation omitted).[14] Here, all that SKAT seeks is the amount to which Stein, Lhote, and McGee expressly agreed to repay, and confessed, and the default interest for which they are liable under their agreement.

---

14. *See also J. D'Addario & Co. v. Embassy Indus., Inc.*, 20 N.Y.3d 113, 116-17 (2012) ("contract language specifying that [plaintiff's] 'sole remedy' was liquidated damages and [plaintiff] had 'no further rights' against [defendant]" barred claim for statutory prejudgment interest); *CBS Broad. Inc. v. Jones*, 460 F. Supp. 2d 500, 505 (S.D.N.Y. 2006) (plaintiff was not entitled to recoup payments made to employee where agreement provided for remedies of "reduction and/or termination," not "reimbursement"); *Town of N. Hempstead v. Corona Realty Holding, LLC*, 212 A.D.3d 863, 865 (2d Dep't 2023) (affirming dismissal of claim to recover damages for breach of contract where "under the agreement, the plaintiff's sole remedy was to terminate the agreement, with no entitlement to specific performance or to assert any causes of action to recover damages"); *Citigroup Mortg. Loan Trust 2007-AMC3 v. Citigroup Glob. Mkts. Realty Corp.*, No. 13 Civ. 2843(GBD), 2014 WL 1329165, at *4-5 (S.D.N.Y. Mar. 31, 2014) ("sole remedy" provision in agreements governing mortgage-backed securities transactions providing for "specific performance" precluded claims for "damages").

**III.    The Sole Remedy Provision Would Be Unenforceable**
**If the Confession of Judgment Were Invalid.**

Even assuming *arguendo* that Stein's, Lhote's, and McGee's interpretation of the sole

remedy provision were correct, dismissing SKAT's claims seeking breach of contract damages

would be premature.  That is because Stein and Lhote are asking the Court to declare that their

confessions of judgment are invalid under New York law.  (Compl. ¶¶ 102-06.)  SKAT disputes

that assertion—but if Stein and Lhote were to prevail in establishing that SKAT were somehow

precluded from seeking judgment based on their confessions of judgment, then dismissing

SKAT's contract and damages claims would leave SKAT with no remedy at all: Stein, Lhote,

and McGee would then be able to renege on their settlement agreement and leave SKAT to

whistle in the wind.  In that event, the "sole remedy" provision would prove illusory—it would

be no remedy at all.  Indeed, enforcing the sole remedy provision in such circumstances would

cause the parties' entire settlement agreement to fail its essential purpose and "fundamental

principle," which was to return to SKAT all the proceeds that the Covered Parties netted from

their fraud.  In that event, the Court should award SKAT a judgment in damages for everything

that Stein, Lhote, and McGee still owe SKAT (*i.e.*, a judgment no different in amount, scope or

nature from the remedy agreed upon by Stein, Lhote, and McGee through the confessed

judgments).  For instance, under Article 2 of the Uniform Commercial Code, "[w]here

circumstances cause an exclusive or limited remedy to fail of its essential purpose," other

remedies may be had.  U.C.C. § 2-719(2).  While Article 2 is not applicable to the settlement

agreement, in *Orix Real Estate Capital Markets, LLC v. Superior Bank, FSB*, the court predicted

that "New York courts would allow" the defense that a sole remedy provision "fails of its essential purpose" outside of the Article 2 context.  127 F. Supp. 2d 981, 983 (N.D. Ill. 2000).[15]

Similarly, "while a provision providing for equitable relief as the sole remedy will generally foreclose alternative relief, where granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy."  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 133 A.D.3d 96, 105-06 (1st Dep't 2015) (internal quotation omitted).  In *GEM Holdco, LLC v. RDX Technologies Corp.*, the court noted in *dicta* that this principle too "would arguably be applicable" if an agreement provided for a sole remedy of a confession of judgment that could not be entered.  No. 653694/2015, 2017 WL 1281811, at *5 n.8 (Sup. Ct. N.Y. Cty. Apr. 6, 2017).

Further, entry of a judgment in the amount to which Stein, Lhote, and McGee confessed will not deprive them of the benefit of the bargain they struck in the sole remedy provision. Whether SKAT's "remedy is characterized as" entry of the confession of judgment or breach of contract damages "has little practical significance given that the form of the relief" and the amount "is the same in each case: the payment of money to make [SKAT] whole."  *Deutsche Alt-A Secs. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods, Inc.*, 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013).  The alternative remedy of damages SKAT seeks by its breach of contract claims is "limit[ed]. . . to an amount that is commensurate with the sole remedy clause" providing for entry of the confessed judgment.  *MASTR Adjustable Rate Mortg. Trust 2006-OA2*

---

15.  *See also Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 289 F. Supp. 3d 484, 503 (S.D.N.Y. 2018) ("Although the failure of essential purpose doctrine is not directly applicable here, it is nonetheless instructive for purposes of this Court's equitable consideration." (internal quotation omitted)).

*v. UBS Real Estate Secs. Inc.*, No. 12 Civ. 7322(HB), 2013 WL 4399210, at *4 (S.D.N.Y. Aug. 15, 2013).[16]

## IV. Counterclaim Defendants Make No Argument for Dismissing SKAT's Claims for the Default Interest Owed under Section 5(d)(iii) of the Settlement Agreement.

The motion to dismiss SKAT's breach of contract claims should be denied for the further reason that SKAT is seeking to recover for the moving parties' failure to pay DKK 386,548,164, or approximately $56 million at today's exchange rate, in default interest under section 5(d)(iii) of the settlement agreement.  Stein, Lhote, and McGee argue that the sole remedy provision precludes SKAT from enforcing its breach of contract claims, but that argument does not cover the default interest.  The sole remedy provision applies only to "the Covered Parties' failure to pay the remainder of the Final Settlement Amount."  (Settlement Agreement § 2(c).)  The default interest that Stein, Lhote, and McGee owe under section 5(d)(iii) is not part of the Final Settlement Amount.  (*Id.* § 1(q).)  Thus, the sole remedy clause does not limit SKAT's ability to bring contract claims against counterclaim defendants for the default interest.  Accordingly, the default interest provision of the parties' settlement agreement is a further reason why movants fail to provide a basis to dismiss SKAT's contract claims.

---

16.  *See also ACE Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 555 (S.D.N.Y. 2014) ("sole remedy clauses . . . preclude[d] Plaintiff from recovering types of damages—such as consequential damages—beyond what would be commensurate with the sole remedy clause" (internal quotation omitted)).

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny

counterclaim defendants' motion to dismiss SKAT's counterclaims.

Dated: New York, New York
August 3, 2023

                              HUGHES HUBBARD & REED LLP

                              By:   /s/ Marc A. Weinstein
                                  William R. Maguire
                                  Marc A. Weinstein
                                  Neil J. Oxford
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              Telephone: (212) 837-6000
                              Fax:  (212) 422-4726
                              bill.maguire@hugheshubbard.com
                              marc.weinstein@hugheshubbard.com
                              neil.oxford@hugheshubbard.com

                              *Counsel for Defendant / Counterclaim*
                              *Plaintiff Skatteforvaltningen*