**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MATTHEW STEIN and JEROME LHOTE,

               Plaintiffs/Counterclaim-Defendants,

               *v.*

SKATTEFORVALTNINGEN,

               Defendant/Counterclaim-Plaintiff,

               *v.*

LUKE MCGEE,

               Counterclaim-Defendant.

Case No. 23-cv-02508 (NRB)

---

### AMENDED FED. R. CIV. P. 26(F) JOINT REPORT
### AND PROPOSED DISCOVERY PLAN

In accordance with Federal Rule of Civil Procedure 26(f), McKool Smith P.C., counsel for Plaintiffs/Counterclaim-Defendants Matthew Stein ("Stein") and Jerome Lhote ("Lhote") (collectively, "Plaintiffs"), Hughes Hubbard & Reed LLP, counsel for Defendant/Counterclaim-Plaintiff Skatteforvaltningen, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT" or "Defendant"), and Nelson Mullins Riley & Scarborough, counsel for Counterclaim-Defendant Luke McGee ("McGee" or "Counterclaim-Defendant") (collectively with "Plaintiffs" and "Defendant," the "Parties"), conferred by telephone on June 30 and July 6, 2023, and by e-mail correspondence on multiple dates concluding on October 6, 2023, and agreed to the following Proposed Discovery Plan, which they hereby submit for this Court's consideration. To the extent the Parties were unable to agree upon a particular issue, the Parties' competing proposals are also set forth below for the Court's consideration.

## I.    CLAIMS, DEFENSES AND RELEVANT ISSUES

### A.    Plaintiffs' Description of Their Claims
###          and Defenses to Defendant's Counterclaims

Plaintiffs Stein and Lhote and Counterclaim-Defendant McGee are U.S. based finance professionals.  Defendant is the taxation authority of Denmark.

Under Danish law, Danish companies are required to withhold, that is, deduct at the source by the payer of income, 27% of the dividends paid to shareholders.

A taxation treaty between the United States and Denmark provides, in general, for the refund of tax withheld on dividend payments to shareholders that are U.S. pension plans, which are exempt from taxation.

Starting in or about mid to late 2015, Defendant began to investigate the manner in which it had paid out billions of Danish kroner ("DKK") in dividend tax refunds, the equivalent of hundreds of millions of U.S. dollars, to U.S. pension plans.

In or about Fall 2015, Stein, Lhote, and McGee became aware that Defendant was investigating their roles with respect to certain U.S. pension plans that had received dividend tax refunds.  Stein, Lhote, and McGee also became aware that Defendant was investigating the roles of many others, both in the United States and elsewhere, in connection with dividend tax refunds paid by Defendant.

Starting in or about early 2017, Stein, Lhote, and McGee proactively began to negotiate with Defendant to resolve Defendant's contentions that dividend tax refunds paid to pension plans associated with Plaintiffs were obtained improperly and to repay, or cause to be repaid, dividend tax refunds paid by Defendant and obtained by those pension plans.  The negotiations occurred over multiple years and ultimately resulted in the May 2019 settlement agreement that is the focus of the litigation.

The parties to the settlement agreement include Stein, Lhote, McGee, various non-party pension plans and individuals, and Defendant.

The settlement agreement's obligations are divided into two phases:

The first phase required payments of DKK 950 million to Defendant.  Upon receipt of the payment of DKK 950 million, Defendant released its claims against Stein, Lhote, McGee, and the other parties to the settlement agreement.  Payment and timely receipt of this amount, and the releases triggered by the payment, are undisputed.

The second phase principally required further payment by Stein, Lhote, and McGee and others of at least DKK 600 million within a few years after execution of the settlement, subject to certain adjustments referred to in the settlement agreement as the "True-Up Amount."

In exchange for the second set of payments, Stein, Lhote, and McGee received principally two forms of consideration: (1) confidentiality protections set out in detail in the settlement agreement; and (2) a written communication from Defendant to the Danish criminal prosecutors, known by the acronym SØIK, that were investigating Stein, Lhote, McGee, and others.

Defendant was required to bring to the attention of SØIK the settlement agreement and its terms and to do so in writing.  Defendant was also required to represent in writing that: (1) the settlement agreement reflected good-faith negotiation by Stein, Lhote, McGee, and others; (2) their cooperation might result in the recovery by Defendant of additional funds from third parties; and (3) the settlement agreement was in the best interests of Defendant.  Defendant was required to make these written representations "promptly upon execution of" the settlement agreement.  The requirements of a prompt and written communication from Defendant, the Danish taxation authority, to the Danish criminal prosecutors was a material and, indeed, crucial

element of the settlement agreement.

In performing their obligations under the second phase of the settlement agreement, Stein, Lhote, and McGee made several substantial payments totaling more than $5.7 million. They also produced over 90,000 documents to facilitate Defendant's litigation efforts in the United States and elsewhere.  Stein, Lhote, and McGee also researched and answered numerous substantive questions posed by Defendant in connection with Defendant's prosecution of its claims against others.  They also expended substantial time and resources supporting Defendant's requests for assistance in its prosecution of claims against other parties in actions that Defendant initiated in Dubai, the United Kingdom, and the United States.

Defendant breached the material requirement of the settlement agreement that it communicate with SØIK in the manner prescribed by the settlement agreement.  The breach was material.  As a result of Defendant's material breach, any continuing obligations that Stein, Lhote, and McGee under the settlement agreement terminated.

On Count I, Plaintiffs seek, among other remedies: (a) to have Plaintiffs and Defendant restored to the position in which they were as of the completion of the parties' performance under the first phase of the settlement agreement, including repayment of all payments made to Defendant under the second phase of the settlement agreement in the amount of approximately $5.71 million; and (b) rescission of, and discharge from, the unperformed obligations of the second phase of the settlement agreement.

Plaintiffs were not required to provide to Defendant notice of, or an opportunity to cure, Defendant's non-compliance with the settlement agreement, in particular, the requirement that Defendant communicate in writing with SØIK as set forth above, because such notice would have been futile under the circumstances.  Among other things, by the time Plaintiffs learned of

Defendant's breach of the settlement agreement, SØIK had already criminally charged Stein, Lhote, and McGee.

As part of the first phase of the settlement agreement, Stein, Lhote, and McGee were required to provide an affidavit of confession of judgment to facilitate Defendant's collection of contractually required, and bargained for, payments to be made during the second phase of the settlement agreement and in the event of a breach during the second phase. They were also obligated under the settlement agreement to provide an updated affidavit of confession about two years after execution of the settlement agreement. Under applicable New York law, an affidavit of confession of judgment may not be filed more than three years after its execution.

By the time that Plaintiffs provided a further affidavit of confession of judgment in 2021, Lhote was no longer a resident of the State of New York. As of late August 2019, approximately 20 months *after* execution of the settlement agreement, an affidavit of confession of judgment could not be executed by a non-New York resident. McGee was also not a resident of the State of New York in 2021.

Because Plaintiff Lhote did not reside in the State of New York when he executed the updated affidavit of confession of judgment in 2021, does not presently reside in New York State, and has no present intention to reside in New York State, the 2021 affidavit of confession of judgment is invalid as to him. In addition, the 2021 confession of judgment does not meet the requirements of New York law and, as such, is unenforceable for additional reasons.

On Count II, Plaintiffs seek a declaration that the 2021 affidavit of confession of judgment is invalid as to them.

Defendant has alleged counterclaims against Stein, Lhote, and McGee. The counterclaims seek payment of the remainder of amounts described in the settlement agreement,

which Defendant divides into two separate counterclaims.  Stein, Lhote, and McGee have moved to dismiss Defendant's counterclaims for failure to state a claim.  The motion was fully briefed as of August 14, 2023.  (ECF Nos. 50-61).

If Defendant's counterclaims are not dismissed and are to be litigated, Stein, Lhote, and McGee reserve the right to assert all defenses permitted by the Federal Rules of Civil Procedure and New York law.  Among other things, Defendant's calculations of amounts claimed are incorrect and inflated.  For example, more than half of the amount sought by Defendant on Count II is for payment of an amount that Stein, Lhote, and McGee are not contractually required to pay.

### B.    SKAT's Description of Its Defenses and Counterclaims

Defendant/Counterclaim-Plaintiff Skatteforvaltningen, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT"), was the victim of fraud in which more than 250 United States pension plans, among other participants, obtained approximately $2.1 billion by applying to SKAT for refunds of tax they claimed were withheld from dividends the pension plans earned on shares of Danish public companies.  The applications were fraudulent because the claimant plans did not own the shares they claimed to own, did not earn the dividends they claimed to have earned, did not suffer any withholding tax on such dividends, and thus were not entitled to the refunds they claimed.  In 2018, SKAT filed lawsuits against more than 180 of the pension plans as well as individuals associated with those plans in various federal district courts, which cases were consolidated for pretrial purposes in the multi-district litigation still pending before the Honorable Lewis A. Kaplan, *In re Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Litigation*, 18-md-02865 (LAK).

On May 28, 2019, SKAT entered into a settlement agreement that is the subject of this case (the "Settlement Agreement") with 80 additional U.S. pension plans, and 56 individuals (including Stein, Lhote and McGee) and 78 entities associated with those pension plans (collectively, the "Covered Parties"), with whom SKAT had previously entered into a tolling agreement and thus had not sued.  The Settlement Agreement states that, "it is the parties' understanding and a fundamental principle on which this Agreement is based that the Covered Parties are paying to Skatteforvaltningen the full amount of the Net Proceeds (defined below) that the Covered Parties received directly or indirectly from Reclaim Applications (defined below) made to Skatteforvaltningen."

The settling parties were required to pay SKAT a minimum settlement payment of 1.55 billion Danish kroner (which is equal to approximately $215 million), with at least DKK 950,000,000 to be paid by July 29, 2019, and the remaining DKK 600,000,000 to be paid by May 28, 2023, as well as interest on any unpaid balance as of May 28, 2021.

SKAT  was entitled to an additional "True-Up Amount" amount if it was determined that the settling parties had obtained from SKAT net proceeds that exceeded the DKK 1.55 billion minimum settlement payment.  The Settlement Agreement defined Net Proceeds as the gross amount of money SKAT paid on the settling pension plans' applications, less certain categories of expenses.  The Settlement Agreement provided for a process to determine the "True-Up Amount," pursuant to which counsel for Stein, Lhote and McGee provided SKAT with documentation.  Stein, Lhote and McGee acknowledged early on in the true-up process that the Net Proceeds exceeded the minimum settlement amount, and thus that they would have to pay a True-Up Amount, but the parties have not been able to agree on what that amount should be.

Despite having four years to make the required settlement payments, the settling parties paid only DKK 987.8 million of the minimum DKK 1.55 billion. They also have not paid any of the accrued interest or the True-Up Amount. Instead, Stein and Lhote filed this suit to evade their payment obligations and retain vast sums of proceeds fraudulently obtained from SKAT.

While this dispute concerns a large sum of money, the issues to be determined are straightforward and require little factual discovery. SKAT did not breach the Settlement Agreement because SKAT provided SØIK with ample and timely notification of the relevant terms of the Agreement. In any event, the Settlement Agreement is not, as Plaintiffs suggest, divisible in two, with some portion of their payment obligations contingent upon certain events. Rather, the Agreement plainly states that Stein, Lhote and McGee's obligation to pay the entire settlement amount is "absolute and unconditional." Thus, the breach alleged here would not be an event of default under the Agreement nor material, and would not entitle Stein, Lhote and McGee to rescission or discharge of their obligation to pay what they owe under the Agreement, or to return of monies already paid, or any other remedy they seek in Count I. As to Plaintiffs' Count II, there is no basis under the law to declare invalid or unenforceable the Confessions of Judgment they executed as part of the Settlement Agreement.

SKAT asserts two counterclaims against Stein, Lhote and McGee. The first claim is for the unpaid portion of the minimum owed under the Settlement Agreement, or DKK 539,574,366, plus DKK 410,700,705 in interest which has accrued on that amount under the Settlement Agreement, for a total of DKK 950,275,071.

SKAT's second claim is for the True-Up Amount, plus interest. Well prior to Plaintiffs' filing of this suit, the parties exchanged both the underlying documentation of Plaintiffs' proceeds and expenses as well as detailed spreadsheets reflecting each side's calculation of the

True-Up Amount.  In fact, there is little in dispute about the calculations themselves.  SKAT alleges that the True-Up Amount is DKK 108,603,074.  As a result, the Covered Parties owe to SKAT an additional DKK 108,603,074 plus interest on that amount.

## II.    CASE MANAGEMENT PLAN

### A.    Plaintiffs' and Counterclaim-Defendant's Motion to Dismiss

Plaintiffs moved to dismiss Defendant's counterclaims on July 13, 2023.  (ECF Nos. 50-55.)  That same day, Counterclaim-Defendant filed a notice of joinder to Plaintiffs' motion.  (ECF 56.)  Defendant filed its opposition papers on August 3, 2023.  (ECF. No. 57-58.)  Plaintiffs filed their reply on August 14, 2023.  (ECF Nos. 59-60.)  Counterclaim-Defendant filed a notice of joinder to Plaintiffs' reply papers.  (ECF No. 61.)

### B.    Scheduling Conference with the Court

The Parties request a pretrial scheduling conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).  The Parties prefer a conference in person at the Court's earliest convenience, if the Court is able to accommodate an in-person conference.  The Parties are amenable to a conference by video to the extent it will expedite the date upon which the Court can schedule such conference.

The Parties propose that any such pretrial scheduling conference with the Court should occur prior to the adjudication of the pending motion so that the Court can manage discovery and further proceedings appropriately and otherwise facilitate efficient and speedy resolution of this action.

The Parties request that, during the conference, the Court provide direction to the Parties regarding the manner in which it expects to resolve matters to be tried to the Court, specifically, whether it prefers that the Parties file summary judgment motions or that the Court conduct a bench trial.

**C.      Early Settlement Conference**

The Parties have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice.

The Parties do not currently believe that mediation or a judicial settlement conference may facilitate the resolution of the lawsuit.

The Parties do not request a referral for alternative dispute resolution pursuant to S.D.N.Y. L. Civ. R. 83.9.

**D.      Joinder of Parties and Amendment of Pleadings**

1.      <u>Plaintiffs' and Counterclaim-Defendant's Position</u>:  Plaintiffs and Counterclaim-Defendant propose that the deadline for joining additional parties and amending pleadings be 30 days after the Court decides the pending motion to dismiss.

2.      <u>Defendant's Position</u>:  Defendant proposes that:

a.      No additional parties may be joined without good cause after October 31, 2023.

b.      No amendments to the pleadings shall be permitted without good cause after October 31, 2023.

c.      Any motion to amend or join after these dates must meet the good cause requirement of Fed. R. Civ. P. 16.

**III.    DISCOVERY PLAN**

**A.      Rule 26(a) Initial Disclosures**

The Parties exchanged initial disclosures required under Fed. R. Civ. P. 26(a)(1)(a) on August 18, 2023.

**B.    Anticipated Discovery**

The Parties set forth separately below the topics on which they believe discovery is necessary.  The Parties do not express any view at this time as to the appropriateness of the other's position.

1.    Plaintiffs' and Counterclaim-Defendant's Statement

On Count I, Plaintiffs anticipate that discovery regarding Defendant's compliance with its obligation under the settlement agreement to bring certain matters to the attention of, and make certain representations to, SØIK will be necessary.  Based on averments in Defendant's Answer, Plaintiffs anticipate that discovery will be necessary regarding Defendant's communications with the press and others.  Specifically, in responding to Plaintiffs' allegations that Defendant breached their obligations to communicate with the Danish prosecutors, Defendant avers, in its defense, that "it issued two press releases containing information substantially similar to that" required by the applicable provision of the settlement agreement, among other things.

On Count II, Plaintiffs anticipate that discovery related to the affidavits of confession, principally the residence of Plaintiff Lhote and Counterclaim-Defendant McGee at the time of execution of the affidavits of confession of judgment in 2021 will be necessary.

The parties have initiated discussions about discovery and, in order to narrow discovery that may necessary, Plaintiffs may seek the Court's permission to serve interrogatories pursuant to Local Rule 33.3(b).

Should Defendant's counterclaims not be dismissed, Plaintiffs and Counterclaim-Defendant anticipate the need for fact and expert discovery on various aspects of the adjustments to the True-Up Amount alleged by Defendant, including the methodology used by Defendant to calculate such amounts and whether such methodology is consistent with the settlement agreement.

The Parties are in discussions about stipulating to various facts concerning the elements of the adjustments alleged by Defendant, which may narrow the need for discovery.

2.    Defendant's Statement

Defendant anticipates that discovery will be needed on:  (1) information regarding the Plaintiffs' compliance with the notice and cure provision in section 11 of the Parties' May 28, 2019 settlement agreement (the "Settlement Agreement"); (2) information regarding the Plaintiffs' and Counterclaim-Defendant's submission of information to SØIK concerning the Settlement Agreement; (3) information necessary to determine the True-Up Amount under section 2(e) of the Settlement Agreement; (4) information regarding Plaintiffs' and Counterclaim-Defendant's efforts to sell the Illiquid Assets under paragraph 3 of the Parties' May 28, 2019 letter agreement executed in accordance with section 18 of the Settlement Agreement (the "Letter Agreement"), and the decisions not to provide periodic status reports of those efforts under paragraph 4 of the Letter Agreement; (5) information regarding the fees North Channel Bank received from its participation in the dividend withholding tax reclaim scheme, and the subsequent distribution of those profits in the form of dividends to shareholders; (6) information regarding the Plaintiffs' and Counterclaim-Defendant's failure to make payments under the Settlement Agreement; (7) information regarding the confessions of judgment; and (8) information regarding Plaintiffs' and Counterclaim-Defendant's transfer of assets shortly before and subsequent to the execution of the Settlement Agreement.

Defendant intends to call one expert/summary witness at trial concerning the calculation of the True-Up Amount unless the Parties reach a stipulation as to all relevant facts.

**C.    Whether Discovery Should Be Conducted in Phases or Be Limited To or Focused Upon Particular Issues**

    1.    <u>Plaintiffs' and Counterclaim-Defendant's Position</u>

In light of the pending motion to dismiss, Plaintiffs and Counterclaim-Defendant submit that the Court may wish to manage discovery such that the Parties conduct discovery on Count I and Count II of Plaintiffs' claims and permit Plaintiffs to make an early motion for summary judgment on Count I and Count II or conduct an early bench trial on Count I and Count II before permitting discovery on Defendant's counterclaims because a ruling in Plaintiffs' favor on Counts I and II will obviate the need for the potentially voluminous fact and expert discovery related to the SKAT's counterclaims.  Plaintiffs and Counterclaim-Defendant will be prepared to further address the reasons that the Court should do so and the import of phased discovery on schedules to be set by the Court at an initial pretrial conference.

    2.    <u>Defendant's Position</u>

Defendant's position is that conducting discovery, and potentially motion practice and/or a trial, in phases is unwarranted because it will not lead to an efficient resolution of this case.  It is Defendant's position that the Covered Parties' obligation to pay the Final Settlement Amount under the Settlement Agreement is absolute and unconditional, and thus, the Court will need to resolve Defendant's counterclaims seeking entry of judgment by confession or otherwise, regardless of how the Court resolves Plaintiffs' claims.  With respect to Plaintiffs' pending motion to dismiss, there is no automatic stay of discovery while the motion is pending, nor is there a basis to justify a stay.  It is further Defendant's position that delaying discovery on Defendant's counterclaims would be inappropriate because Defendant anticipates that if the Court does not enter judgment based on the confessions of judgment that Plaintiffs and Counterclaim-Defendant executed within three years of their execution, that is by June 9, 2024,

then Plaintiffs and Counterclaim-Defendant will argue that under CPLR § 3218 their confessions of judgment will become unenforceable by reason of passage of time.  Defendant disputes as much, but to avoid the need for the Court to resolve such a further dispute over the validity of the confessions of judgment, Defendant has proposed a discovery plan that will permit the Court to enter judgment by confession by June 9, 2024 should the Court rule in SKAT's favor on the merits.

> **D.    Discovery Limits**

Unless altered by subsequent agreement of the Parties or Court order, the Parties agree that each party shall be limited to:

> 1.    <u>Depositions</u>
>
>> a.    *Plaintiffs' and Counterclaim-Defendant McGee's Position*: Plaintiffs and Counterclaim-Defendant propose that they be limited to seven depositions among them and that SKAT be limited to seven depositions.
>>
>> b.    *Defendant's Position*:  SKAT disputes whether Plaintiffs and Counterclaim-Defendant require any deposition, and otherwise proposes that, in any event, Plaintiffs and Counterclaim-Defendant be limited to three depositions among them.  SKAT proposes that SKAT be limited to five depositions.

Other than with respect to depositions, the Parties agree that there is no need to limit or restrict discovery beyond the normal limits already imposed by the Federal Rules of Civil Procedures or this Court's Local Rules.

E.    **Discovery Schedule**[1]

1.    <u>Requests for Production</u>

The Parties served initial requests for production under Fed. R. Civ. P. 34 on August 25, 2023.  Responses and objections were served on September 25, 2023.  The Parties propose that any subsequent requests for production be served no later than thirty (30) days before the deadline to complete the exchange of document productions.  The Parties further propose that responses and objections to such requests for production be due thirty (30) days after the requests are served.

2.    <u>Privilege Logs</u>

The Parties agree that privilege logs be provided no later than fifteen (15) days from the document production.

3.    <u>Exchange of Document Productions</u>

a.    *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs and Counterclaim-Defendant propose that the exchange of document productions be completed no later than December 22, 2023.

b.    *Defendant's Position*:  Defendant proposes that the exchange of document productions shall be completed no later than October 26, 2023 on all issues and for all claims asserted by any party.

4.    <u>Interrogatories</u>

a.    *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs and Counterclaim-Defendant propose that interrogatories under Fed. R. Civ. P.

---

[1] The Parties reserve the right to propose different discovery deadlines should the Court order that discovery proceed in phases.

33 be served no later than February 22, 2024.  Plaintiffs may seek the

Court's permission to serve interrogatories pursuant to Local Rule 33.3(b).

b.    *Defendant's Position:*  Defendant proposes that interrogatories

under Fed. R. Civ. P. 33 shall be served no later than December 12, 2023.

c.    The Parties propose that objections and responses to any

interrogatories shall be served no later than thirty (30) days after the

interrogatories are served.

5.    Requests for Admission

a.    *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs and

Counterclaim-Defendant propose that requests for admission under Fed.

R. Civ. P. 36 shall be served no later than February 22, 2024.

b.    *Defendant's Position:*  Defendant proposes that requests for

admission under Fed. R. Civ. P. 36 shall be served no later than December

12, 2023.

c.    The Parties propose that objections and responses to any requests

for admissions shall be served no later than thirty (30) days after the

requests are served.

6.    Depositions

a.    *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs and

Counterclaim-Defendant propose that fact depositions other than any

pending requests for testimony under the Hague Convention or bilateral

treaty, under Fed. R. Civ. P. 30 shall be completed no later than February

12, 2024.

b.    *Defendant's Position:*  Defendant proposes that fact depositions, other than any pending requests for testimony under the Hague Convention or any bilateral treaty, under Fed. R. Civ. P. 30 shall be completed no later than December 7, 2023 on all issues and for all claims asserted by any party.

7.    <u>Foreign Discovery</u>

a.    *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs and Counterclaim-Defendant anticipate the need to seek testimony of witnesses and obtain evidence located overseas and, as a result, propose that any Party seeking foreign testimony or evidence submit any requests under the Hague Convention for the Court's approval by December 22, 2023.

b.     *Defendant's Position:*  Defendant proposes that the Parties shall seek judicial intervention, if necessary, for the completion of any foreign discovery no later than October 31, 2023.

c.    The Parties further propose that, where a Party receives evidence in response to a timely request for foreign discovery, the Party shall not be precluded from presenting that evidence based solely on its receipt after the expiration of discovery.

8.    <u>Supplementation</u>

Supplementations under Fed. R. Civ. P. 26(e) must be made within a reasonable period of time after discovery of such information.

9.      <u>Expert Disclosures</u>:

a.      *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs propose that Defendant's expert disclosures under Fed. R. Civ. P. 26(a)(2) be made no later than February 7, 2024, and no later than March 5, 2024 for Plaintiffs' rebuttal expert witnesses, and that expert discovery shall be completed no later than March 6, 2024.

b.      *Defendant's Position:*  Defendant proposes that expert disclosures under Fed. R. Civ. P. 26(a)(2) shall be no later than December 19, 2023 for expert witnesses, and no later than January 12, 2023 for rebuttal expert witnesses, and that expert discovery shall be completed no later than January 31, 2024.

10.     <u>Completion of Fact and Expert Discovery</u>

a.      *Plaintiffs' and Counterclaim-Defendant's Position*:  Plaintiffs and Counterclaim-Defendant propose that all fact discovery, including any deposition of experts, be completed on or before March 25, 2024. Plaintiffs and Counterclaim-Defendant reserve the right to seek a modification of any discovery-related deadlines set by the Court.

b.      *Defendant's Position:*  Defendant proposes that all fact discovery, including any deposition of experts, be completed on or before January 31, 2024.  Defendant further proposes that the parties should be able to seek modifications to discovery deadlines set by the Court only for good cause shown.

11.    <u>Bench Trial / Summary Judgment / Joint Pretrial Order</u>

The Parties seek the Court's guidance regarding the manner in which it expects to resolve matters to be tried to the Court, specifically, whether it prefers that the Parties file summary judgment motions or that the Court conduct a bench trial. If the latter, the Parties seek further guidance about whether: (1) the Court prefers opening and closing statements; and (2) whether direct testimony should be offered by way of witness affidavit.

a.    *Plaintiffs' position*:  Plaintiffs request that the Court defer scheduling summary judgment or trial, as the case may be, until after the Parties have completed discovery.

b.    *Defendant's Position:*  Defendant requests that the Court provide a briefing and/or trial schedule as part of its Order. Defendant proposes that a joint pretrial order shall be filed on or before February 15, 2024. No motion for summary judgment shall be served after the deadline fixed for submission of the joint pretrial order. The filing of a motion for summary judgment does not relieve the Parties of the obligation to file the pretrial order on time.

**F.    Preservation and Production of Electronically Stored Information**

The Parties anticipate finalizing a protocol for preservation and production of electronically stored information documents in due course.

**G.    Confidentiality and Protective Order**

Undersigned counsel have discussed discovery procedures to minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production.

The Parties will submit to the Court a proposed protective order, including an order under Fed. R. Civ. P. 502(d) to protect against waiver of the attorney-client privilege and the work product doctrine.

### H.    Other Orders Under Rules 26(c), 16(b) and 16(c)

The Parties do not presently anticipate any need for the Court to issue additional orders pursuant Fed. R. Civ. P. 26(c), 16(b) and 16(c) not already referenced herein.

## IV.    PRETRIAL SCHEDULE

The Parties set forth separately below proposed pretrial schedules.  The Parties do not express any opinion at this time as to the appropriateness of the other's schedule.

| Event | Plaintiffs' and Counterclaim-Defendant's Proposed Date[2] | Defendant's Proposed Date |
|---|---|---|
| Deadline to exchange initial FRCP 26(a)(1) disclosures | August 18, 2023 | August 18, 2023 |
| Deadline to serve initial document requests | August 25, 2023 | August 25, 2023 |
| Completion of document productions | December 22, 2023 | October 26, 2023 |
| Deadline to seek judicial intervention related to foreign discovery | December 22, 2023 | October 31, 2023 |
| Deadline for joinder of additional parties | 30 days after the Court decides the pending motion to dismiss | October 31, 2023 |
| Deadline for amending pleadings | 30 days after the Court decides the pending motion to dismiss | October 31, 2023 |
| Completion of fact depositions | January 12, 2024 | December 7, 2023 |

---

[2] The Parties reserve the right to propose different discovery deadlines should the Court order that discovery proceed in phases.

| Event | Plaintiffs' and Counterclaim-Defendant's Proposed Date[2] | Defendant's Proposed Date |
|---|---|---|
| Deadline to make FRCP 26(a)(2) disclosures with respect to expert witnesses | February 7, 2024 | December 19, 2023 |
| Deadline to make FRCP 26(a)(2) disclosures with respect to rebuttal expert witnesses | March 5, 2024 | January 12, 2023 |
| Deadline to serve requests to admit and interrogatories | February 22, 2024 | December 12, 2023 |
| Completion of all discovery, including expert discovery | March 25, 2024 | January 31, 2024 |
| Deadline to file joint pretrial order | | February 15, 2024 |

## V.    TRIAL READINESS

The case will be ready for trial by thirty (30) days after the filing of the joint trial memorandum.

The Parties anticipate that this matter will require not more than three days of trial.

The Parties do not consent to a trial before a Magistrate Judge at this time.

The Parties agree that, to the extent any claim of any party proceeds to trial, such claims are to be tried to the Court.

Date:  October 6, 2023

MCKOOL SMITH P.C.


By:  /s/ _____
Daniel W. Levy
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York 10001-8603
Telephone: (212) 402-9400
dlevy@mckoolsmith.com

*Counsel for Plaintiffs / Counterclaim-Defendants*
*Matthew Stein and Jerome Lhote*

Date:  October 6, 2023

NELSON MULLINS RILEY &
SCARBOROUGH


By: /s/_____
Daniel S. Newman
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-9400
dan.newman@nelsonmullins.com


AKIN GUMP STRAUSS HAUER & FELD LLP


By: /s/_____
Robert H. Pees
Anne M. Evans
Ilana Roberts
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
rpees@akingump.com
aevans@akingump.com
iroberts@akingump.com

*Counsel for Counterclaim-Defendant Luke McGee*

Date:  October 6, 2023

HUGHES HUBBARD & REED LLP


By:  /s/ _____
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
John T. McGoey

One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
neil.oxford@hugheshubbard.com
dustin.smith@hugheshubbard.com
john.mcgoey@hugheshubbard.com

*Counsel for Defendant / Counterclaim-Plaintiff*
*Skatteforvaltningen*