# McKool Smith

Daniel W. Levy
Direct Dial: (212) 402-9412
E-mail: dlevy@mckoolsmith.com

One Manhattan West
395 Ninth Avenue, 50th Floor
New York, NY 10001

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

January 11, 2024

By ECF
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Room 2270
New York, New York  10007

      Re:     Stein and Lhote v. Skatteforvaltningen
                   23 Civ. 2508 (NRB)

Dear Judge Buchwald:

      We write pursuant to Section 2.B of your Honor's Individual Practices and Local Civil Rule 37.2 on behalf of Plaintiffs-Counterclaim Defendants Matthew Stein and Jerome Lhote ("Plaintiffs").  We write jointly with counsel for Counterclaim Defendant Luke McGee ("McGee").

      Plaintiffs and McGee seek the Court's assistance in resolving disputes regarding several requests for the production of documents served on Defendant-Counterclaimant Skatteforvaltningen ("SKAT").  The parties have conferred in good faith by telephone and by e-mail and have been unable to resolve their disputes.

      Attached as Exhibit 1A are the requests that are at issue organized according to the nature of the disputes identified below.

      Contemporaneous with this letter, Plaintiffs and McGee are filing two additional letters of three pages each concerning other discovery disputes.  We are proceeding in this fashion (filing multiple letters of 3 or fewer pages) at the direction of your Honor's law clerk.

      **A. Time Period For Which SKAT Should Be Required To Produce Documents (Request Nos. 1-10, 12, 26, 28, 29, 31):**  Plaintiffs and McGee requested that SKAT produce responsive documents from 2017 to the present.  This represents the time period during which the events relevant to this action have largely occurred.  In 2017 Plaintiffs reached out to initiate settlement discussions with SKAT.  ECF No. 11 at ¶ 27.  The Settlement Agreement was executed in May 2019 and Plaintiffs and McGee were indicted in April 2021.  *See id.* ¶¶ 36, 75.  And the charges in Denmark presently remain pending and SKAT has continued to communicate with the Danish Prosecutor ("SØIK") since the indictment.

      With respect to these fifteen requests, SKAT limited the period for which it would produce documents to the period from March 2019 through April 2021.  It later offered to extend

**McKool Smith**
A Professional Corporation • Attorneys
**Austin  |  Dallas  |  Houston  |  Los Angeles  |  Marshall  |  New York  |  Washington, DC**

4860-3677-5835

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 2

this period through *June* 2021, but no longer stands behind even that offer. *See* SKAT's Responses, dated Sept. 25, 2023, at 8, 9-17 (attached as Exh. 1B). During the parties' meet and confers, SKAT was unable to explain why it selected March 2019 as the beginning date for which it would produce documents. As for the April 2021 end date, SKAT's reasoning was that Plaintiffs and McGee were indicted then such that the harm caused by SKAT's breach was inflicted as of then and communications after April 2021 are, according to SKAT, irrelevant.

Plaintiffs and McGee submit that the start and end dates unilaterally selected by SKAT are inappropriate. Contrary to SKAT's mischaracterization, Plaintiffs' theory is not simply that, but for SKAT's failure to comply with Section 8(f), Plaintiffs and McGee would not have been indicted. Nor is the theory that the harm caused by the breach is simply the indictment.

Rather, it is also a matter of contractual performance. The Settlement Agreement requires statements to SØIK in exchange for Plaintiffs and McGee making certain payments and cooperating with SKAT. *See* ECF No. 11 at ¶¶ 50-66. Because SKAT failed to make the agreed-upon statements to SØIK, Plaintiffs and McGee should be released from further payment obligations. The remedy should be to restore the parties to the position in which they were as of the completion of the first phase of the Settlement Agreement. *See, e.g.*, *id.* at ¶ 8 & pp.23-24.

In order to fully assess whether SKAT breached Section 8(f) and the materiality of SKAT's breach, *all* of SKAT's communications with SØIK should be produced. For example, Plaintiffs and McGee initiated settlement discussions with SKAT in or about 2017. *See id.* at ¶ 27. It is from this period forward that documents concerning the intent of the parties in drafting and executing the Settlement Agreement are relevant. This is particularly true as it relates to Section 8(f). Plaintiffs and McGee made clear at the start of settlement negotiations that they were interested in a resolution that resolved any criminal liability under Danish law. This interest motivated their inclusion of Section 8(f), the intent of which was to *guarantee* that SØIK was notified by SKAT of Plaintiffs and McGee's cooperation and their efforts to return funds received from the tax reclaim applications. And the obvious purpose of this provision was to positively influence SØIK in the course of its investigation, if not to forestall a criminal investigation entirely. Accordingly, communications beginning in 2017 and throughout SØIK's investigation and the pendency of the Danish criminal case are relevant and should be produced.

Likewise, if SKAT communicated with SØIK after the April 2021 indictment, SKAT should produce those communications. For example, if SKAT encouraged SØIK in its indictment of Plaintiffs and McGee, such communications would tend to show that SKAT acted in bad faith, in contravention to the requirements of Section 8(f) and with an intent to frustrate the parties' intent behind the bargain reflected in Section 8(f). And it would bear on SKAT's failure to communicate promptly upon the mid-2019 execution of the Settlement Agreement.

SKAT's post-indictment communications with SØIK are also relevant because, after Plaintiffs and McGee were indicted, SKAT was repeatedly asked to provide its communications with SØIK concerning Section 8(f). SKAT responded that it had communicated with SØIK orally, but did not confirm whether or not it provided a writing to SØIK as required by Section 8(f). To the extent there were any communications between SKAT and SØIK after April 2021, for example, a recognition by SKAT of its breach of Section 8(f), including ones made after the filing of this action in April 2023, SKAT should produce those too.

4860-3677-5835

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 3

**B. Communications Concerning The Settlement Agreement (Request No. 22):** Plaintiffs and McGee requested SKAT's communications with certain specified governmental entities concerning Plaintiffs and McGee and the Settlement Agreement. SKAT has refused to produce responsive documents on the basis that the request improperly seeks to discover information on worldwide investigations of Plaintiffs and McGee. *See* Exh. 1B at 24. Not so.

SKAT sought assistance from the agencies named in this request. As a result, it is fairly within the scope of discovery for Plaintiffs and McGee to understand what was said to them about the Settlement Agreement, the negotiation of it, obligations under it, the performance or non-performance of such obligations under it, and Plaintiffs and McGee's cooperation.

SKAT also has strict confidentiality and non-disparagement obligations under the Settlement Agreement, such that any communications SKAT had with these agencies that fall outside of those obligations are relevant to any potential breach by SKAT. *See* ECF No. 11 at ¶¶ 5, 58, 66. SKAT may disclose information about the Settlement Agreement and its contents only to Danish governmental authorities, or any other authority "for the sole purpose of seeking authority for the entry" into the Settlement Agreement or if compelled by law or regulation. To the extent SKAT communicated with entities outside of this limitation concerning the Settlement Agreement or Plaintiffs and McGee in the pursuit of further prosecution or punishment, that would, at the very least, be a violation of its obligations under the Settlement Agreement.

**C. Documents From Other Litigations (Plaintiffs' Request Nos. 34-35):** Plaintiffs seek documents from other litigations brought by SKAT or cases where SKAT is a party concerning the Covered Parties' Designees, the Settlement Agreement, or SKAT's communications or interactions with SØIK. McGee did not interpose a similar request. SKAT agreed to produce only deposition transcripts, but only to the extent they discuss SKAT's communications with SØIK about the Covered Parties or the Settlement Agreement. SKAT has refused to produce any additional responsive documents, such as deposition testimony that shows SKAT's other communications with SØIK. *See* Exh. 1B at 31-32. Plaintiffs submit that this is improper.

Plaintiffs are aware that SKAT representatives have been deposed on topics concerning issues in this case. In fact, SKAT had to be compelled to produce witnesses for deposition with knowledge of the tax reclaim applications in the pending multi-district litigation before Judge Kaplan in 2021. Those depositions likely contain relevant information to this matter, such as SKAT's communications and relationship with SØIK in investigating the tax reclaims and the Settlement Agreement.

It is unclear why SKAT is willing to produce some deposition transcripts concerning SKAT's communications with SØIK about the Covered Parties or the Settlement Agreement, but not others. It is also unclear how it would be burdensome for SKAT to conduct a search of its files for responsive documents.

\*   \*   \*

Counsel are available for a pre-motion conference at the Court's convenience.

4860-3677-5835

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 4

                                    Respectfully submitted,

                                                  /s/

                                    Daniel W. Levy

Attach. (Exh. 1A, 1B)

cc:      All Counsel (by ECF)

4860-3677-5835