LETTER TO THE HONORABLE
NAOMI REICE BUCHWALD,
dated January 11, 2024

# Exhibit 1A

4864-7080-4380

Exhibit 1A to Letter,<br>dated January 11, 2024

## A. Time Period For Which SKAT Should Be Required to Produce Documents
### Request Nos. 1-10, 12, 26, 28, 29, 31

**Request for Production No. 1:**

All Communications between You and SØIK concerning the Settlement Agreement prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 2:**

All Communications between You and SØIK concerning any of the Covered Parties prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 3:**

All Communications between You and SØIK concerning any of the Covered Parties' Designees prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 4:**

All Communications between You and SØIK concerning Your obligations under the Settlement Agreement.

**Request for Production No. 5:**

All Communications between You and SØIK concerning obligations of the Covered Parties or Covered Parties' Designees under the Settlement Agreement, including, but not limited to, the alleged performance or non-performance of such obligations.

**Request for Production No. 6:**

All Communications between You and SØIK concerning any part of, text of, or draft part or text of the Settlement Agreement prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 7:**

All Communications between You and SØIK concerning the negotiation of the Settlement Agreement prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 8:**

All Communications between You and SØIK concerning the obligations of the Covered Parties pursuant to Section 7 of the Settlement Agreement, including whether and the extent to which cooperation by the Covered Parties may result in the recovery of funds by You.

Exhibit 1A to Letter,
dated January 11, 2024

**Request for Production No. 9:**

All Communications between You and SØIK concerning whether, and to what extent, the Settlement Agreement was in Your best interest prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 10:**

All Communications between You and SØIK concerning any comments on, questions about, or suggested revisions to the Settlement Agreement prior to, upon, and after the execution of the Settlement Agreement.

**Request for Production No. 12:**

Documents sufficient to identify all oral communications between You and SØIK concerning the Settlement Agreement, negotiation of the Settlement Agreement, any obligations under the Settlement Agreement, the alleged performance or non-performance of such obligations, the Covered Parties, or the Covered Parties' Designees, including, but not limited to, the date and time of such communication, the location or means or such communication, parties to such communication, and summaries, notes, or recordings of such communications.

**Request for Production No. 26:**

All Documents and Communications that You contend concern, support, refute, or otherwise relate to Your allegations in, paragraphs 67 and 79 of Your Answer to the Complaint, that:

(a) SKAT brought the Settlement Agreement and its terms to SØIK's attention;

(b) SKAT provided a full copy of Section 8(f) to SØIK;

(c) SKAT stated to SØIK that the Settlement Agreement reflected good faith negotiations by the Covered Parties;

(d) SKAT stated to SØIK that the Covered Parties' cooperation may result in the recovery by SKAT of additional funds from third parties;

(e) SKAT stated to SØIK that the Settlement Agreement was in SKAT's best interest;

(f) SKAT issued two press releases containing information substantially similar to that described in Section 8(f);

(g) SKAT shared drafts of these press releases with the Covered Parties' Designees; and

(h) SKAT provided the Covered Parties' Designees the opportunity to comment on the press releases before they were issued.

**Request for Production No. 28:**

All Documents and Communications concerning the Affidavit of Confession of Judgment executed by the Covered Parties' Designees on or about May 28, 2019.

**Request for Production No. 29:**

All Documents and Communications concerning the Affidavit of Confession of Judgment executed by the Covered Parties' Designees or about June 9, 2021.

**Request for Production No. 31:**

All Documents and Communications between You and the Covered Parties concerning the alleged performance or non-performance of any obligations of the Covered Parties or Covered Parties' Designees under the Settlement Agreement.

\*   \*   \*

**Plaintiffs' Complaint ¶ 27:**

27.  Starting in or about early 2017, Plaintiffs proactively began to negotiate with Defendant to resolve Defendant's contentions that dividend tax refunds paid to pension plans associated with Plaintiffs were obtained improperly and to repay, and cause to be repaid, dividend tax refunds paid by Defendant and obtained by these pension plans. The negotiations occurred over multiple years and ultimately resulted in the settlement agreement described below.

**Plaintiffs' Complaint ¶¶ 36, 75:**

36.  On or about May 28, 2019, Plaintiffs and others entered into a settlement agreement with Defendant (collectively, the "Settlement Agreement"). Besides Plaintiffs, more than 70 pension plans and more than 50 other individuals associated with those pension plans entered into the Settlement Agreement. That these other parties entered into the Settlement Agreement was largely the result of the efforts of Plaintiffs.

75.  Several weeks later, on or about April 13, 2021, SØIK indicted Plaintiffs, among others, for fraud of a particularly aggravated nature under Sections 88(1), 279, and 286(2) of the Danish Criminal Code. Under Danish criminal law, Plaintiffs face a term of imprisonment of up to twelve years for a violation of these provisions.

**Plaintiffs' Complaint ¶¶ 50-66:**

50.  Plaintiffs had an extensive series of obligations under the second phase of the Settlement Agreement ("Phase II"). For its part, Defendant had limited and discrete obligations under Phase II.

51. In Phase II of the Settlement Agreement, Plaintiffs and others were required to make a further payment of at least approximately DKK 600 million, subject to various adjustments, on or before three years from the effective date of the Settlement Agreement, which was extended by an additional year by operation of the Letter Agreement. Thus, the Settlement Agreement provides that a further payment of at least approximately DKK 600 million, subject to further adjustments, be made on or before May 28, 2023.

52. Plaintiffs and others were also required to "fully cooperate with the investigation by [Defendant] of third parties" who were not released by operation of the Settlement Agreement. The cooperation obligations included, in general, the provision of documents and information by Plaintiffs and also required that Plaintiffs' use of "their best efforts to ensure that their cooperation with [Defendant] is meaningful and productive."

53. In performing their obligations under Phase II of the Settlement Agreement, Plaintiffs made several substantial payments. The payments by Plaintiffs started in or around June 2020. These payments totaled approximately DKK 37.8 million, the approximate U.S. dollar equivalent of $5.71 million.

54. Also as a part of their Phase II performance and pursuant to the Letter Agreement, Plaintiffs provided approximately ten quarterly reports regarding the efforts by them to liquidate certain agreed-upon assets and, thereby, generate cash to be able to make the further payments required under Phase II of the Settlement Agreement. Plaintiffs began to provide these reports beginning on or about August 26, 2019.

55. As a further part of their Phase II performance, Plaintiffs produced over 90,000 documents to facilitate Defendant's litigation efforts in the United States. Plaintiffs also researched and answered numerous substantive questions posed by Defendant in connection with Defendant's prosecution of its claims against others. Plaintiffs also expended substantial time and resources supporting Defendant's requests for assistance in its prosecution of claims against other parties in actions that Defendant initiated in Dubai, the United Kingdom, and the United States.

56. As alleged above, payments to be made during Phase II of the Settlement Agreement could be subject to various adjustments. In the event there was a "claim, controversy or dispute" "arising out of or relating to" these adjustments that amounted to less than DKK 20 million, the approximate U.S. dollar equivalent of $2.85 million, the parties to the Settlement Agreement agreed to arbitrate such claim, controversy, or dispute before an arbitrator identified in the Settlement Agreement. The parties also had the right, but not the obligation, to arbitrate claims, controversies, or disputes relating to the payment adjustments that amounted to more than DKK 20 million.

57. In exchange for what Plaintiffs promised to do under Phase II of the Settlement Agreement, Defendant had only limited and discrete obligations under Phase II. Substantially all of the consideration provided by Defendant for the obligations in Phase II is contained in Sections 8 and 9 of the Settlement Agreement. Each of these obligations reflected the paramount concern of Plaintiffs about the possibility of being criminally charged by SØIK, Plaintiffs' desire

to minimize the chances that SØIK would initiate criminal charges against them in Denmark, and Defendant's recognition of these motivations.

58. First, Defendant and Plaintiffs agreed that the Settlement Agreement "is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which [Defendant] seeks to use" information provided by Plaintiffs as a result of Plaintiffs' obligation to cooperate with Defendant. As a result, Defendant and Plaintiffs "agree[d] to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in" Section 8.

59. Second, Defendant promised that it would limit disclosure of the Settlement Agreement, or its contents, to only the Danish Ministry of Taxation and to various other components of the Danish government, with disclosure being solely for the "purpose of seeking authority for the entry into th[e Settlement] Agreement by [Defendant] or if compelled by operation of law or regulation."

60. Defendant was also permitted to publicly disclose limited aspects of the Settlement Agreement. Those aspects that could be disclosed did not include the identity of Plaintiffs or the other parties to the Settlement Agreement.

61. Third, Defendant promised to give prompt, written notice to SØIK of certain exact matters specified in detail in Section 8(f) of Settlement Agreement. Specifically, Defendant promised that:

> Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

62. The requirements of Section 8(f) of the Settlement Agreement, including the writing requirement, were material.

63. Because Plaintiffs were concerned of the possibility of criminal charges in Denmark and sought to minimize the chances that SØIK would initiate criminal charges against them in Denmark, which Defendant recognized, it was of the utmost importance to Plaintiffs that Defendant itself -- which claimed to be the victim of a fraudulent scheme -- and not anyone else, including Plaintiffs themselves, promptly communicate to SØIK Plaintiffs' good faith efforts to make Defendant whole, their cooperation with Defendant, the substantial payments made under the Settlement Agreement, and the requirement that there be further payments under the Settlement Agreement, among other things.

64.     The writing required by Section 8(f) ensured that SØIK was informed of Plaintiffs' efforts and the terms of the Settlement Agreement via an official, written statement of the views of Defendant. Without a writing, Plaintiffs:

    (a)     could not be assured that SØIK was informed of Plaintiffs' efforts;

    (b)     could not be assured that any information imparted to SØIK would become part of the official records and institutional memory of SØIK; and

    (c)     could not be assured that the information imparted would be available in precisely the words agreed to by the parties to the Settlement Agreement to influence new and different actors within SØIK that might ultimately play a role in the decision whether to criminally charge Plaintiffs.

65.     The requirements of Section 8(f) were also material because, among other reasons, it was important that the Danish prosecutor, SØIK, be made aware promptly and in writing that the understanding of the parties to the Settlement Agreement and a "fundamental principle" on which it was based was that Plaintiffs and others were paying to Defendant the full amount of proceeds that Plaintiffs and others received directly or indirectly as a result of tax refund applications that were made to Defendant and that were the basis of Defendant's claims against Plaintiffs and others. Beyond that, it was important, and was reflected in the Settlement Agreement, that SØIK be made aware promptly and in writing that Plaintiffs, among others, "ha[d] expressed a willingness to use their best efforts and full cooperation to assist [Defendant] in various proceedings related to the subject matter" of the dividend tax refund applications at issue.

66.     Finally, the Settlement Agreement contained in Section 9 a non-disparagement clause that, in general, precluded Defendant, among others, from making statements that were "disparaging, derogatory or defamatory of or reasonably likely to damage" Plaintiffs, their reputations, business or affairs, nor could Defendant induce any person or entity to do so.

**Plaintiffs' Complaint ¶ 8 & pp. 23-24:**

8.     By this action, Plaintiffs seek, among other remedies: (a) to have Plaintiffs and Defendant restored to the position in which they were as of the completion of the parties' performance under the first phase of the settlement agreement; and (b) rescission of, and discharge from, the unperformed obligations of the second phase of the settlement agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

    i.     Finding that Defendant breached its obligations under Phase II of the Settlement Agreement;

    ii.     Finding that Defendant's breach was material;

      iii.      Finding that Defendant's breach was willful;

      iv.      Finding that Defendant's breach does not comport with basic standards of good faith and fair dealing;

      v.      Awarding Plaintiffs the remedy of rescission of Phase II of the Settlement Agreement and the Letter Agreement;

      vi.      Discharging Plaintiffs from any further obligations under Phase II of the Settlement Agreement and the Letter Agreement, including any further payment obligations;

      vii.      Voiding, setting aside, vacating, and otherwise declaring invalid and null and void the 2021 Affidavit of Confession of Judgment as to Plaintiffs;

      viii.      Disgorging, or restituting, to Plaintiffs payments made by Plaintiffs to Defendant during Phase II of the Settlement Agreement plus pre- and post-judgment interest under New York law;

      ix.      Restoring Plaintiffs and Defendant to the condition in which they were as of the completion of the parties' performance with the Phase I obligations;

      x.      Awarding Plaintiffs damages in an amount to be determined for breach of Phase II of the Settlement Agreement; and

      xi. Granting such other, further, and different relief as the Court deems just and proper.

Exhibit 1A to Letter,
dated January 11, 2024

## B. Communications Concerning The Settlement Agreement
### Request No. 22[2]

**Request for Production No. 22:**

All Communications between You and <u>any of the following entities</u> Person concerning the Settlement Agreement, negotiation of the Settlement Agreement, any obligations under the Settlement Agreement, the alleged performance or non-performance of such obligations, the Covered Parties, or the Covered Parties' Designees, including, but not limited to<u>,</u>: the United States Department of Justice, the Internal Revenue Service, the Kingdom of Belgium, the Federal Public Service Finance of the Kingdom of Belgium, <u>or</u> the Federal Republic of Germany, counsel to Plaintiffs, counsel to Luke McGee, and counsel to ~~any of the other Covered Parties~~.

**Plaintiffs' Complaint ¶¶ 5, 58, 66:**

5.  The Danish taxation authority was also required to use its best efforts to maintain the confidentiality of the settlement agreement consistent with the settlement agreement's terms. These obligations -- a prompt, written communication to the Danish criminal prosecutors and of confidentiality -- were virtually the only forms of consideration provided by the Danish taxation authority in the second phase of the settlement agreement. The second phase of the obligations under the settlement agreement required further payments by Plaintiffs and other parties to the settlement agreement and their extensive cooperation. During the second phase, Plaintiffs paid Defendant more than approximately $5.71 million and produced more than 90,000 documents to assist Defendant's efforts to recoup dividend tax refunds that it had paid out.

58.  First, Defendant and Plaintiffs agreed that the Settlement Agreement "is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which [Defendant] seeks to use" information provided by Plaintiffs as a result of Plaintiffs' obligation to cooperate with Defendant. As a result, Defendant and Plaintiffs "agree[d] to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in" Section 8.

66.  Finally, the Settlement Agreement contained in Section 9 a non-disparagement clause that, in general, precluded Defendant, among others, from making statements that were "disparaging, derogatory or defamatory of or reasonably likely to damage" Plaintiffs, their reputations, business or affairs, nor could Defendant induce any person or entity to do so.

---

[2] Revisions to the Request as shown were made by Plaintiffs and McGee in the course of the parties' meet and confers.

Exhibit 1A to Letter,
dated January 11, 2024

## C. Documents From Other Litigations
### Plaintiffs' Request Nos. 34-35[3]

**Request for Production No. 34:**

Transcripts of any depositions of any Person employed, or formerly employed by You, taken in connection with *In re: Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-MD-2865 (LAK), or any case consolidated as part of such multidistrict litigation, containing testimony concerning the ~~Covered Persons~~ Covered Parties' Designees, the Settlement Agreement, or Your communications or interactions with SØIK.

**Request for Production No. 35:**

All Documents filed, served, or interposed in any litigation initiated by You, or in which You are a party, in any forum, wherever located, where such Document concerns, in whole or in part, the ~~Covered Persons~~ Covered Parties' Designees, the Settlement Agreement, or Your communications or interactions with SØIK, including briefs, legal arguments, court submissions, skeletal arguments, pleadings, sworn or unsworn statements, declarations, or affirmations.

---

[3] Plaintiffs interposed these requests. McGee did not. Revisions to the Request as shown were made by Plaintiffs in the course of the parties' meet and confers.