# MCKOOL SMITH

Daniel W. Levy
Direct Dial: (212) 402-9412
E-mail: dlevy@mckoolsmith.com

One Manhattan West
395 Ninth Avenue, 50th Floor
New York, NY 10001

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

January 11, 2024

By ECF
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Room 2270
New York, New York  10007

Re:     Stein and Lhote v. Skatteforvaltningen
         23 Civ. 2508 (NRB)

Dear Judge Buchwald:

As set forth in the prior letter submitted on behalf of Plaintiffs and McGee, ECF No. 73, we seek the Court's assistance in resolving disputes regarding several requests for the production of documents served on SKAT.  The parties have conferred in good faith by telephone and by e-mail and have been unable to resolve their disputes.

Attached as Exhibit 2A are the requests that are at issue organized according to the nature of the disputes identified below.

**A. SKAT's Communications With SØIK Concerning The Settlement Agreement (Request Nos. 1-5, 7-10, 12):**  Plaintiffs' principal allegation is that SKAT breached its obligation in the Settlement Agreement under 8(f) to: (a) promptly upon execution of the Settlement Agreement (b) bring, in writing, the agreement and its terms to the attention of the Danish prosecutor ("SØIK"); and (c) represent, in writing, that the agreement reflects the Covered Parties' good-faith negotiation, their cooperation may result in SKAT's recovery of additional funds, and the agreement is in SKAT's best interests.  *See* ECF No. 11 at ¶¶ 61-65.

To date, SKAT has provided no evidence that SKAT complied with its obligation under Section 8(f).  What Plaintiffs are aware of now is a communication from SKAT to SØIK about two weeks *before* execution of the Settlement Agreement, which did not bring the important terms of the Settlement Agreement to SØIK's attention or identify the Covered Parties.  There is also a communication from SKAT to SØIK more than eighteen months *after* execution of the Settlement Agreement by which SKAT responded to a series of questions from SØIK about the Settlement Agreement.  Of course, had SØIK previously been informed of what was required by Section 8(f), SØIK would not have needed to ask these questions.  Indeed, had SKAT complied with Section 8(f) and had SØIK learned of the efforts of Plaintiffs and McGee to settle and cooperate, SØIK may have never investigated at all.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin  |  Dallas  |  Houston  |  Los Angeles  |  Marshall  |  New York  |  Washington, DC**

4877-4434-0364

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 2

It is crucial to Plaintiffs' ability to prove a breach and that it was material to have insight into how SKAT communicated with SØIK on a range of subjects. The whole point of Section 8(f) was to have SKAT communicate with SØIK in a way that positively influenced SØIK's investigation of the Covered Parties' Designees.

Accordingly, Plaintiffs and McGee propounded requests seeking SKAT's communications with SØIK on various topics arising out of Section 8(f). *See* Exh. 2A at § (A) (setting out Request Nos. 1-5, 7-10). The requests largely map onto the subjects on which SKAT was required to communicate with SØIK and are safely within Rule 26(b)(1). *Compare* ECF No. 11 at ¶ 61, *with* Exh. 2A at § (A). Plaintiffs and McGee also seek documents sufficient to identify oral communications between SKAT and SØIK. *See* Exh. 2A at Request No. 12. After Plaintiffs and McGee were indicted, Plaintiffs repeatedly sought evidence from SKAT that it had complied with Section 8(f). SKAT never provided it. *See* ECF No. 11 at ¶¶ 77, 79. Instead, after weeks of pressing, SKAT's counsel contended only that there were meetings and phone conversations, but did not refer to, or provide, any writing. *See* E-mail from Marc A. Weinstein, dated June 18, 2021 (attached as Exh. 2B).

SKAT's responses to these requests was that it would produce documents only "to the extent [they] relate[ ] to Section 8(f)." *See* ECF No. 73-2 (Exh. 1B) at 9-17. SKAT's explanations during the parties meet and confers of what it intends to exclude as *not* related to Section 8(f) have been circular, unhelpful, unworkable, and inconsistent with Rule 26. Section 8(f) required SKAT to communicate with SØIK on a broad range of topics. Those communications are critical to determining whether Plaintiffs and McGee received the benefit of the bargain. Again, the main purpose of Section 8(f) was to positively influence SØIK in its investigation of the Covered Parties' Designees and to possibly forestall any criminal investigation. Whatever SKAT said on the topics set out in these requests bears directly on both SKAT's breach and the materiality of it.

**B. Communications With SØIK Concerning Proceedings Against Plaintiffs and McGee (Request No. 11):** Plaintiffs and McGee requested SKAT's communications with SØIK concerning proceedings initiated, or to be initiated, against Plaintiffs and McGee, including but not limited to the indictment of them and any proceedings related to their assets. Plaintiffs and McGee requested this material to determine whether SKAT encouraged SØIK to indict Plaintiffs and McGee and, relatedly, whether SKAT encouraged SØIK to obtain orders to seize their assets. Indeed, SØIK did exactly that in or about April 2020. These communications also bear on the materiality of SKAT's breach. If SKAT failed to communicate as required by Section 8(f) promptly upon execution of the Settlement Agreement and, having failed to do so, encouraged, or assisted, SØIK in initiating proceedings against the Covered Parties' Designees, SKAT's breach would be all the more material.

Documents on both of these topics also bear on whether SKAT breached the implied obligation of good faith and fair dealing under New York law by, for example, prejudicing Plaintiffs and McGee's right to the benefit of their bargain with SKAT or violating the parties' expectations. *See, e.g.*, *CoraMed USA, LLC v. Alexion Pharms., Inc.*, 2023 WL 6302297, at *7 (E.D.N.Y. Sept. 27, 2023). Relatedly, documents on both of these topics bear on whether SKAT violated its non-disparagement obligations. *See* ECF No. 11 at ¶ 66.

4877-4434-0364

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 3

SKAT refused to produce documents responsive to this request except if they were responsive to other requests. SKAT largely has asserted that this request improperly sought discovery of SØIK's investigation. Plaintiffs and McGee submit that the request is appropriate and a full response should be required. It is likely that, had SKAT complied with Section 8(f), SØIK's criminal investigation would have proceeded differently or, indeed, may not have proceeded at all. By early 2021, when SØIK asked SKAT a series of questions to which it should have already had the answers, the proverbial train had left the station. As a result, *any* communications between SKAT and SØIK at *any* time are relevant.

It bears repeating that the main purpose of Section 8(f) was to have SKAT positively influence SØIK's investigation of the Covered Parties' Designees. It is crucial for them to learn how SKAT positively (or negatively) influenced SØIK. The goal of Plaintiffs and McGee, and the reason why they agreed to it in the first place, as SKAT well knew, was to maximize their chances of avoiding criminal charges in Denmark and to otherwise ensure that SØIK was aware of everything that they had done to cooperate with SKAT. *See* ECF No. 11 at ¶¶ 6, 31, 34-35, 57, 63-65. To the extent SKAT frustrated that purpose, for example, communicated with SØIK in a way that encouraged SØIK to charge Plaintiffs and McGee or that contradicted statements required by Section 8(f), they are entitled to review those communications.

**C. Communications Concerning Section 2(c) of The Settlement Agreement Prior To Execution (Request No. 30):** Plaintiffs seek communications between SKAT and the Covered Parties concerning Section 2(c) prior to the execution of the Settlement Agreement. *See* Exh. 2A at § (C). Section 2(c) provides that "[t]he Covered Parties' obligation to pay the Final Settlement Amount is absolute and unconditional." The request was designed to uncover evidence concerning the intent of the parties related to this provision.

SKAT has suggested that this language renders it impossible for Plaintiffs and McGee to assert that a breach of Section 8(f) entitles them to relief. In doing so, SKAT ignores other parts of Section 2(c) that limit the claimed "absolute and unconditional" payment obligations. *See* Exh. 2A at § (C). In order to determine what the parties to the Settlement Agreement intended by this language, Plaintiffs and McGee requested communications related to Section 2(c).

SKAT refused to produce responsive documents asserting that that there is no ambiguity in the Settlement Agreement and, therefore, no basis to seek discovery into the negotiations. This is not how the discovery process (or the interpretation of contracts) works. SKAT does not get to announce that there is no ambiguity to a contractual provision -- a question committed to resolution by the Court -- and refuse to produce discovery about what the parties meant by it.[1]

Accordingly, SKAT should be directed to produce its communications with the Covered Parties about Section 2(c).

---

[1] Indeed, recognizing the relevance of communications relating to Section 2(c), SKAT itself initially requested "[a]ll documents dand communications concerning section[] 2(c)," a request that it subsequently withdrew when it no doubt realized the utter hypocrisy of its own refusal to produce the very same documents.

4877-4434-0364

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 4

Respectfully submitted,

/s/

Daniel W. Levy

Attach. (Exh. 2A, 2B)

cc:    All Counsel (by ECF)