# LETTER TO THE HONORABLE NAOMI REICE BUCHWALD, dated January 11, 2024

# Exhibit 2A

4864-7080-4380

**Exhibit 2A to Letter,
dated January 11, 2024**

## A. SKAT's Communications With SØIK
### Concerning The Settlement Agreement
### Request Nos. 1-5, 7-10, 12

**Request for Production No. 1:**

All Communications between You and SØIK concerning the Settlement Agreement prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 2:**

All Communications between You and SØIK concerning any of the Covered Parties prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 3:**

All Communications between You and SØIK concerning any of the Covered Parties' Designees prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 4:**

All Communications between You and SØIK concerning Your obligations under the Settlement Agreement.

**Request for Production No. 5:**

All Communications between You and SØIK concerning obligations of the Covered Parties or Covered Parties' Designees under the Settlement Agreement, including, but not limited to, the alleged performance or non-performance of such obligations.

**Request for Production No. 7:**

All Communications between You and SØIK concerning the negotiation of the Settlement Agreement prior to, upon, and after execution of the Settlement Agreement.

**Request for Production No. 8:**

All Communications between You and SØIK concerning the obligations of the Covered Parties pursuant to Section 7 of the Settlement Agreement, including whether and the extent to which cooperation by the Covered Parties may result in the recovery of funds by You.

**Request for Production No. 9:**

All Communications between You and SØIK concerning whether, and to what extent, the Settlement Agreement was in Your best interest prior to, upon, and after execution of the Settlement Agreement.

**Exhibit 2A to Letter,**<br>**dated January 11, 2024**

**Request for Production No. 10:**

All Communications between You and SØIK concerning any comments on, questions about, or suggested revisions to the Settlement Agreement prior to, upon, and after the execution of the Settlement Agreement.

**Request for Production No. 12:**

Documents sufficient to identify all oral communications between You and SØIK concerning the Settlement Agreement, negotiation of the Settlement Agreement, any obligations under the Settlement Agreement, the alleged performance or non-performance of such obligations, the Covered Parties, or the Covered Parties' Designees, including, but not limited to, the date and time of such communication, the location or means or such communication, parties to such communication, and summaries, notes, or recordings of such communications.

*   *   *

**Plaintiffs' Complaint ¶¶ 61-65:**

61.   Third, Defendant promised to give prompt, written notice to SØIK of certain exact matters specified in detail in Section 8(f) of Settlement Agreement. Specifically, Defendant promised that:

> Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

62.   The requirements of Section 8(f) of the Settlement Agreement, including the writing requirement, were material.

63.   Because Plaintiffs were concerned of the possibility of criminal charges in Denmark and sought to minimize the chances that SØIK would initiate criminal charges against them in Denmark, which Defendant recognized, it was of the utmost importance to Plaintiffs that Defendant itself -- which claimed to be the victim of a fraudulent scheme -- and not anyone else, including Plaintiffs themselves, promptly communicate to SØIK Plaintiffs' good faith efforts to make Defendant whole, their cooperation with Defendant, the substantial payments made under the Settlement Agreement, and the requirement that there be further payments under the Settlement Agreement, among other things.

Exh. 2A, Page 2

64. The writing required by Section 8(f) ensured that SØIK was informed of Plaintiffs' efforts and the terms of the Settlement Agreement via an official, written statement of the views of Defendant. Without a writing, Plaintiffs:

    (a) could not be assured that SØIK was informed of Plaintiffs' efforts;

    (b) could not be assured that any information imparted to SØIK would become part of the official records and institutional memory of SØIK; and

    (c) could not be assured that the information imparted would be available in precisely the words agreed to by the parties to the Settlement Agreement to influence new and different actors within SØIK that might ultimately play a role in the decision whether to criminally charge Plaintiffs.

65. The requirements of Section 8(f) were also material because, among other reasons, it was important that the Danish prosecutor, SØIK, be made aware promptly and in writing that the understanding of the parties to the Settlement Agreement and a "fundamental principle" on which it was based was that Plaintiffs and others were paying to Defendant the full amount of proceeds that Plaintiffs and others received directly or indirectly as a result of tax refund applications that were made to Defendant and that were the basis of Defendant's claims against Plaintiffs and others. Beyond that, it was important, and was reflected in the Settlement Agreement, that SØIK be made aware promptly and in writing that Plaintiffs, among others, "ha[d] expressed a willingness to use their best efforts and full cooperation to assist [Defendant] in various proceedings related to the subject matter" of the dividend tax refund applications at issue.

**Plaintiffs' Complaint ¶¶ 77, 79:**

77. In the period immediately following the indictment, U.S. counsel for Defendant was repeatedly requested to provide the written communication from Defendant to SØIK required by Section 8(f) of the Settlement Agreement.

78. On or about June 9, 2021, each of Plaintiffs provided an updated affidavit of confession of judgment concerning, in general, payments to be made during Phase II of the Settlement Agreement (the "2021 Affidavit of Confession of Judgment"). Doing so was a requirement of Phase II of the Settlement Agreement and was designed to facilitate Defendant's collection of payments to be made as required by Phase II of the Settlement Agreement in the event of a failure to make those payments or another breach of Phase II of the Settlement Agreement.

79. Despite repeated requests, U.S. counsel for Defendant never provided to Plaintiffs the written communication from Defendant to SØIK required by Section 8(f) of the Settlement Agreement. Nor, despite repeated requests, has U.S. counsel for Defendant ever indicated, confirmed, or even suggested that the required written communication to SØIK was provided by Defendant.

Exhibit 2A to Letter,
dated January 11, 2024

## B. Communications With SØIK Concerning Proceedings Against Plaintiffs and McGee
### Request No. 11

**Request for Production No. 11:**

All Communications between You and SØIK concerning any proceedings initiated, or to be initiated, against the Covered Parties' Designees or with respect to assets of the Covered Parties, including, but not limited to, the 2021 indictment of Plaintiffs and any proceedings to restrain, seize, or freeze any assets of the Covered Parties.

\*   \*   \*

**Plaintiffs' Complaint ¶¶ 6, 31, 34-35, 57, 63-66:**

6. The requirement of a prompt writing from the Danish taxation authority to the Danish criminal prosecutors was a material and, indeed, crucial element of the settlement agreement. One of the principal purposes and motivations of Plaintiffs' settlement with the Danish taxation authority, and the reason it was so important that the Danish taxation authority communicate in writing to the Danish criminal prosecutors the taxation authority's official position about the settlement agreement and the process of reaching it, was to maximize Plaintiffs' chances of avoiding criminal charges in Denmark.

31. Even before the negotiations between Plaintiffs and Defendant began, Plaintiffs were concerned that Danish criminal authorities, specifically, the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK"), might initiate a criminal investigation of them and others as a result of dividend tax refund applications made by pension plans associated with Plaintiffs and, ultimately, criminal charges against them in Denmark. SØIK is a component of the government of the Kingdom of Denmark and is separate from Defendant.

34. Indeed, for some time, Plaintiffs were discussing with Defendant a resolution that would involve, as a condition precedent, an undertaking by SØIK not to initiate criminal charges against Plaintiffs. Ultimately, in or about early 2019, Plaintiffs determined that they would continue the negotiations with Defendant without any such undertaking from SØIK.

35. Nonetheless, Plaintiffs' focus on minimizing the chances that SØIK would initiate criminal charges remained a substantial motivation in continuing the negotiations with Defendant, and Defendant's recognition of this, are reflected in the final terms of the settlement agreement that were ultimately agreed to by both Plaintiffs and Defendant.

57. In exchange for what Plaintiffs promised to do under Phase II of the Settlement Agreement, Defendant had only limited and discrete obligations under Phase II. Substantially all of the consideration provided by Defendant for the obligations in Phase II is contained in Sections 8 and 9 of the Settlement Agreement. Each of these obligations reflected the paramount concern of Plaintiffs about the possibility of being criminally charged by SØIK, Plaintiffs' desire to minimize the chances that SØIK would initiate criminal charges against them in Denmark, and Defendant's recognition of these motivations.

66.     Finally, the Settlement Agreement contained in Section 9 a non-disparagement clause that, in general, precluded Defendant, among others, from making statements that were "disparaging, derogatory or defamatory of or reasonably likely to damage" Plaintiffs, their reputations, business or affairs, nor could Defendant induce any person or entity to do so.

**Plaintiffs' Complaint ¶¶ 63-65:** As set forth in Section (A), above.

### C. Communications Concerning Section 2(c) of The Settlement Agreement Prior To Execution
### Request No. 30[1]

**Request for Production No. 30:**

All Documents and Communications <u>prior to execution of the Settlement Agreement</u> between You and the Covered Parties concerning <u>Section 2(c) of</u> ~~the negotiation of~~ the Settlement Agreement <u>or the Covered Parties' Designees</u> ~~prior to, upon, and after execution of the Settlement Agreement~~.

*   *   *

**Settlement Agreement § 2(c)**

c. The Covered Parties' obligation to pay the Final Settlement Amount is absolute and unconditional. The Covered Parties shall not be required to make payments in excess of the Final Settlement Amount, with the sole exception that, in the case of an "Event of Default" as defined in Section 5, the Covered Parties' Designees must pay an additional amount as set forth in Section 5(d)(iii) of this Agreement. In the event that the Covered Parties timely complete the Initial Cash Payment pursuant to Sections 2(a)(i) and 2(a)(ii), then Skatteforvaltningen's sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavit of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c).

---

[1] Revisions to the Request as shown were made by Plaintiffs and McGee in the course of the parties' meet and confers.