# McKool Smith

Daniel W. Levy
Direct Dial: (212) 402-9412
E-mail: dlevy@mckoolsmith.com

One Manhattan West
395 Ninth Avenue, 50th Floor
New York, NY 10001

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

January 11, 2024

By ECF
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Room 2270
New York, New York  10007

      Re:      Stein and Lhote v. Skatteforvaltningen
                   23 Civ. 2508 (NRB)

Dear Judge Buchwald:

      As set forth in the prior letter submitted on behalf of Plaintiffs and McGee, ECF No. 73, we seek the Court's assistance in resolving disputes regarding several requests for the production of documents and interrogatories served on SKAT.  The parties have conferred in good faith by telephone and by e-mail and have been unable to resolve their disputes.

      Attached as Exhibit 3A are the interrogatories and document requests that are at issue organized according to the nature of the disputes identified below.

      **A. Individuals With Knowledge of the Settlement Agreement (Request Nos. 32-33; Interrogatory Nos. 1-2):**  Plaintiffs principally allege that SKAT failed to satisfy its obligations under Section 8(f), which was to notify SØIK, in writing, of the terms of the Settlement Agreement, among other things.  *See generally* ECF No. 11 at ¶¶ 61-65.

      A key part of this claim is proving that SKAT's breach was material, a determination that must be made based on, among other things, the parties' understanding of the purpose of the contract, the injured party's reasonable expectations, and the good faith of the non-breaching party.  *See Wechsler v. Hunt Health Sys.*, 330 F. Supp. 2d 383, 415 (S.D.N.Y. 2004) (setting out factors for determining materiality under Restatement (Second) of Contracts § 241).

      To that end, Plaintiffs served two straightforward, non-burdensome requests for production.  The document requests sought documents sufficient to identify, one, those who had a role in the terms of the Settlement Agreement and, two, those who had a role in complying with it.  *See* Exh. 3 at § (A) (Request for Production Nos. 32-33).  SKAT refused to produce any documents responsive to the first and stated that only communications "pursuant to Section 8(f)," whatever that might mean, and nothing else, would be sufficiently responsive to the second.  *See* ECF No. 73-2 (Exh. 1B) at 19, 31.

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 2

This response was improper. Surprised at SKAT's refusal to even identify witnesses and in the hopes of avoiding litigation of these document requests, Plaintiffs propounded two interrogatories that largely cover the same ground, the mere identification of witnesses.

Plaintiffs asked SKAT to identify individuals with knowledge of SKAT's communications with SØIK concerning the Settlement Agreement or the Covered Parties' Designees. *See* Exh. 3 at § (A) (Interrogatory No. 1). Plaintiffs also asked SKAT to identify individuals currently or formerly employed at SKAT who had a role in the various aspects of the Settlement Agreement (its negotiation, approval, execution, performance, *etc.*). *Id.* (Interrogatory No. 2).

SKAT responded to the first interrogatory by identifying one individual who it said had the "most knowledge" of SKAT's communications with SØIK concerning the Settlement Agreement and one other person who also had knowledge of this subject. Notwithstanding their failure to produce documents in response to the related document request, SKAT contended in its interrogatory response that there were others listed in documents, which they would produce, but, as of yet, have not. They refused to identify anyone with knowledge of SKAT's communications with SØIK concerning the Covered Parties' Designees. *See* SKAT's Interrogatory Responses, dated Dec. 4, 2023, at 4-5 (attached as Exh. 3B).

As for the second interrogatory, SKAT identified the individuals named in the response to the first interrogatory, but limited its answer "to individuals with knowledge of the performance of Section 8(f) of the Settlement Agreement." *Id.* SKAT refused to identify anyone involved in negotiating, drafting, commenting upon, revising, approving, executing, or performing under the Settlement Agreement. *Id.*

This is insufficient. SKAT has an obligation to identify individuals with knowledge of the facts of the case and cannot artificially limit that group by choosing to only identify those that they assert have the *most* knowledge. The notion that only two people in all of SKAT -- a large governmental agency that oversees taxation in a country of nearly 6 million people -- know everything about the negotiation and execution of the Settlement Agreement, a matter that was the subject of considerable scrutiny in Denmark, is simply not plausible. Nor should SKAT be able to limit the identification of witnesses to those who know about SKAT's communications with SØIK about the Settlement Agreement, but not about the Covered Parties' Designees. After all, the main reason that Plaintiffs and McGee insisted on Section 8(f) was to have SKAT communicate with SØIK in a way that positively influenced SØIK's investigation of the Covered Parties' Designees. They should be able to know who spoke to SØIK about them.

In addition, SKAT's objections based on burden and proportionality are baseless. SKAT can ascertain, with relatively minimal effort, its employees that played a role in the Settlement Agreement or that have knowledge of SKAT's communications with SØIK.

**B. SKAT's Communications with the Press (Request Nos. 20-21; Interrogatory No. 3):** In answering Plaintiffs' allegation that SKAT breached Section 8(f), SKAT averred that it had taken various steps to comply, including by asserting that "it issued two press releases containing information substantially similar to that described in Section 8(f)." ECF No. 48 at ¶ 67; *id.* at ¶ 79. SKAT itself injected its communications with the press into the case.

4874-3778-0118

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 3

During the parties' meet and confers, SKAT explained that it does not intend to rely on actual testimony from a SØIK representative that SØIK knew about (or even received) these press releases. Rather, SKAT intends to rely on the inference that SØIK *must* have known of the terms of the Settlement Agreement from the two press releases that SKAT has selected. This, SKAT's theory goes, somehow satisfied (or helped satisfy) SKAT's Section 8(f) obligations.

Whatever may be said about this strategy, there were a considerable number of *other* statements that SKAT made to the press about the Settlement Agreement beyond the two press releases that SKAT has chosen to rely upon. Some of SKAT's statements were made in direct response to public reporting about the Settlement Agreement, including statements that SKAT made *contesting* the accuracy of the public reporting. Because of SKAT's disagreements with some of that public reporting, SKAT went so far as to comment that "certain media persistently maintain incorrect interpretations of the settlement in public."

To understand the full scope of what SKAT said to the press and the full scope of what SKAT asserts that SØIK *must have known*, Plaintiffs requested documents concerning SKAT's communications with the press on subjects including the Settlement Agreement and the Covered Parties' Designees. Exh. 3A at § (B) (Request Nos. 20-21). Plaintiffs also propounded a simple interrogatory seeking identification of the SKAT employees who know about its communications with specific members of the press about the Settlement Agreement or the Covered Parties' Designees. *Id.*

SKAT refused to produce any documents in response to these requests (other than the two press releases) and refused to respond to the interrogatory. Exh. 1B at 22-23; Exh. 3B at 6. This was improper.

SKAT cannot assert that SØIK must have known about the two specific press releases on which SKAT intends to rely, but that *other* facts that SKAT itself injected into the press were *not* known by SØIK or are not at least relevant to what SØIK knew. And, if SKAT introduced information that is different from what is contained in its two selected press releases into the press, Plaintiffs and McGee are entitled to know that too. SKAT simply cannot cherry-pick two press releases as its discovery on this issue and refuse to produce any additional documents that would allow Plaintiffs to understand the full scope of SKAT's communications with the press. That is not how discovery works. After all, SKAT has affirmatively placed at issue its communications with the press into this matter.

Beyond that, there is also the matter of leaks to the press. *See* ECF No. 11 at ¶¶ 70-71. In late September 2019, Plaintiffs were publicly identified in the press. They were called the "masterminds" of a massive scheme to defraud Danish taxpayers. These leaks "created an environment that was deeply antithetical to any result other than that Plaintiffs should be criminally charged in Denmark and that continued for years after the leaks began in or around September 2019" and made it all the more important that SKAT had communicated in writing with SØIK as required by Section 8(f). *Id.* at ¶ 70. Plaintiffs should be able to discover whether any of these leaks were the result of conduct by SKAT and, in doing so, whether SKAT itself engaged in conduct that frustrated the purposes of Section 8(f), a most critical term of the Settlement Agreement. *See id.* ¶¶ 5, 58, 66.

The Honorable Naomi Reice Buchwald
January 11, 2024
Page 4

                                                Respectfully submitted,

                                                                       /s/

                                                Daniel W. Levy

Attach. (Exh. 3A, 3B)

cc:      All Counsel (by ECF)

4874-3778-0118