LETTER TO THE HONORABLE
NAOMI REICE BUCHWALD,
dated January 11, 2024

# Exhibit 3A

Exhibit 3A to Letter,
Edated January 11, 2024

## A. Plaintiffs' Document Requests and Interrogatories Regarding <u>Individuals with Knowledge of the Settlement Agreement</u>
### Request Nos. 32-33
### Interrogatory Nos. 1-2

**Request for Production No. 32:**

Documents sufficient to identify any Person who had any role in negotiating, drafting, commenting upon, revising, approving, or executing the Settlement Agreement or the Letter Agreement.

**Request for Production No. 33:**

Documents sufficient to identify any Person who had any role in performing or complying with any obligation under the Settlement Agreement or the Letter Agreement.

**Interrogatory No. 1:**

Identify those Persons currently or formerly employed by SKAT with knowledge of SKAT's Communications with SØIK concerning the Settlement Agreement, including in relation to Section 8(f) of the Settlement Agreement, or concerning the Covered Parties' Designees.

**Interrogatory No. 2:**

Identify those Persons currently or formerly employed by SKAT with knowledge of the negotiation, drafting, commenting upon, revision, approval, execution, and performance of the Settlement Agreement.

\*         \*         \*

**Plaintiffs' Complaint ¶¶ 61-65:**

61. Third, Defendant promised to give prompt, written notice to SØIK of certain exact matters specified in detail in Section 8(f) of Settlement Agreement. Specifically, Defendant promised that:

> Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

62. The requirements of Section 8(f) of the Settlement Agreement, including the writing requirement, were material.

63. Because Plaintiffs were concerned of the possibility of criminal charges in Denmark and sought to minimize the chances that SØIK would initiate criminal charges against them in Denmark, which Defendant recognized, it was of the utmost importance to Plaintiffs that Defendant itself -- which claimed to be the victim of a fraudulent scheme -- and not anyone else, including Plaintiffs themselves, promptly communicate to SØIK Plaintiffs' good faith efforts to make Defendant whole, their cooperation with Defendant, the substantial payments made under the Settlement Agreement, and the requirement that there be further payments under the Settlement Agreement, among other things.

64. The writing required by Section 8(f) ensured that SØIK was informed of Plaintiffs' efforts and the terms of the Settlement Agreement via an official, written statement of the views of Defendant. Without a writing, Plaintiffs:

    (a)    could not be assured that SØIK was informed of Plaintiffs' efforts;

    (b)    could not be assured that any information imparted to SØIK would become part of the official records and institutional memory of SØIK; and

    (c)    could not be assured that the information imparted would be available in precisely the words agreed to by the parties to the Settlement Agreement to influence new and different actors within SØIK that might ultimately play a role in the decision whether to criminally charge Plaintiffs.

65. The requirements of Section 8(f) were also material because, among other reasons, it was important that the Danish prosecutor, SØIK, be made aware promptly and in writing that the understanding of the parties to the Settlement Agreement and a "fundamental principle" on which it was based was that Plaintiffs and others were paying to Defendant the full amount of proceeds that Plaintiffs and others received directly or indirectly as a result of tax refund applications that were made to Defendant and that were the basis of Defendant's claims against Plaintiffs and others. Beyond that, it was important, and was reflected in the Settlement Agreement, that SØIK be made aware promptly and in writing that Plaintiffs, among others, "ha[d] expressed a willingness to use their best efforts and full cooperation to assist [Defendant] in various proceedings related to the subject matter" of the dividend tax refund applications at issue.

Exhibit 3A to Letter,<br>Edated January 11, 2024

## B. Plaintiffs' Interrogatory and Document Requests
### Regarding SKAT's Communications with the Press
### Request Nos. 20-21
### Interrogatory No. 3

**Request for Production No. 20:**

All Communications between You and the Press concerning the Settlement Agreement, negotiation of the Settlement Agreement, any obligations under the Settlement Agreement, the alleged performance or non-performance of such obligations, the Covered Parties, or the Covered Parties' Designees, including, but not limited to, press releases, press conferences and recordings thereof, e-mails, text messages, and letters, whether on the record, off the record, on background, or otherwise.

**Request for Production No. 21:**

Documents sufficient to identify all oral communications between You and the Press concerning the Settlement Agreement, negotiation of the Settlement Agreement, any obligations under the Settlement Agreement, the alleged performance or non-performance of such obligations, the Covered Parties, or the Covered Parties' Designees, including, but not limited to, the date and time of such communication, the location or means or such communication, parties to such communication, and summaries, notes, or recordings of such communications.

**Requests for Production Definitions ¶ 11:**

The term "Press" means any members of the news media in the United States, Denmark, or elsewhere, such as reporters and journalists, whether print, Internet, or television, including but not limited to, Joachim Claushøj, also known as Joachim Claushøj Bindslev, Aleksander Josevski, Thomas Østerlin Koch, Yan Kovyakh, Ann McDonald, Niels Lykke Møller, Morten Spiegelhauer, Jesper Høberg, Peter Vesterlund, Niels Fastrup, Mikkel Walentin Mortensen, Jeppe Tholstrup Bach, Kristen Corfixen, John Hansen, Johan Christensen, TV 2, Ritzau, Politeken, Knack, Borsen, Süddeutsche Zeitung, or Radio Denmark.

**Interrogatory No. 3:**

Identify those Persons currently or formerly employed by SKAT with knowledge of SKAT's Communications with Specified Members of the Press concerning the Settlement Agreement or the Covered Parties' Designees.

Exhibit 3A to Letter,
Edated January 11, 2024

**Interrogatory Definitions ¶ 8:**

The term "Specified Members of the Press" means any of the following: Joachim Claushøj, also known as Joachim Claushøj Bindslev, Aleksander Josevski, Thomas Østerlin Koch, Yan Kovyakh, Ann McDonald, Niels Lykke Møller, Morten Spiegelhauer, Jesper Høberg, Peter Vesterlund, Niels Fastrup, Mikkel Walentin Mortensen, Jeppe Tholstrup Bach, Kristen Corfixen, John Hansen, Johan Christensen, TV 2, Ritzau, Politeken, Knack, Borsen, Süddeutsche Zeitung, and Radio Denmark.

\*   \*   \*

**Plaintiffs' Complaint ¶¶ 67, 79**

67. Despite the simplicity of complying with these obligations and the ease with which it could have done so, Defendant did not fulfill, and breached the obligations in Section 8(f) of the Settlement Agreement to "promptly upon the execution of the Settlement Agreement":

(a) "in writing" "bring to the attention of SØIK "th[e Settlement] Agreement and its terms"; and

(b) "represent, in writing, that th[e Settlement] Agreement reflects good-faith negotiation by [Plaintiffs and others], that . . . cooperation [by Plaintiffs and others] may result in the recovery by [Defendant] of additional funds from third parties and that th[e Settlement Agreement] is in the best interests of [Defendant]."

79. Despite repeated requests, U.S. counsel for Defendant never provided to Plaintiffs the written communication from Defendant to SØIK required by Section 8(f) of the Settlement Agreement. Nor, despite repeated requests, has U.S. counsel for Defendant ever indicated, confirmed, or even suggested that the required written communication to SØIK was provided by Defendant.

**Defendant's Answer to Complaint ¶ 67 (emphasis added)**

67. To the extent Paragraph 67 characterizes or summarizes the Settlement Agreement, SKAT respectfully refers the Court to the Settlement Agreement, which speaks for itself.  To the extent Paragraph 67 states conclusions of law, no response is required. SKAT denies any remaining allegations in Paragraph 67, but avers that SKAT brought the Settlement Agreement and its terms to SØIK's attention; that SKAT provided a full copy of Section 8(f) to SØIK; and that SKAT stated to SØIK, inter alia, that the Settlement Agreement reflected good faith negotiations by the Covered Parties; that the Covered Parties' cooperation may result in the recovery by SKAT of additional funds from third parties; and that the Settlement Agreement was in SKAT's best interest. **SKAT further avers that it issued two press releases containing information substantially similar to that described in Section 8(f)**; shared drafts of these press releases with the Covered Parties' Designees; and provided the Covered Parties' Designees the opportunity to comment on the press releases before they were issued.

79.     SKAT denies the allegations in first sentence of Paragraph 79, and avers that SKAT brought the Settlement Agreement and its terms to SØIK's attention; that SKAT provided a full copy of Section 8(f) to SØIK; and that SKAT stated to SØIK, inter alia, that the Settlement Agreement reflected good faith negotiations by the Covered Parties; that the Covered Parties' cooperation may result in the recovery by SKAT of additional funds from third parties; and that the Settlement Agreement was in SKAT's best interest.  SKAT further avers that it issued two press releases containing information substantially similar to that described in Section 8(f); shared drafts of these press releases with the Covered Parties' Designees; and provided the Covered Parties' Designees the opportunity to comment on the press releases before they were issued.  SKAT denies the allegations in the second sentence of Paragraph 79.

**Plaintiffs' Complaint ¶¶ 70-71:**

70.     Defendant's breach of its obligations under Section 8(f) of the Settlement Agreement further frustrated the intent of the parties in agreeing to Section 8(f) because of extensive leaks of the Settlement Agreement that occurred in the months after the May 2019Settlement Agreement, which created an environment that was deeply antithetical to any result other than that Plaintiffs should be criminally charged in Denmark and that continued for years after the leaks began in or around September 2019. These leaks eviscerated one of the two primary forms of consideration that Plaintiffs obtained in Phase II of the Settlement Agreement.

71.     For example:

(a)     In or about late September 2019, Plaintiffs' names were disclosed in the Danish media as, in substance, the "previously unknown masterminds of the dividends case."

(b)     The Danish media obtained a copy of the Settlement Agreement and publicized extensive criticisms of its terms, including from persons claiming to be experts in Danish law, suggesting that the terms of the Settlement Agreement were not favorable to Denmark and were excessively favorable to Plaintiffs and other parties to the Settlement Agreement.

(c)     A former Danish Minister of Taxation publicly stated, in substance and in part, that, in Denmark, it was impossible to make a settlement to escape criminal prosecution if illegal conduct has been committed and that the Settlement Agreement did not alter SØIK's efforts in relation to Danish criminal law, such that SØIK could still prosecute Plaintiffs, the fair inference of which was that SØIK might, and should, criminally prosecute Plaintiffs.

(d)     An official of Defendant indicated, in substance and in part, that, while the terms of the settlement were good, he thought that everyone across the country of Denmark, including himself, was deeply outraged by what had happened in the case.

**Exhibit 3A to Letter,<br>Edated January 11, 2024**

**Plaintiffs' Complaint ¶¶ 5, 58, 66:**

     5.     The Danish taxation authority was also required to use its best efforts to maintain the confidentiality of the settlement agreement consistent with the settlement agreement's terms. These obligations -- a prompt, written communication to the Danish criminal prosecutors and of confidentiality -- were virtually the only forms of consideration provided by the Danish taxation authority in the second phase of the settlement agreement. The second phase of the obligations under the settlement agreement required further payments by Plaintiffs and other parties to the settlement agreement and their extensive cooperation. During the second phase, Plaintiffs paid Defendant more than approximately $5.71 million and produced more than 90,000 documents to assist Defendant's efforts to recoup dividend tax refunds that it had paid out.

     58.     First, Defendant and Plaintiffs agreed that the Settlement Agreement "is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which [Defendant] seeks to use" information provided by Plaintiffs as a result of Plaintiffs' obligation to cooperate with Defendant. As a result, Defendant and Plaintiffs "agree[d] to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in" Section 8.

     66.     Finally, the Settlement Agreement contained in Section 9 a non-disparagement clause that, in general, precluded Defendant, among others, from making statements that were "disparaging, derogatory or defamatory of or reasonably likely to damage" Plaintiffs, their reputations, business or affairs, nor could Defendant induce any person or entity to do so.

Exh. 3A, Page 6