

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

<u>BY ECF</u>

Honorable Naomi Reice Buchwald   January 17, 2024
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Stein et al. v. Skatteforvaltningen</u>, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

      We write on behalf of defendant/counterclaim plaintiff Skatteforvaltningen ("SKAT") to respond herein and in two contemporaneously filed letters to three letter motions filed by Matthew Stein, Jerome Lhote and Luke McGee ("Movants") on January 11, 2024 (ECF Nos. 73-75) requesting a pre-motion conference on discovery disputes arising from Movants' discovery requests to SKAT. This letter responds to Movants' letter concerning the parties' disputes over (i) SKAT's communications with SØIK unrelated to the performance of its obligations under section 8(f) of the settlement agreement; (ii) SKAT's communications with SØIK concerning SØIK's indictment of Movants and other proceedings against them; and (iii) communications between the parties during the drafting of the settlement agreement concerning the clause in section 2(c) of the agreement providing that the settling parties' obligation to pay the settlement amount is "absolute and unconditional." (ECF No. 74.)

**SKAT's communications with SØIK unrelated to section 8(f) of the settlement agreement.**

      In response to Movants' requests, SKAT agreed to produce all its communications with SØIK during the relevant period that "relate to" its performance of its obligations under section 8(f) of the settlement agreement to make certain limited representations to SØIK, *i.e.*, the only provision of the agreement plaintiffs allege SKAT breached. Far from being "circular, unhelpful, unworkable, and inconsistent with Rule 26," (ECF No. 74 at 2), SKAT explained during the parties' meet and confers that it was using the phrase "relate to" the same way the Court's Local Rule 26.3 defines "concerning," *i.e.*, "relating to, referring to, describing, evidencing or constituting" SKAT's performance of its obligations under section 8(f). Movants' claimed confusion by SKAT's response is itself puzzling, particularly in light of Movants' use of the same or similar terms in its own discovery requests on these same issues:

          [Movants' Interrogatory No. 1 to SKAT]: Identify those Persons
          currently or formerly employed by SKAT with knowledge of
          SKAT's Communications with SØIK **concerning** the Settlement

> Agreement, including **in relation to** Section 8(f) of the Settlement Agreement, or **concerning** the Covered Parties' Designees.

(ECF No. 75-1 at 1 (emphasis added).)  Finally, although SKAT's use of the term "related to" did not require further explanation, SKAT nevertheless further explained to Movants' counsel that its response would exclude communications with SØIK during SØIK's investigation to the extent such communications did not relate to the items listed in section 8(f), such as SØIK's factual inquiries about the scheme or its participants.

Movants argue that that it was somehow improper for SKAT to limit in this way its production in response to requests calling for "SKAT's communications with SØIK on various topics arising out of Section 8(f)."  (ECF No. 74 at 2.)  Instead, they argue, SKAT should produce its communications with SØIK on an unspecified "range of subjects" unrelated to section 8(f), presumably SØIK's investigatory communications with SKAT, the victim of Movants' fraud.  (*Id.*)  But any such communications have no bearing on plaintiffs' claim that SKAT breached section 8(f) or the materiality of any supposed breach.  Further, section 8(f) does not, as Movants suggest, require SKAT to "communicate with SØIK in a way that positively influenced SØIK's investigation."  (*Id.* at 2.)  The settlement agreement provides that SKAT inform SØIK of certain information, which SKAT did.  The agreement further provides that nothing therein prohibits SKAT "from responding truthfully to" SØIK's investigatory inquiries, (Settlement Agreement § 9(c)), regardless of whether SKAT's communications "positively influence[] SØIK's investigation" of Movants.  (ECF No. 74 at 2.)

**SKAT's communications with SØIK concerning the indictment and other proceedings.**

The communications Movants seek between SKAT and SØIK concerning the indictment and other proceedings SØIK initiated against them are irrelevant for the same reason.  (ECF No. 74 at 2-3.)  Again, SKAT is producing all its communications with SØIK related to the performance of its obligations under section 8(f).  SØIK's communications with SKAT about the indictment or its investigation of Movants' fraud have nothing to do with whether SKAT breached section 8(f).  Like other requests addressed above or in SKAT's responses to Movants' other pre-motion conference letters, this request is clearly designed to obtain information about law enforcement investigations, and in particular in connection with the pending criminal charges Movants face in Denmark.

Movants argue that such communications may "bear on whether SKAT breached the implied obligation of good faith and fair dealing" or "violated its non-disparagement obligations," but plaintiffs have not pleaded such claims, and relevance is limited to the claims that they have pleaded.  (ECF No. 74 at 2.)  Nor, in any event, would any such unpled claims have merit.  *See 87 Mezz Member LLC v. German Am. Cap. Corp.*, 162 A.D.3d 524, 525 (1st Dep't 2018) (internal quotation omitted) ("claim for breach of the implied covenant of good faith and fair dealing . . . . cannot" be used "to nullify other express terms of a contract, or to create independent contractual rights").  The settlement agreement does not preclude SKAT from providing information to SØIK that may "encourage[]," "assist[]," or "negatively" influence (from Movants' perspective) SØIK's investigation.  (ECF No. 74 at 2-3.)  Just the opposite, the

agreement is explicit that SKAT is not prohibited "from responding truthfully to" SØIK's inquiries, no matter the consequences for Movants. (Settlement Agreement § 9(c).)[1]

**The parties' communications concerning section 2(c) of the settlement agreement.**

Section 2(c) of the settlement agreement provides that "[t]he Covered Parties' obligation to pay the Final Settlement Amount is absolute and unconditional." (Settlement Agreement § 2(c).) There is nothing ambiguous about this provision, which requires the "Covered Parties," including Movants, to pay the final settlement amount regardless of any alleged breach by SKAT. *See, e.g.*, *Peyton Holdings, LLC v. Clover Aviation Co.*, No. 18 Civ. 3165 (PAC), 2020 WL 4273981, at *4 (S.D.N.Y. July 24, 2020) (clause "making the Defendants' obligation to pay rent unconditional" was "unambiguous and enforceable"); *Comdisco, Inc. v. Home Ins. Co.*, No. 94 Civ. 8478 (WK), 1996 WL 14438, at *4 (S.D.N.Y. Jan. 16, 1996) ("the language" in the contract was "not ambiguous" in that it "contain[ed] a provision which made [defendant's] obligation to pay rent 'absolute and unconditional'"). As such, the discovery Movants seek to "uncover evidence concerning the intent of the parties related to this provision," (ECF No. 74 at 3), is irrelevant. *See Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) ("If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence."); *Alexsam, Inc. v. Mastercard Int'l Inc.*, No. 15-CV-2799 (ILG)(SMG), 2019 WL 4696277, at *3 (E.D.N.Y. Sep. 26, 2019) (denying "motion to conduct discovery" because contract was "clear and unambiguous, and consequently there [was] no basis to look to extrinsic evidence to discern the parties' intent").[2] Moreover, even if relevant, Movants should be in possession of the documents they seek through this motion—*i.e.*, "communications between SKAT and the Covered Parties."

SKAT's counsel is available for a pre-motion conference at the Court's convenience.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

cc: all counsel of record (via ECF)

---

1. Movants' statement that "[i]t is likely that, had SKAT complied with Section 8(f), SØIK's criminal investigation would have proceeded differently or, indeed, may not have proceeded at all" is bald speculation. (ECF No. 74 at 3.) Indeed, section 9(c) of the agreement certainly contemplated an ongoing investigation notwithstanding SKAT's obligations under 8(f). And Movants' speculation is further undermined by section 8(e) of the agreement, which permitted Movants to provide the agreement or any of its terms to any law enforcement authority investigating the matter at any time and for any reason. Presumably Movants took full advantage of that provision.

2. *See also Huntington Nat'l Bank v. Bristow U.S. LLC*, No. 17 Civ. 8595 (ER), 2019 WL 1004218, at *6 (S.D.N.Y. Mar. 1, 2019) ("where a contract is clear and unambiguous on its face, discovery regarding the parties' intent is rendered unnecessary, as any parol evidence would be inadmissible").