```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
MATTHEW STEIN AND JEROME LHOTE,

     Plaintiffs/Counterclaim-
     Defendants,

          - against –

SKATTEFORVALTNINGEN,                    MEMORANDUM AND ORDER

     Defendant/Counterclaim-            23 Civ. 2508 (NRB)
     Plaintiff,

          - against –

LUKE MCGEE

     Counterclaim-Defendant.

-------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On March 24, 2023, plaintiffs Matthew Stein ("Stein") and Jerome Lhote ("Lhote") sued the Danish tax authority Skatteforvaltningen ("SKAT") claiming that it breached a settlement agreement (the "Agreement" or "Settlement Agreement") by failing to notify Danish criminal authorities of the existence and terms of the Agreement. Stein and Lhote argued that this breach was material and thus relieved them of their obligation to pay the final settlement amount due under the Agreement by May 28, 2023. After they failed to make that payment, on June 15, 2023, SKAT filed an amended answer and asserted two breach of contract counterclaims against Stein, Lhote, and a third signatory Luke

McGee ("McGee"). Stein, Lhote, and McGee thereafter filed a motion to dismiss SKAT's counterclaims, which is addressed in this decision. For the reasons set forth below, the motion to dismiss is denied as premature.

## BACKGROUND

I. **Factual Background**

   A. **The Parties**

SKAT is the authority of the Kingdom of Denmark charged with the assessment and collection of Danish taxes. ECF No. 11 (Compl.) ¶ 16; ECF No. 48 (Counterclaims) ¶ 133. Stein is an individual who resides in New York, and Lhote and McGee are individuals who reside in Florida. Compl. ¶¶ 14-15; Counterclaims ¶¶ 134-36.

   B. **The Fraudulent Scheme**

In 2012, Stein, Lhote, and McGee began participating in a fraudulent scheme to deceive SKAT into paying approximately 4 billion Danish Kroner ("DKK"), or roughly $580 million, in purported tax refunds that were never in fact owed. Compl. ¶¶ 25-35, 73-75; Counterclaims ¶¶ 124, 142-48. In 2015, after it received information about the fraudulent scheme from a whistleblower and a foreign government, SKAT stopped paying the

tax refunds and commenced an investigation. Compl. ¶¶ 24-25; Counterclaims ¶ 147. Thereafter, SKAT initiated numerous lawsuits in the Southern District of New York and elsewhere in an effort to recoup the tax refunds it paid as part of the scheme. Compl. ¶ 28.

**C. The Settlement Agreement**

On May 28, 2019, SKAT and the "Covered Parties" entered into the Settlement Agreement to resolve SKAT's claims against the Covered Parties arising from the fraudulent tax refund scheme. See Compl. ¶ 36; Counterclaims ¶ 149; Declaration of Daniel Levy ("Levy Decl."), Ex. A (Settlement Agreement). The Covered Parties are comprised of more than fifty individuals, including Stein, Lhote, and McGee, and dozens of entities who participated in the fraudulent scheme. Compl. ¶ 36; Counterclaims ¶ 149. The Settlement Agreement identifies Stein, Lhote, and McGee as the Covered Parties' designees. Settlement Agreement § 1(j).

The "fundamental principle" of the Settlement Agreement is that the Covered Parties must pay SKAT the "Net Proceeds" of the fraudulent tax refunds they received from SKAT.[1] Settlement

---

[1] The Settlement Agreement defines "Net Proceeds" as the "Gross Reclaims," i.e., the total amount SKAT paid out under the scheme, less (1) the "Covered Parties' expenses associated with Reclaim Applications," i.e., the expenses that the parties' incurred when filing the refund applications with SKAT; and (2) "any other portion of Gross Reclaims received by parties excluded" from the Settlement Agreement. Settlement Agreement § 2(e).

Agreement Recital F.  Because the full amount of the Net Proceeds was uncertain at the time of the Agreement, the Covered Parties agreed to pay (1) a "Preliminary Settlement Amount" of DKK 1.55 billion as an estimate of the Covered Parties' Net Proceeds; and (2) a "Final Settlement Amount" to be determined based primarily on a True-Up process to establish the actual amount of the Net Proceeds.  Counterclaims ¶ 151; Settlement Agreement §§ 1(q), 1(y), 2(e)(i).  If the actual amount of Net Proceeds ultimately exceeded the DKK 1.55 billion Preliminary Settlement Amount, then the Covered Parties would owe SKAT an additional sum, the "True-Up Amount," to cover the difference.[2]  Settlement Agreement § 2(e)(iii).

Under the Settlement Agreement, the Covered Parties were obligated to pay the Preliminary Settlement Amount of DKK 1.55 billion in two tranches: (1) an "Initial Cash Payment" of DKK 950 million due within a few months of the execution of the Settlement Agreement; and (2) an "Additional Cash Payment" of DKK 600 million due as deadlines set forth in the Settlement Agreement and a

---

[2] The Settlement Agreement requires the Covered Parties to use their "best efforts" to provide SKAT with documents sufficient to establish their Net Proceeds. Settlement Agreement § 2(e)(i). According to their own calculations, the Covered Parties asserted that their Net Proceeds exceeded the Preliminary Settlement Amount of DKK 1.55 billion by only DKK 26,008,293. Counterclaims ¶ 156.  SKAT, however, claims that the Net Proceeds were higher than the Preliminary Settlement Amount by an additional DKK 82,594,781. Id. ¶ 157.

contemporaneously executed letter (the "Letter Agreement") occurred. Id. §§ 1(a), 1(n), 1(r), 1(t), 2(a)-(b); See Levy Decl., Ex. B (Letter Agreement) §§ 5-6. The Settlement Agreement defines this Additional Cash Payment of DKK 600 million, together with the True-Up Amount, as the "Subsequent Cash Payment Amount." Settlement Agreement §§ 1(dd).

If the Subsequent Cash Payment Amount was not paid in full by May 28, 2021, interest on the unpaid amount would accrue and be included in the "Final Settlement Amount," which was due to be paid by the "Final Settlement Payment Date" of May 28, 2023. Id. §§ 1(n), 1(r), 2(d)(i)-(ii). Thus, the Final Settlement Amount that the Covered Parties owed by that date was the sum of (1) the DKK 1.55 billion Preliminary Settlement Amount; (2) the True-Up Amount; and (3) interest accrued on any unpaid amount of the Subsequent Cash Payment Amount. Id. § 1(q). The Settlement Agreement provides that "[t]he Covered Parties' obligation to pay the Final Settlement Amount is absolute and unconditional." Id. § 2(c).

### D. Affidavit of Confession of Judgment

To ensure their payment obligations were fulfilled, Stein, Lhote, and McGee were required under the Settlement Agreement to

provide SKAT an affidavit of confession of judgment at the time of the DKK 950 million Initial Cash Payment and an updated confession of judgment roughly two years later.  Id. §§ 2(c), 4(c), 5(c).  In accordance with this requirement, Stein, Lhote, and McGee provided SKAT an initial confession of judgment executed on May 28, 2019 (the "2019 Confession of Judgment"), and an updated confession of judgment executed by Lhote on June 9, 2021, and by Stein and McGee on June 10, 2021 (the "2021 Confession of Judgment").  See Levy Decl., Exs. C (2019 Confession of Judgment) and D (2021 Confession of Judgment).

The 2019 Confession of Judgment recites that Lhote and Stein both "reside[] in New York County" and that McGee "resides in Philadelphia County" but "authorizes entry of this Confession of Judgment in New York County."  2019 Confession of Judgment ¶ 1. The 2021 Confession of Judgment, the operative confession of judgment for our purposes, similarly states that Stein "resides in New York County" and that McGee "resides in Philadelphia County" and continues to "authorize[] entry of this Confession of Judgment in New York County."  2021 Confession of Judgment ¶ 1.  Moreover, the 2021 Confession of Judgment was updated to reflect that Lhote now "resides in Orange County, Florida" but, like McGee,

"authorizes entry of this Confession of Judgment in New York County."  Id.

In both Confessions of Judgment, Stein, Lhote, and McGee authorized entry of judgment against themselves "jointly and severally" and in favor of SKAT for the "Judgment Amount," which is defined as any unpaid portion of the Subsequent Cash Payment Amount plus applicable interest.  2019 Confession of Judgment § 2; 2021 Confession of Judgment § 2.  The Confessions of Judgment define the Subsequent Cash Payment Amount as (1) "the sum of [600] million Danish Kroner"; and (2) "the True-Up Amount determined pursuant to Section 2(e)(iii) of the Settlement Agreement," which was attached as an exhibit.  2019 Confession of Judgment § 2; 2021 Confession of Judgment § 2.  Stein, Lhote, and McGee further agreed that the Judgment Amount "shall be set forth in an affidavit to be executed by the plaintiff or an affirmation by such plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment."  2019 Confession of Judgment § 3; 2021 Confession of Judgment § 3.

As discussed below, the parties contest the type and scope of the remedies provided by the Settlement Agreement.  Section 2(c) provides that "[i]n the event that the Covered Parties timely complete the Initial Cash Payment" of DKK 950 million, which there

-7-

is no dispute they did, then SKAT's "sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavit of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c)." Settlement Agreement § 2(c).  Section 5(c), in turn, provides that if the Covered Parties' Designees fail to make any payment as and when required by this Agreement, SKAT "[s]hall be authorized to file the Confession of Judgment and to seek and enforce the judgment that the Court enters."[3] Id. § 5(c); see also id. § 5(a) (defining events of default).  The Settlement Agreement specifies that SKAT "may file or otherwise execute upon" the 2021 Confession of Judgment "in any of the New York Courts," which are defined as "the federal and state courts of the State of New York."[4]  Id. §§ 4(c), 12.

---

[3] The Settlement Agreement also contemplates a process by which the parties may resolve disputes regarding the True-Up Amount.  Settlement Agreement § 10.  For any "claim, controversy or dispute arising out of or relating to the True-Up process [that] exceeds [DKK 20 million]," the parties may first present the matter to an arbitrator and, if that fails, "any Party may pursue the resolution of such matter through other available remedies in a Selected Court."  Id. § 10(a).  The term "Selected Court" is defined as meaning the Southern District of New York, which is where any disputes must be brought "in the first instance."  Id. § 12.

[4] Moreover, under the Confessions of Judgment, Stein, Lhote, and McGee consented to jurisdiction in the Southern District of New York.  2019 Confession of Judgment § 7; 2021 Confession of Judgment § 7.

## II. Procedural History

### A. The Initial Lawsuit

On March 24, 2023, just over three months before the Final Settlement Payment Date of May 28, 2023, Stein and Lhote (but not McGee) sued SKAT alleging that it materially breached the Settlement Agreement by failing to promptly notify Danish criminal authorities of the Agreement and its terms.[5]  Compl. ¶¶ 67-69. Based on SKAT's alleged breach, Stein and Lhote seek partial recission of the Settlement Agreement and to be discharged from any further obligations under the Agreement.  Id. ¶¶ 8, 92-100. Additionally, Stein and Lhote claim that the 2021 Confession of Judgment is invalid and unenforceable and seek a declaratory judgment to that effect.[6]  Id. ¶¶ 81-91, 102-06.

---

[5] Under the Settlement Agreement, SKAT was required, "promptly upon the execution of [the] Agreement," to "bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ('SØIK') [the] Agreement and its terms, and represent, in writing, that [the] Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by [SKAT] of additional funds from third parties and that [the] Agreement is in the best interests of [SKAT]." Settlement Agreement § 8(f).  Stein and Lhote claim that SKAT failed to comply with this obligation and thus materially breached the Settlement Agreement.  Compl. ¶ 67.
[6] Specifically, as will be discussed below, Stein and Lhote allege that the 2021 Confession of Judgment is (1) unenforceable as to Lhote because at the time of its execution, Lhote resided outside of New York; and (2) unenforceable as to both Stein and Lhote because it does not state a specific sum for which judgment may be entered.  Compl. ¶¶ 81-91, 102-06.

-9-

**B. SKAT's Counterclaims**

This litigation remained ongoing by the Final Settlement Payment Date of May 28, 2023. At that point, the Covered Parties had only paid SKAT: (1) the DKK 950 million Initial Cash Payment; and (2) a small portion of the Final Settlement Amount comprised of the DKK 600 million Additional Cash Payment, the True-Up Amount, and applicable interest. Counterclaims ¶ 168. In other words, Stein, Lhote, and McGee had not paid SKAT nearly the full amount required under the Settlement Agreement by the May 28, 2023 payment deadline. Accordingly, on May 29, 2023, SKAT provided Stein, Lhote, and McGee written notice of the breach and a ten-business-day opportunity to cure in accordance with § 5 of the Settlement Agreement. Id. ¶ 169. However, the Covered Parties made no further payment by the time that period expired on June 14, 2023. Id.

On June 15, 2023, SKAT filed its amended responsive pleading in which it denied Stein and Lhote's allegations that it breached the Settlement Agreement and asserted two counterclaims styled as breach of contract claims against Stein, Lhote, and McGee for their failure to pay SKAT: (1) the Additional Cash Payment of approximately DKK 600 million plus applicable interest; and (2) the True-Up Amount of DKK 108,603,074 plus applicable interest.

-10-

Id. ¶¶ 174-87.  As relief for both its counterclaims, SKAT seeks the "entry of [the 2021 Confession of Judgment], or alternatively, damages in the [same] amount."  Id. ¶¶ 188-89.

### C. Motion to Dismiss Counterclaims

On July 13, 2023, Stein and Lhote filed a motion to dismiss SKAT's counterclaims, and McGee separately filed an identical motion.[7]  ECF Nos. 50-56.  SKAT opposed the motion to dismiss on August 3, 2023, ECF No. 58, and Stein, Lhote, and McGee filed a reply in further support of their motion on August 14, 2023, ECF Nos. 59-61.  On December 21, 2023, the Court held oral argument on the motion to dismiss.

## DISCUSSION

Before addressing the motion to dismiss, it is necessary to clarify Stein, Lhote, and McGee's argument at this point in the litigation.  By way of reminder, SKAT requests two alternative forms of relief for its breach of contract counterclaims: (1) primary relief of the entry of the 2021 Confession of Judgment; and (2) alternative relief of contract-based damages in the same

---

[7] McGee fully adopts Stein and Lhote's arguments in support of dismissing SKAT's counterclaims.  ECF Nos. 56, 61.

-11-

dollar amount provided by the 2021 Confession of Judgment.  See Counterclaims ¶¶ 188-89 (requesting "entry of [the 2021 Confession of Judgment], or <u>alternatively</u>, damages in the [same] amount" (emphasis added)).

In their memorandum of law in support of their motion to dismiss, Stein, Lhote, and McGee asked the Court to dismiss SKAT's counterclaims in their entirety, arguing that the Settlement Agreement prohibits SKAT from asserting any sort of breach of contract claims as a means of enforcing the 2021 Confession of Judgment.  <u>See</u> ECF No. 54 (Mot.) at 1-2, 22-25; <u>see also</u> ECF No. 60 (Reply Br.) at 10 ("[T]he Court should dismiss SKAT's counterclaims without leave to replead.").  While Stein, Lhote, and McGee did not contest the propriety of SKAT's seeking relief in the Southern District of New York, they did argue that SKAT was required to re-file a new case in this District seeking only the entry of a confessed judgment and nothing more.[8]  <u>See</u> Mot. at 22-25.

---

[8] As the Court noted at oral argument, this suggested procedure makes little practical sense.  When Stein, Lhote, and McGee purportedly breached the Settlement Agreement, the instant litigation was already pending.  Thus, if SKAT were to have filed a new case, as Stein, Lhote, and McGee contend is required, that new case would have simply been referred to this Court as a related case and consolidated with the ongoing action that Stein, Lhote, and McGee initiated.  <u>See</u> S.D.N.Y. R. for the Division of Business Among Dist. Judges 13(a)(1) (stating that civil actions should be deemed related where, among other things, "the actions concern the same or substantially similar

As is often the case, oral argument was elucidating and enlightening. There, counsel repeatedly clarified that Stein, Lhote, and McGee would be "fine" if the Court denies their motion to dismiss as to SKAT's <u>primary</u> request for relief, namely the entry of the 2021 Confession of Judgment, but grants their motion dismissing "the <u>alternative</u> remedy that SKAT seeks, which is breach of contract damages." Oral Argument Tr. at 23:16-20 (emphasis added); <u>see also</u> <u>id.</u> 25:4-9, 26:7-13, 37:16-25, 50:1-3, 50:14-19. In other words, Stein, Lhote, and McGee now only ask the Court to dismiss SKAT's alternative request for relief of contract-based damages in the same amount provided by the 2021 Confession of Judgment. The Court declines to do so at this early stage of the litigation.

It is well established that, except in circumstances not applicable here, a request to dismiss forms of relief is premature and should not be decided on a motion to dismiss.[9] See <u>Glob. Art Exhibitions, Inc. v. Kuhn & Bülow Italia Versicherungsmakler GmbH</u>,

---

parties, property, transactions, or events," "there is substantial factual overlap," and "the parties could be subjected to conflicting orders").

[9] The Court recognizes that "ample authority permits striking prayers for punitive damages where such relief is unavailable as a matter of law," <u>Doe v. Indyke</u>, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020), but that is a far cry from the situation at hand where punitive damages are not at issue and where the breach of contract damages that SKAT seeks as an alternative remedy is the same amount contained in the 2021 Confession of Judgment and may very well be available to SKAT if the Court has occasion to make that determination.

607 F. Supp. 3d 421, 428 n.3 (S.D.N.Y. 2022) ("Motions to dismiss aimed at prayers for relief are premature except when such relief is categorically barred."); Fed. Hous. Fin. Agency v. WMC Mortg., LLC, No. 13 Civ. 584 (AKH), 2013 WL 7144159, at *1 (S.D.N.Y. Dec. 17, 2013) (holding that a party's "request to strike the various forms of relief, specifically money damages, is premature and should not be decided on a motion to dismiss").[10]

Such a request is especially premature here, where Stein, Lhote, and McGee are not even seeking dismissal of SKAT's primary request for relief but instead wish to strike SKAT's alternative request for contract damages in an identical dollar amount -- a form of relief that may very well never become relevant in this case. See Counterclaims ¶¶ 188-89. Indeed, as a general matter, courts should avoid deciding questions that are not necessary to decide. Miller v. Metro. Life Ins. Co., 979 F.3d 118, 124 (2d Cir. 2020) ("[I]f it is not necessary to decide more, it is not necessary to decide more."); Hunish v. Assisted Living Concepts, 2010 WL 1838427, at *8 n.5 (D.N.J. 2010) ("[C]ourts should decide

---

[10] These authorities are buttressed by Federal Rule of Civil Procedure 54(c), which afford district courts wide authority to fashion appropriate relief. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004), opinion corrected, 511 F.3d 238 (2d Cir. 2004) ("Under Rule 54(c) of the Federal Rules of Civil Procedure, a court can grant any relief to which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint.").

only the questions they must decide."). But this principle has particular force here given the number of issues that would need to be resolved in a certain way before SKAT's alternative request for contract-based damages would become relevant.

The most obvious of these antecedent issues is the merits: if, after discovery, Stein, Lhote, and McGee are correct that they are discharged from their payment obligations because SKAT materially breached the Settlement Agreement, SKAT would not be entitled to <u>any</u> damages, much less its alternative relief of contract damages. This is reason enough to avoid opining on the propriety of SKAT's requested alternative relief at this stage.

There are similarly compelling reasons to defer a decision on the instant motion if we assume the opposite outcome on the merits: that SKAT did <u>not</u> breach the Settlement Agreement and thus Stein, Lhote, and McGee breached for failing to pay the Final Settlement Amount.[11] Even in that scenario, Stein, Lhote, and McGee would still have to clear numerous hurdles before it would become necessary to address SKAT's alternative remedy.

---

[11] At oral argument, counsel acknowledged that if SKAT is not found to have materially breached the Settlement Agreement, then Stein, Lhote, and McGee would be in breach for failing to make their requisite payments under the Agreement. Oral Argument Tr. 3:1-8.

-15-

Most notably, Stein, Lhote, and McGee would first have to persuade the Court that SKAT's <u>primary</u> form of relief -- entry of the 2021 Confession of Judgment -- is unavailable.  Indeed, in Count Two of their complaint, they seek a declaratory judgment finding the 2021 Confession invalid and unenforceable.  But only if they succeed on that claim, leaving SKAT without its primary remedy, would SKAT's <u>alternative</u> request for contract-based damages come into play.

However, it should come as no surprise to Stein, Lhote, and McGee that the Court has serious concerns, which have been expressed in open court and will be discussed further below, regarding their claim that the 2021 Confession of Judgment is invalid and unenforceable.  To be sure, that claim is not presently before the Court because SKAT has not moved to dismiss it.  Nonetheless, a preliminary assessment of Stein, Lhote, and McGee's arguments in support of their claim is necessary to demonstrate that the 2021 Confession of Judgment is likely valid and enforceable, which supports our conclusion that it is premature at this stage to address the propriety of SKAT's <u>alternative</u> request for contract-based damages.

First, Stein, Lhote, and McGee argue that the 2021 Confession of Judgment is invalid and unenforceable as to Lhote and McGee

because they are not New York residents. For this contention, they cite the 2019 amendment to CPLR 3218, which limited the application of the confession of judgment statute to debtors who have a residence in New York at the time their affidavits are executed. See Hon. Mark C. Dillon, Practice Commentaries, CPLR C3218:3 (2021). In the 2021 Confession of Judgment, however, Lhote and McGee expressly "authorize[d] the entry of this Confession of Judgment in New York County" despite living outside the state, which strongly suggests that they intended to waive any residency requirement. Indeed, as Stein, Lhote, and McGee's counsel acknowledged at oral argument, nothing in CPLR 3218 suggests that debtors like Lhote and McGee cannot waive the statute's new residency requirement, see Oral Argument Tr. at 8:18-21, which was added at least in part for the purpose of protecting nonresident debtors with no connection to New York from having a judgment unknowingly entered against them. Moreover, even if there was no waiver, New York courts have found that the newly added residency requirement only concerns the entry of judgment against a nonresident "without an action" and does not apply in cases like this one where a party seeks entry of a confessed judgment by filing an action.[12] Express Trade Cap., Inc. v. Horowitz, 152

---

[12] This conclusion is sensible because when a confession of judgment is filed "without an action," a clerk of court enters it immediately and thus the

-17-

N.Y.S.3d 821, 821-22 (App. Div. 2021). Therefore, Stein, Lhote, and McGee's first invalidity argument appears, at least preliminarily, to be without merit.[13]

Second, Stein, Lhote, and McGee argue that the 2021 Confession of Judgment is invalid because it fails to state a sum certain. Although CPLR 3218(a)(1) requires an affidavit of confession of judgment to "stat[e] the sum for which judgment may be entered," courts have interpreted this requirement to allow parties to fill in exact amounts at a later date in accordance with calculations or methodology to which they agreed. See, e.g., Jiras v. McKay, 609 N.Y.S.2d 94, 94 (App. Div. 1994) (holding that there is nothing "inherently impermissible in permitting [the] plaintiff (himself an attorney) to designate the defendant's attorney to fill in the amount due (calculated pursuant to the terms of the [parties'] stipulation) on an otherwise complete affidavit of confession of judgment"). Here, the 2021 Confession of Judgment sets forth the precise methodology for determining the Judgment Amount and

---

nonresident debtor would receive no notice of such judgment until after it is entered. CPLR 3218(a)-(b). However, when a confession of judgment is enforced through the filing of an action, the nonresident debtor necessarily receives notice that judgment may be entered against him in New York and thus is afforded an opportunity to contest it.

[13] Critically, even if they prevailed on this argument, it would not render the 2021 Confession of Judgment wholly invalid. This is because, as counsel correctly acknowledged at oral argument, Stein, who is jointly and severally liable, is a New York resident and therefore has no residency requirement argument. Oral Argument Tr. at 14:22-25.

expressly contemplates -- and in fact requires -- that the Judgment Amount "be set forth in an affidavit to be executed by the plaintiff or [in] an affirmation by such plaintiff's attorney, which shall be attached hereto <u>at the time of entry of this Affidavit of Confession of Judgment</u>." 2021 Confession of Judgment ¶ 3 (emphasis added).  In other words, Stein, Lhote, and McGee explicitly agreed that the parties would determine the exact sum of the Judgment Amount at a later date in accordance with their agreed-upon methodology, which seems wholly consistent with the dictates of CPLR 3218.

As the foregoing makes clear, Stein, Lhote, and McGee's chief arguments in support of their claim that the 2021 Confession of Judgment is invalid and unenforceable are subject to serious challenge.[14]  To be clear, the Court does not pass ultimate judgment on the merits of their claim at this juncture.  However, questions which have been raised in open court underscore the possibility that the Court will never reach the issue of whether SKAT's alternative requested contract-based relief is proper.  Of course, if the Court ultimately has reason to reach that issue, it will consider and rule on it as appropriate.  However, unless and until

---

[14] Additionally, at a high level, the Court has noted that the logical import of Stein, Lhote, and McGee's position is that the confessions of judgment provided to SKAT were, in effect, completely worthless.

that happens, there is no need to decide an issue that may never present itself. For these reasons, Stein, Lhote, and McGee's motion to dismiss SKAT's counterclaims is denied as premature. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 50.

**SO ORDERED.**

Dated:   New York, New York
         February 1, 2024

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE