Daniel W. Levy
dlevy@mckoolsmith.com
McKool Smith P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York  10001-8603
Telephone: (212) 402-9400

*Attorney for Plaintiffs - Counterclaim Defendants*
*Matthew Stein and Jerome Lhote*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW STEIN and JEROME LHOTE,<br><br>                  Plaintiffs,<br><br>     v.<br><br>SKATTEFORVALTNINGEN,<br><br>                  Defendant,<br><br>    and<br><br>LUKE MCGEE,<br><br>                Nominal Defendant. | 23 Civ. 2508 (NRB) |
| SKATTEFORVALTNINGEN,<br><br>              Counterclaim Plaintiff,<br><br>     v.<br><br>MATTHEW STEIN, JEROME LHOTE, and<br>LUKE MCGEE,<br><br>              Counterclaim Defendants. | |

**FIRST AMENDED COMPLAINT AND ANSWER
TO FIRST AMENDED COUNTERCLAIMS**

Plaintiffs Matthew Stein ("Stein") and Jerome Lhote ("Lhote"), by and through their

undersigned attorneys, for their First Amended Complaint against Defendant Skatteforvaltningen

("SKAT") and Nominal Defendant Luke McGee ("McGee"), hereby allege, on knowledge as to

themselves and on information and belief with respect to facts that are peculiarly within the

possession and control of SKAT and McGee and where the belief is based on factual information

that makes the inference of liability plausible, as follows:

## NATURE OF THE ACTION

1.     This is an action for breach of a settlement agreement between, on the one hand,

Stein and Lhote, two finance professionals, and McGee, and, on the other, SKAT, the taxation

authority of the Kingdom of Denmark.  The action seeks, among other relief, rescission of the

settlement agreement to which Stein, Lhote, and McGee are parties and that SKAT breached

and, as a result, names McGee as a Nominal Defendant.

2.     The settlement agreement resolved a dispute over the payment of certain tax

refunds by the Danish taxation authority.

3.     In the first phase of obligations under the settlement agreement, Stein, Lhote, and

McGee paid SKAT more than $140 million and, as a result, SKAT recouped a substantial

portion of the tax refunds that it had paid out to various pension plans in the United States.  In

exchange for these payments, SKAT released any and all claims that it might have against Stein,

Lhote, and McGee and many other persons and entities, thereby completing the parties'

performance of their obligations under the first phase of the settlement agreement

2

4.      In the second phase of obligations under the settlement agreement, SKAT was required to communicate promptly upon execution of the settlement agreement and in writing with Danish criminal prosecutors regarding: (a) how the settlement agreement was the result of Stein, Lhote, and McGee's good faith negotiation with the Danish taxation authority; (b) how substantial funds had been repaid to the Danish taxation authority; and (c) how, because Stein, Lhote, and McGee were required to continue to cooperate with SKAT in the second phase of the settlement agreement, SKAT might recoup even further funds.

5.      SKAT was also required to use its best efforts to maintain the confidentiality of the settlement agreement consistent with the settlement agreement's terms.  These obligations -- a prompt, written communication to the Danish criminal prosecutors and of confidentiality -- were virtually the only forms of consideration provided by SKAT in the second phase of the settlement agreement.  The second phase of the obligations under the settlement agreement required further payments by Stein, Lhote, and McGee and their extensive cooperation.  During the second phase, Stein, Lhote, and McGee paid SKAT more than approximately DKK 57.7 million, or the approximate U.S. dollar equivalent of $8.66 million, and produced more than 90,000 documents to assist SKAT in its efforts to recoup dividend tax refunds that SKAT had paid out.

6.      The requirement of a prompt writing from the Danish taxation authority to the Danish criminal prosecutors was a material and, indeed, crucial element of the settlement agreement.  One of the principal purposes and motivations of Stein, Lhote, and McGee's entering into the settlement with SKAT, and the reason it was so important that SKAT communicate in writing to the Danish criminal prosecutors SKAT's official position about the

3

settlement agreement and the process of reaching it, was to maximize Stein, Lhote, and McGee's chances of avoiding criminal charges in Denmark.

7.      As set forth more fully below, SKAT breached the clear and simple requirement of the settlement agreement that it promptly communicate in writing with the Danish criminal prosecutors on the matters specified in the settlement agreement.

8.      By this action, Stein and Lhote seek, among other remedies: (a) to have Stein, Lhote, McGee, and SKAT restored to the position in which they were as of the completion of the parties' performance under the first phase of the settlement agreement; and (b) rescission of, and discharge from, the unperformed obligations of the second phase of the settlement agreement.

9.      As part of the first phase of the settlement agreement, Stein, Lhote, and McGee were required to provide an affidavit of confession of judgment to facilitate SKAT's collection of contractually required payments to be made during the second phase of the settlement agreement and in the event of a breach during the second phase.  The second phase of the settlement agreement also required Stein, Lhote, and McGee to later provide a further affidavit of confession of judgment because, under applicable New York law, an affidavit of confession of judgment may not be filed more than three years after its execution.

10.     By the time that Stein, Lhote, and McGee provided a further affidavit of confession of judgment in 2021, Lhote was no longer a resident of the State of New York.  He does not currently have any residence in the State of New York and has no present intention to establish any residence in the State of New York.  And, at the time that McGee provided the initial affidavit of confession of judgment in 2019 and in 2021 when McGee provided a further affidavit of confession of judgment, McGee did not have any residence in the State of New York.

4

11.     Under New York law in effect since late August 2019, an affidavit of confession of judgment may only be filed in the county within the State of New York where the debtor resided when the affidavit was executed or where the debtor resides at the time of the filing.

12.     Because Lhote and McGee did not reside in any county in the State of New York when the further affidavit of confession of judgment was executed in 2021, do not presently reside in any county in New York, and have no present intention to reside in any county in New York, it is invalid as to them.  In addition, the further confession of judgment provided in 2021 does not meet the requirements of New York law and, as such, is unenforceable as to Stein, Lhote, and McGee for that additional reason.

13.     By this action, Stein and Lhote seek a declaration that the 2021 affidavit of confession of judgment is invalid as to Stein, Lhote, and McGee so that they can avoid irreparable harm as a result of unlawful collection efforts that SKAT might otherwise take in the absence of declaratory relief.

## PARTIES

14.     Plaintiff Stein is a citizen of the State of New York and, since approximately 1995, has resided in New York County.

15.     Plaintiff Lhote is a citizen of the State of Florida and, since approximately the middle of 2020, has resided in Orange County, Florida.  Lhote currently has no residence in the State of New York and has no present intention to establish any residence in the State of New York.

16.     Defendant SKAT is the authority of the Kingdom of Denmark charged with the assessment and collection of Danish taxes.  SKAT is an agency or instrumentality of the

5

4870-0673-9370

Kingdom of Denmark within the meaning of 28 U.S.C. § 1603(b) and, as a result, a foreign state within the meaning of 28 U.S.C. § 1603(a).

17.     Nominal Defendant McGee is a citizen of the State of Florida.  Since at least August 2019 and through after June 2021, McGee was a resident of Philadelphia County, Pennsylvania.  McGee is named as a Nominal Defendant in the First and Second Causes of Action alleged in this First Amended Complaint to bring all necessary parties before the Court and so that the Court may order the relief sought in the First and Second Causes of Action.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action, under 28 U.S.C. §§ 1330(a), 1605(a)(1), because SKAT explicitly submitted to the jurisdiction of this Court and, thereby, waived its immunity from the jurisdiction of the courts of the United States and of the State of New York with respect to any dispute arising out of, in connection with or relating to the settlement agreement, as described below.

19.     This Court has subject matter jurisdiction over SKAT, under 28 U.S.C. §§ 1330(a), 1605(a)(2), because this action is based upon a commercial activity carried on in the United States or upon an act outside the United States in connection with a commercial activity outside of the United States that caused a direct effect in the United States.

20.     This Court has personal jurisdiction over SKAT pursuant to 28 U.S.C. § 1330(b) because Stein and Lhote assert claims for relief over which the Court has original jurisdiction under 28 U.S.C. § 1330(a).

21.     This Court has subject matter jurisdiction over the claims in this action, as alleged against Nominal Defendant McGee, under 28 U.S.C. § 1367(a) because such claims are so

4870-0673-9370

related to claims in the action alleged against SKAT that they form part of the same case or controversy under Article III of the United States Constitution.

22.     This Court has personal jurisdiction over McGee because McGee submitted to the jurisdiction of this Court for the resolution of any dispute arising out of, in connection with or relating to the settlement agreement, as described below.

23.     Venue in this District is proper under 28 U.S.C. § 1391(f) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York, including the negotiation and execution of the settlement agreement, and because SKAT is doing business in this District.

24.     Venue in this District is proper because SKAT and McGee contractually waived any objection to the laying of venue in this District with respect to any dispute arising out of, in connection with or relating to the settlement agreement, as described below.

## FACTUAL ALLEGATIONS

### Background

25.     Under Danish law, Danish companies are required to withhold, that is, deduct at the source by the payer of income, 27% of the dividends paid to shareholders.

26.     The double-taxation treaty between the United States and Denmark provides, in general, for the refund of tax withheld on dividend payments to shareholders that are U.S. pension plans, which are exempt from taxation.

27.     Starting in or about mid to late 2015, SKAT began to investigate the manner in which it had paid out billions of Danish kroner in tax refunds, the equivalent of billions of U.S. dollars, to U.S. pension plans.

7

**Stein, Lhote, and McGee's Proactive Efforts to Resolve Their
Civil and Criminal Liability With The Danish Authorities**

28.     In or about Fall 2015, Stein, Lhote, and McGee became aware that SKAT was investigating their roles with respect to several dozen U.S. pension plans that had received dividend tax refunds.  Stein, Lhote, and McGee also became aware that SKAT was investigating the roles of many others, both in the United States and elsewhere, in claims for dividend tax refunds paid by SKAT.

29.     Stein, Lhote, and McGee determined that they would make efforts to initiate discussions with SKAT with the goal of assisting SKAT in recouping tax refunds that had been paid by SKAT.

30.     Starting in or about early 2017, Stein, Lhote, and McGee proactively began to negotiate with SKAT to resolve SKAT's contentions that dividend tax refunds paid to pension plans associated with Stein, Lhote, and McGee were obtained improperly and to repay, and cause to be repaid, dividend tax refunds paid by SKAT and obtained by these pension plans.  The negotiations occurred over multiple years and ultimately resulted in the settlement agreement described below.

31.     While Stein, Lhote, and McGee and SKAT were engaged in these good faith negotiations, and beginning in 2018, SKAT began to bring many lawsuits relating to SKAT's contention that dividend tax refunds had been improperly obtained from SKAT.  SKAT initiated hundreds of lawsuits in the Southern District of New York, the United Kingdom, Germany, Malaysia, Dubai, and Canada with the goal of recouping tax refunds.

32.     SKAT's litigation efforts have been made substantially more difficult because of the "revenue rule."  In general, the revenue rule prohibits courts from hearing claims by foreign sovereigns that seek direct or indirect enforcement of their tax laws.

33.     Because Stein, Lhote, and McGee and SKAT were engaged in good faith negotiations to resolve SKAT's claims with respect to Stein, Lhote, and McGee, it was not necessary for SKAT to initiate any litigation with respect to Stein, Lhote, and McGee, the vast majority of the pension plans with which they were associated, and the vast majority of individuals associated with those pension plans.

34.     Even before the negotiations between Stein, Lhote, and McGee and SKAT began, they were concerned that Danish criminal authorities, specifically, the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK"), might initiate a criminal investigation of them and others as a result of dividend tax refund applications made by pension plans associated with Stein, Lhote, and McGee and, ultimately, criminal charges against them in Denmark.  SØIK is a component of the government of the Kingdom of Denmark and is separate from SKAT.

35.     Stein, Lhote, and McGee concerns about criminal investigation and prosecution were significantly heightened when, in or about the middle of 2017, a bank associated with the tax refund claims that SKAT claimed were improperly obtained as a result of Stein, Lhote, and McGee's conduct was searched by German authorities acting at the request of Danish authorities.

36.     Accordingly, beyond ensuring that SKAT recouped tax refunds that it had paid out and that it contended were improperly paid and obtaining a civil resolution of any claims that SKAT might have, Stein, Lhote, and McGee's substantial motivation in negotiating with SKAT was the goal of resolving any possible criminal liability on the part of Stein, Lhote, and McGee.

37.     Indeed, for some time, Stein, Lhote, and McGee were discussing with SKAT a resolution that would involve, as a condition precedent, an undertaking by SØIK not to initiate criminal charges against Stein, Lhote, and McGee.  Ultimately, in or about early 2019, Stein, Lhote, and McGee determined that they would continue the negotiations with SKAT without any such undertaking from SØIK.

38.     Nonetheless, Stein, Lhote, and McGee's focus on minimizing the chances that SØIK would initiate criminal charges against them remained a substantial motivation in continuing their negotiations with SKAT, and SKAT recognition of this, are reflected in the final terms of the settlement agreement that were ultimately agreed to by both Stein, Lhote, McGee, and SKAT.

**The Settlement Agreement**

39.     On or about May 28, 2019, Stein, Lhote, McGee, and others entered into a settlement agreement with SKAT (collectively, the "Settlement Agreement").  Besides Stein, Lhote, and McGee, more than 70 pension plans and more than 50 other individuals associated with those pension plans entered into the Settlement Agreement.  That these other parties entered into the Settlement Agreement was largely the result of the efforts of Stein, Lhote, and McGee.

40.     The Settlement Agreement reflects that SKAT believed that it had claims against Stein, Lhote, McGee, and others relating to the payment of tax refund claims and that, for their part, Stein, Lhote, McGee, and others had meritorious defenses to those claims.

41.     The Settlement Agreement also reflects the desire of Stein, Lhote, McGee, and others and SKAT to fully and finally settle those claims without litigation.

42.     The Settlement Agreement further reflects that Stein, Lhote, McGee, and others had "expressed a willingness to use their best efforts and full cooperation to assist [SKAT] in various proceedings related to" dividend tax refund claims paid out by SKAT.

43.     At or about the time of execution of the Settlement Agreement, Stein, Lhote, McGee, and other individuals entered into a letter agreement, dated May 28, 2019 (the "Letter Agreement").  The Letter Agreement supplements the Settlement Agreement and largely adopts the terms defined in the Settlement Agreement.  The Letter Agreement concerns, in general, the time and manner in which Stein, Lhote, and McGee would liquidate certain assets in order to make payments required in the second phase of the Settlement Agreement, as described more fully below.

44.     The Settlement Agreement and the Letter Agreement are governed by New York law.

45.     In general, it was the intent of the parties to divide the obligations of the Settlement Agreement and the Letter Agreement, and performance of those obligations, into two phases.

**Phase I of the Settlement Agreement**

46.     Under the first phase of the obligations under the Settlement Agreement ("Phase I"), Stein, Lhote, McGee, and others were required to make to SKAT an initial cash payment of 950 million Danish kroner ("DKK").

47.     Upon the payment of the initial cash payment of DKK 950 million, SKAT "forever and finally generally release[d], waive[d] and discharge[d]" Stein, Lhote, McGee, and others from all claims broadly associated with the dividend tax refund applications.

11

48.     Under the Settlement Agreement, SKAT's release of all claims broadly associated with the dividend tax refund obligations is not dependent upon the satisfaction of any conditions other than the initial cash payment of DKK 950 million and is not affected by the parties' conduct thereafter.

49.     By on or about August 8, 2019, the initial cash payment was completed.  At or about the time of the Settlement Agreement, DKK 950 million was the approximate U.S. dollar equivalent of $142.6 million.  As a result on the initial cash payment, SKAT is bound by its release of Stein, Lhote, McGee, and others.

50.     Phase I also required that, simultaneously with the initial cash payment of DKK 950 million, Stein, Lhote, and McGee provide to SKAT an affidavit of confession of judgment. The purpose of the affidavit of confession of judgment was to facilitate SKAT's collection of payments to be made during the second phase of the settlement agreement ("Phase II").

51.     On or about August 8, 2019, Stein, Lhote, and McGee provided an Affidavit of Confession of Judgment (the "2019 Affidavit of Confession of Judgment").

52.     The parties' performance of the Phase I obligations is complete.

**Phase II of the Settlement Agreement**

53.     Stein, Lhote, and McGee had an extensive series of obligations under the second phase of the Settlement Agreement ("Phase II").  For its part, SKAT had limited and discrete obligations under Phase II.

54.     In Phase II of the Settlement Agreement, Stein, Lhote, and McGee were required to make a further payment of at least approximately DKK 600 million, subject to various adjustments, on or before three years from the effective date of the Settlement Agreement, which was extended by an additional year by operation of the Letter Agreement.  Thus, the Settlement

Agreement provides that a further payment of at least approximately DKK 600 million, subject to further adjustments, be made on or before May 28, 2023.

55.     Stein, Lhote, and McGee were also required to "fully cooperate with the investigation by [SKAT] of third parties" who were not released by operation of the Settlement Agreement.  The cooperation obligations included, in general, the provision of documents and information by Stein, Lhote, and McGee and also required that Stein, Lhote, and McGee's use of "their best efforts to ensure that their cooperation with [SKAT] is meaningful and productive."

56.     In performing their obligations under Phase II of the Settlement Agreement, Stein, Lhote, and McGee made several substantial payments.  The payments by Stein, Lhote, and McGee started in or around June 2020.  These payments totaled more than approximately DKK 57.7 million, or the approximate U.S. dollar equivalent of $8.66 million.

57.     Also as a part of their Phase II performance and pursuant to the Letter Agreement, Stein, Lhote, and McGee provided approximately ten quarterly reports regarding the efforts by them to liquidate certain agreed-upon assets and, thereby, generate cash to be able to make the further payments required under Phase II of the Settlement Agreement.  Stein, Lhote, and McGee began to provide these reports beginning on or about August 26, 2019.

58.     As a further part of their Phase II performance, Stein, Lhote, and McGee produced over 90,000 documents to facilitate SKAT's litigation efforts in the United States. Stein, Lhote, and McGee also researched and answered numerous substantive questions posed by SKAT in connection with SKAT's prosecution of its claims against others.  Stein, Lhote, and McGee also expended substantial time and resources supporting SKAT's requests for assistance in its prosecution of claims against other parties in actions that SKAT initiated in Dubai, the United Kingdom, and the United States.

13

59.     As alleged above, payments to be made during Phase II of the Settlement Agreement could be subject to various adjustments.  In the event there was a "claim, controversy or dispute" "arising out of or relating to" these adjustments that amounted to less than DKK 20 million, the approximate U.S. dollar equivalent of $2.85 million, the parties to the Settlement Agreement agreed to arbitrate such claim, controversy, or dispute before an arbitrator identified in the Settlement Agreement.  The parties also had the right, but not the obligation, to arbitrate claims, controversies, or disputes relating to the payment adjustments that amounted to more than DKK 20 million.

60.     In exchange for what Stein, Lhote, and McGee promised to do under Phase II of the Settlement Agreement, SKAT had only limited and discrete obligations under Phase II. Substantially all of the consideration provided by SKAT for the obligations in Phase II is contained in Sections 8 and 9 of the Settlement Agreement.  Each of these obligations reflected the paramount concern of Stein, Lhote, and McGee about the possibility of being criminally charged by SØIK, their desire to minimize the chances that SØIK would initiate criminal charges against them in Denmark, and SKAT's recognition of these motivations.

61.     First, SKAT and Stein, Lhote, and McGee agreed that the Settlement Agreement "is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which [SKAT] seeks to use" information provided by Stein, Lhote, and McGee as a result of their obligation to cooperate with SKAT.  As a result, SKAT and Stein, Lhote, and McGee "agree[d] to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in" Section 8.

62.     Second, SKAT promised that it would limit disclosure of the Settlement Agreement, or its contents, to only the Danish Ministry of Taxation and to various other

14

components of the Danish government, with disclosure being solely for the "purpose of seeking authority for the entry into th[e Settlement] Agreement by [SKAT] or if compelled by operation of law or regulation."

63.    SKAT was also permitted to publicly disclose limited aspects of the Settlement Agreement.  Those aspects that could be disclosed did not include the identity of Stein, Lhote, McGee, or the other parties to the Settlement Agreement.

64.    Third, SKAT promised to give prompt, written notice to SØIK of certain exact matters specified in detail in Section 8(f) of Settlement Agreement.  Specifically, SKAT promised that:

> Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

65.    The requirements of Section 8(f) of the Settlement Agreement, including the writing requirement, were material.

66.    Because Stein, Lhote, and McGee were concerned of the possibility of criminal charges in Denmark and sought to minimize the chances that SØIK would initiate criminal charges against them in Denmark, which SKAT recognized, it was of the utmost importance to Stein, Lhote, and McGee that SKAT itself -- which claimed to be the victim of a fraudulent scheme -- and not anyone else, including Stein, Lhote, and McGee themselves, promptly communicate to SØIK Stein, Lhote, and McGee's good faith efforts to make SKAT whole, their

cooperation with SKAT, the substantial payments made under the Settlement Agreement, and the requirement that there be further payments under the Settlement Agreement, among other things.

67.     The writing required by Section 8(f) ensured that SØIK was informed of Stein, Lhote, and McGee's efforts and the terms of the Settlement Agreement via an official, written statement of the views of SKAT.  Without a writing, Stein, Lhote, and McGee:

(a)     could not be assured that SØIK, including all of its various components, was informed of Stein, Lhote, and McGee's payments, contractual, commitments and efforts;

(b)     could not be assured that any information imparted to SØIK would become part of the official records and institutional memory of SØIK and would be communicated widely within SØIK; and

(c)     could not be assured that the information imparted pursuant to Section 8(f) would be available in precisely the words agreed to by the parties to the Settlement Agreement to influence new and different actors within SØIK that might ultimately play a role in the decision whether to criminally charge Stein, Lhote, and McGee.

68.     The requirements of Section 8(f) were also material because, among other reasons, it was important that the Danish prosecutor, SØIK, be made aware promptly upon execution of the Settlement Agreement and in writing that the understanding of the parties to the Settlement Agreement and a "fundamental principle" on which it was based was that Stein, Lhote, and McGee were paying to SKAT the full amount of proceeds that Stein, Lhote, and McGee received directly or indirectly as a result of tax refund applications that were made to SKAT and that were the basis of SKAT's claims against Stein, Lhote, and McGee, which SKAT was releasing in the Settlement Agreement.  Beyond that, it was important, and was reflected in the Settlement Agreement, that SØIK be made aware promptly and in writing that Stein, Lhote,

16

and McGee "ha[d] expressed a willingness to use their best efforts and full cooperation to assist [SKAT] in various proceedings related to the subject matter" of the dividend tax refund applications at issue.

69.     Finally, the Settlement Agreement contained in Section 9 a non-disparagement clause that, in general, precluded SKAT, among others, from making statements that were "disparaging, derogatory or defamatory of or reasonably likely to damage" Stein, Lhote, and McGee, their reputations, business or affairs, nor could SKAT induce any person or entity to do so.

**SKAT Breaches the Phase II Obligations of the Settlement Agreement**

70.     Despite the simplicity of complying with these obligations and the ease with which it could have done so, SKAT did not fulfill, and breached the obligations in Section 8(f) of the Settlement Agreement to "promptly upon the execution of the Settlement Agreement":

        (a)     "in writing" "bring to the attention of SØIK "th[e Settlement] Agreement and its terms"; and

        (b)     "represent, in writing, that th[e Settlement] Agreement reflects good-faith negotiation by [Stein, Lhote, and McGee], that . . . cooperation [Stein, Lhote, and McGee] may result in the recovery by [SKAT] of additional funds from third parties and that th[e Settlement Agreement] is in the best interests of [SKAT]."

71.     Neither oral communications, whether in-person or telephonic, by SKAT to SØIK, nor press releases issued by SKAT, whether reviewed by Stein, Lhote, or McGee before their issuance or not, nor written communications that were not made promptly upon execution of the Settlement Agreement constitute compliance with Section 8(f) of the Settlement Agreement.

72.     SKAT's breach of its obligations under Section 8(f) of the Settlement Agreement was material.

73.     SKAT's breach of its obligations under Section 8(f) of the Settlement Agreement was willful and so substantial and fundamental as to strongly tend to defeat the object of the parties in entering into the Settlement Agreement.

74.     SKAT's breach of its obligations under Section 8(f) of the Settlement Agreement does not comport with basic standards of good faith and fair dealing.

75.     SKAT's breach of its obligations under Section 8(f) of the Settlement Agreement further frustrated the intent of the parties in agreeing to Section 8(f) because of extensive leaks of the Settlement Agreement that occurred in the months after the May 2019 Settlement Agreement, which created an environment that was deeply antithetical to any result other than that Stein, Lhote, and McGee should be criminally charged in Denmark and that continued for years after the leaks began in or around September 2019.  These leaks eviscerated one of the two primary forms of consideration that Stein, Lhote, and McGee obtained in Phase II of the Settlement Agreement.

76.     For example:

(a)     In or about late September 2019, Stein and Lhote's names were disclosed in the Danish media as, in substance, the "previously unknown masterminds of the dividends case."

(b)     The Danish media obtained a copy of the Settlement Agreement and publicized extensive criticisms of its terms, including from persons claiming to be experts in Danish law, suggesting that the terms of the Settlement Agreement were not favorable to

Denmark and were excessively favorable to Stein, Lhote, McGee, and other parties to the Settlement Agreement.

(c)     A former Danish Minister of Taxation publicly stated, in substance and in part, that, in Denmark, it was impossible to make a settlement to escape criminal prosecution if illegal conduct has been committed and that the Settlement Agreement did not alter SØIK's efforts in relation to Danish criminal law, such that SØIK could still prosecute Stein, Lhote, and McGee, the fair inference of which was that SØIK might, and should, criminally prosecute Stein, Lhote, and McGee.

(d)     An official of SKAT indicated, in substance and in part, that, while the terms of the settlement were good, he thought that everyone across the country of Denmark, including himself, was deeply outraged by what had happened in the case.

77.     These leaks, and many others, made it all the more important, and the obligation to do so became more material, that SKAT communicate in writing to SØIK the terms of the Settlement Agreement and memorialize, and communicate in writing, its official positions that the Settlement Agreement represents Stein, Lhote, and McGee's good-faith negotiation, Stein, Lhote, and McGee's cooperation might result in additional recovery beyond what was to be paid under the Settlement Agreement, and the Settlement Agreement was in the best interests of SKAT.

78.     In or about April 2020, SØIK obtained from one or more courts in Denmark orders to seize assets of Stein, Lhote, and McGee.  In obtaining these seizure orders, SØIK did not inform the Danish court that Stein, Lhote, and McGee had, among other things, already paid SKAT more than $140 million, committed to paying more, and committed to cooperating with SKAT to recover still more.

79.     As alleged above, the environment in Denmark after the Settlement Agreement was deeply antithetical to any result other than that Stein, Lhote, and McGee should be criminally charged in Denmark.

80.     For example, in or about August 2020, a SØIK official wrote to the United States Department of Justice to seek assistance in freezing assets of Stein and Lhote in the United States based on the seizure orders obtained in Denmark.  In doing so, the SØIK official indicated, in substance and in part, that SØIK was "grateful for [the Department of Justice's] help in this matter but [SØIK] would also like to once again emphasize that it cannot be stress [sic] enough how important and high profile this case is in Denmark.  The case has the attention of both politicians and the media. The later have in a documentary shown that the suspects have the real estate that we seek to seize.  It is harmful to the sense of justice for the Danish population to know that the suspects have expensive real estate when they are suspected of defrauding the Danish state of approximately USD 164.203.690."

81.     In or about November 2020, a different official of SØIK wrote to the United States Department of Justice to seek assistance in freezing assets based on the seizure orders obtained in Denmark.  In doing so, the official of SØIK wrote, in substance and in part, that SØIK "is aware that SKAT has reached a settlement with an unknown number of parties regarding the amount of DKK 2.900.000.000 (~ USD 462,000,000) related to 61 US pension plans," but that SØIK was "not in possession of the settlement and has no knowledge of any details in it, including who is involved, besides the amount and the number of pension plans." SØIK further asserted, in substance and in part, that the reason for its lack of knowledge of the Settlement Agreement was "a non-disclosure clause in the settlement."

82.     In the process of seeking assistance of the Department of Justice in seizing assets, at no time did SØIK inform the United States Department of Justice that Stein, Lhote, and McGee, among other things, had already paid SKAT at least approximately DKK 950 million, had committed to paying more, and had committed to cooperating with SKAT to recover still more.

**Stein, Lhote, and McGee Are Charged in Denmark**

83.     As part of their efforts to cooperate with the investigation of SØIK and to avoid criminal charges in Denmark, Stein, Lhote, and McGee each participated in a voluntary interview with SØIK.  These interviews occurred over multiple days.  For example, Lhote's interview occurred on or about March 3 through March 5, 2021, and Stein's interview occurred on or about March 10 through March 12, 2021.  Over the course of the multi-day interviews and as part of their efforts to cooperate, Stein, Lhote, and McGee answered numerous questions about the conduct that SØIK was investigating.  These interviews occurred nearly two years after the Settlement Agreement had been entered into.

84.     During the interviews, the representatives of SØIK did not ask substantially any questions of either Stein, Lhote, and McGee about the Settlement Agreement, its terms, their good faith negotiations with SKAT, their past and ongoing cooperation with SKAT, or Stein, Lhote, and McGee's efforts to ensure that SKAT recouped all of the tax refunds that had been paid out to pension plans associated with Stein, Lhote, and McGee.  During one interview, a representative of SØIK confirmed, in substance and in part, that SØIK did not even have a copy of the Settlement Agreement and, further, that SØIK would like to have a copy of the Settlement Agreement.

85.     Several weeks later, on or about April 13, 2021, SØIK indicted Stein, Lhote, McGee, and others, for fraud of a particularly aggravated nature under Sections 88(1), 279, and 286(2) of the Danish Criminal Code.  Under Danish criminal law, Stein, Lhote, and McGee face a term of imprisonment of up to twelve years for a violation of these provisions.

86.     Stein, Lhote, and McGee were charged together with three other individuals who had not proactively cooperated with SKAT, had not negotiated in good faith with SKAT, and had not been part of any efforts to ensure that SKAT was repaid any tax refunds that it had paid. Stein, Lhote, and McGee were charged with precisely the same criminal offense and using the same charging language as the three other individuals who had not made any of the efforts to cooperate that Stein, Lhote, and McGee had, entered into the Settlement Agreement, repaid substantial funds to SKAT, or undertaken any of the good faith efforts that Stein, Lhote, and McGee had undertaken.  The fair inference is that SØIK considered Stein, Lhote, and McGee identically situated to these three other criminal defendants.

87.     In the period immediately following the indictment, U.S. counsel for SKAT was repeatedly requested to provide the written communication from SKAT to SØIK required by Section 8(f) of the Settlement Agreement.

88.     On or about June 9 and June 10, 2021, each of Stein, Lhote, and McGee provided an updated affidavit of confession of judgment concerning, in general, payments to be made during Phase II of the Settlement Agreement (the "2021 Affidavit of Confession of Judgment"). Doing so was a requirement of Phase II of the Settlement Agreement and was designed to facilitate SKAT's collection of payments to be made as required by Phase II of the Settlement Agreement in the event of a failure to make those payments or another breach of Phase II of the Settlement Agreement.

4870-0673-9370

89.     Despite repeated requests, U.S. counsel for SKAT never provided to Stein or Lhote the prompt and written communication from SKAT to SØIK required by Section 8(f) of the Settlement Agreement.  Nor, despite repeated requests prior to initiation of this action, has U.S. counsel for SKAT ever indicated, confirmed, or even suggested that the communication to SØIK, which was required to have been in writing and made promptly upon execution of the Settlement Agreement, was ever provided by SKAT.  The communication required by Section 8(f) of the Settlement Agreement was never made.

90.     SKAT was required by Section 8(f) of the Settlement Agreement to provide the writing specified in that section "promptly upon the execution of th[e Settlement] Agreement," which occurred on or about May 28, 2019.  In light of the passage of time and the criminal charges that SØIK has brought, SKAT has no ability to cure its failure to perform its obligations under Section 8(f) and doing so now would not serve any of the purposes intended by the parties in agreeing to Section 8(f).  For the same reasons, it would be futile for Stein, Lhote, or McGee to request that SKAT cure SKAT's non-compliance with, and breach of, its obligations under Section 8(f) of the Settlement Agreement.

**The 2021 Affidavit of Confession of Judgment Is Invalid and Unenforceable**

91.     As alleged above, Stein, Lhote, and McGee were required by the Settlement Agreement to provide, and did provide, the 2019 Affidavit of Confession of Judgment and, approximately two years later, the 2021 Affidavit of Confession of Judgment.

92.     The 2019 Affidavit of Confession of Judgment was provided in the form attached to the Settlement Agreement.

23

93.     The 2019 Affidavit of Confession of Judgment stated, and Lhote swore under oath in it, that he "resides in New York County."  At the time that Lhote executed the 2019 Affidavit of Confession of Judgment, Lhote resided in New York County.

94.     The 2019 Affidavit of Confession of Judgment stated, and McGee swore under oath in it, that he "resides in Philadelphia County and authorizes entry of this Confession of Judgment in New York County."  At the time that McGee executed the 2019 Affidavit of Confession of Judgment, McGee resided in Philadelphia County, Pennsylvania.

95.     The Settlement Agreement also attached a form for the Updated Affidavit of Confession of Judgment to be provided approximately two years after execution of the Settlement Agreement.  The form updated affidavit of confession of judgment attached to the Settlement Agreement stated, and proposed that Lhote swear under oath, that "Lhote resides in New York County," and further stated, and proposed the McGee swear under oath, that "McGee resides in Philadelphia County and authorizes entry of this Confession of Judgment in New York County."

96.     In or about late August 2019, approximately three months after execution of the Settlement Agreement, CPLR 3218, which governs judgments by confession, was amended. CPLR 3218 was amended to preclude the use of affidavits of confession of judgment with respect to those residing outside of the State of New York at the time of execution of the affidavit of confession of judgment or at the time of filing.  The amendment also eliminated the ability of a non-resident of the State of New York to authorize the entry of judgment in any county in New York and the ability of a non-resident to designate the county in New York in which an affidavit of confession of judgment may be filed.  The amendment took effect

immediately and applied to affidavits of confession of judgment executed on or after the effective date of the late August 2019 amendment.

97.     Under the version of CPLR 3218 in effect since approximately late August 2019, an affidavit of confession of judgment may only be filed in the county in New York "where the defendant's affidavit stated that the defendant resided when it was executed or where the defendant resided at the time of filing."

98.     By the time that Stein, Lhote, and McGee were required under the Settlement Agreement to provide the updated affidavit of confession of judgment in or about June 2021, Lhote and McGee resided outside of the State of New York.  As a result, the form of updated affidavit of confession of Judgment attached to the Settlement Agreement was amended to reflect their true residences.  The 2021 Affidavit of Confession of Judgment that Lhote, in fact, executed stated, and Lhote swore in it, that he "resides in Orange County, Florida."  The 2021 Affidavit of Confession of Judgment that McGee, in fact, executed stated and McGee swore in it, that he "resides in Philadelphia County, Philadelphia."

99.     Failure to make the payments required in Phase II of the Settlement Agreement on or before May 28, 2023, is an event of default that would, if the Settlement Agreement remained in effect, permit SKAT to file the 2021 Affidavit of Confession of Judgment and, thereafter, take steps to collect any judgment that might be entered as a result.

100.     The 2021 Affidavit of Confession of Judgment is unenforceable as against Lhote and McGee because neither was not a resident of New York at the time that the 2021 Affidavit of Confession of Judgment was executed, does not currently have any residence in the State of New York, and has no present intention to establish residence in the State of New York.  Accordingly,

4870-0673-9370

there is no county in the State of New York in which SKAT can file the 2021 Affidavit of Confession of Judgment.

101.    In addition, the 2021 Affidavit of Confession of Judgment does not state a sum for which a judgment may be entered, but rather is predicated upon facts, and an extraordinarily complicated series of calculations, that are reasonably disputable and, indeed, are actually in dispute between Stein, Lhote, McGee and SKAT.  As to calculations of the amounts set out in the 2021 Affidavit of Confession of Judgment, the terms of the Settlement Agreement are so vague and indefinite that there is no basis or standard for deciding whether the Settlement Agreement has been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain.  To determine the amount of any judgment would require consideration of facts and documents that are external to the 2021 Affidavit of Confession of Judgment and would also require credibility determinations and complex valuations to calculate the amount of any judgment.  The 2021 Affidavit of Confession of Judgment also misstates the facts out of which the claimed debt might arise and the legal basis for any such debt.  In addition, as a result of SKAT's breach of its obligations under Phase II of the Settlement Agreement, no debt from Stein, Lhote, or McGee to SKAT is justly due or to become due.

102.    The 2021 Affidavit of Confession of Judgment is, therefore, invalid, null and void, and unenforceable.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against
### Defendant SKAT and Nominal Defendant McGee)

103.    Stein and Lhote repeat and reallege the allegations contained in paragraphs 1 to 102 as if fully set forth herein.

104.    Stein, Lhote, McGee, and SKAT entered into the Settlement Agreement and the Letter Agreement on or about May 28, 2019.

105.    Stein, Lhote, and McGee have substantially performed their obligations under the Settlement Agreement and the Letter Agreement.

106.    SKAT breached its obligations under Phase II of the Settlement Agreement.

107.    SKAT's breach was material.

108.    SKAT's breach was willful and so substantial and fundamental as to strongly tend to defeat the object of the parties in entering into the Settlement Agreement.

109.    SKAT's breach does not comport was basic standards of good faith and fair dealing.  SKAT's breach cannot be cured.

110.    By reason of SKAT's breach, Stein, Lhote, and McGee were deprived of the benefit of the bargain under Phase II of the Settlement Agreement.

111.    Having paid approximately $8.66 million to SKAT in compliance with its obligations under Phase II of the Settlement Agreement, but not having received the benefit of the bargain under Phase II of the Settlement Agreement, Stein, Lhote, and McGee have been damaged as a result of SKAT's breach of its obligations under Phase II of the Settlement Agreement.

112.    No debt by Stein, Lhote, and McGee to SKAT is justly due or to become due.

4870-0673-9370

**SECOND CAUSE OF ACTION**
**(28 U.S.C. § 2201 *et seq.*, Declaratory Judgment Against**
**Defendant SKAT and Nominal Defendant McGee)**

113.    Stein and Lhote repeat and reallege the allegations contained in paragraphs 1 to 102 as if fully set forth herein.

114.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, permits this Court to declare the rights and other legal relations of the parties to this dispute.

115.    An actual controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in favor of Stein and Lhote has arisen.

116.    A judicial declaration is necessary and appropriate so that Stein and Lhote can avoid imminent damage from the filing of the 2021 Affidavit of Confession of Judgment.

117.    Therefore, Stein and Lhote are entitled to a declaration that the 2021 Affidavit of Confession of Judgment, which was executed by Stein, Lhote, and McGee, is unenforceable, void, null and void and should be vacated and set aside.

**PRAYER FOR RELIEF**

WHEREFORE, Stein and Lhote respectfully request judgment against SKAT and with respect to the rights of McGee as follows:

i.      Finding that SKAT breached its obligations under Phase II of the Settlement Agreement;

ii.     Finding that SKAT's breach was material;

iii.    Finding that SKAT's breach was willful;

iv.     Finding that SKAT's breach does not comport with basic standards of good faith and fair dealing;

v.      Rescinding Phase II of the Settlement Agreement and the Letter
Agreement;

vi.      Discharging Stein, Lhote, and McGee from any further obligations under
Phase II of the Settlement Agreement and the Letter Agreement, including any further payment
obligations;

vii.      Voiding, setting aside, vacating, and otherwise declaring invalid and null
and void the 2021 Affidavit of Confession of Judgment as to Stein, Lhote, and McGee;

viii.      Disgorging, or restituting, to Stein and Lhote payments made by Stein and
McGee to SKAT during Phase II of the Settlement Agreement plus pre- and post-judgment
interest under New York law;

ix.      Restoring Stein, Lhote, McGee, and SKAT to the condition in which they
were as of the completion of the parties' performance of the Phase I obligations;

x.      Awarding Stein and Lhote damages in an amount to be determined for
breach of Phase II of the Settlement Agreement; and

xi.      Granting such other, further, and different relief as the Court deems just
and proper.

**ANSWER AND AFFIRMATIVE DEFENSES**
**TO FIRST AMENDED COUNTERCLAIMS**

Counterclaim Defendants Matthew Stein ("Stein") and Jerome Lhote ("Lhote"), by and
through their undersigned counsel, submit this Answer and Affirmative Defenses in response to
the First Amended Counterclaims, dated June 15, 2023, of Counterclaim Plaintiff
Skatteforvaltningen ("SKAT") (the "Counterclaims") against Stein, Lhote, and Counterclaim
Defendant Luke McGee ("McGee") based on their current knowledge.  All of the allegations in

29

the Counterclaims not specifically admitted are denied.  To the extent the headings in the Counterclaims are not numbered paragraphs, no response is required.  To the extent any response is required, Stein and Lhote deny the allegations in the headings.  With respect to the numbered paragraphs, Stein and Lhote answer as follows:[1]

123.    Paragraph 123 characterizes SKAT's claims for relief and, as a result, no response is required.

124.    Stein and Lhote admit that Stein, Lhote, and McGee entered into a settlement agreement with SKAT and the Covered Parties on or about May 28, 2019 (the "Settlement Agreement").  Stein and Lhote deny the remaining allegations in paragraph 124.

125.    To the extent that paragraph 125 characterizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.

126.    To the extent that paragraph 126 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.

127.    Stein and Lhote admit that they provided to SKAT spreadsheets and supporting documents to calculate net proceeds.  Stein and Lhote deny the remaining allegations in paragraph 127.  To the extent that the allegations contained in paragraph 127 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

128.    Stein and Lhote admit that the preliminary settlement amount of DKK 950 million was paid within a few months of the effective date of the Settlement Agreement.  To the extent that the remaining allegations summarize the Settlement Agreement and letter agreement's terms, the documents speak for themselves.

---

[1] Paragraph number references are to the identically numbered paragraphs in SKAT's Counterclaims, dated June 15, 2023.

129.     Stein and Lhote deny the allegations in paragraph 129.

130.     Stein and Lhote admit that SKAT provided Stein and Lhote with a notice of breach on May 29, 2023 and a ten-business day opportunity to cure.  Stein and Lhote deny the remaining allegations in paragraph 130.  To the extent that the allegations contained in paragraph 130 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

131.     To the extent that paragraph 131 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  To the extent that paragraph 131 summarizes the June 2021 confession of judgment, the confession of judgment speaks for itself.  Stein and Lhote deny that they have confessed judgment in the amount of DKK 1,141,537,135.  To the extent that the allegations contained in paragraph 131 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

132.     Paragraph 132 characterizes SKAT's claims for relief to which no response is required.

## PARTIES

133.     Stein and Lhote admit that SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  Stein and Lhote lack sufficient knowledge to admit or deny the second sentence of paragraph 133.

134.     Stein and Lhote admit that Stein is a citizen of the United States and a citizen of the State of New York.  To the extent paragraph 134 references Stein's Rule 7.1 disclosure statement, the document speaks for itself.

31

135.    Stein and Lhote admit that Lhote is a citizen of the United States and a citizen of the State of Florida.  To the extent paragraph 135 references Lhote's Rule 7.1 disclosure statement, the document speaks for itself.

136.    Stein and Lhote admit that Luke McGee is a citizen of the United States and a citizen of the State of Florida.  To the extent paragraph 136 references McGee's Rule 7.1 disclosure statement, the document speaks for itself.

## JURISDICTION AND VENUE

137.    Stein and Lhote admit that the Court has subject matter jurisdiction over SKAT's counterclaims pursuant to 28 U.S.C. § 1332(a)(4).

138.    Stein and Lhote admit that the Court has supplemental jurisdiction over SKAT's counterclaims pursuant to 28 U.S.C. § 1367(a).

139.    Stein and Lhote admit that the Court has personal jurisdiction over Stein and Lhote.  To the extent that the allegations contained in paragraph 139 relate to the Settlement Agreement, the document speaks for itself.  Stein and Lhote deny the remaining allegations in paragraph 139.

140.    Stein and Lhote admit that venue in this District is proper.  Stein and Lhote deny the remaining allegations in paragraph 140.

## FACTUAL ALLEGATIONS

141.    To the extent paragraph 141 of SKAT's counterclaims state conclusions of law, no response is required.

142.    Stein and Lhote deny the allegations in paragraph 142.

143.    Stein and Lhote deny the allegations in paragraph 143.

4870-0673-9370

144.    Stein and Lhote admit that SKAT has filed civil cases against Sanjay Shah, Solo Capital, and other entities owned or controlled by Shah.  Stein and Lhote also admit that SØIK has brought criminal charges against Shah.  Stein and Lhote deny the remaining allegations in paragraph 144.

145.    Stein and Lhote admit the allegations in paragraph 145.  To the extent that the allegations contained in paragraph 145 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

146.    Stein and Lhote deny the allegations in paragraph 146.

147.    Stein and Lhote lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147.

148.    Stein and Lhote lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148.

149.    Stein and Lhote admit that Stein and Lhote entered into a settlement agreement with SKAT, McGee, and the Covered Parties on or about May 28, 2019.  Stein and Lhote deny the remaining allegations in paragraph 149.

150.    To the extent that paragraph 150 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.

151.    To the extent that paragraph 151 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.

152.    To the extent that paragraph 152 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  To the extent that paragraph 152 summarizes the letter agreement's terms, the letter agreement speaks for itself.

4870-0673-9370

153.    To the extent that paragraph 153 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.

154.    To the extent that paragraph 154 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.

155.    To the extent that paragraph 155 quotes the Settlement Agreement, the Settlement Agreement speaks for itself.

156.    Stein and Lhote admit that they provided SKAT with detailed spreadsheets for each plan with their calculation of the Net Proceeds for that plan.  Stein and Lhote deny the remaining allegations in paragraph 156.  To the extent that the allegations contained in paragraph 156 relate to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

157.    Stein and Lhote lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 157.

158.    To the extent that the allegations contained in paragraph 158 relate to the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.  Stein and Lhote deny the remaining allegations in paragraph 158.

159.    To the extent that paragraph 159 summarizes the terms of the Settlement Agreement and the letter agreement, the Settlement Agreement and letter agreement speak for themselves.  Stein and Lhote deny the remaining allegations in paragraph 159.

160.    Stein and Lhote admit that North Channel Bank has not been sold and entered into insolvent administration in Germany in January 2023.  Stein and Lhote deny the remaining allegations in paragraph 160.  To the extent that the allegations contained in paragraph 160 relate

to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

161.    To the extent that paragraph 161 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  Stein and Lhote deny the remaining allegations in paragraph 161.  To the extent that the allegations contained in paragraph 161 relate to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

162.    To the extent that paragraph 162 summarizes the relevant agreements, the relevant agreements speak for themselves.  Stein and Lhote deny the remaining allegations in paragraph 162.  To the extent that the allegations contained in paragraph 162 relate to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

163.    To the extent that paragraph 163 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  Stein and Lhote deny the remaining allegations in paragraph 163.  To the extent that the allegations contained in paragraph 163 relate to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

164.    Stein and Lhote deny the allegations in paragraph 164.  To the extent that the allegations contained in paragraph 164 relate to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

165.    Stein and Lhote deny the allegations in paragraph 165.  To the extent that the allegations contained in paragraph 165 relate to McGee or the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

4870-0673-9370

166.     Stein and Lhote deny the allegations in paragraph 166.  To the extent that the allegations contained in paragraph 166 relate to the Covered Parties, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

167.     To the extent that paragraph 167 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  Stein and Lhote deny the remaining allegations in paragraph 167.  To the extent that the allegations contained in paragraph 163 relate to McGee, or the Covered Parties Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

168.     Stein and Lhote deny the allegations in paragraph 168.  To the extent that the allegations contained in paragraph 168 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

169.     To the extent that paragraph 169 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  Stein and Lhote admit that SKAT provided a written notice on May 29, 2023.  Stein and Lhote deny the remaining allegations in paragraph 169.  To the extent that the allegations contained in paragraph 169 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

170.     To the extent that paragraph 170 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  Stein and Lhote deny the remaining allegations in paragraph 170.

171.     Stein and Lhote deny the allegations in paragraph 171.  To the extent that the allegations contained in paragraph 171 relate to McGee, Stein and Lhote lack knowledge or information sufficient to form a belief as to their truth.

4870-0673-9370

172.    To the extent that paragraph 172 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  Stein and Lhote admit that they provided SKAT with an updated confession of judgment executed by Lhote on June 9, 2021, by Stein on June 10, 2021, and by McGee on June 10, 2021.  Stein and Lhote deny the remaining allegations in paragraph 172.

173.    To the extent that paragraph 173 summarizes the Settlement Agreement's terms, the Settlement Agreement speaks for itself.  To the extent that paragraph 173 summarizes the June 2021 confession of judgment, the confession of judgment speaks for itself.  Stein and Lhote deny the remaining allegations in paragraph 173.

## **CAUSES OF ACTION**

### **COUNT I**
**(Breach of Contract)**
**(Against all counterclaim-defendants)**
**(DKK 600 million payment and accrued interest)**

174.    Stein and Lhote reassert and incorporate their responses to all previous paragraphs as if fully set forth herein.

175.    Stein and Lhote deny the allegation in paragraph 175.

176.    Stein and Lhote deny the allegation in paragraph 176.

177.    Stein and Lhote deny the allegations in paragraph 177.

178.    Stein and Lhote deny the allegations in paragraph 178.

179.    Stein and Lhote deny the allegations in paragraph 179.

180.    Stein and Lhote deny the allegations in paragraph 180.

**COUNT II**
**(Breach of Contract)**
**(Against all counterclaim-defendants)**
**(True-Up Amount and accrued interest)**

181.    Stein and Lhote reassert and incorporate their responses to all previous paragraphs as if fully set forth herein.

182.    Stein and Lhote deny the allegation in paragraph 182.

183.    Stein and Lhote deny the allegations in paragraph 183.

184.    Stein and Lhote deny the allegations in paragraph 184.

185.    Stein and Lhote deny the allegations in paragraph 185.

186.    Stein and Lhote deny the allegations in paragraph 186.

187.    Stein and Lhote deny the allegations in paragraph 187.

**REQUEST FOR RELIEF**

Stein and Lhote state that no response to the "Wherefore" clause and subsequent paragraphs 188 through and including 191 of the Counterclaims is required.  To the extent any response is necessary, Stein and Lhote deny the statements in the "Wherefore" clause and subsequent paragraphs 188 through and including 191, and further deny that SKAT is entitled to any of the relief sought in the Request for Relief.

**AFFIRMATIVE AND OTHER DEFENSES**

Stein and Lhote set forth the following affirmative defenses to the Counterclaims.  Stein and Lhote do not assume the burden of proving any fact, issue, proposition, or element of a cause of action where such burden properly belongs to SKAT. Stein and Lhote reserve the right to amend or supplement this Answer with additional defenses upon further discovery or other investigation concerning these claims.

38

### FIRST AFFIRMATIVE DEFENSE

188.    The Counterclaims fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

189.    SKAT's claims are barred in whole or in part by the doctrines of waiver, laches, acquiescence, and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

190.    SKAT has waived any right to assert breach of contract claims pursuant to the terms of the Settlement Agreement.

### FOURTH AFFIRMATIVE DEFENSE

191.    SKAT's claims are barred in whole or in part by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

192.    To the extent SKAT has suffered any damages for which the law would provide a remedy, which Stein and Lhote deny, SKAT is not entitled to damages, in whole or in part, under the Settlement Agreement because SKAT breached its obligations under the Settlement Agreement.

### SIXTH AFFIRMATIVE DEFENSE

193.    SKAT would be unjustly enriched if the relief it sought were to be granted.

### SEVENTH AFFIRMATIVE DEFENSE

194.    The confession of judgment pursuant to which SKAT seeks relief is invalid under CPLR 3218.

### EIGHTH AFFIRMATIVE DEFENSE

195.    Stein and Lhote are entitled to a set-off to the extent SKAT has recovered any of its alleged damages from any other person.

## NINTH AFFIRMATIVE DEFENSE

196.    SKAT's claims are barred due to its prior breach of the Settlement Agreement as well as the implied covenant of good faith and fair dealing, which breaches were material, willful, or otherwise so substantial and fundamental as to defeat the object of the parties in entering the Settlement Agreement

Dated: New York, New York
        March 4, 2024

                                        MCKOOL SMITH P.C.

                                            /s/
                                    By: _____
                                        Daniel W. Levy
                                        dlevy@mckoolsmith.com
                                        One Manhattan West
                                        395 Ninth Avenue, 50th Floor
                                        New York, New York  10001-8603
                                        Telephone: (212) 402-9400

                                        *Attorney for Plaintiffs - Counterclaim
                                        Defendants Matthew Stein
                                        and Jerome Lhote*