# EXHIBIT A
(Proposed Letter of Request)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CASE NO. 23 Civ. 2508 (NRB)

MATTHEW STEIN and JEROME LHOTE,

                           Plaintiffs,

       v.

SKATTEFORVALTNINGEN,

                           Defendant,

       and

 LUKE McGEE,

                 Nominal Defendant.

SKATTEFORVALTNINGEN,

               Counterclaim Plaintiff,

       v.

MATTHEW STEIN, JEROME LHOTE, and
LUKE MCGEE,

              Counterclaim Defendants.

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING
OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of

Evidence Abroad in Civil or Commercial Matters (the "Convention"), the United States District

Court for the Southern District of New York (the "Court") presents its compliments to the

appropriate judicial authority of Denmark, and respectfully requests international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter. The matter is currently pending in New York, New York, USA.

This Court requests the assistance described herein as necessary in the interests of justice. The assistance requested is that the appropriate judicial authority of Denmark compel the appearance of the below named party to produce documents and provide either a certification that documents provided meet certain criteria for their use in a civil proceeding before this Court or a representative to give oral testimony to the same effect:

National enhed for Særlig Kriminalitet ("NSK")
(formerly known as Særlig Økonomisk og International Kriminalitet ("SØIK"))
Ejby Industrivej 125-135
2600 Glostrup
Denmark[1]

1.   **Sender**

The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Room 2270
New York, NY 10007

2.   **Central Authority of the Requested State**

Ministry of Justice
Procedural Law Division
Slotsholmsgade 10
1216 COPENHAGEN K
Denmark

3.   **Person to whom the executed request is to be returned**

Daniel S. Newman
Justin B. Kaplan
NELSON MULLINS RILEY & SCARBOROUGH LLP

---

[1] The Requesting Authority understands that SØIK has been reorganized and is now referred to as NSK. For sake of simplicity, this Letter of Request refers to SØIK.

2

One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, FL 33131
dan.newman@nelsonmullins.com
justin.kaplan@nelsonmullins.com

**4.     Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

<u>Date</u>:

In light of the schedule for management of the litigation that the Requesting Authority has set, the Requesting Authority would greatly appreciate a response to the Letter of Request within 21 days or as soon thereafter as is practicable.

<u>Reason for the urgency</u>:

The Requesting Authority requires that the requested documents be produced as soon as practicable after the Requested State receives this Letter of Request. Expedient treatment of this Letter of Request will allow the parties to analyze the documents as close to the fact discovery phase of the case as possible (presently May 1, 2024).

**5.**

  **a.  Requesting Judicial Authority**

United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
Courtroom 15C
New York, NY 10007-1312
United States of America

  **b.  To the competent authority of**

Denmark

  **c.  Name of the case and any identifying number**

*Stein et al. v. Skatteforvaltningen*, No. 23 Civ. 2508 (NRB)

**6.     Names and addresses of the parties and their representatives**

  **a.  Plaintiffs / Counterclaim Defendants:**

Matthew Stein
Jerome Lhote

3

**Representatives of Plaintiffs / Counterclaim Defendants**:

Daniel W. Levy
MCKOOL SMITH P.C.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019

**b. Defendant / Counterclaim Plaintiff**:

Skatteforvaltningen

**Representatives of Defendant / Counterclaim Plaintiff**:

Marc Alan Weinstein
William R. Maguire
Dustin Philip Smith
Gregory Charles Farrell
John Thomas McGoey
Neil John Oxford
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004

**c. Nominal Defendant / Counterclaim Defendant**:

Luke McGee

**Representatives of Nominal Defendant / Counterclaim Defendant**:

Daniel S. Newman
Justin B. Kaplan
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, FL 33131

Robert H. Pees
Anne M. Evans
Ilana Roberts
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036

**7.**

### a. Nature of the proceedings

Because the Court has not engaged in any independent fact-finding, the summaries set forth below are derived from the submissions of the parties:

This is breach of contract action regarding a May 2019 settlement agreement (the "Settlement Agreement") between, on the one hand, Plaintiff Matthew Stein, Plaintiff Jerome Lhote, and Nominal Defendant/ Counterclaim Defendant Luke McGee, and, on the other, Defendant / Counterclaim Plaintiff Skatteforvaltningen ("SKAT"), the taxation authority of Denmark. The action seeks, among other relief, rescission of the Settlement Agreement to which Stein, Lhote, and McGee are parties and that SKAT is alleged to have breached. SKAT has also asserted counterclaims for breach of the Settlement Agreement against Stein, Lhote, and McGee.

### b. Summary of the First Amended Complaint

Plaintiffs Stein and Lhote filed this action asserting claims for breach of contract and declaratory relief related to the Settlement Agreement. The Settlement Agreement resolved a dispute over the payment of certain tax refunds by the Danish taxation authority. The obligations of the agreement consisted of two phases.

In the first phase of obligations, Stein, Lhote, and McGee paid SKAT more than $140 million and, as a result, SKAT recouped a substantial portion of the tax refunds that it had paid out to various pension plans in the United States. In exchange for these payments, SKAT released any and all claims that it might have against Stein, Lhote, and McGee and various other persons and entities. The parties' performance of their obligations under the first phase of the Settlement Agreement is not disputed.

As part of the second phase of obligations, and promptly upon execution of the Settlement Agreement, SKAT was required to communicate in writing to SØIK regarding: (a) how the settlement agreement was the result of Stein, Lhote, and McGee's good faith negotiation with the Danish taxation authority; (b) how substantial funds had been repaid to the Danish taxation authority; and (c) how, because Stein, Lhote, and McGee were required to continue to cooperate with SKAT in the second phase of the Settlement Agreement, SKAT might recoup even further funds.

SKAT was also required to use its best efforts to maintain the confidentiality of the Settlement Agreement consistent with its terms. These obligations -- a prompt, written communication to the Danish criminal prosecutors and of confidentiality -- were virtually the only forms of consideration provided by SKAT in the second phase of the settlement agreement. During the second phase, Stein, Lhote, and McGee paid SKAT more than approximately DKK 57.7 million, or the approximate U.S. dollar equivalent of $8.66 million, and produced more than 90,000 documents to assist SKAT in its efforts to recoup dividend tax refunds that SKAT had paid out.

The requirement for SKAT to promptly provide a writing to SØIK was a material and, indeed, crucial element of Settlement Agreement. Obtaining such a communication, an official express of SKAT's position about the Settlement Agreement, was one of the principal purposes and motivations of Stein, Lhote, and McGee's entering into the settlement with SKAT.

In the First Amended Complaint, Plaintiffs Stein and Lhote assert that SKAT breached the Settlement Agreement by, among other things, failing to meet its obligations to communicate with SØIK regarding the Settlement Agreement and pursuant to its terms.

Among other remedies, the Complaint seeks: (a) to have Stein, Lhote, McGee, and SKAT restored to the position in which they were as of the completion of the parties' performance under the first phase of the Settlement Agreement; and (b) rescission of, and discharge from, the unperformed obligations of the second phase of the Settlement Agreement. Additionally, the Complaint seeks a declaration that the 2021 affidavit of confession of judgment related to the Settlement Agreement is invalid as to Stein, Lhote, and McGee.

### c.   Summary of the Defense and Counterclaim

SKAT had denied the claims asserted in the Complaint, and also asserts that even it failed its contractual obligations to promptly provide the required writing and information to SØIK per the terms of the Settlement Agreement, such breach was immaterial to the parties' agreement or otherwise did not tend to defeat the object of the parties in entering the Settlement Agreement.

SKAT also asserts counterclaims against Stein, Lhote, and McGee. SKAT admits that Stein, Lhote, and McGee paid the preliminary settlement amount due under the Settlement Agreement. However, SKAT asserts that Stein, Lhote, and McGee failed to pay by May 28, 2023, certain alleged remaining amounts SKAT claims are still owed under the Settlement Agreement. Based on these allegations, SKAT seeks either (a) entry of a confession of judgment pursuant to the affidavits signed by Stein, Lhote, and McGee in 2021 related to the Settlement Agreement; or, in the alternative, (b) breach of contract damages for the amounts SKAT alleges are owed.

### d.   Other necessary information and documents

While McGee has not brought an affirmative claim against SKAT, he does assert defenses to SKAT's claims that are similar to Plaintiffs Stein and Lhote's affirmative claims against SKAT. His defenses include that, because SKAT breached its obligations under the Settlement Agreement

to promptly provide a writing to SØIK regarding the Settlement Agreement as required, SKAT cannot recover amounts that SKAT alleges were not paid under the Settlement Agreement.

**8.**

### a. Evidence to be obtained

This Court respectfully requests that the appropriate judicial authority in the Denmark cause the appropriate orders to be issued to direct SØIK to produce the documents listed in Exhibit 1 and to provide an executed copy of the Certification attached as Exhibit 2, as described more fully in Section 10 below.

### b. Purpose of the evidence

The documents requested are directly relevant to the issues in dispute in the ongoing litigation. A critical issue in dispute in this litigation is whether SKAT met its obligations under Section 8(f) of the Settlement Agreement. The documents requested are sought in order to resolve the factual issue of whether SKAT met those obligations.

This Letter of Request does not require SØIK to state what documents relevant to the proceedings are, or have been, in its possession, other than particular documents specified in this Letter of Request and does not require SØIK to produce any documents other than particular documents that are specified in this Letter of Request and that are likely to be in SØIK's possession.

### 9. Identity of any person to be examined

A representative of SØIK sufficiently knowledgeable to provide a Certification in the form attached as Exhibit 2 on the matters identified in Section 10 below or, in the alternative, to testify about such matters.

### 10. Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined

This Letter of Request seeks the production of documents and execution of a Certification (in the form attached as Exhibit 2) concerning the nature of the documents to be provided and those previously provided to Plaintiffs Stein and Lhote from Case No. SØK-76141-00005-17 and that are identified in Schedule 1 to Exhibit 2. The Certification permits the use of the documents in this litigation under rules of evidence applicable to proceedings in this Court.

In the alternative, if SØIK is not willing to provide the requested Certification, this Letter of Request seeks oral testimony from a representative of SØIK who, as a custodian of records on behalf of SØIK, is familiar with SØIK's practices and procedures regarding the collection and maintenance of the records referenced in the Certification, when and how the records were created or maintained by SØIK, and the authenticity of the records.

**11.    Documents or other property to be provided**

*See* Exhibit 1 attached.

**12.    Any requirement that the evidence be given on oath or affirmation and any special form to be used**

This Letter of Request seeks execution of the Certification attached as Exhibit 2 in a manner that, if falsely made, would subject the maker to a criminal penalty in Denmark.

However, if SØIK is not willing or able to provide the requested Certification such that oral testimony is provided, as described in Section 10 above, the examination of the witness will be taken under oath before: (1) a secretary of embassy, counsel general, consul, vice-consul, or consular agent of the United States of America or any officer or agent authorized to administer oaths under the laws of the United States or Denmark; or (2) before a person appointed by the Court and empowered to administer oaths and take testimony.

This Court further requests that the testimony given during the above-described deposition be given in such a manner that the testimony, if falsely made, would subject the witness to a criminal penalty in Denmark.

**13.     Special methods or procedure to be followed**

None.

If, however, SØIK is not willing or able to provide the requested Certification such that oral testimony if provided per the alternative scenario described in Section 10 above, the examination of the person or representative identified in Section 9 above will be taken under the Federal Rules of Civil Procedure, except to the extent that any such procedure is incompatible with Danish law. The examinations and cross-examinations shall be the same as though the deponent were testifying at trial. The examinations and cross-examinations will be recorded stenographically and by videotape. The examination will be conducted at a time and date to be agreed with by the witness.

This Court respectfully requests that the judicial authority in Denmark permit the examination of the person or representative to be conducted by (i) attorneys for McGee or other duly authorized representatives of McGee, qualified to practice law in United States jurisdictions and/or in Denmark, nominated by McGee, and that Stein, Lhote, and SKAT be permitted to conduct cross-examination; and (ii) the witness's counsel (if requested).

**14.     Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**

Daniel S. Newman
Justin B. Kaplan
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, FL 33131
dan.newman@nelsonmullins.com

justin.kaplan@nelsonmullins.com
*Counsel for Nominal Defendant / Counterclaim Defendant Luke McGee*

Counsel for McGee listed above will promptly send notice to counsel for all parties to the action.

**15.     Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request**

Omitted.

**16.     Specification of privilege or duty to refuse to give evidence under the law of the Requesting State**

SØIK may refuse to produce documents only insofar as it has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of Denmark.  The parties to this action have agreed, and this Court has ordered, that any material produced or disclosed by the parties or any third parties that has been designated by the parties or third parties will be kept confidential, pursuant to a protective order entered in the case on February 1, 2024.

**17.     The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:**

Nominal Defendant / Counterclaim Defendant Luke McGee and Plaintiffs/Counterclaim Defendants Stein and Lhote.

**DATE OF REQUEST:**     _____

**SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY:**

_____
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

11

## EXHIBIT 1

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. As used in these Requests, the terms set forth below shall be defined as follows:

1.     The term "Settlement Agreement" means that certain agreement executed by McGee, Stein, and Lhote and Skatteforvaltningen, among others, on or about May 28, 2019, the exhibits thereto, including that certain letter agreement executed by McGee, Stein, and Lhote and Skatteforvaltningen, among others, on or about May 28, 2019, and attached hereto as "Exhibit A."

2.     The term "SØIK" means the Danish Public Prosecutor for Serious Economic and International Crime and any successor agency or component of the government of the Kingdom of Denmark charged with the investigation and prosecution of crimes, including the National enhed for Særlig Kriminalitet, and all past and present employees acting on its behalf.

3.     The terms "SKAT" includes Skatteforvaltningen and any successor agency or component of the Kingdom of Denmark, including Skattestyrelsen, and all past and present employees acting on its behalf.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

All written communications, for the period of March 2019 to June 2021, between SKAT and SØIK, or NSK, as successor to SKAT, concerning the Settlement Agreement, including but not limited to:

   a.   SKAT's obligations related to confidentiality under the Settlement Agreement;

12

    b.  SKAT's obligations under Section 8(f) of the Settlement Agreement to, promptly upon execution of the Settlement Agreement:

    1.  bring, in writing, the Settlement Agreement and its terms to the attention of SØIK;

    2.  represent, in writing, that the Settlement Agreement reflects the good-faith negotiation of Matthew Stein, Jerome Lhote, or Luke McGee;

    3.  represent, in writing, that Matthew Stein, Jerome Lhote, or Luke McGee's cooperation may result in SKAT's recovery of additional funds from third parties; and

    4.  represent, in writing, that the Settlement Agreement is in the best interest of SKAT.

**Request for Production No. 2:**

All written communications, from the period of March 2019 to June 2021, between SKAT and SØIK concerning the obligations of the Matthew Stein, Jerome Lhote, or Luke McGee under the Settlement Agreement, including, but not limited to, the alleged performance or non-performance of such obligations.

**Request for Production No. 3:**

All written communications, from the period of March 2019 to June 2021, between SKAT and SØIK concerning the negotiation of the Settlement Agreement.

**Request for Production No. 4:**

All documents identified in "Schedule A" below.

**Schedule A**

| Appendix No. | Attachment Date | Regarding | Translation |
|---|---|---|---|
| 05-21-0-29-35 | 8/12/2022 | Retten i Glostrup - Retsbog af 12. august 2022 - forberedende retsmøde vedrørende Anklagemyndigheden mod Matthew Richard Stein, Jerome Lhôte, Luke Beneville McGee, Rajen Ranmal Shah, Anupe Dhorajiwala og Graham Mckenzie Horn | The court in Glostrup - Court book of 12 August 2022 - preparatory hearing regarding the Prosecution against Matthew Richard Stein, Jerome Lhôte, Luke Beneville McGee, Rajen Ranmal Shah, Anupe Dhorajiwala and Graham Mckenzie Horn |
| 21-25-0-143-144 | 4/22/2021 | Bilag - Brev/fra Hanne Rahbæk vedrørende planlægningen af den kommende retssag - D01961470-Exhibit B May 29, 2019 Settlement Agreement with SKAT | Annex - Letter/from Hanne Rahbæk regarding the planning of the upcoming trial - D01961470-Exhibit B May 29, 2019 Settlement Agreement with SKAT |
| 21-25-0-178-180 | 7/6/2021 | Bilag til mail á 060721 - Affidavit Jerome Lhote | Attachment to email á 060721 - Affidavit Jerome Lhote |
| 21-36-0-189-191 | 7/6/2021 | Matthew R. Stein Extradition Affidavit signed and notarized | Matthew R. Stein Extradition Affidavit signed and notarized |
| 21-40-0-54-54 | 9/9/2022 | Mail / til Retten i Glostrup vedr. B6-4444_2021, SØK-76141-00005-17_ Matthew Richard Stein m.fl. (Black Box) - J.nr. 55039 | Mail / to the Court in Glostrup regarding B6-4444_2021, APPLICATION-76141-00005-17_ Matthew Richard Stein et al. (Black Box) - J. no. 55039 |
| 36-1 | 9/1/2020 | MATTHEIW STEIN | MATTHEW STEIN |
| 36-1-0-1-2 | 9/29/2020 | Rapport / Sigtelse af Matthew R. Stein – foretaget af U.S. Tresasury Criminal Investigation. | Report / Indictment of Matthew R. Stein – by the U.S. Treasury Criminal Investigation. |
| 36-1-0-3-4 | 9/29/2020 | Bilag til rapport / Sigtelse af Matthew Stein – foretaget af U.S. Tresasury Criminal Investigation. | Annex to Report / Indictment of Matthew Stein - by U.S. Treasury Criminal Investigation. |
| 36-1-0-5-24 | 9/23/2021 | Resume af afhøring af Mattheiw Stein foretaget 100321-120321 | Summary of interrogation of Mattheiw Stein conducted 100321-120321 |
| 36-1-0-25-122 | 5/31/2021 | Transkribering af Stein - Endelig inkl. rettelser fra forsvarer | Transcription of Stein - Finally incl. corrections from defense counsel |
| 36-2 | 9/1/2020 | JEROME LHÔTE | JEROME LHÔTE |
| 36-2-0-3-4 | 2/2/2021 | Bilag til rapport / Sigtelse af Jerome Lhôte – foretaget af U.S. Tresasury Criminal Investigation. | Annex to Report / Indictment of Jerome Lhôte – by U.S. Treasury Criminal Investigation. |

| Appendix No. | Attachment Date | Regarding | Translation |
|---|---|---|---|
| 36-2-0-5-5 | 5/31/2021 | Mail / til advokat Hanne Rahbæk - Transskribering af afhøring af Jerome Lhote | Mail / to lawyer Hanne Rahbæk - Transcript of interrogation by Jerome Lhote |
| 36-2-0-6-114 | 5/20/2021 | Bilag til mail - Transkribering af Jerome Lhote til gennemlæsning til forsvarer 200521 | Attachment to email - Transcript by Jerome Lhote for perusal to defense counsel 200521 |
| 36-2-0-115-140 | 7/7/2021 | Resume af afhøring af Jerome Lhote foretaget 030321-050321 | Summary of interrogation of Jerome Lhote conducted 030321-050321 |
| 36-2-0-141-249 | 11/16/2021 | Transkribering af Jerome Lhote inkl rettelser fra forsvarer | Transcript by Jerome Lhote including corrections from defense counsel |
| 36-2-0-250-255 | 11/16/2021 | Rapport - forsvarers noter til transkriberingen af Lhotes afhøring | Report - defender's notes for the transcription of Lhote's interrogation |
| 36-3 | 9/1/2020 | LUKE MCGEE | LUKE MCGEE |
| 36-3-0-3-4 | 2/2/2021 | Bilag til rapport / Sigtelse af Luke McGee – foretaget af U.S. Tresaury Criminal Investigation. | Annex to Report / Indictment of Luke McGee - by U.S. Treasury Criminal Investigation. |
| 36-3-0-5-5 | 3/25/2021 | Mail / til Jan Schneider og Mark Pedersen - udskrift af afhøringen af Luke McGee til godkendelse og underskrift | Mail / to Jan Schneider and Mark Pedersen - transcript of the interrogation of Luke McGee for approval and signature |
| 36-3-0-7-137 | 2/19/2021 | Afhøring af Luke McGee - inkl. rettelser fra forsvarer - til gennemlæsning og godkendelse 23.03.21 | Interrogation of Luke McGee - incl. corrections from the defender - for reading and approval 23.03.21 |
| 36-3-0-138-194 | 4/26/2021 | Resume vedrørende afhøringen af McGee 1.0 korrektur | Summary regarding the questioning of McGee 1.0 proofreading |
| 38-66 | 12/9/2022 | RAPPORT - HENVENDELSER TIL SKATTESTYRELSEN | REPORT - INQUIRIES TO THE TAX ADMINISTRATION |
| 39-28-0-1-2 | 5/11/2020 | Memorandum of Contact - Matthew Richard Stein (mistænkt) | Memorandum of Contact - Matthew Richard Stein (Suspect) |
| 39-28-0-6-7 | 5/12/2020 | Memorandum of Contact - Jerome Lhote (mistænkt) | Memorandum of Contact - Jerome Lhote (suspect) |
| 39-28-0-8-9 | 5/21/2020 | Memorandum of Contact - James Cavoli (advokat Jerome Lhote) | Memorandum of Contact - James Cavoli (attorney Jerome Lhote) |
| 40-1 | 8/31/2021 | MATTHEW STEIN | MATTHEW STEIN |
| 40-1-0-0-5 | 9/17/2021 | Brev / fra Den Danske Ambassade i Washington vedlagt underskrevet affidavit fra Matthew Stein | Letter / from the Danish Embassy in Washington attached signed affidavit from Matthew Stein |

| Appendix No. | Attachment Date | Regarding | Translation |
|---|---|---|---|
| 40-2 | 8/31/2021 | JEROME LHOTE | JEROME LHOTE |
| 40-2-0-1-5 | 9/17/2021 | Brev / Fra Den Danske Ambassade i Washington vedlagt underskrevet affidavit fra Jerome Lhote | Letter / From the Danish Embassy in Washington attached signed affidavit from Jerome Lhote |
| 41-2-0-150-150 | 2/6/2020 | Mail / Fra Frau Susanne Schüler - fremsender pressemeddelelse | Mail / From Frau Susanne Schüler - sending press release |
| 41-2-0-151-152 | 2/6/2020 | Bilag - Mail / Fra Frau Susanne Schüler - fremsender pressemeddelelse | Attachment - Mail / From Frau Susanne Schüler - sending press release |
| 41-9-0-24-51 | 2/21/2019 | Coverletter, DCA m.m fremsendet til SKAT af  Koi Associates - BMC Pension Plan | Cover letter, DCA etc. forwarded to SKAT by Koi Associates - BMC Pension Plan |
| 41-10 | 12/5/2019 | RETSANMODNING USA | LEGAL REQUEST USA |
| 41-10-0-14-15 | 2/20/2020 | Mail / fra USA - Denmark - Stein, Matthew Richard Et Al | Mail / from USA - Denmark - Stein, Matthew Richard Et Al |
| 40-1-0-6-6 | 9/23/2021 | Mail / Fra den Danske Ambassade i Washington - de har modtaget Matthew Steins pas, som opbevares i deres varetægt - kopi af passet vedhæftet mail | Mail / From the Danish Embassy in Washington - they have received Matthew Stein's passport, which is kept in their custody - copy of the passport attached mail |
| 41-10-0-55-61 | 5/14/2020 | Mail / fra OIA, U.S. Department of Justice - korrespondance vedr. IRS kontakt med Mr. Stein og Mr. Lhote | Mail / from OIA, U.S. Department of Justice - correspondence regarding IRS contact with Mr. Stein and Mr. Lhote |
| 41-10-0-62-63 | 5/14/2020 | Bilag til mail / fra OIA, U.S. Department of Justice - korrespondance vedr. IRS kontakt med Mr. Stein og Mr. Lhote | Attachment to mail / from OIA, U.S. Department of Justice - correspondence regarding IRS contact with Mr. Stein and Mr. Lhote |
| 41-10-0-95-98 | 8/17/2020 | Mail / til Reena Mittelman, U.S. Department of Justice - vedr. Matthew Stein og bank records | Mail / to Reena Mittelman, U.S. Department of Justice - re. Matthew Stein and bank records |
| 41-10-0-99-107 | 7/9/2020 | Mail / til Erin, U.S. Department of Justice - fremsendelse af retsbøger vedrørende beslaglæggelse | Mail / to Erin, U.S. Department of Justice - forwarding court records regarding seizure |
| 41-10-0-108-128 | 7/9/2020 | Vedhæftede filer til Mail / til Erin, U.S. Department of Justice - fremsendelse af retsbøger vedrørende beslaglæggelse | Mail Attachments / to Erin, U.S. Department of Justice - forwarding court records regarding seizure |

| Appendix No. | Attachment Date | Regarding | Translation |
|---|---|---|---|
| 41-10-0-132-133 | 7/15/2020 | Mail / fra Joseph Shepard, U.S. Department of Justice - svar på retshjælpsanmodning - NCB - Matthew Stein | Mail / from Joseph Shepard, U.S. Department of Justice - response to legal aid request - NCB - Matthew Stein |
| 41-10-0-134-135 | 7/15/2020 | Vedhæftet fil - Mail / fra Joseph Shepard, U.S. Department of Justice - svar på retshjælpsanmodning - NCB - Matthew Stein | Attachment - Mail / from Joseph Shepard, U.S. Department of Justice - response to legal aid request - NCB - Matthew Stein |
| 41-10-0-136-147 | 7/15/2020 | Vedhæftet fil - Mail / fra Joseph Shepard, U.S. Department of Justice - svar på retshjælpsanmodning - NCB - Matthew Stein | Attachment - Mail / from Joseph Shepard, U.S. Department of Justice - response to legal aid request - NCB - Matthew Stein |
| 41-10-0-148-149 | 7/15/2020 | Mail / fra Joseph Shepard, U.S. Department of Justice - svar på retshjælpsanmodning - NCB - Jerome Lhote | Mail / from Joseph Shepard, U.S. Department of Justice - response to legal aid request - NCB - Jerome Lhote |
| 41-10-0-150-151 | 7/15/2020 | Vedhæftet fil - Mail / fra Joseph Shepard, U.S. Department of Justice - svar på retshjælpsanmodning - NCB - Jerome Lhote | Attachment - Mail / from Joseph Shepard, U.S. Department of Justice - response to legal aid request - NCB - Jerome Lhote |
| 41-10-0-152-154 | 7/15/2020 | Vedhæftet fil - Mail / fra Joseph Shepard, U.S. Department of Justice - svar på retshjælpsanmodning - NCB - Jerome Lhote | Attachment - Mail / from Joseph Shepard, U.S. Department of Justice - response to legal aid request - NCB - Jerome Lhote |
| 41-10-0-160-161 | 7/15/2020 | Mail / til Erin Mikita, U.S. Department of Justice - frs. af oversatte retsbøger fra den 2. april 2020 vedr. beslaglæggelse | Mail / to Erin Mikita, U.S. Department of Justice - Frs. of translated court records from 2 April 2020 regarding seizure |
| 41-10-0-162-167 | 7/15/2020 | Vedhæftet fil - Mail / til Erin Mikita, U.S. Department of Justice - frs. af oversatte retsbøger fra den 2. april 2020 vedr. beslaglæggelse | Attachment - Mail / to Erin Mikita, U.S. Department of Justice - Frs. of translated court records from 2 April 2020 regarding seizure |
| 41-10-0-168-184 | 7/31/2020 | Mail / fra Reena Mittelman, U.S. Department of Justice - kontoudskrifter vedr. Matthew Stein fremsendt med posten | Mail / from Reena Mittelman, U.S. Department of Justice - account statements regarding Matthew Stein sent by mail |
| 41-10-0-216-219 | 11/2/2020 | Mail / fra Reena Mittelman, vedr. afhøring af Mr. Stein, Mr. Lhôte, og Mr. McGee | Mail / from Reena Mittelman, re: interrogation of Mr. Stein, Mr. Lhôte, and Mr. McGee |
| 41-10-0-222-222 | 9/2/2020 | Mail / fra Reena T. Mittelman vedr. Matthew Richard Stein - cover letter from our office and bank records from J.P. Morgan Chase. | Mail / from Reena T. Mittelman re. Matthew Richard Stein - cover letter from our office and bank records from J.P. Morgan Chase. |

| Appendix No. | Attachment Date | Regarding | Translation |
|---|---|---|---|
| 41-10-0-223-224 | 9/1/2020 | Brev/mail / fra Reena T. Mittelman vedr. Request from Denmark for Assistance in the Matter of Matthew Richard Stein ET AL. | Letter/email / from Reena T. Mittelman re. Request from Denmark for Assistance in the Matter of Matthew Richard Stein ET AL. |
| 41-10-0-229-230 | 2/10/2021 | Mail / fra Reena Mittelman - ingen indvendinger mod afhøring af Matthew Stein og Jerome Lhôte | Mail / from Reena Mittelman - no objection to questioning of Matthew Stein and Jerome Lhôte |
| 75-7 | 11/3/2021 | FORLIG OG TILBAGEBETALING SEIN, LHOTE OG MCGEE M.FL. - MATERIALE UDLEVERET AF FORSVARET | SETTLEMENT AND REFUND SEIN, LHOTE AND MCGEE, ET AL. - MATERIAL PROVIDED BY THE DEFENSE |
| 75-7-0-1-7 | 4/8/2021 | Mail / fra J. Benjamin - Letter to advokat Jan Schneider - Repayment of Reclaim Proceeds by Luke McGee | Mail / from J. Benjamin - Letter to attorney Jan Schneider - Repayment of Reclaim Proceeds by Luke McGee |
| 75-7-0-63-63 | 4/21/2021 | Settlement agreement with SKAT, May 29, 2019 | Settlement agreement with SKAT, May 29, 2019 |
| 75-7-0-64-126 | 4/8/2021 | Oversættelse til dansk  2268 Luke McGee aftale med Skattestyrelsen DA | Translation into Danish 2268 Luke McGee agreement with the Swedish Tax Agency DA |

18

## **EXHIBIT A**

## **(COPY OF SETTLEMENT AGREEMENT)**

EXECUTION COPY

## SETTLEMENT AGREEMENT

# THIS SETTLEMENT AGREEMENT, AND THE INFORMATION SET FORTH HEREIN, IS <u>HIGHLY CONFIDENTIAL</u>.

# PUBLIC DISCLOSURE OF THIS SETTLEMENT AGREEMENT AND/OR THE INFORMATION SET FORTH HEREIN COULD BE HIGHLY PREJUDICIAL TO THE PARTIES.

This Settlement Agreement (the "Agreement") is made by and between Skatteforvaltningen ("Skatteforvaltningen") and the Covered Parties, as defined below (each individually, a "Party," and collectively, the "Parties") as of May 28, 2019. This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, settle and dismiss the Settled Matters (defined below), upon and subject to the terms and conditions hereof.

## Background

A.  WHEREAS, Skatteforvaltningen is the authority of the Kingdom of Denmark charged with the assessment and collection of Danish taxes;

B.  WHEREAS, Skatteforvaltningen believes that it has meritorious Claims (defined below) against the Covered Parties (defined below);

C.  WHEREAS, the Covered Parties believe that they have meritorious defenses to Skatteforvaltningen's Claims;

D.  WHEREAS, after extensive and good faith negotiations, the Parties desire to settle all Settled Matters (defined below) based on the terms and conditions set forth in this Agreement;

E.  WHEREAS, the Covered Parties have expressed a willingness to use their best efforts and full cooperation to assist Skatteforvaltningen in various proceedings related to the subject matter of the Settled Matters;

F.  WHEREAS, it is the Parties' understanding and a fundamental principle on which this Agreement is based that the Covered Parties are paying to Skatteforvaltningen the full amount of the Net Proceeds (defined below) that the Covered Parties received directly or indirectly from Reclaim Applications (defined below) made to Skatteforvaltningen; and

NOW, THEREFORE, in consideration of the mutual promises and covenants in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## Terms and Conditions

1.  Defined Terms. In this Agreement, the following terms shall have the following respective meanings:

    a.  "Additional Cash Payment" shall have the meaning set forth in Section 2(b).

    b.  "Agreement" means this agreement.

    c.  "Applicable Interest" means 8.05% simple interest per annum.

    d.  "Business Day" means any day other than a Saturday, Sunday, any day that is a federal legal holiday in Denmark or in the United States or any day on which banking institutions in Copenhagen, Denmark or New York, New York are authorized or required by law or executive order to be closed.

-2-

e. "Claims" means any and all civil claims, counterclaims, actions, causes of action, petitions, motions, objections, litigations, arbitrations, proceedings, awards, orders, judgments, decisions, debts, obligations, rights, interest, suits, appeals, damages, remedies, costs, attorneys' fees, interest, expenses and liabilities, of any type, including and without limitation, administrative and regulatory, whether asserted or unasserted, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, accrued or unaccrued, state or federal, domestic or foreign, currently or previously existing or arising, in law, contract, equity or otherwise.

f. "Confession of Judgment" shall have the meaning set forth in Section 4(c).

g. "Cooperation Information" means non-privileged documents and information within the possession, custody or control of the Covered Parties, relating to the trading or purported trading in Danish company shares, reclaim applications submitted to Skatteforvaltningen, proceeds of any such reclaim applications and the distribution of proceeds of any such reclaim applications, including, but not limited to, information relating to the formation, operation and trading of the Pension Plans.

h. "Cooperation Mediator" shall have the meaning set forth in Section 10(b).

i. "Covered Parties" means the pension plans, partnerships, partners and individuals listed in Exhibit 1 and the pension plans, partnerships and partners listed in Exhibit 2, with such individuals in Exhibit 1B being included in their individual capacity and in any capacity or role they assumed in any way arising from, in connection with, or related to the Pension Plans' Reclaim Applications, whether paid or unpaid.

j. "Covered Parties' Designees" means Jerome Lhote, Luke McGee and Matthew Stein.

k. "DKK" means Danish kroner.

l. "Default Date" shall have the meaning set forth in Section 5(c).

m. "Default Notice" shall have the meaning set forth in Section 5(b).

n. "Effective Date" means May 28, 2019.

o. "Event of Default" shall have the meaning set forth in Section 5(b).

p. "Final Net Proceeds List" shall have the meaning set forth in Section 2(e)(i).

q. "Final Settlement Amount" means the sum of: (i) the Preliminary Settlement Amount; (ii) any True-Up Amount, as that term is defined in Section 2(e)(iii); and (iii) the interest, if any, accrued on the unpaid amount of the Subsequent Cash Payment Amount, pursuant to Section 2(d)(ii) of this Agreement.

r. "Final Settlement Payment Date" means the date that is up to and including thirty-six (36) months from the Effective Date.

-3-

s. "Gross Reclaims" means all reclaim amounts from Skatteforvaltningen received by or on behalf of the Pension Plans in respect of applications to reclaim taxes withheld or allegedly withheld from dividends paid on Danish company shares the Pension Plans owned or allegedly owned between 2012 and 2015.

t. "Initial Cash Payment" shall have the meaning set forth in Section 2(a).

u. "Net Proceeds" shall have the meaning set forth in Section 2(e).

v. "New York Courts" shall have the meaning set forth in Section 12.

w. "Paid Reclaim Final Decisions" refers to the decisions Skatteforvaltningen sent to some of the Pension Plans in Exhibit 1A in February 2019 in which Skatteforvaltningen sought repayment of paid Reclaim Applications.

x. "Pension Plans" refers to the 61 pension plans that are listed in Exhibit 1A and the 19 pension plans listed in Exhibit 2.

y. "Preliminary Settlement Amount" means an amount equal to 1.55 billion (1,550,000,000) DKK.

z. "Reclaim Applications" means the applications filed with Skatteforvaltningen to reclaim taxes withheld from dividends paid on Danish company shares owned or allegedly owned by the Pension Plans between 2012 and 2015.

aa. "Selected Court" shall have the meaning set forth in Section 12.

bb. "Settled Matters" means any and all Claims Skatteforvaltningen has or may have against the Covered Parties in any way arising out of, in connection with or relating to the Reclaim Applications and the related trading by the Covered Parties in Danish company shares, provided that nothing in this Agreement shall release any claims Skatteforvaltningen has in connection with any other reclaim applications or pension plans. For the avoidance of doubt, Settled Matters includes any administrative claims Skatteforvaltningen has brought or could bring in Denmark in connection with the Paid Reclaim Final Decisions.

cc. "Skatteforvaltningen" means the authority of the Kingdom of Denmark charged with the assessment and collection of Danish taxes. For the avoidance of doubt, Skatteforvaltningen does not include, is not acting for, and is not undertaking any obligations on behalf of any other government authority or official of the Kingdom of Denmark.

dd. "Subsequent Cash Payment Amount" means the sum of (i) the Additional Cash Payment and (ii) the True-Up Amount.

ee. "Transfer" shall have the meaning set forth in Section 13.

ff. "True-Up Amount" shall have the meaning set forth in Section 2(e)(iii).

gg. "True-Up Arbitrator" shall have the meaning set forth in Section 10(a).

hh. "Wire Transfer" means transfer and delivery by wire transfer of immediately available funds in DKK to the following account:

Branch: Nordea Bank Denmark A/S
Swift/BIC: NDEADKKK
IBAN: Redacted

Address: Vesterbrogade 8, 1620 Copenhagen, Denmark
Account Number: Redacted
Account Name: Kammeradvokaten/ Law Firm Poul Schmith, Business Reg.Nr. 64 95 28 11
Reference: 7514394/USP75

Or such other account as designated by Skatteforvaltningen pursuant to Section 20

2. Payment. The Covered Parties shall pay or cause to be paid to Skatteforvaltningen the Preliminary Settlement Amount as follows:

a. Nine hundred and fifty million (950,000,000) DKK (the "Initial Cash Payment") by one or more Wire Transfers as follows:

   i. At least five hundred million (500,000,000) DKK within ten (10) Business Days of the Effective Date; and

   ii. the remaining amount necessary to complete the Initial Cash Payment, on or before July 26, 2019; plus,

b. Six hundred million (600,000,000) DKK by one or more Wire Transfers to be paid over time (the "Additional Cash Payment") as the deadlines for payment occur.

c. The Covered Parties' obligation to pay the Final Settlement Amount is absolute and unconditional. The Covered Parties shall not be required to make payments in excess of the Final Settlement Amount, with the sole exception that, in the case of an "Event of Default" as defined in Section 5, the Covered Parties' Designees must pay an additional amount as set forth in Section 5(d)(iii) of this Agreement. In the event that the Covered Parties timely complete the Initial Cash Payment pursuant to Sections 2(a)(i) and 2(a)(ii), then Skatteforvaltningen's sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavit of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c).

d. Timing of payment of the Subsequent Cash Payment Amount and interest.

   i. The Covered Parties' Designees shall pay Skatteforvaltningen the Subsequent Cash Payment Amount no later than the Final Settlement Payment Date.

-5-

ii. In the event that the Subsequent Cash Payment Amount is not paid in full to Skatteforvaltningen within twenty-four (24) months from the Effective Date:

1. Applicable Interest will accrue on the remaining unpaid amount of the Subsequent Cash Payment Amount, until the Final Settlement Payment Date or the Subsequent Cash Payment Amount has been paid in full, whichever is earlier.

2. Any payments made to Skatteforvaltningen to fund any remaining unpaid amount of the Subsequent Cash Payment Amount after twenty-four (24) months from the Effective Date shall be applied (x) first to the principal balance of any remaining unpaid amount of the Subsequent Cash Payment Amount, until the Subsequent Cash Payment Amount has been paid in full, and (y) only thereafter to the amount of interest due and owing pursuant to Section 2(d)(ii)(1).

3. After any payment is made to Skatteforvaltningen to pay any portion of the Subsequent Cash Payment Amount, Applicable Interest will accrue, in accordance with Section 2(d)(ii)(1), on the remaining unpaid amount of the Subsequent Cash Payment Amount.

iii. The Covered Parties' Designees shall pay all interest due pursuant to Section 2(d)(ii) no later than the Final Settlement Payment Date.

e. For the purposes of this Agreement, "Net Proceeds" shall be (A) Gross Reclaims less (B) all of the Covered Parties' expenses associated with Reclaim Applications for which Skatteforvaltningen made payments, specifically as follows: (1) reclaim agent fees, (2) tax reclaim advisory service fees, (3) brokerage fees and commissions, (4) custodial and clearing fees, (5) trading expenses, and (6) financial institution account charges and less (C) any other portion of Gross Reclaims received by parties excluded from the releases as set forth in Section 4 herein, including without limitation, those parties listed on Exhibit 3 ("Non-exhaustive list of parties excluded from release"), that were not otherwise subsequently provided to any Covered Party.

i. The Covered Parties agree to use their best efforts to provide Skatteforvaltningen with documentation sufficient to establish the total amount of Net Proceeds received by the Covered Parties directly or indirectly from the Reclaim Applications, with the expectation that such exchange and review shall be completed no later than six (6) months after the Effective Date. As part of this process, the Parties shall cooperate to establish the Gross Reclaims and the Net Proceeds received by each Pension Plan. At the end of this process, the Covered Parties' Designees shall provide and certify the accuracy of a final list of Net Proceeds received by each Covered Party with respect to each Pension Plan (the "Final Net Proceeds List"). Each Covered

Party authorizes the Covered Parties' Designees to certify as accurate the Final Net Proceeds List on behalf of each Covered Party.

    ii.  In the event that such documentation establishes that the Net Proceeds are less than the Preliminary Settlement Amount, the Covered Parties shall be entitled to no adjustment in the Preliminary Settlement Amount.

    iii.  In the event that such documentation establishes that the Net Proceeds are greater than the Preliminary Settlement Amount, then Skatteforvaltningen shall be entitled to an adjustment (the "True-Up Amount") equal to the difference between the Net Proceeds and the Preliminary Settlement Amount.

    iv.  In the event of any claim, controversy or dispute that amounts to less than twenty million (20,000,000) DKK arising out of or relating to the True-Up process described in this Section 2(e), the Net Proceeds shall be determined in accordance with Section 10 hereof.

f.  The Covered Parties' Designees represent that: (A) the Preliminary Settlement Amount plus the True-Up Amount equals or exceeds the Net Proceeds received by the Covered Parties, directly or indirectly, from the Reclaim Applications and (B) on payment of the full amount of the Subsequent Cash Payment Amount, the Covered Parties will have paid back to Skatteforvaltningen the Net Proceeds that they received, directly or indirectly, from the Reclaim Applications.

g.  The Covered Parties represent that the plans and entities listed on Exhibit 1A are 100% owned or beneficially owned by individuals who are listed on Exhibits 1B and 1C.

h.  Skatteforvaltningen acknowledges and accepts that, in the interests of effecting the payments required by the Covered Parties under this Agreement in an efficient and cost effective manner, the amounts for such payments may be collected into, and payment to Skatteforvaltningen on behalf of the Pension Plans and other Covered Parties ultimately made from, a single attorney trust account in accordance with the payment instructions set forth in Section 1(hh). The Covered Parties' Designees agree to provide Skatteforvaltningen with written confirmation of the execution of any such payment within two (2) Business Days.

3.  Dismissal of Claims.

a.  Within ten (10) Business Days of the completion of the Initial Cash Payment, Skatteforvaltningen will take steps to effectuate the dismissal with prejudice of any and all Claims asserted by it against Redacted in the United States District Court for the Southern District of New York in *SKATTEFORVALTNINGEN* v. *Raubritter LLC Pension Plan et al.*, 1:18-cv-04833.

b. Except as specifically provided in Section 3(c), the Covered Parties agree:

    i. not to file or cause to be filed any administrative appeals, complaints or grievances with the Danish Tax Agency, the Ministry of Taxation or any other authority of the government of the Kingdom of Denmark concerning the Reclaim Applications;

    ii. for the Pension Plans listed in Exhibit 1A, to withdraw any and all pending applications and administrative appeals previously filed and that remain outstanding for the refund of Danish tax withheld on dividend payments; and

    iii. for the Pension Plans listed in Exhibit 2, to inform Skatteankestylrelsen (the Danish Tax Appeals Agency) in writing that each of the relevant Covered Parties for the Pension Plan that is the subject of that appeal renounces its interest in such appeal.

c. The Michelle Investments Pension Plan, Remece Investments LLC Pension Plan, Vanderlee Technologies Pension Plan and Xiphias LLC Pension Plan on Exhibit 2 are exempt from Section 3(b)(i). Further, with respect to the Michelle Investments Pension Plan, Remece Investments LLC Pension Plan and Xiphias LLC Pension Plan, Messrs. Stein and Lhote agree to renounce their interests in any appeal pursuant to Section 3(b)(iii); with respect to the Vanderlee Technologies Pension Plan, Maple Point LLC agrees to renounce its interest in any appeal pursuant to Section 3(b)(iii).

4. Releases.

a. Upon the completion of the Initial Cash Payment, Skatteforvaltningen shall forever and finally generally release, waive and discharge the Covered Parties and all of their parents, sponsors, trusts, subsidiaries and affiliates and all of their respective property, current and former officers, directors, employees, consultants, agents, attorneys, accountants, advisors, assigns, successors, predecessors and representatives from and in respect of all Settled Matters, *except*:

    i. The foregoing shall not release, waive or discharge the right to enforce this Agreement.

    ii. Nothing in this Agreement shall release, waive or discharge any rights or claims of Skatteforvaltningen against any person or entity that received (x) any portion of the Covered Parties' expenses associated with the Reclaim Applications, as set forth in Section 2(e)(B) and (y) any portion of Gross Reclaims received by parties excluded from release, as set forth in Section 2(e)(C).

    iii. Notwithstanding the foregoing and for the avoidance of doubt, nothing in this Agreement shall release, waive, or discharge any rights or claims against any party listed on the attached Exhibit 3 ("Non-exhaustive list of parties excluded from release").

-8-

iv. The individual listed on Exhibit 1C ("Partially released individual") shall be released only to the extent that he directly or indirectly received any portion of the Gross Reclaims for plans or partnerships listed on Exhibit 2 ("Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest").

v. Further, each Pension Plan listed on Exhibit 2 shall be released only to the extent of that Pension Plan's Net Proceeds set forth in the Final Net Proceeds List and Skatteforvaltningen retains and reserves the right to proceed against each such Pension Plan and any persons or entities (other than the Covered Parties in Exhibit 1) for any amount in excess of such Pension Plan's Net Proceeds.

b. Upon the completion of the Initial Cash Payment, the Covered Parties shall forever and finally generally release, waive and discharge Skatteforvaltningen and all of its property, agents, attorneys, bankers, accountants, advisors, assigns, successors, predecessors and representatives from and in respect of all Claims, *except* that the foregoing shall not release, waive or discharge the right to enforce this Agreement.

c. Simultaneously with the execution of the Initial Cash Payment, the Covered Parties' Designees shall together provide an executed and notarized Affidavit of Confession of Judgment (the "Confession of Judgment") to Skatteforvaltningen, in the form attached hereto as Exhibit 4. Within ten (10) Business Days of the second (2nd) anniversary of the Effective Date, the Covered Parties' Designees shall provide a new Confession of Judgment to Skatteforvaltningen in the form attached hereto as Exhibit 5. Skatteforvaltningen may file or otherwise execute upon a Confession of Judgment in any of the New York Courts only if an Event of Default, as defined in Section 5, has occurred.

d. Skatteforvaltningen further agrees that the amount of any final verdict, judgment, or ruling obtained by, through or on behalf of Skatteforvaltningen, from or against any third party, for which contribution, common-law indemnification or a similar claim is available from any Covered Party, shall include a reduction for the greater of (i) the Covered Party's (or Covered Parties') equitable share of the damages awarded to Skatteforvaltningen, or (ii) the amount paid for the Pension Plan(s) that is (are) the subject of the final verdict, judgment, or ruling pursuant to the process set forth in Section (2)(e)(i) regarding the True-Up Amount (as reflected in the Final Net Proceeds List), such that the third party will have no claim for set-off, apportionment, contribution, common-law indemnification or similar claims against any Covered Party.

e. Skatteforvaltningen agrees that it will not bring any Claims with respect to the Settled Matters against the Covered Parties in the period between the Effective Date and July 26, 2019.

-9-

    f.   All rights under Section 1542 of the California Civil Code, or any analogous state, foreign, or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the Settled Matters. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

5.    Events of Default.

    a.   If the Covered Parties' Designees have not delivered to Skatteforvaltningen a new and fully executed Confession of Judgment as and when required pursuant to Section 4(c) of this Agreement, or if the Covered Parties' Designees do not make any payment as and when required by this Agreement, the Covered Parties' Designees shall be in default.

    b.   Upon such default, Skatteforvaltningen shall provide written notice (a "Default Notice") of the breach of this Agreement to the Covered Parties' Designees in accordance with Section 11 of this Agreement. Failure of the Covered Parties' Designees to deliver to Skatteforvaltningen a new and fully-executed Confession of Judgment or make a required payment within ten (10) Business Days from receipt of the Default Notice shall be an "Event of Default."

    c.   In the case of an Event of Default, the "Default Date" shall be the eleventh (11th) Business Day after which the Covered Parties' Designees receive the Default Notice. On the Default Date, Skatteforvaltningen shall be authorized to file the Confession of Judgment and to seek and enforce the judgment that the Court enters.

    d.   In the case of an Event of Default, the Covered Parties' Designees shall be required to pay an amount equivalent to:

        i.   The unpaid portion of the Subsequent Cash Payment Amount as of the Default Date, plus

        ii.   Applicable Interest owed pursuant to Section 2(d)(ii) as of the Default Date, plus

        iii.   Applicable Interest on the unpaid amount of the Subsequent Cash Payment Amount as of the Default Date, for the period starting January 1, 2014 and running until the earlier of the Default Date or twenty-four (24) months from the Effective Date.

6.    No Admissions. Nothing in this Agreement or any negotiations in connection herewith shall be claimed or otherwise deemed to be evidence of an admission by any Party of any

liability, violation of law or wrongdoing whatsoever, or of the truth or untruth, or the merit or lack of merit, of any claim or defense of any Party. Neither this Agreement, nor any negotiations in connection herewith, may be used in any proceeding against any Party or any individual or entity covered by the releases set forth in this Agreement for any purpose, *except* with respect to the validity, effectuation and enforcement of this Agreement. Nothing contained herein shall be claimed or otherwise deemed to be an admission by any Party of any assertions or allegations made by any other Party, whether made in connection with the negotiation of this Agreement or otherwise. For the avoidance of doubt, the Covered Parties deny that they have committed any violation of law or breach of any legal duty of any kind.

7.     Full and Complete Cooperation. The Covered Parties will fully cooperate with the investigation by Skatteforvaltningen of third parties not subject to the releases set forth in this Agreement as follows:

    a.   Upon request of Skatteforvaltningen, the Covered Parties will provide Cooperation Information on a rolling production basis in accordance with timetables and protocols to be mutually agreed upon in good faith by counsel for the Parties. Upon the request of Skatteforvaltningen, the Covered Parties will provide a categorical privilege log for documents withheld from the production required under this Section 7(a) on grounds of privilege.

    b.   Upon request of Skatteforvaltningen, the Covered Parties will, in the form of attorney proffers, provide additional relevant Cooperation Information to Skatteforvaltningen's legal counsel.

    c.   Upon request of Skatteforvaltningen, the Covered Parties' Designees will provide written consent to allow Skatteforvaltningen to collect Cooperation Information from non-Covered Parties. Such consent shall not be unreasonably withheld.

    d.   The Parties will work together to ensure that no unreasonable time and cost burdens are imposed on the Covered Parties in connection with the provision of the documents and information required to be provided to Skatteforvaltningen pursuant to this Section 7.

    e.   For the avoidance of doubt, nothing in this Agreement requires the Covered Parties to waive any attorney-client privilege, work-product protections or other evidentiary privileges under state, federal or foreign law.

    f.   The Covered Parties acknowledge and agree that preexisting documents, data, facts and information that are not privileged do not become privileged merely based on their transmission from a client to their attorney and the Covered Parties further agree that any invocation of any privilege or protection will be reasonable and in good faith.

    g.   At all times, the Covered Parties will use their best efforts to ensure that their cooperation with Skatteforvaltningen is meaningful and productive. In the event the Parties have a dispute regarding cooperation, any differences shall first be referred to a third party in accordance with Section 10 hereof.

-11-

h. The Cooperation Information that the Covered Parties provide to Skatteforvaltningen pursuant to this Section 7 may be used by Skatteforvaltningen in any proceedings relating to any reclaim applications in the United States, the United Kingdom, Malaysia, Dubai, Denmark and any other jurisdiction where such Cooperation Information will be subject to customary confidentiality protections, such as a protective order governing the handling of confidential information in any such proceeding, and Skatteforvaltningen shares in advance a copy of such confidentiality protections. Provided that the terms of this Section 7(h) are fully satisfied, Skatteforvaltningen may use the Cooperation Information pursuant to this Section 7(h), notwithstanding the confidentiality restrictions in Section 8.

8. Confidentiality. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

a. Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

b. Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra*; (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to (which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

c. In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available

measures and remedies to prevent such disclosure, including, without limitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

d. The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement.

e. The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f. Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

9. Non-Disparagement.

a. No Party shall make, express, transmit, speak, write, verbalize or otherwise communicate, in any way or form, any remark, comment, message, information, declaration, communication or other statement of any kind, whether verbal, in writing, electronically transferred or otherwise, that is disparaging, derogatory or

defamatory of or reasonably likely to damage any Party, its reputation, business or affairs, nor shall any Party induce any person or entity to do so.

b. Notwithstanding anything to the contrary in this Section 9, Skatteforvaltningen shall not be restricted in any way, shape or form from making factual statements it believes are reasonably necessary to support claims or to rebut any defenses to such claims it is pursuing in other legal proceedings relating to the subject matter of the Settled Claims, including, without limitation, legal pleadings, affidavits and declarations that may be submitted in any litigation brought by Skatteforvaltningen in any jurisdiction.

c. Nothing in this Agreement shall prohibit any of the Parties from complying with any valid subpoena or court order or from responding truthfully to a governmental inquiry or investigation or in connection with any legal proceedings.

10. Referral to Third Party:

a. In the event of any claim, controversy or dispute that amounts to less than twenty million (20,000,000) DKK, arising out of or relating to the True-Up process as described in Section 2(e), including, without limitation, the calculation of Net Proceeds, a "True-Up Arbitrator" shall be appointed with plenary powers to resolve in a binding and final manner any such matter on such terms and pursuant to such procedures as the True-Up Arbitrator finds appropriate in his or her sole discretion. The proceedings before the True-Up Arbitrator and any decision rendered by the True-Up Arbitrator shall be confidential. The True-Up Arbitrator shall be Richard J. Davis, Esq. or if such person is not available, Robert J. Jossen, Esq. In the event that neither person is available to serve as the True-Up Arbitrator, the Parties shall agree within five (5) Business Days on a suitable replacement. In the event that the Parties fail to agree on a suitable replacement within five (5) Business Days or that any claim, controversy or dispute arising out of or relating to the True-Up process exceeds twenty million (20,000,000) DKK, the Parties may by mutual agreement present such matter to any other person the Parties designate to be the True-Up Arbitrator to recommend a resolution pursuant to the terms of this Section 10, or, failing such mutual agreement, any Party may pursue the resolution of such matter through other available remedies in a Selected Court (as defined below).

b. Any claim, controversy or dispute arising out of or relating to the cooperation obligations set forth in Section 7 of this Agreement, shall in the first instance be presented to a "Cooperation Mediator," to be appointed by the Parties, who shall have the authority to consider and issue a non-binding recommendation for the resolution of any such matter on such terms and pursuant to such procedures as the Cooperation Mediator finds appropriate in his or her sole discretion. The proceedings before the Cooperation Mediator and any recommendation issued by the Cooperation Mediator shall be confidential. The Cooperation Mediator shall be Richard J. Davis Esq., or if such person is not available, Robert J. Jossen Esq. In the event that neither person is available to serve as the Cooperation Mediator, the Parties shall agree within five (5) Business Days on a suitable replacement, or, failing such mutual agreement, any Party may pursue the resolution of such matter through other available remedies in a

-14-

Selected Court (as defined below). If any Party does not agree with the recommended resolution, they must provide written notice to the other Parties within five (5) Business Days of the issuance of the Cooperation Mediator's recommendation.

c. The Parties shall have five (5) Business Days from the date they appoint a True-Up Arbitrator or Cooperation Mediator to make their respective submissions concerning the matter in dispute to the True-Up Arbitrator and/or the Cooperation Mediator, after which the True-Up Arbitrator and/or the Cooperation Mediator shall schedule a hearing to be held within five (5) Business Days. Any decision by the True-Up Arbitrator and/or the Cooperation Mediator shall be issued within five (5) Business Days of the True-Up Arbitrator and/or the Cooperation Mediator's receipt of the Parties' submissions or the hearing date, whichever is later. Any hearing before the True-Up Arbitrator and/or the Cooperation Mediator shall be concluded in a single day. If the matter remains unresolved for any reason twenty-five (25) Business Days after a Party first notifies the True-Up Arbitrator and/or Cooperation Mediator of a claim, controversy or dispute, any Party may resort to any other available remedies, including through other available remedies in a Selected Court.

d. Fees of the True-Up Arbitrator and/or the Cooperation Mediator shall be shared equally between Skatteforvaltningen and the Covered Parties' Designees.

e. The Parties acknowledge that the means of dispute resolution set forth in this Section 10 shall not limit the remedies available to Skatteforvaltningen upon the occurrence of an Event of Default pursuant to Section 5 of this Agreement, or if a matter remains unresolved for any reason twenty-five (25) Business Days after a Party notifies the True-Up Arbitrator or the Cooperation Mediator of a claim, controversy, or dispute in accordance with Section 10(a-c) above. The Parties further acknowledge and agree that, due to the confidential nature of this Agreement and the settlement contemplated herein and the possibility of significant harm in the event of a breach of the Confidentiality and Non-Disparagement Provisions of this Agreement by any Party, nothing in this paragraph will preclude any party from seeking injunctive relief in a Selected Court to prevent any other Party from violating the obligations established in this Agreement.

11. Notice of Breach and Opportunity to Cure. In the event that either Party asserts that the other is not in compliance with any of its obligations under this Agreement, the asserting Party shall provide the other Party with written notice of that assertion and a ten (10) Business Day opportunity to cure the alleged non-compliance before pursuing any legal remedy specified under this Agreement.

12. Governing Law and Jurisdiction. This Agreement shall be governed by, construed and interpreted in accordance with the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof. The Parties agree that the exclusive forum for the resolution of any dispute arising out of, in connection with or relating to this Agreement, including any dispute not resolved pursuant to the procedures set forth in Section 10 hereof, shall be the federal and state courts of the State of New York (the "New York Courts"). Each

-15-

Party hereby knowingly, voluntarily, irrevocably and unconditionally for itself and its respective property (i) submits to the exclusive jurisdiction of the New York Courts, (ii) waives any objection as to laying of venue in the New York Courts, and (iii) waives any right to a trial by jury in the New York Courts. The Parties further agree that any such dispute shall in the first instance be brought in the United States District Court for the Southern District of New York (the "Selected Court"). To the extent there is a lack of federal subject matter jurisdiction in the Selected Court, the Parties shall bring any disputes arising out of, in connection with or relating to this Agreement in New York State Court, County of New York, and, to the extent consistent with the rules of New York State Court, the Commercial Division of the New York State Court.

13.     No Assignment of Claims. Each of the Parties represents and warrants that, as of the date of this Agreement, he, she or it is the only person or entity who has any interest in any of the Settled Matters released by him, her or it hereby, and that none of such Settled Matters, nor any part thereof, has been assigned, hypothecated, granted, or transferred (a "Transfer") in any way by such Party to any person or entity, including, without limitation, any claims that would be released in full hereunder but for such Transfer. Any assignment of any Settled Matters released hereby shall be null and void. Any purported Transfer, whether past, present or future, shall be null and void without further action.

14.     No Third-Party Beneficiary Rights. This Agreement shall inure solely to the benefit of each Party hereto (as defined in the first paragraph of this Agreement) and its successors and permitted assigns, and nothing in this Agreement, express or implied, shall confer upon any other person or entity any rights, benefits or remedies (including, without limitation, third-party beneficiary rights) of any nature whatsoever.

15.     Further Assurances; Costs. The Parties agree to cooperate in good faith with each other's reasonable requests to effectuate this Agreement and the settlement contemplated herein. Each Party shall at its own expense execute and deliver such writings and take any other actions as may reasonably be requested by the other Party to effectuate the terms of this Agreement. Each Party shall be responsible for any costs it incurs in reviewing, negotiating and executing this Agreement, as well as any and all actions required to effectuate this Agreement and the settlement contemplated herein.

16.     Binding Effect. This Agreement and the acknowledgments contained herein shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective legal heirs, successors and assigns.

17.     Severability; Survival. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party hereto. Upon such a determination, the Parties shall negotiate in good faith to modify this Agreement in accordance with the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible. The Confidentiality and Non-Disparagement Provisions (Sections 8 and 9,

-16-

respectively) of this Agreement shall remain in full force and effect notwithstanding the termination of this Agreement or any other provisions thereof.

18.     Entire Agreement.  This Agreement constitutes the entire agreement between and among the Parties relative to the subject matter hereof.  This Agreement supersedes any previous agreements or understandings among the Parties, express or implied, with respect to the subject matter hereof, but all prior confidentiality agreements among the Parties shall remain in full force and effect.  No amendment, supplement or modification of this Agreement, or waiver of rights hereunder, shall be binding except against a Party that has executed such amendment, supplement or modification in writing.

19.     Construction; No Reliance.  This Agreement has been negotiated by the Parties and their respective legal counsel and legal or equitable principles that might require the construction of this Agreement or any of its provisions against the Party responsible for drafting this Agreement will not apply in any construction or interpretation of this Agreement.  The Parties acknowledge and agree that they have been represented by their own counsel and advisors in connection with this Agreement, have conducted their own investigations of the relevant facts and circumstances and are not relying on any representations or warranties of any other Party, except for the representations and warranties expressly set forth herein.

20.     Notices.  All notices, consents, waivers and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (i) delivered by hand (with written confirmation of receipt), (ii) sent by email (with electronic acknowledgement of receipt), or (iii) sent by a nationally recognized overnight courier with receipt as follows:

Notices to the Covered Parties shall be sent to:

> John F. Savarese
> Ralph M. Levene
> Wachtell, Lipton, Rosen & Katz
> 51 West 52nd Street
> New York, New York 10019
> jfsavarese@wlrk.com
> rmlevene@wlrk.com

> James J. Benjamin Jr.
> Parvin D. Moyne
> Robert H. Pees
> Akin, Gump, Strauss, Hauer & Feld LLP
> One Bryant Park
> Bank of America Tower
> New York, New York 10036
> jbenjamin@akingump.com
> pmoyne@akingump.com
> rpees@akingump.com

-17-

James G. Cavoli
George S. Canellos
Milbank LLP
55 Hudson Yards
New York, NY 10001
jcavoli@milbank.com
gcanellos@milbank.com

Notices to Skatteforvaltningen shall be sent to:

William R. Maguire
Marc A. Weinstein
Sarah L. Cave
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
sarah.cave@hugheshubbard.com

Boris Frederiksen
Kammeradvocaten/Poul Schmith
Vester Farimagsgade 23
1606 Copenhagen V
Denmark
+45 72 30 72 22
bor@kammeradvokaten.dk

Notices may also be provided to such other address or addresses subsequently provided to counsel.

21.    Authority. All attorneys executing this Agreement expressly represent and warrant that they have been given, and have received and accepted, authority to execute this Agreement on behalf of each Party for whom they have signed, and further, have been expressly given and received and accepted authority to enter into a binding agreement on behalf of each such Party with respect to the matters contained herein and as stated herein, and that the consent of no other party is required to bind each such Party.

22.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. This Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

KAMMERADVOKATEN/POUL SCHMITH

Dated: May 24, 2019    Redacted

By: Redacted

Name: Boris Frederiksen

*Attorney for:*

Skatteforvaltningen

HUGHES HUBBARD & REED LLP

Dated: May 28, 2019

By: Redacted

Name: William Maguire

*Attorney for:*

Skatteforvaltningen

SKATTEFORVALTNINGEN

Dated: May 23, 2019

By: Redacted

Name: _____

Title: _____

-19-

WACHTELL, LIPTON, ROSEN & KATZ

Dated: May 28, 2019



By: Redacted

Name: John F. Savarese

By: Redacted

Name: Ralph M. Levene

*Attorneys for:*

Redacted
Matthew Stein
Redacted

Dated: May 28, 2019

By: Redacted

Name: Matthew Stein

MILBANK, TWEED, HADLEY & McCLOY LLP

Dated: May 28, 2019



By: _____

    Name:  James Cavoli

    *Attorney for:*

    Jerome Lhote

Dated: May 28, 2019



By: _____

    Name:  Jerome Lhote

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

Dated: May 28, 2019

Redacted

By: _____

Name: ~~James Benjamin~~ ROBERT H. PEES

*Attorney for:*

Luke McGee
Redacted

Dated: May 28, 2019

Redacted

By: _____

Name: Luke McGee

-22-

LANKLER, SIFFERT & WOHL LLP

Dated: May 28, 2019

By: Redacted

Name: Gabrielle S. Friedman

*Attorney for:*

Redacted





SPEARS & IMES LLP

Dated: May 28, 2019



By: _____

Name: Linda Imes

*Attorney for:*

Redacted

MORVILLO, ABRAMOWITZ, GRAND, IASON
& ANELLO PC

Dated: May 28, 2019

By: Redacted

    Name: Richard Weinberg

*Attorney for:*

Redacted

ANDREW M. LAWLER, PC

Dated:  May _25_, 2019

By: ____Redacted_____

    Name:  Andrew Lawler

*Attorney for:*

Redacted

CLAYMAN & ROSENBERG LLP

Dated: May 29, 2019

By: Redacted

Name: Charles Clayman

*Attorney for:*

Redacted

**Exhibits to Settlement Agreement**

**Exhibit 1: Covered Parties**

    Exhibit 1A: Fully released Pension Plans, pension plan partnerships and partners

    Exhibit 1B: Fully released individuals

    Exhibit 1C: Partially released individual

**Exhibit 2: Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest**

**Exhibit 3: Non-exhaustive list of parties excluded from release**

    Exhibit 3A: Non-exhaustive list of pension plans excluded from release

    Exhibit 3B: Non-exhaustive list of individuals excluded from release

    Exhibit 3C: Non-exhaustive list of other entities excluded from release

**Exhibit 4: Affidavit of Confession of Judgment**

**Exhibit 5: Updated Affidavit of Confession of Judgment**

**Exhibit 1: Covered Parties**

**Exhibit 1A: Fully released Pension Plans, pension plan partnerships and partners**

| | Pension Plans | Partnerships | Partners |
|---|---|---|---|
| █cted | ████████████ | ████████████ | ████████████ |
| | | █████████ | ████████████ |
| █ | ████████ | ████████ | ███████████ |
| | | █████ | |
| █ | █████████ | ████████████ | ████████████ |
| | | | ████████████ |
| | | | ████████ |
| █ | ██████ | | |
| █ | █████████ | | |
| █ | ██████ | ████████████ | ████████████ |
| | ███ | | █████████ |
| █ | ████████ | ███████ | █████████ |
| | | █████ | █████████ |
| | | | ██████ |
| █ | ███████████ | ████████████ | █████████ |
| | | █████████ | █████████ |
| █ | ████████ | ████████████ | █████████ |
| | ████ | █████████ | |
| █ | ██████████ | ████████████ | █████████ |
| | ███ | ████████ | █████████ |
| █ | █████████ | ████████████ | █████████ |
| | ████ | ████████████ | █████████ |
| | | █████████ | █████████ |
| █ | ███████ | █████████ | ███████ |
| | | █████ | |
| █ | ████████ | ████████████ | █████████ |
| | █████ | ████████ | █████████ |







| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**Exhibit 1B: Fully released individuals**

| | Individuals |
|---|---|
| Redacted | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **28.** | Lhote, Jerome Redacted |
| | |
| **30.** | McGee, Luke |
| Redacted | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |



**Exhibit 1C: Partially released individual**

The following individual is partially released, only for his interest in parties listed on Exhibit 2.



Exhibit 2:  Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest

| | Pension Plans | Partnerships | Partners* |
|---|---|---|---|
| Redacted | ██████████ | █████████ | ███████████████ |
| █ | █████████ | ██████ | ███████████ |
| █ | ██████████ | ██████████ | ████████ |
| | | ██████████ | ███████████ |
| █ | █████████ | ██████████ | █████████ |
| █ | █████████ | █████████ | ███████████ |
| █ | ██████████ | █████ | ██████ |
| | | ██████████ | ████████████ |
| █ | ████████ | ██████████ | ████████████ |
| █ | █████████ | ██████████ | ██████ |
| █ | | ████████ | █████ |
| | █████████ | █████████ | ███████████ |
| █ | ████████ | | |





*In all partnerships in which Redacted were partners, Redacted were also partners. Redacted are not included on this list because no Covered Party has an interest in either of those two plans and those two plans are not released.

**Exhibit 3:  Non-exhaustive list of parties excluded from release**

**Exhibit 3A:  Non-exhaustive list of pension plans excluded from release**

|    | Pension Plans |
|----|---------------|
| 1  | Albedo Management LLC Roth 401(K) Plan |
| 2  | Avanix Management LLC Roth 401(K) |
| 3  | Azalea Pension Plan |
| 4  | Ballast Ventures LLC Roth 401(K) Plan |
| 5  | Bareroot Capital Investments LLC Roth 401(K) Plan |
| 6  | Basalt Ventures LLC Roth 401(K) Plan |
| 7  | Batavia Capital Pension Plan |
| 8  | Battu Holdings LLC Roth 401(K) Plan |
| 9  | Bernina Pension Plan |
| 10 | Calypso Investments Pension Plan |
| 11 | Cantata Industries LLC Roth 401(K) Plan |
| 12 | Cavus Systems LLC Roth 401(K) Plan |
| 13 | Cedar Hill Capital Investments LLC Roth 401(K) Plan |
| 14 | Crucible Ventures LLC Roth 401(K) Plan |
| 15 | Dicot Technologies LLC Roth 401(K) Plan |
| 16 | Eclouge Industry LLC Roth 401(K) Plan |
| 17 | Fairlie Investments LLC Roth 401(K) Plan |
| 18 | First Ascent Worldwide LLC Roth 401(K) Plan |
| 19 | Fulcrum Productions LLC Roth 401(K) Plan |
| 20 | Green Scale Management LLC Roth 401(K) Plan |
| 21 | Hadron Industries LLC Roth 401(K) Plan |
| 22 | Keystone Technologies LLC Roth 401(K) Plan |
| 23 | Limelight Global Productions LLC Roth 401(K) Plan |
| 24 | Loggerhead Services LLC Roth 401(K) Plan |
| 25 | Monomer Industries LLC Roth 401(K) Plan |
| 26 | Omineca Pension Plan |
| 27 | PAB Facilities Global LLC Roth 401(K) Plan |
| 28 | Pinax Holdings LLC Roth 401(K) Plan |
| 29 | Plumrose Industries LLC Roth 401(K) Plan |
| 30 | RJM Capital LLC Pension Plan |
| 31 | Roadcraft Technologies LLC Roth 401(K) Plan |
| 32 | Routt Capital Pension Plan |
| 33 | Starfish Capital Management LLC Roth 401(K)Plan |
| 34 | Sternway Logistics LLC Roth 401(K) Plan |
| 35 | Tarvos Pension Plan |
| 36 | Trailing Edge Productions LLC Roth 401(K) Plan |

| 37 | True Wind Investments LLC Roth 401(K) Plan |
| 38 | Tumba Systems LLC Roth 401(K) Plan |
| 39 | Voojo Productions LLC Roth 401(K) Plan |

**Exhibit 3B: Non-exhaustive list of individuals excluded from release**

| | Individuals |
|---|---|
| 1 | Redacted |
| 2 | Ben-Jacob, Michael |
| 3 | Burns, Alexander |
| 4 | Altbach, Ronald |
| 5 | Herman, Joseph |
| 6 | Redacted |
| 7 | Jones, Robin |
| 8 | Lerner, Perry |
| 9 | Markowitz, Jocelyn |
| 10 | Markowitz, Richard |
| 11 | Van Merkensteijn, Elizabeth |
| 12 | Van Merkensteijn, John |
| 13 | Zelman, David |

**Exhibit 3C: Non-exhaustive list of other entities excluded from release**

| | Entity |
|---|---|
| Redacted | |
| | |
| | |
| | |

Skatteforvaltningen expressly reserves all rights to pursue all persons and entities for all claims that are not released pursuant to this Settlement Agreement, including but not limited to all claims against defendants that Skatteforvaltningen has sued in the United States, the United Kingdom, Denmark, Dubai, Malaysia, or any other jurisdiction.

**Exhibit 4: Affidavit of Confession of Judgment**

EXECUTION COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SKATTEFORVALTNINGEN,

                Plaintiff,

                v.

Jerome Lhote, Luke McGee and Matthew Stein,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.

<u>AFFIDAVIT OF CONFESSION
OF JUDGMENT</u>

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )


We, Jerome Lhote, Luke McGee and Matthew Stein, being duly sworn, depose and say:

        1.      We are the defendants in the matter of *SKATTEFORVALTNINGEN* v. *Jerome Lhote, Luke McGee and Matthew Stein*. Jerome Lhote resides in New York County. Luke McGee resides in Philadelphia County and authorizes entry of this Confession of Judgment in New York County. Matthew Stein resides in New York County.

        2.      We hereby confess judgment and authorize entry of judgment against ourselves jointly and severally and in favor of the plaintiff in this Court, for the following amount (the "Judgment Amount"):

        (a) the Subsequent Cash Payment Amount, which is the sum of six hundred million (600,000,000) Danish Kroner and the True-Up Amount determined pursuant to Section 2(e)(iii) of the Settlement Agreement, dated May 28, 2019, attached hereto as Exhibit A, (hereinafter "Settlement Agreement"),

(b) less any payments made through the Default Date to fund the Subsequent Cash Payment Amount pursuant to the Settlement Agreement,

(c) plus Applicable Interest, calculated pursuant to Section 2(d)(ii) of the Settlement Agreement, as of the Default Date,

(d) plus Applicable Interest, calculated pursuant to Section 5(d)(iii) of the Settlement Agreement.

3.  We agree that the Judgment Amount shall be set forth in an affidavit to be executed by the plaintiff or an affirmation by such plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment (hereinafter, "Affidavit").

4.  This confession of judgment is for a debt justly due to the plaintiff arising out of the following facts:  The plaintiff and the defendants were parties (each individually, a "Party" and collectively, the "Parties") to the Settlement Agreement pursuant to which, among other things, the plaintiff agreed to release the defendants from all claims related to applications to reclaim taxes withheld from dividends paid on Danish company shares owned or allegedly owned by certain pension plans between 2012 and 2015, as to which Skatteforvaltningen paid an amount in excess of 4,100,000,000 Danish Kroner, in return for, among other things, the defendants' payment of the Final Settlement Amount pursuant to the terms set forth in the Settlement Agreement.

5.  The Parties agree that in an Event of Default, pursuant to Section 5(c) of the Settlement Agreement, the plaintiff is authorized to file this Affidavit and seek immediate entry of judgment for the Judgment Amount set forth in this Affidavit.

6.  This confession of judgment is not for the purpose of securing the plaintiff against a contingent liability.

7.      We hereby consent to the jurisdiction of the Supreme Court of the State of New York, New York County, Commercial Division, the United States District Court for the Southern District of New York; and/or any other court or tribunal in any other jurisdiction, including any jurisdiction outside the United States, where assets belonging to us may be found.

8.      We hereby consent to and agree to accept service of process related to this matter by regular United States mail at any location at which we, respectively, reside, or at our respective places of business, including, without limitation, to Ralph Levene, Esq., Wachtell, Lipton, Rosen & Katz, 51 W. 52nd Street, Floor 34, New York, New York 10019.

Signed and sworn before me
this _____ day of _____


_____          By:_____
Notary Public                                              Jerome Lhote




Signed and sworn before me
this _____ day of _____


_____          By:_____
Notary Public                                              Luke McGee




Signed and sworn before me
this _____ day of _____


_____          By:_____
Notary Public                                              Matthew Stein

**Exhibit 5:  Updated Affidavit of Confession of Judgment**

-14-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SKATTEFORVALTNINGEN,

                Plaintiff,

                v.

Jerome Lhote, Luke McGee and Matthew Stein,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.

<u>UPDATED AFFIDAVIT OF
CONFESSION OF JUDGMENT</u>

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )

We, Jerome Lhote, Luke McGee and Matthew Stein, being duly sworn, depose and say:

    1.    We are the defendants in the matter of *SKATTEFORVALTNINGEN* v. *Jerome Lhote, Luke McGee and Matthew Stein*. Jerome Lhote resides in New York County. Luke McGee resides in Philadelphia County and authorizes entry of this Confession of Judgment in New York County. Matthew Stein resides in New York County.

    2.    We hereby confess judgment and authorize entry of judgment against ourselves jointly and severally and in favor of the plaintiff in this Court, for the following amount (the "Judgment Amount"):

        (a) the Subsequent Cash Payment Amount, which is the sum of six hundred million (600,000,000) Danish Kroner and the True-Up Amount determined pursuant to Section 2(e)(iii) of the Settlement Agreement, dated May 28, 2019, attached hereto as Exhibit A, (hereinafter "Settlement Agreement"),

(b) less any payments made through the Default Date to fund the Subsequent Cash Payment Amount pursuant to the Settlement Agreement,

(c) plus Applicable Interest, calculated pursuant to Section 2(d)(ii) of the Settlement Agreement, as of the Default Date,

(d) plus Applicable Interest, calculated pursuant to Section 5(d)(iii) of the Settlement Agreement.

3.    We agree that the Judgment Amount shall be set forth in an affidavit to be executed by the plaintiff or an affirmation by such plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment (hereinafter, "Affidavit").

4.    This confession of judgment is for a debt justly due to the plaintiff arising out of the following facts:  The plaintiff and the defendants were parties (each individually, a "Party" and collectively, the "Parties") to the Settlement Agreement pursuant to which, among other things, the plaintiff agreed to release the defendants from all claims related to applications to reclaim taxes withheld from dividends paid on Danish company shares owned or allegedly owned by certain pension plans between 2012 and 2015, as to which Skatteforvaltningen paid an amount in excess of 4,100,000,000 Danish Kroner, in return for, among other things, the defendants' payment of the Final Settlement Amount pursuant to the terms set forth in the Settlement Agreement.

5.    The Parties agree that in an Event of Default, pursuant to Section 5(c) of the Settlement Agreement, the plaintiff is authorized to file this Affidavit and seek immediate entry of judgment for the Judgment Amount set forth in this Affidavit.

6.    This confession of judgment is not for the purpose of securing the plaintiff against a contingent liability.

7.    We hereby consent to the jurisdiction of the Supreme Court of the State of New York, New York County, Commercial Division, the United States District Court for the Southern District of New York; and/or any other court or tribunal in any other jurisdiction, including any jurisdiction outside the United States, where assets belonging to us may be found.

8.    We hereby consent to and agree to accept service of process related to this matter by regular United States mail at any location at which we, respectively, reside, or at our respective places of business, including, without limitation, to Ralph Levene, Esq., Wachtell, Lipton, Rosen & Katz, 51 W. 52nd Street, Floor 34, New York, New York 10019.

Signed and sworn before me
this _____ day of _____


_____     By:_____
Notary Public                                              Jerome Lhote



Signed and sworn before me
this _____ day of _____


_____     By:_____
Notary Public                                              Luke McGee



Signed and sworn before me
this _____ day of _____


_____     By:_____
Notary Public                                              Matthew Stein

EXECUTION COPY

RE: Settlement Agreement dated May 28, 2019

# THE SETTLEMENT AGREEMENT, THIS LETTER AGREEMENT, AND THE INFORMATION SET FORTH IN EACH AGREEMENT, IS <u>HIGHLY CONFIDENTIAL</u>.

# PUBLIC DISCLOSURE OF THE SETTLEMENT AGREEMENT, THIS LETTER AGREEMENT AND/OR THE INFORMATION SET FORTH IN EITHER AGREEMENT COULD BE HIGHLY PREJUDICIAL TO THE PARTIES.

This letter agreement, (the "Letter Agreement"), is entered into by Skatteforvaltningen ("Skatteforvaltningen ") and Jerome Lhote, Matthew Stein and Luke McGee, (the "Covered Parties' Designees"), Redacted (each individually a "Letter Agreement Party" and taken together the "Letter Agreement Parties"), as of the date set forth below.

1.    Pursuant to Section 18 of the Settlement Agreement between the Parties, executed as of May 28, 2019, (the "Settlement Agreement"), this Letter Agreement is intended to and does supplement and amend terms of the Settlement Agreement with respect to the subject matter hereof. Defined terms used in this Letter Agreement shall have the same meaning as in the Settlement Agreement, unless otherwise set forth herein.

2.    The Letter Agreement Parties agree that the existence and contents of, and any other information concerning, this Letter Agreement (collectively, encompassed in the term "Letter Agreement") are highly confidential and that the public disclosure of such information could have a detrimental impact on the Illiquid Assets described herein and on the Covered Parties' ability to successfully fulfill their obligations set forth in the Settlement Agreement. Accordingly, the Letter Agreement Parties agree that this Letter Agreement is subject to the confidentiality provisions of Section 8 of the Settlement Agreement.

3.    Pursuant to Section 2(d) of the Settlement Agreement, the Subsequent Cash Payment Amount shall be paid over time, as deadlines for payment occur and as certain "Illiquid Assets" are liquidated, provided, however, that a failure to liquidate an Illiquid Asset by the Final Settlement Payment Date or at a particular price shall not affect the Covered Parties' Designees' obligation to pay the Final Settlement Amount on or before the Final Settlement Payment Date. For the purpose of this Letter Agreement, Illiquid Assets means the direct or indirect equity interests of any of the Covered Parties' Designees in certain assets that the Covered Parties' Designees have determined cannot be immediately liquidated. A list of Illiquid Assets is attached hereto as Annex A.

4.    With respect to the liquidation of the Illiquid Assets in Annex A, the Covered Parties' Designees agree to provide quarterly progress reports to Skatteforvaltningen commencing on the three (3) month anniversary of the Effective Date and, at any time, to respond promptly to inquiries from Skatteforvaltningen concerning the Illiquid Assets. In the event of any material change to an Illiquid Asset, including, without limitation, its sale, transfer, or disposition, the Covered Parties' Designees shall provide written notice of such material change within ten (10) Business Days. Failure to provide written notice to Skatteforvaltningen of the sale, transfer, or disposition of an Illiquid Asset within ten (10) Business Days shall be a default. Upon such default, Skatteforvaltningen shall provide a Default Notice in accordance with Section 11 of the Settlement Agreement. Failure of the Covered Parties' Designees to cure the default within ten (10) Business Days from the receipt of the Default Notice shall be an Event of Default under Section 5 of the Settlement Agreement.

5.    The Covered Parties' Designees agree to use their best efforts to consummate the liquidation process as efficiently and expeditiously as possible. In the event that the Covered Parties' Designees receive proceeds from the sale, transfer, or disposition of an Illiquid Asset, the Covered Parties' Designees agree to apply such proceeds within ten (10) Business Days, to make payments to fund up to, and in no event greater than, the Final Settlement Amount with such

payments to be made to Skatteforvaltningen via wire transfer pursuant to written instructions provided by Skatteforvaltningen. Failure to make such payments within ten (10) Business Days shall be a default. Upon such default, Skatteforvaltningen shall provide a Default Notice in accordance with Section 11 of the Settlement Agreement. Failure of the Covered Parties' Designees to cure the default within ten (10) Business Days from the receipt of the Default Notice shall be an Event of Default under Section 5 of the Settlement Agreement.

6.      Further to Section 2(d) of the Settlement Agreement, in the event that after the expiration of thirty-six (36) months from the Effective Date, the Subsequent Cash Payment Amount has not been paid in full, the Final Settlement Payment Date shall automatically be extended by one (1) additional year, unless the gross proceeds from the sale of North Channel Bank equal or exceed three hundred and forty million (340,000,000) DKK. The Letter Agreement Parties agree that Section 1(r) of the Settlement Agreement is amended so that the Final Settlement Payment Date includes, to the extent applicable, the automatic one-year extension as set forth in this paragraph. During this one-year extension period, interest will continue to accrue, in accordance with Section 2(d)(ii)(1) of the Settlement Agreement.

7.      The Letter Agreement Parties shall ask the management of North Channel Bank to certify the amount of the fees (the "Bank Fees") that North Channel Bank received arising from or related to dividend tax reclaim applications submitted to Skatteforvaltningen. Upon the sale of North Channel Bank, fifty million (50,000,000) DKK or the amount of the Bank Fees, whichever amount is greater, of the sale proceeds shall be used to make a separate payment, (the "Payment of Fees") on behalf of the Letter Agreement Parties to Skatteforvaltningen, representing disgorgement of the fees received by North Channel Bank arising from or related to the dividend tax reclaim applications submitted to Skatteforvaltningen; this Payment of Fees shall not be counted towards the payment of the Final Settlement Amount or any other payment required under the Settlement Agreement. The Letter Agreement Parties agree to promptly pay the remaining proceeds of the sale of North Channel Bank, after the Payment of Fees, North Channel Bank's sale-related fees and costs and agreed-upon payments to be made to Belgian governmental authorities, to Skatteforvaltningen to satisfy the payment of the Final Settlement Amount.

8.      The Letter Agreement Parties further agree that any amount paid to SØIK by or on behalf of North Channel Bank shall be counted towards the Subsequent Cash Payment Amount due to Skatteforvaltningen under the Settlement Agreement.

9.      The Letter Agreement Parties agree that the proceeds of the sale of North Channel Bank shall be deposited in a mutually agreed escrow account pursuant to the terms of the Settlement Agreement and this Letter Agreement, and that simultaneously on the release of the proceeds to Skatteforvaltningen, Skatteforvaltningen shall release any actual or potential Claims against North Channel Bank, and promptly file or consent to the filing of all papers necessary to dismiss with prejudice the claims that Skatteforvaltningen brought against North Channel Bank in the courts of the United Kingdom.

10.      This Letter Agreement shall be governed by, construed and interpreted in accordance with the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof.

-3-

11.     This Letter Agreement constitutes the entire agreement among the Letter Agreement Parties with respect to the subject matter hereof and supersedes any previous agreements or understandings among the Letter Agreement Parties, express or implied, with respect to the same subject matter, except that all prior confidentiality agreements among the Parties shall remain in full force and effect. No amendment, supplement or modification of this Letter Agreement, or waiver of rights hereunder, shall be binding unless executed in writing by all Letter Agreement Parties and specifically referencing this Letter Agreement.

12.     Please indicate your agreement by countersigning and returning a copy of this Letter Agreement. By doing so, you expressly represent and warrant that you have been given, and have received and accepted, authority to execute this Letter Agreement on behalf of the Letter Agreement Party for whom you have signed, and further have been expressly given and received and accepted authority to enter into a binding agreement on behalf of such Letter Agreement Party with respect to the matters set forth and as stated herein, and that the consent of no other party is required to bind such Letter Agreement Party.

13.     This Letter Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. This Letter Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

-4-

KAMMERADVOKATEN/POUL SCHMITH

Dated: May 24, 2019 Redacted

By: Redacted

Name: Boris Frederiksen

*Attorney for:*

Skatteforvaltningen

HUGHES HUBBARD & REED LLP

Dated: May 28, 2019

By: Redacted

Name: William Maguire

*Attorney for:*

Skatteforvaltningen

SKATTEFORVALTNINGEN

Dated: May 25, 2019

By: Redacted

Name:

Director General

Title:

WACHTELL, LIPTON, ROSEN & KATZ

Dated: May 28, 2019

By: 

Name: John F. Savarese

By: 

Name: Ralph M. Levene

*Attorneys for:*

Matthew Stein

Dated: May 28, 2019

By: 

Name: Matthew Stein

MILBANK, TWEED, HADLEY & MCCLOY LLP

Dated: May 28, 2019

By: _____

Name: James Cavoli

*Attorney for:*

Jerome Lhote

Dated: May 28, 2019

By: _____

Name: Jerome Lhote

-7-

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

Dated: May 28, 2019

By: Redacted

Name: ~~James Benjamin~~ ROBERT H. PEES

*Attorney for:*

Luke McGee

Dated: May 29, 2019

By: Redacted

Name: Luke McGee

LANKLER, SIFFERT & WOHL LLP

Dated: May 28, 2019

By: Redacted

Name: Gabrielle S. Friedman

*Attorney for:*

Redacted

Dated: May 21, 2019

By: Redacted

Name: Redacted

Dated: May ___, 2019

By: _____

Name: Redacted

LANKLER, SIFFERT & WOHL LLP

Dated: May 28, 2019

By: **Redacted**

Name: Gabrielle S. Friedman

*Attorney for:*

Redacted


Dated: May ___, 2019

By: _____

Name: Redacted


Dated: May 28, 2019

By: **Redacted**

Name:

**Annex A: List of Illiquid Assets**

| Asset | Expected Net Realizable Value (DKK) | Expected Net Realizable Value (USD) | Expected Timeframe |
|---|---|---|---|
| Redacted | | | |
| | | | |
| Redacted | | | |
| Interests in North Channel Bank | 322 mm DKK | 49mm | 12/31/21 |
| Redacted | | | |
| | | | |
| | | | |

# EXHIBIT 2
## TO LETTER OF REQUEST
### (Certification)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CASE NO. 23 Civ. 2508 (NRB)

MATTHEW STEIN and JEROME LHOTE,

                                        Plaintiffs,

        v.

SKATTEFORVALTNINGEN,

                                        Defendant,

        and

 LUKE McGEE,

                        Nominal Defendant.

---

SKATTEFORVALTNINGEN,

                        Counterclaim Plaintiff,

        v.

MATTHEW STEIN, JEROME LHOTE, and
LUKE MCGEE,

                        Counterclaim Defendants.

---

**<u>CERTIFICATION OF CUSTODIAN OF BUSINESS RECORDS</u>**


        I, _____, state that:

        1.        I am over 18 years of age, a resident of _____, and

competent to make this Certification.

1.      I am the _____ of National enhed for Særlig

Kriminalitet ("NSK") (formerly known as Særlig Økonomisk og International Kriminalitet

("SØIK")). As part of my duties, I am a custodian of records and have access to the records of

SØIK.[1]

2.      The records produced by SØIK in response to the documents requested by Luke

McGee, via the Letter of Request issued by the Southern District of New York in the above

referenced matter, are true and correct copies of the original documents maintained by SØIK and

that set out the activities of SØIK.

3.      Further, all documents SØIK previously made available to Plaintiffs in the above

referenced matter from the Case No. SØK-76141-00005-17, as listed below in Schedule 1 to this

Certification, are true and correct copies of the original documents maintained by SØIK and that

set out the activities of SØIK.

4.      I am familiar with SØIK's practices and procedures regarding the collection and

maintenance of the above-described records.

5.      The records referenced herein were created, kept, and maintained in the regularly

conducted activity of SØIK and the making of such records was a regular practice of the activity

of SØIK.

6.      These records were made at or near the time of the matter, act, or event recorded,

and were made by—or from information transmitted by—a person with knowledge of the matter,

act, or event recorded.

---

[1] SØIK has been reorganized and is now referred to as NSK.  For sake of simplicity, I this
Certification refers to SØIK.

I executed this Certificate at _____ on _____, 2024.

I declare and certify under penalty of perjury and the criminal penalties of the laws of the Kingdom of Denmark that the foregoing is true and correct.

Signature: _____

By: _____
*Custodian of Records and Representative of SØIK*

**SCHEDULE 1 to the Certification**

| Appendix No. | Attachment Date |
| --- | --- |
| GRP 01-01 - Indictment | 20-Jun-22 |
| GRP 01-02 | 20-Jun-22 |
| GRP 01-04 | 5-Jan-24 |
| GRP 04-01 | 20-Jun-22 |
| GRP 05-04 | 20-Jun-22 |
| GRP 05-06 | 20-Jun-22 |
| GRP 05-09 | 20-Jun-22 |
| GRP 05-10 | 20-Jun-22 |
| GRP 05-11 | 20-Jun-22 |
| GRP 05-12 | 20-Jun-22 |
| GRP 05-19 | 20-Jun-22 |
| GRP 05-20 | 20-Jun-22 |
| GRP 05-01 | 4-Jan-24 |
| GRP 05-03 | 4-Jan-24 |
| GRP 05-02 | 4-Jan-24 |
| GRP 05-21 | 4-Jan-24 |
| GRP 05-23 | 5-Jan-24 |
| GRP 05-800-00-1-3 | 20-Feb-24 |
| GRP 05-800-00-4-8 | 20-Feb-24 |
| GRP 05-800-00-9-13 | 20-Feb-24 |
| GRP 05-801-00-145-147 | 20-Feb-24 |
| GRP 05-801-00-153-157 | 20-Feb-24 |
| GRP 05-801-00-148-152 | 20-Feb-24 |
| GRP 05-802-00-68-72 | 20-Feb-24 |
| GRP 05-802-00-73-77 | 20-Feb-24 |
| GRP 07-01 | 20-Jun-22 |
| GRP 07-02 | 20-Jun-22 |
| GRP 07-03 | 20-Jun-22 |
| GRP 07-04 | 20-Jun-22 |
| GRP 11-01 | 20-Jun-22 |
| GRP 11-05 | 20-Jun-22 |
| GRP 11-06 | 20-Jun-22 |
| GRP 11-07 | 20-Jun-22 |
| GRP 11-08 | 20-Jun-22 |
| GRP 11-09 | 20-Jun-22 |
| GRP 11-10 | 20-Jun-22 |
| GRP 11-11 | 20-Jun-22 |
| GRP 11-12 | 20-Jun-22 |
| GRP 11-13 | 20-Jun-22 |
| GRP 11-14 | 20-Jun-22 |
| GRP 11-15 | 20-Jun-22 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 11-16 | 20-Jun-22 |
| GRP 11-17 | 20-Jun-22 |
| GRP 11-20 | 20-Jun-22 |
| GRP 11-21 | 20-Jun-22 |
| GRP 11-22 | 20-Jun-22 |
| GRP 11-23 | 20-Jun-22 |
| GRP 11-24 | 20-Jun-22 |
| GRP 11-26 | 20-Jun-22 |
| GRP 11-28 | 20-Jun-22 |
| GRP 11-29 | 20-Jun-22 |
| GRP 11-31 | 4-Jan-24 |
| GRP 11-27 | 4-Jan-24 |
| GRP 11-32 | 4-Jan-24 |
| GRP 20-02 | 20-Jun-22 |
| GRP 20-03 | 20-Jun-22 |
| GRP 20-04 | 20-Jun-22 |
| GRP 20-05 | 20-Jun-22 |
| GRP 20-06 | 20-Jun-22 |
| GRP 20-07 | 20-Jun-22 |
| GRP 20-08 | 20-Jun-22 |
| GRP 20-09 | 20-Jun-22 |
| GRP 20-10 | 20-Jun-22 |
| GRP 20-11 | 20-Jun-22 |
| GRP 20-12 | 20-Jun-22 |
| GRP 20-13 | 20-Jun-22 |
| GRP 20-14 | 20-Jun-22 |
| GRP 20-15 | 20-Jun-22 |
| GRP 20-16 | 20-Jun-22 |
| GRP 20-17 | 20-Jun-22 |
| GRP 20-19 | 20-Jun-22 |
| GRP 20-20 | 20-Jun-22 |
| GRP 20-21 | 20-Jun-22 |
| GRP 20-22 | 20-Jun-22 |
| GRP 20-24 | 20-Jun-22 |
| GRP 20-25 | 20-Jun-22 |
| GRP 20-26 | 20-Jun-22 |
| GRP 20-27 | 20-Jun-22 |
| GRP 20-28 | 20-Jun-22 |
| GRP 20-23 | 4-Jan-24 |
| GRP 20-108 | 5-Jan-24 |
| GRP 20-106 | 5-Jan-24 |
| GRP 20-107 | 5-Jan-24 |
| GRP 20-105 | 5-Jan-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 20-104 | 5-Jan-24 |
| GRP 20-103 | 5-Jan-24 |
| GRP 20-101 | 5-Jan-24 |
| GRP 20-102 | 5-Jan-24 |
| GRP 20-30-00-1-2 | 18-Feb-24 |
| GRP 20-30-00-3-5 | 18-Feb-24 |
| GRP 31-01 | 4-Jan-24 |
| GRP 31-02 | 5-Jan-24 |
| GRP 33-01 | 20-Jun-22 |
| GRP 33-02 | 4-Jan-24 |
| GRP 35-02 | 20-Jun-22 |
| GRP 35-04 | 20-Jun-22 |
| GRP 35-05 | 20-Jun-22 |
| GRP 35-06 | 20-Jun-22 |
| GRP 35-08 | 20-Jun-22 |
| GRP 35-09 | 20-Jun-22 |
| GRP 35-10 | 20-Jun-22 |
| GRP 35-11 | 20-Jun-22 |
| GRP 35-12 | 20-Jun-22 |
| GRP 35-01 | 4-Jan-24 |
| GRP 35-03 | 4-Jan-24 |
| GRP 35-07 | 4-Jan-24 |
| GRP 35-14-00-1-2 | 18-Feb-24 |
| GRP 35-14-00-3-3 | 18-Feb-24 |
| GRP 38-01 | 20-Jun-22 |
| GRP 38-04 | 20-Jun-22 |
| GRP 38-05 | 20-Jun-22 |
| GRP 38-06 | 20-Jun-22 |
| GRP 38-07 | 20-Jun-22 |
| GRP 38-08 | 20-Jun-22 |
| GRP 38-09 | 20-Jun-22 |
| GRP 38-10 | 21-Jun-22 |
| GRP 38-11 | 20-Jun-22 |
| GRP 38-13 | 20-Jun-22 |
| GRP 38-14 | 20-Jun-22 |
| GRP 38-15 | 20-Jun-22 |
| GRP 38-16 | 20-Jun-22 |
| GRP 38-17 | 20-Jun-22 |
| GRP 38-18 | 20-Jun-22 |
| GRP 38-19 | 20-Jun-22 |
| GRP 38-20-00-45-45 | 20-Jun-22 |
| GRP 38-21 | 21-Jun-22 |
| GRP 38-22 | 20-Jun-22 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 38-23 | 20-Jun-22 |
| GRP 38-24 | 20-Jun-22 |
| GRP 38-25 | 20-Jun-22 |
| GRP 38-28 | 20-Jun-22 |
| GRP 38-29-00-1-17 Forside til excel - erstat | 20-Jun-22 |
| GRP 38-29-00-1-17 erstat | 20-Jun-22 |
| GRP 38-31 | 20-Jun-22 |
| GRP 38-32 | 20-Jun-22 |
| GRP 38-33 | 20-Jun-22 |
| GRP 38-34 | 20-Jun-22 |
| GRP 38-35 | 20-Jun-22 |
| GRP 38-36 | 20-Jun-22 |
| GRP 38-37 | 20-Jun-22 |
| GRP 38-38 | 20-Jun-22 |
| GRP 38-40 - side 5 A3 | 20-Jun-22 |
| GRP 38-41 | 20-Jun-22 |
| GRP 38-42 | 20-Jun-22 |
| GRP 38-44 | 21-Jun-22 |
| GRP 38-45 | 20-Jun-22 |
| GRP 38-46 | 20-Jun-22 |
| GRP 38-47 | 20-Jun-22 |
| GRP 38-48 | 20-Jun-22 |
| GRP 38-49 | 20-Jun-22 |
| GRP 38-50 | 20-Jun-22 |
| GRP 38-52 | 20-Jun-22 |
| GRP 38-53 | 20-Jun-22 |
| GRP 38-54 | 20-Jun-22 |
| GRP 38-55 | 20-Jun-22 |
| GRP 38-56 | 20-Jun-22 |
| GRP 38-57 | 20-Jun-22 |
| GRP 38-58 | 20-Jun-22 |
| GRP 38-59 | 20-Jun-22 |
| GRP 38-60 | 20-Jun-22 |
| GRP 38-61 | 20-Jun-22 |
| GRP 38-62 | 20-Jun-22 |
| GRP 38-63 | 20-Jun-22 |
| GRP 38-64 | 20-Jun-22 |
| GRP 38-64-00-1-1 | 20-Jun-22 |
| GRP 38-418 | 20-Jun-22 |
| GRP 38-419 | 20-Jun-22 |
| GRP 38-807 | 20-Jun-22 |
| GRP 38-02 | 4-Jan-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 38-43 | 4-Jan-24 |
| GRP 38-65 | 5-Jan-24 |
| GRP 38-51 | 5-Jan-24 |
| GRP 38-03 | 5-Jan-24 |
| GRP 38-12 | 5-Jan-24 |
| GRP 38-20 | 5-Jan-24 |
| GRP 38-26 | 5-Jan-24 |
| GRP 38-27 | 5-Jan-24 |
| GRP 38-39 | 5-Jan-24 |
| GRP 38-24-00-109-111 | 18-Feb-24 |
| GRP 38-24-00-112-119 | 18-Feb-24 |
| GRP 38-24-00-120-149 | 18-Feb-24 |
| GRP 38-24-00-150-173 | 18-Feb-24 |
| GRP 38-24-00-174-195 | 18-Feb-24 |
| GRP 38-24-00-196-221 | 18-Feb-24 |
| GRP 38-24-00-222-246 | 18-Feb-24 |
| GRP 38-24-00-247-255 | 18-Feb-24 |
| GRP 38-24-00-88-100 | 18-Feb-24 |
| GRP 38-39-00-146-150 | 18-Feb-24 |
| GRP 38-40-00-6-8 | 18-Feb-24 |
| GRP 38-40-00-9-12 | 18-Feb-24 |
| GRP 38-40-00-13-16 | 18-Feb-24 |
| GRP 38-40-00-17-20 | 18-Feb-24 |
| GRP 38-40-00-21-24 | 18-Feb-24 |
| GRP 38-40-00-25-27 | 18-Feb-24 |
| GRP 38-40-00-28-30 | 18-Feb-24 |
| GRP 38-67 | 18-Feb-24 |
| GRP 38-54-00-28-42 | 18-Feb-24 |
| GRP 38-54-00-43-56 | 18-Feb-24 |
| GRP 38-05-00-30-37 | 18-Feb-24 |
| GRP 38-05-00-38-38 | 18-Feb-24 |
| GRP GRP 38-48-00-46-46 erstat | 18-Feb-24 |
| GRP 38-48-00-47-58 | 18-Feb-24 |
| GRP 38-48-00-59-67 | 18-Feb-24 |
| GRP 38-800-00-1-11 | 20-Feb-24 |
| GRP 38-801-00-1-11 | 20-Feb-24 |
| GRP 38-803-00-34-36 | 20-Feb-24 |
| GRP 38-804-00-1-12 | 20-Feb-24 |
| GRP 38-805-00-1-6 | 20-Feb-24 |
| GRP 38-806-00-1-6 | 20-Feb-24 |
| GRP 38-803-00-1-33 | 20-Feb-24 |
| GRP 39-04-00-140 Note 8.2 | 21-Jun-22 |
| GRP 39-04-00-148 Note 9.2 | 21-Jun-22 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 39-04-00-149 | 21-Jun-22 |
| GRP 39-04-00-150 | 21-Jun-22 |
| GRP 39-04-00-151 | 21-Jun-22 |
| GRP 39-04-00-152 | 21-Jun-22 |
| GRP 39-04-00-153 | 21-Jun-22 |
| GRP 39-04-00-157 | 21-Jun-22 |
| GRP 39-04-00-158 | 21-Jun-22 |
| GRP 39-04-00-161 | 21-Jun-22 |
| GRP 39-04-00-164 | 21-Jun-22 |
| GRP 39-04-00-168 | 21-Jun-22 |
| GRP 39-04-00-169 | 21-Jun-22 |
| GRP 39-04-00-170 | 21-Jun-22 |
| GRP 39-07 | 21-Jun-22 |
| GRP 39-08 | 24-Jun-22 |
| GRP 39-12 | 21-Jun-22 |
| GRP 39-15 | 21-Jun-22 |
| GRP 39-18 | 21-Jun-22 |
| GRP 39-19 | 21-Jun-22 |
| GRP 39-20 | 21-Jun-22 |
| GRP 39-01 | 4-Jan-24 |
| GRP 39-06 | 4-Jan-24 |
| GRP 39-02 | 5-Jan-24 |
| GRP 39-03 | 5-Jan-24 |
| GRP 39-04 | 5-Jan-24 |
| GRP 39-05 | 8-Jan-24 |
| GRP 39-07 | 8-Jan-24 |
| GRP 39-09 | 8-Jan-24 |
| GRP 39-10 | 8-Jan-24 |
| GRP 39-11 | 8-Jan-24 |
| GRP 39-12 | 8-Jan-24 |
| GRP 43-02-00-1 | 21-Jun-22 |
| GRP 43-03-00-1 | 21-Jun-22 |
| GRP 43-03-00-2 | 21-Jun-22 |
| GRP 43-04-00-1 | 21-Jun-22 |
| GRP 43-05-00-1 | 21-Jun-22 |
| GRP 43-05-00-2 | 21-Jun-22 |
| GRP 43-06-00-1 | 21-Jun-22 |
| GRP 43-06-00-2 | 21-Jun-22 |
| GRP 43-07-00-1 | 21-Jun-22 |
| GRP 43-08-00-1 | 21-Jun-22 |
| GRP 43-09-00-1 | 21-Jun-22 |
| GRP 43-10-00-1 | 21-Jun-22 |
| GRP 43-11-00-1 | 21-Jun-22 |

| Appendix No. | Attachment Date |
| --- | --- |
| GRP 43-11-00-2 | 21-Jun-22 |
| GRP 43-12-00-1 | 21-Jun-22 |
| GRP 43-13-00-1 | 21-Jun-22 |
| GRP 43-14-00-1 | 21-Jun-22 |
| GRP 43-15-00-1 | 21-Jun-22 |
| GRP 43-15-00-2 | 21-Jun-22 |
| GRP 43-16-00-1 | 21-Jun-22 |
| GRP 43-17-00-1 | 21-Jun-22 |
| GRP 43-18-00-1 | 21-Jun-22 |
| GRP 43-19-00-1 | 21-Jun-22 |
| GRP 43-20-00-1 | 21-Jun-22 |
| GRP 43-21-00-1 | 21-Jun-22 |
| GRP 43-22-00-1 | 21-Jun-22 |
| GRP 43-23-00-1 | 21-Jun-22 |
| GRP 43-24-00-1 | 21-Jun-22 |
| GRP 43-25-00-1 | 21-Jun-22 |
| GRP 43-26-00-1 | 21-Jun-22 |
| GRP 43-26-00-2 | 21-Jun-22 |
| GRP 43-27-00-1 | 21-Jun-22 |
| GRP 43-28-00-1 | 21-Jun-22 |
| GRP 43-29-00-1 | 21-Jun-22 |
| GRP 43-30-00-1 | 21-Jun-22 |
| GRP 43-31-00-1-40 | 21-Jun-22 |
| GRP 43-02 | 4-Jan-24 |
| GRP 43-03 | 4-Jan-24 |
| GRP 43-04 | 4-Jan-24 |
| GRP 43-05 | 4-Jan-24 |
| GRP 43-06 | 4-Jan-24 |
| GRP 43-07 | 4-Jan-24 |
| GRP 43-11 | 4-Jan-24 |
| GRP 43-10 | 4-Jan-24 |
| GRP 43-09 | 4-Jan-24 |
| GRP 43-08 | 4-Jan-24 |
| GRP 43-15 | 4-Jan-24 |
| GRP 43-14 | 4-Jan-24 |
| GRP 43-13 | 4-Jan-24 |
| GRP 43-12 | 4-Jan-24 |
| GRP 43-21 | 5-Jan-24 |
| GRP 43-20 | 5-Jan-24 |
| GRP 43-19 | 5-Jan-24 |
| GRP 43-18 | 5-Jan-24 |
| GRP 43-17 | 5-Jan-24 |
| GRP 43-16 | 5-Jan-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 43-25 | 5-Jan-24 |
| GRP 43-24 | 5-Jan-24 |
| GRP 43-23 | 5-Jan-24 |
| GRP 43-22 | 5-Jan-24 |
| GRP 43-29 | 5-Jan-24 |
| GRP 43-28 | 5-Jan-24 |
| GRP 43-27 | 5-Jan-24 |
| GRP 43-26 | 5-Jan-24 |
| GRP 43-30 | 5-Jan-24 |
| GRP 44-03-00-1 | 21-Jun-22 |
| GRP 44-03-00-2 | 21-Jun-22 |
| GRP 44-09-00-1 | 21-Jun-22 |
| GRP 44-09-00-2 | 21-Jun-22 |
| GRP 44-15 | 21-Jun-22 |
| GRP 44-16 | 21-Jun-22 |
| GRP 44-17 | 21-Jun-22 |
| GRP 44-18 | 21-Jun-22 |
| GRP 44-02 | 5-Jan-24 |
| GRP 44-01 | 5-Jan-24 |
| GRP 44-05 | 5-Jan-24 |
| GRP 44-04 | 5-Jan-24 |
| GRP 44-12 | 5-Jan-24 |
| GRP 44-11 | 5-Jan-24 |
| GRP 44-10 | 5-Jan-24 |
| GRP 44-09 | 5-Jan-24 |
| GRP 44-08 | 5-Jan-24 |
| GRP 44-07 | 5-Jan-24 |
| GRP 44-14 | 5-Jan-24 |
| GRP 44-13 | 5-Jan-24 |
| GRP 44-03 | 8-Jan-24 |
| GRP 44-06 | 8-Jan-24 |
| GRP 45-03 Forside til excel | 21-Jun-22 |
| 45-03-00-1-1 Erstatter | 21-Jun-22 |
| GRP 45-04-00-6-6 | 5-Jan-24 |
| GRP 45-04 | 5-Jan-24 |
| Group 50 Open sources(4) | 21-Jun-22 |
| GRP 50-01 | 21-Jun-22 |
| GRP 50-02 | 21-Jun-22 |
| GRP 50-03 | 21-Jun-22 |
| GRP 50-04 | 21-Jun-22 |
| GRP 53-02 | 21-Jun-22 |
| GRP 53-03 | 24-Jun-22 |
| GRP 53-04 OBS side 161 a-d | 21-Jun-22 |

11

| Appendix No. | Attachment Date |
|---|---|
| 53-04-00-1028-1029 | 21-Jun-22 |
| GRP 53-05 | 24-Jun-22 |
| GRP 53-07 | 21-Jun-22 |
| GRP 53-09 | 24-Jun-22 |
| GRP 53-10 | 21-Jun-22 |
| GRP 53-11 | 24-Jun-22 |
| GRP 53-12 | 21-Jun-22 |
| GRP 53-13 | 21-Jun-22 |
| GRP 53-14 | 21-Jun-22 |
| GRP 53-16 | 21-Jun-22 |
| GRP 53-17 | 21-Jun-22 |
| GRP 53-20 | 21-Jun-22 |
| GRP 53-21 | 21-Jun-22 |
| GRP 53-22 | 21-Jun-22 |
| GRP 53-23 | 21-Jun-22 |
| GRP 53-24 | 21-Jun-22 |
| GRP 53-25 | 21-Jun-22 |
| GRP 53-26 | 21-Jun-22 |
| GRP 53-27 | 24-Jun-22 |
| GRP 53-28 | 21-Jun-22 |
| GRP 53-29 | 21-Jun-22 |
| GRP 53-32 | 21-Jun-22 |
| GRP 53-33 | 24-Jun-22 |
| GRP 53-34 | 21-Jun-22 |
| GRP 53-35 | 21-Jun-22 |
| GRP 53-36 | 21-Jun-22 |
| GRP 53-37 | 21-Jun-22 |
| GRP 53-40 | 21-Jun-22 |
| GRP 53-43 | 21-Jun-22 |
| GRP 53-48 | 24-Jun-22 |
| GRP 53-48-00-46-46 Open Points | 21-Jun-22 |
| GRP 53-59 | 5-Jan-24 |
| GRP 53-58 | 5-Jan-24 |
| GRP 53-56 | 5-Jan-24 |
| GRP 53-19 | 5-Jan-24 |
| GRP 53-06 | 5-Jan-24 |
| GRP 53-01 | 8-Jan-24 |
| GRP 53-08 | 8-Jan-24 |
| GRP 53-41 | 8-Jan-24 |
| GRP 53-47 | 8-Jan-24 |
| GRP 53-07-00-1009-1013 | 18-Feb-24 |
| GRP 53-07-00-1007-1008 | 18-Feb-24 |
| GRP 53-07-00-1002-1006 | 18-Feb-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 53-07-00-1000-1001 | 18-Feb-24 |
| GRP 53-07-00-1021-1023 | 18-Feb-24 |
| GRP 53-07-00-1024-1028 | 18-Feb-24 |
| GRP 53-07-00-1019-1020 | 18-Feb-24 |
| GRP 53-07-00-1017-1018 | 18-Feb-24 |
| GRP 53-07-00-1014-1016 | 18-Feb-24 |
| GRP 53-07-00-1047-1050 | 18-Feb-24 |
| GRP 53-07-00-1044-1046 | 18-Feb-24 |
| GRP 53-07-00-1042-1043 | 18-Feb-24 |
| GRP 53-07-00-1039-1041 | 18-Feb-24 |
| GRP 53-07-00-1035-1038 | 18-Feb-24 |
| GRP 53-07-00-1029-1032 | 18-Feb-24 |
| GRP 53-07-00-1033-1034 | 18-Feb-24 |
| GRP 53-07-00-1053-1054 | 18-Feb-24 |
| GRP 53-07-00-1055-1056 | 18-Feb-24 |
| GRP 53-07-00-1051-1052 | 18-Feb-24 |
| GRP 53-07-00-1105-1110 | 18-Feb-24 |
| GRP 53-07-00-1082-1104 | 18-Feb-24 |
| GRP 53-07-00-1079-1081 | 18-Feb-24 |
| GRP 53-07-00-1076-1078 | 18-Feb-24 |
| GRP 53-07-00-1073-1075 | 18-Feb-24 |
| GRP 53-07-00-1070-1072 | 18-Feb-24 |
| GRP 53-07-00-1068-1069 | 18-Feb-24 |
| GRP 53-07-00-1066-1067 | 18-Feb-24 |
| GRP 53-07-00-1060-1065 | 18-Feb-24 |
| GRP 53-07-00-1057-1059 | 18-Feb-24 |
| GRP 53-60-00-109-178 | 18-Feb-24 |
| GRP 53-60-00-179-220 | 18-Feb-24 |
| GRP 53-60-00-221-258 | 18-Feb-24 |
| GRP 53-60-00-259-264 | 18-Feb-24 |
| GRP 53-800-00-1-1 | 18-Feb-24 |
| GRP 53-800-00-2-69 | 18-Feb-24 |
| GRP 53-64-00-1-45 | 18-Feb-24 |
| GRP 53-64-00-1026-1106 | 18-Feb-24 |
| GRP 53-64-00-1107-1206 | 18-Feb-24 |
| GRP 53-64-00-1207-1299 | 18-Feb-24 |
| GRP 53-64-00-1300-1389 | 20-Feb-24 |
| GRP 53-64-00-135-177 | 20-Feb-24 |
| GRP 53-64-00-1390-1471 | 20-Feb-24 |
| GRP 53-64-00-1472-1511 | 20-Feb-24 |
| GRP 53-64-00-1512-1543 | 20-Feb-24 |
| GRP 53-64-00-1544-1589 | 20-Feb-24 |
| GRP 53-64-00-1590-1635 | 20-Feb-24 |

13

| Appendix No. | Attachment Date |
|---|---|
| GRP 53-64-00-1636-1740 | 20-Feb-24 |
| GRP 53-64-00-1741-1842 | 20-Feb-24 |
| GRP 53-64-00-178-252 | 20-Feb-24 |
| GRP 53-64-00-1843-1925 | 20-Feb-24 |
| GRP 53-64-00-1926-2008 | 20-Feb-24 |
| GRP 53-64-00-2009-2078 | 20-Feb-24 |
| GRP 53-64-00-2079-2144 | 20-Feb-24 |
| GRP 53-64-00-2145-2189 | 20-Feb-24 |
| GRP 53-64-00-2190-2215 | 20-Feb-24 |
| GRP 53-64-00-2216-2285 | 20-Feb-24 |
| GRP 53-64-00-2286-2351 | 20-Feb-24 |
| GRP 53-64-00-2352-2391 | 20-Feb-24 |
| GRP 53-64-00-2392-2421 | 20-Feb-24 |
| GRP 53-64-00-2422-2489 | 20-Feb-24 |
| GRP 53-64-00-2490-2552 | 20-Feb-24 |
| GRP 53-64-00-253-311 | 20-Feb-24 |
| GRP 53-64-00-4070-4171 | 20-Feb-24 |
| GRP 53-64-00-3968-4069 | 20-Feb-24 |
| GRP 53-64-00-3929-3967 | 20-Feb-24 |
| GRP 53-64-00-3887-3928 | 20-Feb-24 |
| GRP 53-64-00-383-485 | 20-Feb-24 |
| GRP 53-64-00-3820-3886 | 20-Feb-24 |
| GRP 53-64-00-3750-3819 | 20-Feb-24 |
| GRP 53-64-00-3707-3749 | 20-Feb-24 |
| GRP 53-64-00-3664-3706 | 20-Feb-24 |
| GRP 53-64-00-3584-3663 | 20-Feb-24 |
| GRP 53-64-00-357-382 | 20-Feb-24 |
| GRP 53-64-00-3503-3583 | 20-Feb-24 |
| GRP 53-64-00-3398-3502 | 20-Feb-24 |
| GRP 53-64-00-3292-3397 | 20-Feb-24 |
| GRP 53-64-00-3247-3291 | 20-Feb-24 |
| GRP 53-64-00-3199-3246 | 20-Feb-24 |
| GRP 53-64-00-312-356 | 20-Feb-24 |
| GRP 53-64-00-3119-3198 | 20-Feb-24 |
| GRP 53-64-00-3038-3118 | 20-Feb-24 |
| GRP 53-64-00-2978-3037 | 20-Feb-24 |
| GRP 53-64-00-2918-2977 | 20-Feb-24 |
| GRP 53-64-00-2897-2917 | 20-Feb-24 |
| GRP 53-64-00-2846-2896 | 20-Feb-24 |
| GRP 53-64-00-2745-2845 | 20-Feb-24 |
| GRP 53-64-00-2643-2744 | 20-Feb-24 |
| GRP 53-64-00-2593-2642 | 20-Feb-24 |
| GRP 53-64-00-2553-2592 | 20-Feb-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 53-64-00-46-89 | 22-Feb-24 |
| GRP 53-64-00-486-588 | 22-Feb-24 |
| GRP 53-64-00-90-134 | 22-Feb-24 |
| GRP 53-64-00-589-668 | 22-Feb-24 |
| GRP 53-64-00-669-745 | 22-Feb-24 |
| GRP 53-64-00-746-790 | 22-Feb-24 |
| GRP 53-64-00-791-819 | 22-Feb-24 |
| GRP 53-64-00-820-881 | 22-Feb-24 |
| GRP 53-64-00-882-943 | 22-Feb-24 |
| GRP 53-64-00-944-1025 | 22-Feb-24 |
| GRP 53-64-00-4971-5028 | 23-Feb-24 |
| GRP 53-64-00-4901-4970 | 23-Feb-24 |
| GRP 53-64-00-4856-4900 | 23-Feb-24 |
| GRP 53-64-00-4810-4855 | 23-Feb-24 |
| GRP 53-64-00-4759-4809 | 23-Feb-24 |
| GRP 53-64-00-4707-4758 | 23-Feb-24 |
| GRP 53-64-00-4664-4706 | 23-Feb-24 |
| GRP 53-64-00-4621-4663 | 23-Feb-24 |
| GRP 53-64-00-4540-4620 | 23-Feb-24 |
| GRP 53-64-00-4459-4539 | 23-Feb-24 |
| GRP 53-64-00-4353-4458 | 23-Feb-24 |
| GRP 53-64-00-4247-4352 | 23-Feb-24 |
| GRP 53-64-00-4212-4246 | 23-Feb-24 |
| GRP 53-64-00-4172-4211 | 23-Feb-24 |
| GRP 53-64-00-5208-5310 | 23-Feb-24 |
| GRP 53-64-00-5105-5207 | 23-Feb-24 |
| GRP 53-64-00-5069-5104 | 23-Feb-24 |
| GRP 53-64-00-5029-5068 | 23-Feb-24 |
| GRP 53-64-00-5763-5837 | 23-Feb-24 |
| GRP 53-64-00-5733-5762 | 23-Feb-24 |
| GRP 53-64-00-5693-5732 | 23-Feb-24 |
| GRP 53-64-00-5629-5692 | 23-Feb-24 |
| GRP 53-64-00-5559-5628 | 23-Feb-24 |
| GRP 53-64-00-5517-5558 | 23-Feb-24 |
| GRP 53-64-00-5472-5516 | 23-Feb-24 |
| GRP 53-64-00-5392-5471 | 23-Feb-24 |
| GRP 53-64-00-5311-5391 | 23-Feb-24 |
| GRP 53-64-00-6128-6153 | 23-Feb-24 |
| GRP 53-64-00-6082-6127 | 23-Feb-24 |
| GRP 53-64-00-6024-6081 | 23-Feb-24 |
| GRP 53-64-00-5964-6023 | 23-Feb-24 |
| GRP 53-64-00-5934-5963 | 23-Feb-24 |
| GRP 53-64-00-5894-5933 | 23-Feb-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 53-64-00-5838-5893 | 23-Feb-24 |
| GRP 53-64-00-6450-6530 | 23-Feb-24 |
| GRP 53-64-00-6369-6449 | 23-Feb-24 |
| GRP 53-64-00-6263-6368 | 23-Feb-24 |
| GRP 53-64-00-6154-6262 | 23-Feb-24 |
| GRP 53-64-00-6574-6616 | 23-Feb-24 |
| GRP 53-64-00-6531-6573 | 23-Feb-24 |
| GRP 54-01 | 21-Jun-22 |
| GRP 54-02 | 24-Jun-22 |
| GRP 54-03 | 24-Jun-22 |
| GRP 54-04 | 21-Jun-22 |
| GRP 54-05 | 24-Jun-22 |
| GRP 54-06 | 21-Jun-22 |
| GRP 54-21 | 24-Jun-22 |
| GRP 54-22 | 21-Jun-22 |
| GRP 54-23 | 21-Jun-22 |
| GRP 54-24 | 21-Jun-22 |
| GRP 56-01 | 21-Jun-22 |
| GRP 56-04 | 21-Jun-22 |
| GRP 56-06 | 24-Jun-22 |
| GRP 56-07 | 21-Jun-22 |
| GRP 56-02 | 5-Jan-24 |
| GRP 56-03 | 5-Jan-24 |
| GRP 56-05 | 5-Jan-24 |
| GRP 57-01-00-1 A.P. Møller - Mærsk-A, 2013-04-17 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-2 A.P. Møller - Mærsk-A_ 2014-04-04 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-3 A.P. Møller - Mærsk-A_ 2015-04-07 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-4 A.P. Møller - Mærsk-B_ 2012-04-18 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-5 A.P. Møller - Mærsk-B_ 2013-04-17 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-6 A.P. Møller - Mærsk-B_ 2014-04-04 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-7 A.P. Møller - Mærsk-B_2015-04-07 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-8 Auriga_ 2015-06-16 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-9 Carlsberg-B_ 2012-03-28 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-10 Carlsberg-B_ 2013-03-27(Redacted) | 21-Jun-22 |

16

| Appendix No. | Attachment Date |
|---|---|
| GRP 57-01-00-11 Carlsberg-B_ 2014-03-26 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-12 Carlsberg-B_ 2015-03-31 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-13 Chr. Hansen_ 2012-12-03 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-14 Chr. Hansen_ 2013-12-02 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-15 Chr. Hansen_ 2014-12-02 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-16 Coloplast-B_ 2012-12-17 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-17 Coloplast-B_ 2013-05-13 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-18 Coloplast-B_ 2013-12-11 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-19 Coloplast-B_ 2014-05-14 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-20 Coloplast-B_ 2014-12-09 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-21 Coloplast-B_ 2015-05-11 (Redacted) | 21-Jun-22 |
| GRP 57-01-00-22 Danske Bank_ 2014-03-24 (Redacted) | 22-Jun-22 |
| GRP 57-01 | 5-Jan-24 |
| GRP 57-01-00-68 Vestas Wind Systems_ 2015-04-07 | 5-Jan-24 |
| GRP 57-01-00-67 Tryg_ 2015-03-30 | 5-Jan-24 |
| GRP 57-01-00-66 Tryg_ 2014-04-09 | 5-Jan-24 |
| GRP 57-01-00-65 Tryg_ 2013-04-14 | 5-Jan-24 |
| GRP 57-01-00-64 TDC_ 2015-08-12 | 5-Jan-24 |
| GRP 57-01-00-63 TDC_ 2015-03-10 | 5-Jan-24 |
| GRP 57-01-00-62 TDC_ 2014-08-13 | 5-Jan-24 |
| GRP 57-01-00-61 TDC_ 2014-03-12 | 5-Jan-24 |
| GRP 57-01-00-60 TDC_ 2013-08-13 | 5-Jan-24 |
| GRP 57-01-00-59 TDC_ 2013-03-13 | 5-Jan-24 |
| GRP 57-01-00-58 TDC_ 2012-08-14 | 5-Jan-24 |
| GRP 57-01-00-57 TDC_ 2012-03-14 | 5-Jan-24 |
| GRP 57-01-00-56 Sydbank_ 2015-03-17 | 5-Jan-24 |
| GRP 57-01-00-55 Pandora_ 2015-03-23 | 5-Jan-24 |
| GRP 57-01-00-54 Pandora_ 2014-03-25 | 5-Jan-24 |
| GRP 57-01-00-53 Pandora_ 2013-03-26 | 5-Jan-24 |
| GRP 57-01-00-52 Novozymes-B_ 2015-03-02 | 5-Jan-24 |

17

| Appendix No. | Attachment Date |
|---|---|
| GRP 57-01-00-51 Novozymes-B_ 2014-03-04 | 5-Jan-24 |
| GRP 57-01-00-50 Novozymes-B_ 2013-03-06 | 5-Jan-24 |
| GRP 57-01-00-49 Novozymes-B_ 2012-03-06 | 5-Jan-24 |
| GRP 57-01-00-48 Novo Nordisk-B_ 2015-03-24 | 5-Jan-24 |
| GRP 57-01-00-47 Novo Nordisk-B_ 2014-03-26 | 5-Jan-24 |
| GRP 57-01-00-46 Novo Nordisk-B_ 2013-03-26 | 5-Jan-24 |
| GRP 57-01-00-45 Novo Nordisk-B_ 2012-03-27 | 5-Jan-24 |
| GRP 57-01-00-44 NKT_ 2015-03-30 | 5-Jan-24 |
| GRP 57-01-00-43 NKT_ 2014-03-31 | 5-Jan-24 |
| GRP 57-01-00-42 NKT_ 2013-03-27 | 5-Jan-24 |
| GRP 57-01-00-40 ICGroup_ 2014-09-30 | 5-Jan-24 |
| GRP 57-01-00-41 ISS_ 2015-04-20 | 5-Jan-24 |
| GRP 57-01-00-39 H. Lundbeck_ 2014-04-01 | 5-Jan-24 |
| GRP 57-01-00-38 H. Lundbeck_ 2013-03-27 | 5-Jan-24 |
| GRP 57-01-00-37 H. Lundbeck_ 2012-04-04 | 5-Jan-24 |
| GRP 57-01-00-36 GN Store Nord_ 2015-03-24 | 5-Jan-24 |
| GRP 57-01-00-35 GN Store Nord_ 2014-03-27 | 5-Jan-24 |
| GRP 57-01-00-34 GN Store Nord_ 2013-03-27 | 5-Jan-24 |
| GRP 57-01-00-32 FLSmidth _ Co_ 2015-03-31 | 5-Jan-24 |
| GRP 57-01-00-33 Forklaringer | 5-Jan-24 |
| GRP 57-01-00-31 FLSmidth _ Co_ 2014-04-02 | 5-Jan-24 |
| GRP 57-01-00-30 FLSmidth _ Co_ 2013-04-11 | 5-Jan-24 |
| GRP 57-01-00-29 FLSmidth _ Co_ 2012-04-10 | 5-Jan-24 |
| GRP 57-01-00-28 DSV_ 2015-03-17 | 5-Jan-24 |
| GRP 57-01-00-27 DSV_ 2014-03-20 | 5-Jan-24 |
| GRP 57-01-00-26 DSV_ 2013-03-27 | 5-Jan-24 |
| GRP 57-01-00-25 DSV_ 2012-03-27 | 5-Jan-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 57-01-00-24 DSNorden_ 2014-04-29 | 5-Jan-24 |
| GRP 57-01-00-23 Danske Bank_ 2015-03-23 | 5-Jan-24 |
| Group 59 Pension Plans(29) | 22-Jun-22 |
| GRP 59-02 | 8-Jan-24 |
| GRP 59-03 | 8-Jan-24 |
| GRP 59-04 | 9-Jan-24 |
| GRP 59-05 | 9-Jan-24 |
| GRP 59-06 | 9-Jan-24 |
| GRP 59-07 | 9-Jan-24 |
| GRP 59-08 | 9-Jan-24 |
| GRP 59-10 | 9-Jan-24 |
| GRP 59-11 | 9-Jan-24 |
| GRP 59-12 | 9-Jan-24 |
| GRP 59-13 | 9-Jan-24 |
| GRP 59-14 | 9-Jan-24 |
| GRP 59-09 | 9-Jan-24 |
| GRP 59-15 | 9-Jan-24 |
| GRP 59-16 | 9-Jan-24 |
| GRP 59-17 | 9-Jan-24 |
| GRP 59-19 | 9-Jan-24 |
| GRP 59-20 | 9-Jan-24 |
| GRP 59-21 | 9-Jan-24 |
| GRP 59-22 | 9-Jan-24 |
| GRP 59-18 | 9-Jan-24 |
| GRP 59-23 | 9-Jan-24 |
| GRP 59-24 | 9-Jan-24 |
| GRP 59-25 | 9-Jan-24 |
| GRP 59-26 | 9-Jan-24 |
| GRP 59-27 | 9-Jan-24 |
| GRP 59-28 | 9-Jan-24 |
| GRP 59-29 | 9-Jan-24 |
| GRP 59-30 | 9-Jan-24 |
| GRP 60-50 | 4-Jan-24 |
| GRP 60-49 | 4-Jan-24 |
| GRP 60-46 | 4-Jan-24 |
| GRP 60-47 | 4-Jan-24 |
| GRP 60-48 | 4-Jan-24 |
| GRP 60-45 | 4-Jan-24 |
| GRP 60-43 | 4-Jan-24 |
| GRP 60-42 | 4-Jan-24 |
| GRP 60-41 | 4-Jan-24 |
| GRP 60-40 | 4-Jan-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 60-39 | 4-Jan-24 |
| GRP 60-01 | 5-Jan-24 |
| GRP 60-15 | 5-Jan-24 |
| GRP 60-14 | 5-Jan-24 |
| GRP 60-13 | 5-Jan-24 |
| GRP 60-12 | 5-Jan-24 |
| GRP 60-11 | 5-Jan-24 |
| GRP 60-10 | 5-Jan-24 |
| GRP 60-09 | 5-Jan-24 |
| GRP 60-08 | 5-Jan-24 |
| GRP 60-07 | 5-Jan-24 |
| GRP 60-06 | 5-Jan-24 |
| GRP 60-05 | 5-Jan-24 |
| GRP 60-04 | 5-Jan-24 |
| GRP 60-03 | 5-Jan-24 |
| GRP 60-02 | 5-Jan-24 |
| GRP 60-22 | 5-Jan-24 |
| GRP 60-21 | 5-Jan-24 |
| GRP 60-20 | 5-Jan-24 |
| GRP 60-19 | 5-Jan-24 |
| GRP 60-18 | 5-Jan-24 |
| GRP 60-17 | 5-Jan-24 |
| GRP 60-16 | 5-Jan-24 |
| GRP 60-29 | 5-Jan-24 |
| GRP 60-28 | 5-Jan-24 |
| GRP 60-27 | 5-Jan-24 |
| GRP 60-26 | 5-Jan-24 |
| GRP 60-25 | 5-Jan-24 |
| GRP 60-24 | 5-Jan-24 |
| GRP 60-37 | 5-Jan-24 |
| GRP 60-36 | 5-Jan-24 |
| GRP 60-35 | 5-Jan-24 |
| GRP 60-34 | 5-Jan-24 |
| GRP 60-33 | 5-Jan-24 |
| GRP 60-32 | 5-Jan-24 |
| GRP 60-31 | 5-Jan-24 |
| GRP 60-30 | 5-Jan-24 |
| GRP 60-23 | 9-Jan-24 |
| GRP 60-38 | 9-Jan-24 |
| GRP 60-44 | 9-Jan-24 |
| GRP 65-01 | 21-Jun-22 |
| GRP 65-02 | 21-Jun-22 |
| GRP 65-03 | 24-Jun-22 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 65-04 | 21-Jun-22 |
| GRP 70-01 | 21-Jun-22 |
| GRP 70-02 | 21-Jun-22 |
| GRP 70-04 | 21-Jun-22 |
| GRP 70-06 | 21-Jun-22 |
| GRP 70-08 | 21-Jun-22 |
| GRP 70-09 | 21-Jun-22 |
| GRP 70-11 | 21-Jun-22 |
| GRP 70-05 | 5-Jan-24 |
| GRP 75-04 | 22-Jun-22 |
| GRP 75-05 | 21-Jun-22 |
| GRP 75-03 | 4-Jan-24 |
| GRP 75-02 | 4-Jan-24 |
| GRP 75-01 | 4-Jan-24 |
| GRP 75-06-00-16-16 | 18-Feb-24 |
| GRP 75-06-00-17-17 | 18-Feb-24 |
| GRP 75-06-00-18-19 | 18-Feb-24 |
| GRP 75-06-00-20-21 | 18-Feb-24 |
| GRP 75-06-00-22-26 | 18-Feb-24 |
| GRP 75-06-00-27-27 | 18-Feb-24 |
| GRP 75-06-00-28-28 | 18-Feb-24 |
| GRP 75-06-00-29-103 | 18-Feb-24 |
| GRP 75-08-00-1-613 | 18-Feb-24 |
| GRP 75-07-00-127-127 | 20-Feb-24 |
| GRP 75-07-00-128-202 | 20-Feb-24 |
| GRP 76-02 | 21-Jun-22 |
| GRP 76-03 | 21-Jun-22 |
| GRP 76-04 | 21-Jun-22 |
| GRP 76-05 | 21-Jun-22 |
| GRP 76-06 | 21-Jun-22 |
| GRP 76-07 | 21-Jun-22 |
| GRP 76-08 | 21-Jun-22 |
| GRP 76-09 | 21-Jun-22 |
| GRP 76-10 | 21-Jun-22 |
| GRP 76-11 | 21-Jun-22 |
| GRP 76-12 | 21-Jun-22 |
| GRP 76-13 | 21-Jun-22 |
| GRP 76-15 | 21-Jun-22 |
| GRP 76-16 | 21-Jun-22 |
| GRP 76-17 | 21-Jun-22 |
| GRP 76-18 | 21-Jun-22 |
| GRP 76-19 | 21-Jun-22 |
| GRP 76-20 | 21-Jun-22 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 76-21 | 21-Jun-22 |
| GRP 76-22 | 21-Jun-22 |
| GRP 76-25 | 21-Jun-22 |
| GRP 76-27 | 21-Jun-22 |
| GRP 76-28 | 21-Jun-22 |
| GRP 76-29 | 21-Jun-22 |
| GRP 76-30 | 21-Jun-22 |
| GRP 76-50 | 5-Jan-24 |
| GRP 76-26 | 5-Jan-24 |
| GRP 76-24 | 5-Jan-24 |
| GRP 76-23 | 5-Jan-24 |
| GRP 77-01 | 21-Jun-22 |
| GRP 77-02 | 21-Jun-22 |
| GRP 77-03 | 21-Jun-22 |
| GRP 21-29-00-309-310 | 18-Feb-24 |
| GRP 21-10-00-447-449 | 18-Feb-24 |
| GRP 21-33-00-316-323 | 18-Feb-24 |
| GRP 21-33-00-315-315 | 18-Feb-24 |
| GRP 21-33-00-302-303 | 18-Feb-24 |
| GRP 21-33-00-324-324 | 18-Feb-24 |
| GRP 21-33-00-325-325 | 18-Feb-24 |
| GRP 21-33-00-326-326 | 18-Feb-24 |
| GRP 21-33-00-327-328 | 18-Feb-24 |
| GRP 21-33-00-329-329 | 18-Feb-24 |
| GRP 21-33-00-330-330 | 18-Feb-24 |
| GRP 21-33-00-331-339 | 18-Feb-24 |
| GRP 21-38-00-181-181 | 18-Feb-24 |
| GRP 21-38-00-182-183 | 18-Feb-24 |
| GRP 21-11-00-112-112 | 18-Feb-24 |
| GRP 21-11-00-113-113 | 18-Feb-24 |
| GRP 21-11-00-114-188 | 18-Feb-24 |
| GRP 21-25-00-386-387 | 18-Feb-24 |
| GRP 21-25-00-388-388 | 18-Feb-24 |
| GRP 21-25-00-389-389 Forside Excel | 18-Feb-24 |
| GRP 21-25-00-389-389 | 18-Feb-24 |
| GRP 21-25-00-390-391 | 18-Feb-24 |
| GRP 21-29-00-311-312 | 18-Feb-24 |
| GRP 21-33-00-340-341 | 18-Feb-24 |
| GRP 21-36-00-289-290 | 18-Feb-24 |
| GRP 21-37-00-84-85 | 18-Feb-24 |
| GRP 21-38-00-195-196 | 18-Feb-24 |
| GRP 21-800-00-1-3 | 20-Feb-24 |
| GRP 21-801-00-1-2 | 20-Feb-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 21-802-00-1-1 | 20-Feb-24 |
| GRP 21-802-00-2-3 | 20-Feb-24 |
| GRP 21-802-01-1-2 | 20-Feb-24 |
| GRP 21-802-01-3-9 | 20-Feb-24 |
| GRP 21-802-01-10-11 | 20-Feb-24 |
| GRP 21-802-01-12-13 | 20-Feb-24 |
| GRP 21-802-01-14 -17 | 20-Feb-24 |
| GRP 21-802-03-1-1 | 20-Feb-24 |
| GRP 21-802-03-2-4 | 20-Feb-24 |
| GRP 21-802-04-1-2 | 20-Feb-24 |
| GRP 21-802-04-3-6 | 20-Feb-24 |
| GRP 21-802-05-1-1 | 20-Feb-24 |
| GRP 21-802-05-2-2 | 20-Feb-24 |
| GRP 21-802-04-7-7 | 20-Feb-24 |
| GRP 21-803-00-1-4 | 20-Feb-24 |
| GRP 21-803-00-105-108 | 20-Feb-24 |
| GRP 21-803-00-5-8 | 20-Feb-24 |
| GRP 21-803-00-9-10 | 20-Feb-24 |
| GRP 21-803-01-1-1 | 20-Feb-24 |
| GRP 21-803-03-1-1 | 20-Feb-24 |
| GRP 21-803-03-2-35 | 20-Feb-24 |
| GRP 21-803-04-1-2 | 20-Feb-24 |
| GRP 21-803-00-11-104 | 20-Feb-24 |
| GRP 21-803-04-3-6 | 20-Feb-24 |
| GRP 21-804-00-1-3 | 20-Feb-24 |
| GRP 21-804-01-1-1 | 20-Feb-24 |
| GRP 21-804-01-2-5 | 20-Feb-24 |
| GRP 21-804-01-6-6 | 20-Feb-24 |
| GRP 21-804-02-1-2 | 20-Feb-24 |
| GRP 21-804-03-1-22 | 20-Feb-24 |
| GRP 21-806-00-1-4 | 20-Feb-24 |
| GRP 21-805-00-1-7 | 20-Feb-24 |
| GRP 21-01 | 20-Feb-24 |
| GRP 21-02 | 20-Feb-24 |
| GRP 21-03 | 20-Feb-24 |
| GRP 21-04 | 20-Feb-24 |
| GRP 21-05 | 20-Feb-24 |
| GRP 21-06 | 20-Feb-24 |
| GRP 21-07 | 20-Feb-24 |
| GRP 21-08 | 20-Feb-24 |
| GRP 21-10 | 20-Feb-24 |
| GRP 21-11 | 20-Feb-24 |
| GRP 21-12 | 20-Feb-24 |

| Appendix No. | Attachment Date |
|---|---|
| GRP 21-13 | 20-Feb-24 |
| GRP 21-14 | 20-Feb-24 |
| GRP 21-15 | 20-Feb-24 |
| GRP 21-15-00-11-11 | 20-Feb-24 |
| GRP 21-16 | 20-Feb-24 |
| GRP 21-19 | 20-Feb-24 |
| GRP 21-20 | 20-Feb-24 |
| GRP 21-17 | 20-Feb-24 |
| GRP 21-18 | 20-Feb-24 |
| GRP 21-21 | 20-Feb-24 |
| GRP 21-22 | 20-Feb-24 |
| GRP 21-23 | 20-Feb-24 |
| GRP 21-24 | 20-Feb-24 |
| GRP 21-25 | 20-Feb-24 |
| GRP 21-26 | 20-Feb-24 |
| GRP 21-27 | 20-Feb-24 |
| GRP 21-28 | 20-Feb-24 |
| GRP 21-29 | 21-Feb-24 |
| GRP 21-34 | 21-Feb-24 |
| GRP 21-36-00-220-220 | 21-Feb-24 |
| GRP 21-39 | 21-Feb-24 |
| GRP 21-41 | 21-Feb-24 |
| GRP 21-40 | 23-Feb-24 |
| GRP 21-38 | 23-Feb-24 |
| GRP 21-37 | 23-Feb-24 |
| GRP 21-36 | 23-Feb-24 |
| GRP 21-33 | 23-Feb-24 |
| GRP 30-805-00-1-5 | 20-Feb-24 |
| GRP 30-803-00-1-5 | 20-Feb-24 |
| GRP 30-803-00-6-10 | 20-Feb-24 |
| GRP 30-804-00-1-5 | 20-Feb-24 |
| GRP 30-804-00-6-10 | 20-Feb-24 |
| GRP 30-01 | 21-Feb-24 |
| GRP 30-02 | 21-Feb-24 |
| GRP 30-04 | 21-Feb-24 |
| GRP 30-12 | 21-Feb-24 |
| GRP 30-11 | 21-Feb-24 |
| GRP 30-09 | 21-Feb-24 |
| GRP 02-02-00-5-6 | 20-Feb-24 |