UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MATTHEW STEIN AND JEROME LHOTE,

    Plaintiffs/Counterclaim-
    Defendants,

      - against –

SKATTEFORVALTNINGEN,

    Defendant/Counterclaim-
    Plaintiff,

      - against –

LUKE MCGEE

    Counterclaim-Defendant.

------------------------------X

**MEMORANDUM AND ORDER**
23 Civ. 2508 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On March 18, 2024, counterclaim-defendant Luke McGee ("McGee") filed a letter motion requesting that the Court issue a letter of request (the "Letter of Request") pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention")[1] as if it were a plain vanilla request. It is anything but. The proposed Letter of Request seeks a substantial number of documents from the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK")[2] who has

---

[1] 23 U.S.T. 2555, T.I.A.S. No. 7444.
[2] As McGee explains, SØIK has been renamed and is now known as National eched for Særlig Kriminalitet ("NSK"), but for purposes of simplicity, the Court refers to that entity as SØIK.

commenced criminal proceedings against McGee and the two plaintiffs herein, which, to this Court's knowledge, remain pending.

Before addressing the viability of McGee's Letter of Request, some brief background is necessary for context. The criminal charges SØIK brought against McGee and the two plaintiffs -- Matthew Stein ("Stein") and Jerome Lhote ("Lhote") -- have their origins in a sprawling fraudulent scheme to deceive the Danish tax authority Skatteforvaltningen ("SKAT") into paying millions of dollars in tax refunds that were in fact never owed. In May 2019, Stein, Lhote, and McGee entered into a settlement agreement with SKAT (the "Agreement" or "Settlement Agreement") to resolve SKAT's claims against them and others arising from the fraudulent tax refund scheme. Of particular relevance here, Section 8(f) of the Agreement requires SKAT, "promptly upon the execution" of the Agreement, to make a number of written representations about Stein, Lhote, and McGee to SØIK.

In March 2023, Stein and Lhote (but not McGee, for reasons that remain unclear) filed this action against SKAT, asserting a single breach of the Settlement Agreement: namely, that SKAT failed to comply with the requirements of Section 8(f) of the Settlement Agreement. Thereafter, SKAT filed counterclaims against Stein,

Lhote, and McGee for failure to pay the amount owed under the Settlement Agreement.

On January 11, 2024, Stein, Lhote, and McGee jointly filed three separate letter motions asking the Court to compel SKAT to comply with the thirty-plus document requests they had made.  See ECF Nos. 73-75.  In a Memorandum and Order dated February 1, 2024, the Court denied those motions, explaining that Stein, Lhote, and McGee's document demands "far exceed, in scope and substance, temporally and otherwise, plaintiffs' pled claim."  ECF No. 88 ("Discovery M&O") at 2.

On March 18, 2024, as mentioned above, McGee (alone) filed a motion asking the Court to authorize far-reaching discovery demands on SØIK, the Danish prosecuting authority that instituted ongoing criminal proceedings against Stein, Lhote, and McGee. Specifically, McGee seeks:

> [(1)] [a]ll written communications, for the period of March 2019 to June 2021, between SKAT and SØIK . . . concerning the Settlement Agreement, including but not limited to: SKAT's obligations related to confidentiality under the Settlement Agreement [and] SKAT's obligations under Section 8(f) of the Settlement Agreement[; (2)] [a]ll written communications, from the period of March 2019 to June 2021, between SKAT and SØIK concerning the obligations of [Stein, Lhote, or McGee] under the Settlement Agreement, including, but not limited to, the alleged performance or non-performance of such obligations[; and (3)] [a]ll written communications, from the period of March 2019 to June 2021, between SKAT and SØIK concerning the negotiation of the Settlement Agreement.

ECF No. 100-1 ("Requests") at 12-13.  McGee also seeks 58 specific documents that have previously "been made available" (presumably by SØIK) "for use in the criminal case in Denmark."[3]  ECF No. 100 ("Mot.") at 2.  McGee further requests that SØIK authenticate numerous documents that were "previously made available by SØIK to Plaintiffs Stein and Lhote" in connection with their criminal case in Denmark, as well as any additional documents produced in response to the requests.  Id. at 4.

The proposed Letter of Request raises serious issues which counsel against authorization by this Court.  The first issue with respect to the proposed Letter of Request arises from this Court's earlier rejection of McGee, Stein, and Lhote's motions to compel discovery from SKAT.  Despite the explicit and detailed rulings in this Court's Discovery M&O, McGee's letter motion did not even acknowledge the existence of that prior decision.  This is surprising in light of the well-established principle that "a court should not authorize the service of letters rogatory if it would not approve of the discovery requests in a purely domestic context."  Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd., No. 11 Civ. 3108 (NRB), 2012 WL 4784632, at *3 (S.D.N.Y. Oct. 4, 2012); see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins.

---

[3] McGee does not explain whether these 58 documents were made available to him or only to Stein and Lhote.

Co., 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012) (citing cases).  The rationale of this principle is obvious: if it is not appropriate to require an entity, and in this case a party, to respond to a discovery demand under domestic rules, it would be problematic to require a foreign entity, and in this case a non-party, to do so through the Hague Convention.

McGee's statement in his reply that he "is in no way seeking to circumvent the Court's prior order" rings hollow.  ECF No. 103 ("Reply") at 2.  For example, in our earlier opinion, we denied a request for documents concerning SKAT's compliance with the Settlement Agreement's confidentiality provision on the basis that the confidentiality provision is not at issue in this case and thus any reliance on it for purposes of obtaining discovery would be "plainly misplaced."  Discovery M&O at 4.  Yet, seemingly undeterred by this ruling, McGee now seeks from SØIK any written communications concerning "SKAT's obligations related to confidentiality under the Settlement Agreement," the very category of documents we already deemed irrelevant.  Requests at 12.  Seeking letters rogatory is not a substitute for re-argument.

The second issue with respect to the proposed Letter of Request was foreshadowed in the Court's Discovery M&O as well, and yet, once again, McGee's letter motion failed to acknowledge the

-5-

issue.  This Court was explicit: "[S]ince [McGee, Stein, and Lhote] are criminal defendants in proceedings commenced by SØIK, [they] may not use this case to obtain discovery for use in the criminal case which may not be available to them in that proceeding." Discovery M&O at 5.  Given the breadth of documents requested from SØIK, the Court is justifiably concerned that the requests are being advanced either with an ulterior motive or in violation of Danish criminal procedure.  McGee's failure to address the issue speaks volumes.  Without question, McGee's requests raise international comity concerns which McGee neither acknowledges nor grapples with.  Cf. Wultz v. Bank of China Ltd., 910 F. Supp. 2d 548, 556 (S.D.N.Y. 2012) ("Ordering the production of the non-public regulatory documents of a foreign government may infringe the sovereignty of the foreign state and violate principles of international comity to a far greater extent than the ordered production of private account information in contravention of foreign bank secrecy laws[.]").

Apart from the fundamental issues just discussed, the Court has additional concerns as well.  To start, there has been no showing as to why it is necessary to obtain discovery from SØIK given that the fulfillment of SKAT's obligations under Section 8(f) of the Settlement Agreement can -- and indeed, must -- be proven entirely by SKAT's own communications with SØIK.  As the

parties are well aware, Section 8(f) requires SKAT to: promptly upon the execution of the Agreement, (1) bring, in writing, the Agreement and its terms to the attention of SØIK; and (2) represent, in writing, that (a) the Agreement reflects [Stein, Lhote, and McGee's] good-faith negotiation, (b) their cooperation may result in SKAT's recovery of additional funds, and (c) the Agreement is in SKAT's best interests.  Thus, it is clear that SKAT's compliance with Section 8(f) -- the central issue of this case -- rises and falls with SKAT's own communications with SØIK, not SØIK's communications with other governmental agencies.  While SØIK's records could assist in proving a negative, that possibility in no way vitiates the affirmative burden SKAT alone must bear. Again, McGee has not shown that it is "necessary and appropriate" to obtain expansive discovery from a foreign prosecuting authority given that such discovery is plainly not essential to the merits of the case.  Skyline Steel, L.L.C. v. PilePro, L.L.C., No. 13 Civ. 8171 (JMF), 2015 WL 13832108, at *1 (S.D.N.Y. Jan. 28, 2015).[4]

In addition, given the breadth and substance of these requests and the role of the requested entity, the delay that would result if the Court granted them is "close to certain."  Id. at *2; see

---

[4] To be clear, SKAT must recognize that its opposition to McGee's requests will, in all likelihood, preclude it from relying on any documents McGee is seeking here to aid in its own defense.

also <u>In re Air Cargo Chipping Servs. Antitrust Litig.</u>, 278 F.R.D. 51, 53 (E.D.N.Y. 2010) ("[T]he outcome of a request pursuant to the [Hague] Convention is by no means certain, and making the request will undeniably result in delays of unknown, and perhaps considerable, duration."). Delay is not an abstract issue in this case. There is a fact discovery cutoff of May 1, 2024, ECF No. 98, and, at least presently, a drop-dead date of December 10, 2024 -- the date by which Stein, Lhote, and McGee agreed SKAT must file the 2021 Affidavit of Confession of Judgment, ECF No. 71. Indeed, McGee asks for a response to the Letter of Request from SØIK within 21 days given the fact discovery deadline. Requests at 3. At this point, the Court is unwilling to jeopardize the looming deadlines -- particularly the drop-dead date that Stein, Lhote, and McGee insisted be imposed -- for purposes of obtaining discovery that McGee has not shown to be necessary and appropriate.[5]

---

[5] McGee's suggestion that his request was timely is disingenuous. In their proposed scheduling order, the parties had agreed that any Hague Convention requests would be filed by March 13, 2024. ECF No. 91. However, counsel for Stein and Lhote (but not McGee) waited to seek an extension of that deadline until March 14, 2024 -- the day <u>after</u> the parties' agreed-upon deadline. ECF No. 96. And, although the Court had failed to realize that the proposed scheduling order was a unique document and accordingly had not timely signed it, the Court's failure to sign it is quite irrelevant to the agreement the parties had previously reached, namely to file any Hague Convention request by March 13, 2024.

Finally, there are other aspects of the proposed Letter of Request that raise concerns and questions.  For example, McGee requests authentication of numerous documents already produced by SØIK to Stein and Lhote, Mot. at 4, but does not explain why these documents were only produced to Stein and Lhote but not to McGee, or why it is that McGee is carrying the laboring oar on those authentication requests.  In a similar vein, there is no explanation as to why the actual plaintiffs -- Stein and Lhote -- are not the ones seeking to authenticate documents if those documents were in fact only produced to them.  McGee likewise fails to explain the nature of these documents or why they are relevant to this case.  In the absence of any such demonstration of relevance, the Court refuses to burden a foreign governmental entity with these numerous authentication issues.[6]  For these additional reasons, the Court denies McGee's requests.

In sum, McGee does not come remotely close to justifying his broad requests on a foreign prosecuting authority that has brought criminal charges against him and the named plaintiffs.  Given their myriad flaws, the Court denies McGee's requests in full and

---

[6] Additionally, McGee fails to explain why these documents need to be authenticated in the first place if they were produced in the context of the criminal prosecution in Denmark.  Of course, there may be an obvious explanation, but McGee certainly does not provide one.

respectfully requests the Clerk of Court to terminate the motion

pending at ECF No. 100.


        **SO ORDERED.**

Dated:    New York, New York
          March 27, 2024

                                        _____
                                           NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE