# McKool Smith

Daniel W. Levy
Direct Dial: (212) 402-9412
dlevy@mckoolsmith.com

1301 Avenue of the Americas
32nd Floor
New York, New York 10019

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

April 19, 2024

By ECF
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Room 2270
New York, New York 10007

      RE:     Stein and Lhote v. Skatteforvaltningen
                  23 Civ. 2508 (NRB)

Dear Judge Buchwald:

      We write on behalf of Matthew Stein and Jerome Lhote in response to SKAT's request for a pre-motion conference concerning an anticipated motion for judgment on the pleadings. ECF No. 116. Stein and Lhote set forth below a summary of the principal arguments that they anticipate making in full briefing in opposition to any such motion.

      **SKAT's Request Is Premature.** A party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The pleadings in this matter are not closed. Stein and Lhote filed their Amended Complaint on March 4, 2024. *See* ECF No. 92. Thereafter, the Court asked various questions regarding the Amended Complaint to which the parties provided answers. ECF Nos. 106, 109, 110, 112, 117. Neither SKAT nor McGee has responded to the Amended Complaint. With no motion concerning the Amended Complaint pending, SKAT's request to move for judgment on the pleadings is premature. *See Williams v. Town of Cheektowaga*, 2022 WL 717865, at *2 n.5 (W.D.N.Y. Mar. 10, 2022).

      **Divisibility Is A Question of Fact.** SKAT argues that Stein and Lhote's claim for rescission of the second phase of the Settlement Agreement is infirm because the agreement is not divisible and, indeed, unambiguously not divisible. ECF No. 116 at 1-2. SKAT is incorrect.

      Whether a contract is divisible is a question of intent, determined from the language of the contract and the circumstances under which it was made. *Sasson v. Mann*, 2019 WL 3532155, at *11 (S.D.N.Y. Aug. 2, 2019). If the parties' intent is not clear from the contract itself, it is a question of fact to be determined after discovery. *Id.* The Settlement Agreement's terms show that it is divisible or that, at the very least, there is a question of fact as to divisibility.

      SKAT points to the releases of its claims against the Covered Parties, including Stein, Lhote, and McGee, in exchange for certain payments, as the primary basis for its contention of indivisibility. But they gravely misinterpret the Settlement Agreement.

The Honorable Naomi Reice Buchwald
April 19, 2024
Page 2

SKAT's release of its claims against the Covered Parties was *not* conditioned on the completion of *all* of the payments required by the Settlement Agreement, as in a standard settlement agreement. Rather, the releases were conditioned on the completion of *only* the Initial Cash Payment. Stated another way, the releases remain effective even if no payments beyond the Initial Cash Payment ever occur. *See* Settlement Agreement § 4(a) (unredacted version filed as ECF No. 52-1); *see* ECF No. 54 at 9 (graphical representation of payments required by Settlement Agreement). Indeed, this distinction between the Settlement Agreement and typical settlement agreements tends to support the divisibility of the Settlement Agreement into two phases -- everything that occurred to obtain the releases and everything that occurred after.

The obligations of Stein, Lhote, and McGee *after* the making of the Initial Cash Payment included primarily additional payments and cooperation. *See* Settlement Agreement §§ 2 (b, d, e); ECF No. 54 at 9. All of the obligations of Stein, Lhote, and McGee were to be performed on a schedule provided for under the Settlement Agreement that stretched long after the Initial Cash Payment and the triggering of the releases. *See* Settlement Agreement §§ 1(r), 2(d), 2(e)(i), 7. For its part, SKAT was required to communicate with the Danish prosecutor in a prescribed manner after execution of the Settlement Agreement. Settlement Agreement § 8(f). The temporal separation of the parties' obligations -- matters triggered by the Initial Cash Payment and matters occurring after -- further supports the divisibility of the Settlement Agreement.

Either the Settlement Agreement is divisible as a matter of law or, at the very least, the parties' intent in dividing the obligations into two phases, with separate consideration exchanged for each, is a question of fact that cannot properly be resolved on the pleadings. *See Rekor Sys., Inc. v. Loughlin*, 2020 WL 6898271, at *4 (S.D.N.Y. Nov. 23, 2020).

**SKAT Misinterprets the "Absolute and Unconditional" Language.** SKAT further argues that Stein and Lhote's claim for rescission must be rejected because the obligation to pay the Final Settlement Amount is "absolute and unconditional." ECF No. 116 at 2. The cases that SKAT cites generally involve payment for goods or services that have *already* been provided, thus the party seeking to enforce the "absolute and unconditional" language had not breached. *See, e.g.*, *Xerox Corp. v. Bus-Let, Inc.*, 2019 WL 2514855, at *4 (W.D.N.Y. June 18, 2019). This situation is different, making those cases inapplicable.

Beyond that, what SKAT ignores here are provisions of the very same paragraph that render the payment obligation *not* absolute and *not* unconditional. Section 2(c) makes the "[t]he Covered Parties' obligation to pay the Final Settlement Amount . . . absolute and unconditional." At the end of the same paragraph, however, the obligation to pay is made enforceable only against the Covered Parties' Designees (three of the dozens of Covered Parties) and, even then, eliminates all of the remedies by which SKAT might proceed against those three other than one sole remedy. *See* Settlement Agreement § 2(c); *see also id.* § 5(c). These later provisions cannot be written out of the contract. *See In re Atlantic Computer Sys. Inc.*, 173 B.R. 844, 853 (S.D.N.Y. Aug. 15, 1994) ("absolute and unconditional" "taken alone [may] be clear on its face," but "viewed in the context of the entire agreement" may draw "considerable doubt").

The Honorable Naomi Reice Buchwald
April 19, 2024
Page 3

Similarly, the Covered Parties' obligation to pay the Final Settlement Amount is not unconditional because it is conditioned on a series of obligations that must be satisfied before the Final Settlement Amount is due.  For example, the Final Settlement Amount is conditioned on a determination of the True-Up Amount.  *See* Settlement Agreement §§ 1(q); 2(e)(iii).  And the sole remedy for the Covered Parties' failure to pay the Final Settlement Amount is itself conditioned on the completion of the Initial Cash Payment.  *See id.* § 2(c).

Read together, these conditions "undercut[] the unconditionality" of the language.  *In re Atlantic*, 173 B.R. at 853; *see Octagon Asset Mgmt., LLC v. Morgan*, 2015 WL 314700, at *2 (Sup. Ct. N.Y. Cty. Jan. 16, 2015) ("unconditional or unequivocal" promise to pay is undermined when payment is conditioned on a preceding event).  Stein and Lhote's rescission claim cannot be resolved from the face of the pleadings.  *See In re Atlantic*, 173 B.R. at 854.

**The Affidavit of Confession of Judgment Is Unenforceable.**  Finally, SKAT seeks judgment on the enforceability of a confession of judgment executed by a non-New York resident.  ECF No. 116 at 2.  They rely on *Express Trade Capital, Inc. v. Horowitz* as support for their argument.  *Id.*; 2020 WL 5819748, *2 (Sup. Ct. N.Y. Cty. Sept. 30, 2020), *aff'd*, 198 A.D.3d 529 (1st Dep't 2021).

The reliance on *Express Trade* is misplaced for several reasons.  The simplest is that *Express Trade* concerned confessions of judgment that were executed *prior* to the 2019 amendment to CPLR 3218, unlike the one here, which was executed in 2021, well after the amendment.  *See Express Trade Cap.*, 2020 WL 5819748, at *2.

*Express Trade* also involved the filing of an action under CPLR 3213, a unique procedural mechanism that does not exist in federal court.  *See id.*  Indeed, a New York state court that has interpreted the 2019 amendment to CPLR 3218 in the context of an action under CPLR 3213 denied the entry of a confession of judgment that was executed by a non-New York resident.  *See Torres v. Monsalve*, 2021 N.Y. Misc. LEXIS 29744, at *1, *3 (Sup. Ct. Queens Cty. Mar. 31, 2021).  Notably, that court did *not* find that authorizing entry of the confession of judgment in "Queens County, New York" was a waiver of the residency requirement imposed by the 2019 amendment to CPLR 3218.  *Id.* at *3.

The suggestion that the 2021 Affidavit of Confession of Judgment, as it relates to Lhote and McGee, waived any residency requirement" is also misplaced.  If the limitation of Section 3218 could be waived as a matter of law, a proposition that *no* court has ever adopted, whether any waiver that could be found was knowing and intelligent, what SKAT itself knew about the change in law at the time of the renewed affidavits of confession of judgment, and whether it knowingly accepted the risk that the 2021 Affidavit of Confession of Judgment might be invalid, present classic questions of fact that cannot be resolved on a Rule 12 motion.

\*    \*    \*

Counsel is available for a pre-motion conference by telephone at any time and for an in-person conference on or after April 29.

The Honorable Naomi Reice Buchwald
April 19, 2024
Page 4

                        Respectfully submitted,

                             /s/

                        Daniel W. Levy