# McKool Smith

Daniel W. Levy
Direct Dial: (212) 402-9412
dlevy@mckoolsmith.com

1301 Avenue of the Americas
32nd Floor
New York, New York 10019

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

December 26, 2024

By ECF
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Room 2270
New York, New York 10007

      RE:    <u>Stein and Lhote v. Skatteforvaltningen</u>
                   23 Civ. 2508 (NRB)

Dear Judge Buchwald:

      We write on behalf of Plaintiffs Matthew Stein and Jerome Lhote to seek the Court's assistance in resolving disputes regarding requests for admission ("RFAs") and interrogatories served on Defendant SKAT. The disputes remain unresolved after conferring in good faith.

      Defendant Luke McGee served substantially identical RFAs and interrogatories. To avoid filing a duplicative pre-motion conference letter, Plaintiffs join in the arguments raised by McGee in his letter. Exhibit A contains the relevant source material, organized according to the manner in which the issue are presented in Plaintiffs' and McGee's letters.

      **Applicable Law Regarding Requests for Admission.** Several of the disputes relate to RFAs. The purpose of RFAs is to streamline the trial so that proof regarding uncontested issues need not be offered. Failure to properly respond to RFAs wastes court time and effort. *See, e.g., Diederich v. Dep't of Army*, 132 F.R.D. 614, 616 (S.D.N.Y. 1990).

      To preclude unnecessary factual disputes, Rule 36(a)(4) requires a responding party to "specifically deny [the RFA] or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Denials "must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Id.*

      An answering party may respond that it cannot admit or deny an RFA but *only* "if [it] states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.*; *see In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 2023 WL 1879521, at *3 (S.D.N.Y. Feb. 10, 2023). A party must elaborate on the contours of its inquiry and state *why* it cannot admit or deny the RFA in order to prevent a party from initially failing to make a reasonable inquiry only to create a factual dispute later on. *See Holloway v. City of N.Y.*, 2023 WL 6614599, at *5 (E.D.N.Y. Sept. 28, 2023).

      **SKAT's Knowledge of the 2019 Amendment to CPLR 3218.** The Court has suggested that the knowledge of Lhote and McGee about the enforceability of the 2021 Affidavit of

The Honorable Naomi Reice Buchwald
December 26, 2024
Page 2

Confession of Judgment may be relevant to determining whether they somehow waived the protections of CPLR 3218 for non-residents. ECF No. 87 at 15-20. Lhote and McGee answered deposition questions on this subject and did not assert any privilege.

If Lhote and McGee's knowledge of the change in CPLR 3218 and any impact on the enforceability of the 2021 Affidavit of Confession of Judgment is relevant, then SKAT's knowledge of the very same issues is also relevant. For example, if SKAT *did know* of the amendment to CPLR 3218, then it would have knowingly accepted the risks that the renewed confession of judgment might not be enforceable. SKAT might have good reason to remain strategically silent on this subject in June 2021 when the renewed affidavit of confession of judgment was provided. In the weeks leading up to it, Stein, Lhote, and McGee had been indicted in Denmark and, shortly after, counsel began pressing SKAT to explain how it had complied with Section 8(f). *See* ECF No. 94 at ¶¶ 87-89. An honest answer from SKAT, which would have exposed its breach of Section 8(f), could have fundamentally upset, for example, whether Stein, Lhote, or McGee would agree to re-execute a confession of judgment.

Conversely, if SKAT *did not know* that the enforceability of the 2021 Affidavit of Confession of Judgment was in question because of a change in law, for example, because of a failure by its outside counsel, then relief to SKAT associated with its enforceability might be foreclosed because mistakes of law do not entitle a party to equitable relief. *See Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 536 (2d Dep't 1986).

At its Rule 30(b)(6) deposition, SKAT testified that it had no knowledge of the relevant change in law and that any such knowledge would be possessed only by its outside counsel. SKAT further explained that the renewed confession of judgment was not even something it would typically receive and that, in substance, its outside counsel handled it entirely. *See* 5/31/24 Tr. at 360-64 (attached as Exh. B). Because SKAT had no knowledge about the change in law, Plaintiffs are in the dark about *why* SKAT did not know.

To resolve an important issue for which there is a substantial need for an answer and only one source of information, Plaintiffs served five straightforward RFAs about what SKAT's counsel knew prior to execution of the 2021 Affidavit of Confession of Judgment; McGee served three of the same. *See* Exh. A, § A. The purpose was to determine, for example, whether SKAT's outside counsel either knew, or did not, that CPLR 3218 had been amended and whether they knew, or did not, that the amendment might impact enforceability of the renewed confession of judgment. The RFAs are unambiguous and squarely present the issue for resolution.

SKAT refused to respond to these RFAs on the basis that they seek privileged information, claiming that they "concern[] SKAT's counsel's legal knowledge and assessment of issues relevant to this litigation, which is an improper and privileged subject." Exh. A, § A. SKAT testified that it had no knowledge of anything related to the 2021 Affidavit of Confession of Judgment; only its counsel did. *See* Exh. B at 364. As such, there is no attorney-client communication implicated and, at most, SKAT can assert a work-product objection in responding to what is, in essence, a yes or no question. SKAT was not asked to elaborate on what assessment, if any, SKAT's outside counsel made of the change in law.

SKAT cannot testify that only its counsel has knowledge of a relevant fact and then refuse to admit that knowledge on the basis of privilege. *See, e.g.*, *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (attorney's knowledge can be imputed to counsel and discoverable); *Tucker v. Am. Int'l Grp., Inc.*, 2012 WL 314866, at *15 (D. Conn. Jan. 31, 2012) (granting motion to compel concerning attorney's participation in settlement negotiations because attorney's knowledge imputed to plaintiff); *Pereira v. United Jersey Bank*, 1997 WL 773716, at *5-6 (S.D.N.Y. Dec. 11, 1997) (denying motion for protective order because defense could only be assessed by examining communications with counsel). The Court should require an answer here.

**SKAT's Obligations Under Phase II of the Settlement Agreement.** Plaintiffs allege that the Settlement Agreement is divided into two phases. *See* ECF No. 94 at ¶ 45. In general, Phase I required that the Covered Parties make an Initial Cash Payment in exchange for SKAT's release of all claims. *See id.* at ¶¶ 46-52. Phase II required that Plaintiffs and McGee make further payments and fully cooperate with SKAT in exchange for SKAT giving prompt, written notice to SØIK of specific matters set out in Section 8(f). *Id.* at ¶¶ 53-69. SKAT denies that the Settlement Agreement divides the parties' obligations into two phases. *See* ECF No. 122 at ¶ 53.

To narrow this for trial, Plaintiffs asked via interrogatory to have SKAT identify all contractual obligations to be performed by it after receipt of the Initial Cash Payment. *See* Exh. A, § B. SKAT responded that the interrogatory is "premised on an incorrect understanding of the Settlement Agreement" and that no obligations under the settlement are "specifically triggered" by receipt of the Initial Cash Payment. This is unresponsive. The interrogatory does not ask what provisions "triggered" what compliance. It simply asks for an explanation of what SKAT was required to do *after* receipt of the Initial Cash Payment.

Where an interrogatory "is relevant (and precise) and will clarify" an issue, such as what terms of a contract a party contends create an obligation or expectation, a party does not have "a basis to answer a different question than posed" in order to avoid the question. *SEC v. Ripple Labs, Inc.*, 2021 WL 5336970, at *1 (S.D.N.Y. Oct. 21, 2021). SKAT should be able to identify its obligations under the Settlement Agreement after receipt of the Initial Cash Payment.

**SKAT's Communications with SØIK.** Finally, it remains crucial for Plaintiffs to understand how, and to what extent, SKAT communicated with SØIK about the Settlement Agreement. Accordingly, Plaintiffs propounded Interrogatory No. 6 seeking to understand a telephone call between SØIK and SKAT concerning a letter that SØIK had sent to SKAT in February 2021. *See* Exh. A, § C. This letter was the fourth in a series of letters that SØIK began to send in January 2021 in order to gather information about the Settlement Agreement and its terms. *See* Exh. C. These letters began long after SKAT was required to communicate to SØIK about the Settlement Agreement in mid-2019. Nearly a year after the letter, SØIK informed SKAT that it no longer needed a response because of a phone call that occurred. SKAT refused to provide information about the phone call because it occurred in 2022. Plaintiffs understand the Court's prior ruling on the period of discovery. *See* ECF NO. 88 at 2. They submit that discovery, in the form of an answer to one interrogatory, about a series of communications that began long before June 2021 and continued thereafter, by which SKAT and SØIK were communicating about materials provided as part of Plaintiffs' and McGee's cooperation under the Settlement Agreement is appropriate and crucial to Plaintiffs' and McGee's case.

The Honorable Naomi Reice Buchwald
December 26, 2024
Page 4

*   *   *

  Counsel is available for a pre-motion conference by telephone or in-person at the Court's convenience.

Respectfully submitted,

/s/

Daniel W. Levy

Attach. (Exh. A-C)

Cc: All Counsel (by ECF; w/attach.)