

**Daniel Newman**
Partner
Direct Line: 305-373-9467
Direct Facsimile: 305-995-6437
Daniel.Newman@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

One Biscayne Tower
2 South Biscayne Blvd.  |  21st Floor
Miami, FL 33131
T: 305.373.9400  F: 305.373.9443
nelsonmullins.com

December 26, 2024

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE:  *Stein et al. v. Skatteforvaltningen*, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

We write on behalf of Third-Party Defendant, Luke McGee ("McGee"), to raise several discovery disputes arising from SKAT's responses to Requests for Admission ("RFAs") and Interrogatories that McGee served upon Third-Party Plaintiff, Skatteforvaltningen ("SKAT"). The referenced discovery is substantially identical to that Plaintiffs served. McGee joins in the arguments they set out in their pre-motion conference letter and refers to Exhibits A and B thereto.

**Residence for Purposes of CPLR 3218.**  One issue in this action is the enforceability of the 2021 Affidavit of Confession of Judgment against McGee and Plaintiff Lhote under CPLR 3218 because neither resided in New York when it was executed. Due to an August 2019 change in law, an affidavit of confession of judgment could not be filed with respect to a person not residing in New York. *See, e.g.*, ECF No. 94 at ¶¶ 9-12.

McGee and Plaintiffs, in responding to SKAT's discovery requests, produced documents and responded to deposition questions regarding their residences during the periods relevant to the claims and defenses in this action. To narrow the issues for trial, McGee and Plaintiffs served SKAT with a series of RFAs concerning various residence-related facts. *See* Exh. A, § D. For example, they asked SKAT to admit that, as of June 8, 2021 (the day before the 2021 Affidavit of Confession of Judgment was executed), Lhote and McGee each maintained a permanent place of abode in Florida and that, as of the same date, there is no evidence that either intended to maintain a permanent place of abode in New York. *Id.*

With respect to each of these RFAs, SKAT responded largely that it "den[ied] knowledge or information sufficient to admit or deny" the request. In a few instances, it combined that response with an admission that McGee or Plaintiffs had produced in discovery documents "purport[ing] to be," for example, a driver's license, a vehicle registration, or other residence-related documents. *See id.* SKAT did not explain why it would, or how it could, contest the authenticity of these documents.

SKAT's responses here were improper. Despite having had the full opportunity to take discovery about Lhote and McGee's residences and about the authenticity of documents produced,

The Honorable Naomi Reice Buchwald
December 26, 2024
Page 2

SKAT avoided answering these RFAs and failed to comply with Rule 36's requirement to state in detail why it is unable to admit or deny the request and explain what reasonable efforts it made to try to accurately respond. Applicable law requires a non-evasive response that complies with Rule 36. *See, e.g.*, *Shim-Larkin v. City of N.Y.*, 2020 WL 5534928, at *13 (S.D.N.Y. Sept. 14, 2020) (failure to answer or evasive answers fail discovery obligations and warrant relief under Rule 37). The Court should accordingly find that SKAT's answers to these RFAs do not comply with Rule 36 and order that the matters be deemed admitted or, at the very least, direct SKAT to provide a proper response. *See* Fed. R. Civ. P. 36(a)(6). McGee respectfully submits that putting on evidence that can and should be addressed through admissions is not an efficient use of the parties' and the Court's resources.

**SKAT's NCB Allegations.** As part of its allegations about the True-Up amount, SKAT alleges that North Channel Bank ("NCB") had "little to no other business" in 2014 and 2015 and as a result, dividends paid by NCB, if any, to Stein, Lhote, and McGee should be construed for purposes of its claims as fees paid to them in another form and repaid by them to SKAT. *See* Exh. A, § E. The Settlement Agreement, however, is silent regarding fees paid to NCB. A different instrument, the Letter Agreement, executed by the parties at the same time, speaks comprehensively to the manner in which certain fees paid to NCB are to be repaid to SKAT; and it requires that they be repaid only upon the sale of NCB, which has not occurred. *See id.*

McGee and Plaintiffs propounded interrogatories and an RFA seeking to have SKAT explain the basis for its allegations given the Letter Agreement does not support such claims. *See id.* SKAT's responses were deficient and failed to address or even mention the Letter Agreement. *See id.*

The Settlement Agreement does not refer to or address NCB or any fees paid to NCB precisely because the Letter Agreement provides that the payment of fees related to NCB is conditioned on the sale of NCB. *See* Letter Agreement § 7. It further provides that the payment of fees related to NCB is not considered part of the Final Settlement Amount "or any other payment required under the Settlement Agreement." *Id.* The Letter Agreement further states that it "constitutes the entire agreement" as it relates to NCB. *Id.* § 11. There is no dispute that NCB remains unsold.

Despite the foregoing, SKAT alleges that it is nonetheless entitled to fees that were paid to NCB. *See* ECF No. 48 at ¶¶ 158-160. Plaintiffs and McGee explained to SKAT that these allegations are frivolous and asked SKAT to provide an explanation of its good faith basis for its contentions; but SKAT has never done so. The interrogatories and RFA required SKAT to do so.

Interrogatories are intended to expedite trial and narrow the scope of the issues. Accordingly, "conclusory statements" "provide little useful fact-based information which belies the purpose of [ROGs] in the first instance." *Edebali v. Bankers Std. Ins. Co.*, 2016 WL 4621077, at *7 (E.D.N.Y. Sept. 6, 2016) (requiring supplemental responses to ROGs). SKAT's failure to fully respond to these interrogatories is contrary to the Rules of Civil procedure, defeats the purpose of interrogatories, and improperly deprives Plaintiffs and McGee of the ability to eliminate SKAT's pursuit of unsupportable factual and legal theories prior to trial.

Relatedly, SKAT alleges that NCB "had little to no other business" in 2014 and 2015 other than participating in the "Danish fraud scheme," ostensibly to argue that dividends paid by NCB were really just fees paid as part of the alleged fraud. ECF No. 48 at ¶ 158. This is false. In May 2024, SKAT was provided with NCB's financial statements from 2014 and 2015 as a courtesy. The financial statements show that in 2014 and 2015, NCB generated significant income from financing the purchase of life insurance policies, a line of business that had nothing to do with the fraud alleged by SKAT. The financial statements also show that NCB had significant assets related to its life insurance business. In addition, McGee and Plaintiffs are aware that SKAT has access to extensive information concerning NCB.

To resolve this, McGee and Plaintiffs requested that SKAT admit that NCB generated more than €1 million in revenue in 2014 and 2015. *See* Exh. A, § E. SKAT responded that it lacked knowledge or information sufficient to respond but failed to explain how that could be given its possession of records it could review to determine the amount of revenue NCB generated during the relevant period.

SKAT's response does not comply with Rule 36. *See* Plaintiffs' Letter, dated Dec. 26, 2024, at 1-2 (citing cases regarding Rule 36 requirements). It should be required to answer this straightforward RFA.

**SKAT's Compliance with the Settlement Agreement.** Central to this dispute is whether SKAT breached the Settlement Agreement by failing to comply with its obligation under Section 8(f) to: (a) promptly upon execution of the agreement (b) bring, in writing, the agreement and its terms to the attention of SØIK; and (c) represent, in writing, that the agreement reflects the Covered Parties' good-faith negotiation, their cooperation may result in SKAT's recovery of additional funds, and the agreement is in SKAT's best interests. *See* ECF No. 94 at ¶ 70.

SKAT testified that one way that it believes that it complied was by its correspondence with SØIK "[i]n the days up to the final execution" of the Settlement Agreement. Exh. B at 110:19-112:20. Correspondence that occurred prior to the execution of the Settlement Agreement, however, could not have occurred "promptly upon execution" as required by Section 8(f). *See* ECF No. 94 at ¶ 70.

McGee and Plaintiffs requested that SKAT admit that three e-mails sent *prior* to execution of the Settlement Agreement and on which SKAT relies as a form of compliance with Section 8(f), were not sent promptly upon execution of the Settlement Agreement. *See* Exh. A, § F. This should be a simple admission that would narrow the issues for trial. SKAT instead admitted only that the date of the e-mails is prior to the date of the Settlement Agreement. This is insufficient. SKAT cannot reformulate the RFA to answer a question that was not posed and to avoid an inconvenient answer.

It is obvious from the face of the e-mails that they were not sent promptly upon execution of the Settlement Agreement. These RFAs are "capable of a simple yes or no answer" and SKAT should be required to so respond. *See Diederich v. Dep't of Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) (defendants obligated to respond to RFAs despite objection that documents "speak for themselves").

\*   \*   \*

The Honorable Naomi Reice Buchwald
December 26, 2024
Page 4

      We are available for a pre-motion conference by telephone or in-person at the Court's convenience.

                                                   Very truly yours,

                                          ***/s/ Daniel S. Newman***
                                          Daniel S. Newman