

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

December 31, 2024

BY ECF

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    <u>Stein et al. v. Skatteforvaltningen</u>, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

    We write on behalf of defendant/counterclaim plaintiff Skatteforvaltningen ("SKAT") to respond to the letter motion (ECF No. 138) filed by counterclaim defendant Luke McGee requesting a pre-motion conference regarding various discovery disputes concerning fact discovery, which letter motion plaintiffs/counterclaim defendants Matthew Stein and Jerome Lhote (collectively with McGee, "Movants") join. (*See* ECF No. 136 at 1.)

    As an initial matter, SKAT notes that Movants raise these fact discovery disputes over two months after the parties reached an impasse in their meet and confer process regarding, among other things, the residence and Section 8(f) compliance issues. The Court should deny the request with respect to these issues as untimely.

**<u>Residence for Purposes of CPLR 3218.</u>**

    Movants' "series of RFAs concerning various residence-related facts" are irrelevant, even assuming that the residency requirement in the 2019 CPLR 3218 amendment applied to this case, because they do not go to whether Lhote or McGee maintained a New York residence. "Notably, the amendment to CPLR 3218 uses the term 'residence' rather than 'domicile' in defining the debtors that may confess judgments under the statute." Hon. Mark C. Dillon, Practice Commentaries, CPLR C3218:3 (2021). That is significant because "[a] party may have multiple residences, but only one fixed domicile to which the party always returns." *Id.* Thus, where "a New York debtor has residences in multiple states, CPLR 3218 may . . . continue to be

used by filing the debtor's affidavit in a designated county within New York where a residence exists." (*Id.*)

Movants' "residence-related" RFAs confuse "residence," as used in CPLR 3218, with the concept of a domicile. (*See e.g.*, ECF No. 136-1 at 10 ("Admit that as of June 8, 2021, there is no evidence that Lhote intended to maintain a permanent place of abode in the State of New York."); *id.* ("Admit that, as of June 8, 2021, Lhote maintained a permanent place of abode in the State of Florida.").) Where Lhote's or McGee's children were enrolled in school, where their cars were registered, or which State issued their driver's licenses have no bearing on whether they maintained a New York residence—as McGee in fact did in that he owned a home, *i.e.*, a residence, in Suffolk County on June 8, 2021. Further, Movants' assertion that SKAT's responses to these RFAs were inadequate is unfounded. (ECF No. 138 at 1-2.) These RFAs seek admissions about matters far beyond SKAT's knowledge—for example, where Lhote's children were enrolled in school, where Lhote's vehicle was registered, or what Movants intended. (*See* ECF No. 136-1 at 10-11.) Accordingly, SKAT "admit[ted] only that Plaintiffs have produced [] document[s] that purport[] to be" what Movants say they are. (*Id.*)

**SKAT's NCB Allegations.**

Movants' arguments about SKAT's responses to their discovery requests concerning SKAT's claims for North Channel Bank ("NCB") fees from the fraud seek to litigate the merits of SKAT's claims. (*See* ECF No. 138 at 2-3 (citing disagreements with SKAT's allegations).)

For instance, Movants propounded interrogatories asking SKAT to "[d]escribe, in detail, the basis for [its] allegations" concerning the NCB fees. (*See, e.g.*, ECF No. 136-1 at 13.) In response, SKAT explained its contention that the NCB fees count as "Net Proceeds," as defined in the agreement, which Movants are obligated to pay to SKAT, to the extent they were received by any Covered Party, including Movants. SKAT's answers were not "deficient," as Movants argue, because SKAT did not "mention the Letter Agreement." (ECF No. 138 at 2.) In answering the interrogatories, SKAT was not required to adopt Movants' interpretation that the Letter Agreement "speaks comprehensively to the manner in which certain fees paid to NCB are to be repaid to SKAT." (*Id.*) SKAT's contention is that Movants are required to repay SKAT for the NCB fees derived from the fraud to the extent they received them, because they are included in the definition of Net Proceeds in the agreement. Indeed, as set forth in SKAT's interrogatory response, the agreement provides more than once that the Covered Parties are required to pay SKAT amounts received "directly or indirectly" from the fraud, which SKAT contends encompass the NCB fees. (ECF No. 136-1 at 13.)

Further, Movants' argument that SKAT's response to its RFA concerning NCB's 2014 and 2015 revenue "does not comply with Rule 36" is misleading. (ECF No. 138 at 3.) Movants did not, as they assert, just ask SKAT to admit "that NCB generated more than € 1 million in revenue in 2014 and 2015." (*Id.*) Rather, they asked that SKAT admit that NCB generated such revenue "as a result of its activities associated with the financing of life insurance policies." (ECF No. 136-1 at 14.) The NCB financial documents that Movants provided do not break down NCB's revenue to a degree that SKAT can admit that NCB "generated more than €1 million in revenue in both 2014 and 2015 *as a result of* its activities associated with the financing of life

insurance policies," thus SKAT responded that it lacks knowledge or information sufficient to admit or deny the RFA.  (*Id.* (emphasis added).)

**SKAT's Compliance with Section 8(f) of the Settlement Agreement.**

Under Section 8(f) of the Settlement Agreement, SKAT was obligated "promptly upon the execution of" the Settlement Agreement to make certain limited representations to SØIK, "in writing," concerning the agreement, its negotiation, and terms.  SKAT contends that one of the ways it performed its obligation was by sending Section 8(f) to SØIK just before the agreement was executed.  Movants' RFAs ask SKAT to admit that correspondence "was not sent promptly upon execution of the Settlement Agreement."  (ECF No. 136-1 at 17.)  SKAT denies that the correspondence at issue was "not sent promptly upon execution of the Settlement Agreement," such that it could not fulfill SKAT's obligation under Section 8(f).  As stated in its responses to Movants' RFAs, however, SKAT admits that the correspondence was sent before the Settlement Agreement was executed on May 28, 2019.  As the dates of the correspondence are uncontroversial, Movants' request—rather than "narrow the issues for trial" (ECF No. 138 at 3)—amounts to a waste of the parties' and the Court's time and resources.

\* \* \*

To the extent the Court grants Movants' request for a pre-motion conference, SKAT notes that its counsel will be on trial in the related MDL proceeding before the Honorable Lewis A. Kaplan, *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-02865 (LAK), starting on January 7, 2025.  Judge Kaplan has informed the parties to the trial that the trial will proceed on Monday through Thursday each week until the trial ends.

Respectfully submitted,

/s/ Marc A. Weinstein___
Marc A. Weinstein

cc: all counsel of record (via ECF)