LETTER TO THE HONORABLE
NAOMI REICE BUCHWALD,
dated January 7, 2025

# Exhibit E

4911-8942-9257

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------
                                  )
MATTHEW STEIN and JEROME LHOTE,   )
                                  )
         Plaintiffs,              )
                                  )
    -against-                     )
                                  ) Case No.
SKATTEFORVALTNINGEN,              ) 1:23-cv-02508-NRB
                                  )
         Defendant/Counterclaim-  )
         Plaintiff,               )
                                  )
    -against-                     )
                                  )
LUKE MCGEE,                       )
                                  )
         Counterclaim-Defendant.  )
---------------------------------)


VIDEOTAPED DEPOSITION UNDER ORAL EXAMINATION OF
JEROME LHOTE
DATE: May 16, 2024


REPORTED BY: CHARLENE FRIEDMAN, CCR, RPR, CRR

Jerome Lhote - May 16, 2024

2 (Pages 2 to 5)

Page 2

        TRANSCRIPT of the deposition of the
JEROME LHOTE, called for Oral Examination in the
above-captioned matter, said deposition being taken by
and before CHARLENE FRIEDMAN, a Notary Public and
Certified Court Reporter, a Registered Professional
Reporter, and a Certified Realtime Reporter, at HUGHES,
HUBBARD & REED, LLP, One Battery Park Plaza, New York,
New York, on May 16, 2024, commencing at approximately
9:06 in the morning.

Page 3

APPEARANCES:

MCKOOL SMITH
1301 6th Avenue
32nd Floor
New York, New York  10019
(212) 405-9400
BY:   DANIEL LEVY, ESQ.
Attorneys for Matthew Stein, Jerome Lhote

HUGHES, HUBBARD & REED, LLP
One Battery Park Plaza
New York, New York  10004
(212) 837-6000
BY:   MARC WEINSTEIN, ESQ.
      KIRAN ROSENKILDE, ESQ.
      NEIL OXFORD, ESQ.
Attorneys for Skatteforvaltningen

NELSON, MULLINS, RILEY & SCARBOROUGH
330 Madison Avenue
27th Floor
New York, New York  10017
(212) 413-9000
VIA ZOOM
BY:   DANIEL NEWMAN, ESQ.
      EDGAR NEELY, ESQ.
Attorneys for Luke McGee

ALSO PRESENT:   DIMITRY ZVONKOV, Video Operator
BY ZOOM:        DUSTIN P. SMITH
                MIKKEL FAN☐
                ANNE SOFIE BITSCH
                * * * * *

Page 4

              I N D E X
WITNESS NAME                              PAGE
JEROME LHOTE
     By Mr. Weinstein                     7, 89
     By Mr. Levy                          85
              * * * * *
           E X H I B I T S
EXHIBIT NO.    DESCRIPTION                PAGE
19             Meeting minutes            46
17             E-mail chain               51
              * * * * *

Page 5

              - - -
         Deposition Support Index
              - - -

Direction to witness not to answer
Page                    Line
None

Request for production of documents
Page                    Line
None

Questions marked
Page                    Line
None

Page 14

1  Merkensteijn.  It's M-E-R-K-E-N-S-T-E-I-J-N,
2  the Third, actually, if you want the full.
3  Then Richard Markowitz, so that's
4  M-A-R-K-O-W-I-T-Z, I believe.  Matthew Stein,
5  Stein, S-T-E-I-N, and myself, Jerome Lhote.
6       Q    Who were the principals or partners
7  of Maple Point?
8       A    Matthew Stein, myself, Jerome
9  Lhote, and Luke McGee.
10      Q    Okay.  We're going to hand you what
11 were marked at Mr. Stein's deposition as
12 Exhibits 10A and 10B.
13      A    Okay.
14      Q    So looking first at Exhibit 10A, is
15 that an Affidavit of Confession of Judgment
16 that you signed?
17           (Witness reviewing.)
18      A    Yes.
19      Q    When did you sign it?
20      A    On May 28, 2019.
21      Q    Did you understand that you were
22 signing that affidavit pursuant to a
23 settlement agreement that you and others had
24 reached with Skat on May 28, 2019?
25      A    Yes.

Page 15

1       Q    At the time that you signed this
2  Affidavit of Confession of Judgment, did you
3  believe it was enforceable?
4       A    Yes.
5       Q    Did there come a time when you
6  believed that this particular Affidavit of
7  Confession of Judgment was no longer
8  enforceable?
9       A    I don't recall any -- I mean a
10 specific amount of time.
11      Q    As of the time that you signed this
12 Affidavit of Confession of Judgment, you were
13 living in New York City?
14      A    On the 28th of May 2019, yes.
15      Q    Okay.  Now, if you turn to Exhibit
16 10B --
17      A    Okay.
18      Q    -- is that an updated Affidavit of
19 Confession of Judgment that you signed?
20      A    It says that, yes.
21      Q    Okay.  That's -- on page 4, that's
22 your signature?
23      A    Yes.
24      Q    When did you sign it?
25      A    It says here June 9, 2021.

Page 16

1       Q    At the time you signed this updated
2  Affidavit of Confession of Judgment, did you
3  believe it was enforceable?
4       A    I don't recall whether or not I
5  believed at the time, I mean, whether it was
6  enforceable.  If I signed it, probably, yes.
7       Q    Okay.  Do you recall having a
8  different view of this updated Affidavit of
9  Confession of Judgment when you signed it
10 than you had when you signed the original
11 one?
12      A    I remember that I had to modify the
13 document to mention I was a Florida resident.
14      Q    So at the time you signed this
15 updated affidavit, you were then living in
16 Florida?
17      A    Correct.
18      Q    All right.  And at the time you
19 signed the updated affidavit, did the fact
20 that you were living in Florida, in your
21 view, impact the enforceability of the
22 document?
23      A    I don't recall that.  I was just
24 made aware that I was informed that it might.
25      Q    So you were -- you were informed

Page 17

1  that it might impact whether it was an
2  enforceable document?
3       A    Correct.
4       Q    Do you recall personally informing
5  anyone at Skat or any representative of Skat
6  that the affidavit -- the updated affidavit
7  you signed might not be enforceable?
8       A    I don't recall having ever a
9  conversation with Skat directly.  So if it
10 had been done, that would have been through
11 my lawyers, but I don't personally -- never
12 had any discussion with Skat.
13      Q    Do you know, one way or the other,
14 if you're lawyers --
15      A    No.
16      Q    -- had such a discussion?
17      A    No, I don't know, one way or the
18 other.
19      Q    Okay.  Did you instruct your
20 lawyers to have such a conversation with
21 Skat?
22      A    No, I don't recall having --
23 instructing them.
24      Q    What about this updated Affidavit
25 of Confession of Judgment, in your mind, made