**SUBJECT TO CONFIDENTIALITY**

DRAFT – a/o 12/14/17

## Agreement on refunds of dividend withholding tax

Entered into by

| | |
|---|---|
| party of the first part | The Danish Ministry of Taxation, SKAT |

and

| | |
|---|---|
| party of the second part | The American pension plans listed in Annex 1 (the "Pension Plans") |

#64891089

23 Civ. 2508 (NRB)
**PLAINTIFFS' EXHIBIT**
**2**

## BACKGROUND TO THE AGREEMENT

1.      Between 2013 and 2015, the Pension Plans, duly formed tax-exempt pension plans under the laws of the United States, filed applications to reclaim taxes withheld from dividends paid on Danish company shares owned by the Pension Plans. Until August 2015, SKAT paid the Pension Plans' reclaim applications. Commencing on August 6, 2015, SKAT froze the processing and payment of all withholding tax reclaim applications, including those filed by the Pension Plans.

2.      In 2016, SKAT issued preliminary decisions to some of the Pension Plans in which SKAT denied their pending reclaim applications (the "Pending Reclaims"). On August 21, 2017, SKAT issued final decisions to some of the Pension Plans denying their pending reclaim applications ("Final Decisions"). In connection with ongoing discussions leading to this Agreement on refunds of dividend withholding tax ("Agreement") with SKAT, the affected Pension Plans promptly requested that SKAT re-open those Final Decisions. On or about November 14, SKAT confirmed that the deadline for complaining to the National Tax Tribunal concerning said Final Decisions was suspended until either 1) SKAT rejected the Pension Plans' request for re-openings, or 2) SKAT re-opened and issued a new Final Decision. 3.  By a letter dated August 14, 2016 to one Pension Plan, and in subsequent letters to some of the Pension Plans, SKAT invited the Pension Plans to state their objections to the preliminary decisions and/or request a meeting where they could state their objections. The Pension Plans affected by the preliminary decisions accepted SKAT's offer to meet and state their objections.

4.      Such a meeting was held on September 21, 2016. At the meeting, a Lundgrens counsel for the Pension Plans explained that the Pension Plans acted in the good faith belief that, as beneficial owners of dividend-paying Danish stock, that they were entitled by Danish law and the US-Denmark Convention for the Avoidance of Double Taxation, to receive the withheld taxes sought by their reclaim applications, and in fact were so legally entitled. SKAT's position on the Pension Plans' right to the withheld taxes is set out in the preliminary decisions denying the Pending Reclaims. The Parties agreed, through their respective counsels and representatives, that it would be mutually beneficial to explore a resolution that would avoid time-consuming and costly litigation and the uncertainty of the outcome of such litigation for the Parties.

6.      Against such background, SKAT and the Pension Plans declare that on the conditions below they will enter into an agreement by which, inter alia, the Pension Plans make a lump sum payment to SKAT and withdraw the Pending Reclaims in return for SKAT waiving and relinquishing any claims against the Covered Parties (as defined below) relating to or concerning the Pension Plans' reclaim applications, whether paid or unpaid.

7.      The Parties have therefore entered into this Agreement. The Pension Plans agree to the following without prejudice to their position that they acted in good faith and did not violate Danish law.

#64891089

# AGREEMENT

## Clause 1:  Undertakings and Obligations of the Pension Plans

1.1     Subject to (i) satisfaction by the Danish Public Prosecutor for Serious Economic Crime ("SØIK") of the condition in Clause 3, and (ii) receipt by the Plans of written confirmation from SKAT that the Plans have complied with their obligations under Clauses 1.2 – 1.3, the Pension Plans will (a) pay SKAT an amount equal to DKK 1,100,000,000.00, either in the form of cash or marketable securities or other property with an equivalent value, and (b) withdraw the Pending Reclaims, which seek a total of DKK 343,123,006 and any appeals from final denials of such reclaims.  SKAT will not issue any further decisions on the Pending Reclaims provided they are withdrawn pursuant to the Agreement.  Simultaneously, with the withdrawal of the Pending Reclaims, pursuant to subparagraph (b) above, SKAT will withdraw the Final Decisions.

1.2     Upon satisfaction of the condition in Clause 3, the Pension Plans will provide documents in their possession sufficient to establish the amount of the unrestricted, liquid funds available to, or within the control of, the Pension Plans or their affiliates generated by Danish reclaim proceeds.  As the Pension Plans previously represented, the Plans retained only a portion of the tax reclaim proceeds due to transaction and advisor costs, loss-making investments, taxes paid, and distributions.

1.3     Upon satisfaction of the condition in Clause 3, the Pension Plans will cooperate with the investigation by SKAT and SØIK of other unrelated third parties involved in the Pension Plans' investments in Danish securities.  Within 60 days after the satisfaction of the condition in Clause 3, to comply with their obligations in Clauses 1.2 and this clause, the Pension Plans shall provide SKAT with the documents described in Annex 2.  The Parties will work together to ensure that all the requested documents and information are provided and that no unreasonable time and cost burdens are imposed on the Pension Plans as part of their cooperation.  However, the Pension Plans have no obligation to make any individuals available to testify in proceedings in Denmark.

1.4     Upon execution of this Agreement, the documents described in Annex 2 will be held in the custody of the U.S. law firm of Arnold & Porter Kaye Scholer LLP.

1.5     SKAT acknowledges that prior to the execution of this Agreement, the Pension Plans made available for SKAT's review documents relating to the representative trade presented to SKAT at the meeting with counsel for the Pension Plans on August 24, 2017.  Such documents included email correspondence with the custodian, broker, and counterparties involved in the trade; governing agreements between the relevant U.S. pension plan and the foregoing parties; trade confirmations and custodian account statements; and documents reflecting the costs and fees incurred by the relevant US pension plan in the course of the trade.

STEIN_LHOTE0009554                                                                                                              CONFIDENTIAL

### Clause 2: Undertakings and Obligations of SKAT

2.1     The undertakings and obligations of SKAT in this Clause 2 are expressly conditioned on the performance by the Pension Plans of its obligations and undertakings in Clause 1.

2.2     In consideration for the above performance, SKAT hereby relinquishes, waives and undertakes not to bring or initiate, or cause to be brought or initiated, or assist in the bringing or initiating, in any forum or venue or before any authority, whether in Denmark or elsewhere, any criminal, civil or regulatory claims, charges, requests or proceedings of any kind or nature in any way arising from or related to the Pension Plans' reclaim applications, whether paid or unpaid, or from any related activities, against the Pension Plans, their owners, both direct and beneficial, trustees, directors, beneficiaries, principals, partners, employees, agents, sponsors, participants, and any entities or individuals affiliated with the foregoing in connection with the Danish reclaims (the "Covered Parties"). Covered Parties do not include the following: Sanjay Shah, Solo Capital Partners LLP and affiliated entities, reclaim agents, broker dealers, stock borrowers, and futures and forward counterparties involved in transactions relating to or concerning the reclaims.

2.3     SØIK is not a party to this agreement and SKAT cannot and will not influence the decision whether to bring charges or not. Nevertheless, SKAT will bring to the attention of SØIK in writing the Agreement and its terms, and represent that the Agreement reflects good faith negotiations by the Pension Plans, that the Pension Plans' cooperation may result in the recovery by SKAT of additional funds from unrelated third parties, and that the Agreement is in the best interests of SKAT.

### Clause 3: Condition to the Undertakings and Obligations of the Pension Plans

The undertakings and obligations of the Pension Plans under this Agreement, including Clause 1, are expressly conditioned, inter alia, on a commitment by SØIK, and any other agency of the Danish Government with authority or jurisdiction in this matter, not to bring any criminal, civil or regulatory claims, charges, requests or proceedings of any kind or nature, in any forum or venue, or before any authority in Denmark, or cause or assist in bringing, such claims, charges, requests or proceedings by any foreign government or government agency, in any way arising from or related to the Pension Plans' reclaim applications, whether paid or unpaid, or from any related activities, against the Covered Parties. The Pension Plans shall notify SKAT when, in their sole judgment, this condition has been satisfied, but SØIK may satisfy this condition by providing the following written statement to Lundgrens signed by an authorized official of SØIK.

> "This is to confirm that SØIK, after an investigation, has concluded that no criminal, civil, or regulatory claims, charges, requests or proceedings of any kind or nature are justified against the Pension Plans listed in Annex 1 of this Agreement or their owners, both direct and beneficial, trustees, directors, beneficiaries, principals, partners, employees, agents, sponsors, participants, and any entities or individuals affiliated with the foregoing in connection with the Danish reclaims in any way

4

arising from or related to the Pension Plans' reclaim applications, whether paid or unpaid, or from any related activities. This commitment is binding upon any other agency of the Danish government with authority or jurisdiction to bring such claims, charges, requests or proceedings. Further, neither SØIK nor any other agency of the Danish government has caused to be brought, or will cause, or assist in bringing, any such further claims, charges, requests or proceedings by any foreign government or government agency."

### Clause 4:  Preservation of Documents

The Pension Plans represent that they have taken affirmative steps to preserve the documents in their possession or control that are necessary to fulfill the conditions in Clause 1.2 and 1.3 by not altering, deleting, or discarding such documents, whether maintained in paper, electronic or other form.

### Clause 5:  Confidentiality

Other than as set out in Clause 2.3, this Agreement, the description of the Covered Parties, the related negotiations or discussions, drafts of agreements, materials provided by the Pension Plans to SKAT or SØIK in the course of the negotiations or discussions, and documents and information that the Pension Plans provide pursuant to Clause 1.2 and Clause 1.3, shall be confidential and shall not be disclosed in any forum or venue or shared with any government, individual or entity; except that the documents and information provided pursuant to Clause 1.2 and Clause 1.3, may be disclosed to the extent necessary for Danish authorities to investigate and bring claims against and/or prosecute unrelated third parties for violations of Danish law. This confidentiality undertaking is consistent with and in furtherance of the interests of the, Pension Plans, Covered Parties and the Kingdom of Denmark.

### Clause 6:  No Admission of Liability

Nothing in this Agreement constitutes an admission by any Party.

### Clause 7:  Enforceability

In the event that the above conditions and undertakings of any Party, including of SØIK and any necessary agencies of the Danish Government, are not fulfilled then, except for Clauses 5 and 6, this Agreement shall be null and void. However, other than as to Clause 3, notwithstanding the foregoing, a Party otherwise in compliance with the Agreement has the option to declare a partial breach of the Agreement and seek to compel enforcement of the breached term(s) of the Agreement, which shall otherwise remain in full force and effect. The failure to satisfy the condition in Clause 3 renders this agreement null and void. In that event, without prejudice to their respective legal positions, (i) SKAT reserves the right to seek to recover paid reclaims and contest any Pending Reclaims or any appeals from the

STEIN_LHOTE0009556                                                                         CONFIDENTIAL

denials of Pending Reclaims; and (ii) the Pension Plans reserve the right to retain paid reclaims and appeal the denials of any Pending Reclaims.

### Clause 8:  Choice of Law

This Agreement is subject to Danish law, and in case of any disputes in connection with the performance of this Agreement, the Parties are subject to mandatory arbitration under the Rules of Arbitration of the International Chamber of Commerce.

### Clause 9:  Integration

The Parties acknowledge that this Agreement is the entire agreement between them, and is intended to be enforceable according to its written terms.  There are no oral agreements, promises, covenants, warranties, or representations to the contrary or beyond the written terms of the Agreement upon which any Party has relied in entering into this Agreement other than those expressly contained in the Agreement.

### Clause 10:  Modification

Any amendment to this Agreement must be in writing, signed by the Pension Plans and SKAT, and must specifically state the intent of the Pension Plans and SKAT to amend this Agreement.

### Clause 11:  Notice

All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by email (with electronic acknowledgement of receipt), (c) sent by facsimile machine, or (d) sent by a nationally recognized overnight courier with receipt as follows:

Notices to the Pension Plans shall be sent to:

Lundgrens
[*address to be filled in*]

Notices to SKAT shall be sent to:

SKAT
[*address to be filled in*]

Notices may also be provided to such other address or addresses subsequently provided to counsel.

Dated _____, 2017

STEIN_LHOTE0009557                                                                                                                  CONFIDENTIAL

| On behalf of SKAT | On behalf of the Pension Plans listed in Annex 1 |
|---|---|

STEIN_LHOTE0009558                                                         CONFIDENTIAL