EXECUTION COPY

RE: Settlement Agreement dated May 28, 2019

# THE SETTLEMENT AGREEMENT, THIS LETTER AGREEMENT, AND THE INFORMATION SET FORTH IN EACH AGREEMENT, IS <u>HIGHLY CONFIDENTIAL</u>.

# PUBLIC DISCLOSURE OF THE SETTLEMENT AGREEMENT, THIS LETTER AGREEMENT AND/OR THE INFORMATION SET FORTH IN EITHER AGREEMENT COULD BE HIGHLY PREJUDICIAL TO THE PARTIES.



23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
**109**

This letter agreement, (the "Letter Agreement"), is entered into by Skatteforvaltningen ("Skatteforvaltningen") and Jerome Lhote, Matthew Stein and Luke McGee, (the "Covered Parties' Designees"), ███████████████████████████ each individually a "Letter Agreement Party" and taken together the "Letter Agreement Parties"), as of the date set forth below.

1. Pursuant to Section 18 of the Settlement Agreement between the Parties, executed as of May 28, 2019, (the "Settlement Agreement"), this Letter Agreement is intended to and does supplement and amend terms of the Settlement Agreement with respect to the subject matter hereof. Defined terms used in this Letter Agreement shall have the same meaning as in the Settlement Agreement, unless otherwise set forth herein.

2. The Letter Agreement Parties agree that the existence and contents of, and any other information concerning, this Letter Agreement (collectively, encompassed in the term "Letter Agreement") are highly confidential and that the public disclosure of such information could have a detrimental impact on the Illiquid Assets described herein and on the Covered Parties' ability to successfully fulfill their obligations set forth in the Settlement Agreement. Accordingly, the Letter Agreement Parties agree that this Letter Agreement is subject to the confidentiality provisions of Section 8 of the Settlement Agreement.

3. Pursuant to Section 2(d) of the Settlement Agreement, the Subsequent Cash Payment Amount shall be paid over time, as deadlines for payment occur and as certain "Illiquid Assets" are liquidated, provided, however, that a failure to liquidate an Illiquid Asset by the Final Settlement Payment Date or at a particular price shall not affect the Covered Parties' Designees' obligation to pay the Final Settlement Amount on or before the Final Settlement Payment Date. For the purpose of this Letter Agreement, Illiquid Assets means the direct or indirect equity interests of any of the Covered Parties' Designees in certain assets that the Covered Parties' Designees have determined cannot be immediately liquidated. A list of Illiquid Assets is attached hereto as Annex A.

4. With respect to the liquidation of the Illiquid Assets in Annex A, the Covered Parties' Designees agree to provide quarterly progress reports to Skatteforvaltningen commencing on the three (3) month anniversary of the Effective Date and, at any time, to respond promptly to inquiries from Skatteforvaltningen concerning the Illiquid Assets. In the event of any material change to an Illiquid Asset, including, without limitation, its sale, transfer, or disposition, the Covered Parties' Designees shall provide written notice of such material change within ten (10) Business Days. Failure to provide written notice to Skatteforvaltningen of the sale, transfer, or disposition of an Illiquid Asset within ten (10) Business Days shall be a default. Upon such default, Skatteforvaltningen shall provide a Default Notice in accordance with Section 11 of the Settlement Agreement. Failure of the Covered Parties' Designees to cure the default within ten (10) Business Days from the receipt of the Default Notice shall be an Event of Default under Section 5 of the Settlement Agreement.

5. The Covered Parties' Designees agree to use their best efforts to consummate the liquidation process as efficiently and expeditiously as possible. In the event that the Covered Parties' Designees receive proceeds from the sale, transfer, or disposition of an Illiquid Asset, the Covered Parties' Designees agree to apply such proceeds within ten (10) Business Days, to make payments to fund up to, and in no event greater than, the Final Settlement Amount with such

payments to be made to Skatteforvaltningen via wire transfer pursuant to written instructions provided by Skatteforvaltningen. Failure to make such payments within ten (10) Business Days shall be a default. Upon such default, Skatteforvaltningen shall provide a Default Notice in accordance with Section 11 of the Settlement Agreement. Failure of the Covered Parties' Designees to cure the default within ten (10) Business Days from the receipt of the Default Notice shall be an Event of Default under Section 5 of the Settlement Agreement.

6. Further to Section 2(d) of the Settlement Agreement, in the event that after the expiration of thirty-six (36) months from the Effective Date, the Subsequent Cash Payment Amount has not been paid in full, the Final Settlement Payment Date shall automatically be extended by one (1) additional year, unless the gross proceeds from the sale of North Channel Bank equal or exceed three hundred and forty million (340,000,000) DKK. The Letter Agreement Parties agree that Section 1(r) of the Settlement Agreement is amended so that the Final Settlement Payment Date includes, to the extent applicable, the automatic one-year extension as set forth in this paragraph. During this one-year extension period, interest will continue to accrue, in accordance with Section 2(d)(ii)(1) of the Settlement Agreement.

7. The Letter Agreement Parties shall ask the management of North Channel Bank to certify the amount of the fees (the "Bank Fees") that North Channel Bank received arising from or related to dividend tax reclaim applications submitted to Skatteforvaltningen. Upon the sale of North Channel Bank, fifty million (50,000,000) DKK or the amount of the Bank Fees, whichever amount is greater, of the sale proceeds shall be used to make a separate payment, (the "Payment of Fees") on behalf of the Letter Agreement Parties to Skatteforvaltningen, representing disgorgement of the fees received by North Channel Bank arising from or related to the dividend tax reclaim applications submitted to Skatteforvaltningen; this Payment of Fees shall not be counted towards the payment of the Final Settlement Amount or any other payment required under the Settlement Agreement. The Letter Agreement Parties agree to promptly pay the remaining proceeds of the sale of North Channel Bank, after the Payment of Fees, North Channel Bank's sale-related fees and costs and agreed-upon payments to be made to Belgian governmental authorities, to Skatteforvaltningen to satisfy the payment of the Final Settlement Amount.

8. The Letter Agreement Parties further agree that any amount paid to SØIK by or on behalf of North Channel Bank shall be counted towards the Subsequent Cash Payment Amount due to Skatteforvaltningen under the Settlement Agreement.

9. The Letter Agreement Parties agree that the proceeds of the sale of North Channel Bank shall be deposited in a mutually agreed escrow account pursuant to the terms of the Settlement Agreement and this Letter Agreement, and that simultaneously on the release of the proceeds to Skatteforvaltningen, Skatteforvaltningen shall release any actual or potential Claims against North Channel Bank, and promptly file or consent to the filing of all papers necessary to dismiss with prejudice the claims that Skatteforvaltningen brought against North Channel Bank in the courts of the United Kingdom.

10. This Letter Agreement shall be governed by, construed and interpreted in accordance with the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof.

11. This Letter Agreement constitutes the entire agreement among the Letter Agreement Parties with respect to the subject matter hereof and supersedes any previous agreements or understandings among the Letter Agreement Parties, express or implied, with respect to the same subject matter, except that all prior confidentiality agreements among the Parties shall remain in full force and effect. No amendment, supplement or modification of this Letter Agreement, or waiver of rights hereunder, shall be binding unless executed in writing by all Letter Agreement Parties and specifically referencing this Letter Agreement.

12. Please indicate your agreement by countersigning and returning a copy of this Letter Agreement. By doing so, you expressly represent and warrant that you have been given, and have received and accepted, authority to execute this Letter Agreement on behalf of the Letter Agreement Party for whom you have signed, and further have been expressly given and received and accepted authority to enter into a binding agreement on behalf of such Letter Agreement Party with respect to the matters set forth and as stated herein, and that the consent of no other party is required to bind such Letter Agreement Party.

13. This Letter Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. This Letter Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

KAMMERADVOKATEN/POUL SCHMITH

Dated: May 28, 2019

By: ███████████

Name: Boris Frederiksen

*Attorney for:*

Skatteforvaltningen


HUGHES HUBBARD & REED LLP

Dated: May 28, 2019

By: ███████████

Name: William Maguire

*Attorney for:*

Skatteforvaltningen


SKATTEFORVALTNINGEN

Dated: May 23, 2019

By: ███████████

Name: 

Title: Director General

-6-

WACHTELL, LIPTON, ROSEN & KATZ

Dated: May 28, 2019

By: ███████████████
Name: John F. Savarese

By: ███████████████
Name: Ralph M. Levene

*Attorneys for:*

Matthew Stein

Dated: May 28, 2019

By: ███████████████
Name: Matthew Stein

MILBANK, TWEED, HADLEY & MCCLOY LLP

Dated: May 28, 2019

By: ███████████████████████
Name: James Cavoli
Attorney for:

Jerome Lhote


Dated: May 28, 2019

By: ███████████████████████
Name: Jerome Lhote

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

Dated: May 28, 2019

By: ███████████████

Name: ~~James Benjamin~~ ROBERT H. PEES

*Attorney for:*

Luke McGee

Dated: May 28, 2019

By: ███████████████

Name: Luke McGee

-8-

LANKLER, SIFFERT & WOHL LLP

Dated: May 28, 2019

By: 
Name: Gabrielle S. Friedman

*Attorney for:*

Dated: May 21, 2019

By:
Name:

Dated: May ___, 2019

By: _____
Name:

LANKLER, SIFFERT & WOHL LLP

Dated: May 28, 2019

By: ███████████████████
Name: Gabrielle S. Friedman

*Attorney for:*

███████████████

Dated: May ___, 2019

By: _____
Name: ████████████

Dated: May 28, 2019

By: ███████████████████
Name: ████████████

## Annex A: List of Illiquid Assets

| Asset | Expected Net Realizable Value (DKK) | Expected Net Realizable Value (USD) | Expected Timeframe |
|---|---|---|---|
| [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| Interests in North Channel Bank | 322 mm DKK | 49mm | 12/31/21 |
| [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |