

**Hughes Hubbard & Reed**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Bill Maguire
Partner
Direct Dial: +1 (212) 837-6879
Direct Fax: +1 (212) 299-6879
bill.maguire@hugheshubbard.com

April 21, 2023

BY EMAIL

Mr. Daniel W. Levy
McKool Smith P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York 10001
dlevy@McKoolSmith.com

Re:    *Stein et al. v. Skatteforvaltningen*, No. 23 Civ. 2508 (NRB)

Dear Daniel,

I write on behalf of Skatteforvaltningen ("SKAT") concerning plaintiffs Matthew Stein and Jerome Lhote's claim that SKAT breached section 8.f of the parties' May 28, 2019 settlement agreement, in which SKAT undertook to inform SØIK "in writing, that th[e] Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by [SKAT] of additional funds from third parties and that th[e] Agreement is in the best interests of" SKAT.

On Tuesday, when I advised you that SKAT had put in writing to SØIK what SKAT had undertaken to put in writing, you asked for a copy of SKAT's correspondence with SØIK to this effect. The attached correspondence establishes that SKAT provided such written representations to SØIK on at least two occasions before plaintiffs filed their complaint.[1]  First, enclosed as Exhibit 1 is the email, dated May 15, 2019, from SKAT's Gry Ahlefeld-Engel to SØIK in which she provided SØIK written notification of the representations SKAT undertook to make under section 8.f.  Second, on January 19, 2021, months before SØIK indicted plaintiffs, SKAT sent SØIK a letter, enclosed as Exhibit 2, attaching a copy of section 8.f of the settlement agreement in full.  This correspondence establishes that plaintiffs have no basis for their claims against SKAT.

---

1.  In each of the enclosed exhibits, SKAT has provided the original Danish version of the correspondence and an English translation thereof.

23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
**9**

STEIN_LHOTE0014026

This problem is only compounded by plaintiffs' failure to provide SKAT with notice before commencing suit. Under section 11 of the settlement agreement, plaintiffs were required to provide SKAT "written notice" of any assertion that SKAT was not in compliance with its obligations and a ten-business day opportunity to cure *before* pursuing any legal remedy. Plaintiffs failed to do so. Their breach of contract claims are therefore subject to dismissal. *See Rojas v. Don King Prods., Inc.*, No. 11 CIV. 8468 KBF, 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012) ("if a contract explicitly states that notice and an opportunity to cure are conditions precedent to bringing or maintaining a claim, courts will enforce that agreement").

Now that plaintiffs have the correspondence, and know that they have no good faith basis to maintain their claims, SKAT demands that plaintiffs voluntarily dismiss their claims, with each side bearing their own costs.

Please let me know if you wish to discuss.

Sincerely,

Bill

Enclosures

STEIN_LHOTE0014027

# Exhibit 1

CONFIDENTIAL

## Farrell, Gregory

| | |
|---|---|
| **From:** | Camilla Lindrum Bay <Camilla.Bay@sktst.dk> |
| **Sent:** | Friday, April 21, 2023 8:18 AM |
| **To:** | Camilla Lindrum Bay |
| **Subject:** | Udtræk af relevant forligstekst |

**Fra:** Gry Ahlefeld-Engel
**Sendt:** 15. maj 2019 18:02
**Til:** PFI002@politi.dk
**Cc:** Steen Bechmann Jacobsen <Steen.Jacobsen@SKTST.DK>
**Emne:** Udtræk af relevant forligstekst

Kære Per,

Som drøftet telefonisk tidligere i dag har jeg nedenfor indsat de relevante passager fra forligsaftaleteksten, som direkte eller indirekte berører SØIK. Jeg hører meget gerne, hvis formuleringerne giver anledning til bemærkninger.

1)  I forhold til vores tidligere drøftelser om, at det bør fremgå af aftaleteksten, at den <u>KUN</u> vedrører de civile krav, er følgende passager tilføjet i aftaletekstens indledende definitioner. Tilføjelse af 'civil' i para a (min markering), sammenholdt med para b og c, finder jeg i tilstrækkelig grad dækker dette behov. Jeg er klar over, at det er vanskeligt at læse uden en kontekst, men i og med disse tekstafsnit fremgår af aftalens definitioner, er effekten gennem hele aftalen, at når den nævner 'claims/krav', vedrører det alene Skattestyrelsens civile krav mod forligsparterne, og vi/Skattestyrelsen handler, som det fremgår efterfølgende, kun på egne vegne.

   a.  "Claims" means any and all civil claims, counterclaims, actions, causes of action, petitions, motions, objections, litigations, arbitrations, proceedings, awards, orders, judgments, decisions, debts, obligations, rights, interest, suits, appeals, damages, remedies, costs, attorneys' fees, interest, expenses and liabilities, of any type, including and without limitation, administrative and regulatory, whether asserted or unasserted, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, accrued or unaccrued, state or federal, domestic or foreign, currently or previously existing or arising, in law, contract, equity or otherwise.

   b.  "Settled Matters" means any and all Claims Skatteforvaltningen has or may have against the Covered Parties in any way arising out of, in connection with or relating to the Reclaim Applications and the related trading by the Covered Parties in Danish company shares, provided that nothing in this Agreement shall release any claims Skatteforvaltningen has in connection with any other reclaim applications or pension plans. For the avoidance of doubt, Settled Matters includes any administrative claims Skatteforvaltningen could bring in Denmark in connection with the Paid Reclaim Final Decisions.

   c.  "Skatteforvaltningen" is the authority charged with the assessment and collection of Danish taxes. For the avoidance of doubt, Skatteforvaltningen does not include, is not acting for, or undertaking any obligations on behalf of any other government agency or official of the Kingdom of Denmark.

2)  I forhold til videregivelse af selve aftalen til SØIK samt eventuelt samarbejdsmateriale, skal jeg lige have endelig clearet med forligsparterne senere i dag, at nedenstående kan dække, at vi både deler aftalen og samarbejdsmaterialet med SØIK, så det vender jeg endeligt tilbage på. Men du får lige tekstpassagen allerede nu.

1

CONFIDENTIAL

STEIN_LHOTE0014029

    d. Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that the Agreement is in the best interests of Skatteforvaltningen.

3) En sidste formulering, der berører SØIK, fremgår af et såkaldt 'sideletter', som nærmere behandler forholdene omkring realisering af en række illikvide aktiver til afvikling af forligssummen. I forhold til salget af North Channel Bank (NCB) fremgår der således følgende, som ret beset er en teknikalitet, der fastslår, at i det omfang NCB skal betale et bødekrav fra SØIK, så krediterer vi/Skattestyrelsen det tilsvarende beløb i forligssummen, der til dels udgøres af salgssummen fra NCB.

    e. The Letter Agreement Parties further agree that any amount paid to SØIK by or on behalf og North Channel Bank shall be sounted towards the Subsequent Cash Payment Amount due to Skatteforvaltningen under the Settlement Agreement.

Du er velkommen til at dele disse tekstpassager med Justitsministeriet. Jeg skal dog anmode om, at det holdes inden for en snæver kreds henset til aftalens fortrolige karakter og at forliget endnu ikke er endeligt.

//Gry

Venlig hilsen

**Gry Ahlefeld-Engel**
Underdirektør
Kompleks Svig

+45 72 37 36 62
Gry.Ahlefeld-Engel@SKTST.DK

 **SKATTE**
STYRELSEN

Skattestyrelsen
Kratbjerg 236, Fredensborg
www.sktst.dk

Skattestyrelsen er en del af Skatteforvaltningen

2

**CONFIDENTIAL**

**From:** Gry Ahlefeld-Engel
**Sent:** 15 May 2019 6:02 PM

**To:** PFI002@politi.dk

**Cc:** Steen Bechmann Jacobsen <Steen.Jacobsen@SKTST.DK>
**Emne: Excerpt of relevant settlement text**

Dear Per,

As discussed over the telephone earlier today, I have inserted below the relevant passages from the settlement text, which directly or indirectly concern SØIK. I would really like to hear if the wording give reason for comments.

1. In connection with our prior discussions concerning that the agreement text should show that it ONLY concerns the civil claims, the following passages are added to the settlement text's introductory definitions. The addition of "civil" to para a (my emphasis), together with para b and c, I believe sufficiently covers this need. I know that it is difficult to read without a context but since these sections of text are included in the agreement's definitions, the effect carries throughout the entire agreement and when it mentions "claims," this solely concerns the Danish Tax Agency's civil claims against the settling parties and that we/the Danish Tax Agency only act on our own behalf, which subsequently is shown.

   a. "Claims" means any and all civil claims, counterclaims, actions, causes of action, petitions, motions, objections, litigations, arbitrations, proceedings, awards, orders, judgments, decisions, debts, obligations, rights, interest, suits, appeals, damages, remedies, costs, attorneys' fees, interest, expenses and liabilities, of any type, including and without limitation, administrative and regulatory, whether asserted or unasserted, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, accrued or unaccrued, state or federal, domestic or foreign, currently or previously existing or arising, in law, contract, equity or otherwise.

   b. "Settled Matters" means any and all Claims Skatteforvaltningen has or may have against the Covered Parties in any way arising out of, in connection with or relating to the Reclaim Applications and the related trading by the Covered Parties in Danish company shares, provided that nothing in this Agreement shall release any claims Skatteforvaltningen has in connection with any other reclaim applications or pension plans. For the avoidance of doubt, Settled Matters includes any administrative claims Skatteforvaltningen could bring in Denmark in connection with the Paid Reclaim Final Decisions.

   c. "Skatteforvaltningen" is the authority charged with the assessment and collection of Danish taxes. For the avoidance of doubt, Skatteforvaltningen does not include, is not acting for, or undertaking any obligations on behalf of any other government agency or official of the Kingdom of Denmark.

2. In connection with forwarding of the agreement itself to SØIK as well as possible collaborative

material, I will finally clear this with the settling parties later today, so that the below can cover us both sharing the agreement and the colloborative material with SØIK, so that I will return to finally. But you will get the text passage already now.

    d. Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that the Agreement is in the best interests of Skatteforvaltningen.

3. A final wording, which concerns SØIK is shown in a so-called "side letter," which more closely addresses the conditions concerning the realization of a number of illiquid assets in the settlement of the settlement sum. In connection with the sale of North Channel Bank (NCB), the following is thus shown, which basically is a technicality that determines the extent to which NCB shall pay the penalty claim from SØIK, as we/The Danish Tax Agency will credit the corresponding amount in the settlement sum that is part of the sales sum from NCB.

4.

    e. The Letter Agreement Parties further agree that any amount paid to SØIK by or on behalf og North Channel Bank shall be sounted towards the Subsequent Cash Payment Amount due to Skatteforvaltningen under the Settlement Agreement.

You are free to share these text passages with the Ministry of Justice. I must though request that this is kept within a closer circle considering the confidential character of the agreement and that the settlement is not yet final.

//Gry

With Best Regards,

**Gry Ahlefeld-Engel**
**Deputy director**
Complex Fraud

+45 72 37 36 62
Gry.Ahlefeld-Engel@SKTST.DK



The Danish Tax Agency
Kratbjerg 236, Fredensborg
www.sktst.dk

The Danish Tax Agency is a part of the Danish Tax Authority

**STEIN_LHOTE0014032**

# Exhibit 2

CONFIDENTIAL

Dok.nr.: 317827058 Titel: Svar til SØIK vedr. forlig med 61 pensionsplaner m.fl. (Endelig) Aktnr.: 0 Sagsnr.: 21-0008933

Case 1:23-cv-02508-NRB Document 159-9 Filed 04/07/25 Page 9 of 38

☆ **SKATTE**
**STYRELSEN**

Statsadvokaten for Særlig Økonomisk og International Kriminalitet
Att.: Vicestatsadvokat Malene Stage Christensen og specialanklager Stine Winther

Sendt pr. e-mail: swi007@politi.dk

Ledelsessekretariat Særlig Kontrol

Helgeshøj Allé 9
2630 Taastrup

Telefon 72 22 18 18
Skat.dk

Vores sagsnr. 21-0008933
Dato 19. januar 2021

### Anmodning om oplysninger vedrørende Skattestyrelsens forlig

Ved brev af 6. januar 2021 har Statsadvokaten for Særlig Økonomisk og International Kriminalitet (SØIK) anmodet Skattestyrelsen om at besvare nedenstående spørgsmål vedrørende det forlig, som Skattestyrelsen indgik i maj 2019 med 61 amerikanske pensionsplaner og en række dertil knyttede personer og selskaber.

SØIK har oplyst at Skattestyrelsens besvarelse skal benyttes til brug for SØIKs videre efterforskning af de anmeldelser, som SØIK har modtaget fra det daværende SKAT (nu Skattestyrelsen) vedrørende formodet bedrageri begået overfor SKAT, hvorved SKAT led et samlet tab på ca. 12,7 mia. kr.

1. Hvilke fysiske og juridiske personer har Skattestyrelsen indgået det omhandlende forlig med?
2. Hvilke refusioner er omfattet af forliget (eksempelvis ved angivelse af SKAT's bundtnumre)?
3. Hvordan er forligssummen sammensat (indgår der eksempelvis erstatning af andre udgifter end den modtagne udbytterefusion)?
4. Hvor stor en andel af den samlede forligssum på 1,6 mia. kr. er indbetalt til Skattestyrelsen, og hvornår er det resterende beløb forfaldent til betaling?
5. Hvilke fordringer er indbetalingerne afskrevet på?
6. Er fordringer ud over forligsbeløbet eftergivet, og i så fald på hvilken måde?
7. Er forliget et udtryk for en endelig afgørelse af den civile sag, eller vil der senere kunne opstå yderligere erstatningskrav rettet mod forligsparterne?
8. Har Skattestyrelsen modtaget sikkerhed for opfyldelse af forliget, herunder garantier, pant eller lignende? Har Skattestyrelsen i givet fald foretaget nogen form for sikringsakt i den forbindelse?
9. Har Skattestyrelsen fortsat et erstatningskrav i sagen, og i så fald mod hvem og med hvilke beløb?

SØIK har endelig anmodet om oplysning om hvilke eventuelle tavshedsklausuler, der er aftalt i forliget.

Side 1 / 4

CONFIDENTIAL

STEIN_LHOTE0014034

### Ad. 1.

Skattestyrelsen indgik i maj 2019 et forlig med en gruppe på 61 amerikanske pensions-planer samt en række dertil knyttede selskaber og personer. Der henvises til vedhæftede exhibit 1a – 1c til forligsaftalen. I forhold til denne gruppe af pensionsplaner m.fl. in-debar forliget, at Skattestyrelsen frafaldt yderligere krav mod denne gruppe mod, at der til Skattestyrelsen blev betalt et beløb svarende til, hvad der til denne gruppe direkte eller indirekte var udbetalt baseret på de af de 61 pensionsplaner indsendte ansøgninger om refusion.

For en yderligere gruppe på 19 pensionsplaner, der delvist var ejet af personer, der indgik i gruppen omkring de 61 pensionsplaner indebar forliget også, at der i forhold til disse personer skete tilbagebetaling af de beløb, der ud af udbetalingen til de 19 pensionsplaner var tilgået disse personer. Der henvises herom til exhibit 2 til forligsaf-talen. Forliget afskar ikke Skattestyrelsen fra at fastholde eller rejse krav overfor de 19 pensionsplaner eller overfor de personer, der var medejere eller lignende af pensions-planerne og som ikke indgik i gruppen omkring de 61 pensionsplaner. Der er anlagt retssager med de 19 pensionsplaner og disse øvrige personer.

### Ad. 2.

Forliget omfatter samlede udbetalinger til de 61 pensionsplaner på kr. 2.937.851.407.

Som ovenfor anført har nogle af forligsparterne – ud over at modtage en del af refusions-beløbet på de cirka 2,9 mia. kr. – også deltaget i tilbagesøgningen af refusionsbeløb via 19 andre amerikanske pensionsplaner, som ikke er en del af forliget. Disse 19 pensionsplaner har selvstændigt tilbagesøgt cirka 1,2 mia. kr.

Forliget omfatter også en opgivelse af krav mod personerne bag de 61 pensionsplaner i forhold til den mindre del de havde modtaget ud af udbetalinger til de 19 pensions-planer for samlet 1.179.089.882. Dette sker mod tilbagebeting af det mindre beløb, som de pågældende personer direkte eller indirekte har modtaget fra disse ansøginger.

### Ad. 3.

Forliget vedrører alene de udbetalte refusioner.

### Ad. 4.

Skattestyrelsen kan oplyse, at der i relation til forligssummen på 1,6 mia. kr. er indbetalt henholdsvis 950 mio. kr. i 2019 og ca. 35 mio. kr. i 2020.

Resten af forligsbeløbet skal betales over en periode på op til 4 år efter aftalens indgåelse, dvs. senest i maj 2023.

### Ad. 5.

De indbetalte beløb vil – når den endelige opgørelse af forligsbeløbet foreligger – blive afskrevet på de tilbagebetalingskrav niv., som Skattestyrelsen har mod de enkelte pen-sionsplaner.

### Ad. 6.

Forliget indebærer, at Skattestyrelsen mod betaling af forligsbeløbet frafalder yderligere krav mod de 61 pensionsplaner og den dertil hørende kreds af personer og selskaber,

CONFIDENTIAL

STEIN_LHOTE0014035

der er forligsparter. Skattestyrelsen har ikke frafaldet krav overfor andre pensionspla-ner, personer eller selskaber.

For de 19 pensionsplaner indebærer aftalen, at kravet mod de 19 pensionsplaner m.fl. reduceres med det mindre beløb ud af forligsbeløbet, der kan henføres til udbetalinger til de 19 pensionsplaner.

*Ad. 7.*

Skattestyrelsen kan oplyse, at styrelsen mod at modtage en samlet forligssum på 1,6 mia. kr. (med forbehold for justeringer som følge af forligssummens efterprøvelse) har forpligtet sig til at frafalde alle civile krav, som styrelsen måtte have mod forligsparterne som led i udbyttesagskomplekset, jf. ovenfor under spørgsmål 1.

Dette afskærer dog ikke Skattestyrelsen fra at rejse andre krav overfor forligsparterne eller andre, såfremt det efterfølgende måtte vise sig, at parterne har været involveret i andre an-søgninger om refusion end de i forliget omfattede.

*Ad. 8.*

Skattestyrelsen kan oplyse, at styrelsen ikke har modtaget sikkerhed for opfyldelse af forli-get, herunder garantier, pant eller lignende.

I tilfælde af, at der ikke sker betaling af den resterende forligssum har Skattestyrelsen som en del af forliget modtaget en "Confession of judgment" svarende til et retsforlig fra visse af forligsparterne på restbeløbet således disse hæfter direkte og personligt for betaling af den fulde forligssum.

*Ad. 9.*

Skattestyrelsen har forsat et krav i sagen, der modsvarer de fulde udbetalinger, dog så-ledes, at kravet vil skulle reduceres med det som følge af forliget modtagne beløb, når det er endeligt opgjort og modtaget. Det endelige forligsbeløb kendes pt. endnu ikke. Skattestyrelsen forfølger aktuelt det samlede krav ved sagsanlæg i USA, Canada, Eng-land, Dubai og Malaysia. Kravene i disse sager er kvalificeret forskelligt i de respektive jurisdiktioner men har karakter af hvad, der efter dansk ret vil svare til enten tilbage-søgningskrav eller civile erstatningskrav.

Skattestyrelsens skal endelig i forhold til SØIK´s spørgsmål om eventuelle aftalte tavsheds-klausuler henvise til vedhæftede uddrag om fortrolighed (punkt 8) fra selve forligsaftalen.

For god ordens skyld bemærkes slutteligt, at de vedhæftede exhibits samt uddrag fra selve forligsaftalen skal behandles med fortrolighed, hvilket indebærer, at SØIK ikke må videre-give oplysningerne udover hvad der følger af forpligtelserne efter retsplejeloven ligesom Skattestyrelsen skal anmode om at blive hørt i tilfælde af fremtidige aktindsigtsbegæringer.

Med venlig hilsen

Steen Bechmann Jacobsen
Fagdirektør

CONFIDENTIAL

STEIN_LHOTE0014036

Dok.nr.: 317827058  Titel: Svar til SØIK vedr. forlig med 61 pensionsplaner m.fr (Endelig) Akthr.: 0  Sagsnr.: 21-0008933

CONFIDENTIAL

STEIN_LHOTE0014037

**Exhibit 1: Covered Parties**

**Exhibit 1A: Fully released Pension Plans, pension plan partnerships and partners**

|     | Pension Plans | Partnerships | Partners |
|-----|---------------|--------------|----------|
| 1.  |               |              |          |
| 2.  |               |              |          |
| 3.  |               |              |          |
| 4.  |               |              |          |
| 5.  |               |              |          |
| 6.  |               |              |          |
| 7.  |               |              |          |
| 8.  |               |              |          |
| 9.  |               |              |          |
| 10. |               |              |          |
| 11. |               |              |          |
| 12. |               |              |          |
| 13. |               |              |          |

-2-

STEIN_LHOTE0014038



-3-

STEIN_LHOTE0014039



-4-

STEIN_LHOTE0014040



-5-

STEIN_LHOTE0014041





-6-

**Exhibit 1B: Fully released individuals**

| | Individuals |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |
| 11. | |
| 12. | |
| 13. | |
| 14. | |
| 15. | |
| 16. | |
| 17. | |
| 18. | |
| 19. | |
| 20. | |
| 21. | |
| 22. | |
| 23. | |
| 24. | |
| 25. | |
| 26. | |
| 27. | |
| 28. | Lhote, Jerome |
| 29. | |
| 30. | McGee, Luke |
| 31. | |
| 32. | |
| 33. | |
| 34. | |
| 35. | |
| 36. | |
| 37. | |
| 38. | |

-7-



STEIN_LHOTE0014043

| 39. | |
|-----|-|
| 40. | |
| 41. | |
| 42. | |
| 43. | |
| 44. | |
| 45. | |
| 46. | Stein, Matthew |
| 47. | |
| 48. | |
| 49. | |
| 50. | |
| 51. | |
| 52. | |
| 53. | |
| 54. | |
| 55. | |
| 56. | |

**Exhibit 1C: Partially released individual**

The following individual is partially released, only for his interest in parties listed on Exhibit 2.



-8-

CONFIDENTIAL

**Exhibit 2:  Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest**

|     | Pension Plans | Partnerships | Partners* |
|-----|---------------|--------------|-----------|
| 1.  |               |              |           |
| 2.  |               |              |           |
| 3.  |               |              |           |
| 4.  |               |              |           |
| 5.  |               |              |           |
| 6.  |               |              |           |
| 7.  |               |              |           |
| 8.  |               |              |           |
| 9.  |               |              |           |
| 10. |               |              |           |

-9-

CONFIDENTIAL

STEIN_LHOTE0014045



-10-

STEIN_LHOTE0014046

8. Confidentiality. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

   a. Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

   b. Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra;* (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to ( which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

   c. In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available measures and remedies to prevent such disclosure, including, without limitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

   d. The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement.

e.  The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f.  Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

   **STEIN_LHOTE0014048**

Doc. no.: 317827058 Title: Answer to SØIK regarding settlement with 61 pension plans etc. (Final) File no.: 0 Case no.: 21-0008933

**THE DANISH TAX AGENCY**

Director Secretary Særlig Kon-
trol

State Attorney for Special Economic and International Crime
Att.: Deputy State Attorney Malene Stage Christensen and Special Prosecutor
Stine Winther

HelgeshøJ AI é 9
2630 Taastrup

Telephone 72 22 18 18
Skat.dk

Sent by e-mail: swi007@politi.dk

Our case no. 21-0008933
Date: 19 January 2021

**Request for information regarding the Danish Tax Agency's settlement**

By letter of 6 January 2021, the State Attorney for Special Economic and International Crime (SØIK) has requested that the Danish Tax Agency answer the following questions regarding the settlement that the Danish Tax Agency entered into in May 2019 with 61 US pension plans and a number of related persons and companies.

SØIK has informed that the Danish Tax Agency's response must be used for SØIK's further investigation of the reports which SØIK has received from the then SKAT (now the Danish Tax Agency) regarding suspected fraud committed against the Danish Tax Agency, whereby the Danish Tax Agency suffered a total loss of approx. DKK 12.7 billion.

1. With which natural and legal persons has the Danish Tax Agency concluded the negotiated settlement?
2. Which refunds are covered by the settlement (for example, by stating SKAT's bundle tag numbers)?
3. How is the settlement sum composed (e.g. is compensation for expenses other than the received dividend refund included)?
4. What proportion of the total settlement sum of DKK 1.6 billion has been paid to the Danish Tax Agency, and when is the remaining amount due to be paid?
5. What claims are the payments written off against?
6. Are claims beyond the settlement amount forgiven, and if so, in what way?
7. Is the settlement an expression of a final decision of the civil case, or will further compensation claims against the settling parties arise later?
8. Has the Danish Tax Agency received security for fulfillment of the settlement, including guarantees, pledges or the like? If applicable, has the Danish Tax Agency carried out any form of safeguarding act in this connection?
9. Does the Danish Tax Agency still have a compensation claim in the case, and if so, against whom and with what amounts?

Finally, SØIK has requested information about any non-disclosure clauses agreed in the settlement.

Page 1 / 4

CONFIDENTIAL

STEIN_LHOTE0014049

*Re. 1.*

In May 2019, the Danish Tax Agency entered into a settlement with a group of 61 US pension plans and a number of related companies and individuals. Reference is made to the attached exhibits 1a – 1c of the settlement agreement. In relation to this group of pension plans etc., the settlement meant that the Danish Tax Agency waived any further claims against this group in exchange for the Danish Tax Agency being paid an amount corresponding to what was directly or indirectly paid to this group based on the refund applications submitted by the 61 pension plans.

For an additional group of 19 pension plans, which were partly owned by people who were part of the group of around 61 pension plans, the settlement also meant that, in relation to these people, there was repayment of the amounts, where the payment to the 19 pension plans had gone to these people. In this regard, reference is made to exhibit 2 of the settlement agreement. The settlement did not prevent the Danish Tax Agency from maintaining or raising claims against the 19 pension plans or against the persons who were co-owners or similar of the pension plans and who were not included in the group regarding the 61 pension plans. Legal proceedings have been brought against the 19 pension plans and these other persons.

*Re.2.*

The settlement includes total payments to the 61 pension plans of DKK 2,93,851,407.

As stated above, some of the settling parties - in addition to receiving part of the refund amount of approximately 2.9 billion DKK - also participated in the recovery of refund amounts via 19 other US pension plans, which are not part of the settlement. These 19 pension plans have independently reclaimed approximately DKK 1.2 billion.

The settlement also includes a waiver of claims against the people behind the 61 pension plans in relation to the smaller part they had received from payments to the 19 pension plans for a total of 1,179,089,882. This takes place against repayment of the small amount that the persons in question have directly or indirectly received from these applications.

*Re. 3.*

The settlement solely concerns the paid refunds.

*Re.4.*

The Danish Tax Agency can inform that in relation to the settlement sum of DKK 1.6 billion, that DKK 950 million has been paid in 2019, and approx. DKK 35 million in 2020, respectively.

The rest of the settlement amount must be paid over a period of up to 4 years after the conclusion of the agreement, i.e. no later than May 2023.

*Re.5.*

The paid amounts will - when the final calculation of the settlement amount is available - be written off against the repayment claims etc. that the Danish Tax Agency has against the individual pension plans.

*Re.6.*

The settlement means that, in return for payment of the settlement amount, the Danish Tax Agency waives any further claims against the 61 pension plans and the group of

CONFIDENTIAL

STEIN_LHOTE0014050

Doc. no.: 317827058 Title: Answer to SØIK regarding settlement with 61 pension plans etc. (Final) File no.: 0 Case no.: 21-0008933

persons and companies that are settling parties. The Danish Tax Agency has not waived claims against other pension plans, persons or companies.

For the 19 pension plans, the agreement implies that the claim against the 19 pension plans etc. is reduced by the smaller amount out of the settlement amount that can be attributed to payments to the 19 pension plans.

*Re. 7*

The Danish Tax Agency can inform that the agency will receive a total settlement sum of DKK 1.6 billion. (subject to adjustments as a result of the verification of the estimated sum) and that it has assumed the duty to waive all civil claims that the agency may have against the settling parties as part of the dividend case complex, cf. above under question 1.

However, this does not prevent the Danish Tax Agency from raising other claims against the settling parties or others, if it subsequently turns out that the parties have been involved in other applications for refunds than those included in the settlement.

*Re. 8*

The Danish Tax Agency can inform that the agency has not received security for the completion of the settlement, including guarantees, pledges or the like.

In the event that payment of the remaining interest sum is not made, the Danish Tax Agency as part of the settlement received a "Confession of judgment" equivalent to a court settlement from certain of the settlement parties on the remaining amount, thus these are directly and personally liable for payment of the full settlement sum.

*Re. 9*

The Danish Tax Agency has maintained a claim in the case that corresponds to the full payments, however it is understood that the claim will have to be reduced by the amount received as a result of the settlement, when it has been finally calculated and received. The final settlement amount is not yet currently known. The Danish Tax Agency is currently pursuing the total claim by bringing proceedings in the USA, Canada, England, Dubai and Malaysia. The claims in these cases are qualified differently in the respective jurisdictions, but have the character of what, according to Danish law, would correspond to either restitution claims or civil compensation claims.

Finally, in relation to SØIK's questions about any agreed non-disclosure clauses, the Danish Tax Agency must refer to the attached extract on confidentiality (point 8) from the settlement agreement itself.

Finally, for the sake of good practice, it should be noted that the attached exhibits and extracts from the settlement agreement itself must be treated with confidentially, which means that SØIK must not pass on the information beyond to what is needed under the obligations under the Administration of Justice Act, just as the Danish Tax Agency must request to be heard in the event of future request to access documents.

With Best Regards

Steen Bechmann Jacobsen
Agency Director

CONFIDENTIAL

STEIN_LHOTE0014051

Doc. no.: 317827058 Title: Answer to SØIK regarding settlement with 61 pension plans etc. (Final) File no.: 0 Case no.:
21-0008933

CONFIDENTIAL

STEIN_LHOTE0014052

**Exhibit 1: Covered Parties**

**Exhibit 1A: Fully released Pension Plans, pension plan partnerships and partners**

| | Pension Plans | Partnerships | Partners |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |

-2-

CONFIDENTIAL

STEIN_LHOTE0014053



-3-



29.

30.

31.

32.

33.

34.

35.

36.

37.

38.

39.

40.

41.

42.

43.

-4-



CONFIDENTIAL

STEIN_LHOTE0014055



44.

45.

46.

47.

48.

49.

50.

51.

52.

53.

54.

55.

56.

57.

58.

-5-

STEIN_LHOTE0014056





-6-

CONFIDENTIAL

STEIN_LHOTE0014057

Exhibit 1B: Fully released individuals

|     | Individuals |
| --- | --- |
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |
| 11. | |
| 12. | |
| 13. | |
| 14. | |
| 15. | |
| 16. | |
| 17. | |
| 18. | |
| 19. | |
| 20. | |
| 21. | |
| 22. | |
| 23. | |
| 24. | |
| 25. | |
| 26. | |
| 27. | |
| 28. | Lhote, Jerome |
| 29. | |
| 30. | McGee, Luke |
| 31. | |
| 32. | |
| 33. | |
| 34. | |
| 35. | |
| 36. | |
| 37. | |
| 38. | |

-7-



CONFIDENTIAL

STEIN_LHOTE0014058



| 39. | |
|-----|--|
| 40. | |
| 41. | |
| 42. | |
| 43. | |
| 44. | |
| 45. | |
| 46. | Stein, Matthew |
| 47. | |
| 48. | |
| 49. | |
| 50. | |
| 51. | |
| 52. | |
| 53. | |
| 54. | |
| 55. | |
| 56. | |

**Exhibit 1C: Partially released individual**

The following individual is partially released only for his interest in parties listed on Exhibit 2.



-8-

CONFIDENTIAL

STEIN_LHOTE0014059

**Exhibit 2: Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest**

|     | Pension Plans | Partnerships | Partners* |
|-----|---------------|--------------|-----------|
| 1.  |               |              |           |
| 2.  |               |              |           |
| 3.  |               |              |           |
| 4.  |               |              |           |
| 5.  |               |              |           |
| 6.  |               |              |           |
| 7.  |               |              |           |
| 8.  |               |              |           |
| 9.  |               |              |           |
| 10. |               |              |           |

-9-



CONFIDENTIAL

STEIN_LHOTE0014060



*In all partnership _____ ich _____ were partners, _____ n _____ were also partners _____ _____ d KUM _____ are not included on this list because no Covered Party has an interest in either of those two plans and those two plans are not released.

-10-

CONFIDENTIAL

8. Confidentiality. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

   a. Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

   b. Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra*; (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to ( which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

   c. In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available measures and remedies to prevent such disclosure, including, without limitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

   d. The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement.

STEIN_LHOTE0014062

e.  The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f.  Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.