EXECUTION COPY

## SETTLEMENT AGREEMENT

# THIS SETTLEMENT AGREEMENT, AND THE INFORMATION SET FORTH HEREIN, IS HIGHLY CONFIDENTIAL.

# PUBLIC DISCLOSURE OF THIS SETTLEMENT AGREEMENT AND/OR THE INFORMATION SET FORTH HEREIN COULD BE HIGHLY PREJUDICIAL TO THE PARTIES.



23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
**104**



This Settlement Agreement (the "<u>Agreement</u>") is made by and between Skatteforvaltningen ("<u>Skatteforvaltningen</u>") and the Covered Parties, as defined below (each individually, a "<u>Party</u>," and collectively, the "<u>Parties</u>") as of May 28, 2019. This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, settle and dismiss the Settled Matters (defined below), upon and subject to the terms and conditions hereof.

### Background

A.      WHEREAS, Skatteforvaltningen is the authority of the Kingdom of Denmark charged with the assessment and collection of Danish taxes;

B.      WHEREAS, Skatteforvaltningen believes that it has meritorious Claims (defined below) against the Covered Parties (defined below);

C.      WHEREAS, the Covered Parties believe that they have meritorious defenses to Skatteforvaltningen's Claims;

D.      WHEREAS, after extensive and good faith negotiations, the Parties desire to settle all Settled Matters (defined below) based on the terms and conditions set forth in this Agreement;

E.      WHEREAS, the Covered Parties have expressed a willingness to use their best efforts and full cooperation to assist Skatteforvaltningen in various proceedings related to the subject matter of the Settled Matters;

F.      WHEREAS, it is the Parties' understanding and a fundamental principle on which this Agreement is based that the Covered Parties are paying to Skatteforvaltningen the full amount of the Net Proceeds (defined below) that the Covered Parties received directly or indirectly from Reclaim Applications (defined below) made to Skatteforvaltningen; and

NOW, THEREFORE, in consideration of the mutual promises and covenants in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### Terms and Conditions

I.      <u>Defined Terms</u>.  In this Agreement, the following terms shall have the following respective meanings:

    a.  "<u>Additional Cash Payment</u>" shall have the meaning set forth in Section 2(b).

    b.  "<u>Agreement</u>" means this agreement.

    c.  "<u>Applicable Interest</u>" means 8.05% simple interest per annum.

    d.  "<u>Business Day</u>" means any day other than a Saturday, Sunday, any day that is a federal legal holiday in Denmark or in the United States or any day on which banking institutions in Copenhagen, Denmark or New York, New York are authorized or required by law or executive order to be closed.



e. "Claims" means any and all civil claims, counterclaims, actions, causes of action, petitions, motions, objections, litigations, arbitrations, proceedings, awards, orders, judgments, decisions, debts, obligations, rights, interest, suits, appeals, damages, remedies, costs, attorneys' fees, interest, expenses and liabilities, of any type, including and without limitation, administrative and regulatory, whether asserted or unasserted, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, accrued or unaccrued, state or federal, domestic or foreign, currently or previously existing or arising, in law, contract, equity or otherwise.

f. "Confession of Judgment" shall have the meaning set forth in Section 4(c).

g. "Cooperation Information" means non-privileged documents and information within the possession, custody or control of the Covered Parties, relating to the trading or purported trading in Danish company shares, reclaim applications submitted to Skatteforvaltningen, proceeds of any such reclaim applications and the distribution of proceeds of any such reclaim applications, including, but not limited to, information relating to the formation, operation and trading of the Pension Plans.

h. "Cooperation Mediator" shall have the meaning set forth in Section 10(b).

i. "Covered Parties" means the pension plans, partnerships, partners and individuals listed in Exhibit 1 and the pension plans, partnerships and partners listed in Exhibit 2, with such individuals in Exhibit 1B being included in their individual capacity and in any capacity or role they assumed in any way arising from, in connection with, or related to the Pension Plans' Reclaim Applications, whether paid or unpaid.

j. "Covered Parties' Designees" means Jerome Lhote, Luke McGee and Matthew Stein.

k. "DKK" means Danish kroner.

l. "Default Date" shall have the meaning set forth in Section 5(c).

m. "Default Notice" shall have the meaning set forth in Section 5(b).

n. "Effective Date" means May 28, 2019.

o. "Event of Default" shall have the meaning set forth in Section 5(b).

p. "Final Net Proceeds List" shall have the meaning set forth in Section 2(e)(i).

q. "Final Settlement Amount" means the sum of: (i) the Preliminary Settlement Amount; (ii) any True-Up Amount, as that term is defined in Section 2(e)(iii); and (iii) the interest, if any, accrued on the unpaid amount of the Subsequent Cash Payment Amount, pursuant to Section 2(d)(ii) of this Agreement.

r. "Final Settlement Payment Date" means the date that is up to and including thirty-six (36) months from the Effective Date.

s.  "Gross Reclaims" means all reclaim amounts from Skatteforvaltningen received by or on behalf of the Pension Plans in respect of applications to reclaim taxes withheld or allegedly withheld from dividends paid on Danish company shares the Pension Plans owned or allegedly owned between 2012 and 2015.

t.  "Initial Cash Payment" shall have the meaning set forth in Section 2(a).

u.  "Net Proceeds" shall have the meaning set forth in Section 2(e).

v.  "New York Courts" shall have the meaning set forth in Section 12.

w.  "Paid Reclaim Final Decisions" refers to the decisions Skatteforvaltningen sent to some of the Pension Plans in Exhibit 1A in February 2019 in which Skatteforvaltningen sought repayment of paid Reclaim Applications.

x.  "Pension Plans" refers to the 61 pension plans that are listed in Exhibit 1A and the 19 pension plans listed in Exhibit 2.

y.  "Preliminary Settlement Amount" means an amount equal to 1.55 billion (1,550,000,000) DKK.

z.  "Reclaim Applications" means the applications filed with Skatteforvaltningen to reclaim taxes withheld from dividends paid on Danish company shares owned or allegedly owned by the Pension Plans between 2012 and 2015.

aa.  "Selected Court" shall have the meaning set forth in Section 12.

bb.  "Settled Matters" means any and all Claims Skatteforvaltningen has or may have against the Covered Parties in any way arising out of, in connection with or relating to the Reclaim Applications and the related trading by the Covered Parties in Danish company shares, provided that nothing in this Agreement shall release any claims Skatteforvaltningen has in connection with any other reclaim applications or pension plans.  For the avoidance of doubt, Settled Matters includes any administrative claims Skatteforvaltningen has brought or could bring in Denmark in connection with the Paid Reclaim Final Decisions.

cc.  "Skatteforvaltningen" means the authority of the Kingdom of Denmark charged with the assessment and collection of Danish taxes.  For the avoidance of doubt, Skatteforvaltningen does not include, is not acting for, and is not undertaking any obligations on behalf of any other government authority or official of the Kingdom of Denmark.

dd.  "Subsequent Cash Payment Amount" means the sum of (i) the Additional Cash Payment and (ii) the True-Up Amount.

ee.  "Transfer" shall have the meaning set forth in Section 13.

ff.  "True-Up Amount" shall have the meaning set forth in Section 2(e)(iii).

gg. "<u>True-Up Arbitrator</u>" shall have the meaning set forth in Section 10(a).

hh. "<u>Wire Transfer</u>" means transfer and delivery by wire transfer of immediately available funds in DKK to the following account:

Branch: Nordea Bank Denmark A/S
Swift/BIC: NDEADKKK
IBAN: ████████████████

Address: Vesterbrogade 8, 1620 Copenhagen, Denmark
Account Number: ████████████
Account Name: Kammeradvokaten/ Law Firm Poul Schmith, Business Reg.Nr. 64 95 28 11
Reference: 7514394/USP75

Or such other account as designated by Skatteforvaltningen pursuant to Section 20

2.    <u>Payment</u>.  The Covered Parties shall pay or cause to be paid to Skatteforvaltningen the Preliminary Settlement Amount as follows:

a.  Nine hundred and fifty million (950,000,000) DKK (the "<u>Initial Cash Payment</u>") by one or more Wire Transfers as follows:

   i.  At least five hundred million (500,000,000) DKK within ten (10) Business Days of the Effective Date; and

   ii.  the remaining amount necessary to complete the Initial Cash Payment, on or before July 26, 2019; plus,

b.  Six hundred million (600,000,000) DKK by one or more Wire Transfers to be paid over time (the "<u>Additional Cash Payment</u>") as the deadlines for payment occur.

c.  The Covered Parties' obligation to pay the Final Settlement Amount is absolute and unconditional.  The Covered Parties shall not be required to make payments in excess of the Final Settlement Amount, with the sole exception that, in the case of an "Event of Default" as defined in Section 5, the Covered Parties' Designees must pay an additional amount as set forth in Section 5(d)(iii) of this Agreement.  In the event that the Covered Parties timely complete the Initial Cash Payment pursuant to Sections 2(a)(i) and 2(a)(ii), then Skatteforvaltningen's sole remedy for the Covered Parties' failure to pay the remainder of the Final Settlement Amount shall be the filing of the Affidavit of Confessions of Judgment against the Covered Parties' Designees as set forth in Section 5(c).

d.  Timing of payment of the Subsequent Cash Payment Amount and interest.

   i.  The Covered Parties' Designees shall pay Skatteforvaltningen the Subsequent Cash Payment Amount no later than the Final Settlement Payment Date.

    ii.  In the event that the Subsequent Cash Payment Amount is not paid in full to Skatteforvaltningen within twenty-four (24) months from the Effective Date:

        1.  Applicable Interest will accrue on the remaining unpaid amount of the Subsequent Cash Payment Amount, until the Final Settlement Payment Date or the Subsequent Cash Payment Amount has been paid in full, whichever is earlier.

        2.  Any payments made to Skatteforvaltningen to fund any remaining unpaid amount of the Subsequent Cash Payment Amount after twenty-four (24) months from the Effective Date shall be applied (x) first to the principal balance of any remaining unpaid amount of the Subsequent Cash Payment Amount, until the Subsequent Cash Payment Amount has been paid in full, and (y) only thereafter to the amount of interest due and owing pursuant to Section 2(d)(ii)(1).

        3.  After any payment is made to Skatteforvaltningen to pay any portion of the Subsequent Cash Payment Amount, Applicable Interest will accrue, in accordance with Section 2(d)(ii)(1), on the remaining unpaid amount of the Subsequent Cash Payment Amount.

    iii.  The Covered Parties' Designees shall pay all interest due pursuant to Section 2(d)(ii) no later than the Final Settlement Payment Date.

e.  For the purposes of this Agreement, "Net Proceeds" shall be (A) Gross Reclaims less (B) all of the Covered Parties' expenses associated with Reclaim Applications for which Skatteforvaltningen made payments, specifically as follows: (1) reclaim agent fees, (2) tax reclaim advisory service fees, (3) brokerage fees and commissions, (4) custodial and clearing fees, (5) trading expenses, and (6) financial institution account charges and less (C) any other portion of Gross Reclaims received by parties excluded from the releases as set forth in Section 4 herein, including without limitation, those parties listed on Exhibit 3 ("Non-exhaustive list of parties excluded from release"), that were not otherwise subsequently provided to any Covered Party.

    i.  The Covered Parties agree to use their best efforts to provide Skatteforvaltningen with documentation sufficient to establish the total amount of Net Proceeds received by the Covered Parties directly or indirectly from the Reclaim Applications, with the expectation that such exchange and review shall be completed no later than six (6) months after the Effective Date. As part of this process, the Parties shall cooperate to establish the Gross Reclaims and the Net Proceeds received by each Pension Plan. At the end of this process, the Covered Parties' Designees shall provide and certify the accuracy of a final list of Net Proceeds received by each Covered Party with respect to each Pension Plan (the "Final Net Proceeds List"). Each Covered

Party authorizes the Covered Parties' Designees to certify as accurate the Final Net Proceeds List on behalf of each Covered Party.

ii. In the event that such documentation establishes that the Net Proceeds are less than the Preliminary Settlement Amount, the Covered Parties shall be entitled to no adjustment in the Preliminary Settlement Amount.

iii. In the event that such documentation establishes that the Net Proceeds are greater than the Preliminary Settlement Amount, then Skatteforvaltningen shall be entitled to an adjustment (the "True-Up Amount") equal to the difference between the Net Proceeds and the Preliminary Settlement Amount.

iv. In the event of any claim, controversy or dispute that amounts to less than twenty million (20,000,000) DKK arising out of or relating to the True-Up process described in this Section 2(e), the Net Proceeds shall be determined in accordance with Section 10 hereof.

f. The Covered Parties' Designees represent that: (A) the Preliminary Settlement Amount plus the True-Up Amount equals or exceeds the Net Proceeds received by the Covered Parties, directly or indirectly, from the Reclaim Applications and (B) on payment of the full amount of the Subsequent Cash Payment Amount, the Covered Parties will have paid back to Skatteforvaltningen the Net Proceeds that they received, directly or indirectly, from the Reclaim Applications.

g. The Covered Parties represent that the plans and entities listed on Exhibit 1A are 100% owned or beneficially owned by individuals who are listed on Exhibits 1B and 1C.

h. Skatteforvaltningen acknowledges and accepts that, in the interests of effecting the payments required by the Covered Parties under this Agreement in an efficient and cost effective manner, the amounts for such payments may be collected into, and payment to Skatteforvaltningen on behalf of the Pension Plans and other Covered Parties ultimately made from, a single attorney trust account in accordance with the payment instructions set forth in Section 1(hh). The Covered Parties' Designees agree to provide Skatteforvaltningen with written confirmation of the execution of any such payment within two (2) Business Days.

3. Dismissal of Claims.

a. Within ten (10) Business Days of the completion of the Initial Cash Payment, Skatteforvaltningen will take steps to effectuate the dismissal with prejudice of any and all Claims asserted by it against ███████ in the United States District Court for the Southern District of New York in *SKATTEFORVALTNINGEN* v. *Raubritter LLC Pension Plan et al.*, 1:18-cv-04833.

b.  Except as specifically provided in Section 3(c), the Covered Parties agree:

  i.  not to file or cause to be filed any administrative appeals, complaints or grievances with the Danish Tax Agency, the Ministry of Taxation or any other authority of the government of the Kingdom of Denmark concerning the Reclaim Applications;

  ii.  for the Pension Plans listed in Exhibit 1A, to withdraw any and all pending applications and administrative appeals previously filed and that remain outstanding for the refund of Danish tax withheld on dividend payments; and

  iii.  for the Pension Plans listed in Exhibit 2, to inform Skatteankestylrelsen (the Danish Tax Appeals Agency) in writing that each of the relevant Covered Parties for the Pension Plan that is the subject of that appeal renounces its interest in such appeal.

c.  The Michelle Investments Pension Plan, Remece Investments LLC Pension Plan, Vanderlee Technologies Pension Plan and Xiphias LLC Pension Plan on Exhibit 2 are exempt from Section 3(b)(i). Further, with respect to the Michelle Investments Pension Plan, Remece Investments LLC Pension Plan and Xiphias LLC Pension Plan, Messrs. Stein and Lhote agree to renounce their interests in any appeal pursuant to Section 3(b)(iii); with respect to the Vanderlee Technologies Pension Plan, Maple Point LLC agrees to renounce its interest in any appeal pursuant to Section 3(b)(iii).

4.  <u>Releases</u>.

a.  Upon the completion of the Initial Cash Payment, Skatteforvaltningen shall forever and finally generally release, waive and discharge the Covered Parties and all of their parents, sponsors, trusts, subsidiaries and affiliates and all of their respective property, current and former officers, directors, employees, consultants, agents, attorneys, accountants, advisors, assigns, successors, predecessors and representatives from and in respect of all Settled Matters, *except*:

  i.  The foregoing shall not release, waive or discharge the right to enforce this Agreement.

  ii.  Nothing in this Agreement shall release, waive or discharge any rights or claims of Skatteforvaltningen against any person or entity that received (x) any portion of the Covered Parties' expenses associated with the Reclaim Applications, as set forth in Section 2(e)(B) and (y) any portion of Gross Reclaims received by parties excluded from release, as set forth in Section 2(e)(C).

  iii.  Notwithstanding the foregoing and for the avoidance of doubt, nothing in this Agreement shall release, waive, or discharge any rights or claims against any party listed on the attached Exhibit 3 ("Non-exhaustive list of parties excluded from release").

iv. The individual listed on Exhibit 1C ("Partially released individual") shall be released only to the extent that he directly or indirectly received any portion of the Gross Reclaims for plans or partnerships listed on Exhibit 2 ("Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest").

v. Further, each Pension Plan listed on Exhibit 2 shall be released only to the extent of that Pension Plan's Net Proceeds set forth in the Final Net Proceeds List and Skatteforvaltningen retains and reserves the right to proceed against each such Pension Plan and any persons or entities (other than the Covered Parties in Exhibit 1) for any amount in excess of such Pension Plan's Net Proceeds.

b. Upon the completion of the Initial Cash Payment, the Covered Parties shall forever and finally generally release, waive and discharge Skatteforvaltningen and all of its property, agents, attorneys, bankers, accountants, advisors, assigns, successors, predecessors and representatives from and in respect of all Claims, *except* that the foregoing shall not release, waive or discharge the right to enforce this Agreement.

c. Simultaneously with the execution of the Initial Cash Payment, the Covered Parties' Designees shall together provide an executed and notarized Affidavit of Confession of Judgment (the "Confession of Judgment") to Skatteforvaltningen, in the form attached hereto as Exhibit 4. Within ten (10) Business Days of the second (2nd) anniversary of the Effective Date, the Covered Parties' Designees shall provide a new Confession of Judgment to Skatteforvaltningen in the form attached hereto as Exhibit 5. Skatteforvaltningen may file or otherwise execute upon a Confession of Judgment in any of the New York Courts only if an Event of Default, as defined in Section 5, has occurred.

d. Skatteforvaltningen further agrees that the amount of any final verdict, judgment, or ruling obtained by, through or on behalf of Skatteforvaltningen, from or against any third party, for which contribution, common-law indemnification or a similar claim is available from any Covered Party, shall include a reduction for the greater of (i) the Covered Party's (or Covered Parties') equitable share of the damages awarded to Skatteforvaltningen, or (ii) the amount paid for the Pension Plan(s) that is (are) the subject of the final verdict, judgment, or ruling pursuant to the process set forth in Section (2)(e)(i) regarding the True-Up Amount (as reflected in the Final Net Proceeds List), such that the third party will have no claim for set-off, apportionment, contribution, common-law indemnification or similar claims against any Covered Party.

e. Skatteforvaltningen agrees that it will not bring any Claims with respect to the Settled Matters against the Covered Parties in the period between the Effective Date and July 26, 2019.

f.  All rights under Section 1542 of the California Civil Code, or any analogous state, foreign, or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the Settled Matters. Section 1542 of the California Civil Code reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

5.  Events of Default.

a.  If the Covered Parties' Designees have not delivered to Skatteforvaltningen a new and fully executed Confession of Judgment as and when required pursuant to Section 4(c) of this Agreement, or if the Covered Parties' Designees do not make any payment as and when required by this Agreement, the Covered Parties' Designees shall be in default.

b.  Upon such default, Skatteforvaltningen shall provide written notice (a "Default Notice") of the breach of this Agreement to the Covered Parties' Designees in accordance with Section 11 of this Agreement. Failure of the Covered Parties' Designees to deliver to Skatteforvaltningen a new and fully-executed Confession of Judgment or make a required payment within ten (10) Business Days from receipt of the Default Notice shall be an "Event of Default."

c.  In the case of an Event of Default, the "Default Date" shall be the eleventh (11th) Business Day after which the Covered Parties' Designees receive the Default Notice. On the Default Date, Skatteforvaltningen shall be authorized to file the Confession of Judgment and to seek and enforce the judgment that the Court enters.

d.  In the case of an Event of Default, the Covered Parties' Designees shall be required to pay an amount equivalent to:

i.   The unpaid portion of the Subsequent Cash Payment Amount as of the Default Date, plus

ii.  Applicable Interest owed pursuant to Section 2(d)(ii) as of the Default Date, plus

iii. Applicable Interest on the unpaid amount of the Subsequent Cash Payment Amount as of the Default Date, for the period starting January 1, 2014 and running until the earlier of the Default Date or twenty-four (24) months from the Effective Date.

6.  No Admissions. Nothing in this Agreement or any negotiations in connection herewith shall be claimed or otherwise deemed to be evidence of an admission by any Party of any

liability, violation of law or wrongdoing whatsoever, or of the truth or untruth, or the merit or lack of merit, of any claim or defense of any Party. Neither this Agreement, nor any negotiations in connection herewith, may be used in any proceeding against any Party or any individual or entity covered by the releases set forth in this Agreement for any purpose, *except* with respect to the validity, effectuation and enforcement of this Agreement. Nothing contained herein shall be claimed or otherwise deemed to be an admission by any Party of any assertions or allegations made by any other Party, whether made in connection with the negotiation of this Agreement or otherwise. For the avoidance of doubt, the Covered Parties deny that they have committed any violation of law or breach of any legal duty of any kind.

7.    Full and Complete Cooperation. The Covered Parties will fully cooperate with the investigation by Skatteforvaltningen of third parties not subject to the releases set forth in this Agreement as follows:

    a.  Upon request of Skatteforvaltningen, the Covered Parties will provide Cooperation Information on a rolling production basis in accordance with timetables and protocols to be mutually agreed upon in good faith by counsel for the Parties. Upon the request of Skatteforvaltningen, the Covered Parties will provide a categorical privilege log for documents withheld from the production required under this Section 7(a) on grounds of privilege.

    b.  Upon request of Skatteforvaltningen, the Covered Parties will, in the form of attorney proffers, provide additional relevant Cooperation Information to Skatteforvaltningen's legal counsel.

    c.  Upon request of Skatteforvaltningen, the Covered Parties' Designees will provide written consent to allow Skatteforvaltningen to collect Cooperation Information from non-Covered Parties. Such consent shall not be unreasonably withheld.

    d.  The Parties will work together to ensure that no unreasonable time and cost burdens are imposed on the Covered Parties in connection with the provision of the documents and information required to be provided to Skatteforvaltningen pursuant to this Section 7.

    e.  For the avoidance of doubt, nothing in this Agreement requires the Covered Parties to waive any attorney-client privilege, work-product protections or other evidentiary privileges under state, federal or foreign law.

    f.  The Covered Parties acknowledge and agree that preexisting documents, data, facts and information that are not privileged do not become privileged merely based on their transmission from a client to their attorney and the Covered Parties further agree that any invocation of any privilege or protection will be reasonable and in good faith.

    g.  At all times, the Covered Parties will use their best efforts to ensure that their cooperation with Skatteforvaltningen is meaningful and productive. In the event the Parties have a dispute regarding cooperation, any differences shall first be referred to a third party in accordance with Section 10 hereof.

h. The Cooperation Information that the Covered Parties provide to Skatteforvaltningen pursuant to this Section 7 may be used by Skatteforvaltningen in any proceedings relating to any reclaim applications in the United States, the United Kingdom, Malaysia, Dubai, Denmark and any other jurisdiction where such Cooperation Information will be subject to customary confidentiality protections, such as a protective order governing the handling of confidential information in any such proceeding, and Skatteforvaltningen shares in advance a copy of such confidentiality protections. Provided that the terms of this Section 7(h) are fully satisfied, Skatteforvaltningen may use the Cooperation Information pursuant to this Section 7(h), notwithstanding the confidentiality restrictions in Section 8.

8. <u>Confidentiality</u>. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

a. Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

b. Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra*; (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to (which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

c. In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available

measures and remedies to prevent such disclosure, including, without limitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

d.  The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement.

e.  The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f.  Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

9.  Non-Disparagement.

a.  No Party shall make, express, transmit, speak, write, verbalize or otherwise communicate, in any way or form, any remark, comment, message, information, declaration, communication or other statement of any kind, whether verbal, in writing, electronically transferred or otherwise, that is disparaging, derogatory or

defamatory of or reasonably likely to damage any Party, its reputation, business or affairs, nor shall any Party induce any person or entity to do so.

b.  Notwithstanding anything to the contrary in this Section 9, Skatteforvaltningen shall not be restricted in any way, shape or form from making factual statements it believes are reasonably necessary to support claims or to rebut any defenses to such claims it is pursuing in other legal proceedings relating to the subject matter of the Settled Claims, including, without limitation, legal pleadings, affidavits and declarations that may be submitted in any litigation brought by Skatteforvaltningen in any jurisdiction.

c.  Nothing in this Agreement shall prohibit any of the Parties from complying with any valid subpoena or court order or from responding truthfully to a governmental inquiry or investigation or in connection with any legal proceedings.

10.  Referral to Third Party:

a.  In the event of any claim, controversy or dispute that amounts to less than twenty million (20,000,000) DKK, arising out of or relating to the True-Up process as described in Section 2(e), including, without limitation, the calculation of Net Proceeds, a "True-Up Arbitrator" shall be appointed with plenary powers to resolve in a binding and final manner any such matter on such terms and pursuant to such procedures as the True-Up Arbitrator finds appropriate in his or her sole discretion. The proceedings before the True-Up Arbitrator and any decision rendered by the True-Up Arbitrator shall be confidential. The True-Up Arbitrator shall be Richard J. Davis, Esq. or if such person is not available, Robert J. Jossen, Esq. In the event that neither person is available to serve as the True-Up Arbitrator, the Parties shall agree within five (5) Business Days on a suitable replacement. In the event that the Parties fail to agree on a suitable replacement within five (5) Business Days or that any claim, controversy or dispute arising out of or relating to the True-Up process exceeds twenty million (20,000,000) DKK, the Parties may by mutual agreement present such matter to any other person the Parties designate to be the True-Up Arbitrator to recommend a resolution pursuant to the terms of this Section 10, or, failing such mutual agreement, any Party may pursue the resolution of such matter through other available remedies in a Selected Court (as defined below).

b.  Any claim, controversy or dispute arising out of or relating to the cooperation obligations set forth in Section 7 of this Agreement, shall in the first instance be presented to a "Cooperation Mediator," to be appointed by the Parties, who shall have the authority to consider and issue a non-binding recommendation for the resolution of any such matter on such terms and pursuant to such procedures as the Cooperation Mediator finds appropriate in his or her sole discretion. The proceedings before the Cooperation Mediator and any recommendation issued by the Cooperation Mediator shall be confidential. The Cooperation Mediator shall be Richard J. Davis Esq., or if such person is not available, Robert J. Jossen Esq. In the event that neither person is available to serve as the Cooperation Mediator, the Parties shall agree within five (5) Business Days on a suitable replacement, or, failing such mutual agreement, any Party may pursue the resolution of such matter through other available remedies in a

Selected Court (as defined below). If any Party does not agree with the recommended resolution, they must provide written notice to the other Parties within five (5) Business Days of the issuance of the Cooperation Mediator's recommendation.

c.   The Parties shall have five (5) Business Days from the date they appoint a True-Up Arbitrator or Cooperation Mediator to make their respective submissions concerning the matter in dispute to the True-Up Arbitrator and/or the Cooperation Mediator, after which the True-Up Arbitrator and/or the Cooperation Mediator shall schedule a hearing to be held within five (5) Business Days. Any decision by the True-Up Arbitrator and/or the Cooperation Mediator shall be issued within five (5) Business Days of the True-Up Arbitrator and/or the Cooperation Mediator's receipt of the Parties' submissions or the hearing date, whichever is later. Any hearing before the True-Up Arbitrator and/or the Cooperation Mediator shall be concluded in a single day. If the matter remains unresolved for any reason twenty-five (25) Business Days after a Party first notifies the True-Up Arbitrator and/or Cooperation Mediator of a claim, controversy or dispute, any Party may resort to any other available remedies, including through other available remedies in a Selected Court.

d.   Fees of the True-Up Arbitrator and/or the Cooperation Mediator shall be shared equally between Skatteforvaltningen and the Covered Parties' Designees.

e.   The Parties acknowledge that the means of dispute resolution set forth in this Section 10 shall not limit the remedies available to Skatteforvaltningen upon the occurrence of an Event of Default pursuant to Section 5 of this Agreement, or if a matter remains unresolved for any reason twenty-five (25) Business Days after a Party notifies the True-Up Arbitrator or the Cooperation Mediator of a claim, controversy, or dispute in accordance with Section 10(a-c) above. The Parties further acknowledge and agree that, due to the confidential nature of this Agreement and the settlement contemplated herein and the possibility of significant harm in the event of a breach of the Confidentiality and Non-Disparagement Provisions of this Agreement by any Party, nothing in this paragraph will preclude any party from seeking injunctive relief in a Selected Court to prevent any other Party from violating the obligations established in this Agreement.

11.   Notice of Breach and Opportunity to Cure. In the event that either Party asserts that the other is not in compliance with any of its obligations under this Agreement, the asserting Party shall provide the other Party with written notice of that assertion and a ten (10) Business Day opportunity to cure the alleged non-compliance before pursuing any legal remedy specified under this Agreement.

12.   Governing Law and Jurisdiction. This Agreement shall be governed by, construed and interpreted in accordance with the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof. The Parties agree that the exclusive forum for the resolution of any dispute arising out of, in connection with or relating to this Agreement, including any dispute not resolved pursuant to the procedures set forth in Section 10 hereof, shall be the federal and state courts of the State of New York (the "New York Courts"). Each

Party hereby knowingly, voluntarily, irrevocably and unconditionally for itself and its respective property (i) submits to the exclusive jurisdiction of the New York Courts, (ii) waives any objection as to laying of venue in the New York Courts, and (iii) waives any right to a trial by jury in the New York Courts. The Parties further agree that any such dispute shall in the first instance be brought in the United States District Court for the Southern District of New York (the "Selected Court"). To the extent there is a lack of federal subject matter jurisdiction in the Selected Court, the Parties shall bring any disputes arising out of, in connection with or relating to this Agreement in New York State Court, County of New York, and, to the extent consistent with the rules of New York State Court, the Commercial Division of the New York State Court.

13.     No Assignment of Claims. Each of the Parties represents and warrants that, as of the date of this Agreement, he, she or it is the only person or entity who has any interest in any of the Settled Matters released by him, her or it hereby, and that none of such Settled Matters, nor any part thereof, has been assigned, hypothecated, granted, or transferred (a "Transfer") in any way by such Party to any person or entity, including, without limitation, any claims that would be released in full hereunder but for such Transfer. Any assignment of any Settled Matters released hereby shall be null and void. Any purported Transfer, whether past, present or future, shall be null and void without further action.

14.     No Third-Party Beneficiary Rights. This Agreement shall inure solely to the benefit of each Party hereto (as defined in the first paragraph of this Agreement) and its successors and permitted assigns, and nothing in this Agreement, express or implied, shall confer upon any other person or entity any rights, benefits or remedies (including, without limitation, third-party beneficiary rights) of any nature whatsoever.

15.     Further Assurances; Costs. The Parties agree to cooperate in good faith with each other's reasonable requests to effectuate this Agreement and the settlement contemplated herein. Each Party shall at its own expense execute and deliver such writings and take any other actions as may reasonably be requested by the other Party to effectuate the terms of this Agreement. Each Party shall be responsible for any costs it incurs in reviewing, negotiating and executing this Agreement, as well as any and all actions required to effectuate this Agreement and the settlement contemplated herein.

16.     Binding Effect. This Agreement and the acknowledgments contained herein shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective legal heirs, successors and assigns.

17.     Severability; Survival. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party hereto. Upon such a determination, the Parties shall negotiate in good faith to modify this Agreement in accordance with the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible. The Confidentiality and Non-Disparagement Provisions (Sections 8 and 9,

respectively) of this Agreement shall remain in full force and effect notwithstanding the termination of this Agreement or any other provisions thereof.

18.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between and among the Parties relative to the subject matter hereof. This Agreement supersedes any previous agreements or understandings among the Parties, express or implied, with respect to the subject matter hereof, but all prior confidentiality agreements among the Parties shall remain in full force and effect. No amendment, supplement or modification of this Agreement, or waiver of rights hereunder, shall be binding except against a Party that has executed such amendment, supplement or modification in writing.

19.    <u>Construction; No Reliance</u>. This Agreement has been negotiated by the Parties and their respective legal counsel and legal or equitable principles that might require the construction of this Agreement or any of its provisions against the Party responsible for drafting this Agreement will not apply in any construction or interpretation of this Agreement. The Parties acknowledge and agree that they have been represented by their own counsel and advisors in connection with this Agreement, have conducted their own investigations of the relevant facts and circumstances and are not relying on any representations or warranties of any other Party, except for the representations and warranties expressly set forth herein.

20.    <u>Notices</u>. All notices, consents, waivers and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (i) delivered by hand (with written confirmation of receipt), (ii) sent by email (with electronic acknowledgement of receipt), or (iii) sent by a nationally recognized overnight courier with receipt as follows:

Notices to the Covered Parties shall be sent to:

John F. Savarese
Ralph M. Levene
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
jfsavarese@wlrk.com
rmlevene@wlrk.com

James J. Benjamin Jr.
Parvin D. Moyne
Robert H. Pees
Akin, Gump, Strauss, Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, New York 10036
jbenjamin@akingump.com
pmoyne@akingump.com
rpees@akingump.com

James G. Cavoli
George S. Canellos
Milbank LLP
55 Hudson Yards
New York, NY 10001
jcavoli@milbank.com
gcanellos@milbank.com

Notices to Skatteforvaltningen shall be sent to:

William R. Maguire
Marc A. Weinstein
Sarah L. Cave
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
sarah.cave@hugheshubbard.com

Boris Frederiksen
Kammeradvocaten/Poul Schmith
Vester Farimagsgade 23
1606 Copenhagen V
Denmark
+45 72 30 72 22
bor@kammeradvokaten.dk

Notices may also be provided to such other address or addresses subsequently provided to counsel.

21.    Authority.  All attorneys executing this Agreement expressly represent and warrant that they have been given, and have received and accepted, authority to execute this Agreement on behalf of each Party for whom they have signed, and further, have been expressly given and received and accepted authority to enter into a binding agreement on behalf of each such Party with respect to the matters contained herein and as stated herein, and that the consent of no other party is required to bind each such Party.

22.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.  This Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

-18-

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

KAMMERADVOKATEN/POUL SCHMITH

Dated: May ___, 2019

By: _____

Name:  Boris Frederiksen

*Attorney for:*

Skatteforvaltningen


HUGHES HUBBARD & REED LLP

Dated:  May 2Y, 2019

By: _____

Name:  William Maguire

*Attorney for:*

Skatteforvaltningen


SKATTEFORVALTNINGEN

Dated:  May ___, 2019

By: _____

Name: _____

Title: _____

WACHTELL, LIPTON, ROSEN & KATZ

Dated:  May 28, 2019

By:

Name:  John F. Savarese

By:

Name:  Ralph M. Levene

*Attorneys for:*

Matthew Stein

Dated:  May 28, 2019

By:

Name:  Matthew Stein

MILBANK, TWEED, HADLEY & MCCLOY LLP

Dated: May 28, 2019

By: ████████████████████████████

    Name:  James Cavoli

    *Attorney for:*

    Jerome Lhote

████████████████████████████


Dated: May 28, 2019

By: ████████████████████████████

    Name:  Jerome Lhote

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

Dated: May 28, 2019

By: _____

Name: ~~James Benjamin~~ ROBERT H. PEES

*Attorney for:*

Luke McGee


Dated: May 28, 2019

By: _____

Name: Luke McGee

LANKLER, SIFFERT & WOHL LLP

Dated:  May 28, 2019

By: 

    Name:  Gabrielle S. Friedman

    *Attorney for:*





SPEARS & IMES LLP

Dated: May 28, 2019



By:

Name: Linda Imes

*Attorney for:*

MORVILLO, ABRAMOWITZ, GRAND, IASON
& ANELLO PC

Dated:  May 2̲8̲, 2019

By:

Name:  Richard Weinberg

*Attorney for:*

ANDREW M. LAWLER, PC

Dated:  May 25, 2019

By:

Name:  Andrew Lawler

*Attorney for:*

CLAYMAN & ROSENBERG LLP

Dated: May 29, 2019

By: ████████████████████████████

Name: Charles Clayman

*Attorney for:*

████████████████████████████

<u>**Exhibits to Settlement Agreement**</u>

**Exhibit 1:  Covered Parties**

      Exhibit 1A:  Fully released Pension Plans, pension plan partnerships and partners

      Exhibit 1B:  Fully released individuals

      Exhibit 1C:  Partially released individual

**Exhibit 2:  Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest**

**Exhibit 3:  Non-exhaustive list of parties excluded from release**

      Exhibit 3A:  Non-exhaustive list of pension plans excluded from release

      Exhibit 3B:  Non-exhaustive list of individuals excluded from release

      Exhibit 3C:  Non-exhaustive list of other entities excluded from release

**Exhibit 4:  Affidavit of Confession of Judgment**

**Exhibit 5:  Updated Affidavit of Confession of Judgment**

Exhibit 1:  Covered Parties

Exhibit 1A:  Fully released Pension Plans, pension plan partnerships and partners

|     | Pension Plans | Partnerships | Partners |
| --- | --- | --- | --- |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |



29.
30.
31.
32.
33.
34.
35.
36.
37.
38.
39.
40.
41.
42.
43.





-5-



**Exhibit 1B: Fully released individuals**

| | Individuals | |
|---|---|---|
| 1. | ███████████████ | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| 18. | | |
| 19. | | |
| 20. | | |
| 21. | | |
| 22. | | |
| 23. | | |
| 24. | | |
| 25. | | |
| 26. | | |
| 27. | | |
| 28. | Lhote, Jerome | |
| 29. | ███████████████ | |
| 30. | McGee, Luke | |
| 31. | ███████████████ | |
| 32. | | |
| 33. | | |
| 34. | | |
| 35. | | |
| 36. | | |
| 37. | | |
| 38. | | |

-7-

| 39. | ███████████████████ | |
| 40. | | |
| 41. | | |
| 42. | | |
| 43. | | |
| 44. | | |
| 45. | | |
| 46. | Stein, Matthew | |
| 47. | ███████████████████ | |
| 48. | | |
| 49. | | |
| 50. | | |
| 51. | | |
| 52. | | |
| 53. | | |
| 54. | | |
| 55. | | |
| 56. | | |

**Exhibit 1C: Partially released individual**

The following individual is partially released, only for his interest in parties listed on Exhibit 2.



Exhibit 2:  Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest

| | Pension Plans | Partnerships | Partners* |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

| | |
|---|---|
| 11. | |
| 12. | |
| 13. | |
| 14. | |
| 15. | |
| 16. | |
| 17. | |
| 18. | |
| 19. | |



*In all partnerships in which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were partners, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were also partners. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are not included on this list because no Covered Party has an interest in either of those two plans and those two plans are not released.

**Exhibit 3:  Non-exhaustive list of parties excluded from release**

**Exhibit 3A:  Non-exhaustive list of pension plans excluded from release**

|    | Pension Plans |
|----|---------------|
| 1  | Albedo Management LLC Roth 401(K) Plan |
| 2  | Avanix Management LLC Roth 401(K) |
| 3  | Azalea Pension Plan |
| 4  | Ballast Ventures LLC Roth 401(K) Plan |
| 5  | Bareroot Capital Investments LLC Roth 401(K) Plan |
| 6  | Basalt Ventures LLC Roth 401(K) Plan |
| 7  | Batavia Capital Pension Plan |
| 8  | Battu Holdings LLC Roth 401(K) Plan |
| 9  | Bernina Pension Plan |
| 10 | Calypso Investments Pension Plan |
| 11 | Cantata Industries LLC Roth 401(K) Plan |
| 12 | Cavus Systems LLC Roth 401(K) Plan |
| 13 | Cedar Hill Capital Investments LLC Roth 401(K) Plan |
| 14 | Crucible Ventures LLC Roth 401(K) Plan |
| 15 | Dicot Technologies LLC Roth 401(K) Plan |
| 16 | Eclouge Industry LLC Roth 401(K) Plan |
| 17 | Fairlie Investments LLC Roth 401(K) Plan |
| 18 | First Ascent Worldwide LLC Roth 401(K) Plan |
| 19 | Fulcrum Productions LLC Roth 401(K) Plan |
| 20 | Green Scale Management LLC Roth 401(K) Plan |
| 21 | Hadron Industries LLC Roth 401(K) Plan |
| 22 | Keystone Technologies LLC Roth 401(K) Plan |
| 23 | Limelight Global Productions LLC Roth 401(K) Plan |
| 24 | Loggerhead Services LLC Roth 401(K) Plan |
| 25 | Monomer Industries LLC Roth 401(K) Plan |
| 26 | Omineca Pension Plan |
| 27 | PAB Facilities Global LLC Roth 401(K) Plan |
| 28 | Pinax Holdings LLC Roth 401(K) Plan |
| 29 | Plumrose Industries LLC Roth 401(K) Plan |
| 30 | RJM Capital LLC Pension Plan |
| 31 | Roadcraft Technologies LLC Roth 401(K) Plan |
| 32 | Routt Capital Pension Plan |
| 33 | Starfish Capital Management LLC Roth 401(K)Plan |
| 34 | Sternway Logistics LLC Roth 401(K) Plan |
| 35 | Tarvos Pension Plan |
| 36 | Trailing Edge Productions LLC Roth 401(K) Plan |

| 37 | True Wind Investments LLC Roth 401(K) Plan |
| 38 | Tumba Systems LLC Roth 401(K) Plan |
| 39 | Voojo Productions LLC Roth 401(K) Plan |

**Exhibit 3B: Non-exhaustive list of individuals excluded from release**

|  | Individuals |
|---|---|
| 1 | ███████████ |
| 2 | Ben-Jacob, Michael |
| 3 | Burns, Alexander |
| 4 | Altbach, Ronald |
| 5 | Herman, Joseph |
| 6 | ███████████ |
| 7 | Jones, Robin |
| 8 | Lerner, Perry |
| 9 | Markowitz, Jocelyn |
| 10 | Markowitz, Richard |
| 11 | Van Merkensteijn, Elizabeth |
| 12 | Van Merkensteijn, John |
| 13 | Zelman, David |

**Exhibit 3C: Non-exhaustive list of other entities excluded from release**

|  | Entity |
|---|---|
| 1 | ███████████ |
| 2 | ███████████ |
| 3 | ███████████ |

Skatteforvaltningen expressly reserves all rights to pursue all persons and entities for all claims that are not released pursuant to this Settlement Agreement, including but not limited to all claims against defendants that Skatteforvaltningen has sued in the United States, the United Kingdom, Denmark, Dubai, Malaysia, or any other jurisdiction.

**Exhibit 4: Affidavit of Confession of Judgment**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SKATTEFORVALTNINGEN,

                    Plaintiff,

                    v.

Jerome Lhote, Luke McGee and Matthew Stein,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.

<u>AFFIDAVIT OF CONFESSION OF JUDGMENT</u>

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NEW YORK  )

We, Jerome Lhote, Luke McGee and Matthew Stein, being duly sworn, depose and say:

        1.      We are the defendants in the matter of *SKATTEFORVALTNINGEN* v. *Jerome Lhote, Luke McGee and Matthew Stein*. Jerome Lhote resides in New York County. Luke McGee resides in Philadelphia County and authorizes entry of this Confession of Judgment in New York County. Matthew Stein resides in New York County.

        2.      We hereby confess judgment and authorize entry of judgment against ourselves jointly and severally and in favor of the plaintiff in this Court, for the following amount (the "Judgment Amount"):

        (a) the Subsequent Cash Payment Amount, which is the sum of six hundred million (600,000,000) Danish Kroner and the True-Up Amount determined pursuant to Section 2(e)(iii) of the Settlement Agreement, dated May 28, 2019, attached hereto as Exhibit A, (hereinafter "Settlement Agreement"),

(b) less any payments made through the Default Date to fund the Subsequent Cash Payment Amount pursuant to the Settlement Agreement,

(c) plus Applicable Interest, calculated pursuant to Section 2(d)(ii) of the Settlement Agreement, as of the Default Date,

(d) plus Applicable Interest, calculated pursuant to Section 5(d)(iii) of the Settlement Agreement.

3.      We agree that the Judgment Amount shall be set forth in an affidavit to be executed by the plaintiff or an affirmation by such plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment (hereinafter, "Affidavit").

4.      This confession of judgment is for a debt justly due to the plaintiff arising out of the following facts:  The plaintiff and the defendants were parties (each individually, a "Party" and collectively, the "Parties") to the Settlement Agreement pursuant to which, among other things, the plaintiff agreed to release the defendants from all claims related to applications to reclaim taxes withheld from dividends paid on Danish company shares owned or allegedly owned by certain pension plans between 2012 and 2015, as to which Skatteforvaltningen paid an amount in excess of 4,100,000,000 Danish Kroner, in return for, among other things, the defendants' payment of the Final Settlement Amount pursuant to the terms set forth in the Settlement Agreement.

5.      The Parties agree that in an Event of Default, pursuant to Section 5(c) of the Settlement Agreement, the plaintiff is authorized to file this Affidavit and seek immediate entry of judgment for the Judgment Amount set forth in this Affidavit.

6.      This confession of judgment is not for the purpose of securing the plaintiff against a contingent liability.

7.      We hereby consent to the jurisdiction of the Supreme Court of the State of New York, New York County, Commercial Division, the United States District Court for the Southern District of New York; and/or any other court or tribunal in any other jurisdiction, including any jurisdiction outside the United States, where assets belonging to us may be found.

8.      We hereby consent to and agree to accept service of process related to this matter by regular United States mail at any location at which we, respectively, reside, or at our respective places of business, including, without limitation, to Ralph Levene, Esq., Wachtell, Lipton, Rosen & Katz, 51 W. 52nd Street, Floor 34, New York, New York 10019.

Signed and sworn before me
this _____ day of _____

_____        By:_____
Notary Public                                         Jerome Lhote


Signed and sworn before me
this _____ day of _____

_____        By:_____
Notary Public                                         Luke McGee


Signed and sworn before me
this _____ day of _____

_____        By:_____
Notary Public                                         Matthew Stein

**Exhibit 5:  Updated Affidavit of Confession of Judgment**

EXECUTION COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SKATTEFORVALTNINGEN,

                    Plaintiff,

                    v.

Jerome Lhote, Luke McGee and Matthew Stein,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.

UPDATED AFFIDAVIT OF
CONFESSION OF JUDGMENT

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

We, Jerome Lhote, Luke McGee and Matthew Stein, being duly sworn, depose and say:

        1.      We are the defendants in the matter of *SKATTEFORVALTNINGEN*

v. *Jerome Lhote, Luke McGee and Matthew Stein*.  Jerome Lhote resides in New York

County.  Luke McGee resides in Philadelphia County and authorizes entry of this

Confession of Judgment in New York County.  Matthew Stein resides in New York

County.

        2.      We hereby confess judgment and authorize entry of judgment

against ourselves jointly and severally and in favor of the plaintiff in this Court, for the

following amount (the "Judgment Amount"):

        (a) the Subsequent Cash Payment Amount, which is the sum of six

        hundred million (600,000,000) Danish Kroner and the True-Up Amount

        determined pursuant to Section 2(e)(iii) of the Settlement Agreement,

        dated May 28, 2019, attached hereto as Exhibit A, (hereinafter "Settlement

        Agreement"),

(b) less any payments made through the Default Date to fund the
Subsequent Cash Payment Amount pursuant to the Settlement Agreement,

(c) plus Applicable Interest, calculated pursuant to Section 2(d)(ii) of the
Settlement Agreement, as of the Default Date,

(d) plus Applicable Interest, calculated pursuant to Section 5(d)(iii) of the
Settlement Agreement.

3.      We agree that the Judgment Amount shall be set forth in an
affidavit to be executed by the plaintiff or an affirmation by such plaintiff's attorney,
which shall be attached hereto at the time of entry of this Affidavit of Confession of
Judgment (hereinafter, "Affidavit").

4.      This confession of judgment is for a debt justly due to the plaintiff
arising out of the following facts:  The plaintiff and the defendants were parties (each
individually, a "Party" and collectively, the "Parties") to the Settlement Agreement
pursuant to which, among other things, the plaintiff agreed to release the defendants from
all claims related to applications to reclaim taxes withheld from dividends paid on Danish
company shares owned or allegedly owned by certain pension plans between 2012 and
2015, as to which Skatteforvaltningen paid an amount in excess of 4,100,000,000 Danish
Kroner, in return for, among other things, the defendants' payment of the Final
Settlement Amount pursuant to the terms set forth in the Settlement Agreement.

5.      The Parties agree that in an Event of Default, pursuant to Section
5(c) of the Settlement Agreement, the plaintiff is authorized to file this Affidavit and seek
immediate entry of judgment for the Judgment Amount set forth in this Affidavit.

6.      This confession of judgment is not for the purpose of securing the
plaintiff against a contingent liability.

7.    We hereby consent to the jurisdiction of the Supreme Court of the State of New York, New York County, Commercial Division, the United States District Court for the Southern District of New York; and/or any other court or tribunal in any other jurisdiction, including any jurisdiction outside the United States, where assets belonging to us may be found.

8.    We hereby consent to and agree to accept service of process related to this matter by regular United States mail at any location at which we, respectively, reside, or at our respective places of business, including, without limitation, to Ralph Levene, Esq., Wachtell, Lipton, Rosen & Katz, 51 W. 52nd Street, Floor 34, New York, New York 10019.

Signed and sworn before me
this _____ day of _____


_____          By:_____
Notary Public                                            Jerome Lhote




Signed and sworn before me
this _____ day of _____


_____          By:_____
Notary Public                                            Luke McGee




Signed and sworn before me
this _____ day of _____


_____          By:_____
Notary Public                                            Matthew Stein