Message

| | |
|---|---|
| **From:** | Bettina Spang [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CFF572A2B9044C0D9018247288F92B15-W27654] |
| **Sent:** | 1/22/2021 9:26:00 AM |
| **To:** | Steen Bechmann Jacobsen [steen.jacobsen@sktst.dk] |
| **CC:** | Gry Ahlefeld-Engel [gry.ahlefeld-engel@sktst.dk]; Bettina Spang [bettina.spang@sktst.dk] |
| **Subject:** | VS: Haster - anmodning om udlevering af forligsaftale |
| **Attachments:** | Brev til Skattestyrelsen_udlevering af forlig.pdf; Svar til SØIK vedr. forlig med 61 pensionsplaner m.fl (Endelig) .pdf; Pkt. 8 om fortrolighed.pdf |

Kære Steen

SØIK er nu vendt tilbage ift. den besvarelse, som vi sendte til dem i mandags (jf. vedhæftede). SØIK ønsker nu at få udleveret hele forligsaftalen.

Jeg går ud fra, at SØIK er berettiget til at få udleveret forligsaftalen, jf. punkt 8 (f) i forligsaftalen.

Jeg tænker derfor at udarbejde et brev, hvor vi fremsender selve forligsaftalen og hvor jeg samtidig skriver: " For god ordens skyld bemærkes, at forligsaftalen skal behandles med fortrolighed, hvilket indebærer, at SØIK ikke må videregive oplysningerne udover hvad der følger af forpligtelserne efter retsplejeloven ligesom Skattestyrelsen skal anmode om at blive hørt i tilfælde af fremtidige aktindsigtsbegæringer."

Venlig hilsen

**Bettina Spang**
Chefkonsulent
Ledelsessekretariat Særlig Kontrol

+45 72 37 44 69
Bettina.Spang@sktst.dk

 **SKATTE** STYRELSEN

Skattestyrelsen
Helgeshøj Allé 9, 2630 Taastrup
www.sktst.dk

Sådan behandler vi persondata
Skattestyrelsen er en del af Skatteforvaltningen

**Fra:** SWI007@politi.dk <SWI007@politi.dk>
**Sendt:** 22. januar 2021 10:15
**Til:** Bettina Spang <Bettina.Spang@sktst.dk>
**Emne:** Haster - anmodning om udlevering af forligsaftale

Denne e-mail kommer fra internettet og er således ikke nødvendigvis fra en intern kilde selvom afsenderadresse kan indikere det.

Kære Bettina

CONFIDENTIAL

SKAT_MAPLEPOINT_00000098


23 Civ. 2508 (NRB)
**PLAINTIFFS' EXHIBIT**
**131**



Hermed fremsendes en ny anmodning af d.d. fra SØIK.

Jeg skal anmode om at modtage svar fra Skattestyrelsen snarest muligt og senest den 29. januar 2021. Jeg beklager den korte frist.

Med venlig hilsen

**Stine Winther**
specialanklager

Mobil: +45 61 12 69 79
Mail: swi007@politi.dk



**STATSADVOKATEN**

Statsadvokaten for Særlig Økonomisk og International Kriminalitet

Kampmannsgade 1
DK-1604 København V
Tlf.:    +45 72 68 90 00
Fax:    +45 4515 0016
Mail:   saoek@ankl.dk

**Fra:** Bettina Spang <Bettina.Spang@sktst.dk>
**Sendt:** 19. januar 2021 10:17
**Til:** Winther, Stine (SWI007) <SWI007@politi.dk>
**Cc:** Bettina Spang <Bettina.Spang@sktst.dk>
**Emne:** Anmodning fra SØIK vedr. forlig

Til SØIK:

Hermed fremsendes Skattestyrelsens besvarelse af d.d. af jeres anmodning nedenfor.

Venlig hilsen

**Bettina Spang**
Chefkonsulent
Ledelsessekretariat Særlig Kontrol

+45 72 37 44 69
Bettina.Spang@sktst.dk



Skattestyrelsen
Helgeshøj Allé 9, 2630 Taastrup
www.sktst.dk

Sådan behandler vi persondata
Skattestyrelsen er en del af Skatteforvaltningen

**Fra:** SWI007@politi.dk <SWI007@politi.dk>
**Sendt:** 6. januar 2021 10:03
**Til:** Camilla Lindrum Bay <Camilla.Bay@sktst.dk>
**Emne:** Anmodning om oplysninger vedr. Skattestyrelsens forlig

 Denne e-mail kommer fra internettet og er således ikke nødvendigvis fra en intern kilde selvom afsenderadresse kan indikere det.

Vedhæftet fremsendes Statsadvokaten for Særlig Økonomisk og International Kriminalitets anmodning af 6. januar 2021 om oplysninger vedr. Skattestyrelsens forlig.

Jeg skal anmode om at modtage Skattestyrelsens svar snarest muligt, og meget gerne inden den 15. januar 2021.

Med venlig hilsen

**Stine Winther**
specialanklager

Mobil: +45 61 12 69 79
Mail: swi007@politi.dk


**STATSADVOKATEN**

Statsadvokaten for Særlig Økonomisk og International Kriminalitet

Kampmannsgade 1
DK-1604 København V
Tlf.:    +45 72 68 90 00
Fax:    +45 4515 0016
Mail:  saoek@ankl.dk

SKAT_MAPLEPOINT_00000100

♛

**STATSADVOKATEN**

Skattestyrelsen

Dato: 22. januar 2021
J.nr.: SØK-10177-00037-19
Sagsbehandler: SWI

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

KAMPMANNSGADE 1
1604 KØBENHAVN V

TELEFON 72 68 90 00

E-mail: saoek@ankl.dk
www.anklagemyndigheden.dk
www.politi.dk

## Anmodning om fremsendelse af forligsaftalen

Ved brev af 6. januar 2021 anmodede Statsadvokaten for Særlig Økonomisk og International Kriminalitet (SØIK) Skattestyrelsen om at besvare spørgsmål vedrørende den forligsaftale, som Skattestyrelsen indgik i maj 2019 med 61 amerikanske pensionsplaner og en række dertil knyttede personer og selskaber.

SØIK modtog Skattestyrelsens besvarelse heraf den 19. januar 2021. I besvarelsen vedhæftede Skattestyrelsen et uddrag om fortrolighed (punkt 8) fra selve forligsaftalen.

Under henvisning til uddraget om fortrolighed, hvoraf fremgår (pkt. 8f), at Skattestyrelsen kan udlevere forligsaftalen til SØIK efter anmodning, skal jeg hermed anmode om, at Skattestyrelsen udleverer forliget til brug for den videre efterforskning af de anmeldelser, som SØIK har modtaget fra det daværende SKAT (nu Skattestyrelsen) vedrørende formodet bedrageri begået over for SKAT, hvorved SKAT led et samlet tab på ca. 12,7 mia. kr.

Det bemærkes i den forbindelse, at der som led i efterforskningen er indhentet flere beslaglæggelseskendelser. På baggrund af Skattestyrelsens besvarelse af 19. januar 2021 kan det konstateres, at flere af kendelserne er rettet mod personer, som er omfattet af forligsaftalen. Idet disse beslaglæggelseskendelser nu er kæret til landsret-

SKAT_MAPLEPOINT_00000101

ten netop under henvisning til forligsaftalen, skal jeg anmode om at modtage forligsaftalen snarest muligt og meget gerne senest den 29. januar 2021.

Såfremt Skattestyrelsen har spørgsmål til denne anmodning, kan henvendelse rettes til specialanklager Stine Winther, tlf. 61126979 eller via e-mail: swi007@politi.dk.


Med venlig hilsen

Malene Stage Christensen
vicestatsadvokat, fg.

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

SIDE 2

CONFIDENTIAL

☖ **SKATTE**
STYRELSEN

Statsadvokaten for Særlig Økonomisk og International Kriminalitet
Att.: Vicestatsadvokat Malene Stage Christensen og specialanklager Stine Winther

Sendt pr. e-mail: swi007@politi.dk

**Ledelsessekretariat Særlig Kontrol**

Helgeshøj Allé 9
2630 Taastrup

Telefon 72 22 18 18
Skat.dk

Vores sagsnr. 21-0608933

Dato: 19. januar 2021

## Anmodning om oplysninger vedrørende Skattestyrelsens forlig

Ved brev af 6. januar 2021 har Statsadvokaten for Særlig Økonomisk og International Kriminalitet (SØIK) anmodet Skattestyrelsen om at besvare nedenstående spørgsmål vedrørende det forlig, som Skattestyrelsen indgik i maj 2019 med 61 amerikanske pensionsplaner og en række dertil knyttede personer og selskaber.

SØIK har oplyst at Skattestyrelsens besvarelse skal benyttes til brug for SØIKs videre efterforskning af de anmeldelser, som SØIK har modtaget fra det daværende SKAT (nu Skattestyrelsen) vedrørende formodet bedrageri begået overfor SKAT, hvorved SKAT led et samlet tab på ca. 12,7 mia. kr.

1. Hvilke fysiske og juridiske personer har Skattestyrelsen indgået det omhandlende forlig med?
2. Hvilke refusioner er omfattet af forliget (eksempelvis ved angivelse af SKAT's bundtnumre)?
3. Hvordan er forligssummen sammensat (indgår der eksempelvis erstatning af andre udgifter end den modtagne udbytterefusion)?
4. Hvor stor en andel af den samlede forligssum på 1,6 mia. kr. er indbetalt til Skattestyrelsen, og hvornår er det resterende beløb forfaldent til betaling?
5. Hvilke fordringer er indbetalingerne afskrevet på?
6. Er fordringer ud over forligsbeløbet eftergivet, og i så fald på hvilken måde?
7. Er forliget et udtryk for en endelig afgørelse af den civile sag, eller vil der senere kunne opstå yderligere erstatningskrav rettet mod forligsparterne?
8. Har Skattestyrelsen modtaget sikkerhed for opfyldelse af forliget, herunder garantier, pant eller lignende? Har Skattestyrelsen i givet fald foretaget nogen form for sikringsakt i den forbindelse?
9. Har Skattestyrelsen fortsat et erstatningskrav i sagen, og i så fald mod hvem og med hvilke beløb?

SØIK har endelig anmodet om oplysning om hvilke eventuelle tavshedsklausuler, der er aftalt i forliget.

CONFIDENTIAL                                                        SKAT_MAPLEPOINT_00000103

*Ad. 1.*

Skattestyrelsen indgik i maj 2019 et forlig med en gruppe på 61 amerikanske pensions-
planer samt en række dertil knyttede selskaber og personer. Der henvises til vedhæftede
exhibit 1a – 1c til forligsaftalen. I forhold til denne gruppe af pensionsplaner m.fl. in-
debar forliget, at Skattestyrelsen frafaldt yderligere krav mod denne gruppe mod, at der
til Skattestyrelsen blev betalt et beløb svarende til, hvad der til denne gruppe direkte
eller indirekte var udbetalt baseret på de af de 61 pensionsplaner indsendte ansøgninger
om refusion.

For en yderligere gruppe på 19 pensionsplaner, der delvist var ejet af personer, der
indgik i gruppen omkring de 61 pensionsplaner indebar forliget også, at der i forhold
til disse personer skete tilbagebetaling af de beløb, der ud af udbetalingen til de 19
pensionsplaner var tilgået disse personer. Der henvises herom til exhibit 2 til forligsaf-
talen. Forliget afskar ikke Skattestyrelsen fra at fastholde eller rejse krav overfor de 19
pensionsplaner eller overfor de personer, der var medejere eller lignende af pensions-
planerne og som ikke indgik i gruppen omkring de 61 pensionsplaner. Der er anlagt
retssager med de 19 pensionsplaner og disse øvrige personer.

*Ad. 2.*

Forliget omfatter samlede udbetalinger til de 61 pensionsplaner på kr. 2.937.851.407.

Som ovenfor anført har nogle af forligsparterne – ud over at modtage en del af refusions-
beløbet på de cirka 2,9 mia. kr. – også deltaget i tilbagesøgningen af refusionsbeløb via 19
andre amerikanske pensionsplaner, som ikke er en del af forliget. Disse 19 pensionsplaner
har selvstændigt tilbagesøgt cirka 1,2 mia. kr.

Forliget omfatter også en opgivelse af krav mod personerne bag de 61 pensionsplaner
i forhold til den mindre del de havde modtaget ud af udbetalinger til de 19 pensions-
planer for samlet 1.179.089.882. Dette sker mod tilbagebeting af det mindre beløb, som
de pågældende personer direkte eller indirekte har modtaget fra disse ansøgninger.

*Ad. 3.*

Forliget vedrører alene de udbetalte refusioner.

*Ad. 4.*

Skattestyrelsen kan oplyse, at der i relation til forligsummen på 1,6 mia. kr. er indbetalt
henholdsvis 950 mio. kr. i 2019 og ca. 35 mio. kr. i 2020.

Resten af forligsbeløbet skal betales over en periode på op til 4 år efter aftalens indgåelse,
dvs. senest i maj 2023.

*Ad. 5.*

De indbetalte beløb vil – når den endelige opgørelse af forligsbeløbet foreligger – blive
afskrevet på de tilbagebetalingskrav mv., som Skattestyrelsen har mod de enkelte pen-
sionsplaner.

*Ad. 6.*

Forliget indebærer, at Skattestyrelsen mod betaling af forligsbeløbet frafalder yderligere
krav mod de 61 pensionsplaner og den dertil hørende kreds af personer og selskaber,

CONFIDENTIAL    SKAT_MAPLEPOINT_00000104

der er forligsparter. Skattestyrelsen har ikke frafaldet krav overfor andre pensionspla-ner, personer eller selskaber.

For de 19 pensionsplaner indebærer aftalen, at kravet mod de 19 pensionsplaner m.fl. reduceres med det mindre beløb ud af forligsbeløbet, der kan henføres til udbetalinger til de 19 pensionsplaner.

*Ad. 7.*

Skattestyrelsen kan oplyse, at styrelsen mod at modtage en samlet forligssum på 1,6 mia. kr. (med forbehold for justeringer som følge af forligssummens efterprøvelse) har forpligtet sig til at frafalde alle civile krav, som styrelsen måtte have mod forligsparterne som led i udbyttesagskomplekset, jf. ovenfor under spørgsmål 1.

Dette afskærer dog ikke Skattestyrelsen fra at rejse andre krav overfor forligsparterne eller andre, såfremt det efterfølgende måtte vise sig, at parterne har været involveret i andre an-søgninger om refusion end de i forliget omfattede.

*Ad. 8.*

Skattestyrelsen kan oplyse, at styrelsen ikke har modtaget sikkerhed for opfyldelse af forli-get, herunder garantier, pant eller lignende.

I tilfælde af, at der ikke sker betaling af den resterende forligssum har Skattestyrelsen som en del af forliget modtaget en "Confession of judgment" svarende til et retsforlig fra visse af forligsparterne på restbeløbet således disse hæfter direkte og personligt for betaling af den fulde forligssum.

*Ad. 9.*

Skattestyrelsen har forsat et krav i sagen, der modsvarer de fulde udbetalinger, dog så-ledes, at kravet vil skulle reduceres med det som følge af forliget modtagne beløb, når det er endeligt opgjort og modtaget. Det endelige forligsbeløb kendes pt. endnu ikke. Skattestyrelsen forfølger aktuelt det samlede krav ved sagsanlæg i USA, Canada, Eng-land, Dubai og Malaysia. Kravene i disse sager er kvalificeret forskelligt i de respektive jurisdiktioner men har karakter af hvad, der efter dansk ret vil svare til enten tilbage-søgningskrav eller civile erstatningskrav.

Skattestyrelsens skal endelig i forhold til SØIK´s spørgsmål om eventuelle aftalte tavsheds-klausuler henvise til vedhæftede uddrag om fortrolighed (punkt 8) fra selve forligsaftalen.

For god ordens skyld bemærkes sluttelig, at de vedhæftede exhibits samt uddrag fra selve forligsaftalen skal behandles med fortrolighed, hvilket indebærer, at SØIK ikke må videre-give oplysningerne udover hvad der følger af forpligtelserne efter retsplejeloven ligesom Skattestyrelsen skal anmode om at blive hørt i tilfælde af fremtidige aktindsigtsbegæringer.

Med venlig hilsen


Steen Bechmann Jacobsen
Fagdirektør

Side 4 / 4

SKAT_MAPLEPOINT_00000106

8.  <u>Confidentiality</u>. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

    a.  Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

    b.  Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra;* (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to ( which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

    c.  In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available measures and remedies to prevent such disclosure, including, without !imitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

    d.  The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement.

SKAT_MAPLEPOINT_00000107

e.  The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f.  Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

Message

| From: | Bettina Spang [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTSCN=CFF572A2B9044C0D9018247288F92B15-W27654] |
|---|---|
| **Sent:** | 1/22/2021 9:26: 00 AM |
| **To:** | Steen Bechmann Jacobsen [steen.jacobsen@sktst.dk] |
| **CC:** | Gry Ahlefeld-Engel [gry.ahlefeld-engel@sktst.dk]; Bettina Spang   [bettina.spang@sktst.dk] |
| **Subject:** | FW: Urgen t - request to forward  settlement agreement |
| **Attachments:** | Letter  to the Danish Tax Agency_forward    of settlement.pdf; Response to SØIK regarding settlement with 61 pension plans et al. (Final).pdf; Section 8 on confidentiality.pdf |

Dear Steen

SØIK has now gotten back to the response we sent them on Monday (see attached). SØIK now wants to be provided the entire settlement agreement.

I assume that SØIK is entitled to be provided the settlement agreement, see point 8(f) of the settlement agreement.

I am thinking to write a letter where we forward the settlement agreement itself and where I also write: "For the record it should be noted that the settlement agreement must be handled with confidentiality, which means that SØIK must not must not forward the information in addition to the obligations that follow under the Administration of Justice Act, just as the Danish Tax Agency must request to be heard in the event of future requests for document access."

<div style="border:1px dashed black; text-align:center;">

## Redacted for Privilege

</div>

Best regards

**Bettina Spang**
Chief Consultant
Executive Secretariat Special Audit

+45 72 37 44 69
Bettina.Spang@sktst.dk



The Danish  Tax Agency
Helgeshøj All é 9, 2630 Taastrup
www.sktst.dk

This is ho w we handle personal d ata
The Danish Tax Agency is part  of the Danish T ax Administration

**From:** SWI007@politi.dk <SWI007@politi.dk>
**Sent:** Fri 22-01-2021 9:14:41 (UTC)
**To:** Bettina Spang <Bettina.Spang@sktst.dk>
**Subject:** Urgent - request to forward settlement agreement

This email comes from the internet and is therefore not necessarily from an internal source even though the sender address can indicate that.

Dear Bettina

Please find attached a new request from SØIK of today's date.

I must ask that the Danish tax Agency's response be received as soon as possible, and latest by January 29, 2021. I apologize for the short deadline.

With best regards

**Stine Winther**
Special Prosecutor

Mobile: +45 61 12 69 79
Email: swi007@politi.dk



STATSADVOKATEN

The Public Prosecutor for Special Financial and International Crimes

Kampmannsgade 1
DK-1604 København V
Tel.:      +45 72 68 90 00
Fax:      +45 4515 0016
Email:  saoek@ankl.dk

**From:** Bettina Spang <Bettina.Spang@sktst.dk>
**Sent:** 19 January 2021 10:17
**To:** Winther, Stine (SWI007) <SWI007@politi.dk>
**Cc:** Bettina Spang <Bettina.Spang@sktst.dk>
**Subject:** Request from SØIK re settlement

<u>To SØIK:</u>

Please find attached the Danish Tax Agency's response of today's date to your below request.

Best regards

**Bettina Spang**
Chief Consultant
Executive Secretariat Special Audit

+45 72 37 44 69
Bettina.Spang@sktst.dk



The Danish Tax Agency
Helgeshøj Allé 9, 2630 Taastrup
www.sktst.dk

This is how we handle personal data
The Danish Tax Agency is part of the Danish Tax Administration

**From:** SWI007@politi.dk <SWI007@politi.dk>
**Sent:** 6 January 2021 10:03
**To:** Camilla Lindrum Bay <Camilla.Bay@sktst.dk>
**Subject:** Request for information re the Danish Tax Agency's settlement

 This email comes from the internet and is therefore not necessarily from an internal source even though the sender address can indicate that.

Forwarded here as attachment is the January 6, 2021, request from The Public Prosecutor for Special Financial and International Crimes for information regarding the Danish Tax Agency's settlement.

I must ask that the Danish tax Agency's response be received as soon as possible, and preferably before January 15, 2021.

With best regards

**Stine Winther**
Special Prosecutor

Mobile: +45 61 12 69 79
Email: swi007@politi.dk



STATSADVOKATEN

The Public Prosecutor for Special Financial and International Crimes

Kampmannsgade 1
DK-1604 København V
Tel.:   +45 72 68 90 00
Fax:    +45 4515 0016
Email:  saoek@ankl.dk

CONFIDENTIAL



**STATSADVOKATEN**

The Danish Tax Agency

Date:  January 22, 2021
J.nr.: SØK-10177-00037-19
Case officer:  SWI

STATE PROSECUTOR FOR SPECIAL
ECONOMIC AND INTERNATIONAL CRIME

KAMPMANNSGADE                    1
1604 COPENHAGEN  V

TELEPHONE 72 68 90 00

E-mail: saoek@ankl.dk
www.anklagemyndigheden.dk www.p
oliti.dk

## Request to forward the settlement agreement

By letter dated January 6, 2021 the State Prosecutor for Special Economic and International Crime (SØIK) requested the Danish Tax Agency to answer questions regarding the settlement agreement the Danish Tax Agency entered into in May 2019 with 61 American pension plans and a number of associated individuals and companies.

SØIK received the Danish Tax Agency's answer to the request on January 19, 2021. In the response, The Danish Tax Agency attached an excerpt on confidentiality (point 8) from the actual settlement agreement.

With reference to the excerpt on confidentiality from which it appears that the Danish Tax Agency can forward the settlement agreement to SØIK by request, I hereby request that the Danish Tax Agency forward the settlement agreement for use in the further investigation of the reports, SØIK has received from the former SKAT (now the Danish Tax Agency) regarding the alleged fraud committed against SKAT, whereby SKAT suffered a total loss of approximately DKK 12.7 billion.

In this regard, it is noted that, as part of the investigation, several seizure orders have been obtained. Based on the Danish Tax Agency's respond dated January 19, 2021, it can be concluded that several seizure orders have been directed towards individuals who are part of the settlement agreement. As those seizure orders have now been appealed to the Danish High Court with reference to the settlement agreement, I hereby request to receive the settlement agreement as soon as possible, and preferably no later than January 29, 2021.

If the Danish Tax Agency has questions to this request, they  can direct them to special prosecutor Stine Winther, telephone 61126979 or by e-mail: swi007@politi.dk.

Kind regards

Malene Stage Christensen vice State Prosecutor of Copenhagen, fg.

STATE PROSECUTOR FOR SPECIAL ECONOMIC AND INTERNATIONAL CRIME

SIDE 2

CONFIDENTIAL

SKAT_MAPLEPOINT_00000101_T

♛ **SKATTE**

The Public Prosecutor for Special Financial and International Crimes
Att.: Deputy Prosecutor Malene Stage Christensen and Special Prosecutor Stine
Winther

Sent via email: swi007@politi.dk

**Executive Secretariat Special
Audit**

Helgeshøj Allé 9
2630 Taastrup

Telephone 72 22 18 18
Skat.dk

Our case nr. 21-0008933

Date: 19 January 2021

**Request for Information regarding the Danish Tax Agency's Settlement**

By letter of 6 January 2021, The Public Prosecutor for Special Financial and International
Crimes (SØIK) has requested that the Danish Tax Agency respond to the questions below
regarding the settlement that the Danish Tax Agency entered into in May 2019 with 61 US
pension plans and a number of related individuals and companies.

SØIK has stated that the Danish Tax Agency's response will be used for SØIK's
continuing investigation of the notifications that SØIK received from the former SKAT
(now the Danish Tax Agency) regarding suspected fraud committed against SKAT,
whereby SKAT suffered a total loss of around DKK 12.7 billion.

1. Which natural or legal persons has the Danish Tax Agency entered into the
   referenced settlement with?
2. Which refunds are covered by the settlement (for example by indication of
   SKAT's batch number)?
3. How is the settlement sum composed (does it include for example reimbursement
   of expenses other than the received dividend refunds)?
4. How much of the total settlement sum of DKK 1.6 billion has been paid to the
   Danish Tax Agency, and when does the remaining amount fall due for payment?
5. Which claims are the payments written off against
6. Are claims beyond the settlement amount waived, and if so in what manner?
7. Is the settlement an expression of a final decision in the civil case, or will further
   compensation claims against the settlement parties arise later?
8. Has the Danish Tax Agency been provided with security for fulfillment of the
   settlement, including guarantees, collateral or the like? In such event, has the
   Danish Tax Agency undertaken any form of perfection in this regard?
9. Has the Danish Tax Agency pursued a compensation claim in the case, and if so,
   against whom and for what amount?

Lastly, SØIK requested information about what, if any, confidential clauses have been
agreed to in the settlement.

Side 1 / 3

*Ad. 1.*

In May 2019, the Danish Tax Agency entered into a settlement with a group of 61 US pension plans and a number of related companies and individuals. Reference is made to the attached exhibits 1a – 1c to the settlement agreement. In relation to this group of pension plans etc., the settlement meant that the Danish Tax Agency waived further claims against this group in exchange for the Danish Tax Agency being paid an amount corresponding to what had been directly or indirectly paid out to this group based on the refund applications submitted by the 61 pension plans.

For an additional group of 19 pension plans that were partly owned by individuals included in the group of around 61 pension plans, the settlement also meant that, in relation to these individuals, repayment was made of the amounts paid out to the 19 pension plans that went to these individuals. In this regard, reference is made to exhibit 2 to the settlement agreement. The settlement did not prevent the Danish Tax Agency from maintaining or raising claims against the 19 pension plans or against the individuals who were co-owners or the like of the pension plans and who were not included in the group of around 61 pension plans. Legal actions have been filed against the 19 pension plans and these other individuals.

*Ad. 2.*

The settlement includes total payments to the 61 pension plans of DKK 2,937,851,407.

As stated above, in addition to receiving part of the refund amount of approximately DKK 2.9 billion, some of the settlement parties also participated in claiming refund amounts via 19 other American pension plans that are not part of the settlement. These 19 pension plans were independently refunded approximately DKK 1.2 billion.

The settlement also includes a waiver of claims against the individuals behind the 61 pension plans in relation to the smaller part they received from payments to the 19 pension plans for a total of DKK 1,179,089,882. This is done against repayment of the lesser amount that the individuals in question directly or indirectly received from these applications.

*Ad. 3.*

The settlement concerns only the refunds paid out.

*Ad. 4.*

The Danish Tax Agency can state that in relation to the settlement sum of DKK 1.6 billion has been repaid, respectively DKK 950 million in 2019 and approx. DKK 35 million in 2020.

The rest of the settlement amount is to be paid over a period of up to four years after the agreement is entered into, i.e. no later than May 2023.

*Ad. 5.*

Once the final calculation of the settlement amount is available, the repaid amount will be set off against the compensation claim, etc., that the Danish Tax Agency has against each individual pension plan.

*Ad. 6.*

The settlement provides that, against payment of the settlement amount, the Danish Tax Agency waives additional claims against the 61 pension plans and the respective circle of

CONFIDENTIAL

SKAT_MAPLEPOINT_00000103_T

individuals and companies that are parties to the settlement. The Danish Tax Agency has not waived claims against other pension plans, individuals, or companies.

For the 19 pension plans, the agreement provides that the claim against the 19 pension plans, etc., be reduced by the lesser amount from the settlement amount that can be attributed to payments made to the 19 pension plans.

*Ad. 7.*
The Danish Tax Agency can state that, against receipt of a total settlement sum of DKK 1.6 billion (subject to adjustment following verification of the settlement sum), the agency is committed to waive all civil claims that the agency may have against the settlement parties as part of the dividend case complex, as provided above under question 1.

This does not prevent the Danish Tax Agency from raising other claims against settlement parties or others, if it is subsequently shown that the parties have been involved in other refund requests than those covered in the settlement.

*Ad. 8.*
The Danish Tax Agency can state that the agency has not received security for fulfillment of the settlement, including guarantees, collateral, or the like.

In the event that repayment of the remaining settlement sum does not occur, as part of the settlement, the Danish Tax Agency has received a "Confession of judgment" equivalent to a court settlement from some of the settlement parties on the remaining amount, thus direct and personal liability for payment of the full settlement sum.

*Ad. 9.*
The Danish Tax Agency has maintained a claim in the case corresponding to the full amounts paid out, however the claim would have to be reduced by the amount received as a result of the settlement. The final settlement amount is currently not yet known. The Danish Tax Agency is currently pursuing the full claim with legal actions in the US, Canada, England, Dubai, and Malaysia. The claims in these cases are classified differently in the respective jurisdictions, but have the character of what would correspond under Danish law to either a restitution claim or compensation claim.

Lastly, regarding SØIK´s question about any agreed confidentiality clauses, the Danish Tax Agency must make reference to the attached excerpt on confidentiality (point 8) from the settlement agreement itself.

In conclusion, for the sake of good order, it should be noted that the attached exhibits and excerpt from the settlement agreement itself must be treated with confidentiality, which means that SØIK may not give information beyond the obligations under the Civil Procedure Code, just as the Danish Tax Agency must request to be heard in the event of future document access requests.

<div style="text-align:center">

With best regards


Steen Bechmann Jacobsen
Area Director

</div>

CONFIDENTIAL                                SKAT_MAPLEPOINT_00000103_T

8. <u>Confidentiality</u>. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

    a.   Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

    b.   Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra;* (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to ( which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

    c.   In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available measures and remedies to prevent such disclosure, including, without !imitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

    d.   The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement.

SKAT_MAPLEPOINT_00000107_T

e.  The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f.  Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.