05-01-00-1

## Retten i Lyngby



Den 16. februar 2017 blev retten sat af dommer Seerup.

Retsmødet var offentligt.

Rettens nr. 1-835/2017
Politiets nr. SØK-76141-00005-15

**Beslaglæggelse**

Ingen var mødt.

Der blev fremlagt anmodning af 10. februar 2017 om beslaglæggelse.

Advokat Jakob Lund Poulsen har haft lejlighed til at udtale sig.

Anklagemyndigheden har under henvisning til retsmødets formål anmodet
om dørlukning, jf. retsplejelovens § 29, stk. 3, nr. 4.

Retten afsagde

**Kendelse**

Sagens behandling i et offentligt retsmøde må antages på afgørende måde at
hindre sagens oplysning, jf. retsplejelovens § 29, stk. 3, nr. 4, hvorfor

**bestemmes:**

Dørene lukkes.

Anklageren har anmodet om, at retten afgør, at betingelserne for at fremsæt-
te begæring over for de kompetente myndigheder i Tyskland om beslaglæg-
gelse er opfyldt efter dansk ret, jf. retsplejelovens § 802, vedrørende beslag-
læggelse af nedennævnte:

indestående på konti, depoter og bokse hos

**North Channel Bank GmbH & Co KG**
**Erthalstrasse 1**
**Bonifaziusturm B**
**55118 Mainz**
**Tyskland,**

som har selskabsnummer HRA 41054, jf. Handelsregister des Amtsgerichts
Mainz, Abl. A,

som følgende 27 amerikanske pension plans med tilhørende kontonumre

Sd 73329

23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
**210**



er registreret til, indehaver af eller har rådighed over.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at eventuelle indestående bør konfiskeres, ligesom beslaglæggelse anses for nødvendig for at sikre krav i sagen, jf. retsplejelovens § 802, stk. 1 og stk. 2.

Anklagemyndigheden har til støtte for anmodningen oplyst, at

"SKAT har i efteråret 2015 anmeldt, at der var mistanke om bedrageri af særlig grov beskaffenhed for ikke under 9,1 milliarder kroner.

Mistanken er rettet mod en række personer, reclaim agents, custodians, selskaber, amerikanske pension plans og malaysiske Labuan-selskaber. De mistænkte er blandt andre ▇▇▇▇ samt tre reclaim agents, ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ og fire custodians

De er mistænkt for bedrageri af særlig grov beskaffenhed medfør af straffelovens § 279, jf. § 286, stk. 2, ved i perioden fra 2012-2015 i 3.262 tilfælde retsstridigt at have tilbagesøgt og fået refunderet indeholdt danske udbytteskatter i henhold til dobbeltbeskatningsoverenskomsten mellem Danmark og henholdsvis USA og Malaysia, alt hvorved 187 amerikanske 401k pension plans og 24 mistænkte malaysiske –Labuan-selskaber bragte ansatte i SKAT i en vildfarelse om, at de 187 amerikanske 401k pension plans og 24 mistænkte malaysiske Labuan-selskaber på tidspunktet for de danske selskabers deklarering af udbytte var retmæssig ejere af aktier og havde fået indeholdt udbytteskat i SKAT svarende til de tilbagesøgte beløb, og dermed bestemte den danske stat til at udbetale til sig ikke under 9,1 milliarder danske kroner.

Dette mistankegrundlag er baseret på SKAT's første anmeldelse fra august 2015.

SKAT har den 24. august 2016 anmeldt yderligere bedrageri af særlig grov beskaffenhed for 3,2 milliarder kroner samt forsøg på 553 millioner kroner. Statsadvokaten for Særlig Økonomisk og International Kriminalitet har efterfølgende konstateret, at der er mistanke om bedrageri for yderligere 100 millioner kroner, således at der er tale om bedrageri for 3,3 milliarder kroner og forsøg på 553 millioner kroner.

Samlet er der således mistanke om bedrageri af særlig grov beskaffenhed for ikke under 12,4 milliarder kroner og forsøg på 553 millioner kroner.

Mistanken mod North Channel Bank GmbH & Co KG

De tre allerede mistænkte reclaim agents, ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ har på vegne af klienter tilbagesøgt cirka 2 milliarder af de 3,3 milliarder kroner, hvor ▇▇▇▇▇▇▇ tegner sig for cirka 1,7 milliarder kroner.

Nu mistænkte Koi Associates Ltd. har tilbagesøgt cirka 1,2 milliarder kroner for de to custodians, nu mistænkte North Channel Bank GmbH & Co KG og nu mistænkte ▇▇▇▇▇▇▇▇▇▇

North Channel Bank GmbH & Co KG har i alt tilbagesøgt cirka 1,1 milliarder kroner, mens ▇▇▇▇▇▇▇▇▇▇▇ i alt har tilbagesøgt cirka 921 millioner kroner.

North Channel Bank GmbH & Co KG er i foråret 2016 på vegne af det tyske finanstilsyn, Die Bundesanstalt für Finanzdienstleistungafsicht (BaFin) blevet undersøgt af revisionsfirmaet ▇▇▇▇ Revisionsfirmaet

CONFIDENTIAL

▓▓▓▓ skulle undersøge bankens ageren i forhold til 567 kundetransaktioner i blandt andet danske aktier i 2014. Revisionsfirmaet har udfærdiget en rapport, som Statsadvokaten for Særlig Økonomisk og International Kriminalitet har modtaget gennem JIT-samarbejdet.

Ifølge revisionsfirmaet ▓▓▓▓ s rapport havde North Channel Bank GmbH & Co KG kun 39 kunder, hvoraf de 25 kunder var amerikanske pension plans. Hovedparten af de amerikanske pension plans fik oprettet depot i North Channel Bank GmbH & Co KG i perioden fra slutningen af marts 2014 til slutningen af april 2014.

North Channel Bank GmbH & Co KG har på vegne af de amerikanske pension plans udfærdiget Dividend Credit Advices til brug for tilbagesøgning af udbytteskat i Danmark. Der henvises til bilag 6, som eksempel på dette.

På den baggrund er det Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at der er anvendt samme fremgangsmåde, som ved de øvrige custodians i denne sag, idet reclaim agenterne ▓▓▓▓

▓▓▓▓ på vegne af North Channel Bank GmbH & Co KG har tilbagesøgt udbytteskat.

Den af SKAT tilbagebetalte udbytteskat er herefter via reclaim agenternes konti overført til North Channel Bank GmbH & Co KG. Som eksempel kan nævnes, at SKAT har udbetalt cirka 104 millioner kroner til ▓▓▓▓ i 2014 og 2015. Acupay har videresendt i alt cirka 158 millioner kroner til kunderelaterede konti i North Channel Bank GmbH & Co KG. At ▓▓▓▓ har overført mere til kontiene i North Channel Bank GmbH & Co KG end det SKAT har udbetalt skyldes formentlig, at der også er overført udbetalt udbytteskat fra andre lande. Der henvises til bilag 11 herom.

På den baggrund er det Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at der er anvendt samme fremgangsmåde, som ved de øvrige custodians i denne sag, idet reclaim agenterne ▓▓▓▓

▓▓▓▓ på vegne af North Channel Bank GmbH & Co KG har tilbagesøgt udbytteskat.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at der nu også er tilstrækkeligt mistankegrundlag for North Channel Bank GmbH & Co KG, idet der er tale om samme fremgangsmåde, som tidligere anført i sagen vedrørende øvrige mistænkte custodians.

STEIN_LHOTE0012120

CONFIDENTIAL

05-01-005

Mistankegrundlag mod de 27 amerikanske pension plans

Det bemærkes indledningsvist, at 2 af de 27 amerikanske pension plans
allerede er omfattet af det mistankegrundlag, som er mod 187 ameri-
kanske 401k pension plans, der er anført oven for.

Det fremgår af ▓▓▓▓▓ rapport, at hovedparten af de 27 amerikanske
pension plans er blevet oprettet 2-3 måneder før de har oprettet konti i
North Channel Bank GmbH & Co KG i marts og april 2014. Det vil sige,
at de amerikanske pension plans er oprettet i starten af 2014.

De anførte kontonumre for hver amerikansk pension plan er det konto-
nummer, som er anført over for SKAT i forbindelse med udbetaling af
refusion af udbytteskat.

De 27 amerikanske pension plans har modtaget refusion af udbytteskat
på cirka 1,1 milliarder kroner på deres konti i North Channel Bank
GmbH & Co KG. Derved skulle de 27 amerikanske pension plans have
været berettiget til et bruttoudbytte på cirka 4,2 milliarder kroner. Heraf
skulle de have fået cirka 3,1 milliarder kroner udbetalt i nettoudbytte fra
de danske selskaber, som de skulle have ejet aktier i.

For at have være berettiget til cirka 4,2 milliarder kroner i bruttoudbytte
skal de 27 amerikanske pension plans have ejet danske aktier til en værdi
af cirka 185 milliarder kroner. Der henvises til bilag 12.

Det bemærkes, at alle 27 amerikanske pension plans repræsenteres af
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ som også indgår i det oprindelige
mistankegrundlag mod de 187 amerikanske pension plans. Således er
North Channel Bank GmbH & Co KG's kontaktpersoner kun ▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ligesom materiale fra banken ikke blev
sendt til pensionsplanerne, men til ▓▓▓▓▓▓▓ Endvidere var alle
betalingsinstrukser for de amerikanske pension plans udstedt af ▓▓▓▓
▓▓▓▓▓▓ som formentlig er den samme person, som nævnt oven
for.

Det bemærkes desuden, at alle de amerikanske pension plans er registre-
ret i banken under et EIN (Employer Identification Number), hvilket ef-
ter statsadvokatens opfattelse må betyde, at der alene er en person i hver
pension plan. På den baggrund forekommer det ganske usandsynligt, at
pensionsplanerne har formået at have en samlet kapital på 185 milliarder
kroner til køb af danske aktier.

På den baggrund er det Statsadvokaten for Særlig Økonomisk Kriminali-
tets opfattelse, at der er et tilstrækkeligt mistankegrund mod både North
Channel Bank GmbH & Co KG samt de 25 nye amerikanske 401k pensi-
on plans."

                                          CONFIDENTIAL

Retten afsagde

**Kendelse:**

Efter de foreliggende oplysninger, herunder information fra SKAT om tilbagesøgt udbytteskat, informationer fra rapport udarbejdet i foråret 2016 af ▇ for det tyske finanstilsyn og informationer om pengestrømme indhentet ved edition hos ▇ ▇ personsammenfaldet med hensyn til allerede mistænkte amerikanske pension plans og de nye, mistænkte amerikanske pension plans samt størrelse af de tilbagesøgte skatter, finder retten, at North Channel Bank GmbH & Co KG og de 27 amerikanske pension plans anført i begæringen med rimelig grund er mistænkt for en lovovertrædelse, der kan medføre fængselsstraf, og at der er grund til at antage, at eventuelle indeståender bør konfiskeres, ligesom beslaglæggelse anses for nødvendig for at sikre krav i sagen. Betingelserne for at foretage beslaglæggelse i medfør af retsplejelovens § 802, stk. 1, og stk. 2, er derfor opfyldt, hvorfor

**bestemmes:**

Betingelserne efter dansk ret er til stede for at foretage beslaglæggelse af:

indestående på konti, depoter og bokse hos

### North Channel Bank GmbH & Co KG



som har selskabsnummer HRA 41054, jf. Handelsregister des Amtsgerichts Mainz, Abl. A,

som følgende 27 amerikanske pension plans med tilhørende kontonumre



**CONFIDENTIAL**



er registreret til, indehaver af eller har rådighed over.

Dørene blev åbnet.

Sagen sluttet.

Retten hævet

Dommer

Retten i Lyngby



Den 16. februar 2017 blev retten sat af dommer Seerup.

Retsmødet var offentligt.

Rettens nr. 1-836/2017
Politiets nr. SØK-76141-00005-15

**Ransagning**

Ingen var mødt.

Der blev fremlagt anmodning af 10. februar 2017 om ransagning.

Advokat Jakob Lund Poulsen har haft lejlighed til at udtale sig.

Anklagemyndigheden har under henvisning til retsmødets formål anmodet
om dørlukning, jf. retsplejelovens § 29, stk. 3, nr. 4.

Retten afsagde

**Kendelse**

Sagens behandling i et offentligt retsmøde må antages på afgørende måde at
hindre sagens oplysning, jf. retsplejelovens § 29, stk. 3, nr. 4, hvorfor

**bestemmes:**

Dørene lukkes.

Anklagemyndigheden har anmodet om, at Retten i Lyngby påser, at betin-
gelserne for at fremsætte begæring over for de kompetente myndigheder i Tysk-
land om ransagning af husrum, andre lokaliteter eller genstande hos følgende
den tyske bank:

**North Channel Bank GmbH & Co KG**



som har selskabsnummer HRA 41054, jf. Handelsregister des Amtsgerichts
Mainz, Abl. A.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets
opfattelse, at ransagningen må antages at være af væsentlig betydning for ef-
terforskningen, ligesom der er bestemte grunde til at antage, at bevis i sagen
eller genstande, der kan beslaglægges, kan findes ved ransagningen.

 CONFIDENTIAL

Det er således statsadvokatens opfattelse, at der ved ransagningen af North Channel Banks lokaliteter, computere og diverse lagringsmedier, vil kunne findes skriftligt og elektronisk materiale, herunder kontrakter, notater, regnskabs- og bogføringsmateriale, fakturaer med tilhørende bilag, arbejdspapirer, korrespondance (e-mails og øvrig elektronisk kommunikation), aftaler, mødereferater, dagbøger samt øvrige dokumenter i relation til de mistænkte, der kan tjene som bevis i sagen eller tjene som genstand for beslaglæggelse.

Anklagemyndigheden har til støtte for begæringen oplyst følgende:

"SKAT har i efteråret 2015 anmeldt, at der var mistanke om bedrageri af særlig grov beskaffenhed for ikke under 9,1 milliarder kroner.

Mistanken er rettet mod en række personer, reclaim agents, custodians, selskaber, amerikanske pension plans og malaysiske Labuan-selskaber. De mistænkte er blandt andre Sanjay Shah samt tre reclaim agents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ og fire custodians

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

De er mistænkt for bedrageri af særlig grov beskaffenhed medfør af straffelovens § 279, jf. § 286, stk. 2, ved i perioden fra 2012-2015 i 3.262 tilfælde retsstridigt at have tilbagesøgt og fået refunderet indeholdt danske udbytteskatter i henhold til dobbeltbeskatningsoverenskomsten mellem Danmark og henholdsvis USA og Malaysia, alt hvorved 187 amerikanske 401k pension plans og 24 mistænkte malaysiske –Labuan-selskaber bragte ansatte i SKAT i en vildfarelse om, at de 187 amerikanske 401k pension plans og 24 mistænkte malaysiske Labuan-selskaber på tidspunktet for de danske selskabers deklarering af udbytte var retmæssig ejere af aktier og havde fået indeholdt udbytteskat i SKAT svarende til de tilbagesøgte beløb, og dermed bestemte den danske stat til at udbetale til sig ikke under 9,1 milliarder danske kroner.

Dette mistankegrundlag er baseret på SKAT's første anmeldelse fra august 2015.

SKAT har den 24. august 2016 anmeldt yderligere bedrageri af særlig grov beskaffenhed for 3,2 milliarder kroner samt forsøg på 553 millioner kroner. Statsadvokaten for Særlig Økonomisk og International Kriminalitet har efterfølgende konstateret, at der er mistanke om bedrageri for yderligere 100 millioner kroner, således at der er tale om bedrageri for 3,3 milliarder kroner og forsøg på 553 millioner kroner.

Samlet er der således mistanke om bedrageri af særlig grov beskaffenhed for ikke under 12,4 milliarder kroner og forsøg på 553 millioner kroner.

    CONFIDENTIAL

Mistanken mod North Channel Bank GmbH & Co KG

De tre allerede mistænkte reclaim agents, ███████████████████
███████████████████████████ har på vegne af klienter tilbagesøgt cirka
2 milliarder af de 3,3 milliarder kroner, hvor Goal TaxBack tegner sig
for cirka 1,7 milliarder kroner.

Nu mistænkte ████████████ har tilbagesøgt cirka 1,2 milliarder
kroner for de to custodians, nu mistænkte North Channel Bank GmbH &
Co KG og nu mistænkte Lindisfarne Partners LLP.

North Channel Bank GmbH & Co KG har i alt tilbagesøgt cirka 1,1 mil-
liarder kroner, mens Linidsfarne Partners LLP i alt har tilbagesøgt cirka
921 millioner kroner.

North Channel Bank GmbH & Co KG er i foråret 2016 på vegne af det
tyske finanstilsyn, Die Bundesanstalt für Finansdienstleistungafsicht
(BaFin) blevet undersøgt af revisionsfirmaet ████████ Revisionsfirmaet
KPMG skulle undersøge bankens ageren i forhold til 567 kundetransak-
tioner i blandt andet danske aktier i 2014. Revisionsfirmaet har udfærdi-
get en rapport, som Statsadvokaten for Særlig Økonomisk og Internatio-
nal Kriminalitet har modtaget gennem JIT-samarbejdet.

Ifølge revisionsfirmaet ████████ rapport havde North Channel Bank
GmbH & Co KG kun 39 kunder, hvoraf de 25 kunder var amerikanske
pension plans. Hovedparten af de amerikanske pension plans fik oprettet
depot i North Channel Bank GmbH & Co KG i perioden fra slutningen
af marts 2014 til slutningen af april 2014.

North Channel Bank GmbH & Co KG har på vegne af de amerikanske
pension plans udfærdiget Dividend Credit Advices til brug for tilbage-
søgning af udbytteskat i Danmark. Der henvises til bilag 6, som eksem-
pel på dette.

På den baggrund er det Statsadvokaten for Særlig Økonomisk og Interna-
tional Kriminalitets opfattelse, at der er anvendt samme fremgangsmåde,
som ved de øvrige custodians i denne sag, idet reclaim agenterne ████████
████ på vegne af North Channel Bank GmbH & Co KG har tilbagesøgt
udbytteskat.

Den af SKAT tilbagebetalte udbytteskat er herefter via reclaim agenter-
nes konti overført til North Channel Bank GmbH & Co KG. Som eksem-
pel kan nævnes, at SKAT har udbetalt cirka 104 millioner kroner til
████████████ i 2014 og 2015. Acupay har videresendt i alt cirka
158 millioner kroner til kunderelaterede konti i North Channel Bank
GmbH & Co KG. At ████████████ har overført mere til kontiene

i North Channel Bank GmbH & Co KG end det SKAT har udbetalt skyl-
des formentlig, at der også er overført udbetalt udbytteskat fra andre lan-
de."

Retten afsagde

### Kendelse

Efter de foreliggende oplysninger, herunder information fra SKAT om
tilbagesøgt udbytteskat, informationer fra rapport udarbejdet i foråret 2016
af▮▮▮▮for det tyske finanstilsyn og informationer om pengestrømme
indhentet ved edition hos ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮i
Luxembourg, finder retten, at North Channel Bank GmbH & Co KG med
rimelig grund er mistænkt for en lovovertrædelse, der kan medføre
fængselsstraf, og at der er bestemte grunde til at antage, at bevis i sagen
eller genstande, der kan beslaglægges, kan findes ved ransagningen. En
ransagning må derfor, antages at være af væsentlig betydning for
efterforskningen. Betingelserne i retsplejelovens § 794, stk. 1 og 2, jf. §
793, er derfor opfyldt, hvorfor



### bestemmes:

Betingelserne efter dansk ret er til stede for, at politiet må foretage
ransagning af husrum, andre lokaliteter eller genstande hos følgende tyske
bank:

**North Channel Bank GmbH & Co KG**

som har selskabsnummer HRA 41054, jf. Handelsregister des Amtsgerichts
Mainz, Abl. A.

Dørene blev åbnet.

Sagen sluttet.



Retten hævet

Dommer

CONFIDENTIAL

Retten i Lyngby



Den 20. februar 2017 blev retten sat af dommer Seerup.

Retsmødet var offentligt.

Rettens nr. 1-872/2017
Politiets nr. SØK-76141-00005-15

**Foranstaltning under efterforskning**

**Edition**

Ingen var mødt.

Der blev fremlagt anmodning af 14. februar 2017 om edition.

Advokat Jakob Lund Poulsen har haft lejlighed til at udtale sig.

Anklagemyndigheden har under henvisning til retsmødets formål anmodet
om dørlukning, jf. retsplejelovens § 29, stk. 3, nr. 4.

Retten afsagde

**Kendelse**

Sagens behandling i et offentligt retsmøde må antages på afgørende måde at
hindre sagens oplysning, jf. retsplejelovens § 29, stk. 3, nr. 4, hvorfor

**bestemmes:**

Dørene lukkes.

Anklageren har anmodet om, at retten påser, at betingelserne for at fremsæt-
te begæring om edition er opfyldt efter dansk ret, jf. retsplejelovens § 804 og
§ 805, således det pålægges de kompetente tyske myndigheder til Statsad-
vokaten for Særlig Økonomisk og International Kriminalitet at udlevere:

  - samtlige oplysninger om følgende mistænkte bank og 27 amerikanske
  401k pension plans, der er kontohavere i banken, herunder regnskaber
  for 2012-2015, aktieudbytte, bankkonti, kontoudskrifter, skatteindbeta-
  linger og selvangivelser, oprettelsestidspunkt, ejerstruktur, direktion, me-
  darbejdere, kontaktoplysninger, e-mail, adresse, telefonnummer samt
  bankforbindelser og konti:

Den mistænkte bank:

**North Channel Bank GmbH & Co KG**

STEIN_LHOTE0012128                                                                                      CONFIDENTIAL

side 2



selskabsnummer HRA 41054, jf. Handelsregister des Amtsgerichts Ma-
inz, Abl. A,

De mistænkte 27 amerikanske pension plans med tilhørende kontonumre:



                                    CONFIDENTIAL



Det bemærkes, at North Channel Bank GmbH & Co KG samt de 27 ameri-
kanske 401k pension plans ikke har haft adgang til at udtale sig, idet rettens
afgørelse skal danne grundlag for en international retsanmodning om editi-
on, jf. retsplejelovens § 806, stk. 7.

Anklagemyndigheden har til støtte for begæringen oplyst følgende:

"North Channel Bank GmbH & Co KG og de oven for nævnte 27 ameri-
kanske 401k pension plans er mistænkt for bedrageri af særlig grov be-
skaffenhed medfør af straffelovens § 279, jf. § 286, stk. 2, ved i perioden
fra 2014-2015 i forening og efter forudgående aftale uberettiget at have
tilbagesøgt og fået refunderet indeholdt danske udbytteskatter i henhold
til dobbeltbeskatningsoverenskomsten mellem Danmark og USA, alt
hvorved 27 amerikanske 401k pension plans i forening med blandt andre
North Channel Bank GmbH & Co KG bragte ansatte i SKAT i en vildfø-
relse om, at de 27 amerikanske 401k pension plans på tidspunktet for de
danske selskabers deklarering af udbytte var retmæssig ejere af aktier og
havde fået indeholdt udbytteskat i SKAT svarende til de tilbagesøgte be-
løb, og dermed bestemte den danske stat til at udbetale til sig ikke under
1.135.477.448 danske kroner til konti i North Channel Bank GmbH &
Co KG.

SKAT har i efteråret 2015 anmeldt, at der var mistanke om bedrageri af
særlig grov beskaffenhed for ikke under 9,1 milliarder kroner.

Mistanken er rettet mod en række personer, reclaim agents, custodians,
selskaber, amerikanske pension plans og malaysiske Labuan-selskaber.
De mistænkte er blandt andre Sanjay Shah samt tre reclaim agents,
██████████████████████████████████ og fire custodians

STEIN_LHOTE0012130                                                    CONFIDENTIAL

De er mistænkt for bedrageri af særlig grov beskaffenhed medfør af
straffelovens § 279, jf. § 286, stk. 2, ved i perioden fra 2012-2015 i
3.262 tilfælde retsstridigt at have tilbagesøgt og fået refunderet indeholdt
danske udbytteskatter i henhold til dobbeltbeskatningsoverenskomsten
mellem Danmark og henholdsvis USA og Malaysia, alt hvorved 187
amerikanske 401k pension plans og 24 mistænkte malaysiske –Labuan-
selskaber bragte ansatte i SKAT i en vildfarelse om, at de 187 ameri-
kanske 401k pension plans og 24 mistænkte malaysiske Labuan-selska-
ber på tidspunktet for de danske selskabers deklarering af udbytte var
retmæssig ejere af aktier og havde fået indeholdt udbytteskat i SKAT
svarende til de tilbagesøgte beløb, og dermed bestemte den danske stat
til at udbetale til sig ikke under 9,1 milliarder danske kroner.

Dette mistankegrundlag er baseret på SKAT's første anmeldelse fra au-
gust 2015.

SKAT har den 24. august 2016 anmeldt yderligere bedrageri af særlig
grov beskaffenhed for 3,2 milliarder kroner samt forsøg på 553 millioner
kroner. Statsadvokaten for Særlig Økonomisk og International Krimina-
litet har efterfølgende konstateret, at der er mistanke om bedrageri for
yderligere 100 millioner kroner, således at der er tale om bedrageri for
3,3 milliarder kroner og forsøg på 553 millioner kroner.

Samlet er der således mistanke om bedrageri af særlig grov beskaffenhed
for ikke under 12,4 milliarder kroner og forsøg på 553 millioner kroner.

Mistankegrundlag mod North Channel Bank GmbH & Co KG

De tre allerede mistænkte reclaim agents,
                                     har på vegne af klienter tilbagesøgt cirka
2 milliarder af de 3,3 milliarder kroner, hvor                    tegner sig
for cirka 1,7 milliarder kroner.

Nu mistænkte                      har tilbagesøgt cirka 1,2 milliarder
kroner for de to custodians, nu mistænkte North Channel Bank GmbH &
Co KG og nu mistænkte

North Channel Bank GmbH & Co KG har i alt tilbagesøgt cirka 1,1 mil-
liarder kroner, mens Lindisfarne Partners LLP i alt har tilbagesøgt cirka
921 millioner kroner.

North Channel Bank GmbH & Co KG er i foråret 2016 på vegne af det
tyske finanstilsyn, Die
         blevet undersøgt af revisionsfirmaet           Revisionsfirmaet

STEIN_LHOTE0012131                                              CONFIDENTIAL

███ skulle undersøge bankens ageren i forhold til 567 kundetransaktioner i blandt andet danske aktier i 2014. Revisionsfirmaet har udfærdiget en rapport, som Statsadvokaten for Særlig Økonomisk og International Kriminalitet har modtaget gennem JIT-samarbejdet.

Ifølge revisionsfirmaet███ rapport havde North Channel Bank GmbH & Co KG kun 39 kunder, hvoraf de 25 kunder var amerikanske pension plans. Hovedparten af de amerikanske pension plans fik oprettet depot i North Channel Bank GmbH & Co KG i perioden fra slutningen af marts 2014 til slutningen af april 2014.

Det fremgår desuden af███ rapport, at de aktietransaktioner, der skulle være gennemført, ikke fremstod som normal investeringsspekulation, men derimod som skattespekulation.

North Channel Bank GmbH & Co KG har på vegne af de amerikanske pension plans udfærdiget Dividend Credit Advices til brug for tilbagesøgning af udbytteskat i Danmark. Der henvises til bilag 6, som eksempel på dette.

Den af SKAT tilbagebetalte udbytteskat er herefter via reclaim agenternes konti overført til North Channel Bank GmbH & Co KG. Som eksempel kan nævnes, at SKAT har udbetalt cirka 104 millioner kroner til ███ 2014 og 2015. Acupay har videresendt i alt cirka 158 millioner kroner til kunderelaterede konti i North Channel Bank GmbH & Co KG. At ███ har overført mere til kontiene i North Channel Bank GmbH & Co KG end det SKAT har udbetalt skyldes formentlig, at der også er overført udbetalt udbytteskat fra andre lande. Der henvises til bilag 11 herom.

På den baggrund er det Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at der er anvendt samme fremgangsmåde, som ved de øvrige custodians i denne sag, idet reclaim agenterne███

███ på vegne af North Channel Bank GmbH & Co KG har tilbagesøgt udbytteskat.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at der nu også er tilstrækkeligt mistankegrundlag for North Channel Bank GmbH & Co KG, idet der er tale om samme fremgangsmåde, som tidligere anført i sagen vedrørende øvrige mistænkte custodians.

Mistankegrundlag mod de 27 amerikanske pension plans

Det bemærkes indledningsvist, at 2 af de 27 amerikanske pension plans allerede er omfattet af det mistankegrundlag, som er mod 187 ameri-

CONFIDENTIAL

kanske 401k pension plans, der er anført oven for.

Det fremgår af ▮▮▮▮ rapport, at hovedparten af de 27 amerikanske pension plans er blevet oprettet 2-3 måneder før de har oprettet konti i North Channel Bank GmbH & Co KG i marts og april 2014. Det vil sige, at de amerikanske pension plans er oprettet i starten af 2014.

De anførte kontonumre for hver amerikansk pension plan er det konto-nummer, som er anført over for SKAT i forbindelse med udbetaling af refusion af udbytteskat.

De 27 amerikanske pension plans har modtaget refusion af udbytteskat på cirka 1,1 milliarder kroner på deres konti i North Channel Bank GmbH & Co KG. Derved skulle de 27 amerikanske pension plans have været berettiget til et bruttoudbytte på cirka 4,2 milliarder kroner. Heraf skulle de have fået cirka 3,1 milliarder kroner udbetalt i nettoudbytte fra de danske selskaber, som de skulle have ejet aktier i.

For at have være berettiget til cirka 4,2 milliarder kroner i bruttoudbytte skal de 27 amerikanske pension plans have ejet danske aktier til en værdi af cirka 185 milliarder kroner. Der henvises til bilag 12.

Det bemærkes, at alle 27 amerikanske pension plans repræsenteres af ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ som også indgår i det oprindelige mistankegrundlag mod de 187 amerikanske pension plans. Således er North Channel Bank GmbH & Co KG's kontaktpersoner kun ▮▮▮▮▮▮▮▮▮▮ ligesom materiale fra banken ikke blev sendt til pensionsplanerne, men til ▮▮▮▮▮▮ Endvidere var alle betalingsinstrukser for de amerikanske pension plans udstedt af ▮▮▮▮ ▮▮▮▮▮▮ som formentlig er den samme person, som nævnt oven for.

Det bemærkes desuden, at alle de amerikanske pension plans er registre-ret i banken under et EIN (Employer Identification Number), hvilket ef-ter statsadvokatens opfattelse må betyde, at der alene er en person i hver pension plan. På den baggrund forekommer det ganske usandsynligt, at pensionsplanerne har formået at have en samlet kapital på 185 milliarder kroner til køb af danske aktier.

På den baggrund er det Statsadvokaten for Særlig Økonomisk Kriminali-tets opfattelse, at der er et tilstrækkeligt mistankegrund mod både North Channel Bank GmbH & Co KG samt de 25 nye amerikanske 401k pensi-on plans."

Retten afsagde

**Kendelse**

CONFIDENTIAL

Efter de foreliggende oplysninger, herunder information fra SKAT om tilba-
gesøgt udbytteskat, informationer fra rapport udarbejdet i foråret 2016 af
████ for det tyske finanstilsyn og informationer om pengestrømme ind-
hentet ved edition hos ████████
████ personsammenfældet med hensyn til allerede mistænkte amerikanske
pension plans og de nye, mistænkte amerikanske pension plans samt størrel-
se af de tilbagesøgte skatter, finder retten, at North Channel Bank GmbH &
Co KG og de 27 amerikanske pension plans anført i begæringen med rimelig
grund er mistænkt for en lovovertrædelse, og at der er der grund til at anta-
ge, at de i begæringen anførte oplysninger kan tjene som bevis i sagen.

Betingelserne for at fremsætte begæring om edition er opfyldt efter dansk
ret, jf. retsplejelovens § 804 og § 805, hvorfor

**bestemmes:**

Betingelserne efter dansk ret er til stede for at pålægge de kompetente tyske
myndigheder til Statsadvokaten for Særlig Økonomisk og International Kri-
minalitet at udlevere:

- samtlige oplysninger om følgende mistænkte bank og 27 amerikanske
401k pension plans, der er kontohavere i banken, herunder regnskaber
for 2012-2015, aktieudbytte, bankkonti, kontoudskrifter, skatteindbeta-
linger og selvangivelser, oprettelsestidspunkt, ejerstruktur, direktion, me-
darbejdere, kontaktoplysninger, e-mail, adresse, telefonnummer samt
bankforbindelser og konti:

Den mistænkte bank:

**North Channel Bank GmbH & Co KG**



selskabsnummer HRA 41054, jf. Handelsregister des Amtsgerichts Ma-
inz, Abl. A,

De mistænkte 27 amerikanske pension plans med tilhørende kontonumre:



      CONFIDENTIAL

side 8



STEIN_LHOTE0012135

CONFIDENTIAL

side 9



Dørene blev åbnet.

Sagen sluttet.

Dommer

                                                    CONFIDENTIAL

## Harvey – Translation

Files
05-01-00-1

Query
en

Response
Page 1
The Court in Lyngby

On February 16, 2017, the court was presided over by Judge Seerup.

The court session was public.

Court case no. 1-835/2017

Police case no. SØK-76141-00005-15

Seizure

No one appeared.

A request for seizure dated February 10, 2017, was presented.

Attorney Jakob Lund Poulsen has had the opportunity to express his views.

The prosecution has requested a closed-door session, referring to the purpose of the court session, pursuant to section 29, subsection 3, no. 4 of the Administration of Justice Act.

The court issued

Ruling

The handling of the case in a public court session is deemed to critically hinder the clarification of the case, pursuant to section 29, subsection 3, no. 4 of the Administration of Justice Act, therefore it is ordered:

The doors are closed.

The prosecutor has requested that the court determine that the conditions for making a request to the competent authorities in Germany for seizure are met under Danish law, pursuant to section 802 of the Administration of Justice Act, regarding the seizure of the following:

funds in accounts, deposits, and boxes at

North Channel Bank GmbH & Co KG



which has company number HRA 41054, according to the Commercial Register of the Local Court of Mainz, Section A,

as well as the following 27 American pension plans with associated account numbers

05-01-00-1

mstein@maplept.com

44.219.228.216

Page 2





STEIN_LHOTE0012998              STEIN_LHOTE0012117              CONFIDENTIAL

is registered to, holder of, or has control over.

The State Prosecutor for Serious Economic and International Crime

believes that any deposits should be confiscated, and seizure is considered necessary to secure claims in the case, cf. the Administration of Justice Act § 802, sections 1 and 2.

The prosecution has stated in support of the request that

SKAT reported in the fall of 2015 that there was suspicion of particularly serious fraud amounting to no less than 9.1 billion kroner.

The suspicion is directed at several individuals, reclaim agents, custodians, companies, American pension plans, and Malaysian Labuan companies.

The suspects include, among others, ███████████ and three reclaim agents ███████████
███████████████ and four custodians.

page 2

05-01-00-2

mstein@maplept.com

44.219.228.216
Page 3

███████████████████████████████████████████████████████████████████

They are suspected of particularly serious fraud under section 279, cf. section 286, subsection 2 of the Penal Code, by unlawfully reclaiming and receiving refunds of withheld Danish dividend taxes in 3,262 instances during the period from 2012-2015, in accordance with the double taxation agreements between Denmark and the USA and Malaysia. This led to 187 American 401k pension plans and 24 suspected Malaysian Labuan companies misleading employees at SKAT (the Danish tax authority) into believing that the 187 American 401k pension plans and 24 suspected Malaysian Labuan companies were the rightful owners of shares and had had dividend tax withheld by SKAT corresponding to the reclaimed amounts, thereby causing the Danish state to pay out no less than 9.1 billion Danish kroner.

This suspicion is based on SKAT's initial report from August 2015.

On August 24, 2016, SKAT reported additional particularly serious fraud amounting to 3.2 billion kroner and an attempted fraud of 553 million kroner. The Special Prosecutor for Serious Economic and International Crime subsequently found that there is suspicion of further fraud amounting to 100 million kroner, bringing the total suspected fraud to 3.3 billion kroner and attempted fraud to 553 million kroner.

In total, there is thus suspicion of particularly serious fraud amounting to no less than 12.4 billion kroner and attempted fraud of 553 million kroner.

Suspicion against North Channel Bank GmbH & Co KG

The three already suspected reclaim agents ▮ have reclaimed approximately 2 billion of the 3.3 billion kroner on behalf of clients, with ▮ accounting for approximately 1.7 billion kroner.

The now suspected ▮ has reclaimed approximately 1.2 billion kroner for the two custodians, now suspected North Channel Bank GmbH & Co KG and now suspected ▮

North Channel Bank GmbH & Co KG has reclaimed a total of approximately 1.1 billion kroner, while Lindisfarne Partners LLP has reclaimed a total of approximately 921 million kroner.

In the spring of 2016, North Channel Bank GmbH & Co KG was investigated by the audit firm ▮ on behalf of the German financial supervisory authority. ▮

Page 3

05-01-00-3

mstein@maplept.com

44.219.228.216
Page 4
▮ was to investigate the bank's actions in relation to 567 customer transactions involving, among other things, Danish stocks in 2014. The audit firm has prepared a report, which the State Prosecutor for Serious Economic and International Crime has received through the JIT cooperation.

According to the audit firm ▮ report, North Channel Bank GmbH & Co KG had only 39 customers, of which 25 were American pension plans. The majority of the American pension plans opened accounts at North Channel Bank GmbH & Co KG from the end of March 2014 to the end of April 2014.

North Channel Bank GmbH & Co KG has, on behalf of the American pension plans, prepared Dividend Credit Advices for the purpose of reclaiming dividend tax in Denmark. Reference is made to Appendix 6 as an example of this.

On this basis, it is the opinion of the State Prosecutor for Serious Economic and International Crime that the same method has been used as with the other custodians in this case, as the reclaim agents ▮ ▮ have reclaimed dividend tax on behalf of North Channel Bank GmbH & Co KG.

The dividend tax refunded by SKAT has subsequently been transferred via the agents' accounts to North Channel Bank GmbH & Co KG. For example, SKAT paid approximately 104 million kroner to ▮

▆▆▆ in 2014 and 2015. Acupay has forwarded a total of approximately 158 million kroner to customer-related accounts at North Channel Bank GmbH & Co KG. The fact that ▆▆▆▆▆▆ has transferred more to the accounts at North Channel Bank GmbH & Co KG than SKAT has paid out is probably due to the fact that dividend tax refunds from other countries have also been transferred. Reference is made to Appendix 11 regarding this.

On this basis, it is the opinion of the State Prosecutor for Serious Economic and International Crime that the same method has been used as with the other custodians in this case, as the reclaim agents ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ have reclaimed dividend tax on behalf of North Channel Bank GmbH & Co KG.

Page 4

It is the opinion of the State Prosecutor for Serious Economic and International Crime that there is now also sufficient grounds for suspicion against North Channel Bank GmbH & Co KG, as the same method has been used as previously stated in the case concerning other suspected custodians.

05-01-00-4

mstein@maplept.com

44.219.228.216

Page 5

## Basis for Suspicion Against the 27 American Pension Plans

It is initially noted that 2 of the 27 American pension plans are already included in the basis for suspicion against 187 American 401k pension plans mentioned above.

According to ▆▆▆ report, the majority of the 27 American pension plans were established 2-3 months before they opened accounts at North Channel Bank GmbH & Co KG in March and April 2014. This means that the American pension plans were established at the beginning of 2014.

The listed account numbers for each American pension plan are the account numbers provided to SKAT in connection with the payment of dividend tax refunds.

The 27 American pension plans have received dividend tax refunds of approximately 1.1 billion kroner in their accounts at North Channel Bank GmbH & Co KG. Therefore, the 27 American pension plans should have been entitled to a gross dividend of approximately 4.2 billion kroner. Of this, they should have received approximately 3.1 billion kroner in net dividends from the Danish companies in which they supposedly owned shares.

To be entitled to approximately 4.2 billion kroner in gross dividends, the 27 American pension plans must have owned Danish shares worth approximately 185 billion kroner. Refer to Appendix 12.

It is noted that all 27 American pension plans are represented by ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ who are also part of the original basis for suspicion against the 187 American pension plans. Thus, the contact persons at North Channel Bank GmbH & Co KG are only ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and materials from the bank were not sent to the pension plans but to ▆▆▆▆▆▆▆▆ Furthermore, all payment instructions for the

 CONFIDENTIAL

American pension plans were issued by ████████████████ who is presumably the same person mentioned above.

It is also noted that all the American pension plans are registered in the bank under an EIN (Employer Identification Number), which, according to the prosecutor's office, likely means that there is only one person in each pension plan. On this basis, it seems quite unlikely that the pension plans have managed to amass a total capital of 185 billion kroner to purchase Danish shares.

On this basis, the Special Prosecutor for Economic Crime believes that there is sufficient basis for suspicion against both North Channel Bank GmbH & Co KG and the 25 new American 401k pension plans.

Page 5

05-01-00-5

mstein@maplept.com

44.219.228.216
Page 6
The court issued

Order:

Based on the available information, including information from SKAT about the reclaimed dividend tax, information from a report prepared in the spring of 2016 by ██████ for the German financial supervisory authority, and information about cash flows obtained through an edition at ████████████████ ██████ in Luxembourg, the overlap of individuals with already suspected American pension plans and the new, suspected American pension plans, as well as the amount of the reclaimed taxes, the court finds that North Channel Bank GmbH & Co KG and the 27 American pension plans listed in the request are reasonably suspected of an offense that may result in imprisonment, and that there is reason to believe that any deposits should be confiscated, and that seizure is considered necessary to secure claims in the case. The conditions for seizure under the Danish Administration of Justice Act § 802, subsection 1, and subsection 2, are therefore met, and it is hereby

ordered:

The conditions under Danish law are met to seize:

deposits in accounts, securities, and boxes at

North Channel Bank GmbH & Co KG ████████████████████████████

which has company number HRA 41054, according to the Handelsregister des Amtsgerichts Mainz, Abl. A,

as well as the following 27 American pension plans with associated account numbers:

STEIN_LHOTE0013002          STEIN_LHOTE0012117          CONFIDENTIAL



page 6

05-01-00-6

mstein@maplept.com

44.219.228.216
Page 7



is registered to, holder of, or has control over.

The doors were opened.

Case closed.

page 7

05-01-00-7

mstein@maplept.com

44.219.228.216
Page 8
The Court in Lyngby

On February 16, 2017, the court was presided over by Judge Seerup.

The court session was public.

Court case no. 1-836/2017

Police case no. SØK-76141-00005-15

Search Warrant

No one appeared.

A request for a search warrant dated February 10, 2017, was presented.

Attorney Jakob Lund Poulsen has had the opportunity to express his views.

The prosecution has requested a closed-door session, referring to the purpose of the court session, pursuant to section 29, subsection 3, no. 4 of the Administration of Justice Act.

The court issued

Ruling

The handling of the case in a public court session is assumed to significantly hinder the clarification of the case, pursuant to section 29, subsection 3, no. 4 of the Administration of Justice Act, therefore it is determined:

The doors are closed.

The prosecution has requested that the Court in Lyngby ensure that the conditions for making a request to the competent authorities in Germany for a search of premises, other locations, or objects at the following German bank are met:

North Channel Bank GmbH & Co KG



which has company number HRA 41054, according to the Commercial Register of the District Court of Mainz, Section A.

The Office of the Special Prosecutor for Serious Economic and International Crime believes that the search is assumed to be of significant importance for the investigation, and there are specific reasons to believe that evidence in the case or objects that can be seized may be found during the search.

05-01-00-8

mstein@maplept.com

44.219.228.216

Page 9

It is thus the opinion of the public prosecutor that during the search of North Channel Bank's premises, computers, and various storage media, written and electronic materials could be found, including contracts, notes, accounting and bookkeeping materials, invoices with accompanying attachments, working papers,

correspondence (emails and other electronic communications), agreements, meeting minutes, diaries, and other documents related to the suspects, which could serve as evidence in the case or be subject to seizure.

The prosecution has provided the following information in support of the request:

"In the fall of 2015, SKAT reported a suspicion of particularly serious fraud amounting to no less than 9.1 billion kroner.

The suspicion is directed at several individuals, reclaim agents, custodians, companies, American pension plans, and Malaysian Labuan companies.

The suspects include, among others, Sanjay Shah and three reclaim agents

They are suspected of particularly serious fraud under section 279, cf. section 286, subsection 2 of the Penal Code, by unlawfully reclaiming and receiving refunds of withheld Danish dividend taxes in 3,262 instances during the period from 2012-2015, in accordance with the double taxation agreements between Denmark and the USA and Malaysia, whereby 187 American 401k pension plans and 24 suspected Malaysian Labuan companies misled SKAT employees into believing that the 187 American 401k pension plans and 24 suspected Malaysian Labuan companies were the rightful owners of shares at the time of the Danish companies' dividend declarations and had had dividend tax withheld by SKAT corresponding to the reclaimed amounts, thereby causing the Danish state to pay out no less than 9.1 billion Danish kroner.

This suspicion is based on SKAT's initial report from August 2015.

On August 24, 2016, SKAT reported additional particularly serious fraud amounting to 3.2 billion kroner and an attempt of 553 million kroner. The Special Prosecutor for Economic and International Crime subsequently found that there is suspicion of fraud for an additional 100 million kroner, bringing the total to 3.3 billion kroner in fraud and an attempt of 553 million kroner.

In total, there is thus suspicion of particularly serious fraud amounting to no less than 12.4 billion kroner and an attempt of 553 million kroner.

page 2

05-01-00-9

mstein@maplept.com

44.219.228.216
Page 10
**Suspicion Against North Channel Bank GmbH & Co KG**

The three already suspected reclaim agents,                              have
reclaimed approximately 2 billion of the 3.3 billion kroner on behalf of clients, with            accounting
for approximately 1.7 billion kroner.

The now suspected Koi Associates Ltd. has reclaimed approximately 1.2 billion kroner for the two custodians,
now suspected North Channel Bank GmbH & Co KG and now suspected

North Channel Bank GmbH & Co KG has reclaimed a total of approximately 1.1 billion kroner, while
Lindisfarne Partners LLP has reclaimed a total of approximately 921 million kroner.

**Page 3**

In the spring of 2016, North Channel Bank GmbH & Co KG was investigated by the auditing firm            on
behalf of the German financial supervisory authority,
            The auditing firm        was to examine the bank's actions concerning 567 customer transactions,
including Danish stocks in 2014. The auditing firm has produced a report, which the Special Prosecutor for
Serious Economic and International Crime has received through the JIT cooperation.

According to the auditing firm        report, North Channel Bank GmbH & Co KG had only 39 customers, of
which 25 were American pension plans. The majority of the American pension plans opened accounts with
North Channel Bank GmbH & Co KG from the end of March 2014 to the end of April 2014.

North Channel Bank GmbH & Co KG has issued Dividend Credit Advices on behalf of the American pension
plans for the purpose of reclaiming dividend tax in Denmark. Reference is made to Appendix 6 as an example of
this.

On this basis, it is the opinion of the Special Prosecutor for Serious Economic and International Crime that the
same method has been used as with the other custodians in this case, as the reclaim agents
                                                  have reclaimed dividend tax on behalf of
North Channel Bank GmbH & Co KG.

The dividend tax refunded by SKAT has subsequently been transferred to North Channel Bank GmbH & Co KG
via the reclaim agents' accounts. For example, SKAT paid approximately 104 million kroner to Acupay System
LLC in 2014 and 2015. Acupay has forwarded a total of approximately 158 million kroner to customer-related
accounts in North Channel Bank GmbH & Co KG. That                       has transferred more to the
accounts...

05-01-00-10

mstein@maplept.com

44.219.228.216

Page 11

North Channel Bank GmbH & Co KG and the amount paid by SKAT is likely due to the fact that dividend tax
refunds from other countries have also been transferred.

The court issued

Ruling

Based on the available information, including information from SKAT about reclaimed dividend tax, information from a report prepared in the spring of 2016 by ███████ for the German financial supervisory authority, and information about cash flows obtained through an edition at █████████████████ ████ in Luxembourg, the court finds that North Channel Bank GmbH & Co KG is reasonably suspected of an offense that may result in imprisonment, and that there are specific reasons to believe that evidence in the case or items that can be seized may be found during the search. Therefore, a search is deemed to be of significant importance for the investigation. The conditions in the Danish Administration of Justice Act § 794, subsections 1 and 2, cf. § 793, are therefore met, and it is determined:

The conditions under Danish law are met for the police to conduct a search of premises, other locations, or items at the following German bank:

North Channel Bank GmbH & Co KG ████████████████████████████████

which has company number HRA 41054, according to the Commercial Register of the Mainz District Court, Section A.

The doors were opened.

The case is closed.

Page 4

05-01-00-11

mstein@maplept.com

44.219.228.216
Page 12
The Court in Lyngby

On February 20, 2017, the court was convened by Judge Seerup.

The court session was public.

Court case no. 1-872/2017

Police case no. SØK-76141-00005-15

Measure under investigation

Edition

No one appeared.

A request dated February 14, 2017, for an edition was presented.

Attorney Jakob Lund Poulsen has had the opportunity to express his views.

The prosecution has requested a closed-door session, referring to the purpose of the court session, cf. section 29, subsection 3, no. 4 of the Administration of Justice Act.

The court issued

Ruling

The handling of the case in a public court session is deemed to critically hinder the clarification of the case, cf. section 29, subsection 3, no. 4 of the Administration of Justice Act, therefore it is determined:

The doors are closed.

The prosecutor has requested that the court ensure that the conditions for making a request for an edition are met under Danish law, cf. sections 804 and 805 of the Administration of Justice Act, so that it is imposed on the competent German authorities to deliver to the Special Prosecutor for Economic and International Crime:
- all information about the following suspected bank and 27 American 401k pension plans, which are account holders in the bank, including accounts for 2012-2015, dividends, bank accounts, account statements, tax payments and returns, establishment date, ownership structure, management, employees, contact information, email, address, phone number, and banking connections and accounts:

The suspected bank:

North Channel Bank GmbH & Co KG



05-01-00-12

mstein@maplept.com

44.219.228.216
Page 13



company number HRA 41054, according to Handelsregister des Amtsgerichts Mainz, Abl. A,

The suspected 27 American pension plans with associated account numbers:



page 2

05-01-00-13

mstein@maplept.com

44.219.228.216

Page 14



It should be noted that North Channel Bank GmbH & Co KG and the 27 American 401k pension plans have not had the opportunity to comment, as the court's decision is to form the basis for an international legal request for disclosure, cf. the Administration of Justice Act § 806, paragraph 7.

The prosecution has provided the following in support of the request:

"North Channel Bank GmbH & Co KG and the aforementioned 27 American 401k pension plans are suspected of fraud of a particularly serious nature pursuant to the Penal Code § 279, cf. § 286, paragraph 2, by, during the period from 2014-2015, in concert and by prior agreement, unjustifiably reclaiming and receiving refunds of withheld Danish dividend taxes under the double taxation agreement between Denmark and the USA, whereby the 27 American 401k pension plans, in concert with, among others, North Channel Bank GmbH & Co KG, misled employees at SKAT into believing that the 27 American 401k pension plans were the rightful owners of shares at the time of the Danish companies' dividend declarations and had had dividend tax withheld by SKAT corresponding to the reclaimed amounts, thereby causing the Danish state to pay out no less than 1,135,477,448 Danish kroner to accounts in North Channel Bank GmbH & Co KG.

In the fall of 2015, SKAT reported a suspicion of fraud of a particularly serious nature amounting to no less than 9.1 billion kroner.

Page 3

The suspicion is directed at a number of individuals, reclaim agents, custodians, companies, American pension plans, and Malaysian Labuan companies.

The suspects include, among others, Sanjay Shah and three reclaim agents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, and four custodians.

05-01-00-14

mstein@maplept.com

44.219.228.216

Page 15

They are suspected of particularly serious fraud under section 279, cf. section 286, subsection 2 of the Danish Penal Code, by unlawfully reclaiming and receiving refunds of withheld Danish dividend taxes in 3,262 instances during the period from 2012-2015, in accordance with the double taxation agreements between Denmark and the USA and Malaysia. This led 187 American 401k pension plans and 24 suspected Malaysian Labuan companies to mislead employees at SKAT (the Danish tax authority) into believing that the 187 American 401k pension plans and 24 suspected Malaysian Labuan companies were the rightful owners of shares and had had dividend tax withheld by SKAT corresponding to the reclaimed amounts, thereby causing the Danish state to pay out no less than 9.1 billion Danish kroner.

This suspicion is based on SKAT's initial report from August 2015.

On August 24, 2016, SKAT reported additional particularly serious fraud amounting to 3.2 billion kroner and an attempted fraud of 553 million kroner. The State Prosecutor for Serious Economic and International Crime subsequently found that there is suspicion of fraud for an additional 100 million kroner, bringing the total suspected fraud to 3.3 billion kroner and attempted fraud to 553 million kroner.

In total, there is thus suspicion of particularly serious fraud amounting to no less than 12.4 billion kroner and attempted fraud of 553 million kroner.

Suspicion against North Channel Bank GmbH & Co KG

The three already suspected reclaim agents,                                                                    have reclaimed approximately 2 billion of the 3.3 billion kroner on behalf of clients, with Goal TaxBack accounting for approximately 1.7 billion kroner.

The now suspected                         has reclaimed approximately 1.2 billion kroner for the two custodians, now suspected North Channel Bank GmbH & Co KG and now suspected Lindisfarne Partners LLP.

North Channel Bank GmbH & Co KG has reclaimed a total of approximately 1.1 billion kroner, while Lindisfarne Partners LLP has reclaimed a total of approximately 921 million kroner.

In the spring of 2016, North Channel Bank GmbH & Co KG was investigated by the auditing firm KPMG on behalf of the German financial supervisory authority,

Page 4

05-01-00-15

mstein@maplept.com

44.219.228.216

Page 16

███ vas to investigate the bank's actions in relation to 567 customer transactions involving, among other things, Danish stocks in 2014. The audit firm has prepared a report, which the State Prosecutor for Serious Economic and International Crime has received through the JIT cooperation.

According to the audit firm ███ report, North Channel Bank GmbH & Co KG had only 39 customers, of which 25 were American pension plans. The majority of the American pension plans opened accounts at North Channel Bank GmbH & Co KG from the end of March 2014 to the end of April 2014.

It also appears from ███ report that the stock transactions that were supposed to have been carried out did not appear as normal investment speculation but rather as tax speculation.

North Channel Bank GmbH & Co KG has, on behalf of the American pension plans, prepared Dividend Credit Advices for the purpose of reclaiming dividend tax in Denmark. Reference is made to Appendix 6 as an example of this.

The dividend tax refunded by SKAT has subsequently been transferred via the reclaim agents' accounts to North Channel Bank GmbH & Co KG. For example, SKAT paid out approximately 104 million kroner to ███ in 2014 and 2015. Acupay has forwarded a total of approximately 158 million kroner to customer-related accounts at North Channel Bank GmbH & Co KG. The fact that ███ has transferred more to the accounts at North Channel Bank GmbH & Co KG than SKAT has paid out is presumably because dividend tax refunded from other countries has also been transferred. Reference is made to Appendix 11 regarding this.

On this basis, it is the opinion of the State Prosecutor for Serious Economic and International Crime that the same method has been used as with the other custodians in this case, as the reclaim agent ███ ███ have reclaimed dividend tax on behalf of North Channel Bank GmbH & Co KG.

It is the opinion of the State Prosecutor for Serious Economic and International Crime that there is now also sufficient grounds for suspicion against North Channel Bank GmbH & Co KG, as the same method has been used as previously stated in the case concerning the other suspected custodians.

Grounds for suspicion against the 27 American pension plans

It is initially noted that 2 of the 27 American pension plans are already included in the grounds for suspicion against 187 American pension plans.

Page 17

perhaps 401k pension plans, as listed above.

It is evident from ███ report that the majority of the 27 American pension plans were established 2-3 months before they opened accounts at North Channel Bank GmbH & Co KG in March and April 2014. This means that the American pension plans were established at the beginning of 2014.

The listed account numbers for each American pension plan are the account numbers that were provided to SKAT in connection with the payment of dividend tax refunds.

The 27 American pension plans have received dividend tax refunds of approximately 1.1 billion kroner into their accounts at North Channel Bank GmbH & Co KG. Therefore, the 27 American pension plans should have been entitled to a gross dividend of approximately 4.2 billion kroner. Of this, they should have received approximately 3.1 billion kroner in net dividends from the Danish companies in which they supposedly owned shares.

To be entitled to approximately 4.2 billion kroner in gross dividends, the 27 American pension plans must have owned Danish shares worth approximately 185 billion kroner. Reference is made to Appendix 12.

It is noted that all 27 American pension plans are represented by ██████████████████ who are also part of the original suspicion against the 187 American pension plans. Thus, the contact persons for North Channel Bank GmbH & Co KG are only ██████████████████ and materials from the bank were not sent to the pension plans but to ██████ Furthermore, all payment instructions for the American pension plans were issued by ██████ who is presumably the same person mentioned above.

It is also noted that all the American pension plans are registered in the bank under an EIN (Employer Identification Number), which, in the opinion of the public prosecutor, must mean that there is only one person in each pension plan. On this basis, it seems quite unlikely that the pension plans have managed to have a total capital of 185 billion kroner to purchase Danish shares.

On this basis, it is the opinion of the Special Prosecutor for Economic Crime that there is sufficient suspicion against both North Channel Bank GmbH & Co KG and the 25 new American 401k pension plans."

The court issued

Ruling

page 6

05-01-00-17

mstein@maplept.com

44.219.228.216

Page 18

Based on the available information, including data from SKAT regarding reclaimed dividend tax, information from a report prepared in the spring of 2016 by ██████ for the German financial supervisory authority, and information on cash flows obtained through an edition at ██████████████████ in Luxembourg, the overlap of individuals concerning already suspected American pension plans and the new, suspected American pension plans, as well as the amount of reclaimed taxes, the court finds that North Channel Bank GmbH & Co KG and the 27 American pension plans listed in the request are reasonably suspected of an offense, and that there is reason to believe that the information listed in the request can serve as evidence in the case.

The conditions for submitting a request for an edition are met under Danish law, cf. the Administration of Justice Act §§ 804 and 805, therefore it is determined:

The conditions under Danish law are present to impose on the competent German authorities to the Public Prosecutor for Special Economic and International Crime to deliver:

- all information about the following suspected bank and 27 American pension plans that are account holders in the bank, including accounts for 2012-2015, stock dividends, bank accounts, account statements, tax payments and tax returns, establishment date, ownership structure, management, employees, contact information, email, address, phone number, as well as banking connections and accounts:

The suspected bank:

North Channel Bank GmbH & Co KG  company number HRA 41054, cf. Handelsregister des Amtsgerichts Mainz, Abl. A,

The suspected 27 American pension plans with associated account numbers:



page 7

05-01-00-18

mstein@maplept.com

44.219.228.216
Page 19



page 8

05-01-00-19

mstein@maplept.com

44.219.228.216

Page 20

The doors were opened.

Case closed.

page 9

05-01-00-20

mstein@maplept.com

44.219.228.216

CONFIDENTIAL