# EXPERT REPORT OF LASSE LUND MADSEN

### September 6, 2024

## 1. ASSIGNMENT

In connection with the case *Stein and Lhote v. Skatteforvaltningen*, 23 Civ. 2508 (NRB), I have been tasked by attorneys for Plaintiffs Matthew Stein and Jerome Lhote and Nominal Defendant Luke McGee to assist with a legal expert assessment on certain aspects of Danish law. The primary issue to which this Report is directed concerns the question of whether the police and the prosecution, under certain circumstances, have the possibility to completely or partially refrain from initiating charges and whether the prosecution has, under certain circumstances, the possibility of dismissing or not pursuing charges that have been initiated and what considerations would be relevant and appropriate to weigh in these contexts. As part of my consideration of this question, I discuss whether and when Danish police and prosecutors could have taken into consideration in exercising their discretion information that Skatteforvaltningen ("SKAT")[1] was required to provide in writing under a settlement agreement that is the subject of this litigation (the "Settlement Agreement"). The possibility of entering into a plea bargaining arrangement under Danish law is also to be elucidated. The Report also provides a description of the organization and hierarchical structure of the police and prosecution, as well as the cooperation between the police and prosecution on one side, and special authorities—such as SKAT—on the other side.

To assist me in rendering my opinions, I have been provided with the materials identified in Attachment A.

I am being compensated at the rate of $500 per hour. My compensation is not dependent on the opinions that I render. I have been completely free in both my analyses and the conclusions I have drawn. As a result, this Report and the views expressed in it are entirely my own independent and unbiased opinions.

Since January 1, 2017, I have been a professor of criminal law and criminal procedure at Aarhus University in Aurhas, Denmark. I was awarded a PhD in 2007, which concerned criminal complicity in business contexts. I have previously worked as a prosecutor for a total of approximately 7 to 8 years between 2000 and 2016, including finally as a special prosecutor in economic crime at the East Jutland Police. I was also appointed in 2020 for a year as a

---

[1] For ease of reference, I use the term "SKAT" in this report to refer to the Defendant in this litigation, despite changes to the organization of the Danish taxation authority in about 2018 and the manner in which the Danish tax agency has been referred to since then. Skattestyrelsen, the Danish tax agency, is now part of Skatteforvaltningen, the Danish customs and tax administration.

23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
**300**

temporary judge at the district court in Aarhus, Denmark, as well as appointed in 2013 for 9 months as a temporary judge at the Western High Court, which is an appellate court.[2]  During my time serving as a judge in the High Court, I presided over all types of cases, but in the district court, I presided over mainly criminal cases.  A copy of my *curriculum vitae*, along with a list of the publications I have authored since 2014, are provided in Attachment B.

## 2. ABOUT THE PROSECUTION

Initially, for the understanding of Danish law, it is useful to make some general remarks about the prosecution, including its structural and organizational setup in Denmark.  In this context, I also highlight recent changes in the structure of the prosecution, particularly concerning SØIK[3] and the handling of large and complex cases of economic crime.

### 2.1  THE PROSECUTION AND THE PRINCIPLE OF PROSECUTION

With the introduction of the Administration of Justice Act of 1919, the principle of prosecution was codified.  This means that it is exclusively the prosecution that controls the charges, and the court only comes into function if charges are pressed, cf. the Administration of Justice Act sections 718 and 883, subsection 3.  This is often expressed with the slogan "no prosecution, no judgment."[4]

The prosecution and the police work closely together in Denmark.  Physically, they are even located under the same roof at the respective police stations in the country's 12 police districts.[5]

The highest administrative chief of the police is the National Police Commissioner, while the Director of Public Prosecutions is the highest administrative chief of the prosecution.

Denmark has 12 police districts, each led by a police director, who is the local chief of both the police and the prosecution.

In practice, the police charge individuals when there is concrete suspicion that a person has committed a criminal act.  By "charge," I refer to the process by which the police identify the crimes under investigation to a subject of the investigation and inform the subject of certain rights that the subject has.[6]  It is then up to the prosecution to decide whether there is a basis

---

[2] In Denmark, there are two regional High Courts that serve as appellate courts for the district courts. Above the High Courts, there is only the Supreme Court.
[3] The full Danish name of SØIK is Statsadvokaten for Særlig Økonomisk og International Kriminalitet. In English, this translates to the Public Prosecutor for Serious Economic and International Crime.
[4] The full text of Danish statutes referred to in this report are included in Attachment C.
[5] Cf. Administration of Justice Act §§ 104(1), 110.
[6] This corresponds roughly to a charge in US law with the associated *Miranda* warning, cf. the Administration of Justice Act § 752(1).

for pressing charges, that is, for indicting the subject.[7]  It should be noted that SKAT, to some extent, has the competence to charge taxpayers that it concludes have committed a criminal offense in the area of tax and duty legislation.  SKAT can also decide such cases by issuing an administrative fine, cf. the Tax Control Act sections 86, 88, and the Collection Act section 18.  The cooperation between SKAT and the police and prosecution is described in more detail below in section 2.3.

The general prosecutorial competence—*i.e.*, the authority to press charges by indictment—belongs, pursuant to the Administration of Justice Act section 719, subsection 1, to the local police director, which in practice means the prosecutors employed in the respective police district.

There are two regional public prosecutors[8] who oversee the police districts and handle appeals for the two high courts, the Eastern and Western High Court.

The Director of Public Prosecutions[9] appears before the Supreme Court in criminal cases, and a significant part of his work is to issue directives that are binding orders for the subordinate prosecution authorities (the regional prosecutors and the prosecution in the police districts), containing general guidelines on the conduct of cases, submission arrangements, and related matters.  I discuss below in section 2.3 one of these directives concerning the prosecution's cooperation with special authorities, including SKAT.

Effective January 1, 2022, a kind of 13th police district was established under the name National Unit for Special Crime (NSK).  The unit is organizationally anchored at the same level as the police districts and is organized as a police district with its own prosecution authority.  Unlike the local police districts, however, it operates nationwide and handles the investigation and prosecution of crimes that are part of organized crime or involve complex cooperation with foreign law enforcement authorities, pursuant to the Administration of Justice Act section 110 a.  It can, to some extent, be compared to the role the Federal Bureau of Investigation has in the United States, although NSK has the authority to both investigate and prosecute criminal cases.[10]

The Special Crime Prosecutor (SSK) handles the affairs concerning NSK for the entire country.  SSK supervises and performs legality control over the criminal case processing in NSK and handles complicated appeals in the High Courts.  Additionally, SSK collaborates with NSK in large and complex criminal cases involving economic and organized crime, which are

---

[7] This roughly corresponds to indictment under US law.  It should be noted that the Danish words "påtale" and "tiltale" are synonymous and the meaning thereof is indictment.  *See infra* section 3.
[8] In Danish, "Statsadvokaten" (located in Copenhagen and Viborg).
[9] In Danish, "Rigsadvokaten" (located In Copenhagen).  "Rigsadvokaten" is the Director of Public Prosecutions and is roughly equivalent to the Attorney General in the United States.
[10] Cf. Announcement No. 2549 of December 17, 2021 § 2(1).

selected as so-called "cooperation cases."  Overall, NSK and SSK have taken over the role previously held by SØIK.

## 2.2  THE MINISTER OF JUSTICE AS THE CHIEF PROSECUTOR

In the Danish prosecutorial system, the Minister of Justice is the overall head not only of the police, but also of the prosecution, cf. the Administration of Justice Act section 98:

> **§ 98.** The Minister of Justice is the superior of the public prosecutors and supervises them. Subsection 2. The Minister of Justice may issue regulations on the performance of the public prosecutors' duties.
> Subsection 3. The Minister of Justice may give the public prosecutors instructions regarding the handling of specific cases, including to begin or continue, refrain from, or stop prosecution. An instruction under this provision to begin or continue, refrain from, or stop prosecution must be in writing and accompanied by a justification.  Furthermore, the Speaker of the Folketing [Danish parliament] must be notified in writing of the instruction. If the considerations mentioned in Section 729 c, subsection 1, make it necessary, the notification may be postponed.  The instruction is considered, in relation to access to documents under Sections 729 a-d, as material the police have obtained for the case.

In certain special cases, the Minister of Justice is the prosecutorial authority and, thus, decides whether to bring charges in the first instance.  This applies to certain terrorism cases and cases concerning state security, cf. Penal Code sections 110 f and 118 a.

Apart from these cases, the prosecutorial authority is reposed in the police directors, cf. the Administration of Justice Act section 719, subsection 1, and *supra* section 2.1.  The Minister of Justice, pursuant to the Administration of Justice Act section 98, subsection 3, has the possibility to intervene in specific individual cases by instructing the prosecution to "initiate or continue, refrain from or stop prosecution."

In Report No. 1066 from 1986 on combating economic crime, the following general observation regarding the Minister of Justice's authority to direct that criminal charges in a particular case not be initiated or, after being initiated, be terminated, is helpful to understanding the Minister of Justice's ultimate authority:

> Based on the formulation of the rules of the Administration of Justice Act on prosecution and the refraining thereof and the motives for these, it must be assumed that a full principle of opportunity applies to the Minister of Justice, as this in principle can stop the prosecution at any time concerning individual cases.[11]

In the Administration of Justice Council's Report 1194/1990 on the structure of the prosecution, it is stated on page 20 that "[t]he provision is used after many years of practice only in extraordinary cases to reverse the Attorney General's decision on prosecution or

---

[11] Combating Economic Crime, Opinion No. 1066 (1986), https://www.xn--betnkninger-c9a.dk/wp-content/uploads/2021/02/1066.pdf.  *See infra* section 3.3. for more about the principle of opportunity.

appeal, whereas the access for the Minister of Justice to reverse a decision to refrain from prosecution has been used to a somewhat greater extent."[12]

Formally, it is extremely rare for there to be direct intervention by the Minister of Justice in specific criminal cases. Although the Minister of Justice's intervention in individual cases is very rarely used, it has been considered problematic whether the Minister of Justice, in his capacity as the supreme head of the prosecution, can in practice exert politically motivated pressure on a more indirect and informal basis, whereby the top officials in the prosecution align themselves with the Minister's more or less unspoken wishes. As Toftegaard Nielsen and Sivan Holst have described it:

> The Attorney General knows that the Minister of Justice is the boss. The "real" civil servant does not only follow the boss's explicit and publicly communicated orders but perhaps also the boss's wishes. In any case, there is a significant risk in our system of underhanded communications from the minister to the prosecutor. The existence of the problem is clearly evident from the report on professional ethical problems in criminal justice submitted by a special group under Djøf's professional ethical working group. It is reported here how, in several cases, a head of office in the Ministry of Justice has called a prosecutor and first said that he did not want to interfere in the handling of specific cases, and then stated that the minister thought or found it best that charges be brought in a given case.[13]

Whether something like this occurred in the case in question, I have no basis to say, but it is indisputable that there has been a very significant political interest in the case, which is high-profile and massively covered in the press. In this context, it is worth noting that Per Hvas from the Ministry of Taxation sent the following email on February 26, 2019, to Steen Bechmann Jacobsen, then a SKAT official:

> Subject: The settlement negotiations and SØIK
>
> Dear Steen
>
> Kc Lene Steen from the Ministry of Justice's Police Office called in connection with the status of the civil law cases for dividend tax being on the agenda for KU tomorrow.
>
> Lene Steen just wanted to make sure that SKTST involves SØIK in connection with the formation of any potential settlement with the US pension plans in order to ensure that no complications arise in relation to the criminal cases.
>
> I assume that this already has been or is being taken into account in the process.
>
> Best regards Per

---

[12] In a legislative amendment in 2005, whereby § 98(3), the third sentence of the Administration of Justice Act was introduced, only one example is mentioned of the Minister of Justice's intervening in a specific case: In 1995, the Minister of Justice chose to drop the prosecution against three officers who had participated in the riots in Nørrebro in 1993 in connection with a referendum on the EU, and against whom the Attorney General had overturned the state attorney's decision not to press charges. *See* comments on Bill No. 13 (Feb. 23, 2005) (general comments on the bill section 2.2).

[13] Cf. GORM TOFTEGAARD NIELSEN & NICOLAJ SIVAN HOLST, THE COURSE OF THE CRIMINAL CASE 115 (7th ed. 2020). In general, this Report contains the English translation of the titles of published works.

SKAT_MAPLEPOINT_00000174_T. "KC" is a reference to Lene Steen's title of "head of department." *See* SKAT 30(b)(6) Dep. 86:8-22. "KU" is an abbreviation for the government's Coordination Committee, in which the top ministers of the government sit. The Committee is used to coordinate particularly important matters between the ministries.

In this context, it should be noted that there has been significant public criticism of the settlement negotiations, and there are also politicians who have demanded a separate legal investigation thereof.[14] The subject of the criticism has particularly been the fact that the persons covered by the settlement, who allegedly committed serious economic crimes against Denmark, have been allowed to deduct their expenses as part of the settlement. *See, e.g.*, STEIN_LHOTE0001503-STEIN_LHOTE0001507; STEIN_LHOTE0001557-STEIN_LHOTE0001561; STEIN_LHOTE0001562-STEIN_LHOTE0001569; STEIN_LHOTE0001622-STEIN_LHOTE0001623. But this polemic helps to underline that this is a case that the political level has shown—and continues to show—a great deal of interest in.

### 2.3 ON THE COOPERATION BETWEEN SKAT AND THE POLICE AND PROSECUTION[15]

As previously noted, the police and the prosecution in Denmark work closely together. But also between the police and the prosecution on one side and the various special authorities—such as SKAT and environmental authorities—there will often be close cooperation in practice regarding criminal cases that concern violations of legal areas where the police are not the controlling authority.

This is because Denmark, unlike some other European countries, does not have a special tax or environmental police.[16] In cases concerning violations of provisions within such specialized legal areas, the police and the prosecution must therefore largely rely on the relevant special authority, whose task it is to supervise the respective area. The vast majority of the case files will therefore often be based on the special authorities' own investigations of the case. In addition, in the actual police investigation phase, there will typically be close cooperation between the police, the prosecution, and the special authority.

The procedural division of competence is more specifically defined in the Legal Security Act, which aims, among other things, to regulate and balance the relationship between the special legal guarantees of the criminal process and the supervisory and control powers of the special

---

[14] *See, e.g.*, Media: Backers got billions in deductions in a secret settlement with the Tax Agency, DANISH BROADCASTING CORP. (Sept. 25, 2019), https://www.dr.dk/nyheder/penge/medier-bagmaend-fik-milliardfradrag-i-hemmeligt-forlig-med-skattestyrelsen; Joachim Claushøj Bindslev, SKAT gave incorrect information about the legality of dividend settlements, TV2 (Feb. 15, 2020), https://nyheder.tv2.dk/politik/2020-02-12-skattestyrelsen-gav-forkerte-oplysninger-om-lovlighed-af-udbytteforlig.

[15] This cooperation is also described in more detail in my PhD dissertation "Criminal Participation in Business Relations" chapter 7 (published version from 2009).

[16] For example, in the Netherlands, there is FIOD (the Fiscal Information and Investigation Service) and, in Italy, there is SEPRONA (the Nature Protection Service).

authorities, including the statutory notification and information obligations of companies towards the administration, cf. the Legal Security Act sections 9, 10. The law aims to ensure that the cooperation between the police and the prosecution and the special authority is not exploited by these parties to circumvent the legal guarantees of the Administration of Justice Act through misuse of the special authorities' administrative powers, which are often more extensive than the powers of the police.

The Legal Security Act, on the other hand, does not aim to change the division of investigative labor between the police and the prosecution and the relevant special authority. It is thus clearly assumed that the special authorities should continue to be able to take procedural steps, whereby the special authority's particular expertise is utilized for investigative purposes, in practice not least in the form of case clarification and fact-finding.[17]

The close cooperation is also reflected in the section of the Attorney General's notice on cooperation with special authorities in specialized cases. It states, among other things, in section 3.1.1:

> When a public authority, which is assigned control tasks or otherwise has responsibility for the legislation in the respective area, files a police report in a case of violation of a special law, it must be noted that if there is disagreement between the police and the special authority regarding the decision on the charge or the formulation of the charge, the case must be presented to the regional prosecutor. The case is then presented with a reasoned recommendation on the charging decision.

> The special authority must have the opportunity to make a statement before the case is presented to the regional prosecutor. In practice, this can be done by sending a draft decision to the special authority and giving it a reasonable deadline to make a statement.

> If new information emerges in the case after a report has been filed, possibly during an interrogation or otherwise during the investigation, and the authority cannot be assumed to be aware of the information, the authority must have the opportunity to comment on it before the police district makes a decision on the charge issue.[18]

Under normal circumstances, SKAT sends a formal charge request to the police and the prosecution with an indication of which tax and duty penalty provisions SKAT believes should be charged. If the tax and duty evasion exceeds 500,000 DKK, the charge request will also refer to section 289 of the Penal Code, which is a penal provision supplementing the tax and duty legislation's penalty provisions, where the specific material offense content will be defined. If there is disagreement between SKAT and the local prosecution, the case—as stated in the aforementioned Attorney General's notice—must be presented to the regional prosecutor. In my experience, this rarely happens, as the prosecution is generally receptive to SKAT's views, and disagreements are often handled locally and amicably.

---

[17] *See* the legislative history (Bill No. 96 (Nov. 26, 2003)), section 3.6.3.
[18] *See also* Jan Pedersen, Tax & Duty Criminal Law 343 (4th ed. 2019).

The Stein, et al., criminal case is, however, atypical in that SKAT has reported the individuals to the police for violation of the general fraud provision of the Penal Code (sections 279 and 286, subsection 2).  *See* STEIN_LHOTE0001736-STEIN_LHOTE0001741.  I am not aware of the precise reason for this, but it may be related to The Revenue Rule and a concern that in the civil cases initiated by SKAT in the United States and the United Kingdom, among other places, a referral to SØIK for prosecution of tax crimes might prejudice SKAT's civil cases, and the fact that the accused are not Danish citizens.  Formally, what Stein, et al., have been charged with is not a violation of a tax and duty penalty provision, and the matter therefore falls outside SKAT's own jurisdiction.  At the same time, a report has been made directly by SKAT to SØIK, which, as a separate public prosecutor (hierarchically at the same level as the regional public prosecutors), would hardly be obliged to present any disagreements up the system (if necessary, to the Attorney General).

Although formally is the criminal prosecution of Stein, et al., is as a fraud case under the Penal Code sections 279 and 286, subsection 2, the case in reality has significant criminal tax implications, as it concerns the payment of dividend tax.  The tax-related nature of the case can also be seen from the fact that the reports that came from SKAT had a detailed and lengthy account of the case process, etc.  *See* STEIN_LHOTE0000207-STEIN_LHOTE0000214; STEIN_LHOTE0000214-STEIN_LHOTE0000219.  This is similarly reflected in the significant subsequent email and letter correspondence between the prosecution and SKAT.  *See, e.g.*, SKAT_MAPLEPOINT_ 00000101-SKAT_MAPLEPOINT_00000102; SKAT_MAPLEPOINT_00000308; SKAT_MAPLEPOINT_00000401-SKAT_MAPLEPOINT_00000402; SKAT_MAPLEPOINT_00000722-SKAT_MAPLEPOINT_00000724.

## 2.4  SPECIFICALLY ABOUT SØIK'S ATTEMPT TO SEIZE PROPERTY AND FUNDS IN ACCOUNTS

I have been asked to address certain aspects of the manner in which SØIK proceeded in obtaining an order regarding seizures of assets of Stein, et al.

SØIK requested the seizure of property and funds in accounts in the United States belonging to Matthew Stein, Jerome Lhote, and Luke McGee in March and April of 2020.  *See* STEIN_LHOTE0010322-STEIN_LHOTE0010341; STEIN_LHOTE0011916-STEIN_LHOTE0011920; STEIN_LHOTE0001857-STEIN_LHOTE0001859.

The seizure of assets under section 802, subsection 2 of the Administration of Justice Act requires that it be "necessary" to secure the public's claim for legal costs, claims for confiscation under various provisions of the Penal Code (particularly profit confiscation), fines, or the victim's claim for compensation in the case.

Since at the time of SØIK's requests, Stein, Lhote, and McGee had made substantial payments under the Settlement Agreement and there was a Confession of Judgment for the full and final resolution of any further claim between the parties under the Settlement

Agreement, reflecting the obtained profit/enrichment, neither compensation nor profit confiscation is relevant.

Furthermore, since the criminal case involves charges under the general fraud provision of section 279 of the Penal Code, there is—unlike if the charges had been brought for violations of tax and duty legislation—no practice of claiming an additional fine under section 50, subsection 2 of the Penal Code.

Therefore, there is no strong legal basis to justify the seizure requested by SØIK, which was also the result of the appeal.  The Eastern High Court's ruling is printed in the Journal of Criminal Law (TfK) 2021.696 Ø, which overruled the seizure orders and states, among other things, the following:

> The three main shareholders in C Bank, including A, have signed an enforceable court settlement on the outstanding settlement amount.  Skattestyrelsen has stated that it is the agency's immediate expectation that it will not be necessary to claim compensation in a criminal case regarding the alleged shareholdings in C Bank. Therefore, and since no information has emerged about attempts to conceal assets or otherwise evade payment of the amounts owed according to the settlement, the High Court finds that a seizure on the present basis cannot be considered necessary to secure proceeds from the criminal act, claims for confiscation, or compensation, cf. Section 802, subsections 1 and 2 of the Administration of Justice Act.

STEIN_LHOTE0001241-STEIN_LHOTE0001244.  The district court had reached the opposite result and issued a ruling on seizure, but it appears from the case that it was only during the appeal proceedings in the Eastern High Court that the settlement was included in the assessment of whether seizure was even possible.  *See id.* at STEIN_LHOTE0001244.  Thus, it was explicitly stated in the Eastern High Court's ruling that the prosecutor, in response to the Eastern High Court's inquiry, stated "that there is no agreement or coordination with the tax authorities regarding the request for seizure."  *Id.* at STEIN_LHOTE0001241.

It is noted here that the defense presented in the course of the appeal to the Eastern High Court, among other things, correspondence between SØIK and SKAT, including a letter, dated January 28, 2021, sent from SØIK to SKAT.  The letter states that SØIK wanted more information about the content of the settlement, as follows:

> As part of the investigation SØIK has obtained several seizure orders.  Based on the Danish Tax Agency's [SKAT's] response of 19 January 2021 it can be confirmed that several of the orders are directed against individuals who are included in the settlement agreement.  Since these seizure orders are now appealed to the higher regional court with reference to the settlement agreement, I must request that a response to question 10 be received as soon as possible and <u>no later than February 3, 2021</u>.

SKAT_MAPLEPOINT_00000722_T at 3 (emphasis in original).

In my experience, had SØIK known details about the Settlement Agreement, SØIK would have disclosed and explained to the district court, at least to some extent, how the Settlement Agreement bore on its application for seizure orders.

### 3. NON-PROSECUTION: THE PRINCIPLE OF OPPORTUNITY AND THE PRUNING OF LARGER CRIMINAL CASES

The Administration of Justice Act uses both the Danish terms "påtale" and "tiltale."  The two terms are synonymous and express that the prosecution raises an indictment with an indictment document submitted to the court, cf. the Administration of Justice Act sections 834 and 835.

The following examines the opposite situation, that is, what options the prosecution has to refrain from raising an indictment, regardless of whether the evidence sufficient for conviction is assessed to be present according to the prosecution's opinion.

As mentioned, it is the prosecution that has control over the question of indictment, but to what extent does this conversely imply the possibility of completely or partially refraining from indicting.  Generally, a distinction is made between the principle of legality and the principle of opportunity, although, in theory, there is agreement that a sharp distinction is hardly possible.

Fundamentally, the principle of legality expresses that the prosecution does not have any discretion over the reasonableness or appropriateness of criminal prosecution in cases where, according to the prosecution's assessment, the necessary evidentiary basis for obtaining a conviction exists.

The principle of opportunity, on the other hand, grants the prosecution certain discretionary powers, so that considerations of reasonableness and resources can impact the decision to indict, even if, according to the prosecution's immediate assessment, it would be possible to obtain a conviction if an indictment were raised.

The Danish criminal process is considered to rest on the principle of opportunity, thus the Administration of Justice Act provides the possibility for the prosecution to take such considerations into account.[19]  The then-professor Stephan Hurwitz (later ombudsman) even stated that it is "most appropriate to characterize the duty to prosecute as relative."[20]  Similarly, Professor Bernhard Gomard stated that with "a better choice of words, the raising of an indictment can be described as facultative."[21]  Since the cited statements were made, the

---

[19] *See* HANS GAMMELTOFT-HANSEN, CRIMINAL PROCEDURE I 187 (1st ed. 1991); MICHAEL KISTRUP ET AL., THE CRIMINAL PROCESS 168 (4th ed. 2023); GORM TOFTEGAARD NIELSEN & NICOLAJ SIVAN HOLST: THE COURSE OF THE CRIMINAL CASE 121 (7th ed. 2020).
[20] Stephan Hurwitz, THE DANISH CRIMINAL PROCEDURE 218 (3rd ed. 1959).
[21] Bernhard Gomard, STUDIES IN THE DANISH CRIMINAL PROCESS 96 (1976).

discretionary possibility of refraining from raising an indictment has even been expanded (*see infra* section 3.1).

However, the prosecution's discretion is not unbounded.  The principle of opportunity and the considerations that can be included in the discretionary decision to refrain from indicting are provided for, and limited, by law.[22]  One of the clearest expressions of the principle of opportunity is found in the Administration of Justice Act section 722, subsection 2, pursuant to which an indictment can be waived "if there are special mitigating circumstances or other special conditions and prosecution cannot be considered necessary for public reasons."

This provision was recently used in a highly publicized and special vandalism case in Denmark.  Some students at the Royal Danish Academy of Fine Arts, along with the then head of the institute, threw a bust of King Frederick V (1723-1766), which belonged to the Academy Council, into the harbor.  The bust was reported to have a value of 44,350 DKK.  This meant that the act of vandalism was covered by section 291, subsection 2 of the Penal Code.  Unlike less serious vandalism under subsection 1, the case was thus subject to public prosecution, with the consequence that the victim formally did not have control over the prosecution decision, cf. section 305, subsection 1 of the Penal Code.  It was, therefore, solely up to the prosecution to decide whether to press charges.  However, the accused and the Academy Council reached a settlement, under which the accused paid compensation equal to the value of the bust so as to remedy the harm associated with the accused's conduct.  The prosecution then chose to drop the charges against the accused, citing the age of the case and the fact that a settlement had been reached and compensation paid.  Thus, no charges were continued against the head of the institute, who had been charged with vandalism.[23]

In relation to the present case, the most relevant options for completely or partially concluding the case without prosecution are found in sections 721, subsection 1, no. 4, and 722, subsection 1, no. 5 of the Administration of Justice Act.[24]

These two provisions have exactly the same scope.  They both concern the possibility of refraining from prosecution, *"where the conduct of the case would entail difficulties, costs, or processing times that are not reasonably proportionate to the significance of the case and the penalty that can be expected to be imposed."*

---

[22] *See also* Stephan Hurwitz, THE DANISH CRIMINAL PROCEDURE 215 (3rd ed. 1959) ("Also under the principle of opportunity, the waiver of prosecution must have a legal basis.").

[23] I have seen the notification of the waiver of prosecution and it has also been extensively described in the press.  *See* Christian Tange, Bust vandalism artist escapes punishment, POV. INT'L (May 31, 2024), https://pov.international/buste-haervaerks-kunstner-slipper-for-straf/.

[24] It should be noted that the two provisions were previously (before Act no. 385 of May 20, 1992) combined in one provision (then-current § 723, subsection 3), but they were separated into two provisions to achieve "a better systematization of the rules and the establishment of clearer competence rules also for the police chief's access to drop prosecution and waive charges," cf. Bill No. 184 (Jan. 1992) on the special comments on § 1, no. 6.

The difference between dropping charges under section 721, subsection 1, no. 4, and dropping charges under section 722, subsection 1, no. 5, is, in general, whether the accused admits to the alleged offense.[25]  This is because dropping charges has the character of a warning and is therefore formally a sanction, albeit a very mild one.  A decision to drop charges under section 722 has a preclusive legal effect, meaning that subsequent prosecution or conviction for the offenses covered by the dropped charges cannot be initiated or reinitiated.  Since it is formally a sanction, and since a dropped charge cannot be brought before the courts, it is assumed that the accused's guilt must be unequivocal.  In practice, charges are very rarely dropped if there is no admission; at the very least, the factual circumstances must be acknowledged.[26]

Dropping charges under section 721 of the Administration of Justice Act, on the other hand, means that the prosecution gives up the pressing of charges.  The typical reason for this is that the evidence is insufficient.  The case is then concluded based on the state of the evidence under section 721, subsection 1, no. 2.  Such a dropping of charges is distinct from application of the principle of opportunity.  The principle of opportunity, as mentioned, is expressed in subsection 4 of the provision and also means that the charges are dropped, but the basis under subsection 4 is, in general, considerations of resources and expediency weighed against the importance of the case and the expected punishment.

As mentioned below in section 4.1, agreements between the prosecution and the accused, by which the latter admits to some offenses in exchange for the prosecution's dropping others, are considered an unobjectionable form of plea bargaining.  It is also my own experience as a prosecutor for years that such agreements between prosecutors and the accused (in practice, their defense attorney) are quite common in Denmark.  Most often, the matters are concluded in court by the attending prosecutor, and it is not even certain that a formal letter memorializing the dropping of charges is drafted and sent out.  It is not always clear whether the prosecutor's dropping of certain charges is due to the state of the evidence under subsection 1, no. 2 or considerations of resources and expediency under subsection 1, no. 4.  But the end result is the same in any case.[27]

As a result of the authority vested in the prosecutor, the court will not address these matters, and the higher prosecution authority will also be bound by them unless the dropping of charges is reversed within a reversal period.  This period has been two months until July 1, 2024, under section 724, subsection 2, of the Administration of Justice Act, but it has now been extended

---

[25] MICHAEL KISTRUP ET AL., THE CRIMINAL PROCESS 168 (4th ed. 2023); LASSE LUND MADSEN & JENS RØN, CRIMINAL LAW II – SANCTIONS 13-15 (5th ed. 2024).

[26] MICHAEL KISTRUP ET AL., THE CRIMINAL PROCESS 169 (4th ed. 2023).

[27] See Combating Economic Crime, Opinion No. 1066 1,180 (1986), https://www.xn--betnkninger-c9a.dk/wp-content/uploads/2021/02/1066.pdf ("As can be seen from the examples mentioned in chapter 17, pruning will often simply appear as a factual limitation in the indictment to only include some of the matters that have been charged or at least investigated.").

to four months.  After this period, the dropping of charges is legally binding.[28]  For example, UfR 2016.1236 H, concerned the question of whether the prosecution had given a binding promise of limited prosecution to two defendants (T1 and T2) in a drug case under section 191 of the Penal Code.  During the district court's handling of the matter, the prosecution and the defense attorneys agreed that it could be assumed for the court's decision that the prosecution had made a clear statement to T1 and T2 that the prosecution would drop one of the charges against each of the defendants if the person in question could admit to the other charge.  T1 and T2 had accepted the statement, and there was agreement during the case that the prosecution's statements were made by an employee who had the authority to do so.

The district court's ruling states, among other things, the following:

> Hereafter and following the documented email correspondence, the court finds that the prosecution has explicitly and with binding effect indicated that it will limit the prosecution to the extent claimed by T1 and T2, provided that the limitation of prosecution is conditional upon their acknowledgment to the stated extent.  T1 and T2 are found—at least after the expiration of the reversal period—to have a legitimate expectation that the case can be resolved accordingly.  The limitation of prosecution is undisputedly made by the competent authority, and since there is no information that the decision has been reversed in accordance with section 724, subsection 2, of the Administration of Justice Act,
> **it is determined**
> There is a binding limitation of prosecution in relation to T1, stating that the prosecution will drop charge 2 if he can confess to charge 1 regarding 2 kg of cocaine.
> There is a binding limitation of prosecution in relation to T2, stating that the prosecution will drop charge 1 if he can confess to charge 2 regarding 1.2 kg of cocaine.

The Supreme Court upheld the district court's ruling in its entirety.  As noted above, it is not always clearly expressed where the formal legal basis for the abandonment of prosecution precisely lies.  The legal basis for the abandonment of prosecution can, however, only be found in section 721 of the Administration of Justice Act.  But in reality, the driving factor is often resource considerations.  The prosecution avoids a protracted case, and the defendants are assured of only being convicted to the extent they confess.  The decision shows that under Danish law, it is both reasonable and legal (and indeed quite common) for prosecutors to enter into this form of plea bargain-like agreements, whereby the accused completely avoids prosecution for one or more charges.

## 3.1 Further on complete or partial abandonment of prosecution in larger cases of economic crime under section 721, subsection 1, no. 4, of the Administration of Justice Act

Since the accused in this case have denied their guilt, it is section 721, subsection 1, no. 4, and not section 722, subsection 1, no. 5, that would have been the relevant legal mechanism by

---

[28] By Act no. 658 of June 11, 2024.  This appears in section 724, the current version of which is cited.

which the case could have been completely or partially closed without prosecution in the form of an indictment.  This provision is therefore examined in more detail below.

Section 721, subsection 1, no. 4, of the Administration of Justice Act reads as follows:

> Prosecution in a case can be completely or partially abandoned in cases
> […]
> 4) where the conduct of the case would entail difficulties, costs, or processing times that are not reasonably proportionate to the significance of the case and the penalty that can be expected to be imposed.

Although section 721, subsection 1, no. 4, of the Administration of Justice Act can, in principle, be used in all cases, there is no doubt that the core area for its use is the trimming of larger cases of economic crime.[29]

In Report No. 1066 of 1986, a report which concerned combating economic crime submitted by a committee appointed by the Minister of Justice,[30] the committee proposed an increased possibility to trim cases based on resource considerations.  The Report states, among other things, the following:

> As highlighted above in chapter 19.1, the committee finds that there is a need for changes in the Administration of Justice Act to give the prosecution the opportunity to trim cases based on resource considerations.  This consideration is particularly relevant in cases of economic crime, where one must seek to counteract the situation where the conduct of cases, due to the complicated nature of the investigation, takes years, so that the accused and possibly charged individuals have to live with the uncertainty and pressure that the investigation and adjudication of a criminal case entail for a very long time.
>
> […]
>
> The committee therefore proposes that a new provision be inserted in section 723 of the Administration of Justice Act, allowing the prosecution to completely or partially abandon or drop charges if the conduct of the case would entail difficulties, costs, or processing times that are not reasonably proportionate to the significance of the case and the penalty that can be expected to be imposed.

---

[29] It is stated in the section of the Attorney General's notice regarding presentation and reporting, etc., section 3.1.2, that the police district must submit the question of the abandonment of prosecution based on resource considerations pursuant to section 721, subsection of the Administration of Justice Act. 1, no. 4, when there is a question of a reduction that could entail significant changes with regard to the nature or size of the sanction (regardless of whether it is a fine or a prison sentence).  It is unclear whether SØIK would similarly be obliged to submit the question upwards to the Attorney General, but in a case of this nature, I consider it likely.

[30] Combating Economic Crime, Opinion No. 1066 1,189-192 (1986), https://www.xn--betnkninger-c9a.dk/wp-content/uploads/2021/02/1066.pdf (emphasis added).

[…]

The rule uses the term 'abandon or drop charges.' This is because trimming for the reasons proposed by the committee can come into play at several different stages of the case. It may thus be considered in connection with the initiation of prosecution whether, for the sake of the case's quick processing in court, to drop charges in one or more matters that are fully investigated and where the prosecution believes the individual would be convicted if the charges included these points. In such cases, there is a dropping of charges.

The situation will, however, more often be that at an earlier stage of the case, one must decide whether the investigation should be limited to certain aspects to expedite the entire case, including the processing, before the case is brought to court. An example of this can be cases where one or more aspects require extensive investigation, such as reconstructing an accounting system, interviewing a large number of witnesses, difficult contacts with foreign authorities, or similar, and where the investigation of these aspects will be both time and manpower-consuming, while the rest of the case can be conducted quickly. In these cases, it will naturally not be possible to say in advance whether continued investigation could provide grounds for a conviction. The proposed provision allows the prosecution to drop these aspects so that the rest of the case can proceed as quickly as possible.

[…]

Although the proposed provision formally allows for the entire charge to be dropped, the typical situation in practice will be that the dropping of charges or the withdrawal under the new provision does not cover the entire case but only some of several aspects in a larger case complex or part of an aspect.

[…]

It is, of course, not the intention of the proposal that cases should be reduced to such an extent that an expected multi-year prison sentence is reduced to a fine. However, it will not be excluded to reduce a case, even if this means that the expected sentence is reduced from, for example, 4 years in prison to 1-2 years in prison.

The proposal was endorsed by the Ministry of Justice[31] and subsequently codified by law No. 385 on June 10, 1987.  As can be seen, the prosecution has, especially in large and complicated cases of economic crime, the authority to drop the entire case based on resource considerations, although the typical scenario will be that the case is reduced to a greater or lesser extent.

---

[31] Cf. Bill No. 34 (Oct. 8, 1986).

The Administration of Justice Act section 721, subsection 1, no. 4, expresses a discretionary principle of opportunity, which provides the prosecution with the discretion to weigh the importance of the case and the penalty that can be expected to be imposed against broader resource-based considerations when assessing whether to initiate charges in the form of an indictment.

A number of considerations can be included in this, as long as the overall purpose is grounded in resource-based expediency and reasonableness considerations.  In my opinion, there can hardly be any doubt that it will be legitimate and relevant to include plea bargain-like considerations in the assessment, so that the accused admits certain aspects in exchange for the prosecution dropping others, thereby streamlining the process and saving resources.

Similarly, it is relevant and legitimate to include in the assessment whether the accused has remedied the damage, as the need to conduct a large and complicated criminal case is substantially reduced if the victim has been compensated.

It must also be included in the assessment whether the accused has contributed to the clarification of criminal acts committed by others, what is described as "cooperation" under US practice and procedure, as this will result in significant resource savings in these cases, and the criminality of the accused's own behavior is reduced, whereby the penalty that can be expected to be imposed will, all else being equal, be expected to be less.

Furthermore, the expected age of the case at the time of judgment can play a role, as long case processing times often trigger a penal "discount" in connection with sentencing.  This also follows from the wording of the provision, which explicitly mentions case processing time.

Finally, it follows directly from the wording of the provision that an economic aspect can be included in the considerations, *i.e.*, costs.  It will thus be legitimate to consider whether the case is expected to be very costly to bring to judgment.  Considerations of costs can also embrace the impact of a prosecution on the payment of restitution.

Several of the mentioned aspects can also be considered by the judge as mitigating circumstances in the actual sentencing, to the extent that an indictment has been brought that results in a conviction, cf. the Penal Code section 82, subsections 10, 11, and 13.  This supports that these are legitimate and relevant considerations.  In the exercise of prosecutorial discretion available under Administration of Justice Act section 721, such considerations therefore can also be included in the overall assessment of whether charges should be brought in a comprehensive and complicated case, as long as the prosecutorial assessment fundamentally considers whether the conduct of the case will entail difficulties, costs, or processing times that are not reasonably proportionate to the importance of the case and the penalty that can be expected to be imposed, cf. the Administration of Justice Act section 721, subsection 1, no. 4.

## 4. FURTHER ON PLEA BARGAINING IN DANISH LAW

### 4.1 GENERAL CONSIDERATIONS

Danish law has undergone significant development over the past four decades when it comes to the phenomenon of plea bargaining. As noted, the same terminology is used in Denmark as is known from US law, but there is—as will be reviewed below—a single point of difference between Danish and US law.

Furthermore, it is not always particularly clear what exactly is meant when the term "plea bargaining" is used in Danish law and Danish criminal procedural theory. It is therefore appropriate to distinguish between "sentence reductions" given for confessing to one's own criminal acts and "sentence reductions" given for providing information about other people's crimes.

The former is generally considered relatively unproblematic, while the latter is deemed to be concerning. In line with this, a group of prosecutors in a report on Professional Ethical Problems in Criminal Justice issued by a special committee under DJØF[32] in 1994 outlined the following scenarios:

1.    The agreement entails that the prosecution refrains from pressing charges for some otherwise provable matters and that the accused then pleads guilty to the rest.

2.    The agreement entails that the accused refrains from appealing the district court's judgment in exchange for the prosecution refraining from pressing additional charges for some matters that have so far been separated from the case.

3.    The agreement entails that the accused provides information about others' involvement in the crime in exchange for the prosecutor limiting their sentencing request.

Immediately following this, it is stated that "it must be acceptable to enter into the agreements mentioned under 1-2."

This distinction is similarly used in the following, so that the situation mentioned under point 3 is treated in the next section, while point 1 (confession about one's own matters) is not treated further,[33] partly because this aspect is considered unproblematic, and partly because the plaintiffs in any case do not confess to the charged matters.

---

[32] The Danish Association of Lawyers and Economists.
[33] To a certain extent, it is dealt with above in section 3.

## 4.2 ON SENTENCE REDUCTION FOR ASSISTANCE IN EXPLAINING CRIMES COMMITTED BY OTHERS

In UfR 1982.1027 H, the Danish Supreme Court in a major drug case did not allow the testimony of a witness (A) who was residing in the United States and had entered into a plea bargaining agreement with the American and Danish authorities, whereby he was to provide an "open and truthful account of his knowledge regarding his own activities as well as those of others he knows about concerning the import, possession, and distribution of narcotics and dangerous substances subject to control regulations, as well as all other matters these representatives will inquire about." It was agreed in this context that "if A pleads guilty to the charges described above and is convicted thereof and fully complies with the other provisions of this agreement, the Danish government will with prejudice cease its ongoing criminal prosecution against A and withdraw its current extradition request." The High Court had allowed the testimony, but the Supreme Court stated the following:

> As stated in the appealed decision, A, according to the content of the agreement, will have an obvious interest in testifying in accordance with the statements he has given during the investigation. Furthermore, considering the circumstances under which these statements were obtained, it is deemed concerning to allow the requested testimony regardless of the case's scope and nature.

In the following years, it was generally assumed that plea bargaining arrangements were not possible in Denmark. Then High Court Judge Holger Kallehauge even noted in an article in the Nordic Journal of Criminal Science in 1983 that "it is gratifying that the Supreme Court put a stop to Danish prosecutors' attempts at plea bargaining before they got too far."[34]

In practical legal reality, however, prosecutors relatively freely disregarded the Supreme Court's 1982 decision. In the aforementioned 1994 report on Professional Ethical Problems in Criminal Justice, prosecutors described that it could be acceptable to enter into agreements "that from both sides involve giving and receiving something, where one must acknowledge to oneself that one's disposition in isolation is hardly professionally defensible and reasonable."

Police attorney at the Copenhagen Police[35], Carsten Egeberg Christensen, provided several examples in an article in UfR 1993B.44 where the prosecution argued that the sentence should be reduced compared to the normal level in cases where the accused had assisted the police with incriminating information against co-perpetrators. For example, the following cases are mentioned in the article:

---

[34] Af H. Kallehauge, *Drug Cases*, NORDISK TIDSSKRIFT FOR KRIMINALVIDENSKAB (Nordic Journal of Criminal Science) 81, 88 (1983), https://tidsskrift.dk/NTfK/article/view/71001/102963.

[35] With the current different structure, it corresponds today to being a head of prosecution, *i.e.*, head of a department in the prosecution service (*e.g.*, for the department of violent and organized crime) in one of the country's 12 police districts.

*Copenhagen City Court's judgment of April 18, 1989 (no. 1208/89):*

A 38-year-old male foreigner was sentenced to 2 years and 6 months in prison for importing approximately 1 kg of high-strength cocaine. The sentencing was justified by his cooperation in the case's resolution. The normal sentence would have been a minimum of 4 years in prison.

*Eastern High Court's appeal judgment of May 13, 1990 (2nd Division case no. 651/89):*

<u>A 22-year-old female resident foreigner participated in the transfer of 1 kg of heroin and the import of an additional 300 grams. During a judicial hearing, she provided incriminating statements about 4 other individuals, who would not have been convicted without her testimony.</u>

During the district court proceedings, the following statement was made to the court record: "The prosecutor declared that the prosecution agrees that this case, which significantly differs from other cases concerning violations of Penal Code § 191, should be assessed in terms of sentencing according to Penal Code § 85 and § 85, subsection 5 and no. 9."

The district court, referring to the prosecution's statement, set the sentence to 1 year and 6 months in prison, which was suspended with 200 hours of community service, referring to Penal Code § 85 and § 84 subsection 1, no. 5 and 9. The reference to no. 5 was due to the convicted being the girlfriend of the main perpetrator, whom she also incriminated with her testimony.

However, the public prosecutor did not agree with the lenient sentencing and appealed the judgment, which the Eastern High Court changed to 2 years in prison, stating that the sentence should be increased due to the nature of the crime.

Furthermore, the High Court did not find that there were such circumstances that warranted a suspended sentence.

With this change, the High Court upheld the judgment, meaning they did not distance themselves from the views underlying the district court's sentencing.

<u>The normal sentence would have been around 5 years in prison.</u>

Whether it was the described practical legal reality that caused the Supreme Court to change course is unknown, but in U 1998.1317 H, in a case also concerning drug crime, the Supreme Court nevertheless concluded the following:

<u>Penal Code § 80, subsection 1, allows for consideration during sentencing of the fact that the accused has assisted in the case's clarification, including by providing testimony about co-perpetrators.</u>

It is, in our opinion, of significant importance for the investigation of major drug cases and certain other serious cases, where the investigation is typically particularly difficult and problematic, that there is an opportunity to motivate a suspect to assist in the case's clarification. Such motivation can be the prospect for the suspect that their own sentence

will be reduced.  We find, considering this, that during sentencing, consideration should be given to information from the prosecution that the suspect has provided the police and prosecution with assistance during the investigation, despite the principled and legal security concerns that may be associated with such an arrangement.  We note in this context that during any criminal case against persons identified by the suspect as co-perpetrators, it can be considered that the suspect's information has led or may lead to a reduction in their own sentence.

The Supreme Court then noted that the prosecution had informed that the accused had provided valuable information significant to the investigation.  On this basis, the Supreme Court reduced the sentence from 6 to 5 years in prison.

The Supreme Court's change of course meant that plea bargaining-based sentence reductions for information about co-perpetrators could now be interpreted into the general and common sentencing rule in Penal Code section 80, subsection 1.[36]

A few years later, the legislature followed suit, and in 2004, a provision was explicitly codified in the Penal Code section 82, subsection 10, which generally opened up sentence reductions in these situations, as follows:

It should generally be considered a mitigating circumstance during sentencing,

[...]

(10) that the perpetrator has provided information that is crucial for the clarification of criminal acts committed by others.

Regarding the scope of the provision, the following is stated in the legislative preparatory works:

In § 82, no. 10, it is stated as a mitigating circumstance that the perpetrator has provided information that is crucial for solving criminal acts committed by others. This provision codifies the legal state that has developed based on the Supreme Court's ruling published in the Weekly Law Report 1998, page 1317. The provision is not limited to specific types of cases, including cases in which the perpetrator himself has been involved. According to its wording, the provision is expected to have the greatest practical significance in cases of more serious crime, such as major drug cases, cases of serious violent crime and murder, or cases of extensive or serious economic crime, where investigations are typically particularly difficult or problematic.[37]

---

[36] The wording of the provision at that time was: "When determining the penalty, consideration must be given to the seriousness of the offense and information about the perpetrator's person, including his general personal and social circumstances, his circumstances before and after the act, and his motives for it."
[37] *Folketingstidende 2003-2004, Appendix A*, 1, 3325 (Oct. 7, 2003),
https://www.folketingstidende.dk/ebog/20031A1?s=4895 (emphasis added).

In 2009, the Supreme Court took another step towards accepting plea bargaining agreements as known from US law.   In the specific case, which concerned the importation from the Netherlands and exportation to the United States of 250,000 ecstasy tablets, the prosecution wanted to call four individuals (A-D) as witnesses.   A-D had been convicted in the United States in the same case complex after they had entered into "plea bargains" with the prosecution.   These agreements involved the individuals committing to cooperate with the authorities by providing testimony in cases against co-perpetrators, including three Danish citizens who were charged in the Danish offshoot of the case.   A breach of the obligations under the plea bargains could result in the loss of the benefits that had been obtained or promised.   Thus, it was stated in point 12 of the plea bargain agreement:

> 12. If the defendant, as mentioned above, in any way fails to fulfill each of his obligations under this Plea Agreement, the Government may choose to be released from its obligations under the Plea Agreement.   The Government may then prosecute the defendant for any of the federal offenses that the defendant has committed in relation to this case, including all charges dismissed under the Plea Agreement, and the Government may recommend to the Court any sentence, up to and including the maximum sentence, for the relevant offenses.   The defendant expressly waives any objection to such prosecution on the grounds of a statute of limitations and any constitutional or statutory objection based on a speedy trial, except to the extent that there is a basis for such an objection on the date the defendant signs this Plea Agreement.   Furthermore, the defendant agrees that in such prosecution, all confessions and other information he has ever provided, including all statements he has made and all evidence presented by the defendant during meetings regarding offered information, interrogations, testimony, and other occasions, may be used against him.

The District Court had excluded the testimony of the American witnesses (A-D), referring, among other things, to the 1982 decision from the Supreme Court.   In reality, this was crucial for the case, as the defendants were subsequently acquitted.

During the appeal in the High Court, a separate ruling was issued on the matter, after which the High Court allowed A-D to testify in the case.   The matter was brought before the Supreme Court before the judgment in the main case was delivered.

The Supreme Court upheld the High Court's ruling, including the following statement from the Supreme Court:

> Although plea agreements like the ones in question cannot legally be entered into by a Danish prosecution, they cannot be considered contrary to fundamental Danish legal principles. Arrangements that to some extent have the same character and purpose as the American plea agreements are also known in Danish law.   Thus, § 82, no. 10 of the Penal Code contains a provision on sentence reduction in cases where the perpetrator has provided information that is crucial for solving criminal acts committed by others. According to § 23 a of the Competition Act, a company participating in a cartel can obtain immunity from prosecution or a reduced sentence if it cooperates with the authorities in the investigation.

> On this basis, and since in the handling of cases of international crime, it must be taken into account that other countries may have procedural rules that differ from the Danish ones, the legal security concerns that are the reason why plea agreements like the present ones are not recognized in Danish law cannot lead to the prosecution being prevented from calling the four individuals as witnesses in the Danish criminal case.  However, when assessing the evidentiary value of the testimonies, it must be considered that the testimonies may be false because they are motivated by the promised benefits.

The Supreme Court had appointed no less than 7 Supreme Court judges to the case.  In appeals concerning rulings, normally only three judges participate, while in judgments issued by the Danish Supreme Court, as a rule, five judges participate.  The expanded panel of judges indicates that this was not only a principal case but that the Supreme Court was aware that they were effectively overturning their own 1982 decision.

As stated, the Supreme Court notes that "the agreements in question cannot legally be entered into by a Danish prosecution authority."  This should be seen in the context that the Supreme Court elsewhere in the premises states that the plea bargain agreements with witnesses A-D "involve, among other things, that the individuals have committed to cooperating with the authorities by giving testimony in cases against co-perpetrators, and that a breach of this obligation can result in the loss of the benefits in the form of non-prosecution and sentence reduction that have been obtained or promised."  It then states:

> Agreements on non-prosecution and/or sentence reduction, which are conditional in this way, are legal and customary in the United States.  However, such agreements cannot, as a rule, be considered legal under Danish law.

The main difference between Danish and US law can thus be summarized as follows: under Danish law, it is not possible to condition agreements so that the case can be reopened if the individual does not comply with the agreement, with the consequence that the discount is revoked and the person is punished in the usual manner.  But as highlighted in the previously mentioned quote, the Supreme Court simultaneously states that such agreements "cannot be considered contrary to fundamental Danish legal principles." This implicitly opens the door for Danish authorities, in their cooperation with American authorities, to go very far in accepting plea bargaining arrangements in the form known from US law.  Ultimately, it depends on the overall considerations that the prosecution can make according to the principle of opportunity. *See supra* section 3.1.

In conclusion, it is noted that Danish prosecutors, even in purely Danish cases, will in practice be able to go a long way towards achieving a legal position similar to that in the United States.

If an agreement is made with a suspect to confess and testify against co-perpetrators or other persons involved in other crimes, the suspect's testimony will be recorded in court before a judge in connection with the confession case.  Alternatively, an in-court examination can be arranged under section 747, subsection 2 of the Administration of Justice Act.

Should the suspect in this context choose to "renege on the agreement," the prosecutor will obviously not argue that the individual should receive a sentence discount for contributing to the clarification of cases against others.

However, it is sometimes seen in practice that the suspect suddenly experiences a form of acute memory loss or refuses to speak or otherwise deviates from their incriminating testimony during the case against the co-perpetrators when called as a witness in these cases, but only after they have received their "discount."  In such cases, it will not be possible to revoke the obtained sentence "discount."  But in practice, this will not mean much for the prosecution, as they will, in any case, be in possession of an in-court recorded testimony, which will typically have been given after the co-perpetrators' defenders have been summoned.  Such a testimony, recorded in a court record, can therefore be documented and used as evidence in the case.

## 5. CONCLUSIONS

There is a tradition in Danish law for close cooperation between the police and the prosecution on one side and relevant special authorities on the other side.  The prosecution will often be receptive to the considerations of a relevant special authority and, in practice, considers the views of the special authority, such as SKAT, but it is the prosecution that ultimately controls the indictment, and thus it is ultimately up to the prosecution to decide whether to bring charges or not.

In practice, the most frequent reason for not bringing charges is that the prosecution assesses that the evidence in the case will not be sufficient for a conviction, cf. section 721, subsection 1, no. 2 of the Administration of Justice Act.  But the Danish criminal procedure is based on a principle of opportunity, which also allows for charges to be wholly or partially dropped if, under certain circumstances that permit the prosecution to consider a wide variety of factors, it is not deemed opportune.

Thus, Danish law provides the basis for wholly or partially refraining from bringing charges in a case based on more discretionary considerations founded on resource-related considerations, cf. section 721, subsection 1, no. 4 of the Administration of Justice Act. According to this provision, charges can be dropped (refrained from) where the conduct of the case would entail difficulties, costs, or processing times that are not reasonably proportionate to the significance of the case and the penalty that can be expected to be imposed.

The core area for the application of this provision is extensive and complicated cases of economic crime.  In practice, this will typically involve the case being reduced to a smaller scope, which the indictment then focuses on, but the provision allows for the possibility that charges can be completely omitted under certain circumstances and in the discretion of the prosecution.

It will be both reasonable and relevant to include any settlement reached between the parties in the resource assessment under the Administration of Justice Act section 721, subsection 1, no. 4, especially if any unjustified profit has been repaid, thereby compensating the aggrieved party, or if prosecution would put the future payment of restitution at risk. In a case that does proceed to indictment, these considerations can also reduce the sentencing judge's perception of the severity of the offense and thus the need for imprisonment, cf. the Penal Code section 82, subsection 11.

Similarly, it can also be considered whether the accused have contributed to the resolution of other cases, as the severity of the charges against them would be reduced, making it more justified to let the balance between resources and expected punishment favor a resource-based perspective, cf. the Penal Code section 82, no. 10.

The specific case of Stein, et al., is extremely extensive and very complex. As of 2021, it involved US citizens, making the special and flexible EU extradition rules (the European Arrest Warrant) irrelevant. The case thus would reasonably have been expected to require an extradition process, which would be resource-intensive and likely take several years to complete.

In this context, the expected age of the case at the time of judgment would have been a mitigating factor, which should also be considered in the assessment under the Administration of Justice Act section 721, subsection 1, no. 4, cf. the Penal Code section 82, subsection 13. It is noted that the alleged offenses date back to the period 2013 to 2015. In my assessment and based on when Stein, et al., were charged, it is difficult to imagine that a final judgment will have been obtained before around 2030.

According to the testimony of Steen Bechmann Jacobsen, the Danish state has so far spent approximately 2.5 billion DKK to recover about 1.9 billion DKK to the state treasury out of a total alleged loss of approximately 12.7 billion DKK. *See* Bechmann Dep. 179:18-182:19. At present, the Danish state has thus lost more than it has recovered from an economic perspective.

The majority of the 1.9 billion DKK that has so far been returned to the state treasury comes from the Settlement Agreement under which it is alleged that Stein, Lhote, and McGee owe an additional 600 million DKK. This amount is the primary subject of the current lawsuit. The considerations permissible under Administration of Justice Act section 721 ("*costs*") would in my view include the likely impact of the initiation of charges on the ability of Stein, Lhote, and McGee to make further payments required under the Settlement Agreement. As such, as a matter of law and in the discretion given to the prosecution under Administration of Justice Act section 721, it would have been appropriate to take into consideration if an indictment would make payment of the 600 million DKK unlikely or even less likely.

I have reviewed the transcript of the proceedings that occurred before the court on May 21, 2024. In particular, I have reviewed the comments of counsel for SKAT, who indicated that

the criminal prosecutors could not take into consideration the fact that Settlement Agreement payments were made in determining whether to indict a defendant.  As set forth above, this is an inaccurate statement of Danish law.  I have also reviewed the comments of counsel for SKAT to the effect that the only time that the fact that Settlement Agreement payments were made can be used is if the person gets convicted and, at that time, in connection with the sentence to be imposed by a judge.  As set forth above, this is inaccurate statement of Danish law.

It is the prosecution that controls the pressing of charges in a criminal case subject to public prosecution, which most criminal cases in Denmark, including the present case, are.  The prosecution in Stein, et al., has chosen to charge a violation of the Penal Code's fraud provision (section 279) with reference to the general penalty enhancement provision in the Penal Code section 286, subsection 2, whereby the penalty can increase to imprisonment for up to 8 years when the fraud is of a particularly serious nature, especially due to the manner of execution, or because the crime was committed by several people together, or due to the extent of the obtained or intended gain.  Additionally, the prosecution has even made a separate claim for the application of the Penal Code section 88, subsection 1, 2nd sentence, which is a special and very rarely used provision, whereby the penalty can exceed the prescribed penalty by up to half.  With this claim, the prosecution has opened up the possibility that the penalty could increase to up to 12 years of imprisonment.  In my experience, this suggests that the prosecution has not taken any mitigating circumstances, such as those arising out of the Settlement Agreement, payments made and to be made under the Settlement Agreement, the cooperation provisions of the Settlement Agreement, and the manner in which the Settlement Agreement was negotiated, into account.

However, under Danish law, there would have been nothing, as a matter of law, to prevent the prosecution from choosing a completely different solution.  In the discretionary balance between, on the one hand, the difficulties in carrying out the case, the resources and costs associated with it, and the overall probably extremely long case processing time against, and on the other hand, the importance of the case and the expected punishment, the prosecution could have given weight, even significant weight, if it chose to do so, to broadly based resource considerations.  The Administration of Justice Act section 721, subsection 1, no. 4, as mentioned, allows the prosecution to completely refrain from pressing charges considering the overall complexity of the case and the significant economic resources the case's overall completion is expected to require, especially considering that any unjustified gain was on its way to being repaid pursuant to the Settlement Agreement.  The prosecution could thus have taken into account the Settlement Agreement and the other information that, under the Settlement Agreement, SKAT was required to provide to SØIK, and it would have been reasonable, in determining whether to indict, to consider the age of the case and that the involved persons have apparently contributed significant information to the resolution of the very complex case.

I reserve the right to supplement or modify the statements and opinions set forth above as a result of the receipt and review of additional information.

Dated: September 6, 2024

Lasse Lund Madsen

**ATTACHMENT A: Materials Provided**

1. **Plaintiffs' Produced Documents**

   STEIN_LHOTE0000001-STEIN_LHOTE0010305

   STEIN_LHOTE0010322-STEIN_LHOTE0010351

   STEIN_LHOTE0011916

2. **McGee's Produced Documents**

   MCGEE_000001-MCGEE000174

3. **SKAT's Produced Documents**

   SKAT_MAPLEPOINT_00000001-SKAT_MAPLEPOINT_00000943

   SKAT_MAPLEPOINT_00000174_T

   SKAT_MAPLEPOINT_00000722_T

   JHVM_0005902

   JHVM_0005903

   SKAT_True-Up_Danish-Belgian Allocation NCB & Lindisfarne_0001

   SKAT_True-Up_Danish-Belgian Allocation_Solo_0001

   SKAT_True-Up_Ganymede Fees_0001_1

   SKAT_True-Up_Ganymede Fees_0001_2

   SKAT_True-Up_Post Refund Custody Fees_0001

4. **Transcripts and Exhibits**

   Ahlefeld-Engel, Bechmann, and SKAT 30(b)(6) Deposition Exhibits 100-147

   Deposition Transcript of Gry Ahlefeld-Engel

   Deposition Transcript of Steen Bechmann Jacobsen

   Deposition Transcript of Jerome Lhote

   Deposition Transcript of Luke McGee

   Deposition Transcript of SKAT's 30(b)(6) Witness

   Deposition Transcript of Matthew Stein

   Lhote, McGee and Stein Deposition Exhibits 1-28

   Transcript of Proceedings, dated May 21, 2024

## ATTACHMENT B: Curriculum Vitae and Publications

1. **Publications Authored Since 2014**

   ***Textbooks, Commentaries, and Charters***

   **Strafferet II – Sanktioner**
   Lasse Lund Madsen, Jens Røn
   5. udg., 2024, 171 pp.
   Jurist - og Økonomforbundets Forlag

   **Kommenteret Straffelov, Almindelig del**
   12. udg., 2023, 760 pp.
   Thomas Elholm, Lasse Lund Madsen, Hanne Rahbæk og Jens Røn
   Jurist - og Økonomforbundets Forlag

   **Kommenteret Straffelov, Speciel del**
   12. udg., 2022, 891 pp.
   Thomas Elholm, Lasse Lund Madsen, Hanne Rahbæk og Jens Røn
   Jurist - og Økonomforbundets Forlag

   **Strafferet I, Ansvaret**
   6. udg., 2020, 410 pp.

   **EU's Charter om Grundlæggende Rettigheder**
   2. udg., 2018, 633 pp.
   Jonas Christoffersen, Lasse Højlund Christensen, Lasse Lund Madsen, Louise
   Halleskov Storgaard, Henrik Skovgaard-Petersen, Maria Ventegodt
   Jurist - og Økonomforbundets Forlag

   ***Articles***

   **Nationale sikkerhedshensyn under retssagsførelse – navnlig i lyset af FE-
   sagen og kildeførersagen**
   Artikel til brug for oplæg på Nordisk Juristmødes 150-års jubilæum i Kbh. (Aug. 2024)

   **En revisor-smølfe-CD – om forsøg på spirituskørsel**
   Nicolaj Sivan Holst og Lasse Lund Madsen i Festskrift til Lars Bo Langsted, 2018, Ex
   Tuto Publishing, p. 147-156

   **Edition som efterforskningsmiddel - med særligt henblik på internetrelaterede
   bedragerisager**
   Ugeskrift for Retsvæsen 2017B.205

   **Agentvirksomhed online - efterforskning i IT-relaterede sager om misbrug af
   børn**
   Ugeskrift for Retsvæsen 2017B.95

   **Bedrageri i den digitale virkelighed**
   Ugeskrift for Retsvæsen 2016B.343

***Other Articles and Publications***

Lasse Lund Madsen, *Hestens egen mund*, WEEKENDAVISEN (Mar. 14, 2024), https://www.weekendavisen.dk/2024-11/opinion/hestens-egen-mund.

Lasse Lund Madsen, *Professor: Domstolene bør være kritiske over for varetægtsfængsling*, POLITIKEN (Jan. 28, 2024), https://politiken.dk/debat/kroniken/art9733451/Domstolene-b%C3%B8r-v%C3%A6re-kritiske-over-for-varet%C3%A6gtsf%C3%A6ngsling.

Lasse Lund Madsen, *En lukket skueproces*, WEEKENDAVISEN (Dec. 7, 2023), https://www.weekendavisen.dk/2023-49/opinion/en-lukket-skueproces.

Lasse Lund Madsen & Eva Smith, *Samsam, Samsam, luk dig op!*, WEEKENDAVISEN (Aug. 17, 2023), https://www.weekendavisen.dk/2023-33/opinion/samsam-samsam-luk-dig-op.

Lasse Lund Madsen, *Juraprofessor har vendt hver en sten: Kan statsministeren straffes for sin rolle i minksagen?*, BERLINGSKE TIDENDE (Aug. 20, 2022), https://www.berlingske.dk/kronikker/juraprofessor-har-vendt-hver-en-sten-kan-statsministeren-straffes-for.

Lasse Lund Madsen, *Øh, jo – ansvaret for minksagen er (også) dit, statsminister*, BERLINGSKE TIDENDE (Nov. 18, 2021), https://www.berlingske.dk/kronikker/oeh-jo-ansvaret-for-minksagen-er-ogsaa-dit-statsminister.

Lasse Lund Madsen, *Samtykkekrav til sex: Skal det virkeligt være strafbart, at en mand presser sin kone til sex med trusler om skilsmisse?*, POLITIKEN (Mar. 25, 2019), https://politiken.dk/debat/kroniken/art7088369/Skal-det-virkeligt-v%C3%A6re-strafbart-at-en-mand-presser-sin-kone-til-sex-med-trusler-om-skilsmisse?srsltid=AfmBOoqXcXsUB6UZ1-D3O9GiSk5KF16aSZ7HX0too4whyxO0WEK83JBr.

Lasse Lund Madsen, *Det er en dårlig idé at gøre dysfunktionelle parrelationer til en politi-sag. Så er #metoo-kulturen gået for vidt*, POLITIKEN (Jan. 24, 2019), https://politiken.dk/debat/kroniken/art6983647/Det-er-en-d%C3%A5rlig-id%C3%A9-at-g%C3%B8re-dysfunktionelle-parrelationer-til-en-politi-sag.-S%C3%A5-er-metoo-kulturen-g%C3%A5et-for-vidt?srsltid=AfmBOoqfTTl6ejmtyKVDveQ_EM_aMjiPMXO4rBJnUck8JhcG1Ps8U4Od.

Lasse Lund Madsen, *Juridiske aspekter af forbuddet mod Loyal to Familia*, JYLLANDS-POSTEN (Sept. 14, 2018), https://jyllands-posten.dk/debat/kronik/ECE10862027/juridiske-aspekter-af-forbuddet-mod-loyal-to-familia/.

## Curriculum Vitae – Lasse Lund Madsen

**Education**

| | |
|---|---|
| 2007 | PhD Aarhus Universitet ("Complicity in business relations - a contribution to criminal law dogmatics") |
| 2000 | Cand.jur. |

**Academic positions**

| | |
|---|---|
| 2017- | Professor in Criminal law and criminal procedure, Departement of Law, Aarhus University |
| 2016-2017 | Associate professor, Departement of Law, Aarhus University |
| 2009-2012 | Associate professor, Departement of Law, Aarhus University |
| 2008-2009 | Assistant professor, Departement of Law, Aarhus University |
| 2007-2008 | Amanuensis, Departement of Law, Aarhus University |
| 2003-2007 | PhD scholarship holder, Departement of Law, Aarhus University, with the Ministry of Justice as collaboration partner and practical duty station at Aarhus Police |

**Work experience**

| | |
|---|---|
| 2020-2021 | Temporary judge at The District Court in Aarhus (leave from the university 1.10.2020 - 01.10.2021 |
| 2014-2016 | Specialprosecutor, Police of Eastern Jutland |
| 2013-2014 | Temporary judge in Western High Court |
| 2012-2013 | Specialprosecutor, Police of Southeastern Jutland |
| 2011-2012 | Temporary judge at The District Court in Odense (sept. 2011-jan. 2012) |
| 2002-2003 | Assistant Attorney, Kromann Reumert, Aarhus |
| 2000-2002 | Assistant prosecutor at the Police in Odense |

**Research areas**

Criminal law and criminal procedure
IT- and white collar crime
Human Rights Law (EMRK, artikel 6 og 7 and EUC art. 48-50)

**Memberships**

| | |
|---|---|
| 2023-2024 | Member of the Committee on the independent criminalization of torture, war crimes and crimes against humanity as well as the ratification of the amendment to the Rome Statute on the crime of aggression (War Criminals Committee) - appointed by the Minister of Justice. |
| 2019-1.10.20. | Member of the Responsibility Committee (Committee on enhanced responsibility assessment of management of financial companies, appointed by the Minister of Business |

**AMENDED ATTACHMENT C: Danish Statutory References**

# ADMINISTRATION OF JUSTICE ACT

**§ 12.**

I afgørelsen af sager ved byretterne deltager, medmindre andet er bestemt, 1 dommer. Præsidenten træffer efter forhandling med rettens øvrige dommere bestemmelse om sagernes fordeling mellem dommerne og om sagernes administrative behandling.

[…]

*Stk. 6.* I domsmandssager tiltrædes retten af 2 domsmænd, jf. dog stk. 8.

*Stk. 7*. Hvis hovedforhandlingen i en nævninge- eller domsmandssag antages at ville blive af længere varighed, kan rettens præsident efter indstilling fra rettens formand bestemme, at suppleanter for dommeren eller dommerne og nævningerne eller domsmændene skal overvære hovedforhandlingen. Suppleanterne deltager ikke i rettens rådslagninger og afstemninger, men kan efter retsformandens bestemmelse overvære disse. I øvrigt finder reglerne om nævninger og domsmænd tilsvarende anvendelse på suppleanter for disse. En suppleant tiltræder retten, hvis en af dommerne, nævningerne eller domsmændene bliver forhindret i at medvirke ved sagens behandling og pådømmelse.

*Stk. 8.* I domsmandssager om økonomisk kriminalitet, der forventes at have en længere varighed, kan rettens præsident efter indstilling fra rettens formand bestemme, at retten sammensættes af 2 dommere og 3 domsmænd. Stk. 7 finder ikke anvendelse.

**Section 12.**

Unless otherwise provided, one judge shall take part in the decision of cases before the district courts. The president, after consultation with the other judges of the court, shall decide on the assignment of cases to the judges and on the administrative proceedings of cases.

[…]

*Subsection 6.* In cases involving lay judges, the court shall be joined by two lay judges, cf. however Subsection 8.

*Subsection 7*. If the main hearing in a jury or lay judge case is likely to be of a longer duration, the president of the court may, on the recommendation of the presiding judge, decide that alternates for the judge or judges and the jurors or lay judges shall attend the main hearing. The alternates do not participate in the court's deliberations and votes but may attend these at the discretion of the presiding judge. Otherwise, the rules on jurors and lay judges shall apply correspondingly to their alternates. An alternate shall join the court if one of the judges, jurors or lay judges is prevented from participating in the proceedings and adjudication of the case.

*Subsection 8.* In financial crime cases that are expected to have a longer duration, the president of the court may, on the recommendation of the presiding judge, decide that the court shall be composed of two judges and three lay judges. Subsection 7 shall not apply.

**§ 96.**

De offentlige anklageres opgave er i forbindelse med politiet at forfølge forbrydelser efter reglerne i denne lov.

*Stk. 2.* De offentlige anklagere skal fremme enhver sag med den hurtighed, som sagens beskaffenhed tillader, og derved ikke blot påse, at strafskyldige drages til ansvar, men også at forfølgning af uskyldige ikke finder sted.

**Section 96.**

The task of the public prosecutors is to prosecute crimes in accordance with the rules of this law.

*Subsection 2.* The public prosecutors must prosecute every case with the speed that the nature of the case allows, ensuring not only that the guilty are brought to justice but also that the innocent are not prosecuted.

**§ 98.**

Justitsministeren er de offentlige anklagere overordnet og fører tilsyn med disse.

*Stk. 2.* Justitsministeren kan fastsætte bestemmelser om de offentlige anklageres udførelse af deres opgaver.

*Stk. 3.* Justitsministeren kan give de offentlige anklagere pålæg vedrørende behandlingen af konkrete sager, herunder om at begynde eller fortsætte, undlade eller standse forfølgning. Et pålæg i medfør af denne bestemmelse om at begynde eller fortsætte, undlade eller standse forfølgning skal være skriftligt og ledsaget af en begrundelse. Endvidere skal Folketingets formand skriftligt underrettes om pålægget. Hvis de hensyn, der er nævnt i § 729 c, stk. 1, gør det påkrævet, kan underretning udsættes. Pålægget betragtes i relation til aktindsigt i medfør af §§ 729 a-d som materiale, politiet har tilvejebragt til brug for sagen.

*Stk. 4.* Justitsministeren behandler klager over afgørelser truffet af rigsadvokaten som 1. instans, jf. dog bestemmelsen i § 1018 e, stk. 4.

**Section 98.**

The Minister of Justice is the superior of the public prosecutors and supervises them.

*Subsection 2.* The Minister of Justice may issue regulations on the performance of the public prosecutors' duties.

*Subsection 3.* The Minister of Justice may give the public prosecutors instructions regarding the handling of specific cases, including to begin or continue, refrain from, or stop prosecution. An instruction under this provision to begin or continue, refrain from, or stop prosecution must be in writing and accompanied by a justification. Furthermore, the Speaker of the Folketing [Danish parliament] must be notified in writing of the instruction. If the considerations mentioned in Section 729 c, subsection 1, make it necessary, the notification may be postponed. The instruction is considered, in relation to access to documents under Sections 729 a-d, as material the police have obtained for the case.

*Subsection 4.* The Minister for Justice will handle complaints about decisions taken by the Director of Public Prosecutions as first instance, cf. however, the provision in Section 1018 e, Subsection 4.

### § 104.

Politidirektørerne og de offentlige anklagere, der er ansat hos disse, samt andre ansatte, der bemyndiges hertil, varetager udførelsen af straffesager ved byretterne jf. dog § 101, stk. 1, og § 103, stk. 2. Statsadvokaten kan i særlige tilfælde bestemme, at udførelsen af en straffesag, der behandles ved byretten under medvirken af nævninger eller under medvirken af domsmænd som følge af tiltaltes beslutning efter § 687, skal varetages af statsadvokaten.

*Stk. 2.* Rigsadvokaten kan bemyndige også andre til at virke som anklager ved byretten i en enkelt sag.

*Stk. 3.* Statsadvokaten kan pålægge en politidirektør at overtage behandlingen af en eller flere sager, der henhører under en anden politidirektør.

### Section 104.

The chiefs of police and the public prosecutors employed by them, as well as other employees authorized to do so, carry out criminal proceedings before the district courts, cf. however, section 101, subsection 1, and section 103, subsection 2. In special cases, the State Prosecutor may decide that the conduct of a criminal case dealt with by the District Court with the assistance of jury or with the assistance of judges as a result of the defendant's decision under section 687, shall be handled by the State Prosecutor.

*Subsection 2.* The Director of Public Prosecutions may also authorize others to act as prosecutors before the District Court in a single case.

*Subsection 3.* The State Prosecutor may order a chief of police to take over the handling of one or more cases that fall under another chief of police.

### § 110.

Landet inddeles i 12 politikredse. Justitsministeren kan foretage forandringer i politikredsenes område, medmindre forandringen indebærer oprettelse eller nedlæggelse af en politikreds.

*Stk. 2.* Hver politikreds ledes af en politidirektør, der har ansvar for politiets virksomhed i politikredsen.

### Section 110.

The country is divided into 12 police districts. The Minister of Justice may make changes in the police districts' area, unless the change involves the establishment or abolition of a police district.

*Subsection 2.* Each police district is led by a chief of police who is responsible for the police's activities in the police district.

### § 110 a.

National Enhed for Særlig Kriminalitet varetager for hele landet efterforskningen og strafforfølgningen af forbrydelser, hvor der er grund til at antage, at overtrædelsen har et særlig betydeligt omfang, er et led i organiseret kriminalitet, indebærer komplekst samarbejde med udenlandske retshåndhævende myndigheder, er udført ved anvendelse af særegne metoder eller på anden måde er af særlig kvalificeret karakter. Sager efter straffelovens § 110 c anses for omfattet af 1. pkt., medmindre sagen behandles af Politiets Efterretningstjeneste.

*Stk. 2.* National Enhed for Særlig Kriminalitet ledes af en politidirektør, der har ansvar for enhedens virksomhed.

*Stk. 3.* Justitsministeren kan fastsætte nærmere regler om, hvilke kriminalitetsområder der er omfattet af stk. 1.

### Section 110 a.

The National Special Crime Unit carries out the investigation and prosecution of crimes for the entire country where there is reason to believe that the violation has a particularly significant scope, is part of organized crime, involves complex cooperation with foreign law enforcement authorities, is carried out using special methods or is otherwise of a particularly qualified nature. Cases under Section 110 c of the Criminal Code are considered covered by the first subsection, unless the case is processed by the Danish Police Intelligence Service.

*Subsection 2.* The National Special Crime Unit is led by a chief of police responsible for the entity's business.

*Subsection 3.* The Minister of Justice may lay down detailed rules on which crime areas are covered by subsection 1.

### § 686.

Straffesager behandles i 1. instans ved byretterne.

*Stk. 2.* Domsmænd medvirker i straffesager, hvor der bliver spørgsmål om højere straf end bøde, eller som i øvrigt skønnes at være af særlig indgribende betydning for tiltalte eller af særlig offentlig interesse, medmindre andet følger af stk. 3 og 4. Domsmænd medvirker endvidere, hvis sådan behandling er foreskrevet efter regler i andre love.

### Section 686.

Criminal proceedings are dealt with in the first instance before the district courts.

*Subsection 2.* Lay judges shall participate in criminal proceedings in which a penalty greater than a fine is involved or which are otherwise deemed to be of particular seriousness for the defendant or of particular public interest, unless otherwise provided in Subsections 3 and 4. Lay judges also participate if such proceedings are prescribed by rules in other laws.

### § 718.

Retterne træder inden for strafferetsplejens område kun i virksomhed efter begæring af anklagemyndigheden eller en privat påtaleberettiget.

### Section 718.

In the field of criminal procedure, the courts shall act only at the request of the public prosecutor or a private prosecutor.

### § 719.

Offentlig påtale tilkommer politidirektøren, medmindre andet følger af denne lov eller regler fastsat i medfør af denne lov.

*Stk. 2.* Statsadvokaten påtaler ankesager ved landsret.

*Stk. 3.* Justitsministeren eller den, som justitsministeren bemyndiger dertil, fastsætter i øvrigt nærmere regler om påtalens fordeling mellem rigsadvokaten, statsadvokaterne og politidirektørerne.

**Section 719.**

Public prosecution shall be accorded to the chiefs of police, unless otherwise provided for by this Act or rules established pursuant to this Act.

*Subsection 2.* The State Prosecutor prosecutes appeals at the High Court.

*Subsection 3 .*The Minister for Justice or the person authorized by the Minister of Justice shall also lay down detailed rules on the distribution of prosecutions between the Director of Public Prosecutions, the State Prosecutors and the chiefs of police.

**§ 721.**

Påtale i en sag kan helt eller delvis opgives i tilfælde,

1) hvor sigtelsen har vist sig grundløs,

2) hvor videre forfølgning i øvrigt ikke kan ventes at føre til, at sigtede findes skyldig,

3) hvor straffelovens §§ 10 b eller 89 ville være anvendelig, hvis sigtede var at finde skyldig, når det skønnes, at ingen eller kun en ubetydelig straf ville blive idømt, og at domfældelse heller ikke i øvrigt vil være af væsentlig betydning, eller

4) hvor sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt.

*Stk. 2.* Justitsministeren eller den, som justitsministeren bemyndiger dertil, fastsætter nærmere regler om kompetencen til at opgive påtale.

**Section 721.**

Prosecution in a case can be completely or partially abandoned in cases

1) where the charge has proved unfounded,

2) where further prosecution, moreover, cannot be expected to lead to the accused being found guilty,

3) where Criminal Code Sections 10 b or 89 would be applicable if the accused were to be found guilty, when it is estimated that no or only a negligible penalty would be imposed and that conviction would not be of significant importance either, or

4) where the conduct of the case would entail difficulties, costs, or processing times that are not reasonably proportionate to the significance of the case and the penalty that can be expected to be imposed.

*Subsection 2.* The Minister of Justice or the person authorized by the Minister of Justice shall lay down detailed rules on the power waive prosecution.

**§ 722.**

Tiltale i en sag kan helt eller delvis frafaldes i tilfælde,

1) hvor den påsigtede lovovertrædelse efter loven ikke kan medføre højere straf end bøde og forholdet er af ringe strafværdighed,

2) hvor det i medfør af § 723, stk. 1, fastsættes som vilkår, at sigtede undergives indsatser efter § 32 og kapitel 5 i barnets lov,

3) hvor sigtede var under 18 år på gerningstidspunktet, og der fastsættes vilkår efter § 723, stk. 1,

4) hvor straffelovens § 10 b eller § 89 er anvendelig, når det skønnes, at ingen eller kun en ubetydelig straf ville blive idømt, og at domfældelse heller ikke i øvrigt vil være af væsentlig betydning,

5) hvor sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt,

6) hvor lovgivningen indeholder særlig hjemmel for, at tiltale kan frafaldes, eller

7) hvor dette følger af bestemmelser fastsat af justitsministeren eller rigsadvokaten.

*Stk. 2.* I andre tilfælde kan tiltale kun frafaldes, hvis der foreligger særlig formildende omstændigheder eller andre særlige forhold, og påtale ikke kan anses for påkrævet af almene hensyn.

*Stk. 3.* Justitsministeren eller den, som justitsministeren bemyndiger dertil, fastsætter nærmere regler om kompetencen til at frafalde tiltale.

## Section 722.

Indictments in a case may be waived in whole or in part in cases

1) where the alleged offense is not punishable by law by more than a fine and the offense is of low severity,

2) where, pursuant to Section 723, subsection 1, it is stipulated as a condition that the accused is subject to measures under Section 32 and Chapter 5 of the Children's Act,

3) where the accused was under 18 years of age at the time of the crime, and conditions are established in accordance with section 723, subsection 1,

4) where the Criminal Code Section 10 b or Section 89 is applicable, when it is estimated that no or only an insignificant penalty would be imposed, and that conviction would not be of significant importance either,

5) where the conduct of the case would entail difficulties, costs, or processing times that are not reasonably proportionate to the significance of the case and the penalty that can be expected to be imposed,

6) where the legislation contains special legal basis for the indictment to be waived, or

7) where this follows from provisions laid down by the Minister of Justice or the Director of Public Prosecutions.

*Subsection 2.* In other cases, charges may only be waived if there are special mitigating circumstances or other special conditions and prosecution cannot be considered necessary for public reasons.

*Subsection 3.* The Minister for Justice or the person authorized by the Minister of Justice shall lay down detailed rules on the jurisdiction to waive charges.

## § 723.

Som vilkår for et tiltalefrafald kan fastsættes,

1) at sigtede vedtager at betale en bøde eller indgår på konfiskation, og

2) samme vilkår som i betingede domme.

*Stk. 2.* Vilkår kan kun fastsættes, såfremt den sigtede i retten har afgivet en uforbeholden tilståelse, hvis rigtighed bestyrkes ved de i øvrigt foreliggende omstændigheder.

*Stk. 3.* Vilkårene fastsættes af den myndighed, der har adgang til at frafalde tiltalen. Vilkårene skal godkendes af retten.

*Stk. 4.* Såfremt et vilkår overtrædes, kan sagen genoptages.

## Section 723.

As conditions for a waiver, it may be established

1) that the defendant should undertake to pay a fine or agrees to confiscation, and

2) that the same terms as in conditional judgments should apply.

*Subsection 2.* Terms may only be determined if the defendant in court has made an unreserved confession, the accuracy of which is strengthened by the circumstances at hand.

*Subsection 3.* The terms shall be determined by the authority that has access to waive the charge. The terms must be approved by the court.

*Subsection 4.* If a term is violated, the case can be resumed.

## § 724.

Ved afgørelse om påtaleopgivelse eller tiltalefrafald underrettes sigtede, forurettede eller, hvis forurettede er afgået ved døden, forurettedes nære pårørende. Det samme gælder andre, der må antages at have en rimelig interesse heri. En afgørelse om påtaleopgivelse kan påklages til den overordnede anklagemyndighed efter reglerne i kapitel 10. Sigtede kan efter samme regler klage over en afgørelse om tiltalefrafald.

*Stk. 2.* Er der truffet afgørelse om påtaleopgivelse eller tiltalefrafald, kan strafforfølgning mod den, der har været sigtet, kun fortsættes efter den overordnede anklagemyndigheds bestemmelse, hvis afgørelsen er meddelt den pågældende med Digital Post eller med anbefalet brev inden 4 måneder fra afgørelsens dato, medmindre sigtedes forhold har hindret rettidig meddelelse eller betingelserne for genoptagelse efter § 975 er til stede.

*Stk. 3.* Anses påtale for opgivet efter § 718 b, stk. 2 eller 3, kan den overordnede anklagemyndighed uanset stk. 2 kun træffe bestemmelse om, at strafforfølgning skal fortsættes, hvis betingelserne for genoptagelse i § 975 er opfyldt.

## Section 724.

In the event of a decision to drop or dismiss charges, the defendant, the injured party or, if the injured party is deceased, the injured party's close relatives are informed. The same applies to others who may be assumed to have a reasonable interest in it. A decision on a waiver may be appealed to the superior prosecuting authority in accordance with the rules laid down in Chapter 10. Under the same rules, defendants may appeal against a decision on a waiver of charges.

*Subsection 2.* If a decision has been made to drop or dismiss charges, criminal prosecution against the person who has been charged may only be continued in accordance with the superior prosecution authority's provision, if the decision has been notified to the person in question by Digital Post or by registered letter within 4 months from the date of the decision, unless the defendant's circumstances have prevented timely notification or the conditions for resumption under section 975 are present.

*Subsection 3.* If the prosecution is considered abandoned under section 718 b, subsection 2 or 3, the chief public prosecutor may, notwithstanding subsection 2, only decide that the prosecution is to be continued if the conditions for resumption in section 975 are met.

## § 729.

Under ordet »part«, hvor dette i denne lov anvendes i bestemmelser, der ikke særlig angår borgerlige sager, skal også den sigtede i en straffesag anses for indbefattet.

## Section 729.

Under the word "party", where this is used in provisions that do not concern civil proceedings in particular, the accused person in criminal proceedings shall also be considered included.

## § 729 a.

Sigtede er berettiget til at vælge en forsvarer, jf. § 730. Offentlig forsvarer beskikkes efter reglerne i §§ 731-735.

*Stk. 2.* Retten meddeler forsvareren kopi af indførsler i retsbøgerne vedrørende sagen. Forsvareren kan gøre sigtede bekendt med kopierne, medmindre andet følger af §§ 748 og 856. Retten kan pålægge forsvareren ikke at overlevere kopierne til sigtede eller andre, hvis det må befrygtes, at kopierne vil blive benyttet på retsstridig måde.

*Stk. 3.* Forsvareren har adgang til at gøre sig bekendt med det materiale, som politiet har tilvejebragt til brug for den sag, som sigtelsen angår. Forsvareren skal have udleveret kopi af materialet, i det omfang det uden ulempe kan kopieres. Forsvareren må ikke uden politiets samtykke overlevere det modtagne materiale til sigtede eller andre. Politiet giver samtykke, hvis det findes ubetænkeligt. Med hensyn til materiale, der er omfattet af § 871, stk. 1 og stk. 2, nr. 5, kan samtykke dog kun nægtes af de i stk. 4 nævnte grunde.

*Stk. 4.* Hvis det er nødvendigt af hensyn til fremmede magter, til statens sikkerhed, til sagens opklaring, til tredjemand, herunder til et vidnes sikkerhed, eller til efterforskningen af en anden verserende sag om en lovovertrædelse, som efter loven kan straffes med fængsel i 6 år eller derover, eller som udgør en forsætlig overtrædelse af straffelovens kapitler 12 eller 13, kan politiet give forsvareren pålæg om ikke at videregive de oplysninger, som forsvareren har modtaget fra politiet. Pålægget kan udstrækkes, indtil tiltalte har afgivet forklaring under hovedforhandlingen.

## Section 729 a.

The accused is entitled to choose a defense counsel, cf. Section 730. Public defender appointed in accordance with the rules laid down in Sections 731-735.

*Subsection 2.* The court shall notify the defense counsel of a copy of entries in the court records concerning the case. The defense counsel may make the defendant aware of the copies, unless otherwise specified by Sections 748 and 856. The court may order the defense counsel not to hand over the copies to the accused or others if it is feared that the copies will be used unlawfully.

*Subsection 3.* The defense counsel has access to familiarize themselves with the material that the police has provided for use in the case that the prosecution concerns. The defense counsel must be given a copy of the material to the extent that it can be copied without inconvenience. The defense counsel must not hand over the received material to the defendant or any others without the consent of the police. The police will give consent if it is considered harmless. However, with regard to materials covered by section 871, subsection 1 and subsection 2, no. 5, consent may only be denied for the reasons referred to in subsection 4.

8

*Subsection 4.* If it is necessary for the sake of foreign powers, for the security of the state, for the resolution of the case, to third parties, including for the safety of a witness, or for the investigation of another pending case of an offense, which under the law can be punished by imprisonment for 6 years or more, or which constitutes an intentional violation of chapters 12 or 13 of the Criminal Code, the police may order the defense counsel not to disclose the information received from the police. The order can be extended until the defendant has given an explanation during the main hearing.

**§ 729 b.**
En sigtet uden forsvarer skal efter anmodning have adgang til hos politiet at gøre sig bekendt med indførsler i retsbøgerne vedrørende sagen, medmindre andet følger af §§ 748 og 856. Politiet udleverer efter anmodning kopi af indførslerne til sigtede, medmindre det må befrygtes, at kopierne vil blive benyttet på retsstridig måde.
*Stk. 2.* En sigtet uden forsvarer skal endvidere efter anmodning have adgang til at gøre sig bekendt med det materiale, som politiet har tilvejebragt til brug for den sag, som sigtelsen angår. Politiet kan dog afslå anmodningen af de i § 729 a, stk. 4, nævnte grunde. En begrænsning i sigtedes aktindsigt bortfalder senest inden hovedforhandlingen eller et retsmøde med henblik på sagens behandling i medfør af § 831 eller sagens afslutning ved tiltalefrafald. Politiet udleverer efter anmodning kopi af materialet til sigtede, hvis det findes ubetænkeligt. Med hensyn til materiale, der er omfattet af § 871, stk. 1 og stk. 2, nr. 5, kan udlevering dog kun nægtes af de i § 729 a, stk. 4, nævnte grunde.

**Section 729 b.**
An accused without a defense counsel shall, upon request, have access via the police to familiarize themselves with entries in the legal books concerning the case, unless otherwise provided for in Sections 748 and 856. Upon request, the police shall provide copies of the entries to the accused, unless it is feared that the copies will be used in an unlawful manner.
*Subsection 2.* A defendant without a defense counsel shall also, upon request, have access to familiarize themselves with the material that the police have provided for use in the case to which the charge relates. However, the police may refuse the request for the reasons referred to in section 729 a, subsection 4. A restriction on the defendant's access to documents lapses no later than before the main hearing or a hearing about the case's processing pursuant to Section 831 or case closure by dismissal of charges. Upon request, the police will provide a copy of the material to the defendant if it considered harmless. However, with regard to materials covered by section 871, subsection 1 and subsection 2, no. 5, consent may only be denied for the reasons referred to in Section 729 subsection 4.

**§ 729 c.**
Retten kan efter anmodning fra politiet bestemme, at reglerne om forsvarerens og sigtedes ret til aktindsigt efter §§ 729 a og 729 b fraviges, hvis det er påkrævet af hensyn til
1) fremmede magter,
2) statens sikkerhed,
3) sagens opklaring,
4) tredjemands liv eller helbred,

5) efterforskning af en anden verserende sag om en lovovertrædelse, som efter loven kan straffes med fængsel i 6 år eller derover, eller som udgør en forsætlig overtrædelse af straffelovens kapitler 12 eller 13, eller

6) beskyttelse af fortrolige oplysninger om politiets efterforskningsmetoder.

*Stk. 2.* Afgørelse efter stk. 1 kan ikke træffes, hvis det giver anledning til væsentlige betænkeligheder for varetagelsen af sigtedes forsvar.

*Stk. 3.* Gør hensyn som nævnt i stk. 1 sig kun gældende for en del af materialet, skal forsvareren eller sigtede gøres bekendt med det øvrige indhold af materialet.

*Stk. 4.* Afgørelsen træffes ved kendelse. I kendelsen anføres de konkrete omstændigheder i sagen, der begrunder en fravigelse fra §§ 729 a og 729 b. Træffer retten afgørelse om, at fravigelsen skal gælde indtil videre, skal retten på ny vurdere fravigelsen, før hovedforhandlingen indledes. Træffer retten afgørelse om, at fravigelsen skal gælde i et nærmere fastsat tidsrum, kan afgørelsen forlænges ved senere kendelse. Rettens afgørelse kan kæres.

*Stk. 5.* Inden retten træffer afgørelse, skal der beskikkes en advokat for sigtede, og advokaten skal have lejlighed til at udtale sig. Advokaten beskikkes fra den særlige kreds af advokater, der er nævnt i stk. 6. Advokaten skal underrettes om alle retsmøder, der afholdes med henblik på at opnå rettens kendelse om fravigelse fra §§ 729 a og 729 b, og er berettiget til at overvære disse samt til at gøre sig bekendt med det materiale, som politiet har tilvejebragt til brug for den sag, som sigtelsen angår. § 785, stk. 1, 2.-5. pkt., og stk. 2, finder tilsvarende anvendelse.

*Stk. 6.* Justitsministeren antager for hver landsrets område et antal advokater, der kan beskikkes efter stk. 5. Justitsministeren fastsætter nærmere regler om de pågældende advokater, herunder om vagtordninger, om vederlag for at stå til rådighed og om sikkerhedsmæssige spørgsmål.

## Section 729 c.

The court may, at the request of the police, decide that the rules on the defense counsel's and accused's right of access to documents pursuant to Sections 729 a and 729 b are waived if required out of consideration for

1) foreign powers,

2) national security,

3) the resolution of the case,

4) the life or health of third parties,

5) investigation of another pending case of an offense, which under the law can be punished by imprisonment for 6 years or more, or which constitutes a willful violation of Penal Code chapters 12 or 13, or

6) protection of confidential information about police investigation methods.

*Subsection 2.* No decision in accordance with subsection 1 can be made if it gives rise to significant concerns for the conduct of the accused's defense.

*Subsection 3.* If the considerations referred to in subsection 1 only apply to a part of the material, the defense counsel or defendant must be made aware of the other contents of the material.

*Subsection 4.* The decision is made by order. The ruling states the specific circumstances of the case that justify a derogation from Sections 729 a and 729 b. If the court decides that the derogation shall apply until further notice, the court shall reassess the derogation before the main hearing commences. If the court decides that the derogation shall apply for a specifically

determined period of time, the decision may be extended by subsequent order. The court's decision may be appealed.

*Subsection 5.* Before the court makes a decision, a lawyer must be appointed for the defendant, and the lawyer must have the opportunity to comment. The lawyer shall be appointed from the specific circle of lawyers referred to in subsection 6. The lawyer must be informed of all hearings held in order to obtain the court's order on derogation from Sections 729 a and 729 b, and is entitled to attend these as well as to familiarize themselves with the material that the police have provided for use in the case to which the charge relates. Section 785, subsection 1, items 2-5, and subsection 2, shall apply mutatis mutandis.

*Subsection 6.* The Minister of Justice assumes for each High Court area a number of lawyers who can be appointed in accordance with subsection 5. The Minister of Justice shall lay down detailed rules on the lawyers concerned, including regarding on-call arrangements, remuneration for being available and security issues.

### § 729 d.

Når sagen er endeligt afsluttet, kan den, der har været sigtet, forlange at blive gjort bekendt med dokumenter, der vedrører sagen, herunder indførsler i retsbøgerne, efter reglerne i denne paragraf.

*Stk. 2.* Retten til aktindsigt omfatter ikke interne dokumenter. Som interne dokumenter anses

1) dokumenter, der ikke er afgivet til udenforstående,

2) voteringsprotokoller og andre referater af rettens rådslagninger og afstemninger og

3) brevveksling mellem forskellige enheder inden for politiet og anklagemyndigheden.

*Stk. 3.* Dokumenter omfattet af stk. 2, der afgives til udenforstående, mister deres interne karakter, medmindre afgivelsen sker af retlige grunde, til forskningsmæssig brug eller af andre lignende grunde.

*Stk. 4.* Retten til aktindsigt kan begrænses, i det omfang

1) ansøgeren efter reglerne i denne lovs anden og fjerde bog har været afskåret fra at gøre sig bekendt med oplysninger i sagen,

2) det er af afgørende betydning for statens sikkerhed, medmindre ansøgerens interesse i at kunne benytte kendskab til sagens dokumenter til varetagelse af sit tarv taler imod,

3) fortrolighed følger af EU-retlige eller folkeretlige forpligtelser,

4) ansøgerens interesse i at kunne benytte kendskab til sagens dokumenter til varetagelse af sit tarv findes at burde vige for afgørende hensyn til forholdet til fremmede magter eller mellemfolkelige institutioner eller

5) ansøgerens interesse i at kunne benytte kendskab til sagens dokumenter til varetagelse af sit tarv findes at burde vige for hensynet til forebyggelse, opklaring og forfølgning af lovovertrædelser eller for særlige hensyn til beskyttelse af medsigtede, vidner eller andre.

*Stk. 5.* Anmodning om aktindsigt indgives til politidirektøren. Politidirektørens afgørelse kan påklages til den overordnede anklagemyndighed efter reglerne i kapitel 10.

*Stk. 6.* Politidirektøren afgør snarest, om en anmodning om aktindsigt kan imødekommes. En anmodning om aktindsigt skal færdigbehandles inden 7 arbejdsdage efter modtagelsen, medmindre dette på grund af f.eks. sagens omfang eller kompleksitet undtagelsesvis ikke er muligt. Ansøgeren skal i givet fald underrettes om grunden til fristoverskridelsen og om, hvornår anmodningen kan forventes færdigbehandlet.

*Stk. 7.* Politidirektøren afgør, om aktindsigt skal gives i form af gennemsyn eller udlevering af kopi.

*Stk. 8.* Personnummer er ikke omfattet af retten til aktindsigt.

### Section 729 d.

Once the case has been finally closed, the accused may require to be made aware of documents relating to the case, including entries in the legal records, in accordance with the rules laid down in this section.

*Subsection 2.* The right of access to documents does not include internal documents. Internal documents are considered as

1) documents that have not been submitted to outsiders,

2) voting protocols and other minutes of the court's consultations and votes and

3) exchange of letters between various units within the police and the prosecution.

*Subsection 3.* Documents covered by subsection 2 that are submitted to outsiders lose their internal character, unless the submission is for legal reasons, for research use or for other similar reasons.

*Subsection 4.* The right of access to documents may be limited to the extent that

1) the applicant, under the rules of this law's second and fourth book, has been prevented from familiarizing himself with information in the case,

2) it is essential for national security, unless the applicant's interest in being able to use knowledge of the documents of the case to safeguard their interests dictates otherwise,

3) confidentiality follows from EU or international law obligations,

4) the applicant's interest in being able to use knowledge of the documents in the case to safeguard his or her interests is deemed to outweigh essential considerations of relations with foreign powers or international institutions; or

5) the applicant's interest in being able to use knowledge of the documents of the case for the protection of its best interests is deemed to outweigh the interests of prevention, resolution and prosecution of offenses or for special reasons for the protection of intentions, witnesses or others.

*Subsection 5.* A request for access to documents shall be submitted to the chief of police. The chief of police's decision may be appealed to the superior public prosecutor's office in accordance with the rules laid down in Chapter 10.

*Subsection 6.* The chief of police will decide as soon as possible whether a request for access to documents can be granted. A request for access to documents must be finalized within 7 working days of receipt, unless this is exceptionally not possible due to, for example, the scope or complexity of the case. The applicant shall, where appropriate, be informed of the reason for missing the deadline and of when the request can be expected to be finalized.

*Subsection 7.* The chief of police determines whether access to documents should be given in the form of a review or distribution of copies.

*Subsection 8.* Civil registration numbers are not covered by the right of access to documents.

**§ 747.**

Retsmøde afholdes, når der fremsættes anmodning om foranstaltninger, som kræver rettens medvirken.

*Stk. 2.* Efter anmodning afholdes endvidere retsmøde, når det er påkrævet for at sikre bevis, som

1) det ellers må befrygtes vil gå tabt,

2) ikke uden væsentlig ulempe eller forsinkelse vil kunne føres for den dømmende ret eller

3) må antages at være af betydning for efterforskningen eller af hensyn til en offentlig interesse.

*Stk. 3.* Retsmøde med henblik på at sikre bevis kan endvidere afholdes efter anmodning, hvis

1) sigtede er varetægtsfængslet, herunder i isolation,

2) sikringen af bevis vil kunne få betydning for spørgsmålet om varetægtsfængslingens eller isolationens ophævelse og

3) væsentlige praktiske hensyn ikke taler imod.

*Stk. 4.* Imødekommer retten en anmodning efter stk. 3, skal retsmødet afholdes snarest og så vidt muligt inden for 2 uger fra rettens modtagelse af anmodningen. Det samme gælder en anmodning efter stk. 2, hvis anmodningen indeholder begæring herom.


**Section 747.**

A hearing is held when a request is made for measures requiring the participation of the court.

*Subsection 2.* On request, a hearing shall also be held when required to secure evidence that

1) otherwise is feared may be lost,

2) not without significant disadvantage or delay can be brought before the court of judgment or

3) may be assumed to be of importance to the investigation or for the sake of a public interest.

*Subsection 3.* A hearing with a view to securing evidence may also be held upon request, if

1) defendants are in custody, including in isolation,

2) the securing of evidence could have an impact on the issue of the termination of custody or isolation and

3) significant practical considerations do not indicate otherwise.

*Subsection 4.* If the court meets a request in accordance with subsection 3, the hearing must be held as soon as possible and, as far as possible, within 2 weeks of the court's receipt of the request. The same shall apply to a request under subsection 2, if the request contains an application to this effect.


**§ 749.**

Politiet afviser en indgivet anmeldelse, hvis der ikke findes grundlag for at indlede efterforskning.

*Stk. 2.* Er der ikke grundlag for at fortsætte en påbegyndt efterforskning, kan beslutningen om at indstille efterforskningen træffes af politiet, såfremt der ikke har været rejst sigtelse. Er sigtelse rejst, finder bestemmelserne i § 721 og § 722 anvendelse.

*Stk. 3.* Afvises anmeldelsen, eller indstilles efterforskningen, underrettes den forurettede eller, hvis den forurettede er afgået ved døden, den forurettedes nære pårørende. Det samme gælder andre, der må antages at have en rimelig interesse heri. Afgørelsen kan påklages til den overordnede anklagemyndighed efter reglerne i kapitel 10.

**Section 749.**

The police will reject a submitted report if there is no basis for initiating an investigation.

*Subsection 2.* If there is no basis for continuing an ongoing investigation, the decision to discontinue the investigation can be made by the police if no charges have been brought. If the charge has been raised, the provisions of Section 721 and Section 722 apply.

*Subsection 3.* If the report is rejected or the investigation is discontinued, the victim or, if the victim is deceased, the victim's close relatives shall be informed. The same applies to others who may be assumed to have a reasonable interest in it. The decision may be appealed to the superior public prosecutor's office in accordance with the rules laid down in Chapter 10.

**§ 752.**

Inden politiet afhører en sigtet, skal han udtrykkeligt gøres bekendt med sigtelsen og med, at han ikke er forpligtet til at udtale sig. Det skal af rapporten fremgå, at disse regler er iagttaget.

*Stk. 2.* Justitsministeren fastsætter regler om, i hvilke tilfælde kommunalbestyrelsen skal underrettes om og have adgang til at overvære afhøringen af sigtede under 18 år. For mistænkte personer under 15 år gælder bestemmelsen i § 821 d.

*Stk. 3.* Spørgsmål til en sigtet må ikke stilles således, at noget, der er benægtet eller ikke erkendt, forudsættes tilstået. Løfter, urigtige foregivender eller trusler må ikke anvendes.

*Stk. 4.* Afhøringen må ikke forlænges alene for at opnå en tilståelse. Ved afhøringer, der ikke er ganske kortvarige, anføres i rapporten tidspunkterne for afhøringens begyndelse og afslutning.

*Stk. 5.* Sigtede må ikke rådføre sig med sin forsvarer eller andre angående den umiddelbare besvarelse af et stillet spørgsmål.

**Section 752.**

Before the police interrogate an accused person, he must be explicitly made aware of the charge and that he is not obliged to make a statement. The report must state that these rules have been observed.

*Subsection 2.* The Minister for Justice shall lay down rules on the cases in which the Municipal Council must be informed of and have access to attend the questioning of the defendant under 18 years of age. For suspected persons under 15 years of age, the provision in Section 821 d applies.

*Subsection 3.* Questions to a defendant must not be made in a way that anything denied or not admitted is assumed to be confessed. Promises, false pretenses or threats must not be used.

*Subsection 4.* The questioning must not be extended for the sole purpose of obtaining a confession. For questionings that are not relatively brief, the report shall state the dates and times of the commencement and termination of the questioning.

*Subsection 5.* The defendant may not consult with their defense counsel or others regarding the immediate answer to a question asked.

## § 802.

Genstande, som en mistænkt har rådighed over, kan beslaglægges, såfremt

1) den pågældende med rimelig grund er mistænkt for en lovovertrædelse, der er undergivet offentlig påtale, og

2) der er grund til at antage, at genstanden kan tjene som bevis eller bør konfiskeres, jf. dog stk. 2, eller ved lovovertrædelsen er fravendt nogen, som kan kræve den tilbage.

*Stk. 2.* Gods, som en mistænkt ejer, kan beslaglægges, såfremt

1) den pågældende med rimelig grund er mistænkt for en lovovertrædelse, der er undergivet offentlig påtale, og

2) beslaglæggelse anses for nødvendig at sikre

a) det offentliges krav på sagsomkostninger, krav på konfiskation efter straffelovens § 75, stk. 1, 1. pkt., 2. led, og 2. pkt., og stk. 3, § 76 a, stk. 5, og § 77 a, 2. pkt., bødekrav eller forurettedes krav på erstatning i sagen eller

b) krav, der er under inddrivelse hos restanceinddrivelsesmyndigheden, uanset om gælden har tilknytning til den sag, som mistanken angår.

## Section 802.

Items available to a suspect may be seized if

1) the person concerned is reasonably suspected of an offense that is subject to public prosecution, and

2) there is reason to believe that the object may serve as evidence or should be confiscated, cf. subsection 2, or the offense has deprived someone who can reclaim it.

*Section 2.* Goods, as a suspected owner, may be seized if

1) the person concerned is reasonably suspected of an offense that is subject to public prosecution, and

2) seizure is considered necessary to ensure

a) the public's claim to legal costs, claim to confiscation under the Danish Criminal Code Section 75, subsection 1, item 1, 2nd point, item 2, and item 2, and subsection 3, Section 76 a, subsection 5, and Section 77 a, item 2, fine claims or the injured party's claim to compensation in the case or

b) claims being recovered by the debt recovery authority, irrespective of whether the debt is related to the case to which the suspicion concerns.

## § 834.

Anklagemyndigheden rejser tiltale ved et anklageskrift, som skal indeholde

1) navnet på den ret, ved hvilken sagen anlægges,

2) tiltaltes navn og adresse samt så vidt muligt personnummer eller lignende og

3) oplysninger om det forhold, der rejses tiltale for.

*Stk. 2.* Oplysninger efter stk. 1, nr. 3, skal omfatte

1) den regel, der påstås overtrådt, og forbrydelsens kendetegn, som de fremgår af reglen,

2) forbrydelsens navn, hvis loven indeholder angivelse heraf,

3) straffehjemmelen,

4) en kort beskrivelse af det forhold, der rejses tiltale for, med sådan angivelse af tid, sted, genstand, udførelsesmåde og andre nærmere omstændigheder, som er nødvendig for en tilstrækkelig og tydelig beskrivelse, og

5) i givet fald de strafforhøjelses- eller strafnedsættelsesgrunde, der vil blive påberåbt.

*Stk. 3.* Alternativt, herunder subsidiær, tiltale er tilladt.

*Stk. 4.* Anklageskriftet må ikke indeholde en fortegnelse over beviser, der agtes ført, eller en redegørelse for sagens retlige spørgsmål.

## Section 834.

The Prosecutor's Office charges an indictment, which must contain

1) the name of the court before which the case is brought,

2) the defendant's name and address as well as, where possible, the civil registration number or similar and

3) information about the circumstances for which charges are brought.

*Subsection 2.* Information in accordance with subsection 1, no. 3, shall include

1) the rule that has allegedly been violated and the characteristics of the crime as they appear in the rule,

2) the name of the crime, if the law contains indication thereof,

3) the criminal offense,

4) a brief description of the fact that is brought to trial, with such indication of the time, place, object, mode of execution and other specific circumstances necessary for a sufficient and clear description; and

5) where appropriate, the grounds for punishment or reduction of sentences that will be invoked.

*Subsection 3.* Alternative, including subsidiary, charges are permitted.

*Subsection 4.* The indictment must not contain a record of evidence intended to be kept or an account of the legal issues of the case.

## § 835.

Anklagemyndigheden indleverer anklageskriftet til retten. Ved indleveringen er straffesagen indledt ved retten.

*Stk. 2.* Anklagemyndigheden sender kopi af anklageskriftet til tiltalte straks efter indledning af sagen. Retten skal senest samtidig med forkyndelse af indkaldelse, jf. § 844, stk. 2, forkynde kopi af anklageskriftet for den pågældende.

*Stk. 3.* Anklagemyndigheden eller retten sender kopi af anklageskriftet til forsvareren straks efter indledning af sagen, eller så snart forsvareren er beskikket for tiltalte.

## Section 835.

The prosecutor submits the indictment to the court. At the time of submission, the criminal proceedings have been initiated in court.

*Subsection 2.* The prosecution will send a copy of the indictment to the defendant immediately after the case opens. The court must, no later than at the same time as the service of the summons, cf. section 844, subsection 2, serve a copy of the indictment for the person concerned.

*Subsection 3.* The Prosecutor's Office or the Court shall send a copy of the indictment to the defense counsel immediately after the commencement of the proceedings or as soon as the defense counsel is appointed to the accused.

### § 881.

Ved afstemninger har hver dommer og hver domsmand 1 stemme. I sager, der behandles efter § 12, stk. 8, har, hvis undtagelsesvis kun 1 dommer medvirker, denne 2 stemmer. På samme måde har hver domsmand 1½ stemme, hvis der undtagelsesvis kun medvirker 2 domsmænd.

*Stk. 2.* Ved afstemning skal skyldsspørgsmålet sondres fra spørgsmålet om straffen og bringes til afstemning først. Stemmes der særskilt om strafforhøjelses- eller strafnedsættelsesgrunde, bliver stemmerne fra de medlemmer af retten, som har erklæret sig mod tiltaltes skyld, men er forblevet i mindretal, at regne til gunst for tiltalte.

### Section 881.

Each judge and each lay judge have one vote. In cases heard under Section 12(8), if, exceptionally, only one judge participates, he or she shall have two votes. Similarly, each lay judge has 1½ votes if, exceptionally, only two lay judges participate.

*Subsection 2.* When voting, the question of guilt must be separated from the question of the sentence and voted on first. If a separate vote is taken on grounds for increasing or reducing the sentence, the votes of those members of the court who have declared that they do not believe the defendant is guilty but remain in a minority shall be counted in favor of the defendant.

### § 883.

Dommen skal, for så vidt den ikke går ud på sagens afvisning, enten domfælde eller frifinde.

*Stk. 2.* Frifindelse skal ske, når

1) forholdet ikke er undergivet offentlig påtale,

2) forfølgningen opgives,

3) forholdet er forældet eller

4) tiltalte ikke findes skyldig.

*Stk. 3.* Retten kan ikke domfælde for noget forhold, der ikke omfattes af tiltalen.

### Section 883.

Insofar as it is not based on the dismissal of the case, the judge must either rule for conviction or acquittal.

*Subsection 2.* Acquittal must occur when

1) the offense is not subject to public prosecution,

2) the prosecution is abandoned,

3) the offense is time-barred or

4) the defendant is found not guilty.

*Subsection 3.* The court cannot convict for any offense not covered by the indictment.

# PENAL CODE

## § 50.

Bøde tilfalder statskassen.

*Stk. 2.* Bøde kan idømmes som tillægsstraf til anden strafart, når tiltalte ved lovovertrædelsen har opnået eller tilsigtet at opnå økonomisk vinding for sig selv eller andre.

*Stk. 3.* Den bødefældte kan ikke kræve bøden betalt eller erstattet af andre.

## Section 50.

Fines accrue to the Treasury.

*Subsection 2.* Fines may be imposed as additional penalty to another type of penalty when the defendant in the offense has obtained or intended to obtain financial gain for themselves or others.

*Subsection 3.* The fined person cannot demand to have the fine paid or reimbursed by others.

## § 80.

Ved straffens fastsættelse skal der under hensyntagen til ensartethed i retsanvendelsen lægges vægt på lovovertrædelsens grovhed og på oplysninger om gerningsmanden.

Stk. 2. Ved vurderingen af lovovertrædelsens grovhed skal der tages hensyn til den med lovovertrædelsen forbundne skade, fare og krænkelse samt til, hvad gerningsmanden indså eller burde have indset herom. Ved vurderingen af oplysninger om gerningsmanden skal der tages hensyn til dennes almindelige personlige og sociale forhold, dennes forhold før og efter gerningen samt dennes bevæggrunde til gerningen.

Stk. 3. Ved vurderingen efter stk. 2 kan det ikke indgå som formildende omstændighed, at gerningen har baggrund i tro, kulturelle forhold el. lign.

## Section 80.

(1) When determining a sentence, consideration must be given to the gravity of the offence and information on the offender, while ensuring consistency in the application of the law.

(2) When assessing the gravity of the offence, the injury, damage, danger and infringement pertaining to the offence and what the offender realised or should have realised must be taken into account. When assessing information on the offender, his general personal and social circumstances, his situation before and after the act and his motives for committing the act must be taken into account.

(3) When an assessment is made under subsection (2), it cannot be considered a mitigating circumstance that the act was based on religious faith, cultural values or similar.

## § 82.

Det skal ved straffens fastsættelse i almindelighed indgå som formildende omstændighed [...]

10) at gerningsmanden har givet oplysninger, som er afgørende for opklaringen af strafbare handlinger begået af andre;

11) at gerningsmanden har genoprettet eller søgt at genoprette den skade, der er forvoldt ved den strafbare handling;

[...]

13) at der er gået så lang tid, siden den strafbare handling blev foretaget, at anvendelse af den sædvanlige straf er unødvendig.

## Section 82.

It should generally be considered a mitigating circumstance during sentencing, […]

(10) that the perpetrator has provided information that is crucial for the clarification of criminal acts committed by others;

(11) that the perpetrator has remedied or attempted to remedy the damage caused by the criminal act;

[…]

(13) that such long time has passed since the criminal act was committed that the imposition of a usual sentence is unnecessary.

## § 88.

(1) Har nogen ved en eller flere handlinger begået flere lovovertrædelser, fastsættes der for disse en fælles straf inden for den foreskrevne strafferamme eller, hvis flere strafferammer kommer i betragtning, den strengeste af disse. Under særdeles skærpende omstændigheder kan straffen overstige den højeste for nogen af lovovertrædelserne foreskrevne straf med indtil det halve.

## Section 88.

(1) If a person has committed several offences by one or more acts, a concurrent sentence for such offences must be imposed within the limits of the prescribed minimum and maximum penalties, or, if several penalty limits may apply, the most severe penalty limit. In highly aggravating circumstances, the penalty can exceed the most severe penalty prescribed for any of the offences by up to half.

## § 110 f.

(1) De i dette kapitel omhandlede forbrydelser er i alle tilfælde genstand for offentlig påtale, der sker efter justitsministerens påbud.

## Section 110 f.

(1) All offences mentioned in this Part are subject to public prosecution to be initiated at the order of the Minister of Justice.

## § 118 a.

(1) De i §§ 111-115 og 118 omhandlede forbrydelser er i alle tilfælde genstand for offentlig påtale, der sker efter justitsministerens påbud.

## Section 118 a.

(1) All offences mentioned in sections 111-115 and 118 are subject to public prosecution, which must be instituted at the order of the Minister of Justice.

**§ 191.**

Den, som i strid med lovgivningen om euforiserende stoffer til et større antal personer eller mod betydeligt vederlag eller under andre særligt skærpende omstændigheder overdrager euforiserende stoffer, straffes med fængsel indtil 10 år. Angår overdragelsen en betydelig mængde særligt farligt eller skadeligt stof, eller har overdragelsen af et sådant stof i øvrigt haft en særligt farlig karakter, kan straffen stige til fængsel i 16 år.

Stk. 2. På samme måde straffes den, der i strid med lovgivningen om euforiserende stoffer indfører, udfører, køber, udleverer, modtager, fremstiller, forarbejder eller besidder sådanne stoffer med forsæt til at overdrage dem som nævnt i stk. 1.

**Section 191.**

(1) Any person who, contrary to the legislation on controlled substances, delivers a controlled substance to multiple individuals or for a significant payment or in other particularly aggravating circumstances is sentenced to imprisonment for a term not exceeding ten years. If the substance delivered is a considerable quantity of a particularly dangerous or harmful substance, or if the delivery transaction has otherwise been of a particularly dangerous nature, the sentence can increase to imprisonment for a term not exceeding 16 years.

(2) The same penalty is imposed on any person who imports, exports, purchases, transfers, receives, produces, processes or possesses any such substance contrary to the legislation on controlled substances with intent to deliver the substance as referred to in subsection (1).

**§ 279.**

(1) For bedrageri straffes den, som, for derigennem at skaffe sig eller andre uberettiget vinding, ved retsstridigt at fremkalde, bestyrke eller udnytte en vildfarelse bestemmer en anden til en handling eller undladelse, hvorved der påføres denne eller nogen, for hvem handlingen eller undladelsen bliver afgørende, et formuetab.

**Section 279.**

(1) A person is guilty of fraud if, by wrongfully creating, confirming or exploiting a mistake to obtain an unlawful gain for himself or others, he induces another person to perform or fail to perform an act and thereby inflicts a property loss on such other person or someone to whom the performance or failure becomes essential.

**§ 286.**

Straffen kan stige til fængsel indtil 6 år, når de i §§ 276, 276 a, 281 og 282 nævnte forbrydelser er af særligt grov beskaffenhed navnlig på grund af udførelsesmåden, eller fordi forbrydelsen er udført af flere i forening eller under medtagelse af våben eller andet farligt redskab eller middel, eller på grund af de stjålne genstandes betydelige værdi eller de forhold, under hvilke de befandt sig, eller fordi der er tale om tyveri begået som led i organiseret indbrudskriminalitet, eller fordi der er tale om systematisk eller organiseret afpresning, eller når et større antal forbrydelser er begået.

Stk. 2. Straffen kan stige til fængsel indtil 8 år, når de i §§ 278-280 og 283 nævnte forbrydelser er af særligt grov beskaffenhed navnlig på grund af udførelsesmåden, eller fordi forbrydelsen er

udført af flere i forening, eller som følge af omfanget af den opnåede eller tilsigtede vinding, eller når et større antal forbrydelser er begået.

## Section 286.

(1) The sentence can increase to imprisonment for a term not exceeding six years if any of the offences referred to in sections 276, 276 a, 281 and 282 are of a particularly aggravating nature, especially because of the method used or because the offence was committed jointly by several persons or by a person who was armed with a weapon or another dangerous tool or piece of equipment, or because of the significant value of the property stolen or the conditions under which it was kept, or because the theft was a constituent element of organised burglary, or because it was systematic or organised blackmail, or when several offences have been committed.

(2) The sentence can increase to imprisonment for a term not exceeding eight years if any of the offences referred to in sections 278-280 and 283 are of a particularly aggravating nature, especially because of the method used, because the offence was committed jointly by several persons or due to the scope of the gain made or intended, or when several offences have been committed.

## § 289.

Med fængsel indtil 8 år straffes den, som for derigennem at skaffe sig eller andre uberettiget vinding gør sig skyldig i overtrædelse af særligt grov karakter af skatte-, told-, afgifts- eller tilskudslovgivningen eller af § 289 a.

Stk. 2. Bestemmelsen i stk. 1 finder kun anvendelse, hvis der i den i stk. 1 nævnte lovgivning er henvist til denne bestemmelse.

Stk. 3. Ved udmåling af tillægsbøde efter § 50, stk. 2, i forbindelse med overtrædelse af stk. 1 skal der lægges vægt på, om forbrydelsen er af særlig grov beskaffenhed navnlig på grund af udførelsesmåden, eller fordi forbrydelsen er udført af flere i forening, eller når et større antal forbrydelser er begået.

## Section 289.

(1) Imprisonment for a term not exceeding eight years is imposed on any person who is guilty of a violation of the legislation on taxes, customs, duties or subsidies or of section 289a committed in a particularly aggravating manner to obtain an unlawful gain for himself or others.

(2) The provision of subsection (1) only applies if a reference to this provision has been inserted into the legislation referred to in subsection (1).

(3) When determining a supplementary fine under section 50(2) for violation of subsection (1), it must be taken into consideration whether the offence was of a particularly aggravating nature, especially due to the method used or because the offence was committed jointly by several persons, or when several offences have been committed.

## § 291.

Den, der ødelægger, beskadiger eller bortskaffer ting, der tilhører en anden, straffes med bøde eller fængsel indtil 1 år og 6 måneder.

Stk. 2. Øves der hærværk af betydeligt omfang eller af mere systematisk eller organiseret karakter, eller er gerningsmanden tidligere fundet skyldig efter nærværende paragraf eller efter

§ 180, § 181, § 183, stk. 1 og 2, § 184, stk. 1, § 193 eller § 194, kan straffen stige til fængsel i 6 år.

**Section 291.**

(1) Any person who destroys, damages or removes any property belonging to another person is sentenced to a fine or imprisonment for a term not exceeding one year and six months.

(2) In case of serious criminal damage or criminal damage in a systematic or organised manner, or if the offender has previously been convicted under this section 291 or under section 180, section 181, section 183(1) and (2), section 184(1), section 193 or section 194, the sentence may increase to imprisonment for six years.

**§ 305.**

De i § 291, stk. 1 og 3, § 293, stk. 2, § 298 og § 299 omhandlede lovovertrædelser påtales kun efter den forurettedes begæring, medmindre almene hensyn kræver påtale.

Stk. 2. De i § 294 omhandlede lovovertrædelser er undergivet privat påtale.

**Section 305.**

(1) The offences mentioned in section 291(1) and (3), section 293(2), section 298 and section 299 are prosecuted only upon request from the victim, unless justified for reasons of public interest.

(2) The offences mentioned in section 294 are subject to private prosecution.

# OTHER LEGAL PROVISIONS

**Tax Control Act:**

**§ 86.**

I sager om overtrædelse af bestemmelserne i kapitel 9, der ikke skønnes at ville medføre højere straf end bøde, kan told- og skatteforvaltningen i et bødeforelæg tilkendegive den sigtede, at sagen kan afgøres uden retssag, hvis sigtede erklærer sig skyldig i overtrædelsen og erklærer sig rede til inden en nærmere angiven frist, der efter begæring kan forlænges, at betale den i bødeforelægget angivne bøde.

*Stk. 2.* Retsplejelovens § 834 om indholdet af et anklageskrift finder anvendelse på tilkendegivelsen efter stk. 1.

*Stk. 3.* Vedtager sigtede bøden, bortfalder videre strafferetlig forfølgning. Vedtagelsen har samme gentagelsesvirkning som en dom.

*Stk. 4.* Bøder i sager, der afgøres administrativt, opkræves af told- og skatteforvaltningen.

**Section 86.**

In cases of infringement of the provisions of Chapter 9, which are not deemed to result in higher penalties than fines, the Danish Customs and Tax Administration may, in a fine notice, inform the defendant that the case can be settled without trial, if the defendant pleads guilty to the infringement and declares themselves ready to pay the amount specified in the fine, upon request.

*Subsection 2.* Section 834 of the Civil Procedure Code on the content of an indictment shall apply to the declaration in accordance with subsection 1.

*Subsection 3.* If the fine is charged, further criminal prosecution will lapse. Adoption has the same repercussion as a judgment.

*Subsection 4.* Fines in cases that are decided administratively are charged by the Customs and Tax Administration.

### § 88.

I sager om overtrædelse af §§ 82-84 a, der kan afgøres administrativt, jf. § 86, finder § 752, stk. 1, i retsplejeloven anvendelse.

*Stk. 2.* En sigtet uden forsvarer i en sag, der kan afgøres administrativt, har samme ret til aktindsigt i sin egen sag, som en forsvarer har efter § 3 i lov om adgang til forsvarerbistand under en administrativ skatte- eller afgiftsstraffesag.

### Section 88.

In cases of violation of Sections 82-84 a, which can be decided administratively, cf. Section 86, section 752, subsection 1, of the Administration of Justice Act applies.

*Subsection 2.* A defendant without a defense counsel in a case that can be decided administratively has the same right of access to his own case as a defense counsel has under section 3 of the law on access to defense assistance during an administrative tax penalty case.

**The Danish Collection Act:**

### § 18.

Skønnes en overtrædelse ikke at ville medføre højere straf end bøde, kan told- og skatteforvaltningen tilkendegive den pågældende, at sagen kan afgøres uden retslig forfølgning, såfremt den pågældende erkender sig skyldig i overtrædelsen og erklærer sig rede til inden for en nærmere angivet frist, der efter ansøgning kan forlænges, at betale en bøde, der er angivet i tilkendegivelsen. § 752, stk. 1, i lov om rettens pleje finder tilsvarende anvendelse.

*Stk. 2.* Med hensyn til den tilkendegivelse, som er nævnt i stk. 1, finder bestemmelsen om tiltalerejsning i retsplejelovens § 895 tilsvarende anvendelse.

### Section 18.

If a violation is not considered to result in a higher penalty than a fine, the Danish Customs and Tax Administration may inform the person concerned that the case may be settled without legal prosecution, if the person in question acknowledges guilt of the violation and declares themselves ready to pay a fine (by a specified deadline which can be extended upon application), which is stated in the notification. Section 752, subsection 1, of the Care of the Courts Act shall apply mutatis mutandis.

*Subsection 2.* With regard to the statement referred to in subsection 1, the provision on appeal in Section 895 of the Administration of Justice Act shall apply mutatis mutandis.

**The Legal Security Act:**

**Chapter 3**
*Relationship to criminal justice in the implementation of coercive measures*

**§ 9.**
Hvis en enkeltperson eller juridisk person med rimelig grund mistænkes for at have begået en strafbar lovovertrædelse, kan tvangsindgreb over for den mistænkte med henblik på at tilvejebringe oplysninger om det eller de forhold, som mistanken omfatter, alene gennemføres efter reglerne i retsplejeloven om strafferetsplejen.

*Stk. 2.* Reglen i stk. 1 gælder ikke, hvis tvangsindgrebet gennemføres med henblik på at tilvejebringe oplysninger til brug for behandlingen af andre spørgsmål end fastsættelse af straf.

*Stk. 3.* Reglerne i stk. 1 og 2 finder tilsvarende anvendelse, hvis der i sagen rettes et tvangsindgreb mod andre end den mistænkte.

*Stk. 4.* Den mistænkte kan meddele samtykke til fravigelse af stk. 1 og 3. Samtykket skal være skriftligt og skal meddeles på et frivilligt, specifikt og informeret grundlag. Et samtykke kan til enhver tid tilbagekaldes. Meddeler den mistænkte samtykke til fravigelse af stk. 1 og 3, finder reglerne i §§ 2-8 tilsvarende anvendelse ved de i § 1, stk. 1, nævnte tvangsindgreb.

**Section 9.**
If an individual or legal person is reasonably suspected of having committed a criminal offense, coercive measures against the suspect in order to provide information about the facts or circumstances that the suspicion concerns can only be carried out under the rules of the Criminal Procedure Act.

*Subsection 2.* The rule referred to in subsection 1 shall not apply where the compulsory intervention is conducted in order to provide information for the treatment of issues other than the establishment of punishment.

*Subsection 3.* The rules laid down in subsections 1 and 2 shall apply mutatis mutandis if a coercive measure is directed against anyone other than the suspect.

*Subsection 4.* The suspect may grant consent to the derogation of p subsections 1 and 3. The consent must be in writing and must be communicated on a voluntary, specific and informed basis. Consent may be revoked at any time. If the suspect consents to the derogation of subsections 1 and 3, the rules in Sections 2-8 shall apply mutatis mutandis in the case of the forced intervention referred to in section 1, subsection 1.

**Chapter 4**
***The right not to incriminate oneself, etc.***

**§ 10.**

Hvis der er konkret mistanke om, at en enkeltperson eller juridisk person har begået en lovovertrædelse, der kan medføre straf, gælder bestemmelser i lovgivningen m.v. om pligt til at meddele oplysninger til myndigheden ikke i forhold til den mistænkte, medmindre det kan udelukkes, at de oplysninger, som søges tilvejebragt, kan have betydning for bedømmelsen af den formodede lovovertrædelse.

*Stk. 2.* I forhold til andre end den mistænkte gælder bestemmelser i lovgivningen m.v. om pligt til at meddele oplysninger, i det omfang oplysningerne søges tilvejebragt til brug for behandlingen af andre spørgsmål end fastsættelse af straf.

*Stk. 3.* En myndighed skal vejlede den mistænkte om, at vedkommende ikke har pligt til at meddele oplysninger, som kan have betydning for bedømmelsen af den formodede lovovertrædelse. Hvis den mistænkte meddeler samtykke til at afgive oplysninger, finder reglerne i § 9, stk. 4, 2. og 3. pkt., tilsvarende anvendelse.

*Stk. 4.* Den mistænkte kan meddele samtykke til anvendelse af en oplysningspligt over for andre med henblik på at tilvejebringe oplysninger til brug for en straffesag mod den mistænkte. Reglerne i § 9, stk. 4, 2. og 3. pkt., finder tilsvarende anvendelse.

**Section 10.**

If there is a concrete suspicion that an individual or legal person has committed an offense that may result in punishment, provisions in legislation etc. on the duty to provide information to the authority do not apply in relation to the suspect, unless it can be excluded that the information sought to be obtained may be of importance to the assessment of the suspected offense.

*Subsection 2.* In relation to anyone other than the suspect, provisions in legislation etc. on the duty to provide information shall apply to the extent that the information is sought to be provided for use in the treatment of issues other than the establishment of punishment.

*Subsection 3.* An authority shall advise the suspect that the suspect is not obliged to communicate information that may affect the assessment of the suspected offense. If the suspect gives consent to provide information, the rules in section 9, subsection 4, items 2 and 3, shall apply mutatis mutandis.

*Subsection 4.* The suspect may give consent to the use of a duty of disclosure to others in order to provide information for the purpose of criminal proceedings against the suspect. The rules in section 9, subsection 4, items 2 and 3 shall apply mutatis mutandis.

**The Danish Competition Act:**
**Chapter 8**
***Penalty and leniency provisions***

**§ 23 a.**

En virksomhed kan gøres ansvarlig og hæfter for civile bøder, der pålægges en anden virksomhed inden for samme økonomiske enhed for overtrædelser af § 6 eller § 11 eller EUF-traktatens artikel 101 eller 102.

*Stk. 2.* Er en virksomhedssammenslutning ikke solvent og kan den derfor ikke betale en bøde, den er blevet pålagt for overtrædelse af § 6 eller § 11 eller EUF-traktatens artikel 101 eller 102, udmålt på grundlag af medlemsvirksomhedernes omsætning, skal sammenslutningen inden for en frist fastsat af Konkurrence- og Forbrugerstyrelsen indkalde bidrag fra medlemsvirksomhederne til betaling af bøden.

*Stk. 3.* Har medlemsvirksomhederne ikke inden for fristen fuldt ud opfyldt forpligtelsen til at betale bidragene efter stk. 2, kan Konkurrence- og Forbrugerstyrelsen opkræve restbeløbet direkte hos enhver af de virksomheder, hvis repræsentanter var medlemmer af sammenslutningens besluttende organer, da overtrædelsen blev begået.

*Stk. 4.* Efter at Konkurrence- og Forbrugerstyrelsen har krævet betaling i henhold til stk. 3, kan styrelsen også, hvor det er nødvendigt for at sikre fuld betaling af bøden, kræve betaling af udestående bødebeløb hos ethvert medlem af sammenslutningen, der var aktiv på det marked, hvor overtrædelsen fandt sted. Der kan dog ikke kræves betaling af medlemsvirksomheder, som påviser, at de ikke har gennemført sammenslutningens beslutning om en overtrædelse, og som enten ikke har haft kendskab til dennes eksistens eller aktivt har taget afstand fra den, inden Konkurrence- og Forbrugerstyrelsens undersøgelse blev indledt.


**Section 23 a.**

(1) An undertaking may be held liable and responsible for civil fines imposed on another undertaking within the same economic entity for infringements of Section 6 or 11 of this Act or Articles 101 or 102 TFEU.

(2) If an association of undertakings is not solvent and therefore cannot pay a fine imposed on it for infringement of Section 6 or 11 of this Act or Articles 101 or 102 TFEU, measured on the basis of the turnover of the member undertakings, the association must, within a time limit fixed by the Competition and Consumer Authority, call for contributions from the member undertakings to payment of the fine.

(3) If the member undertakings have not fully fulfilled the obligation to pay the contributions pursuant to subsection (2) above within the time limit, the Competition and Consumer Authority may collect the outstanding amount directly from any of the undertakings whose representatives were members of the association's decision-making bodies when the infringement was committed.

(4) After the Competition and Consumer Authority has required payment in accordance with subsection (3) above, the authority may also, where necessary to ensure full payment of the fine, require payment of the outstanding amount from any member of the association that was active in the market in which the infringement took place. However, payment shall not be required from member undertakings that show that they did not implement the association's infringing decision and either were not aware of its existence or have actively distanced themselves from it before the Competition and Consumer Authority's investigation was initiated.