## <u>Documents Referenced in Expert Report and Rebuttal Expert Report<br>Prepared by Lasse Lund Madsen</u>

1.    Announcement No. 2549 of December 17, 2021

2.    Administration of Justice Council's report 1194/1990

3.    Bill No. 13 (Feb. 23, 2005)

4.    GORM TOFTEGAARD NIELSEN & NICOLAJ SIVAN HOLST, THE COURSE OF THE CRIMINAL CASE (7th ed. 2020)

5.    Legislative History (Bill No. 96 (Nov. 26, 2003))

6.    JAN PEDERSEN, TAX & DUTY CRIMINAL LAW (4th ed. 2019)

7.    Attorney General's notice on cooperation with special authorities in specialized cases

8.    HANS GAMMELTOFT-HANSEN, CRIMINAL PROCEDURE I (1st ed. 1991)

9.    MICHAEL KISTRUP ET AL., THE CRIMINAL PROCESS (4th ed. 2023)

10.   STEPHAN HURWITZ, THE DANISH CRIMINAL PROCEDURE (3rd ed. 1959)

11.   BERNHARD GOMARD, STUDIES IN THE DANISH CRIMINAL PROCESS (1976)

12.   Bill No. 184 (Jan. 1992)

13.   LASSE LUND MADSEN & JENS RØN, CRIMINAL LAW II – SANCTIONS (5th ed. 2024)

14.   UfR 2016.1236 H

15.   Act no. 658 of June 11, 2024

16.   Bill No. 34 (Oct. 8, 1986)

17.   Law No. 385 on June 10, 1987

18.   Report on Professional Ethical Problems in Criminal Justice issued by a special committee under DJØF (1994)

19.   UfR 1982.1027 H

20.   UfR 1993B.44

21.   U 1998.1317 H

22.   Western High Court Decision (June 26, 2008) in case concerning ecstasy tablets

23.   Supreme Court Decision (January 9, 2009) in case concerning ecstasy tablets

24.   European Convention on Human Rights


23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
302

# Bekendtgørelse 2021-12-17 nr. 2549
## om fordeling af forretningerne mellem statsadvokaterne

I medfør af § 103, stk. 1, i lov om rettens pleje, jf. lovbekendtgørelse nr. 1835 af 15. september 2021, fastsættes:

**§ 1.** Fordelingen af forretningerne mellem de regionale statsadvokater er følgende:

1) Statsadvokaten i København varetager i Østre landsretskreds forretningerne vedrørende Københavns Politi, Københavns Vestegns Politi, Nordsjællands Politi, Midt- og Vestsjællands Politi, Sydsjællands og Lolland-Falsters Politi og Bornholms Politi. Embedskontoret for statsadvokaten i København er i København.

2) Statsadvokaten i Viborg varetager i Østre landsretskreds forretningerne vedrørende Fyns Politi og i Vestre landsretskreds forretningerne vedrørende Midt- og Vestjyllands Politi, Nordjyllands Politi, Østjyllands Politi, Sydøstjyllands Politi samt Syd- og Sønderjyllands Politi. Embedskontoret for statsadvokaten i Viborg er i Viborg.

**§ 2.** Statsadvokaten for Særlig Kriminalitet varetager for hele landet forretningerne vedrørende National Enhed for Særlig Kriminalitet, jf. retsplejelovens § 110 a.

*Stk. 2.* Opstår der tvivl om, hvorvidt en sag henhører under statsadvokaten for særlig kriminalitet, afgøres spørgsmålet af rigsadvokaten.

*Stk. 3.* Embedskontoret for statsadvokaten for særlig kriminalitet er i København.

**§ 3.** Bekendtgørelsen træder i kraft den 1. januar 2022.

*Stk. 2.* Bekendtgørelse nr. 1177 af 6. december 2012 om fordelingen af forretningerne mellem statsadvokaterne ophæves.

Copyright © 2021 Karnov Group Denmark A/S

*Handbogsreol 2*

# Betænkning om anklagemyndighedens struktur

*Afgivet af Retsplejerådet*



BETÆNKNING N R. 1194

1990

- **20** -

stk. 1, 2. pkt. I sager, der er undergivet statsadvokatens påtalekompetence, er po-
litimestrene forpligtet til efter efterforskningens afslutning at forelægge sagen for
statsadvokaten med indstilling om, hvorvidt påtale skal opgives eller tiltale rejses,
medmindre sagen kan fremmes efter retsplejelovens § 925 som tilståelsessag
uden udfærdigelse af anklageskrift. I øvrigt er det i en række tilfælde foreskrevet,
at politimesteren skal forelægge en sag, der er undergivet hans påtalekompeten-
ce, for statsadvokaten, forinden tiltale rejses eller forinden det afgøres, om anke
af en byretsdom skal undlades (acquiescens), jf. bl.a. Justitsministeriets cirkulæ-
reskrivelse af 29. juni 1984 om forelæggelse for statsadvokaterne, der er gengivet
som bilag 4.

Anklagemyndigheden er underordnet justitsministeren og står med hensyn til an-
klagehvervets udførelse under justitsministerens tilsyn, jf. § 106.

Justitsministeren har efter § 712 adgang til såvel at udstede generelle retningslini-
er som at give anklagemyndigheden pålæg med hensyn til konkrete sager, idet ju-
stitsministeren i de enkelte sager kan pålægge vedkommende anklager at begyn-
de eller fortsætte, undlade eller standse forfølgning, at gøre retsmidler gældende
m.v. Bestemmelsen anvendes efter mangeårig praksis kun i ekstraordinære tilfæl-
de til at omgøre rigsadvokatens beslutning om påtale eller anke, hvorimod adgan-
gen for justitsministeren til at omgøre en beslutning om at undlade påtale er an-
vendt i noget videre omfang.

Det påhviler efter retsplejelovens § 723, stk. 2, rigsadvokaten i tvivlstilfælde at fo-
relægge spørgsmål om påtaleundladelse for justitsministeren.

Endvidere er offentlig påtale efter § 722, stk. 1, nr. 1, og efter visse straffelovsbe-
stemmelser betinget af justitsministerens beslutning, jf. nedenfor side 38.

1.3. Rekurssystemet.

Efter anklagemyndighedens organisatoriske opbygning kan en række afgørelser
truffet af den underordnede anklagemyndighed ved rekurs indbringes for de
overordnede anklagemyndigheder og for justitsministeren. Dette gælder ikke
mindst politimesterens afgørelse om at undlade påtale, men også afgørelser ved-
rørende eksempelvis politiets dispositioner i forbindelse med en straffesag.

Sager om erstatning i anledning af strafferetlig forfølgning behandles efter regler-
ne i retsplejelovens kapitel 93 a. Spørgsmålet om, hvorvidt et krav om erstatning
skal imødekommes, afgøres principielt af Justitsministeriet efter forudgående hø-

# Forslag til lov om ændring af retsplejeloven

*(Underretnings- og formkrav ved justitsministerens pålæg til anklagemyndigheden i straffesager)*

Fremsat den 23. februar 2005 af justitsministeren (Lene Espersen)

**§ 1.** I retsplejeloven, jf. lovbekendtgørelse nr. 961 af 21. september 2004, som ændret ved § 2 i lov nr. 1436 af 22. december 2004, foretages følgende ændringer:

**1.** I *§ 98, stk. 3*, indsættes som nyt 2.-4. pkt.:

"Et pålæg i medfør af denne bestemmelse om at begynde eller fortsætte, undlade eller standse forfølgning skal være skriftligt og ledsaget af en begrundelse. Endvidere skal Folketingets formand skriftligt underrettes om pålægget. Hvis de hensyn, der er nævnt i

§ 729 c, stk. 1, gør det påkrævet, kan underretning udsættes. Pålægget betragtes i relation til aktindsigt i medfør af §§ 729 a-d som materiale, politiet har tilvejebragt til brug for sagen."

**2.** I *§ 99, stk. 2*, og *101, stk. 2*, ændres "§ 98, stk. 2 og 3." til: "§ 98, stk. 2 og stk. 3, 1. pkt.".

**§ 2.** Loven træder i kraft dagen efter bekendtgørelse i Lovtidende.

**§ 3.** Loven gælder ikke for Grønland eller Færøerne.

*Stk. 2.* Loven kan dog ved kongelig anordning helt eller delvist sættes i kraft for Færøerne med de afvigelser, som de særlige færøske forhold tilsiger.

---

## Bemærkninger til lovforslaget

## Almindelige bemærkninger

### 1. Indledning

#### 1.1 Lovforslagets formål og baggrund

Lovforslaget går ud på at indføre særlige underretnings- og formkrav i de tilfælde, hvor justitsministeren i medfør af retsplejelovens § 98, stk. 3, giver anklagemyndigheden pålæg i konkrete straffesager om at begynde, fortsætte, undlade eller standse forfølgning. Formålet er at sikre en større åbenhed og gennemsigtighed i forbindelse med anvendelsen af denne befølgelse, uanset at befølgelsen i praksis anvendes yderst sjældent. Efter regeringens opfattelse vil den foreslåede ordning kunne medvirke til at hindre, at der opstår mytedannelser om f.eks. årsagerne til, at en tiltale er blevet rejst eller ikke er blevet rejst.

I november 2003 fremsatte medlemmer af Socialistisk Folkeparti, Det Radikale Venstre og Enhedslisten et forslag til folketingsbeslutning om ophævelse af justitsministerens beføjelser i konkrete straffesager (B 46).

Af Retsudvalgets beretning af 29. april 2004 over beslutningsforslaget fremgår, at:

"Udvalget noterer sig, at justitsministeren i svaret på spørgsmål 1 bl.a. har tilkendegivet, at ministeren altid bør være yderst tilbageholdende med at gribe ind i anklagemyndighedens beslutninger i enkeltsager. Efter ministerens opfattelse må det afgørende være, at der er en sådan åbenhed og gennemsigtighed, hvis justitsministeren anvender befølgelsen, at der ikke opstår mytedannelse om årsagerne til, at en tiltale er blevet rejst eller ikke er blevet rejst. Og senere i svaret fremgår det, at det efter Justitsministeriets opfattelse med henblik på at sikre en større åbenhed og gennemsigtighed vil være relevant at overveje en model med inspiration fra de elementer i den norske og den hollandske ordning, som vedrører dokumentationskrav og en mere direkte parlamentarisk kontrol. Det kan således overvejes at fastsætte i retsplejeloven, at pålæg fra justitsministeren til de offentlige anklagere vedrørende konkrete straffesager skal være skriftlige og indeholde en nærmere begrundelse. Et sådant skriftligt pålæg vil indgå i en eventuel straffesags akter. Det kan endvidere overvejes at fastsætte i loven, at Folketinget altid skal orienteres skriftligt,

hvis justitsministeren giver pålæg i en konkret straffesag, f.eks. ved at der sendes en kopi af justitsministerens afgørelse.

Udvalget opfordrer ministeren til i næste folketingssamling efter høring af de berørte organisationer m.v. at fremsætte lovforslag om ændring af retsplejeloven efter de retningslinier, der er skitseret i spørgsmål nr. 1."

Lovforslaget er en genfremsættelse i uændret form af det lovforslag nr. L 146, der blev fremsat den 15. december 2004, jf. Folketingstidende 2004-2005, 1. samling, tillæg A, s. 4243 ff., og som er bortfaldet som følge af afholdelse af valg til Folketinget.

#### 1.2 Lovforslagets hovedpunkter

Med lovforslaget fastsættes nogle særlige underretnings- og formkrav, der skal overholdes, hvis justitsministeren i medfør af bestemmelsen i retsplejelovens § 98, stk. 3, giver anklagemyndigheden pålæg om at begynde, fortsætte, undlade eller standse forfølgning.

For det første skal sådanne pålæg fra justitsministeren være skriftlige og indeholde en begrundelse. Pålægget og begrundelsen herfor vil således komme til at indgå i straffesagens akter. Det følger af forslaget, at pålægget vil være undergivet aktindsigt i medfør af retsplejelovens §§ 729 a-d.

For det andet skal justitsministeren efter forslaget underrette Folketingets formand, hvis der gives pålæg om at begynde, fortsætte, undlade eller standse forfølgning. Dette vil have størst betydning i tilfælde, hvor pålægget går ud på, at retsforfølgning skal undlades eller standses, så sagen ikke bliver behandlet ved domstolene. Folketingets formand vil kunne videregive underretningen til f.eks. Retsudvalget. Med forslaget skabes således en mere direkte parlamentarisk kontrol.

### 2. Gældende ret

#### 2.1. Den danske anklagemyndigheds opgaver og organisation er beskrevet i retsplejelovens kapitel 10 (§§ 95-107). De offentlige anklagere er rigsadvokaten, statsadvokaterne og politimestrene (Politidirektøren).

Anklagemyndigheden er underlagt justitsministeren, der fører tilsyn med de offentlige anklagere, jf. retsplejelovens § 98, stk. 1. Forholdet mellem justitsministeren og anklagemyndigheden er således et over-underordnelsesforhold. I § 98 stk. 2, er det i overensstemmelse hermed udtrykkeligt fastsat, at justitsministeren

Copyright © 2020 Karnov Group Denmark A/S

kan fastsætte bestemmelser om de offentlige anklageres udførelse af deres opgaver, og i stk. 3 er det endvidere udtrykkeligt fastslået, at justitsministeren kan give de offentlige anklagere pålæg vedrørende behandlingen af konkrete sager, herunder om at begynde eller fortsætte, undlade eller standse forfølgning.

Forarbejderne indeholder ikke nærmere vejledning om, hvad der skal forstås ved "pålæg". "Pålæg" må imidlertid i overensstemmelse med den almindelige sproglige forståelse af ordet forstås som en tjenstlig ordre om at gøre noget bestemt i en konkret straffesag.

## 2.2. Efter fast praksis er justitsministrene yderst tilbageholdende med at gribe ind i konkrete straffesager, som behandles af anklagemyndigheden. Fra de senere år kendes kun et enkelt eksempel på, at justitsministeren har anvendt beføjelsen i retsplejelovens § 98, stk. 3.

Statsadvokaten for København traf den 27. marts 1995 afgørelse om at opgive påtale mod tre politiassistenter i forbindelse med politiets indsats på Nørrebro natten mellem den 18. og den 19. maj 1993. Efter statsadvokatens opfattelse kunne videre forfølgning ikke forventes at føre til, at de pågældende ville blive fundet skyldige til straf. Denne afgørelse blev omgjort af Rigsadvokaten. Justitsministeriet meddelte Dansk Politiforbund, der klagede over afgørelsen, at man anså Rigsadvokatens afgørelse som en 2. instans afgørelse, der var omfattet af de almindelige regler om klagebegrænsning i medfør af retsplejelovens § 98, stk. 3.

Folketingets Ombudsmand fandt imidlertid, at Rigsadvokaturen som myndighed måtte betragtes som inhabil, idet det var den daværende rigsadvokat, som i forbindelse med en undersøgelse af begivenhederne den 18. og 19. maj 1993 havde anmodet statsadvokaten om at rejse sigtelse mod de pågældende.

På baggrund af Ombudsmandens udtalelse fandt Justitsministeriet, at der forelå sådanne helt særlige eller ekstraordinære omstændigheder, som kunne begrunde justitsministerens anvendelse af beføjelsen i § 98, stk. 3. Justitsministeren traf herefter afgørelse om at opgive påtale mod de tre betjente.

Justitsministerens mulighed for at give pålæg til anklagemyndigheden i konkrete straffesager har også givet anledning til debat i forbindelse med enkelte andre sager.

I den såkaldte Skalafjall-sag vedrørende belåning af skibe, hvor Færøernes Ret den 5. december 1995 afsagde frifindende dom, besluttede Rigsadvokaten den 15. december 1995, at dommen ikke skulle ankes. I den forbindelse opstod der i Folketinget spørgsmål om, hvorvidt justitsministeren burde gribe ind i sagen og omgøre Rigsadvokatens beslutning med henblik på, at straffesagen blev genoptaget. Senere kom det frem, at dommeren havde deltaget i en hyttetur med forsvarerne for de tiltalte i sagen, hvorefter Rigsadvokaten på baggrund af disse oplysninger den 19. januar 1996 besluttede at anke dommen med påstand om ophævelse af Færøernes Rets dom på grund af dommerens inhabilitet.

Der var således i denne sag en diskussion om, hvorvidt justitsministeren burde give pålæg til Rigsadvokaten, men beslutningen om at anke blev truffet af Rigsadvokaten på eget initiativ.

## 2.3. Hvis justitsministeren giver de offentlige anklagere et pålæg i medfør af retsplejelovens § 98, stk. 3, gælder der i dag ikke særlige formkrav, herunder om, at pålægget skal foreligge skriftligt. Endvidere gælder der ikke noget krav om, at pålægget skal være begrundet.

Der gælder heller ikke noget krav om, at justitsministeren skal informere Folketinget eller offentligheden i øvrigt om, at der er givet et pålæg til anklagemyndigheden i medfør af retsplejelovens § 98, stk. 3.

## 3. Fremmed ret *3.1 Norge*

Den norske anklagemyndighed er hierarkisk opbygget og består af politimestrene, statsadvokaterne og rigsadvokaten. Rigsadvokaten er underlagt kongen i statsråd (regeringen).

Det norske justitsministerium har den overordnede ledelse af landets politi for så vidt angår administrative og politifaglige spørgsmål. Justitsministeriet er også i forvaltningsretlig henseende den overordnede myndighed i forhold til politiet. Justitsministeriets kompetence er i det væsentlige henlagt til et direktorat under ministeriet.

Tiltalerejsning og andre strafforfølgningsopgaver er derimod ikke omfattet af den norske justitsministeriums kompetence- eller ansvarsområde. Den øverste leder af den norske anklagemyndighed er i denne henseende i stedet kongen i statsråd (den samlede regering). Regeringen har derfor instruktions- og omgørelseskompetence over for den norske rigsadvokat. Hvis den norske justitsminister er uenig i rigsadvokatens afgørelse, kan ministeren ikke selv gribe ind, men må foranledige sagen behandlet i statsråd. Hvis regeringen udøver beføjelser på anklagemyndighedens område, vil det fremgå af regeringsprotokoller, som Stortinget kan kræve at få forelagt.

Den norske regerings instruktionsbeføjelse over for Rigsadvokaten indebærer principielt, at regeringen kan beslutte, at der skal rejses tiltale i en konkret sag. Der er imidlertid tradition for, at regeringen meget sjældent griber ind over for afgørelser, der er truffet af Rigsadvokaten. Regeringens adgang til at udstede generelle tjenestebefalinger til anklagemyndigheden har derimod stor praktisk betydning.

### 3.2 Holland

Også i *Holland* har justitsministeren beføjelse til at gribe ind i konkrete straffesager, men i praksis sker det kun i helt ekstraordinære tilfælde.

Hvis den hollandske justitsminister vil give pålæg til anklagemyndigheden i en konkret sag, gælder der nogle særlige formelle krav. Ministeren skal således henvende sig til anklagemyndighedens ledelse (som er et særligt kollektivt organ), og ledelsen skal herefter have mulighed for at give udtryk for sine synspunkter over for ministeren. Hvis ministeren ikke er enig i anklagemyndighedens synspunkter, skal ministeren redegøre for sine grunde over for anklagemyndighedens ledelse. Et eventuelt pålæg til anklagemyndigheden skal herefter gives skriftligt og indeholde en begrundelse.

Hvis pålægget går ud på, at der skal rejses tiltale, skal både ministerens og anklagemyndighedens holdning fremgå af straffesagens akter, medmindre dette er i strid med statens interesser. Anklageren redegør for de uoverensstemmende synspunkter under straffesagen.

Hvis pålægget går ud på at undlade strafforfølgning, skal ministeren informere parlamentet herom, medmindre dette strider mod statens interesser.

## 4. Lovforslagets udformning

Ved udformningen af lovforslaget har Justitsministeriet i overensstemmelse med Retsudvalgets beretning over beslutningsforslag B 46 lagt vægt på at sikre en større åbenhed og gennemsigtighed, som kan modvirke mytedannelser om årsagerne til, at en tiltale er eller ikke er blevet rejst. Ved udformningen af lovforslaget har Justitsministeriet således lagt til grund, at det afgørende er, at forsvareren i den konkrete straffesag samt Folketinget bliver orienteret om, at justitsministeren har anvendt sin beføjelse til at give pålæg til anklagemyndigheden.

# STRAFFE SAGENS

GORM TOFTEGAARD NIELSENS

GANG

VED NICOLAJ SIVAN HOLST

DJØF FORLAG

Gorm Toftegaard Nielsen

# STRAFFESAGENS GANG

### 7. udgave
### ved Nicolaj Sivan Holst



Djøf Forlag
2020

*Tiltalespørgsmålet*

Efter straffelovens § 110 f påtales overtrædelser af kapitel 12 om forbrydelser mod statens selvstændighed og sikkerhed kun efter justitsministerens påbud. I J 1994.154 redegør Jørn Vestergaard for, at et af justitsministeren nedsat udvalg i sin betænkning i 1949 fandt, at denne påtaleregel mindsker betænkelighederne ved at anvende gerningsbeskrivelser, der har et lavere præcisionsniveau end sædvanlig. Ud fra en traditionel straffeprocessuel tankegang kan man nok omvendt hævde, at betænkelighederne ved løse straffebestemmelser øges, når politikere træffer afgørelsen.[141] Deres afgørelser kan ikke forventes at besidde samme retssikkerhedskvaliteter som fortolkninger foretaget af anklagemyndighedens sædvanlige embedsmænd. Med forbehold for disse specielle sager, hvor Hurwitz accepterer justitsministerens kompetence, anfører han i den nævnte Årsbok s. 180, at det er »principielt forkasteligt, at saadan Indgriben finder Sted«.

Hurwitz ønsker klart ordningen ændret, specielt således at justitsministeren ikke formløst – som en almindelig overordnet myndighed – kan påvirke anklagerens afgørelser. Gammeltoft-Hansen I s. 159 f. er også kritisk over for justitsministerens beføjelser, men anfører, at ordningen næppe har været misbrugt i de sidste årtier. Blandt andre argumenter anføres, at »muligheden for i givet fald at gøre politisk og parlamentarisk ansvar gældende over for justitsministeren, formentlig vil være tilstrækkelige korrektionsmidler over for risikoen for politisk misbrug«. Troen på, at det parlamentariske ansvar sikrer mod politisk indblanding i anklagemyndighedens dispositioner, synes noget virkelighedsfjern i et samfund, hvor hovedproblemet måske snarest er, at Folketinget lægger pres på justitsministeren for at få ham til at blande sig i anklagemyndighedens afgørelser. Således pressede flere medlemmer af Folketingets erhvervsudvalg nærmest ministeren til at bede rigsadvokaten om at genoverveje, om en frifindelse i en omtalt sag på Færøerne skulle ankes, efter at rigsadvokaten havde besluttet ikke at anke afgørelsen. Justitsministeren opfordrede rigsadvokaten til at overveje spørgsmålet, og denne meddelte, at han allerede havde

*Folketingets indblanding*

141. Tilsvarende Gammeltoft-Hansen I, s. 158.

115

besluttet sig for at søge sagen anket.[142] Peter Garde behandler i U 1996B.363 ff. udførligt dette og andre eksempler.[143] Også han tilslutter sig ønsket om øget uafhængighed for anklagemyndigheden. Netop rigsadvokatens reaktion i Færøsagen viser systemets åbenbare svaghed. Rigsadvokaten ved, at justitsministeren er chefen. Den »rigtige« embedsmand retter sig ikke alene efter chefens udtrykkelige og offentligt meddelte ordrer, men måske også efter chefens ønsker. I hvert fald er der i vores system betydelig risiko for underhånden-meddelelser fra minister til anklager. At problemet eksisterer, fremgår klart af betænkning om fagligt etiske problemer i strafferetsplejen afgivet af en specialgruppe under Djøf's fagligt etiske arbejdsgruppe. Det refereres her, hvorledes det i flere tilfælde er sket, at en kontorchef i Justitsministeriet har ringet en anklager op og først sagt, at han ikke ville blande sig i behandlingen af konkrete sager, og dernæst meddelt, at ministeren mente eller fandt det rigtigst, at der i en given sag blev rejst tiltale. Er sagen dernæst af anklageren sendt af den officielle kommandovej via rigsadvokaten til ministeriet, har ministeren ikke haft nogen ønsker til sagsbehandlingen. Det har ifølge referatet ikke drejet sig om principielle sager, J 1994.292 f. I betænkning nr. 1194.1990 om anklagemyndighedens struktur s. 20 nævnes, at justitsministeren kun i ekstraordinære tilfælde har omgjort rigsadvokatens beslutninger om at rejse tiltale eller om at anke, men i noget videre omfang har omgjort beslutninger om at undlade at rejse tiltale. I betænkning afgivet af Forfatningskommissionen af 1937, 1946, s. 49 foreslår et mindretal (Venstre) en grundig behandling af bl.a. spørgsmålet om anklagemyndighedens uafhængighed af administrationen. Som bekendt blev der ikke optaget bestemmelser om dette i 1953-grundloven.

Ved lov nr. 368 af 24.5.2005 blev indført en vis begrænsning i ministerens beføjelse til at blande sig i konkrete straffe-

---

142. Jf. lederen i Information den 23.1.1996 og i Jyllands-Posten den 30.5.1996.
143. I artiklen »Adskil anklagemyndighed og politik« i Lov & Ret 2003, nr. 4, s. 10-12, fremhæver Ole Espersen, at ud af 10 andre Østersølande har kun Polen et system, der ligner vores. I Straffeprocessen s. 100 anføres med henvisning til Gammeltoft-Hansen, at der ikke er noget praktisk problem.

116

sager. Efter § 98, stk. 3, skal et sådant pålæg være skriftligt og begrundet, og Folketingets formand skal underrettes om pålægget. Folketinget har hermed sikret sig en vis kontrol med et sådant indgreb, men har – ikke overraskende – haft svært ved at se, at faren i vidt omfang også er Folketingets lyst til at blande sig i verserende straffesager.

Hverken den svenske eller den norske justitsminister kan blande sig i tiltalespørgsmålet. I Norge kan regeringen (kongen i statsrådet) træffe sådanne beslutninger.[144] Afgørelsen af tiltalespørgsmålet er ud fra retssikkerhedsmæssige synspunkter en meget væsentlig afgørelse. Formelt kan en tiltale beskrives blot som en oversendelse af sagen til afgørelse ved domstolene. Reelt er den imidlertid åbenbart belastende, ligesom den udløser en mødepligt i retten for den tiltalte. En mødepligt, der i større sager omfatter flere måneder. Tiltalen er ofte mere indgribende end forskellige tvangsindgreb, der er specielt reguleret, oftest med indbygget domstolskontrol. I engelsk ret prøves tiltalen da også af domstolene. I nordisk ret er der ingen sådan prøvelse. Det er nok værd at notere, at forarbejderne til retsplejeloven indeholder en meget udførlig redegørelse for spørgsmålet om domstolsprøvelse med, om der er bevismæssigt grundlag for at acceptere tiltalen i en række europæiske lande, jf. 1875-motiverne s. 103 ff.

Efter forslagets § 254, stk. 1, nr. 2, kunne sigtede begære, at hovedforhandlingen blev nægtet, hvis der ikke bevismæssigt forelå rimelig grund til mistanke mod den sigtede. I 1899-motiverne sp. 140 f forkastede man denne foreløbige prøvelse af sagen, fordi den ville forhale sagen og kun sjældent vil være til gavn for den tiltalte og på en uheldig måde kunne risikere at præjudicere den endelige afgørelse af skyldsspørgsmålet.

Politikerne har en særlig beskyttelse mod at blive tiltalt. Det er velkendt, at kun Kongen og Folketinget kan tiltale ministre for Rigsretten for deres embedsførelse. Dette system har sine særli-

**Norge og Sverige**

**Politikernes beskyttelse**

144. Jf. i øvrigt rigsadvokat Dorenfeldt: Påtalemyndigheten og de politiske myndigheter, Lov og Frihet, Festskrift til Johs. Andenæs, Oslo 1982, s. 91-98 og Andenæs s. 38 ff. Der findes ingen tilsvarende redegørelse fra danske rigsadvokater.

117

*Tiltalespørgsmålet*

ge grunde i en før-parlamentarisk styreform. Det er i den forfat-
ningsretlige litteratur diskuteret, om anklagemyndigheden for
de almindelige domstole i visse tilfælde kan tiltale en minister
for simple forbrydelser i forbindelse med hans embedsførelse,
jf. J.P. Christensen m.fl. Dansk Statsret s 99 ff. Det er ovenfor s.
22 f. omtalt, at politiet nok ikke altid er klar over, at det ikke er
givet, at politiet har kompetence til at efterforske disse sager og
afgøre, om der skal rejses tiltale. Grundlovens § 57 beskytter
folketingsmedlemmerne mod at blive tiltalt uden Folketingets
samtykke. Denne beskyttelse vedrører alle overtrædelser. Reg-
len har naturligvis ikke til formål at sikre deres ret til en sidelø-
bende kriminel løbebane, og kan kun forklares med en frygt for,
at anklagemyndigheden ellers kunne benytte sin ret til at rejse
tiltale til at chikanere eller ligefrem bekæmpe bestemte politike-
re. Reglen er vel forståelig i et system, hvor justitsministeren og
dermed regeringen råder over tiltalen.

## Sagen henlægges – Påtaleopgivelse

**Grundløs
sigtelse**

Som ovenfor s. 41 nævnt indførtes i 2008 §§ 718 a-718 b for at
sikre en hurtig behandling af spørgsmålet, om der skal rejses
tiltale, eller om sagen skal opgives eller tiltale frafaldes.[145]

I nogle tilfælde vil efterforskningen vise, at sigtelsen er
grundløs, f.eks. viser analysen af en blodprøve fra en bilist, at
alkoholpromillen i blodet alene har været 0,2. En eventuel sig-
telse for spirituskørsel er således grundløs, da forholdet kun er
strafbart efter færdselslovens § 53, hvis promillen overstiger
0,5. I disse tilfælde opgiver politidirektøren sagen – den hen-
lægges. Politidirektøren har her altid kompetencen til at hen-
lægge, jf. § 721, stk. 1, nr. 1, jf. stk. 2.

**Bevisets stil-
ling**

Selv om sigtelsen ikke er grundløs, kan det meget vel tænkes, at
beviserne ikke er af en sådan karakter, at videre forfølgning kan
ventes at føre til, at den sigtede findes skyldig. Også i disse til-
fælde opgives sagen – den henlægges på bevisets stilling. Det

---

145. Hammerum s. 103-175 indeholder en grundig gennemgang af påtale-
undladelser og påtalebegrænsninger.

118

afgørende er ikke, om det er overvejende sandsynligt, at den sigtede er skyldig, men om der kan føres et så stærkt bevis herfor, at det er hævet over rimelig tvivl, at han er skyldig. Dette princip, der er helt afgørende for straffeprocessen, benævnes ofte in dubio pro reo (i tvivlstilfælde for den tiltalte). I langt de fleste sager er politidirektøren kompetent til at opgive en sag af denne grund, jf. § 721, stk. 1, nr. 2, jf. stk. 2, jf. § 719. Nogle få forbrydelser er dog undtaget fra politidirektørens kompetence, således at alene den overordnede statsadvokat kan opgive påtale. Det gælder først og fremmest ankesager ved landsretten, jf. § 719, stk. 2.

Afgørelsen om at opgive påtale er i forvaltningslovens forstand en afgørelse truffet af en forvaltningsmyndighed, jf. § 2, stk. 1. De henlagte sager er således omfattet af loven. På flere punkter er forvaltningslovens regler dog fraveget i retsplejeloven. Forvaltningslovens § 18 indeholder regler om parternes adgang til dokumenterne i en straffesag, der er afgjort af en specialmyndighed, f.eks. af SKAT ved et bødeforlæg. For de straffesager, der er behandlet af politiet og anklagemyndigheden, findes reglerne om sigtedes aktindsigt i rpl. § 729 d og for forurettede i § 41 d. Efter § 724 skal sigtede, forurettede og andre med rimelig interesse heri have underretning om påtaleopgivelsen. Afgørelsen skal efter forvaltningslovens § 22 og § 25 i forhold til den forurettede være begrundet og indeholde vejledning om, at den kan påklages til typisk statsadvokaten og med angivelse af tidsfrister. Her er en almindelig klagefrist på 4 uger, efter at klageren er underrettet om afgørelsen, jf. § 102. Af hensyn til den tidligere sigtede er desuden i § 724, stk. 2, fastsat en omgørelsesfrist, hvorefter den tidligere sigtede senest 2 måneder efter afgørelsen skal have fået forkyndt en eventuel omgørelse. I U 2012.1788 H fandt Højesteret ikke, at fristen var begyndt at løbe, da politiet, indstillede efterforskningen, fordi de senere tiltalte hverken havde været sigtet eller afhørt med en sigtets rettigheder. Heller ikke efter de i øvrigt foreliggende oplysninger havde der foreligget en sådan konkret mistanke rettet mod de pågældende, at de måtte betragtes som sigtet. At klageren kan have specielle grunde for en fristoverskridelse, har betydning i

Begrundelses-
pligt og klage-
adgang

119

*Tiltalespørgsmålet*

forhold til 4-ugersfristen, men ikke i forhold til 2-månedersfristen. Efter 2 måneder står afgørelsen fast.[146]

Nyere rets-
praksis

Berettigede
forventninger

Der er vedr. beskyttelsen af den sigtede sket en betydelig udvikling siden 1960'erne. I U 1989.116 H efterlyste politiet en bilist pga. et forsikringsproblem i forbindelse med et færdselsuheld. Man oplyste, at den pågældende ikke ville blive sigtet. Den pågældende meldte sig og blev afhørt uden sigtelse, men modtog senere et anklageskrift vedr. overtrædelse af færdselsloven og endog med påstand om betinget frakendelse af førerretten. Højesteret lagde afgørende vægt på, at anklagemyndighedens sagsbehandling havde givet den pågældende en berettiget forventning, der afskar en senere tiltalerejsning. I U 1989.1105 H havde en spritbilist fået en tilkendegivelse[147] alene med betinget frakendelse. Frakendelsen skulle have været ubetinget, hvilket også fremgik af en medsendt skriftlig vejledning. Tiltalte ønskede forståeligt nok at fastholde, at der alene kunne påstås betinget frakendelse. Anklagemyndigheden anførte, at der forelå en ekspeditionsfejl hos politiet, og at denne ikke kunne være bindende. Højesteret gav anklagemyndigheden medhold, men det skete netop med henvisning til, at fejlen var åbenbar for tiltalte. Højesteret lægger således (nu) meget vægt på, hvorledes sagen er set fra den tiltaltes synsvinkel.

En klage-
mulighed

Afgørelsen kan kun påklages én gang. Den forurettede kan altså klage over politidirektørens afgørelse, men ikke over statsadvokatens afgørelse af klagesagen. Imidlertid kan rigsadvokaten uafhængig af klager af egen drift omgøre politidirektørens og statsadvokatens afgørelser inden for 2-månedersfristen.

---

146. Se dog § 724, stk. 2, sidste led.
147. Tilkendegivelse anvendes efter færdselslovens § 119 a i nogle af de tilfælde, hvor der både skal pålægges en bøde og ske frakendelse af førerretten. Tilkendegivelsen er en skrivelse til den sigtede om, at sagen kan afgøres uden at skulle i retten, hvis han erkender sig skyldig og vedtager bøden og frakendelsen. Populært sagt er det et bødeforlæg med frakendelse.

120

Selv om anklageren finder, at sagen bevismæssigt kan gennemføres, kan påtale dog efter § 721, stk. 1, nr. 3, opgives, hvis gennemførelsen »vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt«. Bestemmelsen har til formål at hindre, at anklagemyndigheden især i sager om komplicerede økonomiske forbrydelser føler sig presset ud i en omkostningskrævende domstolsbehandling, der i bedste fald kan ende med en uforholdsmæssig lille straf. Bestemmelsen bruges sandsynligvis begrænset, da anklagemyndigheden nok også i disse tilfælde i vidt omfang bruger den ovenfor beskrevne almindelige henlæggelse på bevisets stilling.

Ressourcebetinget henlæggelse

## Tiltalefrafald

Hvis anklageren skønner, at der er bevismæssig dækning for sigtelsen, vil han som udgangspunkt skulle rejse tiltale. I teorien bruges ofte betegnelsen legalitetsprincippet (det straffeprocessuelle og ikke det straffe- og forvaltningsretlige) om et system, hvor anklagemyndigheden skal rejse tiltale, hvis der er bevismæssig dækning, og opportunitetsprincippet om det system, hvor anklagemyndigheden ikke har en sådan pligt, men kan overveje, om det er opportunt at rejse tiltale eller at undlade dette. Netop det forhold, at tiltale undlades, selv om der er bevismæssig dækning, betegnes som frafald af tiltalen i modsætning til at opgive. Tiltalefrafald er ligesom påtaleopgivelse en forvaltningsafgørelse, og den ovenfor s. 119 nævnte regel om underretning gælder også for tiltalefrafald. Forurettede og andre med rimelig interesse kan imidlertid ikke klage over et tiltalefrafald. Det kan alene sigtede. Dette skyldes, at et tiltalefrafald – modsat en opgivelse af påtalen – er en konstatering af skyld. Normalt anføres, at det danske system hviler på opportunitetsprincippet. § 722, stk. 2, indeholder en meget bredt formuleret mulighed for at frafalde tiltale, »hvis der foreligger særlig formildende omstændigheder eller andre særlige forhold og påtale ikke kan anses for påkrævet af almene hensyn«. Med udgangspunkt i denne regel kan det hævdes, at anklagemyndigheden ikke er undergivet et legalitetsprincip, men rejser tiltale efter et opportunitetsprincip. Det har intet formål at diskutere, hvilken

Pligt til at rejse tiltale

121

# Forslag til lov

## om retssikkerhed ved forvaltningens anvendelse af tvangsindgreb og oplysningspligter

Fremsat den 26. november 2003 af justitsministeren (Lene Espersen)

### Kapitel 1

### Lovens anvendelsesområde

**§ 1.** Lovens kapitel 2 og 3 finder anvendelse ved tvangsindgreb, som foretages af den offentlige forvaltning uden for strafferetsplejen, og som består i

1) husundersøgelse eller

2) undersøgelse eller beslaglæggelse af breve og andre papirer.

*Stk. 2.* Lovens kapitel 3 finder også anvendelse ved tvangsindgreb, som foretages af den offentlige forvaltning uden for strafferetsplejen, og som består i

1) undersøgelse af andre lokaliteter,

2) undersøgelse eller beslaglæggelse af andre genstande,

3) brud på meddelelseshemmeligheden eller

4) eftersyn eller anden undersøgelse af personer.

*Stk. 3.* Lovens kapitel 4 finder anvendelse i tilfælde, hvor der i lovgivningen mv. er fastsat pligt til at meddele oplysninger til den offentlige forvaltning.

*Stk. 4.* Vedkommende minister kan efter forhandling med justitsministeren fastsætte regler om, at loven helt eller delvis skal gælde for nærmere angivne selskaber, institutioner, foreninger mv., som ikke kan henregnes til den offentlige forvaltning, i det omfang de pågældende ved eller i henhold til lov har fået tillagt beføjelser til at anvende tvangsindgreb eller oplysningspligter som nævnt i stk. 1-3.

*Stk. 5.* Stk. 1 og 2 omfatter ikke tvangsindgreb, som foretages efter indhentet retskendelse.

### Kapitel 2

### Gennemførelse af tvangsindgreb

### Proportionalitetsprincippet

**§ 2.** Tvangsindgreb må kun anvendes, hvis mindre indgribende foranstaltninger ikke er tilstrækkelige, og hvis indgrebet står i rimeligt forhold til formålet med indgrebet.

### Fremgangsmåden

**§ 3.** Ved beslutninger om iværksættelse af tvangsindgreb finder forvaltningslovens §§ 3-10, §§ 12-18 og §§ 22-26 anvendelse.

**§ 4.** I sager om iværksættelse af tvangsindgreb skal en myndighed, som mundtligt modtager oplysninger vedrørende sagens faktiske omstændigheder af betydning for beslutningen om iværksættelse af tvangsindgreb, eller som på anden måde er bekendt med sådanne oplysninger, gøre notat om indholdet af oplysningerne. Det gælder dog ikke, såfremt oplysningerne i øvrigt fremgår af sagens dokumenter.

**§ 5.** Forud for gennemførelsen af en beslutning om iværksættelse af et tvangsindgreb skal parten underrettes om beslutningen.

*Stk. 2.* Underretningen skal ske skriftligt senest 14 dage, inden tvangsindgrebet gennemføres, og skal indeholde oplysninger om

1) tid og sted for indgrebet,

2) retten til at lade sig repræsentere eller bistå af andre efter forvaltningslovens § 8,

3) hovedformålet med indgrebet og

4) det faktiske og retlige grundlag for indgrebet, jf. forvaltningslovens § 24.

*Stk. 3.* Parten kan inden for en af myndigheden fastsat frist fremsætte indsigelse mod den trufne beslutning. Fastholdes beslutningen, skal dette begrundes skriftligt over for parten, jf. forvaltningslovens § 24. Meddelelsen om fastholdelse af beslutningen skal gives inden eller senest samtidig med gennemførelsen af tvangsindgrebet.

*Stk. 4.* Reglerne i stk. 1-3 kan fraviges helt eller delvist, hvis

1) øjemedet med tvangsindgrebets gennemførelse ville forspildes, hvis forudgående underretning skulle gives,

2) hensynet til parten selv taler for det, eller partens rettigheder findes at burde vige for afgørende hensyn til andre private eller offentlige interesser,

3) det er nødvendigt af hensyn til rigets udenrigspolitiske eller udenrigsøkonomiske interesser, herunder forholdet til EU,

4) øjeblikkelig gennemførelse af tvangsindgrebet efter forholdets særlige karakter er påkrævet, eller

5) forudgående underretning viser sig umulig eller er uforholdsmæssig vanskelig.

*Stk. 5.* Hvis en beslutning om iværksættelse af tvangsindgreb gennemføres uden forudgående underretning, jf. stk. 4, skal beslutningen samtidig med gennemførelsen af indgrebet meddeles parten skriftligt og indeholde de i stk. 2, nr. 1-4, nævnte oplysninger. Beslutningen skal endvidere indeholde en begrundelse for fravigelsen af stk. 1-3, jf. forvaltningslovens § 24.

*Stk. 6.* Beslutningen i stk. 5 kan meddeles mundtligt, hvis hensynet til parten selv eller afgørende hensyn til andre private eller offentlige interesser taler for, at et tvangsindgreb gennemføres, inden myndigheden har haft lejlighed til at udarbejde en skriftlig begrundelse. Den, der har fået beslutningen meddelt mundtligt, kan forlange efterfølgende at få beslutningen meddelt skriftligt. En begæring herom skal fremsættes over for myndigheden inden 14 dage efter, at tvangsindgrebet er gennemført. Myndigheden skal besvare begæringen snarest muligt. Er begæringen ikke besvaret inden 14 dage efter, at myndigheden har modtaget begæringen, skal myndigheden underrette parten om grunden hertil samt om, hvornår begæringen kan forventes besvaret.

**§ 6.** Tvangsindgreb, der foretages uden for myndighedernes embedssteder, må kun foretages mod forevisning af legitimation.

*Stk. 2.* Bestemmelsen i stk. 1 kan undtagelsesvis helt eller delvist fraviges, hvis afgørende hensyn taler for det.

**§ 7.** Tvangsindgrebet skal foretages så skånsomt, som omstændighederne tillader, herunder så vidt muligt uden at forårsage ødelæggelse eller beskadigelse, og uden at indgrebet på grund af tidspunktet for foretagelsen eller den måde, hvorunder det foretages, giver anledning til unødig opsigt.

**§ 8.** Hvis myndigheden under gennemførelsen af et tvangsindgreb finder, at den, som indgrebet er rettet imod, har tilsidesat regler i lovgivningen mv., skal myndigheden udfærdige rapport om udførelsen af indgrebet. Rapporten skal snarest muligt udleveres til vedkommende.

*Stk. 2.* I andre tilfælde end de i stk. 1 nævnte skal myndigheden udfærdige og udlevere en rapport om udførelsen af indgrebet, hvis en part fremsætter begæring om det. En begæring herom skal fremsættes over for myndigheden inden 14 dage efter, at

tvangsindgrebet er gennemført. Myndigheden skal besvare begæringen snarest muligt. Er begæringen ikke besvaret inden 14 dage efter, at myndigheden har modtaget begæringen, skal myndigheden underrette parten om grunden hertil samt om, hvornår begæringen kan forventes besvaret.

## Kapitel 3

### Forholdet til strafferetsplejen ved gennemførelsen af tvangsindgreb

§ 9. Hvis en enkeltperson eller juridisk person med rimelig grund mistænkes for at have begået en strafbar lovovertrædelse, kan tvangsindgreb over for den mistænkte med henblik på at tilvejebringe oplysninger om det eller de forhold, som mistanken omfatter, alene gennemføres efter reglerne i retsplejeloven om strafferetsplejen.

*Stk. 2.* Reglen i stk. 1 gælder ikke, hvis tvangsindgrebet alene gennemføres med henblik på at tilvejebringe oplysninger til brug for behandlingen af andre spørgsmål end fastsættelse af straf.

*Stk. 3.* Reglerne i stk. 1-2 finder tilsvarende anvendelse, hvis der i sagen rettes et tvangsindgreb mod andre end den mistænkte.

*Stk. 4.* Den mistænkte kan meddele samtykke til fravigelse af stk. 1 og 3. Samtykket skal være skriftligt og skal meddeles på et frivilligt, specifikt og informeret grundlag. Et samtykke kan til enhver tid tilbagekaldes. Meddeler den mistænkte samtykke til fravigelse af stk. 1 og 3, finder reglerne i §§ 2-8 tilsvarende anvendelse ved de i § 1, stk. 1, nævnte tvangsindgreb.

## Kapitel 4

### Retten til ikke at inkriminere sig selv mv.

§ 10. Hvis der er konkret mistanke om, at en enkeltperson eller juridisk person har begået en lovovertrædelse, der kan medføre straf, gælder bestemmelsen i lovgivningen mv. om pligt til at meddele oplysninger til myndigheden ikke i forhold til den mistænkte, medmindre det kan udelukkes, at de oplysninger, som søges tilvejebragt, kan have betydning for bedømmelsen af den formodede lovovertrædelse.

*Stk. 2.* I forhold til andre end den mistænkte gælder bestemmelser i lovgivningen mv. om pligt til at meddele oplysninger, i det omfang oplysningerne alene søges tilvejebragt til brug for behandlingen af andre spørgsmål end fastsættelse af straf.

*Stk. 3.* En myndighed skal vejlede den mistænkte om, at vedkommende ikke har pligt til at meddele oplysninger, som kan have betydning for bedømmelsen af den formodede lovovertrædelse. Hvis den mistænkte meddeler samtykke til at afgive oplysninger, finder reglerne i § 9, stk. 4, 2. og 3. pkt., tilsvarende anvendelse.

*Stk. 4.* Den mistænkte kan meddele samtykke til anvendelse af en oplysningspligt over for andre med henblik på at tilvejebringe oplysninger til brug for en straffesag mod den mistænkte. Reglerne i § 9, stk. 4, 2. og 3. pkt., finder tilsvarende anvendelse.

## Kapitel 5

### Ophævelse mv. af visse kontrolbestemmelser i lovgivningen

§ 11. *§ 28* i lov nr. 319 af 14. maj 1997 om inkassovirksomhed, som ændret senest ved lov nr. 467 af 7. juni 2001, ophæves.

§ 12. I lov om anvendelse af Danmarks undergrund, jf. lovbekendtgørelse nr. 526 af 11. juni 2002, foretages følgende ændring:

1. I § 27, stk. 1, affattes således:

»Tilsynsmyndighedens medarbejdere har, hvor der skønnes at være en nærliggende risiko for en uhensigtsmæssig anvendelse eller udnyttelse af undergrunden, uden retskendelse mod behørig legitimation adgang til alle dele af virksomheden.«

§ 13. I lov nr. 364 af 18. maj 1994 om produktsikkerhed, som ændret ved lov nr. 458 af 10. juni 2003, foretages følgende ændring:

1. § 22, stk. 1, 2. pkt., affattes således:

»Kontrolmyndigheden har, hvor der er formodet risiko for, at et produkt kan indebære fare for forbrugerens sundhed og sikkerhed, uden retskendelse mod behørig legitimation adgang til fabrikations-, salgs- og lagerlokaler mv. og transportmidler, som tilhører nogen, der omfattes af lovens §§ 4 og 5.«

§ 14. I lov nr. 314 af 5. maj 2000, som ændret ved lov nr. 458 af 10. juni 2003 om autorisation af elinstallatører, foretages følgende ændring:

1. § 14, stk. 1, affattes således:

»Sikkerhedsstyrelsen har efter forudgående underretning uden retskendelse og mod forevisning af behørig legitimation adgang til offentlig eller privat ejendom med henblik på at undersøge eller lade undersøge elinstallationsarbejder udført af en elinstallatør, hvis der er formodet risiko for, at elinstallationen indebærer livseller brandfare, eller med henblik på at undersøge eller lade undersøge, hvorvidt en virksomhed har etableret og opretholder et sikkerhedskvalitetsstyringssystem i overensstemmelse med kravene hertil.«

§ 15. I lov nr. 251 af 6. maj 1993 om elektriske stærkstrømsanlæg og elektrisk materiel, som ændret senest ved lov nr. 458 af 10. juni 2003, foretages følgende ændring:

1. § 24, stk. 5, ophæves.

§ 16. I lov om jagt og vildtforvaltning, jf. lovbekendtgørelse nr. 114 af 28. januar 1997, foretages følgende ændring:

1. I § 50 indsættes som stk. 2:

»Stk. 2. Stk. 1 finder ikke anvendelse på bygninger eller dele af bygninger, der udelukkende anvendes til privat beboelse.«

§ 17. I lov om vandløb, jf. lovbekendtgørelse nr. 632 af 23. juni 2001, som ændret senest ved lov nr. 391 af 28. maj 2003, foretages følgende ændringer:

1. I § 61 indsættes efter stk. 1 som nyt stykke:

»Stk. 2. Stk. 1 finder ikke anvendelse på bygninger eller dele af bygninger, der udelukkende anvendes til privat beboelse.«

Stk. 2-4 bliver herefter stk. 3-5.

§ 18. I lov nr. 180 af 8. maj 1985 om okker, som ændret ved lov nr. 466 af 7. juni 2001, foretages følgende ændringer:

1. I § 10 indsættes efter stk. 1 som nyt stykke:

»Stk. 2. Stk. 1 finder ikke anvendelse på bygninger eller dele af bygninger, der udelukkende anvendes til privat beboelse.«

Stk. 2 bliver herefter stk. 3.

§ 19. I lov om råstoffer, jf. lovbekendtgørelse nr. 569 af 30. juni 1997, som ændret senest ved lov nr. 1055 af 17. december 2002, foretages følgende ændringer:

1. I § 32 indsættes efter stk. 1 som nyt stykke:

»Stk. 2. Stk. 1 finder ikke anvendelse på bygninger eller dele af bygninger, der udelukkende anvendes til privat beboelse. Stk. 1 finder tilsvarende ikke anvendelse for rum på skibe, som udelukkende anvendes til privat beboelse.«

Stk. 2-3 bliver herefter stk. 3-4.

§ 20. I lov nr. 111 af 12. marts 1988 om beskyttelse af de ydre koge i Tøndermarsken, som ændret senest ved lov nr. 392 af 28. maj 2003, foretages følgende ændringer:

1. I § 49 indsættes efter stk. 1 som nyt stykke:

Copyright © 2003 Karnov Group Denmark A/S

bestemmelse i lovgivningen om begrænsninger i administrative myndigheders adgang til at udøve kontrolbeføjelser i tilfælde, hvor der foreligger konkret mistanke om et strafbart forhold. Det gælder, hvad enten der er tale om tvangsindgreb rettet mod den, som er mistænkt, eller mod andre.

Flertallet anfører som overordnet argument, at hensynet til ikke at omgå de straffeprocessuelle regler i retsplejeloven - som indeholder regler for adgang til ransagning, beslaglæggelse mv. i forbindelse med efterforskning af strafbare forhold - indebærer, at der bør være begrænsninger i mulighederne for, at offentlige myndigheder kan foretage tvangsindgreb uden for strafferetsplejen, hvis der er konkret mistanke om, at en person har begået et strafbart forhold.

Kommissionens flertal finder, at forvaltningsmyndighedernes kontrolbeføjelser bør begrænses fra det tidspunkt, hvor en person »med rimelig grund mistænkes for at have begået et strafbart forhold«. Kommissionens flertal har i den forbindelse lagt vægt på, at dette »skæringstidspunkt« i højere grad end f.eks. tidspunktet for en myndigheds indgivelse af politianmeldelse tilgodeser borgernes retssikkerhed. En ordning, hvorefter en forvaltningsmyndighed frem til tidspunktet for indgivelse af politianmeldelse uden særlige begrænsninger skulle kunne foretage tvangsindgreb med hjemmel i de administrative kontrolbestemmelser, ville således efter flertallets opfattelse bl.a. være forbundet med en omgåelsesrisiko, idet en myndighed bevidst ville kunne udskyde tidspunktet for indgivelse af anmeldelse.

At der skal være tale om, at »en person med rimelig grund mistænkes for at have begået et strafbart forhold«, indebærer ifølge flertallet, at mistanken skal være baseret på fornødne konkrete, objektive oplysninger i den konkrete sag. En myndighed, som har mistanke om, at »der er noget galt«, vil i den forbindelse uden særlige begrænsninger kunne være berettiget til at gennemføre eller fortsætte et kontrolbesøg mv., indtil der i givet fald er tilvejebragt visse nærmere konkretiserede oplysninger om karakteren og omfanget af det eller de forhold, som mistanken angår.

Kommissionens flertal har overvejet, om de særlige begrænsninger i adgangen til at gennemføre kontrolbesøg mv. i tilfælde, hvor en person med rimelig grund mistænkes for at have begået et strafbart forhold, burde udformes således, at et tvangsindgreb i tilfælde ikke kan gennemføres, medmindre det vil kunne udelukkes, at der vil blive tilvejebragt oplysninger af betydning for bedømmelsen af den formodede lovovertrædelse.

Flertallet finder imidlertid, at en sådan bestemmelse ville føre til en retstilstand, der ikke forekommer acceptabel, idet f.eks. arbejdsmiljø-, miljø- og fødevaremyndighederne i tilfælde, hvor en borger eller en virksomhed mistænkes for et strafbart forhold, i givet fald ville være afskåret fra at gennemføre kontrolbesøg med henblik på i anledning af det samme forhold at nedlægge påbud mv. for f.eks. at standse et farligt arbejde eller en igangværende forurening eller for f.eks. at undgå salg af sundhedsfarlige fødevarer.

På den baggrund foreslår kommissionens flertal i stedet en bestemmelse, hvorefter en forvaltningsmyndighed i tilfælde, hvor en person i overensstemmelse med det anførte med rimelig grund mistænkes for at have begået et strafbart forhold, vil være berettiget til at foretage tvangsindgreb uden for strafferetsplejen, i det omfang det sker med henblik på at tilvejebringe oplysninger til brug for behandlingen af andre spørgsmål end fastsættelse af straf. Denne begrænsning indebærer, at myndighederne i de nævnte tilfælde ikke vil kunne foretage et kontrolbesøg mv., hvis formålet hermed ville være at tilvejebringe oplysninger til brug for en straffesag. Derimod kan myndighederne også i tilfælde, hvor en person med rimelig grund mistænkes for at have begået et strafbart forhold, gennemføre eller fortsætte et tvangsindgreb og dermed tilvejebringe oplysninger om det eller de forhold, som mistanken omfatter, hvis formålet er at tilvejebringe oplysningerne til brug for andet end fastsættelse af straf. Den foreslåede bestemmelse skal gælde, hvad enten der er tale om tvangsindgreb rettet mod den mistænkte eller mod andre.

Herudover foreslår kommissionens flertal en bestemmelse om, at den mistænkte kan give samtykke til fravigelse af de foreslåede begrænsninger. Flertallet bemærker i den forbindelse, at de foreslåede begrænsninger bygger på hensynet til den mistænktes retssikkerhed, således at den mistænkte med sit samtykke bør kunne ophæve de nævnte begrænsninger.

Der henvises til side 145ff i betænkningen.

Som nævnt under pkt. 1 kan et medlem af kommissionen ikke støtte flertallets forslag i sin helhed. Om flertallets forslag til regler om forholdet til strafferetsplejen ved gennemførelse af tvangsindgreb anfører medlemmet, at de foreslåede regler er for vidtgående og i forhold til i dag vil begrænse og besværliggøre myndighedernes mulighed for at varetage deres tilsyns- og kontrolopgaver. Efter medlemmets opfattelse kan konsekvenserne blive, at Arbejdstilsynet i vidt omfang vil være nødsaget til at inddrage politi- og anklagemyndighed på et meget tidligere stadie af sagsforløbet også i småsager, der i dag ofte kan klares administrativt. Medlemmet anfører i den forbindelse, at det i værste fald kan medføre, at sager ikke oplyses tilstrækkeligt eller opgives af ressourcemæssige årsager.

### 3.6.3. Justitsministeriets overvejelser

Justitsministeriet er enig med kommissionens flertal i, at hensynet til ikke at omgå de straffeprocessuelle regler indebærer, at der bør gælde særlige begrænsninger i myndighedernes muligheder for at foretage tvangsindgreb uden for strafferetsplejen, hvis der er konkret mistanke om, at en person har begået et strafbart forhold. Foreligger der en sådan mistanke, bør et tvangsindgreb som udgangspunkt ske efter retsplejelovens regler om adgang til ransagning, beslaglæggelse mv. i forbindelse med efterforskning af strafbare forhold.

Justitsministeriet kan i den forbindelse også tilslutte sig flertallets valg af »skæringstidspunkt«. Af de grunde, som er anført af kommissionens flertal, er det således også Justitsministeriets opfattelse, at forvaltningsmyndighedernes beføjelser til at gennemføre tvangsindgreb skal begrænses fra det tidspunkt, hvor en person med rimelig grund mistænkes for at have begået et strafbart forhold. Der henvises til lovforslagets § 9, stk. 1.

I overensstemmelse med opfattelsen hos kommissionens flertal må den nævnte mistanke være baseret på fornødne konkrete, objektive oplysninger i den pågældende sag. Justitsministeriet er således enig i, at det vil kunne være berettiget at gennemføre eller fortsætte et kontrolbesøg mv., indtil der i givet fald er tilvejebragt visse nærmere konkretiserede oplysninger om karakteren og omfanget af det eller de forhold, som mistanken angår. Der henvises nærmere til bemærkningerne til lovforslagets § 9.

Det forudsættes i den forbindelse, at det i almindelighed er den pågældende tilsynsmyndighed mv., der skal vurdere, om der foreligger rimelig grund til mistanke om et strafbart forhold. Spørgsmål herom skal således normalt ikke overgives til politiets stillingtagen.

Justitsministeriet er endvidere enig med kommissionens flertal i, at det ville medføre en uacceptabel retstilstand, hvis en forvaltningsmyndighed i tilfælde, hvor der foreligger den nævnte mistanke om et strafbart forhold, skulle være afskåret fra at udføre en række opgaver af væsentlig eller afgørende betydning for administrationen og kontrollen af lovgivningen mv. på det pågældende område.

Justitsministeriet kan derfor tilslutte sig flertallets forslag om, at en forvaltningsmyndighed i sager, hvor en person med rimelig grund mistænkes for at have begået et strafbart forhold, vil være berettiget til at foretage et tvangsindgreb, i det omfang det sker med henblik på at tilvejebringe oplysninger til brug for behandlingen af andre spørgsmål end fastsættelse af straf. Tilsynsmyndigheder mv. vil således - uanset at en person med rimelig grund mistænkes for at have begået et strafbart forhold - kunne gennemføre et tvangsindgreb, hvis det alene sker med henblik på at tilvejebringe oplysninger til brug for behandlingen af andre spørgsmål end fastsættelse af straf. Der henvises til lovforslagets § 9, stk. 2.

Det anførte indebærer, at en myndighed - selv om der foreligger rimelig grund til mistanke om et strafbart forhold - kan gennemføre eller fortsætte et kontrolbesøg eller andet tvangsindgreb og dermed tilvejebringe oplysninger, der vedrører det mulige strafbare forhold, hvis formålet alene er at tilvejebringe oplysningerne til brug for f.eks. spørgsmål om udstedelse af et påbud eller forbud i medfør af lovgivningen på det enkelte område, spørgsmål om tilbagekaldelse af en tilladelse mv., eller andre spørgsmål, der ikke vedrører fastsættelse af straf.

Hvis formålet ikke er at tilvejebringe oplysninger til brug for en straffesag, kan administrative myndigheder således i forbindelse med varetagelse af deres tilsyns- og kontrolopgaver mv. foretage kontrolbesøg og andre tvangsindgreb, uanset at der hermed tilvejebringes oplysninger, som også vil have betydning for behandling af eventuelle spørgsmål om fastsættelse af straf, herunder for myndighedens vurdering af, om der f.eks. ved at indgive politianmeldelse er grundlag for en videre strafferetlig forfølgning af sagen.

På den baggrund er det Justitsministeriets opfattelse, at lovforslaget vil medføre, at tilsynsmyndigheder mv. fortsat i meget vidt omfang kan gennemføre kontrolbesøg og andre tvangsindgreb, selv om der foreligger rimelig grund til mistanke om et strafbart forhold. De forskellige myndigheder vil således efter lovgivningen på det enkelte område i almindelighed have til opgave at varetage en række opgaver, der netop ikke vedrører fastsættelse af straf, og lovforslaget vil som anført ikke være til hinder for at gennemføre tvangsindgreb, hvor formålet alene er at løse sådanne kontrol- og tilsynsopgaver mv.

Lovforslaget vedrører desuden kun begrænsninger i adgangen til at gennemføre tvangsindgreb. Der er med lovforslaget ikke noget til hinder for, at den pågældende tilsynsmyndighed mv. foretager andre sagsbehandlingsskridt med det formål at behandle spørgsmål om fastsættelse af straf. I overensstemmelse hermed lægges der ikke med lovforslaget op til nogen ændring af den praksis, der eksisterer på de enkelte områder med hensyn til arbejdsfordelingen mellem tilsynsmyndigheder mv. og politiet. Også i de tilfælde, hvor lovforslaget vil afskære en tilsynsmyndighed fra selv at foretage et tvangsindgreb - og hvor et tvangsindgreb derfor i givet fald skal forestås af politiet (ofte med rettens godkendelse) efter reglerne i retsplejeloven - forudsættes det således, at der ikke sker nogen forskydning af den øvrige arbejdsfordeling mellem tilsynsmyndighederne mv. og politiet.

Det forhold, at spørgsmål om foretagelse af tvangsindgreb i visse tilfælde skal overlades til politiet, bør derfor ikke i almindelighed medføre ændringer med hensyn til, i hvilket omfang de forskellige tilsynsmyndigheder mv. - efter den praksis, der gælder på det enkelte område - f.eks. undersøger og forbereder en sag, inden sagen eventuelt overgives til politiet med henblik på stillingtagen til, om der skal rejses tiltale. Det bemærkes herved, at det ofte vil være tilsynsmyndighederne, der besidder den særlige faglige ekspertise, som der er behov for ved behandling af straffesager om

overtrædelse af lovgivningen på det enkelte forvaltningsområde. Af den grund forudsættes det også, at politiet i tilfælde, hvor et tvangsindgreb efter lovforslaget kun kan gennemføres efter reglerne i retsplejeloven, normalt vil skulle være ledsaget af repræsentanter for vedkommende tilsynsmyndighed mv. Endvidere vil sagen i disse tilfælde, når tvangsindgrebet er gennemført - i det omfang der er praksis for det på det enkelte forvaltningsområde - kunne sendes tilbage til vedkommende kontrolmyndighed mv. med henblik på yderligere sagsbehandling også af spørgsmål, der vedrører eventuel efterfølgende pålæggelse af straf.

Justitsministeriet er enig med kommissionens flertal i, at de foreslåede begrænsninger i adgangen til at gennemføre tvangsindgreb bør gælde, hvad enten der er tale om tvangsindgreb rettet mod den mistænkte eller mod andre. Justitsministeriet har i den forbindelse ligesom kommissionens flertal lagt vægt på, at hensynet til ikke at omgå retsplejelovens regler om strafferetsplejen - der indeholder bestemmelser om ransagning mv. både over for mistænkte og over for ikke-mistænkte personer - taler for at begrænse forvaltningsmyndighedernes muligheder for at kunne foretage tvangsindgreb ikke blot i forhold til en mistænkt person, men også i forhold til ikke-mistænkte personer, der indgår i sagen. Der henvises til lovforslagets § 9, stk. 3.

Endvidere kan Justitsministeriet tilslutte sig flertallets forslag om, at den mistænkte skal kunne give samtykke til at ophæve de foreslåede begrænsninger. Der henvises til lovforslagets § 9, stk. 4.

Som anført ovenfor under pkt. 3.1.2.2 finder Justitsministeriet, at de foreslåede regler om forholdet til strafferetsplejen ved gennemførelsen af tvangsindgreb ikke alene bør omfatte de typer af tvangsindgreb, som er omfattet af grundlovens § 72. Justitsministeriet finder således, at de nævnte regler også bør gælde for tvangsindgreb, som består i undersøgelse af andre lokaliteter og genstande, beslaglæggelse af andre genstande eller eftersyn og anden undersøgelse af personer.

De foreslåede bestemmelser vil i visse tilfælde kunne indebære, at en myndighed, som i forbindelse med et kontrolbesøg mv. får mistanke om et strafbart forhold, vil være afskåret fra at benytte en eventuel hjemmel i lovgivningen til umiddelbart at beslaglægge relevante bevismidler (f.eks. regnskabsbilag, andre dokumenter mv.). Myndigheden må i så fald søge at indhente vedkommendes samtykke til - uanset den opståede mistanke om strafbart forhold - at beslaglægge de pågældende effekter, jf. bestemmelsen i lovforslagets § 9, stk. 3. Hvis et sådant samtykke ikke kan opnås, forudsættes det, at myndigheden - såfremt den finder tilstrækkelig anledning til straks at tilkalde politiet med henblik på gennemførelse af en beslaglæggelse efter de straffeprocessuelle regler i retsplejeloven - vil have ret til at forblive på stedet for at sikre eventuelle beviser, indtil politiet møder frem. Bl.a. fordi den mistænkte kan give samtykke til, at den pågældende myndighed i givet fald beslaglægger bevismidler mv., må det forventes, at der alene i relativt få tilfælde - hvor mistanken vedrører mere grove lovovertrædelser - vil kunne være anledning til at tilkalde politiet.

Særligt om søfartsmyndighedernes kontrol efter søfartslovgivningen bemærkes, at det i praksis ofte ikke vil være muligt for politiet at foretage tvangsindgreb efter reglerne i retsplejeloven på skibe, der f.eks. befinder sig til søs, eller på danske skibe, der befinder sig i udenlandsk havn. Hertil kommer, at det efter omstændighederne kan være særligt indgribende over for skibet, hvis dets videre sejlads skal afvente, at politiet kommer frem til skibet og undersøger det. Økonomi- og erhvervsministeren vil derfor efter drøftelse med justitsministeren overveje, om der kan være anledning til at foreslå ændringer i søfartslovgivningen, som giver søfartsmyndighederne mulighed for i visse tilfælde at

Copyright © 2021 Karnov Group Denmark A/S

foretage tvangsindgreb på skibe, selv om betingelserne i lovforslagets § 9 ikke er opfyldt.

I tilknytning hertil bemærkes, at havmiljøloven giver hjemmel til, at forsvarsministeren og miljøministeren eller den, de bemyndiger dertil, i tilfælde af olieudslip kan foretage tvangsindgreb efter retsplejelovens regler på skibe og platforme. Miljøministeren vil efter drøftelse med justitsministeren overveje, om der kan være anledning til at foreslå ændringer i havmiljøloven, som giver myndighederne mulighed for også i visse andre tilfælde at foretage tvangsindgreb på skibe mv., selv om betingelserne i lovforslagets § 9 ikke er opfyldt.

Tilsvarende kan der gøre sig særlige forhold gældende for fiskerimyndighederne. Fødevareministeren vil derfor efter drøftelse med justitsministeren overveje, om der kan være anledning til at foreslå ændringer i fiskerilovgivningen, som giver fiskerikontrollen mulighed for i visse tilfælde at foretage tvangsindgreb på skibe, selv om betingelserne i lovforslagets § 9 ikke er opfyldt.

Som nævnt under pkt. 1 og 3.6.2 ovenfor kan ét medlem af kommissionen ikke tilslutte sig flertallets forslag i sin helhed. I den forbindelse fremhæver medlemmet særligt, at de foreslåede regler er for vidtgående og i forhold til i dag vil begrænse og besværliggøre myndighedernes mulighed for at varetage deres tilsyns- og kontrolopgaver.

Justitsministeriet skal i den forbindelse henvise til det, der er anført ovenfor. Her fremgår det bl.a. at Justitsministeriet i overensstemmelse med flertallet og flertallet af kommissionen finder, at der bør gælde særlige begrænsninger i adgangen til at gennemføre kontrolbesøg mv. uden for strafferetsplejen, hvis der foreligger rimelig grund til mistanke om et strafbart forhold. Lovforslagets regler herom indebærer ikke, at tilsynsmyndigheder mv. afskæres fra at gennemføre kontrolbesøg, hvis formålet alene er at varetage tilsyns- og kontrolopgaver på det pågældende område. Desuden forudsættes det som nævnt, at de foreslåede regler - der ligger på linie med gældende regler på en række områder - ikke vil medføre nogen forskydning af den øvrige sagsbehandling fra de enkelte tilsynsmyndigheder over til politiet.

## 4. Oplysningspligter og retten til ikke at inkriminere sig selv

### 4.1. Gældende ret

Selvinkrimineringsgrundsætningen indebærer, at en person, der er anklaget for et strafbart forhold, har ret til ikke at udtale sig om den påstående forbrydelse og til ikke at blive tvunget til at medvirke til at opklare det påståede strafbare forhold.

Grundsætningen er beskyttet i Den Europæiske Menneskerettighedskonventions artikel 6, der bl.a. er til hinder for, at administrative myndigheder anvender strafsanktionerede oplysningspligter over for en person, der er »anklaget« i konventionens forstand, med henblik på at få borgeren selv til at oplyse den påståede »forbrydelse«. Det gælder, hvad enten der er tale om afgivelse af forklaring eller om vedkommendes fremskaffelse af dokumenter mv.

Begrebet »anklage« i artikel 6 er et selvstændigt konventionsbegreb. Den Europæiske Menneskerettighedsdomstol har i sin praksis defineret »anklage« som en officiel tilkendegivelse fra den kompetente myndighed over for en person, der indeholder en beskyldning om, at den pågældende har begået et strafbart forhold.

I tilknytning hertil har Domstolen ved sin fortolkning af udtrykket »forbrydelse« navnlig lagt vægt på, hvorvidt de bestemmelser, der udgør grundlaget for forfølgningen, i det pågældende retssystem henregnes til strafferetten eller anses for at være af disciplinærretlig, forvaltningsretlig eller anden ikke-strafferetlig karakter. Der lægges

endvidere vægt på karakteren af den pågældende forseelse, navnlig om der er tale om overtrædelser af forskrifter, der påhviler bestemte persongrupper, eller overtrædelser af almene normer, der gælder for enhver. Endelig lægges der vægt på karakteren og intensiteten af den sanktion, der kan blive tale om at ikende. Den faktiske ikendte sanktion er således ikke i sig selv afgørende. Domstolen har ofte tilkendegivet, at der lægges mest vægt på de to sidstnævnte kriterier.

Det er ikke afklaret i konventionspraksis, om forbudet mod selvinkriminering i artikel 6 er til hinder for, at administrative myndigheder fortsætter behandlingen en af civil sag, f.eks. med henblik på at meddele et forbud eller et påbud, og i forbindelse hermed anvender oplysningspligter under trussel om straf mv., selv om der er blevet indledt strafforfølgning i anledning af samme forhold, f.eks. for udøvelse af virksomhed uden overholdelse af relevant lovgivning. I det omfang oplysningerne vedrører det eller de forhold, der har givet anledning til strafforfølgning, er det imidlertid nærliggende at antage, at den »anklagede« kan påberåbe sig forbudet mod selvinkriminering i artikel 6.

Forbudet mod selvinkriminering i artikel 6 kan derimod ikke antages at være til hinder for, at administrative myndigheder pålægger en person at tilvejebringe oplysninger, der kan inkriminere andre personer.

Det er ikke afklaret i konventionspraksis, om og i hvilket omfang juridiske personer kan påberåbe sig retten til ikke at udtale sig og forbudet mod selvinkriminering. Det skal dog bemærkes, at det følger af Domstolens praksis, at juridiske personer i hvert fald i et vist omfang i andre sammenhænge kan påberåbe sig artikel 6, herunder den såkaldte uskyldsformodning, retten til en rettergang inden en rimelig frist og retten til en adgang til en domstol.

På den baggrund kan det ikke udelukkes, at Domstolen vil lægge til grund, at også juridiske personer kan påberåbe sig retten til ikke at udtale og forbudet mod selvinkriminering. Det kan i den forbindelse tilføjes, at EF-domstolen ved dom af 15. oktober 2002 (C-238/99P m.fl., Limburgse Vinyl Maatschappij m.fl.) i den pågældende sag lader et selvinkrimineringsforbud gælde i forhold til juridiske personer, jf. dommens præmis 279 ff.

Selvinkrimineringsgrundsætningen har i en række tilfælde været behandlet af de danske domstole og er i et vist omfang lovfæstet i dansk ret. I retsplejelovens regler om strafferetsplejen er der således fastsat regler om, at en sigtet eller tiltalt ikke har pligt til at udtale sig om det eller de forhold, som sigtelsen eller tiltalen omfatter.

Hvad angår politiets afhøringer i forbindelse med efterforskning af strafbare forhold, fremgår det af retsplejelovens § 752, stk. 1, at en sigtet, inden vedkommende afhøres af politiet, udtrykkeligt skal gøres bekendt med sigtelsen og med, at vedkommende ikke har pligt til at udtale sig. Ved afhøringer i retten finder retsplejelovens § 752 tilsvarende anvendelse, jf. § 754. Under rettens behandling af en straffesag skal tiltalte spørges, om vedkommende er villig til at forklare nærmere om de forhold, som tiltalen angår, jf. retsplejelovens § 868 og § 928.

Endvidere fremgår det af retsplejelovens § 171 om vidnepligt, at pligt til at afgive forklaring som vidne i retten bl.a. ikke foreligger, hvis forklaringen antages at ville udsætte vidnet selv for straf eller tab af velfærd.

Uden for strafferetsplejen er der derimod ikke fastsat generelle lovbestemmelser om forbudet mod selvinkriminering, men det kan i lovgivningen på de enkelte forvaltningsområder være lagt til grund, at administrative myndigheder må afstå fra at benytte oplysningspligter, hvis der på tidspunktet for benyttelsen er mistanke om strafbare forhold.

Som eksempel på lovforarbejder, hvor dette synspunkt er afspejlet, kan bl.a. nævnes § 1, nr. 2 i L 62 af 27. oktober 1999 om ændring af lov om luftfart (vedtaget som lov nr. 346 af 17. maj 2000), der

# JAN PEDERSEN

# SKATTE- & AFGIFTS STRAFFE RET

## 4. UDGAVE

JURIST- OG ØKONOMFORBUNDETS FORLAG

Jan Pedersen

# Skatte- & afgiftsstrafferet

## 4. udgave



Jurist- og Økonomforbundets Forlag
2019

KAPITEL 5

# Skattesvig af særlig grov karakter – STRL § 289

Siden 1972 har STRL § 289 kriminaliseret skattekriminalitet af særlig grov karakter. Oprindeligt omfattede bestemmelsen alene skattesvig og smugleri af særlig grov karakter, men anvendelsesområdet er i flere omgange udvidet, senest ved L 2005.366. Bestemmelsen omfatter nu i praksis alle tilfælde af forsætlig skatte-, moms-, afgifts- og toldsvig af særlig grov karakter. Lovteknisk er bestemmelsen formuleret således, at den i STRL § 289, stk. 1, omfatter samtlige tilfælde af særligt grove overtrædelser af skatte-, told-, afgifts- eller tilskudslovgivningen, hvor gerningsmanden har haft berigelsesforsæt og under forudsætning af, at der er henvist til bestemmelsen i den underliggende materielle skatte- og afgiftsstrafferetlige lovgivning.

Bestemmelsen lyder således:

**§ 289.** Med fængsel indtil 8 år straffes den, som for derigennem at skaffe sig eller andre uberettiget vinding gør sig skyldig i overtrædelse af særlig grov karakter af skatte-, told-, afgifts- eller tilskudslovgivningen eller af § 289 a.

*Stk. 2.* Bestemmelsen i stk. 1 finder kun anvendelse, hvis der i den i stk. 1 nævnte lovgivning er henvist til denne bestemmelse.

*Stk.3.* Ved udmåling af tillægsbøde efter § 50, stk. 2, i forbindelse med overtrædelse af stk. 1, skal der lægges vægt på, om forbrydelsen er af særlig grov beskaffenhed navnlig på grund af udførelsesmåden, eller fordi forbrydelsen er udført af flere i forening, eller når et større antal forbrydelser er begået.

Bestemmelsen er placeret i Straffelovens kap. 28 om formueforbrydelser blandt traditionelle berigelsesforbrydelser som tyveri, bedrageri, underslæb etc. Bestemmelsens eksistens og rubricering som berigelsesforbrydelse er udtryk for lovgivningsmagtens skærpede kriminalpolitiske vurdering af alvorligere tilfælde af skatte- og afgiftssvig.

343

*Afsnit III – Kapitel 5*

Formuleringen af STRL § 289 er bemærkelsesværdig, idet den adskiller sig fra øvrige bestemmelser i Straffeloven ved, at gerningsindholdet ikke fremgår af ordlyden, men alene fremkommer ved henvisning fra andre bestemmelser om forsætlig skatte-, moms- og afgiftssvig i den materielle skatte- og afgiftsstrafferetlige lovgivning, som kan kvalificeres som værende af særlig grov karakter.

STRL § 289 synes efter ordlyden alene at være en særlig strafudmålingsbestemmelse, der finder anvendelse ved udmåling af en straf, der overstiger maksimum på 1 år og 6 måneders fængsel, som den materielle lovgivning om skatte-, moms- og afgiftssvig hjemler.

Den foreliggende praksis har dog stedse anvendt STRL § 289 i langt videre omfang, således at det kun er undtagelsesvist, at der udmåles en straf, som ikke kunne have været indeholdt i strafferammen for »almindelig« skatte-, afgifts- og momssvig i SKL §§ 82-83, ML § 81, stk. 3, etc. Det følger da også allerede af forarbejderne til § 289, at bestemmelsen ikke alene skal finde anvendelse i de tilfælde, hvor anklagemyndigheden skønner, at en straf, der overstiger strafmaksimum på 1 år og 6 måneders fængsel, i den underliggende skatte- og afgiftsstrafferetlige lovgivning bør komme på tale, men at den tager sigte på alle tilfælde af skatte- og afgiftssvig af så grov karakter, at samfundets reaktion bør give sig udslag i en anvendelse af Straffeloven.[1] Bestemmelsen har således et selvstændigt gerningsindhold, der må holdes adskilt fra SKL § 82-83, ML § 81, stk. 3, og alle øvrige skatte- og afgiftssvigsbestemmelser, hvilket bl.a. giver sig udslag i, at bestemmelserne i STRL § 21 om forsøg og STRL § 23 naturligvis kan anvendes i tilslutning til STRL § 289.

Det væsentligste problem ved beskrivelse af § 289's anvendelsesområde er angivelsen af kravene til, at skatte- og afgiftssvigen er af »særlig grov karakter«. Da retningslinjerne for denne afgrænsning mellem svigsbestemmelserne i den skatte- og afgiftsstrafferetlige lovgivning og STRL § 289 ikke fremgår af bestemmelsens ordlyd eller forarbejder, kan den alene udledes af praksis.[2] En gennemgang af den foreliggende praksis viser, at unddragelsens størrelse er helt afgørende for bestemmelsens anvendelse.[3]

---

1. Folketingstidende 1971-72 Tillæg A, sp. 237.
2. Under Folketingets behandling af STRL § 289 diskuteredes, hvorvidt bestemmelsen skulle udformes således, at den indeholdt momenter til belysning af, hvornår en skattesvig skulle kvalificeres som værende af særlig grov karakter, f.eks. det besvegne beløbs størrelse, antallet af strafbare forhold eller lignende. Konklusionen af disse overvejelser blev imidlertid alene, »at bestemmelsens anvendelsesområde bedst kan fast-

344

Case 1:23-cv-02508-NRB    Document 159-62    Filed 04/07/25    Page 25 of 87

Det fremgår af bestemmelsens ordlyd og forarbejder, at gerningsindholdet indeholder en retlig standard, hvorfor afgrænsningen mellem svigsbestemmelserne i den skatte- og afgiftsstrafferetlige lovgivning og STRL § 289 ikke kan eller skal fastlægges én gang for alle. I stedet må sondringen følge samfundsudviklingen navnlig i henseende til skatte- og kriminalpolitikken. Siden 1988 er bestemmelsen navnlig anvendt, når den unddragne eller tilsigtet unddragne skat overstiger 500.000 kr.[4]

Jf. TfS 1992.306 V: unddragelse 500.900 kr. og domfældelse efter STRL § 289 og TfS 1992.355 V: unddragelse 440.885 kr. og domfældelse efter dagældende SKL § 13, stk. 1, samt TfS 1997.436 Ø: unddragelse 457.583 kr. og domfældelse efter dagældende SKL § 13, stk. 1. I TfS 1999.866 Ø var rejst tiltale for overtrædelse af STRL § 289 for unddragelse af 610.368 kr. Da unddragelsen imidlertid måtte antages at være noget under 500.000 kr., blev tiltalte alene dømt for overtrædelse af dagældende SKL § 13, stk. 1.

Den forløbne pengeforringelse siden 1988 har derfor udvidet bestemmelsens anvendelsesområde, således at en større andel af sager om skattesvig kvalificeres efter STRL § 289.

Bestemmelsen omfatter som nævnt også moms- og afgiftssvig af særlig grov karakter, hvor det tilsvarende er afgørende, om unddragelsen overstiger 500.000 kr. Da STRL § 289 imidlertid kvalificerer de forskellige former for skatte-, moms- og afgiftssvig, strafforfølges disse individuelt, og ved opgørelsen af, om en unddragelse overstiger 500.000 kr., afgøres dette for hver unddragelse for sig. Er der udeholdt en omsætning og unddraget indkomstskat med 400.000 kr., unddraget moms med 200.000 kr. og måske øvrige afgifter med 250.000 kr., er det uden betydning, at den samlede unddragelse overstiger 500.000 kr. I stedet anvendes særbestemmelserne om skatte-, moms og afgiftssvig. STRL § 289 finder således alene anvendelse i det omfang, hvor unddragelse overstiger 500.000 kr.

### Den samlede opgørelse af unddragelsen

Ved afgørelsen af, om en unddraget skat overstiger 500.000 kr., foretages efter praksis i væsentlig grad en sammenlægning, dels af ligeartede unddragelser, der vedrører flere indkomstår, dels af unddragelser, der er resultatet af

lægges i retspraksis, der dannes uden hensyn til en opregning af eksempler på kvalificerede forhold«, jf. Folketingstidende 1971-72 Tillæg A, sp. 237.

3.  Jf. Jan Pedersen U 1984B.30 ff.
4.  Se hertil Rigsadvokatens skrivelse af 28. marts 1988 til Statsskattedirektoratet, hvor den daværende grænse blev forhøjet fra 200.000 kr. til 500.000 kr., jf. Søren Vilhelmsen i TfS 1989,144 og TfS 1989.150 Ø.

345

*Afsnit III – Kapitel 5*

udeholdelser af forskellige former for skattepligtige indkomster. Det er i den forbindelse uden betydning, om strafansvaret for den omhandlede unddragelse følger af SKL § 83 eller § 83, når blot de skete unddragelser er resultatet af ligeartede udeholdelser og har en vis tidsmæssig sammenhæng.

TfS 1993.232 Ø, hvor en lang række mindre unddragelser hidrørende fra udeholdelser af forskellige former for skattepligtige indkomster i flere indkomstår samlet oversteg den dagældende 200.000 kr.sgrænse og derfor blev henført efter STRL § 289.

SKM 2012.287 V, hvor der var udeholdt lønindkomst og bonus for indkomstårene 2005-2009, og hvor det blev statueret, at der var tale om en kontinuerlig og konsekvent udeholdelse af indtægter fra samme indkomstkilde, hvorfor den samlede sum af de unddragne skatter og arbejdsmarkedsbidrag udgjorde mere end 500.000 kr. Vestre Landsret fandt derfor, at forholdene kunne henføres under STRL § 289.

SKM 2015.35 V, hvor en række forskelligartede indkomster var udeholdt i flere indkomstår. Landsretten fandt efter forholdenes karakter og unddragelsernes omfang, at forholdene samlet henførtes under STRL § 289.

Dette er da også velbegrundet, når udeholdelserne omfatter en tilbagevendende indkomst, når udeholdelserne er særlig systematiske, ensartede eller i øvrigt er af graverende art. I så fald er det berettiget at anse unddragelserne som et resultat af én forbrydelse omfattende en række enkelthandlinger. Det bør dog hævdes, at STRL § 289 ikke kan anvendes på klart adskilte udeholdelser, idet der i så fald foreligger to eller flere særskilte forbrydelser, der er omfattet af svigsbestemmelserne i den skatte- og afgiftsstrafferetlige lovgivning. Det vil navnlig være tilfældet, såfremt udeholdelserne ikke vedrører samme indtægtsaktiviteter og er adskilte af mellemliggende indkomstår, hvori der ikke foretages udeholdelser. Tilsvarende kan rejses det spørgsmål, om der i henseende til kvalificeringen efter STRL § 289 kan ske sammenlægning af unddragelserne, når den sigtede har medvirket til flere skatteyderes unddragelse. Også i så henseende må de strafbare medvirkensforhold bedømmes i henseende til, om de indgår i en samlet unddragelse, eller om de udgør uafhængige og særskilte unddragelser. Det kan vel drøftes, i hvilket omfang der kan ske en samlet opgørelse af unddragelserne i flere selskaber, der ejes af samme hovedaktionær, og hvor denne pådrages et personligt strafansvar herfor, jf. nedenfor p. 140.

En sammenlægning synes nærliggende, hvis udeholdelserne stammer fra samme indkomstskabende aktivitet, der kontinuerligt er drevet i flere selskaber. Den hovedaktionær, der udeholder en indkomst i et selskab og fortsætter hermed i et andet selskab, når det første selskab er ophørt ved konkurs, må

346

således påregne, at selskabernes samlede unddragelse lægges til grund ved afgørelen af, om 500.000 kr.sgrænsen er overskredet.

I SKM 2008.647 V blev en hovedaktionær pålagt ansvar efter STRL § 289 for overtrædelser, som fortløbende var sket i flere individuelle selskaber, og som hver især ikke oversteg »500.000 kr.'s grænsen«.

Hidtil har praksis kun helt undtagelsesvist udmålt en straf ved overtrædelse af STRL § 289, der overskred den maksimale straf efter den underliggende lovgivning om skatte- og afgiftssvig, som frem til 2005 var 2 års fængsel. Ved L 2005.1000 blev strafferammen reduceret til højst 1 år og 6 måneders fængsel, således at anvendelsesområdet for STRL § 289 er udvidet.

Selv om unddragelsens størrelse som hovedregel er afgørende for, om en forsætlig skattesvig kan kvalificeres som grov skattesvig omfattet af STRL § 289, er det dog givet, at der ved kvalificeringen kan indgå øvrige faktorer. Skærpende omstændigheder så som unddragelsens klarhed, forsættets styrke, unddragelsens karakter, unddragelsens gennemførelse, unddragelsernes antal etc. kan navnlig tillægges vægt. Dette er angivet direkte i Rigsadvokatens skrivelse af 28.3.1988, jf. TfS 1989.144. Det fremgår heraf, at STRL § 289 navnlig aktualiseres, hvis unddragelsen er gennemført systematisk eller på en måde, som gør opdagelsen særlig vanskelig. I praksis har domstolene dog været utilbøjelige til at lægge vægt på sådanne andre omstændigheder, idet det har været afgørende, om unddragelserne er over 500.000 kr.

I TfS 1989.150 Ø fik anklagemyndigheden ikke medhold i sin påstand om domfældelse efter STRL § 289, idet retten ikke fandt, at de strafbare forhold var af en sådan grovhed, at STRL § 289 var anvendelig. Tiltalte blev herefter dømt for overtrædelse af dagældende SKL § 13, stk. 1. Det fremgår ikke af dommen, om denne bedømmelse skyldtes en almindelig vurdering af karakteren af de strafbare forhold eller den omstændighed, at unddragelsen på gerningstidspunktet var omfattet af dagældende praksis for anvendelse af STRL § 289.

Tilsvarende TfS 1997.436 Ø, hvor udeholdelsen androg 457.583 kr., og hvor anklagemyndigheden heller ikke fik medhold i anvendelse af STRL § 289.

Omvendt vil den realiserede skatte- eller afgiftssvig kunne være af en sådan mindre graverende karakter, at den ikke kan betegnes som grov skatte- eller afgiftssvig, selv om unddragelsen overstiger 500.000 kr. Lavere grader af forsæt, enkeltstående udeholdelser, udeholdelser af tvivlsomt skattepligtige indtægter, udeholdelser tilskyndet af andre etc. vil således efter omstændighederne kunne være momenter, der tilsiger, at skattesvigen bør anses for omfattet af reglerne for »almindelig« skatte- og afgiftssvig. Også på dette område

347

*Afsnit III – Kapitel 5*

har domstolene dog været utilbøjelige til at lægge vægt på konkrete omstæn-digheder.

500.000 kr.'s grænsen er også som udgangspunkt afgørende for, om et medvirkensforhold kan kvalificeres efter STRL § 289. Medvirkes der således til unddragelse af mere end 500.000 kr., pålægges ansvaret efter STRL § 289. Der er dog næppe tvivl om, at kvalificeringen af et medvirkensansvar efter STRL § 289 i højere grad sker individuelt ud fra en samlet bedømmelse af den medvirkendes forhold. Det erindres, at medvirkensansvaret kan pålægges efter STRL § 289, selv om hovedmanden (skatteyderen) ikke har pådraget sig strafansvar eller dømmes efter en anden bestemmelse f.eks. SKL § 82.[5]

I TfS 1992.471 Ø havde en statsautoriseret revisor givet urigtige oplysninger om afskriv-ningsadgangen til en række kommanditister, hvorved disse blev i stand til at unddrage godt 1 mio. kr. Revisoren blev fundet skyldig i medvirken til kommanditisternes skatteunddra-gelser, men Østre Landsret gav ikke anklagemyndigheden medhold i, at revisorens skatte-svig var omfattet af STRL § 289. Revisoren blev derefter dømt for overtrædelse af dagæl-dende SKL § 13, stk. 1, jf. STRL § 23 bl.a. under henvisning til, at forholdet efter en sam-let bedømmelse ikke var af en så grov karakter, at det kunne henføres under STRL § 289. Der var herudover konkret lagt vægt på en svingende praksis med hensyn til de omhandle-de afskrivningsregler.

*Sanktionering efter STRL § 289*

STRL § 289 hjemler fængselsstraf i indtil 8 år, og strafudmålingen sker på grundlag af strafferettens almindelige kriterier efter en konkret vurdering, jf. STRL § 80. I praksis er navnlig unddragelsens størrelse bestemmende for fængselsstraffens længde, jf. ovenfor p. 178.

Efter praksis udmåles samtidig en tillægsbøde efter STRL § 50, stk. 2, der som udgangspunkt udmåles som 1 x den unddragne skat. Ved L 2012.431 er stk. 3 indsat, hvorefter der i særlige tilfælde kan udmåles en skærpet tillægs-bøde, når forbrydelsen er af særlig grov beskaffenhed navnlig på grund af ud-førelsesmåden, eller fordi forbrydelsen er udført af flere i forening, eller når et større antal forbrydelser er begået. Det fremgår af forarbejderne, at den sædvanlige tillægsbøde forhøjes med 20 %. Det fremgår ligeledes, at de om-stændigheder ved den foretagne unddragelse, som indgår i vurderingen ved udmåling af tillægsbøden, er f.eks. udførelsesmåden gennem en planlægning, der tilsigter at vanskeliggøre opklaring af unddragelsen. Placering af indestå-ende i udenlandske pengeinstitutter mv., som skattemyndighederne ikke kan

5.    Jf. ovenfor p. 106.

348

indhente oplysninger fra, må anses for at være en manøvre, der tilsigter at vanskeliggøre opklaringen. Af andre vigtige strafskærpende omstændigheder kan nævnes, at der er flere gerningsmænd, f.eks. i forbindelse med stråmandsvirksomhed, tale om særlig planlægning i øvrigt eller tale om overtrædelse af flere skatte- og afgiftslove.[6]

---

6. FT 2011-12, lovforslag nr. 109 Specielle bemærkninger Ad § 5.



# Særlov - Samarbejdet med særmyndigheder i særlovssager

**Kilde:** Rigsadvokatmeddelelsen

**Emner:** told skat moms mv; påtale og påtaleundladelse; kompetence forelæggelse underretning; erhvervsforhold; fiskeri miljø landbrug jagt

**Dato:** 16.7.2014

**Offentlig Tilgængelig:** Ja

**Status:** Gældende

**Udskrevet:** 14.2.2025

# Indholdsfortegnelse

Samarbejdet med særmyndigheder i særlovssager                                          3

1. Overblik og tjekliste                                                              3

2. Politiets efterforskning og sagsbehandling                                        3

3. Forberedelse                                                                      3

3.1. Anmeldelse indgivet af særmyndigheden                                           3

3.1.1. Forelæggelse for statsadvokaten ved uenighed om tiltalespørgsmålet            3

3.2. Anmeldelse ikke indgivet af særmyndigheden                                      3

3.2.1. Forelæggelse for særmyndigheden                                               3

3.2.2. Forelæggelse for statsadvokaten ved uenighed om tiltalespørgsmålet            4

3.3. Påtalekompetence, herunder kompetence til at opgive påtale                      4

4. Jura                                                                              4

5. Straf og andre retsfølger                                                         4

6. Efter dom                                                                         4

6.1. Underretning af særmyndigheden                                                  4

6.2. Underretning af statsadvokaten                                                  4

7. Love og forarbejder                                                               5

# Samarbejdet med særmyndigheder i særlovssager

Version 16. juli 2014

## *1. Overblik og tjekliste*

## *2. Politiets efterforskning og sagsbehandling*

# 3. Forberedelse

# 3.1. Anmeldelse indgivet af særmyndigheden

# 3.1.1. Forelæggelse for statsadvokaten ved uenighed om tiltalespørgsmålet

Når der i en sag om overtrædelse af en særlov indgives politianmeldelse af den offentlige myndighed, som er tillagt kontrolopgaver eller som i øvrigt har ansvaret for lovgivningen på det pågældende område, skal man være opmærksom på, at hvis der er uenighed mellem politi og særmyndigheden om afgørelsen af tiltalespørgsmålet eller om udformningen af tiltalen, skal sagen forelægges for statsadvokaten. Sagen forelægges herefter ved en begrundet indstilling til tiltalespørgsmålet.

Særmyndigheden skal have lejlighed til at komme med en udtalelse, før sagen forelægges for statsadvokaten. I praksis kan dette gøres ved, at man sender en agterskrivelse til særmyndigheden og giver denne en passende frist til at komme med en udtalelse.

Hvis der – efter anmeldelse er indgivet – fremkommer nye oplysninger i sagen evt. under en afhøring eller i øvrigt under efterforskningen, og myndigheden ikke kan antages at være bekendt med de oplysninger, skal myndigheden have lejlighed til at udtale sig herom, før politikredsen træffer afgørelse om tiltalespørgsmålet. Se om forelæggelse for særmyndigheden pkt. 3.2.1.

# 3.2. Anmeldelse ikke indgivet af særmyndigheden

# 3.2.1. Forelæggelse for særmyndigheden

I sager, der er anmeldt eller i øvrigt kommet til politiets kendskab uden om vedkommende særmyndighed, skal der indhentes en udtalelse fra særmyndigheden, inden der træffes afgørelse om tiltalespørgsmålet.

Anklagemyndigheden skal ved høring af særmyndigheden præcisere høringstemaet, herunder hvilke konkrete spørgsmål man ønsker besvaret. Spørgsmålene skal vedrøre sagens fakta, og der må ikke stilles spørgsmål, som lægger op til en bevisvurdering.

Hvis der – efter udtalelse af særmyndigheden er indhentet – fremkommer nye oplysninger i sagen evt. under en afhøring eller i øvrigt under efterforskningen, og myndigheden ikke kan antages at være bekendt med disse nye oplysninger, skal myndigheden have lejlighed til på ny at udtale sig, før politikredsen træffer afgørelse om tiltalespørgsmålet.

Se i øvrigt Rigsadvokatmeddelelsens afsnit om Forelæggelse og indberetning mv.

## 3.2.2. Forelæggelse for statsadvokaten ved uenighed om tiltalespørgsmålet

Hvis det på baggrund af udtalelsen indhentet fra særmyndigheden kan konstateres, at der er uenighed mellem politi og særmyndigheden om afgørelsen af tiltalespørgsmålet eller om udformningen af tiltalen, skal sagen forelægges for statsadvokaten. Se i øvrigt pkt. 3.1.1.

## 3.3. Påtalekompetence, herunder kompetence til at opgive påtale

Ved uenighed mellem politidirektøren og særmyndigheden om påtaleopgivelse er det imidlertid statsadvokaten, der har kompetence til at påtaleopgive sagen.

Det er politidirektøren, der som udgangspunkt har påtalekompetencen. Statsadvokaten kan dog have påtalekompetencen i visse sager i henhold til særlovgivningen.

## 4. Jura

## 5. Straf og andre retsfølger

## 6. Efter dom

## 6.1. Underretning af særmyndigheden

Snarest muligt efter afslutningen af en sag, der er rejst efter anmeldelse fra en særmyndighed, skal myndigheden have underretning om sagens udfald. Det samme gælder i sager, hvor anklagemyndigheden i øvrigt har indhentet en udtalelse fra særmyndigheden.

Underretningen skal ske i så god tid, at den pågældende myndighed får lejlighed til at tage stilling til spørgsmålet om anke inden ankefristens udløb.

Man skal være opmærksom på, at der indenfor forskellige områder kan være særlige ordninger/retningslinjer vedrørende underretning af en (ansættelses-)myndighed, herunder retningslinjer om indberetning af domme, der frakender retten til at udøve virksomhed, som kræver en særlig offentlig autorisation eller godkendelse. Se nærmere om sådanne ordninger i afsnittene om hvert enkelt sagskategori.

Se i øvrigt Rigsadvokatmeddelelsens afsnit om Forelæggelse og indberetning mv.

## 6.2. Underretning af statsadvokaten

Hvis en sag har været forelagt statsadvokaten inden tiltalerejsning, skal denne altid underrettes om sagens udfald, inden udløbet af ankefristen eller fristen for indgivelse af ansøgning om anketilladelse med indstilling om ankespørgsmålet.

## 7. Love og forarbejder

HANS GAMMELTOFT-HANSEN

# Strafferetspleje

# I

Grundbegreber – Bevis

Domstolene – Påtalen

JURIST- OG ØKONOMFORBUNDETS FORLAG

At anklageren skal vurdere spørgsmålet om påtale eller påtaleopgivelse under denne synsvinkel, indebærer, at han i det hele skal tænke sig i dommerens sted. Der er således ikke plads for hans egne opfattelser af, hvad der er strafværdigt eller ej, såfremt de afviger fra rettens forventede vurdering. Ligeledes må anklageren foregribe anvendelsen af bevissætningen »in dubio pro reo« og indbefatte denne grundsætning i sin egen vurdering af sagens bevis.

At anklageren skal tænke sig i dommerens sted betyder endvidere, at han – ligesom en dommer – skal nå til et bestemt resultat af sin vurdering; han kan ikke nøjes med at konstatere, at der er omstændigheder, som peger mod domfældelse, men andre (af tilsvarende styrke), som peger mod frifindelse. At drøfte, hvorvidt der består en påtalepligt for anklagemyndigheden i sådanne tvivlstilfælde, er derfor for så vidt meningsløst. Reglen om, at anklageren skal vurdere påtalespørgsmålet, som sad han selv til doms – og under anvendelse af bevisreglen in dubio pro reo – indebærer principielt, at hans vurdering ikke bør slutte som et uafklaret spørgsmål, selv om sagen i øvrigt stiller sig kompliceret.

I visse tilfælde kan der dog være grund til at fremme sagen, selv om der foreligger så megen tvivl hos anklagemyndigheden, at en fældende dom kun fremtræder som en mulighed. Dette gælder først og fremmest i tilfælde, hvor en afgørelse baseret på offentlig forhandling er særligt påkrævet, f.eks. straffesager mod politiet eller andre embedsmænd. Men også andre tilfælde kan nævnes. Drejer det sig til eksempel om en meget alvorlig forbrydelse, hvor hele sagen står og falder på et vanskeligt spørgsmål om nødværge, eller på om et afgørende bevis skal accepteres eller ej, bør sagen fremmes til dom – selv om denne dom måtte blive frifindende. En rimelig kompetencefordeling mellem anklagemyndigheden og domstolene tilsiger, at afgørelser med vidtrækkende konsekvenser eller af meget vanskelige spørgsmål henhører under domstolene. Heri ligger også, at særligt indviklede eller uafklarede spørgsmål om straffebestemmelsernes fortolkning (subsumptionsspørgsmål) bør indbringes for domstolene. Drejer det sig om ny og måske mindre præcist udformet lovgivning, vil det endda være reglen, at anklagemyndigheden indbringer en række sager for domstolene – og ofte søger den ført igennem til Højesteret – for at få afklaret bestemmelsernes nærmere forståelse og rækkevidde.

Ved lov nr. 385/1987 om bekæmpelse af økonomisk kriminalitet blev der skabt mulighed for at anvende påtaleopgivelse i noget videre omfang end de principper, der er skildret ovenfor. Efter § 723 stk. 3 vil (hel eller delvis) påtaleopgivelse kunne finde sted, såfremt vanskeligheder, omkostninger og behandlingstider ved sagens gennemførelse ikke står i rimeligt forhold til sagens betydning og den forventelige straf. Bestemmelsen er nærmere omtalt I, s.

186

---

195 f. Selv om bestemmelsen også omfatter tiltalefrafald, vil (og bør) den i praksis navnlig give sig udslag i påtaleopgivelse. Dette hænger sammen med, at anklagemyndigheden oftest på et ret tidligt stadium må tage stilling til, om efterforskningen bør begrænses til visse forhold for at fremskynde behandlingen af sagen. I denne fase, hvor der altså normalt ikke foreligger tilstrækkeligt efterforskningsmæssigt grundlag for, at tiltale kunne have været rejst, må påtaleopgivelse anvendes, ikke tiltalefrafald med den heri tilkendegivne formodning om sigtedes skyld i de forhold, der omfattes af påtaleundladelsen (jf. I, s. 190).

# C. Tiltalefrafald (opportunitetsprincippet)

I det omfang påtalen ikke skal opgives, kunne det antages, at anklagemyndigheden var forpligtet til at indbringe alle sager for domstolene. Hvis der da forelå formildende omstændigheder m.v., kunne retten tage dette i betragtning ved strafudmålingen, eventuelt lade straffen bortfalde helt, jf. strfl. kap. 10, navnlig § 84. Et sådant system giver ikke anklagemyndigheden adgang til at udøve noget skøn over strafforfølgningens rimelighed eller hensigtsmæssighed; det kan siges at hvile på et *legalitetsprincip* (jf. I, s. 62).

Legalitetsprincippet findes i både en positiv og en negativ udformning. I stats- og forvaltningsretten anvendes udtrykket i den positive betydning, hvorefter myndighedernes handlinger, herunder især de retlige bindende beslutninger, skal have hjemmel i lov; inden for straffeprocessen kendes dette hjemmelskrav navnlig på tvangsindgrebenes område (jf. II, kap. 5). I sin negative udformning betyder legalitetsprincippet, at der kræves lovhjemmel for myndighedernes undladelse af at gribe ind i tilfælde, hvor loven ellers normalt foreskriver indgriben. I læren om påtalen anvendes legalitetsprincippet i denne negative udformning.

I modsætning til legalitetsprincippet bygger dansk strafferetspleje på et system, hvorefter anklagemyndigheden har ret vidtgående beføjelser til at inddrage hensigtsmæssigheds- og billighedsovervejelser i afgørelsen af tiltalespørgsmålet. Man taler her, til forskel fra legalitetsprincippet, om et *opportunitetsprincip* (jf. I, s. 63).

Når de to principper opstilles som modsætninger, må det tages med det forbehold, at der i praksis ikke kan drages nogen aldeles skarp sondring mellem legalitet og opportunitet (*absolut* contra *relativ* påtalepligt). Også i de tilfælde, hvor påtalen opgives på grund af sin forventede uigennemførlighed, vil

187

der indgå mere skønsmæssige vurderinger i afgørelsen, og spørgsmålet om forfølgningens hensigtsmæssighed kan ikke holdes ude herfra. Der er altså ikke tale om noget klart enten/eller. Hermed er der dog ikke givet nogen begrundelse for en bredere og mere vidtgående hensyntagen til det hensigtsmæssige. Begrundelsen for opportunitetsprincippet må søges på andre fronter.

For den retspolitiske vurdering går den afgørende skillelinie næppe så meget mellem den absolutte og den af visse undtagelser modificerede påtalepligt. Hvor sådanne undtagelser er *klart afgrænset i loven* (se til eks. § 723 stk. 1 nr. 2 og 3), udgør de i realiteten blot et særligt led i den materielle strafferets sanktionsbestemmelser; se også ovenfor om legalitetsprincippet i dets negative udformning. Den betydningsfulde fravigelse fra de almindelige principper for kompetencefordelingen mellem domstole og anklagemyndighed opstår først, når der tillægges anklagemyndigheden en *skønsmæssig* beføjelse til at frafalde tiltalen. I sådanne beføjelser ligger der en accept af, at strafforfølgning kan gøres til genstand for hensigtsmæssigheds- og billighedsovervejelser i langt videre omfang end det, der allerede findes nedlagt i de materielle straffebestemmelser.

Som i et samlet hierarki af anklagemyndighedens beføjelser i betydeligt omfang af en sådan skønsmæssig karakter. – Terminologisk er opportunitetsprincip/legalitetsprincip derfor en mere dækkende betegnelse end relativ og absolut påtalepligt, som snarere leder tanken hen på den helt undtagelsesfri ctr. den modificerede påtalepligt. Opportunitetsprincippet viser derimod hen til, at hensigtsmæssigheds- og billighedssynspunkter kan være afgørende for strafforfølgningen; dette udtryk er derfor også mere dækkende – og i hvert fald bedre indarbejdet – end betegnelsen fakultativ tiltalerejsning, som ligeledes har været bragt i forslag.

Opportunitetsprincippets anvendelse i strafferetsplejen er et af de områder, hvor sammenhængen mellem processen og den materielle rets *strafteorier* træder tydeligst frem. Den repressiv opfattelse af straffens formål og funktion er historisk knyttet sammen med legalitetsprincippet. Straffens gengældelse skal være forbrydelsens konsekvens, uden inddragelse af hensigtsmæssighedsbetragtninger. – På den anden side åbner netop den repressive opfattelse rum for den specielle gruppe tiltalefrafald, der meddeles under hensyn til, at selve det strafbare hændelsesforløb allerede i sig selv har påført den sigtede betydelige lidelser (f.eks. fordi hans nærmeste omkommer, eller han selv invalideres i forbindelse med en færdselslovovertrædelse).

Også en stærk accentueret opfattelse af straffens generalpræventive funktion kan føre til skepsis over for en udstrakt anvendelse af opportunitetsprincippet. Derimod vil specialpræventive synspunkter støtte princippet, især når tiltalefrafaldet knyttes sammen med adgangen til at stille vilkår (jf. I, s. 201 ff). Herved opnås der mulighed for at sætte ind med individualiserende foranstaltninger allerede i påtalefasen.

Opportunitetsprincippets *fordele* er dels af kriminalpolitisk og dels af procesøkonomisk art. Som et kriminalpolitisk instrument kan tiltalefrafaldet anvendes til *generelle justeringer* af det strafværdiges område. Af- eller nedkriminalisering ad lovgiv-

ningsvejen er erfaringsmæssigt en kompliceret og langtrukken proces. Tilsvarende ændringer gennem domstolenes praksis lader sig kun vanskeligt og sjældent gennemføre. Derimod har tiltalefrafaldet vist sig som en smidig og hensigtsmæssig måde at tilpasse strafforfølgningen i takt med ændringer i det almindelige syn på strafværdigheden af bestemte handlinger.

Samtidig kan tiltalefrafaldet – som nævnt – anvendes til allerede *at strafforfølgnin*gens tidlige stadier at opnå billighed og *individualisering* i reaktionssystemet. Særlige reaktioner over for bestemte grupper af lovovertrædere (f.eks. unge) og hensyntagen til almindelig humanitet i den konkrete sag kan gennemføres også ved domstolene, især i form af betinget dom; humanitetshensyn kan endvidere efterfølgende føre til benådning. Men ved at anvende tiltalefrafald opnår man en endnu højere grad af smidighed og mildhed, idet de pågældende fritages ikke blot for straffen, men også for den mest belastende del af strafforfølgningen, samt for domfældelsens eventuelle senere gentagelsesvirkning.

Sammen med de summariske afgørelsesformer (se III, kap. 3 og 4) er opportunitetsprincippet af den største *procesøkonomiske* betydning. Udskillelse af bagatelforseelser medvirker til en bedre udnyttelse af retsvæsenets ressourcer. Det samme gælder udskillelse af sådanne accessoriske lovovertrædelser, som ikke ville få indflydelse på indholdet eller omfanget af en sanktion, der alligevel iværksættes (jf. I, s. 207). – Synspunkter af denne art tillægges en stedse større vægt såvel i civil- som i strafferetsplejen.

En udvidet adgang til at anvende tiltalefrafald (og påtaleopgivelse) af procesøkonomiske og ressourcemæssige grunde er hjemlet i § 723 stk. 3, hvorefter statsadvokaten (og i visse tilfælde politimesteren) helt eller delvis kan undlade at påtale, såfremt sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, der ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt, se nærmere I, s. 195 f.

En udstrakt anvendelse af opportunitetsprincippet rummer visse ulemper. For det første skaber den omstændighed, at anklagemyndigheden i en vis forstand kan siges at udøve domstolsfunktioner, men uden at arbejde under sædvanlige domstolsgarantier, en risiko for *usaglige afgørelser.* For så vidt er den blotte antagelse af, at noget sådant kan finde sted, en ulempe, uanset om realiteterne svarer til antagelsen.

En anden indvending består i risikoen for en betydelig *uensartethed* i påtalepraksis blandt de forskellige anklagere.

Ingen af de nævnte indvendinger bør dog overspændes. Usaglige afgørelser i form af personlig favoritisme kunne langt snarere tænkes inden for påtaleopgivelsernes område, hvor anklagemyndighedens konkrete bevisvurdering formentlig i højere grad unddrager sig en efterprøvelse end begrundelserne for meddelte tiltalefrafald. Uensartethed i påtalepraksis kan naturligvis forekomme, især i politisager; men den begrænses af den overordnede anklagemyndigheds instruktoriske forskrifter og udviser i det hele næppe større udsving, end også byretsbehandlingen lejlighedsvis kan gøre.

Tilbage står dog et klart behov for at afbalancere den vidtgående anvendelse af opportunitetsprincippet med *kontrol- og korrektionsmuligheder,* som begrænser risikoen for usaglige tiltalefrafald til det minimale.

Den væsentligste garanti består i kompetenceforskrifterne og den *hierarkiske kon-*

Case 1:23-cv-02508-NRB   Document 159-62   Filed 04/07/25   Page 38 of 87

*trol* sammenholdt med selve *embedstraditionen* (i Norge har man drøftet muligheden af at styrke denne kontrolform ved at gøre anklagemyndigheden til et kollegialt organ). Anklagemyndighedens opbygning - kombineret med reglerne om klagevejledning og rekurs - indebærer, at beslutninger om tiltalefrafald i tvivlsomme tilfælde oftest vil have passeret flere instanser. Allerede herved begrænses de praktiske muligheder for usaglighed og favoritisme betydeligt. At anklagemyndighedens chef formelt er den politisk udpegede justitsminister, kunne vel i ekstreme tilfælde reducere selve embedstraditionens positive indflydelse; men samtidig åbnes der herved mulighed for i sidste instans at gøre et politisk og parlamentarisk ansvar gældende.

Hertil føjer sig *ombudsmandens* kontrolmyndighed. Som anført (I, s. 153) kan også anklagemyndighedens virksomhed gøres til genstand for ombudsmandens undersøgelse og kontrol.

En egentlig *domstolskontrol* findes ikke i dansk ret, bortset fra de tilfælde, hvor der i medfør af § 723a sættes vilkår for tiltalefrafaldet. Ej heller er der indrømmet den *forurettede* (eller andre) nogen beføjelse til at indbringe en sag, der af anklagemyndigheden er afgjort med tiltalefrafald, for retten.

Et vigtigt led i kontrollen med påtalepraksis er muligheden for i almindelighed at gøre sig bekendt med afgørelserne. For at tilgodese dette hensyn foretager anklagemyndigheden en *offentliggørelse* i årsberetninger af de væsentligste elementer i den aktuelle tiltalefrafaldspraksis.

Et særligt problem - af mere principiel end praktisk betydning - kan knytte sig til tiltalefrafald. I lighed med domfældelse indebærer tiltalefrafald, at den pågældende *anses for skyldig* i det påsigtede forhold. Da tiltalefrafaldet ikke kræver noget egentligt samtykke fra den sigtede, kunne det forekomme, at personer, der anser sig for ikke-skyldige og ønsker dette godtgjort gennem en frifindelse, påtvinges tiltalefrafaldet med den deri liggende skyldformodning. Problemet er dog nævnt ikke særlig praktisk. Ved tiltalefrafald med vilkår efter § 723a kræves sigtedes tilståelse, jf. § 723a stk. 3. I andre tilfælde forudsættes det i praksis, at sigtedes skyld er utvivlsom (eventuelt i form af en tilståelse), eller at alle de faktiske omstændigheder i forbrydelsens gerningsindhold dog er erkendt; normalt vil man næppe meddele tiltalefrafald uden sigtedes indforståelse med denne afgørelsesmåde. Problemet har imidlertid foreligget, i hvert fald i et enkelt tilfælde fra de senere år (april 1982), hvor justitsministeren meddelte tiltalefrafald vedrørende en påsigtet overtrædelse af strfl. § 108. Skyldformodningen blev i denne sag klart udtalt, idet justitsministeren i den udsendte pressemeddelelse bl.a. anførte, at »selvom det må forudsættes, at N.N. har udvist forhold, som i princippet falder ind under beskrivelsen i straffelovens § 108, har justitsministeriet efter en samlet vurdering af alt foreliggende ikke fundet, at danske interesser er skadet i en sådan grad, at der er fuldt tilstrækkelig anledning til at rejse tiltale.« Den pågældende hævdede, at han var uskyldig, og ønskede en offentlig straffesag ført (jf. *UfR 1982B, s. 362).*

Både under en principiel synsvinkel og med henblik på de få sager, hvor problemet får aktualitet, bør der indføres hjemmel for, at den sigtede i givet fald kan begære tiltalefrafaldet indbragt for domstolene. En sådan regel - der findes i den norske straffeproceslov - ville af hensyn til sigtede være at foretrække fremfor en bestemmelse om

obligatorisk domstolskontrol med samtlige tiltalefrafald svarende til de regler, der i medfør af § 723a gælder for tiltalefrafald på vilkår (jf. I, s. 202 ff).

Det fremgår, at de retspolitiske betænkeligheder ved opportunitetsprincippet knytter sig til *undladelsen* af at rejse tiltale; det er i denne sammenhæng, behovet for kontrol med anklagemyndighedens afgørelser opstår. - Det har imidlertid også været hævdet, at det efter omstændighederne kan være påkrævet at drage anklagemyndigheden til ansvar for *rejsning* af tiltale i visse konkrete sager, eller i hvert fald ved domstolsafgørelse underkende anklagemyndighedens beslutning om tiltalerejsning.

Rejsning af tiltale kunne i visse ekstreme tilfælde tænkes at pådrage ansvar, såfremt påtalen klart burde have været *opgivet;* hvis sigtede åbenbart er uskyldig, ville tiltalerejsning være et brud på pligten efter § 711. Det er endvidere selvklart, at anklagemyndighedens beslutning om at indbringe en sag for retten i stedet for at opgive påtalen kan blive underkendt i og med, at retten frifinder. Men at hævde, at der på tilsvarende måde kunne blive tale om ansvar eller underkendelse i form af frifindelse, fordi anklagemyndigheden - i strid med sin egen praksis - har rejst tiltale i stedet for at meddele et *tiltalefrafald,* bygger på en uholdbar opfattelse af tiltalefrafaldets karakter. Tiltalefrafaldet er en særlig sanktionsform på samme måde som f.eks. betinget dom. Hvis retten finder, at en sag burde have været afgjort med tiltalefrafald, kan den lade straffen bortfalde eller anvende en mildere strafudmåling, eventuelt en betinget dom med de vilkår, som ville have været de sædvanlige efter § 723a i en sag af den pågældende art. Derimod vil retten ikke kunne gribe til frifindelse under henvisning til, at anklagemyndigheden i strid med sin egen praksis har rejst tiltale i stedet for at frafalde den og derved har etableret et brug på almindelige forvaltningsretlige lighedsgrundsætninger, som må bevirke tiltalerejsningens ugyldighed. En frifindelse måtte forudsætte, at anklagemyndigheden ved at anlægge en fast praksis for at frafalde tiltalen i visse tilfældegrupper dermed skulle have foretaget en (bindende) indskrænkning af det materielt strafbares område. En sådan forudsætning ville ikke være i overensstemmelse med opportunitetsprincippets begrundelse, og opfattelsen har da heller ikke vundet tilslutning i retspraksis; se herved *UfR 1974.604 V:* En gruppe landmænd på Horsensegnen tiltaltes for overtrædelse af færdselsloven og politivedtægten, fordi de - som led i en protestaktion - havde afspærret et vejkryds ved at parkere deres traktorer i krydset. Den omstændighed, at der ikke i andre politikredse blev rejst tiltale for tilsvarende aktioner, kunne ikke bevirke frifindelse; heller ikke strafbortfald blev accepteret af retten, som i stedet anvendte en meget mild strafudmåling (bøde på 100 kr.). Samme opfattelse blev lagt til grund i *UfR 1975.874 Ø,* hvor anklagemyndighedens undladelse af at påtale overtrædelser af en række bestemmelser vedrørende restaurationsdrift i Christiania ikke blev tillagt betydning i forbindelse med domfældelsen for tilsvarende lovovertrædelser af tre tiltalte, der ikke havde tilknytning til Christiania. Tilsvarende *UfR 1980.1065 V* om overtrædelse af strfl. § 266b ved diskriminerende presseudtalelser om fremmedarbejdere. - Jf. også *UfR 1962.218 Ø* samt den i *UfR 1977 B, s. 140* omtalte landsretsdom (strafbortfald).

*Michael Kistrup*
*Jakob Lund Poulsen*
*Jens Røn*
*Thomas Rørdam*

# Straffeprocessen

4. udgave



kan tage stilling til, om sagen skal afgøres med påtaleopgivelse efter § 721 eller med tiltalefrafald efter § 722.[51]

> Efter den tidligere § 719, stk. 2, havde statsadvokaten påtalekompetencen i visse nærmere opregnede tilfælde. Det var for det første byretssager, der skulle fremmes som nævningesager eller som domsmandssager, fordi tiltalte har fravalgt nævningebehandling efter § 687. Statsadvokaten havde endvidere påtalekompetencen i nogle nærmere opregnede straffelovsovertrædelser, jf. den tidligere § 719, stk. 2, nr. 3. Opregningen omfattede forbrydelser vedrørende angreb på statens selvstændighed og sikkerhed og mod statsforfatningen, visse forbrydelser mod offentlig myndighed og offentlig orden, forbrydelser i offentlig tjeneste eller hverv mv., visse forbrydelser om falsk forklaring, visse almenfarlige forbrydelser, herunder kvalificeret brandstiftelse og fly- og skibskapring, de forsætlige drabsforbrydelser, kvalificeret frihedsberøvelse og visse delikter om freds- og ærekrænkelser. For nogle af disse forbrydelser skal der efter Rigsadvokatens administrative retningslinjer fortsat ske forelæggelse af tiltalespørgsmålet, jf. ovenfor.

Statsadvokaten har også påtalekompetencen i straffesager mod politipersonale, jf. § 1020 d.[52]

Den adgang til for justitsministeren og Rigsadvokaten at gribe ind i konkrete sager eller til at udstikke generelle regler for påtale, der er omtalt ovenfor under 4.2.1. og 4.2.2., påvirkes ikke af § 719.[53]

### 4.4.2.  Objektivitetsprincippet

I § 96, stk. 2, er udtrykt et betydningsfuldt grundprincip for anklagemyndighedens arbejde. Anklagemyndigheden skal ikke blot påse, at strafskyldige drages til ansvar, men også sikre, at forfølgning af uskyldige ikke finder sted. Anklagemyndigheden er således underlagt et objektivitetsprincip.[54] Efter sin ordlyd gælder § 96, stk. 2, kun for anklagemyndigheden, men princippet kan kun med mening virkeliggøres, hvis der gælder tilsvarende krav til politiet i forbindelse med efterforskningen. Det antages derfor, at princippet også gælder for politiet.[55]

---

51. Jf. Rigsadvokatmeddelelsens afsnit om forelæggelse og indberetning mv., pkt. 3.1.2. og 3.1.3.
52. Se også nedenfor under 14.3.
53. Jf. bet. 1194/1990, s. 211, og lovforslag nr. L 48 af 11. november 2015 (specielle bemærkninger til § 719).
54. § 96, stk. 2, er en videreførelse af en tilsvarende og nu ophævet bestemmelse i § 711. § 96 blev affattet ved lov nr. 385 af 20. maj 1992, og ud over en sproglig modernisering er der ikke sket ændringer i indholdet af objektivitetsprincippet.
55. Se Gammeltoft-Hansen, Strafferetspleje I, s. 62.

---

Objektivitetsprincippet indebærer som sit ene led, at anklagemyndigheden som udgangspunkt ikke kan undlade at tage skridt til at straffe personer, som anklagemyndigheden skønner, er skyldige i en strafbar lovovertrædelse. Der må normalt i disse tilfælde enten rejses tiltale eller meddeles et tiltalefrafald efter § 722. Der gælder således ingen almindelig regel om ikke at gøre noget i anledning af en konstateret forbrydelse, men § 721, stk. 1, nr. 4, hjemler dog adgang til af ressourcemæssige grunde at opgive påtale, selvom der består en formodning om skyld, jf. nærmere nedenfor under 4.5.3. Objektivitetsprincippet indebærer endvidere, at politiet og anklagemyndigheden ikke alene skal efterforske spor og sikre sig beviser mv., der peger på den mistænkte eller sigtede som gerningsmand, men også har pligt til på tilsvarende måde at forfølge oplysninger, der peger på den pågældendes uskyld.

Kravet til anklagemyndigheden om objektivitet minder om, men er ikke det samme, det krav, der stilles til dommerne i straffesager.[56] Et krav om ensartede vurderinger er ikke muligt, da anklagemyndighedens – og særligt politiets – vurdering af sagen finder sted på et tidligere tidspunkt, hvor tiltaltes synspunkter ikke nødvendigvis er formuleret i sin endelige form, og hvor bevisførelsen endnu ikke er sket under en retssag.

Kravet til anklagemyndigheden kan formentlig – som formuleret af Hurwitz – bedst beskrives som et krav om, at anklagemyndigheden »hverken ved sagens forberedelse, tiltalebeslutningen eller udøvelsen af tiltalen for retten … må undertrykke noget til sigtedes fordel talende relevant moment …«[57] Kravet om objektivitet gælder således i alle dele af anklagemyndighedens virke, både ved afgørelse af tiltalespørgsmålet og ved straffesagens førelse i retten. Anklagemyndigheden kan således ikke rejse tiltale i situationer, hvor man har en forventning om, at der vil ske frifindelse. Hvis det efter bevisførelsen under hovedforhandlingen står klart, at den tiltalte skal frifindes, må anklagemyndigheden tilsvarende ændre sin påstand i overensstemmelse hermed, hvorefter retten afsiger frifindende dom, jf. § 728 og § 883, stk. 2, nr. 2.[58] Efter fældende

---

56. Jf. Hurwitz, Strafferetspleje, 3. udg., s. 141.
57. Jf. Hurwitz, Strafferetspleje, 3. udg., s. 141.
58. Som anført i Retsplejelovkomm., note ad § 728, har det med henvisning til U 1921.468 H og U 1979.912 V været antaget, at bestemmelsen alene finder anvendelse i første instans, og at retten under en anke således ikke skulle være forpligtet til at afsige frifindende dom ved en ophævelse af forfølgningen under anken. Dette er imidlertid ikke i overensstemmelse med anklageprincippet, jf. ovenfor under 1.2. § 883, herunder stk. 2, nr. 2, finder også anvendelse under anke, jf. § 917, stk. 1, og det må indebære, at påtaleopgivelse også kan ske under hovedforhandlingen i anken, med nødvendig frifindelse til følge, jf. også Hammerum, Tiltalen, s. 152f.

ubetinget frakendelse efter § 126, stk. 1, nr. 4, om særlig hensynsløs kørsel mv. Lignende afgørelse i U 2020.2104 V, hvor anklagemyndigheden ikke under en ankesag kunne påstå forholdet henført under færdselsl. § 125, stk. 1, nr. 1.

Det forhold, at der ved en fejl tidligere ikke har været nedlagt påstand om betinget frakendelse som følge af tre klipforseelser, indebærer ikke, at tidligere klip bortfalder, og der kan således ske betinget frakendelse som følge af et nyt klip. jf. U 2020.3216 H, U 2020.490 Ø og U 2020.802 Ø.

En anden situation forelå i TfK 2017.224 Ø, hvor en anklager havde besluttet, at en sag om overtrædelse af udlændingeloven (bistand til ulovlig indrejse) kunne afgøres med et bødeforelæg, som umiddelbart herefter blev forkyndt for den sigtede. Der forelå en bindende påtalebegrænsning, så der ikke ved sagens indbringelse for retten 9 måneder senere kunne nedlægges påstand om fængselsstraf.

### 4.5.4. Tiltalefrafald

Tiltalefrafald er en sanktion, der meddeles af anklagemyndigheden. Tiltalefrafald har lighedspunkter med en advarsel eller betinget dom, jf. § 723, og anses for en meget mild sanktion. Anklagemyndighedens mulighed for at afgøre sager ved tiltalefrafald betyder, at anklagemyndigheden efter rimeligheds- og ressourceovervejelser kan afslutte visse sager – tiltalefrafald uden vilkår – med en sanktion, uden at det har været fornødent at forelægge sagen for en domstol. Herved udtrykkes det såkaldte opportunitetsprincip, der står i modsætning til legalitetsprincippet, der ikke giver anklagemyndigheden adgang til sådanne overvejelser.[156]

Det kan for så vidt siges at stride mod opgavefordelingen i den danske straffeproces, at anklagemyndigheden i disse sager tillægges straffemyndighed uden krav om domstolsprøvelse. Der er imidlertid et betydeligt antal sager, der ikke hensigtsmæssigt afgøres i en offentlig og omkostningstung domstolsproces. En administrativ afgørelse af sådanne sager indebærer fordele såvel for den sigtede som for domstolssystemet, der ikke belastes med mange bagatelagtige sager eller sager, der efter deres karakter bør finde deres afgørelse uden for retssalen. Tiltalefrafald har negativ retskraftsvirkning, og der kan ikke efterfølgende dømmes

for forhold, omfattet af tiltalefrafaldet, jf. U 2006.1013 V, medmindre sagen genoptages på grund af vilkårsovertrædelser, jf. § 723, stk. 4.

Da et tiltalefrafald er en sanktion, er det en forudsætning, at sigtede er skyldig i den sigtelse, der danner grundlag for tiltalefrafaldet.[157] Sigtedes skyld må derfor være utvivlsom. Denne sikkerhed for skyld kan opnås gennem sigtedes tilståelse. Det antages dog, at denne sikkerhed for skyld kan opnås på anden vis. Der bør nok i disse undtagelsestilfælde stilles krav om, at de faktiske forhold er erkendt.[158] Behovet for den utvivlsomme sikkerhed for skyld hænger sammen med, at tiltalefrafaldet som anført er udtryk for skyld og straf, og at der ikke er mulighed for domstolsprøvelse af anklagemyndighedens vurdering og dermed for frifindelse. I praksis vil der normalt næppe blive meddelt tiltalefrafald, medmindre sigtede selv er indforstået hermed.[159]

§ 722 bestemmer, i hvilke tilfælde tiltale kan frafaldes. Dette kan ske, når den forventede sanktion er beskeden. Der kan således være mindre behov for at straffe og i højere grad behov for at tilkendegive samfundets misbilligelse af den påsigtede adfærd. § 722, stk. 1, opregner nogle tilfældegrupper, hvor tiltalefrafald kan ske, som suppleres af bekg. nr. 792 af 18. juni 2018 (med senere ændringer) om politidirektørernes og statsadvokaternes adgang til at frafalde tiltale. Bortset fra en opsamlingsbestemmelse i § 722, stk. 2, sker der her en udtømmende opregning af de situationer, hvor tiltalefrafald kan ske.

Det anføres i § 722, stk. 1, nr. 1-4, at tiltale kan frafaldes

- hvor den påsigtede lovovertrædelse efter loven ikke kan medføre højere straf end bøde, og forholdet er af ringe strafværdighed,
- hvor det i medfør af § 723, stk. 1, fastsættes som vilkår, at sigtede undergives hjælpeforanstaltninger efter § 52 i lov om social service,
- hvor sigtede var under 18 år på gerningstidspunktet, og der fastsættes vilkår efter § 723, stk. 1, og

---

156. Jf. om legalitetsprincippet Gammeltoft-Hansen, Strafferetspleje I, s. 59f. og s. 183. En nærmere gennemgang og diskussion af anvendelsen af tiltalefrafald og opportunitetsprincippet findes in Smith, Straffeproces, s. 115ff.

157. Der er i princippet ikke noget i vejen for, at en sigtelse gennem påtaleopgivelse eller påtalebegrænsning nedbringes til nogle mere bagatelagtige forhold, jf. § 721, hvorefter tiltalefrafald meddeles for resten, jf. § 722.

158. Jf. formentlig Gammeltoft-Hansen, Strafferetspleje I, s. 186, og AÅ 1977.91f. Det anføres i Rigsadvokatmeddelelsens afsnit om f.eks. unge lovovertrædere, pkt. 5.2.1., og om psykisk afvigende kriminelle, pkt. 5.6, at »Det er en forudsætning for at meddele tiltalefrafald, at sigtedes skyld er utvivlsom, eller at alle faktiske omstændigheder i forbrydelsens gerningsindhold er erkendt.«

159. Jf. Gammeltoft-Hansen, Strafferetspleje I, s. 186. Se dog Gammeltoft-Hansen og Peter Blume i U 1982B.362, der omtaler en omdiskuteret sag fra 1980'erne, hvor en sigtelse for overtrædelse af strfl. § 108 blev afgjort med et tiltalefrafald af justitsministeren, selvom sigtede hævdede sin uskyld og ønskede en retssag.

STEPHAN HURWITZ

# DEN DANSKE
# STRAFFERETSPLEJE

4. oplag

G. E. C. GADS FORLAG

KØBENHAVN 1966

1. udgave 1937—1940
2. udgave 1949
3. udgave 1959
4. oplag 1966

## FORORD TIL 3. UDGAVE

I denne 3. udgave af Den danske Strafferetspleje er foretaget betydelige forkortelser af tekst og notestof. Herved er imødekommet et ønske fra studenter, der skal benytte værket eller dele deraf som lærebog. Forkortelserne er navnlig tilvejebragt ved udskydelse af stof af mindre praktisk betydning og af henvisninger til fremmed lovgivning og litteratur. Hvor der er særlig anledning dertil, henvises i nærværende udgave til den udførligere fremstilling i 2. udgave.

På den anden side har det været påkrævet at supplere det stof, der medtages i fremstillingen, med henvisninger til den fra det sidste tiår hidrørende danske retspraksis og litteratur af væsentlig interesse for de behandlede emner, ligesom tekst og notestof også iøvrigt er blevet revideret og ført à jour.

Juni 1958.

*Stephan Hurwitz.*

om, at en forfølgning, hvori der kun har været foretaget uden-
retslige efterforskningsskridt, er (endeligt) opgivet[19]).

§ 975 gør kun ny forfølgning *ved retten* afhængig af den op-
stillede betingelse. Ny udenretslig efterforskning må derimod
kunne finde sted, når der foreligger særlige holdepunkter for,
at der derigennem vil blive tilvejebragt de af § 975 krævede nye
bevisligheder.

B. *Er frifindelsesdom afsagt i henhold til § 728,* vil gen-
optagelse kunne finde sted efter reglerne i § 976, der opstiller
endnu snævrere betingelser for genoptagelse end § 975. Hvis
frifindelse beror på en upåanket underretsdom, vil der dog ikke
blive spørgsmål om genoptagelse, men denne dom vil udenfor
den almindelige ankefrist kunne påankes i medfør af § 949,
2. stk., jfr. § 963, 3. stk.

---

[19]) Jfr. det ovenfor i note 10 ad § 826 bemærkede; cfr. afvigende *Th.
Roepstorff* i Juristen 1939, s. 55.

---

## Kapitel III.

## ANKLAGEMYNDIGHEDENS RÅDIGHED
## OVER PÅTALEN

### § 28.

#### *Absolut og relativ påtalepligt*
#### *(Legalitets- og opportunitetsprincippet)[1]).*

### I. *Legalitets- og opportunitetsprincippets indhold.*

*Legalitetsprincippet* er udtryk for den opfattelse, at der ved
påtalens udøvelse bør ses bort fra spørgsmål om strafforfølg-
ningens hensigtsmæssighed. Påtale skal rejses, når de bevismæs-
sige forudsætninger er til stede for at antage, at domfældelse vil
kunne ske efter den materielle strafferets betingelser. Strengt
taget betyder det derfor et brud på legalitetsprincippet, dersom
proceslovgivningen fastsætter undtagelser fra påtalepligten. Så
længe disse undtagelser har en bestemt begrænset karakter, der
ikke åbner plads for et friere skøn for anklagemyndigheden
angående påtalens hensigtsmæssighed, anses princippet dog op-
retholdt som princip. Åbner lovgivningen adgang for et sådant
friere skøn, anses derimod *opportunitetsprincippet* for anerkendt.
Påtalen er da principielt underkastet en *interesseafvejning:* Sam-
fundets interesse i strafforfølgning må efter omstændighederne
vige for modstående, »opportune« hensyn.

De gængse betegnelser for de modstående opfattelser er uhel-
dige. Opportunitet modstillet legalitet giver det førstnævnte
princip sprogligt en ringe placering. Også efter opportunitets-
princippet skal påtalefrafaldet have legal hjemmel. Og de hen-
syn, der kan motivere frafaldet, er ikke blotte bekvemmelig-
hedshensyn eller opportunitetshensyn i ordets nedsættende betyd-
ning, men en række forskelligartede hensyn af social og indi-

---

[1]) Se foruden de i 2. udgave s. 310 givne litteraturhenvisninger Forhand-
lingerne på den svenske kriminalistforenings årsmøde, N. K. Å. 1951—52,
s. 2 ff.

viduel værdi. Legalitets- og opportunitetsprincippet burde derfor erstattes af mere neutrale betegnelser. Som sådanne er i nærværende fremstilling valgt: Principperne om *absolut og relativ påtalepligt*.

## II. *Argumentation. Problemstilling.*

A. Legalitetsprincippet har en vis sammenhæng med den materielle strafferets absolute strafferetori. Hvis straffekravet opfattes som et *gengældelseskrav*, der gennemføres til soning af den ved forbrydelsen begåede uret, må dette ideelle krav konsekvent gennemføres uden hensyntagen til materielle eller processuelle formålsbetragtninger. Følges derimod en relativ strafferetori, hvorefter straffen søger sin begrundelse som middel i praktiske formåls tjeneste, er legalitetsprincippet ikke længere en nødvendig konsekvens af den materielle strafferet. Hermed er dog ikke sagt, at det har mistet sin ideelle begrundelse. Uanset hvilken materiel. strafferetori der lægges til grund, kan det siges, at legalitetsprincippet stemmer bedst med retfærdighedsideen, *kravet om lige ret for alle*. Enhver adgang til påtalefrafald, der ikke er bundet til ganske faste kriterier, åbner mulighed for afvigelser fra dette krav. Hertil kommer betragtninger af mere *praktisk* natur. En afsvækkelse eller opgivelse af legalitetsprincippet kan virke forringende på straffelovgivningens generalpræventive funktion. Adgangen til diskretionært påtalefrafald kan dernæst virke svækkende med hensyn til anklagemyndighedens autoritet, hvis upartiskhed let kan blive draget i tvivl, når legalitetsprincippet forlades. Det kan endvidere skabe uensartethed i retsanvendelsen og dermed retusikkerhed, når den materielle strafferet korrigeres ad processuel vej.

B. Mod disse synspunkter anføres til støtte for opportunitetsprincippet navnlig følgende: Kravet om straffelovens ubetingede og ufravigelige håndhævelse kan ikke isoleret gøres gældende som retfærdighedskrav, men må afvejes mod andre modstridende samfundsinteresser[2]. Som sådanne fremhæves dels den

[2] Udover de i teksten fremhævede hensyn kan yderligere anføres: hensynet til den forurettede, der ønsker at undgå sagens offentlige fremdragelse, hvilket navnlig er praktisk i sædelighedssager, jfr. *Kjerschow*, N. T. f. S. 1928, s. 130.

*politiske* interesse, der kan være forbundet med at undgå en retssag, som er farlig for statens indre eller ydre sikkerhed, dels samfundets interesse i at undgå en pedantisk retsforfølgning af *bagatelforseelser*.

Endvidere brydes den offentlige interesse i strafforfølgningen med de samme individuelle hensyn, der som regel ligger bag *benådningsinstituttet*. Når de særlig formildende omstændigheder foreligger, der kan motivere en benådning, vil forholdet ofte stille sig således, at disse omstændigheder med megen vægt taler for at vise overbærenhed allerede med henblik på selve strafforfølgningen, idet denne i sig tilføjer sigtede en skade, som benådningen ikke vil kunne oprette.

Til disse allerede i den ældre teori fremhævede grunde for ikke at gøre påtalepligten absolut kan føjes, at den strafferetlige udvikling har skabt en række individualiserende foranstaltninger, navnlig af opdragelsesmæssig karakter overfor *unge lovovertrædere*, der ofte både af sociale og individuelle grunde må foretrækkes fremfor strafforanstaltningen. Undladelse eller frafald af strafferetlig påtale mod undergivelse af sådanne foranstaltninger er et vigtigt led i moderne kriminalpolitik.

C. De retsordninger, der søger at gennemføre legalitetsprincippet, har ikke kunnet undgå at anerkende undtagelser. Selvom disse undtagelser gøres afhængige af særlig lovhjemmel (»legal opportunitet«), bryder de dog legalitetsprincippets abstrakte retfærdighedsidé, der således viser sig praktisk uigennemførlig. På den anden side vil opportunitetsprincippet ikke åbne adgang for vilkårlighed i påtaleudøvelsen, men søger på forskellige måder at regulere anklagemyndighedens rådighed over denne. Der består herefter ingen virkelig kløft mellem de to opfattelser. Når det erkendes, at legalitetsprincippet hverken kan eller bør hævdes som absolut aksiom, bliver det praktiske hovedproblem *dels*, hvilke interesser der kan motivere, at forfølgning frafaldes, *dels hvorledes der kan skabes garantier mod vilkårlighed i påtaleudøvelsen, samtidig med at denne i et vist omfang gøres afhængig af hensigtsmæssigheds- og billighedsbetragtninger*. Dette drøftes nærmere i det følgende. Her skal blot fremhæves, at sådanne garantier kan tænkes skabt ad forskellige veje, nemlig 1) gennem kontrol udøvet af anklagemyndighedens højere

og højeste organer (hierarkisk kontrol), 2) gennem domstolenes kontrol, 3) gennem forurettedes kontrol (eller indrømmelse af en ligefrem actio popularis)[3]). I Danmark, hvor anklagemyndigheden har en videre rådighed over påtalen, end tilfældet er i retsforfatningerne i almindelighed, er kontrollen i det hele indskrænket til den første af disse muligheder. Hverken domstolene eller forurettede har som regel nogen retlig indflydelse på påtalens udøvelse. — Derimod er der nu ved ombudsmandsinstitutionen, se lov nr. 203, 11. juni 1954, skabt en vis kontrol med påtalens udøvelse gennem et af anklagemyndigheden og justitsministeriet uafhængigt organ.

### III. Positiv ret.

For gældende dansk rets vedkommende er det principielle standpunkt fastslået i rpl. § 723, 2. stk., der giver en almindelig adgang til at undlade påtale, når der foreligger særlig formildende omstændigheder, og undladelsen kan ske »uden skade for nogen offentlig interesse«. Da afgørelsen imidlertid bortset fra en række bestemt afgrænsede undtagelsestilfælde, jfr. nærmere nedenfor § 29, er henlagt til rigsadvokaten og justitsministeren, har man ment at kunne sige, at legalitetsprincippet dog er opstillet som norm for *statsadvokaternes påtalemyndighed[4]*). Dette formelle synspunkt er dog misvisende. Reelt er statsadvokaternes beføjelse til at frafalde påtale så vidtrækkende, at det i det hele er mest træffende at karakterisere påtalepligten som relativ.

### § 29.
### Påtalefrafald[1]).

### I. Politisager.

I overensstemmelse med tidligere praksis er der ved rpl. tillagt politimesteren (politidirektøren) en vidtgående diskretionær myndighed til at frafalde påtale i politisager.

---

[3]) Om ønskeligheden heraf, se udførlig denne bogs 2. udgave, s. 359 ff.
[4]) Jfr. således *K. U. 1875*, mot. s. 31—32.
[1]) Se forhandlingerne på Dansk Kriminalistforenings årsmøde 1938 (*N. K. Å.* 1938, s. 169 ff.), *Knud Waaben*, Betingede Straffedomme, 1948, s. 77 ff, *Trolle* i Juristen 1948, s. 317 ff., *H. Olafsson* og *A. Bach* i Juristen, 1949, 1. ff. N. K. Å. 1951—52, s. 2 ff., *Kirchheiner* i N. T. f. K. 1953, s. 193 ff. — Principielle afgørelser refereres i Rigsadvokatens Meddelelsesblad.

De nærmere regler indeholdes i rpl. § 721, sidste stk.[2]). Herefter sondres mellem 1) tilfælde, hvor sagen af dommeren ville kunne afgøres med en advarsel i henhold til § 937, og 2) tilfælde, hvor sådan afgørelse »er udelukket«. Medens politimesteren i førstnævnte gruppe af tilfælde forudsættes at kunne frafalde påtale på egen hånd, skal han i de sidstnævnte tilfælde indhente statsadvokatens samtykke. Sondringen er for tiden uden praktisk interesse, da der efter den gældende lovgivning, så vidt ses, ikke forekommer eksempler på, at en politisags afgørelse ved advarsel er udelukket[3]). Den almindelige regel bliver herefter, at der tilkommer politimesteren en selvstændig, uindskrænket kompetence til at undlade påtale i politisager, jfr. herved anordning nr. 199, 13. juli 1927[4]).

Politimesterens afgørelse er dog ikke bindende for de overordnede påtalemyndigheder, jfr. ovenfor § 27, III, A.

Om frafald af forfølgningen ved retten af politisager, mod at sigtede indgår på *bødeforelæg*, rpl. § 931, samt om politisagers afgørelse i retten ved *bødevedtagelse* eller *advarsel*, rpl. §§ 936 og 937, henvises til et senere sted i fremstillingen (§ 39).

### II. Statsadvokatsager.

Om påtalefrafald i disse sager gives der udførlige regler i rpl. § 723, jfr. anordn. nr. 244, 24. september 1957. I modsætning til, hvad der gælder i politisager, tilkommer der her ikke de underordnede anklagemyndigheder nogen diskretionær adgang til påtalefrafald. Politimestrene har som regel ingen beføjelse til selvstændigt at frafalde påtale i disse sager[5]). Og hvad angår

---

[2]) Bestemmelsen er indsat i henhold til retsplejelovsforslaget 1914, *R. T.* 1913—14 A 3669.
[3]) Cfr. den nu bortfaldne regel i straffelovstillæg nr. 63, 1. april 1911 § 2 (visse voldssager). Derimod haves i lov om arbejderbeskyttelse nr. 226, 11. juni 1954 § 73, et eksempel på, at afgørelse ved advarsel er betinget af et særligt forvaltningsorgans samtykke.
[4]) Ifølge anordningen afsnit A skal politisager kun indsendes til statsadvokaten i de tilfælde, hvor dette er påbudt ved særlige lovbestemmelser, eller særlig er forlangt enten ved en almindelig ordre omfattende visse sager eller ved en speciel ordre vedrørende en enkelt sag.
[5]) Jfr. herved rpl. § 720, sidste pkt., og § 808. Det i § 720 omhandlede samtykke fra statsadvokatens side må være bundet af betingelserne i § 723.

SKRIFTER FRA
DET RETSVIDENSKABELIGE INSTITUT

# 22

BERNHARD GOMARD

Studier i den danske
STRAFFEPROCES



JURISTFORBUNDETS FORLAG
1976

BERNHARD GOMARD

Studier i den danske
STRAFFEPROCES



JURISTFORBUNDETS FORLAG
KØBENHAVN

lovgivning. Anklagemyndigheden er en administrativ myndighed og kan i et vist omfang udøve et frit skøn. Anklagemyndigheden har således rådighed over påtalen. Dette er blevet udtrykt således, at der for tiltalerejsning gælder et opportunitetsprincip.[78] Med et bedre dækkende ordvalg kan tiltalerejsningen betegnes som fakultativ.[79] For dommen, som dommeren skal afsige, gælder derimod et legalitetsprincip. Begreberne skøn og regel er imidlertid hverken klare eller éntydige. Beskrivelserne af beslutningsprocesserne ved tiltalerejsning og dom som udøvelse af skøn og som regelanvendelse giver langt fra svar på alle spørgsmål, men peger dog utvivlsomt på nogle momenter af reel betydning. En nærmere undersøgelse af karakteren af de vejledninger, som retssystemet giver domstole og anklagemyndighed, er på sin plads. Erkendelsen af, at der består adskillige lighedspunkter mellem afgørelsesgrundlaget i anklagemyndigheden og ved domstolene, bør ikke føre til, at forskellene overses.[80] Anklagemyndighedens skøn skal ligesom andre forvaltningsmyndigheders skøn udøves pligtmæssigt, men dette betyder ikke, at anklagemyndigheden har påtalepligt, hvor retten må antages at ville dømme. Også domstolenes afgørelser er pligtmæssige, men afgørelsesgrundlaget er forskelligt.[81] Fastsættelsen af de generelle retningslinier for udøvelsen af både domstoles og anklagemyndigheds beføjelser fastsættes af politiske myndigheder, af lovgivningsmagten og for anklagemyndighedens vedkommende tillige af Justitsministeren. Afgørelsen af enkelttilfælde – både spørgsmålet, om tiltale skal rejses, og i bekræftende fald hvad dommen skal gå ud på – bør derimod træffes fri for partipolitiske hensyn.[82]

78. Jfr f. eks. FT 1971/72, tillæg A, sp. 559. Opportunitetsprincippet gælder også i Norge og forsvares af *Andenæs:* Almindelig strafferet s. 415 ff.

79. Jfr. således – og om tiltale i Sverige i det hele taget – *Ekelöf:* Rättegång, V, s. 101 ff.

80. Der vindes således næppe noget ved at ændre den gængse sprogbrug, hvorefter anklagemyndigheden ikke har påtalepligt. Den modsatte sprogbrug – realiteter ændres ikke så let – stemmer ikke godt overens med § 723, stk. 2, om Rigsadvokatens og Justitsministerens skønsmæssige beføjelse til at frafalde tiltale. Anderledes Anklagemyndighedens Årsberetning 1973 s. 1.

81. Jfr. *Poul Andersen:* Forvaltningsret s. 252 og *Hurwitz:* Strafferetspleje (3. udgave) s. 214.

82. Sml. *Bent Unmack Larsen* i J 1974.467 ff.

Moderne fremstillinger af retskildelæren har kraftigt understreget, at domstolene inden for visse grænser udøver en retsskabende virksomhed.[83] Iveren efter at tage afstand fra tidligere tids for snævre opfattelse af domstolenes funktion har imidlertid ofte ført forfatterne over i en anden grøft til en overdrivelse af omfanget af selvstændigheden. Hertil kommer, at også udøvelsen af det retsskabende skøn har en karakter af pligtmæssighed, som må søges nærmere opklaret, før karakteren af den retsskabende virksomhed er bragt på det rene. Det falder i øjnene, at en fri retsdannelse på processens område vanskeliggøres dels af den omfattende og detaljerede lovregulering, navnlig i Retsplejeloven, dels af selve emnernes karakter af fremgangsmåder af teknisk-administrativ karakter. Fastsættelsen af regler om sådanne emner kræver ofte valg af en ganske anden karakter end de common sense-afgørelser, hvorved domstolenes retsdannelser på formuerettens områder er sket, og lovgivningens tavshed om en tænkelig og måske ønskelig fremgangsmåde betyder i almindelighed blot, at denne fremgangsmåde ikke kan benyttes, og ikke at lovgivningen må opfattes som ufuldstændig, og at dette hul skal udfyldes med egnede regler fastsat af retten. På strafferettens område begrænses domstolenes opgave med tilpasning af retssystemet af maksimen nulla poena sine lege. Det er ikke domstolenes opgave at træffe bestemmelse om eller at udvide det strafbares område. Deres mere begrænsede opgave med at fastlægge betydningen af straffebudenes ord lader sig dog ikke helt reducere til en rent sproglig tydning. Det er i øvrigt ikke på alle områder gældende ret, at kun den adfærd, som straffebuddet med sikkerhed har kriminaliseret, straffes. Navnlig straffebud uden for Straffeloven er undertiden affattet i så ubestemte vendinger, at fortolkningen antager karakter af ret frie skøn. Selv Straffeloven indeholder begreber, hvis indhold først lægges fast i retspraksis, således f.eks. ordet »retsstridig« i § 279 og udtrykket »af mindre strafværdighed« i § 287. Fortolkningsskønnet bør i almindelighed udøves således, at de enkelte afgørelser kan bidrage til en regeldannelse. Skønnet er – ligesom det administrative skøn – desuden i almindelighed bundet af, at afgørelserne bør bidrage til mere eller mindre bestemt angivne mål.

83. Jfr. således *Ross:* Ret og Retfærdighed bl. a. s. 116 ff og *Torstein Eckhoff:* Rettskildelære, 1972, s. 176 ff.

# Forslag til Lov
## om ændring af retsplejeloven, straffeloven, færdselsloven og udlændingeloven

*(Anklagemyndighedens struktur)*

Fremsat den 22. januar 1992 af justitsministeren (Engell)

§ 1. I lov om rettens pleje, jf. lovbekendtgørelse nr. 748 af 1. december 1989, som ændret senest ved lov nr. 941 af 27. december 1991 og § 2 i lov nr. 6 af 3. januar 1992, foretages følgende ændringer:

**1.** I *§ 9 a, stk. 3, 2. pkt.,* ændres »politisager« til: »sager«.

**2.** *Kapitel 10* affattes således:

»Kapitel 10

*Anklagemyndigheden*

§ 95. De offentlige anklagere er rigsadvokaten, statsadvokaterne, politimestrene (i København politidirektøren) samt de personer, der er antaget til bistand for disse ved den retlige behandling af straffesager.

§ 96. De offentlige anklageres opgave er i forbindelse med politiet at forfølge forbrydelser efter reglerne i denne lov.

*Stk. 2.* De offentlige anklagere skal fremme enhver sag med den hurtighed, som sagens beskaffenhed tillader, og derved ikke blot påse, at strafskyldige drages til ansvar, men også, at forfølgning af uskyldige ikke finder sted.

§ 97. Den, der efter kapitel 2 i forvaltningsloven må anses for inhabil i forhold til en bestemt sag, må ikke virke som anklager i sagen.

§ 98. Justitsministeren er de offentlige anklagere overordnet og fører tilsyn med disse.

*Stk. 2.* Justitsministeren kan fastsætte bestemmelser om de offentlige anklageres udførelse af deres opgaver.

*Stk. 3.* Justitsministeren kan give de offentlige anklagere pålæg vedrørende behandlingen af konkrete sager, herunder om at begynde eller fortsætte, undlade eller standse forfølgning.

*Stk. 4.* Justitsministeren behandler klager over afgørelser truffet af rigsadvokaten som 1. instans.

§ 99. Rigsadvokaten varetager udførelsen af straffesager ved Højesteret og virker ved Den særlige Klageret.

*Stk. 2.* Rigsadvokaten er de øvrige offentlige anklagere overordnet og fører tilsyn med disse. Rigsadvokaten kan fastsætte bestemmelser og meddele pålæg efter regler svarende til § 98, stk. 2 og 3.

*Stk. 3.* Rigsadvokaten behandler klager over afgørelser truffet af statsadvokaterne som 1. instans. Rigsadvokatens afgørelse i en klagesag kan ikke påklages til justitsministeren.

§ 100. Til bistand for rigsadvokaten udnævnes en eller flere statsadvokater ved Højesteret.

*Stk. 2.* Rigsadvokaten kan bemyndige også andre til at virke som anklager ved Højesteret eller ved Den særlige Klageret i en enkelt sag.

§ 101. Statsadvokaterne varetager udførelsen af straffesager ved landsretterne.

*Stk. 2.* Statsadvokaterne fører tilsyn med politimestrenes behandling af straffesager og behandler klager over afgørelser truffet af politimestrene vedrørende strafforfølgning. Statsadvokaternes afgørelser i klagesager kan ikke påklages til rigsadvokaten og justitsministeren. Statsadvokaterne kan fastsætte bestemmelser og meddele pålæg efter regler svarende til § 98, stk. 2 og 3.

§ 102. Fristen for klager efter § 98, stk. 4, § 99, stk. 3, 1. pkt., og § 101, stk. 2, 1. pkt., er 4 uger efter, at klageren har fået meddelelse om afgørelsen. Fremkommer klagen efter udløbet af denne frist, skal den behandles, såfremt fristoverskridelsen må anses for undskyldelig.

§ 103. Justitsministeren fastsætter antallet af statsadvokater og fordelingen af forretningerne mellem disse.

*Stk. 2.* Justitsministeren beskikker de fornødne juridiske medhjælpere for statsadvokaterne ved udførelsen af straffesager for landsretten.

*Stk. 3.* Rigsadvokaten kan bemyndige også andre til at virke som anklager ved landsretten i en enkelt sag.

*Stk. 4.* Rigsadvokaten kan pålægge en statsadvokat at overtage behandlingen af en eller flere sager, som henhører under en anden statsadvokat.

§ 104. Politimestrene og de offentlige anklagere, der er ansat hos disse, samt andre ansatte, der bemyndiges hertil, varetager udførelsen af straffesager ved byretterne og Sø- og Handelsretten.

*Stk. 2.* Rigsadvokaten kan bemyndige også andre til at virke som anklager ved byretten eller Sø- og Handelsretten i en enkelt sag.

*Stk. 3.* Statsadvokaten kan pålægge en politimester at overtage behandlingen af en eller flere sager, der henhører under en anden politimester.

§ 105. Rigsadvokaten, statsadvokaterne og de, der bemyndiges til at virke som anklager ved Højesteret eller landsretten i en enkelt sag, jf. § 100, stk. 2, og § 103, stk. 3, skal have bestået juridisk kandidateksamen. Endvidere skal de i reglen have været i virksomhed i mindst 3 år som dommer, politimester, medhjælper hos en statsadvokat, som auditør ved forsvaret eller som advokat med møderet for landsret.

*Stk. 2.* Medhjælpere for en statsadvokat eller de, der bemyndiges til at virke som anklager ved byretten eller Sø- og Handelsretten i en enkelt sag, jf. § 104, stk. 2, skal have bestået juridisk kandidateksamen. Endvidere skal de opfylde betingelserne for at blive beskikket som advokat med hensyn til forudgående praktisk virksomhed, jf. § 119.

*Stk. 3.* Forbrugerombudsmanden kan beskikkes til at udføre tiltale for Sø- og Handelsretten og byretterne i sager vedrørende lov om markedsføring.

§ 106. Virksomhed som advokat udelukker ikke fra antagelse som medhjælper for en statsadvokat eller fra bemyndigelse til at optræde som anklager i en enkelt sag.

§ 107. Personer, der virker som anklagere i en enkelt sag, jf. § 100, stk. 2, § 103, stk. 3, og § 104, stk. 2, modtager vederlag af det offentlige for den enkelte sag, medmindre udførelsen af sagen må anses som led i udførelsen af den pågældendes tjeneste. Vederlaget fastsættes af retten efter arbejdets betydning og omfang.«

**3.** *Kapitel 62* affattes således:

»Kapitel 62

*Saglig kompetence*

§ 686. Straffesager behandles i 1. instans ved byretterne eller Sø- og Handelsretten, medmindre andet følger af bestemmelser i denne lov.

*Stk. 2.* Domsmænd medvirker i sager, hvor der bliver spørgsmål om højere straf end bøde, eller som i øvrigt skønnes at være af

Copyright © 2021 Karnov Group Denmark A/S                     side 1

særlig indgribende betydning for tiltalte eller af særlig offentlig interesse.

*Stk. 3.* Domsmænd medvirker ikke i

1) sager, som fremmes efter § 925, § 934, § 935, stk. 1, § 936 eller § 937,

2) sager, som behandles ved Sø- og Handelsretten i København eller ved søret, og

3) de i straffelovens § 60, stk. 1, nr. 3, nævnte sager vedrørende betinget dømte.

*Stk. 4.* Domsmænd medvirker endvidere, hvis sådan behandling er foreskrevet efter regler i andre love.

**§ 687.** Ved landsretterne behandles i 1. instans de sager, hvor nævninge medvirker.

*Stk. 2.* Nævninge medvirker i

1) sager, hvor der bliver spørgsmål om straf af fængsel i 4 år eller derover, for så vidt dette ikke er en følge af, at der bliver spørgsmål om fastsættelse af en fællesstraf efter reglerne i straffelovens § 40, stk. 1, og 61,

2) sager, hvor der bliver spørgsmål om dom til anbringelse i institution i medfør af straffelovens § 68 eller en dom til forvaring, jf. straffelovens § 70, og

3) sager vedrørende politiske lovovertrædelser.

*Stk. 3.* Nævninge medvirker ikke i

1) sager vedrørende overtrædelse af straffelovens §§ 172, 173, 286 eller 289 og

2) de i stk. 2, nr. 1 og 2, nævnte sager, som fremmes efter § 925 eller § 925 a.

**§ 688.** Straffesager, der omfatter flere lovovertrædelser, behandles ved landsret under medvirken af nævninge, hvis sådan behandling efter reglerne i § 687 kræves med hensyn til en af overtrædelserne. Andre straffesager, omfattende flere lovovertrædelser, behandles som domsmandssager ved byret, hvis sådan behandling efter reglerne i § 686 eller regler i andre love kræves med hensyn til en af overtrædelserne.

**§ 689.** Ved landsretterne behandles endvidere afgørelser i anledning af anke eller kære af byretternes domme, kendelser og beslutninger.

*Stk. 2.* Domsmænd medvirker i

1) sager, hvor byrettens afgørelse er truffet under medvirken af domsmænd, og

2) sager, hvor der for landsretten bliver spørgsmål om højere straf end bøde, eller som i øvrigt skønnes at være af særlig indgribende betydning for tiltalte eller af særlig offentlig interesse.

*Stk. 3.* Domsmænd medvirker ikke i

1) sager, der i 1. instans er behandlet ved søret, og

2) de i straffelovens § 60, stk. 1, nr. 3, nævnte sager vedrørende betinget dømte.

**§ 690.** Under Højesteret hører alle afgørelser i anledning af anke eller kære af landsretternes og Sø- og Handelsrettens domme, kendelser og beslutninger.

**§ 691.** Retten prøver af egen drift, om en sag er undergivet dens kompetence, og om domsmænd skal medvirke ved sagens behandling. Er domsforhandling ved landsret begyndt, kan forhandlingen dog fortsættes, uanset om sagen burde have været anlagt ved byret. Er domsforhandling under medvirken af domsmænd begyndt, kan retten, selv om sagen burde have været behandlet uden disses medvirken, bestemme, at domsmænd fortsat skal medvirke.

*Stk. 2.* Afgørelser, hvorved en begæring om sagens påkendelse ved landsret eller under medvirken af domsmænd eller sagkyndige afslås, kan kæres«.

**4.** *§ 698, stk. 1, nr. 2,* affattes således:

»2) lovovertrædelser, for hvilke der ikke bliver spørgsmål om højere straf end bøde eller hæfte.«

**5.** Retsplejelovens *kapitel 64,* »Den offentlige anklagemyndighed«, (*§§ 710-717),* ophæves.

**6.** *Kapitel 65* affattes således:

»Kapitel 65

*Påtalen*

**§ 718.** Retterne træder inden for strafferetsplejens område kun i virksomhed efter begæring af anklagemyndigheden eller en privat påtaleberettiget.

**§ 719.** Offentlig påtale tilkommer politimesteren, medmindre andet følger af denne lov eller regler fastsat i medfør af denne lov.

*Stk. 2.* Statsadvokaten påtaler

1) sager, der skal behandles ved landsretterne i 1. instans eller som ankesager, og

2) sager om overtrædelse af bestemmelserne i straffelovens kapitel 12 og 13, §§ 127-129 a, § 132 a, § 136, stk. 2, § 137, stk. 2, § 140, § 141, kapitel 16, § 158, § 160, § 180, § 183, stk. 1 og 2, § 183 a, § 186, stk. 1, § 187, stk. 1, §§ 237-240, § 261, stk. 2, § 266 a og § 266 b.

*Stk. 3.* Justitsministeren fastsætter i øvrigt nærmere regler om påtalens fordeling mellem statsadvokaterne og politimestrene.

**§ 720.** Justitsministeren kan fastsætte, at offentlig påtale i nærmere angivne sager er betinget af justitsministerens eller rigsadvokatens beslutning.

*Stk. 2.* Hvis offentlig påtale efter lovgivningen er betinget af en begæring, kan påtale kun ske, såfremt begæring herom fremsættes af en efter § 725 berettiget. Er privat påtale begyndt, kan offentlig påtale ikke begæres. Påtalemyndigheden kan nægte at efterkomme en begæring om offentlig påtale, der udelukker nogen medskyldig fra forfølgningen. Angår begæringen kun nogle af de skyldige uden at udelukke mulige medskyldige, kan påtalemyndigheden udstrække forfølgningen til disse, medmindre den berettigede efter at have haft lejlighed til at udtale sig herom modsætter sig dette. I så fald finder 3. pkt. anvendelse.

*Stk. 3.* Statsadvokaten og politimesteren kan uanset bestemmelserne i stk. 1 og 2 foretage uopsættelige handlinger, når forholdet må antages at være den, der kan besluttte eller begære påtale, ubekendt, og omstændighederne gør det antageligt, at påtale vil blive besluttet eller begæret. Tilbagekaldes en begæring efter stk. 2, inden der er afsagt dom, standses forfølgningen, medmindre påtalemyndigheden skønner, at almene hensyn kræver, at forfølgningen fortsættes.

**§ 721.** Påtale i en sag kan helt eller delvis opgives i tilfælde

1) hvor sigtelsen har vist sig grundløs,

2) hvor videre forfølgning i øvrigt ikke kan ventes at føre til, at sigtede findes skyldig, eller

3) hvor sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt.

*Stk. 2.* Adgangen til at opgive påtale i medfør af stk. 1, nr. 1, tilkommer politimesteren. I de øvrige tilfælde tilkommer adgangen påtalemyndigheden, medmindre andet følger af bestemmelser fastsat af justitsministeren.

**§ 722.** Tiltale i en sag kan helt eller delvis frafaldes i tilfælde

1) hvor den påsigtede lovovertrædelse efter loven ikke kan medføre højere straf end bøde, og forholdet er af ringe strafværdighed,

2) hvor det i medfør af § 723, stk. 1, fastsættes som vilkår, at sigtede undergives hjælpeforanstaltninger efter § 33 i lov om social bistand,

3) hvor sigtede var under 18 år på gerningstidspunktet, og der fastsættes vilkår efter § 723, stk. 1,

4) hvor straffelovens § 10 b eller § 89 er anvendelig, når det skønnes, at ingen eller kun en ubetydelig straf ville blive idømt, og at domfældelse heller ikke i øvrigt vil være af væsentlig betydning.

5) hvor sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt,

6) hvor lovgivningen indeholder særlig hjemmel for, at tiltale kan frafaldes, eller

7) hvor dette følger af bestemmelser fastsat af justitsministeren eller rigsadvokaten.

*Stk. 2.* I andre tilfælde kan tiltale kun frafaldes, hvis der foreligger særlig formildende omstændigheder eller andre særlige forhold, og påtale ikke kan anses for påkrævet af almene hensyn.

*Stk. 3.* Påtalemyndigheden kan frafalde tiltale i medfør af stk. 1, mens tiltalefrafald efter stk. 2 besluttes af den nærmeste overordnede anklagemyndighed.

§ 723. Som vilkår for tiltalefrafald kan fastsættes

1) at sigtede vedtager at betale en bøde eller indgår på konfiskation, og

2) samme vilkår som i betingede domme.

*Stk. 2.* Vilkår kan kun fastsættes, såfremt den sigtede i retten har afgivet en uforbeholden tilståelse, hvis rigtighed bestyrkes ved de i øvrigt foreliggende omstændigheder.

*Stk. 3.* Vilkårene fastsættes af den myndighed, der har adgang til at frafalde tiltalen. Vilkårene skal godkendes af retten.

*Stk. 4.* Såfremt et vilkår overtrædes, kan sagen genoptages.

§ 724. Ved afgørelse om påtaleopgivelse underrettes sigtede og andre, der må antages at have en rimelig interesse heri. Ved afgørelse om tiltalefrafald underrettes sigtede. En afgørelse om påtaleopgivelse kan påklages til den overordnede anklagemyndighed efter reglerne i kapitel 10. Sigtede kan efter samme regler klage over en afgørelse om tiltalefrafald.

*Stk. 2.* Er der truffet afgørelse om påtaleopgivelse eller tiltalefrafald, kan strafforfølgning mod den, der har været sigtet, kun fortsættes efter den overordnede anklagemyndigheds bestemmelse, hvis meddelelse herom er forkyndt for den pågældende inden 2 måneder fra afgørelsens dato, medmindre sigtedes forhold har hindret rettidig forkyndelse, eller betingelserne for genoptagelse efter § 975 er til stede.

§ 725. Retten til privat påtale og fremsættelse af begæring om offentlig påtale tilkommer den forurettede. Er denne umyndig, finder reglerne i § 257 anvendelse. Når den forurettede er død, eller når en mod en afdød rettet handling er strafbar, tilkommer retten til privat påtale eller til at begære offentlig påtale den afdødes ægtefælle, forældre, børn eller søskende.

*Stk. 2.* Den, der efter stk. 1 er berettiget til at påtale eller begære påtale, kan give afkald på denne ret. Dette gælder, selv om en sag er anlagt, eller begæring er fremsat.

§ 726. Lovovertrædelser, hvis offentlige påtale er betinget af en privat begæring, påtales af en efter § 725 berettiget, såfremt handlingen ikke kan medføre højere straf end hæfte. Indledes

offentlig forfølgning, finder reglerne i § 727, stk. 3, tilsvarende anvendelse.

§ 727. Såfremt en handling, der indeholder en lovovertrædelse, som er henvist til privat forfølgning, tillige indeholder en lovovertrædelse, der er undergivet offentlig påtale, kan påtalemyndigheden efter begæring af den private påtaleberettigede forfølge begge lovovertrædelser under eet. Den private kan i sådanne tilfælde på ethvert trin standse den efter begæring begyndte forfølgning.

*Stk. 2.* Offentlig påtale af en lovovertrædelse, der er henvist til privat forfølgning, kan ske, hvis almene hensyn kræver det. Dette gælder dog ikke, hvis der er afsagt dom i en privat straffesag om overtrædelsen, eller hvis retten til privat påtale vedrørende en overtrædelse, der er undergivet betinget offentlig påtale, alene følger af, at handlingen ikke kan medføre højere straf end hæfte, jf. § 726, 1. pkt.

*Stk. 3.* Når offentlig forfølgning er indledt efter stk. 2, ophører den privates ret til påtale. § 345 finder tilsvarende anvendelse. Den private kan tilslutte sig påtalemyndighedens forfølgning, hvis der straks afgives erklæring herom. Den private kan dog ikke kræve udsættelse af sagen, og det påhviler ikke tiltalte eller dennes forsvarer at afgive foreskrevne meddelelser til den private. Standser påtalemyndigheden den begyndte forfølgning, kan den private efter omstændighederne fortsætte sin påtale.

§ 728. Forfølgning kan opgives, sålænge der ikke er afsagt dom eller afgivet nævningeerklæring. Opgives forfølgning, efter at domsforhandling er begyndt, afsiger retten frifindelsesdom. I andre tilfælde udsteder retten efter anmodning skriftlig erklæring om, at en begyndt forfølgning er opgivet.«

**7.** *§ 731, stk. 1, litra e,* affattes således:

»e) når tiltale er rejst i sager, i hvilke der bliver spørgsmål om højere straf end bøde eller hæfte,»

**8.** *§ 749* affattes således:

»§ 749. Politiet afviser en indgivet anmeldelse, hvis der ikke findes grundlag for at indlede efterforskning.

*Stk. 2.* Er der ikke grundlag for at fortsætte en påbegyndt efterforskning, kan beslutningen om at indstille efterforskningen træffes af politiet, såfremt der ikke har været rejst sigtelse. Er sigtelse rejst, finder bestemmelserne i § 721 og § 722 anvendelse.

*Stk. 3.* Afvises anmeldelsen eller indstilles efterforskningen, underrettes de, der må antages at have rimelig interesse heri. Afgørelsen kan påklages til den overordnede anklagemyndighed efter reglerne i kapitel 10.«

**9.** *§ 752, stk. 2,* affattes således:

» *Stk. 2.* Justitsministeren fastsætter regler om, i hvilke tilfælde kommunalbestyrelsen skal underrettes om og have adgang til at overvære afhøringen af sigtede under 18 år.«

**10.** *§ 754 e* affattes således:

»§ 754 e. Reglerne i §§ 754 a - 754 d finder ikke anvendelse ved efterforskning af overtrædelser af straffelovens kapitel 12, §§ 111-115 og 118.«

**11.** *§ 791, stk. 2, 3. pkt.,* affattes således:

»Bestemmelserne i 2. pkt. finder ikke anvendelse på materiale, der er tilvejebragt som led i efterforskning af overtrædelser af straffelovens kapitel 12, §§ 111-115 og 118.«

**12.** I *§ 801, stk. 1, 1. pkt.,* ændres »statsadvokatens« til: »anklagemyndighedens«.

**13.** *§ 822, stk. 2, 2. pkt.,* ophæves.

**14.** *§ 842, stk. 1, nr. 2,* affattes således:

»2) at sagen ikke er undergivet offentlig påtale, eller«

**15.** I *§ 869, stk. 1,* ændres »om statsadvokaten har påtaleret« til: »om sagen er undergivet offentlig påtale«.

**16.** *§ 885, stk. 3,* affattes således:

bestemmelsen om Højesterets saglige kompetence, der idag kun nævner afgørelser truffet af landsretterne.

Bestemmelsen i den gældende § 693 om handlinger foretaget af en landsdommer som undersøgelsesdommer er ligesom den gældende bestemmelse om undersøgelsesdommere i § 686, 2. og 3. pkt., ikke medtaget i lovforslaget, idet bestemmelsen har mistet sin betydning i praksis.

### Til § 691.

Bestemmelsen i *stk. 1* er bortset fra en sproglig modernisering identisk med den gældende regel i § 691, stk. 1.

Den ændrede placering i forhold til de øvrige regler i kapitel 62 skyldes, at også Højesteret ex officio må prøve om en sag hører under dens kompetence.

*Stk. 2.* svarer til de gældende regler i § 692, stk. 2, 2. pkt., og § 691, stk. 2, om kære af afgørelser, der afslår nævningebehandling eller domsmænds medvirken.

Bestemmelsen er en undtagelse fra den almindelige regel i § 968, stk. 2, om, at kendelser, der afgives under forberedelse af domsforhandlingen, ikke kan kæres, når kendelsen indebærer sagens fremme ved den pågældende ret.

Bestemmelsen gælder også for afgørelser i medfør af færdselslovens og udlændingelovens regler om domsmænds medvirken, jf. lovforslagets § 3, nr. 1, og § 4.

### Til nr. 4.

Adgangen til efter § 698, stk. 1, nr. 2, at anlægge en straffesag ved tiltaltes hjemting frem for ved gerningsstedets værneting, jf. § 696, er efter den gældende bestemmelse knyttet til, at politimesteren har påtalekompetencen. Denne bestemmelse foreslås afløst af et afgrænsningskriterium svarende til det i øvrigt foreslåede afgrænsningskriterium for, hvilke sager der skal behandles efter retsplejelovens kapitel 80, og hvilke der kan behandles efter de forenklede procesmåder i kapitel 81. Der henvises til lovforslagets almindelige bemærkninger pkt. 5.2. og nedenfor til nr. 18 og 21.

### Til nr. 5.

Retsplejelovens kapitel 64 foreslås ophævet, idet bestemmelserne i kapitlet i det omfang, de efter Justitsministeriets opfattelse fortsat bør opretholdes, er indsat i forslaget til nyt kapitel 10 i retsplejeloven. Der henvises til bemærkningerne til nr. 2.

### Til nr. 6.

Den foreslåede affattelse af kapitel 65 indeholder nye regler om fordelingen af påtalekompetencen mellem statsadvokater og politimestre, jf. bestemmelsen i lovforslagets § 719. Endvidere fremsættes forslag til ændring eller ophævelse af de øvrige bestemmelser i kapitel 65, herunder reglerne om offentlige myndigheders adgang til påtale, betinget offentlig påtale, privat påtale samt påtaleundladelse m.v.

De foreslåede bestemmelser om påtaleopgivelse og tiltalefrafald svarer i det væsentligste til de nugældende bestemmelser i retsplejelovens § 723 og § 723 a samt til dels § 749. Den ændrede udformning tilsigter en bedre systematik for reglerne samt fastlæggelse af mere klare kompetenceregler også for politimesterens adgang til at opgive påtale og frafalde tiltale. Endvidere har Justitsministeriet i overensstemmelse med Retsplejerådets anbefaling anvendt en mere konsekvent sprogbrug for påtaleundladelser end de gældende regler i retsplejeloven. Således anvendes begrebet *påtaleopgivelse* for de tilfælde, hvor tiltalerejsning opgives som følge af, at en sigtelse må anses for grundløs, eller sagen af andre grunde, f.eks. manglende beviser, ikke kan gennemføres til domfældelse, og *tiltalefrafald* for de tilfælde, hvor tiltale undlades på trods af, at sagen ville kunne gennemføres til domfældelse.

Kapitlet er opbygget således, at der gives særskilte bestemmelser om henholdsvis påtaleopgivelse i § 721 og tiltalefrafald i §§ 722 og 723. Dernæst følger en bestemmelse om omgørelse og genoptagelse i § 724.

Reglerne i §§ 725-727 er en omskrivning af de gældende regler om påtale i straffesager, der er undergivet betinget offentlig påtale og privat påtale, mens lovforslagets § 728 omhandler påtaleopgivelse efter domsforhandlingens begyndelse.

### Til § 718

*Stk. 1.* er bortset fra en sproglig ændring identisk med den gældende regel i § 718.

Bestemmelsen i den gældende § 719, stk. 1, om, at påtalen tilkommer statsadvokaten, politimesteren, særlige forvaltningsmyndigheder og private, er ikke medtaget i lovforslaget, idet den må anses for overflødig som følge af bestemmelserne i §§ 719 og 720. Særlige forvaltningsmyndigheder nævnes ikke som påtaleberettigede, idet en række særlovsbestemmelser, som tillagde visse ministre og styrelser beføjelse til at træffe afgørelse om tiltalerejsning, blev ophævet i 1965. Endvidere benyttes særmyndighedernes adgang til efter § 724 at påtale særlovsovertrædelser ikke, og Justitsministeriet har således heller ikke medtaget denne bestemmelse i lovforslaget.

### Til § 719

Bestemmelsen indebærer en helt ny fordeling af påtalekompetencen mellem politimestrene og statsadvokaterne.

Om overvejelserne og de generelle kriterier for kompetenceafgrænsningen mellem statsadvokater og politimestre henvises til lovforslagets almindelige bemærkninger pkt. 3 og til betænkning nr. 1194/1990, kapitel 3, afsnit 4.2 og 4.3.

Efter Justitsministeriets opfattelse bør statsadvokaten således som udgangspunkt rejse tiltale i sager, der som første instanssager eller ankesager skal behandles ved landsretterne, mens politimesteren bør rejse tiltale i sager, der i første instans skal behandles ved byretterne. Der kan imidlertid ud fra forskellige hensyn være grund til at fravige dette afgrænsningskriterium. Man har herved lagt vægt på, om en byretssag vedrører særligt betydende samfundsinteresser, navnlig sager, der berører grundlovens frihedsrettigheder og forholdet til de øverste statsorganer. Endvidere lægges der bl.a. vægt på, om sagen kan rejse spørgsmål om politimesterens habilitet. Endelig bør strafferammen for den enkelte forseelse fortsat tillægges en vis betydning (et grovhedskriterium).

På grundlag af disse overvejelser foreslås det i *stk. 1*, at kompetencen til påtale - i modsætning til gælden de ret - som udgangspunkt tilkommer politimesteren, mens statsadvokaten påtaler de sager, som i overensstemmelse med ovennævnte retningslinier, bør være undergivet dennes påtalekompetence.

Herefter påtaler statsadvokaten efter *stk. 2, nr. 1,* sager, der skal behandles ved landsretterne i første instans (nævningesager) eller som ankesager, jf. lovforslagets § 687 og § 689. Denne angivelse af påtalekompetencen har naturlig sammenhæng med, at det er statsadvokaten, der repræsenterer anklagemyndigheden i landsretten.

Statsadvokaten påtaler endvidere efter *stk. 2, nr. 2,* en række opregnede overtrædelser af straffeloven, uanset om sagerne skal behandles i byretten, og det er politimesteren, der giver møde i sagen.

Efter *stk. 3* foreslås påtalekompetencen herudover reguleret i administrative bestemmelser, således at påtalekompetencen for nærmere opregnede lovovertrædelser eller typetilfælde undtagelsesvis kan henlægges til statsadvokaten. Dette vil f.eks. være hensigtsmæssigt med hensyn til overtrædelse af straffelovens §§ 119 og 121 begået over for politifolk, hvor der kan rejses

Copyright © 2021 Karnov Group Denmark A/S            side 20

spørgsmål om politimesterens inhabilitet ved afgørelsen af tiltalespørgsmål. I øvrigt kan det i medfør af bestemmelsen pålægges politimesteren at forelægge opregnede lovovertrædelser, som påtales af politimesteren, f.eks. atypiske og sjældent forekommende sager, for statsadvokaten forinden tiltalerejsning eller forinden acquiescens (jf. de gældende forelæggelsesregler i Justitsministeriets cirkulæreskrivelse af 29. juni 1984).

Ved denne udformning af § 719 tilsigtes indført en fleksibel ordning, som også vil gøre det muligt at henlægge påtalen til statsadvokaten i en overgangsperiode, f.eks. for i forbindelse med ny lovgivning at sikre en ensartet tiltalepraksis.

I særlovgivningen findes der en række bestemmelser, hvorefter sager om overtrædelse af loven behandles som politisager, uanset at strafferammen er højere end bøde eller hæfte. Da den foreslåede regel i § 719, stk. 1, medfører, at politimesteren påtaler også sådanne sager, kan disse bestemmelser ophæves. I det omfang, påtalekompetencen ved anden lovgivning er tillagt andre myndigheder inden for anklagemyndigheden end politimesteren, må reglerne herom ophæves, således at det ved bekendtgørelse fastsættes, hvilken myndighed der har påtalekompetencen. Dette gælder f.eks. for straffelovens § 11, jf. lovforslagets § 2, nr. 2, medicanværslovens § 28 og lægelovens § 18, stk. 2.

Justitsministerens, rigsadvokatens og statsadvokatens adgang til i medfør af deres overordnede stilling at gribe ind i konkrete sager, jf. lovforslagets nr. 2, §§ 98, stk. 3, 99, stk. 2, og 101, stk. 2, begrænses ikke af bestemmelsen i § 719. Der vil ligeledes i medfør af disse bestemmelser i kapitel 10 fortsat kunne udstedes generelle regler om sagernes behandling, om forelæggelse forinden afgørelse af tiltalespørgsmålet m.v.

### Til § 720

Bestemmelsen i *stk. 1* erstatter den gældende § 722, stk. 1, nr. 1, hvorefter justitsministerens befaling til påtale kræves, for så vidt angår embedsmænds forbrydelser i embedsforhold og andre forbrydelser, ved hvilke dette er særlig foreskrevet. Hensigten med at bemyndige justitsministeren til ved bekendtgørelse at fastsætte, at offentlig påtale i visse nærmere angivne sager er betinget af justitsministerens eller rigsadvokatens beslutning, er at opnå en samlet administrativ regulering af disse tilfælde. Bestemmelsen skal ses i sammenhæng med lovforslagets § 719, stk. 3. Beføjelsen efter § 719, stk. 3, og § 720, stk. 1, kan af justitsministeren delegeres til rigsadvokaten, således at administrative bestemmelser udstedes af rigsadvokaten efter forhandling med Justitsministeriet og den øvrige anklagemyndighed.

Det foreslås, at de særlige bestemmelser om påtale i straffelovens § 6, stk. 2, § 8, stk. 2-3, § 11, § 110 f, § 118 a og § 140, ophæves og indarbejdes i en sådan bekendtgørelse. Der henvises herom til bemærkningerne til lovforslagets § 2.

Bestemmelserne i *stk. 2 og 3* er identiske med de gældende regler i § 722, stk. 1, nr. 3, og stk. 2, bortset fra en sproglig modernisering.

Bestemmelsen i § 722, stk. 1, nr. 2, er ikke medtaget i lovforslaget, idet lovgivningen ikke længere indeholder regler, som gør offentlig påtale betinget af påtalebegæring fra en offentlig myndighed.

### Til § 721

Bestemmelsen samler de regler i § 723 og § 749, der vedrører anklagemyndighedens adgang til at opgive påtale i tilfælde, hvor sigtelse er rejst.

Ifølge *stk. 1, nr. 1,* kan påtale i en sag helt eller delvis opgives, hvis sigtelsen har vist sig grundløs, hvis den påsigtede forhold ikke er strafbart, eller hvis der er rejst sigtelse mod en person, som åbenbart ikke har forøvet et strafbart forhold. Bestemmelsen svarer til den gældende § 749, stk. 1, 2. pkt., in fine.

*Stk. 1, nr. 2,* omfatter de tilfælde, hvor der vel er tilvejebragt visse beviser for sigtedes skyld, men hvor det anses for usandsynligt, at sagen kan gennemføres til domfældelse, f.eks. på grund af for svage beviser, eller fordi sigtede er beskyttet af eksterritorialitet.

*Stk. 1, nr. 3,* svarer til den gældende regel i § 723, stk. 3, om opgivelse af påtale af ressourcemæssige årsager, bortset fra, at den ikke omfatter tiltalefrafald. Bestemmelsen om adgangen til tiltalefrafald i disse tilfælde er indsat i lovforslagets § 722, stk. 1, nr. 5.

*Stk. 2.* indeholder regler om kompetencen til at opgive påtale i de i stk. 1, nr. 1-3, nævnte tilfælde. Adgangen til at opgive påtale i de tilfælde, hvor sigtelsen har vist sig grundløs, er som efter gældende ret tillagt politimesteren og omfatter som hidtil både sigtelser i sager, hvor politimesteren har påtalekompetencen, og sager, hvor påtalekompetencen er tillagt statsadvokaten. I de øvrige tilfælde tilkommer adgangen til at opgive påtale påtalemyndigheden, medmindre justitsministeren træffer anden bestemmelse. Bestemmelsen svarer til den gældende regel i § 749, stk. 1, 3. pkt. Ved Justitsministeriets forslag om omlægning af tiltalekompetencen mellem politimestrene og statsadvokaten, udvides politimestrenes påtalekompetence betydeligt, jf. lovforslagets § 719. Endvidere medfører udformningen af reglen om påtaleopgivelse, at politimesteren vil kunne opgive påtale efter stk. 1, nr. 3, som svarer til den gældende § 723, stk. 3, i alle sager, hvor politimesteren har påtalekompetencen, og ikke kun i de sager, som er nævnt i de gældende § 721, stk. 1, nr. 4.

På den baggrund forslås det, at justitsministeren eller rigsadvokaten efter bemyndigelse får adgang til om fornødent at fastsætte bestemmelser, som indebærer en ændret fordeling af kompetencen til at træffe bestemmelse om påtaleopgivelse efter stk. 1, nr. 2 og 3.

Der kan således fastsættes nærmere retningslinier for adgangen til påtaleopgivelse og om forudgående forelæggelse for den overordnede myndighed som ved Justitsministeriets cirkulæreskrivelse af 29. juni 1984 og 16. november 1987.

### Til § 722

Bestemmelsen vedrører anklagemyndighedens adgang til at meddele tiltalefrafald, dvs. anklagemyndighedens afkald på at rejse tiltale i situationer, hvor domfældelse må anses for sandsynlig eller sikker, men hvor domfældelse anses for unødvendig eller uhensigtsmæssig.

Efter gældende ret tilkommer det som udgangspunkt rigsadvokaten at meddele tiltalefrafald i statsadvokatsager, jf. § 723, stk. 2, hvorefter rigsadvokaten under hensyn til særlig formildende omstændigheder kan undlade påtale, hvis det kan ske uden skade for nogen offentlig interesse. I tvivlstilfælde skal rigsadvokaten forelægge sagen for justitsministeren til afgørelse, jf. § 723, stk. 2, 2. pkt. Statsadvokaten kan dog meddele tiltalefrafald i statsadvokatsager i de i § 723, stk. 1, nr. 1-5, og stk. 3, nævnte tilfælde.

Politimesteren kan i de i § 723, stk. 1, nr. 1-5, og stk. 3, nævnte tilfælde meddele tiltalefrafald i de sager, som påtales af politimestrene i medfør af § 721, stk. 1, nr. 4, jf. § 723, stk. 4. Hvis baggrunden for politimesterens ønske om at frafalde tiltale er, at der foreligger særlig formildende omstændigheder, skal sagen forelægges for statsadvokaten, jf. § 723, stk. 4, 2. pkt.

I andre sager, der påtales af politimesteren, er hjemlen for tiltalefrafald noget uklar. Det fremgår af retsplejelovens § 749, stk. 1, 3. pkt., at adgangen til at træffe bestemmelse om at indstille forfølgningen tilkommer politimesteren. Det er ikke udtrykkeligt angivet i retsplejeloven, i hvilke tilfælde politimesteren kan meddele tiltalefrafald, men det antages i teorien, jf. Koktvedgaard og Gammeltoft-Hansen, Lærebog i Strafferetspleje, sider 103, at

politimesteren må følge de grundprincipper, som gælder for anklagemyndigheden i øvrigt. Herudover antages politimestrene at have en vis adgang til at frafalde tiltalen i politisager, hvor forseelsen er bagatelagtig. Sådanne sager afgøres i et vist omfang med en advarsel fra politimesteren.

I lovforslagets *stk. 1* opregnes de tilfælde, hvor tiltalefrafald oftest vil komme på tale.

Bestemmelsen i *stk. 1, nr. 1* er ny og foreslås indføjet for at skabe en udtrykkelig hjemmel for den efter praksis gældende adgang til at meddele tiltalefrafald i sager vedrørende bagatelagtige forseelser. Det kræves, at lovovertrædelsens strafferamme er begrænset til bøde, og herudover, at forholdet er af ringe strafværdighed.

Omfattet af nr. 1 er således de tilfælde, som generelt betragtes som mindre strafværdige, bl.a. en del af de forhold, som efter fast praksis afgøres af politimesteren med en advarsel, f.eks. mindre butikstyverier.

Herudover omfatter bestemmelsen bødedelikter, som på grund af de objektive eller subjektive omstændigheder, der foreligger i den konkrete sag, må betragtes som mindre strafværdige i forhold til tilsvarende forseelser. Som eksempel kan nævnes tilfælde, hvor personer, som må anses for omfattet af straffelovens § 16 eller § 69, stk. 1, begår ubetydelige overtrædelser af færdselsloven, der ikke kan »bære« en videre forfølgning.

Lovforslagets *stk. 1, nr. 2-4 og nr. 6,* svarer med sproglige ændringer til den gældende regler i § 723, stk. 1, nr. 1-4.

Bestemmelsen i *stk. 1, nr. 5,* er identisk med den nugældende bestemmelse i § 723, stk. 3, bortset fra, at adgangen til at *opgive* påtale i disse tilfælde fremgår af lovforslagets § 721, stk. 1, nr. 3. Det bemærkes, at forslagets *stk. 1, nr. 5,* også giver mulighed for at frafalde tiltalen, hvor dette må anses for at være uden betydning for straffens fastsættelse, således som det sker i praksis for at få en sag om f.eks. 30 indbrud, hvoraf de to nægtes, afgjort efter retsplejelovens § 925 om tilståelsessag.

Bestemmelsen i *stk. 1, nr. 5* er den gældende regel i § 723, stk. 1, nr. 5, dog med den ændring, at der tillige gives rigsadvokaten adgang til at fastsætte generelle bestemmelser som hjemmel for tiltalefrafald i andre tilfælde end de i stk. 1, nr. 1-6, angivne. Reglen tilsigter at supplere bestemmelsen i stk. 1, nr. 1, idet denne alene giver adgang til tiltalefrafald, såfremt strafferammen ikke er højere end bøde. Der er imidlertid behov for at politimestrene i visse sager, hvor strafferammen indeholder frihedsstraf, kan frafalde tiltale uden foreleggelse for statsadvokaten. Dette gælder således f.eks. ved mindre overtrædelser af lov om euforiserende stoffer, som har en strafferamme på bøde, hæfte eller fængsel i indtil 2 år.

Forslagets *stk. 2,* hvorefter tiltale kan frafaldes på grund af særlig formildende omstændigheder eller andre særlige forhold, og påtale ikke kan anses for påkrævet af almene hensyn, afløser den gældende § 723, stk. 2, og skal ses i sammenhæng med kompetencebestemmelsen i stk. 3. Det forudsættes, at der kan meddeles tiltalefrafald i samme omfang som hidtil efter § 723, stk. 2. Om praksis henvises til Anklagemyndighedens Årsberetninger.

*Stk. 3.* vedrører kompetencen til at meddele tiltalefrafald. Kompetencen tilkommer i de i stk. 1, nr. 1-7, nævnte tilfælde påtalemyndigheden, dvs. politimesteren eller statsadvokaten, jf. lovforslagets § 719. Reglen indebærer, at politimesterens adgang til at meddele tiltalefrafald klargøres i forhold til de gældende regler i retsplejeloven. Den almindelige adgang til at meddele tiltalefrafald, som hidtil har været tillagt rigsadvokaten, jf. § 723, stk. 2, henlægges til den nærmeste overordnede anklagemyndighed. I praksis vil dette medføre, at statsadvokaterne tillægges kompetencen til at afgøre langt de fleste sager om tiltalefrafald på grund af særlig formildende omstændigheder.

## Til § 723

Bestemmelsen afløser den gældende § 723 a om fastsættelse af vilkår for tiltalefrafald.

Bestemmelsen i *stk. 1* svarer i sit indhold til den gældende § 723 a, stk. 1 og 2. Det er ikke som nu angivet i lovteksten, at betaling af erstatning kan fastsættes som vilkår for et tiltalefrafald, idet dette fremgår af straffelovens § 57, stk. 1, om fastsættelse af vilkår for en betinget straf.

*Stk. 2.* svarer til den gældende § 723 a, stk. 3, 1. pkt.

I *stk. 3* indføjes som en ny bestemmelse, at vilkårene fastsættes af den myndighed, der har adgang til at frafalde tiltalen. Der er herved blot tale om en tydeliggørelse af de gældende regler. De af anklagemyndigheden fastsatte vilkår skal som hidtil godkendes af retten.

*Stk. 4.* svarer til den gældende § 723 a, stk. 4.

## Til § 724

Bestemmelsen afløser de gældende regler i § 749, stk. 2 og 3, om underretning ved påtaleundladelse og om omgørelse af beslutninger om påtaleundladelse.

Bestemmelsen i *stk. 1, 1. pkt.,* fastslår en almindelig pligt til underretning af den sigtede og andre, der må antages at have en rimelig interesse i underretning om en afgørelse om påtaleopgivelse. Underretningspligten gælder i forhold til parter i sagen, dvs. personer som har en væsentlig, direkte, individuel og retlig interesse i en sags udfald. Den forurettede bør underrettes, uanset om denne er part.

I forhold til den gældende § 749, stk. 2, foreskrives der ikke en almindelig pligt til underretning af anmelderen, idet denne i en del tilfælde ikke har nogen rimelig interesse heri. Det gælder f.eks., hvor anmeldelse om et trafikuheld er indgivet af en tilfældig forbipasserende, som ikke er involveret i uheldet. I øvrigt må spørgsmålet om underretning afgøres efter de konkrete foreliggende omstændigheder.

*Stk. 1, 2. pkt.,* foreskriver pligt til underretning af sigtede om afgørelser om tiltalefrafald. I de tilfælde, hvor der fastsættes vilkår for tiltalefrafaldet, kræves det ifølge lovforslagets § 723, at den sigtede i retten afgiver en uforbeholden tilståelse, og at retten godkender vilkårene for tiltalefrafaldet. Underretning af sigtede sker i disse tilfælde i det retsmøde, som afholdes vedrørende tiltalefrafaldet. I andre tilfælde skal underretning om tiltalefrafaldet gives ved skriftlig meddelelse til sigtede.

*Stk. 1, 3. pkt.,* indeholder en henvisning til reglerne om klage i kapitel 10, som foreslås udformet, således at der gælder et to-instansprincip og en frist på 4 uger for klage over afgørelser truffet af anklagemyndigheden, jf. lovforslagets nr. 2, jf. § 98, stk. 4, § 99, stk. 3, og § 101, stk. 2, og bemærkningerne hertil. Det følger af forvaltningslovens § 25, stk. 1, at afgørelser, som kan påklages, når de meddeles skriftligt, skal være ledsaget af en vejledning om klageadgang med angivelse af klageinstans og oplysning om fremgangsmåden ved indgivelse af klage, herunder om eventuel tidsfrist. Dette gælder dog ikke, hvis afgørelsen fuldt ud giver den pågældende part medhold. Det forudsættes dog, at der som hidtil gives den sigtede meddelelse om den overordnede anklagemyndigheds adgang til at omgøre en beslutning om påtaleopgivelse, jf. den gældende regel i § 749, stk. 3, 1. pkt., og lovforslagets § 724, stk. 2.

Klage over et meddelt tiltalefrafald indgives ligesom klage over påtaleopgivelse i overensstemmelse med reglerne i retsplejelovens kapitel 10, jf. *stk. 1, 4. pkt.*

Som det fremgår af 4. pkt., kan tiltalefrafald påklages af sigtede. Heraf følger, at der ikke er en almindelig adgang for andre til at påklage en afgørelse om tiltalefrafald. Af samme grund og i

overensstemmelse med den fremgangsmåde, der i dag anvendes i praksis, og som ikke har givet anledning til kritik, er der efter 2. pkt. ikke nogen pligt for anklagemyndigheden til at underrette andre end sigtede i forbindelse med tiltalefrafald.

Baggrunden herfor er, at sigtede ved et tiltalefrafald anses for skyldig i det påsigtede forhold. Denne afgørelsesform kan således i forhold til sagens øvrige parter og andre implicerede sammenlignes med en dom, hvor der ikke består nogen almindelig pligt til underretning om afgørelsen.

Der kan dog fortsat efter en konkret vurdering i den enkelte sag gives underretning f.eks. til en person, der har et erstatningskrav i anledning af lovovertrædelsen, og som må antages at have interesse i snarest at indlede sag herom i den borgerlige retsplejes former. Ligeledes vil det f.eks. være naturligt at underrette et forsikringsselskab om, at en sag er sluttet med tiltalefrafald, hvis dette er af væsentlig betydning for forsikringsselskabets videre behandling af et spørgsmål om erstatning i anledning af en lovovertrædelse.

Endvidere skal anklagemyndigheden underrette parter, til hvem sigtede ifølge vilkår i et tiltalefrafald har forpligtet sig til at betale erstatning.

Parter og andre kan i øvrigt få oplysninger om udfaldet af en straffesag, herunder om et meddelt tiltalefrafald, i overensstemmelse med reglerne i forvaltningsloven om adgangen til at meddele oplysninger om straffesager.

Indgives klage over et tiltalefrafald af en person, der ikke er klageberettiget (dvs. af andre end sigtede), foreligger ingen pligt for den overordnede myndighed til at realitetsbehandle klagen. Den overordnede myndighed kan dog benytte sin almindelige adgang til at tage en sag op og i den forbindelse give pålæg m.v. vedrørende sagens behandling. Anklagemyndigheden kan således også på grundlag af en klage træffe bestemmelse om omgørelse af et meddelt tiltalefrafald under iagttagelse af bestemmelsen i lovforslagets § 724, stk. 2.

Bestemmelsen i stk. 2 om den overordnede anklagemyndigheds adgang til at omgøre en beslutning om påtaleopgivelse eller tiltalefrafald svarer i sit indhold til den gældende § 749, stk. 3, 2. pkt. Det er i forslaget præciseret, at bestemmelsen gælder for både tiltalefrafald og påtaleopgivelse, herunder også tiltalefrafald på vilkår, jf. lovforslagets § 723. For genoptagelse af tiltalefrafald som følge af vilkårsovertrædelse gælder dog reglen i lovforslagets § 723, stk. 4, som svarer til den gældende § 723 a, stk. 4.

Den i bestemmelsen fastsatte to-månedersfrist gælder i tilfælde, hvor der har været rejst sigtelse. Det må dog antages, at fristen også gælder, hvor der ikke formelt har været rejst sigtelse, men hvor en person med føje har anset sig som sigtet, f.eks. fordi den pågældende er afhørt »med en sigtets rettigheder«, ligesom fristen, således som det formentlig allerede i dag er gældende ret, må overholdes i tilfælde, hvor det ved en fejl er meddelt en ikke-sigtet person, at omgørelse kun kan ske inden udløbet af 2 måneder.

Omgørelse til gunst for den sigtede må antages at kunne finde sted i videre omfang, dvs. efter udløbet af to-månedersfristen. Skal der fastsættes mildere vilkår for et betinget tiltalefald skal retten dog medvirke, således at de ændrede vilkår skal forelægges for retten til godkendelse. Såfremt anklagemyndigheden træffer beslutning om at lade vilkårene for et betinget tiltalefrafald falde bort, kræves rettens medvirken derimod ikke.

Det har hidtil været antaget, at to-månedersfristen for omgørelse af den underordnede anklagemyndigheds afgørelse ikke gjaldt, hvis beslutningen om påtaleundladelse ikke var truffet af den kompetente myndighed. Ved dommen i Ugeskrift for Retsvæsen 1989, side 116, afviste Højesteret imidlertid en sag, hvorunder der var rejst tiltale for overtrædelse af færdselsloven, efter at det i pressen var

meddelt, at politiet gerne ville i kontakt med den pågældende bilist - ikke for at rejse sigtelse i anledning af færdselslovsovertrædelsen - men for at afklare nogle spørgsmål med hensyn til forsikring. Efterlysningen skete ved den vagthavende politiassistent den 29. januar 1987. Tiltale blev rejst ved politimesterens anklageskrift af 23. april 1987. Der blev under sagen nedlagt påstand om betinget frakendelse af førerretten. Højesteret udtalte, at anklagemyndighedens behandling af sagen havde været egnet til at fremkalde en berettiget forventning hos tiltalte om, at der ikke ville blive rejst tiltale mod ham, og anklagemyndigheden anså derved at have afskåret sig fra at rejse tiltale for færdselsforseelsen.

Det kan ikke udledes af dommen, om retten ville være nået til et andet resultat, såfremt tiltalen var rejst mindre end 2 måneder efter efterlysningen i pressen, eventuelt efter beslutning af statsadvokaten.

### Til § 725

Bestemmelsen svarer til reglerne i § 719, stk. 2 og 3, om privat påtale og begæring om offentlig påtale. Bestemmelsen skal ses i sammenhæng med reglerne i straffelovens § 96, som bl.a. fastsætter en 6 måneders frist for adgangen til at anlægge privat straffesag og til at fremsætte begæring om offentlig påtale.

### Til § 726

Bestemmelsen svarer til de gældende bestemmelser i § 726, stk. 2 og 3, om private straffesager. Henvisningen i den gældende § 726, stk. 3, til § 725, stk. 1, hvorefter private straffesager behandles efter reglerne om den borgerlige retspleje er udeladt, idet reglerne om fremgangsmåden efter Justitsministeriets opfattelse ikke hører hjemme i kapitel 65 om påtalen, jf. bemærkningerne nedenfor til nr. 33 og 34. Endvidere er bestemmelsen i stk. 1 udeladt som unødvendig.

### Til § 727

Bestemmelsen svare i sit indhold til de gældende regler i § 725, stk. 2-4. Bestemmelserne er dog omformuleret, således at den kompetence, som efter gældende ret tilkommer statsadvokaten til at træffe bestemmelse om offentlig forfølgning, hvis almene hensyn kræver det, efter forslaget ikke henlægges til en bestemt myndighed inden for anklagemyndigheden. Kompetencen vil herefter som udgangspunkt tilkomme politimesteren, jf. lovforslagets § 719, stk. 1.

Den gældende regel i § 725, stk. 1, foreslås placeret i retsplejelovens kapitel 88, jf. bemærkningerne nedenfor til nr. 33 og 34.

### Til § 728

Bestemmelsen svarer til den gældende § 728, idet det dog er præciseret, at bestemmelsen omfatter opgivelse af videre påtale. For så vidt angår bestemmelsen i 2. pkt. om afsigelse af frifindelsesdom, når domsforhandling er begyndt, forudsættes det, at bestemmelsen i retsplejelovens § 35, stk. 5, om, at domme indføres fuldstændigt i dombogen, ikke er til hinder for, at frifindelsesdom - som det forekommer i praksis - efter omstændighederne i stedet kan tilføres retsbogen.

### Til nr. 7.

Bestemmelsen i § 731, stk. 1, litra c, om obligatorisk forsvarerbeskikkelse efter begæring foreslås formuleret på samme måde som i nr. 4. Ændringen er en konsekvens af forslaget om afgrænsningen mellem sager, der skal behandles efter kapitel 80 og 81.

### Til nr. 8.

Som følge af forslaget om at samle reglerne om påtaleopgivelse og tiltalefald over for sigtede i lovforslagets §§ 721-724, vedrører

Copyright © 2021 Karnov Group Denmark A/S

# STRAFFE RET 2

## SANKTIONER

PÅ GRUNDLAG AF GORM TOFTEGAARD NIELSENS

LASSE LUND MADSEN
JENS RØN

**Djøf Forlag**

Lasse Lund Madsen og Jens Røn - 9788771986952
Downloadet fra hmahsbliotek.dk, 02/14/2025 04:58:05PM by handmadsen@law.au.dk
via Lasse Madsen

# STRAFFERET 2

## Sanktionerne

Download
Lund    Jens Rm   9768771986952
02/14/2025 01:58:05PM by lundmadsen@law.au.dk
via Lasse Madsen

# Lasse Lund Madsen & Jens Røn

På grundlag af Gorm Toftegaard Nielsens

# STRAFFERET 2

## Sanktionerne

5. udgave



Djøf Forlag
2024

Download: lawlibrary.dk

Retten vil – i modsætning til tidligere[6] – i en betinget dom *altid* udmåle fængselsstraffen. Den skal umiddelbart blot ikke fuldbyrdes. En betinget dom indebærer således, at domfældte kun skal i fængsel, hvis han overtræder vilkårene for den betingede dom, typisk hvis han på ny begår kriminalitet. En anden mulighed er at idømme samfundstjeneste. Det er formelt en betinget dom, hvor den centrale betingelse er, at den dømte udfører samfundstjeneste. Denne strafform blev oprindeligt indført for at træde i stedet for visse ubetingede fængselsstraffe. Der er således tale om en strafform, der er strengere end de øvrige betingede domme. Imellem den ubetingede og den betingede fængselsstraf findes muligheden for at idømme en kombinationsdom, hvor kun en del af den idømte straf skal afsones.

Ud over de her nævnte straffe indeholder § 70 hjemmel til at idømme visse særligt farlige personer forvaring, hvilket er en tidsubestemt indespærring. Straffeloven regner formelt ikke denne sanktion for en straf, men det svarer givetvis ikke til realiteten. I straffuldbyrdelseslovens § 1 nævnes forvaring da også på linje med de ovenfor nævnte straffe.[7] Tilsvarende kan den i § 74 a omhandlede ungdomssanktion, der heller ikke i loven er placeret blandt straffene, indebære op til 12 måneders indespærring i en sikret afdeling på en døgninstitution. Denne sanktion har nok betydelig lighed med den, man andre steder kalder ungdomsfængsel.[8]

Ud over de her nævnte pønale sanktioner med hjemmel i straffeloven meddeles tiltalefrafald med vilkår svarende til betingede domme eller med indgåelse af en ungdomskontrakt. For så vidt angår sidstnævnte findes hjemlen hertil i retsplejelovens § 722, stk. 1, nr. 2 og 3, jf. § 723, stk. 1, og lov om social service § 52.[9] Der er tale om en specielt udviklet pønal reaktion over for unge

---

6. Ved lov nr. 152 af 18.2.2015 (med ikrafttræden pr. 1.5.2015) ophørte muligheden for, at retten kunne vælge at idømme en betinget dom uden straffastsættelse, hvilket indtil da ansås for den mildeste form for betinget dom.

7. I den norske straffelovs § 15 og i forslaget til ny straffelov nævnes forvaring blandt straffene, jf. NOU 2002:4 s. 477.

8. Jf. Jørn Vestergaard: Den særlige ungdomssanktion i TFK 2003.3 ff. og samme: Sanktioner, s. 130 ff. Om ungdomsfængsel se Vagn Greve: Straffene, s. 175 f.

9. Se hertil Rigsadvokatmeddelelsen, afsnittet: Behandlingen af sager mod unge lovovertrædere, pkt. 5.2.6.

13

lovovertrædere, som naturligt må betragtes som en strafferetlig reaktion, uanset at den må anses for mildere end en betinget dom med tilsvarende vilkår.[10] I praksis bruges denne sanktionsform sjældent i dag. I 2007 blev på landsplan alene 76 sager afgjort på denne måde. I 2015 var tallet faldet til 15, i 2021 til 2 og endelig blev der i 2022 ifølge Danmarks Statistik slet ikke givet nogen tiltalefrafald med vilkår om ungdomskontrakt. Udviklingen hænger muligvis sammen med et generelt skærpet syn på straf, også når det kommer til unge lovovertrædere. Siden 2019, hvor Ungdomskriminalitetsnævnet blev lovfæstet, har udviklingen herudover utvivlsomt haft sammenhæng hermed.[11]

Med det forbehold, at et skema aldrig er helt retvisende, men kun giver et overblik over hovedtendenserne, kan straffene opstilles i følgende skala med den strengeste straf øverst.

1. Ubetinget fængsel afsonet i lukket fængsel (eller arresthus).
2. Forvaring.
3. Ubetinget fængsel afsonet i åbent fængsel.
4. Ubetinget fængsel afsonet i hjemmet med elektronisk fodlænke.
5. Ungdomssanktion.
6. Kombinationsdom.
7. Betinget dom med vilkår om samfundstjeneste.
8. Betinget dom med straffastsættelse og andre særvilkår.
9. Betinget dom med straffastsættelse, men uden særvilkår.
10. Tiltalefrafald med vilkår efter rpl. § 723.
11. Bøde.
12. Tiltalefrafald uden vilkår efter rpl. § 722.

Straffeloven indeholder de grundlæggende regler om disse sanktioner (bortset fra tiltalefrafald, der er reguleret i retsplejelovens § 722 og § 723). Indtil lov nr. 432 af 31.5.2000 om fuldbyrdelse

---

10. Tiltalefrafald uden vilkår optages ikke på straffeattesten. Tilsvarende for så vidt angår tiltalefrafald med vilkår om ungdomskontrakt, hvorimod andre tiltalefrafald med vilkår medtages indtil 2 år fra datoen for tiltalefrafaldets godkendelse i retten, jf. herved bekendtgørelse om behandling af personoplysninger i Det Centrale Kriminalregister (Kriminalregisteret), bkg. 1860 af 23.9.2021, § 11, stk. 3, nr. 1 og stk. 4, nr. 1.

11. Vilkår om at efterkomme en afgørelse fra Ungdomskriminalitetsnævnet er nærmere gennemgået nedenfor under betingede domme.

14

*1. Straffene*

af straf m.v. indeholdt straffeloven reglerne om de forskellige straffe, om deres fastsættelse i det enkelte tilfælde, om prøveløsladelse og enkelte regler om afsoningen. I øvrigt var afsoningen reguleret ved en lang række administrative forskrifter. I over hundrede år har det været betragtet som væsentligt med en lovregulering af straffesagens gang under efterforskningen og under hovedforhandlingen, mens domsfuldbyrdelsen ikke har haft lovgivers tilsvarende interesse, selv om denne fase naturligvis er af stor betydning for dem, der bliver dømt. Tidligere tiders strafferet og straffeproces har haft en forståelig opfattelse af, at kræfterne måtte samles om at sikre, at uskyldige ikke blev dømt. Tankegangen har sammenhæng med betoningen af, at det strafferetlige legalitetsprincip navnlig angår skyldsspørgsmålet. Retssikkerheden for de dømte (og dermed skyldige) var mindre væsentlig. Nu er straffuldbyrdelsen som nævnt reguleret ved en særlig lov, der både er detaljeret og ganske omfangsrig, ligesom den suppleres af en lang række bekendtgørelser og cirkulærer. Der er således tale om et omfattende regelværk, der ikke vil blive gennemgået i detaljer i denne fremstilling. Kun enkelte regler, som er væsentlige for forståelsen af de ovenfor nævnte straffe, vil blive omtalt. Den interesserede læser henvises til Hans Jørgen Engbo: Straffuldbyrdelsesret – Fængsel og forvaring, 2022 og Jakob Schiøler og Ane Dragsted: Straffuldbyrdelsesloven – Med kommentarer, 2. udg., 2017.

I øvrigt vil fremstillingen begrænse sig til en gennemgang af de forskellige straffe og andre sanktioner, hvorledes disse fastsættes i det enkelte tilfælde og til prøveløsladelse, der fortsat er reguleret i straffeloven, selv om man kunne hævde, at prøveløsladelse vedrører fuldbyrdelsen af den idømte straf. Når prøveløsladelse alligevel behandles her, er det, fordi instituttet har væsentlig betydning for forståelsen af straffastsættelsen. Den følgende behandling følger ikke den ovenfor nævnte opstilling. Det er f.eks. ikke hensigtsmæssigt at behandle kombinationsdomme før betingede domme, fordi kombinationsdomme netop er en kombination af ubetinget og betinget fængselsstraf. Også på andre punkter er systematikken forskellig fra opstillingen.

**Systematik**

15

**U.2016.1236H**
**TfK2016.336/2**

*Anklagemyndigheden havde afgivet bindende påtalebegrænsning i sag om narkokriminalitet.*

*Retspleje 322.9.*

♦ Under forberedelsen af en straffesag for byretten opstod der spørgsmål om, hvorvidt anklagemyndigheden havde afgivet et bindende tilsagn om påtalebegrænsning over for T1 og T2 i en sag om overtrædelse af straffelovens § 191. Ved byrettens behandling af spørgsmålet havde anklagemyndigheden og de tiltaltes forsvarere erklæret sig enige i, at det kunne lægges til grund for rettens afgørelse, at anklagemyndigheden over for T1 og T2 var fremkommet med en klar tilkendegivelse om, at anklagemyndigheden ville frafalde et af forholdene mod hver af de tiltalte, hvis den pågældende kunne tilstå det andet forhold. Der var enighed om, at denne tilkendegivelse var blevet meddelt T1 og T2, der havde accepteret tilkendegivelsen, hvilket der var blevet givet anklagemyndigheden meddelelse om. Der var endvidere enighed om, at anklagemyndighedens tilkendegivelser var fremsat af en medarbejder, der havde mandat hertil. Byretten fandt, at der i forhold til begge de tiltalte

**1237**

forelå en bindende påtalebegrænsning. Landsretten fandt efter det konkrete sagsforløb for hver af de tiltalte, at dette kun var tilfældet i forhold til T2. Højesteret tiltrådte byrettens bedømmelse, hvorefter der under de omstændigheder, som fremgik af byrettens kendelse, og som anklagemyndigheden ikke efterfølgende havde fragået, i forhold til både T1 og T2 forelå en bindende påtalebegrænsning med det indhold, der var angivet i byrettens kendelse. På baggrund heraf stadfæstede Højesteret byrettens kendelse.[1]

**H.K. 22. december 2015 i sag 213/2015**

*Anklagemyndigheden*
mod
*T1 (adv. Kåre Pihlmann, Kbh.)*
*og*
*T2 (adv. Jane Ranum, Kbh.).*
*m.fl.*

**Byretten**

*Københavns Byrets kendelse 1. juli 2015, SS 3-12583/2015*

- - -

Anklagemyndigheden har nedlagt påstand om, at der ikke foreligger nogen bindende påtalebegrænsning i forhold til T1 eller T2.

T1 har nedlagt påstand om, at der foreligger en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 2, hvis han kan tilstå forhold 1 for så vidt angår 2 kg kokain.

T2 har nedlagt påstand om, at der foreligger en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 1, hvis han kan tilstå forhold 2 for så vidt angår 1,2 kg kokain.

*Sagsfremstilling*

Ved anholdelsesaktion den 3. december 2014 blev fem personer, herunder T1 og T2, anholdt for overtrædelse af straffelovens § 191. Den følgende dag blev de pågældende fremstillet i grundlovsforhør ved Københavns Byret, hvor de blev varetægtsfængslet. De pågældende er fortsat varetægtsfængslede.

Der er rejst tiltale i sagen mod de fængslede for overtrædelse af straffelovens § 191 ved i forskellige tidsrum i perioden fra den 7. juli 2014 til den 3. december 2014, delvist i forening og efter fælles forudgående aftale, forståelse og accept, på adskillige forskellige adresser blandt andet i Københavnsområdet, i talrige tilfælde, til et større antal personer mod et betydeligt vederlag, at have videreoverdraget blandt andet ca. 2,5 kg kokain samt for at have været i besiddelse af yderligere ca. 1,2 kg kokain med henblik på videreoverdragelse.

Den 22. januar 2015 skrev T1's forsvarer, advokat Kåre Pihlmann, følgende i en e-mail til anklagemyndigheden:

»Har du 2 minutter til en drøftelse af evt. forligsmuligheder i sagen?«

Senere samme dag svarede anklager Henrik Ørsted forsvareren, at han ville ringe »om lidt«.

Den 25. februar 2015 skrev forsvarer Kåre Pihlmann til Henrik Ørsted og spurgte, om der var en retsmødebegæring på vej, fordi hans klient begyndte at blive »lidt utålmodig og usikker«. Henrik Ørsted svarede blandt andet, at han ville ringe senere på dagen.

Ved e-mail af 10. marts 2015 skrev forsvarer Kåre Pihlmann blandt andet til Henrik Ørsted:

»Da jeg som aftalt har drøftet »forligsmulighederne« med min klient og efterfølgende meddelt dig hans accept heraf, stiller dine manglende svar mig i en meget vanskelig situation:

Min klient kan følge sig udleveret og »solgt«, ligesom jeg i hans øjne kan fremtræde som useriøs, idet jeg stiller ham noget i udsigt, som jeg - efter at han har lagt hovedet på blokken - ikke kan levere.

Det er derfor bydende nødvendigt, at jeg hører fra dig i dag: helt konkret har jeg brug for afklaring af, hvornår retsmødebegæring foreligger jf. dine bemærkninger om en strafpåstand på »ikke under 6 år«.

Henrik Ørsted svarede, at han ville ringe senere samme dag. Den 11. marts 2015 skrev Henrik Ørsted følgende i en e-mail til forsvarer Kåre Pihlmann:

»Jeg forstod dig således, at der kommer frivillig forlængelse på »Face«?

Jeg skal i øvrigt til møde med Poul Gade klokken 10.00, jeg orienterer dig senere i dag.«

Samme dag skrev T2's forsvarer, advokat Jane Ranum, følgende i en e-mail til Henrik Ørsted:

»Jeg har talt med T2, der, jfr. vores snak i dag, er indforstået med en tilståelsessag mht. opbevaring af de ca. 1,2 kg, som blev fundet på bopælen.

Du kan derfor afsende retsmødebegæringen hurtigst muligt.

Jeg har noteret mig, at Anklagemyndighedens strafpåstand vil være fængsel i max. 5 år.

Herefter spørges, om brev- og besøgskontrollen nu kan ophæves helt?«

Ved e-mail af 12. marts 2015 skrev forsvarer Jane Ranum til Henrik Ørsted, at hendes klient rykkede for ophævelse af besøgskontrollen, »idet sagen fremmes som en tilståelsessag«. Den følgende dag svarede Henrik Ørsted forsvareren følgende:

**1238**

1 Hans Gammeltoft-Hansen: Strafferetspleje I (1998), s. 198 ff., Eva Smith m. fl.: Strafprocessen, 2. udg. (2008), s. 160 ff., justitsministerens besvarelse af 30. juni 2008 af Folketingets Retsudvalgs spørgsmål nr. 785 (Alm. del) af 28. maj 2008 og Peter Rørdam i Juristen 1974, s. 97 ff.

»Hvis det skal ophæves inden dom, så må han komme til afhøring, ellers kan det ophæves, når han er dømt, hvilket nok sker inden alt for længe.«

Ligeledes den 13. marts 2015 skrev forsvarer Jane Ranum til Henrik Ørsted og anmodede om, at afhøringen blev gennemført: »Det bliver ikke en efterforskningsafhøring, men alene en bekræftelse på, at det var han, der opbevarede kokainen i lejligheden.«

Afhøringen blev herefter gennemført den 20. marts 2015, hvorunder T2 erkendte besiddelsen af den mængde kokain, som blev fundet ved ransagningen den 3. december 2014 på - - - 157 - - -. Erkendelsen svarede til en tidligere, den 4. december 2014, til politirapport afgivet forklaring.

Den 27. marts 2015 sendte Henrik Ørsted en e-mail til forsvarer Kåre Pihlmann indeholdende sigtelser mod T1 »der vil fremgå af retsmødebegæringen«. Sigtelserne vedrørte i forhold 1 salg af i alt 2,5 kg kokain i ikke under 3.500 tilfælde og i forhold 2 besiddelse af 1,2 kg kokain. Den 30. marts 2015 spurgte forsvarer Kåre Pihlmann Henrik Ørsted, om retsmødebegæringen var sendt til retten.

Den 9. april 2015 sendte Henrik Ørsted kopi af en retsmødebegæring indeholdende de nævnte sigtelser til forsvarer Kåre Pihlmann. Samme dag skrev forsvareren følgende til Københavns Byret:

»I ovennævnte sag udløber varetægtsfængslingen af min klient i dag; retsmøde afholdes kl. 11:45.

I den forbindelse skal jeg venligst oplyse, at min klient efter omstændighederne er indforstået med frivillig forlængelse af varetægtsfængslingen i yderligere 4 uger uden fremstilling i Retten.

Baggrunden herfor er, at jeg her til morgen er blevet ringet op af anklagemyndigheden, der oplyste, at der i dag indleveres retsmødebegæring. Jeg vedhæfter kopi af retsmødebegæringen. Jeg anmoder derfor venligst om, at der hurtigst muligt sker berammelse, …«

Ved e-mail af 10. april 2015 skrev Henrik Ørsted følgende til forsvarer Jane Ranum:

»I relation til følgende passus i din mail af 11. marts 2015: »Jeg har noteret mig, at Anklagemyndighedens strafpåstand vil være fængsel i max. 5 år.«, skal jeg bemærke, at anklagemyndigheden ikke har tilkendegivet noget bindende svar i relation til strafpåstanden, men at det der telefonisk blev drøftet var, at en strafpåstand i en sag vedrørende overtrædelse af straffelovens § 191 vedrørende besiddelse af 1,2 kg. kokain med henblik på videreoverdragelse, vil være i området af 5 års fængsel, hvilket synes at være i overensstemmelse med retspraksis. Det bemærkes at retten er fritstillet med hensyn til strafudmålingen.«

Forsvarer Jane Ranum svarede følgende samme dag:

»Selvfølgelig.

Er en retsmødebegæring i posten?«

Den 15. april 2015 meddelte Københavns Byret forsvarer Kåre Pihlmanns kontor, at der ikke var modtaget en retsmødebegæring fra anklagemyndigheden. Samme dag skrev forsvareren følgende til Henrik Ørsted og anklager Ulrich Thomsen:

»Pointen med den frivillige forlængelse og vores snak i sidste uge var selvsagt, at sagen hurtigt kunne berammes, så min næse føles en anelse langstrakt…«

Den følgende dag skrev forsvarer Kåre Pihlmann endvidere følgende til advokaturchef Kathrine Krejbjerg:

»Jeg har gennem længere tid drøftet sagens bevismæssige stilling med Henrik Ørsted; Udfaldet af disse drøftelser blev, at der mellem anklagemyndighed og forsvarer var enighed om, at der er bevismæssig dækning for min klients skyld vedr. ca. 2 kg kokain. Ørsted oplyste, at hans chef, Poul Gade, var enig i denne bevismæssige vurdering.

---

Dette meddelte jeg min klient, der herefter erklærede sig indforstået med sagens fremme som tilståelsessag vedr. 2 kg kokain, hvilket jeg straks orienterede anklagemyndigheden om.

Jeg har efterfølgende modtaget vedhæftede retsmødebegæring med bemærkning om, at den mængde, der overstiger 2 kg vil blive skåret fra under retsmødet, men at anklagemyndigheden af principielle grunde ønsker at afvente den indenretlige tilståelse. Også dette har jeg meddelt min klient.

Jeg har fremsendt retsmødebegæringen til Københavns Byret og anmodet om berammelse af retsmøde, idet jeg antog, at sagen ligeledes var indleveret af anklagemyndigheden.

Jeg har d.d. været i telefonisk kontakt med anklagemyndigheden v/Henrik Ørsted: Ørsted oplyste, at anklagemyndigheden ikke kan overholde ovenstående aftale, hvorfor sagen nu skal køre over 10-15 retsdage med tiltalerejsning jf. sigtelsen. Jeg forstod på Ørsted, at denne beslutning var truffet af hans overordnede.

Dette sætter mig i en meget vanskelig situation i forhold til min klient, som selvsagt vil føle sig udleveret, ligesom han - meget naturligt - kan stille spørgsmålstegn ved min kompetence, idet hans erkendelse baserer sig på min rådgivning af ham.

Jeg har løbende gennem årene lavet aftaler svarende til ovenstående med anklagemyndigheden og har aldrig tidligere oplevet, at anklagemyndigheden er løbet fra sit ord, idet forudsætningen for drøftelser a[f] den principielle karakter er fuldstændig gensidig tillid mellem anklager [og] forsvarer.«

Kathrine Krejbjerg svarede forsvarer Kåre Pihlmann senere samme dag:

»Lad mig indledningsvist dels beklage forløbet og dels bekræfte Henrik Ørsteds oplysninger om, at beslutningen om at sagen ikke kan fremmes som en

### 1239

tilståelsessag som tidligere drøftet, er truffet af chefanklageren i København i samråd med mig. Lad mig samtidig også præcisere, at det beklagelige forløb ikke skyldes anklager Henrik Ørsted, idet han har handlet indenfor det manda[t], han havde fået af den tidligere advokaturchef.

I forhold til sagens videre fremme er vi naturligvis indstillede på, at vi orienterer retten om, at den fremsendte retsmødebegæring skyldes en beklagelig misforståelse, der alene beror på anklagemyndighedens interne forhold, uden vi samtidig vil komme ind på, at din klient var indstillet på at erkende dele af sigtelsen. Når sagen således skal forelægges under hovedforhandlingen, vil vi naturligvis også være indstillede på, at fremsendelsen af retsmødebegæringen ikke adresseres overhovedet, medmindre du udtrykkeligt ønsker dette, således at retten ikke på nogen måde gøres opmærksom på, at din klient har været indstillet på at erkende dele af sigtelsen.«

Senere samme dag skrev forsvarer Jane Ranum følgende til blandt andre Kathrine Krejbjerg:

»Jeg modtog som forsvarer for T2 i dag en opringning fra anklager Henrik Ørsted om, at Anklagemyndigheden har besluttet at fragå aftalen om, at sagen for min klients vedkommende kan afgøres som en tilståelsessag mht. besiddelse af 1,2 kg kokain på bopælen.

Anklagemyndigheden er efter min opfattelse afskåret fra at fragå denne aftale.

Der foreligger i relation til min klient en bindende påtalebegrænsning, og aftalen om at fremme sagen på 1,2 kg kokain er udtryk for en sædvanlig og naturlig bevismæssig tilskæring af sagen i forhold til min klient, der bevismæssigt er begrænset belastet i forhold til bud-aktiviteten.

Jeg henviser til vedhæftede mail-korrespondance mellem anklager Henrik Ørsted og jeg.

Som det fremgår, drøftede jeg sagen med Henrik Ørsted den 11/3-2015, der på Anklagemyndighedens vegne accepterede, at sagen

kunne fremmes som anført. Jeg bekræftede aftalen med min mail af 11/3-2015.

Det anføres i anklager Henrik Ørsteds mail til mig af 10/4-2015, at »Anklagemyndigheden ikke har tilkendegivet noget bindende svar i relation til strafpåstanden«, hvorved forudsætningsvist bekræftes, at aftalen om at fremme sagen på 1,2 kg derimod *er* et bindende tilsagn til min klient og mig. Mailen er sendt fra en anklager, der må antages at have mandat til at disponere på Anklagemyndighedens vegne.

At aftalen er bindende for Anklagemyndigheden støttes tillige af, at min klient under forudsætning af aftalen indvilligede i til politirapport at erkende besiddelsen, hvilket skete ved politiafhøring den 20/3-2015 i Blegdamsvejens Fængsel, dvs. efter aftalens indgåelse.

Endelig henviser jeg til, at senioranklager Ulrich Thomsen telefonisk igen bekræftede aftalen ved min opringning i mandags den 13/4-2015 om eftermiddagen. Jeg var da på besøg i Blegdamsvejens Fængsel, hvor min klient var meget frustreret over, at retsmødebegæring endnu ikke var modtaget. Jeg ringede derfor under fængselsbesøget til Anklagemyndigheden, hvor jeg i Henrik Ørsteds fravær traf senioranklager Ulrich Thomsen. På min opfordring bekræftede Ulrich Thomsen endnu en gang aftalen, hvilket min klient overhørte og indrettede sig på.

Jeg beder på denne baggrund Anklagemyndigheden bekræfte, at retsmødebegæring vedrørende besiddelse af 1,2 kg kokain på bopælen vil blive fremsendt som aftalt. Da anklager Henrik Ørsted og senioranklager Ulrich Thomsen i forhold til min klient og mig åbenlyst har handlet indenfor deres bemyndigelse, må Anklagemyndigheden bære risikoen, hvis ikke mandatet har været sikret internt. Jeg er blevet oplyst om, at aftalen også var godkendt af daværende advokaturchef Poul Gade.

Anklagemyndigheden kan ikke først »lokke« min klient til at tilstå ved at acceptere en given forudsætning før efterfølgende at fragå forudsætningen.«

Ved e-mail af 17. april 2015 skrev forsvarer Kåre Pihlmann følgende til Kathrine Krejbjerg:

»Min kritik vedrører den seneste beslutning, som medfører, at anklagemyndigheden løber fra sit ord og dermed stiller både sigtede og forsvareren i en helt uholdbar situation.

Jeg har på baggrund af din mail noteret, at der er enighed om, at det tidligere aftalte vedr. en mængde på ca. 2 kg kokain lå indenfor mandatet udstukket af advokaturchefen, hvorfor der under alle omstændigheder er tale om en bindende påtalebegrænsning, hvilket jeg agter at påberåbe mig.«

Den 23. april 2015 svarede Kathrine Krejbjerg forsvarer Kåre Pihlmann og Jane Ranum følgende:

»I forlængelse af tidligere mailkorrespondance af 16. og 17. april 2015 samt den efterfølgende telefoniske drøftelse med Jane Ranum kan jeg efter mødet dags dato hos Statsadvokaten i København oplyse, at sagen gennemføres som en domsmandssag, idet der efter anklagemyndighedens opfattelse ikke foreligger en bindende påtalebegrænsning.

Anklageskriftet vil blive fremsendt snarest muligt.

Afslutningsvist skal jeg endnu en gang beklage forløbet.«

Forsvarer Jane Ranum skrev senere samme dag blandt andet følgende til Kathrine Krejbjerg:

»Jeg har med beklagelse modtaget din mail, hvorefter Anklagemyndigheden fragår den klare aftale om at fremme min klients sag som en tilståelsessag mht. opbevaring af ca. 1,2 kg kokain på bopælen.

**1240**

Jeg vil under hovedforhandlingen gøre gældende, at der foreligger en bindende påtalebegrænsning fra Anklagemyndighedens side […]

Det vil bl.a. blive gjort gældende, at hverken min klient, anklagerne eller jeg ved aftalens indgåelse den 11/3-15 var opmærksomme på, at min klient angiveligt allerede havde udtalt sig til rapport den 4/12-14.

Afhøringsrapporterne af 4/12-14 og 20/3-15 er indholdsmæssigt identiske, hvilket støtter, at man ved aftalens indgåelse ikke var opmærksom på en evt. tidligere afhøring. Afhøringen den 20/3-15 blev således reelt gennemført under forudsætning af, at der var indgået aftale om en tilståelsessag.«

### Rettens begrundelse og afgørelse

Under forberedende retsmøde den 19. juni 2015 har parterne erklæret sig enige i, at følgende kan lægges til grund for rettens afgørelse:

Anklagemyndigheden er under sagen over for T1 fremkommet med en klar tilkendegivelse om, at anklagemyndigheden ville frafalde forhold 2, hvis pågældende kunne tilstå forhold 1 for så vidt angår 2 kg, og at denne tilkendegivelse - gennem hans forsvarer - er blevet meddelt pågældende, der har accepteret tilkendegivelsen, hvilket der er blevet givet anklagemyndigheden meddelelse om.

Anklagemyndigheden er under sagen over for T1 fremkommet med en klar tilkendegivelse om, at anklagemyndigheden ville frafalde forhold 1, hvis pågældende kunne tilstå forhold 2 for så vidt angår 1,2 kg, og at denne tilkendegivelse - gennem hans forsvarer - er blevet meddelt pågældende, der har accepteret tilkendegivelsen, hvilket der er blevet givet anklagemyndigheden meddelelse om. Retten kan endvidere lægge forsvarer Jane Ranums oplysninger om kontakten til senioranklager Ulrich Thomsen til grund.

Der var endvidere enighed om, at retten kan lægge til grund, at anklagemyndighedens tilkendegivelser er fremsat af en medarbejder, der har haft mandat hertil.

Herefter og efter den dokumenterede e-mailkorrespondance finder retten, at anklagemyndigheden udtrykkeligt og med bindende virkning har tilkendegivet at ville begrænse påtalen i det af T1 og T2 påståede omfang, idet påtalebegrænsningen dog er betinget af de pågældendes erkendelse i det anførte omfang. T1 og T2 findes - i hvert fald efter udløbet af omgørelsesfristen - som følge heraf at have en berettiget forventning om, at sagen vil kunne afgøres i overensstemmelse hermed. Påtalebegrænsningen er ubestridt truffet af den kompetente myndighed, og da der ikke foreligger oplysninger om, at afgørelsen er omgjort i overensstemmelse med retsplejelovens § 724, stk. 2,

**bestemmes**

Der foreligger i forhold til T1 en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 2, hvis han kan tilstå forhold 1 for så vidt angår 2 kg kokain

Der foreligger i forhold til T2 en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 1, hvis han kan tilstå forhold 2 for så vidt angår 1,2 kg kokain.

### Østre Landsret

### *Østre Landsrets kendelse 18. august 2015, S-1855-15*

(M. Lerche, Henrik Bitsch, Janni Christoffersen)

Lukkede døre

Det forbydes offentligt at gengive navn, stilling eller bopæl eller på anden måde offentliggøre identitet.

- - -

Anklagemyndigheden har kæret Københavns Byrets kendelse af 1. juli 2015, hvorefter der i forhold til T1 foreligger en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 1, hvis han kan tilstå forhold 2 for så vidt angår 2 kg kokain, og i forhold T2 foreligger en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 1, hvis han kan tilstå forhold 2 for så vidt angår 1,2 kg kokain.

Anklagemyndigheden har nedlagt påstand om, at det bestemmes, at der ikke foreligger en bindende påtalebegrænsning i sagen i relation til T1 og T2.

Anklagemyndigheden har til støtte herfor blandt andet anført, at der har været uformelle drøftelser mellem anklagemyndigheden og forsvarerne, og uanset at forsvarerne har gjort deres klienter bekendt med drøftelserne, kan det ikke føre til, at anklagemyndigheden er bundet af sine mundtlige tilkendegivelser.

Det er endvidere anført, at anklagemyndigheden under drøftelserne har opretholdt sigtelserne i både forhold 1 og forhold 2, hvilket blandt andet fremgår af rapporten vedrørende politiafhøringen af T2 den 20. marts 2015 og af den i forhold til T1 udarbejdede retsmødebegæring af 9. april 2015. Disse forhold blev iagttaget for tydeligt at tilkendegive, at anklagemyndigheden ikke agtede at foretage en bindende påtalebegrænsning i sagen, hvilket også skal ses i lyset af, at de tiltalte ikke eller kun i begrænset omfang har afgivet forklaring til politiet.

Endelig er det anført, at anklagemyndigheden under de foreliggende omstændigheder ikke ved, hvornår og hvorledes forsvarerne har videregivet indholdet af drøftelserne med anklagemyndigheden, og der er ikke i byrettens kendelse taget stilling til, hvornår den bindende påtalebegrænsning er indtrådt, og dermed hvornår fristen for omgørelse efter retsplejelovens § 724, stk. 2, udløber.

**1241**

Samlet set er det anklagemyndighedens opfattelse, at der stilles store krav til, hvornår der ifølge retspraksis foreligger en bindende påtalebegrænsning, og anklagemyndigheden finder, at de drøftelser, der har været med forsvarerne om sagens fremme som en tilståelsessag, ikke har kunnet give de tiltalte en berettiget og beskyttelsesværdig forventning om, at anklagemyndigheden havde afskåret sig fra at rejse tiltale som sket.

Advokat Kåre Pihlmann har som beskikket forsvarer for T1 nedlagt påstand om stadfæstelse, idet anklagemyndigheden udtrykkeligt og med bindende virkning har begrænset påtalen.

Til støtte herfor er det blandt andet anført, at T1 er orienteret om og har accepteret anklagemyndighedens klare tilkendegivelse af, at anklagemyndigheden ville frafalde forhold 2, hvis han kan tilstå forhold 1 for så vidt angår 2 kg kokain, og anklagemyndigheden er orienteret om hans accept heraf.

Det er endvidere gjort gældende, at anklagemyndighedens tilkendegivelse er fremsat efter advokaturchefens godkendelse og ikke omgjort af statsadvokaten inden for 2-månedersfristen, der i hvert fald senest må regnes fra datoen for den til forsvareren fremsendte retsmødebegæring den 9. april 2015, hvis formål udelukkende var en indenretlig tilståelse på 2 kg kokain i overensstemmelse med aftalen med anklagemyndigheden.

Advokat Jane Ranum har som beskikket forsvarer for T2 nedlagt påstand om stadfæstelse, idet anklagemyndigheden udtrykkeligt og med bindende virkning har tilkendegivet at ville begrænse påtalen mod T2 til 1,2 kg kokain i forhold 2, forudsat at han tilstod denne mængde.

Til støtte herfor er det blandt andet anført, at det af e-mailkorrespondancen i sagen fremgår, at det var den 11. marts 2015, at T2 blev orienteret om anklagemyndighedens tilkendegivelse, hvorfor en eventuel omgørelsesfrist ligeledes skal regnes fra denne dato,

og anklagemyndigheden har ikke inden for omgørelsesfristen omgjort afgørelsen eller taget forbehold herfor.

Det er endvidere bestridt, at politi og anklagemyndighed har haft stor fokus på at nævne de eksisterende sigtelser under forløbet, idet dette kun er sket en standardindledning ved den 1 minut lange politiafhøring den 20. marts 2015.

Endelig er det gjort gældende, at anklagemyndigheden flere gange både udtrykkeligt og stiltiende/indirekte bekræftede tilkendegivelsen ved sin adfærd efter den 11. marts 2015, herunder ved telefonsamtale den 13. april 2015.

Efter votering afsagdes

### kendelse

Landsretten finder, at byrettens afgørelse angår spørgsmål af væsentlig betydning for sagens behandling, hvorfor retsplejelovens § 968, stk. 4, ikke er til hinder for kærens admittering.

*T2*

Af e-mail af 11. marts 2015 fra forsvarer, advokat Jane Ranum, til anklagemyndigheden fremgår, at T2 på baggrund af forsvarerens drøftelse samme dag med anklagemyndigheden er indforstået med en tilståelsessag med hensyn til opbevaring af 1,2 kg kokain fundet på bopælen. T2 blev herefter afhørt af Københavns Politi den 20. marts 2015 kl. 11.15-11.16, hvor han ifølge politiets rapport erkendte at have været i besiddelse af den mængde kokain, som blev fundet i forbindelse med ransagning den 3. december 2014 på adressen - - - 157 - - -.

Herefter, og når henses til den efterfølgende e-mail af 10. april 2015 fra anklagemyndigheden til forsvareren, hvori blandt andet er anført, at anklagemyndigheden ikke har tilkendegivet noget bindende svar i relation til strafpåstanden, samt til, at anklagemyndigheden ved telefonsamtale den 13. april 2015 med forsvareren bekræftede den tidligere tilkendegivelse, tiltrædes det af de af byretten i øvrigt anførte grunde, at der i forhold til T2 foreligger en bindende påtalebegrænsning om, at anklagemyndigheden vil frafalde forhold 1, hvis han kan tilstå forhold 2 for så vidt angår 1,2 kg kokain.

*T1*

I en e-mail af 27. marts 2015 fra anklagemyndigheden til forsvarer, advokat Kåre Pihlmann, var anført sigtelse mod T1 i forhold 1 for salg af 2,5 kg kokain i ikke under 3.500 tilfælde i en nærmere angivet periode og i forening med flere andre og i forhold 2 for besiddelse af 1,2 kg kokain i forening med flere andre med henblik på videreoverdragelse.

Retsmødebegæringen af 9. april 2015, som blev sendt til forsvareren, indeholdt en tilsvarende sigtelse, og den 16. april 2015 meddelte anklagemyndigheden forsvareren, at sagen ikke kunne fremmes som tilståelsessag vedrørende et mindre omfang som tidligere drøftet.

Det fremgår endvidere, at T1 ikke har ønsket at udtale sig under sagen.

Under disse omstændigheder findes der - uanset de stedfundne drøftelser mellem anklagemyndighed og forsvarer - ikke at være givet T1 en sådan berettiget og beskyttelsesværdig forventning om, at anklagemyndigheden ville begrænse påtalen, at anklagemyndigheden er afskåret fra at rejse tiltale som sket ved anklageskriftet af 19. maj 2015. Det forhold, at T1 har været bekendt med drøftelserne mellem anklagemyndigheden og forsvareren, herunder anklagemyndighedens mundtlige tilkendegivelser i den forbindelse, findes ikke at kunne føre til et andet resultat.

**1242**

Landsretten finder således, at der ikke foreligger en bindende påtalebegrænsning i forhold til T1.

- - -

## Højesteret

### Højesterets kendelse

I tidligere instanser er afsagt kendelse af Københavns Byret den 1. juli 2015 og af Østre Landsrets 8. afdeling den 18. august 2015.

I påkendelsen har deltaget tre dommere: Niels Grubbe, Poul Dahl Jensen og Jens Peter Christensen.

### Påstande

*Sagen vedrørende T1*

T1 har nedlagt påstand om stadfæstelse af byrettens kendelse, således at der foreligger en bindende påtalebegrænsning om, at anklagemyndigheden ville frafalde forhold 2, hvis han kunne tilstå forhold 1 for så vidt angik 2 kg kokain.

Anklagemyndigheden har heroverfor nedlagt påstand om stadfæstelse af landsrettens kendelse om, at der ikke foreligger en bindende påtalebegrænsning i forhold til T1.

*Sagen vedrørende T2*

Anklagemyndigheden har nedlagt påstand om ændring af landsrettens kendelse, således at der ikke foreligger nogen bindende påtalebegrænsning i forhold til T2.

T2 har nedlagt påstand om stadfæstelse af landsrettens kendelse, således at der foreligger en bindende påtalebegrænsning om, at anklagemyndigheden ville frafalde forhold 1, hvis han kunne tilstå forhold 2 for så vidt angik 1,2 kg kokain.

*Anbringender*

T1 har anført bl.a., at anklagemyndigheden har givet ham en berettiget og beskyttelsesværdig forventning om, at han alene tiltales i sagens forhold 1 vedrørende en mængde på 2 kg kokain.

Anklagemyndigheden er fremkommet med en klar, utvetydig og uforbeholden tilkendegivelse om, at anklagemyndigheden ville frafalde den resterende del af tiltalen, hvis han kunne tilstå en mængde på 2 kg kokain i forhold 1. Han er orienteret om anklagemyndighedens klare tilkendegivelse og har accepteret denne, hvilket anklagemyndigheden blev orienteret om af hans forsvarer. Aftalen er indgået allerede før den 10. marts 2015.

Aftalen er på ingen måde betinget, ligesom aftalen tilmed var godkendt af advokaturchefen. Anklagemyndigheden gjorde på intet tidspunkt under forløbet i januar og februar 2015 gældende, at der alene var tale om uforpligtende drøftelser, idet der i så fald ikke ville være nogen anledning til at involvere advokaturchefen selv.

Såfremt anklagemyndigheden ønskede at komme ud af aftalen om sagens fremme som tilståelsessag vedrørende 2 kg kokain i sagens forhold 1, må anklagemyndigheden være henvist til reglerne om statsadvokatens omgørelsesadgang.

Anklagemyndighedens klare tilkendegivelse er ikke omgjort af statsadvokaten indenfor 2-måneders fristen, der senest må regnes fra datoen for fremsendelse af retsmødebegæringen af den 9. april 2015, og formålet med fremsendelse af retsmødebegæringen den 9. april 2015 var netop udelukkende, at T1 indenretligt kunne tilstå en mængde på 2 kg kokain i overensstemmelse med aftalen med anklagemyndigheden.

Uanset om anklagemyndigheden nu svinger mellem at beskrive forløbet som henholdsvis drøftelser og enighed, må der lægges til grund, at der forud for den 27. marts 2015 var en aftale/enighed om, at sagen skulle fremmes på grundlag af den erkendte mængde kokain.

T2 har anført bl.a., at anklagemyndigheden udtrykkeligt og med bindende virkning har tilkendegivet at ville begrænse tiltalen mod ham til en mængde på 1,2 kg kokain i forhold 2, forudsat han tilstod denne mængde.

Der stilles ikke formkrav til en bindende påtalebegrænsning, der både kan være stiltiende gennem anklagemyndighedens adfærd eller fremkomme ved en udtrykkelig erklæring.

Det var anklagemyndigheden selv, der tog initiativ til drøftelsen med hans forsvarer.

Det er bevist, præcist hvilken dato aftalen mellem anklagemyndigheden og ham blev indgået, nemlig ved forsvarerens bekræftelsesmail af 11. marts 2015 til anklageren. Af mailen fremgår også, at han samme dag var blevet orienteret om anklagemyndighedens tilkendegivelse. Der kan derfor ikke herske tvivl om, at en eventuel omgørelsesfrist skal regnes fra denne dato.

Anklageren havde mandat til at fremsætte tilkendegivelsen. Omgørelsesfristen i henhold til retsplejelovens § 724, stk. 2, udløb herefter den 11. maj 2015. Anklagemyndigheden omgjorde ikke afgørelsen inden fristens udløb, ligesom der på intet tidspunkt blev taget forbehold for muligheden for omgørelse.

Tilbagekaldelsen af tilbuddet om tilskæring af sagen beror tilsyneladende alene på et efterfølgende holdningsændring hos anklagemyndighedens ledelse. Den anklagemyndighed, der med mailen af 16. april 2015 fragik tilbuddet, er på samme ledelsesniveau - og dermed med samme mandat - som den anklagemyndighed, der tidligere havde kontaktet forsvareren med et forslag til tilskæring.

Han har - både ved anklagemyndighedens udtrykkelige tilkendegivelse og ved adfærd - faet en berettiget og beskyttelsesværdig forventning om, at sagen fremmes i henhold til tilkendegivelsen, hvilket i øvrigt ikke

### 1243

ud fra sagens beviser er et urimeligt eller ekstraordinært gunstigt resultat.

*Rigsadvokaten* har generelt anført bl.a., at anklagemyndigheden ikke har foretaget en bindende påtalebegrænsning i forhold til T1 og T2.

På den ene side må det anerkendes, at anklagemyndigheden - også uden at der foreligger en udtrykkelig erklæring om en påtalebegrænsning - ved sin adfærd kan blive bundet af denne adfærd. På den anden side må der imidlertid stilles ganske store krav til, hvornår der kan siges at foreligge en bindende påtalebegrænsning. Det er ikke enhver forventning, der indebærer, at der foreligger en bindende påtalebegrænsning, men alene den berettigede og beskyttelsesværdige forventning.

Der skal noget helt særligt til for, at der er blevet skabt en berettiget og beskyttelsesværdig forventning, når sagen befinder sig på et stadie, hvor der kun foreligger en sigtelse, og hvor der ikke i øvrigt er foretaget nogen processuelle skridt fra anklagemyndighedens side. Før det tidspunkt, hvor der er rejst en tiltale, må der skulle noget helt særligt til, førend der foreligger en bindende påtalebegrænsning, og dette kan kun ske i helt ekstraordinære tilfælde.

Det må lægges til grund, at da de sigtede blev fremstillet i grundlovsforhør den 4. december 2014, blev de sigtet for både forhold 1 og forhold 2, og at disse sigtelser ikke på noget tidspunkt efterfølgende udtrykkeligt er blevet opgivet eller begrænset.

Det må endvidere lægges til grund, at anklagemyndigheden ikke i forhold til de sigtede har foretaget nogen processuelle skridt i form af tiltalerejsning, fremsendelse af retsmødebegæring, afholdelse af indenretlige forhør mv.

Den omstændighed, at der mellem anklagemyndigheden og de sigtedes forsvarere har været drøftelser om sagens mulige tilskæring, udgør ikke en sådan helt ekstraordinær situation, at der i forhold til de sigtede er blevet skabt en berettiget og beskyttelsesværdig forventning om, at dele af sigtelsen ville blive opgivet. Det må i den forbindelse tillægges betydning, at de tiltalte enten ikke har ønsket at udtale sig om sagen eller kun har udtalt sig i et endog meget begrænset omfang.

Rigsadvokaten har endvidere vedrørende T1 anført bl.a., at hans forsvarer ikke nærmere har anført, på hvilket tidspunkt en aftale om at frafalde sagens forhold 2 er indgået, herunder på hvilket tidspunkt hans klient har fået en sådan berettiget og beskyttelsesværdig forventning om, at sagen ville blive afgjort i overensstemmelse hermed.

Det kan alene lægges til grund, at der mellem forsvaret og anklagemyndigheden var opnået enighed om, at sagen skulle forsøges afgjort som en tilståelsessag, og at T1 på denne baggrund kan have fået en vis forventning om, at sagen ville blive beskåret som det anførte. Men anklagemyndigheden har ikke derved disponeret på en sådan måde, at T1 ud fra en objektiv vurdering med føje er blevet bibragt en sådan berettiget og beskyttelsesværdig forventning, at der er skabt en bindende påtalebegrænsning for anklagemyndigheden.

Det bemærkes i den forbindelse, at det særligt i sager om overtrædelse af straffelovens § 191 er helt sædvanligt, at anklagemyndigheden af procesøkonomiske årsager drøfter tiltalespørgsmålet med forsvaret. Denne slags drøftelser må nødvendigvis være uforpligtende for begge parter og kan ikke på nogen måde give den sigtede en sådan berettiget forventning, at anklagemyndigheden hermed afskæres fra at disponere frit over tiltalespørgsmålet. At den sigtede er gjort bekendt med indholdet af drøftelserne samt har tilkendegivet sin holdning hertil, kan ikke føre til et andet resultat. Det gælder så meget desto mere, når den sigtede ikke i øvrigt har villet udtale sig til politiet.

Rigsadvokaten har endvidere vedrørende T2 anført bl.a., at hans forsvarers dokumentation for de drøftelser, hun har haft med anklagemyndigheden, således som dette kommer til udtryk i landsrettens kendelse, ikke kan være afgørende for, om der i forhold til T2 er blevet skabt en sådan berettiget og beskyttelsesværdig forventning om, at dele af sagens forhold ville blive opgivet, og at anklagemyndigheden som følge heraf bliver bundet af en påtalebegrænsning. Der foreligger ikke sådanne helt særlige omstændigheder som påkrævet.

Den omstændighed, at der har været en uformel mailkorrespondance mellem forsvareren og anklagemyndigheden om tilskæring af sagen, kan ikke skabe en berettiget og beskyttelsesværdig forventning hos T2 om, at dele af sagens forhold vil blive opgivet.

Heller ikke den omstændighed, at T2 har afgivet en meget kortfattet forklaring til politiet, kan føre til et andet resultat. Dette skal ses i sammenhæng med, at formålet med afhøringen alene var at ophæve T2's besøgs- og brevkontrol.

Der er ikke - som anført af Østre Landsret i den foreliggende sag - mulighed for at statuere en »betinget bindende påtalebegrænsning«. Såfremt en påtalebegrænsning er sket, er den bindende for anklagemyndigheden. Såfremt synspunktet om en betinget bindende påtalebegrænsning anerkendes, indtræder påtalebegrænsningen tidligst, når sigtede har opfyldt betingelsen, det vil sige i et retsmøde har erkendt det forhold, som var forudsætningen for anklagemyndighedens påtaleopgivelse. Som anført er anklagemyndigheden først bundet af en påtalebegrænsning, når fristen for statsadvokatens omgørelsesadgang, jf. retsplejelovens § 724,

**1244**

stk. 2, er udløbet. Fristen for statsadvokatens omgørelsesadgang måtte i et tilfælde, hvor der var en betinget bindende påtalebegrænsning, i givet fald skulle regnes fra datoen for et sådant retsmøde. I den foreliggende sag blev der aldrig afholdt et sådant retsmøde.

### Højesterets begrundelse og resultat

Parterne har i ifølge byrettens kendelse af 1. juli 2015 under et forberedende retsmøde den 19. juni 2015 erklæret sig enige i den beskrivelse af forløbet, der er gengivet i byrettens kendelse. Anklagemyndigheden har ikke efterfølgende fragået denne enighed.

Under disse omstændigheder tiltræder Højesteret byrettens bedømmelse, hvorefter der både i forhold til T1 og i forhold til T2 foreligger en bindende påtalebegrænsning med det indhold, der er angivet i byrettens kendelse.

Højesteret stadfæster herefter i det hele byrettens kendelse.

### Thi bestemmes

*Byrettens kendelse stadfæstes.*

# Lov 2024-06-11 nr. 658
# om ændring af retsplejeloven

*(Gennemførelse af aftale om initiativer vedrørende omgørelsesfristen i straffesager)*

**§ 1.** I retsplejeloven, jf. lovbekendtgørelse nr. 250 af 4. marts 2024, foretages følgende ændringer:

**1.** I *§ 724, stk. 2,* ændres »2 måneder« til: »4 måneder«.

**2.** I *overskriften* til kapitel 93 a indsættes efter »forfølgning«: »m.v.«

**3.** I *§ 1018 h* indsættes som *stk. 2:*

»*Stk. 2.* Efter reglerne i dette kapitel bortset fra § 1018 e, stk. 1, 5. pkt., behandles på begæring endvidere erstatningskrav, der på grundlag af dansk rets almindelige erstatningsregler rejses af den forurettede i sager om overtrædelse af straffelovens § 210, § 216, § 222, stk. 2, § 223, stk. 1, eller § 225, jf. § 216, § 222, stk. 2, eller § 223, stk. 1, som følge af at

1) forurettede ikke har haft tilstrækkelig mulighed for at klage over en afgørelse om påtaleopgivelse,

2) forurettedes klage over en afgørelse om påtaleopgivelse ikke er blevet behandlet inden udløbet af fristen i § 724, stk. 2, eller

3) en afgørelse om omgørelse af påtaleopgivelse ikke er blevet meddelt den, der har været sigtet, inden udløbet af fristen i § 724, stk. 2.«

**§ 2.** Loven træder i kraft den 1. juli 2024.

*Stk. 2.* § 1, nr. 1, finder ikke anvendelse på afgørelser om påtaleopgivelser og tiltalefrafald, der er truffet før lovens ikrafttræden. For sådanne afgørelser finder de hidtil gældende regler anvendelse.

# Forslag til Lov
## om ændring af straffeloven og retsplejeloven

*(Økonomisk kriminalitet)*

Fremsat den 8. oktober 1986 af justitsministeren (Ninn-Hansen)

§ **1.** I borgerlig straffelov, jf. lovbekendtgørelse nr. 607 af 6. september 1986, foretages følgende ændringer:

1. § 79 affattes således:

»§ 79. Den, som udøver en af de i § 78, stk. 2, omhandlede virksomheder, kan ved dom før strafbart forhold frakendes retten til fortsat at udøve den pågældende virksomhed eller til at udøve den under visse former, såfremt det udviste forhold begrunder en nærliggende fare for misbrug af stillingen.

Stk. 2. Det samme gælder, når særlige omstændigheder taler derfor, om udøvelse af anden virksomhed. Efter samme regel kan der ske frakendelse af retten til at være stifter af eller direktør eller medlem af bestyrelsen i et selskab med begrænset ansvar, et selskab eller en forening, som kræver særlig offentlig godkendelse, eller en fond.

Stk. 3. Frakendelsen sker på tid fra 1 til 5 år, regnet fra endelig dom, eller indtil videre, i hvilket tilfælde spørgsmålet om fortsat udelukkelse fra den pågældende virksomhed efter 5 års forløb kan indbringes for retten efter de i § 78, stk. 3, indeholdte regler. Når særlige omstændigheder taler derfor, kan justitsministeren tillade, at indbringelse for retten sker, inden den i 1. pkt. nævnte 5 års frist er forløbet.

Stk. 4. Retten kan under behandlingen af de i stk. 1 og 2 nævnte sager ved kendelse udelukke den pågældende fra at udøve virksomheden, indtil sagen er endeligt afgjort. Det kan ved dommen i sagen bestemmes, at anke ikke har opsættende virkning.«

2. I § 131 ændres »Med bøde eller hæfte indtil 3 måneder eller under skærpende omstændigheder med fængsel i samme tid« til: »Med bøde, hæfte eller fængsel indtil 6 måneder«.

3. I § 131 indsættes som stk. 2:

»Stk. 2. Med bøde eller under særlig skærpende omstændigheder med hæfte straffes den, som medvirker til, at en person, der er frakendt retten til at udøve en virksomhed, udøver denne.«

4. I § 296, stk.1, ændres »2 år« til: »1 år«.

5. § 302 affattes således:

»§ 302. Med bøde, hæfte eller fængsel indtil 1 år straffes den, som under omstændigheder, der kendetegner forholdet som særlig groft:

1) foretager urigtige eller vildledende angivelser i forretningsbøger eller regnskaber, som det ifølge lov påhviler den pågældende at føre eller udfærdige,

2) undlader at føre forretningsbøger eller udfærdige regnskab på den måde, som det ifølge lov påhviler den pågældende at gøre det,

3) undlader at opfylde den ifølge lov foreskrevne pligt til at opbevare forretningsbøger, bilag eller andet regnskabsmateriale eller ødelægger sådant.

Stk. 2. Begås en handling eller undladelse som nævnt i stk. 1 af grov uagtsomhed, er straffen bøde eller hæfte.«

§ **2.** I lov om rettens pleje, jf. lovbekendtgørelse nr. 567 af 1. september 1986, foretages følgende ændringer:

1. Efter § 31 indsættes:

»§ 31 a. Sker der i en sag skriftlig forelæggelse eller skriftlig procedure, jfr. §§ 927 b og 928 a, stk. 2-3, finder de i medfør af denne lovs §§ 29 eller 31 trufne beslutninger tilsvarende anvendelse herpå.«

2. I § 721, stk. 1., nr. 1, indsættes efter »§§ 103, stk. 2,»: »131, stk. 2,».

3. I § 721, stk. 1, nr. 2, udgår »131,».

4. I § 723 indsættes efter stk. 2 som nyt stykke:

»Stk. 3. Statsadvokaten kan endvidere helt eller delvis opgive eller frafalde tiltale, såfremt sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt.«

Stk. 3 bliver herefter stk. 4.

5. I § 723, stk. 3, 1. pkt., der bliver stk. 4, 1. pkt., ændres: »Bestemmelserne i stk. 1-2« til: »Bestemmelserne i stk. 1-3«, og »frafalde påtale« ændres til: »opgive eller frafalde påtale«.

6. Efter § 927 indsættes:

»§ 927 a. Retten kan indkalde til et særligt forberedende møde med henblik på en fastlæggelse af parternes stilling til sagens faktiske og retlige omstændigheder, herunder hvilke omstændigheder der ikke bestrides, og hvilke der skal føres bevis for, samt domsforhandlingens tilrettelæggelse.

§ 927 b. I særlige tilfælde, hvor retten under hensyn til sagens beskaffenhed finder det hensigtsmæssigt, kan den pålægge anklagemyndigheden at fremsende en skriftlig forelæggelse til retten inden en nærmere fastsat frist. Retten fastsætter endvidere en frist for forsvarerens eventuelle bemærkninger hertil. Er der sket skriftlig forelæggelse, jfr. 1.-2. pkt., skal parterne give en mundtlig sammenfatning heraf i retten.«

7. § 928, stk. 2, affattes således:

»Stk. 2. Efter at anklageskriftet er oplæst, spørges tiltalte, om han erkender sig skyldig i det deri omhandlede forhold. Retten kan pålægge anklageren at forelægge sagen. Derpå følger bevisførelsen i overensstemmelse med reglerne i § 868.«

8. § 928, stk. 4 og 5, ophæves.

9. Efter § 928 indsættes:

»§ 928 a. Efter at bevisførelsen er sluttet, får først anklageren, dernæst forsvareren og, såfremt tiltalte begærer det, denne ordet for at udtale sig om bevisførelsens resultat samt om retsspørgsmålene i sagen (proceduren). Dernæst optages sagen til dom. Retten kan dog bestemme, at spørgsmålet, om tiltalte er skyldig, først skal forhandles og afgøres.

Stk. 2. Parterne kan med rettens tilladelse helt eller delvis indlevere proceduren skriftligt til retten. I så fald skal parterne give en mundtlig sammenfatning heraf i retten.

Stk. 3. I særlige tilfælde, hvor det under hensyn til sagens beskaffenhed findes hensigtsmæssigt, pålægge anklageren og forsvareren i forbindelse med proceduren at afgive en skriftlig oversigt over procedurens indhold med en angivelse af de hovedsynspunkter, der gøres gældende.

§ 928 b. Ved afstemningen skal det spørgsmål, om tiltalte er skyldig i det forbrydelse, der lægges ham til last, sondres fra spørgsmålet om straffen og først bringes til afstemning. Stemmes der således om strafforhøjelses- eller strafnedsættelsesgrunde, bliver stemmerne fra de medlemmer af retten, som har erklæret sig

Copyright © 2021 Kanner Crear Denmark A/S

mod tiltaltes skyld, men er forblevet i mindretal, at regne til gunst for tiltalte.«

10. Efter § 965 c indsættes som ny § 965 d:

»§ 965 d. Bestemmelserne i §§ 927 a, 927 b og 928 a finder tilsvarende anvendelse.«

§ 965 d bliver herefter § 965 e.

§ 3. Loven træder i kraft den 1. juli 1987.

*Stk. 2.* Lovens § 2 finder anvendelse i alle sager, der ikke er endeligt afgjort ved lovens ikrafttræden.

§ 4. § 1 i denne lov gælder ikke for Færøerne, men kan ved kongelig anordning sættes helt eller delvis i kraft for denne landsdel med de afvigelser, som de særlige færøske forhold giver anledning til.

## BEMÆRKNINGER TIL LOVFORSLAGET

### Almindelige bemærkninger

#### 1. Indledning

1.1. Lovforslaget er en uændret genfremsættelse af det forslag til lov om ændring af straffeloven og retsplejeloven (Økonomisk kriminalitet), der blev fremsat i folketinget den 14. maj 1986 (L 266), jfr. folketingstidende 1985-86, sp. 10862ff.

Førstebehandlingen er optrykt i folketingstidende 1985-86, sp. 12187 ff.

1.2. Lovforslaget har til formål at skabe grundlag for en intensivering af retsvæsenets indsats over for økonomisk kriminalitet. Dels stilles der forslag om ændringer i retsplejeloven med henblik på en mere effektiv behandling af disse sager. Dels stilles der forslag om ændringer i straffeloven med henblik på at skærpe reglerne om manglende eller mangelfuld bogføring og med henblik på at udvide mulighederne for erhvervsfrakendelse ved misbrug af konkurs- og selskabslovgivningen.

Lovforslaget bygger på betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet og på udtalelser over denne betænkning fra straffelovrådet og retsplejerådet. De nævnte udtalelser fra straffelovrådet og retsplejerådet er optaget som bilag til lovforslaget. Der vil nedenfor i pkt. 2-5 blive redegjort nærmere for betænkningen, for udtalelserne fra straffelovrådet og retsplejerådet, samt for lovforslagets forhold hertil.

1.3. Den intensivering af indsatsen over for økonomisk kriminalitet, som lovforslaget tilsigter at give grundlag for, skal først og fremmest opnås gennem regelændringer, som vil gøre det muligt at behandle sager om økonomisk kriminalitet hurtigere, end det i dag er muligt.

Erfaringerne fra de store økonomiske sager, som har været ført igennem de senere år, har vist, at det tager meget lang tid at behandle disse sager, både ved anklagemyndigheden og ved domstolene. Baggrunden herfor er bl.a., at de gældende regler om straffesagers behandling ikke er udformet med henblik på denne type af sager.

De lange sagsbehandlingstider er især betænkelige i forhold til de sigtede og tiltalte i disse sager. I de store økonomiske sager må de sigtede ofte vente i årevis på en afgørelse af deres sag, samtidig med at de ofte må tilbringe adskillige dage hver uge i retten igennem en lang periode, eventuelt i flere år. Er de pågældende ligefrem varetægtsfængslet, er belastningen ved de lange sagsbehandlingstider naturligvis særligt store.

Tidsrummet fra den strafbare gerning og til straffens fuldbyrdelse bør også af andre grunde være så kort som muligt. Lange sagsbehandlingstider indebærer i sig selv en betænkelig svækkelse af retsvæsenets reaktion i disse sager. Hertil kommer, at de tillige giver meget store problemer for de myndigheder og domstole, som behandler sagerne.

På denne baggrund indebærer lovforslaget, at der gennemføres ændringer i retsplejeloven med henblik på en hurtigere og mere effektiv behandling af disse sager.

Først og fremmest stilles der forslag om at udvide reglerne om tiltaleopgivelse og -frafald, således at der i videre omfang end i dag bliver muligbed for at »beskære« sager, når deres (fuldstændige) gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan ventes idømt (jfr. den foreslåede nye regel i retsplejelovens § 723, stk. 3).

Endvidere stilles der forslag om ændringer i reglerne om behandlingen af straffesager ved domstolene, således at der gives domstolene mulighed for en mere effektiv tilrettelæggelse og afvikling af sagerne i retten.

Retten skal have bedre mulighed for at styre sagens tilrettelæggelse, bl.a. gennem forberedende møder, således at man fra sagens begyndelse får en stillingtagen fra parternes side til, hvilke forhold der som ubestridte kan lægges til grund, og hvilke forhold som bestrides, og som der derfor skal føres bevis for.

Lovforslaget indebærer endvidere, at retten i særlige tilfælde skal kunne pålægge anklagemyndigheden og forsvareren at komme med en skriftlig forelæggelse af sagen (med kopi til offentligheden).

Endvidere skal retten kunne pålægge parterne at indlevere en skriftlig oversigt over deres procedure til retten, ligesom parterne - hvis de selv ønsker det - skal kunne få rettens tilladelse til helt eller delvis at indlevere deres procedure skriftligt til retten, men således at de i retten skal give en mundtlig sammenfatning heraf.

1.4. En intensiveret indsats over for den økonomiske kriminalitet kan ikke ske alene gennem retsplejeændringer, som kan give mulighed for en hurtigere og mere effektiv behandling af sager om økonomisk kriminalitet. Der må også gennemføres ændringer i straffeloven. Lovforslaget indebærer i den forbindelse en skærpelse af straffebestemmelserne vedrørende manglende eller mangelfuld bogføring. Det er nemlig helt almindeligt i sager om økonomisk kriminalitet, at de gældende regler om regnskabsføring er tilsidesat. Det kan i sig selv skabe mulighed for, at der gennem regnskaberne gives et falsk billede af f.eks. en virksomheds kreditværdighed. Men hertil kommer, at den manglende eller mangelfulde regnskabsføring også vanskeliggør og i nogle tilfælde helt umuliggør efterforskningen i de økonomiske sager.

Det er naturligvis også vigtigt at forebygge økonomisk kriminalitet. I de senere år er der i den forbindelse især blevet peget på behovet for at forebygge misbrug af konkurs- og selskabslovgivningen gennem frakendelse af adgangen til at indtage ledende stillinger i selskaber (erhvervsfrakendelse). På dette punkt stilles der forslag om en ændring af straffelovens regler om rettighedsfrakendelse med henblik på at forebygge sådanne misbrug af konkurs- og selskabslovgivningen.

#### 2. Udvidet adgang til beskæring af sagerne

2.1. Betænkning nr. 1066/ 1986 indeholder side 17 ff en gengivelse af udvalget om økonomisk kriminalitets generelle overvejelser.

Udvalget fremhæver, at sager om økonomisk kriminalitet frembyder en række særlige problemer. Dels er sagerne ofte meget omfattende, hvilket i sig selv kan medføre, at sagsbehandlingen tager meget lang tid. Dels har sagerne ofte tilknytning til udlandet,

Copyright © 2021 Karnov Group Denmark A/S

ligesom det for at trænge til bunds i sagerne kan være nødvendigt at foretage omfattende og kostbar rekonstruktion og revisionsmæssig gennemgang af regnskabsmaterialet.

Bl.a. som følge af sådanne forhold kan sagsbehandlingen såvel ved politiet som ved anklagemyndigheden og domstolene blive overordentlig langvarig.

Udvalget om bekæmpelse af økonomisk kriminalitet fremhæver (anf. sted), at der bør gennemføres regler, der letter sagsbehandlingen, og udvalget udtaler i den forbindelse, at en udvidelse af mulighederne for beskæring af sagerne findes af afgørende betydning.

2.2. De gældende regler i retsplejeloven om beskæring af straffesager (påtaleundladelse) gennemgås i betænkning nr. 1066/ 1986, side 157 ff. Udvalgets gennemgang viser, at der i dag kun i begrænset omfang er mulighed for at beskære sager af procesøkonomiske hensyn, jfr. betænkningen, side 184 ff.

På efterforskningsstadiet kan politiet i et vist omfang i medfør af retsplejelovens § 742 foretage en prioritering af sagerne. Såfremt der imidlertid foreligger en egentlig anmeldelse, som støttes på visse kendsgerninger, eller anden efterforskning viser, at det er overvejende sandsynligt, at et strafbart forhold af nogen grovhed er begået, kan politiet dog næppe undlade at foretage en efterforskning.

Efter retsplejeloven er anklagemyndigheden som udgangspunkt forpligtet til at påtale i tilfælde, hvor sagen kan forventes gennemført til fældende dom. Påtaleundladelse, der ikke grundes på bevismæssige eller retlige hindringer, kan således kun ske, når særlige hensyn til den sigtede gør sig gældende og hensynet til den forurettedes eller det offentliges interesser ikke taler imod, jfr. retsplejelovens § 723.

Udvalget fremhæver (side 184), at procesøkonomiske betragtninger allerede må antages at ligge bag den gældende regel i retsplejelovens § 723, stk. 1, nr. 4. Efter denne bestemmelse kan statsadvokaten i sager, der hører under hans virkekreds, undlade påtale eller frafalde påbegyndt forfølgning i tilfælde, hvor straffelovens § 10 b (om strafforfølgning mod en person, der allerede i et andet land er pålagt en sanktion for samme handling) eller straffelovens § 89 (hvorefter tillægsstraf for handlinger, der er begået forud for, men ikke pådømt ved en allerede afsagt dom, kun idømmes, hvis en samtidig pådømmelse ville have medført en forhøjelse af straffen) er anvendelig. Det er dog i disse situationer en betingelse, at ingen eller kun en ubetydelig straf skønnes at ville blive idømt, og at domfældelse ikke vil være af betydning for anvendelsen af en strengere straffebestemmelse i gentagelsestilfælde.

Bestemmelsen i retsplejelovens § 723, stk. 1, nr. 4, kan således anvendes ud fra procesøkonomiske hensyn, hvis der er tale om forhold begået forud for en fældende dom, og ingen eller kun en ubetydelig tillægsstraf kan forventes idømt. Bestemmelsen kan endvidere anvendes som hjemmel til at begrænse tiltalerejsning til en del af en sag, og når dommen er afsagt, til at slutte mindre betydende og måske ikke fuldt efterforskede forhold.

Adgangen til at beskære tiltalen af ressourcemæssige grunde i medfør af retsplejelovens § 723, stk. 1, nr. 4, må dog ifølge udvalgets betænkning, side 185, efter gældende ret under alle omstændigheder anses for begrænset til tilfælde, hvor den del af sagen, som der ikke rejses tiltale for, er af en sådan karakter, at den ikke kan antages at have væsentlig indflydelse på strafudmålingen.

2.3. Udvalget om økonomisk kriminalitet foretager i betænkningen, side 185 ff, en grundig gennemgang af de hensyn, der kunne tale imod en beskæring af straffesager ud fra procesøkonomiske hensyn. Det anføres således, at betænkelighederne overfor anvendelse af et opportunitetsprincip

(bl.a. spørgsmålet om kompetenceforskydning fra domstolene til anklagemyndigheden) også kan fremføres mod en udvidet adgang til at beskære straffesager. Samtidig vil det kunne være svært at vinde forståelse for, at en sigtet person, som man mener at kunne få dømt, skal slippe for straf eller slippe billigere på grund af ressourceproblemer. En øget adgang til at beskære straffesager kan også medføre en øget risiko for uensartethed i praksis, hvilket dog i et vist omfang imødegås af adgangen til rekurs til den højere anklagemyndighed. Endelig kan hensynet til den forurettede tale imod en for omfattende anvendelse af påtalefrafald.

Udvalget finder imidlertid ikke disse betænkeligheder afgørende (side 187). Udover åbenbare økonomiske fordele ved at beskære straffesager i videre omfang end hidtil vil man også kunne opnå væsentlige fordele for den sigtede, idet navnlig det psykiske pres, som en lang sagsbehandlingstid medfører, vil kunne mindskes. På denne baggrund foreslår udvalget (side 188 ff), at der i retsplejelovens § 723 indsættes en ny bestemmelse, hvorefter påtalemyndigheden helt eller delvis kan opgive eller frafalde tiltale, såfremt sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt. Da hensynet til at kunne beskære sager af procesøkonomiske hensyn som tidligere anført også kan tænkes at foreligge i andre sager end dem, der vedrører økonomisk kriminalitet, foreslår udvalget, at den ny regel om beskæring gives en generel formulering, således at den ikke efter sin ordlyd begrænses til at finde anvendelse i sådanne sager.

2.4. Betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet har som nævnt foran været forelagt for straffelovrådet og for retsplejerådet.

Straffelovrådet bemærker i sin udtalelse om betænkningen (bilag 1 til lovforslaget), at rådet kan tiltræde, at der er behov for regelændringer, som kan medføre en intensivering af retsvæsenets indsats over for den økonomiske kriminalitet. Straffelovrådet finder i den forbindelse, at der er behov for en udvidet adgang til at beskære straffesager med henblik på at begrænse efterforskningen og de forhold, der skal føres bevis for, og dette kan efter rådets opfattelse ikke give anledning til principielle betænkeligheder. Straffelovrådet tager ikke stilling til spørgsmålet om den nærmere udformning af den nye beskæringsregel.

Retsplejerådet kan i sit høringssvar (bilag 2 til lovforslaget) ligeledes tiltræde, at der er behov for en lovændring, der kan give anklagemyndigheden mulighed for at beskære sager ud fra ressourcemæssige hensyn. Retsplejerådet kan samtidig tiltræde, at en ny regel bør have en generel formulering, således at den også kan anvendes i sager, der ikke vedrører økonomisk kriminalitet, men hvor tilsvarende hensyn gør sig gældende.

Retsplejerådet har ingen væsentlige indvendinger imod den af udvalget foreslåede adgang til at undlade påtale af ressourcemæssige grunde, men anfører forskellige synspunkter vedrørende udvalgets forslag. Rådet anfører således, at en påtaleundladelse af ressourcemæssige grunde ikke bør tilkendegive skyldformodning over for sigtede, men bør ske ved påtaleopgivelse, medmindre resultaterne af den allerede foretagne efterforskning undtagelsesvis giver tilstrækkeligt grundlag for, at tiltale kunne have været rejst (således at betingelserne for tiltalefrafald er opfyldt). Rådet finder endvidere, at det bør overvejes nærmere, om der bør være adgang til at undlade hele tiltalen, og om kompetencen til at træffe bestemmelse om ressourcemæssigt begrundede påtaleundladelser bør træffes af statsadvokaten også i sager, hvor politimesteren har påtaleretten. Rådet nævner dog muligheden af, at disse spørgsmål løses gennem instruktoriske forskrifter.

Copyright © 2021 Karnov Group Denmark A/S

2.5. Justitsministeriet finder det af afgørende betydning for mulighederne for at effektivisere indsatsen over for den grove økonomiske kriminalitet, at der skabes bedre muligheder for at beskære sagerne. Dette er foreslået af udvalget vedrørende økonomisk kriminalitet og tiltrådt af såvel strafferetsrådet som retsplejerådet, der i øvrigt ikke har væsentlige indvendinger mod den af udvalget foreslåede regel. Derfor stiller justitsministeriet forslag om en sådan ændring af retsplejelovens § 723. Lovforslaget er udformet i overensstemmelse med udkastet i betænkning nr. 1066/ 1986, side 195 ff.

I overensstemmelse med udtalelserne i betænkningen, s. 192 f, har justitsministeriet i forbindelse med lovforslagets udarbejdelse overvejet at foretage en mere omfattende omskrivning og modernisering af reglerne i retsplejelovens §§ 723-723 a og 749. En sådan almindelig revision af reglerne om tiltalefrafald og -opgivelse rejser imidlertid en række vanskelige spørgsmål. Justitsministeriet har derfor bl.a. af tidsmæssige grunde afstået fra en sådan almindelig modernisering af disse regler, og resultatet er derfor, at der alene stilles forslag om at indsætte den af udvalget foreslåede beskæringsregel i de gældende regler i § 723.

Efter den foreslåede nye regel i retsplejelovens § 723, stk. 3, skal påtalemyndigheden helt eller delvis kunne opgive eller frafalde tiltale, såfremt sagens (fuldstændige) gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald vil kunne forventes idømt.

Udvalget om bekæmpelse af økonomisk kriminalitet har i betænkning nr. 1066/ 1986, side 190-192, nærmere beskrevet bestemmelsens indhold og dens forventede anvendelse i fremtidig praksis. Det fremhæves her, at situationen i praksis oftest vil være den, at man på et ret tidligt stadium af sagen må tage stilling til, om efterforskningen bør begrænses til visse forhold for at fremskynde hele sagen, altså også behandlingen af sagen, inden den kommer for retten. Beskæringen vil således oftest i praksis - som også fremhævet af retsplejerådet - have form af en tiltaleopgivelse.

I overensstemmelse med de nye regler om påtalekompetencen, som gennemførtes ved retsplejereformen af 1984, er det fundet mest hensigtsmæssigt - som også foreslåede af udvalget om økonomisk kriminalitet - at lade kompetencen til at opgive eller frafalde tiltale efter den nye regel følge retsplejelovens almindelige ordning. Kompetencen til at beskære sager af procesøkonomiske grunde skal således efter forslaget, ligesom kompetencen til i øvrigt at opgive eller frafalde tiltale, ligge hos vedkommende påtalemyndighed, dvs. i statsadvokatsager hos statsadvokaten og i politisager hos politimesteren. Justitsministeriet vil imidlertid i forbindelse med en eventuel gennemførelse af lovforslaget overveje spørgsmålet om udsendelse af instruktoriske forskrifter om forelæggelse af visse sager for den overordnede anklagemyndighed. Det bemærkes i den forbindelse, at der i forbindelse med omlægningen af påtalekompetencen i 1984 blev udsendt sådanne instruktoriske forskrifter, og at det vil kunne vise sig naturligt at supplere disse med forskrifter om forelæggelse for den overordnede anklagemyndighed af visse sager om beskæring efter den nye regel.

## 3. Erhvervsfrakendelse

3.1. Ved en folketingsbeslutning af 30. maj 1985 er regeringen af folketinget blevet opfordret til at træffe forskellige foranstaltninger med henblik på at modvirke misbrug af konkurs- og selskabslovgivningen. Efter folketingsbeslutningen skal der i overvejelserne herom bl.a. indgå spørgsmålet om rettighedsfrakendelse vedrørende retten til at drive erhvervsvirksomhed. Folketingsbeslutningen kommer også ind på spørgsmålet om stråmandsvirksomhed og på spørgsmålet om straf for overtrædelse af en erhvervsfrakendelse.

Til opfyldelse af de nævnte punkter i folketingsbeslutningen stilles der lovforslag om ændring af straffeloven, således at der sker en udvidelse af mulighederne for at frakende retten til at være direktør, bestyrelsesmedlem m.v. i selskaber m.v. Folketingsbeslutningen omtaler også forskellige andre foranstaltninger, som skal indgå i overvejelserne vedrørende bekæmpelse af misbrug af konkurs- og selskabslovgivningen. Der tales i den forbindelse bl.a. om spørgsmålet om vurdering og salg af boaktiver m.v. Det kan i den forbindelse oplyses, at justitsministeriet har nedsat et udvalg, som bl.a. skal overveje spørgsmålet om disse andre mulige tiltag, som er omtalt i folketingsbeslutningen.

3.2. Udvalget om økonomisk kriminalitet har i afsnit IV i betænkning nr. 1066/ 1986 (side 201 ff) drøftet spørgsmålet om foranstaltninger mod konkurs- og selskabsmisbrug.

Disse former for misbrug beskrives nærmere i betænkningen, side 203 ff. En mulighed for at misbruge de selskabsretlige regler kan f.eks. bestå i at oprette et aktie- eller anpartsselskab, der producerer eller forhandler en vare. Selskabet oparbejder et stort driftsunderskud (eventuelt gennem løbende udslusning af indtjeningen). I særdeleshed told- og skattevæsenet har typisk betydelige beløb til gode i selskabet. Selskabets aktiver sælges billigt til et nyt selskab, som det første selskab eller dettes ejere ikke formelt behersker. Det første selskab erklæres derefter konkurs. Stifterne, stifterens ægtefælle eller et familiemedlem eller en anden »stråmand« opretter eller har oprettet det nye selskab, der køber varelager og produktionsapparat billigt af boet og fortsætter produktionen. Det nye selskab oparbejder et stort driftsunderskud og går konkurs osv.

Misbrug af konkurslovgivningen kan f.eks. bestå i, at der ikke i selskabet etableres en sædvanlig forretningsmæssig drift med henblik på at opnå en forsvarlig indtjening men derimod gennemføres dispositioner, som alene tjener aktionærens eller anpartshaverens interesser i et andet selskab. Endvidere kan misbruget bestå i, at der ikke sker en reel afhændelse af det tidligere selskabs aktiver, men at disse enten inden eller efter konkursen overføres til et andet selskab, som direkte eller indirekte beherskes af fallenten.

Misbrug er ifølge udvalget hyppigst knyttet til selskaber og til en konkurssituation, men de kan også forekomme i enkeltmandsvirksomheder og i situationer, hvor konkurs ikke bliver aktuel.

Udvalget om bekæmpelse af økonomisk kriminalitet har indhentet udtalelser fra en række myndigheder og organisationer med henblik på en nærmere belysning af de nævnte former for misbrug.

Hovedindholdet af udtalelserne er gengivet i betænkningen nr. 1066/ 1986, side 221 ff.

3.3. På baggrund af de nævnte udtalelser konkluderer udvalget (side 239 ff), at misbrug af konkurs- og selskabslovgivningen forekommer i et vist begrænset omfang, og at sådant misbrug kan være årsag til, at der ledes betydeligt tab af offentlige og private kreditorer. Udvalget finder derfor, at der vil kunne være behov for indgreb over for personer, der gør sig skyldige i så nævnte misbrug.

Uanset de foranstaltninger, som indenfor selskabslovgivningens område er truffet med henblik på at hindre eller modvirke selskabsmisbrug, finder udvalget, at det med henblik på at søge at effektivisere bekæmpelsen af groft misbrug af de konkurs- og selskabsretlige regler må anses for hensigtsmæssigt at udvide adgangen til begrænsning - frakendelse - af retten til erhvervsudøvelse.

Udvalget udtaler (s. 246), at det ud fra retssikkerhedssynspunkter er aldeles uacceptabelt at foretage en så indgribende og generelt

betænkelig foranstaltning, som det ville være at foretage en rettighedsfrakendelse uden grundlag i en dom for strafbart forhold. Ved at betinge adgangen til rettighedsfrakendelse heraf opnås tillige, at den sagsbehandling og de myndigheder, der skal tage stilling til spørgsmålet, frembyder de bedst mulige retssikkerhedsmæssige garantier.

Udvalget om økonomisk kriminalitet har på den baggrund uformet sit forslag til udvidet adgang til rettighedsfrakendelse i tilknytning til de gældende regler om rettighedsfrakendelse i straffelovens §§ 78-79. Efter udvalgets forslag skal der som en ny § 79 a indsættes en bestemmelse om erhvervsfrakendelse i straffeloven. Forslaget indebærer, at der i forbindelse med dom for strafbart forhold skal være mulighed for at frakende retten til at være stifter, direktør, medlem af af bestyrelsen eller til i øvrigt at udøve en bestemmende indflydelse i selskaber med begrænset ansvar m.v., såfremt det udviste forhold begrunder nærliggende fare for misbrug af sådan virksomhed.

Samtidig foreslår udvalget en regel om adgang til midlertidig erhvervsfrakendelse under straffesagens behandling. Overtrædelser af erhvervsfrakendelser bør efter udvalgets opfattelse kunne straffes strengere end i dag, og udvalget foreslår derfor en skærpelse af reglen herom i straffelovens § 131. For at klargøre, at stråmandsvirksomhed også er strafbar, foreslår udvalget samtidig en ny regel i § 131, stk. 2, men med en lavere strafferamme end for hovedmanden.

3.4. Straffelovrådet kan i sin udtalelse (pkt. 3.2.) tiltrædde, at der er behov for at ændre de gældende regler om rettighedsfrakendelse, således at det i videre omfang bliver muligt at frakende retten til visse former for erhvervsudøvelse.

Straffelovrådet er enigt med udvalget i, at adgangen til erhvervsmæssig diskvalifikation ligesom i dag bør betinges af, at der foreligger en dom for et strafbart forhold. En adgang til rettighedsfrakendelse, som ikke var knyttet hertil, men f.eks. alene til, at den pågældende var gået konkurs, ville efter rådets opfattelse være overordentlig betænkelig.

Rådet giver udtryk for, at adgangen til frakendelse af rettigheder i de af udvalget foreslåede nye grupper af tilfælde bør være betinget af, at særlige omstændigheder taler derfor, jfr. herved den gældende bestemmelse i straffelovens § 79, stk. 1, 2. pkt., om frakendelse af ret til at drive anden virksomhed, som ikke kræver særlig offentlig autorisation eller godkendelse. Dette kan efter straffelovrådets opfattelse lettest ske, såfremt man indarbejder den nye regel om »erhvervsfrakendelse« i § 79, i hvilken bestemmelse rådet i forvejen finder behov for redaktionelle ændringer.

Straffelovrådet tiltræder i udtalelsens pkt. 3.3., at der som foreslået af udvalget åbnes adgang til at frakende retten til at være stifter, direktør eller medlem af bestyrelsen i et selskab med begrænset ansvar, et selskab eller en forening, som kræver særlig offentlig godkendelse, eller en fond. Derimod finder straffelovrådet, at en adgang til frakendelse af retten til »i øvrigt at udøve en bestemmende indflydelse« i et sådant selskab m.v. ville være for vidtgående og i sin meget ubestemte form give betydelige afgrænsnings- og kontrolvanskeligheder. Dette led i udvalgets angivelse af de rettigheder, som skal kunne frakendes, bør derfor efter straffelovrådets opfattelse udgå.

Straffelovrådet fremhæver i øvrigt, at der i hvert enkelt tilfælde må tages stilling til frakendelsens nærmere omfang. Der kan dels være tale om kun at frakende retten til at beklæde en bestemt stilling f.eks. som direktør, dels om at begrænse en frakendelse til virksomheder inden for bestemte brancher.

Straffelovrådet fremhæver betænkelighederne ved en adgang til suspension (midlertidig rettighedsfrakendelse) under sagen, men rådet betragter det som en selvfølge, at en sådan regel må anvendes meget restriktivt, og rådet har derfor ikke ment at burde udtale sig imod den foreslåede regel.

Straffelovrådet har ikke bemærkninger til de foreslåede ændringer i strafferammerne i § 131, stk. 1 og 2, om overtrædelse af rettighedsfrakendelse. Det er efter straffelovrådets opfattelse mest nærliggende at antage, at de almindelige medvirkensregler også omfatter medvirken til, at en anden udøver en virksomhed, til hvilken retten er ham frakendt, men rådet finder ikke grund til at indvende noget imod udvalgets forslag om, at medvirkensansvaret for bl.a. stråmænd præciseres, og at der for dette ansvar skal gælde en lavere strafferamme.

3.5. Justitsministeriet kan tiltræde, at der er behov for regelændringer med det formål at modvirke misbrug af konkurs- og selskabslovgivningen. Justitsministeriet kan derfor tiltræde forslaget om nye regler om erhvervsfrakendelse.

Med hensyn til den nærmere udformning af de nye regler vil det som fremhævet af straffelovrådet formentlig blive for vidtgående og for vanskeligt at kontrollere, såfremt der også åbnes mulighed for at frakende retten til - udover at være stifter, direktør eller bestyrelsesmedlem - at have bestemmende indflydelse i et selskab m.v. Som nævnt af straffelovrådet vil en sådan frakendelse kunne omfatte retten til udøve stemmeret ifølge en aktiepost, som den pågældende gennem arv eller på anden lovlig måde er kommet i besiddelse af. Justitsministeriet har derfor i overensstemmelse med straffelovrådets udtalelse ikke i den nye regel medtaget en adgang til at frakende ret til at have bestemmende indflydelse i et selskab.

Justitsministeriet kan ligeledes tiltræde behovet for at skærpe straffen for overtrædelser af rettighedsfrakendelser, jfr. straffelovens § 131.

Det er efter justitsministeriets opfattelse meget vigtigt, at man modvirker, at rettighedsfrakendelser omgås ved anvendelse af stråmænd o.l. For at der ikke skal være tvivl om, at også stråmænd kan straffes, har justitsministeriet derfor i overensstemmelse med straffelovrådets lovudkast medtaget den af udvalget vedrørende økonomisk kriminalitet foreslåede regel om præcisering af medvirkensansvaret i lovforslaget, jfr. forslaget til straffelovens § 131, stk. 2.

## 4. Bogføringsovertrædelser

4.1. Betænkning nr. 1066/ 1986 indeholder i afsnit I udvalgets overvejelser vedrørende bestemmelserne om straf for urigtig eller mangelfuld bogføring. Betænkningen indeholder herunder en meget omfattende gennemgang af lovgivningens krav til bogføring og regnskab m.v. og af de gældende straffebestemmelser herom, jfr. betænkningens kapitler 5-9 (side 29-102).

Statsadvokaten for særlig økonomisk kriminalitet har over for udvalget oplyst, at der i forbindelse med næsten alle sager om økonomisk kriminalitet foreligger overtrædelser af reglerne om bogføring og regnskab. Mangelfuld regnskabsføring kan gøre det særdeles vanskeligt og i nogle tilfælde umuligt at gennemføre sagerne, og der er derfor efter udvalgets opfattelse (side 128 ff) behov for en styrkelse af det strafferetlige værn mod bogføringsovertrædelser.

Udvalget fremhæver endvidere, at en skærpelse af bestemmelserne herom også vil kunne give anklagemyndigheden et grundlag for på et tidligt tidspunkt i efterforskningen at beslutte sig til at begrænse eventuel tiltale til kun at omfatte bogføringsovertrædelsen og derved undgå en langvarig og måske forgæves efterforskning af en berigelsesforbrydelse.

På denne baggrund foreslår udvalget, at der foretages forskellige ændringer i straffeloven med henblik på at skærpe straffen for sådanne overtrædelser. Efter udvalgets forslag (s. 135) skal bestemmelsen om bogføringsovertrædelser i straffelovens § 302

have en strafferamme på bøde, hæfte eller fængsel indtil 1 år og 6 måneder, og samtidig skal denne bestemmelses beskrivelse af de strafbare handlinger og undladelser revideres og moderniseres.

4.2. Straffelovrådet kan i sin udtalelse pkt. 2.3. tiltræde, at straffelovens § 302 søges udformet på en sådan måde, at bestemmelsen i højere grad tager sigte på grovere forhold, der ikke findes at burde henføres alene under straffebestemmelsen i bogføringsloven. Straffelovrådet kan endvidere tiltræde, at der for sådanne forhold fastsættes en strafferamme, der er væsentligt strengere end den nugældende ramme af bøde eller hæfte.

Straffelovrådet nærer nogen betænkelighed ved forslaget fra udvalget vedrørende økonomisk kriminalitet om, at strafmaksimum i bestemmelsen skal være på fængsel i 1 år og 6 måneder. Rådet fremhæver, at der er åbenbare betænkeligheder ved at søge bogføringsovertrædelser sat i klasse med berigelsesforbrydelser, således at politiet og anklagemyndigheden kan nøjes med at slå ned på de lettest tilgængelige oplysninger, nemlig dem, der vedrører mangelfuld bogføring m.v., og vente sådanne forhold bedømt lige så strengt, som hvis der var ført bevis for en berigelsesforbrydelse. Selv om bogføringsovertrædelser kan være af betydelig grovhed og undertiden skabe en formodning om uredeligt forhold, forekommer det ikke straffelovrådet sandsynligt, at der ved domstolene vil blive idømt langvarige straffe for bogføringsovertrædelser. Det er straffelovrådets konklusion, at rådet foreslår at fælles strafmaksimum på 1 års fængsel for de forskellige tilfælde af særligt grove bogføringsovertrædelser, som skal omfattes af § 302.

Om den nærmere udformning af bestemmelsen henvises i øvrigt til straffelovrådets udtalelse.

4.3. Justitsministeriet kan i det hele tiltræde straffelovrådets synspunkter og forslag vedrørende spørgsmålet om skærpelse af straffen for bogføringsovertrædelser. Lovforslaget er derfor udformet i overensstemmelse med straffelovrådets lovudkast.

## 5. Andre forslag vedrørende sagernes behandling

5.1. Almindelige bemærkninger. Udvalget om økonomisk kriminalitet peger i betænkning nr. 1066/ 1986, side 21 f, på at sagsbehandlingstiden i sager om økonomisk kriminalitet kan blive overordentlig lang ikke blot ved politiet og anklagemyndigheden, men også når sagen skal behandles ved retten, hvor domsforhandlingen i 1. instans i de større økonomiske sager ofte er meget langvarig. Dette skyldes ikke blot sagernes meget omfattende karakter, men også, at retsplejelovens almindelige regler om behandlingen af straffesager ikke er udformet med henblik på sager om økonomisk kriminalitet.

I de større økonomiske sager varer domsforhandlingen ved 1. instans ofte fra 3/ 4 - 2 år, og ankes sagen, vil også ankebehandlingen kunne blive meget langvarig. Udvalget fremhæver, at dette ikke kan undgå at medføre problemer for domstolene, ikke mindst for Københavns byret, hvor halvdelen af byrettens kriminelle afdelinger på et vist tidspunkt var optaget af sager om økonomisk kriminalitet. I en tid, hvor ressourcerne er knappe, har dette ikke kunnet undgås at medføre, at andre sager har måttet vente, således at der har været en betydelig stigning i berammelsestiderne ved domstolene i alle typer af sager.

Udvalget har på denne baggrund overvejet, om man ved en række ændringer af de processuelle regler om domstolsbehandlingen af sager om økonomisk kriminalitet vil kunne lette disse sagers vej gennem retssystemet, således at de eksisterende ressourcer kan udnyttes bedre.

5.2. Forberedende retsmøde. Skriftlig forelæggelse. I civile retssager kan retten indkalde parterne til et forberedende retsmøde, hvor parternes stilling til sagens faktiske og retlige problemer kan

bringes på det rene, og hvor det kan klarlægges, hvilke faktiske omstændigheder, der skal være genstand for bevisførelse. En tilsvarende regel gælder ikke for straffesager. Udvalget om økonomisk kriminalitet finder (betænkningen side 275 ff), at overflødig bevisførelse m.v. vil kunne undgås, såfremt man fra sagens begyndelse kan klarlægge parternes stillingtagen til sagens faktiske og retlige spørgsmål. Udvalget stiller derfor forslag om en bestemmelse i retsplejeloven, hvorefter retten i straffesager kan indkalde parterne til et forberedende møde med henblik på en effektiv tilrettelæggelse af domsforhandlingen.

Der gælder ikke nogen udtrykkelig regel om anklagerens forelæggelse af straffesager, der behandles ved byret. Det antages dog, at sådan forelæggelse kan ske, og i sager om økonomisk kriminalitet er det ligesom i andre meget store sager blevet praksis, at domsforhandlingen indledes med anklagerens forelæggelse af sagen. Forelæggelsen sker mundtlig og består i en redegørelse for de faktiske omstændigheder og de retsregler, som tiltalen angår, med en præcisering af bevistemaerne. I større sager om økonomisk kriminalitet har anklagerens forelæggelse strakt sig over flere retsdage.

Udvalget om økonomisk kriminalitet foreslår på denne baggrund (side 279), at retten skal have beføjelse til at pålægge anklagemyndigheden at foretage en skriftlig forelæggelse af sagen. En sådan skriftlig forelæggelse skal efter udvalgets forslag være offentligt tilgængelig, og udvalget forudsætter, at der i retten under domsforhandlingen gives en mundtlig sammenfatning af den skriftlige forelæggelse.

Retsplejerådet anbefaler i sin udtalelse om udvalgets betænkning, at disse forslag gennemføres. Rådet finder dog, at adgangen til at pålægge anklagemyndigheden at fremsende en skriftlig forelæggelse i lovteksten bør begrænses til særlige tilfælde, hvor sagens beskaffenhed gør det påkrævet, ligesom det udtrykkeligt bør fremgå af bestemmelsen, at der skal gives en mundtlig sammenfatning i retten af den skriftlige forelæggelse. Retsplejerådet påpeger endvidere, at der ikke findes en udtrykkelig hjemmel til at kræve en mundtlig forelæggelse af sager, der behandles ved højesteret. Justitsministeriet kan tiltræde behovet for en mere effektiv tilrettelæggelse af disse sager. Justitsministeriet er således enig i udvalgets forslag. Det behov, som retsplejerådet har peget på med hensyn til en mere præcis angivelse i lovteksten af anvendelsesområdet for regler om skriftlig forelæggelse, er indarbejdet i justitsministeriets lovforslag (retsplejelovens §§ 927 a 927 b).

5.3. Skriftlig procedure. I straffesager afsluttes domsforhandlingen - inden den tiltalte får det sidste ord - med en procedure, hvor anklageren og forsvareren får mulighed for at udtale sig om bevisførelsens resultat og retsspørgsmålene i sagen. Proceduren er efter gældende ret altid mundtlig.

Proceduren i de meget store og komplicerede sager kan undertiden blive langvarig. Der kan være måske mange tusinde dokumenter og et anseligt antal vidneforklaringer, der skal opsummeres og holdes sammen for at vurdere bevislighederne. Udvalget om økonomisk kriminalitet oplyser i betænkningen, side 287, at det ikke er usædvanligt, at proceduren i de store økonomiske sager strækker sig over 15-20 retsdage. Udvalget oplyser endvidere, at procedureformen i disse sager til en vis grad har ændret karakter, idet den fra - som man kender det i almindelige sager - at være et frit foredrag baseret på enkelte notater fra den umiddelbart forudgående bevisførelse i højere grad el blevet et foredrag baseret på et egentlig manuskript.

Resultatet er i praksis, at retten og parterne må tilbringe meget lang tid med at høre på anklagerens og i nogen grad også forsvarerens oplæsning af et maskinskrevet manuskript og notere

det ned, som bliver læst op. Under voteringen om de enkelte forhold må retten så betjene sig af sine notater om det, som anklageren og forsvareren har sagt i deres oplæsning.

Udvalget foreslår på denne baggrund (betænkningen, side 287), at retten skal have mulighed for at bestemme, at procedureindlæg skal fremsendes skriftligt til retten. Parterne skal i så fald give en mundtlig sammenfatning af indlæggene i retten, og indlæggene skal være offentligt tilgængelige. En sådan fremgangsmåde vil betyde en væsentlig tidsbesparelse i retten, og de skriftlige procedureindlæg vil kunne være en betydelig hjælp for retten under voteringen.

Retsplejerådet giver i sin udtalelse over betænkningen, pkt. 5, udtryk for, at rådet ikke kan tiltræde udvalgets forslag og nævner, at forslaget på et væsentligt punkt fraviger retsplejelovens princip om mundtlighed i retsplejen. Rådet finder, at nogle af de hensyn, der bærer udvalgets forslag, vil kunne tilgodeses ved en ordning i praksis, hvorefter retten og parterne aftaler, at det er betænkeligt at fravige retsplejelovens mundtlighedsprincip, og at en forsvarer bør have ret til at vurdere, i hvilken form han mener bedst at kunne fremføre sine synspunkter.

Justitsministeriet finder på den ene side den nuværende procedureform i store økonomiske sager uhensigtsmæssig, idet der hengår et stort antal retsdage med oplæsning af i forvejen udarbejdede procedureindlæg, og idet dommernes notater om parternes mundtlige procedure i sådanne sager næsten uundgåeligt må blive i et vist omfang mangelfulde.

På den anden side er justitsministeriet enig i, at spørgsmålet kan give anledning til tvivl, idet det kan anføres, at det er betænkeligt at fravige retsplejelovens mundtlighedsprincip, og at en forsvarer bør have ret til at vurdere, i hvilken form han mener bedst at kunne fremføre sine synspunkter.

Justitsministeriet har på denne baggrund udformet lovforslaget således, at der ikke foretages nogen principiel ændring i retsplejelovens regler om, at proceduren holdes mundtligt. Med henblik på at lette rettens arbejde med votering og domsskrivning foreslår justitsministeriet imidlertid på baggrund af det af retsplejerådet anførte, at det udtrykkeligt anføres i lovteksten (§ 928 a stk. 3), at retten kan pålægge anklageren og forsvareren i forbindelse med den mundtlige procedure at afgive en skriftlig oversigt over procedureindlæggets indhold med en angivelse af de hovedsynspunkter, der gøres gældende.

De betænkeligheder, som har været anført overfor udvalgets forslag om skriftlig procedure i visse store sager, er ikke til stede, hvis anklageren eller forsvareren (eller eventuelt den tiltalte) selv anmoder om helt eller delvis at måtte indlevere proceduren skriftligt. Der bør dog gives en mundtlig sammenfatning i retten af den skriftlige procedure. Lovforslagets § 928 a, stk. 2, er udformet i overensstemmelse hermed.

5.4. Øvrige processuelle forslag. Efter de gældende regler udtages domsmænd ved lodtrækning fra en særlig grundliste, der er udarbejdet af det kommunale grundlisteudvalg. Der stilles ikke særlige faglige krav til de personer, der optages på grundlisten. Udvalget om økonomisk kriminalitet udtaler side 290 i betænkning nr. 1066/1986, at udvalget anser det for væsentligt, at domsmænd i større sager om økonomisk kriminalitet har en vis indsigt i regnskabsmæssige forhold, og udvalget stiller derfor forslag om, at det skal markeres på grundlisten, hvilke personer der har særligt kendskab til erhvervsforhold. Kræver sagen et sådant kendskab, skal udtagelsen af domsmænd efter udvalgets forslag ske blandt de pågældende personer.

Retsplejerådet anfører i sin udtalelse over betænkningen som sin principielle opfattelse, at domsmænd bør rekrutteres blandt almindelige mennesker uden specialviden eller særlige forudsætninger. Herudover peger retsplejerådet bl.a. på, at udvalgets

forslag efter rådets opfattelse har fået en teknisk set uhensigtsmæssig udformning, og at spørgsmålet om at indføre sagkyndige domsmænd i strafferetsplejen under alle omstændigheder bør undergives mere indgående overvejelser i forbindelse med retsplejerådets drøftelser af instansfølgen i civile sager.

Justitsministeriet finder spørgsmålet om sagkyndige domsmænd egnet til drøftelse i en bredere sammenhæng, og der er derfor ikke medtaget regler herom i lovforslaget.

I dansk ret er det udgangspunktet, at beviser skal føres umiddelbart for den dømmende ret under domsforhandlingen. Efter retsplejelovens § 747 består der imidlertid en adgang til at sikre bevis ved anticiperet bevisførelse, dvs. bevisførelse under retsmøder forud for domsforhandlingen, i nogle nærmere angivne tilfælde.

Udvalget foreslår (s. 281 f.) denne adgang til anticiperet bevisførelse udvidet, således at bestemmelsen udtrykkeligt fastslår, at retsmøde til sikring af bevis kan afholdes, såfremt det må forventes, at efterforskningen eller domsforhandlingen vil blive meget langvarig. Baggrunden herfor er, at det bl.a. i store og langvarige sager om økonomisk kriminalitet er vanskeligt for vidner at huske noget om de hændelser, som de skal forklare om, og som ligger langt tilbage i tiden, undertiden mange år.

Retsplejerådet kan i sin udtalelse, pkt. 3, tiltræde, at der navnlig i store sager om økonomisk kriminalitet kan være behov for at sikre bevis ved anticiperet bevisførelse på grund af sagens forventede varighed. Rådet finder imidlertid, at den gældende bestemmelse i retsplejelovens § 747, stk. 1, giver tilstrækkelig hjemmel til at tillade anticiperet bevisførelse i det af udvalget om økonomisk kriminalitet ønskede udvidede omfang.

Justitsministeriet kan tiltræde dette, og der er derfor i lovforslaget ikke medtaget noget forslag om ændring i retsplejelovens § 747, idet den udvidede anvendelse af anticiperet bevisførelse, som udvalget om økonomisk kriminalitet foreslår, vil kunne ske indenfor rammerne af den gældende bestemmelse. Efter den gældende bestemmelse i retsplejelovens § 965 c, stk. 4, kan tilførsler til retsbogen om forklaringer afgivet af vidner og syns- og skønsmænd under byretsbehandlingen anvendes under bevismiddel under landsretsbehandlingen, såfremt ingen af parterne inden domsforhandlingen har anmodet om fornyet afhøring af de pågældende.

Udvalget finder (side 283), at denne bestemmelse i tilfælde, hvor der ikke er den fornødne enighed mellem anklageren og forsvareren, er egnet til at medføre unødvendig ny bevisførelse på grund af kravet om, at parterne skal være enige, for at vidner m.v. ikke behøver at føres på ny. Udvalget foreslår derfor, at dette krav udgår og erstattes af en bestemmelse om, at det er landsretten, der (i tilfælde af uenighed mellem parterne) bestemmer, om der skal ske fornyet afhøring.

Præsidenterne for Østre og Vestre landsret anfører i deres høringssvar over betænkning nr. 1066/1986, at retten kun bør gribe ind i bevisførelsen som led i den almindelige procesledelse og i øvrigt overlade til parterne, der kender sagen bedst, at bestemme bevisførelsens form og omfang.

Retsplejerådet tilslutter sig i sin udtalelse, pkt. 6, den opfattelse, som landsretterne har givet udtryk for, og tilføjer, at udøvelsen af den foreslåede beføjelse ville kunne svække parternes tillid til rettens upartiskhed.

Justitsministeriet finder, at en nærmere vurdering af forslaget under hensyn til den negative modtagelse, det har fået, formentlig bør afvente, at der indvindes yderligere erfaringer ved landsretternes med ankebehandling af sager om økonomisk kriminalitet.

## 6. Lovforslagets økonomiske og administrative konsekvenser

Lovforslaget har som nævnt bl.a. til formål at skabe grundlag for en intensivering af retsvæsenets indsats overfor økonomisk kriminalitet, herunder gennem regelændringer, der skal muliggøre en hurtigere og mere effektiv behandling af sager om økonomisk kriminalitet. Lovforslaget kan ikke antages at være forbundet med økonomiske konsekvenser af betydning, men forslaget vil kunne give grundlag for en hurtigere sagsbehandling og dermed for en bedre udnyttelse af retsvæsenets ressourcer.

## 7. Hørte myndigheder m.v.

Betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet har været sendt til høring hos præsidenterne for Østre og Vestre landsret, Sø- og handelsretten, Københavns byret og retterne i Odense, Ålborg og Århus, Den danske dommerforening, Dommerfuldmægtigforeningen, Rigsadvokaten, Rigspolitichefen, Politidirektøren i København, Foreningen af politimestre i Danmark, Politifuldmægtigforeningen, Dansk kriminalpolitiforening, Dansk politiforbund, Advokatrådet, Industriministeriet samt Ministeriet for skatter og afgifter.

## Bemærkninger til lovforslagets enkelte bestemmelser

### Til § 1

#### Til nr. 1-3
Der henvises til de almindelige bemærkninger, pkt. 3, til straffelovrådets udtalelse, pkt. 2, og til betænkning nr. 1066/ 1986 om økonomisk kriminalitet, side 239-271.

#### Til nr. 4-5
Der henvises til de almindelige bemærkninger, pkt. 4, til straffelovrådets udtalelse, pkt. 2, og til betænkningen, side 127 ff.

### Til § 2

#### Til nr. 1
Der henvises til betænkning nr. 1066/ 1986, side 279 og 296.

#### Til nr. 2-3
Bestemmelserne indebærer, at overtrædelser af retlighedsfrakendelser, jfr. straffelovens § 131, gøres til statsadvokatsager. Der henvises til betænkningen side 270.

#### Til nr. 4-5
Der henvises til de almindelige bemærkninger, pkt. 2, til retsplejerådets udtalelse, pkt. 1, og til betænkningen, side 151-197.

#### Til nr. 6-7 og 10
Der henvises til de almindelige bemærkninger, pkt. 5.2., og til retsplejerådets udtalelse, pkt. 4.

#### Til nr. 8-9
Der henvises til de almindelige bemærkninger pkt. 5.3., og til retsplejerådets udtalelse, pkt. 5.

### Til § 3
Bestemmelsen indeholder ikrafttrædelses- og overgangsbestemmelser.

I overensstemmelse med forslaget i betænkning nr. 1066/ 1986 foreslås det, at forslagene til ændringer i retsplejeloven finder anvendelse i alle sager, der ikke er endeligt afgjort ved lovens ikrafttræden.

### Til § 4
Bestemmelsen vedrører den foreslåede lovs territoriale gyldighed.

## Bilag 1

### STRAFFELOVRÅDET

Udtalelse om betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet

Ved skrivelse af 10. marts 1986 har justitsministeriet anmodet straffelovrådet om en udtalelse om nogle af forslagene i betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet.

Justitsministeriets skrivelse lyder således:

»Vedlagt fremsendes betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet, som er afgivet af et udvalg under justitsministeriet.

Justitsministeriet har sendt betænkningen til høring hos myndigheder og organisationer med svarfrist den 4. april 1986.

I den anledning skal man anmode straffelovrådet om en udtalelse om betænkningens forslag til ændringer i straffeloven og i retsplejelovens regler om tiltalefrafald m.v.

Justitsministeriet vil fremsende de ovenfor nævnte høringssvar til straffelovrådet, efterhånden som de indkommer.

Da et lovforslag om bekæmpelse af økonomisk kriminalitet agtes fremsat i april måned 1986, skal man anmode om, at rådets udtalelse må foreligge snarest muligt og senest den 18. april 1986.«

Justitsministeriet har samtidig anmodet retsplejerådet om en udtalelse om betænkningens forslag til ændring af retsplejeloven.

Under hensyn hertil og til den korte tidsfrist for afgivelsen af rådets udtalelse har justitsministeriet senere tilkendegivet, at man vil være indforstået med, at straffelovrådet ikke tager nærmere stilling til spørgsmålet om udformningen af retsplejelovens regler om tiltalefrafald m.v.

Straffelovrådet har behandlet sagen i 4 møder.

Som følge af den måde, hvorpå justitsministeriet har stillet opgaven, og under hensyn til de andre opgaver vedrørende sanktionssystemets udformning, som straffelovrådet beskæftiger sig med, finder man grund til at fremhæve, at straffelovrådet alene har set det som sin opgave at tage stilling til spørgsmålene, således som de er forelagt i betænkning nr. 1066/ 1986 om økonomisk kriminalitet.

Ved afgivelsen af denne udtalelse har straffelovrådet haft følgende sammensætning: Professor, dr. jur. Knud Waaben (formand), advokat Jørgen Bang, kontorchef i justitsministeriet Michael Elmer (der tillige varetager ledelsen af rådets sekretariat), retspræsident Kurt Haulrig, direktør for kriminalforsorgen Frits Hellborn, politimester Jørgen Langkilde samt rigsadvokat Per Lindegaard. Direktør Frits Hellborn har dog ikke deltaget i rådets behandling af denne udtalelse, og i hans sted har fængselsinspektør William Rentzmann deltaget i arbejdet.

Hvervet som sekretær for rådet er varetaget af kst. byretsdommer Bent Carlsen og fuldmægtig i justitsministeriet Claes Nilas.

København, den 21. april 1986.

Jørgen Bang
Jørgen Langkilde
Knud Waaben
(formand)
Elmer
Per Lindegaard
/ Bent Carlsen
(sekretær)
K. Haulrig
William Rentzmann
Claes Nilas
(sekretær)

### 1. Almindelige bemærkninger.

Udvalget om bekæmpelse af økonomisk kriminalitet redegør i kapitel 3 i betænkning nr. 1066/ 1986 (side 17-22) for, at behandlingen af sager om økonomisk kriminalitet frembyder en række vanskeligheder, som ikke blot gør sig gældende i forbindelse med efterforskningen, men også i forbindelse med anklagemyndighedens og domstolenes behandling af sådanne sager.

Hovedproblemet er, at det tager meget lang tid at behandle sager om økonomisk kriminalitet, bl.a. fordi de gældende regler om straffesagers behandling ikke er udformet med henblik på denne type af sager.

Udvalget finder behov for regelændringer, som kan give grundlag for en hurtigere behandling af sagerne og dermed for en ønskelig intensivering af retsvæsenets indsats overfor den økonomiske kriminalitet. Udover ændringer i processuelle regler om sagsbehandlingen ved domstolene stiller udvalget forslag om en ny regel i retsplejelovens § 723 med henblik på en udvidet adgang til »beskæring« af sager.

Endvidere foreslår udvalget en ny skærpet bestemmelse i straffelovens § 302 vedrørende manglende eller mangelfuld bogføring m.v.

Med henblik på forebyggelse af økonomisk kriminalitet stiller udvalget endelig forslag om en udvidelse af straffelovens regler om rettighedsfrakendelse til også at omfatte visse former for virksomhed i forbindelse med selskaber.

Straffelovrådet kan tiltråde, at der er behov for regelændringer, som kan medføre en intensivering af retsvæsenets indsats over for den økonomiske kriminalitet.

I den forbindelse lægger rådet til grund, at det er nødvendigt at give en udvidet og præciseret adgang til at »beskære« straffesager med henblik på at begrænse efterforskningen og de forhold, der skal føres bevis for, og således fremme sagernes behandling. Det svarer i princippet til, hvad der allerede i dag er praksis i sager om mange ensartede forhold. Rådet finder derfor, at den foreslåede udvidede adgang til beskæring af straffesager ikke kan give anledning til principielle betænkeligheder. Rådet er ikke gået ind på spørgsmålet om udformningen af bestemmelserne om tiltalefrafald og begrænsning af efterforskningen.

### 2. Bogføringsovertrædelser

2.1. De gældende regler om bogføring og regnskab og om straf for urigtig, manglende eller mangelfuld bogføring og regnskab gennemgås i betænkning nr. 1066/ 1986, side 27-49 og 83-102.

Udvalget redegør i betænkningen, side 103-112, for nogle erfaringer med tilsidesættelse af bogføringsregler, som statsadvokaten for særlig økonomisk kriminalitet har stillet til rådighed for udvalget.

Udvalget fremhæver (side 127 ff), at der er forekommet nogle misbrugstilfælde, hvor der har været betydelige formuetab for erhvervsvirksomheder og investorer, og sådant misbrug indebærer en fare for, at der opstår en generel mistillid til erhvervslivet. En virksomhed bør efter udvalgets opfattelse heller ikke kunne styrke sin forretningsmæssige position ved tilsidesættelse af den lovgivning, som konkurrerende virksomheder overholder. Det bør derfor efter udvalgets opfattelse i videst muligt omfang hindres, at misbrug finder sted.

Udvalget henviser til, at statsadvokaten for økonomisk kriminalitet over for udvalget har oplyst, at bogføringsreglerne er tilsidesat i næsten samtlige sager om økonomisk kriminalitet, hvilket medfører, at efterforskningen vanskeliggøres og i nogle tilfælde helt må opgives, ligesom det gør efterforskningen tidsmæssigt og økonomisk overordentlig ressourcekrævende. Udvalget finder på den baggrund, at der er behov for en styrkelse af det strafferetlige

Copyright © 2021 Karnov Group Denmark A/S

værn mod bogføringsovertrædelser. En skærpelse af bestemmelserne herom vil endvidere efter udvalgets opfattelse kunne give anklagemyndigheden et grundlag for på et tidligt tidspunkt af efterforskningen at begrænse eventuel tiltale til kun at omfatte bogføringsovertrædelsen og derved undgå en langvarig og måske forgæves efterforskning af mulige berigelsesforbrydelser. En skærpelse af straffen for bogføringsovertrædelser vil endvidere være i tråd med de foranstaltninger, man i andre lande har foretaget som led i kampen mod økonomisk kriminalitet.

2.2. Udvalget har i betænkning nr. 1066/ 1986, side 129 ff, overvejet spørgsmålet om en skærpelse af straffen for bogføringsovertrædelser i forhold til straffelovens §§ 175 og 302.

Bestemmelsen i § 175 fastsætter straf af hæfte eller fængsel indtil 3 år, under formildende omstændigheder bøde, for den, som for at skuffe i retsforhold i offentligt dokument eller bog eller i privat dokument eller bog, som det ifølge lov eller særligt pligtforhold påhviler den pågældende at udfærdige eller føre, eller i læge-, tandlæge-, jordemoder- eller dyrlægeattest afgiver urigtig erklæring om noget forhold, angående hvilket erklæringen skal tjene som bevis. Efter bestemmelsens stk. 2 straffes med samme straf den, som i retforhold gør brug af et sådant dokument som indeholdende sandhed.

Straffelovens § 302 foreskriver straf af bøde eller hæfte for den, der undlader at føre forretningsbøger, som det ifølge lov påhviler ham at føre, eller gør sig skyldig i grove uordener med hensyn tilførelsen af sådanne bøger eller ved den ved lov foreskrevne opbevaring af disse eller deres bilag.

Udvalget om bekæmpelse af økonomisk kriminalitet fremhæver, at § 175 omfatter afgivelse af en række vidt forskellige erklæringer af såvel offentlig som privat karakter, mens § 302 alleredе i sin nuværende affattelse vedrører tilsidesættelse af bogføringspligten. Udvalget finder det mest hensigtsmæssigt at gennemføre en skærpelse af straffen for manglende eller mangelfuld bogføring gennem en ændring af § 302.

Udvalget foreslår, at straffelovens § 302 affattes således.

»§ 302. Med bøde, hæfte eller fængsel indtil 1 år og 6 måneder straffes, såfremt handlingen eller undladelsen er egnet til at medføre betydeligt formuetab eller i øvrigt er af særlig grov karakter, den, som

1) foretager urigtige eller vildledende angivelser i forretningsbøger eller regnskaber, som det ifølge lov påhviler den pågældende at føre eller udfærdige,

2) undlader at føre forretningsbøger eller udfærdige regnskab på den måde, som det ifølge lov påhviler den pågældende at gøre det,

3) undlader at opfylde den ifølge lov foreskrevne pligt til at angive poster eller at specificere disse,

4) undlader at opfylde den ifølge lov foreskrevne pligt til at opbevare forretningsbøger, bilag eller andet regnskabsmateriale eller ødelægger sådant.

Stk. 2. Begås en handling eller undladelse som nævnt i stk. 1 af grov uagtsomhed, er straffen bøde.«

Som en konsekvens af udvalgets forslag vedrørende § 302 foreslår udvalget samtidig, at ordene »lov eller« udgår i § 175. Udvalget fremhæver i den forbindelse, at § 175 i sin nuværende ordlyd op med hensyn til strafferammen på indtil 3 års fængsel ikke er tidssvarende, men at udvalget på baggrund af sit kommissorium ikke har fundet at burde stille forslag om ændring af bestemmelsen i sin helhed.

Samtidig gør udvalget opmærksom på, at der i særlovgivningen findes bestemmelser svarende til den nugældende § 302, f.eks. i skattekontrollovens § 17. Udvalget henstiller, at der i forbindelse med en gennemførelse af udvalgets forslag foretages en

gennemgang og eventuel ændring af sådanne bestemmelser i særlovgivningen, således at man undgår tvivl om, hvorvidt en tiltale alene efter § 302 er korrekt f.eks. ved urigtige skatteangivelser.

2.3. Straffelovrådet skal fremhæve, at regnskaber m.v. i mangfoldige sammenhænge er et vigtigt oplysningsmiddel i forbindelse med bedømmelsen af virksomheders og enkeltpersoners økonomiske forhold, herunder deres kreditværdighed, selskabers indre værdi, m.v. Urigtige eller vildledende regnskaber er derfor egnede til at medføre skuffelser og kan i vidt omfang anvendes som middel ikke blot til at begå berigelsesforbrydelser og unddragelser af skatter og afgifter, men også til at dække over dem.

Straffelovrådet kan tiltræde, at straffelovens § 302 søges udformet på en sådan måde, at bestemmelsen i højere grad tager sigte på grovere forhold, der ikke findes at burde henføres alene under straffebestemmelsen i bogføringsloven. Straffelovrådet kan endvidere tiltræde, at der for sådanne forhold fastsættes en strafferamme, der er væsentligt strengere end den nugældende ramme af bøde eller hæfte.

I udvalgets udkast er det foreslået, at der for alle de af § 302, stk. 1, omfattede forsætlige forhold skal gælde et fælles strafmaksimum på 1 år og 6 måneder. Dette svarer til det strafmaksimum, der er fastsat for de fleste berigelsesforbrydelser i § 285. Straffelovrådet nærer nogen betænkelighed ved forslaget om på denne måde at sidestille bogføringsovertrædelser med berigelsesforbrydelser som underslæb, bedrageri, mandatsvig og skyldnersvig. Rådet har forståelse for de af udvalget fremhævede vanskeligheder ved at føre bevis for de til berigelsesforbrydelser hørende objektive og subjektive momenter, når en virksomheds regnskabsmateriale lægger hindringer i vejen for en klarlæggelse af forløbet. Der er på den anden side åbenbare betænkeligheder ved at søge bogføringsovertrædelser sat i klasse med berigelsesforbrydelser, således at politiet og anklagemyndigheden kan nøjes med at slå ned på de lettest tilgængelige oplysninger, nemlig dem der vedrører mangelfuld bogføring m.v., og vente sådanne forhold bedømt lige så strengt, som hvis der var ført bevis for berigelsesforbrydelser. Selvom bogføringsovertrædelser kan være af betydelig grovhed og undertiden skabe en formodning om uredeligt forhold, forekommer det ikke straffelovrådet sandsynligt, at der ved domstolene vil blive idømt langvarige straffe for bogføringsovertrædelser.

Straffelovrådet har overvejet, om de af udvalgsforslagets § 302, stk. 1, omfattede forhold kan indeles således, at der opstilles to forskellige strafferammer for forsætlige forhold. En sådan deling af gerningsbeskrivelsen frembyder imidlertid vanskeligheder.

Det er straffelovrådets konklusion, at man foreslår et fælles strafmaksimum på 1 års fængsel. Om nogle enkeltheder vedrørende udformningen af § 302 bemærkes følgende:

De i stk. 1, nr. 3, nævnte forhold (undladelse af at angive eller specificere poster) vil efter straffelovrådets opfattelse være omfattet af stk. 1, nr. 2 (undladelse af at føre bøger eller udfærdige regnskab på den foreskrevne måde) og behøver derfor ikke at være særskilt nævnt.

2.4. Bestemmelsen i § 302 skal efter forslaget omfatte tilfælde, hvor handlingen eller undladelsen er egnet til at medføre betydeligt formuetab eller i øvrigt er af særlig grov karakter. I den forbindelse er der under straffelovrådets drøftelser blevet peget på, at udtrykket »egnet til at medføre betydeligt formuetab« på den ene side ofte - men ikke altid - vil angive et tilfælde, der er særlig groft. Det har også været berørt, at udtrykket på den anden side kunne tænkes at blive opfattet som indeholdende en begrænsning til formuetab for private interesser. En sådan begrænsning ville efter rådets opfattelse være uheldig.

Indtrædelsen af eller faren for betydeligt tab såvel for private som for det offentlige bør efter rådets opfattelse kunne gøre en overtrædelse særlig grov. Rådet vil derfor foretrække, at lovteksten anvender udtrykket »den, som under omstændigheder, der kendetegner forholdet som særligt groft...«.

Herved vil man også kunne klare det problem i forhold til straffebestemmelser i særlovgivningen, som udvalget som økonomisk kriminalitet har påpeget i betænkning nr. 1066/ 1986, side 134.

2.5. Straffelovrådet kan tiltræde, at strafferammen i § 296 bør være den samme som for de alvorligste bogføringsovertrædelser. I overensstemmelse med det, som er anført under pkt. 2.3., bør strafmaksimum i § 296, stk. 1, ændres fra fængsel i 2 år til fængsel i 1 år.

2.6. Udvalget fremhæver, at nogle af de forhold vedrørende bøger og regnskaber, der foreslås nævnt i § 302, for tiden er omfattet af § 175. For at markere, at sådanne forhold ikke bør være omfattet af begge bestemmelser, men alene være strafbare efter § 302, foreslås det i udvalgets betænkning, at ordene »lov ellers skal udgå af § 175. Udvalget er opmærksomt på, at de tilfælde af forsætligt urigtig lovpligtig bogføring, der flyttes fra § 175 til § 302, herved får et lavere strafmaksimum end det maksimum af 3 års fængsel, der er nævnt i § 175. Det sidstnævnte maksimum vil bl.a. gælde urigtigheder med hensyn til private bøger, der ikke føres ifølge lov men i hehold til et »særligt pligtforhold«, skønt forseelser med hensyn til lovpligtige bøger gennemgående må formodes at være de groveste. Det er imidlertid ikke anset for muligt i forbindelse med udvalgets arbejde at udarbejde forslag om en videregrækende ændring af § 175, hvis afgrænsning ikke i alle henseeender er klar.

Det har også ligget uden for straffelovrådets muligheder at stille forslag om en nærmere revision af § 175. Rådet er mest tilbøjeligt til at foreslå, at ordene »lov eller« i denne omgang bliver stående i § 175, bl.a. fordi det ikke er let at tage stilling til, om disse ord i § 175 – der står i straffelovens kap. 19 om forbrydelser vedrørende bevismidler - muligvis vil omfatte nogle forhold med hensyn til private bøger, som ikke vil kunne henføres under § 302.

Det bør imidlertid stå fast, som af udvalget foreslået, at § 302 skal opfattes som en specialbestemmelse, der udelukker samtidig anvendelse af § 175. Straffelovrådet vil i forbindelse med sin almindelige gennemgang af strafferammerne i straffeloven være opmærksomt på det misforhold mellem strafmaksima i § 175 og § 302, som måske vil foreligge, hvis der ikke sker en ændring i § 175. Løsningen på dette problem kan enten være en omformulering af § 175 eller en nedsættelse af 3 års strafmaksimum i denne bestemmelse.

Det er således straffelovrådets konklusion, at der ikke i forbindelse med den foreslåede ændring af § 302 bør ske nogen ændring i § 175.

2.7. Det er udvalgets forslag, at grov uagtsomhed ved de i § 302, stk. 1, nævnte overtrædelser alene skal kunne medføre straf af bøde. I den forbindelse er der blevet peget på, at bestemmelsen i så fald ikke indeholder noget egentlig nyt i forhold til særlovgivningen, idet bogføringsloven også foreskriver bødestraf. Straffelovrådet har samtidig overvejet, om groft uagtsomme overtrædelser af § 302 i nogle situationer bør kunne medføre frihedsstraf. Der måtte da efter rådets opfattelse være tale om frihedsstraf med et lavere strafmaksimum end efter stk. 1.

Under hensyntagen til den begrænsede tid, der er til rådighed ved behandlingen af spørgsmålet, skal straffelovrådet i denne sammenhæng alene stille forslag om, at strafferammen udformes således, at den - ligesom i dag - også giver mulighed for at idømme hæfte.

På tilsvarende måde bør strafferammen i § 296, stk. 2, om groft uagtsomme overtrædelser af visse i bestemmelsens stk. 1 nævnte handlinger ligesom i dag indeholde bøde og hæfte.

2.8. Straffelovrådet har drøftet det i betænkningen, side 87 ff. nævnte spørgsmål om forholdet mellem den foreslåede nye bestemmelse i § 302 og bestemmelsen i § 125 om bl.a. tilintetgørelse, forvanskning eller bortskaffelse af genstande af betydning for en offentlig undersøgelse.

Der er i straffelovrådet enighed om, at forholdet, hvor regnskaber og bilag ødelægges for at skjule f.eks. en berigelsesforbrydelse, i givet fald vil være være omfattet af såvel § 125 som § 302, og at der således som udgangspunkt skal straffes for overtrædelse af begge bestemmelser.

Bestemmelsen i § 125, stk. 2, om straffrihed for den, der foretager de i § 125, stk. 1, nævnte handlinger for at unddrage sig selv eller nogen af sine nærmeste for forfølgning eller straf, gælder alene med hensyn til de forhold, som er beskrevet i § 125, stk. 1, og fritager således ikke for straf for overtrædelse af § 302.

## 3. Erhvervsfrakendelse

3.1. Udvalget om bekæmpelse af økonomisk kriminalitet har indhentet udtalelser fra en række myndigheder og organisationer med henblik på en belysning af såkaldt konkurs- og selskabsmisbrug.

Hovedindholdet af udtalelserne er gengivet i betænkning nr. 1066/ 1986, side 221 ff.

På baggrund af de nævnte udtalelser konkluderer udvalget (side 239 ff), at misbrug af konkurs- og selskabslovgivningen forekommer i et vist begrænset omfang, og at sådant misbrug kan være årsag til, at der lides betydeligt tab af offentlige og private kreditorer.

Udvalget finder derfor, at der vil kunne være behov for indgreb over for personer, der gør sig skyldige i de nævnte misbrug.

Udvalget finder, at sædvanlige straffe- og civilretlige retsfølger næppe er tilstrækkelige til at imødegå sådanne misbrug. Der er i udtalelserne til udvalget fremdraget eksempler på erhvervsdrivende, der genlagne gange er straffet for såkaldt »konkursmisbrug«, men som uanset dette har fortsat med at spekulere i konkurs eller tvangsopløsning.

Uanset de foranstaltninger, som indenfor selskabslovgivningens område er truffet med henblik på at hindre eller modvirke selskabsmisbrug, finder udvalget derfor, at det med henblik på at søge at effektivisere bekæmpelsen af groft misbrug af de konkurs- og selskabsretlige regler må anses for hensigtsmæssigt at udvide adgangen til begrænsning - frakendelse - af ret til erhvervsudøvelse.

På baggrund af oplysninger om tidligere og nuværende vidtgående regler i Norge og Sverige om såkaldt konkurskarantæne og næringsforbud (betænkningen, side 225) har udvalget drøftet, om en sådan adgang til rettighedsfrakendelse bør være betinget af, at der foreligger et strafbart forhold. Udvalget udtaler (s. 246), at det ud fra retssikkerhedssynspunkter er uacceptabelt at foretage en så indgribende og generelt betænkelig foranstaltning, som det ville være at foretage en rettighedsfrakendelse uden grundlag i en dom for strafbart forhold. Ved at betinge adgangen til rettighedsfrakendelse heraf opnås tillige, at den sagsbehandling og de myndigheder, der skal tage stilling til spørgsmålet, frembyder de bedst mulige retssikkerhedsmæssige garantier.

Udvalget om økonomisk kriminalitet har på den baggrund udformet sit forslag til udvidet adgang til rettighedsfrakendelse i tilknytning til de gældende regler om rettighedsfrakendelse i straffelovens §§ 78-79. Efter udvalgets forslag skal der som en ny § 79 a indsættes følgende bestemmelse i straffeloven:

»§ 79 a. Den, som dømmes for strafbart forhold, kan ved dom frakendes retten til at være stifter, direktør, medlem af bestyrelsen eller til i øvrigt at udøve en bestemmende indflydelse i et selskab med begrænset ansvar, et selskab eller en forening, som kræver særlig offentlig godkendelse, eller en fond, såfremt det udviste forhold begrunder en nærliggende fare for misbrug af sådan virksomhed. Stk. 2. Bestemmelserne i § 79 finder tilsvarende anvendelse.«

Samtidig stiller udvalget forslag om, at der gennem en ændring i § 79, stk. 2, skal være mulighed for midlertidig retighedsfrakendelse under en sags behandling, ligesom det i dag er tilfældet med hensyn til frankendelse af de rettigheder, som omtales i straffelovens § 79, stk. 1, 1. pkt., d.v.s. retten til virksomhed, der beror på offentlig autorisation eller godkendelse.

Overtrædelser af rettighedsfrakendelser straffes efter straffelovens § 131, og udvalget foreslår i den forbindelse en ændring af strafferammen heri, således at fængselsstraf ikke betinges af skærpende omstændigheder, samtidig med at strafmaksimum forhøjes fra i dag 3 måneders fængsel til 6 måneders fængsel.

For at modvirke stråmandsvirksomhed foreslår udvalget om bekæmpelse af økonomisk kriminalitet samtidig, at det i et nyt § 131, stk. 2, præciseres, at medvirken til overtrædelse af en rettighedsfrakendelse er strafbar, og udvalget foreslår i den forbindelse en strafferamme for den medvirkende på bøde eller under skærpende omstændigheder hæfte.

3.2. Straffelovrådet kan på baggrund af oplysningerne i betænkningen om bekæmpelse af økonomisk kriminalitet tiltræde, at der er behov for at ændre de gældende regler om rettighedsfrakendelse, således at det i videre omfang bliver muligt at frakende retten til visse former for erhvervsudøvelse.

Straffelovrådet skal i den forbindelse først fremhæve, at man er enig med udvalget i, at adgangen til erhvervsmæssig diskvalifikation ligesom i dag bør betinges af, at der foreligger en dom for et strafbart forhold. En adgang til rettighedsfrakendelse, som ikke var knyttet hertil, men f.eks. alene til, at den pågældende var gået konkurs, ville efter rådets opfattelse være overordentlig betænkelig.

Den gældende regel i § 79, vedrører i stk. 1, 1. pkt., frakendelse af retten til virksomhed, der beror på offentlig autorisation eller godkendelse. Der er imidlertid efter stk. 1, 2. pkt., adgang til at frakende retten til udøvelse af »anden virksomhed«, såfremt særlige omstændigheder taler derfor. Det må anses som uafklaret, i hvilket omfang der efter denne bestemmelse allerede i dag er mulighed for frakendelse af de af udvalget nævnte rettigheder til visse former for erhvervsudøvelse. Bestemmelsen har ikke i retspraksis været anvendt til sådanne frakendelser, og der kan derfor også efter straffelovmelsens opfattelse være grund til at præcisere bestemmelsens anvendelsesområde med henblik på sådanne tilfælde.

Frakendelse af retten til de af udvalget omtalte former for erhvervsudøvelse bør efter straffelovrådets opfattelse være begrænset af betingelsen om, at særlige omstændigheder taler derfor, jfr. § 79, stk. 1, 2. pkt., om »anden virksomhed«. Dette kan lovteknisk lettest ske, såfremt man indsætter de nye regler om »erhvervsfrakendelse« i straffelovens § 79, i hvilken bestemmelse der i forvejen kan være anledning til mindre redaktionelle ændringer.

3.3. Straffelovrådet kan tiltræde, at der som foreslået af udvalget åbnes adgang til at frakende retten til at være stifter, direktør eller medlem af bestyrelsen i et selskab med begrænset ansvar, et selskab eller en forening, som kræver særlig offentlig godkendelse, eller en fond.

Derimod finder straffelovrådet, at adgang til frakendelse af retten til »i øvrigt at udøve en bestemmende indflydelse« i et sådant

selskab m.v. ville være for vidtgående og f.eks. omfatte retten til at udøve stemmeret ifølge en aktiepost, som den pågældende gennem arv eller på anden lovlig måde er kommet i besiddelse af, ligesom en sådan frakendelsesadgang i sin meget ubestemte form ville give betydelige afgrænsnings- og kontrolvanskeligheder.

Dette led i udvalgets angivelse af de rettigheder, som skal kunne frakendes, bør derfor efter straffelovrådets opfattelse udgå.

Straffelovrådet finder i øvrigt grund til at fremhæve, at der i hvert enkelt tilfælde må tages stilling til frakendelsens nærmere omfang. Der kan dels være tale om kun at frakende retten til at beklæde en bestemt stilling, f.eks. som direktør, dels om at begrænse en frakendelse til virksomheder inden for bestemte brancher.

3.4. Den af udvalget foreslåede udvidelse af adgangen til suspension (midlertidig rettighedsfrakendelse) under sagen til også at omfatte de i § 79, stk. 1, 2. pkt., nævnte tilfælde samt de af udvalget foreslåede nye frakendelsestilfælde er efter straffelovrådets opfattelse ikke uden betænkeligheder. Det kan bl.a. efter en langvarig proces vise sig, at sagen ikke holder i det omfang, man på et tidligere stadium forestillede sig.

Straffelovrådet betragter det som en selvfølge, at en sådan regel må anvendes meget restriktivt. Rådet har imidlertid ikke ment at burde udtale sig imod den foreslåede regel.

3.5. Straffelovrådet har ikke bemærkninger til de foreslåede ændringer i strafferammerne i § 131, stk. 1 og stk. 2. Særligt for så vidt angår den foreslåede medvirkensbestemmelse i § 131, stk. 2, bemærkes, at dansk rets hovedregel efter straffelovens § 23, stk. 1-2, er, at medvirkensansvar også pådrages i de tilfælde, hvor medvirker til at krænke et særligt pligtforhold, og som selv står uden for dette. Der skal meget til for at nå frem til, at der ved en given straffebestemmelse er tale om et såkaldt egenhændigt delikt, og at der således foreligger en undtagelse fra hovedreglen.

Efter straffelovrådets opfattelse er det nærliggende at antage, at medvirken til overtrædelse af rettighedsfrakendelser følger hovedreglen om, at straf for medvirken kan pålægges. Der har af den grund i straffelovrådet være mest stemning for at anse den i stk. 2 foreslåede regel for overflødig. Straffelovrådet finder dog ikke grund til at indvende noget imod det af udvalget stillede forslag (i § 131, stk. 2) om, at medvirkensansvaret præciseres, og at der for dette ansvar skal gælde en lavere strafferamme.

## 4. Straffelovrådets lovudkast

På baggrund af det under pkt. 2-3 anførte foreslår straffelovrådet, at udkastet til ændring af straffeloven affattes således:

»§...

I borgerlig straffelov, jfr. lovbekendtgørelse nr. 527 af 1. november 1981, som ændret senest ved lov nr. 573 af 19. december 1985, foretages følgende ændringer:

1. § 79 affattes således:

»§ 79. Den, som udøver en af de i § 78, stk. 2, omhandlede virksomheder, kan ved dom for strafbart forhold frakendes retten til fortsat at udøve den pågældende virksomhed eller til at udøve den under visse former, såfremt det udviste forhold begrunder en nærliggende fare for misbrug af stillingen.

Stk. 2. Det samme gælder, når særlige omstændigheder taler derfor, om udøvelse af anden virksomhed. Efter samme regel kan der såve frakendelse af retten til at være stifter af eller direktør eller medlem af bestyrelsen i et selskab med begrænset ansvar, et selskab eller en forening, som kræver særlig offentlig godkendelse, eller en fond.

Stk. 3. Frakendelsen sker på tid fra 1 til 5 år, regnet fra endelig dom, eller indtil videre, i hvilket tilfælde spørgsmålet om fortsat udelukkelse fra den pågældende virksomhed efter 5 års forløb kan indbringes for retten efter de i § 78, stk. 3, indeholdte regler. Når

særlige omstændigheder taler derfor, kan justitsministeren tillade, at indbringelse for retten sker, inden den i 1. pkt. nævnte 5 års frist er forløbet.

Stk. 4. Retten kan under behandlingen af de i stk. 1 og 2 nævnte sager ved kendelse udelukke den pågældende fra at udøve virksomheden, indtil sagen er endeligt afgjort. Det kan ved dommen i sagen bestemmes, at anke ikke har opsættende virkning.«

2. I § 131 ændres: »Med bøde eller hæfte indtil 3 måneder eller under skærpende omstændigheder med fængsel i samme tid« til: »Med bøde, hæfte eller fængsel indtil 6 måneder«.

3. I 131 indsættes som nyt stk. 2:

»Stk. 2. Med bøde eller under særligt skærpende omstændigheder med hæfte straffes den, som medvirker til, at en person, der er frakendt retten til at udøve en virksomhed, udøver denne.«

4. I § 296, stk. 1, ændres »2 år« til: »1 år«.

5. § 302 affattes således:

»§ 302. Med bøde, hæfte eller fængsel indtil 1 år straffes den, som under omstændigheder, der kendetegner forholdet som særligt groft:

1) foretager urigtige eller vildledende angivelser i forretningsbøger eller regnskaber, som det ifølge lov påhviler den pågældende at føre eller udfærdige,

2) undlader at føre forretningsbøger eller udfærdige regnskab på den måde, som det ifølge lov påhviler den pågældende at gøre det,

3) undlader at opfylde den ifølge lov foreskrevne pligt til at opbevare forretningsbøger, bilag eller andet regnskabsmateriale eller ødelægger sådant.

Stk. 2. Begås en handling eller undladelse som nævnt i stk. 1 af grov uagtsomhed, er straffen bøde eller hæfte.«»

## Bilag 2

### RETSPLEJERÅDET

Udtalelse om betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet

Ved skrivelse af 10. marts 1986 (j.nr. 1986-20002-193) har justitsministeriet anmodet retsplejerådet om en udtalelse om de forslag til ændringer i retsplejeloven, som er indeholdt i betænkning nr. 1066/ 1986 om bekæmpelse af økonomisk kriminalitet. Betænkningen er afgivet af et udvalg nedsat under justitsministeriet.

Til brug ved retsplejerådets overvejelser om betænkningens forslag har justitsministeriet senere fremsendt de høringssvar vedrørende betænkningen, som en række myndigheder og organisationer har afgivet. Justitsministeriet har endvidere fremsendt en af ministeriet udarbejdet foreløbig skitse til ændring af retsplejelovens §§ 723-723 a.

Justitsministeriet har i forbindelse med høringen af retsplejerådet anmodet om, at udtalelsen må foreligge inden den 18. april 1986.

Justitsministeriet har tilkendegivet, at det naturligvis kunne vise sig hensigtsmæssigt med den omskrivning og modernisering af de gældende regler om tiltalefrafald m.v., som er tilsigtet i justitsministeriets skitse, men at justitsministeriet under hensyn til den korte tidsfrist for rådets arbejde i givet fald vil være indforstået med, at rådet ikke tager nærmere stilling til disse spørgsmål.

Retsplejerådet har behandlet betænkningens forslag til ændringer i retsplejeloven i 2 møder.

Som følge af den ekstraordinært korte tidsfrist har retsplejerådet ikke haft mulighed for at foretage en egentlig bearbejdning eller en nærmere overvejelse af de forslag spørgsmål, hvorunder navnlig de noget forskellige skitser og udkast til revision af retsplejelovens regler om påtaleopgivelse og tiltalefrafald. Rådet har derfor indskrænket sig til at fremsætte nogle mere principielle udtalelser som svar på justitsministeriets skrivelse af 10. marts 1986.

Ved afgivelsen af denne udtalelse har retsplejerådet haft følgende sammensætning: landsretspræsident Ole Agersnap (formand), retspræsident Knud Arildsen, professor, dr.jur. Hans Gammeltoft-Hansen, retsassessor Knud Have, statsadvokat Karsten Hjorth, politimester Finn Larsen, landsretssagfører Kristian Mogensen og dommer Hans Rosenmeier.

Hvervet som sekretær for rådet er varetaget af fuldmægtig Kaspar Linkis, justitsministeriet.

København, den 19. april 1986.

Ole Agersnap Knud Arildsen

Hans Gammeltoft-Hansen Knud Have

Karsten Hjorth Finn Larsen

Kristian Mogensen Hans Rosenmeier

Kaspar Linkis

(sekretær)

### 1. Beskæring af straffesager

Udvalget anfører i betænkningen, at sager om økonomisk kriminalitet er tidkrævende for retssystemet. Sagsbehandlingstiden i større sager kan være 6-10 år regnet fra efterforskningens begyndelse til afsigelsen af endelig dom. Udvalget har på denne baggrund overvejet, om en nedsættelse af sagsbehandlingstiden kan opnås gennem ændring af de processuelle regler eller anklagemyndighedens praksis.

Udvalgets undersøgelse af gældende ret munder ud i, at de gældende regler om påtaleundladelse ikke specielt tager hensyn til anklagemyndighedens og domstolenes ressourcemæssige problemer. I et begrænset omfang har en beskæring fundet sted i sager med omfattende kriminalitet i medfør af retsplejelovens § 723, stk. 1, nr. 4, og § 723, stk. 2, men udvalget finder, at en omfattende beskæring af sagerne af ressourcemæssige grunde kræver en ændring af det gældende regelgrundlag. Det foreslås derfor, at der som ny § 723, stk. 3, indsættes en bestemmelse, hvorefter statsadvokaten helt eller delvis kan opgive eller frafalde tiltale, såfremt sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt.

Den beskæring af straffesager, der skal kunne foretages af ressourcemæssige grunde, kan give sig udtryk i, at vissc forhold udelades, at kun sagens hovedpersoner tiltales, at der kun rejses tiltale for trinlavere bestemmelser end dem, der muligvis kunne dømmes for, eller at der kun rejses tiltale for overtrædelse af bestemmelser, der er subsidiære i forhold til bestemmelser, der muligvis kunne domfældes for. Udvalget fremhæver, at det ikke er hensigten med forslaget, at en sag skal beskæres i et sådant omfang, at en forventet flerårig f13ngssstraf reduceres til bøde.

Det vil derimod ikke være udelukket at beskære en sag, så en forventet straf reduceres fra f.eks. 4 års til 1-2 års fængsel.

Forslaget gælder principielt også sager, der ikke vedrører økonomisk kriminalitet, men hvor de samme hensyn gør sig gældende.

Udvalget har begrænset den foreslåede regel til statsadvokatsager og de sager, der er omfattet af retsplejelovens § 721, stk. 1, nr. 4. Efter forslaget skal kompetencen til at beskære straffesagen tilkomme den påtaleberettigede, dvs. statsadvokaten i statsadvokatsager og politimesteren i de sager, der er omfattet af retsplejelovens § 721, stk. 1, nr. 4. Udvalget har anbefalet, at det i forbindelse med udarbejdelsen af et eventuelt lovforslag tages under overvejelse at udstrække reglen til politisager.

Udvalget har endvidere gjort opmærksom på, at der er behov for en modernisering af retsplejelovens regler om tiltaleopgivelse og -frafald og har anbefalet, at man ved udarbejdelsen af et lovforslag tillige overvejer en modernisering af disse regler.

Justitsministeriet har på baggrund af udvalgets forslag udarbejdet en foreløbig skitse til nye §§ 723-723 c i retsplejeloven, som skal afløse de gældende §§ 723-723 a. Efter skitsen kommer reglerne om påtaleundladelse, herunder den i betænkningen foreslåede bestemmelse om ressourcemæssigt begrundede påtaleundladelser, også til at gælde for politisager, men i øvrigt angives reglerne i lovskitsen i det væsentlige at svare til de gældende regler.

Retsplejerådet kan af de grunde, som er anført af udvalget i betænkningens s. 183 ff, tiltræde, at der er behov for en lovændring, der kan give anklagemyndigheden mulighed for at beskære sager ud fra ressourcemæssige hensyn.

Den lange behandlingstid i de senere års sager om økonomisk kriminalitet lægger som af udvalget anført et urimeligt pres på de sigtede og senere tiltalte personer og må tillige antages efterhånden at kunne medføre en alvorlig belastning af tilliden til retshåndhævelsen. Det må i den forbindelse erkendes, at der også i fremtiden må forventes uacceptabelt lange behandlingstider ved anklagemyndighed og domstole, såfremt der ikke indføres hjemmel for beskæring af sager om omfattende økonomisk kriminalitet.

En beskæringsregel vil være et nødvendigt bidrag til løsning af disse problemer. Retsplejerådet finder dog grund til at påpege, at den lange behandlingstid i visse sager om økonomisk kriminalitet ikke blot en er følge af lovreglernes udformning. Tilrettelæggelse, tilskæring og bearbejdning af sagerne på efterforskningsstadiet, ved tiltalerejsningen og under domsforhandlingen er af afgørende betydning, uanset hvordan retsplejelovens regler er udformet, og væsentlig forbedring af de utilfredsstillende forhold kan ikke opnås alene ved en lovændring.

Selv om det er sagerne om økonomisk kriminalitet, der har givet anledning til udvalgets overvejelser og forslag om etablering af en særlig adgang for anklagemyndigheden til at begrænse påtale i straffesager ud fra ressourcemæssige hensyn, finder retsplejerådet i lighed med udvalget, at en sådan regel bør have en generel formulering, således at den også vil kunne finde anvendelse i andre sager, hvor tilsvarende hensyn måtte gøre sig gældende.

Retsplejerådet har ingen væsentlig indvendinger imod den foreslåede adgang til at undlade påtale af ressourcemæssige grunde. Rådet finder dog anledning til at anføre følgende synspunkter vedrørende udvalgets forslag.

En påtaleundladelse af ressourcemæssige grunde bør ikke tilkendegive en skyldformodning over for sigtede. Rådet finder derfor, at anklagemyndighedens beslutning herom bør fremtræde i form af en påtaleopgi- velse, medmindre resultaterne af den allerede foretagne efterforskning undtagelsesvis giver tilstrækkeligt grundlag for, at tiltale kunne have været rejst.

Uanset at udvalget i betænkningen, side 191, anfører, at bestemmelsen i praksis typisk vil skulle anvendes i forbindelse med nogle af flere forhold i et større sagskompleks eller en del af et forhold, giver den foreslåede formulering af bestemmelsen hjemmel til at undlade hele tiltalen, ligesom bestemmelsen giver hjemmel til at udskille enkelte sigtede af sagen og fortsætte den mod andre sigtede. Retsplejerådet finder, at det burde overvejes nærmere, om der bør indføres en sådan vidtgående adgang til at undlade tiltale at ressourcemæssige grunde. De hensyn, der er anført som begrundelse for udvalgets forslag, kunne formentlig tilgodeses i tilstrækkelig grad ved en mindre vidtgående regel, hvorefter der indføres adgang til at ressourcemæssige grunde at undlade påtale af et eller nogle af flere forhold eller en del af et forhold.

Tilfælde, hvor der måtte være behov for helt at undlade påtale, måtte i så fald behandles efter regler svarende til den nu gældende § 723, stk. 2, jfr. stk. 3. Det er herefter rigsadvokaten, der i sager, der påtales af statsadvokaten, har kompetencen til at frafalde tiltale, og statsadvokaten, der har denne kompetence i sager, hvor politimesteren efter § 721, stk. 1, nr. 4, har påtaleretten.

Efter retsplejerådets opfattelse er der endvidere grund til nærmere at overveje, om kompetencen til at undlade påtale af ressourcemæssige grunde i sager, der påtales af politimesteren, på tilsvarende måde som påtaleundladelser efter retsplejelovens § 723, stk. 3, jfr. stk. 2, bør træffes af statsadvokaten, eller om hensynet til at opnå større ensartethed i skønsudøvelsen og dermed mindske risikoen for vilkårlighed i tiltalepraksis i disse sager eventuelt kan varetages gennem instruktoriske forskrifter.

Muligheden for eventuelt gennem instruktoriske forskrifter at foretage en nærmere regulering af spørgsmålet om kompetencen til og spørgsmålet om omfanget af påtaleundladelser af ressourcemæssige grunde har været genstand for drøftelse i rådet.

På grund af den fastsatte tidsfrist for rådets udtalelse har det imidlertid ikke været muligt for medlemmerne at nå frem til en endelig stillingtagen til, om de ovenfor rejste spørgsmål bør løses ad denne vej.

Retsplejerådet er enig med udvalget i, at der er behov for en modernisering af de gældende regler om tiltaleopgivelse og tiltalefrafald. Den af justitsministeriet udarbejdede lovskitse angives at have dette formål. Retsplejerådet ser sig imidlertid ikke i stand til på det foreliggende grundlag og indenfor den fastsatte tidsramme at tage stilling til formuleringen af ændrede regler om påtaleundladelse, men rådet finder, at spørgsmålet bør gøres til genstand for mere indgående behandling. Herunder kunne man tillige overveje placeringen og formuleringen af bestemmelsen i retsplejelovens § 749 om afvisning af anmeldelse og standsning af

efterforskning, der har nær sammenhæng med reglerne om undladelse af påtale.

## 2. Sagkyndige domsmænd

Udvalget beskriver i betænkningen, hvordan domsmænd efter de gældende regler udtages ved lodtrækning fra en særlig grundliste, der er udarbejdet at det kommunale grundlisteudvalg. Der stilles ikke særlig faglige krav til de personer, der optages på grundlisten.

Udvalget finder det væsentligt for en betryggende afgørelse af større sager om økonomisk kriminalitet, at rettens medlemmer, herunder domsmændene, har en vis indsigt i regnskabsmæssige forhold, og udvalget stiller derfor forslag om, at det på grundlisten skal markeres, hvilke personer der har særligt kendskab til erhvervsforhold, og at udtagelsen af domsmænd skal ske blandt de pågældende personer, hvis sagen kræver et sådant kendskab.

Retsplejerådet anser det for et grundlæggende princip bag lægdommerordningen i den danske strafferetspleje, at en straffesag skal forelægges retten på en sådan måde, at den er forståelig for almindelige mennesker uden specialviden eller særlige forudsætninger. I overensstemmelse hermed medvirker der ikke i dansk retspleje særligt sagkyndige lægdommere i de enkelte typer af straffesager, når bortses fra søstraffesager, hvori der medvirker søkyndige lægdommere. Efter retsplejerådets opfattelse bør det ovennævnte princip ikke brydes ved regler om særligt sagkyndige domsmænd i enkelte sagstyper, herunder sager om økonomisk kriminalitet. Rådet kan i den forbindelse henvise til sine bemærkninger om dette spørgsmål i betænkning nr. 994/ 1983, side 45-47.

Udover den anførte principielle indvending mod forslaget finder rådet, at udvalgets forslag bl.a. i teknisk henseende har fået en uhensigtsmæssig udformning.

Det er således tvivlsomt, om grundlisteudvalgene har de nødvendige forudsætninger for at udtage personer med tilstrækkeligt kendskab til erhvervsforhold. I givet fald måtte anvendelse af de i medfør af retsplejelovens kapitel 9 - efter forslag af erhvervsorganisationer m.v. - udpegede handelskyndige retsmedlemmer forekomme at være en mere nærliggende løsning.

Det er en ulempe ved den af udvalget foreslåede ordning, at de på grundlisten optagne personer med særligt kendskab til erhvervsforhold ikke med sikkerhed vil få plads på den domsmandsliste, der i henhold til retsplejelovens § 74 skal dannes ved lodtrækning.

I praksis ville de personer, der kunne komme på tale som erhvervskyndige domsmænd, formentlig ofte kunne gøre gældende, at deltagelse i langvarige domsforhandlinger ville være uforenelig med deres private erhvervsvirksomhed. Domsmandsvederlaget ville ikke stå i rimeligt forhold til deres tab af arbejdsindtægt, og det måtte derfor befrygtes, at der i vidt omfang ville blive ansøgt om fritagelse for hvervet som domsmand efter retsplejelovens § 71, nr. 8, og at sådanne ansøgninger måtte imødekommes.

Såfremt man uanset retsplejerådets principielle indvending måtte bestemme sig for at indføre mere sagkyndige domsmænd i dansk strafferetspleje, bør spørgsmålet om den nærmere udformning af en sådan ordning derfor efter rådets opfattelse forinden gøres til genstand for mere indgående overvejelser.

## 3. Anticiperet bevisførelse

I dansk ret er det udgangspunktet, at beviser skal føres umiddelbart for den dømmende ret under domsforhandlingen.

Efter retsplejelovens § 747 består der en adgang til anticiperet bevisførelse, dvs. bevisførelse under retsmøder forud for domsforhandlingen, når der er påkrævet for at sikre bevis, som ellers må befrygtes at ville gå tabt, eller som ikke uden væsentlig

Copyright © 2021 Karnov Group Denmark A/S

ulempe eller forsinkelse vil kunne føres umiddelbart for den dømmende ret, eller når det må antages at være af betydning for efterforskningen eller af hensyn til en offentlig interesse.

Udvalget foreslår denne adgang til anteciperet bevisførelse udvidet, således at det udtrykkeligt kommer til at fremgå af bestemmelsen, at retsmøde til sikring af bevis kan afholdes, såfremt det må forventes, at efterforskningen eller domsforhandlingen vil blive meget langvarig.

Retsplejerådet forstår udvalgets forslag således, at der tilsigtes åbnet mulighed for indenretlige afhøringer under efterforskningen også af vidner, hvis forklaring er central for sagen, dog med det forbehold, at centrale vidner ofte må indkaldes påny til supplerende afhøring under domsforhandlingen.

Baggrunden for forslaget er bl.a., at det i sager, hvor efterforskningen står på i lang tid, ofte er vanskeligt for vidnerne at erindre noget om de hændelser, som de skal forklare om, og som ligger langt tilbage i tiden. Herved mister bevisumiddelbarheden noget af sin betydning, og udvalget skønner det derfor mere hensigtsmæssigt, at der åbnes adgang til at afhøre sådanne vidner under en anteciperet bevisførelse.

Der er næppe tvivl om, at der navnlig i store sager om økonomisk kriminalitet på grund af sagens forventede varighed kan være behov for at sikre bevis ved anteciperet bevisførelse. En sådan bevisførelse kan imidlertid afholdes allerede efter den gældende bestemmelse i retsplejelovens § 747, stk. 1, der nævner bl.a. forsinkelse ved at afvente domsforhandlingen som motiv for at tillade anteciperet bevisførelse, jfr. herved Kommenteret Retsplejelov (3. udgave), bind 3, s. 66, (note 4 til § 747).

Retsplejerådet finder ikke, at der er tilstrækkelig grund til en videregående adgang til anteciperet bevisførelse, der bør fastholdes som en snævert afgrænset undtagelse fra princippet om bevisumiddelbarhed. Det må i den forbindelse erindres, at anteciperet bevisførelse foregår under domsmænds tilstedeværelse.

## 4. Forberedende retsmøder og skriftlig forelæggelse

Udvalget foreslår indført hjemmel for, at retten i straffesager kan indkalde parterne til et særligt forberedende møde med henblik på en effektiv tilrettelæggelse af domsforhandlingen. Det tilsigtes på den måde at undgå overflødig bevisførelse, idet parternes stillingtagen til sagens faktiske og retlige problemer kan klarlægges fra sagens begyndelse.

Udvalget foreslår endvidere, at retten skal have beføjelse til at pålægge anklagemyndigheden at foretage en skriftlig forelæggelse af sagen, dvs. fremsende en skriftlig redegørelse for de faktiske omstændigheder og de retsregler, som tiltalen angår, med en præcisering af bevistemaerne. Den skriftlige forelæggelse, skal efter lovforslaget være offentlig tilgængelig, og udvalget forudsætter i øvrigt, at der i retten under domsforhandlingen sker en mundtlig sammenfatning af den skriftlige forelæggelse. Efter de foreslåede reglers placering i retsplejeloven skal de alene gælde straffesager, der behandles ved byret og dermed ikke nævningesager.

Retsplejerådet finder, at disse forslag, der i et vist omfang er en kodificering af en allerede fulgt praksis, må anses for klart hensigtsmæssige, og retsplejerådet kan anbefale, at forslagene gennemføres med den udtrykkelige tilføjelse, at der skal gives en mundtlig sammenfatning af den skriftlige forelæggelse i retten. Rådet finder endvidere, at det bør fremgå udtrykkeligt af lovteksten, at retten kun må pålægge anklagemyndigheden at fremsende skriftlig forelæggelse i særlige tilfælde, hvor sagens beskaffenhed gør det påkrævet.

Forslaget om en adgang for byretten til at kræve en skriftlig forelæggelse af sagen forudsætter, at byretten kan kræve en mundtlig forelæggelse af sagen, men hverken de gældende regler

eller den foreslåede regel giver udtrykkelig hjemmel herfor, cfr. den gældende § 868 om nævningesager.

## 5. Skriftlig procedure

I straffesager afsluttes domsforhandlingen med en procedure, hvor anklageren, forsvareren og tiltalte får mulighed for at udtale sig om bevisførelsens resultat og retsspørgsmålene i sagen. Udvalget stiller forslag om, at retten kan bestemme, at procedureindlæggene skal fremsendes skriftligt til retten. Parterne skal i så fald give en mundtlig sammenfatning af indlæggene i retten. De skriftlige procedureindlæg skal i øvrigt være offentligt tilgængelige.

Forslaget fraviger på et væsentligt punkt retsplejelovens princip om mundtlighed i retsplejen. Det må anses for et brud med dansk retstradition, at en forsvarer, der ønsker at procedere mundtligt, kan afskæres herfra. Det kan også nævnes, at en skriftlig procedure i visse sager kan få et så betydeligt omfang, at det vil være helt urimeligt at forudsætte, at lægdommere vil have tid til og mulighed for at sætte sig ind i de skriftlige procedureindlæg. Retsplejerådet må derfor udtale sig imod gennemførelsen af dette forslag.

Retsplejerådet finder derimod, at nogle af de synspunkter, der i betænkningen, side 287, er anført som begrundelse for udvalgets forslag, vil kunne tilgodeses ved en praktisk ordning, hvorefter det kan aftales, at parterne i forbindelse med den mundtlige procedure skal afgive en skriftlig oversigt over procedureindlæggets indhold med en angivelse af de hovedsynspunkter, der er gjort gældende, jfr. østre landsrets høringssvar, hvori det nævnes, at aftaler herom vil kunne træffes med de procederende parter på de forberedende møder. Sådanne skriftlige oversigter, der dog kun bør afgives i særligt omfattende eller vanskelige sager, vil kunne være en stor hjælp for retten i forbindelse med votering og domsskrivning.

## 6. Bevisførelse i ankesager

I henhold til retsplejelovens § 965 c, stk. 4, kan tilførsler til retsbogen om forklaringer afgivet af vidner og syns- og skønsmænd under byretsbehandlingen anvendes som bevismiddel under landsretsbehandlingen, såfremt ingen af parterne inden domsforhandlingen har anmodet om fornyet afhøring af de pågældende. Reglen blev indsat i retsplejeloven ved lov nr. 260 af 8. juni 1979 efter forslag fra retsplejerådet, jfr. betænkning nr. 825/1977, s. 118 ff. Hovedformålet med bestemmelsen er en forenkling af bevisførelsen i ankesager, således at indkaldelse af tidligere førte vidner i videst mulige omfang undlades. Udvalget finder, at bestemmelsen er egnet til at medføre overflødig ny bevisførelse på grund af kravet om, at parterne skal være enige i, at vidner m.v. ikke føres på ny. Udvalget foreslår derfor, at kravet udgår og erstattes af en bestemmelse om, at det er retten, der bestemmer, om der skal ske en fornyet afhøring.

Hensynet bag forslaget er som anført at undgå overflødig bevisførelse. Udvalget nævner i den forbindelse, at den gældende regel har givet anledning til en forskelligartet praksis med hensyn til vidneafhøring i ankeinstansen, og at der herved sker et vist spild af ressourcer.

Forslaget, der gør fornyet afhøring af vidner m.v. under anke afhængig af rettens tilladelse, tilsidesætter hermed det hovedprincip om ankebehandling, som er udtalt i retsplejelovens § 965 a, stk. 1: at der skal foregå en »fuldstændig ny domsforhandling« for landsretten.

Hvis man måtte ønske at give landsretten beføjelse til at afskære fornyet afhøring af vidner, ville det være bedre stemmende med retsplejelovens system, om beføjelsen blev formuleret som en adgang til at afskære fornyet vidneafhøring efter en af parternes begæring under i øvrigt nærmere angivne betingelser.

Copyright © 2021 Karnov Group Denmark A/S

side 16

Retsplejerådet fandt det dog bedst stemmende med rettens rolle som upartisk instans, at der ikke tillægges landsretten en sådan beføjelse. Udøvelsen heraf kunne svække parternes tillid til rettens upartiskhed. Retsplejerådet må derfor i overensstemmelse med den opfattelse, som begge landsretter har givet udtryk for, fraråde den foreslåede ændring.

# Lov 1987-06-10 nr 385
## om ændring af straffeloven og retsplejeloven

*(Økonomisk kriminalitet)*

**§ 1.** I borgerlig straffelov, jf. lovbekendtgørelse nr. 607 af 6. september 1986, foretages følgende ændringer:

**1.** § 79 affattes således:

»**§ 79.** Den, som udøver en af de i § 78, stk. 2, omhandlede virksomheder, kan ved dom for strafbart forhold frakendes retten til fortsat at udøve den pågældende virksomhed eller til at udøve den under visse former, såfremt det udviste forhold begrunder en nærliggende fare for misbrug af stillingen.

*Stk. 2.* Det samme gælder, når særlige omstændigheder taler derfor, om udøvelse af anden virksomhed. Efter samme regel kan der ske frakendelse af retten til at være stifter af eller direktør eller medlem af bestyrelsen i et selskab med begrænset ansvar, et selskab eller en forening, som kræver særlig offentlig godkendelse, eller en fond.

*Stk. 3.* Frakendelsen sker på tid fra 1 til 5 år, regnet fra endelig dom, eller indtil videre, i hvilket tilfælde spørgsmålet om fortsat udelukkelse fra den pågældende virksomhed efter 5 års forløb kan indbringes for retten efter de i § 78, stk. 3, indeholdte regler. Når særlige omstændigheder taler derfor, kan justitsministeren tillade, at indbringelse for retten sker, inden den i 1. pkt. nævnte 5 års frist er forløbet.

*Stk. 4.* Retten kan under behandlingen af de i stk. 1 og 2 nævnte sager ved kendelse udelukke den pågældende fra at udøve virksomheden, indtil sagen er endeligt afgjort. Det kan ved dommen i sagen bestemmes, at anke ikke har opsættende virkning.«

**2.** I § 131 ændres »Med bøde eller hæfte indtil 3 måneder eller under skærpende omstændigheder med fængsel i samme tid« til: »Med bøde, hæfte eller fængsel indtil 6 måneder«.

**3.** I § 131 indsættes som stk. 2:

»*Stk. 2.* Med bøde eller under særlig skærpende omstændigheder med hæfte straffes den, som medvirker til, at en person, der er frakendt retten til at udøve en virksomhed, udøver denne.«

**4.** I § 296, stk.1, ændres »2 år« til: »1 år«.

**5.** § 302 affattes således:

»**§ 302.** Med bøde, hæfte eller fængsel indtil 1 år straffes den, som under omstændigheder, der kendetegner forholdet som særlig groft:

1)  foretager urigtige eller vildledende angivelser i forretningsbøger eller regnskaber, som det ifølge lov påhviler den pågældende at føre eller udfærdige,

2)  undlader at føre forretningsbøger eller udfærdige regnskab på den måde, som det ifølge lov påhviler den pågældende at gøre det,

3)  undlader at opfylde den ifølge lov foreskrevne pligt til at opbevare forretningsbøger, bilag eller andet regnskabsmateriale eller ødelægger sådant.

*Stk. 2.* Begås en handling eller undladelse som nævnt i stk. 1 af grov uagtsomhed, er straffen bøde eller hæfte.«

**§ 2.** I lov om rettens pleje, jf. lovbekendtgørelse nr. 567 af 1. september 1986, foretages følgende ændringer:

**1.** Efter § 31 indsættes:

»**§ 31 a.** Sker der i en sag skriftlig forelæggelse eller skriftlig procedure, jfr. §§ 927 b og 928 a, stk. 2-3, finder de i medfør af denne lovs §§ 29 eller 31 trufne beslutninger tilsvarende anvendelse herpå.«

**2.** I § 721, stk. 1., nr. 1, indsættes efter »§§ 103, stk. 2,«: »131, stk. 2,«.

**3.** I § 721, stk. 1, nr. 2, udgår »131,«.

**4.** I § 723 indsættes efter stk. 2 som nyt stykke:

»*Stk. 3.* Statsadvokaten kan endvidere helt eller delvis opgive eller frafalde tiltale, såfremt sagens gennemførelse vil medføre vanskeligheder, omkostninger eller behandlingstider, som ikke står i rimeligt forhold til sagens betydning og den straf, som i givet fald kan forventes idømt.«

*Stk. 3* bliver herefter stk. 4.

**5.** I § 723, stk. 3, 1. pkt., der bliver stk. 4, 1. pkt., ændres: »Bestemmelserne i stk. 1-2« til: »Bestemmelserne i stk. 1-3«, og »frafalde påtale« ændres til: »opgive eller frafalde påtale«.

**6.** Efter § 927 indsættes:

»**§ 927 a.** Retten kan indkalde til et særligt forberedende møde med henblik på en fastlæggelse af parternes stilling til sagens faktiske og retlige omstændigheder, herunder hvilke omstændigheder der ikke bestrides, og hvilke der skal føres bevis for, samt domsforhandlingens tilrettelæggelse.

**§ 927 b.** I særlige tilfælde, hvor retten under hensyn til sagens beskaffenhed finder det hensigtsmæssigt, kan den pålægge anklagemyndigheden at fremsende en skriftlig forelæggelse til retten inden en nærmere fastsat frist. Retten fastsætter endvidere en frist for forsvarernes eventuelle bemærkninger hertil. Er der sket skriftlig forelæggelse, jfr. 1.-2. pkt., skal parterne give en mundtlig sammenfatning heraf i retten.«

**7.** § 928, stk. 2, affattes således:

»*Stk. 2.* Efter at anklageskriftet er oplæst, spørges tiltalte, om han erkender sig skyldig i det der omhandlede forhold. Retten kan pålægge anklageren at forelægge sagen. Derpå følger bevisførelsen i overensstemmelse med reglerne i § 868.«

**8.** § 928, stk. 4 og 5, ophæves.

**9.** Efter § 928 indsættes:

»**§ 928 a.** Efter at bevisførelsen er sluttet, får først anklageren, dernæst forsvareren og, såfremt tiltalte begærer det, denne ordet for at udtale sig om bevisførelsens resultat samt om retsspørgsmålene i sagen (proceduren). Dernæst optages sagen til dom. Retten kan dog bestemme, at spørgsmålet, om tiltalte er skyldig, først skal forhandles og afgøres.

*Stk. 2.* Parterne kan med rettens tilladelse helt eller delvis indlevere proceduren skriftligt til retten. I så fald skal parterne give en mundtlig sammenfatning heraf i retten.

*Stk. 3.* Retten kan i særlige tilfælde, hvor det under hensyn til sagens beskaffenhed findes hensigtsmæssigt, pålægge anklageren og forsvareren i forbindelse med proceduren at afgive en skriftlig oversigt over procedurens indhold med en angivelse af de hovedsynspunkter, der gøres gældende.

**§ 928 b.** Ved afstemningen skal det spørgsmål, om tiltalte er skyldig i den forbrydelse, der lægges ham til last, sondres fra spørgsmålet om straffen og først bringes til afstemning. Stemmes der særskilt om strafforhøjelses- eller strafnedsættelsesgrunde, bliver stemmerne fra de medlemmer af retten, som har erklæret sig mod tiltaltes skyld, men er forblevet i mindretal, at regne til gunst for tiltalte.«

**10.** Efter § 965 c indsættes som ny § 965 d:

Copyright © 2021 Karnov Group Denmark A/S

»**§ 965 d.** Bestemmelserne i §§ 927 a, 927 b og 928 a finder tilsvarende anvendelse.«

**§965** d bliver herefter § 965 e.

**§ 3.** Loven træder i kraft den 1. juli 1987.

*Stk. 2.* Lovens § 2 finder anvendelse i alle sager, der ikke er endeligt afgjort ved lovens ikrafttræden.

**§ 4. § 1** i denne lov gælder ikke for Færøerne, men kan ved kongelig anordning sættes helt eller delvis i kraft for denne landsdel med de afvigelser, som de særlige færøske forhold giver anledning til.

Copyright © 2021 Karnov Group Denmark A/S