legislation. The Public Prosecutor's Office is an administrative authority and can exercise a certain degree of discretion. The prosecution service thus has access to the prosecution. This has been expressed as meaning that the principle of opportunity applies to the indictment.78 With a more adequate choice of words, the indictment can be described as optional.79 On the other hand, the judgment that the judge is to pronounce is subject to a principle of legality. However, the concepts of discretion and rule are neither clear nor unambiguous. The descriptions of the decision-making processes in connection with the indictment and judgment as an exercise of discretion and as a rule of law do not provide answers to all questions, but they undoubtedly point to some factors of real importance. A closer examination of the nature of the guidance provided by the legal system to courts and prosecutors is in order. The recognition that there are several similarities between the basis for decision in the prosecution service and in the courts should not lead to the differences being overlooked.80 The discretion of the prosecution service, like the discretion of other administrative authorities, must be exercised in a mandatory manner, but this does not mean that the prosecution service has a duty to prosecute where the court must be assumed to want to judge. The decisions of the courts are also mandatory, but the basis for decisions is different.81 The general guidelines for the exercise of the powers of both the courts and the prosecution service are determined by the political authorities, by the legislature and, in the case of the prosecution service, also by the Minister of Justice. On the other hand, the decision on individual cases - both the question of whether charges should be brought and, if so, what the sentence should be - should be made free of party political considerations.82

78. Cf. e.g. FT 1971/72, Appendix A, sp. 559. The principle of opportunity also applies in Norway and is defended by Andenæs: Ordinary Criminal Law, p. 415 et seq.

79. Cf. thus - and on prosecution in Sweden in general - Ekelöf: Trial, V, p. 101 ff.

80. Thus, there is hardly any gain from changing the common language according to which the public prosecutor's office has no obligation to prosecute. The opposite language is not so easily changed - does not correspond well with § 723 para. 2, on the discretionary power of the Director of Public Prosecutions and the Minister of Justice to drop charges. Differently the

Prosecution Service's Annual Report 1973, p. 1.

81. Cf. Poul Andersen: Förvaltningret p. 252 and Hurwitz: Criminal Justice (3rd edition) p. 214.

82. Cf. Bent Unmack Larsen in J 1974.467 ff.

Modern presentations of the doctrine of sources of law have strongly emphasized that that the courts exercise a law-making activity within certain limits.83 However, the eagerness to distance themselves from the too narrow conception of the function of the courts in the past has often led the authors into another ditch to an exaggeration of the extent of autonomy. In addition, the exercise of the law-making discretion also has a character of duty, which must be sought to be clarified in more detail before the nature of the law-making activity is established. It is clear that the free formation of law in the area of the process is made more difficult partly by the extensive and detailed legal regulation, especially in the Administration of Justice Act, and partly by the nature of the issues themselves as procedures of a technical-administrative nature. The establishment of rules on such matters often requires choices of a very different nature from the common sense decisions by which the courts have formed the courts in areas of property law, and the silence of the law on a conceivable and perhaps desirable approach generally means only that this approach cannot be used, and not that the law must be perceived as incomplete and that this gap must be filled by appropriate rules laid down by the court. In the field of criminal law, the task of the courts in adapting the legal system is limited by the maxim nulla poena sine lege. It is not the task of the courts to decide on or to extend the scope of the offence. However, their more limited task of determining the meaning of the words of the penal commandments cannot be completely reduced to a purely linguistic interpretation. Moreover, it is not in all areas applicable law that only the conduct that the penal prohibition has definitely criminalised is punished. In particular, penal commandments outside the Penal Code are sometimes drafted in such vague terms that the interpretation assumes the character of quite free discretion. Even the Criminal Code contains concepts whose content is first established in case law, such as, for example, the definition of the right to the right to the right to the Criminal Code. the word 'unlawful' in Paragraph 279 and the expression 'of lesser punitiveness' in Paragraph 287. The discretion of interpretation should generally be exercised in such a way that the individual decisions can contribute to the formation of rules. The discretion is also - like the administrative discretion - generally bound by the fact that the decisions should contribute to more or less specifically stated objectives

83. Cf. Ross: Ret og Justice, pp. 116ff, and Torstein Eckhoff: Rettskildelær, 1972, p. 176 ff.

Proposal for an Act

amending the Administration of Justice Act, the Criminal Code, the Road Traffic Act and the Aliens Act

(Structure of the Public Prosecutor's Office)

Delivered on 22 November. January 1992 by the Minister of Justice (Engell)

§ 1. In the Act on the Administration of the Court, cf. Statutory Order no. 748 of 1.

December 1989, as amended most recently by Act No. 941 of 27. December 1991 and Section 2 of Act no. 6 of 3. January 1992, the following shall be

Changes:

1. In Paragraph 9a(a). 3, 2. Paragraph 1, 'police cases' shall be replaced by 'cases'.

2. Chapter 10 is replaced by the following:

»Chapter 10

The Public Prosecutor's Office

§ 95. The public prosecutors are the Director of Public Prosecutions, the Public Prosecutors, the Chiefs of Police (in Copenhagen, the Chief of Police) and the persons appointed to assist them in the judicial handling of criminal cases.

§ 96. The task of the public prosecutors is to prosecute crimes in connection with the police in accordance with the rules of this law.

(2) Public prosecutors must advance any case with the speed that the nature of the case permits, thereby ensuring not only that the guilty are held accountable but also that the prosecution of innocent people does not take place.

§ 97. A person who, according to Chapter 2 of the Public Administration Act, is to be considered disqualified in relation to a particular case, may not act as a prosecutor in the case.

§ 98. The Minister of Justice is the public prosecutors in charge and supervise these

(2) The Minister of Justice may lay down provisions on the public prosecutors in the performance of their duties.

(3) The Minister of Justice can order the individual public prosecutors concerning the processing of specific cases, including the or continue, refrain from or stop prosecution.

(4) The Minister of Justice deals with appeals against decisions made by the Director of Public Prosecutions as 1. instance.

§ 99. The Director of Public Prosecutions is responsible for conducting criminal cases by The Supreme Court and acts before the Special Court of Appeal.

(2) The Director of Public Prosecutions is superior to the other public prosecutors and supervise these. The Director of Public Prosecutions may lay down regulations and issue orders in accordance with rules corresponding to section 98(1). 2 and 3.

(3) The Director of Public Prosecutions handles appeals against decisions made by The public prosecutors who on 1. instance. The Director of Public Prosecutions' decision in a complaint case cannot be appealed to the Minister of Justice.

§ 100. To assist the Director of Public Prosecutions, one or more public prosecutors are appointed to the Supreme Court.

(2) The Director of Public Prosecutions may also authorise others to act as prosecutors at the Supreme Court or at the Special Court of Appeal in a single Sag.

§ 101. The public prosecutors are responsible for conducting criminal cases by: High Courts.

(2) The public prosecutors supervise the the handling of criminal cases and the handling of appeals against decisions; made by the police chiefs regarding criminal prosecution. The public prosecutors' decisions in appeals cannot be appealed to the Director of Public Prosecutions and the Minister of Justice. The public prosecutors may determine: provisions and issue orders in accordance with rules corresponding to section 98(1). 2 and 3.

§ 102. The time limit for appeals pursuant to section 98(1) 4, Section 99, para. 3, 1. pt., and Section 101 para. 2, 1. point. 4 weeks after the complainant has been notified of the decision. If the complaint is made after the expiry of this time limit, it must be processed if the exceeding of the time limit is considered excusable

§ 103. The Minister of Justice determines the number of public prosecutors and the distribution of business between them.

(2) The Minister of Justice appoints the necessary legal assistants for the public prosecutors in the conduct of criminal proceedings before the High Court.

(3) The Director of Public Prosecutions can also authorise others to act as prosecutor at the High Court in a single case.

(4) The Director of Public Prosecutions may order a public prosecutor to take over the handling of one or more cases that fall under the responsibility of another public prosecutor.

§ 104. The police chiefs and the public prosecutors employed by them, as well as other employees authorised to do so, are responsible for conducting criminal cases before the district courts and the Maritime and Commercial High Court. (2) The Director of Public Prosecutions may also authorise others to act as prosecutors at the District Court or the Maritime and Commercial High Court in a single case. (3) The Public Prosecutor may order a Chief of Police to take over the handling of one or more cases that fall under the responsibility of another Chief of Police.

§ 105. The Director of Public Prosecutions, the public prosecutors and those authorised to act as prosecutors at the Supreme Court or the High Court in a single case, cf. Section 100 (1) 2, and section 103, para. 3, must have passed legally Master's degree. Furthermore, they must usually have been in business for at least 3 years as a judge, chief of police, assistant with a public prosecutor, as an auditor in the defence or as a lawyer with the right to appear before the High Court.

(2) Assistants to a public prosecutor or those authorized to act as a prosecutor at the District Court or the Maritime and Commercial High Court in a single case, cf. Section 104 (1) 2, must have passed legally Master's degree. In addition, they must meet the conditions for be admitted as a lawyer with regard to prior practical company, cf. § 119.

(3) The Consumer Ombudsman can be appointed to carry out indictments before the Maritime and Commercial High Court and the district courts in cases concerning the Act on marketing.

§ 106. Acting as a lawyer does not exclude from being accepted as an assistant to a public prosecutor or from authorisation to act as a prosecutor in a single case

§ 107. Persons who act as prosecutors in a single case, cf. § 100 para. 2, Section 103, para. 3, and section 104, para. 2, receives remuneration from the public authorities for the individual case, unless the performance of the case is to be regarded as part of the performance of the service of the person in question. The remuneration shall be determined by the court according to the importance and extent of the work.'

3. Chapter 62 is replaced by the following:

>>Chapter 62

Substantive jurisdiction

§ 686. Criminal cases are heard in the 1. instance at the district courts or the Maritime and the Commercial Court, unless otherwise provided for in this holiday.

(2) Magistrates participate in cases where questions arise for a higher penalty than a fine, or which is otherwise deemed to be of

Copyright © 2021 Karnov Group Denmark A/S

particularly intrusive significance for the accused or of special public interest.

(3) Judges do not participate in

1) cases brought pursuant to Sections 925, 934, 935(1) of the Criminal Code. 1, § 936 or § 937,

2) cases heard by the Maritime and Commercial High Court in Copenhagen or by the maritime court, and

3) The provisions of section 60 (1) of the Danish Penal Code. 1, no. 3, mentioned cases concerning suspended sentences.

(4) Magistrates also participate if such treatment is prescribed in accordance with the rules of other laws.

§ 687. At the High Courts, the 1. the cases in which the Jurors participate.

(2) Jurors participate in

1) cases where there is a question of a sentence of imprisonment for 4 years or more, insofar as this is not a consequence of the question of determining a joint sentence according to the rules in section 40(1) of

the Danish Criminal Code. 1, and 61,

2) cases where there is a question of a sentence to placement in an institution pursuant to section 68 of the Danish Criminal Code or a sentence to preventive detention, cf.

Section 70 of the Penal Code, and

3) cases relating to political offences. (3)

Jurors do not participate in

1) cases concerning violations of sections 172, 173, 286 or 289 of the Danish Criminal Code, and

2) The provisions of paragraph 1, 2, no. 1 and 2, cases referred to in the case of the Child Welfare Act which are brought forward pursuant to Section 925

or Section 925 a.

§ 688. Criminal cases involving several offences are heard by the High Court with the assistance of a jury if such proceedings are required in respect of one of the offences under the rules of Section 687. Other criminal cases, comprising several offences, are dealt with as magistrate cases before the district court if such proceedings are required in respect of one of the offences in accordance with the rules of Section 686 or the

rules of other laws.

§ 689. The High Courts also deal with decisions on appeals or appeals against the judgments, rulings and decisions of the district courts.

(2) Judges participate in

1) cases where the district court's decision has been made with the assistance of magistrates, and

2) cases where the High Court raises the question of a higher penalty than a fine, or which is otherwise deemed to be of particularly intrusive importance to the defendant or of special public interest.

(3) Judges do not participate in

1) Cases that in 1. instance has been processed by the Maritime Court, and

2) The provisions of section 60 (1) of the Danish Penal Code. 1, no. 3, mentioned cases concerning suspended sentences.

§ 690. The Supreme Court is responsible for all decisions on appeals or appeals against the judgments, rulings and decisions of the High Courts and the Maritime

and Commercial High Court.

§ 691. The court examines of its own motion whether a case is subject to its jurisdiction and whether magistrates should participate in the proceedings. However, if the court proceedings before the High Court have begun, the proceedings may be continued, regardless of whether the case should have been brought before the district court. If the court proceedings with the assistance of magistrates have begun, the court may, even if the case should have been heard without their involvement, decide that magistrates shall continue to cooperate.

(2) Appeals may be lodged against decisions rejecting an application for adjudication before the High Court or with the assistance of magistrates or experts.'

4. Section 698 (1) 1, no. 2, is replaced by the following:

'(2) offences for which there is no question of a penalty higher than a fine or a fine.'

5. Repeal Chapter 64 of the Code of Civil Procedure, 'The Public Prosecutor's Office' (Paragraphs 710 to 717),

6. Chapter 65 is replaced by the following:

»Chapter 65
The reprimand

§ 718. In the field of criminal procedure, courts operate only at the request of the public prosecutor or a private

Entitled to prosecute.

§ 719. Public prosecution is the responsibility of the Chief of Police, unless otherwise provided for in this Act or rules laid down pursuant to this Act. (2)

The public prosecutor reprimands

1) Cases to be heard by the High Courts in the 1. instance or as appeals, and

2) cases concerning violation of the provisions of Chapters 12 and 13, Sections 127-129a, 132a, 136(1) of the Danish Criminal Code. 2, Section 137(1) 2, § 140, § 141, chapter 16, § 158, § 160, § 180, § 183 para. 1 and 2, Section 183 a, Section 186 (1) 1, Section 187, para. 1, §§ 237-240,

Section 261(2) 2, § 266 a and § 266 b.

(3) The Minister of Justice shall also lay down detailed rules on the distribution of the prosecution between the public prosecutors and the police chiefs.

§ 720. The Minister of Justice may stipulate that public prosecution in specified cases is subject to the decision of the Minister of Justice or the Director of

Public Prosecutions (2). If public reprimand is conditional on an application under the law, reprimand may only take place if the request is made by a person entitled to do so pursuant to section 725. If private prosecution has begun, public prosecution cannot be requested. The prosecuting authority may refuse to comply with a request for public prosecution that excludes any accomplice from the prosecution. If the application concerns only some of the guilty parties, without excluding possible accomplices, the prosecuting authority may extend the prosecution to them, unless the person entitled to the prosecution objects, after having had the opportunity to make a statement on the matter. In that case, 3. Pkt. application.

(3) Notwithstanding the provisions of subsection (3) of the Criminal Code, the Public Prosecutor and the Chief of Police may: 1 and 2 take urgent action when the matter is assumed to be the person who can decide or request prosecution is unknown, and the circumstances make it presumable that a prosecution will be decided or requested. If an application is withdrawn pursuant to subsection (1). 2 before a verdict has been pronounced, the prosecution shall be stopped, unless the prosecuting authority deems that the public interest requires that the prosecution be continued.

§ 721. Prosecution in a case may be abandoned in whole or in part in the event that

1) where the charge has proven to be unfounded,

2) where further prosecution cannot otherwise be expected to lead to the accused being found guilty, or

3) where the conduct of the case will entail difficulties, costs or processing times that are not proportionate to the importance of the case and the punishment that can be expected to be imposed.

(2) The right to abandon prosecution pursuant to subsection 1, no. 1, belongs to the Chief of Police. In other cases, the right of access is vested in the prosecuting authority, unless otherwise provided for in provisions laid down by

the Minister of Justice.

§ 722. Charges in a case may be dropped in whole or in part if:

1) Where the intended offence cannot be prosecuted in public according to the Act, the rules in section 727(1) apply. 3, correspondingly result in a higher penalty than a fine, and the ratio is of little criminality,

2) where, pursuant to section 723(1) 1, stipulates as a condition that: the accused is subject to remedial measures pursuant to section 33 of the Act on social assistance,

3) where the accused was under 18 years of age at the time of the offence, and there conditions are stipulated pursuant to section 723(1). 1,

4) where section 10 b or section 89 of the Penal Code is applicable, when it estimated that no or only a negligible penalty would be sentenced, and that a conviction will not otherwise be of significant importance,

5) where the conduct of the case will cause difficulties, costs or processing times that are not reasonable the importance of the case and the punishment that may be can be expected to be sentenced,

6) where the legislation contains a special legal basis for indicting can be waived, or

7) where this follows from provisions laid down by the Minister of Justice; or the Director of Public Prosecutions.

(2) In other cases, charges may only be dropped if there is special extenuating circumstances or other special circumstances; and reprimand cannot be considered necessary in the public interest.

(3) The prosecuting authority may drop charges pursuant to subsection (a) of the Criminal Code. 1, while dismissal of charges pursuant to subsection. 2 is decided by the nearest and dearest Superior Public Prosecutor's Office.

§ 723. A condition for a dismissal of charges may be stipulated

1) that the accused decides to pay a fine or enters into a confiscation, and ;

2) the same conditions as in suspended sentences.

(2) Conditions can only be set if the accused has in court made an unreserved confession, the truth of which is corroborated by the other circumstances of the case.

(3) The conditions are determined by the authority that has access to drop the charges. The terms and conditions must be approved by the court.

(4) If a condition is violated, the case can be reopened.

§ 724. When deciding to drop the prosecution, the accused and the accused shall be informed others who are likely to have a reasonable interest in doing so. Firewood The decision to drop charges is notified to the accused. A decision to drop charges can be appealed to the chief prosecutor's office in accordance with the rules in Chapter 10. The accused can complain according to the same rules against a decision to drop charges.

(2) Has a decision been made to drop charges or dismissal of charges, criminal prosecution may be brought against the person who has been charged, shall be continued only at the discretion of the Chief Public Prosecutor's Office, if notice of this has been served on it; within 2 months from the date of the decision, unless the accused's circumstances have prevented timely service, or the conditions for reopening pursuant to section 975 is present.

§ 725. The right to private reprimand and to apply for Public prosecution belongs to the injured party. If this person is a minor, the rules in section 257 apply. When the injured person has died, or When an act directed against a deceased person is punishable, the right to private prosecution or to request public reprimand of the deceased spouse, parents, children or siblings. .

(2) A person who, pursuant to subsection. 1 is entitled to reprimand or request reprimand, may waive this right. This applies even if a case has been brought or an application has been made .

§ 726. Offences whose public prosecution is conditional on a A private application may be reprimanded by a person entitled under section 725 if the act cannot result in a higher penalty than the imposition. Commencement application.

§ 727. If an act constituting an offence, which has been referred to private prosecution also contains a offence that is subject to public prosecution may the prosecuting authority at the request of the private prosecuting authority pursue both offences together. The private sector can such cases at any stage shall stop the persecution.

(2) Public reprimand of an offence referred to private prosecution may take place if the public interest requires it. This does not apply if a judgment has been handed down in a private criminal case concerning offence, or if the right to private redress in respect of a an offence that is subject to conditional public prosecution only; follows from the fact that the act cannot result in a higher penalty than the imprisonment, cf. § 726, 1. Pkt,

(3) When public proceedings have been initiated pursuant to subsection (1). 2, is discontinued the private person's right to reprimand. Section 345 shall apply correspondingly.

The private person may join the prosecution if A declaration to that effect shall be made without delay. However, the private sector cannot demand postponement of the proceedings, and it is not the responsibility of the accused or his defends to give prescribed notices to the private person. Stopping the prosecution the commenced prosecution, the private reprimand or continue his reprimand.

§ 728. Prosecution can be abandoned as long as no judgment has been handed down or given a jury statement. Is the prosecution abandoned after The court has begun to dismiss the case. In other In such cases, the court shall, upon request, issue a written declaration that: A commenced prosecution has been abandoned."

7. Section 731(1)(1) point (e) is replaced by the following:

'(e) where charges have been brought in cases in which a higher penalty than a fine or liability is raised;'

8. Paragraph 749 is replaced by the following:

»§ 749. The police reject a reported report if there is no basis for initiating investigations.

(2) If there is no basis for continuing a investigation, the decision to discontinue the investigation may be made by the police if no charges have been brought. If a charge has been brought, the provisions of Sections 721 and 722 shall apply.

(3) If the report is rejected or the investigation is discontinued, shall be informed of those who are likely to have a reasonable interest in doing so. The decision may be appealed to the chief public prosecutor's office in accordance with the rules in Chapter 10.'

9. Section 752(1) 2, is replaced by the following:

» Paragraph 2. The Minister of Justice lays down rules on the cases in which The municipal council must be informed of and have access to attend the interrogation of the accused under the age of 18.'

10. Paragraph 754e is replaced by the following:

»§ 754 e. The rules in sections 754 a - 754 d do not apply to investigation of violations of Chapter 12, Sections 111115 and 118 of the Criminal Code.'

11. Section 791(1) 2, 3. paragraph is replaced by the following:

'The provisions of Article 2. Pkt. does not apply to material, that have been obtained as part of the investigation of violations of Chapter 12, Sections 111 to 115 and 118 of the Danish Criminal Code.'

12. In Paragraph 801(1) of the Convention. 1, 1. subparagraph, the term 'Public Prosecutor's' shall be replaced by:

'public prosecutor'.

13. Section 822(1) 2, 2. Paragraph is repealed.

14. Section 842 (1) 1, no. 2, is replaced by the following:

'(2) that the case is not subject to public prosecution, or'

15. In Paragraph 869(1) of the Constitution. 1, 'whether the Public Prosecutor has the right to prosecute' is replaced by:

»whether the case is subject to public prosecution«.

16. Section 885(1) 3 is replaced by the following:

the provision on the substantive jurisdiction of the Supreme Court, which today only mentions decisions made by the High Courts.

The provision in the current section 693 on acts carried out by A High Court judge as an investigating judge is just like the the current provision on investigating judges in section 686(2). Og 3. Clause ., has not been included in the bill, as the provision has lost its its significance in practice.

Re section 691.

The provision in subsection. Amendment No 1 is apart from a linguistic modernization identical to the current rule in section 691(1). 1.

The changed position in relation to the other rules in Chapter 62 rule is due to the fact that the Supreme Court must also ex officio examine whether a case is within its competence.

(2) corresponds to the current rules in section 692(1). 2, 2. Paragraph and § 691 pcs. 2, on appeals against decisions refusing to be heard by jury or the participation of magistrates.

The provision is an exception to the general rule in section 968, Stk. 2, that orders made in preparation for the proceedings cannot be appealed against where the order involves the before the court concerned.

The provision also applies to decisions pursuant to of the Road Traffic Act and the Aliens Act on the complicity; Section 3, no. 1, and § 4. .

To no. 4.

The right to pursuant to section 698(1) 1, no. 2, to bring criminal proceedings by: the defendant's home court rather than at the jurisdiction of the scene of the crime; § 696,

is linked to the fact that the Chief of Police has the power to prosecute. This provision is proposed to be replaced by a criterion corresponding to the otherwise proposed delimitation criterion for which cases are to be dealt with Chapter 80 of the Administration of Justice Act, and which can be dealt with under the simplified procedures in Chapter 81. Reference is made to the bill General comments Item 5.2. and below to no. 18 and 21.

To no. 5 It is

proposed that Chapter 64 of the Administration of Justice Act be repealed as the provisions chapter to the extent that, in the opinion of the Ministry of Justice, they continue to should be maintained, is inserted in the proposal for a new chapter 10 of the The Administration of Justice Act. Reference is made to the comments to no. 2.

To no. 6.

The proposed wording of Chapter 65 contains new rules on: the division of prosecution powers between public prosecutors and Police chiefs; cf. the provision in section 719 of the bill. Furthermore, proposes to amend or repeal the other provisions of Chapter 65, including the rules on public authorities' access to reprimand, conditional public reprimand, private prosecution and failure to prosecute, etc.

The proposed provisions on dropping charges and dropping charges corresponds essentially to the current provisions of the Sections 723 and 723a of the Administration of Justice Act and, in part, Section 749. The amended design aims at a better system of the rules, and establishing clearer rules of jurisdiction also for The Chief of Police's right to drop prosecution and drop charges. Furthermore, in accordance with the The Judicial Council's recommendation used a more consistent use of language for non-prosecution than the applicable rules of the Code of Civil Procedure.

Thus, the concept of prosecution is used for cases where indictment is abandoned as a result of the fact that a charge must be considered unfounded, or the case for other reasons, such as the fact that the police are not in the same place. lack of evidence,

conviction, and the charges for the cases where charges are dropped despite the fact that the case could is carried out for conviction.

The chapter is structured in such a way that separate provisions are given on the dropping of charges in section 721 and dismissal of charges in sections 722 respectively and 723. This is followed by a provision on conversion and resumption in section 724.

The rules in sections 725-727 are a rewrite of the current rules on prosecution in criminal cases subject to conditional public prosecution and private prosecution, while section 728 of the bill deals with Dropping charges after the start of the trial.

To section 718

(1) is identical to the current one, except for a linguistic change. in section 718.

The provision in the current section 719(1) 1, that the reprimand To be added    The Public Prosecutor    the Chief of Police,    Special administrative authorities and private individuals, are not included in the bill, as it must be regarded as superfluous as a result of the provisions of Sections 719 and 720. Special Managing Authorities are not mentioned as prosecuting authority, as a number of special law provisions which added Ministers and agencies the power to decide on indictment, was repealed in 1965. Furthermore, the special authorities' right to reprimand pursuant to section 724 offences, and the Ministry of Justice has thus also This provision has not been included in the bill.

To section 719

The provision entails a completely new distribution of the power to prosecute between the police chiefs and the public prosecutors.

The considerations and general criteria f    or the delimitation of competence between public prosecutors and police chiefs Reference is made to the general comments of the bill, item 1. 3 and to Report no. Regulation (EC) No 1194/1990, Chapter 3, Sections 4.2 and 4.3.

In the opinion of the Ministry of Justice, the Public Prosecutor should, as in cases which, as a matter of first instance or appeals must be heard by the High Courts, while the Chief of Police should be prosecuted in cases that are to be heard in the first instance by the district courts. However, there may be grounds for various reasons to derogate from this scoping criterion. In this context, emphasis has been placed on whether a district court case concerns particularly significant public interests, in particular, matters affecting the freedoms of the Constitution and relations with the supreme organs of the State. In addition, it is proposed, inter alia. Emphasis on whether the case may raise questions about the police chief's impartiality. Finally, the maximum penalty for the individual offence should continue to be added a certain importance (a criterion of gravity).

On the basis of these considerations, it is proposed in paragraph 1. 1, that jurisdiction to prosecute - as opposed to the applicable law - As a starting point, the Chief of Police is the responsibility of the Chief of Police, while the Public Prosecutor shall reprimand the cases which, in accordance with the above, guidelines, should be subject to the latter's power to prosecute. Thereafter, the Public Prosecutor shall reprimand in accordance with subsection. 2, no. 1, cases to be

are heard by the High Courts of First Instance (jury cases) or as appeals, cf. cf. Sections 687 and 689 of the Bill. This indication of the power to prosecute is naturally related to the fact that it is the public prosecutor representing the public prosecutor's office in The High Court.

The Public Prosecutor shall also reprimand pursuant to subsection (1) of the Criminal Code. 2, no. 2, a series listed violations of the Criminal Code, regardless of whether the cases are is heard in the district court, and it is the Chief of Police who appears in the case.

After subsection. 3, it is also proposed that the power to prosecute be regulated in administrative provisions, so that the power to prosecute for Specified violations or cases Exceptionally, the public prosecutor may be assigned to the public prosecutor. This will e.g. be appropriate with regard to violation of the Criminal Code Sections 119 and 121 committed against police officers where it is possible to raise

side 20

question of the Chief of Police's disqualification in the decision of the indictment. In addition, according to the provision:

the Chief of Police is required to submit listed offences, who are reprimanded by the Chief of Police, e.g. atypical and rare cases before the public prosecutor before charges are brought; or prior to acquiescence (see the applicable rules of reference in The Ministry of Justice's circular letter of 29. June 1984).

In this formulation of section 719, the aim is to introduce a flexible scheme, which will also make it possible to refer the reprimand to the public prosecutor during a transitional period, e.g. for in connection with new legislation to ensure uniform prosecution practices.

There are a number of provisions in the special legislation according to which: Cases of violation of the law are treated as police cases, regardless of that the penalty is higher than the fine or liability. As the proposed rule in section 719 para. 1, means that the Chief of Police also reprimands such cases, these provisions may be repealed. To the extent that: The power to prosecute under other legislation is vested in others authorities within the public prosecutor's office other than the Chief of Police, the rules on this may be repealed so that it is

determine which authority has the power to prosecute. This

For example, the case is not the same as the Constitution. cf. Section 11 of the Penal Code; Section 2, no. 2.

Section 28 of the Media Liability Act and Section 18(1) of the Danish Medical Act. 2

The Minister of Justice, the Director of Public Prosecutions and the Public Prosecutor's Office have access to

by virtue of their overall position, to intervene in specific cases; cf. No. 2, §§ 98 para. 3, 99 pcs. 2, and 101 2, is not limited by the provision in section 719. There will also be provisions of Chapter 10 could continue to be issued in general rules on the handling of cases, on submission prior to a decision of the indictment, etc.

To section 720

The provision in subsection. You replace the current section 722 (1) of the Constitution. 1, no. 1,

according to which the Minister of Justice's order for prosecution is required, insofar as

concerning the crimes of public officials in official and other crimes for which this is specifically prescribed. The purpose of the to authorise the Minister of Justice to lay down by decree that public prosecution in certain specified cases is conditional on the Minister of Justice or the Director of Public Prosecutions, is to obtain a administrative regulation of these cases. The provision

must be seen in the context of section 719(1) of the bill. 3. The power

pursuant to section 719(1). 3, and section 720, para. 1, may be delegated by the Minister of Justice

to the Director of Public Prosecutions, so that administrative regulations are issued

by the Director of Public Prosecutions after negotiation with the Ministry of Justice and the

other prosecution services.

It is proposed that the special provisions on prosecution in the Criminal Code

Section 6(1) of the Constitution. 2, Section 8, para. 2-3, section 11, section 110f, section 118a and section 140, are repealed

and be incorporated into such an order. Reference is made to cf. the comments on section 2 of the bill.

The provisions of subsection Paragraphs 2 and 3 are identical to the applicable rules

Section 722(1) of the Constitution of the Philippines 1, no. 3, and pcs. 2, except for linguistic modernization.

The provision in section 722 (1) of the Criminal Code. 1, no. 2, is not included in the bill,

legislation no longer contains rules that make public prosecution conditional on a request for prosecution from a public authority.

To section 721

The provision brings together the rules in sections 723 and 749 that relate to

the prosecution's right to abandon prosecution in cases where

Charges have been brought.

According to subsection. 1(1), the prosecution in a case may be abandoned in whole or in part, if the charge has proven to be unfounded, if the intended offence is not is a criminal offence, or if charges have been brought against a person who has obviously not committed a criminal offence. The provision corresponds to the current section 749(1). 1, 2. pt., in fine.

Paragraph 1, nur. 2, covers cases where certain evidence of the accused's guilt, but where it is considered unlikely that

The case can be carried out for conviction, for example. due to too weak evidence, or because the accused is protected by extraterritoriality.

Subsection 1(3) corresponds to the current rule in section 723(3). 3, if reprimand for resource reasons, except that the provision

does not include dismissal of charges. The provision on access to

Dropping of charges in these cases has been inserted in section 722(1) of the bill. 1, no. 5 .

(2) contains rules on the power to abandon prosecution in

in paragraph 1, 1, no. 1-3, mentioned cases. The right to abandon prosecution in the

cases where the charge has proven to be unfounded are as in the case of

right assigned to the Chief of Police and includes, as before, both charges in

cases where the Chief of Police has the power to prosecute, and cases where

The power to prosecute is vested in the Public Prosecutor. In other cases

the right to abandon prosecution shall be the responsibility of the prosecuting authority,

unless the Minister of Justice decides otherwise.

The provision corresponds to the current rule in section 749(1). 1, 3. Pkt.

By the Ministry of Justice's proposal for restructuring Af the power of prosecution between the police chiefs and the public prosecutor; the police chiefs' power to prosecute is significantly expanded, cf. cf. section 719 of the bill. Furthermore, the formulation of the rule

on the abandonment of prosecution, that the Chief of Police will be able to abandon prosecution after

Stk. 1, no. 3, which corresponds to the current section 723(1). 3, in all cases,

where the Chief of Police has the power to prosecute, and not only in the cases

mentioned in the current section 721(1). 1, no. 4,

Against this background, it is proposed that the Minister of Justice or the The Director of Public Prosecutions shall, if necessary, have the right to: lay down provisions that entail a change in the distribution of the power to decide on the dismissal of prosecution under the Stk. 1, no. 2 and no. 3.

Detailed guidelines for access may thus be laid down for prosecution and for prior submission to the authority as at the Ministry of Justice's

Circular letter of 29. June 1984 and 16. November 1987.

To section 722

The provision concerns the prosecution service's right to notify dismissal of charges, i.e. the prosecution's refusal to bring charges in situations in which conviction is likely or certain;

but where a conviction is considered unnecessary or inappropriate.

According to current law, it is generally the responsibility of the Director of Public Prosecutions

to announce that charges are dropped in public prosecutorial cases, cf. Section 723(1) 2,

whereupon the Director of Public Prosecutions, taking into account particularly mitigating

circumstances can not be prosecuted if it can be done without harm

for any public interest. In case of doubt, the Director of Public Prosecutions must:

submit the case to the Minister of Justice for a decision, cf. Section 723(1) 3,

2. However, the Public Prosecutor may dismiss charges in

Public Prosecutor's Cases in the cases referred to in Section 723(1) 1, no. 1-5, and pcs. 3, mentioned

Cases .

The Chief of Police may in the provisions of section 723 (1) of the Constitution. 1, no. 1-5, and pcs. 3, mentioned

cases in which charges are dropped in the cases that are reprimanded by the the police chiefs pursuant to section 721(1) 1, no. 4, cf. Section 723(1) 4. If The background for the Chief of Police's wish to drop charges is that there are particularly mitigating circumstances, the case must

submitted to the Public Prosecutor, cf. Section 723(1) 4, 2. Pkt.

In other cases that are reprimanded by the Chief of Police, the legal basis for

Dropping charges somewhat unclear. This is stated in section 749(1) of the Administration of Justice Act.

1, 3. Paragraph that the right to decide to recommend

The prosecution is the responsibility of the Chief of Police. It is not explicitly specified in the Administration of Justice Act, in which cases the Chief of Police may

dismissal of charges, but this is assumed in theory, cf. Koktvedgaard and Gammeltoft-Hansen, Textbook in Criminal Procedure, page 103, at

The Chief of Police must follow the basic principles that apply to the prosecution service in general. In addition, the police chiefs are assumed to have some right to drop the charges in police cases where the offence is trivial. Such cases are to a certain extent settled with a warning from the Chief of Police.

In paragraphs of the bill. 1 lists the cases in which dismissal of charges will most often be considered.

The provision in subsection. 1, no. 1 is new and is proposed to be inserted in order to create an explicit legal basis for the practice of dismissing charges in cases concerning petty misdemeanours.

It is required that the maximum penalty for the offence is limited to a fine and, in addition, that the offence is of low punitiveness. Covered by no. 1 are thus the cases generally considered as less punishable, including some of the matters which, according to established practice, are decided by the Chief of Police with a warning, e.g. minor shoplifting.

In addition, the provision includes fines which, due to the objective or subjective circumstances of the specific case, must be regarded as less punishable in relation to similar offences. As an example, cases can be mentioned where persons who are considered to be covered by section 16 or section 69(1) of the Danish Criminal Code. 1, commits insignificant violations of the Road Traffic Act that cannot »bear« a further prosecution The Bill's paragraph. 1, no. 2-4 and no. 6, corresponds with linguistic changes .

to the current rules in section 723(1). 1, no. 1-4. The provision in subsection 1, no. 5, is identical to the current provision in section 723(1). 3, except that the right to give up prosecution in these cases is stated in section 721(1) of the bill. 1, no. 3. It should be noted that paragraph 1 of the proposal. 1(5) also provides for the possibility of dropping charges where this must be considered to be of no significance for the determination of the sentence, as is done in practice in order to obtain a case on, for example, a criminal offence. 30 burglaries, two of which are denied, decided in accordance with section 925 of the Administration of Justice Act on confession cases.

The provision in subsection. 1(7) corresponds to the current rule in section 723(1). 1, no. 5, however, with the amendment that the Director of Public Prosecutions is also given the right to lay down general provisions as a legal basis for dropping charges in cases other than those in subsection 5. 1, no. 1-6, indicated. The rule is intended to supplement the provision in subsection. 1, no. 1, as this only allows for charges to be dropped if the maximum penalty is not higher than a fine. However, there is a need for the police chiefs in certain cases where the maximum sentence includes a custodial sentence to be able to drop charges without being referred to the public prosecutor. This applies, for example, to the use of the Constitution. for minor violations of the Act on Euphoriant Substances, which carries a maximum penalty of a fine, fine or imprisonment for up to 2 years.

Paragraph 1 of the proposal. 2, according to which an indictment may be dropped due to special mitigating circumstances or other special circumstances, and prosecution cannot be considered necessary in the public interest, replaces the current section 723(2). 2, and must be seen in conjunction with the jurisdiction provision in subsection 2. 3. It is assumed that charges may be dropped to the same extent as before pursuant to section 723(1). 2. Regarding practice, please refer to the Annual Reports of the Prosecution Service. (3) concerns the competence to drop charges. The competence lies in the subsection 1, no. 1-7, the prosecuting authority, i.e. the Chief of Police or the Public Prosecutor, cf. cf. section 719 of the bill. The rule means that the Chief of Police's right to dismiss charges is clarified in relation to the applicable rules in the Administration of Justice Act. The general right to dismiss charges that has hitherto been granted to the Director of Public Prosecutions, cf. Section 723(1) 2, is assigned to the nearest superior prosecutor's office. In practice, this will mean that the public prosecutors will be given the authority to decide the vast majority of cases concerning dismissal of charges due to particularly mitigating circumstances.

To section

723 The provision replaces the current section 723a on the stipulation of conditions for dismissal of charges.

The provision in subsection. 1 corresponds in its content to the current section 723a(a). 1 and 2. It is not, as is currently stated in the text of the Act, that payment of compensation can be stipulated as a condition for a dismissal of charges, as this is stated in section 57(1) of the Danish Criminal Code. 1, on the determination of conditions for a suspended sentence.

(2) corresponds to the current section 723a(a). 3, 1. Pkt.

In subsections. 3 is inserted as a new provision that the conditions are by the authority that has the right to drop the charge. This is merely a clarification of the applicable rules. The conditions laid down by the public prosecutor's office must, as before, be approved by the court.

(4) corresponds to the current section 723a(a). 4.

To section

724 The provision replaces the current rules in section 749(1). 2 and 3, on notification in the event of a failure to prosecute and on reversal of decisions on non-prosecution.

The provision in subsection. 1, 1. Paragraph 1 establishes a general duty to inform the accused and others who can be assumed to have a reasonable interest in informing about a decision to drop prosecution. The duty to notify applies in relation to parties to the case, i.e. persons who have a substantial, direct, individual and legal interest in the outcome of a case. The injured party should be informed, regardless of whether he or she is a party.

In relation to the current section 749(1). 2, does not prescribe a general obligation to inform the notifier, as in some cases the notifier has no reasonable interest in doing so. This applies, for example, where a report of a traffic accident has been submitted by a random passer-by who is not involved in the accident. In addition, the question of notification must be decided according to the specific circumstances of the case.

Paragraphs 1, 2. Paragraph 1 prescribes a duty to inform the accused of decisions to drop charges. In cases where conditions are laid down for the dropping of charges, Section 723 of the bill requires that the accused makes an unreserved confession in court and that the court approves the terms of the dismissal of charges. In these cases, the accused will be notified at the hearing held regarding the dismissal of charges. In other cases, notification of the dropping of charges must be given by written notice to the accused.

Paragraphs 1, 3. Paragraph 10 contains a reference to the rules on appeals in Chapter 10, which is proposed to be formulated so that a two-instance principle and a time limit of 4 weeks apply to appeals against decisions made by the Public Prosecutor's Office, cf. No. 2, Section 98, para. 4, Section 99, para. 3, and section 101, para. 2 and the comments thereon. It follows from section 25(1) of the Public Administration Act. 1, that decisions that can be appealed are made when they are notified in writing must be accompanied by a guide on the right of appeal with an indication of the appeal body and information on the procedure for submitting an appeal, including any time limit. However, this does not apply if the decision is in full favour of the party in question. However, it is assumed that, as before, the accused is notified of the supreme prosecution service's right to reverse a decision to drop charges, cf. The current rule in section 749(1) 3, 1. and section 724 (1) of the bill. 2.

A complaint against a notified drop of charges is submitted, as well as a complaint against the abandonment of charges in accordance with the rules in Chapter 10 of the Administration of Justice Act, cf. Stk. 1, 4. Pkt.

As stated in 4. On the other hand, the accused may appeal against the dismissal of charges. It follows that there is no general right for others to appeal a decision to drop charges. For the same reason and in

In accordance with the procedure used today in the announcement that the police would like to get in touch with the motorist in question's practice, and which has not given rise to criticism, there has been a request for a new agreement after 2. Pkt. no obligation for the public prosecutor's office to inform others than charged in connection with the dismissal of charges.

The reason for this is that the accused is considered to be guilty of the intended offence. This form of decision may thus be in relation to the other parties to the case and other parties involved, with a judgment where there is no general obligation to notification of the decision.

However, it may still be possible to make a specific assessment in the individual case Notification is given, for example. to a person who has a claim for compensation in the offence and which is likely to be of interest to initiate proceedings on this matter as soon as possible in the form of civil procedure. Similarly, for example, it will be possible to require the number of people who have been killed in the process. be natural to inform a insurance company that a case has been closed with a dismissal of charges if This is of significant importance for the insurance company's further consideration of a question of compensation arising from a offence.

In addition, the public prosecutor's office must inform parties to whom the accused has undertaken to pay according to the terms of a dismissal of charges compensation.

Parties and others may also receive information about the outcome of a criminal case, including a decision to drop charges, in accordance with with the rules in the Public Administration Act on the right to notify information on criminal proceedings.

A complaint is lodged against a dismissal of charges by a person who is not entitled to appeal (i.e. by persons other than the accused), there is no obligation for the superior authority to consider the merits of the complaint. It superior authority may, however, use its general to take up a case and in this connection issue orders, etc., regarding the case. Thus, the prosecution service can also on the basis of a complaint, order the reversal of a dismissal of charges in compliance with the provision of the Section 724(1) of the Bill. 2.

The provision in subsection. 2 on the right to reverse a decision to drop prosecution, or Pkt. It is specified in the proposal that the provision applies to both dropping of charges and dropping of charges, including dropping of charges on conditions, cf. cf. section 723 of the bill. For reopening of charges However, as a result of a breach of the terms and conditions, the rule in the Bill's Section 723(1) 4, which corresponds to the current section 723a(1). 4.

The two-month time limit stipulated in the provision shall apply in cases where: where charges have been brought. However, it must be assumed that the time limit also applies where no formal charges have been brought, but where a person has justifiably considered himself to be charged, e.g. because it person has been questioned 'with the rights of an accused', as is the time limit for as is probably already the law in force today, is complied with in cases where a non-charged person has been mistakenly notified person that the conversion can only take place before the expiry of 2 months.

A reversal in favour of the accused must be assumed to be able to find to a wider extent, i.e. after the expiry of the two-month time limit. Shell more lenient conditions are laid down for a conditional indictment, the court must so that the amended terms and conditions must be presented to the right to approval. If the public prosecutor's office decides decision to drop the conditions for a conditional dismissal of charges However, the court's involvement is not required.

It has so far been assumed that the two-month deadline for reversal of the subordinate prosecutor's decision did not apply if: The decision not to prosecute had not been taken by the competent authority. By the judgment in Ugeskrift for Retsvæsen 1989, p. 116, the Supreme Court dismissed a case in which Charge of violation of the Road Traffic Act after it was reported in the press

- not to bring charges in connection with the traffic offence;
- but to clarify some issues with regard to insurance.
The search was made by the police assistant on duty on January 29, 1987. Charges were brought by the Chief of Police's indictment of 23. April 1987. During the proceedings, it was requested that disqualification of the right to drive.    The Supreme Court stated, at The prosecution's handling of the case had been suitable for to create a legitimate expectation on the part of the defendant that there is no would be brought against him, and the prosecution was considered to be thereby prevented himself from bringing charges for the traffic offence.

It cannot be inferred from the judgment whether the court would have reached a different result if the indictment had been brought less than 2 months after press notice, possibly following a decision by the the public prosecutor.

To section 725

The provision corresponds to the rules in section 719(1). 2 and 3, on private prosecution and application for public prosecution. The provision is to be seen in connection with the rules in section 96 of the Danish Criminal Code, which stipulates, among other things, a 6-month time limit for the right to bring private criminal proceedings, and to make a request for public reprimand.

To section 726

The provision corresponds to the current provisions of section 726(1). 2 and 3, on private criminal cases. The reference in the current section 726, Stk. 3, to section 725 (1) of the Constitution. 1, according to which private criminal cases are dealt with according to The rules on civil procedure have been omitted, as the rules on procedure in the opinion of the Ministry of Justice at home in chapter 65 on the reprimand, cf. The comments below on the no. 33 and 34. Furthermore, the provision in subsection (1) of the Constitution is 1 omitted as unnecessary.

To section 727

The content of the provision corresponds to the current rules in section 725. Stk. 2-4. However, the provisions have been reworded so that the jurisdiction which, under current law, is the responsibility of the public prosecutor to to provide for public prosecution if public interest requires, according to the proposal, not to be assigned to a specific authority within the prosecution service. The competence will henceforth as As a starting point, the Chief of Police, cf. Section 719(1) of the Bill. 1.

The current rule in section 725(1) 1, is proposed to be placed in Chapter 88 of the Administration of Justice Act, cf. The comments below on no. 33 and 34.

To section 728

The provision corresponds to the current section 728, in that it is clarified that the provision includes the abandonment of further prosecution. As regards the provision in 2. Pkt. on the acquittal, when the trial has begun, it is presumed that: that the provision in section 35(1) of the Administration of Justice Act. 5, on the fact that judgments be entered in the court record in full, does not prevent the acquittal - as it appears in practice - after the circumstances may instead be entered in the court record.

To no. 7.
The provision in section 731 (1) of the Criminal Code. 1(e) on mandatory appointment of defence counsel upon application is proposed to be formulated in the same way as in no. 4. The amendment is a consequence of the proposal for the delimitation between cases to be dealt with under Chapter 80 and 81.

To no. 8.
As a result of the proposal to consolidate the rules on the abandonment of prosecution and charges against the accused in sections 721-724 of the bill, relate to

# PENALTY

SANCTIONS

ON
THE

# COURSE 2

LASSE LUND MADSEN
JENS RØN

Djøf Publishing House

Lasse Lund Misken ng lens Rat - 9788771986952

56 7 lublionkak 02/ 4/1025 04:58:05PM by lunken@law.l.dk

# CRIMINAL LAW 2

## The sanctions

14ss Lund Medstor Jens Ren -9788771986952 57

Download / Jun,thibli tak # .: 02/14/2025 04:58:05PM by lundmadsen @@law.au.dk

via Lasse Madsen

# Lasse Lund Madsen & Jens Røn

On the basis of Gorm Toftegaard Nielsen's

# CRIMINAL LAW 2

## The sanctions

5th Edition



Djøf Publishing House

2024

Lm Lund Madsen on Jons Ren 97xx771986952

58  Download fra Jurabibliotek.dk. 02/11/2025 01:50:05PM by lmlmadsen@law.au.dk
en Lasse Madsen

1. The penalties

Unlike before6, the court will always impose the prison sentence in a suspended sentence. On the face of it, it just does not have to be enforced. A suspended sentence thus means that the convicted person only has to go to prison if he violates the terms of the suspended sentence, typically if he commits a crime again. Another option is to impose community service. It is formally a suspended sentence, where the central condition is that the convicted person performs community service. This form of punishment was originally introduced to replace certain unconditional prison sentences. It is thus a form of punishment that is more severe than the other suspended sentences. Between the unconditional and the suspended prison sentence there is the possibility of imposing a combination sentence where only part of the sentence imposed must be served.

In addition to the penalties mentioned here, section 70 contains the legal basis for imposing preventive detention on certain particularly dangerous persons, which is an indefinite confinement. The Criminal Code does not formally consider this sanction to be a punishment, but it certainly does not correspond to reality. Section 1 of the Enforcement of Sentences Act also mentions preventive detention in line with the above-mentioned penalties.7 Similarly, the juvenile sanction referred to in section 74a, which is also not included in the Act, may entail up to 12 months' confinement in a secured section of a residential institution. This sanction is probably very similar to what is referred to elsewhere as juvenile imprisonment.8 In addition to the punitive sanctions mentioned

here, charges are dropped with conditions corresponding to suspended sentences or with the conclusion of a youth contract. As regards the latter, the legal basis for this is found in section 722(1) of the Administration of Justice Act. 1, no. 2 and 3, cf. Section 723(1) 1, and the Social Services Act § 52.9 This is a specially developed punitive reaction towards young people

---

6. By Law no. 152 of 18.2.2015 (with entry into force as of 1.5.2015) was repealed.
   the possibility that the court could choose to impose a suspended sentence without imprisonment, which until then was considered the mildest form of suspended sentence.

7. Section 15 of the Norwegian Criminal Code and the proposal for a new Criminal Code mention preventive detention among the penalties, cf. NOU

8. 2002:4 p. 477 Cf. Jørn Vestergaard: The Special Youth Sanction in TFK 2003.3 ff.
   and same: Sanctions, p. 130 et seq. On juvenile imprisonment, see Vagn Greve: Straffne, p. 175 f.

9. See the Announcement of the Director of Public Prosecutions, section: The treatment of cases against young offenders, pt. 5.2.6.

13

1. The penalties

offenders, which must naturally be regarded as a criminal law response, regardless of the fact that it must be considered more lenient than a suspended sentence with similar conditions.10 In practice, this form of sanction is rarely used today. In 2007, 76 cases were decided in this way nationwide alone. In 2015, the number had fallen to 15, in 2021 to 2 and finally, according to Statistics Denmark, in 2022, no charges were dropped at all with the terms of a youth contract. The development may be related to a generally stricter view of punishment, also when it comes to young offenders. Since 2019, when the Juvenile Crime Board was enacted, the development has undoubtedly been related to this.11 With the proviso that a table is never completely accurate, but only provides an overview of the main trends, the penalties can be set up on the following scale, with the most severe punishment at the top.

1. Unconditional imprisonment served in a closed prison (or detention centre).

2. Custody.

3. Unconditional imprisonment served in an open prison.

4. Unconditional imprisonment served at home with electronic foot-chain.

5. Youth sanction.

6. Combination sentence.

7. Suspended sentence with conditions of community service.

8. Suspended sentence with sentence and other special conditions.

9. Suspended sentence with sentence but without special conditions.

10. Dismissal of charges with conditions according to rpl. § 723.

11. Fine.

12. Dismissal of charges without conditions pursuant to rpl. § 722.

The Criminal Code contains the basic rules on these sanctions (except for dismissal of charges, which are regulated by Sections 722 and 723 of the Code of Civil Procedure). Until Act no. 432 of 31.5.2000 on enforcement

10. A dismissal of charges without conditions shall not be entered on the criminal record. Similarly, with regard to dismissal of charges with conditions of youth contract, whereas other dismissals of charges with conditions are included up to 2 years from the date of approval of the dismissal of charges in court, cf. hereby executive order on the processing of personal data in the Central Criminal Register (Kriminalregisteret), bkg. 1860 of 23.9.2021, § 11 para. 3, no. 1 and pcs. 4, no. 1.

11. Conditions for complying with a decision from the Youth Crime Board are discussed in more detail below under suspended sentences.

14

Have Lund Madsen and Jens

1. The penalties

of punishment, etc., the Criminal Code contained the rules on the various penalties, on their determination in the individual case, on parole and individual rules on the sentence. In addition, the sentence was regulated by a large number of administrative regulations. For more than a hundred years, it has been considered essential to regulate the course of criminal proceedings during the investigation and during the main hearing, while the execution of the sentence has not had the corresponding interest of the legislator, although this phase is of course of great importance for those who are convicted. Criminal law and criminal procedure in the past have had an understandable perception that forces had to be joined to ensure that innocent people were not convicted. This line of thinking is linked to the emphasis on the fact that the principle of legality in criminal law relates in particular to the question of guilt. The legal certainty for the convicted (and thus guilty) was less important. Now, as mentioned, the execution of sentences is regulated by a special law that is both detailed and quite extensive, as well as being supplemented by a large number of executive orders and circulars. It is thus a comprehensive set of rules that will not be discussed in detail in this presentation. Only a few rules that are essential for the understanding of the above-mentioned penalties will be discussed. The interested reader is referred to Hans Jørgen Engbo: Straffuldfuldelsesret - Fængsel og forvaring, 2022 and Jakob Schiøler and Ane Dragsted: Straffuldfuldelsesloven - Med kommentarer, 2nd ed., 2017.

Systematics

In addition, the presentation will be limited to a review of the different penalties and other sanctions, how these are determined in each case and for parole, which are still regulated in the Criminal Code, although it could be argued that parole relates to the execution of the sentence imposed. When parole is nevertheless considered here, it is because the institute is of significant importance for the understanding of sentencing. The following treatment does not follow the above listing. It is e.g. It is not appropriate to deal with combination sentences before suspended sentences, because combination sentences are precisely a combination of unconditional and conditional imprisonment. Also in other respects, the systematics differ from the arrangement.

15

Lisse Lund
Down                                by lundmadsen @law.an.ox

U.2016.1236H
TfK2016.336/2

## The prosecution had issued a binding limitation of prosecution in a case of drug crime.

Administration of Justice 322.9.

+ During the preparation of a criminal case before the district court, the question arose as to whether the prosecution had given a binding undertaking to limit prosecution against T1 and T2 in a case of violation of section 191 of the Danish Criminal Code. At the District Court's consideration of the matter, the prosecution service and the defendants' defence counsel had agreed that the court's decision could be based on the fact that the prosecution had made a clear statement to T1 and T2 that the prosecution would drop one of the charges against each of the defendants if the person in question could confess to the other count. It was agreed that this statement had been communicated to T1 and T2, who had accepted the statement, which had been communicated to the public prosecutor. It was also agreed that the prosecution's statements had been made by an employee who had a mandate to do so. The District Court found that in relation to both defendants 1237, there was a binding limitation on prosecution. After the specific course of the case for each of

the defendants, the High Court found that this was only the case in relation to T2. The Supreme Court agreed with the District Court's assessment that, in the circumstances set out in the District Court's decision, which the prosecution had not subsequently departed from, there was a binding limitation of prosecution in relation to both T1 and T2 with the content stated in the District Court's decision. On this basis, the Supreme Court upheld the district court's decision.[1]

H.K. 22. December 2015 in case 213/2015

The Public Prosecutor's Office

courage
TI (adv. Kåre Pihlmann, Cph.) and T2 (adv.

Jane
Ranum, Cph.). And others.

The District Court

The Copenhagen City Court's ruling 1. July 2015, SS 312583/2015

- - -

The prosecution has claimed that there is no binding limitation of prosecution in relation to T1 or T2. T1 has requested that there be a binding limitation on prosecution that the prosecution will drop count 2 if he can confess to count 1 in respect of 2 kg of cocaine. T2 has requested that there be a binding limitation on prosecution that the prosecution will drop count 1 if he can confess to count 2 in respect of 1.2 kg of cocaine. Presentation of the case

At an arrest operation on 3. December 2014, five people, including T1 and T2, were arrested for violation of section 191 of the Danish Criminal Code. The following day, the persons in question were produced in a preliminary hearing at the Copenhagen City Court, where they were remanded in custody. The persons concerned remain in custody.

Charges have been brought against the detainees for violation of section 191 of the Danish Penal Code at various times in the period from 7. July 2014 to 3. December 2014, partly jointly and by mutual prior agreement, understanding and acceptance, at several different addresses, including in the Copenhagen area, in numerous cases, to a large number of persons for a considerable fee, having transferred approx. 2.5 kg of cocaine and for having been in possession of an additional approx. 1.2 kg of cocaine for onward transfer.

On 22. January 2015, TI's defense attorney, lawyer Kåre Pihlmann, wrote the following in an email to the prosecution:

»Do you have 2 minutes for a discussion of possibly. possibilities for conciliation in the gen?"

Later that day, prosecutor Henrik Ørsted replied to the defense that he would call "shortly."

On 25. In February 2015, defence lawyer Kåre Pihlmann wrote to Henrik Ørsted and asked if there was a request for a hearing on the way because his client was starting to become "a little impatient and insecure". Henrik Ørsted replied, among other things, that he would call later in the day. By e-mail of 10. In March 2015, defense attorney Kåre Pihlmann wrote the following to Henrik Ørsted:

"Since I have discussed the "settlement options" with my client as agreed and subsequently informed you of his acceptance of them, your lack of answers puts me in a very difficult
situation: My client may feel that he has been handed over and "sold", just as I can appear to him to be unserious, by offering him something that I - after he has put his head on the block - cannot deliver. It is therefore imperative that I hear from you today: specifically, I need clarification as to when a request for a hearing is available, cf. your comments on a penalty claim of »not under 6 years«.

Henrik Ørsted replied that he would call later that day. It
On 11 March 2015, Henrik Ørsted wrote the following in an email to the defence counsel Kåre Pihlmann:

»I understood you to mean that there will be a voluntary extension of the »Face«?

By the way, I'm going to a meeting with Poul Gade at 10.00 a.m., I'll inform you later today." On the
same day, T2's defense attorney, lawyer Jane Ranum, wrote the following in an email to Henrik Ørsted:

»I have spoken to T2, who, according to our talk today, agrees to a confession case regarding the case. storage of the approx. 1.2 kg, which was found at the residence.

You can therefore send the request for a hearing as soon as possible. I have noted that the prosecution's punishment claim will be imprisonment for max. 5 years.

The question then arises as to whether the control of letters and visits can now be lifted completely?"

By e-mail of 12. In March 2015, defence counsel Jane Ranum wrote to Henrik Ørsted that her client was moving for the lifting of the visitation control, "as the case is being presented as a confession case". The following day, Henrik Ørsted replied to the defense as follows: 1238

---

1 Hans Gammeltoft-Hansen: Straffretspleje I (1998), p. 198 et seq., Eva Smith et al.: Straffproces, 2nd ed. (2008), p. 160 et seq., the Minister of Justice's reply of 30. June 2008 by the Parliamentary Committee on Legal Affairs question no. 785 (Ordinary part) of 28. May 2008 and Peter Rørdam in Juristen 1974, p. 97 ff.

Copyright © 2022 Karnov Group Denmark A/S

"If it is to be lifted before sentencing, then he must come for questioning, otherwise it can be lifted when he is convicted, which will probably happen

before too

long." Also on 13. In March 2015, defence counsel Jane Ranum wrote to Henrik Ørsted and requested that the interrogation be carried out:

"It will not be an investigative hearing, but only a confirmation that he was the one who stored the cocaine in the apartment.'

The interrogation was then conducted on 20 November. March 2015, during which T2 admitted possession of the quantity of cocaine was found during the search on 3 April. December 2014 at - - - 157 - - -. The realization was similar to an earlier one, on 4. December 2014, to Police report has been submitted.

On 27. March 2015, Henrik Ørsted sent an email to the defence counsel Kåre Pihlmann containing the charges against T1 »which will appear of the request for a hearing'. The charges related to the sale of in relation to 1 2.5 kg of cocaine in no less than 3,500 cases and in relation to 2 possessions of cocaine. 1.2 kg of cocaine. On 30. March 2015, defense attorney Kåre asked Pihlmann Henrik Ørsted, whether the request for a hearing had been sent to

On 9. April 2015, Henrik Ørsted sent a copy of a request for a hearing. A call containing the mentioned charges to defence counsel Kåre Pihlmann. On the same day, the defense attorney wrote the following to the Copenhagen City Court:

'In the above-mentioned case, the detention of my client shall expire in day; The hearing will be held at 11:45 a.m.

In this connection, I would like to inform you that my client has been informed that I have not been able to do so.

the circumstances agree to the voluntary extension of the period of custody imprisonment for a further 4 weeks without presentation in the Court.

The reason for this is that this morning I have received a phone call from The prosecution service, which stated that a hearing will be filed today application. I am attaching a copy of the request for the hearing. I request Therefore, please request that a schedule be made as soon as possible, ... «

By e-mail of 10. April 2015, Henrik Ørsted wrote the following to Defense attorney Jane Ranum:

»In relation to the following passage in your email of 11. March 2015: »I have noted that the prosecution's penalty claim will be Prison for max. 5 years.', I note that the prosecution has not given any binding answer in relation to the allegations of criminal liability. but that what was discussed by telephone was that a criminal claim in the a case concerning violation of section 191 of the Danish Criminal Code regarding possession of 1.2 kg. cocaine for onward transfer; will be in the region of 5 years in prison, which seems to be in accordance with the in the accordance with case law. It should be noted that the right is exempt with regard to the sentencing.'

Defense attorney Jane Ranum replied the following the same day:

»Of course.

Is an application for a hearing in the mail?' On 15. April 2015, the Copenhagen City Court informed defence lawyer Kåre Pihlmann's office that no request for a hearing had been received from the prosecution. On the same day, the defense attorney wrote the following to

Henrik Ørsted and prosecutor Ulrich Thomsen:

"The point of the voluntary extension and our talk last week was, of course, that the case could be quickly scheduled, so my nose feels a bit elongated ... « The

following day, defence lawyer Kåre Pihlmann also wrote the following to the head of the law office, Kathrine Krejbjerg:

"For a long time, I have discussed the evidential status of the case with Henrik Ørsted: The outcome of these discussions was that between The prosecution and the defence agreed that there is evidence coverage for my client's sake. about. 2 kg of cocaine. Ørsted stated that his boss, Poul Gade, agreed with this evidentiary assessment.

I informed my client of this, who then agreed to the advancement of the case as a confession case regarding. 2 kg of cocaine, which I immediately informed the prosecution of. I have subsequently received the attached request for a hearing, stating that the quantity exceeding 2 kg will be cut off at the hearing, but that the public prosecutor will in principle For these reasons, they wish to await the confession in court. Also I have informed my client of this.

I have submitted the request for a hearing to the City Court of Copenhagen and, requested that a hearing be scheduled, assuming that the case would be equally was submitted by the prosecution.

I have been in telephone contact with the prosecution service by Henrik Ørsted: Ørsted stated that the prosecution cannot comply with the above agreement, which is why the case must now run over 10- 15 court days with indictment, cf. charge. I understood at Ørsted, that this decision had been made by his superiors .

This puts me in a very difficult situation in relation to my client, who will of course feel extradited, just as he - very close to fortunately - can question my competence, as his Recognition is based on my counseling of him.

Over the years, I have continuously made agreements similar to the above. end up with the prosecution and have never before experienced that The prosecution has reneged on its word, as the precondition for discussions of the nature in question are entirely reciprocal trust between the prosecutor [and] the defence counsel.'

Kathrine Krejbjerg replied to defense attorney Kåre Pihlmann later that day:

"Let me begin by expressing my regret and by confirming Henrik Ørsted's information that the decision to dismiss the case was not can be promoted as a

1239 )

Confession case, as previously discussed, has been made by the Chief Prosecutor in Copenhagen in consultation with me. At the same time, let me also clarify, that the regrettable course of events is not due to prosecutor Henrik Ørsted, as he has acted within the manda[t] he had been given by the former Head of Legal Services'

In relation to the further progress of the matter, we are of course prepared to: that we inform the court that the submitted request for a hearing is due to a regrettable misunderstanding based solely on the prosecution internal conditions, without at the same time mentioning that Your client was prepared to admit parts of the charge. When the case thus to be presented during the main hearing, we will of course also be prepared to send the request for a hearing not addressed at all, unless you expressly wish to so that the court is not in any way made aware that your client has been prepared to admit parts of the charge.' Later that day, defense attorney Jane Ranum wrote the following to, among others,

Kathrine Krejbjerg                     :

»As defense attorney for T2, I received a call today from prosecutor Henrik Ørsted that the Prosecution Service has decided to withdraw from the agreement that the case for my client can be decided as a confession case with regard to the case. possession of 1.2 kg of cocaine at the residence. In my opinion, the prosecution is precluded from departing

this Agreement.

In relation to my client, there is a binding limitation on prosecution, and the agreement to advance the case of 1.2 kg of cocaine is an expression of for a customary and natural evidentiary cut of the case in relationship with my client, which is limited in terms of evidence in Relationship to the bidding activity.

I refer to attached email correspondence between prosecutors Henrik Ørsted and I.

As can be seen, I discussed the case with Henrik Ørsted on 11/32015, who on behalf of the Prosecution Service accepted that the case

UfR ONLINE

U.2016.1236H - TfK2016.336/2H

could be promoted as stated. I confirmed the agreement with my email of 11/3-2015.

It is stated in prosecutor Henrik Ørsted's email to me dated 10/4-2015, that "The prosecution has not indicated anything binding answers in relation to the allegation of punishment', whereby the the agreement to advance the 1.2 kg case, on the other hand, is a binding commitments to my client and me. The email was sent from an ankle who can be assumed to have a mandate to dispose of the Prosecution Authority. on behalf of the people.

The fact that the agreement is binding on the Prosecution Service is also supported by:

that my client, subject to the agreement, agreed to the to admit possession, which was done by police interrogation on 20/3-2015 in Blegdamsvejens Prison, i.e. after the conclusion of the agreement.

Walk.

Finally, I refer to the fact that Senior Prosecutor Ulrich Thomsen telefo-NIK again confirmed the agreement by the phone call on Monday the 13/4-2015 in the afternoon. I was then visiting Blegdamsvejen's prison, where my client was very frustrated that the hearing had not been fermentation had not yet been received. I therefore called under visit to the Prosecution Service, where I in Henrik Ørsted's Senior prosecutor Ulrich Thomsen was absent. At my request, Ulrich Thomsen once again confirmed the agreement, which my client overheard and adjusted.

Against this background, I ask the Public Prosecutor's Office to confirm that:
Request for a hearing concerning the possession of 1.2 kg of cocaine The address will be sent as agreed. Then Henrik Ørsted accuses and Senior Prosecutor Ulrich Thomsen in relation to my client and me have obviously acted within their authority, the Prosecution Authority must The company bears the risk if the mandate has not been secured internally. I have been informed that the agreement was also approved by the then Head of the Legal Services Poul Gade.

The prosecution cannot first »lure« my client into confessing by accepting a given premise in order to subsequently abandon prerequisite.«

By e-mail of 17. April 2015, defense attorney Kåre Pihlmann wrote the following: end to Kathrine Krejbjerg:

"My criticism concerns the latest decision, which means that The prosecution runs away from its word and thus both the accused and the defense attorney in a completely untenable situation.

Based on your email, I have noted that there is agreement that The previously agreed regarding. an amount of approx. 2 kg of cocaine was inside mandate set out by the Head of the Legal Service, which is why in all circumstances is a binding limitation on prosecution, which I intend to invoke."

On 23. April 2015, Kathrine Krejbjerg replied to defense attorney Kåre Pihlmann and Jane Ranum the following:

»In continuation of previous email correspondence of 16. and 17. April 2015 and the subsequent telephone discussion with Jane Ranum Can I after the meeting today at the Public Prosecutor's Office in Copenhagen state that the case is being conducted as a magistrate's case, as it is the prosecution's view that there is no binding presumption That is why we are not going to be able to do anything

The indictment will be sent as soon as possible.

In conclusion, I must once again regret the course of events."

Later that day, defence counsel Jane Ranum wrote the following to Kathrine Krejbjerg, among others, to Kathrine Krejbjerg: »I
have received your email with regret, according to which the Prosecutor The authority deviates from the clear agreement to promote my client's case as a confession case with regard to storage of the approx. 1.2 kg of cocaine residence.

1240I

At the main hearing, I would argue that there is a binding prosecution limitation by the Prosecution Service [ ... ]

It will be argued, inter alia, that neither my client, nor the prosecutor. or I at the conclusion of the agreement on 11/3-15 were aware of the that my client had allegedly already made a statement to report on 4/12-14.

The interrogation reports of 4/12-14 and 20/3-15 are in terms of content identical, which supports the fact that at the time of the conclusion of the agreement there was no aware of a possibly. previous interrogation. The interrogation on 20/3-15 was thus effectively implemented on the condition that there was agreed on a confession case.'

**The Court's reasoning and decision**

At the preliminary hearing on 19 November, the Conservative Party was able to take part in the Labour Party. June 2015, the parties have agreed that the following may be taken into account in the court's decision: Movement:

During the proceedings against T1, the prosecution has with a clear indication that the prosecution would count 2 if the person in question can confess to count 1 in so far as concerns 2 kg, and that this statement - through his lawyer - has been notified to the person concerned who has accepted the declaration, which has been notified to the Public Prosecutor's Office.

During the proceedings against T1, the prosecution has with a clear indication that the prosecution would 1 if the person in question could confess to count 2 in so far as 1.2 kg, and that this statement - through his lawyer - has been notified to the person concerned who has accepted the declaration, which has been notified to the Public Prosecutor's Office. The court may also present defence counsel Jane Ranum's information on the basis of the contact with senior prosecutor Ulrich Thomsen.

It was also agreed that the court can assume that The prosecution's statements have been made by a co-worker who have had a mandate to do so.

After this, and after the documented e-mail correspondence, that the public prosecutor's office expressly and with binding effect has indicated that it will limit the reprimand in the T2 alleged extent, as the limitation of prosecution is, however, conditional on the acknowledgement of the persons concerned to the extent stated. T1 and T2 exist - at least after the expiry of the period for conversion - as a result of this have a legitimate expectation that the case will be able to be decided in accordingly. The limitation of prosecution has been undisputed by the competent authority and in the absence of information that the decision has been reversed in accordance with the Code of Civil Procedure. cf. section 724(1) of the Friends Act. 2.

to be determined

In relation to T1, there is a binding limitation on prosecution that that the prosecution will drop count 2 if he can confess count 1 in respect of 2 kg of cocaine

In relation to T2, there is a binding limitation on prosecution that: that the prosecution will drop count 1 if he can confess count 2 as regards 1.2 kg of cocaine.

The Eastern High Court's ruling of 18. August 2015, S-1855-15 (M. Lerche, Henrik Bitsch, Janni Christoffersen)
Closed doors

It is forbidden to publicly reproduce the name, position or place of residence or otherwise publish identity.

---

UfR ONLINE                                                                                    U.2016.1236H - TfK2016.336/2H

The prosecution service has appealed the decision of the City Court of Copenhagen, and the prosecution service has not converted the decision within the time limit for reversal.

1 July 2015, according to which there is a binding limitation of prosecution in relation to T1 stating that the prosecution will drop count 1 if he can confess to count 2 in respect of 2 kg of cocaine, and in relation to T2 there is a binding limitation on prosecution that the prosecution will drop count 1 if he can confess to facts

2 in respect of 1.2 kg of cocaine.

The prosecution has requested that it be decided that there is no binding limitation of prosecution in the case in relation to T1 and T2.

In support of this, the prosecution service argues, inter alia, that there have been informal discussions between the prosecution service and the defence counsel, and regardless of the fact that the defence counsel has made their clients aware of the discussions, this cannot lead to the

prosecution being bound by its oral statements.

It is further stated that during the discussions, the prosecution maintained the charges in both count 1 and count 2, which is evident from the report regarding the police interrogation of T2 on 20 April. March 2015 and of the request for a hearing of 9. April 2015. These conditions were observed for

clearly state that the prosecution did not intend to impose a binding prosecution limitation in the case, which must also be seen in light of the fact that the defendants have not given evidence to the police or only to a limited extent. Finally, it is stated that in the circumstances of the case, the prosecution does not know and how the defence .

counsel has disclosed the content of the discussions with the prosecution service; And the district court's ruling has not taken a position on when the binding limitation on prosecution has occurred, and thus when the deadline for reversal pursuant to section 724(1) of the Administration of Justice Act. 2, expires. 1241 Overall, the prosecution service is of the opinion that there are strict requirements as to when there is a binding limitation on prosecution according to the case-law, and the prosecution considers that the discussions that have taken place with the defence counsel about the progress of the case as

a

confession case have not been able to give the defendants a legitimate and worthy of protection expectation that the prosecution had prevented itself from bringing charges as it did.

Attorney Kåre Pihlmann, as appointed defence counsel for T1, has requested that the prosecution be confirmed, as the prosecution has

expressly and with binding effect limited the prosecution.

In support of this, it is stated, inter alia, that T1 has been informed of and has accepted the prosecution's clear indication that the prosecution would drop count 2 if he could confess to count 1 in respect of 2 kg of cocaine, and the prosecution has been informed

of his acceptance of this.

It is further argued that the prosecution's statement was made after the approval of the head of the law firm and not reversed by the public prosecutor within the 2-month time limit, which must in any case be counted no later than the date of the request for a hearing sent to the defence counsel on 9 April. April 2015, the sole purpose of which was to obtain an in-court confession of 2 kg of cocaine in accordance with the agreement with the Public Prosecutor's Office.

Attorney Jane Ranum, as appointed defence counsel for T2, has requested that the prosecution be confirmed, as the prosecution has expressly and with binding effect indicated that it will limit the prosecution against T2 to 1.2 kg of cocaine in count 2, provided that he confessed to

.this amount.

In support of this, it is stated, among other things, that it appears from the e-mail correspondence in the case that it was on 11. March 2015, that T2 was informed of the prosecution's statement, which is why any reversal period must also be counted from this date,

made the decision or made reservations about it.

It is also disputed that the police and the prosecution have had a strong focus on mentioning the existing charges during the process, as this has only been done as a standard introduction to the 1-minute police interrogation on 20 November. March 2015.

Finally, it is claimed that the Public Prosecutor's Office on several occasions both expressly and implicitly/indirectly confirmed that statement by its conduct after 11 September. March 2015, including by telephone conversation on 13

March 2015. April 2015.

After deliberation, the following was

The High Court

finds that the district court's decision concerns issues of significant importance for the

processing of the case, which is why section 968(1) of the Administration of Justice Act. 4, does

not prevent the appellant's admissibility. T2 By e-mail of 11. March 2015

from

the defence counsel, lawyer Jane Ranum, to the prosecution service it appears that on, on the basis of the defence counsel's discussion on the same day with the prosecution, T2 agrees to

A confession case with regard to the storage of 1.2 kg of cocaine found at the residence. T2 was then questioned by the Copenhagen Police on 20 April. March 2015 at 11.15-11.16, where, according to the police report, he admitted to having been in possession of the amount of cocaine that was found in connection with a search on 3 March 2015. December 2014 at the address - - - 157 - - -.

Thereafter, and in view of the subsequent e-mail of 10. April 2015 from the prosecution to the defence counsel, in which it is stated, among other things, that the prosecution has not indicated any binding answer in relation to the criminal claim, and that the prosecution service in a telephone conversation on 13. April 2015 with the defence counsel confirming the previous statement, it is accepted for the reasons stated by the District Court that there is a binding prosecution limitation in relation to T2 that the prosecution will drop count 1 if he can confess to count 2 in respect of 1.2 kg

cocaine.

TI

In an e-mail dated 27. March 2015 from the prosecution to the defence counsel, lawyer Kåre Pihlmann, was charged against T1 in count 1 for the sale of 2.5 kg of cocaine in no less than 3,500 cases in a specified period and in combination with several others and in count 2 for possession of 1.2 kg of cocaine in association with several others with a view to onward transfer.

The request for a hearing of 9. April 2015, which was sent to the defence counsel, contained a similar charge, and on 16. April 2015, the prosecution informed the defence that the case could not be brought forward as a confession case concerning a smaller

extent as .

previously discussed.

case.

In these circumstances, it is not found - regardless of the discussions that took place between the prosecution and the defence counsel - that T1 was given such a legitimate and worthy of protection expectation that the prosecution would limit the prosecution that the prosecution is precluded from bringing charges as was done by the indictment of .

19 May 2015. The fact that T1 has been aware of the discussions between the prosecution and the defence counsel, including the prosecution's oral statements in this connection, is not considered

to lead to a different result.

1242

The High Court therefore finds that there is no binding limitation of prosecution in relation to T1.

---

The Supreme Court

## The Supreme Court's ruling

In previous instances, the Copenhagen City Court ruled on 1. July 2015 and by the Eastern High Court's 8. section on 18. August 2015.

Three judges have participated in the ruling: Niels Grubbe, Poul Dahl Jensen and Jens Peter Christensen.

The case concerning T1

T1 has requested

confirmation of the district court's decision, so that there is a binding limitation on prosecution that the prosecution would drop count 2 if he could confess to count 1 in respect of 2 kg of cocaine.

The prosecution has requested confirmation of the High Court's decision that there is no binding limitation of prosecution in relation to T1.

The case concerning

T2 The prosecution service has requested that the High Court's decision be amended so that there is no binding limitation of prosecution in relation to T2.

T2 has requested that the High Court's decision be confirmed, so that there is a binding limitation on prosecution that the prosecution would drop count 1 if he could confess to count 2 in respect of 1.2 kg of cocaine.

Pleas TI has

stated, inter alia, that the prosecution has given him a legitimate and worthy expectation that he will only be charged in count 1 of the case concerning a quantity of 2 kg of cocaine. He has been informed of the prosecution's clear statement and has accepted it, which the prosecution was informed of by his defence counsel. The agreement was concluded even before 10 December. March 2015 The agreement is in no way conditional, and the agreement was also approved by the head of the law firm. At no time during the proceedings in January and February 2015 did the

prosecution claim that these were only

non-binding discussions, as in that case there would be no reason to involve the head of the law firm himself. If the prosecution wanted to get out of the agreement on the advancement of the case as a confession case regarding 2 kg of cocaine in the case 1, the prosecution service must be referred to the rules on the public prosecutor's right of reversal. The prosecution's clear statement has not been reversed by the public prosecutor within the 2-month time limit, which must be counted

no later than the date of submission of

the request for a hearing of 9 April. April 2015, and the purpose of the request for a hearing on 9 April 2015. April 2015 was precisely the only way for T1 to confess in court to a quantity of 2 kg of cocaine in accordance with the agreement with the prosecution service.

Regardless of whether the prosecution now fluctuates between describing the process as discussions and agreement, it must be assumed that prior to 27 November, the prosecution was informed that the prosecution was not able to do so. March 2015, an agreement/agreement was reached that the case should be advanced on the basis of the admitted amount of cocaine.

T2 has stated, inter alia, that the prosecution has expressly and with binding effect indicated that it would limit the indictment against him to a quantity of 1.2 kg of cocaine in count 2, provided that he confessed

to that amount.

There are no formal requirements for a binding limitation of prosecution, which can be either tacit through the prosecution's conduct or appear through an explicit statement.

It was the prosecution itself that initiated the discussion with his defense attorney.

It has been proven exactly what date the agreement between the prosecution and him was concluded, namely by the defence counsel's confirmation email of 11 September. March 2015 to the prosecutor. The email also states that he had been informed of the prosecution's statement on the same day. Therefore, there can be no doubt that any reversal period

must be calculated from this date.

The prosecutor had a mandate to make the statement. The time limit for reversal pursuant to section 724(1) of the Administration of Justice Act. 2, then expired on 11. May 2015. The prosecution did not reverse the decision before the deadline expired, nor was the

possibility of reversal at any time reserved.

The withdrawal of the offer to cut the case is apparently solely due to a subsequent change of attitude on the part of the prosecution service's management. The prosecution service that with the email of 16. April 2015, the defendant declined the offer, is at the same management level - and thus with the same mandate - as the prosecution service that had previously contacted the defence counsel with a proposal for cuts. He has - both by the express statement of the prosecution and by his conduct - acquired a legitimate and worthy expectation that the case will be advanced in accordance with the statement, which is not, moreover, 1243 on the basis of the evidence in the case, an unreasonable or extraordinarily favourable result.

The Director of Public Prosecutions has generally stated, inter alia, that the prosecution service has not made a binding limitation of prosecution in

relation to T1 and T2. On the one hand, it must be acknowledged that the prosecution service - even without an explicit declaration of a limitation of prosecution - may be bound by this conduct by its conduct. On the other hand, however, quite high demands must be made as to when there can be said to be a binding limitation on prosecution. It is not every expectation that there is a binding limitation on prosecution, but only the legitimate and worthy of protection.

Something very special is needed for a legitimate and worthy expectation to be created when the case is at a stage where there is only one charge and where no other procedural steps have been taken by the prosecution. Before an indictment has been brought, something very special must be required before there is a binding limitation on prosecution, and this can only be done in very exceptional cases. It must be assumed that when the accused were presented in a preliminary hearing on 4. December 2014, they were charged with both count 1 and count 2, and that these charges have not at any time subsequently been explicitly dropped or limited. It must also be assumed that the prosecution has not taken any procedural steps in relation to the accused in the form of indictment, submission of a request for a hearing, holding

interrogations, etc.

The fact that there have been discussions between the prosecution and the defence counsel of the accused about the possible reduction of the case does not constitute such an extraordinary situation that a legitimate and worthy expectation has been created in relation to the accused that parts of the charge would be dropped. In this connection, it must be important that the defendants either did not wish to comment on the case or only expressed themselves to a very limited extent.

The Director of Public Prosecutions has also stated with regard to T1, inter alia, that his the defence counsel has not specified at what point in time an agreement to waive the case 2 has been concluded, including on which time his client has received such a entitled and protected reasonable expectation that the case would be settled in accordance with the

Accordingly, the Senate Judiciary Committee shall be able to obtain.

It can only be assumed that between the defence and the prosecution authority had agreed that the case should be tried as a confession case, and that T1 may have had a certain expectation that the case would be cut as the stated. However, the prosecution has not thereby arranged in such a way that T1, based on an objective assessment, has justifiably been given such a legitimate and worthy of protection expectation that a binding prosecution limitation has been created for the prosecution authority.

In this connection, it should be noted that it is quite customary, especially in cases of violation of section 191 of the Danish Criminal Code, for reasons of procedural economy, for the prosecution to discuss the issue of indictment with the defence. This kind of discussion must necessarily be non-binding for both parties and cannot in any way give the accused such a legitimate expectation that the prosecution is thereby prevented from disposing freely of the indictment. The fact that the accused has been made aware of the content of the discussions and has expressed his opinion on them cannot lead to a different result. This is all the more true when the accused has not otherwise wanted to make a statement to the police.

The Director of Public Prosecutions has also stated with regard to T2, inter alia, that his defence counsel's documentation of the discussions she has had with the prosecution service, as expressed in the High Court's decision, cannot be decisive for whether such a legitimate and worthy expectation has been created in relation to T2 that parts of the facts of the case would be abandoned. and that the prosecution service will be bound by a prosecution limitation as a result.

There are no such exceptional circumstances as those in the case of required.

The fact that there has been an informal email correspondence between the defence counsel and the prosecution service about the cutting of the case cannot create a legitimate and worthy expectation on the part of T2 that parts of the facts of the case will be abandoned.

Nor can the fact that T2 gave a very brief statement to the police lead to a different result. This must be seen in the context of the fact that the purpose of the interrogation was solely to revoke T2's visitation and letter control.

As stated by the Eastern High Court in the present case, it is not possible to impose a 'conditionally binding limitation on prosecution'. If a prosecution limitation has been made, it is binding on the prosecution service. If the view of a conditionally binding limitation of prosecution is accepted, the limitation of prosecution does not occur until the accused has fulfilled the condition, i.e. has admitted in a court hearing the fact that was the prerequisite for the prosecution's dismissal of the prosecution. As stated, the prosecution service is not bound by a prosecution limitation until the deadline for the public prosecutor's right of reversal, cf. Section 724,

1244 para. 2, has expired. In a case where

there was a conditionally binding limitation on prosecution, the time limit for the public prosecutor's right to reverse the appeal had to be counted from the date of such a hearing. In the present case, such a hearing was never held.

The Supreme Court's reasoning and

conclusion According to the District Court's order of 1. July 2015 at a preliminary hearing on 19 July 2015. June 2015 agreed to the

description of the course of events reproduced in the district court's decision. Ankle

The authority has not subsequently departed from this agreement.

Under these circumstances, the Supreme Court agrees with the district court's assessment According to which both in relation to T1 and in relation to T2 there are provides a binding limitation of prosecution with the content specified in the district court's decision.

The Supreme Court hereby upholds the district court's decision in its entirety.

For it is determined

The district court's decision is confirmed.

# Act 2024-06-11 no. 658 amending
# the Code of Civil Procedure

(Implementation of agreement on initiatives concerning the time limit for conversion in criminal cases)

§ 1. In the Administration of Justice Act, cf. Statutory Order no. 250 of 4. March 2024, the following amendments are made:

1. In Paragraph 724(1) of the Constitution. 2, '2 months' shall be replaced by '4 months'.

2. In the heading of Chapter 93a, after 'prosecution', the following shall be inserted: 'etc.';

3. In Paragraph 1018h, the following subsection is inserted. 2 ;

'(2) According to the rules in this chapter, except for section 1018 e, subsection 1018. 1.

## 5. On request, claims for damages
general rules of Danish law are raised by the
injured parties in cases of violation of sections 210, 216 of the Danish Criminal Code, Section 222(1) 2, Section 223, para. 1, or Section 225; § 216, § 222 para. 2, or Section 223 para. 1, as a result of the fact that

1) the injured party has not had sufficient opportunity to complain against a decision to drop prosecution,

2) The injured party's appeal against a decision to drop prosecution has not been processed before the expiry of the time limit in section 724(1). 2, or

3) a decision to reverse the dismissal of charges has not been notified to the person charged before the expiry of the time limit in Section 724 (1) 2.«

§ 2. The Act will enter into force on 1 October. July 2024.

(2) Section 1, no. 1 does not apply to decisions on dismissal of charges and dismissal of charges made before the entry into force of the Act. For such decisions, the rules in force up to now apply.

Copyright © 2024 Karnov Group Denmark A/S

Proposal for an Act

amending the Criminal Code and the Administration of Justice Act

(Economic crime)

Tabled on 8. October 1986 by the Minister of Justice (Ninn-Hansen)

§ 1. 1 Civil Penal Code, cf. Statutory Order no. 607 of 6. September 1986, the following amendments shall be made: 1. Paragraph 79 shall be replaced by the following:

»§ 79. A person who exercises one of the provisions of section 78 (1) of the Constitution of the European Union shall be held in accordance with the provisions of section 78. 2 of the Criminal Procedure Act, may be deprived of the right to continue to carry on the activity in question or to carry it out in certain forms if the conduct that has been committed justifies an imminent risk of abuse of the position.

(2) The same applies, where special circumstances so indicate, to the pursuit of other activities. According to the same rule, the right to be founder or director or member of the board of directors of a limited liability company, a company or association that requires special public approval or a foundation may be deprived. The disqualification shall take place for a period of 1 to 5 years, calculated from the final judgment, or until further notice,

in which case the question of continued exclusion from the company in question after 5 years has elapsed may be brought before the court in accordance with the provisions of section 78(1). 3, contained rules. When special circumstances warrant this, the Minister of Justice may allow an appeal to be brought before the court before the 1. Pkt. The said 5-year deadline has elapsed.

(4) The court may, in the course of the proceedings referred to in subsection (3) of the District Court. 1 and 2 cases shall by order exclude the person concerned from carrying on the activity until the case has been finally settled. The judgment in the case may decide that an appeal shall not have suspensive effect.'

2. In Paragraph 131, 'with a fine or liability of up to 3 months or, in aggravating circumstances, with imprisonment for the same period' is replaced by:

"With a fine, fine or imprisonment of up to 6 months".

3. In Paragraph 131, the following subsection is inserted: 2 :

'(2) A person who contributes to the exercise of an activity who has been deprived of the right to pursue an activity shall be punished with a fine or, in particularly aggravating circumstances, with a fine.'

4. In Paragraph 296(1), the words '2 years' shall be replaced by '1 year'.

5. Paragraph 302 is replaced by the following:

»§ 302. A fine, fine or imprisonment of up to 1 year shall be imposed on a person who, under circumstances that characterise the offence as particularly serious:

1) makes false or misleading declarations; in business books or accounts which the person concerned is required by law to keep or prepare;

2) fails to keep business books or prepare accounts in the manner required by law to do so;

3) fails to comply with the statutory obligation to store business books, Appendix or Other accounting records or destroys such.

(2) If an act or omission as mentioned in subsection is committed. 1 of gross negligence, the penalty shall be a fine or a fine.'

§ 2. In the Act on the Administration of the Court, cf. Statutory Order no. 567 of 1. September 1986, the following amendments shall be made:

1. After section 31, the following is inserted:

»§ 31 a. If a case is subject to a written submission or procedure, cf. sections 927 b and 928 a, subsection 1. 2 to 3, the decisions taken pursuant to Paragraphs 29 or 31 of this Law shall apply mutatis mutandis to them.'

2. In Paragraph 721(1) of the Constitution. 1., no. 1, shall be inserted after »§§ 103(1). 2,»: »131 para. 2.».

3. In Paragraph 721(1) of the Constitution. 1, no. 2, "131" shall be deleted.

4. In Paragraph 723, after subsection, the following is inserted: 2 as a new piece:

'(3) The Public Prosecutor may also drop or drop charges in whole or in part if the conduct of the case will entail difficulties, costs or processing times that are not proportionate to the importance of the case and the sentence that can be expected to be imposed."

4.

5. In Paragraph 723(1) of the Constitution. 3, 1. Item ., which will be pcs. 4, 1. Paragraph ., is amended:

'The provisions of paragraph 1. 1 to 2' to: '>The provisions of paragraph 1 to 2' 1-3", and 'Drop reprimand' is replaced by: 'Abandon or waive reprimand'.

6. After Paragraph 927, the following is inserted:

»§ 927 a. The court may convene a special preparatory meeting to determine the position of the parties on the facts and points of law of the case, including which facts are not disputed and which must be proved, as well as the organisation of the trial.

Section 927 b. In special cases where the court considers it appropriate in view of the nature of the case, it may order the public prosecutor to submit a written submission to the court within a specified time limit. The court also sets a time limit for any comments made by the defence counsel in this regard. If a written presentation has been made, cf. 1 .- 2. The parties shall give an oral summary thereof in court.'

7. Section 928 (1) of the Constitution. 2, is replaced by the following:

'(2) After the indictment has been read, the defendant is asked whether he pleads guilty to the offence in question. The court may order the prosecutor to refer the case. This is followed by the taking of evidence in accordance with the rules laid down in Paragraph 868.'

8. Section 928 (1) of the Constitution. Paragraphs 4 and 5 are repealed

9. After Paragraph 928, the following is inserted:

»§ 928 a. After the evidence has been concluded, the prosecutor, then the defence counsel and, if the accused so requests, the prosecutor will have the floor to comment on the outcome of the evidence and on the points of law in the case (procedure). The case is then taken up for judgment. However, the court may decide that the question of whether the accused is guilty must first be heard and decided (2). With the permission of the court, the parties may submit the proceedings in writing to the court in whole or in part. In this case, the parties must provide an oral summary of this in court.

(3) In exceptional cases where it is deemed appropriate in view of the nature of the case, the court may order the prosecutor and the defence counsel to provide a written summary of the content of the proceedings with an indication of the main points of view put forward.

§ 928 b. At the vote, the question of whether the defendant is guilty of the crime alleged against him must be distinguished from the question of the sentence and first put to the vote. If a separate vote is taken on grounds for increase or reduction of sentence, the votes of the members of the court who have declared themselves

LFF 1986 34                                                                                               1986-10-08

against the defendant's guilt, but has remained in the minority, to be reckoned in favor of the defendant."

10. After Paragraph 965c, the following new Paragraph 965d is inserted:

»§ 965 d. The provisions of Paragraphs 927a, 927b and 928a shall apply mutatis mutandis.'

Section 965 d will hereafter become section 965 e.

§ 3. The Act will enter into force on 1 October. July 1987.

(2) Section 2 of the Act applies to all cases that have not been finally decided at the time of the entry into force of the Act.

§ 4. Section 1 of this Act does not apply to the Faroe Islands, but may be brought into force in whole or in part for this part of the country by Royal Decree, with the deviations given rise by the special Faroese circumstances.

---

## COMMENTS ON THE BILL

### General comments

1. Introduction

1.1. The bill is an unchanged re-presentation of the bill amending the Criminal Code and the Administration of Justice Act (Economic Crime), which was presented in the Danish Parliament on 14 November. May

1986 (L 266), cf. Folketingstidende 1985-86, sp. 10862ff The first reading is printed in the Folketingstidende 1985-86, sp. 12187 ff

1.2. The purpose of the bill is to create a basis for intensifying the judicial system's efforts against economic crime. On the other hand, amendments are proposed to the Administration of Justice Act with a view to a more efficient handling of these cases. On the other hand, amendments are proposed to the Criminal Code in order to tighten the rules on missing or inadequate bookkeeping and with a view to expanding the possibilities for disqualification from business in the event of abuse of bankruptcy and company law.

The bill is based on report no. I would like to thank the Committee on the Prevention of Economic Crime with regard to the Criminal Law Council and the Judicial Council on this report. The above-mentioned statements from the Criminal Law Council and the Judicial Procedure Council are included as an appendix to the bill. Below, in point. 2-5 will be explained in more detail about the report, about the opinions of the Criminal Law Council and the Council for the Administration of Justice and the Bill in relation to this.

1.3. The intensification of the efforts to combat financial crime, which the bill seeks to provide, must first and foremost be achieved through changes in the rules that will make it possible to deal with cases of financial crime more quickly than is currently possible.

Experience from the major financial cases that have been conducted in recent years has shown that it takes a very long time to deal with these cases, both in the prosecution service and in the courts. The reason for this is, among other things, that the current rules on the handling of criminal cases are not designed with this type of case in mind.

The long case processing times are particularly worrying in relation to the accused and the accused in these cases. In the large financial cases, the accused often have to wait for years for a decision on their case, while they often have to spend several days every week in court for a long period of time, possibly for several years. If the person concerned is actually in custody,

                        is the burden     firewood    The long ones

Of course, case processing times are particularly high.

The period between the offence and the execution of the sentence should also be as short as possible for other reasons. Long case processing times in themselves imply a worrying weakening of the judiciary's response to these cases. In addition, they also cause very serious problems for the authorities and courts that deal with the cases.

Against this background, the bill entails the implementation of amendments to the Administration of Justice Act with a view to a faster and more efficient processing of these cases.

First and foremost, it is proposed to extend the rules on dropping and dropping charges so that it will be possible to 'curtail' cases to a greater extent than at present when their (complete) implementation will entail difficulties, costs or processing times . that are not proportionate to the importance of the case and the sentence that can be expected to be imposed (cf. the proposed

new rule in section 723 of the Administration of Justice Act, Stk. 3). In addition, amendments are proposed to the rules on the handling of criminal cases in the courts to enable the courts to organise and conduct cases in court more efficiently.

The court must be better able to control the organisation of the case, including through preparatory meetings, so that from the beginning of the case there is a position from the parties as to which facts can be taken as undisputed and which facts are disputed and which must therefore be proved. The bill also implies that in special cases, the court will be able to order the prosecution service and the defence counsel to present the case in writing (with a copy to the public). Furthermore, the court must be able to order the parties to submit a written summary of their proceedings to the court, just as the parties - if they so wish - must be able to obtain the court's permission to submit their proceedings in writing to the court in whole or in part, but in such a way that they must give an oral summary of this in court. 1.4. Stepping up the fight against financial crime cannot be achieved solely through changes in the administration of justice, which can allow for a faster and more efficient handling of financial crime cases. Changes must also be made to the Criminal Code. In this connection, the bill entails a tightening of the penal provisions regarding lack of or inadequate bookkeeping. It is quite common in cases of economic crime that the current rules on accounting are disregarded. This in itself can create the opportunity for the accounts to give a false picture of, for example, the Communist Party. creditworthiness of a company. In addition, however, the lack of or inadequate accounting also makes it difficult and in some cases impossible to investigate financial matters. Of course, it is also important to prevent financial crime. In recent years, particular attention has been drawn to the need to prevent abuse of bankruptcy and company law by depriving the holder of managerial positions in companies (disqualification from employment). On this point, it is proposed to amend the rules of the Danish Criminal Code on disqualification in order to prevent such abuses of bankruptcy and company law.

2. Extended access to the reduction of cases 2.1.

Report no. 1066/1986 contains page 17 et seq. of the general considerations of the Committee on Economic Crime. The Committee emphasises that cases of financial crime present a number of special problems. On the one hand, the cases are often very extensive, which in itself can mean that the case processing takes a very long time. On the one hand, the cases often have links abroad,

Copyright © 2021 Karnov Group Denmark A/S                                                                  side 2

just as it may be necessary in order to get to the bottom of the courts to carry out extensive and costly restructuring ᵒᵍ auditing of the accounting records.

As a result of such circumstances, the processing of the case may be as well as by the police, as by the prosecution service and the courts, extraordinarily long-lasting.

The Committee on the Fight against Financial Crime highlights (cited place) that rules should be implemented to facilitate the case processing, and the Committee states in this connection that a Extension of the possibilities for cutting cases is available from is crucial.

2.2. The current rules in the Code of Civil Procedure on the curtailment of Criminal cases (failure to prosecute) are reviewed in report no. 1066/1986, p. 157 et seq. The Committee's review shows that today only in limited scope is the possibility of cutting cases off procedural economy considerations, cf. the report, page 184 et seq.

At the investigative stage, the police can, to a certain extent, in accordance with Section 742 of the Administration of Justice Act, make a prioritisation of the cases. If there is, however, an actual notification based on the certain facts, or other investigation shows that it is it is highly probable that a criminal offence of any seriousness has been committed, however, the police can hardly refrain from carrying out a inquiry.

According to the Administration of Justice Act, the prosecution service is generally obliged to prosecute in cases where the case can be expected Conviction. Failure to prosecute is not justified on evidential or legal impediments can thus only be done when special consideration for the accused and consideration for the interests of the injured party or the public do not speak against it, cf. Section 723 of the Administration of Justice Act.

The Committee emphasizes (page 184) that procedural economy considerations must already be assumed to underlie the applicable rule Section 723(1) of the Administration of Justice Act. 1, no. 4. Under this provision, the Public Prosecutor in cases falling within his sphere of responsibility shall refrain from reprimand or drop the prosecution in cases where Section 10 b of the Danish Criminal Code (on criminal prosecution against a person who already imposed in another country for the same act) or Section 89 of the Danish Criminal Code (according to which additional penalties for acts that has been committed prior to, but not convicted by, a judgment already pronounced, be imposed only if a simultaneous sentence would have resulted in a increase of the penalty) is applicable. However, it is in these situations a condition that no or only an insignificant penalty is deemed to be be sentenced and that conviction will not be of any significance to the use of one stricter Penal provision in recurrence.

The provision in section 723(1) of the Administration of Justice Act. 1, no. 4, can thus be used on the basis of procedural economy if it is a matter of offences committed prior to a conviction, and none or only one An insignificant additional sentence can be expected to be imposed. The provision may is also used as a legal basis to limit the indictment to part of a case, and when the judgment has been handed down, to conclude less significant and perhaps not fully investigated matters.

The right to reduce the indictment for resource reasons in pursuant to section 723(1) of the Administration of Justice Act. 1, no. 4, however, according to Committee's report, page 185, in accordance with current law in all circumstances are considered to be limited to cases where the part of the The case for which no charges are being brought is of such a nature that the cannot be assumed to have a significant influence on the sentencing.

2.3. The Committee on Financial Crime report, page 185 et seq., a thorough review of the that could argue against a reduction in criminal cases on the basis of procedural economy considerations. It is stated as follows that: concerns about the application of an opportunity principle;

cases (e.g. the question of a transfer of jurisdiction from the prosecution) may also be invoked against an extended access to cut criminal cases. At the same time, it may be difficult to gain an understanding that an accused person who is believed to be able to convicted, must escape punishment or get away cheaper because of resource problems. Increased access to curtailment of criminal cases can also lead to an increased risk of inconsistency in practice, which however to some extent is countered by the possibility of recourse to the higher prosecutor's office. Finally, consideration for the injured party can be against an excessive use of prosecution waivers.

However, the Committee does not consider these concerns to be decisive (page 187). Besides obvious economic benefits of pruning criminal proceedings to a greater extent than hitherto, it will also be possible to achieve significant benefits for the accused, in particular the psychological pressure, that a long processing time entails, could be reduced. On

Against this background, the Committee proposes (page 188 et seq.) that the Section 723 of the Administration of Justice Act inserts a new provision according to which the prosecuting authority may wholly or partially drop or drop the charges, if the conduct of the case will give rise to difficulties, costs or processing times that are disproportionate; the importance of the case and the punishment that can be expected if necessary sentenced. Since the consideration of being able to cut cases of procedural economy considerations as previously stated may also be present in other cases other than those relating to financial crime, Committee that the new rule on pruning be given a general so that its wording is not limited to apply in such cases.

2.4. Report no. Regulation (EC) No 1066/1986 on the fight against economic As mentioned above, crime has been submitted to the Criminal Law Council and for the Council for the Administration of Justice.

In its opinion on the question (Appendix 1 to the Bill), that the Council may agree that there is a need for regulatory changes that could lead to an intensification of the judicial system efforts to combat financial crime. The Criminal Law Council finds in this context, there is a need for extended access to cut criminal proceedings in order to limit investigations; and the facts to be proved, and this can be do not give rise to any fundamental concerns.

The Criminal Law Council does not take a position on the question of the design of the new pruning rule.

In its consultation response (Appendix 2 to the bill), the Danish Council for the Administration of Justice may: also agree that there is a need for a legislative amendment that can give the possibility of cutting cases based on the resource considerations. At the same time, the Council for the Administration of Justice may agree that:

A new rule should be worded in a general way so that it also can be used in cases that do not involve financial crime, but where similar considerations apply.

The Council has no significant objections to the Committee proposed right to refrain from reprimanding resource-related reasons, but expresses different views on the Committee's suggestions. The Council thus states that a failure to prosecute the resource reasons should not indicate a presumption of guilt against the accused, but should be done by dropping the prosecution, unless the results of the investigation already carried out, exceptionally, provides sufficient grounds for charges to have been brought; (so that the conditions for dismissal of charges are met). The Council considers that: furthermore, that further consideration should be given to whether there should be access to to dismiss the entire indictment, and on the competence to make provision on resource-based non-prosecution should be made by the Public Prosecutor also in cases where the Chief of Police the right to prosecute. However, the Council mentions the possibility that these issues through instructional precepts.

2.5. The Ministry of Justice considers it crucial for the possibilities of making the efforts to combat serious economic crime more effective that better opportunities are created to reduce cases. This has been proposed by the Committee on Economic Crime and endorsed by both the Criminal Law Council and the Council for the Administration of Justice, which have no significant objections to the rule proposed by the Committee. Therefore, the Ministry of Justice proposes such an amendment to section 723 of the Administration of Justice Act. The bill is drafted in accordance with the draft in report no. 1066/1986, page 195 et seq.

In accordance with the statements in the report, p. 192 f, the Ministry of Justice has considered in connection with the drafting of the bill a more extensive rewrite and modernisation of the rules in sections 723-723a and 749 of the Administration of Justice Act. However, such a general revision of the rules on dismissal of charges and dismissal raises a number of difficult questions. Therefore, the Ministry of Justice has refrained from such a general modernisation of these rules for reasons of time, and the result is therefore that it is only proposed to insert the curtailment rule proposed by the Committee into the current rules in section 723.

According to the proposed new rule in section 723(1) of the Administration of Justice Act. 3, the prosecuting authority must be able to abandon or drop charges in whole or in part if the (complete) completion of the case will entail difficulties, costs or processing times that are not proportionate to the importance of the case and the punishment that may be expected to be imposed.

In Report No. 1066/1986, pages 190-192, describe in more detail the content of the provision and its expected application in future practice. It is emphasised here that in practice the situation will most often be such that at a fairly early stage of the case it will have to be decided whether the investigation should be limited to certain circumstances in order to speed up the whole case, i.e. also the processing of the case before it comes to court. Thus, in practice, as also emphasized by the Council for the Administration of Justice - the pruning will most often take the form of a drop of charges.

In accordance with the new rules on the power to prosecute, which were implemented by the 1984 reform of the Administration of Justice Act, it has been found most appropriate - as also proposed by the Committee on Economic Crime - to let the power to drop or drop charges under the new rule follow the general scheme of the Administration of Justice Act. According to the proposal, the authority to cut cases for reasons of procedural economy, as well as the authority to otherwise drop or drop charges, should lie with the relevant prosecuting authority, i.e. in public prosecutor cases with the public prosecutor and in police cases with the chief of police. However, in connection with a possible implementation of the bill, the Ministry of Justice will consider the issue of issuing instructive regulations on the referral of certain cases to the Chief Prosecution Service. In this connection, it should be noted that in connection with the reorganisation of the prosecution power, such instructions were issued in 1984 and that it may prove natural to supplement these with regulations on the submission to the chief prosecution service of certain cases concerning pruning under the new rule.

3. Disqualification from work

3.1. By a parliamentary resolution of 30. May 1985, the Government has been urged by the Danish Parliament to take various measures to counteract abuse of bankruptcy and company law. Following the Folketing decision, the deliberations on this will include, among other things: The question if disqualification of the right to til at conduct business activities. The Folketing decision also touches on the question of straw man activities and on the question of punishment for violation of a disqualification from work.

In order to fulfil the above-mentioned points in the Folketing resolution, a bill is proposed to amend the Criminal Code so that there is an expansion of the possibilities of depriving the right to be a director, board member, etc. in companies, etc. The Folketing resolution also mentions various other measures that must be included in the consideration of combating abuse of bankruptcy and company law. In this connection, the question of valuation and sale of estate assets, etc. is discussed. In this connection, it can be stated that the Ministry of Justice has set up a committee to consider the question of these other possible measures mentioned in the Folketing resolution.

3.2. In Title IV of Report No. 1066/1986 (page 201 et seq.) discussed the question of measures against bankruptcy and company abuse.

An opportunity to abuse the rules of company law can, for example, be a matter of fact. consist of setting up a limited liability company or private limited company that produces or sells a product. The company accumulates a large operating deficit (possibly through continuous release of earnings). In particular, the customs and tax authorities typically have considerable amounts owed to the company. The company's assets are sold cheaply to a new company that the first company or its owners do not formally control. The first company is then declared bankrupt. The founder, the founder's spouse or a family member or other 'straw man' sets up or has set up the new company, which buys inventory and production equipment cheaply from the estate and continues production. The new company accumulates a large operating deficit and goes bankrupt, etc.

Abuse of bankruptcy law can be a criminal offence, for example. consist of the establishment of ordinary business operations in the company with a view to achieving a satisfactory profit, but rather the implementation of transactions that only serve the interests of the shareholder or shareholder in another company. Furthermore, the abuse may consist of no actual disposal of the former company's assets, but that these either before or after the bankruptcy are transferred to another company that is directly or indirectly controlled by the bankrupt.

According to the Committee, abuse is most often linked to companies and to a bankruptcy situation, but they can also occur in sole proprietorships and in situations where bankruptcy is not current.

The Committee on the Fight against Financial Crime has sought the opinions of a number of authorities and organizations in order to shed more light on the abuses. mentioned. 1066/1986, page 221 et seq.

3.3. On the basis of the above-mentioned opinions, the Committee concludes (page 239 et seq.) that abuse of bankruptcy and company law occurs to a certain extent and that such abuse may cause significant losses to public and private creditors. The Committee therefore finds that there may be a need for action against persons who are guilty of the above-mentioned abuses. Notwithstanding the measures taken in the area of company law to prevent or counteract company abuse, the Committee finds that in order to seek to make the fight against gross abuse of the rules of bankruptcy and company law more effective, it must be considered appropriate to extend the right to restriction - disqualification - of the right to exercise a profession.

The Committee states (p. 246) that from the point of view of legal certainty it is totally unacceptable to carry out such an intrusive and general

Copyright © 2021 Karnov Group Denmark A/S

A very restrictive measure would be taken by the Council, and the Council has therefore not considered it necessary to pronounce a disqualification without a basis in a conviction for a criminal offence.

By making the right to disqualification conditional on this, the that the case processing and the authorities that have to decide on the question, offers the best possible legal certainty guarantees.

Against this background, the Committee on Economic Crime has its proposal for extended access to disqualification in connection with to the current rules on disqualification in sections of the Danish Criminal Code 78-79. According to the committee's proposal, a new section 79a is to be inserted as a new section a provision on disqualification from work in the Criminal Code. The proposal implies that, in connection with a conviction of a criminal offence, be the possibility of depriving the right to be a founder, director, member of the Board of Directors or to otherwise exercise a decisive influence in limited liability companies, etc., if it circumstances justify an imminent risk of misuse of such company.   .

At the same time, the Committee proposes a rule on access to temporary disqualification from work during the criminal proceedings. Violations In the Committee's view, it should be possible to punish stricter than at present, and the Committee therefore proposes that the cf. the rule in this regard in section 131 of the Danish Penal Code. To clarify that: Straw man activities are also punishable, the committee also proposes a new rule in section 131(1). 2, but with a lower penalty than for the main man..

3.4. The Criminal Law Council may in its opinion (item 3.2.) agree that there is a need to amend the current rules on disqualifications; so that it becomes possible to revoke the right to certain professions.

The Criminal Law Council agrees with the Committee that access to professional disqualification should, as today, be conditional on the there is a conviction for a criminal offence. An access to disqualifications, which were not linked to this, but which, for example, were not linked to this. Alone that the person concerned had gone bankrupt, the Council considered that the be extremely worrying.

The Council expresses the view that the right to deprivation of rights in the new groups of cases proposed by the Committee should be conditional on special circumstances warrant this, cf. the current provision in section 79(1) of the Penal Code. 1, 2. Item ., on the deprivation of the right to engage in other activities that do not require special public authorisation or approval. According to the Criminal Law Council, this can be perception is most easily achieved if the new rule on 'disqualification' in Paragraph 79, in which provision the Council had already considers editorial changes to be necessary.

The Criminal Law Council agrees with the paragraph of the opinion. 3.3 ., that as proposed the committee opens up the possibility of depriving the right to be a founder, director or member of the board of directors of a company with limited a company or an association that requires special public approval, or a foundation. On the other hand, the Criminal Law Council finds that a deprivation of the right to 'otherwise exercise a controlling influence' in such a company, etc., would be in favour of far-reaching and, in its very vague form, provide significant delimitation and control difficulties. This part of the committee's indication of the rights to be withdrawn should therefore be In the opinion of the Criminal Law Council, be deleted.

The Criminal Law Council also emphasizes that in each individual case there is must be decided on the specific extent of the disqualification. There may be be a question of only depriving the right to hold a certain position for example as a director, and to limit a disqualification to companies in specific industries.

The Criminal Law Council highlights the concerns about access to suspension (temporary disqualification) during the proceedings, but The Council considers it self-evident that such a rule may be applied

against the proposed rule.

The Criminal Law Council has no comments on the proposed changes in the penalties in section 131(1). 1 and 2, on the violation of disqualification. In the opinion of the Criminal Law Council, it is most reasonable to assume that the general rules on complicity also includes contributing to the carrying out of an activity by another person, to which right has been deprived of him, but the Council finds no reason to objection to the Committee's proposal that the liability for complicity should be for straw men, among other things, is clarified, and that this responsibility must apply to a lower penalty.

3.5. The Ministry of Justice may agree that there is a need for regulatory changes with the aim of counteracting abuse of bankruptcy. and company law. The Ministry of Justice can therefore accede the proposal for new rules on disqualification from work.

As regards the details of the new rules, it will as highlighted by the Criminal Law Council, probably be too far-reaching and too difficult to control, if the possibility is also opened to revoke the right to - in addition to being the founder, director or Board member - to have a controlling influence in a company etc. As mentioned by the Criminal Law Council, such a disqualification could be include the right to exercise voting rights under a shareholding held by the have been acquired by inheritance or by other lawful means possession of. The Ministry of Justice has therefore, in accordance with the The Criminal Law Council's opinion did not include in the new rule an to deprive the right to exercise a controlling influence in a company.

The Ministry of Justice may also agree to the need to tighten up the punishment for violations of disqualifications, cf. the § 131.

In the opinion of the Ministry of Justice, it is very important that prevents disqualifications from being circumvented by the use of straw men and the like. So that there is no doubt that straw men can be punished, the Ministry of Justice has therefore, in accordance with the draft law of the Criminal Law Council included the proposed rule on the clarification of the liability of contributory negligence in the bill, cf. the proposal for section of the Criminal Code 131 pcs. 2.

4. Accounting violations

4.1. Report no. Regulation (EC) No 1066/1986 contains in Title I of the Committee considerations concerning the provisions on penalties for wrongful or inadequate bookkeeping. The report contains a very large number of comprehensive review of the legislation's requirements for bookkeeping and accounts, etc., and of the applicable penal provisions in this regard, cf. Chapters 5-9 of the report (pages 29-102).,

The Public Prosecutor for Serious Economic Crime has The Committee stated that in connection with almost all cases concerning financial crime is a violation of the rules on bookkeeping and accounting. Inadequate accounting can make it extremely difficult and in some cases impossible to implement cases, and there is therefore, in the Committee's view, (page 128 et seq.) need to strengthen criminal protection against accounting violations.

The Committee also stresses that tightening up the provisions in this regard could also provide the prosecution service with a basis for at an early stage in the investigation to decide to limit any indictment to the accounting offence only; and thereby avoid a lengthy and perhaps futile investigation of a property crime     .

Against this background, the Committee proposes that various amendments to the Criminal Code with a view to increasing the penalties for such violations. According to the committee's proposal (p. 135), The provision on bookkeeping offences in section 302 of the Danish Criminal Code

Copyright © 2021 Karnov Group Denmark A/S                                                                side 5

A maximum sentence of fine, fine or imprisonment of up to 1 year and 6 years must be clarified, and where it can be clarified which actual months, and at the same time this provision's description of the criminal offences and omissions must be revised and modernised.

4.2. In its opinion, the Criminal Law Council can in its opinion. 2.3. agree that section 302 of the Danish Criminal Code is sought to be formulated in such a way that the provision is aimed more at more serious matters that are not found to be solely attributable to the penal provision in the Danish Bookkeeping Act. The Criminal Law Council may also agree that a penalty limit is set for such matters that is significantly stricter than the current limit of fines or liability. The Criminal Law Council has some reservations about the proposal from the Committee on Economic Crime that the maximum penalty in the provision should be imprisonment for 1 year and 6 months. The Council emphasizes that there are obvious misgivings about seeking accounting offences to be put in the class of property crimes, so that the police and the prosecution service can only crack down on the most readily available information, namely that relating to deficient bookkeeping, etc., and expect such matters to be assessed as strictly as if evidence of a property crime had been adduced. Even though bookkeeping offences can be of considerable seriousness and sometimes create a presumption of dishonesty, it does not seem likely that the courts will impose long-term sentences for bookkeeping offences. It is the conclusion of the Criminal Law Council that the Council proposes a common maximum penalty of 1 year's imprisonment for the various cases of particularly serious bookkeeping offences that are to be covered by section 302.

Regarding the detailed wording of the provision, reference is also made to the Criminal Law Council's opinion.

4.3. The Ministry of Justice can in its entirety endorse the views and proposals of the Criminal Law Council on the question of increasing the penalties for bookkeeping offences. The bill is therefore drafted in accordance with the draft law of the Criminal Law Council.

## 5. Other proposals concerning the handling of cases

5.1. General comments. In Report No. 1066/1986, page 21 f, states that the processing time in cases of economic crime can be extraordinarily long, not only by the police and the prosecution service, but also when the case is to be heard by the courts, where the trial in 1. instance in the major financial cases is often very long-lasting. This is not only due to the very extensive nature of the cases, but also to the fact that the general rules of the Administration of Justice Act on the handling of criminal cases are not designed with regard to cases of economic crime.

In the larger economic cases, the court hearing lasts at 1. instance often from 3/4 - 2 years, and if the case is appealed, the appeal process can also be very long. The Committee emphasizes that this cannot avoid causing problems for the courts, not least for the City Court of Copenhagen, where half of the district court's criminal divisions at a certain point were occupied with cases of economic crime. At a time when resources are scarce, this has not been able to avoid that other cases have had to wait, so that there has been a significant increase in the scheduling times at the courts in all types of cases.

Against this background, the Committee has considered whether a number of amendments to the procedural rules governing the judicial procedure for cases of financial crime could facilitate the passage of these cases through the legal system so that existing resources can be better utilised.

5.2. Preliminary hearing. Written presentation. In civil proceedings, the court may summon the parties to a preliminary hearing at which the parties' positions on the factual and legal problems of the case may be

circumstances which must be the subject of evidence. A similar rule does not apply to criminal proceedings. The Committee on Economic Crime finds (report page 275 et seq.) that superfluous production of evidence, etc., can be avoided if it is possible to clarify the parties' position on the factual and legal issues of the case from the beginning of the case. The Committee therefore proposes a provision in the Code of Civil Procedure according to which the criminal court may summon the parties to a preparatory meeting with a view to the effective organisation of the trial.

There is no express rule on the submission by the prosecutor of criminal cases heard by the district court. However, it is assumed that such a referral can take place, and in cases of economic crime, as in other very large cases, it has become the practice that the trial begins with the prosecutor's presentation of the case. The reference is made orally and consists of a statement of the facts and the legal rules to which the indictment relates, specifying the evidentiary themes. In major cases of economic crime, the prosecutor's presentation has stretched over several court days.

Against this background, the Committee on Economic Crime proposes (page 279) that the court should have the power to order the prosecution to make a written submission of the case. Such a written submission must, according to the Committee's proposal, be publicly available, and the Committee assumes that an oral summary of the written submission is given in court during the court hearing.

In its opinion on the Committee's report, the Judicial Council recommends that these proposals be implemented. However, the Council considers that the right to order the prosecution service to submit a written submission in the text of the Act should be limited to special cases where the nature of the case so requires, just as it should be explicitly stated in the provision that an oral summary of the written submission must be given in court. The Council also points out that there is no express legal basis for requiring an oral presentation of cases heard by the Supreme Court. The Ministry of Justice can agree to the need for a more efficient organisation of these cases. The Ministry of Justice thus agrees with the committee's proposal. The need identified by the Judicial Council with regard to a more precise indication in the text of the Act of the scope of the rules on written submission has been incorporated into the Ministry of Justice's draft law (Sections 927a 927b of the Code of Civil Procedure).

5.3. Written procedure. In criminal cases, the trial ends - before the defendant has the last word - with a procedure in which the prosecutor and defence counsel are given the opportunity to comment on the outcome of the evidence and the legal issues in the case. Under current law, the procedure is always oral. The procedure in very large and complex cases can sometimes be lengthy. There may be many thousands of documents and a considerable number of witness statements that need to be summarized and held together in order to assess the evidence. The Committee on Economic Crime states in its report, page 287, that it is not unusual for the procedure in major financial cases to extend over 15 to 20 court days. The Committee also states that the procedural form in these cases has changed to some extent, as it has become more of a lecture based on a single note from the immediately preceding presentation of evidence - as is known in ordinary cases.

The result is in practice that the court and the parties have to spend a very long time listening to the prosecutor's and, to some extent, also the defence counsel's reading of a typed manuscript and taking notes

Copyright © 2021 Karnov Group Denmark A/S

what is read aloud. In deliberating on the individual facts that the Council considers to have been given a technical perspective, the court must then make use of its notes on what the prosecutor and The defense attorney has said in their reading.

Against this background, the Committee proposes (report, page 287): that the court should be able to order that procedural pleadings must be submitted in writing to the court. In such cases, the parties must provide a Oral summary of the submissions in court, and the submissions must be publicly available. Such an approach will significant time savings in court, and the written procedural submissions could be of considerable help to the Court during the Vote.

In its opinion on the report, the Council for the Administration of Justice gives a statement on the report. 5. expresses that the Council cannot accept the Committee's proposal, and mentions that that the proposal deviates from the principle of the Administration of Justice Act in one essential respect: on orality in the administration of justice. The Council considers that some of the considerations that bears the Committee's proposal could be accommodated by a scheme in practice, according to which the court and the parties agree that a A written summary of the content of the procedural statement with an the main points of view expressed.

On the one hand, the Ministry of Justice finds the current procedural form in large economic cases, as the a large number of court days are spent with reading of the procedural submissions, and the judges' notes on the oral procedure of the parties in such cases is almost inevitable must be to some extent deficient.

On the other hand, the Ministry of Justice agrees that the question may give rise to doubts, as it can be stated that it is to deviate from the principle of orality in the Administration of Justice Act, and that a defence lawyer should have the right to assess in what form he thinks best express their views.

On this basis, the Ministry of Justice has drafted the bill so that there is no change in principle in the The rules of the Administration of Justice Act stipulate that the proceedings are held orally. With in order to facilitate the court's work with deliberation and judgment writing However, the Ministry of Justice proposes, in the light of the The Judicial Council stated that it is expressly stated in the text of the law (§ 928 pcs. 3) that the court may order the prosecutor and the defence counsel in in the context of the oral procedure, to submit a written summary of the content of the procedural statement, with an indication of the main points of view that are put forward..

The concerns that have been expressed about the committee's proposals for a written procedure in certain major cases are not present; if the prosecutor or defence counsel (or possibly the accused) himself requests to submit the procedure in writing in whole or in part. However, an oral summary should be given in court of the written procedure. Section 928 a(a) of the Bill. 2, is designed in Accordingly,

5.4. Other procedural proposals. According to the current rules, judges by drawing lots from a special basic list that is prepared by the municipal basic list committee. There is no special professional requirements for the persons who are included on the basic list. The Committee on Economic Crime states page 290 of its report no. 1066/1986, that the Committee considers it essential that judges in major cases of economic crime has some insight into the accounting matters, and the Committee therefore proposes that that it must be marked on the basic list which persons have special knowledge of business conditions. If the case requires such knowledge, The selection of judges shall, according to the Committee's proposal, be made from among the persons concerned.

In its opinion on the report, the Council for the Administration of Justice states that its view that judges should be recruited from among the ordinary people without specialist knowledge or special prerequisites. In addition, the Council points out, among other things, that the Committee's

inappropriate design, and that the question of introducing expert judges in criminal procedure in all circumstances should be given more detailed consideration in the in the context of the Judicial Council's discussions on the order of instance in civil Sager.

The Ministry of Justice considers the question of expert judges discussion in a broader context, and therefore there is no included rules on this in the bill

In Danish law, the starting point is that evidence must be presented immediately before the court of appeal during the trial. After Section 747 of the Code of Civil Procedure, however, there is a possibility to ensure that evidence by anticipated presentation of evidence, i.e. taking evidence at court hearings prior to the trial, in certain specified cases.

The Committee proposes (p. 281 et seq.) this access to anticipation evidence has been extended so that the provision expressly states that a hearing to secure evidence may be held if it is investigation or trial will be very long-lasting. The reason for this is that, among other things, in large and Long-term cases of economic crime are difficult for witnesses to remember something about the events that they have to explain about and that is far back in time, sometimes many years.

The Council for the Administration of Justice can in its opinion, item 3, agree that in particular in major cases of economic crime, there may be a need to ensure evidence by anticipated presentation of evidence due to the expected duration. However, the Council considers that the current provision of the Section 747(1) of the Administration of Justice Act. 1, provides sufficient legal basis to allow the production of anticipatory evidence in the Committee on Economic and Financial Matters Crime wanted to be expanded in scope.

The Ministry of Justice can agree to this, and it is therefore in the bill no proposal for an amendment to section 747 of the Administration of Justice Act has been included, the extended use of anticipated evidence which The Committee on Economic Crime proposes that it will be possible to framework of the applicable provision. Under the current provision in section 965 c (c) of the Administration of Justice Act. 4, supplies to the court record of statements made by witnesses and expert information during the district court proceedings is used as evidence during the High Court proceedings if none of the parties The Court has requested that the in question

The Committee considers (page 283) that this provision in cases where there is not the necessary agreement between the prosecutor and the defence counsel; is likely to lead to unnecessary new evidence due to the the requirement that the parties must agree in order for witnesses etc. not to needs to be re-entered. The Committee therefore proposes that this requirement be deleted and is replaced by a provision stating that it is the High Court that (in in the event of disagreement between the parties) shall determine whether re-examination.

The Presidents of the Eastern and Western High Courts, in their Consultation response to report no. 1066/1986 that the court should only intervene in the in the course of the ordinary administration of the proceedings and in the leave it to the parties who know the case best to decide form and scope of evidence.

In its opinion, the Council for the Administration of Justice agrees. 6, the view that as expressed by the High Courts, and adds that the exercise of the The proposed power could weaken the parties' confidence in the impartiality of the court.

The Ministry of Justice considers that a more detailed assessment of the proposal In view of the negative reception it has received, should wait for further experience to be gained at the High Courts with appeal proceedings of cases of economic crime.

LFF 1986 34          1986-10-08

## 6. The Bill's financial and administrative Consequences·

As mentioned, the bill aims to create a basis for intensifying the judicial system's response to financial crime, including through regulatory changes to enable faster and more efficient handling of financial matters crime. The bill cannot be assumed to be connected with significant economic implications, but the proposal could be provide a basis for faster case processing and thus for a better use of judicial resources.

## 7. Consulted authorities, etc.

Report no. Regulation (EC) No 1066/1986 on the fight against economic

been sent for consultation to the presidents of Østre Reference is made to the general comments, pt. 5.2 ., and to and the Western High Court, the Maritime and Commercial High Court, the City Court of Copenhagen and the

Opinion of the Council for the Administration of Justice, paragraph 5.2 of the Maritime and Commercial Court, the District Court of Copenhagen and the Judicial Council, paragraph 5.2 of the Criminal Court. 4.

the courts of Odense, Aalborg and Aarhus, the Danish Judges' Association, The Association of Assistant Judges, the Director of Public Prosecutions, the National Commissioner of Police, the Chief of Police in Copenhagen, the Association of Chiefs of Police in Denmark,
The Danish Association of Police Officers, the Danish Criminal Police Association, the Danish Police Association, the Danish Bar and Law Society, the Ministry of Industry and the Ministry of Police
for taxes and duties.

## Comments on the individual provisions of the bill

To section 1

### To no. 1-3
Reference is made to the general comments, point . 3, to Opinion of the Criminal Law Council, pt. 2, and to report no. 1066/ 1986 on economic crime, pages 239-271.  .

To no. 4-5
Reference is made to the general comments, point . 4, to the opinion of the Criminal Law Council, pt. 2, and to the report, page 127 et seq.

To section 2

### To no. 1
Reference is made to report no. 1066/1986, pages 279 and 296.

### To no. 2-3
The provisions imply that:      ate     Violations      Af disqualifications, cf. section 131 of the Danish Criminal Code, are made into public prosecution cases. Reference is made to the report on page 270.

### To no. 4-5
Reference is made to the general comments, point . 2, to Opinion of the Council for the Administration of Justice, pt. 1, and to the report, pages 151-197.

To no. 6-7 and 10 crimes have

### To no. 8-9
Reference is made to the general comments in section 1. 5.3 ., and to the opinion of the Council for the Administration of Justice, pt. 5.

To section 3

The provision      Contains       Entry into force      Og transitional provisions.
 In accordance with the proposal in report no. 1066/ 1986 it is proposed that the proposed amendments to the Administration of Justice Act application in all cases that have not been finally decided by the entry into force.

To section 4

The provision concerns the territorial validity of the proposed law.

Appendix 1

THE CRIMINAL LAW COUNCIL

Opinion on Report No. 1066/1986 on the fight against financial crime By letter of 10.
March 1986, the Ministry of Justice has asked the Criminal Law Council for an opinion on some of the proposals in report no. 1066/1986 on the fight against financial crime. The Ministry of Justice's letter reads as follows:                  :

» Enclosed is report no. 1066/1986 on the fight against financial crime, which was submitted by a committee of the Ministry of Justice.

The Ministry of Justice has sent the report for consultation with authorities and organisations with a deadline of 4 April. April 1986. In this connection, the Criminal Law Council must be asked for an opinion on the report's proposed amendments to the Criminal Code and to the rules of the

Administration of Justice Act on dismissal of charges, etc.

The Ministry of Justice will forward the above-mentioned consultation responses to the Criminal Law Council as they are received.

Since a draft law on the fight against financial crime is due to be presented in April 1986, it is necessary to request that the Council's opinion be available as soon as possible and no later than 18 April. April 1986.« At the same time, the Ministry of Justice has asked the Council for an opinion on the report's proposal for an amendment to the Administration of Justice Act. In view of this and the short time limit for the submission of the Council's opinion, the Ministry of Justice has subsequently indicated that it will agree that the Criminal Law Council does not take a more detailed position on the question of the formulation of the rules of the Administration of Justice Act on dismissal of charges, etc.

The Criminal Law Council has considered the case in 4 meetings.

As a result of the way in which the Ministry of Justice has set up the task, and in view of the other tasks concerning the design of the sanction system that the Criminal Law Council is concerned with, it is necessary to emphasize that the Criminal Law Council has only seen it as its task to take a position on the questions as presented in Report No. 1066/1986 on economic crime.

In issuing this opinion, the Criminal Law Council has had the following composition: Professor, Dr. jur. Knud Waaben (chairman), attorney Jørgen Bang, head of department in the Ministry of Justice Michael Elmer

(who is also responsible for the management of the council's secretariat), President of the Court Kurt Haulrig, Director of the Prison and Probation Service Frits Hellborn, Chief of Police Jørgen Langkilde and Director of Public Prosecutions Per Lindegaard. However, Director Frits Hellborn has not participated in the Council's consideration of this statement, and in his place Prison Inspector William Rentzmann has participated in the work.

The task of secretary of the council is carried out by kst. District Court Judge Bent Carlsen and Claes Nilas, Administrative Officer in the Ministry of Justice.

Copenhagen, 21. April 1986.

Jørgen Bang Jørgen
Langkilde Knud
Waaben (chairman)
Elmer Per
Lindegaard / Bent
Carlsen (secretary)
K. Haulrig William
Rentzmann Claes
Nilas (secretary)

1. General comments.

In Chapter 3 of Report No. 1066/1986 (pages 17-22) for the fact that the handling of cases of economic crime presents a number of difficulties which apply not only in connection with the investigation but also in connection with the prosecution service and the courts' handling of such cases. The main problem is that it takes a very long time to deal with cases of economic crime, partly because the current rules on the handling of criminal cases are not designed for this type of case.

The Committee finds a need for changes in the rules that can provide a basis for a faster processing of cases and thus for a desirable intensification of the judicial system's efforts against economic crime. In addition to changes in the procedural rules on case processing in the courts, the Committee proposes a new rule in Section 723 of the Administration of Justice Act with a view to expanding the access to

"pruning" of cases.

Furthermore, the Committee proposes a new stricter provision in section 302 of the Danish Criminal Code regarding missing or deficient bookkeeping, etc.

Finally, with a view to preventing economic crime, the Committee proposes an extension of the rules of the Criminal Code on disqualification to include certain types of activities in connection with companies.

The Criminal Law Council can agree that there is a need for changes in the rules that can lead to an intensification of the judicial system's efforts               .

against economic crime. In this connection, the Council assumes that it is necessary to provide an expanded and more precise right to 'curtail' criminal cases in order to limit the investigation and the facts that must be proved, and thus facilitate the processing of cases. In principle, this corresponds to what is already the practice today in cases of many similar conditions. The Council therefore considers that the proposed extension of access to the reduction of criminal proceedings cannot give rise to any concerns of principle. The Council has not addressed the question of the formulation of the provisions on the dropping of charges and the limitation of investigations. 2. Accounting

violations

2.1. The current rules on bookkeeping and accounting and on penalties for incorrect, missing or inadequate bookkeeping and accounting are reviewed in report no. 1066/1986, pages 27-49 and 83-102. In the report, pages 103-112, the Committee describes some experiences with disregard of bookkeeping rules that the Public Prosecutor for Serious Economic Crime has made available

to the Committee.

The Committee points out (page 127 et seq.) that there have been some cases of abuse where there have been significant financial losses for businesses and investors, and such abuse entails a risk of a general mistrust of the business community. In the Committee's view, a company should also not be able to strengthen its commercial position by disregarding the legislation that competing companies comply with. The Committee therefore believes that abuse should be prevented as far as possible.

The Committee refers to the fact that the State Prosecutor for Economic Crime has informed the Committee that the accounting rules have been disregarded in almost all cases of economic crime, which means that the investigation is made more difficult and in some cases has to be abandoned altogether, just as it makes the investigation extremely resource-intensive in terms of time and finances. Against this background, the Committee considers that there is a need to strengthen criminal law

Copyright © 2021 Karnov Group Denmark A/S

Protection against accounting violations. A tightening    Af
The Committee also considers that the provisions on this will
could provide the prosecution service with a basis for early
time of the investigation to limit any charges to only
accounting violation, thereby avoiding a protracted and
perhaps in vain investigation of possible crimes of enrichment.
A tightening of the penalties for accounting violations will also
be in line with the measures taken in other countries;
as part of the fight against financial crime

2.2. In report no. 1066/1986, page 129 et seq., considered
the question of an increase in the penalties for accounting offences;
in relation to sections 175 and 302 of the Penal Code.

The provision in section 175 stipulates the punishment of imprisonment or imprisonment until

3 years, in mitigating circumstances, for the person who in order to
drawer in legal relationships in a public document or book or in private
document or book as required by law or special obligation

the person concerned shall be responsible for drawing up or keeping, or in a medical order,

a dentist, midwife or veterinary certificate makes an incorrect declaration
of any matter in respect of which the declaration is to serve as

proof. According to subsection (1) of the provision. 2 shall be punished with the same penalty as the

who in legal matters make use of such a document as containing
truth.

Section 302 of the Danish Criminal Code prescribes a penalty of a fine or liability for whom,

who fail to keep business books as required by law;
conduct, or is guilty of gross disorder with regard to
the entry of such books or by the statutory
storage of these or their annexes.

The Committee on the Fight against Financial Crime highlights the

that section 175 covers the making of a number of widely different declarations

of both a public and private nature, while section 302 already in its

The current version concerns breach of the accounting obligation.
The Committee considers it most appropriate to carry out a
Tougher penalties for missing or inadequate bookkeeping

through an amendment to section 302.

The Committee proposes that section 302 of the Danish Criminal Code be worded as follows.

»§ 302. With a fine, imprisonment or imprisonment of up to 1 year and 6 months

shall be punished if the act or omission is likely to result in

significant loss of assets or is otherwise of a particularly serious nature, the

as

1) makes false or misleading declarations;        in
   business books or accounts that are required by law
   the person in question to keep or draw up,

2) failing to keep business books or prepare accounts
   in the manner required by law to
   do it,

3) fails to comply with the statutory obligation to
   to specify entries or to specify them;

4) fails to comply with the statutory obligation to
   Store        business books, appendices, or    Other
   accounting records or destroys such.

(2) If an act or omission as mentioned in subsection is committed. 1 of
gross negligence, the penalty is a fine."

As a consequence of the Committee's proposal regarding section 302, the

The Committee also recommends that the words "law or" be deleted in section 175. The Committee

highlights, in this regard, that section 175 in its current wording and
with regard to the maximum sentence of up to 3 years' imprisonment,
up-to-date, but that the committee, based on its mandate,

has not considered that it is necessary to propose a change of the provision

in its entirety.

At the same time, the Committee points out that in the special legislation
there are provisions corresponding to the current section 302, e.g. in

cf. Section 17 of the Tax Control Act. The Committee recommends that, in connection with the

implementation of the Committee's proposals

review and possible amendment of such provisions of the
special legislation, in order to avoid doubt as to whether an indictment
only according to section 302 is correct, e.g. in the event of incorrect tax accounts.

2.3. The Criminal Law Council would like to emphasise that the accounts etc.

Diverse contexts are an important means of information in
in the context of the assessment of the
economic conditions, including their creditworthiness, the
Net Worth, etc. Incorrect or misleading accounts are therefore
likely to cause disappointment and can be widely used
as a means not only to commit crimes of enrichment and
evasion of taxes and duties, but also to cover them up.

The Criminal Law Council may approve that section 302 of the Criminal Code is sought to be drafted

in such a way that the provision is more aimed at
more serious matters that are not found to be solely attributable to
penal provision in the Bookkeeping Act. The Criminal Law Council may
also agree that for such matters a

that is significantly stricter than the current one

of a fine or a fine.

In the committee's draft, it is proposed that for all the provisions of section 302(1) of the Constitution.

1, covered intentional acts shall apply a common maximum penalty
of 1 year and 6 months. This corresponds to the maximum penalty that is
for most property crimes in section 285. The Criminal Law Council
has any reservations about the proposal to
equate accounting offences with property crimes as
embezzlement, fraud, fraud and debtor fraud. The Council has
understanding of the difficulties highlighted by the Committee in
prove the objective and objective
Subjective factors when a company's accounting records
hinders the clarification of the process. There is a
on the other hand, obvious concerns about seeking
accounting offences classified as property crimes;
so that the police and the prosecution can only beat
most readily available information, namely that relating to
inadequate bookkeeping, etc., and expect such matters to be assessed equally
as strictly as if evidence of property crimes had been adduced.
Although bookkeeping violations can be of considerable seriousness
and sometimes create a presumption of misconduct,
does not seem likely that the Criminal Law Council

The courts will be        Sentenced to lengthy sentences   for
accounting violations.

The Criminal Law Council has considered whether the provisions of section 302 of the committee proposal,

Stk. 1, covered matters may be divided so that two
different penalties for intentional acts. Such sharing
description of the offence, however, presents difficulties.

It is the conclusion of the Criminal Law Council that a joint
maximum sentence of 1 year in prison. On some details relating to
The wording of section 302 is noted as follows:

The ones in subsections. 1, no. 3, mentioned circumstances (failure to declare or

specifying) will, in the opinion of the Criminal Law Council, be covered by the
of pcs. 1, no. 2 (failure to keep books or prepare accounts
in the prescribed manner) and therefore does not need to be separate
mentioned.

2.4. According to the proposal, the provision in section 302 shall cover cases that:

where the act or omission is likely to result in significant
loss of property or is otherwise of a particularly serious nature. In this regard

during the Criminal Law Council's deliberations, it has been pointed out that the expression

'likely to result in significant financial loss', on the one hand, often -
but not always - will indicate a case that is particularly rough. It has
also touched upon, that the expression on the other hand could conceivably
be perceived as containing a limitation to the loss of assets for
private interests. In the Council's view, such a restriction would
be unlucky.

LFF 1986 34

1986-10-08

The occurrence of or the risk of significant damage to both private individuals and For the public sector, in the Council's view, it should be possible to make a violation particularly serious. The Council would therefore prefer that the legislative text use the expression 'a person who, in circumstances such as characterizes the relationship as particularly rough ... «.

In this way, it will also be possible to solve the problem in relation to provisions of special legislation which the Committee Economic crime has pointed out in report no. 1066/ 1986, page 134.

2.5. The Criminal Law Council may agree that the maximum penalty in section 296 should be be the same as for the most serious accounting offences. In accordance with what is stated under Clause. 2.3 ., should maximum penalty in section 296(1) of the Criminal Code. 1, is changed from imprisonment for 2 years to imprisonment for 1 year.

2.6. The Committee points out that some of the issues relating to books and accounts proposed to be mentioned in section 302 are currently covered by the § 175. To indicate that such matters should not be covered of both provisions, but only be punishable under section 302, the committee's report proposes that the words 'law or' should be deleted of section 175. The Committee is aware that the cases of intentionally incorrect statutory bookkeeping that are moved from section 175 to section 302 are hereby receive a lower maximum sentence than the maximum of 3 years' imprisonment, mentioned in section 175. The latter maximum will apply, inter alia: inaccuracies with regard to private books not kept by law; but in accordance with a 'special duty relationship', although misdemeanours with Consideration for statutory books must generally be assumed to be: the grossest. However, this is not considered possible in connection with with the Committee's work to prepare proposals for a further amendment of section 175, the delimitation of which is not clear in all respects.

It has also been beyond the scope of the Criminal Law Council to ask proposal for a more detailed revision of section 175. The Council is most likely. to propose that the words 'law or' remain in place for the time being; of section 175, partly because it is not easy to decide whether these words in the Section 175 - which is stated in Chapter 175 of the Danish Criminal Code. 19 on crimes relating to evidence - may include some facts with regard to private books that cannot be classified under section 302.

However, it should be established, as proposed by the Committee, that section 302 must be perceived as a special provision that excludes simultaneous application of section 175. In connection with its general review of the penalties in the Criminal Code draw attention to the discrepancy between the maximum penalty in section 175 and section 302, which may exist if there is no change in section 302 175. The solution to this problem can either be a reformulation of Section 175 or a reduction of the maximum sentence of 3 years in this Provision.

It is thus the conclusion of the Criminal Law Council that there is no with the proposed amendment of section 302, there should be some change in section 302 175.

2.7. It is the Committee's proposal that gross negligence in the cases referred to in section 302, Stk. 1, the said violations alone shall be punishable by a fine. In this connection, it has been pointed out that the provision in that case does not contain anything really new in relation to the special legislation, as the Bookkeeping Act also prescribes fines. The Criminal Law Council has also considered whether grossly negligent violations of section 302 in some situations should be able to lead to a custodial sentence. There had to be In the Council's view, it is a question of a custodial sentence with a lower maximum penalty than under subsection. 1.

Taking into account the limited time available at the consideration of the question, the Criminal Law Council in this context only propose that the penalty framework be so that it - as today - also provides for the possibility of imposing booklet.

Similarly, the maximum penalty in section 296(1) of the Constitution should be applied. 2, on rough negligent violations of certain provisions of paragraph 1 of the provision. 1 mentioned Actions, as today, include fines and fines.

2.8. The Criminal Law Council has discussed this in the report, page 87 et seq. question of the relationship between the proposed new cf. the provision in section 302 and the provision in section 125 concerning, inter alia. destruction, corruption or disposal of objects by significance for a public survey.

There is agreement in the Criminal Law Council that the relationship in which accounts and vouchers are destroyed in order to hide, for example, the fact that they are not in the same place, a property crime, in will be covered by both section 125 and section 302, and that who should thus be punished for violation of the both provisions.

The provision in section 125 (1) of the Criminal Code. 2, on impunity for the person who carries out The provisions of section 125(1) of the Constitution of the European Union. 1, mentioned actions in order to evade oneself or any of his or her loved ones for persecution or punishment, applies only to With regard to the matters described in section 125(1) of the Constitution. 1, and Thus, does not exempt from punishment for violation of section 302.

3. Disqualification from work

3.1. The Committee on the Fight against Financial Crime obtained opinions from a number of authorities and organisations with a view to elucidating the so-called bankruptcy and bankruptcy corporate abuse.

The main content of the statements is reproduced in report no. 1066/ 1986, p. 221 et seq.

In the light of the abovementioned opinions, the Committee concludes (page 239 et seq.) that abuse of bankruptcy and company law occur to a certain limited extent and that such abuse may cause significant losses to public and private creditors.

The Committee therefore finds that there may be a need for intervention against persons guilty of the above-mentioned abuses. The Committee considers that customary criminal and civil law consequences are hardly sufficient to counter such abuses. There are Examples of economic operators who have been repeatedly punished for so-called 'bankruptcy abuse', but who, regardless of this, has continued to speculate on bankruptcy or Forced dissolution.

Notwithstanding the measures taken under the provisions of the area has been taken with a view to preventing or counteracting abuse, the Committee therefore considers that, in order to seek to improve the effectiveness of the fight against gross abuse of the bankruptcy and company law rules must be considered appropriate to extend the the right to restriction, deprivation, of the right to pursue a profession.

On the basis of information on past and present far-reaching rules in Norway and Sweden on so-called bankruptcy disqualification and (report, page 225), the committee has discussed whether Such access to disqualification should be subject to the following conditions: there is a criminal offence. The Committee states (p. 246) that it is from the point of view of legal certainty, it is unacceptable to carry out such a intrusive and generally questionable measure, as it would be to be to make a disqualification without basis in a judgment for criminal offences. By making access to deprivation of rights thereof is also achieved that the case processing and The authorities responsible for deciding on the matter must the best possible guarantees of legal certainty.

Against this background, the Committee on Economic Crime has formulated its proposal for extended access to disqualification in related to the current rules on disqualification in cf. Sections 78-79 of the Penal Code. According to the committee's proposal, as a new Section 79a inserts the following provision in the Criminal Code:

Copyright © 2021 Karnov Group Denmark A/S

»§ 79 a. A person convicted of a criminal offence may be deprived of the right to be a founder, director, member of the board of directors or otherwise to exercise a controlling influence in a limited liability company, a company or association that requires special public approval, or a foundation, if the conduct that has been shown justifies an imminent risk of abuse of such positions. (2) The provisions of Paragraph 79 shall apply mutatis mutandis.'

At the same
time, the Committee proposes that a change in the
Section 79 (1) of the Criminal Code. 2, shall be the possibility of temporary disqualification during the processing of a case, just as is currently the case with regard to the deprivation of the rights referred to in section 79(2) of the Danish Criminal Code. 1, 1. Item ., i.e. the right to operate based on official authorisation or approval. Violations of disqualifications are punished according to the Penal Code.

Section 131, and in this connection the Committee proposes an amendment to the maximum sentence therein, so that the prison sentence is not conditional on aggravating circumstances, while at the same time the maximum sentence is increased from the current 3 months imprisonment to 6 months' imprisonment. In order to counteract some man activities, the Committee on the Prevention of Economic Crime also proposes that a new section 131(1) of the Criminal Code should be used to protect the interests of the Communist Party of China. 2, specifies that complicity in the violation of a disqualification is punishable, and in this connection the Committee proposes a maximum penalty for the participant on a fine or, in aggravating

circumstances, liability.
3.2. On the basis of the information in the report on the fight against economic crime, the Criminal Law Council agrees that there is a need to amend the current rules on disqualification so that it becomes possible to revoke the right to certain forms of professional exercise to a greater extent.

In this connection, the Criminal Law Council would first like to emphasise that it agrees with the Committee that access to professional disqualification should, as today, be conditional on the existence of a conviction for a criminal offence. A right to deprivation of rights that was not linked to this, but e.g. The mere fact that the person concerned had gone bankrupt would, in the Council's view, be extremely worrying. The current rule in section` 79 (1), 1. Clause ., deprivation of the right to operate on the basis of official authorization or approval. However, according to subsection. 1, 2. Paragraph 1, the right to withdraw the right to pursue 'other activities' if special circumstances so indicate. It must be regarded as unclear to what extent it is already possible under this provision to deprive the rights mentioned by the Committee to certain forms of professional exercise. The provision has not been used in case law for such disqualifications, and therefore, in the opinion of the Criminal Law Council, there may also be reason to clarify the scope of the provision with regard to such cases.

In the opinion of the Criminal Law Council, deprivation of the right to the forms of professional practice referred to by the Committee should be limited by the condition that special circumstances warrant it, cf. section 79(1) of the Criminal Code. 1, 2. On 'other activities'. This can be done most easily by inserting the new rules on "disqualification from occupation" into section 79 of the Danish Criminal Code, in which provision may already give rise to minor editorial changes.

3.3. The Criminal Law Council may approve that, as proposed by the Committee, it is possible to revoke the right to be the founder, director or member of the board of directors of a company with limited liability, a company or an association that requires special public approval, or a foundation.

On the other hand, the Criminal Law Council finds that the right to be deprived of the right to 'otherwise exercise decisive influence' in such a

company etc. would be too far-reaching and e.g. include the right to exercise the right to vote in respect of a shareholding which the person concerned has acquired through inheritance or by other lawful means, just as such a right to deprivation in its very indeterminate form would give rise to considerable delimitation and control difficulties. This part of the Committee's indication of the rights that may be withdrawn should therefore, in the opinion of the Criminal Law Council, be deleted. The Criminal Law Council also finds reason to emphasise that in each individual case a decision must be made on the specific extent of the disqualification. On the one hand, it may be a question of only depriving the right to hold a certain position, e.g. as director, and partly to limit a disqualification to companies in certain industries.

3.4. The Committee's proposal to extend the right to suspension (temporary disqualification) during the proceedings to include the provisions of section 79(1) of the Constitution. 1, 2. Paragraph ., the cases mentioned and the new cases of disqualification proposed by the Committee are in the opinion of the Criminal Law Council not without misgivings. After a lengthy process, it may turn out that the case does not hold up to the extent envisaged at an earlier stage.

The Criminal Law Council considers it self-evident that such a rule must be applied very restrictively. However, the Council did not think it necessary to comment against the proposed rule.
3.5. The Criminal Law Council has no comments on the proposed changes to the penalties in section 131(1). 1 and pcs. 2. In particular, with regard to the proposed contributory clause in section 131(1). 2, it should be noted that the main rule of Danish law pursuant to section 23(2) of the Danish Criminal Code. 1–2, is that contributory liability is also incurred by the person who contributes to the violation of a special duty and who is himself outside of it. It takes a lot to arrive at the conclusion that a given penal provision is a so-called unilateral delicacy, and that there is thus an exception to the general rule. In the

opinion of the Criminal Law Council, it is reasonable to
assume that complicity in the violation of disqualifications follows the general rule that punishment for complicity can be imposed. For this reason, there has been the most sentiment in the Criminal Law Council in favour of considering the subsection of the Criminal Code Act. 2 proposed rule for superfluous. However, the Criminal Law Council finds no reason to object to the proposal made by the Committee (in section 131(2)) that the liability for complicity should be clarified and that a lower penalty should apply to this liability.

4. The Criminal Law Council's draft law On

the basis of the sub-item. 2-3 stated, the Criminal Law Council proposes that the draft amendment of the Criminal Code be worded as follows:

»§ ...
In the Civil Criminal Code, cf. Statutory Order no. 527 of 1. November 1981, as amended most recently by Act No. 573 of 19. December 1985, the following amendments shall be made:

1. Paragraph 79 is replaced by the following:

»§ 79. A person who exercises one of the provisions of section 78 (1) of the Constitution of the European Union shall be held in accordance with the provisions of section 78. 2 of the Criminal Procedure Act, may be deprived of the right to continue to carry on the activity in question or to carry it out in certain forms if the conduct that has been committed justifies an imminent risk of abuse of the position.

(2) The same applies, where special circumstances so indicate, to the pursuit of other activities. According to the same rule, the right to be the founder or director or member of the board of directors of a limited liability company, a company or association that requires special public approval or a foundation may be deprived.

(3) The disqualification shall take place for a period of 1 to 5 years, calculated from the final judgment, or until further notice, in which case the question of continued exclusion from the company in question after 5 years may be brought before the court in accordance with the provisions of section 78(1). 3, contained rules. Reaches

special circumstances therefore indicate, the Minister of Justice may allow an appeal to be made before the court before the 1. Pkt. The said 5-year deadline

 has elapsed.

(4) The court may, in the course of the proceedings referred to in subsection (3) of the District Court. 1 and 2 cases shall by order exclude the person concerned from carrying on the activity until the case has been finally settled. The judgment in the case may decide that an appeal shall not have suspensive effect.'

 2. In Paragraph 131, the words 'with a fine or liability of up to 3 months or, in aggravating circumstances, with imprisonment for the same period' are replaced by:

 "With a fine, a fine or imprisonment of up to 6 months",

 3. In paragraph 131, the following new paragraph is inserted. 2: :

'(2) A fine or, in particularly aggravating circumstances, a fine shall be imposed on a person who contributes to the exercise of an activity by a person who has been deprived of the right to pursue an activity.'

 4. In Paragraph 296(1) of the Constitution. 1, '2 years' shall be replaced by '1 year'.

 5. Paragraph 302 is replaced by the following:

»§ 302. A fine, fine or imprisonment of up to 1 year shall be punished by a fine of 1 year if the circumstances characterise the situation as special Rough:

1)   makes false or misleading statements in business books or accounts which the person concerned is required by law to keep or prepare; ,

2)   fails to keep business books or prepare accounts in the manner required by law to do so;

3)   fails to comply with the statutory obligation to store business books,   Appendix   Elle ·   Other accounting records or destroys such.

(2) If an act or omission as mentioned in subsection is committed. 1 of gross negligence, the penalty is a fine or liability."»

Copyright © 2021 Karnov Group Denmark A/S                          side 13

Appendix 2

THE ADMINISTRATION OF JUSTICE COUNCIL

Opinion on Report No. Regulation (EC) No 1066/1986 on the fight against financial crime

By letter of 10. March 1986 (j.nr. 1986-20002-193)

The Ministry of Justice asked the Judicial Council for an opinion on the Proposals for amendments to the Administration of Justice Act, which are contained in the report no. 1066/1986 on the fight against financial crime.

The report was submitted by a committee set up under the Ministry of Justice.

For use in the Council's deliberations on the report's proposals the Ministry of Justice has subsequently submitted the consultation responses concerning report by a number of authorities and organisations submitted. The Ministry of Justice has also sent a letter of prepared a preliminary draft for amending sections 723-723 a.

In connection with the consultation of the Council for the Administration of Justice, the Ministry of Justice has asked for the opinion to be available by 18 December. April 1986. The Ministry of Justice has indicated that it could of course show that rewriting and modernising applicable rules on dismissal of charges, etc., which are intended in the Ministry of Justice's draft, but that the Ministry of Justice, taking into account the the short timetable for the Council's work will be agreed if necessary I would like to say that the Council does not take a position on these issues in detail.

The Council for the Administration of Justice has considered the report's proposed amendments of the Administration of Justice Act in 2 meetings.

Due to the extraordinarily short time limit, the Judicial Council not had the opportunity to carry out an actual processing, or a closer consideration of the questions referred, in particular the somewhat different sketches and drafts for the revision of the Administration of Justice Act rules on dropping charges and dropping charges. The Council therefore confined itself to making some more fundamental statements:

In response to the Ministry of Justice's letter of 10. March 1986.

In issuing this opinion, the Judicial Council considered the following Composition: President of the High Court Ole Agersnap (Chairman), President of the Court Knud Arildsen, Professor, Dr. Jur. Hans Gammeltoft-Hansen, Associate Judge Knud Have, Public Prosecutor Karsten Hjorth, Chief of Police Finn Larsen, High Court Attorney Kristian Mogensen and Judge Hans Rosenmeier.

The position of secretary of the council is held by Administrative Officer Kaspar Linkis, Ministry of Justice.

Copenhagen, 19. April 1986.

Ole Agersnap Knud Arildsen
Hans Gammeltoft-Hansen Knud Have
Karsten Hjorth Finn Larsen
Kristian Mogensen Hans Rosenmeier
Kaspar Linkis
(Secretary)

1. Pruning of criminal cases

The Committee states in its report that cases of economic Crime is time-consuming for the justice system. Case processing time in larger cases can be 6-10 years from the date of the investigation. beginning of the final judgment. On this basis, the Committee has background considered whether a reduction in the processing time can be achieved by amending the procedural rules, or practice of the prosecution service.

The Committee's examination of the applicable law concludes that the current rules on non-prosecution do not take special account of: the resources of the prosecution service and the courts.

To a limited extent, a reduction has taken place in cases with extensive crime pursuant to section 723(1) of the Administration of Justice Act. 1, no. 4, and section 723, para. 2, but the Committee considers that a comprehensive

Cutting the cases for resource reasons requires a change in the current regulatory basis. It is therefore proposed that as a new section 723, para. 3, a provision shall be inserted to the effect that: the public prosecutor may wholly or partially drop or drop charges, if the conduct of the case will give rise to difficulties, costs or processing times that are disproportionate; the importance of the case and the punishment that can be expected if necessary sentenced.

The reduction of criminal proceedings that must be able to be carried out by resource reasons, may be reflected in the fact that certain that only the main persons of the case are prosecuted, that only prosecution for step-lower provisions than those that could possibly be convicted of, or that charges are brought only for violation of the provisions which are subsidiary to provisions which could possibly be convicted of. The Committee emphasises that it is not the intention of the proposal is that a case should be cut in such a extent that an expected multi-year custodial sentence is reduced to a fine.

On the other hand, it will not be out of the question to prune a case so that a expected punishment is reduced from, for example. 4 years to 1-2 years in prison.

In principle, the proposal also applies to cases which do not concern: economic crime, but where the same considerations apply That said, the Sher

The Committee has limited the proposed rule to public prosecution cases and the cases covered by section 721(1) of the Administration of Justice Act. 1, no. 4. According to the proposal, the competence to curtail the criminal case shall be the responsibility of the prosecuting authority, i.e. the public prosecutor in the public prosecutor's cases and the chief of police in the cases covered by the Section 721(1) of the Administration of Justice Act. 1, no. 4. The Committee has recommended that in the in connection with the preparation of a possible bill be Consideration to extend the rule to police cases.

The Committee has also pointed out that there is a need for a modernisation of the rules of the Administration of Justice Act on the dropping of charges, and withdrawal and has recommended that when a bill is drafted, Modernisation of these rules is also being considered.

On the basis of the Committee's proposal, the Ministry of Justice has prepared a preliminary draft of new sections 723-723 c of the Administration of Justice Act, which will be replace the current sections 723-723a. After the sketch come the rules on the dismissal of prosecutions, including the one proposed in the report provision on resource-based non-prosecutions, also apply to police cases, but otherwise the rules are set out in the draft law to essentially correspond to the applicable rules.

For the reasons stated by the Committee in p. 183 et seq. of the report, agree that there is a need for a change in the law, that may allow the public prosecutor's office to cut cases based on resource considerations.

The long processing time in recent years' cases of financial As stated by the Committee, puts unreasonable pressure on the and later accused persons and must also be assumed gradually could seriously strain trust in law enforcement. In this context, it must be acknowledged that there is also a In the future, unacceptably long processing times are to be expected for public prosecutor's office and courts, if no legal basis is introduced for the reduction of cases of large-scale financial crime.

A pruning rule will be a necessary contribution to solving the these problems. However, the Council finds reason to point out that the long processing time in certain cases of financial crime; is not merely a consequence of the design of the legal rules. Organization, cutting and processing the cases at the investigation stage; at the indictment and during the trial are of decisive regardless of how the rules of the Administration of Justice Act are formulated, and Significant improvement of the unsatisfactory conditions cannot be achieved only by a change in the law.

Even though it is the cases of economic crime that have given rise to investigations that are closely related to the rules on the occasion of the Committee's deliberations and proposals for the establishment of a special right for the prosecution service to limit prosecution in criminal cases on the basis of resource considerations, the Council finds that the Judicial Procedure Council

Like the Committee, that such a rule should have a general formulation so that it can also be applied in other cases where similar considerations may apply. However, the Council finds it necessary to state the following views on the Committee's proposal: A waiver of prosecution for reasons of resources should not indicate a presumption of guilt against the accused. The Council

therefore considers that the decision of the Public Prosecutor's Office in this regard should be

in the form of a prosecution assignment, unless the results of the investigation already carried out exceptionally provide sufficient grounds for charges to have been brought.

Regardless of the fact that the committee states in the report, page 191, that in practice the provision will typically have to be applied in connection with some of several circumstances in a larger case complex or part of a matter, the proposed wording of the provision provides a legal basis for dropping the entire indictment, just as the provision provides a legal basis for separating individual accused persons from the case and continuing it against other accused. The Council for the Administration of Justice finds that further consideration should be given to whether such a broad right to dispense with prosecution should be introduced for reasons of resources. The considerations stated as the reason for the Committee's proposal could probably be sufficiently taken into account by a less far-reaching rule introducing the possibility of refraining from reprimanding one or some of several matters or part of a matter for reasons of resources.

In such cases, cases where there might be a need to dispense with prosecution would have to be dealt with in accordance with rules corresponding to the current section 723(1). 2, cf. subsection 2. 3. Thereafter it is the Director of Public Prosecutions who, in cases prosecuted by the Public Prosecutor, has the power to drop charges and the Public Prosecutor who has this competence in cases where the Chief of Police pursuant to Paragraph 721(1) of the Criminal Code. 1, no. 4, has the right to prosecute.

In the opinion of the Council for the Administration of Justice, there is also reason to consider in more detail whether the authority to refrain from prosecution for reasons of resources in cases prosecuted by the Chief of Police, in the same way as refrains from prosecution under section 723(1) of the Administration of Justice Act. 3, cf. subsection 3. 2, should be taken by the Public Prosecutor, or whether the consideration of achieving greater uniformity in the exercise of discretion and thereby reducing the risk of arbitrariness in the prosecution practice in these cases can possibly be safeguarded through instructive regulations.

The possibility of possibly making a more detailed regulation of the question of competence and the question of the extent of prosecution waivers for reasons of resources has been the subject of discussion in the Council. However, due to the time limit set for the Council's opinion, it has not been possible for the members to reach a final position on whether the questions raised above should be resolved by this means.

The Council agrees with the Committee that there is a need for a modernisation of the current rules on dropping charges and dropping charges. The draft law prepared by the Ministry of Justice is stated to have this purpose. However, the Council does not consider itself in a position to take a position on the formulation of amended rules on non-prosecution on the basis of the available basis and within the stipulated time frame, but the Council finds that the issue should be dealt with in more detail. This could also include considering the location and wording of the provision in section 749 of the Administration of Justice Act on the rejection of the report and the cessation of

failure to prosecute.

2. Expert judges In the report, the

committee describes how, according to the current rules, judges are selected by drawing lots from a special basic list prepared by the municipal basic list committee. There are no special academic requirements for the persons who are included in the basic list. The Committee considers it essential for a satisfactory resolution of major cases of economic crime that the members of the court, including the magistrates, have some insight into accounting matters, and the Committee therefore proposes that the basic list should indicate which persons have special knowledge of business matters and that the selection of lay judges should take place from among the persons concerned. if the case requires such knowledge. The Council of Judicial Appeals considers it a fundamental principle behind the lay judge system in Danish criminal procedure that a criminal case must be submitted to the court in such a way that it is understandable to ordinary people without specialist knowledge or special prerequisites. Accordingly, in Danish administration of justice, special expert lay judges do not participate in the individual types of criminal cases, with the exception of maritime criminal cases in which seafaring lay judges participate. In the opinion of the Council for the Administration of Justice, the above-mentioned principle should not be violated by rules on specially qualified judges in certain types of cases, including cases of economic crime. In this connection, the Council can refer to its comments on this issue in Report No. 994/1983, pages 45-47.

In addition to the objection to the proposal that has been raised in principle, the Council finds that the Committee's proposal has, among other things, been formulated in a technical manner.

It is therefore doubtful whether the basic list committees have the necessary prerequisites to select persons with sufficient knowledge of business conditions. In such a case, the use of the proficient members of the court appointed pursuant to Chapter 9 of the Administration of Justice Act - on the proposal of business organisations, etc. - would seem to be a more obvious solution, which, according to section 74 of the Administration of Justice Act, must be formed by lot.

In practice, the persons who could be considered as professional judges would probably often be able to claim that participation in lengthy court proceedings would be incompatible with their private professional activity. The magistrate's remuneration would not be proportionate to their loss of income, and it was therefore to be feared that an application would be made to a large extent for exemption from the duties of magistrate pursuant to section 71(no) of the Administration of Justice Act. 8 and that such applications had to be granted. If, notwithstanding the objection of principle, the Council should decide to introduce more expert judges in Danish criminal procedure, the question of the detailed design of such a system should therefore be the subject of more detailed consideration beforehand.

3. Anticipated presentation of

evidence In Danish law, the starting point is that evidence must be presented immediately before the adjudicating court during the trial.

According to section 747 of the Administration of Justice Act, there is a right to anticipated presentation of evidence, i.e. the presentation of evidence at hearings prior to the trial, when it is necessary to secure evidence that is otherwise to be feared to be lost, or which is not without significant

Copyright © 2021 Karnov Group Denmark A/S

-: 3- 12

inconvenience or delay may be attributed immediately before
this, cfr. court or when it is likely to be of importance to the
investigation or for reasons of public interest.

The Committee proposes that this right to anticipated
evidence be extended so that it is explicitly stated in the
provision that a hearing to secure evidence may be held if:
It is to be expected that the investigation or the trial will
be very long-lasting.

The Council understands the Committee's proposal as intending to:
opened up the possibility of in-court questioning during the investigation
also by witnesses whose testimony is central to the case, but with the
that key witnesses must often be called again for supplementary
questioning during the trial.

The background to the proposal is, among other things, that in cases where it is
The investigation goes on for a long time, is often difficult for the witnesses
to recall the events that they have to explain and which
is far back in time. This deprives the immediacy of evidence
of its importance, and the Committee therefore considers it more important
appropriate to allow for the examination of such witnesses;
during an anticipated presentation of evidence.

There is little doubt that, especially in major cases of economic
crime due to the expected duration of the case may be necessary
to ensure proof by anticipated evidence. Such evidence
may already be made under the current provision
Section 747(1) of the Administration of Justice Act. 1, which mentions, among other things, delay in
presentation of evidence, cf. hereby the Annotated Administration of Justice Act (3rd edition),
Vol. 3, p. 66, (note 4 to § 747)..

The Council does not find that there are sufficient grounds for a
access to anticipated evidence that should be maintained
as a narrowly defined exception to the principle of
evidence. In this connection, it should be remembered that anticipation
Evidence is presented without the presence of magistrates.

## 4. Preliminary hearings and written submission

The Committee proposes that a legal basis be introduced for the court in criminal cases to
convene a special preparatory meeting of the parties in order to:
an effective organisation of the proceedings. It is intended to
the way to avoid superfluous production of evidence, since the parties'
position on the factual and legal problems of the case can be clarified
from the beginning of the case.

The Committee also proposes that the court should have the power to
order the public prosecutor to make a written submission;
of the case, i.e. submit a written account of the facts
circumstances and the legal rules to which the indictment relates, with a
clarification of the evidentiary themes. The written submission must
according to the bill be publicly available, and the committee assumes
that in the court during the trial there will be an oral
Summary of the written presentation. Following the proposed
rules in the Administration of Justice Act, they should only apply to criminal cases,
that are heard by the district court and thus not jury trials.

The Council considers that these proposals, which to a certain extent are a
codification of a practice already followed must be regarded as clear
appropriate and the Judicial Council may recommend that the proposals
with the express addition that a
Oral summary of the written submission to the court.
The Council also considers that it should be explicitly stated in the legislative text that:
that the court may only order the prosecution to transmit
submission in special cases where the nature of the case
make it required.

The proposal for an opportunity for the district court to require a written
submission of the case presupposes that the district court can require a
Oral presentation of the case, but neither the applicable rules

the proposed rule or the proposed rule provides an explicit legal basis for
the current section 868 on jury trials.

## 5. Written procedure

In criminal cases, the trial is concluded with a procedure in which
The prosecutor, the defence counsel and the defendant are given the opportunity to express themselves
on the outcome of the evidence and the legal issues in the case. The Committee
proposes that the Court of First Instance may order that the procedural pleadings
must be submitted in writing to the court. In such cases, the parties must provide a
Oral summary of the submissions in court. The written
procedural submissions must also be publicly available.
The proposal deviates from the principle of the Administration of Justice Act in one important respect.
on orality in the administration of justice. It must be considered a break with Danish
legal tradition that a defence counsel who wishes to proceed orally,
can be cut off from this. It may also be mentioned that a written procedure
in certain cases may be so significant that it will be completely
unreasonable to assume that lay judges will have the time and opportunity to
to familiarise themselves with the written procedural submissions. The Council for the Administration of Justice
must therefore speak out against the implementation of this proposal.

On the other hand, the Council finds that some of the views expressed in the
The report, page 287, is cited as the reason for the Committee's
proposal could be met by a practical arrangement whereby the
may be agreed that the parties may in the oral procedure
must provide a written summary of the content of the procedural submission;
with an indication of the main points of view put forward,
cf. the Eastern High Court's consultation response, in which it is mentioned that agreements on this
could be reached with the litigants at the preparatory
meetings. Such written lists, which should however only be provided in
particularly extensive or difficult cases, could be a major
assistance before the court in connection with deliberations and the writing of judgments.

6. Presentation of evidence in appeal proceedings

According to section 965c(c) of the Code of Civil Procedure. 4, supplies to
the court record of statements made by witnesses and expert witnesses
during the district court proceedings is used as evidence during the
High Court proceedings if none of the parties
The Court has requested that the
in question. The rule was inserted into the Administration of Justice Act by Act no. 260 by
8 June 1979 on the proposal of the Council for the Administration of Justice, cf. report no. 825/
1977, p. 118 ff. The main purpose of the provision is to simplify
evidence in appeal cases, so that the summons of previously conducted
witnesses shall be omitted to the greatest extent possible. The Committee finds that:
provision is likely to lead to superfluous new evidence on the
due to the requirement that the parties must agree that witnesses, etc.
not be re-entered. The Committee therefore proposes that the requirement be deleted and that the
be replaced by a provision stating that it is for the court to decide whether
A new hearing must take place..

As stated, the consideration behind the proposal is to avoid superfluous
presentation of evidence. In this connection, the Committee mentions that the current
rule has given rise to a variety of practices with regard to
for the examination of witnesses in the appellate body, and that there is a certain amount of waste
of resources.

The proposal that makes the re-examination of witnesses etc. subject to appeal
depending on the court's permission, it thereby disregards the main principle of
on appeals, which are stated in section 965a(a) of the Administration of Justice Act. 1:
that there must be a 'complete new hearing' for the
High Court.

If one wishes to give the High Court the power to cut off
re-examination of witnesses, it would be more consistent with the
system of the Administration of Justice Act, whether the power was formulated as a
to prevent the re-examination of witnesses after the
application under other specified conditions.

Copyright © 2021 Karnov Group Denmark A/S                                    side 16

However, the Council for the Administration of Justice found it most consistent with the role of the court as an impartial body, that the High Court is not entitled to such a impartiality. The Judicial Council must therefore, in accordance with the opinion expressed by both High Courts discourage that power. Exercising this could weaken the parties' confidence in the court's proposed amendment.

L 1987 385                                                                1987-06-10

Act 1987-06-10 No. 385

amending the Criminal Code and the Code of Civil Procedure

(Economic crime)

§ 1. In the Civil Penal Code, cf. Statutory Order no. 607 of 6. 2. In Paragraph 721(1) of the Constitution. 1., no. 1, shall be inserted after »§§ 103(1). 2,»: »131 para. September 1986, the following amendments shall be made: 2,».

1. Paragraph 79 is replaced by the following:

»§ 75. A person who exercises one of the provisions of section 78 (1) of the Constitution of the European Union shall be held in accordance with the provisions of section 79. 2.

companies, can be deprived of the right to a criminal offence by a conviction of a criminal offence.

to continue to carry on the activity in question or to carry out in certain forms, if the conduct demonstrated justifies a imminent risk of abuse of the position.

(2) The same applies when special circumstances warrant it, on the exercise of other activities. According to the same rule, deprivation of the right to be a founder, director or member by the board of directors of a limited liability company, a company or association that requires special public approval, or a foundation.

(3) The disqualification takes place for a period from 1 to 5 years, calculated from the final judgment, or for the time being, in which case the question of continued exclusion from the company in question after 5 years may

shall be brought before the court in accordance with the provisions of section 78(1) of the Constitution. 3, contained rules. Reaches

special circumstances therefore warrant, the Minister of Justice may allow that the appeal to the court takes place before the 1. Pkt. mentioned 5 year deadline has been processed.

(4) The court may, in the course of the proceedings referred to in subsection (3) of the District Court. 1 and 2 mentioned

proceedings by order exclude the person concerned from exercising until the case has been finally decided. The judgment

The case shall be governed by a decision that the appeal shall not have suspensive effect.

2. In Paragraph 131, the following is amended 'With a fine or liability of up to 3 months or in aggravating circumstances with imprisonment for the same period' to: "With a fine, fine or imprisonment of up to 6 months".

3. In Paragraph 131, the following subsection is inserted: 2:

'(2) With a fine or in particularly aggravating circumstances A person who contributes to a person who is a member of the deprived of the right to pursue an activity, carries it out.'

4. In Paragraph 296(1), the words '2 years' shall be replaced by '1 year'.

5. Paragraph 302 is replaced by the following:

»§ 302. A fine, fine or imprisonment of up to 1 year is punished by a fine, a fine of which, in circumstances which characterise the situation as particularly Rough:

1)   makes false or misleading statements in the business books or accounts that are required by law to conduct or draw up

2)   failing to keep business books or prepare accounts in the manner required by law to do it,

3)   fails to comply with the statutory obligation to Store          business books,   Appendix    or   Other accounting records or destroys such.

(2) If an act or omission as mentioned in subsection is committed. 1 of gross negligence, the penalty is a fine or a fine."

§ 2. In the Act on the Administration of the Court, cf. Statutory Order no. 567 of 1. September 1986, the following amendments shall be made:

1. After section 31, the following is inserted:

»§ 31 a. If a case is presented in writing or in writing procedure, cf. sections 927 b and 928 a, subsection 1. 2-3, they find pursuant to Paragraphs 29 or 31 of this Act shall apply mutatis mutandis; on this.«

'(3) The Public Prosecutor may also give up or drop the charges if the conduct of the case will result in difficulties, costs or processing times that are not in proportion to the importance of the case and the punishment which may be can be expected to be sentenced.'

Subsection (3) hereinafter becomes subsection. 4.

5. In Paragraph 723(1) of the Constitution. 3, 1. Item ., which will be pcs. 4, 1. Paragraph ., is amended: 'The provisions of paragraph 1. 1-2' to: 'The provisions of paragraph 1 to 2' 1-3", and 'Drop reprimand' is replaced by: 'Abandon or waive reprimand'.

6. After Paragraph 927, the following is inserted:

»§ 927. a. The court may convene a special preparatory meeting for the purpose of determining the position of the parties to the proceedings, factual and legal circumstances, including the facts which are not disputed and which must be proved; and the organisation of the hearing.

Section 927 b. In special cases where the court, taking into account the nature of the case,

considers it appropriate, it may impose the public prosecutor's office to send a written submission to the court within a specified period. The Court of First Instance also rules: a deadline for the defence counsel's possible comments on this. Has it happened written submission, cf. 1 .- 2. Clause, the parties shall provide an oral summary thereof in court.'

7. Section 928 (1) of the Constitution. 2, is replaced by the following:

'(2) After the indictment has been read, the defendant is asked if he pleads guilty to the offence in question. The court may: order the prosecutor to refer the case. Then follows the presentation of evidence in accordance with the rules laid down in Paragraph 868.'

8. Section 928 (1) of the Constitution. 4 and 5, are repealed.

9. After Paragraph 928, the following is inserted:

»§ 928 a. After the presentation of evidence has been concluded, the prosecutor will first receive:

then the defence counsel and, if the defendant so requests, this to comment on the results of the presentation of evidence and on the points of law in the case (procedure). The case is then taken up for verdict. However, the court may decide that the question whether the accused is guilty, must first be negotiated and decided.,

(2) With the permission of the court, the parties may submit procedure in writing to the court. In that case, the parties must provide a Oral summary thereof in court.

(3) In special cases where, taking into account the nature of the case is deemed appropriate, to impose on the prosecutor and the defence counsel in the course of the proceedings to submit a written An overview of the content of the procedure, with an indication of the main points of view that are put forward.

§ 928 b. In the vote, the question of whether the defendant is guilty of the crime alleged against him shall be distinguished from the The question of the penalty and is first put to the vote. Voted separately on grounds for increase or reduction of sentence, , the votes of the members of the court who have declared themselves against the defendant's guilt, but has remained in the minority, to be reckoned in favor for the defendant."

10. After Paragraph 965c, the following new Paragraph 965d is inserted:

Copyright © 2021 Karnov Group Denmark A/S                                                                side 1

»§ 965 d. The provisions of Sections 927a, 927b and 928a are found in subsection (2). Section 2 of the Act applies in all cases that are not final decided upon the entry into force of the Act.

shall apply mutatis mutandis.'

Section 965 d then becomes section 965 e.

§ 3. The Act will enter into force on 1 October. July 1987.

§ 4. Section 1 of this Act does not apply to the Faroe Islands, but may be brought into force in whole or in part for this part of the country by Royal Decree, with the deviations given rise by the special Faroese circumstances.

Copyright © 2021 Karnov Group Denmark A/S

1-1

# Professional ethical problems
## in criminal justice

x

Report submitted by the
Special Group under
DJØF's professional ethics working group



THE LEGAL  ex 2
27. 124
LABORATORY
UNIVERSITY OF COPENHAGEN

April 1994

# 1. Introduction

In December 1991, DJØF's Executive Board decided to set up a professional ethics working group with the following terms of reference:

»To examine whether professional ethical rules can be laid down partly applicable to all members of DJØF and partly applicable to groups of members/to functional areas, and to the extent that these questions are answered in the affirmative, to submit a recommendation on the content of such rules.

To make recommendations for measures to promote a debate among DJØF's members on professional ethical issues both during and after the above-mentioned part of the committee work, and to participate in the implementation of such measures.

It is assumed that the working group will involve experts from outside the working group's circle of members in its work in connection with consultations or the establishment of special groups.'

The working group was chaired by Professor Lars Nordskov Nielsen. The composition of the working group is also set out in Appendix 1.

In connection with the establishment of the working group, it was assumed that the working group would be composed of persons who could act as independent members of the DJØF's executive committee and the association's branch boards as well as of public authorities/institutions.

At the end of September 1993, the working group on professional ethics submitted a report on professional ethical principles in public administration. The report is published by the Danish Association of Lawyers and Economists, and a summary of the report is printed in DJØFbladet no. 21 in 1993.

At the beginning of 1993, the professional ethics working group set up a special group on criminal procedure.

From the professional ethics working group:

| | |
|---|---|
| Secretary General Ole Stig Andersen | The Danish Bar and Law Society |
| Chief of Police Arne Baun (Chairman) | The Chief of Police in Gentofte |
| Attorney-at-Law Henrik Viltoft | |
| Professor Henrik Zahle | University of Copenhagen |

The following persons also took part:

| | |
|---|---|
| Attorney Thomas Peter Rørdam | |
| Attorney Merethe Stagetorn High | |
| Court Judge Holger Kallehauge | Eastern High Court |
| Deputy Judge Claus Larsen Judge | Frederiksberg |
| Judge Niels Viltoft Public | Court Lyngby Court |
| Prosecutor Erik Bjørn Merlung | Public Prosecutor for Zealand |
| Chief of Police Jørn Peter Clausen | Chief of Police of Næstved |
| Chief of Police Paul Wilken Kühl | Chief of Police of Silkeborg |
| Deputy Chief of Police Jacob Skov | Chief of Police of Odense |

Henrik Viltoft resigned from the special group in March 1993 in connection with his appointment as prosecutor in the impeachment case against former Viltoft. Minister for Justice Erik Ninn-Hansen.

Henrik Zahle resigned from the special group in September 1993 for work-related reasons.

Claus Larsen became 1. September 1993 appointed President of the City Court of Copenhagen.

In the autumn of 1993, Attorney Karsten West, Svendborg, joined the special group Pen.

Consultant Povl-Christian Jensen, DJØF, has acted as secretary for the group.

The terms of reference for the special group are stated in the minutes of the special group's 1. meeting on 8 November. February 1993, in which the chairman of the main working group, Lars Nordskov Nielsen, participated. Nordskov Nielsen stated, among other things:

> That the object of the special group's investigation was to get an opinion on criminal procedural problems seen from a judge's angle, a prosecutor's/policeman's angle and a defence perspective.

the complainant resists any temptation to private discussion and makes it clear without hesitation that the matter may be raised during the trial. If the inquiry concerns matters unrelated to the case, it must be up to the individual prosecutor to find a suitable excuse to bring the "meeting" to an end.

If the enquiry from the medical judge has been about the case and has also indicated/revealed a blatant and relevant misunderstanding of the facts of the case and/or law or worse still the medical judge's position on the case, it must be indispensable that the prosecutor as soon as possible draws the court's attention to what has passed.

Regarding the way in which the prosecutor and defence counsel are present, i.e. typically before and after a court hearing, there is probably only ethics in this to ensure that no one present can - rightly or wrongly - get the impression that the defence and prosecutor are conspiring about the case, whether it is its handling or outcome.

That this of course does not mean that all contact between prosecutor and defence counsel should be avoided, should be self-understandable, and any other guideline than that the prosecutor and defence try to be aware that preferably no one gets "anything wrong in their throat" can hardly be given.

Regarding the prosecutor's way of dealing with the defendant, or how the prosecutor treats the defendant, it must be said that much must of course depend on the nature of the case and the person of the defendant, but in general the old statement must be made: A prosecutor must never use his role/use his position of power in relation to the defendant solely for the purpose of increasing the humiliation, that implicitly lies in "sitting in front of the court", still being a guide for any prosecutor.

The nature of the case and the person of the accused must also set the framework for how a prosecutor can deal with a defendant. It is necessary to maintain respect for the prosecutor's task in the criminal process, and consequently the prosecutor must be given a considerable margin in the choice of procedure and form in relation to the defendant. In any case, it is a difficult balancing act, and in the heat of the match it is no easier to handle. If the prosecutor apparently crosses the line, it is the court's task to intervene.

## 5.6. Out-of-court contact

Contact between the prosecutor and the defence counsel outside the court is both inevitable and highly desirable for the sake of advancing the cases. How this

Tact takes place should generally not call for any interest from the outside world. The diversity of the cases and the persons provides a very broad framework for the form and content of the contact between the prosecutor and the defence counsel, without giving rise to professional-ethical considerations/challenges from the prosecutor's point of view.

For contact outside the court with the judge, please refer to section 3.4.

5.7. Specifically about the discussion with the defence counsel about the cutting of the case

As regards discussions with the defence counsel of the cutting of the case, especially with a view to advancing the case as a confession case, there is a need to consider the ethics. Such discussions may be similar to what is known in Anglo-Saxon law as plea-bargaining. In technical jargon, this is sometimes called "horse-trading". Questions may be raised as to whether it is possible to conclude agreements and whether others, in particular the court, should be made aware of it when an agreement has been concluded. Compare this above under section 4.6.

What is meant from a prosecutor's point of view by horse-trading in this context? This means an agreement with the defence counsel on a certain procedure for dealing with the case, a procedure which on both sides implies that something is both given and received, where one must admit to oneself that one's disposition in isolation is hardly professionally justifiable and reasonable.

The following situations occur in practice:

1) The agreement is that the prosecution service will not bring charges for any otherwise probable offences, and that the defendant will then plead guilty to the rest.

2) The agreement is that the defendant refrains from appealing the district court judgment, in exchange for the prosecution refraining from bringing further charges for some matters that have so far been separated from the case.

3) The agreement is based on the defendant explaining about the complicity of others in the crime, in exchange for the prosecutor limiting his or her sentence claim.

It must be all right to conclude the agreements mentioned in 1) - 2).

In 1) and 2), there can be no need for separate information from the court. Any notification of the notifiers in the circumstances that do not materialise is unlikely to contain information about the connection with the agreement.

In (3) it is obvious that the court must be informed. This follows from the fact that the circumstance must be observed in the sentencing, cf. cf. Section 80 of the Penal Code. However, the notification must be given immediately at the start of the trial in the interests of the defence of the co-offender. In addition, the question of whether the Chief Public Prosecutor's Office should give its consent is also warranted. Above in section 4.6, this type of agreement is assumed to be questionable when the accused's statement is to be used as evidence, which is the reason for the prosecution's interest in the agreement. The question of the admissibility of this practice should probably be clarified by legislation.

## 5.8. Enquiries from a superior authority in specific criminal cases

Section 98(1) of the Administration of Justice Act. 3, states that 'the Minister of Justice may issue orders to the public prosecutors concerning the handling of specific cases, including to commence or continue, refrain from or cease prosecutions'.

During the Folketing's consideration of the bill that led to Act no. 385 of 20. May 1992 amending the Administration of Justice Act (structure of the prosecution service, etc.), the Legal Affairs Committee submitted the following. Questions to the Minister of Justice:

"Has it not always been the Ministry of Justice's view in principle that service orders should not be given by virtue of the general relationship of superiority and subordination when it comes to the position of police chiefs and public prosecutors in specific criminal cases?"

The answer to that question states, inter alia:

"In previous practice, the Ministry of Justice has shown reluctance to intervene in specific cases by virtue of the general relationship of superiority and subordination. This reluctant line is to be expected to continue, even after the implementation of the bill on the structure of the prosecution service. Not only more fundamental reasons, but also practical reasons speak in favour of this.

However, the limitation of the right of appeal to the Ministry of Justice and the Director of Public Prosecutions does not mean that more significant and fundamental cases cannot be dealt with by these authorities. Thus, according to the proposal, the Ministry of Justice and the Director of Public Prosecutions will continue to be allowed to intervene in specific cases, including in cases that contain questions of principle or which for other reasons are found to be subject to reconsideration."

In some cases, it has happened that a head of department in the Ministry of Justice has contacted a prosecutor by telephone and - after announcing that they did not interfere in the handling of specific cases - informed that the minister believed/considered it right that the case was brought forward for indictment. This refers to cases which, in the prosecutor's opinion, were not of a fundamental nature. After the prosecutor presented the question through the official route to the Director of Public Prosecutions and by the latter to the Ministry, the "inquiries" have been withdrawn.

## 5.9. Professionalism under pressure from employees

At the main working group's hearing of police chiefs and police officers, several participants mentioned that they had experienced conflicts of loyalty between, on the one hand, the consideration of general procedural safeguards and, on the other hand, the consideration of good cooperation with police personnel.

If, during an investigation, the criminal police asked the lawyer to seek an interception or a search warrant obtained in court, it could give rise to disappointment if the lawyer refused to go to court after an assessment of the grounds. In such cases, it was easier for the lawyer to go to court with the case and leave it to the judge to refuse, because in the opinion of a professional lawyer there was not sufficient basis.

A police lawyer had experienced that the criminal police wanted an arrest extended for 3 times 24 hours in order to have time for some investigations. The lawyer was convinced that the investigations could be carried out without difficulty before the expiry of the 24-hour time limit. He experienced a problem not only in relation to the criminal police versus the arrestee, but also to the judge, who would hardly be able to determine that the investigation could be completed within the first 24 hours.

When a police lawyer decides to make a request for a warrant for a search, interception, maintenance of arrest or detention, this must of course be done after consideration on objective grounds. The considerations concern the question whether the conditions of the Act can be assumed to be fulfilled with the requisite degree of certainty. The considerations also include whether there is an objective investigative interest in obtaining the decision. The police do not apply for warrants just because the conditions must be met. However, it must be considered unreasonable to attach independent weight to the wishes or expectations of investigators or other police officers when weighing up whether the conditions of the law for such coercive measures are met. It is conceivable that the experience of deciding under pressure is especially the experience of the younger lawyer. Decision to obtain the above-mentioned judicial

U.1982.1027H

H. K. K. 13. September 1982 in Case 351/1982

The Director of Public
Prosecutions v

TI (adv. Gregersen e.o.), 72 (adv. Gregersen e.o.), T3 (adv. Jørgen Bang) and T4 (adv. Unmack Larsen e.o.).

14.1 Testimony of a U.S.
resident who was subject to a plea bargain found to be questionable.

+ In a case of violation of strfl. Section 191, the prosecution wanted to bring as a witness a person who, both in the United States, where he was staying, and in Denmark, was charged with violation of the narcotics legislation. In the United States, in the presence of representatives of the Danish prosecution service, the person in question had testified under oath about his and others' activities with regard to the import of narcotics in the United States and Denmark. It had been agreed that no further prosecution would be initiated in Denmark and that an extradition request would be withdrawn if he was convicted in the United States of the facts in which he had pleaded guilty, and agreed to give a truthful statement at a trial in Denmark about these matters. - Since, according to the content of the agreement, the person concerned had an obvious interest in giving evidence during the trial as during the investigation and in view of the circumstances in which the explanations had been obtained, it was considered doubtful, regardless of the scope and nature of the case, to allow the testimony to be heard.

Eastern High Court

The Eastern High Court's ruling of 25. June 1982 (5th Dept.). The defendants T1, - - -, T2, T3 and T4 have appealed against the Copenhagen City Court's order of 10. June 1982 (Case no. 2. dept. 1257, 1334, 1335 and 1336/1982), which ordered that the Public Prosecutor's application for the examination of A be granted, with a request that the requested testimony be disallowed The Public Prosecutor's Office has requested that the order be
confirmed. The appeal has been negotiated orally.

This is stated in the Danish translation of the 'Plea Agreement', which is correctly dated 20 April. May 1981, inter alia:
'A agrees to the representatives of the United States The Ministry of Justice and Denmark to give an open and truthful account of his knowledge of his own activities as well as of those of others of whom he is aware of the import, possession and distribution of narcotic drugs and dangerous substances subject to control regulations, and all other matters on which these representatives will inquire of him.
It is agreed that if A pleads guilty to the charges described above and is convicted and fully complies with the other provisions of this Agreement, the United States will not prosecute A for any other possible charges based on information provided by him pursuant to .
this Agreement. the Danish Government will by way of a preliminary ruling withdraw its ongoing criminal proceedings against A and withdraw its present extradition request.

It is further agreed that Denmark will not initiate any further prosecution against A for any criminal acts committed by him 1028 prior to 19 November. January
1981 }
concerning his importation, distribution or possession of any narcotic drugs or dangerous substances
are subject to control rules.
A must at all times provide complete, truthful and accurate information and statements. Should it be found that A has intentionally made false, incomplete, or misleading statements or information, or has otherwise violated any provision of this Agreement, this Agreement shall be null and void and A shall thereafter be subject to prosecution for any criminal offense under the laws of the United States and Denmark, whereby a conditional promise of impunity has been given to A in Denmark, it must be assumed that he, who is to be questioned with the legal status of an accused, will have an obvious interest in explaining during the trial in accordance with the explanations he has given during the investigation. However, it appears from the case file that, as part of
the prosecution's presentation of evidence, A wishes to be questioned about circumstances that must be considered to be of decisive importance for the investigation of the case. Accordingly, and taking into account the nature and scope of the charges brought during the proceedings, it is found that the prosecution should not be prevented from giving the requested testimony during the trial, which will be subject to the general rules on the assessment of evidence.

The Supreme Court

The Supreme Court's Appeals Committee's decision.

The decision of the Eastern High Court in this case has been brought before the Supreme Court by the defendants with the permission of the Ministry of Justice with the request that prosecution's application for
the production of A as a
witness should not be granted.
Three judges have participated in the decision of the appeal, which has been heard orally: Bangert, Funch Jensen and Pontoppidan.
In the Danish translation of the plea agreement referred to in the contested order, it is further determined about A's obligations:

'A further agrees to testify truthfully before any grand jury, at trial, in any (written) testimony or in any other trial or legal action in the United States or Denmark on any of the above-mentioned circumstances in the case. A agrees to provide, upon request, any and all documents relevant to the abovementioned facts of the case which are in his possession to representatives of the United States and Denmark.' A court
record from the United States District Court for the Northern District of California shows that on 26. May 1981, inter alia, to representatives of the Danish police, gave statements about a large number of violations of the legislation on narcotic drugs, including several of the facts covered by the indictment in the present case. The testimony was recorded on videotape, and the main points of the testimony were on 27 November. May 1981 at a hearing in the District Court. Both the out-of-court and the
in-court statements were given under oath. As stated in the order under appeal, according to the content of the agreement entered into, A will have an obvious interest in explaining during the trial in accordance with the explanations he has given during the investigation.

Copyright © 2022 Karnov Group Denmark A/S

Furthermore, in view of the circumstances in which, according to the information available, those statements have been obtained, it is questionable whether the requested witness should be admissible, irrespective of the scope and nature of the case.

For it is determined:

The prosecution's application for A to be called as a witness cannot be granted. 1

---

1      Defence fees DKK 2,000

A als GODATI __ _____ T. A

UfR ONLINE                                                                U.1993B.44

U.1993B.44

Criminal law 3.9 Criminal law 31.1

# The significance of the confession for sentencing

Summary What is the point of a person who has participated in organised crime in pleading guilty and, in particular, explaining the circumstances of other accomplices? A review of a number of recent unpublished judgments from the City and High Court shows that the courts in these situations are willing to mete out the sentences significantly more leniently. A 'discount' of a year or more is not unusual. Furthermore, the article discusses the legal situation in Germany, Sweden and Norway.

## By Police Attorney Carsten Egeberg Christensen

It happens in practical everyday life that a person from a criminal organization, often in the drug area, wants to put his cards on the table and tell both about his own - and especially about the criminal acts of fellow perpetrators. For the police and the prosecution service, this is, of course, a highly desirable situation, since it must be recognized that much, if not most, of serious organized crime is only fully solved through the explanations of those who have participated. However, explaining incriminating about other people's crimes is far from risk-free. In many cases, the outspoken person must expect direct revenge, actions from co-accused or count on gross harassment while serving time from so-called solidarity fellow prisoners. When such unpleasantness can be expected, the accused must necessarily raise questions about what he is in it for him to confess. In my view, the answer must clearly be a substantial reduction in the penalty. On the one hand, society has an obvious interest in getting rid of organized crime, and from a general human point of view, it almost goes without saying that the person who intends to talk and thereby expose himself to unpleasantness is not motivated if his explanation has no influence on the expected punishment. I am aware that my view may be associated with certain legal security concerns, which can nevertheless be overcome. However, in this article I have chosen to leave this part of the problem and concentrate exclusively on the question of legal basis, case law and the legal situation in our immediate neighboring countries. Furthermore, I would point out that the situations referred to here are only those in which it is obvious that it is the defendant's choice to give evidence that is the main reason why co-perpetrators have been able to be prosecuted. The public prosecutor's office cannot promise a lighter sentence, as the length of the sentence is determined by the court and not by the prosecution service. However, there is nothing to prevent the prosecutor from stating to the accused and his defence counsel during the investigation that if the accused, during an interrogation or during the trial, will lay "his cards on the table", the prosecution will at the trial point out to the court what consequences this has had for the further investigation. In the same connection, there is nothing to prevent the prosecution from recommending to the court that a lighter sentence be imposed on the defendant. The legal basis for the courts to impose the sentence more leniently in such cases is found in the general rule on the determination of the penalty in section 80 of the Danish Criminal Code. According to that provision, when determining the sentence, the court may, inter alia, take into account the offender's circumstances 'after the act', which means that the court may take into account circumstances within the meaning of this article. More specifically, there is also access to a reduction of sentence in the above-mentioned types of cases under section 84(9) of the Danish Criminal Code, according to which the sentence can be reduced when the offender has voluntarily turned himself in and made a full confession. The scope of the provision may give rise to doubts. Is it required that you have turned up at the police and put all the cards on the table, or is it sufficient that the accused, after being

been apprehended, completely voluntarily tells about circumstances that the police have no knowledge of. In U 86 page 284 H, the Supreme Court quoted in sentencing in a case of violence and narcotics strfl. Section 84 para. 1 no.9 re. a consignment of amphetamine of 120 grams, which was based solely on the defendant's confession. The legal situation should then have been clarified so that the concept of voluntary can be interpreted in accordance with section 22 of the Danish Criminal Code - regardless of whether the explanation occurs before or after an arrest. A similar case occurred in the judgment of the Hillerød Criminal Court of 10.1.89 (ss 79/83): A man, born in 1942, was charged under a section 925 case with violation of section 191 of the Danish Criminal Code in connection with the import of 210 to 235 kg of hashish. Pgl. had previously been punished with imprisonment for 1 year for violation of strfl. Section 191, and in the case in question there was a Section 89 situation with regard to the previous judgment.

During the proceedings, the defence counsel invoked strfl. Section 84 para. 1

45

no. 9 and referred to the defendant's detailed confession during the case, including his involvement of a significant number of people who the police would not otherwise have

revealed.

The court rejected the defense attorney's claim. It is stated in the judgment:

"that the defendant, after the accused's confession in the main offence, has admitted this and subsequent other circumstances, does not make section 89 of the Danish Criminal Code a criminal act. 1

no.9 applicable« It

is later stated in the judgment that the court took »to a lesser extent« in determining the sentence into account the circumstances invoked (as well as some special personal circumstances). But this has not been done on the basis of strfl. Section 84 para. 1

no.9.

The sentence was set at an additional sentence of imprisonment for 3 years.

Why the court with regard to the application of section 84 para. 1 no.9, came to the opposite conclusion of what the Supreme Court had previously concluded, cannot be read out of the judgment. But perhaps the court thought that the explanation of the many additional circumstances was not voluntary, as the defendant was a section 89 man and was therefore motivated to explain by a fear that the police would discover everything anyway and then they might as well now clear the slate." In most cases, it is probably irrelevant for the determination of the sentence whether one seeks the legal basis to mitigate the sentence in section 80 or in section 84 para. 1 no.9. However, in individual cases, the legal basis can be of great importance, as the court only has the right to go under the strait in section 84, while in section 80 you have to stay within the framework. The next question then becomes to what extent the courts outside of the cases mentioned in section 84 can in practice be expected to attach importance to the fact that the accused has acted as mentioned above. In U 1978, page 155, this problem was raised. The case concerned a centrally located drug dealer, who made a full confession in the district court, and during the investigation of the case, he contributed information that made it possible to dismantle the dealer organization. In sentencing, the district court emphasized the defendant's contribution to the investigation of the case and set the sentence at imprisonment for 6 years. The case was appealed by the prosecution with a request for aggravation. It is possible

Unfortunately, it has not been stated today what the background for this appeal was, but there has probably not been enough "footfall" between the prosecution in the 1. and 2. instance. The result in the High Court was in any case discouraging for the convicted person, who was imprisoned for 8 years. The question of the significance of the confession was not touched upon at all by the majority of the judges of the court. Two dissenting judges, who wanted to imprison for 6 years, said nothing about the significance of the confession. The case ended up in the Supreme Court, where the majority of 4 judges voted to uphold the verdict. However, a judge would only impose imprisonment for 6 years with reference to the district court's reasoning regarding the defendant's participation in the investigation of the case. If U 1978, page 155, is not to be seen as a concrete reasoned decision, but is also to be seen as an expression of a general attitude on the part of the courts in cases of this kind, it is of course not much that the defendant can expect if he puts his cards on the table. However, the following recent randomly selected judgments, but not from the Supreme Court, show that the confession is of significant importance for the sentencing. Judgment of the City Court of Copenhagen of 19 June 1990 (9061799).

A 24-year-old person was charged with violation of section 191 of the Danish Penal Code by having together with others in 2 cases contributed to the import of 90 kg of hashish and 70.6 kg of hashish, respectively, which he received from a Dutch courier car. In the first case, he brought the hashish to a holiday home on Zealand and in the second case, he was arrested by the police at the hashish handover. During the case, he had provided information that was of crucial importance for the police's ability to prosecute a number of persons who had been involved in the hashish affair around the first consignment of 90 kg The

defendant was sentenced to imprisonment for 2 years. The court referred to the fact that the defendant in a decisive way, in connection with the

transfer of the 90 .

kg of hashish, had contributed to the investigation of the matter.

in prison for 3 years.

Copenhagen City Court's judgment of 14. November 1989 (3843/83): In April 1989, a 26-year-old Englishman assisted a Dutch ringleader in handing over 3.4 kg of amphetamines and in attempting

to hand over a further 1 kg of amphetamine. Particularly regarding the principal, I should note that the latter, who from

46

The arrest of had disputed everything, "gave up" after he was presented with the Englishman's explanation.

The sentence was set at 4 years' imprisonment for the Englishman, among other things, on the grounds that he had given detailed explanations about his activities and thus contributed to the investigation of the case.

The person in question, who had had a pure 'stab in the boy' role, would under normal circumstances have been considered imprisonment for 5-6 years. Copenhagen City Court's judgment of 9 July 1990 (no. 9066451): The case

concerned a 24-year-old man who was accused of having stored 200 kg of hashish in his attic for others.

The district court considered him imprisonment for l/2 years. In determining the sentence, emphasis was placed on the fact that the convicted person had made a full confession and to a certain extent contributed to the investigation of the case. This participation, which is not mentioned in more detail in the judgment, consisted of

the defendant explaining who it was that he had the hashish batch for.

Under normal circumstances, the sentence would have been imprisonment for 3 years. Copenhagen City Court's judgment of 24 August 1990 (no. 9068616): The case concerned a 27-year-old foreign woman who had imported approx. 200 grams

heroin to Denmark.

After the arrest, she declared herself willing to cooperate with the police, so that one of the people who had sent her off with the drug

could be arrested and convicted.

It appears from the judgment that during the trial, the prosecution emphasized that the defendant had made a full confession and helped to solve the case. why the sentence should be meted out in this regard.

When determining the sentence, the court referred to the circumstances invoked by the prosecution.

Under normal circumstances, the punishment would have been imprisonment for about 2

years Copenhagen City Court's judgment of 1. November 1990 (no. 9073076): A 26-year-old male foreigner convicted of smuggling 105 grams of heroin and 102 grams of cocaine. Both of very high strength. Pgl. was sentenced to imprisonment for 1 year and 3 months. The sentence was determined taking into account his contribution to the investigation of the case.

The normal punishment had been imprisonment for about 2 years. Copenhagen City Court's judgment of 18. April 1989 (No. 1208/89): A 38-year-old male foreigner was subjected to the import of approx. 1 kg of cocaine of high strength sentenced to imprisonment for 2 years and 6 months. The sentencing was justified by his participation in the investigation of the case. The normal punishment had been imprisonment for a minimum of 4 years.

The Eastern High Court's appeal judgment of 13. May 1990 (2nd Section a.s.nr. 651/89): A 22-year-old female foreign national residing in Denmark assisted in the transfer of 1 kg of heroin and the importation of a further 300 grams. During an interrogation in court, she gave incriminating statements about 4 other people who would not have been convicted without her explanation.

During the district court proceedings, the following statement was made to the court record: »The prosecutor states that the prosecution agrees that this case, which differs significantly from other cases concerning violation of section 191 of the Danish Criminal Code, is assessed in terms of sentencing according to sections 85 and 85 (85) of the Danish Criminal Code. 5 and no.9.

The District Court, with reference to the prosecution's statement, set the sentence to imprisonment for 1 year and 6 months, which was made conditional on 200 hours of community service with reference to sections 85 and 84 of the Danish Criminal Code. 1, nos. 5 and 9. The reference to no. 5 was due to the fact that the convicted person had been dating the main man, whom she also incriminated by her testimony The Public Prosecutor did not agree with the lenient sentencing and

appealed the sentence, which was changed by the Eastern High Court to imprisonment for 2 years, as the court stated that the sentence should be increased according to the nature of the crime. Furthermore, the

High Court did not find that such circumstances existed, that there were grounds for making the sentence conditional.

With this amendment, the High Court upheld the judgment, i.e. it did not distance itself from the views that formed the basis for the District Court's sentencing. The

normal punishment had been imprisonment for about 5 years. The Eastern High Court's appeal judgment of 15

November 1991: The case concerned a 26-year-old German citizen with no connection to Denmark. Together with someone else, he smuggled 8 kg of amphetamines from Germany via Denmark to Sweden. The accused, who had been arrested and remanded in custody in this country in connection with a relatively modest drug charge, told on his own initiative during his detention that he had participated in the above-mentioned matters, which the police had no idea about. He could also tell that the substance was hidden in a certain hotel room in Stockholm. where the Swedish police found the amphetamine consignment, hidden behind a mirror.

47

The District Court set the sentence at imprisonment for 7 years, stating that in determining the sentence, emphasis had been placed on the extent of the defendant's activities on the one hand and the fact that the defendant had contributed significantly to the investigation of the case. In addition to the existence and location of the substance, he had also explained

about the case's co-perpetrators.

The High Court upheld the verdict: The main man was imprisoned for 8 years. So there was no question of a big »discount«. It may be surprising that no one during the High Court proceedings referred to section 84 para. 1 no.9. The case was in many ways identical to the above-quoted Supreme Court judgment, which cited section 84.

Hillerød District Court's judgment of 17 June 1988 (no. SS 34/1986): A 38-year-old man who over a 4-year period had bought 40 kg of hashish, of which he had 36 kg resold

Furthermore, over a 4-year period, he had purchased approx. 4.1 kg amphetamine

and of which 3.5 kg has been sought.

The sentence was fixed at imprisonment for 4 years and 3 months.

The court stated that it had been given the decisive importance in mitigation that the defendant through his statements had not only brought about the investigation of crimes that otherwise would hardly have come to knowledge, thereby contributing to the clarification of his own case, but also provided the opportunity to solve the

crimes committed by many other persons.

It is difficult to state any definite normal punishment position in this case, as the sentence was handed down before the Supreme Court tightened the amphetamine practice in

1988, but I estimate that the normal sentence at that time was 5 years. Hillerød Criminal Court's judgment of 30 August 1988 (SS no.34/86): The case concerned a 33-year-old man who was accused of having purchased 145 kg of hashish over a 10-year period, of which he had 138 kg resold. Furthermore, he tried to contribute to the production of approx. 750 grams of amphetamine, as he had to get a chemist The sentence was fixed at imprisonment for 3 years and 6 months. Mitigating reasons were cited as a small profit in the

hashish relationship, an insignificant involvement in the amphetamine relationship and the fact that the convicted person had given very detailed explanations that had contributed significantly to the clarification of other parts of the case. The sentence would normally have been around 4-4 1/2 years in prison.

The defendant has contributed to the clarification of a major Sag.

In German law, in cases concerning drug offences, there is a direct legal basis for a reduction of the sentence under Section 31 of the BetDubungsmittelgesetz. The provision states that: "The court may, at its own discretion, reduce the sentence - - - or waive the sentence - - - if the offender 1) by voluntarily disclosing his knowledge has contributed significantly to the fact that the criminal offence has been solved in addition to his own contribution to the offence, or 2) has voluntarily disclosed his knowledge to a place of employment (the police) in such a timely manner, that the criminal offence -- - the planning of which he knows about, can still be prevented. The legal basis is often used. When a person is arrested in a more serious drug case in Germany, it will usually be seen that he is already being instructed at this early stage on the content of Section 31. Information that this guidance has taken place is stated in the report in line with what we know in Danish police reports regarding compliance with section 752 of the Administration of Justice Act. It has not been possible for me to find recent statistics on. the extent to which the provision is used. The German Government stated a few years after the entry into force of the provision that it had been used for approx. 500 cases in the period from 1.1.82 to 30.6.1983, cf. H.H. Kvrner, BetDubungsmittelgesetz. 3. Auflage. In Swedish law, it is theoretically not possible to reduce the sentences because the accused has explained about others, since »discount« according to the Swedish Criminal Code's chap. 29 § 5 para. 3 can only be given "if the accused has voluntarily turned himself in". In paragraph 1 of the same provision. 8, however, it is permitted to reduce the sentence "if there is any other circumstance that calls for the accused to receive a longer sentence". The wording of the provision does not appear to prevent the court from imposing a lighter sentence in such cases. However, in a case from 1991, the Supreme Court refused to use the provision against 2 people who had bought 95 grams of heroin and during the criminal proceedings told who the supplier was. However, there are indications that the practice is not entirely in accordance with the Swedish Supreme Court. According to information that emerged during a joint Nordic comparative seminar on case law in drug cases in Sigtuna on 27 November, there is a lack of information about the case-law of the European Union. and 28.11.1990, it seems that a »discount« is given to the person who, through his or her testimony, helps to reveal the complicity of others in the crime. In conversations with Swedish colleagues, I have understood that the milder

48 .

Sentencing is then based on the general rules in Chapter 29 of the Criminal Code § 1-4 on the courts' assessment of the sentence. In Norway, according to information also provided at the above-mentioned seminar, the Supreme Court has recognized the 'discount principle' in cases where

U.1998.1317H

Reduction of the sentence for narcotics offences, taking into account participation in the investigation of the case,

Criminal Law 262.2 Criminal Law 31.1

+ A 34-year-old Iranian citizen T at the time of the crime had been found guilty of violating section 191(1) of the Danish Criminal Code. 2, cf. Stk. 1, 2. In June 1997, by importing 2,206 grams of heroin from Sweden to Frederikshavn for the purpose of transferring 2,206 grams of heroin from Sweden to Frederikshavn, the High Court sentenced T to imprisonment for 6 years on the grounds that he had only acted as a courier. Before the Supreme Court, the parties agreed that this punishment was in accordance with practice. The Supreme Court stated that pursuant to the Danish Penal Code,

Section 80 (1) of the Criminal Code. 1, it should be possible to take into account information from the prosecution service that the accused had provided assistance to the police and the prosecution service during the investigation, including by giving evidence about co-offenders, regardless of the fundamental and legal security concerns that may be associated with such an arrangement. In the present case, the prosecution had stated that the defendant had contributed valuable information of importance to the investigation, and with reference to this, the sentence was reduced to imprisonment for 5 years. (Dissent).1

H.D. 17. June 1998, Case I 11/1998

The Director of Public Prosecutions

courage

T (adv. Thomas Rørdam, Cph ., e.o.).

The Western High Court

The Western High Court's judgment of 16. December 1997 (6th Dept.). (Jochimsen, Fabrin, Michael Lynge Jensen (kst.) with jurors).

In this case, which has been heard with the assistance of jurors, T has been indicted by indictment dated 3. September 1997 from the Public Prosecutor in Aalborg as corrected during the court proceedings put under indictment for violation of section 191(1) of the Danish Criminal Code. 2, cf. Stk. 1, 2. by having imported, in violation of the legislation on narcotic substances, for the purpose of transfer, a significant quantity of particularly dangerous or harmful substance, as the defendant on 9. June 1997, 2,206 grams of heroin imported into Frederikshavn from Sweden.

Pursuant to section 75(1) of the Danish Criminal Code, the prosecution service has 2, no. 1, claimed the confiscation of 2,218 grams of heroin. Furthermore, pursuant to section 22(no. 3 and 4; Section 32(1) 1, requested that the defendant be expelled from Denmark with a permanent entry ban.

The defendant has pleaded not guilty, but has pleaded guilty to violating section 191(1) of the Danish Criminal Code. 2, cf. Stk. 1, 1. On importation of 1/2 kg of heroin for the purpose of transfer, his

has only included this quantity. He has also invoked section 84(1) of the Danish Criminal Code. 1, no. 4 and no. 9. The defendant has acknowledged the claim for confiscation, but has claimed that the claim for deportation should be

dismissed.

The defendant was born on -__ ___ -- 1962 in Iran and has no previous criminal record.

---

A main question has been asked to the jurors in accordance with the indictment. Furthermore, the jurors have been asked a main question in the alternative as to whether the defendant is guilty of a violation of section 191(1) of the Danish Criminal Code. 2, cf. Stk. 1, 1. On the other hand, he had imported 1/2 kg of heroin under the circumstances stated in the indictment. The jurors have answered the main question of the main question:

Ignition.

The court has based its decision on the jury's conviction. On 15. July 1997 made the following statement:

Information:

"The Immigration Service must state that T entered Denmark on 17. May 1991 and applied for asylum.

By the Immigration Service's (formerly the Directorate for Foreigners) resolution of 12. March 1993, T was granted a residence permit in Denmark for the purpose of permanent residence in accordance with the Aliens Act

Section 7(1) 2. The authorisation was provisionally granted until 17 December. May 1996 and is no later than 28 May. April 1997 extended valid as long as permanent residence in

Denmark is retained.

The person in question is thus staying in Denmark as a refugee with de facto status pursuant to section 7(1) of the Aliens Act. 2 and the legal basis for expulsion must be sought in section 22 of the Aliens Act. It appears from the case file that the person in question is charged with violation of section 171 of the Danish Criminal Code for offences committed in 1995-1996 and section 191(1) of the Danish Criminal Code. 2, for an offence committed on 9 November. June 1997.

By Act no. 1052 of 11. December 1996, section 22, no. 4 on expulsion on the grounds of narcotics offences inserted in the Aliens Act. The law entered into force on 13. December 1996. According to general principles, cf. section 3 of the Danish Criminal Code, the provision only applies to offences committed after the entry into force of the Act. T is staying in

Denmark as a refugee and the legal basis 1318 for expulsion must be sought in section 22, no. 3 and § 22, no. 4.

According to section 22, no. 3, a foreign national with a residence permit pursuant to section 7 may be expelled if the foreign national is sentenced to an unconditional sentence of at least 6

years of imprisonment or other criminal consequences of a deprivation of liberty and the foreign national, taking into account the sentence imposed and the nature and seriousness of the crime committed, should not remain

in Denmark.

According to section 22, no. 4, a foreign national with a residence permit pursuant to section 7 of the Aliens Act may be expelled if the foreign national has been sentenced to an unconditional custodial sentence or other criminal legal consequence of a deprivation of liberty pursuant to the Act on Euphoriant Substances or section 191 or 191a of the Danish Criminal Code.

According to section 26(1) of the Aliens Act. 1, a decision on expulsion must take into account whether expulsion is to be considered to be particularly burdensome. This provision lists a number of factors that must be included in this assessment, including the foreign national's ties

to Denmark.

This is stated in section 26(1). 2, that a foreign national may be expelled pursuant to section 22, no. 4, unless the provisions of paragraph 4. 1 mentioned factors speak decisively on the contrary.

It appears from the explanatory memorandum to the bill that narcotics offences must be considered to be of such a serious and dangerous nature that the considerations mentioned in section 26 are only in exceptional cases to be given decisive importance in a decision on expulsion pursuant to section 22. no. 4.

---

1 U 1978.155 H, The Prosecution Service's Annual Report 1983 p. 108, Juristen 1994 p. 265 et seq. (report submitted by DJØF's professional ethics working group), The negotiations at the 34th Congress. Nordiska Juristmøde (1996), part I p. 289 ff, 304 ff, Elsebeth Rasmussen in U 1980 B p. 153 ff, same in U 1983 B p. 311 ff, John Peter Andersen in Juristen 1985 p. 167 ff, Egeberg Christensen in U 1993 B p. 44 ff, Gammeltoft-Hansen: Strafferspleje I (1997) p. 202 ff, Norsk Rt. 1995 p.

238, 242 and 1975, Andenæs: Alminnelig Straffrett (4th ed.) p. 424 f.

Copyright © 2022 Karnov Group Denmark A/S

According to the information in the case, T does not have any family ties at the time of removal and is considered to be covered by the provisions of the Aliens Act

Denmark, nor is there any information on the
as mentioned in section 26 of the Aliens Act, which may indicate that a claim
whether deportation should be dispensed with.

Taking into account the nature and seriousness of the crime committed combined with the lack of ties to Denmark,
The Immigration Service recommends that the prosecution service an application is made for expulsion, cf. Section 22(2) of the Aliens Act. 3 and no. 4.

If the conditions for the expulsion of the person concerned are otherwise may be met, it should be noted that it follows from the
Section 32(1) of the Act. 1, that the expulsion must be accompanied by an entry ban tender, and a fixed-term entry ban must be set in such a way that the Expires a 1. January or a 1. July.

It would be in accordance with case law to abolish expulsion is valid for permanent if there is a
A custodial sentence of more than 1 year's duration is requested for 10 years if a custodial sentence from 4 months is applied for
for 1 year, and for 5 years if the claim for a custodial sentence is less than 4 months. down.

. . . «

In a letter dated 22. July 1997 stated the following:
they:

'It appears from the case file that T, born on 1962, entered Denmark, 17. May 1991. On 25. September 1992 he was
The Directorate of Aliens (now the Immigration Service) notified
Refusal of a residence permit pursuant to section 7 of the Aliens Act. Af-
decision was appealed to the Refugee Appeals Board, after which the Directorate for Foreigners resumed the case and on 12. March 1993 granted the residence permit in question pursuant to the
Section 7(1) of the Act. 2.

As a motive for asylum, T referred to the fact that he was briefly arrested in 1986 and questioned because of a series of photos he had made. On 1.
In March 1990, he was arrested by SEPAH after participating in a demonstration of the stration that occurred after a football match. During a subsequent A search of his residence found three pictures of the Shah and a video footage from the Shah's funeral. T was imprisoned for 14 months, where he was continuously exposed to various forms of physical
and psychological torture, among other things, in connection with interrogation. He was by means of bail and bribery released on 25 November. April 1991 with Duty to report every 14 days. day. A few days after his release, he left the crossed the border to Pakistan and on to Denmark and complied with the Thus not the duty to report, which is why he was wanted in his home country. He has never had any political affiliation or exercised police powers. activities in Iran.

As regards the asylum law, the Refugee Appeals Board must state that: the basis that originally led to the granting of a residence permit to T permit pursuant to section 7 (1) of the Aliens Act. 2, even today
would be considered to be able to justify a residence permit pursuant to the Section 7 of the Aliens Act.

Thus, in the light of the immigration authorities' practice and in view of the prolonged detention and torture to which T has been exposed, in conjunction with the person's failure to comply with the duty to report, it is assumed that would also find today that T should not be required to return to Iran.
If T is expelled by a judgment with the effect that his residence permit pursuant to section 7(1) of the Criminal Code is invalidated. 2 lapses, cf. Section 32 of the Aliens Act,

Stk. 1, however, it follows from section 31(1) of the Aliens Act. 1 that he cannot be deported to his country of origin, or to a country where he is not protection against transmission to the country of origin if he is deported at the time of the persecution of the refugees in their home country The Convention of 28. July 1951, Article 1 A, cited reasons. Must T

Section 31(1) 2, 1. On the basis of the same reasons as those set out in the Convention, or other weighty reasons should not be required to travel to the home country, cf. Section 7(1) of the Aliens Act. 2, he will however be able to be deported to the home country if it is deemed that the reasons mentioned in the

1319 ¦

Section 31(1) of the Aliens Act. 2, 2. Pkt. The Refugee Appeals Board does not find at this time.
It is added that circumstances in the foreign national's home country which are subject to the sentence period
point may prevent deportation, according to the Refugee Appeals Board's opinion must be assessed by the court deciding on the expulsion question, cf. Section 26(no. 5. This applies
also matters of a legal nature of asylum, cf. hereby section of the Aliens Act
57 pcs. 1, and the comments on this in report no. 968/82,
pages 230-231. Reference may also be made to the report on page 57-58 and page 177. An assessment of whether, despite a possible conviction,
sentence should not be expelled due to changes in the
the circumstances of the convicted person, including in terms of asylum law, must therefore be
shall also be decided by the courts in accordance with the rule in Section 50 of the Aliens Act.

If, after a possible deportation judgment, T does not wish to leave of the country voluntarily, the police take care of the departure. If police intend to deport the person in question to Iran, he will could invoke the protection under
cf. Section 31 of the Dinge Act. The Immigration Service may hereafter as 1. instance decide whether section 31 prevents the removal. You have to request that T be informed of this if he is expelled by
a verdict."
The sentence is determined in accordance with section 191(1) of the Danish Criminal Code. 2, cf. Stk. 1, 2. Pkt.

19 votes have been cast in favour of setting the sentence to imprisonment in 6 years and 5 votes in favour of fixing the sentence at 5 years' imprisonment.
A verdict shall be pronounced by a majority of votes, so that the sentence shall be determined.
sentenced to imprisonment for 6 years. In the penalty, there is on the one hand, emphasis on the quantity and nature of the smuggled substance and on the other side on the fact that the defendant has only acted as a courier.

Pursuant to section 75(1) of the Danish Criminal Code. 2, no. 1, the defunct Confiscation claim is the result -. — —.

Regarding the deportation issue, the voter finds a total of 20 that the conditions for expulsion under the
Section 22(2) of the Act. 3 and 4 are fulfilled and that none of the provisions of section 26 of the Aliens Act may lead to the exclusion of expulsion. Heref- and since the defendant wishes have the opportunity to invoke the
Sections 50 and 31 of the Aliens Act, these deliberators find that the defendant in pursuant to section 49(1) of the Aliens Act. 1, cf. Section 32; Section 22, no. 3 and 4, should be expelled with an entry ban permanently.

The voter with 4 votes does not find that the conditions for expulsion. and therefore votes in favour of the application for a deportation is not granted.

Thereafter, the application for expulsion with entry into the prohibition forever as a result.

— — —

The defendant must pay the costs of the case.

The Supreme Court

The Supreme Court's judgment.

1 previous instance has been given a judgment by the Western High Court's 6. Department on 16 December 1997.

Five judges have participated in the judging: Pontoppidan, Hermann, Marie-Louise Andreasen, Wendler Pedersen and Lene Pagter Kri- Stensen.

UfR ONLINE
U.1998.1317H

The judgment of the Western High Court has been appealed by the defendant with a request for an

C

The prosecution has requested confirmation.

It is agreed between the parties that a sentence of imprisonment for 6 years is in accordance with the practice of a courier company such as the present one.

In support of the claim for leniency, the defence has argued that the sentence has not taken into account the fact that the accused has significantly helped the police in solving the case, cf. hereby section 80(1) of the Danish Penal Code. 1. The defence counsel has also referred to the personal circumstances, including that he acted under pressure, cf. Section 84(1) of the Penal Code. 1, no. 5. Before the Supreme Court, the defence counsel has not invoked section 84(1) of the Danish Criminal Code. 1, no. 4 and 9.

With reference to the memorandum and minutes mentioned below, the prosecution has stated that, depending on the circumstances, it should not be excluded that the defendant's participation in the investigation of the case may be taken into account in the sentencing.

During the sentencing hearing in the High Court, Detective Assistant Carl Johan Andersen, Frederikshavn Police, explained, among other things, that the defendant has been cooperative from the start. By the defendant's description, it has been possible to identify the two ringleaders in the case. Among other things, it was information from the defendant that led to the arrest of one of the ringleaders, and a warrant has been issued for the other ringleader, who is not currently in the country. He knows that an acquaintance of the defendant has been approached by some people with ties to one of the ringleaders

In a memorandum dated 13. December 1994 prepared by the Director of Public Prosecutions on the right to plea-bargaining, it is stated, inter alia:

'Against the background stated, the problems relating to pleabargaining appear to be as follows for the prosecution:

### B) Confession involving accomplices.

(1) Nor can there be any 'action' in relation to the sentencing, which is determined by the court.

An indication that the prosecution in court will highlight the defendant's extensive explanations about co-perpetrators as a factor to reduce punishment is considered by the defence in DJØF's ethics group and most theorists to be inadmissible due to the risk of false explanations.

Most practitioners in the prosecution service will probably disagree with this, as the lack of opportunity for such an expression (probably especially in narcotics cases)

1320

may entail a significant limitation in the possibilities of investigation. Case law in the district courts and perhaps also the high courts also seems to accept such offers by implication, whereas this does not seem to be the case with regard to the Supreme Court, cf. U 1978.155 H. Due to the age of this judgment, there might be reason to present this element of sentencing to the Supreme Court on occasion at the new.

The stated risk of false explanations can hardly be completely dismissed. On the other hand, this element, which is openly presented in court in the cases against the co-perpetrators, like many other factors, may be included in the court's free assessment of evidence. In view of the fact that the effect of this is entirely left to the court, which is familiar with, inter alia, U 1978.155 H, there could be some indications that the procedure should be applicable. However, the many uncertainties in the impact should probably lead to such agreements not being concluded. A mere mention of the provision in section 84(1) of the Danish Criminal Code. 1, no. However, Amendment No 9, with the uncertainty factor in the impact listed above, is hardly unacceptable.

2) Offers of prosecution limitation in return for explanations about accomplices should not be made . . . Here, the risk of incorrect explanations is probably too great.

The same clearly applies to promises not to make claims for disqualification and confiscation. Those legal consequences have a purpose other than the penalty.' From a report from a public prosecutor's meeting held in January 1998, it appears, among other things, that the Director of Public Prosecutions' memorandum of 13. December 1994 has been sent to The Ministry of Justice, however, has not taken a general position on the problems of plea-bargaining mentioned in the no. the Trump. It is further stated in :

the minutes: "After discussion, it was agreed that it should be possible to make statements such as those mentioned after a very specific assessment. B 1)]. The need will probably most often exist in major drug cases.

In view of the fact that such a statement implies a disposition in relation to the prosecutor's handling of the case, it is assumed that the question is always submitted to a qualified lawyer. Furthermore, it must be made very clear to the accused that there is no certainty that statements about co-perpetrators will lead to a reduction in the sentence.

The public prosecutors shall inform the Office of the Director of Public Prosecutions of any judgments that rule on cases such as the one mentioned.'

The Supreme Court's observations.

There is no basis for reducing the sentence pursuant to section 84(1) of the Danish Criminal Code. 1, no. 5.

Four judges - Pontoppidan, Hermann, Wendler Pedersen and Lene Pagter Kristensen - then state: Section 80 of the Danish Penal Code. 1, provides for the possibility of taking into account the fact that the accused has participated in the investigation of the case, including when giving evidence about co-offenders. In our opinion, it is of considerable importance for the investigation of major drug cases and certain other serious cases, where experience has shown that the investigation is particularly difficult and problematic, that it is possible to motivate an accused person to contribute to the investigation of the case. Such a motivation may be the prospect for the accused that his own punishment will be reduced. In view of this, we find that it should be possible to take into account information from the prosecution service that the accused has provided assistance to the police and the prosecution service during the investigation, regardless of the fundamental and legal security concerns that may be associated with such an arrangement. In this connection, we note that in the course of any criminal proceedings against persons who have been designated by the accused as co-perpetrators, it may be included in the assessment of the accused's information that this has led to or may lead to a reduction in his own sentence. With reference to the above, we vote in favour of reducing the sentence to imprisonment for 5 years.

Judge Marie-Louise Andreasen states: A general access to a reduction of sentence for defendants who give evidence to the police about accomplices entails such a significant risk that false statements will be given that could lead to incorrect convictions that - regardless of the investigative considerations - one should, in my opinion, refrain from allowing such assistance to the police to influence the sentencing. This applies even if it is stated during any criminal proceedings against the co-perpetrators that the sentence for the whistleblower has been reduced with the consent of the prosecution service because of such explanation. I am therefore voting in favour of confirming the judgment. The decision is made by a majority of votes.

It follows that the reference in the High Court's judgment to section 22(no. 3 is deleted, so that the prosecution's claim is upheld pursuant to section 49(1) of the Aliens Act. 1, cf. Section 32; Section 22, no. 4 The defendant

has continued ‚
  to be imprisoned during the appeal.

The High Court's judgment

is changed so that T is punished with imprisonment for 5 years. The costs of the proceedings before the Supreme Court must be paid by the State Treasury.

On 26. June 2008 at 9.00 a.m.

the thing site in Viborg.


High Court Judge Lars E. Andersen acted as judge.


As court clerk,               Employee at the court .


V.L. S-2475-07


The Public Prosecutor's Office

courage



Og


The High Court ruled as follows by the judges Lars E. Andersen,

Annette Dellgren and Niels Toft-Vandborg (kst.) adopted


Order:


By indictment dated 30. August 2007, the Court of First Instance ruled in favour of the Court of First Instance

Aarhus brought charges against          Accused 1         ,      Accused 2

Og        Accused 3         for violation of, inter alia, criminal

Section 191(1) of the Act. 1, 2. Pkt. and pcs. 2, cf. Stk. 1, 2. Pkt.

In counts 1-3 of the indictment, it is stated:


# 1. ,

The defendants          Accused 1        Og      Accused 2


Section 191(1) of the Penal Code. 1, 2. Pkt. and pcs. 2, cf. Stk. 1, 2. in the
summer of 2000 in conjunction with

        Person 1        Og      Person 2      ,with

proceed to transfer to a larger group of persons or for considerable
remuneration, for separate remuneration, in accordance with mutual
agreements, to have jointly received and imported or let approx. 50.000

- 2 -

ecstasy tablets imported from the Netherlands to Denmark, and here repackaged and forwarded or had the tablets repackaged and forwarded, from Aarhus to Atlanta, Georgia, United States, and there transferred or caused to be transferred the ecstasy tablets to a large number of persons or for substantial consideration or for the purpose of such transfer,

- ████ Accused 1 ████ in the United States, entered into an agreement with ████ Person 2 ████ on the shipment and method of shipment of ecstasy tablets from the Netherlands via Denmark to Atlanta, USA, for a fee of USD 1 per person. delivered tablet on which

- ████ Accused 1 ████ Og ████ Accused 2 ████ in combination with ████ Person 2 ████ picked up or loaded approx. 50,000 ecstasy tablets, purchased by ████ Person 1 ████ pick up and transport from Amsterdam, the Netherlands, to Denmark, where Accused 2

- ████ Accused 1 ████, as part of the agreement with ████ in his summer house, ████ Address 1 ████ City 1 , stored and packed or had the tablets stored and packed in provided furniture legs, after which

- ████ Accused 1 ████ Og ████ Accused 2 ████ Further-sent or had the tablets forwarded from Aarhus to Atlanta, Georgia, USA, addressed to a fictitious furniture company, in which connection Person 2, as part of the agreements, collected the tablets from a freight forwarding company with a view to onward transfer with a total dividend for the defendants of not less than USD 1 per person. ecstacytablet

2.

All the defendants

Section 191(1) of the Penal Code. 1, 2. Pkt. and pcs. 2, cf. Stk. 1, 2. in the period around September - November 2000 in conjunction with



████ Og ████ Person 2 ████, with the intention of transfer to a larger group of persons or for substantial remuneration, for separate remuneration, having jointly received and imported or transferred approx. 150,000 ecstasy tablets imported from the Netherlands to Denmark, and here repackaged and forwarded or had the tablets repackaged and forwarded, from Aarhus to Atlanta, Georgia, United States, and there transferred or caused to be transferred the ecstasy tablets to a large number of persons or for substantial consideration or for the purpose of such transfer,

- 3 -



- ███ Accused 1 ███ in the United States, entered into an agreement with ███ Person 2 ███ on the shipment and method of shipment of ecstasy tablets from the Netherlands via Denmark to Atlanta, USA, for a fee of USD 1 per person. delivered tablet, on which all the defendants, together with



- ███ Person 2 ███ picked up or loaded approx. 150,000 ecstasy tablets, purchased by ███ Person 1 ███, pick up and transport from Amsterdam, the Netherlands, to Denmark, during which ███ Accused 3 ███ Drove ███ Person 2 ███ from Aarhus to Hamburg to receive the tablets, and whereupon Accused 2

- ███ ███, as part of the agreement with ███ Accused 1 ███, in his summer house, ███ Address 1 ███, City 1, stored and packed or had the tablets stored and packed in provided furniture legs, after which

- ███ Accused 1 ███ Og ███ Accused 2 ███ Further- sent or had the tablets forwarded from Aarhus to Atlanta, Georgia, USA, where Defendant 2

- ███ ███ as part of the mutual agreement, collected the tablets from a storage room and handed them over to the ███ Person 2 ███ for the purpose of onward transfer, with a total dividend for the defendants of not less than $1 per share. ecstacytablet

3. .

All the defendants

Section 191(1) of the Penal Code. 1, 2. Pkt. and pcs. 2, cf. Stk. 1, 2. point by the period from January 2001 to December 2001 in conjunction with ███ ███. Person 2 with the intention of transferring to a larger group of persons or for considerable remuneration, for separate remuneration, having jointly received and imported or let approx. 50,000 ecstasy tablets imported from the Netherlands to Denmark, and here repackaged and forwarded or had the tablets repackaged and forwarded, from Aarhus to Atlanta, Georgia, USA, and there transferred or caused to be transferred the ecstasy tablets to a large number of persons or for substantial consideration or for the purpose

of such transfer,

- ███ Accused 1 ███ By agreement with and payment, approx. Fra ███ Person 2 ███ 50,000 ecstasy tablets in the Netherlands by an unidentified person on which

- 4 -

- the defendants picked up or had the ecstasy tablets picked up and transported from Amsterdam, the Netherlands, to Denmark, where Defendant 2

-  Under the agreement with the  in his summer house, City 1, stored and packed or had the tablets stored and packed in provided furniture legs, after which

-  Og Further- sent or had the tablets forwarded from Aarhus to Atlanta, Georgia, USA, where

-  in accordance with the agreement with the others collected the tablets from a warehouse in Atlanta, and where

-  together with the ecstasy tablets to the in a hotel room where the tablets were counted in the presence of the defendants before the placement in one of the  Og Bearing storage room for the purpose of transfer with a total dividend for the defendants of not less than $2 per share. ecstacy."

During the main hearing in the district court, the defendants defenders against allowing the prosecution to

lead ▇▇▇Person 2▇▇▇ , ▇▇▇Person 1▇▇▇ , ▇Person 3▇ Og ▇▇Person 4▇▇ as witnesses, as they had entered into "pleas" agreements" with the US authorities.

On 20. November 2007, the District Court made the following ruling:

"It is the opinion of the magistrates' court that the witnesses Person 2 Person 1, Person 3 and Person 4 entered into "plea agreement" agreements are in reality identical to the agreements referred to in the Supreme Court judgment Ufr. 1982/1027. Although the Danish Public Prosecutor's Office is not a signatory to the agreements at issue in this case, the Public Prosecutor's Office subsequently acceded to them by undertaking that the witnesses would not be prosecuted in Denmark in connection with this case.

The witnesses have undertaken to give truthful testimony in the manner required by the authorities

- 5 -

and has given evidence in Atlanta during video recording and during oath in court.

The Danish prosecution service has undertaken to subsequently provide the American authorities with information about the witnesses' behaviour and statements given in Denmark. This could have a direct impact on whether the witnesses in the United States can obtain a reduction in sentence/further reduction of sentence. The witnesses must therefore be presumed to have a very obvious interest in giving evidence during this main hearing in accordance with the explanations they have given during the investigation.

Regardless of the scope and seriousness of the case, it is the opinion of the magistrates' court that the production of the said four witnesses is associated with such legal security concerns that the testimony should not be allowed."

By judgment of the Court of Aarhus of 3. December 2007



The action was therefore dismissed in counts 1-3. Immediately after the verdict was pronounced, the sentence was appealed by the prosecution with a request for conviction in accordance with the change of charges as well as for sharpening.

The case is scheduled to be heard in the High Court in the period from 8 November. September to 25. September 2008.

On 7. April 2008 to separate the question the objective of whether the prosecution service can conduct ▓Person 2▓ ▓, ▓Person 1▓, ▓Person 3▓ Og ▓Person 4▓ as witnesses during the main hearing in the High Court.

The question has been debated orally.

The prosecution has requested that it be allowed

to lead ▓Person 2▓, ▓Person 1▓, ▓Person 3▓

- 6 -



Og ████ Person 4 ████ as witnesses during the main hearing in the national court.

The defendants ████ Accused 1 ████, ████ Accused 2 ████ Og ████ Accused 3 ████. contends that it should not be the prosecution to bring the 4 witnesses.

Regarding the details of the case, the prosecution service has Reference is made to a summary report of 29. April 2007 prepared by the East Jutland Police, Narcotics Department. In the report, it is listed:

"...

Anonymous information to Aarhus Police The Criminal Police in Aarhus received on 14. and 20. November 2000 anonymous information from a source who said that ████ Accused 3 ████ and Person 5 (P5) ████ had planned to smuggle in 4-5 kilos of cocaine from a Caribbean island, possibly Aruba, to Denmark. In the same connection, it was also stated that Accused 3 and P5 had connections to a Russian-born American named Person 2 Person 2 had at that time - i.e. November 2000 - just been in Denmark for a week, in connection with which the smuggling of the cocaine was planned.

During his stay in Denmark, Person 2 lived in a holiday home in  ████ City 2 ████ owned by a man named

Accused 2 The cocaine was to be stored in a surfboard when smuggled into Denmark, which was then to be transported to the country either via shipping container or in an airplane around the turn of the year 2000/2001.

The informant further stated that Accused 3 "in the near future" was to take over a courier job in connection with the smuggling of cocaine and ecstasy from Amsterdam, the Netherlands, which was to be driven to Denmark in large rental cars that the police could not keep up with.

The informant again told in his inquiry on 20. November 2000 on ████ Accused 3 ████ Og ████ P5's ████ smuggling of cocaine from the Caribbean. The informant also said that the manager of the ████ "Place 1" ████

- 7 -

███ , [Accused 2] , involved in the said trade in drug.

The informant stated that it was [Person 2] ████ as a financier
To tackle the drug trade.

A search in the police's restaurant register showed that " Place 1 _____ " was registered with the gardens as being Company [ApS 1 The manager] ████ was identical to ████ [Accused 2] .

████ [Accused 3] ████ became the 5. December 2002 was questioned by the Aarhus Police in connection with another case. He stated that for a period of a few months he had been staying with an acquaintance from America at his house in Marbella, Spain.

one.
[Accused 3] explained that the American was probably wanted by the DEA (Drug Enforcement Agency) and had seemed paranoid.

The above information to the police later proved extremely interesting, as the DEA's area office in Atlanta, USA, has been conducting an investigation against a drug organization for a long period of time

with ████ [Person 2] ████ and ████ [Person 1] ████ as some of the main men.

NEC, which is the Danish Police's "National Investigation Support Center", received information from the DEA in the United States in 2002. The information formed the basis for suspicion of organized smuggling of drugs from Denmark to the United States/Canada, controlled by an American resident Russian named

████ [Person 2] ████ and a group of people in Aarhus.
It was stated that the smuggling took place by concealing ecstasy in shipments in furniture.

In July 2002, the DEA stated that ████ [Person 2] had been checked by customs on entry into the United States. In this context, [Person 2] in possession of a receipt for a rented storage room in the United States. The receipt was issued to ████ [Accused 3] ████ .

At the same time, the customs authorities copied ████ [Person 2's] Personal ge phone book. In it there were phone numbers and email addresses that could be connected to, among other things.

████ [Accused 3] ████ ████ [Accused 1] ████ Og ████ [Accused 2] ████ .

- 8 -

The Aarhus Police has subsequently received the American report material regarding the incident. above-mentioned checks on , which had taken place in Chicago Airport on 6. July 2002.

After securing a copy of the above-mentioned lease, agents from DEA contacted the company Storage Spot, where the storage space was rented

Af ▮▮▮▮▮ Accused 3 ▮▮▮▮▮.
DEA was given the lease agreement    with    ▮▮ Accused 3's ▮▮
▮▮▮▮▮ signature and a copy of his Danish
Pas ▮▮▮

 has several times explained to the authorities about the storage room that was rented by ▮▮ Accused 3 ▮▮ at the company Storage Spot in Atlanta. Most recently in the in-court statement made by the Danish Prosecution Service in February 2007.

▮▮ Person 2 ▮▮ Explained how he drove ▮▮ Accused 3 ▮▮ next to Storage Spot. Period ▮▮ Person 2 ▮▮ waited outside, went ▮▮ Accused 3 ▮▮ even in and out created the lease. ▮▮ Accused 3 ▮▮
had the ecstasy pills from the 3. shipping with it, stored in a bag.

▮▮ Accused 3 ▮▮ Subsequently, placed the bag with the pellets in the rented storage room.

As mentioned, the telephone book contained various numbers and e-mail addresses that could be linked to Accused 1
▮▮▮▮▮▮, ▮▮ Accused 2 ▮▮ Og
▮▮▮▮.
Accused 3 In addition, the web address was stated ▮▮ Website 1 ▮▮

Investigations and interrogations have subsequently shown that ▮▮ Company 1 ▮▮ is the name of the company that has produced the furniture that has been used in the smuggling of ecstasy from Denmark to Atlanta, USA.

Arrest of American ringleaders Spanish police
carried out a search warrant on 31 October. January 2003 in Spain.
 ▮▮ Person 2 ▮▮ Og ▮▮ Person 1 ▮▮

- 9 -

In this connection, the 2 were found in possession of a rental contract on a Ford Focus, rented in Spain by the Danish citizen ██████ Person 6 ██████. ██ Person 2 ██ was also in possession of a Danish ATM card in his own name.

The investigation showed that ██████ Person 2 ██████ had opened an account in Danske Bank, Kannikegade, Aarhus on 19 November. September 2000. There was a box attached to the account.

Apart from the creation of the account, the only transaction on the account itself was a money transfer on 4 April. October 2000 of $500 to an account in Impexbank in Russia.

In August 2005, the Danish Police made a trip to Atlanta, Georgia, USA, where ██████ Person 1 ██████ Og ██ Person 2 ██ was questioned for the case.
The interrogations were very detailed and of a burdensome nature for ██████ Accused 3 ██████, - ██ Accused 1 ██ Og ██ Accused 2 ██.
They explained how the 3 Danes together had made sure to pick up ecstasy pills in the Netherlands and transport these to Denmark. In Denmark, the pellets were packed into hollow table legs, after which they were shipped to Atlanta, USA.

They explained in detail about 3 "shipments".

On the first 2 shipments, approx. 50,000 ecstasy pills and approx. 150,000 ecstasy pills.

For these shipments, the Danes were only responsible for the transport, while ██████ Person 2 ██████ Og ██rson 1 was responsible for the purchasing and distribution. At the 3. shipment was sent approx. 50,000 tablets, and in this shipment the defendant 1 ██████ responsible for the purchase of the pellets in Holland.
The transport was again carried out by the Danes. Person 1 ██████ explained that he himself had been in Denmark in 2002, where he had stayed for 14-2 months in May-June. He had lived part of the time in ██████ Accused 2's ██ holiday home, but for a short period when Person 1's girlfriend came to visit from the United States, Person 1 had rented a room at Hotel Marselis in Aarhus.

- 10 -

The investigation at Hotel Helnan Marselis in Aarhus showed that ████████ **Person 1** ████████ Was staying at the hotel in the period 30. May 2002-5. June 2002.

████████ **Person 1** ████████ also drew a very pre- cis sketch of ████████ **Accused 2's** ████ holiday home on ████ **Address 1** ████ in ████ City 2 near Aarhus. On the sketch, Person 1 had drawn a hidden compartment in the floor, which was allegedly used for storing the ecstasy pills after they had been picked up in the Netherlands, but before they had been hidden in hollow table legs and shipped to the United States.

Accused 2 had shown the hidden room to Person 1 and explained to him that it was there that the pills were stored before they were repackaged and forwarded to USA. ████ Defendant 2 ████ had told us that at 1. and 2. shipment, the pills had only been in space for a short time, but by 3. shipment, the pills had been in the summer house for so long that Accused 2 finally became worried and moved the pills.

When Person 1 was shown the hidden room, there was some marijuana and 50-100 pieces. ecstasy pills in the room.

***
On 6. February 2003 search at ████████ **Person 1's** ████ girlfriend in the United States. On that occasion, a number of photographs were found, which have subsequently been handed over to the Aarhus Police.

The pictures show ████████ **Person 1** ████████ at locations in Aarhus, including at Hotel Marselis, in company with, among others. ████ **Accused 1** ████, ████ **Accused 2** ████ Og ████ **Accused 3** ████.

... ████ **Person 1** ████ He also explained to the Danish Police that at some point during his stay in Denmark during the summer of 2002, he ran out of money. He got an acquaintance in the United States named Person 7 to transfer $12,500 to ████ ████ **Accused 2's** ████ ████ account in his bank in Aarhus.

Person 1 drew a sketch of the bank's location on a large square in the centre of Aarhus.

... The investigation showed that ████ **Accused 2** ████ had account in BG Bank on Store Torv in Aarhus C, and that on 6. June 2002, DKK 102,533.85 had been deposited in the account. The amount is equivalent to $13,050. The money was deposited/transferred by a person named

- 11 -

███ Person 7 ███ from Houston, Texas, via BANK OF AMERICA N.A.

***

███ Person 1 ███ explained that after his stay in Denmark in the summer of 2002, he was driven to southern Spain by his uncle's Audi. ███ Accused 3's ███ uncle. They were

The witness ███ P5 ███ has confirmed to Aarhus Police that he is related to ███ Accused 3 ███ ███ Accused 3 ███ , and that in 2002 he drove ███ Og ███ Person 1 ███ to southern Spain, and that they were driving in ███ P5's ███ Audi.

███ Person 1 ███ explained that during his stay in Spain in 2002, he was visited by, among others. Accused 3 At some point, probably in September, Person 1 asked ███ Accused 3 ███ about flying to the United States to pick up $19,500 from an acquaintance of Person 1.

During this trip to the United States, Defendant 3 was stopped by the authorities and detained for several hours. ...

ARREST OF ███ Accused 2 ███ OG ███ Accused 1 ███

On 30. May 2006, the Aarhus Police made an arrest of ███ Accused 1 ███ Og ███ Accused 2 ███ . They were both arrested when they arrived together in ███ Accused 2's ███ holiday home in City 2 At the ███ . time of the arrest, ███ Accused 1 ███ in possession of 7 sales bags with cocaine and a drug account (lying together in a trouser pocket).

...

On the same day, a search was carried out of Accused 1's ███ belongings that were in the possession of Accused 1's ███ Parents on ███ Address 2 ███ i ███ City 3 ███ . In ███ Accused 1's ███ toiletry bag, 2 sales bags containing approx. 2 grams of cocaine and 1 pc. ecstacypill.

***

A search of ███ Accused 2's ███ cottage showed, that there was a hidden space under the floor in exactly the position that was marked by ███ Person 1. ███

- 12 -

In the hidden cavity, a box of sales bags was found. Original contents of the box were 1000 bags. There were approx. 200 bags left in the box.

In the cavity was also a black toiletry bag containing a plastic bag with 128 grams of white powder.

...

The effects found from the arrest and the searches were subsequently tested at the Department of Forensic Chemistry. It was found that the cocaine found in the 7 sales bags in connection with the arrest of the

███████ Accused 1 ███████, was diluted with creatine. The bags (2 pcs.) that were found in Accused 1's ███████ ███████ toiletry bag was also cocaine. One bag contained very strong substance, and the other was cocaine diluted with creatine.
The 128 grams of white powder that were found in the hidden compartment under the floor of the ███████ Accused 2's ███████ Sommer-house, also turned out to be creatine.

...

The Aarhus Police did not succeed in making an attempt holding of ███████ ███████, Why he
Accused 3 on 31. May 2006 was called for.

███████ Accused 2 ███████ was questioned for the case on 30 November. May 2006. He confirmed his knowledge of ███████ Person 2 ███████
███ Og ███████ Person 1 ███████.

███████ Accused 1 ███████ was questioned for the case on 21 November. June 2006. He confirmed that he had lived in the United States on several occasions. Most recently from the spring of 1999 to the spring of 2000, when he worked for an American furniture company in Atlanta named ███████ Company 2 ███.

███████ Accused 2's ███████ brother ███ Person 8 ███, was questioned on the case on 6 November. June 2006. After the interrogation, he stated unsolicited that he had previously owned a company called Company 1, which produced TV and stereo furniture. The company had been located on Vej 1 in City 4 ███████near Aarhus.
███ Person 8 ███ shortly afterwards handed in 2 brochures to the Aarhus Police, which contained the goods that the company had produced and sold.

As described later in this report, the convicted in the United States, ███ Person 3 ███questioned in court in the United States by the Danish prosecution service and defense attorneys Hans Kjellund and Bjarne Frøberg.

In this context, ███████ Person 3 ███████
shown the brochures that had been handed to the Aarhus Police

- 13 -

Af ▮Person 8▮. Brochures showing the furniture which was produced by ▮Company 1▮.

▮Person 3▮ recognized one brochure with 100% safety.

He explained how he had initially received a similar brochure in the United States either from ▮Person 2▮ or by ▮Accused 1▮. He was supposed to contact Accused 1's ▮_____▮ firm ▮Company 2▮ Atlanta and order items from the catalogue.

These goods would then be shipped from Denmark to Atlanta containing ecstasy pills. ▮Person 3▮ was in ▮Company 2▮ to conduct an initial preliminary inquiry as to whether the store would order the furniture home to the United States. ▮Person 2▮ Og ▮Accused 1▮ However, it subsequently decided to use a different procedure for the shipment of the furniture.

▮Accused 3▮ was arrested, charged and remanded in custody on 3 November. August 2006.

The convicted in the United States ▮Person 3▮ Submitted on 1. April 2003 2 pcs. metal table legs for the DEA in the USA. He stated that those table legs were part of a consignment of furniture that had arrived in Atlanta containing ecstasy.

The Danish Police have received DEA's report material regarding. this assignment. The report material is enclosed with photos of the table legs.

The witness ▮Person 9▮ was questioned for the case on 3. January 2007. He stated that he was the former owner of ▮Company 3▮. This company was a continuation of ▮Company 1▮ as ▮Person 9▮ took over from ▮Person 8▮. ▮Person 8▮ continued in the company as a salesman, and his brother ▮Accused 2▮ also had his time in the company, to which he had had his own key. Person 9 ▮_____▮ were shown the pictures of table legs that had been taken by the DEA in the USA. He recognized them with 100% certainty as being table legs produced at Company 3 / ▮Company 3▮. They were a part of a TV stand, ▮Model 1▮.

▮Person 9▮ stated that he had sold E.G. ▮pany 3▮. ▮Company 1▮

- 14 -

the products of a company named ███████ █████ **Company 4** in ████ **City 5** .

The 3 invoices transferred from ██████ **Person 9** ███ to the Aarhus Police showed that the company ███ **Company 5** ████████████ had purchased a total of 22 pcs. TV tables, ███ **Model 1** ███ and 2 pcs. stereo rack, ███ **Model 2** ████ .

There were 2 invoices from the 3. August 2000 and 1 invoice from 3. October 2000.

████ **Person 9** ████████ was astonished to see ate : ██ █████ **Company 5** █████ address at , as he believed ███ **Address 3** ████ ████ **City 5** ███ that it was in an acquaintance ████ **Person 10's** █████ residence.

████ **Person 9** ████ knew that ████ **Person 10** ████ ████ **Celebrities** ████ ████ **Accused 2** ████ , and that **Person 10** at some point had invested some money in Accused 2's Pool place in Aarhus by name ███████ **Place 1** ██ .

The witness ████ **Person 11** ███ was questioned for the case on 5 November. January 2007. He stated that he was a co-owner and director of ████████ **Company 4** ████████

He further stated that he had previously been employed by ██████ ████ **Person 8's** █████ company that had produced Right the Company 1 products.
At some point around 2001, Company 4 had taken over the rights to Company 1 products from Person 9's █████ **Company 3** ████ ███ **Person 11** ███ .

The pictures were shown to the Danish Police from the DEA in Atlanta, █SA. **Person 11** recognized the table legs with 100% certainty as being the back of a total of 3 table legs from a TV table from ████ **Company 1** ███ ████ **Model 1** ███ .

...

The witness ████ **Person 10** ████████ was questioned for the case on 9 November. January 2007 by the police in Tórshavn in the Faroe Islands.

████ **Person 10** ███ stated that he was now resident in the Faroe Islands. He had moved from ████████ **Address 3** ████ █, ████ **City 5** ███ during the summer of 2001. He was owner of ██████ **Company 5** ████ which was created solely for the purpose of on the purchase of teaching materials from abroad.
████ **Person 10** ███ knew that an acquaintance named Person 8 was involved in █████ **Company 1** ████



- 15 -

█ Person 10 █ was at one point on the board of directors of █ Company ApS 1 █. So was the █ Person 7 █ and his brother Defendant 2 The latter was a co-owner and director of the company. The company ran a café or pub at █ Way 2 █ in Aarhus.

█ Person 10 █ had never made shipments to the United States. Nor had he purchased furniture from Company 1 █ in Denmark.

Enquired information █ Person 10 █, that he could not rule out that he of any of the persons with whom he had collaborated on Company ApS 1 █, has been asked whether it could be Apply █ Name of person 10's company in connection with the import and export of goods. However, he could not remember specific situations.

On 24. January 2007 1 pcs. table legs from the authorities in the United States. The table leg was identical to the table leg secured by the DEA and photographed in the annex ...

The authorities in the United States still have 1 table leg left.
...

Renting a car from █ Car Rental Company 1 █.
Investigation showed that the following rental of cars had been made at █ Car Rental Company 1 █ in Aarhus:

Rented by █ Accused 1 █:
September 18, 2000-21. September 2000 Peugeot 406
Driven 851 kilometers
September 21, 2000-25. September 2000 Fiat Punto
Driven 1234 kilometers
30 September 2000-4. October 2000
Audi A4                          Driven 2909 kilo meters
November 3, 2000-3 November 2000. November 2000
Renault Megane          Driven 401 kilos          metre

Rented by █ Person 2 █
July 25, 2000-July 26, 2000 July 2000          Alfa 156 driven
392 kilos
                                   metre

█ Person 2 █ has explained to the case that he was in Denmark in connection with consignment no. 1. It fits in time with the fact that he rented a car from █ Car Rental Company 1 █ in the period 25 .- 26. July 2000.



115

- 16 -



██████ Person 2 ████████ has previously explained to the authorities that in connection with the second shipment of ecstasy, he was in Denmark prior to the collection of pills in Amsterdam. He explained that he was run over ███████ Accused 3██████ from Denmark to Hamburg. It took place in a small car. He confirmed this drive in a court hearing in Atlanta on 5 November. February 2007.

This drive fits both in terms of time and mileage well with the Fiat Punto, which Defendant 1 ████████████ rented on 21. September 2000. The car had driven 1234 kilometers when it was returned on 25. September.

Of the same interrogations of ██████ Person 2 ███████ appears that ████ Person 2 ████ having delivered the 2. shipment to a driver in Amsterdam, was picked up by ████████ Accused 1 ████████ in a passenger car. ██████ Accused 1 ████ Og █████ Person 2 █████ Drove together in this passenger car to Denmark.

This drive fits both in terms of time and kilometers with the fact that ████████ Accused 1 ██████ On 30. September 2000, an Audi A4 was rented, which when returned on 4. October 2000 had driven 2909 kilometers.

From Aarhus to Hamburg there are cf. KRAK 338 kilometres.

Ter

From Aarhus to Amsterdam there are cf. KRAK 790 kilo-metre.

In February 2007, the East Jutland Police and Prosecutor's Office traveled to Atlanta, Georgia, USA, where Person 2 ████████████. ███████ Person 1 ██████, ███ Person 3 ███ Og_ ███ Person 4 ██ was heard in court. The 4 witnesses are all convicted in the case in the United States. ████ Person 2 ██ ████████████ has served his sentence and has been released. The others are still serving the sentences they have been sentenced to prison.

On the trip to the United States were defence lawyers Hans Kjellund and Bjarne Frøberg, who represented respectively ████████ Accused 2 ████ Og ██████ Accused ████ Lawyer Michael Juul Eriksen was not on the trip to Atlanta, as he called in sick before departure.

- 17 -

The four Americans explained in detail about 3 shipments of ecstasy that had been transported from the Netherlands to Denmark, where they had been repacked and hidden in hollow table legs, after which they had been sent to Atlanta in the United States.

The 3 trips had taken place with the first shipment
during the summer of 2000, the second shipment in the autumn of 2000 and the third shipment around December 2001.

In connection with these interrogations, Person 3 and ▮▮▮▮▮ _ ▮▮▮▮ Person 2 ▮▮▮▮ agreement on how
Dan de met in January 2001 ▮▮▮▮▮▮ Accused 1 ▮▮▮▮ in Europe.
***

In connection with our stay in the United States, we were shown the table leg that the authorities were given by
Person 3 and who is still in the possession of the US authorities.
The table leg was similar to one of the table legs that had been handed over to the East Jutland Police by the witness Person 11
▮▮▮▮▮, ▮▮▮ Company 4 ▮▮ in ▮ City 5 ▮ near Aarhus. It was the back table leg from a TV table from
▮ Company 1 ▮ ▮▮ Model 1 ▮▮ .

From the table leg, some yellow plastic fibers / plastic material were secured, which were secured in a brooming bag. It was probably dry sealing foam, which had been used to seal the pellets inside the table legs in connection with the shipments.

In connection with the above-mentioned in-court hearings in the United States, the witnesses were given ▮▮ Person 2 ▮, ▮ Person 3 and
Person 4 table legs in question.
▮▮▮▮ Person 2 ▮▮ was shown the table leg, which was wrapped in thick clear plastic and wrapped with tape by the American Dieter, when he was shown it.

▮ Person 2 ▮ stated that it could be such a table leg that had been used for the smuggling of ecstasy. However, he was somewhat uncertain in his recognition.

Subsequently, Person 4 and Person 3 were shown the table leg. At that time, the table leg had been unpacked from plastic and tape.

- 18 -

█ Person 3 █ recognized the table leg. He recognized the table leg as being similar to the one he himself had handed over to the authorities. He stated that it was in such a table leg that the ecstasy pills had been brought in.

█ Person 4 █ also recognized the table leg. He recognized it as being similar to the table legs that he had been asked to get out of the way of Person 2 █████. Table legs that lay together with ecstasy pills in ██████ █ Person 2's ████ warehouse. (rented by ████████ Accused 3 ████.)

█ Person 4 █ also recognized the aforementioned plastic pieces that were secured from the table leg (joint foam). He explained that he had found pieces of plastic like these among the ecstasy pills that he had received from the ringleaders in the case.

..."

It appears from the case file that: ████ Person 1 ████ In a confession, Agreement of 31. March 2004, pleaded guilty to the Criminal Cases 2 and 3. In the Danish translation of the confession agreement concluded between the Attorney General of Georgia's Northern District and ████ Person 1 ████ and his lawyer, it is stated:

"...

4. The Federal Attorney General for the Northern District of Georgia agrees to deny the other facts of the Prior Indictment at the time of sentencing. ...

5. ... However, the Government will not be obliged to recommend the assumption of responsibility if, after entering into this Confession Agreement, the defendant behaves inconsistent with the assumption of responsibility. .. Although this is not binding on the Court or on the Probation Officer, the Government and the defendant agree to recommend that the amount of 3.4 methylenedioxymethamphetamine (also called MDMA) that can be attributed to the defendant as relevant conduct is at least 1,500,000 tablets. ..

7. The defendant agrees to cooperate with the Government, truthfully and completely, in all matters

- 19 -

in relation to such proceedings, in other investigations, and in all matters related to the confiscation related to the facts and circumstances that have given rise to such prosecution, including to cooperate in hearings and to make truthful statements in any proceedings arising out of or related to such cooperation. The defendant also agrees to disclose the existence of, and to furnish the Government with, all books, papers and documents and any object of value as evidence that he may be in possession of or have under his control. The defendant understands that it is the Government alone that will determine the types of cooperation the defendant will be asked to participate in, and the defendant agrees not to cooperate in any investigation that is not specifically approved by the Government.

8. Pursuant to the $1B1.8 Guidelines, the Government agrees that any information which may incriminate the defendant and of which the Government has not previously known, and which is disclosed to the Government by the defendant in connection with the cooperation and as a result of this Confession Agreement, will not be used in determining the applicable range, cf. The Guidelines, although such information may be passed on to the Guardian and to the Court. The Government also agrees not to charge the defendant with further matters based on any information disclosed by the defendant in connection with the cooperation, which the Government was not aware of prior to the cooperation. Exceptions to this are circumstances that are a result of, or relate to, violent criminal activities. In addition, if the Government determines that the defendant has not been fully honest and open in his cooperation with the Government, the defendant may be able to take legal action. may be prosecuted for perjury, for giving false testimony, for obstructing justice from being served, and for any other expedient accusation, and any information provided by the defendant may be used against him in such proceedings.

12. If, as mentioned above, the defendant fails in any way to fulfil each of his obligations under this Confession Agreement, the Government may elect to be released from its obligations under the Confession Agreement. The government can then prosecute the defendant for

- 20 -

any of the federal offenses committed by the defendant in relation to this case, including all charges dismissed under the Confession Agreement, and the Government may recommend to the Court any sentence, up to and including the maximum sentence, for those offenses. The defendant expressly waives any objection to such residual proceedings by invoking a limitation period and to any constitutional or statutory objection based on expedited court proceedings, except to the extent that such objection exists on a case-by-case basis. the date on which the defendant signs this Confession Agreement. In addition, the defendant agrees that in such prosecution it will be possible to use against him all confessions and other information he has ever made, including all statements he has made and all evidence presented by the defendant during meetings regarding information offered, interrogations, giving testimony, and on other occasions, against him. .

.."



It appears from the case file that:                Person 2            ,          Person 3          Og

     Person 4          have also entered into confession agreements which, in

is at least substantially consistent with the

as             Person 1               has been included.


In a petition from the U.S. government "for a derogation

downwards of the applicable range, cf. guidelines for

Defendant                Person 1                'significant contributions" is in pt. 3

referred to the fact that Person 1 has cooperated in an investigation led by the

Danish police of several persons who

no charges have been brought, and that Person 1 participated in the

speeches recorded at the request of the Government. In pt.

4, it is stated that the Government expects Person 1 to continue to

will cooperate in the prosecution of other persons who have not yet been

charged who took part in drug-related activities.

Conduct

120

- 21 -

██████ Person 1 ██████ was delivered by a judgment on 4. January 2006 found guilty of counts 2 and 3 of the indictment in accordance with his confession and sentenced to imprisonment in 204

months (17 years).

In the transcript of the proceedings on 4 April, the Court of Appeals for the District of Columbia was entitled to the following

documents. January 2006 it appears that the judge stated, among other things, the following:

> "Let me further make it clear that my - that the deviation based on cooperation and contribution was a deviation based on the defendant's cooperation as per the Constitution. Date.
>
> _____
>
> And Mr. Attorney 1, if your client continues to cooperate and make a significant contribution, then I would be happy to consider a further reduction if the Government so requests.
> ...”

It is also apparent from the case file that the Danish prosecution service has informed both the US prosecutor's office and the

██████ Person 1 ██████, that no criminal proceedings will be initiated against him in Denmark for offences for which the person in question is or may be convicted in the pending criminal proceedings in the United States, just as no criminal proceedings will be initiated for the

in Denmark regarding the euphoriant substances that are

covered by a judgment handed down in the United States.



██████ Person 2 ██████,  ██ Person 3 ██ Og  ██████ Person 4 ██████ have received the same

Communication.

Also in the case against  ██████ Person 2 ██████ The U.S. (public prosecutor's office) application for a reduction of sentence by reference to the fact that the defendant had cooperated with the government in the investigation of other persons, thereby providing a contribution to the government, for example, in the case of the European Union. the defendant had provided significant details about his co-defendants'

- 22 -

import of MDMA into the United States by concealing it in furniture that had been imported from Denmark. By judgment of 9. November 2004 ▮Person 2▮ found guilty of the change of charge 2 in accordance with his confession and sentenced to imprisonment for 52 months (4 years and 4 months).

▮Person 3▮ was delivered by judgment on 16. May 2005 found guilty of the change of charge 2 in accordance with his confession and sentenced to imprisonment for 151 months (12 years and 7 years months). He did not receive a reduction in his sentence, which was due to his continued use of drugs after his arrest and after he had pleaded guilty.

In an e-mail dated 2. April 2007 to Detective Assistant Person 12 ▮___▮ has the prosecutor in the case in the United States ▮Accusations 1▮ stated that The Government has not yet submitted a request for a reduction of the sentence in relation to ▮Person 3▮ as he has not been good enough to collaborate. Against this background, the The United States, the Danish police's assessment of Person 3's contribution to the investigation. If he helps a lot, there will be application for reduction.

Regarding the case against ▮Person 4▮ it is stated that the government requested a derogation downwards in the applicable range for ▮Person 4's▮ significant contributions to the investigation prosecution of others, but the case against the Dane was not specifically mentioned. By judgment delivered on 5. July 2005 became ▮Person 4▮ found guilty of the indictment 2, 3 and 17 in accordance with his confession and sentenced to imprisonment SEL for 113 months (9 years and 5 months).

- 23 -

The prosecution and the defence have essentially repeated their
procedure before the district court as they are
Recorded in the court record of 19. November and 20. November 2007.

The High Court's reasoning and conclusion:

In the order of 13. September 1982, reproduced in Ugeskrift for
Judiciary 1982 page 1027, the Supreme Court did not take the
request for the testimony of a person resident in the United States
son covered by the plea bargain.

There is no basis for stating that there are differences in the
significant impact on the agreement concluded with the
witness who was involved in the case before the Supreme Court in 1982, and
the confession agreements that ████Person 2 ████, ████Person 1 ████
████, ████Person 3 ████ Og ████Person 4 ████ has entered into a contract with the
perhaps the prosecution in this case.

In order to determine whether the prosecution's application for authorisation is not to be
to bring the mentioned 4 witnesses, the High Court has
emphasis on the fact that the Supreme Court's majority in a judgment of 17. June 1998,
reproduced in Ugeskrift for Retsvæsen 1998 page 1317 in a case
On the reduction of penalties for drug offences, the
with regard to participation in the investigation of the case, has stated
the following:

> "In our opinion, it is of significant importance for the investigation of major
> drug cases and certain other serious cases, where experience has shown
> that the investigation is particularly difficult and problematic, that it is
> possible to motivate an accused person to contribute to the investigation
> of the case. Such a motivation may be the prospect for the accused that
> his own punishment will be reduced. In view of this, we find that it should
> be possible to take into account information from the prosecution service
> that the accused has provided the police and the prosecutor with
> information on the

- 24 -

> The authority shall assist during the investigation, regardless of the fundamental and legal certainty concerns that may be associated with such a scheme. In this connection, we note that in the course of any criminal proceedings against persons who have been designated by the accused as co-perpetrators, it may be included in the assessment of the accused's information that these have led to or may lead to a reduction in his own sentence.

"

By Act no. 218 of 31. March 2004, a new section was inserted

82, no. 10 of the Criminal Code, according to which the

A sentence in general must be included as a mitigating circumstance that the offender has provided information that is crucial for the investigation of criminal offences committed by others. In the comments to the provision (Folketingstidende

2003-2004, Appendix A, page 3325) it is stated as follows:

> " In § 82, no. 10, is stated as a mitigating circumstance that the offender has provided information that is crucial for the investigation of criminal offences committed by others. This provision establishes the legal situation that has developed on the basis of the Supreme Court's judgment published in Ugeskrift for Retsvæsen 1998, page 1317. The provision is not limited to certain types of cases, including cases in which the offender has been involved. According to the wording, the provision is expected to have the greatest practical significance in cases of more serious crime, e.g. major drug cases, cases of serious violent crime and murder or cases of extensive or serious economic crime, where experience has shown that the investigation is particularly difficult or problematic."

Against this background, and since the statements of the 4 witnesses mentioned must be assumed to be of significant importance for the decision of the case.

The High Court does not find that the prosecution service - regardless of the circumstances in which the explanations were given - should be prevented from bringing the persons concerned to the test.

during the main hearing.

- 25 -

In this regard, the High Court has not taken a position on the probative value of the explanations, nor has it otherwise taken a position on the whether the information in the summary report prepared by the East Jutland Police can be used as a basis

by a judgment in the case.

For it is determined:

The prosecution is allowed to conduct this ██████Person 2██████,
█████Person 1█████, ██Person 3██ Og_ ████Person 4████ as witnesses
during the main hearing.

The High Court then set the deadline for 4. August 2008
for the defence counsel to state whether the ruling will be appealed to the
Supreme Court.

The High Court also set a deadline for the same date for
The Public Prosecutor and the defence counsel to comment on whether the district
court's judgment - in the event that the witnesses can be led under the
The main hearing - should be set aside, and the case referred back to the
district court for reconsideration.

The case was postponed.

Lars E. Andersen

£

£

**TRANSCRIPT**

**AF**

**THE SUPREME COURT'S APPEALS AND APPEALS COMMITTEE'S JUDGMENT BOOK**

# THE SUPREME COURT'S RULING
## delivered on Friday 9. January 2009

**Case 297/2008**

Director of Public Prosecutions v <u>Accused 1</u> (lawyer Michael Juul Eriksen, appointed), <u>Accused 2</u> (lawyer Lars Henriksen, appointed) and <u>Accused 3</u> (lawyer Troels Lind Pedersen, appointed)

The appealed order was made by the 1st District Court of the Western High Court. section on 26. June 2008.

Seven judges have participated in the decision: Torben Melchior, Poul Sørensen, Peter Blok, Per Walsøe, Børge Dahl, Jytte Scharling and Michael Rekling.

**Claims**

The plaintiffs, <u>Accused 1, Accused 2</u> and <u>Accused 3,</u> have requested that the prosecution should not be allowed to present <u>Person 2, Person 1, Person 3</u> and <u>Person 4</u> as witnesses during the main hearing.

The prosecution has requested confirmation.

**Supplementary presentation of the case**

Regarding the course of the case, the following is stated in the statement of the Director of

Public Prosecutions in the appeal: "... [It is] noted that the described "plea agreements" and the subsequent proposals for a reduction of the sentence have been made without the participation of the Danish authorities.

…

By judgment of 3 December 2007 of the Court of Aarhus, Accused 1, Accused 2 and Accused 3 were acquitted in the main facts of the case (counts 1-3), which concern the receipt and import of ecstasy tablets from the Netherlands via Denmark to the United States. In its decision, the court emphasised that no evidence had been adduced of the accuracy of the charges in these circumstances. A conviction was made in the other circumstances of the case. Accused 1 and Accused 2 were thus each sentenced to imprisonment for 5 months and small additional fines for, among other things, the transfer of cocaine and possession thereof for the purpose of transfer. Accused 3 was sentenced to imprisonment for 40 days as well as a small additional fine and disqualification from driving for drunk driving and possession of amphetamines, among other things.

Accused 1 and Accused 2, who had been in custody since 21 May 2006 during the proceedings, and Accused 3, who had been in custody since 3 August 2006, were all released immediately after the sentencing."

The prosecution service and the defendants have indicated to the Western High Court that there will be no objection to the referral of the case back to the district court for reconsideration, if the testimony is allowed.

In a decision of 25. In Case 994/03 (Arnold G. Cornelis v. the Netherlands), the European Court of Human Rights held, inter alia, as follows:

"The Court appreciates that the use of statements made by witnesses in exchange for immunity or other advantages forms an important tool in the domestic authorities' fight against serious crime. However, the use of such statements may put in question the fairness of the proceedings against the accused and is capable of raising delicate issues as, by their very nature, such statements are open to manipulation and may be purely in order to obtain the advantages offered in exchange, or for personal revenge. The sometimes ambiguous nature of such statements and the risk that a person might be ac- cused and tried on the basis of unverified allegations that are not necessarily disinte-rested must not, therefore, be underestimated (see, mutatis mutandis, Labita v. Italy [GC], no. 26772/95, § 157, ECHR 2000 IV). However, the use of these kinds of state-ments does not in itself suffice to render the proceedings unfair (see Lorsé v. the Netherlands (dec.), no. 44484/98, 27 January 2004; and Verhoek v. the Netherlands (dec.), no. 54445/00, 27 January 2004). This depends on the particular circumstances in each case.

In the instant case, the public prosecution service concluded an arrangement with Mr Z. and statements obtained from him were used in evidence against the applicant. The Court observes that, from the outset, the applicant and the domestic courts were aware of this arrangement and extensively questioned Mr Z. in order to test his reliability and credibility. Moreover, the domestic courts showed that they were well aware of the dan- gers, difficulties and pitfalls surrounding arrangements with criminal witnesses. In the

judgments handed down in the applicant's case, all aspects of the agreements were ex- tensively and carefully scrutinised, with due attention being paid to the numerous ob- jections raised by the defence.

The Court concludes therefore that it cannot be said that the applicant's conviction was based on evidence in respect of which he was not, or not sufficiently, able to exercise his defence rights under Article 6 § 1 of the Convention. Moreover, the applicant's con-viction was not only based on the statements given by Mr Z., but also on statements given by co- suspects and other witnesses, on several official (foreign and domestic) po-lice reports, on findings of the Forensic Laboratory, and on statements given by the ap-plicant.

Consequently, this part of the application must also be rejected under Article 35 §§ 3 and 4 of the Convention as being manifestly ill-founded."

### Grounds of appeal

Accused 1, Accused 2 and Accused 3 have argued that the facts in the present case are comparable to the circumstances in the Supreme Court's ruling of 13 September 1982 in UfR 1982.1027. Thus, the witnesses in the present case have by their "guilty plea and plea agreements" obtained conditional dismissal of charges and conditional reduction of sentence, which may lapse if the witnesses do not maintain the statements they have given under oath prior to the Danish defence counsel's entry into the case. Conversely, the witnesses can obtain a reopening of their cases in the United States with a view to further reduction of sentence if they testify as requested by the Danish prosecution service.

The ruling in UfR 1982.1027 is still applicable law, and section 82(no. 10, has not changed this legal position, as the provision does not concern either dismissal of charges or conditional reduction of sentence.

The concern with "plea bargaining" is that there is a risk that a person in order to gain an advantage in his or her own case makes a false statement about others resulting in an incorrect conviction. Benefits cannot therefore be promised, cf. Section 752(1) of the Administration of Justice Act. 3, 2. On the prohibition of the use of promises, false pretenses or threats.

There is no legal basis in section 721 or section 722 of the Administration of Justice Act for charges to be dropped due to cooperation. Therefore, there is no legal basis for the Danish prosecution service to charge them with violation of section 191 of the Danish Penal Code in connection with the questioning of the witnesses in the United States, and immediately thereafter dropped the charges.

The courts must check that the prosecution service has exceeded its powers by refusing to testify in cases where an unjustified dismissal of charges has been given, or where the dismissal of charges is conditional on the testimony of the witness against others. If the testimony is permitted in the present case, it will mean that the prosecution service can promise an accused or accused person to drop the prosecution/drop of charges in return for the latter explaining incriminating information about others, even if the Administration of Justice Act does not provide a legal basis for this.

It is irrelevant that the agreements in the present case are valid under United States law. In Denmark, the prosecution service cannot enter into agreements on the sentence because the sentencing is the competence of the courts, but in the present case it is only at the request of the prosecution that the American court can decide on the question of a reduction in sentence. The US prosecution service thus sovereignly decides whether the witnesses contribute enough to the possibility of further reduction of sentences, and will thereby take into account the Danish prosecution's evaluation of the cooperation.

Section 23a of the Competition Act does not allow for "plea bargaining" beyond what was known before the introduction of the provision, as it is always possible, pursuant to Section 722(1) of the Administration of Justice Act. 1, no. 1, the prosecution has been dropped in cases of fines, and since the prosecuting authority in cases of fines can to a certain extent dispose of the calculation, which the prosecuting authority cannot do in cases of custodial sentences.

The prosecution service has stated that the starting point in Danish law is that the presentation of evidence is free, so that the prosecution service and the accused can present the evidence that is relevant to the case. The principle of free presentation of evidence is based on a fundamental principle that the presentation of evidence and the assessment of evidence must be carried out with a view to establishing the substantive truth of the case. Therefore, there is generally free access for both parties to present any legally obtained and relevant evidence. In addition, under Danish law, there is also a certain right to produce evidence that has not been lawfully obtained. After a specific assessment, evidence is not cut off, even if there may be deficiencies and errors in connection with the creation of the certificate. Illegally obtained evidence may be allowed to be conducted by the courts, which then decide what consequence the unlawful obtaining is to have on the assessment of evidence.

The guilty plea and plea agreements are legal in the United States. Evidence lawfully obtained by foreign authorities in a country other than Denmark may be used in a Danish criminal case, regardless of whether it would be possible under Danish law to obtain the evidence under similar

conditions. Denmark engages in a very extensive cooperation with the authorities of other countries in the fight against international crime. It therefore appears to a large extent that evidence obtained in other countries is of importance for criminal cases that are heard in Denmark. It would lead to a considerable difficulty in the prosecution of crimes with an international scope if it had to be assessed in individual cases whether the evidence in question could be obtained in accordance with Danish criminal law and procedural rules, and if it is not possible in Danish criminal cases to use evidence obtained abroad on other terms than those that apply in Denmark.

The confession agreements do not conflict with fundamental Danish legal principles. The decision in UfR 1982.1027 is no longer an expression of current law, and the present case also differs from the previous Supreme Court case in that the Danish authorities have not been involved in the conclusion of the agreements or have given other commitments. The Danish authorities have only indicated that they will not initiate prosecution against the witnesses for matters covered by the judgments in the United States. This statement is merely an expression of the principle of 'ne bis in idem'.

It may be stated that, in the present case, the witnesses have a clear interest in giving evidence in accordance with the statements they have given in the United States. However, something similar is also known in Danish law, as the Supreme Court's judgment of 17. June 1998 in UfR 1998.1317 and the subsequent insertion of section 82, no. 10 of the Criminal Code means that it may be included as a mitigating circumstance that an offender has provided information that is decisive for the investigation of criminal acts committed by others. Reference may also be made to section 23a of the Competition Act, according to which participants in a cartel may obtain a drop of charges or a reduction of sentence by cooperating with the authorities.

**The Supreme Court's reasoning and conclusion**
The four persons whom the prosecution wishes to bring as witnesses in the trial of Defendant 1, Defendant 2 and Defendant 3 were convicted in the same set of cases in the United States, after they had entered into so-called plea bargains with the American Prosecution Service. These agreements imply, among other things, that the persons concerned have undertaken to cooperate with the authorities by giving evidence in cases against co-perpetrators, and that a breach of this obligation may result in the loss of the advantages in the form of a waiver of prosecution and a reduction in sentence that have been obtained or promised.

Agreements to drop charges and/or reduce sentences that are conditioned in this way are legal and customary in the United States. On the other hand, such agreements cannot, in principle, be considered legal in Danish law.

The Danish prosecution service is not a participant in the confession agreements entered into in this case, nor can – as otherwise stated in the district court's order of 20. November 2007 – is deemed to have acceded to the agreements. The statement that the persons concerned will not be prosecuted in Denmark for the same offences as those covered by the cases in the United States is merely an indication of what follows from the principle that no one may be prosecuted twice for the same offence.

Even though confession agreements such as those in question cannot lawfully be entered into by a Danish prosecution authority, they cannot be regarded as contrary to fundamental Danish legal principles. Arrangements that to a certain extent have the same character and purpose as the American confession agreements are also known in Danish law. Thus, section 82(no. 10, a provision on a reduction of sentence in cases where the offender has provided information that is crucial for the investigation of criminal offences committed by others. Pursuant to Section 23a of the Competition Act, a company participating in a cartel may obtain a dismissal of charges or a reduction of the sentence if it cooperates with the authorities in the investigation.

Against this background, and since it must be taken into account that other countries may have rules of criminal procedure that differ from those in Denmark, the procedural concerns that are the reason why confession agreements such as the present ones are not recognised in Danish law cannot lead to the prosecution being prevented from presenting the four persons as witnesses in the Danish criminal case. However, in assessing the probative value of the explanations, it must be borne in mind that the explanations may be untrue because they are motivated by the promised benefits.

The Supreme Court hereby upholds the High Court's decision.

## **It is hereby decided :**

The High Court's decision is confirmed.

JON FRIDRIK KJØLBRO

# THE EUROPEAN CONVENTION ON HUMAN RIGHTS

6TH EDITION

FOR PRACTITIONERS

Djøf Publishing House

Jon Fridrik Kjølbro

# The European
# Convention on Human Rights -
# for practitioners

## 6th Edition



Djøf Publishing House

2023

# Chapter 13. A trial within a reasonable time (Article 6(1))

## 13.1. Introduction

It follows from Article 6(1) of the Constitution. 1 that everyone has the right to a trial within a "reasonable time" ("délai raisonnable" in English and "délai raisonnable" in French) when a decision is to be given in civil or criminal proceedings covered by the provision1.

By requiring that court cases be resolved within a reasonable time, the Convention underlines the importance of administering a judicial system without undue delays that could undermine the efficiency and credibility of the system2.

In order to assess whether there has been an infringement of the right to a trial within a reasonable time, it is necessary first to determine the relevant period and then to make a specific assessment of whether it is a reasonable time.

## 13.2. Determining the relevant period

### 13.2.1. Criminal proceedings

In criminal proceedings, the relevant period begins at the time when there is an "accusation of a crime", i.e. from the time when the complainant is considered "charged" within the meaning of the Convention. It is an independent concept of convention. The Court has defined the concept of "accusation" as an official statement made to a person by a competent authority containing an accusation that he or she has committed a criminal offence, and has stated that this definition corresponds to an assessment of whether the suspect's situation has been compromised.

affected noticeably3

That time may very well - and usually will - be prior to the referral of the case to the courts. The time limit will usually start to run from the time the complainant is arrested or questioned as a defendant or when charges are brought4. The time limit will start to run at the time when coercive measures are taken, including searches, provided that the interference concerns the complainant personally and the complainant is aware of it. If a person who is arrested is not aware of the police's prior investigation, charge and arrest decision, the time limit is generally only calculated from the actual arrest5. The same applies if a person who is questioned and charged by the police,

---

1 As regards the existence of civil or criminal proceedings within the meaning of Article 6, reference is made to the foregoing considerations.

2 See Moreira de Azevedo v. Portugal, judgment of 23.10.90, § 74, Katte Klitsche de la Grange v. Italy, judgment of 27.10.94, § 61.

3 See Eckle v. Germany, judgments of 15.07.82, § 73, Reinhardt and Slimane-Kaïd v. France, judgments of 31.03.98, § 93, Hozee v. Greece, judgments of 22.05.98, § 43, Simeonovi v. Bulgaria, judgments of 12.05.17, § 110.

4 See Simeonovi v. Bulgaria, judgment of 12.05.17, § 111. See Abboud v. Belgium, judgment of 02.07.19, § 40, where the time limit is counted from the first questioning as the accused.

5 See complaint 14169/88, Zvi Goll v. Denmark, decision of 07.03.90. See Etcheveste and Bidart v. France, judgment of 21.03.02, where the complainant had fled, why an arrest warrant could not be carried out, and where approx. 4 years before the complainant was arrested and made aware of the charge. See complaint case 57861/00, Absandze v. Georgia, decision of 15.10.02, where a decision was taken to arrest complainants who had escaped. See Popov v. Bulgaria, judgment of 01.12.05, § 82. See, however, Hamdi Sari v. Denmark and Turkey, judgment of 08.11.01, § 68, where the complainant charged with murder had fled abroad at the time when the arrest warrant was issued and where the complainant was arrested more than two years later in the

Iem Frank Kjelbro 9788771989564
Download from Jurabibliotek.dk, 02/18/2025 01:56:10PM by lundmadsen.@law.cu.ck
via Lasse Madsen

has not been aware of the police's previous investigation, which has not affected the complainant's situation6. The relevant period does not necessarily start to run just because the police are opening an investigation and the complainant is aware of this, if the complainant has not been charged and if the complainant's situation has not been appreciably affected7. If a natural person conducts business in the form of a company and the police initiate an investigation in connection with matters concerning the company, this does not necessarily mean that there is also a criminal case in relation to the natural person, as the decisive factor is whether the natural person is "accused"8. If an investigation is initiated in connection with matters relating to a company, and the complainant is associated with the company and is examined several times as a witness, without formally being charged, but where the authorities nevertheless suspect, the complainant may be "accused", even if the complainant is not charged and prosecuted until several years later9. If a commission of inquiry is initiated into matters relating to complaints and criminal proceedings are subsequently initiated concerning the same facts, the period may be considered to have begun when the complainant became aware of the commission's task and was summoned as a witness10. If the case against the complainant has first been processed by administrative authorities, including customs authorities, and subsequently transferred to the police and the prosecution service, the prior administrative processing will generally not be covered, unless the complainant's situation has been significantly affected11. The same applies to cases where the tax authorities investigate the complainant's circumstances and subsequently request the prosecution to bring charges against the defendant on the grounds of tax evasion12. If the administrative processing of a tax case,

---

abroad, and where the Court counted the time limit from the arrest order, but the intervening period could not be blamed on Denmark.

6 See complaint 38986/97, P.W. v. Denmark, decision of 15.06.99. See Martins and Garcia Alves v. Portugal, judgment of 16.11.00, where the period begins at the time when the complainant is questioned by the police, regardless of the fact that the case had been investigated for more than a year at that time. See George-Laviniu Ghiurau v. Romania, judgment of 16.06.20, § 50

7 See complaint case 43196/98, Holm-Hansen v. Denmark, decision of 09.11.00, where a trustee contacted the police, as the trustee became aware of irregularities in connection with the administration of the estate. The police initiated investigations and conducted interrogations, etc. About 10 months later, the complainant was questioned by the police and charged. The Court found that the complainant was only at that time "accused" within the meaning of the Convention. See also Pedersen and Baadsgaard v. Denmark, judgment of 17.12.04, § 44, where the complainants were aware that a report had been filed, but where the police did not charge the complainants until 6 months later, and where the time limit began to run from the time of the charge. See complaint case 23523/02, Jan Wallin Karlsen v. Denmark, decision of 01.02.05, on a "company timber case", where the complainant was aware, through the media, that the tax authorities had filed a complaint with the police against two persons from whom the complainant had purchased companies, but where the period only began when the complainant was later charged, arrested and searched. See, however, Subinski v. Slovenia, judgment of 18.01.07, §§ 65-68, where the starting point seems to be that if the public prosecutor decides that an investigation should be opened because there are reasonable grounds to suspect that a person has committed a criminal offence, there is an "accusation" so that the relevant period begins to run. See Hasslund v. Denmark, judgment of 11.12.08, § 26, where the complainant could read in a newspaper that he was the subject of an investigation in a company timber case, but where the time limit only began to run when the complainant was charged and arrested.

8 See Hozee v. the Netherlands, judgment of 22.05.98, § 45.

9 See Kaleja v. Latvia, judgment of 05.10.17, §§ 36 to 41.

10 See complaint 28972/95, Erik Ninn-Hansen v. Denmark, decision of 18.05.99, on the right of investigation and subsequent impeachment.

11 See Bertin-Mourot v. France, judgment of 02.08.00, §§ 52 to 53

12 See complaint 43519/02, Andersen v. Denmark, decision of 07.12.00, in which the Court held that the relevant period did not begin until the time when the police, having received a request from the tax authorities, examined the complainant. See complaint case 23012/02, Frederiksen v. Denmark, decision of 16.09.04, where approx. 11 months from the time the tax authorities filed a report until the police carried out a search and charged the complainant to the police, and where the period began at the time of the search and charge. See Moesgaard Petersen v. Denmark, judgment of 11.12.08, §§ 27-29, on "self-

790

Jor Fnidnk Kielbro - 9788771989564
Deaf nload from ...... 02/18/2025 01:56:10PM by lundmedser@law.au.dk
via Lasse Macsen

If there is a criminal case within the meaning of the Convention, is a necessary condition for bringing the dispute before the courts, the period will start to run at an early stage13. If a State initiates criminal proceedings against a person who has previously been prosecuted in another State in connection with the same offence, the prior criminal proceedings are not taken into account, since the State is not responsible for the other State's handling of the case14. In the case of the reopening of a previously closed criminal case, the relevant period begins at the time of the reopening15. In the case of a reopening of a criminal case that has ended with the prosecution being dropped without a final decision, as the decision can be reversed, the period begins already at the start of the first period, as the two periods will be considered together16. If the complainant has entered into criminal proceedings against a third party, typically the injured party with a claim for compensation, the period will start to run from the time when the complainant has entered and has exercised his or her rights17. In criminal cases, the period ends when a final decision has been made. This is generally the case when the possibilities of appeal have been exhausted and a final decision has been taken18. As far as Danish law is concerned, the relevant period generally ends at the time when the Appeals Permission Board has rejected the application for leave to appeal. If the prosecution service abandons prosecution or dismisses charges without the case having been brought before the courts, the period ends at that time19. The period thus ends when there is a final decision on the charge or the criminal proceedings are suspended20. If criminal proceedings are dropped, the period generally ends only when the accused is made aware of the decision, as the uncertainty for complaints thereby ceases, but it is conceivable that the accused, even without notification, is sufficiently informed that he or she is no longer accused of a crime21.

In practice, it can sometimes give rise to doubt as to whether it is a period or several separate periods. In such cases, the Court will attach importance to whether the purpose of the proceedings has been the same, and if so, they will in principle

---

Cabinet timber case", where the period did not begin, as the tax authorities announced that the complainant's circumstances would be investigated further, that a decision would be made at a later date as to whether criminal offences had been committed, and furthermore filed a report with the police. The period did not begin until the police subsequently conducted a search at the complainant's home.

13 See Vegotex International S.A. v. Belgium, judgment of 03.11.22, §§ 153 to 154, concerning a dispute concerning underpayment and a tax surcharge of 10% of the outstanding tax (a penalty within the meaning of the Convention), which was dealt with administratively, before being brought before the courts.

14 See complaint 44829/98, Hendriks v. the Netherlands, decision of 05.03.02.

15 See Löffler v. Austria, judgment of 03.10.00

16 See Stoianova and Nedelcu v. Romania, judgment of 04.08.05, §§ 19-21, where 1 year and 6 months elapsed from the time a prosecutor dropped the prosecution until the prosecution reopened the case on the grounds that the previous investigation was incomplete

17 See Petrella v. Italy, judgment of 18.03.21, § 39.

18 See Kalashnikov v. Russia, judgment of 15.07.02, § 124, Schumacher v. Luxembourg, judgment of 25.11.03, § 28.

19 See Maj v. Italy, judgment of 19.02.91, §§ 13 to 15. See Viezzer v. Italy, judgment of 19.02.91, §§ 15 to 17. See appeal case 59493/00, Withey v. United Kingdom, decision of 26.08.03, with reference to case law, where it is also assumed that the case ended at the time when the case was dismissed, even though there was a possibility that the case, under certain conditions, could be reopened. See Schumacher v. Luxembourg, judgment of 25.11.03, § 28, where the case against the complainant was never brought before the courts and where the relevant period ended at the time when the national authorities found that any criminal liability was time-barred, thus putting an end to the criminal proceedings.

20 See Rokhlina v. Russia, judgment of 07.04.05, § 81, Nakhmanovich v. Russia, judgment of 02.03.06, §§ 88-89.

21 See appeal 71591/17, Gröning v. Germany, decision of 20.10.20, §§ 38 to 54.

Ice Podnk: Kjelbro 9788771989564
1bogota from Jurabibliotek.dk, z:fr-20125 01:56:10PM by lamamacser.@lav.c.J.k

be perceived as a single period22. If the defendant is convicted and a case is then pending on the determination of the sentence, the period does not end until the time when there is a final decision, including the imposition of the sentence23. Similarly, criminal proceedings ending in acquittal and subsequent proceedings for the reimbursement of costs may in certain cases be considered as a total period24. If the complainant is convicted and a process of confiscation is subsequently pending in connection with the convicted crime, the period will not end until a final decision has been made in the case of confiscation25.

If the complainant evades criminal prosecution, the complainant cannot generally complain about the period during which he or she has been on the run26. If the criminal case is unfinished due to flight, the period ends when the accused flees27. If a criminal case has been at a standstill for a period of time due to the accused's evasion, but is subsequently resumed and concluded, the part of the case processing time where the case has been at a standstill due to

the flight must be disregarded.

### 13.2.2. Civil cases

In civil cases, the relevant period generally begins at the time when the complainant brings the dispute before the courts28. If the complainant submits an incomplete application that must first be corrected or supplemented, the period will generally only begin to run at the time when the application can form the basis for the proceedings29. If a person joins a pending trial, the time limit for that person does not begin until the date of entry30. If a civil party enters into a criminal case and makes a claim for compensation (adhesion proceedings), the time limit is calculated from the time of the initiation, and that time may be prior to the case being processed before the courts, with the effect that the criminal investigation etc. also becomes relevant for the assessment of the case processing time31. If an association brings an action but the individual claimants are identified only during the proceedings, the latter can only be considered victims from the moment of entry32. Whether in civil or criminal proceedings, the relevant period may begin to run only from the date on which the Member States

---

22 See Garyfallou AEBE v. Greece, judgment of 24.09.97, § 40.

23 See Eckle v. Germany, judgment of 15.07.82, § 77.

24 See Mamic v. Slovenia (No 2), judgment of 27.07.06, §§ 26 to 31.

25 See Piper v. United Kingdom, judgment of 21.04.15, §§ 53 to 54.

26 See Vayic v. Turkey, judgment of 20.06.06, § 44.

27 See Vayic v. Turkey, judgment of 20.06.06, § 44.

28 See Stamoulakatos v. Greece (No 2), judgment of 26.11.97, § 32, Doustaly v. France, judgment of 23.04.98, § 37.

29 See Dachar v. France, judgment of 10.10.00.

30 See Dattel and Others v. Luxembourg, judgment of 04.08.05, § 44, referring to case-law and at the same time emphasising that, if a person intervenes in proceedings pending as heir, he may appeal against the total duration of the proceedings. See Scordino v. Italy (No 1), judgment of 29.03.06, § 220, where the Court emphasised that when a person intervenes on his own behalf, the time limit is counted from the time of entry, whereas the total duration of the proceedings may be appealed when the person declares that he wishes to continue the proceedings as an heir. See Olivieri and Others v. Italy, judgment of 25.02.16, §§ 35 to 36.

31 See Codarcea v. Romania, judgment of 02.06.09, § 78, Nicolae Virgiliu Tanase v. Romania, judgment of 25.06.19, §§ 207 to 208.

32 See A. and Others v. Denmark, judgment of 08.02.96, § 64. See also Christensen v. Denmark, judgment of 22.01.09, § 79, where an action was brought against a treating doctor, and subsequently the defendant was changed to the county responsible for the hospital, and the period was counted from the date of the action against the doctor, as the substance of

the lawsuit was unchanged.

792

Le huaal Kjelbro - 97287/1989564
Meclis from Jurabibliotek.dk, 02/18/2025 (01:56:10PM by lundmadsen (@ low ao.ck