02-01-00-1



Statsadvokaten for særlig Økonomisk og International Kriminalitet
Kampmannsgade 1
1604 København V

Kratbjerg 236
3480 Fredensborg

Telefon 72 22 18 18

E-mail via skat.dk/kontakt

24. august 2016

Sagid. 15-3455085
Indkomstår 2012-2015

Direkte nr. 7237 0195
Christian.ekstrand@Skat.dk

## Yderligere anmeldelse om svindel med tilbagesøgning af Udbytteskat for kr. 3,2 mia.

SKAT har i perioden 24. august – 13. november 2015 indgivet anmeldelse om formodet svindel med tilbagesøgning af indeholdt udbytteskat for perioden 2012 – 2015 på kr. 9,1 milliarder.

SKAT har tidligere anmeldt følgende udenlandske selskaber/Custodians.



Selskaberne har benyttet følgende professionelle virksomheder – såkaldte reclaimagenter til at tilbagesøge udbytteskatten gennem.

- SYNTAX GIS LTD
- ACUPAY
- GOAL TAXBACK

SKAT har efterfølgende gennemgået alle udbetalinger til ovenstående agentvirksomheder og har på det foreliggende grundlag fremfundet yderligere 81 selskaber/pensionsplaner hjemmehørende i bl.a. USA, der kan have tilknytning til eller der er formodning om har benyttet samme eller lignende metoder, som selskaberne i de foregående anmeldelser.

Af beløbet på kr. 3,2 milliarder, kan kr. 2,0 milliarder henføres til ovenstående 3 agentvirksomheder.
Ved gennemgangen, er det endvidere konstateret, at flere af anmodningerne fra ▮▮▮▮▮▮▮▮▮ og North Channel Bank kommer fra reclaimagenten KOI ASSOCIATES. De resterende kr. 1,2 milliarder kan derfor henføres til denne agent.

Af materialet fremgår det, at der fortrinsvis er tale om Amerikanske pensionsplaner og enkelte Canadiske Pensionsplaner, der har benyttet sig af følgende custodians/brokervirksomheder:

23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
305

SØK-76141-00005-16

1

                                                    CONFIDENTIAL

1. 

2.

3.

4.

5. NORTH CHANNEL BANK GMBH & CO. KG
   Rethelstrasse 1
   Bonifaziusturm B
   55118 Mainz

Agentvirksomheden

6. 

Bemærkninger til ovenstående:

Ad 1 og 2)



STEIN_LHOTE0000208                                    CONFIDENTIAL

Ad 3)



Ad 4)

Ad 5)

Der er tale om en tysk Broker/bank, der har ageret som mellemled mellem de amerikanske pensi-
onsplaner og reclaimagenterne. Udformningen af dokumentationen ser meget anderledes ud end de
øvrige broker/custodianvirksomheder, idet der her tale om en "rigtigt" udseende depotoversigt/ud-
byttemedelelse.

North Channel Bank (NCB)har udfærdiget mange CDA og der har været tilbagesøgt gennem alle
reclaimagenter med hovedvægten lagt på

Side 3 af 5

STEIN_LHOTE0000209                                                                CONFIDENTIAL

SKAT har dog ikke på baggrund af oplysninger modtaget fra VP Securities om udenlandske ejerandele (depot) af danske aktier, kunnet finde NCB anført med depoter af danske aktier.

SKAT har i forbindelse med sagsbehandlingen af modtagne men ikke udbetalte ansøgninger forespurgt om yderligere dokumentation for pengestrømme, men har heller ikke her modtaget den ønskede dokumentation.

SKAT fra IRS modtaget informationer om hovedparten af de i anmeldelsen nævnte pensionsplaner. Informationerne indeholder oplysninger om stiftelsestidspunkt, adresse, selvangivelsesstatus. Enkelte pensionsplaner er der tillige modtaget kopi af indsendt selvangivelse, oplysninger om trustee eller andet.

Eksempel:

_____ DEL 01, stiftet feb. 2014. GOAL er anvendt som agent. NCB som custodian.

April 2015 indsendes 8 ansøgninger om tilbagesøgning af indeholdt udbytteskat på kr. 37 mio. og et brutto udbytte på kr. 138 mio.

NCB har oplyst, at de har krediteret Pensionsplanens konto i NCB for det modtagne udbytte. Der er søgt tilbage på 8 forskellige aktier. Hovedparten af udbyttet kommer fra en investering i Novo Nordisk på omkring kr. 3 mia.,12 måneder efter pensionsplanens stiftelse.
Investeringen og Cashflowet skulle ifølge ovenstående være foregået over pensionsplanens konto i NCB.

Ifølge IRS er der umiddelbart tale om en pensionsplan med aktiver under $ 250.000.

Ad 6)

KOI er en forholdsvis nystiftet virksomhed. (stiftet nov. 2014). Det bemærkelsesværdige ved KOI er, at de fra 6 april 2015 til 23 juli 2015 indsender anmodninger om refusion for i alt kr.1,2 mia.

KOI anmoder om refusion på baggrund af CDA udarbejdet af Lindisfarne og NCB.

Også her er mønstret nystiftede pensionsplaner med meget store investeringer og tilbagesøgninger, hvilket ikke stemmer overens med de modtagne oplysninger fra IRS.

Afslutningsvist skal det bemærkes at de er det samme personsgalleri, der går igen som trustee i mange af planerne.

Bilagsmateriale og dokumentation for de i anmeldelse anførte iagttagelser, vil blive fremsendt løbende til SØIK.

Kontaktpersoner

SKATs kontaktpersoner er John Christiansen og Christian Baden Ekstrand, Skattecenter Fredensborg, som naturligvis står til rådighed med eventuelle yderligere oplysninger og dokumentation.

4

                    CONFIDENTIAL

Med venlig hilsen



Christian Baden Ekstrand
Fagkonsulent

Lill Helene Drost
Funktionsleder

STEIN_LHOTE0000211                                                    CONFIDENTIAL

## Harvey – Translation

Files
GRP 02-01 - STEIN_LHOTE0000207.pdf

Query
en

Response
Page 1
02-01-00-1

~, e

Tax

The State Prosecutor for Serious Economic and International Crime

Keathjery B38

Kampmannsgade f

3480 Fredeneborg

1604 Copenhagen V

Phone 7222 40 18

Email via shaLdidkontakt

August 24, 2016

Inde

20-2018

Direct no. 7237 OTSS

hk

Further report on fraud involving the reclaiming of

dividend tax amounting to DKK 3.2 billion

During the period from August 24 to November 13, 2015, SKAT filed a report on suspected fraud

involving the reclaiming of withheld dividend tax for the period 2012 – 2015

amounting to DKK 9.1 billion.

SKAT has previously reported the following foreign companies/custodians.

The companies have used the following professional firms - so-called reclaim agents - to reclaim the dividend tax through.

SYNTAX GIS LTD

ACUPAY

6

                                                                  CONFIDENTIAL

GOAL TAXBACK

SKAT has subsequently reviewed all payments to the above-mentioned agent companies and has on

the existing basis identified an additional 81 companies/pension plans domiciled in, among others,

the USA, which may be connected to or are suspected of using the same or similar methods as the companies in the previous reports.

Of the amount of DKK 3.2 billion, DKK 2.0 billion can be attributed to the above-mentioned 3 agent companies.

During the review, it was also found that several of the requests from

North Channel Bank come from the reclaim agent███████████. The remaining DKK 1.2 billion can therefore be attributed to this agent.

The material shows that primarily American pension plans and a few Canadian pension plans have used the following custodians/broker companies:

STEIN_LHOTE0000207

CONFIDENTIAL

Page 2
02-01-00-2

The Agency Business

6.

KOI ASSOCIATES LTD

Comments on the above:

Regarding 1 and 2

Page 2 of 5

STEIN_LHOTE0000208

CONFIDENTIAL

Page 3
02-01-00-3

There is talk about a certain Broker/bank that has acted as an intermediary between the American pension plans and the reclaim agents. The documentation appears very different from the other broker/custodian companies, as this involves a "real" looking deposit overview/dividend statement.

North Channel Bank (NCB) has issued many CDAs and has been sought after by all reclaim agents, with the main focus on GOAL and KOI.

Page 3 of 8

STEIN_LHOTE0000209

CONFIDENTIAL

Page 4
02-01-00-4

7

CONFIDENTIAL

However, based on information received from VP Securities regarding foreign ownership (deposits) of Danish shares, SKAT has not been able to find NCB listed with deposits of Danish shares.

In connection with the processing of received but not paid applications, SKAT has requested additional documentation for cash flow but has not received the requested documentation.

SKAT has received information from the IRS about the majority of the pension plans mentioned in the report. The information includes details about the establishment date, address, tax return status, and in some cases, a copy of the submitted tax return, information about the trustee, or other details.

Example:

████████████████ DEL 01, established in February 2014. GOAL is used as an agent. NCB as custodian.

In April 2015, applications were submitted for the refund of withheld dividend tax amounting to DKK 37 million and a gross dividend of DKK 135 million.

NCB has stated that they have credited the Pension Plan's account in NCB for the received dividend.

There are refunds on 8 different shares. The majority of the dividend comes from an investment in Novo Nordisk of around DKK 3 billion, 12 months after the establishment of the pension plan.

According to the above, the investment and cash flow should have been conducted over the pension plan's account in NCB.

According to the IRS, it is apparently a pension plan with assets under $250,000.

Ad 6)

KOI is a relatively newly established company (established in November 2014). The remarkable thing about KOI is that from April 20, 2015, to July 23, 2015, they submitted requests for refunds totaling DKK 1.2 billion.

KOI requests refunds based on CDA prepared by Lindisfarne and NCB.

Here too, the pattern is newly established pension plans with very large investments and refunds, which does not match the received information from the IRS.

Finally, it should be noted that the same individuals appear as trustees in many of the plans.

Supporting material and documentation for the observations mentioned in the report will be sent continuously to SOIK.

Contact Persons

SKAT's contact persons are John Christiansen and Christian Baden Ekstrand, Tax Center Fredensborg, who are of course available for any further information and documentation.

Page 4 of 5

STEIN_LHOTE0000210

CONFIDENTIAL

Page 5
02-01-00-5

Gea bd

Lill Helene Drost

                                                      CONFIDENTIAL

Function Manager

Page 5 of 5

STEIN_LHOTE0000211

CONFIDENTIAL

                                        CONFIDENTIAL

02-03-00-1
02-01-00-002



Overbringes
Statsadvokaten for særlig Økonomisk og International Kriminalitet
Kampmannsgade 1
1604 København V

Krøbjerg 236
3480 Fredensborg

Telefon 72 22 18 18

E-mail via skat.dk/kontakt

24. august 2015

Sagld.
Indkomstår 2012-2015

Direkte nr. 7287 0185
Christian.stelraed@Skat.dh

# Anmeldelse om svindel med tilbagesøgning af udbytteskat

SKAT indgiver hermed anmeldelse om formodet svindel mod den danske stat omfattet af Straffelovens § 279, ved uberettiget tilbagesøgning af indeholdt udbytteskat for perioden 2012 – 2015 på ikke mindre end 6,2 milliarder kroner.

Anmeldelsen omfatter følgende udenlandske selskaber og person:



London,

**London,**

London,    Street
        3 A

London

**Hovedperson:**

er ifølge SKATs oplysninger af        oprindelse men bosiddende i

STEIN_LHOTE0000214                                            CONFIDENTIAL

02-09-00-2

02-01-00-003

**Sagens tilblivelse**

SKAT har den 16. juni 2015, fra ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ på vegne af en unavngiven klient modtaget anmeldelse om formodet svindel med tilbagesøg-
ning af udbytteskatter på omkring kr. 500.000.000

▇▇▇ har 18. juni 2015 fremsendt supplerende oplysninger til anmeldelsen. Jævnfør bilag 1

SKAT har den 27. juli 2015 modtaget ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇e skattemyndigheder om udveks-
ling af oplysninger vedrørende selskaber ▇▇▇▇▇▇▇▇▇▇▇▇. Anmodningen indeholder en de-
taljeret beskrivelse af hele det benyttede ▇▇▇▇▇▇▇▇▇▇ørede virksomheder/selskaber.
Jævnfør bilag 2.

SKAT har den 11. august 2015 modtaget spontan oplysninger fra England indeholdes 184 navne på
selskaber, der kan være benyttet i forbindelse med tilbagesøgningen af udbytte(.) Jævnfør bilag 3

Der er sammenfald i personkredsen/selskaber for begge anmeldelser.

**Beskrivelse af sagen**

Sagen omhandler svindel med tilbagesøgning af indeholdt udbytteskat ved udnyttelse af
dobbeltbeskatningsoverenskomsterne (DBO'er) mellem henholdsvis DK/USA og DK/Malaysia

Svindlen går ud på, at selskaber registreret på Labuan (Malysia) og USA anmoder SKAT om refu-
sion af den indeholdte udbytteskat på en given aktiepost i en dansk virksomhed.
I henhold til DBO'erne kan selskaberne tilbagesøge 27% (hele den indeholdte udbytteskat, hvis sel-
skaberne har ejet aktierne på udbetalingstidspunktet/tidspunktet for deklareringen af udbyttet.

Ifølge de modtagne oplysninger består svindlen tilsyneladende i, at de internt i deres netværk og
meget organiseret i et til lejligheden udviklet programmel laver posteringer, der viser handler-lånen
aktier når det er tid til at få udbetalt udbytte. Anmeldelsen går på, at dette alene er foretaget bog fø-
ringsmæssigt og er rene luftposteringer. Der er aldrig handlet aktier eller overgået betalinger herfor.
Det er alene lavet for, at selskaberne på falsk grundlag kan tilbagesøge udbytteskatten.

Der henvises til bilag 2 fra HM Revenue & Customs.

SKAT har modtaget en liste med 184 navngivne selskaber registreret i USA eller Malaysia, der alle
skulle være benyttet til formålet. Jævnfør bilag 3

Det er konstateret, at der har været udbetalinger til 132 af de 184 nævnte selskaber, jævnfør
bilag 4

Selskaberne benytter professionelle virksomheder    såkaldte reclaimagenter til, at tilbagesøge ud-
bytteskatten. Disse selskaber mistænkes umiddelbart ikke og forventes ikke at være vidende om
svindlen.

Det er konstateret, at de berørte selskaber har benyttet følgende reclaimagenter,
jævnfør bilag 5.

Side 2 af 6

11

STEIN_LHOTE0000215                                                          CONFIDENTIAL

SYNTAX GIS LTD
ACUPAY
GOAL TAXBACK

Firmaerne indsender anmodningen til Skat på vegne af de underliggende selskabers repræsentanter.

SKAT har med anmeldelsen den 16. juni 2015 modtaget bankkontoudskrift fra ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ fra december 2014 hvoraf det fremgår, at der er indsætninger fra eks. Goal
Taxback og Syntax GIS. Der er endvidere overført 7,5 mio. Euro til ▮▮▮▮▮▮ personligt.

**Det er konstateret at selskaberne har ladet sig repræsentere af følgende**



London,

London.

London,

London.

Ifølge de foreliggende oplysninger skulle virksomhederne være indbyrdes forbundne og i sidste
ende kunne henføres til ▮▮▮▮ ▮▮▮▮ SKAT har foretaget opslag i virksomhedsdatabasen orbis
(Burea van dijk) og kan delvis bekræfte dette. Jævnfør bilag 6

**Beskrivelse af processen**

**Eksempel:**

Reclaimagenten eks. Goal Taxback indsender følgende dokumenter til SKAT i forbindelse med an-
modningen:

- 1 stk. SKAT blanket 06.003 med oplysning om selskabets navn, den tilbagesøgte skats stør-
  relse og reclaimagentens bankkonto til brug for SKATs udbetaling.
- 1 stk. power of attorney – som giver reclaimagenten ret til at handle på selskabets vegne.
- 1 stk. erklæring fra den udenlandske skattemyndighed om at selskabet er hjemmehørende i
  eksempelvis USA.
- 1 stk. "original dividend credit advice" fra eks. ▮▮▮▮▮▮▮

STEIN_LHOTE0000216    CONFIDENTIAL

Det er sidstnævnte dokument, der formodes svindlet med. Der er ikke tale om en original depot-oversigt fra et af de danske selskaber, men et dokument udarbejdet af det firma, der angiveligt står bag svindlen, og som træder i stedet for en sådan depotoversigt. Dokumentet indeholder oplysninger om ejer af aktien, navnet på aktien, antal aktier, udbytte og udbytteskattens størrelse. Dokumentet indeholder ingen oplysninger om depotnr., pengeinstitut (depot) eller andet, der underbygger, at selskabet skulle eje aktien.

**Yderligere bemærkninger:**

De omhandlede selskaber (126) har i perioden 2012 – 2015 indsendt 2120 anmodninger om refusion af udbytteskat til de danske skattemyndigheder. Beløbet er på denne baggrund opgjort til 6,2 milliarder kroner (afrundet)

SKAT har ikke selv adgang til oplysninger om hvilke aktionærer, der besidder aktier i et givent selskab. SKAT har den 20. august 2015 forespurgt TDC om 13 konkrete eksempler på udbyttemodtagere/aktionærer, der har tilbagesøgt udbytte. Alle 4 repræsentanter (      etc.) er indeholdt i forespørgslen – jævnfør bilag 7. TDC har oplyst, at de ikke er bekendt med, at de konkrete udbyttemodtagere/aktionærer ejer eller har ejet aktier i TDC.

SKAT har fra England (HM Revenue & Customs) modtaget oplysning om at de på bilag 3 anførte selskaber vil tilbagesøge udbytteskat for 100 mio. kroner i forbindelse med TDC udlodning af udbytte 13. august 2015. SKAT har ikke modtaget anmodning om dette fra de implicerede selskaber.

**Skats foreløbige konklusion:**

På baggrund af de af SKAT modtagne oplysninger er det konstateret, at 126 udenlandske selskaber beliggende i henholdsvis Malaysia og USA, ved hjælp af Dobbeltbeskatningsoverenskomster de respektive lande imellem og ved brug af udenlandske reclaimagenter, der på vegne af de i anmeldelsen til SKAT nævnte virksomheder – her under           , har tilbagesøgt og fået udbetalt tilbageholdt udbytteskat på kr. 6,2 milliarder kroner for perioden 2012-2015.

Beløbet fordeler sig således:

| Indkomstår | Refunderet udbytteskat |
|---|---|
| 2012 | 34.259.760 |
| 2013 | 573.726.938 |
| 2014 | 2.498.932.354 |
| 2015 | 3.154.488.092 |
| **Total** | **6.261.407.144** |

SKAT har gennemgået det modtagne dokumentationsmateriale i forbindelse med tilbagesøgningen af udbytteskatten.

Af materialet fremgår det, at dokumentationen indeholder 1 stk. "original dividend credit advice" fra enten              eller        

Dokumentet indeholder oplysninger om ejer af den danske aktien, navnet på aktien, antal aktier, udbytte og udbytteskattens størrelse. Dokumentet indeholder ingen oplysninger om depotnr., pengeinstitut (depot) eller andet, der underbygger, at selskabet skulle eje aktien.

13

STEIN_LHOTE0000217

CONFIDENTIAL

Med henblik på, at efterprøve validiteten heraf, har SKAT spurgt TDC om 13 konkrete eksempler på udbyttemodtagere/aktionærer, der har tilbagesøgt udbytte. TDC har oplyst, at de ikke er bekendt med, at de konkrete udbyttemodtagere/aktionærer ejer eller har ejet aktier i TDC.

SKATs har derfor en mistanke om, at der kan være tale om svindel med tilbagesøgning af udbytteskat på 6,2 milliarder kroner.

**Kontaktpersoner**

SKAT står til rådighed med den nødvendige sagkyndige bistand, ligesom vi gerne deltager under evt. ransagning, afhøringer mv.

SKATs kontaktperson er Christian Baden Ekstrand, Skattecenter Fredensborg, som naturligvis står til rådighed med eventuelle yderligere oplysninger og dokumentation.

Den underliggende dokumentation til brug for denne anmeldelse, eftersendes løbende.

Med venlig hilsen



Christian Baden Ekstrand
Fagkonsulent

Lan Helene Drost
Funktionsleder

14

STEIN_LHOTE0000218

CONFIDENTIAL

**Bilagsoversigt**

**Bilag 1**
Anmeldelse fra

**Bilag 2**
Bistandsanmodning fra HM Revenue & Customs

**Bilag 3**
Spontanoplysning fra HM Revenue & Customs indeholdende en liste på 184 mulige selskabsnavne

**Bilag 4**
Liste over selskaber der har modtaget udbytte, med oplysning om selskabsnavn og beløb

**Bilag 5**
Eksempler på ansøgning fra reclaimagenterne

**Bilag 6**
Selskabsoplysninger fra Orbis

**Bilag 7**
Selskaber der er benyttet ved henvendelse til TDC

Foreværerpaalaeg jf. RPL 729a

Side 6 af 6

15

                                                                      CONFIDENTIAL

## Harvey – Translation

Files
GRP 02-03 - STEIN_LHOTE0000214.pdf

Query
en

Response
Page 1
02-03-00-1

'2-O4—20-002

PS

Sk AT

Delivered

Kesthje's 236

The Public Prosecutor for Special Economic and International Crime

3480 Frodenstorg

Kampmannsgade 1

Phone 72 22 18 18

1604 Copenhagen V

B-mail

vin akatatikoniaia

24, August 20165

Case ID.

income 2012-2015

Contact no. 7237 0195

Cirtatian ekstrai

k

Report on fraud involving the refund of dividend tax

SKAT hereby submits a report on suspected fraud against the Danish state covered by the Penal Code § 279, through unauthorized refunds of withheld dividend tax in the period 2012 — 2015 amounting to no less than 6.2 billion kroner.

The report includes the following foreign companies that, according to SKAT's information, are of foreign origin but residing in

STEIN_LHOTE0000214

16

CONFIDENTIAL

CONFIDENTIAL
Page 2
02-03-00-2

62-64-68 0-063—

Case: Fraud

SKAT has on June 16, 2015, received a report on behalf of an anonymous client regarding suspected fraud involving the refund of dividend taxes amounting to approximately DKK 500,000,000.

On June 18, 2015, additional information was submitted to the report. See Appendix 1.

SKAT received information on July 27, 2015, from tax authorities regarding the exchange of information concerning the case.

The information contains a detailed description of the entire scheme used by the companies. See Appendix 2.

On August 11, 2015, SKAT received spontaneous information containing 184 names.

There is an overlap in the individuals/companies involved in both reports.

Description of the case

The case involves fraud with the refund of withheld dividend tax by exploiting double taxation agreements (DTAs) between Denmark/USA and Denmark/Malaysia.

The fraud involves companies registered in Labuan (Malaysia) and the USA requesting SKAT for a refund of the withheld dividend tax on a given dividend from a Danish company.

According to the DTAs, the companies can reclaim 27% (the entire withheld dividend tax) if the companies owned the shares at the time of the dividend declaration.

The fraud appears to involve the creation of false transactions within their network using developed software that shows trading and dividend payments. The report indicates that these are merely book entries. No actual shares were traded or payments made.

The sole purpose is to falsely reclaim the dividend tax.

SKAT has received a list of 184 named companies registered in the USA or Malaysia, all allegedly used for this purpose. See Appendix 5.

It has been established that payments have been made to 132 of the 184 named companies. See Appendix 4.

The companies use professional firms, so-called reclaim agents, to reclaim the dividend tax. These firms are not immediately suspected and are not expected to be aware of the fraud.

It has been established that the affected companies have used the following reclaim agents. See Appendix 6.

Page 2 of 6

STEIN_LHOTE0000215

CONFIDENTIAL
Page 3
02-03-00-3

02-04-00-004

STEIN_LHOTE0010385                                    CONFIDENTIAL

SYNTAX GIS LTD

ACUPAY

GOAL TAXBACK.

The company submits the request to the tax authorities on behalf of the representatives of the underlying companies.

The tax authorities received a bank statement on June 16, 2015, from December 2014, which shows deposits from, for example, Goal Taxback and Syntax GIS. Additionally, 7.5 million Euros were transferred to EE personally.

It has been established that the companies are represented by the following:

London,

According to the available information, these companies are interconnected and ultimately can be traced back to I) GE) The tax authorities have conducted a search in the business database Orbis (Bureau van Dijk) and can partially confirm this, as per attachment 6.

Description of the process

Example:

The reclaim agent, e.g., Goal Taxback, submits the following documents to the tax authorities in connection with the request:

1 piece of tax authority form 06.003 with information about the company's name, the amount of tax being reclaimed, and the reclaim agent's bank account for the tax authorities' payment.

1 piece of power of attorney — which gives the reclaim agent the right to act on behalf of the company.

1 piece of declaration from the foreign tax authority stating that the company is resident in, for example, the USA.

1 piece of "original dividend credit advice" from, e.g., Si'

STEIN_LHOTE0000216

CONFIDENTIAL

Page 4
**Translation:**

02-03-00-4

'92-04-B0-B05

It is the latter document that is suspected of being fraudulent. It is not an original custody statement from one of the Danish companies, but a document prepared by the firm allegedly behind the fraud, and which replaces a genuine custody statement. The document contains information about the owner of the stock, the name of the stock, the number of shares, the dividend, and the amount of dividend tax. The document does not contain any information about the custody account number, financial institution (custody), or anything else that substantiates that the company owns the stock.

Additional remarks:

STEIN_LHOTE0010386                                                                                    CONFIDENTIAL

The companies in question (126) have submitted 2120 requests for dividend tax refunds to the Danish tax authorities during the period 2012 — 2015. Based on this, the amount has been calculated to 6.2 billion kroner (rounded).

SKAT does not have access to information about which shareholders hold shares in a given company. On August 20, 2015, SKAT inquired with TDC about 13 specific examples of dividend recipients/shareholders who have requested refunds. All 4 representatives (etc.) are included in the inquiry — see appendix 7. TDC has stated that they are not aware that the specific dividend recipients/shareholders own or have owned shares in TDC.

SKAT has received information from England (HM Revenue & Customs) that the companies listed in appendix 3 will request a dividend tax refund of 100 million kroner in connection with TDC's dividend distribution on August 13, 2015. SKAT has not received a request for a refund from the implicated companies.

SKAT's preliminary conclusion:

Based on the information received by SKAT, it is concluded that 126 foreign companies located in Malaysia and the USA, with the help of Double Taxation Agreements between the respective countries and by using reclaim agents, have requested and received refunds of withheld dividend tax amounting to 6.2 billion kroner for the period 2012-2015.

The amount is distributed as follows:

Income year

2012: 34,259,760  2013: 573,726,938  2014: 2,498,932,354  2015: 3,154,488,092

Total: 6,261,407,144

SKAT has reviewed the received documentation material in connection with the refund of the dividend tax.

From the material, it appears that the documentation includes an "original dividend credit advice" from either [blank] or [blank]. The document contains information about the owner of the Danish stock, the name of the stock, the number of shares, the dividend, and the amount of dividend tax. The document does not contain any information about the custody account number, financial institution (custody), or anything else that substantiates that the company owns the stock.

STEIN_LHOTE0000217

CONFIDENTIAL
Page 5
02-03-00-5

02-04-00-006

In order to verify the validity of this, SKAT has asked TDC about 13 specific examples of dividend recipients/shareholders who have reclaimed dividends. TDC has informed that they are not aware that the specific dividend recipients/shareholders own or have owned shares in TDC.

SKAT therefore suspects that there may be fraud involved in the reclaiming of dividend tax amounting to 6.2 billion kroner.

Contacts

SKAT is available with the necessary expert assistance, and we are also willing to participate during any potential searches, interrogations, etc.

SKAT's contact person is Christian Baden Ekstrand, Tax Center Fredensborg, who is of course available with any further information and documentation.

STEIN_LHOTE0010387

CONFIDENTIAL

Best regards,

Baden Ekstrand

Specialist Consultant

Page 5 of 6

STEIN_LHOTE0000218

CONFIDENTIAL

Page 6
02-03-00-6

02-04-08-007—

Attachment Overview

Aries

Attachment 1

Attachment Zz

Request for Assistance from HM Revenue & Customs

Attachment 3

Spontaneous Information from HM Revenue & Customs containing a list of 184 possible company names

Attachment 4

List of companies that have received dividends, with information on company names and amounts

Attachment 5

Examples of applications from reclaim agents

Attachment 6

Company information from Orbis

Attachment 7

Companies that have been used in communication with TDC

Page Gal 6

STEIN_LHOTE0000219

CONFIDENTIAL

STEIN_LHOTE0010388

CONFIDENTIAL

TfK2021.696
TfK2021.696

*Ikke beslaglæggelse hos den bedragerisigtede A, der havde indgået forlig med Skattestyrelsen om tilbagebetaling af berigelse opnået ved refusion af udbytteskat.*

*Retspleje 35.5.*

A, der var hovedaktionæraktionær i C Bank og sigtet for bedrageri af særlig grov karakter i sagen om udbytteskat, havde med en række andre indgået et større forlig med Skattestyrelsen om tilbagebetaling af berigelsen. Der var i den anledning tilbagebetalt over 1 mia. kr. og et endnu ikke forfaldent beløb på 600 mio. kr. Anklagemyndigheden anmodede om beslaglæggelse af ejendom og indeståender på konti i USA tilhørende A. Beslaglæggelsen var ikke til sikkerhed for bødekrav, men for det offentliges krav på konfiskation, sagsomkostninger og forurettedes erstatningskrav. Anklagemyndigheden gjorde gældende, at det efter erstatningskravets størrelse (mindst 600 mio. kr.) var nødvendigt at foretage beslaglæggelse. Forsvareren gjorde gældende, at A med aftalen om tilbagebetaling og om at samarbejde med Skattestyrelsen havde vist vilje til at opfylde forliget, hvorfor beslaglæggelse ikke var nødvendig. Forliget indebar endvidere, at A skulle fralægge sig et beløb svarende til berigelsen. Der var derfor ikke grundlag for udbyttekonfiskation og for erstatning, og beslaglæggelse til dækning af sagsomkostninger i form af udgifter til A's forsvarer var ikke proportional. Byretten tog anklagemyndighedens påstand til følge. Landsretten bemærkede, at A med rimelig grund var mistænkt, men henviste til, at forliget indtil videre var overholdt. Der var betalt over 1 mia. kr., heraf over 23 mio. kr. i 2021, og den resterende forligssum på mindst ca. 600 mio. kr. skulle betales senest i 2021. A havde underskrevet et eksigibelt retsforlig på den udestående forligssum, og det var Skattestyrelsens forventning, at det ikke blev aktuelt at nedlægge påstand om erstatning under en straffesag om de påståede aktiebesiddelser i C Bank. Da der heller ikke var oplysninger om forsøg på forstikkelse eller anden unddragelse, var beslaglæggelse ikke nødvendig for at sikre udbytte af den strafbare handling, krav på konfiskation eller erstatning, jf. retsplejelovens § 802, stk. 1 og 2, ligesom der heller ikke kunne ske beslaglæggelse til sikring af sagsomkostninger, jf. retsplejelovens § 802, stk. 2. Betingelserne for beslaglæggelse var derfor ikke opfyldt.

**Ø.L.K. 22. april 2021 i kære 10. afd. S-201-21 og S-202-21**

(Katja Høegh, Malou Kragh Halling og Nicolai Uggerhøj-Winther).

*Anklagemyndigheden*
mod
*A (adv. Hanne Rahbæk, Kbh., besk.)*

**Østre Landsrets retsbog**

...

Advokat Hanne Rahbæk har kæret København Byrets kendelse af 2. april 2020 (...) om, at betingelserne efter dansk ret for at beslaglægge med respekt for eksisterende rettigheder 50 % af en ejendom beliggende i New York, USA, tilhørende hendes klient, der er mistænkt for at have begået bedrageri af særlig grov beskaffenhed efter straffelovens § 279, jf. § 286, stk. 2, og hans hustru, er opfyldt. Advokat Hanne Rahbæk har endvidere kæret Retten i Lyngbys kendelse af 24. april 2020 (...) om, at betingelserne efter dansk ret er opfyldt med henblik på med respekt for eksisterende rettigheder at beslaglægge samme klients konti med indeståender på op til i alt 1,1 mia. kr. i 5 nærmere angivne

banker i USA, og om at betingelserne efter dansk ret er opfyldt for at pålægge ansatte i nævnte banker tavshedspligt med hensyn til deres viden om sagen.

...

Anklageren forelagde kæresagen under fornøden dokumentation. Forsvareren havde mulighed for at supplere.

Der blev herunder blandt andet dokumenteret følgende fra Rigsrevisionens notat af 15. januar 2020 om »Skattestyrelsens forlig med 61 amerikanske pensionsplaner mfl. fra maj 2019«:

...

Forsvareren havde lejlighed til at supplere forelæggelsen og gennemgik herunder fra det materiale, hun har fremlagt, blandt andet:

- Den konkrete forligsaftale, der i maj 2019 blev indgået mellem Skatteforvaltningen og blandt andre hendes klienter, som deres amerikanske advokat har sendt til SØIK den 21. april 2021,

- en af den amerikanske advokat samtidig fremsendt fortrolig oversigt over foretagne daterede betalinger til de danske skattemyndigheder i henhold til forligsaftalen,

- breve af 6. januar og 28. januar 2021, hvori SØIK har stillet en række spørgsmål til Skattestyrelsen, og Skattestyrelsens svar ved breve af 19. januar og 3. februar 2021,

- en yderligere henvendelse fra SØIK af 26. februar 2021 til Skattestyrelsen, som endnu ikke er besvaret af Skattestyrelsen, og

- en mailkorrespondance mellem SØIK og repræsentanter fra US Department of Justice i perioden 5. maj 2020 til 19. januar 2021 angående mulighederne for beslaglæggelse og edition i USA.

Forsvareren oplyste endvidere, at SØIK den 13. april 2021 har rejst tiltale mod blandt andre hendes klienter, som nægter sig skyldige. A blev i den forbindelse afhørt fra den 3. marts til den 5. marts 2021 og B fra den 10. marts til den 12. marts 2021, men udskrifterne herfra vil efter det af anklagemyndigheden oplyste først foreligge ultimo maj/primo juni måned.

Anklageren oplyste på landsrettens forespørgsel, at der ikke foreligger nogen aftale eller koordination med skattemyndighederne om anmodningen om beslaglæggelse. Den ejendom, som ønskes beslaglagt i USA, beliggende på ..., New York County, var på det tidspunkt, hvor anklagemyndigheden sidst undersøgte det, fortsat ejet af A og dennes hustru. Anklagemyndigheden har ikke oplysninger om indeståender og bevægelser på de konti, som Retten i Lyngbys kendelse angår. Den retsanmodning, der er fremsat over for de amerikanske myndigheder, angår dels beslaglæggelse og dels edition i sådanne bankoplysninger.

*Anklageren* nedlagde påstand om stadfæstelse, dog således at anklagemyndigheden maksimalt kan foretage beslaglæggelse for 630.000.000 kr. hos A og B. Anklageren præciserede endvidere, at beslaglæggelse ikke vil skulle ske til sikkerhed for bødekrav, men alene til sikkerhed for det offentliges krav på konfiskation og sagsomkostninger og forurettedes krav på erstatning i sagen.

*Forsvareren* nedlagde principal påstand om, at betingelserne for beslaglæggelse efter dansk ret ikke er opfyldt, subsidiært - såfremt landsretten måtte nå frem til, at oplysninger om A og B's konkrete økonomiske forhold og betalingsevne har betydning for vurderingen af spørgsmålet om beslaglæggelse - at sagen udsættes, og forsvarerpålæg på oplysninger relateret til kæremålet (sporingssagen) ophæves, med henblik på at forsvareren kan indhente de relevante økonomiske oplysninger hos de sigtede, og mere subsidiært, at sagen udsættes på, at resultatet af de gennemførte afhøringer foreligger, da der i afhøringerne kan være

Copyright © 2021 Karnov Group Denmark A/S

side 1

STEIN_LHOTE0001241                                                                                   CONFIDENTIAL

oplysninger om betalingerne til Skattestyrelsen og planerne for de kommende betalinger.

Kæresagen procederedes.

Anklageren procederede i det væsentlige i overensstemmelse med det indgivne kæresvarsskrift, hvoraf navnlig følgende fremgår:

»2.5. *Forliget med SKAT (i dag: Skattestyrelsen)*

Skattestyrelsen har indgået et forlig med 61 amerikanske pensionsplaner samt 56 individer, herunder A og B. Forliget omfatter blandt andet refusioner af udbytteskat søgt på baggrund af Dividend Credit Advices (DCA) udstedt af C Bank til 27 af de 61 amerikanske pensionsplaner.

Det er i nærværende sag søgt refusion af udbytteskat på baggrund af DCA'er udstedt af C Bank for i alt 1,135 mia. kr., mens forliget vedrører udbetalinger for ca. 2,9 mia. kr.

Det fremgår af punkt 24 i Rigsrevisionens gennemgang af forliget, at de tre hovedaktionærer hæfter for en restbetaling på 600 mio. kr., idet der er en forudsætning i forliget om, at 50 mio. kr. ud af restforligssummen betales af C Bank. Derudover er C Bank pålagt en bøde på 110 mio. kr. Skattestyrelsen har oplyst, at Skattestyrelsen ikke har modtaget noget beløb fra C Bank. Skattestyrelsen har dog også oplyst, at de 50 mio. kr. først skal betales, når banken er solgt. Gældsstyrelsen har oplyst, at Gældsstyrelsen heller ikke har modtaget nogen betaling fra banken. De 110 mio. kr. som skal betales til Gældsstyrelsen er forfalden til betaling.

SØIK har ved breve af den 6. og den 28. januar 2021 bedt Skattestyrelsen give uddybende oplysninger om forliget, hvilke breve Skattestyrelsen har besvaret henholdsvis den 19. januar og den 3. februar 2021.

Skattestyrelsen har over for SØIK oplyst, at Skattestyrelsen fortsat har et erstatningskrav mod A og B på mindst 600 mio. kr. Skattestyrelsen har foruden de 950 mio. kr., som er omtalt i Rigsrevisionens gennemgang af forliget, modtaget yderligere 35 mio. kr. i 2020.

Skattestyrelsen har endvidere oplyst, at Skattestyrelsen forventer, at der kommer til at ske en vis forhøjelse af kravet mod bl.a. A og B.

De tre amerikanske hovedaktionærer i C Bank, A, B og D, har ifølge Skattestyrelsen underskrevet en 'Confession of Judgment', hvilket er et eksigibelt fundament reguleret af New York State Law. I henhold til denne 'Confession of Judgment' hæfter disse tre personer solidarisk for restforligssummen på p.t. 600 mio. kr., hvilket beløb som nævnt forventes at blive underlagt en vis forhøjelse.

Det er ikke muligt for SØIK at få oplyst via Skattestyrelsen, hvem der har betalt hvilket beløb ud af de foreløbigt i alt 985 mio. kr., som er indbetalt til Skattestyrelsen. Baggrunden herfor er, at forligsparterne har indbetalt til deres amerikanske advokatforbindelse, som har betalt til Kammeradvokaten, som igen har indbetalt til Skattestyrelsen.

...

*3.2. Mistankekravet*

Beslaglæggelser efter både [§ 802] stk. 1 og 2 kræver, at den pågældende med rimelig grund er mistænkt for en lovovertrædelse, der er undergivet offentlig påtale.

Det er anklagemyndighedens opfattelse, at mistanken mod A og B for overtrædelse af straffelovens § 279, jf. 286, stk. 2, er rimeligt begrundet i det ovenfor under punkt 2.4 beskrevne.

Anklagemyndigheden skal navnlig henvise til

- at samtlige pensionsplaner blev introduceret til C Bank af dennes ejere, som på det tidspunkt var A, B og D
- at al korrespondance vedrørende onboarding af pensionsplanerne skete mellem medarbejdere hos C Bank og selskabet E LLC, der i 2013 blev stiftet af A, B og D.

- at aktierne handledes i ring mellem aktørerne internt i C Bank, hvorfor nettoresultatet af pengebevægelserne for hver part var nul.
- at banken udstedte DCA'erne, der var centrale dokumenter i ansøgningerne om udbytte refusion
- at ingen af de ovennævnte pensionsplaner på noget tidspunkt reelt har haft aktier i depot hos C Bank, eller at der er blevet udbetalt et nettoudbytte, og at indholdet af de udstedte DCA'er dermed ikke var retvisende.
- at SKAT på baggrund af ansøgningerne udbetalte 1,135 mia. kr., hvoraf mindst 624,25 mio. kr. tilgik selskaber som kan knyttes til A, B og D, og hvoraf mindst USD 61 mio. gennem andre selskaber blev overført til private konti tilhørende eller kontrolleret af A, B og D.

Hertil kommer, at A og B sammen med andre har indgået et forlig med SKAT (nu Skattestyrelsen) om tilbagebetaling af mindst 1,6 mia. kr., og ydermere sammen med D har påtaget sig en solidarisk hæftelse for betaling af de resterende mindst 600 mio. kr., hvilket efter anklagemyndighedens opfattelse blot bekræfter mistanken mod dem.

*3.3. Udbyttets størrelse*

[P]å baggrund af det under punkt 2.3 ovenfor beskrevne foreløbigt konstateres, at A via sin ejerandel i B LLC har modtaget 47,1 % af 9.040.083,40 euro svarende til 4.257.879,28 euro. Derudover har han via F LLC modtaget 28.060.000 USD på en konto, som han har kontrol over. Opgjort med de nuværende valutakurser svarer det til i alt ca. 205.000.000 kr.

A's udbytte i nærværende sag er således ikke mindre end 205.000.000 kr.

B havde en ejerandel E LLC på 35,3 %, hvorfor han via denne ejerandel har modtaget 3.191.149,44 euro. Derudover har han via F LLC modtaget 21.960.000 USD, og endelig har han via G S.A. modtaget mindst 27,6 mio. euro på en konto som han har kontrol over, hvoraf de 151.200 euro er betalt til B's søster, .... Opgjort med de nuværende valutakurser svarer det til i alt ca. 363.000.000 kr. Beløbet betalt til ... er ikke modtaget i de 363.000.000 kr.

B's udbytte udgør således i nærværende sag ikke mindre end 363.000.000 kr.

*3.4. Beslaglæggelse til sikring af konfiskationskrav og erstatningskrav*

...

Som det fremgår ovenfor under pkt. 2.5, har Skattestyrelsen sideløbende med den strafferetlige efterforskning indgået en forligsaftale med blandt andre A og B. Skattestyrelsen har indtil videre modtaget 985 mio. kr. som led i forligsaftalen. Der er ikke på nuværende tidspunkt oplysninger i sagen om, hvilken del af de 985 mio. kr., som er tilgået Skattestyrelsen, der er betalt af henholdsvis A og B, hvis du to overhovedet har betalt nogen del af beløbet.

Anklagemyndigheden har forespurgt herom via advokat Hanne Rahbæk, men det har ikke været muligt at få oplysninger frem inden fristen for afgivelse af nærværende kæresvarsskrift.

Skattestyrelsen har herudover oplyst, at den fortsat har et erstatningskrav mod A og B på mindst 600 mio. kr., som forventes opskrevet med et vist beløb. De tre hovedaktionærer, og altså herunder A og B, hæfter solidarisk for det erstatningskrav, som Skattestyrelsen har imod dem. Den solidariske hæftelse ville også være gældende, selvom de ikke havde tiltrådt den ovennævnte 'Confession of Judgment'.

Idet Skattestyrelsen fortsat har et erstatningskrav mod A og B, og da det på nuværende tidspunkt i øvrigt ikke kan fastlægges, hvem der har indbetalt de 985 mio. kr., er der fortsat grundlag for at

Copyright © 2021 Karnov Group Denmark A/S

STEIN_LHOTE0001242

CONFIDENTIAL

beslaglægge til sikring af såvel erstatningskrav som krav på konfiskation i sagen.

Det er således anklagemyndighedens opfattelse, at den omstændighed, at det daværende SKAT har indgået et forlig med blandt andre A og B ikke afskærer politiet fra at kunne foretage beslaglæggelser til sikring af krav på erstatningskrav og konfiskation. Det bemærkes i den forbindelse, at restbeløbet på de 600 mio. kr. er et minimumsbeløb, som fortsat ikke er betalt, og at den omstændighed, at beløbet ikke er forfældent til betaling som følge af en civilretlig aftale, efter anklagemyndighedens opfattelse ikke i sig selv er til hinder for, at der kan ske strafferetlig beslaglæggelse.

Det skal i den sammenhæng bemærkes, at en beslaglæggelse i medfør af retsplejelovens § 802, stk. 2, ikke er det samme, som at det beslaglagte bliver anvendt til umiddelbar indfrielse af de krav, som det beslaglagte ligger til sikkerhed for, idet en beslaglæggelse i medfør af retsplejelovens § 802, stk. 2, alene har virkning som en civilretlig arrest i medfør af retsplejelovens kapitel 56. Det er således først, når retten har truffet kendelse i medfør af retsplejelovens § 807 d, stk. 3, at de beslaglagte aktiver kan anvendes til indfrielse af erstatningskrav med videre, jf. retsplejelovens § 807 b, stk. 2.

Det er herudover en forudsætning i forliget, at indtægterne fra salget af C bank skal anvendes til nedbringelse af restgælden i henhold til forliget. Skattestyrelsen har dog ikke fået pant i kapitalandelene i banken.

Det [er] anklagemyndighedens opfattelse, at banken har en tvivlsom værdi i markedet. På trods af, at banken allerede den 23. september 2019 vedtog for Retten i Glostrup at betale en bøde på 110 mio. kr., så er beløbet endnu ikke hverken helt eller delvist betalt, på trods af at det er forfældent til betaling. Det kunne antyde, at banken er insolvent, hvilket yderligere taler for, at banken kun har en ringe handelsværdi. Såfremt banken ikke kan sælges, eller den alene indbringer et mindre provenu, vil Skattestyrelsens erstatningskrav mod A og B kunne forventes at være tilsvarende højere efter salget er gennemført.

...

*3.5. Om nødvendighedskriteriet i § 802, stk. 2, nr. 2,*

...

I nærvær[e]nde sag er erstatningskravet på mindst 600.000.000 kr. Så vidt det er SØIK bekendt, har A og B, hverken tilsammen eller hver for sig, aktiver som i værdi er blot i nærheden af dette beløb, hvorfor det må føre til, at det må anses for nødvendigt at foretage beslaglæggelser af eventuelle værdier hos A og B.

Det er således anklagemyndighedens opfattelse, at betingelserne for at beslaglægge 630 mio. kr. hos A og B i medfør af retsplejelovens § 802, stk. 1 og 2, er opfyldt med henblik på sikring af krav på konfiskation, herunder værdikonfiskation, Skattestyrelsens erstatningskrav og krav på sagsomkostninger, Fsva. beløbets størrelse bemærkes, at der i henhold til efterforskningen umiddelbart kan spores værdier for godt 624 mio. kr. som er tilgået de mistænkte, og som de er solidarisk ansvarlige for tilbagebetalingen af, samt et beløb på godt 5 mio. kr., som er afsat til sagsomkostninger.«

Forsvareren procederede i det væsentlige i overensstemmelse med de indgivne kæreskrifter, hvoraf navnlig følgende fremgår:

»*Sagens faktum:*

Kendelserne udspringer af den såkaldte udbyttesag, hvor der er er søgt om udbytterefusion af en række selskaber og pensionskasser.

Det fremgår af sagen, at mine klienter sigtes for overtrædelse af straffelovens § 279, jf. § 286, stk. 2. Der er aftalt afhøring af mine klienter inden for de kommende uger. Jeg kan oplyse, at mine klienter nægter sig skyldige.

Uanset dette har mine klienter med en række andre aktører den 29. maj 2019 indgået et forlig med Skattestyrelsen til fuld og endelig afgørelse af ethvert krav mellem blandt andet mine klienter og SKAT. Forliget er fortroligt, men har været genstand for massivoffentlig omtale og er gennemgået af Rigsrevisionen i vedhæftede notat fra januar 2020.

Det fremgår af Rigsrevisionens redegørelse, at forliget er indgået efter henvendelse fra pensionskasserne og efter årelange forhandlinger med involvering af advokater fra flere forskellige af de involverede parter.

Forliget er i detaljer beskrevet i pkt. IV i Rigsrevisionens redegørelse om Skattestyrelsens forlig med 61 amerikanske pensionsplaner m.fl.

Det fremgår af beskrivelsen, at sagen er forligt i forhold til de pågældende mod, at der tilbagebetales 1,6 mia. kr. til den danske stat (pkt. 16).

Rigsrevisionen redegør nærmere for strategien bag det indgåede forlig samt det forligsbeløb, som man nåede frem til. Beløbet er fastsat ud fra en forudsætning om, at parterne skal fralægge sig det udbytte, som man har modtaget.

Rigsrevisionen gennemgår herefter (pkt. 19 - 21) de vilkår, der er i aftalen om pligt til samarbejde. Det fremgår i forbindelse hermed, at forligsparterne som en del af samarbejdsforpligtelsen skal dokumentere, hvilke andre aktører, der har modtaget en andel af det beløb, som pensionsplanerne har tilbagesøgt. Der er herudover en forpligtelse til at samarbejde med skattestyrelsen og Kammeradvokaten i forhold til de øvrige civile søgsmål, som skattestyrelsen har anlagt forskellige steder i verden.

Der er i punkterne 22-27 redegjort nærmere for den betalingsaftale, som er indgået med SKAT. Det fremgår eksplicit af pkt. 24, at en del af dette beløb ifølge forligsaftalen »*vil blive finansieret ved salget af en tysk bank, hvor tre af forligsparterne er hovedaktionærer.*«

...

Det fremgår af pkt. 29, at skattestyrelsen har forpligtet sig til at frafalde alle civile krav, som styrelsen har mod forligsparterne, for det fulde refusionsbeløb.

Endelig fremgår det af pkt. 31, at der er indbetalt et beløb på 950 mio. kr. ud af forligssummen på minimum 1,6 mia. kr. De resterende minimum 650 mio. kr. forventes indbetalt inden for en 4-årig periode.

*Anbringender:*

Det er på den baggrund min opfattelse, at kendelserne om beslaglæggelse er afsagt på baggrund af mangelfulde oplysninger, idet det ovenstående faktum ikke er indgået i de faktiske oplysninger, som retten havde til rådighed ved afsigelsen af kendelserne.

Det gøres gældende, at betingelserne for at afsige kendelse om beslaglæggelse efter dansk ret ikke er opfyldt.

Indledningsvis bemærkes, at der ikke er indikationer i sagen for, at mine klienter skulle have et ønske om at undslå sig fra et erstatningsansvar. Tværtimod har man sammen med andre investorer selv rettet henvendelse til Kammeradvokaten med henblik på at indgå forlig i sagen. Man har sammen med andre allerede betalt et meget stort beløb på omkring 1 mia. kr. og har forpligtet sig til at betale yderligere beløb efter en aftalt tidsramme.

Samtidig har man undervejst sig en samarbejdsforpligtelse, blandt andet således at SKAT stilles bedst muligt i de omfattende sagssnlæg, som er påbegyndt mange forskellige steder i verden, blandt andet i London og i New York.

Med forliget og samarbejdsforpligtelsen gøres det derfor gældende, at beslaglæggelse ikke er nødvendig, da mine klienter sammen med

Copyright © 2021 Karnov Group Denmark A/S

side 3

andre allerede er i gang med og har vist vilje til at opfylde det forlig, som er indgået med SKAT.

Det gøres i den forbindelse gældende, at de aftaler, som er indgået mellem den danske stat og private aktører, skal respekteres og har retskraft også i forhold til andre statslige aktører.

Når man ser på de krav, som beslaglæggelsen angives at skulle dække, er der ikke noget grundlag for dette.

*Udbytte fra den strafbare handling, erstatning og konfiskation:*

Det fremgår af Rigsrevisionens redegørelse, at forliget indebærer, at de omfattede skal fralægge sig et beløb svarende til den berigelse, som de har modtaget (udbytte fra den strafbare handling). Det betyder, at der ikke er noget grundlag for udbyttekonfiskation, idet man allerede har fralagt sig berigelsen.

I forhold til spørgsmålet om erstatning er dette også fuldt ud afklaret ved det indgåede forlig, som er indgået til endelig afgørelse af krav mellem den danske stat og de, som er omfattet af forliget.

*Bødekrav:*

Sigtelsen mod mine klienter er efter straffelovens 279, jf. § 286. Der er mig bekendt ikke eksempler på i retspraksis, at der i sådanne sager fastsættes en bødestraf.

Det gøres derfor gældende, at den rent hypotetiske mulighed for at kunne pålægge en bøde ikke er et tilstrækkeligt grundlag for at kunne foretage beslaglæggelse.

*Sagsomkostninger:*

Der er under sagen alene sagsomkostninger til undertegnede som beskikket advokat.

Jeg blev beskikket som advokat for mine klienter i oktober 2020 og Retten i Lyngby har fastholdt, at beskikkelsen vedrører mig personlig og ikke kan udstrækkes til at en eller flere af mine kollegaer kan arbejde med på sagen.

Det må på den baggrund være relativt sikkert, at en beslaglæggelse til dækning af sagsomkostninger er ikke proportional.«

...

Efter votering afsagdes følgende

### Kendelse

Landsretten tiltræder af de grunde, der er anført af Københavns Byret, at A med rimelig grund er mistænkt for overtrædelse af straffelovens § 279, jf. § 286, stk. 2.

Det er ubestridt, at repræsentanter for A og de to andre hovedaktionærer i C Bank (den tyske bank) og en større gruppe pensionsplaner med en række dertil knyttede selskaber og personer i 2016 henvendte sig til Skattestyrelsen med henblik på indgåelse af forlig i sagen, og at der i henhold til det herefter i maj 2019 indgåede forlig på nuværende tidspunkt er betalt over 1 mia. kr. til Skattestyrelsen, hvoraf der i 2021 er betalt ca. 3,3 mio. kr. den 29. januar og ca. 20 mio. kr. den 23. marts. Det fremgår af forliget, at den for indeværende resterende forligssum på (mindst) ca. 600 mio. kr. først skal betales senest maj 2023, og at forligsparterne har pligt til at samarbejde med Skattestyrelsen om at tilvejebringe oplysninger mv. til brug for inddrivelse af krav mod andre end parterne i forliget. Skattestyrelsen har oplyst, at forligsparterne i overensstemmelse hermed har bidraget med oplysninger og dokumenter til brug for inddrivelse af styrelsens krav mod personer eller enheder, der ikke er omfattet af forliget, og at styrelsen kvartalsvis modtager orientering om salgsprocessen for en række nærmere beskrevne aktiver, der forventes at skulle medfinansiere den udestående del af forligssummen. De tre hovedaktionærer i C Bank, herunder A, har underskrevet et eksigibelt retsforlig på den udestående forligssum. Skattestyrelsen har oplyst, at det blandt andet af den grund er styrelsens umiddelbare forventning, at det ikke bliver aktuelt at nedlægge påstand om erstatning under en straffesag om de påståede aktiebesiddelser i beholdning hos C

Bank. Herefter, og da der ikke er fremkommet oplysninger om forsøg på forstikkelse af formuegoder eller anden unddragelse af betaling af de ifølge forliget skyldige beløb, finder landsretten, at en beslaglæggelse på det foreliggende grundlag ikke kan anses for nødvendig for at sikre udbytte fra den strafbare handling, krav på konfiskation eller erstatning, jf. retsplejelovens § 802, stk. 1 og 2. På det foreliggende grundlag finder landsretten, at betingelserne for beslaglæggelse til sikring af sagsomkostninger heller ikke kan anses for opfyldt, jf. retsplejelovens § 802, stk. 2.

Landsretten ændrer derfor byrettens kendelser, således at betingelserne efter dansk ret for at beslaglægge en andel af den omhandlede faste ejendom og de angivne konti hos A ikke kan anses for opfyldt. Som følge heraf er betingelserne efter dansk ret for at pålægge ansatte i de banker, hvori de angivne konti føres, tavshedspligt med hensyn til deres viden i sagen, heller ikke opfyldt.

### Thi bestemmes

Københavns Byrets kendelse ændres, således at betingelserne efter dansk ret for at beslaglægge de omhandlede faste ejendom ikke er opfyldt.

Retten i Lyngbys kendelse ændres, således at betingelserne efter dansk ret for at beslaglægge de angivne konti og at pålægge ansatte i de banker, hvori de pågældende konti føres, tavshedspligt med hensyn til deres viden i sagen, ikke er opfyldt.

...

Copyright © 2021 Karnov Group Denmark A/S

CONFIDENTIAL

## Harvey – Translation

Files
STEIN_LHOTE0001241 (Reduced).pdf

Query
en

Response
Page 1
T£K2021.6960E

bankers in the USA, and that the conditions under Danish law are met for

T£K2021.696

imposing confidentiality obligations on employees in the mentioned banks regarding

'THK2021.696

their knowledge of the case.

No seizure

at the fraud suspect A, who had

The prosecutor presented the case with the necessary documentation,

entered into a settlement with

regarding repayment of

The defense had the opportunity to supplement.

enrichment

obtained through the refund of dividend tax.

Among other things, the following was documented:

25

   CONFIDENTIAL

Judicial Procedure 35.5.

The National Audit Office's note of January 15, 2020, on "The Tax Agency's

settlement with 61 American pension plans from May 2019":

A, who were the main shareholders in C Bank and suspected of serious fraud in the dividend tax case, had, along with others, entered into a large settlement with the Tax Agency regarding

The defense had the opportunity to supplement the presentation and

reviewed, among other things, from the material she had presented:

repayment of the enrichment. On that occasion, over 1 billion DKK had been repaid, and an amount of 600 million DKK was still outstanding.

'The prosecution

requested the seizure of property

and funds in accounts in the USA belonging to A. The seizure

was not for securing the claim, but for the public's claim

as their American lawyer sent to SOIK on April 21, 2021,
•    a confidential overview of dated payments made to the Danish tax authorities according to the settlement agreement,
•    letters dated January 6 and January 28, 2021, in which SOIK posed a series of questions to the Tax Agency,

and the Tax Agency's

responses in letters dated January 19 and February 3, 2021,

'The Tax Agency had shown a willingness to fulfill the settlement, so

seizure was not necessary. The settlement also required A to relinquish an amount corresponding to the enrichment. There was

therefore no basis for confiscation of profits

and for compensation,

STEIN_LHOTE0011678                                                                                    CONFIDENTIAL

and seizure to cover legal costs

in the form of

expenses for A's defense was not proportional. The district court upheld

the prosecution's claim. The High Court noted that A was reasonably suspected, but referred to the fact that the settlement

had so far been adhered to. Over 1 billion DKK had been paid, of which

over 23 million DKK in 2021, and the remaining settlement amount of at least

approximately 600 million DKK was to be paid by 2021. A had signed

an enforceable settlement agreement for the outstanding settlement amount, and it was

the Tax Agency's expectation that it would not be necessary to make a claim for compensation in a criminal case regarding the listed

shareholdings in C Bank. Since there was no information about

attempts at concealment or other evasion, seizure

was not necessary to secure the proceeds of the criminal act,

claim for confiscation or compensation, cf. the Judicial Procedure Act § 802,

paragraphs 1 and 2, nor could seizure be made to

secure legal costs,

cf. the Judicial Procedure Act § 802, paragraph 2.

The conditions for seizure

were therefore not met.

GLK. April 22, 2021, in case 10th division S-201-21 and S-202-21

STEIN_LHOTE0011679                                                                                    CONFIDENTIAL

'(Katja Hoegh, Malou Kragh Halling, and Nicolai Uggerhøj-Winther).

The prosecution

against

A (attorney Hanne Rahbek, Copenhagen, defense)

630,000,000

DKK from A and B. The prosecutor clarified

that the seizure would not be for securing the claim,

@stre High Court's court record

but only to secure the public's claim for confiscation and

legal costs

and the injured party's claim for compensation in the case.

The defense made a principal claim that the conditions for

Attorney Hanne Rahbek has appealed the Copenhagen City Court's decision

of April 2, 2020 {…} that the conditions under Danish law for

seizure under Danish law are not met, alternatively - if

the High Court should find that information

about A and B's specific

seizure with respect for existing rights 50% of a

property located in New York, USA, belonging to her client,

who is suspected of having committed fraud of a particularly serious nature under the Penal Code § 279, cf.

STEIN_LHOTE0011680                                                              CONFIDENTIAL

§ 286, paragraph 2, and his

information (the reporting case) be lifted, so that the defense can

obtain the relevant financial information from the suspects, and

more alternatively, that the case be postponed until the result of the

Copyright © 2021 Kamov Group Denmark A/S

page 1

STEIN_LHOTE0001241

CONFIDENTIAL
Page 2
**Translation:**

TfK2021.6960B

-

that the shares were traded in a circle among the parties internally

in C

information about the payments to the Tax Agency and the plans for the

Bank, hence the net result of the money movement

for each

upcoming payments.

The appeal case was argued.

party

was null.

                                                    CONFIDENTIAL

The prosecutor argued essentially in accordance with

-

that the bank issued the DCAs, which were central documents

the submitted appeal response, from which the following in particular emerges:

in the applications

for dividend refunds

22.5. The settlement

with SKAT (now: the Tax Agency)

~

that none of the aforementioned pension plans at any time

actually had shares in custody with C Bank, or that there has been

'The Tax Agency has entered into a settlement with 61 American

pension plans and 56 individuals, including A and B. The settlement

paid a net dividend, and that the content of the issued

includes, among other things, refunds of dividend tax based on

DCAs was therefore not accurate,

-

that SKAT, based on the applications, paid out 1.135 billion

Dividend Credit Advices (DCA) issued by C Bank to 27 of the

61 American pension plans.

STEIN_LHOTE0011682                                                    CONFIDENTIAL

DKK, of which at least 624.25 million DKK went to companies that can

There is a present case concerning the refund of dividend tax based on

be attributed to A, B, and D, and of which at least USD 61 million through

DCAs issued by C Bank for a total of 1.135 billion DKK, while the settlement

other companies were transferred to private accounts belonging to or

concerns payments

controlled

by A, B, and D.

for approx. 2.9 billion DKK.

It appears from point 24 in the National Audit Office's review of the settlement,

In addition, A and B, together with others, have entered into a settlement

that the three main shareholders are liable for a remaining payment of 600 million

with SKAT (now the Tax Agency) for the repayment of at least 1.6

DKK, as there is a condition in the settlement that 50 million DKK out of

billion DKK, and furthermore, together with D, have assumed a joint and several

the remaining settlement amount

liability for the payment of the remaining at least 600 million DKK, which

is paid by C Bank. Additionally, C Bank is subject to

a fine of 110 million DKK. The Tax Agency

has stated that the Tax Agency

STEIN_LHOTE0011683                                         CONFIDENTIAL

according to the prosecution's view, merely confirms the suspicion

has not received any amount from C Bank. The Tax Agency has, however,

against them.

also stated that the 50 million DKK will only be paid when the bank is sold.

3.3. The size of the dividend

[P] Based on the preliminary findings described under point 2.3 above,

The Debt Collection Agency has stated that the Debt Collection Agency has also not

it is established that A, through his ownership in B LLC, has received 47.1% of

received any payment from the bank. The 110 million DKK that must

9,040,083.40 euros, equivalent to 4,257,879.28 euros. Additionally,

be paid to the Debt Collection Agency

is due for payment.

he has received 28,060,000 USD in an account he

SØIK has, by letters dated January 6 and 28, 2021, asked

controls through F LLC. Calculated with the current exchange rates, this amounts

the Tax Agency to provide detailed information about the settlement, which

to a total of approx. 205,000,000 DKK.

letters the Tax Agency has answered on January 19 and

A's dividend in the present case is therefore not less than

February 3, 2021.

STEIN_LHOTE0011684                                    CONFIDENTIAL

208,000,000 DKK.

The Tax Agency has informed SØIK that the Tax Agency still

B had an ownership in B LLC of 35.3%, hence he has received 3,191,149.44 euros through this

has a compensation claim against A and B of at least 600 million DKK.

ownership. Additionally, he has received 21,960,000 USD through

The Tax Agency has, in addition to the 950 million DKK mentioned in

F LLC, and finally, he has received at least 27.6 million euros in an account he controls through G S.A.

the National Audit Office's review of the settlement, received an additional 35

of which 151,200 euros have been paid to B's sister, .… Calculated

million

DKK in 2020.

with the current exchange rates, this amounts to a total of approx. 363,000,000

has also stated that the Tax Agency

expects

DKK. The amount paid to … is not included in the 363,000,000 DKK.

that there will be a certain increase in the claim against, among others, A and

B's dividend in the present case is therefore not less than

B. The three American main shareholders

in C Bank, A, B, and D, have

363,000,000 DKK.

STEIN_LHOTE0011685                                                                    CONFIDENTIAL

according to the Tax Agency signed a "Confession of Judgment,"

3.4. Seizure to secure confiscation claims and

which is an enforceable document regulated by New York State Law.

compensation claims

According to this "Confession of Judgment," these three

As stated above under point 2.5, the Tax Agency has

persons are jointly and severally liable for the remaining settlement amount of currently 600 million DKK,

entered into a settlement agreement

with, among others, A and B, alongside the criminal investigation. The Tax Agency

which amount, as mentioned, is expected to be subject to a certain

has so far received 985 million DKK as part of the settlement agreement. There is no

increase.

information at the present time in the case about which part of the

It is not possible for SOIK to obtain information from the Tax Agency about who

985 million DKK that has been received by the Tax Agency, has been paid by

has paid which amount out of the total 985 million DKK,

respectively A and B, if the two have paid any part

The prosecution

has inquired about this through lawyer Hanne

of the amount at all.

STEIN_LHOTE0011686

CONFIDENTIAL

Rahbæk, but it has not been possible to obtain the information before

3.2. The suspicion requirement

the deadline for submitting the present appeal response.

Seizures

under both [§ 802] subsections 1 and 2 require that the

The Tax Agency has further stated that it still has a

person concerned is reasonably suspected of an offense,

compensation claim against A and B of at least 600 million DKK, which is expected

subject to

public prosecution.

to be increased by a certain amount. The three main shareholders,

and thus

It is

the opinion

that the suspicion against A and

B for violation of the Penal Code § 279, cf. 286, subsection 2, is reasonably

including A and B, are jointly and severally liable for the compensation claim that

justified based on what is described above under point 2.4.

the Tax Agency has against them. The joint and several liability would also

The prosecution

STEIN_LHOTE0011687                                                        CONFIDENTIAL

must particularly refer to

apply even if they had not signed the aforementioned

-

that all pension plans were introduced to C Bank by

"Confession of Judgment."

its owners, who at that time were A, B, and D

-

that all correspondence regarding the onboarding of

Since the Tax Agency still has a compensation claim against A and B, and

pension plans

took place between employees at C Bank

since it cannot currently be determined who

and the company E LLC, which was founded by A, B, and D in 2013.

has paid the 985 million DKK, there is still a basis for

Copyright © 2021 Karnov Group Denmark A/S

page 2

STEIN_LHOTE0001242

CONFIDENTIAL
Page 3
T£K2021.6960E

seize

STEIN_LHOTE0011688                                                    CONFIDENTIAL

to secure civil compensation claims

as a claim on

Regardless, my clients, along with several other actors, have

Confiscation

in the case.

On May 29, 2019, a settlement was reached with the Tax Agency for full and final

It is

thus the prosecution's opinion that

the

resolution of any claim between, among others, my clients and

the circumstance that the then-existing Tax Agency has reached a settlement with

the Tax Agency. The settlement is confidential but has been the subject of

among others, A and B, does not prevent the police from being able to carry out

massive public attention and has been reviewed by the National Audit Office in

seizures to

secure

claims for compensation and

attached

note from January 2020.

It appears from the National Audit Office's report that the settlement was entered into

STEIN_LHOTE0011689

CONFIDENTIAL

confiscation. It is noted in this context that the remaining amount of the

after inquiries from pension funds and after lengthy

600 million DKK is a minimum amount that has still not been paid, and that

the fact that the amount has not matured for payment as

a result of a civil agreement, in the prosecution's opinion,

does not in itself prevent criminal

The settlement is detailed in section IV of the National Audit Office's

report on the Tax Agency's

settlement with 61 American

seizure,

It should be noted in this context that a seizure in

accordance with the Administration of Justice Act § 802, subsection 2, is not the same as

the seized being used for immediate settlement of the claims,

which the seized is held as security for, as a seizure

in accordance with the Administration of Justice Act § 802, subsection 2, only has effect as

a civil arrest in

accordance with the Administration of Justice Act chapter 56. It is

thus only when the court has made a ruling

in accordance with

the Administration of Justice Act § 807 d, subsection 3, that the seized assets can

STEIN_LHOTE0011690

CONFIDENTIAL

be used to

settle

compensation claims, etc.,

cf.

the Administration of Justice Act § 807 b, subsection 2.

in the agreement on the obligation to cooperate. It appears

in this context that the settlement partners, as part of the cooperation obligation,

It is furthermore a condition in the settlement that the proceeds from

the sale of C bank must be used to reduce the remaining debt in

accordance with the settlement. However, the Tax Agency has not obtained a lien on

the capital shares

in the bank.

It is the prosecution's

opinion that the bank has an

uncertain value in the market. Despite the fact that the bank already on September 23,

2019, agreed before the Court in Glostrup to pay a fine of

110 million DKK, the amount has still not been paid, either in whole or in part,

despite it being due for payment. This could indicate

that the bank is insolvent, which further suggests that the bank only

has a low market value. If the bank cannot be sold, or

STEIN_LHOTE0011691                                                                                     CONFIDENTIAL

it only brings in a smaller profit, the Tax Agency's

compensation claim against A and B can be expected to be correspondingly

higher after the sale is completed.

It appears from section 29 that the Tax Agency has committed to

waive all civil claims that the agency has against the settlement partners, for

the full refund amount.

Finally, it appears from section 31 that an amount of 950

million DKK has been paid out of the settlement sum of at least

1.6 billion DKK. The

remaining minimum 650 million DKK is expected to be paid within a

4-year period.

Arguments:

It is on this basis my opinion that the rulings on

seizure are made based on incomplete information,

as the above fact was not included in

the factual information that the court had at its disposal when making the

rulings.

It is argued that the conditions for making a ruling on

seizure

under Danish law are not met.

STEIN_LHOTE0011692                                    CONFIDENTIAL

Initially, it is noted that there are no indications in the case that

my clients have any desire to evade a

compensation liability. On the contrary, they have, together with other

investors, approached the Attorney General

with the intention

of reaching a settlement in the case. They have, together with other allies,

paid a very large amount of around 1 billion DKK and have committed

to pay additional amounts within an agreed timeframe.

At the same time, they have subjected themselves to a cooperation obligation,

including

in many

countries, including in London and New York.

With the settlement and the cooperation obligation,

it is therefore argued that

seizure is not necessary, as my clients, together with

other investors, have

paid a very large amount of around 1 billion DKK and have committed

to pay additional amounts within an agreed timeframe.

It is thus the prosecution's

opinion that the conditions

STEIN_LHOTE0011693                    CONFIDENTIAL

for seizing

630 million DKK from A and B

under the Administration of Justice Act § 802, subsections 1 and 2, are met with the aim of securing

claims

for

confiscation,

including

the Tax Agency's compensation claim and claim for legal costs,

Given the size of the amount, it is noted that according to

the investigation, values amounting to approximately 624 million DKK

can be immediately traced to the suspects, and which they are jointly responsible

for repaying, as well as an amount of approximately 5 million DKK, which is

allocated to legal costs.«

The defense attorney argued essentially in accordance with

the submitted pleadings, from which the following in particular appears:

»The facts of the case:

The rulings stem from the so-called dividend case, where

many

companies and pension funds have applied for dividend refunds.

It appears from the case that my clients are charged with violating

STEIN_LHOTE0011694

CONFIDENTIAL

the Penal Code § 279, cf. § 286, subsection 2. There is an agreed interrogation of my

clients within the coming weeks. I can inform that my

clients plead not guilty.

Copyright © 2021 Karnov Group Denmark A/S

page 3

STEIN_LHOTE0001243

CONFIDENTIAL
Page 4
'TÆK2021.6960E

Bank. Hereafter, and as no information has emerged about

others already being in the process and showing willingness to fulfill the settlement,

attempts at concealment of assets or other evasion of

which has been entered into

with SKAT.

It is asserted in this context that the agreements that have been entered into

payment of the amounts owed according to the settlement, the High Court finds that

a seizure on the present basis cannot be considered

between the Danish state and private actors, should be respected and has

legal force also in relation to other state actors.

necessary to secure the proceeds from the criminal act, claims for

confiscation or compensation, cf. the Administration of Justice Act § 802, subsections 1

STEIN_LHOTE0011695                                                                                CONFIDENTIAL

and 2.

When looking at the claims that the seizure

is supposed to cover, there is no basis for this.

On the present

basis, the High Court finds that the conditions

for seizure to secure legal costs

are also not met.

Proceeds from the criminal act, compensation, and confiscation:

It appears from the National Audit Office's report that the settlement entails,

considered fulfilled, cf. the Administration of Justice Act § 802, subsection 2.

that the involved parties must relinquish an amount corresponding to the enrichment,

The High Court therefore changes the district court's orders, so that

which they have received (proceeds from the criminal act). This

the conditions under Danish law for seizing a portion of the

means that there is no basis for profit confiscation, as

mentioned real estate and the specified accounts with A cannot be

one has already relinquished the enrichment.

considered

fulfilled. As a result, the conditions

under Danish law

STEIN_LHOTE0011696                                                                                    CONFIDENTIAL

In relation to the question of compensation, this is also fully

for imposing an obligation of confidentiality on employees in the banks where the specified accounts are held, are also not met.

settled by the entered settlement, which is intended to finally settle

claims between the Danish state and those covered by the settlement.

Therefore, it is determined

Court Order:

The Copenhagen City Court's order is changed, so that the conditions under

The charge against my clients is under Penal Code § 279,

cf. § 286.

Danish law for seizing the mentioned real estate are not

To my knowledge, there are no examples in

case law, that in

are met,

such cases a fine is imposed.

The Court in Lyngby's order is changed, so that the conditions under

It is therefore asserted that the purely hypothetical possibility of

Danish law for seizing the specified accounts and imposing an obligation of confidentiality

being able to impose a fine is not a sufficient basis for

on employees in the banks where the specified accounts are held, are not met.

STEIN_LHOTE0011697                                                        CONFIDENTIAL

being able to carry out a seizure.

See

[There are only legal costs in the case to the undersigned as

appointed lawyer,

I was appointed as a lawyer for my clients in October 2020

and the Court in Lyngby has maintained that the appointment concerns me

personally and cannot be extended to one or more of my

colleagues working on the case.

'It must therefore be relatively certain that a seizure

to cover legal costs

is not proportional.'

After deliberation, the following

Order

The High Court concurs with the reasons given by the Copenhagen

City Court, that A is reasonably suspected of violating

the Penal Code

§ 279, cf. § 286, subsection 2.

It is undisputed that representatives of A and the two other

main shareholders

in C Bank (the German bank) and a larger group

STEIN_LHOTE0011698                                    CONFIDENTIAL

pension plans with a number of associated companies and individuals

in 2016 approached the Tax Agency with a view to entering into

a settlement in the case, and that according to the subsequent settlement entered into in May 2019

over 1 billion DKK has been paid to the Tax Agency, of which approximately 3.3 million DKK was paid on January 29, 2021, and approximately 20 million DKK on March 23, 2021. It appears from the settlement that

the remaining settlement amount of (at least) approximately 600 million DKK

must be paid no later than May 2023, and that the settlement parties are obliged

to cooperate with the Tax Agency to provide

information etc. for the collection of claims against others than

the parties

to the settlement. The Tax Agency

has stated that the settlement parties have, in accordance with this, contributed information and

documents for the collection of the agency's claims against individuals

or entities not covered by the settlement, and that the agency

the outstanding part of the settlement amount. The three main shareholders in

C

Bank, including A, have signed an enforceable legal settlement on the

outstanding settlement amount. The Tax Agency

has stated that it is the agency's immediate expectation, among other things for this reason, that it

will not be necessary to request compensation in a

criminal case regarding the requested shareholdings in C Bank.

STEIN_LHOTE0011699                                                                    CONFIDENTIAL

(Copyright © 2021 Kamov Group Denmark A/S

STEIN_LHOTE0001244

CONFIDENTIAL



## Settlement in dividend case surprises U.S. experts: "I'm shocked"

Originally published January 25, 2020

By JOACHIM CLAUSHØJ - *TV2 News*, Copenhagen, Denmark

**The National Audit Office does not decide whether it was right or wrong to settle in the dividend case.**

The Tax Authority's secret billion-dollar settlement in the dividend case with a group of New York backers is given a tough ride by law professors, lawyers and tax experts in the United States.

The criticism is that the amount to the IRS is far too low, that Americans are not really obliged to cooperate and that a feared weapon is cut off in American law.

Most strikingly, the settlement contains wordings which, according to the experts, make it extremely unlikely that the perpetrators can be convicted in criminal proceedings. The Danish Tax Authority has otherwise said several times that the settlement did not affect the criminal investigation.

- My best guess is that there is zero percent probability that they will go to prison and that Denmark gets more money back, says law professor William Byrnes of Texas A&M University School of Law.

- I am surprised that an EU member who is as respected as Denmark is in such a weak position in relation to fraud committed against the government as this agreement proves. It is so incredible that I wonder if they have really lost four billion kroner, says Byrnes, who has been researching the area for more than 25 years.

### Shocked top lawyer

The settlement also evokes amazement in New York, where experienced partner Marc Levey of Baker McKenzie, America's largest law firm, has read the settlement.

- I am shocked that the IRS is even considering entering into a settlement on this basis, says Marc Levey, who has also worked as a prosecutor in the U.S. Department of Justice.

STEIN_LHOTE0001503

*You can get an overview of the experts' criticisms further down the article.*

### Backers can pull everything from

As TV 2 and Politiken have previously uncovered, the settlement has entered into a group of pension funds led by Matthew Stein and Jerome Lhote, who live in New York. The two are backers in a network involved in suspected fraud for at least DKK 4.1 billion. With the settlement, they and their network, made up of friends, family and business relations, must repay DKK 1.6 billion to Denmark.

The two men collaborated a transition with the prime-suspect, British financier Sanjay Shah, who lives in Dubai but chose to do their own organization. They then bought the small German bank North Channel Bank and tailored it to recover dividend tax from Denmark and Belgium with the help of former employees at Sanjay Shah.

In May 2019, the Danish Tax Authority reached a settlement with Matthew Stein and Jerome Lhote and the network around them to withdraw the cost of, among other things, tax advice, stockbrokers and banks. In addition, the backers were able to deduct a fine for gross fraud received by North Channel Bank last September.

The revelations resulted in the National Audit Office being asked to explain the case. On Friday this week, the state auditors dealt with the memo, in which the National Audit Office did not decide whether it was reasonable at all to be reconciled.

- The National Audit Office cannot assess whether the decision to enter into the settlement is the best, the National Audit Office wrote in the note.

### Criticism 1: Backers now stand to escape jail

Three of the four experts who have read the settlement and put themselves into the case for TV 2 believe that the settlement makes it much harder to have the backers in the United States imprisoned and fined.

The Danish Tax Authority has otherwise repeatedly said that the settlement does not affect criminal proceedings, but the experts completely disagree with that.

The problem is that the Danish Tax Authority undertakes to talk well about the backers of the Attorney General for Special Financial Crime (SØIK), also called the Bagmandspolitiet. They do this by saying that the negotiations have taken place in a "good spirit" that the money is paid back and that the Americans are working with the IRS to get more money in the box.

This makes the backers stand much stronger in criminal proceedings, says partner Michael Wise of the firm Lawrence Kamin Law in Chicago, who has been working for years on stock fraud cases.

50

- Defense attorneys will definitely highlight this and tell the Department of Justice (the U.S. Department of Justice, ed.) that there is no problem because we repaid the money to Tax, which told the Danish prosecutor that we were good people. It makes them look less guilty. It was wisely done by the lawyers, says Michael Wise.

In addition, it is beneficial for the backers that the settlement states that they simply have a disagreement with the Danish Tax Authority. This will make it very difficult to convince a jury and a judge that there has been serious fraud, according to William Byrnes.

- By reducing it to a controversy in which we negotiate in a good spirit, and we have opposing views, how can the Prosecutor's Office in Denmark raise a case? The evidence that will be presented is this agreement, in which the Danish authorities officially say that this is merely a disagreement, he says.

### Criticism 2: Too little money

The backers are collectively involved in payouts of DKK 4.1 billion, but only have to pay back DKK 1.6 billion because they can withdraw their expenses. In addition, the refund is without interest.

This is problematic for two reasons, points out Professor William Byrnes of Texas and attorney James Henry, who is a fellow at Yale University and former chief economist at McKinsey.

Firstly, there is something in principle wrong in letting people deduct the cost of suspected fraud.

- It is another way of saying that it is society, taxpayers who pay. It is against the principles of the law. But that's what they negotiated for in the settlement, and I find it very strange. I don't know what to say, because I've never seen it before. I've been writing about this for 25 years, says law professor William Byrnes.

In addition, it faces criticism that the backers do not have to pay interest for the long period of about five years when they have had Danish tax billions available. In doing so, they have had the opportunity to get the money to breed, which is why it is also normal for money to be paid back with interest.

According to James Henry, in relation to the settlement, it means that some of the money that the backers pay back probably comes from investments made with Danish tax dollars. The rest they can put in their pockets, which is why - from a purely economic perspective - it can be a good investment, even if money has to be paid back.

### Criticism 3: Backers do not commit to anything

A third common criticism is that, according to several experts, the backers have not committed themselves to real cooperation.

51

- It's nonsense when they say they're ready to cooperate, says top lawyer Marc Levey of Baker McKenzie to TV 2.

The settlement says that the backers have "expressed a willingness to cooperate to the best of their ability" and that a mediator can be appointed if the Danish Tax Authority does not believe that the backers cooperate as desired. But in practice it is not worth much, experts say, pointing out that there are a large number of procedures for forcing people to cooperate - for example by handing over all documents and giving independent experts access.

Instead, the Danish Tax Authority has been given an opportunity for mediation, but according to lawyer James Henry, it will simply drag the case into a long way and, moreover, ensure that it is going to happen outside the public eye - for the benefit of the backers.

- It's a big job program for lawyers, says Henry.

At the same time, an essential detail is that, as a result of the agreement on cooperation, the backers should not speak to the Danish authorities themselves. This must be done through the lawyers, and therefore they do not run the risk of incrimination in relation to criminal proceedings.

- An economist would say that it is a profitable business and that you should do it again. You got out with a slap over your wrist, you have to repay less than half the win, and you have this undefined commitment to cooperate that no one can enforce, says James Henry.

### Criticism 4: Denmark misses important opportunity

The backers in New York must be very pleased that Denmark has not gone after using a particularly feared law called RICO that provides access to very tough tools - such as seizures, years of imprisonment and heavy fines - against suspected fraudsters.

With the settlement, the Danish Tax Authority agrees to protect the backers and their networks against new lawsuits related to the fraud case.

According to law professor William Byrnes, the RICO Law is otherwise obvious in the Danish case. It is tailored to hit organized, financial crime, it has been used in fraud cases in financial markets- and then it can be raised civilly and in cases that have affected other countries.

The professor points out that a number of people in the 1990s were convicted in the United States of breaching RICO in a case in which Canada was subjected to tax fraud.

- I don't understand how Denmark can't know anything about that matter. But I assume that Denmark has cut itself off from further civil cases against the perpetrators once the settlement is signed, says William Byrnes.

52

STEIN_LHOTE0001506

In addition, RICO has the great advantage of raising awareness and opening doors. According to all the experts, no one in the United States knows the fraud case against Denmark, and it is essential for going to the authorities to go into the case.

No one knows the case in the United States because it looks like a tax dispute because of the settlement. But if it had been a RICO, there would be a whole panel on it, says William Byrnes.

This is a crystal clear RICO, says attorney James Henry.

### Authorities will not give interviews

Neither the Danish Tax Authority nor the Danish Tax Authority wish to deal with the criticism in an interview, but Press Manager Claus Dithmer of the Danish Tax Authority said in an email:

- The Danish Tax Authority does not agree, and we must reject the criticisms mentioned by outsiders about how the settlement should be understood, he writes.

Nor does Tax Minister Morten Bødskov of the Social Democrats wish to stand for interviews and deal with the criticism. In an email from the Ministry's press department, the Minister says he is pleased that the settlement has been concluded on a legal basis.

- I understand if the settlement or conditions of the settlement have bladed strangely in ordinary Danes' ears. It is both subject to confidentiality and is based on a number of difficult trade-offs, says Morten Bødskov.

At SØIK, Chief Prosecutor Per Fiig states that the case is still under investigation and that the assessment by the experts in the United States is being disagreed.

- SØIK does not agree that the settlement makes the investigation difficult or the possibility of conducting any criminal proceedings, the chief prosecutor writes in an email.

Two administrative law experts yesterday rejected the National Audit Office's justification for denouncing the settlement as lawful.

53

 Danish → English ∨



The dividend tax scandal

# Here is the backers' deduction - one item is gigantic

27 Sep 2019 at 12.58



Matthew Stein, one of the masterminds in the dividend case, which has cost Denmark a total of DKK 12.7 billion. Photo: TV 2

by **Morten Spiegelhauer** , **Thomas Østerlin Koch** , **Joachim Claushøj Bindslev** & **Peter Vesterlund**

## The masterminds in the biggest fraud case in Danish history have been allowed to deduct their expenses in a secret settlement with the Tax Agency.

The people behind the dividend case have apparently spent enormous sums on withdrawing billions from Denmark, and they have been allowed to deduct them in a settlement with the Tax Agency.

STEIN_LHOTE0001557

## money talks - numbers in the settlement

- In May 2019, the Tax Agency entered into a settlement of DKK 1.6 billion. DKK with a group of pension funds in the dividend case.
- According to the Danish Tax Agency, the pension funds had received DKK 2.9 billion.
- In an appendix to the settlement, however, it appears that the pension funds are involved in payments for at least DKK 4.1 billion. DKK
- The Tax Agency explains the difference by saying that 19 of the pension funds, which have received 1.2 billion DKK, is not part of the settlement.
- The settlement states that the 19 pension funds are covered parties, but that there are also persons outside the settlement who have ownership shares in the pension funds.

In the confidential settlement, which you can read about here (https://nyheder-tv2-dk.translate.goog/samfund/2019-09-25-bagmaend-faar-milliardfradrag-i-hemmeligt-forlig-med-skattestyrelsen?_x_tr_sl=da&_x_tr_tl=en&_x_tr_hl=en&_x_tr_pto=wapp) , it is clear that the people behind it and their network can deduct all expenses in connection with siphoning money out of Denmark.

The text of the settlement does not show exactly how the deduction of a billion is distributed among the various items, but you can get an impression of the distribution, as it appears from one of the earlier drafts of the final settlement.

## Billions for consulting

The previous draft is from the summer of 2018, when the Tax Agency negotiated with a larger group of pension funds that had withdrawn a total of DKK 5.7 billion from Denmark. Therefore, we do not know whether the distribution is exactly the same in the final settlement.

One of the items that appears in the draft settlement is advice on refunding dividend tax. It is DKK 3.1 billion out of DKK 5.7 billion.

There are no details about the advice for billions of kroner, which is described as "Fees for Tax Reclaim Advisory Services".

STEIN_LHOTE0001558

Here you can get an overview of the various items in the draft settlement:

- Tax reclaim advisory services: 3.1 billion
- Reclaim Agent Fees: 44 million
- Brokerage Fees and Commissions: 23 million
- Custodial and clearing fee: 115 million
- Trading expenses: 263 million
- Accounting and Other Administrative Fee: 36 million
- Legal Fees: 62 million
- Net Payments to Others: 66 million
- Payments of US Income Taxes: DKK 156 million

*Source: Negotiation document from July 2018 between the Tax Agency and 118 American pension funds. Part of the group was later sued, so the final settlement is with 80 pension funds.*

## Many got money
*Reclaim agents* are the intermediaries who sent the documents to Tax. They got 44 million kroner.

And then there are a large number of expenses for stockbrokers, banks, lawyers, auditing and the US IRS.

## Smashes the sense of justice
Law professor Eva Smith from the University of Copenhagen is deeply surprised that the pension funds and those behind them can deduct expenses.

- It is absolutely devastating for the sense of justice if something like this can be done.

## Thread for Shah
The enormous costs of consulting on dividend tax refunds are not described in detail.

But court documents point in the direction of a former employee of Sanjay Shah, another mastermind in the dividend case, who has withdrawn 8

STEIN_LHOTE0001559

billion kroner from the treasury.

The former employee, Briton Rajen Ranmal Shah, advised the masterminds Matthew Stein and Jerome Lhote, who, according to TV 2's documentation, are involved in a suspected fraud for 4.1 billion kroner about dividend reimbursement, according to a reply.

The counseling lasted seven months from March to September 2014, according to court documents.

## Adviser sued by the Tax Agency

TV 2 is in possession of a handwritten letter from Sanjay Shah in which he talks about a group of employees who left his company to start their own and join a former client in the US.

One of them was Rajen Ranmal Shah, who is being sued for fraud by the Tax Agency.

The final settlement between the Tax Agency and the American pension funds was concluded in May 2018. Matthew Stein and Jerome Lhote did not want to comment on the settlement or their role in the dividend case in general.

The dividend case is being investigated for the fifth year in a police collaboration between Denmark, Germany, Belgium, Great Britain and the United States. No one has been charged by the Bagmandspolitiet.

STEIN_LHOTE0001560



**Bagmænd**

Bagmændene får en person til at oprette en lille pensionsfond, indsætte cirka 6.000 kroner og afgive kontrollen ved at underskrive en fuldmagt.

**5%** **6%** Bagmændene sender, ifølge en insider, 5% af pengene til ejeren af pensionsfonden.

**50 mio. kr.** pr. pensionsfond

Ifølge TV 2s dokumentation gentager nummeret sig i 80 pensionsfonde, og Skat når at udbetale 4,1 milliarder til netværket, inden Skat opdager, hvad der foregår.

**SKAT**
Dokumenterne sendes til Skat, som udbetaler penge, uden at kontrollere om de reelt har ejet aktierne.

**Pensionsfond**
Pensionsfonden indgår partnerskab med et selskab i skattely.

Dokumentation

**Selskab**
Partnerskabet investerer i danske aktier, men ikke i virkeligheden - kun på papiret.

På baggrund af de fiktive investeringer fremstiller bagmændene dokumenter, der viser, at de har betalt skat af udbyttet på aktierne.

### Also see

Here is the secret settlement with the masterminds in the tax fraud case

Backers get billions in deductions in a secret settlement with the Tax Agency

The professor wonders about the Tax Agency's figures

The fish king from New Jersey who emptied the Danish treasury

Grandma helped extract billions from Denmark in a dividend scandal

Suspect in Danish dividend case arrested in Great Britain

STEIN_LHOTE0001561

 Danish → English ∨    ⋮    ∨ ∧



The dividend tax scandal

# Backers get billions in deductions in a secret settlement with the Tax Agency

25 Sep 2019 at 9.30 p.m



TV 2 is in possession of the settlement in its entirety. Photo: TV 2

by **Morten Spiegelhauer** , **Thomas Østerlin Koch** , **Joachim Claushøj Bindslev** & **Peter Vesterlund**

### All expenses that the masterminds have had to withdraw billions from Denmark have been deducted in a strictly confidential settlement with the Tax Agency.

The previously unknown masterminds of the biggest fraud in Danish history, tax advisors Matthew Stein and Jerome Lhote, will be given the opportunity to deduct their expenses for the suspected fraud in a settlement with the Danish Tax Agency.

STEIN_LHOTE0001562

## The authorities call the case a fraud

From 2012 to 2015, Denmark lost DKK 12.7 billion. in the dividend tax scandal. The authorities consider the case to be a fraud, which is why it is referred to as in this article. None of the men we mention have been charged or convicted in the case.

This appears from the strictly confidential settlement text, which TV 2 and Politiken are in possession of.

Law professor Eva Smith has read the settlement. She calls the deduction of expenses "absurd".

She compares it to a man who breaks into a villa and takes 20,000 from a safe and is then caught by the owner, who wants the money back.

- Then he says: "No, no, you can't have that, because I bought a cutting torch, it cost 2000, and I spoke to an expert on how to stop your burglar alarm before, and he wants 4000. There was someone who kept watch for me, he wants 3,000, so that money has to be deducted," she says.

## Can deduct costs for advice

As TV 2 was able to reveal earlier this week, Matthew Stein and Jerome Lhote are behind a network which has taken a total of DKK 4.1 billion out of Denmark.

With the agreement, the backers get the opportunity to deduct all expenses for withdrawing money from Denmark. They can even deduct the costs of advice on reclaiming dividend tax.

Overall, the network ends up paying DKK 1.6 billion back to the Danish state in connection with the settlement.

## Interrupted election campaign

The agreement was presented at a hastily called press conference during the early summer election campaign by then Minister of Taxation Karsten Lauritzen (V) and the responsible director of the Tax Agency, Steen Bechmann Jacobsen.

STEIN_LHOTE0001563

At the press conference, the tax director emphasized several times that the settlement partner's share in the alleged fraud amounts to a "total sum of 2.9 billion kroner".

However, TV 2 is in possession of a statement which is part of the agreement. Here it appears that the masterminds have been involved in payments from Tax of "more than DKK 4.1 billion".



An appendix to the settlement shows that the masterminds have been involved in suspected fraud for over DKK 4.1 billion. Photo: TV2

Nevertheless, the amount was not mentioned with a single word, neither at the press conference nor before the Danish Parliament's Tax Committee. Nor was the possibility of deducting the expenses mentioned.

The tax director stuck to the wording that the rest of the money will be brought home from other players in the case and emphasized:

- So no kind of discount or similar has been given in connection with this settlement, said Steen Bechmann Jacobsen.

## "Deeply depressing"

After watching the press conference, law professor Eva Smith wonders why the Tax Agency does not tell about the deduction of expenses or the

STEIN_LHOTE0001564

total amount that the group has withdrawn from Denmark.

- When you know what kind of agreement is behind it, I think you get a little depressed. You get a little sad at times and think: "I didn't think that about Danish politicians and Danish civil servants", but that's probably because I'm very naive, says Eva Smith.

## Lawyer for backers: The Tax Agency wanted a salable agreement

A report from one of the backers' lawyers reveals that during the negotiations the Tax Agency has pressed for the agreement to be politically marketable.

In a conversation from February 2019, the Tax Agency's lawyer Boris Frederiksen said that the case had a "political aspect" and that it was crucial that the Tax Agency could say that they had gotten the "best possible agreement".

- This includes being able to justify the calculation, wrote the lawyer Gregory Wallance to his clients.

Boris Frederiksen, who handled the negotiations on behalf of the Tax Agency, refuses to comment on the case and refers to his duty of confidentiality. Submitted to the American attorney's report, however, he writes:

- I cannot agree with Greg Wallance's apparent interpretation of our conversation.

## "The amount is sort of subordinate"

The Tax Agency has for several months refused to appear for an interview with TV 2. Just over a week ago, however, the Tax Agency called a press conference, among other things, about the settlement.

Here, the responsible professional director Steen Bechmann maintained that the settlement partner "crown for crown" pays back what "they have got into their hands". The deduction of expenses was referred to as a difference which the Tax Agency seeks "to bring home via other actors".

STEIN_LHOTE0001565

Nor was the 4.1 billion kroner mentioned with a single word. The tax director maintained that this part of the case complex amounts to "approximately DKK 2.9 billion".

At the press conference, TV 2 and Politiken asked about the DKK 4.1 billion.

*Why do you say 2.9 billion when it is not stated anywhere? 4.1 billion, on the other hand, appears very clearly?*

- The 2.9 billion that I mentioned, those were the figures we used when we held the press conference in May. The amount is sort of subordinate in that context here, because the settlement agreement stipulates that the parties to the settlement pay kroner for kroner back what they have received, said Steen Bechmann Jacobsen.

*Why have we never heard the amount 4.1? Why have we heard 2.9, which is not included in the agreement?*

- I cannot comment on the further details of the settlement text.

*You could use the number 2.9, why can't you tell the correct number of 4.1?*

- I cannot comment further on that, said Steen Bechmann Jacobsen.

The press conference was then stopped.

## Professor: The settlement includes payments for 4.1 billion

Subsequently, the Tax Agency has acknowledged in a written response that there are payments of a total of DKK 4.1 billion, but to two different groups.

One group consists of 61 pension funds and has received DKK 2.9 billion and is, according to the Tax Agency, a settlement party. The remaining 19 pension funds have received DKK 1.2 billion, but are not settlement parties.

STEIN_LHOTE0001566

Law professor Søren Friis Hansen from Copenhagen Business School has read the settlement. He estimates that the 19 pension funds are parties to the settlement, and that the pension funds with which the Tax Agency has entered into a settlement have been involved in payments of DKK 4.1 billion.

- The 19 pension funds are parties to the settlement. It is simply not true to say that they are not covered, says Søren Friis Hansen.

*The article continues below the graphic.*

STEIN_LHOTE0001567



Former tax minister Karsten Lauritzen did not want to appear for an interview with TV 2, but in an interview with our partners at Politiken he maintains the figure of DKK 2.9 billion.

*But when you say a figure at the press conference called 2.9 billion kroner, where does it come from?*

STEIN_LHOTE0001568

- So this is what I have been informed by the Tax Agency and the Attorney General, who are the ones who advise me as Minister of Taxation in that case, and the Ministry of Taxation's department, says Karsten Lauritzen.

## Scammers are investigated by the Scammer Police

Eva Smith cannot understand the interpretation of the Tax Agency and the former minister.

- Why don't they say it as it is: "We have entered into a settlement. We have not received the full amount, but we have assessed that this is what we could get out of it," she says.

Matthew Stein and Jerome Lhote did not want to comment on the settlement or their role in the dividend case in general.

The dividend case is being investigated for the fifth year in a police collaboration between Denmark, Germany, Belgium, Great Britain and the United States. No one has been charged by the Bagmandspolitiet.

# The tax paid in the fraud case in the time you have spent reading the article

## 25.070 kr.

The fraud peaked in 2015, when Tax managed to pay out over eight billion kroner from January to August, when the fraud was stopped. This corresponds to DKK 420.50 per second.

STEIN_LHOTE0001569

# Secret agreement: Backers got milliardfradrag

Some backers have in a widely reported case on fraud with Danish withholding tax been allowed to draw billions from the settlement, they have signed with the ta

 Ann McDonald

 ● **946** Reads    📅 26 September 2019 Thursday 11:02



Some backers have in a widely reported case on fraud with Danish withholding tax been allowed to draw billions from the settlement, they have signed with the tax administration.

It writes Politiken and TV2, which together with the German Süddeutsche Zeitung and the belgian magazine Knack has got the 51 page hemmeligstemplede settlement agreement.

Of the it appears that they did not receive the previously announced 2.9 billion dollars out of the treasury, but rather to 4.1 billion kroner.

Yet it's far from the whole amount which will be paid back. In the agreement is the tax administration agreed that the planners should pay the 1.6 billion back.

It is due to, among other things, that the traffickers have been allowed to deduct their expenses incurred in connection with the performance of the fraud from the.

The solution is absurd, thinks law professor Eva Smith, who has read the settlement through. She compares the deduction that a person breaks into a villa, take the 20,000 dollars from a safety deposit box, but will be taken by the owner, which requires its money back.

- So he says: No, no, you can't get, because I've bought a cutting torch, it cost 2000, and I've talked with an expert in how to stop your burglar alarm before, and he will have 4000. There was the one that kept watch for me, he will have 3000, then the money should be drawn from, she says to TV2.

The two Danish media brought earlier in the week the names of two persons in the UNITED states, which was to be the ringleaders of a network that has drawn the 4.1 billion dollars out of Denmark. They are called Matthew Stein and Jerome Lhote.

Since then has grown Karsten Lauritzen (V) at a press conference in may could tell that it had entered into a settlement, it was told that forligspartnerens share in the supposed scams run up in an 'amount of total 2.9 billion' dollars.

STEIN_LHOTE0001622

According to the Rigsdokumentet contrast, has more than 9.10 billion dollars. Neither the amount or the ability to draw expenditure from it was mentioned during the press conference.

- therefore There is not given any kind of discount or the like in connection with this settlement, said Steen Bechmann Jacobsen, the responsible director of the tax administration, on the contrary at the time.

Fraud should have taken place from 2012 to 2015, and in all believes tax administration, the Danish state was cheated out of 12.7 billion dollars.

*Updated:* 26.09.2019 11:02

STEIN_LHOTE0001623

👑
**STATSADVOKATEN**

Retten i Glostrup

Date: 13. april 2021
J.nr.: SØK-76141-0005-17
Sagsbehandler: A. MØLLMANN

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

KAMPMANNSGADE 1
1604 KØBENHAVN V

TELEFON 72 68 90 00

E-mail: saoek@ankl.dk
www.anklagemyndigheden.dk
www.politi.dk

# ANKLAGESKRIFT

Matthew Richard Stein
120667-ABIM



Jerome Lhôte
231273-ABXM



Luke Beneville McGee
230683-ACEM



STEIN_LHOTE0001736                                    CONFIDENTIAL



Rajen Ranmal Shah
130368-ABWM

Anupe Dhorajiwala
160876-ABSM

Graham McKenzie Horn
260364-ABJM

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

SIDE 2

tiltales ved Retten i Glostrup under medvirken af domsmænd til straf for

bedrageri af særlig grov beskaffenhed efter straffelovens § 279, jf. § 286, stk. 2,
ved i perioden 2013-2015 i forening og efter forudgående aftale eller fælles forstå-
else, med henblik på at skaffe sig og andre uberettiget vinding, at have foranlediget
udviklingen, implementeringen og driften af et system, hvor tiltaltes medgernings-
mand, North Channel Bank GmbH & Co. KG (herefter: North Channel Bank), hvis
sag er afgjort særskilt, bogførte aktiehandler og -lån vedrørende danske, børsnoterede
aktier samt pengebevægelser mellem 27 amerikanske 401(k) pensionsplaner, ni sel-
skaber (shortsælgere), en mægler og en mellemhandler, hvilke handler, lån og pen-
gebevægelser var fiktive eller af en sådan karakter, at pensionsplanerne ikke derved
modtog aktieudbytte eller en ret hertil, hvorefter North Channel Bank udfærdigede
udbyttenotaer indeholdende urigtige oplysninger om modtagelse af udbytte fra dan-
ske aktier til de 27 amerikanske 401(k) pensionsplaner, som pensionsplanerne med
de tiltaltes vidende i 284 tilfælde via reclaim-agenter indsendte til Skattestyrelsen
(daværende SKAT) sammen med ansøgning om refusion af den i udbyttenotaerne
angivne udbytteskat, hvilket bragte ansatte i Skattestyrelsen i en vildfarelse om, at de
amerikanske 401(k) pensionsplaner havde fået indeholdt udbytteskat i Danmark og
derved var berettiget til refusion heraf, alt hvorved Skattestyrelsen bestemtes til at

70

                                                                      CONFIDENTIAL

udbetale 1.135.775.447,99 kr. til reclaim-agenterne og derved led et tilsvarende formuetab, hvorefter reclaim-agenterne videreførte beløbene fratrukket sine honorarer til pensionsplanernes konti i North Channel Bank, hvorfra de blev viderefordelt med minimum 80% til de tiltalte eller juridiske enheder knyttet til de tiltalte.

Der tages forbehold for yderligere tiltalerejsning i sagskomplekset.

Der nedlægges påstand om fængselsstraf.

Der nedlægges påstand om anvendelse af straffelovens § 88, stk. 1, 2. pkt.

Der nedlægges endvidere i medfør af straffelovens § 79, stk. 2, 2. pkt., jf. § 79, stk. 1, jf. § 78, stk. 2, påstand om, at Matthew Richard Stein, Jerome Lhôte og Luke Beneville McGee indtil videre frakendes retten til at deltage i ledelsen af en erhvervsvirksomhed her i landet eller i udlandet uden at hæfte personligt og ubegrænset for virksomhedens forpligtelser.

Der nedlægges endvidere i medfør af straffelovens § 75, stk. 1, påstand om konfiskation af 2.265.302,93 € hos [redacted] af 3.487,00 € hos [redacted] af 4.674,25 € hos [redacted] af 18.257,99 € hos [redacted] af 54.215,86 € hos [redacted], af 31.527,41 € hos [redacted] af 1.15.577,06 € hos [redacted], og af 1.437.424,00 € hos [redacted]

Der tages forbehold for nedlæggelse af påstand om yderligere konfiskation, yderligere rettighedsfrakendelse, erstatning og udvisning.

Per Filg
Statsadvokat, fg.

STEIN_LHOTE0001738

CONFIDENTIAL



[Translation from Danish]

**STATSADVOKATEN**

Court of Glostrup

Date: 13 April 2021
Ref. no.: SØK-76141-0005-17
Case officer: A. MØLLMANN

STATE PROSECUTOR FOR
SERIOUS ECONOMIC AND
INTERNATIONAL CRIME

KAMPMANNSGADE 1
1604 COPENHAGEN V

TELEPHONE +45 72 68 90 00

Email: saoek@ankl.dk
www.anklagemyndigheden.dk
www.politi.dk

# INDICTMENT

Matthew Richard Stein
120667-ABIM



Jerome Lhôte
231273-ABXM



Luke Beneville McGee
230683-ACEM



STEIN_LHOTE0001739

CONFIDENTIAL



Rajen Ranmal Shah
130368-ABWM

Anupe Dhorajiwala
160876-ABSM

STATE   PROSECUTOR   FOR
SERIOUS
ECONOMIC AND INTERNATIONAL
CRIME

PAGE 2

Graham McKenzie Horn
260364-ABJM

are hereby formally charged before the Court of Glostrup in proceedings to be held
with the participation of lay judges for the purpose of punishment for

<u>fraud of a particularly aggravated nature in contravention of section 279, read with
section 286(2), of the Danish Criminal Code,</u>

the particulars being that, in the period 2013–2015, in association and following prior
agreement or common understanding, with the intent of obtaining for themselves and
others an unlawful gain, the Defendants caused the development, implementation and
operation of a system in which the Defendants' co-perpetrator, North Channel Bank
GmbH & Co. KG (hereafter: North Channel Bank), whose case has been decided
separately, booked share trades and loans involving Danish listed shares and money
flows between 27 US 401(k) pension plans, nine companies (short sellers), one broker
and one intermediary, trades, loans and money flows which were fictitious or of such
a nature that the pension plans did not receive dividends or a right to receive dividends
as a result thereof, following which North Channel Bank prepared dividend credit
advice slips containing incorrect information on receipt of dividends from Danish
shares for the 27 US 401(k) pension plans which, on 284 occasions, the pension plans
submitted, with the Defendants' knowledge, to the Danish Tax Agency (formerly
called SKAT) through reclaim agents along with applications for refunds of the div-
idend tax stated in the dividend credit advice slips; which deceived employees of the

73

CONFIDENTIAL

Danish Tax Agency into believing that the US 401(k) pension plans had had dividend tax withheld in Denmark and were thus entitled to refunds thereof; all of which meant that the Danish Tax Agency was caused to pay out DKK 1,135,775,447.99 to the reclaim agents and thus suffered a corresponding financial loss, following which the reclaim agents transferred the amounts less their fees to the accounts of the pension plans with North Channel Bank from which they were further distributed by at least 80% to the Defendants or legal entities associated with the Defendants.

The Prosecution reserves the right to raise further charges in this set of related criminal cases.

The Prosecution requests that the Court issue an order for the imprisonment of the Defendants.

STATE    PROSECUTOR    FOR
SERIOUS
ECONOMIC AND INTERNATIONAL
CRIME

PAGE 3

The Prosecution requests the application of section 88(1), second sentence, of the Criminal Code.

In pursuance of section 79(2), second sentence, read with section 79(1), read with section 78(2), of the Criminal Code, the Prosecution further requests that the Court issue an order stipulating that Matthew Richard Stein, Jerome Lhôte and Luke Beneville McGee are deprived for an indefinite period of their right to participate in the management of a business enterprise in Denmark or abroad without undertaking unlimited personal liability for the commitments of the enterprise.



Moreover, the Prosecution requests confiscation of EUR 2,265,302.93 from ▮▮▮ ▮▮▮▮▮▮ of EUR 3,487.00 from ▮▮▮▮▮▮▮▮ ; of EUR 4,674.25 from ▮▮▮ ▮▮▮▮▮▮ of EUR 18,257.99 from ▮▮▮▮▮ of EUR 54,215.86 from ▮▮▮▮ of EUR 31,527.41 from ▮▮▮ ▮▮▮▮▮▮ ; of EUR 115,577.06 from ▮▮▮▮▮▮▮▮▮ ; and of EUR 1,437,424.00 from ▮▮▮▮▮▮ under section 75(1) of the Danish Criminal Code.

The Prosecution reserves the right to request that the Court issue an order for further confiscation, further disqualification, compensation and deportation.

[was signed]
Per Fiig
Acting State Prosecutor

74

                    CONFIDENTIAL

## Harvey – Translation

Files
GRP 01-01 - STEIN_LHOTE0001736.pdf

Query
en

Response
Page 1
01-01-00-1

w

THE PROSECUTOR

The Court in Glostrup

Date: April 13, 2021

Case No: SOK-76141-0005-17

Case Handler:

A. MOLLMANN

THE PROSECUTOR FOR SPECIAL

ECONOMIC AND INTERNATIONAL

CRIME

KAMPMANNSGADE 1

1604 COPENHAGEN V

PHONE 72 68 90 00

E-mail: saoek@ankl.dk

www.anklagemyndigheden.dk

www.politi.dk

INDICTMENT

Matthew Richard Stein

120667-ABIM



75

                                                                    CONFIDENTIAL

Jerome Lhéte

231273-ABXM

███████████

███████

███████

███

Luke Beneville McGee

230683-ACEM

███████████████

███████

███████████

███

STEIN_LHOTE0001736

CONFIDENTIAL

Page 2
01-01-00-2

Rajen Ranmal Shah

130368-ABWM

███████████

███

███████████

███████████

Anupe Dhorajiwala

160876-ABSM

THE PROSECUTOR FOR SPECIAL

███████████

ECONOMIC AND INTERNATIONAL

███████████

CRIME

███████████

PAGE 2

STEIN_LHOTE0010360                                    CONFIDENTIAL

Graham McKenzie Horn

260364-ABJM



is charged at the Court in Glostrup with the assistance of lay judges for

fraud of a particularly serious nature under the Penal Code § 279, cf. § 286, subsection 2

by, during the period 2013-2015, in association and after prior agreement or mutual understanding, with the intent to obtain undue gain for themselves and others, having initiated

the development, implementation, and operation of a system where the defendant's accomplice, North Channel Bank GmbH & Co. KG (hereinafter: North Channel Bank), whose

case has been decided separately, recorded stock trades and loans concerning Danish, publicly traded

stocks as well as money movements between 27 American 401(k) pension plans, nine companies (short sellers), a broker, and an intermediary, which trades, loans, and money movements were fictitious or of such a nature that the pension plans did not thereby receive stock dividends or a right thereto, after which North Channel Bank issued

dividend notes containing false information about the receipt of dividends from Danish stocks to the 27 American 401(k) pension plans, which the pension plans, with the defendants' knowledge, in 284 instances via reclaim agents submitted to the Tax Administration

(then SKAT) along with applications for refunds of the dividend tax stated on the dividend notes, which misled employees of the Tax Administration into believing that the

American 401(k) pension plans had had dividend tax withheld in Denmark and

thereby were entitled to a refund thereof, all of which caused the Tax Administration to be

STEIN_LHOTE0001737

CONFIDENTIAL

Page 3
01-01-00-3

pay out 1,135,775,447.99 DKK to the reclaim agents and thereby suffered a corresponding loss, after which the reclaim agents transferred the amounts, minus their fees, to the pension plans' accounts in North Channel Bank, from where they were further distributed with a minimum of 80% to the accused or legal entities associated with the accused.

There is a reservation for further charges in the case complex.

A claim for imprisonment is made.

A claim is made for the application of section 88, subsection 1, second sentence of the Penal Code.

THE SPECIAL PROSECUTOR FOR ECONOMIC AND INTERNATIONAL CRIME

STEIN_LHOTE0010361

CONFIDENTIAL

A claim is also made, pursuant to section 79, subsection 2, second sentence, cf. section 79, subsection 1, cf. section 78, subsection 2 of the Penal Code, that Matthew Richard Stein, Jerome Lhéte, and Luke Neville McGee be temporarily disqualified from participating in the management of a business enterprise in this country or abroad without being personally and unlimitedly liable for the enterprise's obligations.

A claim is also made, pursuant to section 75, subsection 1 of the Penal Code, for the confiscation of 2.265,302.93 € from ████████  3,487.00 € from ████  4,674.25 € from ████████ ████ 18,257.99 € from ████████, 54,215.86 € from ████, ████ 31,527.41 € from ████, 15,577.06 € from ████████████, and 1,437,424.00 € from ████████.

There is a reservation for making claims for further confiscation, further disqualification, compensation, and expulsion.

Per Fitg

Acting State Prosecutor

STEIN_LHOTE0001738

CONFIDENTIAL
Page 4
01-01-00-4

w

[Translation from Danish]

SAA SOS SES

Court of Glostrup

Date: 13 April 2021

Ref. no.: SOK-76141-0005-17

Case officer:

A. MOLLMANN

STATE PROSECUTOR FOR

SERIOUS ECONOMIC AND

INTERNATIONAL CRIME

KAMPMANNSGADE 1

1604 COPENHAGEN V

TELEPHONE +45 72 68 90 00

Email: saoek@ankl.dk

www.anklagemyndigheden.dk

www.politi.dk

INDICTMENT

                    CONFIDENTIAL

Matthew Richard Stein

120667-ABIM

████████████████

██████

████████████

████

Jerome Lhéte

231273-ABXM

████████████████

███████

███████

███

Luke Beneville McGee

230683-ACEM

██████████████████████

███████

████████████

███

STEIN_LHOTE0001739

CONFIDENTIAL

Page 5
**Translation:**
01-01-00-5

Rajen Ranmal Shah

130368-ABWM

████████████████

█████

████████████

█████████████

Anupe Dhorajiwala

160876-ABSM

FOR

STEIN_LHOTE0010363                                    CONFIDENTIAL

PROSECUTOR

STATE

███████████

SERIOUS

███████████

ECONOMIC AND INTERNATIONAL

███████████

CRIME

PAGE 2

Graham McKenzie, Horn

260364-ABJM

Nn

███████████

○

███████████

██████████

▆

███████████

are hereby formally charged before the Court of Glostrup in proceedings to be held

with the participation of lay judges for the purpose of punishment for

fraud of a particularly aggravated nature in contravention of section 279, read with

section 286(2), of the Danish Criminal Code

the particulars being that, in the period 2013-2015, in association and following prior

agreement or common understanding, with the intent of obtaining for themselves and

others an unlawful gain, the Defendants caused the development, implementation and

operation of a system in which the Defendants' co-perpetrator, North Channel Bank

GmbH & Co. KG (hereafter: North Channel Bank), whose case has been decided

separately, booked share trades and loans involving Danish listed shares and money

flows between 27 US 401(k) pension plans, nine companies (short sellers), one broker

and one intermediary; trades, loans and money flows which were fictitious or of such

STEIN_LHOTE0010364

CONFIDENTIAL

a nature that the pension plans did not receive dividends or a right to receive dividends

as a result thereof, following which North Channel Bank prepared dividend credit

advice slips containing incorrect information on receipt of dividends from Danish

shares for the 27 US 401(k) pension plans which, on 284 occasions, the pension plans

submitted, with the Defendants' knowledge, to the Danish Tax Agency (formerly

called SKAT) through reclaim agents along with applications for refunds of the div-

idend tax stated in the dividend credit advice slips; which deceived employees of the

STEIN_LHOTE0001740

CONFIDENTIAL
Note: The text appears to be a formal charge document related to a case of serious economic and international crime involving fraud.

Page 6
01-01-00-6

Danish Tax Agency into believing that the US 401(k) pension plans had had dividend tax withheld in Denmark and were thus entitled to refunds thereof, all of which meant that the Danish Tax Agency was caused to pay out DKK 1,135,775,447.99 to the reclaim agents and thus suffered a corresponding financial loss, following which the reclaim agents transferred the amounts less their fees to the accounts of the pension plans with North Channel Bank from which they were further distributed by at least 80% to the Defendants or legal entities associated with the Defendants.

The Prosecution reserves the right to raise further charges in this set of related criminal cases.

STATE PROSECUTOR FOR SERIOUS ECONOMIC AND INTERNATIONAL CRIME

The Prosecution requests that the Court issue an order for the imprisonment of the Defendants.

The Prosecution requests the application of section 88(1), second sentence, of the Criminal Code.

In pursuance of section 79(2), second sentence, read with section 79(1), read with section 78(2), of the Criminal Code, the Prosecution further requests that the Court issue an order stipulating that David Richard Stein, Jerome Lhéte, and Luke Beneville McGee are deprived for an indefinite period of their right to participate in the management of a business enterprise in Denmark or abroad without undertaking unlimited personal liability for the commitments of the enterprise.

Moreover, the Prosecution requests confiscation of EUR 2,265,302.93 from ███████ of EUR 3,487.00 from █████ ; of EUR 4,674.25 from █████ ; of EUR 18,257.99 from █████ ; of EUR 54,215.86 from █████ ; of EUR 31,527.41 from █████ ; of EUR 115,577.06 from █████ ; and of EUR 1,437,424.00 from █████ under section 75(1) of the Danish Criminal Code.

The Prosecution reserves the right to request that the Court issue an order for further confiscation, further disqualification, compensation, and deportation.

[was signed]

Per Fig. Acting State Prosecutor

STEIN_LHOTE0001741

CONFIDENTIAL

STEIN_LHOTE0010365                                                           CONFIDENTIAL

1-800-00-1

FIU-FinCen

Date: 27th March 2020

STATE PROSECUTOR FOR
SERIOUS ECONOMIC AND
INTERNATIONAL CRIME

**FIU  DENMARK**
KAMPMANNSGADE 1
DK - 1604 COPENHAGEN

TELEPHONE +45 45 15 47 10
FAX NO. +45 45 15 01 19

**Your reference:** New request for information
**Our reference:** ORI-00055-2020 / SØK-10177-00034-19

E-mail: fiu@politi.dk.
www.hvidvask.dk
www.anklagemyndigheden.dk

Dear Colleagues,

The Danish State Prosecutor for Serious Economic and International Crime is currently conducting a major investigation case in relation to serious fraud whereby the state of Denmark has been defrauded sums for not less than DKK 12.4 billion equivalent to approximately EUR 1.67 billion or, approximately USD 1.81 billion.

Thorough investigative work has revealed that three persons with American citizenships are presumably the culprits behind this criminal plot committed over a period of years. Therefore, we turn to you asking for your assistance to provide us with the requested information needed for the preparation of an ILOR.

Due to the great political awareness this investigation has in our country and the importance it has for our government as such, we kindly ask you to treat this request as a matter of urgency.

Background:
By means of a particularly well organized use of false documents, several America-based pension funds - all in the forms of sole proprietorships - have been capable of misleading the Danish tax authorities to believe that the former were the rightful receivers of huge amounts of tax dividends from Denmark.

The pension funds in question appeared to the Danish tax authorities as the actual owners of shares in a number of companies listed on the Danish stock exchange at the time when these companies paid dividends to their shareholders. Fictive trades in non-existing shares made this appear passable.

STEIN_LHOTE0001857

CONFIDENTIAL

Investigation has revealed that the fictive trades in non-existing shares in the listed Danish companies presumably took place just before deadline for payment of dividends.

Due to the double taxation agreement between our two nations, the Danish tax authorities thus erroneously thought that the aforementioned pension funds were entitled to receive a 27% dividend tax - this being the rate that was paid by the listed Danish companies to the Danish tax authorities.

Hence, the Danish State Prosecutor for Serious Economic and International Crime is convinced that these trades have taken place by prior agreements between the involved parties and that documents have been issued and sent to the Danish tax authorities with the purpose of being reimbursed with what was truly an unjustifiable claim for payment of tax dividend.

The Danish State Prosecutor for Serious Economic and International Crime is convinced that the initiative to establish the Germany-based banking institution of North Channel Bank GmbH and Co KG as a custodian as well as the initiation of business relationships came from the owners of the bank.

Investigation has shown that the ultimate beneficial owners of North Channel Bank GmbH and Co KG are the three American citizens:

Matthew Richard Stein
Born
US Passport no.


Jerome Lhôte
Born
US Passport no.


Luke Beneville McGee
Born
US Passport no.


83

STEIN_LHOTE0001858                                                                      CONFIDENTIAL

Investigation has shown that these three persons are the initiators and the master-minds behind the planning and the perpetration of the fraud to a not-previously seen extend against the Kingdom of Denmark. Huge sums deriving from the unjustifi-ably paid tax dividends have been allocated to Matthew Stein, Jerome Lhôthe re-spectively Luke McGee.

The Danish State Prosecutor for Serious Economic and International Crime is now taking preliminary steps to prepare an ILOR regarding a disclosure of information in relation to bank arrangements held by Matthew Stein, Jerome Lhôthe and Luke McGee with American banking institutions.

Therefore, we kindly ask you to inform us in which American banking institutions Matthew Stein, Jerome Lhôthe and Luke McGee have or have had their bank ac-counts. We are interested in any available information in relation to accounts that are either presently active, emptied or dormant or accounts that have been terminat-ed within the last five years.

In your reply to this request, please state reference no. SØK-10177-00034-19 and address it for the attention of Deputy Public Prosecutor, Helle Blendstrup Soeren-sen.,


Information disseminated to FIU-Denmark will be used for intelligence purposes, only.



Best regards

FIU-Denmark

STEIN_LHOTE0001859    CONFIDENTIAL

30-803-00-1
~~08-800-00-1~~

Retten i Kobenhavn

Dato: 16-03-2020
Jnr.: SOK-10177-00037-19
Sagsbehandler MVF

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

KAMPMANNSGADE 1
1604 KØBENHAVN V

TELEFON 72 68 90 00
FAX 45 15 00 16

E-mail: saoek@ankl.dk
www.anklagemyncigheden.dk
www.politi.dk

## Retsanmodning om beslaglæggelse
### (K168a)

Der anmodes i medfør af retsplejelovens § 29, stk. 3, nr. 4, om, at retsmø-
det afholdes for lukkede døre, idet sagens behandling i et offentligt retsmøde
må antages på afgørende måde at hindre sagens oplysning.

Vedr.:          Mistanke om bedrageri mod Kongeriget Danmark

Til sagen mod:      Matthew Richard Stein
                    Født █████████████
                    Statsborger i USA
                    Pasnr █████████ (udløb 9. Juni 2019)
                    ████████████████████
                    ████████████████████

Der er mistænkt for at have begået bedrageri af særlig grov beskaffenhed
efter straffelovens §279, jf. §286, stk. 2, jf. §306, ved i perioden 2013-2015

CONFIDENTIAL

STEIN_LHOTE0010322

i forening og efter forudgående aftale eller fælles forståelse med flere fysiske og juridiske personer, med henblik på at skaffe sig og andre uberettiget vinding, tilrettelagde og eksekverede et system, hvori sigtedes medgerningsmand, North Channel Bank GmbH & Co. KG, hvis sag er afgjort særskilt, registrerede fiktive aktie- og pengebevægelser og udfærdigede dokumenter (Dividend Credit Advices) indeholdende urigtige oplysninger om udbetaling af udbytte fra danske aktier, som de sigtede eller disses medgerningsmænd i 284 tilfælde på vegne af 27 amerikanske "401 K pension plans" anvendte til at bringe ansatte i Skattestyrelsen (tidligere SKAT) i en vildfarelse om, at de amerikanske "401 K pension plans" havde fået indeholdt udbytteskat i Danmark og derved var berettiget til refusion heraf, alt hvorved Skattestyrelsen (tidligere SKAT) bestemtes til at udbetale ikke under 1,1 mia. kr. og derved led et tilsvarende formuetab.

Under henvisning til retsplejelovens § 802, stk. 1 og stk. 2 jf. § 806, stk. 2, forelægger Statsadvokaten for Særlig Økonomisk og International Kriminalitet sag med henblik på at opnå rettens kendelse om, at betingelserne efter dansk ret er opfyldt for beslaglæggelse af følgende:

50% af ejendom:

| | |
|---|---|
| Adresse: | ████████████████████████ |
| Parcel-nummer: | 1491-0045 |
| Ejer 1: | Matthew Stein |
| Ejer 2: | ████████████ |
| Salgsdato: | ██████████ |
| Salgspris: | ███████ |
| Grundareal: | 1938 m2 |
| Byggeår: | 1899 |
| Sælger: | ██████████████████ |
| Optaget lån: | ██████████ |
| Långiver: | ████████ |

hos Matthew Stein, der er mistænkt for overtrædelse af § §279, jf. §286, stk. 2, jf. §306.

Beslaglæggelse findes nødvendig for at sikre udbytte fra den strafbare handling, krav på konfiskation samt bødekrav.

CONFIDENTIAL

STEIN_LHOTE0010323

30-803-00-3
~~08-800-00-3~~

Baggrund for anmodningen er følgende: SKAT (nu Skattestyrelsen) an-
meldte d. 24. august 2015, at der var mistanke om bedrageri af særlig grov
beskaffenhed for DKK 9,6 mia.

Den 24. august 2016 anmeldte SKAT endvidere, at der yderligere var mis-
tanke om bedrageri af særlig grov beskaffenhed for DKK 3,2 mia., samt for-
søg på bedrageri af særlig grov beskaffenhed for DKK 533 mio.
Mistanken var i begge anmeldelser rettet mod en række personer, reclaim
agents, custodians, selskaber samt forskellige pensionsplaner.
Statsadvokaten for Særlig Økonomisk og International Kriminalitet har efter-
følgende konstateret, at der var mistanke om bedrageri for yderligere DKK
100 mio.
Således var der er tale om bedrageri for DKK 3,3 mia. samt forsøg på DKK
533 mio. i anden anmeldelse.

En række enkeltmandsejede pensionsfonde ved navn 401 K i USA bragte,
ved særdeles organiseret brug af falske dokumenter, SKAT i en vildfarelse
om, at pensionsplanerne ejede aktier i en række danske børsnoterede sel-
skaber, på det tidspunkt, hvor de danske børsnoterede selskaber udbetalte
udbytte til sine ejere (aktionærerne).

Bedrageriet skete ved, at pensionsplanerne senest på dagen for generalfor-
samlingen i et dansk børsnoteret selskab købte aktier via en "broker" af én
af ni sælgere, som alle var selskaber hjemmehørende i enten British Virgin
Islands, Dubai, Belize eller Cayman Islands.
Pensionsplanen finansierede købet ved, på samme dag som penge og ak-
tier skulle afregnes, at udlåne den eksakt samme mængde aktier til en tred-
jepart der agerede "lender". Selskabet der agerede "lender" var altid samme
selskab hjemmehørende på Cayman Islands. Sælgeren af aktierne, der på
salgsdagen ikke havde aktier på depot, skaffede disse aktier på afregnings-
dagen, ved at låne den eksakt samme mængde aktier af lenderen.

Efterfølgende blev samtlige handler og låneaftaler rullet tilbage, hvorved der
for ingen af parterne skete hverken kurstab eller en kursgevinst.

Samtlige parter var kunder i North Channel Bank GmbH & Co KG der i samt-
lige handler agerede som depotbank (Custodian).

CONFIDENTIAL                                    STEIN_LHOTE0010324

30-803-00-4
~~08-800-00-4~~

North Channel Bank GmoH & Co KG udstedte i forbindelse med aktiehand-
lerne Dividend Credit Advices, der af Tax Reclaim Agents blev sendt til SKAT
på vegne af pensionsplanerne.

Danske børsnoterede selskaber kender ikke nødvendigvis identiteten eller
bopælslandet på alle deres aktionærer. Ved udbetaling af udbytte udbetales
en del af udbyttet (73%) direkte til aktionærerne via banker, mens de reste-
rende 27% indbetales til SKAT.

Efterforskningen har vist, at der formentlig er gennemført fiktive handler
med ikke-eksisterende aktier i danske børsnoterede selskaber omkring skæ-
ringsdato for udbetaling af udbytte

På baggrund af dobbeltbeskatningsoverenskomsten mellem Danmark og
USA, har det over for SKAT således fremstået, at en række enkeltmands-
ejede pensionsplaner i USA har haft ret til, at få refunderet den tilbageholdte
udbytteskat (27%), som blev indbetalt af de danske børsnoterede selskaber
til SKAT.

Det bemærkes i den forbindelse, at pensionsplanerne i USA formentlig ikke
har modtaget et udbyttebeløb (73%) fra de danske børsnoterede selskaber.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets
opfattelse, at handlerne er sket efter forudgående aftale og fælles forstå-
else, på baggrund af fiktive handler med aktier, med det formål at udfær-
dige dokumentation, der kunne fremsendes til SKAT, med henblik på, at få
udbetalt tilbageholdt udbytteskat, som de ikke var berettiget til.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets
opfattelse, at initiativet til oprettelse af North Channel Bank GmoH og Co KG
som depotbank, samt indledning af forretningsforbindelserne med kunderne
udgik fra bankens ejere.

Efterforskningen har vist, at den ene af tre ultimative ejere (Ultimate Benefi-
cial Owners) af North Channel Bank er:

Matthew Richard Stein
Født ▮▮▮▮▮▮▮▮▮▮▮
Statsborger i USA

CONFIDENTIAL

STEIN_LHOTE0010325

30-803-00-5
~~08-800-00-5~~

Pasnr. ███████ ██████████
██████████
██████████████████████

Efterforskningen har vist, at Matthew Stein som én ud af tre personer har været initiativtager og samtidigt spillet en vigtig rolle i planlægningen og eksekveringen af bedrageriet mod Kongeriget Danmark.

Store pengebeløb på flere mio. USD (p.t. ikke endeligt opgjort), stammende fra den tilbagesøgte udbytteskat, er tilgået Matthew Stein og dennes selskaber.

Statsadvokaten for Særlig Økonomisk og International Kriminalitet håber på de amerikanske myndigheders velvillige bistand i denne alvorlige sag.

/. Ejendomsoplysninger med ejerforhold er vedlagt.

/. Dom mod North Channel Bank fra Retten i Glostrup er vedlagt.

M. V. Fischer
politiassistent

CONFIDENTIAL

STEIN_LHOTE0010326

# Harvey – Translation

Files
GRP 30-803-00-01 - STEIN_LHOTE0010322.pdf

Query
en

Response
Page 1
30-803-00-1

8-800-00-+

The Court 1 Copenhagen

Date: 16-03-2020

Case: SOK-10177-00037-19

Case Handler:

MVF

THE SPECIAL PROSECUTOR FOR ECONOMIC AND INTERNATIONAL CRIME

KAMPMANNSGADE 1

1604 COPENHAGEN V

PHONE 72 68 90 00

FAX 45 15 00 16

E-mail: saoek@ankl.dk

www.anklagemyndigheden.dk

www.politi.dk

Request for Seizure

(K168a)

It is requested pursuant to section 29, subsection 3, no. 4 of the Administration of Justice Act, that the court hearing be held behind closed doors, as the public hearing of the case is assumed to decisively hinder the clarification of the case.

Re:

Suspicion of fraud against the Kingdom of Denmark

In the case against:

Matthew Richard Stein

Born ██████████████

STEIN_LHOTE0011193                    CONFIDENTIAL

Citizen of the USA

Passport No. BM █████████

█████████

█████████████████

Suspected of having committed fraud of a particularly serious nature under section 279 of the Penal Code, cf. section 286, subsection 2, cf. section 306, during the period 2013-2015

CONFIDENTIAL

STEIN_LHOTE0010322
Page 2
30-803-00-2

8-800-00-2

In association and after prior agreement or mutual understanding with several physical and legal persons, with the aim of obtaining unjustified profit for themselves and others, they organized and executed a system in which the accused's co-conspirator, North Channel Bank GmbH & Co. KG, whose case has been decided separately, registered fictitious stock and money movements and issued documents (Dividend Credit Advices) containing false information about the payment of dividends from Danish stocks, which the accused or their co-conspirators used in 284 instances on behalf of 27 American "401 K pension plans" to mislead employees at the Tax Administration (formerly SKAT) into believing that the American "401 K pension plans" had had dividend tax withheld in Denmark and were therefore entitled to a refund, thereby causing the Tax Administration (formerly SKAT) to pay out no less than 1.1 billion DKK, resulting in a corresponding financial loss.

With reference to the Administration of Justice Act § 802, subsection 1 and subsection 2 cf. § 806, subsection 2, the Public Prosecutor for Special Economic and International Crime presents the case with the aim of obtaining a court order that the conditions under Danish law are met for the seizure of the following:

50% of property: Address: ████████████████████████████████, Parcel number: 1491-0045

Owner 1: Matthew Stein

Owner 2: ████████████████

Sale date: ███████

Sale price: ████████

Land area: 1938 m2

Year built: 1899

Seller: ████████████████

Recorded loan: ████████

Lender: — Citimortgage

from Matthew Stein, who is suspected of violating §§279, cf. §286, subsection 2, cf. §306.

Seizure is deemed necessary to secure the proceeds from the criminal act, claims for confiscation, and compensation claims.

CONFIDENTIAL

          CONFIDENTIAL

STEIN_LHOTE0010323

## Page 3

**Background for the request is as follows:**

SKAT (now the Danish Tax Agency) reported on August 24, 2015, that there was suspicion of fraud of particularly severe nature amounting to DKK 9.6 billion.

On August 24, 2016, SKAT further reported that there was additional suspicion of fraud of particularly severe nature amounting to DKK 3.2 billion, as well as an attempt at fraud of particularly severe nature amounting to DKK 533 million.

The suspicion in both reports was directed against a number of individuals, reclaim agents, custodians, companies, and various pension plans.

The State Prosecutor for Serious Economic and International Crime subsequently determined that there was suspicion of fraud for an additional DKK 100 million.

Thus, there was fraud amounting to DKK 3.3 billion and an attempt of DKK 533 million in the second report.

A number of individually owned pension funds named 401 Ki USA, through highly organized use of false documents, misled SKAT into believing that the pension plans owned shares in a number of Danish publicly listed companies at the time when these companies paid dividends to their owners (shareholders).

The fraud occurred by the pension plans purchasing shares via a "broker" from one of nine sellers, all of which were companies domiciled in either the British Virgin Islands, Dubai, Belize, or the Cayman Islands, on the day of the general meeting of a Danish publicly listed company.

The pension plan financed the purchase by, on the same day as the money and shares were to be settled, lending the exact same amount of shares to a third party acting as a "lender." The company acting as the "lender" was always the same company domiciled in the Cayman Islands. The seller of the shares, who did not have shares in the depot on the day of the sale, obtained these shares on the settlement day by borrowing the exact same amount of shares from the lender.

Subsequently, all transactions and loan agreements were rolled back, resulting in neither party experiencing any loss or gain in share value.

All parties were clients of North Channel Bank GmbH & Co KG, which acted as the custodian in all transactions.

CONFIDENTIAL

STEIN_LHOTE0010324

## Page 4

North Channel Bank GmbH & Co KG issued Dividend Credit Advices in connection with stock transactions, which were sent to the Danish Tax Authority (SKAT) by Tax Reclaim Agents on behalf of the pension plans.

Danish publicly listed companies do not necessarily know the identity or residence of all their shareholders. When dividends are paid out, a portion of the dividend (73%) is paid directly to the shareholders via banks, while the remaining 27% is paid to SKAT.

The investigation has shown that there have likely been fictitious transactions involving non-existent shares in Danish publicly listed companies around the dividend payment date.

Based on the double taxation agreement between Denmark and the USA, it was presented to SKAT that a number of individually owned pension plans in the USA were entitled to a refund of the withheld dividend tax (27%) that was paid by the Danish publicly listed companies to SKAT.

                                    CONFIDENTIAL

It is noted in this context that the pension plans in the USA likely did not receive a dividend amount (73%) from the Danish publicly listed companies.

The Office of the Special Prosecutor for Serious Economic and International Crime believes that the transactions were carried out based on prior agreement and mutual understanding, involving fictitious stock transactions, with the aim of producing documentation that could be submitted to SKAT to obtain a refund of withheld dividend tax to which they were not entitled.

The Office of the Special Prosecutor for Serious Economic and International Crime believes that the initiative to establish North Channel Bank GmbH & Co KG as a custodian bank, as well as the initiation of business relationships with customers, originated from the bank's owners.

The investigation has shown that one of the three ultimate beneficial owners of North Channel Bank is:

Matthew Richard Stein ▮▮▮▮▮▮▮▮ in the USA  Citizen of the USA

CONFIDENTIAL

STEIN_LHOTE0010325
Page 5
30-803-00-5

8-800-90-5

Passport No. BM▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

The investigation has shown that Matthew Stein, as one of three individuals, has been an initiator and has simultaneously played an important role in the planning and execution of the fraud against the Kingdom of Denmark.

Large sums of money amounting to several million USD (currently not definitively calculated), originating from the reclaimed dividend tax, have been transferred to Matthew Stein and his companies.

The Public Prosecutor for Special Economic and International Crime hopes for the cooperative assistance of the American authorities in this serious matter.

/. Property information with ownership details is attached.

/. Judgment against North Channel Bank from the Court in Glostrup is attached.

M. V. Fischer

Police Assistant

CONFIDENTIAL

STEIN_LHOTE0010326

STEIN_LHOTE0011196                                                                                          CONFIDENTIAL

30-804-00-1
~~08-801-00-1~~

Retten i Kobenhavn

Dato: 16-03-2020
Jnr.: SØK-10177-00037-19
Sagsbehandler MVF

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

KAMPMANNSGADE 1
1604 KØBENHAVN V

TELEFON 72 68 90 00
FAX 45 15 00 16

E-mail: saoek@ankl.dk
www.anklagemyndigheden.dk
www.politi.dk

### Retsanmodning om beslaglæggelse
### (K168a)

Der anmodes i medfør af retsplejelovens § 29, stk. 3, nr. 4, om, at retsmø-
det afholdes for lukkede døre, idet sagens behandling i et offentligt retsmøde
må antages på afgørende måde at hindre sagens oplysning.

Vedr.                    Mistanke om bedrageri mod Kongeriget Danmark

Til sagen mod:           Jerome Lhote
                         Født ███████████████████████
                         Statsborger i USA
                         Pasnr. ██████████████████████
                         ██████

Der er mistænkt for at have begået bedrageri af særlig grov beskaffenhed
efter straffelovens §279, jf. §286, stk. 2, jf. §306, ved i perioden 2013-2015
i forening og efter forudgående aftale eller fælles forståelse med flere fysiske
og juridiske personer, med henblik på at skaffe sig og andre uberettiget vin-

CONFIDENTIAL                    STEIN_LHOTE0010332

ding, tilrettelagde og eksekverede et system, hvori sigtedes medgernings-
mand, North Channel Bank GmbH & Co. KG, hvis sag er afgjort særskilt, regi-
strerede fiktive aktie- og pengebevægelser og udfærdigede dokumenter (Di-
vidend Credit Advices) indeholdende urigtige oplysninger om udbetaling af
udbytte fra danske aktier, som de sigtede eller disses medgerningsmænd i
284 tilfælde på vegne af 27 amerikanske "401 K pension plans" anvendte til
at bringe ansatte i Skattestyrelsen (tidligere SKAT) i en vildfarelse om, at de
amerikanske "401 K pension plans" havde fået indeholdt udbytteskat i Dan-
mark og derved var berettiget til refusion heraf, alt hvorved Skattestyrelsen
(tidligere SKAT) bestemtes til at udbetale ikke under 1,1 mia. kr. og derved
led et tilsvarende formuetab.

Under henvisning til retsplejelovens § 802, stk. 1 og stk. 2 jf. § 806, stk. 2,
forelægger Statsadvokaten for Særlig Økonomisk og International Kriminalitet
sag med henblik på at opnå rettens kendelse om, at betingelserne efter dansk
ret er opfyldt for beslaglæggelse af følgende:

50% af ejendom:

| | |
|---|---|
| Adresse: | ████████████████████████████ |
| | ██████████ |
| Ejer 1: | Jerome Lhote |
| Ejer 2: | ████████████████████ |
| Salgsdato: | ████████ |
| Byggeår: | ███ |
| Sælger: | ████████████████████ |

hos Jerome Lhote, der er mistænkt for overtrædelse af § §279. jf. §286, stk.
2, jf. §306.

Beslaglæggelse findes nødvendig for at sikre udbytte fra den strafbare hand-
ling, krav på konfiskation samt bødekrav.

Baggrund for anmodningen er følgende: SKAT (nu Skattestyrelsen) an-
meldte d. 24. august 2015, at der var mistanke om bedrageri af særlig grov
beskaffenhed for DKK 9,6 mia.

CONFIDENTIAL

STEIN_LHOTE0010333

30-804-00-3
~~08-801-00-3~~

Den 24. august 2016 anmeldte SKAT endvidere, at der yderligere var mis-
tanke om bedrageri af særlig grov beskaffenhed for DKK 3,2 mia., samt for-
søg på bedrageri af særlig grov beskaffenhed for DKK 533 mio.
Mistanken var i begge anmeldelser rettet mod en række personer, reclaim
agents, custodians, selskaber samt forskellige pensionsplaner.
Statsadvokaten for Særlig Økonomisk og International Kriminalitet har efter-
følgende konstateret, at der var mistanke om bedrageri for yderligere DKK
100 mio.
Således var der er tale om bedrageri for DKK 3,3 mia. samt forsøg på DKK
533 mio. i anden anmeldelse.

En række enkeltmandsejede pensionsfonde ved navn 401 K i USA bragte,
ved særdeles organiseret brug af falske dokumenter, SKAT i en vildfarelse
om, at pensionsplanerne ejede aktier i en række danske børsnoterede sel-
skaber, på det tidspunkt, hvor de danske børsnoterede selskaber udbetalte
udbytte til sine ejere (aktionærerne).

Bedrageriet skete ved, at pensionsplanerne senest på dagen for generalfor-
samlingen i et dansk børsnoteret selskab købte aktier via en "broker" af én
af ni sælgere, som alle var selskaber hjemmehørende i enten British Virgin
Islands, Dubai, Belize eller Cayman Islands.
Pensionsplanen finansierede købet ved, på samme dag som penge og ak-
tier skulle afregnes, at udlåne den eksakt samme mængde aktier til en tred-
jepart der agerede "lender". Selskabet der agerede "lender" var altid samme
selskab hjemmehørende på Cayman Islands. Sælgeren af aktierne, der på
salgsdagen ikke havde aktier på depot, skaffede disse aktier på afregnings-
dagen, ved at låne den eksakt samme mængde aktier af lenderen.

Efterfølgende blev samtlige handler og låneaftaler rullet tilbage, hvorved der
for ingen af parterne skete hverken kurstab eller en kursgevinst.

Samtlige parter var kunder i North Channel Bank GmbH & Co KG der i samt-
lige handler agerede som depotbank (Custodian).

North Channel Bank GmbH & Co KG udstedte i forbindelse med aktiehand-
lerne Dividend Credit Advices, der af Tax Reclaim Agents blev sendt til SKAT
på vegne af pensionsplanerne.

CONFIDENTIAL                                                      STEIN_LHOTE0010334

30-804-00-4
~~08-801-00-4~~

Danske børsnoterede selskaber kender ikke nødvendigvis identiteten eller bopælslandet på alle deres aktionærer. Ved udbetaling af udbytte udbetales en del af udbyttet (73%) direkte til aktionærerne via banker, mens de resterende 27% indbetales til SKAT.

Efterforskningen har vist, at der formentlig er gennemført fiktive handler med ikke-eksisterende aktier i danske børsnoterede selskaber omkring skæringsdato for udbetaling af udbytte.

På baggrund af dobbeltbeskatningsoverenskomsten mellem Danmark og USA, har det over for SKAT således fremstået, at en række enkeltmandsejede pensionsplaner i USA har haft ret til, at få refunderet den tilbageholdte udbytteskat (27%), som blev indbetalt af de danske børsnoterede selskaber til SKAT.

Det bemærkes i den forbindelse, at pensionsplanerne i USA formentlig ikke har modtaget et udbyttebeløb (73%) fra de danske børsnoterede selskaber.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at handlerne er sket efter forudgående aftale og fælles forståelse, på baggrund af fiktive handler med aktier, med det formål at udfærdige dokumentation, der kunne fremsendes til SKAT, med henblik på, at få udbetalt tilbageholdt udbytteskat, som de ikke var berettiget til.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets opfattelse, at initiativet til oprettelse af North Channel Bank GmbH og Co KG som depotbank, samt indledning af forretningsforbindelserne med kunderne udgik fra bankens ejere.

Efterforskningen har vist, at den ene af tre ultimative ejere (Ultimate Beneficial Owners) af North Channel Bank er:

Jerome Lhôte
Født 23. ███████████████
Statsborger i USA
Pasnr. ███████████████████

CONFIDENTIAL

STEIN_LHOTE0010335

30-804-00-5
~~08-801-00-5~~

Efterforskningen har vist, at ovenstående som én af tre personer har været initiativtager og samtidigt spillet en vigtig rolle i planlægningen og eksekveringen af bedrageriet mod Kongeriget Danmark.

Store pengebeløb på flere mio. USD (p.t. ikke endeligt opgjort), stammende fra den tilbagesøgte udbytteskat, er tilgået Jerome Lhôte og dennes selskaber.

Statsadvokaten for Særlig Økonomisk og International Kriminalitet håber på de amerikanske myndigheders velvillige bistand i denne alvorlige sag.

./. Ejendomsoplysninger med ejerforhold er vedlagt.

./. Dom mod North Channel Bank fra Retten i Glostrup er vedlagt.

M. V. Fischer
politiassistent

98

CONFIDENTIAL

STEIN_LHOTE0010336

## Harvey – Translation

Files
GRP 30-804-00-01 - STEIN_LHOTE0010332.pdf

Query
en

Response
Page 1
30-804-00-1

8-804+-00-+

The Court 1 Copenhagen

Date: 16-03-2020

Case: SOK-10177-00037-19

Case Handler:

MVF

THE SPECIAL PROSECUTOR FOR SERIOUS

ECONOMIC AND INTERNATIONAL

CRIME

KAMPMANNSGADE 1

1604 COPENHAGEN V

PHONE 72 68 90 00

FAX 45 15 00 16

E-mail: saoek@ankl.dk

www.anklagemyndigheden.dk

Request for Seizure

www.polit.dk

(K168a)

It is requested pursuant to section 29, subsection 3, no. 4 of the Administration of Justice Act, that the court hearing be held behind closed doors, as the public hearing of the case is assumed to decisively hinder the clarification of the case.

Re:

Suspicion of fraud against the Kingdom of Denmark

Regarding the case against:

    CONFIDENTIAL

Jerome Lhote

Born █████████████████████

Citizen of the USA

Passport No. █████████████████████

He is suspected of having committed particularly serious fraud under section 279, cf. section 286, subsection 2, cf. section 306 of the Penal Code, by, during the period 2013-2015, in association and after prior agreement or common understanding with several physical and legal persons, with the intent to obtain for himself and others unjustified gain.

CONFIDENTIAL

STEIN_LHOTE0010332

Page 2

30-804-00-2

08-804+-002

planned, facilitated, and executed a system in which the accused's accomplice, North Channel Bank GmbH & Co. KG, whose case has been decided separately, registered fictitious stock and money movements and issued documents (Dividend Credit Advices) containing false information about the payment of dividends from Danish stocks, which the accused or their accomplices used in 284 instances on behalf of 27 American "401 K pension plans" to mislead employees in the Tax Administration (formerly SKAT) into believing that the American "401 K pension plans" had had dividend tax withheld in Denmark and were therefore entitled to a refund, thereby causing the Tax Administration (formerly SKAT) to pay out no less than 1.1 billion DKK and thus suffer a corresponding financial loss.

With reference to the Administration of Justice Act § 802, subsection 1 and subsection 2 cf. § 806, subsection 2, the Public Prosecutor for Special Economic and International Crime presents the case with a view to obtaining a court order that the conditions under Danish law are met for the seizure of the following:

50% of property: Address: ███████████████████
Owner 1: Jerome Lhote  Owner 2: ████████  Sale date: ████████  Year built: ████
Seller: ████████████

from Jerome Lhote, who is suspected of violating §§ 279, cf. § 286, subsection 2, cf. § 306.

Seizure is deemed necessary to secure the proceeds from the criminal act, claims for confiscation, and fines.

The background for the request is as follows: On August 24, 2015, SKAT (now the Tax Administration) reported a suspicion of particularly serious fraud amounting to DKK 9.6 billion.

CONFIDENTIAL

STEIN_LHOTE0010333

Page 3

On August 24, 2016, SKAT further reported that there was additional suspicion of fraud of a particularly serious nature amounting to DKK 3.2 billion, as well as an attempt at fraud of a particularly serious nature amounting to DKK 533 million.

The suspicion in both reports was directed at a number of individuals, reclaim agents, custodians, companies, and various pension plans.

The State Prosecutor for Serious Economic and International Crime subsequently determined that there was suspicion of fraud for an additional DKK 100 million.

    CONFIDENTIAL

Thus, there was fraud amounting to DKK 3.3 billion and an attempt of DKK 533 million in the second report.

A number of individually owned pension funds named 401 Ki USA, through highly organized use of false documents, misled SKAT into believing that the pension plans owned shares in a number of Danish publicly listed companies at the time when these Danish publicly listed companies paid dividends to their owners (shareholders).

The fraud occurred when the pension plans, on the day of the general meeting of a Danish publicly listed company, bought shares via a "broker" from one of nine sellers, all of which were companies domiciled in either the British Virgin Islands, Dubai, Belize, or the Cayman Islands.

The pension plan financed the purchase by, on the same day as the money and shares were to be settled, lending the exact same amount of shares to a third party acting as a "lender." The company acting as the "lender" was always the same company domiciled in the Cayman Islands. The seller of the shares, who did not have shares in the depot on the day of the sale, obtained these shares on the settlement day by borrowing the exact same amount of shares from the lender.

Subsequently, all trades and loan agreements were rolled back, resulting in neither party experiencing either a loss or a gain.

All parties were clients of North Channel Bank GmbH & Co KG, which acted as the custodian bank in all transactions.

North Channel Bank GmbH & Co KG issued Dividend Credit Advices in connection with the share transactions, which were sent to SKAT by Tax Reclaim Agents on behalf of the pension plans.

CONFIDENTIAL

STEIN_LHOTE0010334
Page 4
30-804-00-4

08-804+-00-4

Danish publicly listed companies do not necessarily know the identity or

residence country of all their shareholders. When dividends are paid out,

a portion of the dividend (73%) is paid directly to the shareholders via banks, while the remaining 27% is paid to the tax authorities (SKAT).

The investigation has shown that there are likely fictitious trades

with non-existent shares in Danish publicly listed companies around the

record date for dividend payments.

Based on the double taxation agreement between Denmark and

the USA, it has appeared to SKAT that a number of individually owned

pension plans in the USA have had the right to get the withheld

dividend tax (27%) refunded, which was paid by the Danish publicly listed companies

to SKAT.

It is noted in this context that the pension plans in the USA likely did not

receive a dividend amount (73%) from the Danish publicly listed companies.

STEIN_LHOTE0011204                                                                 CONFIDENTIAL

The Office of the Special Prosecutor for Serious Economic and International Crime

believes that the trades were made based on prior agreement and mutual understanding,

on the basis of fictitious trades with shares, with the aim of producing documentation

that could be submitted to SKAT, with the intention of getting

the withheld dividend tax refunded, which they were not entitled to.

The Office of the Special Prosecutor for Serious Economic and International Crime

believes that the initiative to establish North Channel Bank GmbH and Co KG

as a custodian bank, as well as the initiation of business relationships with customers,

came from the bank's owners.

The investigation has shown that one of the three ultimate owners (Ultimate Beneficial Owners) of North Channel Bank is:

Jerome Lhote

Born █████████████

in France

Citizen of the USA

Passport No.: █████████████████

CONFIDENTIAL

STEIN_LHOTE0010335
Page 5
30-804-00-5

08-804-00-5

The investigation has shown that the above-mentioned, as one of three individuals, has been an initiator and has simultaneously played an important role in the planning and execution of the fraud against the Kingdom of Denmark.

Large sums of money amounting to several million USD (currently not definitively calculated), originating from the reclaimed dividend tax, have been transferred to Jerome Lndéte and his companies.

The Public Prosecutor for Special Economic and International Crime hopes for the cooperative assistance of the American authorities in this serious case.

/. Property information with ownership details is attached.

/. Judgment against North Channel Bank from the Court in Glostrup is attached.

M. V. Fischer

Police Assistant

CONFIDENTIAL

STEIN_LHOTE0011205                                                   CONFIDENTIAL

STEIN_LHOTE0010336

STEIN_LHOTE0011206

CONFIDENTIAL

30-805-00-1
08-802-00-1

Retten i Lyngby

Dato: 23-04-2020
J.nr.: SØK-10177-00037-19
Sagsbehandler: MVF

STATSADVOKATEN FOR SÆRLIG
ØKONOMISK OG INTERNATIONAL
KRIMINALITET

KAMPMANNSGADE 1
1604 KØBENHAVN V

TELEFON 72 68 90 00
FAX 45 15 00 16

E-mail: saoek@ankl.dk
www.anklagemyndigheden.dk
www.politi.dk

### Retsanmodning om edition og beslaglæggelse
### (K168)

Der anmodes i medfør af retsplejelovens § 29, stk. 3, nr. 4, om, at retsmø
det afholdes for lukkede døre, idet sagens behandling i et offentligt retsmø-
de må antages på afgørende måde at hindre sagens oplysning.

Vedr.                    Edition og beslaglæggelse af bankkonti i U.S.A i
                         forbindelse med mistanke om bedrageri mod
                         Kongeriget Danmark

Til sagen mod:           Luke Beneville McGee
                         Født ▮▮▮▮▮▮▮▮▮▮ ▮▮▮
                         Statsborger i USA

Der er mistænkt for at have begået bedrageri af særlig grov beskaffenhed
efter straffelovens § 279, jf. §286, stk. 2, jf. § 306, ved i perioden 2013-
2015 i forening og efter forudgående aftale eller fælles forståelse med flere
fysiske og juridiske personer, med henblik på at skaffe sig og andre uberet-
tiget vinding, tilrettelagde og eksekverede et system, hvori sigtedes med-
gerningsmand, North Channel Bank GmbH & Co. KG, hvis sag er afgjort

104

STEIN_LHOTE0011916                                                    CONFIDENTIAL

særskilt, registrerede fiktive aktie- og pengebevægelser og udfærdigede do-
kumenter (Dividend Credit Advice) indeholdende urigtige oplysninger om ud-
betaling af udbytte fra danske aktier, som de sigtede eller disses medger-
ningsmænd i 284 tilfælde på vegne af 27 amerikanske "401 K pension
plans" anvendte til at bringe ansatte i Skattestyrelsen (tidligere SKAT) i en
vildfarelse om, at de amerikanske "401 K pension plans" havde fået inde-
holdt udbytteskat i Danmark og derved var berettiget til refusion heraf, alt
hvorved Skattestyrelsen (tidligere SKAT) bestemtes til at udbetale ikke under
DKK 1,1 mia. og derved led et tilsvarende formuetab.

Under henvisning til retsplejelovens § 806, stk. 2, jf. § 802, stk. 1 og stk. 2
forelægger Statsadvokaten for Særlig Økonomisk og International Kriminali-
tet sag med henblik på, at retten ved kendelse fastslår, at betingelserne ef-
ter dansk ret er opfyldt for at beslaglægge følgende

   1) Konti med indestående på op til i alt DKK 1,1 mia. i nedenstående
      pengeinstitutter i U.S.A.

- TD Bank
  Wilmington, Delaware
  U.S.A

- Santander Bank
  Wilmington, Delaware
  U.S.A

- First Republic Bank
  San Francisco, California
  U.S.A

- JPMorgan Chase Bank
  New York, New York
  U.S.A

- City National Bank
  Los Angeles, California
  U.S.A

Som den amerikanske statsborger, Luke McGee, bosat i U.S.A, der med ri-
melig grund er mistænkt for at have begået bedrageri af særlig grov beskaf-

105

                                          CONFIDENTIAL

fenhed efter straffelovens § 279, jf. § 286, stk. 2, jf. § 306, ifølge kildeop-
lysninger, hvor kildens identitet er Statsadvokaten for Særlig Økonomisk og
International Kriminalitet bekendt, er indehaver af eller har rådighed over
(som begunstiget, som fuldmagtshaver eller som bemyndiget).

Beslaglæggelserne ønskes som led i efterforskningen mod den pågælden-
de, idet der findes grund til at antage, at genstande eller værdier bør beslag-
læggelse eller kan tjene som bevis, samt til sikring for det offentliges krav på
sagsomkostninger og bødekrav.

Der anmodes om, at ovennævnte banker pålægges tavshedspligt i medfør
af retsplejelovens § 189 med hensyn til viden om sagen.

Det bemærkes, at ovennævnte banker i U.S.A. ikke har haft adgang til at ud-
tale sig, idet rettens afgørelse skal danne grundlag for en international rets-
anmodning om edition og beslaglæggelse, jf. retsplejelovens § 806, stk. 7,
sidste punktum.

Baggrund for anmodningen er følgende:

SKAT (nu Skattestyrelsen) anmeldte d. 24. august 2015, at der var mistan-
ke om bedrageri af særlig grov beskaffenhed for DKK 9,6 mia.

Den 24. august 2016 anmeldte SKAT endvidere, at der yderligere var mis-
tanke om bedrageri af særlig grov beskaffenhed for DKK 3,2 mia., samt for-
søg på bedrageri af særlig grov beskaffenhed for DKK 533 mio.
Mistanken var i begge anmeldelser rettet mod en række personer, reclaim
agents, custodians, selskaber samt forskellige pensionsplaner.
Statsadvokaten for Særlig Økonomisk og International Kriminalitet har efter-
følgende konstateret, at der var mistanke om bedrageri for yderligere DKK
100 mio.
Således var der er tale om bedrageri for DKK 3,3 mia. samt forsøg på DKK
533 mio. i anden anmeldelse.

En række enkeltmandsejede pensionsfonde ved navn 401 K i USA bragte,
ved særdeles organiseret brug af falske dokumenter, SKAT i en vildfarelse
om, at pensionsplanerne ejede aktier i en række danske børsnoterede sel-

STEIN_LHOTE0011918                                                                          CONFIDENTIAL

skaber, på det tidspunkt, hvor de danske børsnoterede selskaber udbetalte udbytte til sine ejere (aktionærerne).

Bedrageriet skete ved, at pensionsplanerne senest på dagen for generalforsamlingen i et dansk børsnoteret selskab købte aktier via en "broker" af én af ni sælgere, som alle var selskaber hjemmehørende i enten British Virgin Islands, Dubai, Belize eller Cayman Islands.

Pensionsplanen finansierede købet ved, på samme dag som penge og aktier skulle afregnes, at udlåne den eksakt samme mængde aktier til en tredjepart der agerede "lender". Selskabet der agerede "lender" var altid samme selskab hjemmehørende på Cayman Islands. Sælgeren af aktierne, der på salgsdagen ikke havde aktier på depot, skaffede disse aktier på afregningsdagen, ved at låne den eksakt samme mængde aktier af lenderen.

Efterfølgende blev samtlige handler og låneaftaler rullet tilbage, hvorved der for ingen af parterne skete hverken kurstab eller en kursgevinst.

Samtlige parter var kunder i North Channel Bank GmbH & Co KG der i samtlige handler agerede som depotbank (Custodian)

North Channel Bank GmbH & Co KG udstedte i forbindelse med aktiehandlerne Dividend Credit Advices, der af Tax Reclaim Agents blev sendt til SKAT på vegne af pensionsplanerne.

Danske børsnoterede selskaber kender ikke nødvendigvis identiteten eller bopælslandet på alle deres aktionærer. Ved udbetaling af udbytte udbetales en del af udbyttet (73%) direkte til aktionærerne via banker, mens de resterende 27% indbetales til SKAT.

Efterforskningen har vist, at der formentlig er gennemført fiktive handler med ikke-eksisterende aktier i danske børsnoterede selskaber omkring skæringsdato for udbetaling af udbytte.

På baggrund af dobbeltbeskatningsoverenskomsten mellem Danmark og USA, har det over for SKAT således fremstået, at en række enkeltmandsejede pensionsplaner i USA har haft ret til, at få refunderet den tilbageholdte udbytteskat (27%), som blev indbetalt af de danske børsnoterede selskaber til SKAT.

STEIN_LHOTE0011919                                                    CONFIDENTIAL

30-805-00-5
08 802 00 5

Det bemærkes i den forbindelse, at pensionsplanerne i USA formentlig ikke
har modtaget et udbyttebeløb (73%) fra de danske børsnoterede selskaber.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets
opfattelse, at handlerne er sket efter forudgående aftale og fælles forståel-
se, på baggrund af fiktive handler med aktier, med det formål at udfærdige
dokumentation, der kunne fremsendes til SKAT, med henblik på, at få udbe-
talt tilbageholdt udbytteskat, som de ikke var berettiget til.

Det er Statsadvokaten for Særlig Økonomisk og International Kriminalitets
opfattelse, at initiativet til oprettelse af North Channel Bank GmbH og Co KG
som depotbank, samt indledning af forretningsforbindelserne med kunderne
udgik fra bankens ejere.

Efterforskningen har vist, at den ene af tre ultimative ejere (Ultimate Benefi-
cial Owners) af North Channel Bank er

Luke Beneville McGee
Født
Statsborger i USA

Efterforskningen har vist, at ovenstående som én af tre personer har været
initiativtager og samtidigt spillet en vigtig rolle i planlægningen og eksekve-
ringen af bedrageriet mod Kongeriget Danmark.

Store pengebeløb på flere mio. USD (p.t. ikke endeligt opgjort), stammende
fra den tilbagesøgte udbytteskat, er tilgået LukeMcGee og dennes selska-
ber.

Statsadvokaten for Særlig Økonomisk og International Kriminalitet håber på
de amerikanske myndigheders velvillige bistand i denne alvorlige sag.


Mads V. Fischer
politiassistent

108

STEIN_LHOTE0011920                                                    CONFIDENTIAL

Harvey – Translation

Files
TEMPSTEIN0475154.pdf

Query
en

Response
Page 1
30-805-00-1

$8-802-00—-+

The Court in Lyngby

Date: 23-04-2020

Case No.: SOK-10177-00037-19

Case Handler: MVF

THE PROSECUTOR FOR SPECIAL

ECONOMIC AND INTERNATIONAL

CRIME

KAMPMANNSGADE 1

1604 COPENHAGEN V

PHONE 72 68 90 00

FAX 45 15 00 16

E-mail: saoek@ankl.dk

www.anklagemyndigheden.dk

STEIN_LHOTE0011910                                                              CONFIDENTIAL

Request for court order for edition and seizure

www.politi.dk

(K168)

It is requested in accordance with section 29, subsection 3, no. 4 of the Administration of Justice Act, that the court session be held behind closed doors, as the public hearing of the case is assumed to decisively hinder the clarification of the case.

Regarding:

Edition and seizure of bank accounts

in

U.S.A

in connection with suspicion of

fraud against

the Kingdom of Denmark

In the case against:

Luke Beneville McGee

Born ███████████

Citizen of the USA

He is suspected of having committed fraud of a particularly serious nature according to section 279 of the Penal Code, cf. section 286, subsection 2, cf. section 306, by

in the period 2013-2015, in association and after prior agreement or common understanding with several physical and legal persons, with the aim of obtaining unjustified gain for himself and others, organized and executed a system in which the accused's accomplice, North Channel Bank GmbH & Co. KG, whose case has been decided

Page 2

30-805-00-2

STEIN_LHOTE0011911

CONFIDENTIAL

98-802-002

Specifically, registered fictitious stock and money movements and issued documents (Dividend Credit Advice) containing false information about the payment of dividends from Danish shares, which the accused or their accomplices in 284 instances on behalf of 27 American "401 K pension plans" used to mislead employees of the Tax Administration (formerly SKAT) into believing that the American "401 K pension plans" had had dividend tax withheld in Denmark and were therefore entitled to a refund, thereby causing the Tax Administration (formerly SKAT) to pay out not less than DKK 1.1 billion and thus suffer a corresponding financial loss.

With reference to the Administration of Justice Act § 806, subsection 2, cf. § 802, subsection 1 and subsection 2, the Public Prosecutor for Special Economic and International Crime presents the case with a view to the court determining by order that the conditions under Danish law are met to seize the following:

1) Accounts with balances up to a total of DKK 1.1 billion in the following financial institutions in the USA:
- TD Bank
  Wilmington, Delaware
  USA
- Santander Bank
  Wilmington, Delaware
  USA
- First Republic Bank
  San Francisco, California
  USA
- JPMorgan Chase Bank
  New York, New York
  USA
- City National Bank
  Los Angeles, California
  USA

As the American citizen, Luke McGee, residing in the USA, who is reasonably suspected of having committed fraud of a particularly serious nature.

Page 3

Conviction under the Penal Code § 279, cf.

§ 286, subsection 2, cf.

§ 306, according to source information, where the source's identity is known to the Public Prosecutor for Special Economic and International Crime, is the holder of or has control over (as beneficiary, as proxy, or as authorized).

The seizures are considered part of the investigation against the accused, as there is reason to believe that objects or values are subject to seizure or can serve as evidence, as well as to secure the public's claim for legal costs and damages.

It is requested that the aforementioned banks be imposed with a duty of confidentiality pursuant to the Administration of Justice Act § 189 regarding knowledge of the case.

It is noted that the aforementioned banks have had the opportunity to express themselves, as the court's decision will form the basis for an international legal request for the production and seizure of documents, cf. the Administration of Justice Act § 806, subsection 7, last sentence.

STEIN_LHOTE0011912                                                                    CONFIDENTIAL

The background for the request is as follows:

On August 24, 2015, SKAT (now the Danish Tax Agency) reported suspicions of particularly serious fraud amounting to DKK 9.6 billion.

On August 24, 2016, SKAT further reported additional suspicions of particularly serious fraud amounting to DKK 3.2 billion, as well as attempted fraud of particularly serious nature amounting to DKK 533 million.

The suspicion in both reports was directed against a number of individuals, reclaim agents, custodians, companies, and various pension plans.

The Public Prosecutor for Special Economic and International Crime subsequently found that there was suspicion of additional fraud amounting to DKK 100 million.

Thus, there was fraud amounting to DKK 3.3 billion and attempted fraud of DKK 533 million in the second report.

A number of individually owned pension funds named 401 K in the USA, through highly organized use of false documents, misled SKAT into believing that the pension plans owned shares in a number of Danish listed companies.

Page 4

30-805-00-4

98-802-00-4

created, at the time when the Danish publicly listed companies paid dividends to their owners (the shareholders).

The fraud occurred by the pension plans, on the day of the general meeting in a Danish publicly listed company, buying shares via a "broker" from one of nine sellers, all of which were companies domiciled in either the British Virgin Islands, Dubai, Belize, or the Cayman Islands.

The pension plan financed the purchase by, on the same day as the money and shares were to be settled, lending the exact same amount of shares to a third party acting as the "lender." The company acting as the "lender" was always the same company domiciled in the Cayman Islands. The seller of the shares, who did not have shares in the depot on the day of the sale, obtained these shares on the settlement day by borrowing the exact same amount of shares from the lender.

Subsequently, all trades and loan agreements were rolled back, so none of the parties incurred either a loss or a gain.

All parties were customers of North Channel Bank GmbH & Co KG, which in all trades acted as the custodian bank.

STEIN_LHOTE0011913

CONFIDENTIAL

North Channel Bank GmbH & Co KG issued Dividend Credit Advices in connection with the share trades, which were sent to SKAT by Tax Reclaim Agents on behalf of the pension plans.

Danish publicly listed companies do not necessarily know the identity or country of residence of all their shareholders. When paying dividends, a portion of the dividend (73%) is paid directly to the shareholders via banks, while the remaining 27% is paid to SKAT.

The investigation has shown that there have likely been fictitious trades with non-existent shares in Danish publicly listed companies around the record date for dividend payments.

Based on the double taxation agreement between Denmark and the USA, it appeared to SKAT that a number of individually owned pension plans in the USA were entitled to have the withheld dividend tax (27%) refunded, which was paid by the Danish publicly listed companies to SKAT.

Page 5

30-805-00-5

8-802-00-5

It is noted in this context that pension plans in the USA likely have not received a dividend amount (73%) from the Danish listed companies.

It is the opinion of the Public Prosecutor for Special Economic and International Crime that the transactions were made based on prior agreement and mutual understanding, on the basis of fictitious stock trades, with the purpose of producing documentation that could be submitted to SKAT (the Danish tax authority) with the aim of obtaining a refund of withheld dividend tax, which they were not entitled to.

It is the opinion of the Public Prosecutor for Special Economic and International Crime that the initiative to establish North Channel Bank GmbH & Co KG as a custodian bank, as well as the initiation of business relationships with the customers, originated from the bank's owners.

The investigation has shown that one of the ultimate beneficial owners of North Channel Bank is

Luke Beneville McGee

Born

Citizen of the USA

The investigation has shown that the above-mentioned individual, as one of three persons, has been an initiator and simultaneously played an important role in the planning and execution of the fraud against the Kingdom of Denmark.

Large sums of money amounting to several million USD (currently not finally calculated), originating from the reclaimed dividend tax, have been transferred to Luke McGee and his companies.

113

                                                                      CONFIDENTIAL

The Public Prosecutor for Special Economic and International Crime hopes for the cooperation of the American authorities in this serious matter.

Mads V. Fischer

Police Assistant

STEIN_LHOTE0011915                                                                 CONFIDENTIAL