UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW STEIN and JEROME LHOTE,<br><br>                          Plaintiffs,<br><br>v.<br><br>SKATTEFORVALTNINGEN,<br><br>                          Defendant. | 23 Civ. 2508 (NRB) |
| SKATTEFORVALTNINGEN,<br><br>                          Counterclaim Plaintiff,<br><br>v.<br><br>MATTHEW STEIN, JEROME LHOTE, and LUKE MCGEE,<br><br>                          Counterclaim Defendants. | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF SKATTEFORVALTNINGEN'S RESPONSES AND OBJECTIONS TO NOMINAL DEFENDANT/COUNTERCLAIM-DEFENDANT LUKE MCGEE'S FIRST SET OF INTERROGATORIES TO SKATTEFORVALTNINGEN**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), Defendant/Counterclaim-Plaintiff Skatteforvaltningen ("SKAT") hereby responds and objects to Nominal Defendant/Counterclaim-Defendant Luke McGee's First Set of Interrogatories dated June 14, 2024 (the "Interrogatories").

The response to any particular Interrogatory is not an admission of the relevance or the admissibility into evidence of such response. No statement contained in these responses shall be deemed to constitute an admission that any statement or characterization in the Interrogatories is



23 Civ. 2508 (NRB)
PLAINTIFFS' EXHIBIT
404

complete or accurate. SKAT reserves the right to supplement or correct these responses and to raise any additional objections deemed necessary and appropriate in light of the results of any further review. SKAT further does not waive the right to object on any ground at any time to a request for further responses to these Interrogatories.

No objection made herein, or lack thereof, shall be deemed a statement by SKAT as to the existence or non-existence of any information. SKAT's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice and are not a waiver of SKAT's right to rely on other facts or documents at trial.

## GENERAL STATEMENTS & OBJECTIONS TO THE INSTRUCTIONS AND DEFINITIONS

In the interests of brevity and clarity, SKAT describes and summarizes certain limitations to its responses and common bases for objections to the Interrogatories.

1.  SKAT objects to the Definitions, Instructions, and Interrogatories to the extent they seek information that is protected from discovery by the attorney-client privilege, the work product doctrine, the common interest privilege, confidentiality orders or agreements, or that are otherwise immune to or protected from disclosure. The inadvertent production of any information which is confidential, privileged, or protected shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such information, the subject matter thereof, or the information contained therein; nor shall such inadvertent production constitute a waiver of SKAT's right to object to the use of the information during this or any other proceeding. (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 1.")

2.      SKAT has no obligation or duty (and will undertake no such obligation or duty) to search for or produce information that is in the possession, custody, or control of any third party. SKAT objects to the Definitions of "SKAT" and "SØIK" as these Definitions include "past . . . officers, directors, affiliates, brokers, agents, representatives, employees, servants, and all persons acting directly or indirectly under their control on its behalf[.]" (emphasis added). (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 2.")

3.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, cumulative, or duplicative, overly broad, unduly burdensome, or oppressive, or to the extent they seek information that is not relevant to the claims or defenses in this action. (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 3.")

4.      SKAT objects to the Interrogatories to the extent they seek information that is already within the Plaintiffs/Counterclaim-Defendants' knowledge, possession and/or control (either collectively or individually), or information that is publicly available or obtainable from some other source that is more convenient, less burdensome, or less expensive. (Throughout these Responses, SKAT refers to the objections contained in this paragraph as "Objection 4.")

5.      SKAT objects to these Interrogatories to the extent they presume factual premises not in evidence or likely to be admitted into evidence, or false or misleading legal premises. (Throughout these Responses, SKAT refers collectively to the objections contained in this paragraph as "Objection 5.")

6.      SKAT objects to the Definitions, Instructions, and Interrogatories to the extent that it has already produced documents containing information responsive to the Interrogatories.

7. SKAT responds to the Definitions, Instructions, and Interrogatories without waiving or intending to waive, but on the contrary, preserving: (a) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; and (b) the right to object on all grounds, at any time, to document requests or other discovery procedures involving or relating to the subject of the Interrogatories to which SKAT has responded herein.

8. SKAT objects to Instruction No. 1 as vague, ambiguous, overbroad, unduly burdensome, seeking information that is not relevant to the claims or defenses in this action, and seeking to expand SKAT's obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules.

9. SKAT objects to Instruction No. 5 on the grounds that the instructions are overly broad, unduly burdensome, and purport to impose obligations on SKAT in excess of those imposed by the Federal Rules of Civil Procedure. SKAT will supplement or correct its response in a timely manner if it learns that the response is incomplete or incorrect in some material respect, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the Court.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1:

> For the period from February 1, 2019, through June 30, 2021, identify all oral communications between SKAT and SØIK concerning any of the terms of the Settlement Agreement, including, but not limited to, the date and time, whether telephonic or in-person, the participants, and the specific elements, aspects, or terms of the Settlement Agreement discussed during such oral communications.

**Response to Interrogatory No. 1**

SKAT incorporates by reference Objections 2 and 3. SKAT objects to the time period identified in Interrogatory No. 1, which period is inconsistent with the Court's ruling that the time period for discovery in this action is "between March 2019 to June 2021 . . . given that this time period meaningfully encompasses the sole claim of breach alleged in plaintiffs' complaint." (ECF 88 at 4.) SKAT will not respond to Interrogatory No. 1 to the extent it seeks information beyond the time period set forth by the Court.

Subject to and without waiving any objections, SKAT states that there were numerous oral communications between SKAT and SØIK during which the Settlement Agreement was discussed, including on June 27, 2019. Due to the passage of time and the repeated nature of these discussions, SKAT's employees do not recall with any specificity the details of such oral communications, such as the date, time, participants or the particular elements of the Settlement Agreement discussed, beyond what was described in the testimony in this action or is reflected in the documents that SKAT has produced in this action.



**INTERROGATORY NO. 3:**

Identify all of the pension plans that are associated with SKAT's claims against Bech Bruun and the extent of SKAT's claims as to each such pension plan.

**Response to Interrogatory No. 3**

SKAT incorporates by reference Objections 1 and 3.

Subject to and without waiving any objections, SKAT responds by stating that SKAT no longer has claims against Bech-Bruun, as all such claims have been fully adjudicated. There were 27 pension plans associated with SKAT's adjudicated claim against Bech-Bruun. The claim was comprised of all refunds made on the basis of fraudulent tax refund applications based on Dividend Credit Advices issued by North Channel Bank. The relevant pension plans and refunds related to North Channel Bank as to each such pension plan are as follows:

| Shareholder (Pension Plan) | Refunds related to North Channel Bank |
|---|---|
| [redacted] | DKK 36,856,998.54 |
| [redacted] | DKK 32,065,537.50 |
| [redacted] | DKK 38,422,853.28 |
| [redacted] | DKK 36,296,241.75 |
| [redacted] | DKK 36,920,121.57 |
| [redacted] | DKK 39,597,182.37 |
| [redacted] | DKK 35,739,019.53 |
| [redacted] | DKK 31,332,960.00 |
| [redacted] | DKK 70,698,247.74 |
| [redacted] | DKK 57,769,899.57 |
| [redacted] | DKK 44,925,452.28 |
| [redacted] | DKK 38,465,681.49 |
| [redacted] | DKK 41,829,781.86 |
| [redacted] | DKK 35,760,218.31 |
| [redacted] | DKK 69,589,607.22 |
| [redacted] | DKK 36,253,851.48 |
| [redacted] | DKK 38,812,552.38 |
| [redacted] | DKK 34,653,815.01 |
| [redacted] | DKK 21,877,020.00 |
| [redacted] | DKK 62,654,526.54 |
| [redacted] | DKK 40,273,040.70 |
| [redacted] | DKK 26,764,695.00 |
| [redacted] | DKK 61,617,095.82 |
| [redacted] | DKK 37,205,117.85 |

| | DKK 62,442,227.16 |
| --- | --- |
| | DKK 27,432,405.00 |
| | DKK 39,519,292.23 |
| | |
| **TOTAL** | **DKK 1,135,775,442.18** |

**INTERROGATORY NO. 4:**

Describe, in detail, the factual basis for the reduction, and the methodology used by SKAT to reduce, its claim against Bech Bruun from DKK 1,135,775,442.18 to DKK 705,821,108.92, as reflected in Exhibit 130.

**Response to Interrogatory No. 4**

SKAT incorporates by reference Objections 1 and 3.

Subject to and without waiving any objections, SKAT responds by stating that the principal claim against Bech-Bruun was reduced by payments received under settlement agreements with other entities or persons that had been involved with the fraudulent tax refund applications based on Dividend Credit Advices issued by North Channel Bank, as reflected in Exhibit 130.

SKAT has received payments under three settlement agreements with entities or persons involved with both fraudulent tax refund applications based on Dividend Credit Advices issued by North Channel Bank and fraudulent tax refund applications unrelated to North Channel Bank. Any payments received under these settlement agreements were apportioned proportionally into a North Channel Bank related amount and an amount not related to North Channel Bank. The principal claim against Bech-Bruun was then reduced by the amount related to North Channel Bank.

For two of these settlement agreements, the amount related to North Channel Bank out of payments in total received under those settlement agreements was calculated by using the following formula:

7

$$\frac{B1}{A1} \times 100 = C1 \rightarrow D1 \times C1 = E1$$

*A1* is defined as all fraudulent tax refunds that the settling parties had been involved with. *B1* is defined as fraudulent tax refunds based on Dividend Credit Advices issued by North Channel bank that the settling parties had been involved with. *C1* is defined as the North Channel Bank fraudulent tax refunds percentage for the settling parties. *D1* is defined as payments in total received under the respective settlement agreements. *E1* is defined as the amount related to North Channel bank out of payments received in total.

SKAT also entered into the Settlement Agreement with the Covered Parties. The Settlement Agreement was based on the premise that the Net Proceeds obtained through the Covered Parties' involvement with fraudulent tax refund applications would be returned to SKAT. Given this premise, the Net Proceeds were used to calculate the amount related to North Channel Bank out of the payments in total received under the Settlement Agreement by using the following formula:

$$\frac{B2}{A2} \times 100 = C2 \rightarrow D2 \times C2 = E2$$

*A2* is defined as the Net Proceeds in total obtained by the Covered Parties through fraudulent tax refund applications. *B2* is defined as the part of Net Proceeds obtained by the Covered Parties through fraudulent tax refund applications based on Dividend Credit Advices issued by North Channel Bank. *C2* is defined as the North Channel Bank fraudulent tax refunds percentage for the Covered Parties. *D2* is defined as payments in total received under the Settlement Agreement. *E2* is defined as the amount related to North Channel bank out of payments received in total.

As such, the principal claim against Bech-Bruun was reduced by DKK 429,954,333.26 in total, from DKK 1,135,775,442.18 to DKK 705,821,108.92.

**INTERROGATORY NO. 5:**

      Identify the source(s), total(s), and date(s) of receipt of any recovery of alleged losses that SKAT has received, other than from the Covered Parties and/or Bech Bruun.

**Response to Interrogatory No. 5**

      SKAT incorporates by reference Objections 1 and 3.

      Subject to and without waiving any objections, SKAT responds by stating that, other than from the Covered Parties and Bech-Bruun, SKAT has received a total of approximately DKK 252 million from parties involved in fraudulent tax applications relating to North Channel Bank, Solo, Lindisfarne and/or Indigo, although significant portions of such recoveries are not attributable to the pension plans that were parties to the Settlement Agreement. SKAT further objects to this interrogatory to the extent it calls for SKAT to provide information about recoveries unrelated to the pension plans covered by the Settlement Agreement, and will not provide such information.

[redacted]

**INTERROGATORY NO. 7:**

Explain, in detail, the factual basis for, and the methodology used, for SKAT's proportional division of custodial fees between Denmark and Belgium, as alleged in paragraph 159 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims, and identify all documents which SKAT contends support using such methodology.

**Response to Interrogatory No. 7**

SKAT incorporates by reference Objections 1, 3, and 4. Subject to and without waiving any objections, SKAT responds by stating that paragraph 159 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims does not contain or refer to a proportional division of custodial fees between Denmark and Belgium. Paragraph 159 instead refers to a proportional sharing of the proceeds following a potential sale of North Channel Bank, which, after an initial payment to SKAT, would be "based on the amount of fraudulent refunds" that SKAT and the Belgian government authorities respectively "paid to the pension plans based on false dividend credit advices issued by North Channel Bank[.]" (ECF 48 ¶ 159.)

**INTERROGATORY NO. 8:**

Explain, in detail, why custodial fees paid with respect to accounts held at North Channel Bank, Indigo Securities Ltd, and/or Lindisfarne Partners that were open after proceeds of the last reclaim applications were paid into such accounts are not "expenses associated with Reclaim Applications for which [SKAT] made payments," as alleged in paragraph 161 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims, and identify all documents which SKAT contends support using such methodology.

**Response to Interrogatory No. 8**

SKAT incorporates by reference Objection 3. Subject to and without waiving any objections, SKAT responds by stating that the initial condition to deduct expenses under Section 2 of the Settlement Agreement is that the expenses must be associated with a Reclaim

10

Application. In addition, such expenses may only be deducted with respect to Reclaim Applications for which SKAT made payments. By definition, fees paid to a Custodian after the receipt of the final reclaim payment made by SKAT to that plan are not and cannot be associated with the Reclaim Applications which led to the payments by SKAT. Even if a plan decided to keep the proceeds from SKAT's payments in a Custodial account after the last payment by SKAT to that plan, any expenses incurred for such Custodial accounts after that date are not associated with the Reclaim Applications themselves. SKAT further notes that any expenses incurred that are associated with reclaim applications submitted by the plans in Summer 2015 but not paid by SKAT are not deductible under Section 2 of the Settlement Agreement.

**INTERROGATORY NO. 9:**

Identify any and all instances in which SKAT requested that any of the Covered Parties agree that the Settlement Agreement could be shared with SØIK, including, if oral, the date and time of any such communications, the participants in any such communications, the manner of such communications, and the substance of any such communications.

**Response to Interrogatory No. 9**

SKAT incorporates by reference Objections 2, 3, and 4. SKAT states that, other than discussions with counsel for the Covered Parties which led to the inclusion in the Settlement Agreement of the last sentence of Section 8(f) of the Settlement Agreement, SKAT is unaware of any requests made to the Covered Parties to share the Settlement Agreement with SØIK.

[redacted]



**INTERROGATORY NO. 12:**

Describe, in detail, the manner in which "SKAT has briefed SØIK on a rolling basis on the settling parties' fulfillment of their obligations under the settlement agreement, including the extent to which they have until now provided information and cooperation," as reflected in STEIN_LHOTE0001467, including the date of any such communications, the participants in any such communications, the manner of such communications, and the substance of any such communications.

**Response to Interrogatory No. 12**

SKAT incorporates by reference Objections 2, 3, and 4. Subject to and without waiving any objections, SKAT refers to the communications described at length by SKAT's witnesses at their depositions, the communications that are referenced in the documents that SKAT has produced in this action, and states at a high level, and without prejudice to any additional record evidence, that SKAT and SØIK personnel regularly communicated concerning the principal terms of the Settlement Agreement, including communications relevant to the terms of Section 8(f) of the Settlement Agreement. This included communications in connection with press releases, which addressed the settling parties' cooperation, responses to SØIK's written inquiries, and follow-up inquiries, including questions focusing on the settling parties' cooperation and ongoing payment obligations and concerning the liquidation of assets pursuant to the Letter Agreement; and there were meetings and communications following execution of the Settlement Agreement, including concerning payments by the settling parties. Due to the passage of time and the repeated nature of these discussions, SKAT's employees do not recall details of such oral communications beyond what was described in the testimony in this action or is reflected in the documents that SKAT has produced in this action.





**INTERROGATORY NO. 15:**

Describe in detail the basis for SKAT's contention that custodial fees incurred on accounts held open after the last reclaim applications were paid are not "expenses associated with Reclaim Applications for which [SKAT] made payments," as alleged in paragraph 161 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims, and identify all documents which SKAT contends support such allegation.

**Response to Interrogatory No. 15**

SKAT incorporates by reference Objection 3. Subject to and without waiving any objections, SKAT responds by stating that the initial condition to deduct expenses under Section 2 of the Settlement Agreement is that the expenses must be associated with a Reclaim Application. In addition, such expenses may only be deducted with respect to Reclaim Applications for which SKAT made payments. By definition, fees paid to a Custodian after the receipt of the final reclaim payment made by SKAT to that plan are not and cannot be associated

with the Reclaim Applications which led to the payments by SKAT. Even if a plan decided to keep the proceeds from SKAT's payments in a Custodial account after the last payment by SKAT to that plan, any expenses incurred for such Custodial accounts after that date are not associated with the Reclaim Applications themselves. SKAT further notes that any expenses incurred that are associated with reclaim applications submitted by the plans in Summer 2015 but not paid by SKAT are not deductible under Section 2 of the Settlement Agreement.

**INTERROGATORY NO. 16:**

> Describe in detail the basis for SKAT's contention that tax advisory services fees are not "expenses associated with Reclaim Applications for which [SKAT] made payments," as alleged in paragraph 162 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims, and identify all documents which SKAT contends support such allegation.

**Response to Interrogatory No. 16**

SKAT incorporates by reference Objection 3. Subject to and without waiving any objections, SKAT responds by stating that paragraph 162 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims does not contend that "tax advisory fees are not 'expenses associated with Reclaim Applications for which [SKAT] made payments.'" That paragraph instead relates to the Covered Parties' incorrect calculation (and consequential over-deduction from Net Proceeds) of purported "tax advisory fees" for the reason stated in paragraph 162.

**INTERROGATORY NO. 17:**

> Describe in detail the basis for SKAT's contention that custody and clearing fees paid to Solo Capital should be included in Net Proceeds, as alleged in paragraph 163 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims, and identify all documents which SKAT contends support such allegation.

16

**Response to Interrogatory No. 17**

SKAT incorporates by reference Objection 3. Subject to and without waiving any objections, SKAT responds by stating that paragraph 163 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims does not contend that "custody and clearing fees paid to Solo Capital should be included in Net Proceeds." That paragraph instead relates to the Covered Parties' deduction from Net Proceeds custody and clearing fees paid to Solo Capital in connection with the Pension Plans' trading in Belgian securities, which is not permitted under the Settlement Agreement as fees incurred by the plans as a result of purported trading in Belgian securities are not "associated with Reclaim Applications."

**INTERROGATORY NO. 18:**

> Describe in detail the basis for SKAT's contention that it was improper for the Covered Parties' Designees to have used the average exchange rate for the relevant year to convert fees paid in other currencies to Danish kroner, rather than the exchange rate for the day the fee was paid, as alleged in paragraph 165 of SKAT's First Amended Answer, Affirmative Defenses, and Counterclaims, and identify all documents which SKAT contends support such allegation.

**Response to Interrogatory No. 18**

SKAT incorporates by reference Objection 3. Subject to and without waiving any objections, SKAT responds by stating that the use of the exchange rate for the day a fee was paid, as reflected in the documentation provided by the Covered Parties pursuant to Section 2(e)(i) of the Settlement Agreement, more accurately calculates the correct amount to deduct from Net Proceeds than applying the average exchange rate for an entire year.

**INTERROGATORY NO. 19:**

> Identify all documents on which SKAT relies to calculate the Net Proceeds, the individuals who prepared those calculations, and the documents supporting those calculations.

**Response to Interrogatory No. 19**

SKAT incorporates by reference Objections 1, 3, and 4. Subject to and without waiving any objections, SKAT responds by referring to the documents produced by the Covered Parties pursuant to Section 2(e)(i) of the Settlement Agreement, and the various spreadsheets SKAT has provided to counsel for the Covered Parties' Designees over time, including SKAT's May 1, 2024 production of documents demonstrating SKAT's True-Up calculations and their methodology, which documents also include citations to documents relied on by SKAT.

Dated: New York, New York
July 15, 2024

        HUGHES HUBBARD & REED LLP

        By: /s/ Marc A. Weinstein
            Marc A. Weinstein
            Neil J. Oxford
            John T. McGoey
        One Battery Park Plaza
        New York, New York 10004-1482
        Telephone: (212) 837-6000
        Fax: (212) 422-4726
        marc.weinstein@hugheshubbard.com
        neil.oxford@hugheshubbard.com
        john.mcgoey@hugheshubbard.com

        *Counsel for Defendant/Counterclaim-Plaintiff Skatteforvaltningen*

**Verification of Gry Ahlefeld-Engel**

I, Gry Ahlefeld-Engel, am a Director of Skattestyrelsen, which is a division of Defendant/Counterclaim-Plaintiff Skatteforvaltningen ("SKAT"). I am the agent of SKAT for the purpose of SKAT's Responses and Objections to Nominal Defendant/Counterclaim-Defendant Luke McGee's First Set of Interrogatories dated June 14, 2024. I have read SKAT's Interrogatory Responses, which are true according to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

15 July, 2024

_____
Gry Ahlefeld-Engel