UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW STEIN and JEROME LHOTE,<br><br>      Plaintiffs,<br><br>      v.<br><br>SKATTEFORVALTNINGEN,<br><br>      Defendant.<br><br>SKATTEFORVALTNINGEN,<br><br>      Counterclaim Plaintiff,<br><br>      v.<br><br>MATTHEW STEIN, JEROME LHOTE, and LUKE MCGEE,<br><br>      Counterclaim Defendants. | 23 Civ. 2508 (NRB) |

**COUNTERCLAIM DEFENDANT'S PRELIMINARY
PROPOSED SUPPLEMENTAL CONCLUSIONS OF LAW**

  In advance of the trial before the Court, currently scheduled to begin on Tuesday, April 29, 2025, Counterclaim Defendant, Luke McGee ("McGee"), respectfully submits this Preliminary Proposed Supplemental Findings of Fact and Conclusions of Law for the Court's reference during trial only to the extent the Court resolves any claim, counterclaim, third-party clam, or crossclaim in this action in favor of Defendant-Counterclaim Plaintiff Skatteforvaltningen ("SKAT").

  Because it is submitted prior to, and without the benefit of having seen all witness statements, exhibits, and any other materials to be submitted on behalf of all other parties in this action, and prior to the elicitation of actual trial testimony, these

1

proposed Supplemental Findings of Fact and Conclusions of Law are limited to the factual and legal issues that McGee intends to assert in the event that the Court resolves any claim, counterclaim, third-party clam, or crossclaim in this action in SKAT's favor.

McGee accordingly respectfully requests that he be permitted to amend or supplement these Preliminary Proposed Supplemental Findings of Fact and Conclusions of Law following the trial considering the actual trial testimony and physical evidence adduced at trial before the Court.  Nothing in herein is intended to be a waiver of any factual or legal argument McGee may make.

## SUPPLEMENTAL CONCLUSIONS OF LAW

### A. The Settlement Agreement's Joint and Several Liability Provision is Unconscionable.

1. McGee contends that, if SKAT prevails on either of its breach of contract claim, he should not be held jointly and severally liable for SKAT's damages along with Stein and Lhote on the grounds that the Settlement and Letter Agreements'[1] joint and several liability provisions are unconscionable.  *See* Pl. Exh. 104 at ¶2(a)–(b); Pl. Exh. 109

2. For the reasons set forth below, the Court concludes that the Settlement and Letter Agreements' Joint and Several Liability Provision is unconscionable as against McGee and should be set aside.

#### 1. Standard Under New York Law.

---

[1] "Settlement Agreement" and "Letter Agreement" refer to the settlement agreement and letter agreement executed between SKAT and Stein, Lhote, McGee, and others on May 28, 2019, as defined in paragraphs 8 and 33 of Stein, Lhote, and McGee's Joint Preliminary Proposed Findings of Fact and Conclusions of Law. *See* ECF No. 152.

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

3. An agreement is unenforceable under New York law when it is unconscionable. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 377, 381 (S.D.N.Y. 2002). An unconscionable agreement is one that "no [person] in [his] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other," where the resulting inequality is "so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense." *Christian v. Christian,* 42 N.Y.2d 63, 71 (1977); *accord In re State v. Avco Fin. Serv. of N.Y.*, 50 N.Y.2d 383, 389 (1980) (unconscionability is aimed at the prevention of oppression and unfair surprise). An agreement will be deemed unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). Accordingly, where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party," the Court will find that such agreement is unconscionable. *Brennan*, 198 F. Supp. 2d at 382 (quoting *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)).

4. In determining whether an agreement or parts thereof are unconscionable, the court must take a "flexible" approach by examining "all the facts and circumstances of a particular case." *Id.* (quotation omitted). Courts may

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

therefore consider not only the circumstances as of the time the agreement was made, but also events which occur after the agreement's execution. *See Industralease Automated & Sci. Equip. Corp. v. R.M.E. Enters., Inc.*, 58 A.D.2d 482, 490 (N.Y. App. Div. 1977).

5. New York law requires an agreement to be both procedurally and substantively unconscionable to be set aside. *Ragone*, 595 F.3d at 121. Procedural unconscionability "concerns the contract formation process and the alleged lack of meaningful choice," while substantive unconscionability "looks to the content of the contract. . ." *Id.* at 121–22.

6. In determining the conscionability of an agreement, "no set weight is to be given any one factor; each case must be decided on its own facts." *State v. Wolowitz*, 96 A.D.2d 47, 68 (N.Y. App. Div. 1983). Generally, "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Id.* There are also "exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Ragone*, 595 F.3d at 122.

### 2. Procedural Unconscionability.

7. The test for procedural unconscionability is "whether, in light of all the facts and circumstances, a party lacked 'a meaningful choice' in deciding whether to

4

sign the contract." *Brennan*, 198 F. Supp. at 382. Factors that courts assess in determining procedural unconscionability include (1) "the size and commercial setting of the transaction," (2) "whether deceptive or high-pressured tactics were employed," (3) "the experience and education of the party claiming unconscionability," and (4) "whether there was disparity in bargaining power." *Gillman*, 73 N.Y.S. at 11. Examples include "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties." *Wolowitz*, 96 A.D.2d at 67. A party's lack of choice in entering an agreement is also relevant to procedural unconscionability. *See id.* at 70.

8. For example, in *Brennan*, the employer (a large, national corporation) and the employee (an individual who lacked other means of support and who had lodged a harassment complaint against a supervisor) entered an employment dispute resolution agreement requiring arbitration. *See Brennan*, 198 F. Supp. 2d at 380. In executing the agreement, the employee was fearful she would lose her job and health insurance. *Id.* at 383. There, the court concluded that the agreement was procedurally unconscionable, in part, based on the "significant disparity in bargaining power that existed between the parties" and the employer's pressure tactics. *See id.*

5

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

9. Additionally, in *Spinelli v. National Football League*, No. 13 Civ. 7398, 2016 WL 3926446 (S.D.N.Y. July 15, 2016), the district court found that a licensing agreement was adequately pled as procedurally unconscionable where the AP had "leverage over the individual photographers," used deceptive or high-pressured tactics as to the photographers' livelihoods, and offered the final agreement on a "take it or leave it" basis, where there was no suitable replacement. *See id.* at *3–4.

10. Considering the particular facts and circumstances of this case—both during the negotiations of the Settlement Agreement and the events that occurred after its execution—the joint and several payment requirement in the Settlement Agreement is procedurally unconscionable, as McGee lacked a meaningful choice in entering the joint and several payment provision.

11. There was a clear disparity in bargaining power between McGee and SKAT. SKAT is the taxing authority of Denmark (i.e., part of the Danish government) that was investigating McGee's role in what it claims to have been fraudulent activity. Luke McGee Witness Statement ("McGee Statement") at ¶29. On the other hand, McGee is a U.S. resident who believed his trading activities were legal and had the overriding goal of resolving any dispute with SKAT prior to litigation and avoiding criminal prosecution by SØIK in Denmark. *Id.* at ¶¶32, 36–38.

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

12. The negotiations leading to the Settlement Agreement demonstrate that McGee's ultimate goal was to have the payment and cooperation obligations in the Settlement Agreement be conditioned on avoiding criminal and civil charges against McGee, as well as to specifically inform SØIK of the Settlement Agreement and his cooperation with SKAT. *Id.* at ¶¶38–44, 90–91.

13. During the negotiation process, SKAT refused to continue settlement discussions that involved obtaining a commitment by SØIK relating to criminal charges, leaving only the provisions in the agreement relating to SKAT sharing information with SØIK. *Id.* at ¶45. SKAT was clearly aware of McGee's desire to avoid criminal prosecution given the earlier negotiations and used its superior bargaining power to leverage its position as to the Settlement Agreement's payment obligations.

14. Because of his goal to mitigate any criminal liability with the Danish authorities, McGee was effectively presented with a "take it or leave it" choice. *Id.* at ¶¶46–48. He could either agree to the joint and several payment requirement after nearly all of the Covered Parties had been released or risk both a civil suit by SKAT and criminal prosecution by SØIK. This drastic inequality in bargaining power between SKAT and McGee rise to the level of procedural unconscionability.

15. McGee lacked a meaningful choice in agreeing to the Settlement Agreement based on the disparity in the parties' bargaining power and SKAT's take-

it-or-leave-it position during settlement negotiations in order to obtain SKAT's Section 8(f) obligations—the only significant promise SKAT made to McGee after the Initial Cash Payment was made. Accordingly, the joint and several payment provision in the Settlement Agreement is procedurally unconscionable.

### 3. <u>Substantive Unconscionability.</u>

16. The inquiry into substantive unconscionability involves an analysis "of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 12. Examples of substantive unconscionability "are virtually limitless but include inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *Wolowitz*, 96 A.D.2d at 67–68.

17. "[G]rossly inadequate consideration given by [a party]" should also warrant a finding of substantive unconscionability. *In re Friedman*, 407 N.Y.S.2d at 1008. Indeed, "[w]here the disparity in the consideration exchanged by the parties is overwhelming, that factor alone 'may be sufficient to sustain (a finding that the contract is unconscionable),' since such disparity 'itself leads inevitably to the felt conclusion that ***knowing advantage was taken of (one party)***.'" *Id.* (emphasis added); *cf. Jones v. Star Credit Corp.*, 59 Misc. 2d 189, 192 (N.Y. Sup. Ct. 1960 ("The very limited financial resources of the purchaser, known to the sellers at the

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

time of the sale, is entitled to weight in the balance. Indeed, the value disparity itself leads inevitably to the felt conclusion that knowing advantage was taken of the plaintiffs.").

18. For example, in *Friedman*, a deceased artist's widow provided artwork to a dealer but did not receive a definite date for payment of their purchase price; rather, she only received "the uncertainty of payment to be made if and when sales were effected." *Id.* The court found this "consideration" for the sale was "grossly inadequate" to render the "agreement" substantively unconscionable. *Id.* at 1009; *see also Industralease*, 58 A.D.2d at 490 (finding agreement unconscionable where the goods subject to an agreement "achieved none of the purposes of the parties," which would be a result so "one-sided" that a "disclaimer in good conscience should not be enforced").

19. Additionally, in *Spinelli*, the district court found that the plaintiffs' allegations demonstrated substantive unconscionability where the deal was "fundamentally unreasonable." *Spinelli*, 2016 WL 3926446, at *5. The plaintiffs alleged that the Associate Press had represented to them that it would charge the NFL for licenses to use the plaintiffs' photographs, but the Associated Press gave the licenses for away for free without informing the plaintiffs. *Id.* The court explained that this was "a key component of the bargain that is 'so grossly unreasonable' as to be unenforceable." *Id.*

20. The Settlement Agreement's joint and several payment provision, as supplemented and amended by the Letter Agreement, is substantively unconscionable for multiple reasons.

21. To begin, Section 2(d) of the Settlement Agreement requires the Covered Parties to pay the Subsequent Cash Payment Amount to SKAT; and the Letter Agreement contemplates the use of "Illiquid Assets" to be liquidated in order to fulfill the Subsequent Cash Payment Amount. Pl. Exh. 109 at ¶3.

22. McGee received *grossly* inadequate consideration from SKAT in executing the Settlement Agreement. McGee Statement at ¶92. While McGee was obligated to make the Additional Cash Payment and to pay any interest or the "True-Up Amount" under the Settlement Agreement (including in amounts greater than he benefited from Danish Reclaim Applications), SKAT's only obligation under the Settlement Agreement after receipt of the Initial Cash Payment was compliance with Section 8(f). Joint Proposed Findings of Fact at ¶¶43, 55. This "disparity in the consideration exchanged by the parties is overwhelming" and leads to the inevitable conclusion that SKAT knowingly took advantage of McGee, emphasized by the already-present and significant disparity in bargaining power that SKAT possessed over McGee. *See In re Friedman*, 407 N.Y.S. at 1008.

23. Moreover, McGee was a young professional who played only a junior role in the dividend arbitrage trading at issue compared to Stein and Lhote. Stein

10

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

and Lhote approached him when he knew little if anything concerning dividend arbitrage trading; and they provided opinion letters attesting to the legality of the strategy.  McGee Statement at ¶23.  Stein and Lhote then invited McGee to join Maple Point, LLC ("Maple Point"), the entity that eventually engaged in the Danish Reclaim Applications.

24. Reflecting his junior role, McGee only received a 17.6 percent ownership interest of Maple Point, with Stein and Lhote owning the rest.  McGee Statement at ¶26.  Though he received minor benefits from Danish Reclaim Applications compared to Stein or Lhote, McGee is ostensibly responsible for 100 percent of the Subsequent Cash Payment Amount and related amounts—a drastically higher amount than his interest in Maple Point and his relative culpability compared to Stein and Lhote.  This is fundamentally unreasonable and warrants a finding that the joint and several payment provision is substantively unconscionable.

25. This Court "cannot divorce entirely the events which occur[ed]" following the Settlement Agreement from the unconscionability analysis.  *See Industralease*, 58 A.D.2d at 490.  Indeed, the events that occurred following the execution of the Settlement Agreement weigh in favor of a finding of substantial unconscionability.

26. First, despite McGee receiving a far lesser share of the monies received from the Danish Reclaim Applications than Stein and Lhote, McGee has paid more

than half of the amount that SKAT has received during Phase II of the Settlement Agreement. McGee Statement at ¶136. In fact, McGee contributed *more than the total amount* he received from *all* of the Danish Reclaim Applications with which he may have been associated, yet faces still greater exposure. *Id.* at ¶138.

27. If the joint and several payment provision is enforced against him, McGee could still be liable to pay SKAT hundreds of millions of Danish Kroner—far beyond any amount he personally received or benefited from in relation to the Reclaim Applications.[2] Enforcing the joint and several payment provision against McGee would accordingly be an unjust result that "shock[s] the conscience" and "confound[s] the judgment of any [person] of common sense," such that the joint and several payment provision should be set aside as unconscionable. *See Christian,* 42 N.Y.2d at 71.

28. The joint and several payment provision is also substantively unconscionable because the parties can no longer rely upon the assets of North Channel Bank to satisfy the Subsequent Cash Payment Amount. The parties had anticipated that the assets of North Channel Bank would be liquidated and generate approximately DKK 322 million to pay the Subsequent Cash Payment Amount.

---

[2] Notably, McGee's genuinely believed that he, Stein, and Lhote would apportion the Subsequent Cash Payment Amount based on how each personally benefitted from the dividend trading and Danish Reclaim Applications. McGee Statement at ¶137.

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

Joint Proposed Findings of Fact at ¶52.  In fact, the parties to the Letter Agreement were expressly concerned over actions that could detrimentally impact the value of the assets described therein, which included the interests in North Channel Bank. *See* Pl. Exh. 109 at ¶2, Annex A.

29.     Before this liquidation could occur to timely satisfy the Settlement Agreement's payment obligations, however, SØIK indicted McGee, Stein, and Lhote.  These indictments severely and negatively impacted the ability to liquidate North Channel Bank for proceeds to use for payment of the Additional Cash Payment.  Joint Proposed Findings of Fact at ¶114; McGee Statement at ¶¶ 148–50.

30.     Moreover, McGee's indictment, which may have been precipitated in part by SKAT's failure to perform its obligations under Section 8(f) of the Settlement Agreement, severely and negatively impacted his financial ability to earn money to make payments under the Settlement Agreement.  Joint Proposed Findings of Fact at ¶119.  For example, McGee lost his position as an officer and director with his company, AdaptHealth, LLC, which resulted in his loss of annual compensation, forfeiture of millions of dollars in AdaptHealth options and stock, and a personal payment of one million dollars to settle a shareholder litigation related to AdaptHealth.  McGee Statement at ¶¶151–55.

31.     SKAT's failure to comply with its obligations in Section 8(f) of the Settlement Agreement—which may have led to SØIK taking action such as indicting

13

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

McGee, Stein, and Lhote—frustrated their ability to pay the sums due under the Settlement Agreement and Letter Agreement. The inability to use the proceeds from the liquidation of North Channel Bank and monies McGee would have earned from AdaptHealth so frustrates the intent behind the execution of the joint and several payment provision, it is fundamentally unreasonable to enforce it against McGee. Under these circumstances, the joint and several payment provision is so "one-sided" that it cannot "in good conscience" be enforced. *See Industralease*, 58 A.D.2d at 490. Accordingly, the Settlement Agreement and Letter Agreement's joint and several payment provision is substantively unconscionable.

### 4. The Subsequent Cash Payment Amount.

32. Because the joint and several payment provision is both procedurally and substantively unconscionable, the provision should be set aside and reformed. *See Jones*, 59 Misc. 2d at 193 (reforming unconscionable contract "by changing the payments called for therein to equal the amount of payment actually so paid by the plaintiffs").

33. Specifically, this Court will restructure the remaining payments owed under the Settlement Agreement on a several and proportional basis reflecting the respective interests of McGee, Stein, and Lhote in Maple Point, accounting for any payments that each of McGee, Stein, and Lhote have already paid to SKAT following the Initial Cash Payment. McGee Statement at ¶¶24, 26–27. In Maple Point, McGee

14

held a 17.6 percent ownership interest, with Stein and Lhote holding the remaining ownership interests. *Id.* at ¶26.

34. For the foregoing reasons, the Settlement Agreement's joint and several liability provision as to the payment obligations is unconscionable and is required to be set aside as set forth herein.

### B. Any Judgment Should be Apportioned.

35. McGee contends that, in the alternative, any judgment against himself, Stein, and Lhote should be apportioned with respect to McGee according to his ownership percentage in Maple Point.

36. Although apportionment of damages is typically applied to joint tortfeasors, where, as here, the facts are sufficiently egregious, equity demands apportionment of liability amongst multiple parties who have contributed to a single harm.

37. As discussed in paragraph 24 above, McGee had a junior and "relatively modest" role in the arbitrage trading at issue. *See United States v. Rahmankulov*, 2025 WL 326495 at *8 (S.D.N.Y. Jan. 28, 2025) ("[D]istrict courts have apportioned liability when the defendant had a 'relatively modest role' [in the relevant conduct].").

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

38. In this case, McGee's ownership percentage in Maple Point presents a "reasonable basis" for calculating his contribution to the harm. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

39. It is thus within the interest of fairness and equity to apportion liability as to McGee that is proportional to his 17.6 percent ownership interest in Maple Point. McGee Statement at ¶26.

Dated: April 7, 2025                                Respectfully submitted,

By: */s/ Daniel S. Newman*
  Daniel S. Newman
  SDNY Bar Code: DN0959
  dan.newman@nelsonmullins.com
  Justin B. Kaplan
  justin.kaplan@nelsonmullins.com
  One Biscayne Tower, 21st Floor
  2 South Biscayne Boulevard
  Miami, Florida 33131
  Telephone: (305) 373-9400

  *Attorneys for Counterclaim Defendant Luke McGee*