# Exhibit 505

# Report on Danish Criminal Law
## of
## Per Justesen

---

**September 6, 2024**

# Contents

A.   INTRODUCTION .......................................................................................... 3

   **B.   My Experience** ................................................................................... 3

   **C.   The Issues Raised** ............................................................................. 4

SECTION I – The stages of a criminal investigation through indictment, and the prosecutor's obligation to present mitigating evidence to the court after indictment.... 5

   **i.   The prosecutor's obligation to present mitigating circumstances to the court** ................................................................................................ 9

SECTION II: Do the Police have discretion to discontinue the investigation of a person who has not been preliminarily charged? ............................................................. 10

SECTION III: Does the Prosecution Service have discretion not to preliminarily charge or indict a person who has cooperated and paid restitution? ................................. 11

   **i.   Discontinuation of preliminary charges under Section 721** ............... 12

   **ii.   Discontinuation of an indictment under Section 722** ......................... 14

   **iii.   The Prosecution Service's email of December 21, 2020** ..................... 19

SECTION IV: Plea Bargaining in Denmark ............................................................ 19

Ret&Råd
ADVOKATER

**A. INTRODUCTION**

1.          I have been asked by the Customs and Tax Administration of The Kingdom of Denmark (Skatteforvaltningen), referred to below as "SKAT", to provide this report on certain aspects of Danish criminal law and procedure. I am being compensated by SKAT for my work on an hourly basis, without regard to the contents of this report or the outcome of any litigation that relates to the issues discussed in this report.

2.          I list in the Appendix the documents I considered in forming the opinions I express in this report. I have not authored any publications in the last ten years, and I have never previously testified as an expert either at trial or deposition.

**B.     My Experience**

3.          I graduated as a lawyer from the University of Copenhagen in 1996. After a year as an assistant attorney, I joined the Public Prosecution Service in 1997, and served as a prosecutor for 22 years.

- In April 2006, I was appointed as an Assistant Deputy State Prosecutor at the Prosecutor's Office for Special Economic Crime (then known as SØIK and now known as NSK).
- In October 2008, I was appointed acting Deputy State Prosecutor (*vic-estatsadvokat*) at SØIK.
- In January 2011, I was appointed the acting head of the Economic Crime Unit at the Copenhagen Police.
- In July 2011, I was appointed Deputy State Prosecutor at SØIK.
- In January 2013, I was appointed Head of Advocacy at the Copenhagen Police, where I was head of the Economic Crime Advocacy Unit.
- In January 2015, I was appointed head of the Advocacy Unit for Quality and Knowledge.
- In 2018 and 2019, I was seconded to SØIK to serve as prosecutor for an eco-nomic crime case unrelated to the dividend refund matter.

4.          As a prosecutor, I have handled very large financial crime cases.

5.          Since 2019, I have operated as an independent defense attorney handling mostly criminal cases, and I have the right to appear before the Supreme Court.

6.          Since 2002, I have taught administrative law at the University of Copen-hagen. From 2015, I have taught criminal law at the University of Copenhagen, and I have also taught at the Prosecution Service's internal courses on, among other things,

Ret&Råd
**A D V O K A T E R**

administrative law and the handling of major criminal cases. Since 2017, I have taught tax criminal law in the Master in Tax program at Copenhagen Business School.

### C.    The Issues Raised

7.         SKAT has asked me to provide this report on the following aspects of Danish criminal law and procedure:

1. The stages of criminal investigations, including preliminary charges and indictments.
2. If, in circumstances where the police believe they have sufficient evidence that a person committed a criminal offense, they have discretion to discontinue their investigation before preliminary charges are brought.
3. If, in circumstances where the public prosecutor believes it has sufficient evidence to indict a person for a serious economic crime, the prosecutor has discretion to not charge or indict the person based on the person's efforts to make restitution to the victim or to otherwise cooperate with the victim's efforts to obtain restitution from others.
4. Whether the efforts of a person under investigation to make restitution to a victim or to cooperate with the victim's efforts to obtain restitution from others are considered at any point in the criminal process.
5. Whether the Danish criminal system permits the type of plea bargaining that exists in the United States.

8.         Section I below explains the stages of criminal investigations through indictment, and describes the indictment brought in the case against Matthew Stein, Jerôme Lhôte and Luke McGee.  It also describes the prosecution's obligation to present mitigating evidence to the court after indictment.

9.         Section II discusses whether the police have discretion to discontinue the investigation of a person who has not yet been preliminarily charged.

10.         Section III discusses whether a prosecutor has discretion to drop charges against a person who has cooperated and paid restitution, the limited circumstances under which a prosecutor may do so, none of which are applicable to this case, and the point in a criminal case at which the cooperation of an accused can be considered.

11.         Section IV discusses the concept of plea bargaining in Denmark.

**SECTION I – The stages of a criminal investigation through indictment, and the prosecutor's obligation to present mitigating evidence to the court after indictment**

12.         According to section 742 of the Danish Administration of Justice Act, it is the police who investigate criminal offenses. The provision reads as follows:

> "Section 742. Reports of criminal offenses shall be submitted to the police.
>
> (2). The police shall initiate an investigation upon receiving a report or on their own initiative where there is reasonable suspicion that a criminal offense has been committed which is subject to prosecution by the public authorities."[1]

13.         Investigations are conducted in order to determine whether there is a basis for imposing criminal liability, cf. section 743 of the Danish Administration of Justice Act:

> "Section 743. The purpose of the investigation is to determine whether the conditions for imposing of criminal liability or other criminal penalty are present and to obtain information for deciding the matter and preparing for the proceedings before the court."

14.         A criminal investigation must thus determine whether there are grounds for criminal liability and provide the material necessary to bring the case to court.

15.         Under Danish criminal procedure, there are three different status levels for a person under investigation: (i) suspect (*mistænkt*), (ii) preliminarily charged (*sigtet*), and (iii) accused (*tiltalt*).

16.         Suspicion of a criminal offense means that there is a greater or lesser presumption that the person has committed a punishable offense. The person in question will often not be aware that he/she is a "suspect" until preliminary charges are initiated.

17.         The next stage of a criminal investigation is the "preliminary charge". Whether a person is preliminarily charged depends on the strength of suspicion, which can theoretically be described by the existence of circumstances that may indicate their guilt.

---

[1] In Denmark, the first subsection of a statute does not show subsection number "(1)". The numbering of the subsections only starts with subsection "(2)". However, subsequent discussion of the first paragraph of the statute will refer to that as "subsection (1)", as reflected later in this report.



18.     The decision to initiate preliminary charges is made by the police, but in larger cases, it often occurs in cooperation with the Prosecution Service.

19.     In Gorm Toftegaard Nielsen[2], The Course of the Criminal Case *(Straffesagens gang)*, 2020, 7th edition, the preliminary charge is described on page 44 (Appendix 1):

> "A person suspected of having committed a crime needs certain protection against providing the police with self-incriminating information and needs the assistance of a defense counsel. The suspicion against the person must have a certain strength to trigger this protection - in law, such protective suspicion is described by the term 'preliminary charge'. It is very difficult to describe when a suspicion is so strong that the person is preliminarily charged.  It is something as immeasurable as degrees of suspicion. Gammeltoft-Hansen II p. 13 states that in order to bring preliminary charges, there must be "circumstances, clues, etc. which on an objective basis and reasonably may indicate his possible guilt".

20.     The difference between being a suspect and being preliminarily charged is that a person who has been preliminarily charged has the right to retain a defense attorney, cf. section 730(1)of the Administration of Justice Act (*Retsplejeloven*), which reads as follows:

> "A person who is preliminarily charged with a crime is entitled to retain a defense attorney to assist the person in accordance with the detailed rules provided below."

21.     Preliminary charges are initiated by informing the person, either in writing or orally, about the content of the preliminary charges, and the preliminary charges will be recorded in the Central Criminal Register.  A preliminary charge is not a document filed in a court.

22.     In this case, I have been presented with documents showing that Matthew Stein was preliminarily charged on May 13, 2020, Jerôme Lhôte was preliminarily charged on May 21, 2020, and Luke McGee was preliminarily charged on June 11, 2020. *See* Stein_Lhote 0009378, 0009374, and 0008987, attached as Appendices 2-4.

---

[2] Gorm Toftegaard Nielsen (b. 1947) is a distinguished Danish jurist and former professor of criminal law and criminal procedure at Aarhus University from 1989-2016. With a career spanning various legal roles, including assistant police prosecutor, and acting judge, he has authored influential works like "The Course of the Criminal Case" ("Straffesagens gang"). He is frequently consulted by the Danish Parliament for his expertise. He holds a licentiate.jur. degree (PhD) and was awarded the Anders Sandøe Ørsted Silver Medal in 2016 for his contributions to the field.

Ret&Råd
ADVOKATER

23.        After a person has been preliminarily charged, it is the Prosecution Service that decides whether an indictment should be brought.  Section 719, subsection 1 of the Danish Administration of Justice Act, states:

> "Public prosecution is the responsibility of the Chief of Police, unless otherwise provided by this Act or regulations issued pursuant to this Act."[3]

24.        If the Prosecution Service believes that it can provide the evidence necessary for conviction, an indictment is brought, which is done by filing an indictment with the court.  Section 835, subsection 1 of the Administration of Justice Act, reads as follows:

> "The Prosecution Service shall submit the indictment to the court. Upon submission, the criminal case is initiated in court."

25.        When an indictment is filed with the court, the person is referred to as an "accused".

26.        On the Prosecution Service's website, it is briefly described as follows (Appendix 5):

> "Once the police have completed the investigation, the Prosecution Service decides what happens next.

> A victim in a criminal case cannot decide whether to take you to court. That is the decision of the Prosecution Service.

> The Prosecution Service indicts you if they believe there is enough evidence to convict you. Indictment means that the case is sent to court with an indictment

---

[3] Under the current version of Section 110a, Subsection 2, of the Administration of Justice Act, SØIK (now NSK), the prosecuting service in Denmark, is headed by a Chief of Police:

> "The National Unit for Special Crime (*NSK*) is headed by a Chief of Police, who is responsible for police operations in the police district."

The Chief of Police is a prosecuting authority in Denmark, under Section 95 of the Administration of Justice Act:

> "The public prosecutors are the Director of Public Prosecutions (*Rigsadvokaten*), the district attorneys (*statsadvokaterne*), the Chiefs of Police (*politidirektørerne*), and the persons employed to assist them in the legal handling of criminal cases."

Ret&Råd
ADVOKATER

describing the criminal offense. You are then no longer preliminarily charged but indicted. You will receive a copy of the indictment."

27.        Only the Prosecution Service can decide whether to indict a person, and they will indict if they believe there is enough evidence to convict.

28.        The overall role of the Prosecution Service in criminal cases is briefly described in section 96 of the Administration of Justice Act, which reads as follows:

"Section 96. The task of public prosecutors is to prosecute crimes under the provisions of this Act in conjunction with the police.
(2). The public prosecutors shall advance every case with the speed that the nature of the case allows, thereby ensuring not only that the guilty are brought to justice but also that the innocent are not prosecuted."

29.        Section 96 (1) of the Administration of Justice Act imposes a duty on the Prosecution Service to file an indictment if the conditions for a conviction are met.

30.        I refer to Hans Gammeltoft-Hansen, Criminal Justice I (*Strafferetspleje I*) (2nd edition), page 181 (Appendix 6):

"In its assessment of whether to abandon prosecution, the Prosecution Service must take into account the principles set forth in section 96. It follows that it is the duty of the Prosecution Service to pursue the crimes ex officio and with the necessary promptness".

31.        The Prosecution Service's decision to prosecute is thus determined solely on whether the prosecution believes it has sufficient evidence to obtain a conviction. As discussed more below, factors such as the preliminarily charged person's payment of compensation or the preliminarily charged person's assistance in the investigation are not relevant factors for the Prosecution Service to consider in deciding whether to indict. It is only relevant to the sentencing if, after a person is indicted, the person is convicted by the court.

32.        In this case, I have reviewed an indictment dated April 13, 2021, in which Matthew Stein, Jerôme Lhôte and Luke McGee are accused of violating section 279, cf. section 286, subsection 2 of the Danish Criminal Code (*Straffeloven*).

33.        The crime in the indictment is called fraud of a particularly serious nature. The provisions referred to in the indictment read:



"Section 279. A person is guilty of fraud if, by wrongfully creating, confirming or exploiting a mistake to obtain an unlawful gain for himself or others, he induces another person to perform or fail to perform an act and thereby inflicts a property loss on such other person or someone to whom the performance or failure becomes essential."

"Section 286(2). The sentence can increase to imprisonment for a term not exceeding eight years if any of the offences referred to in sections 278-280 and 283 are of a particularly aggravating nature, especially because of the method used, because the offence was committed jointly by several persons or due to the scope of the gain made or intended, or when several offences have been committed."

34.         The indictment also states that section 88, subsection 1, second sentence of the Danish Criminal Code is to be applied, which states:

"In highly aggravating circumstances, the penalty can exceed the most severe penalty prescribed for any of the offenses by up to half."

35.         The counts in the indictment of April 13, 2021, are brought under the most serious provisions of the Danish Criminal Code on economic crime.  As charged, the accused face up to 12 years in prison if convicted. That is the highest possible sentence for a fraud offense in Denmark.

### i.   The prosecutor's obligation to present mitigating circumstances to the court

36.         Section 96(2) of the Administration of Justice Act is an expression of the so-called principle of objectivity, according to which the Prosecution Service is obligated to take into account any circumstances that indicate the innocence of a suspect or the preliminarily charged.

37.         The same principle of objectivity applies to the prosecutor's presentation of evidence to the court after an indictment has been filed.  Reference is made to Hans Gammeltoft-Hansen[4], Criminal Justice I (*Strafferetspleje I*) (2nd edition), page 67 (Appendix 7):

---

[4] Hans Gammeltoft-Hansen (b. 1944) is a renowned Danish jurist with extensive expertise in criminal procedure, immigration law, administrative law, and church law. He served as a professor of jurisprudence at the University of Copenhagen from 1977 and was the Parliamentary Ombudsman from 1987 to 2012. His tenure included handling notable cases like the Tamil Case and the Nørrebro Case, establishing him as a highly qualified reference in legal matters.



"The effect of the application of the principle of objectivity is not only evident in the in-court production of evidence. The out-of-court activities of the Prosecution Service and the police must also be aimed at uncovering and presenting the objective truth."

38.        It is thus the Prosecution Service's task to ensure that all information and evidence that may be of importance to the court's decision is collected and presented to the court.

39.        Under this principle, it is also the prosecutor's duty to collect and present any mitigating circumstances to the court for purposes of sentencing, such as the fact that the accused has made full or partial compensation to the victim, or assisted the victim in its efforts to obtain compensation from other perpetrators of the crime.

40.        All information and evidence, including evidence of mitigating circumstances for sentencing purposes, must be presented to the court before the evidence is closed.  Section 877 of the Administration of Justice Act, states:

"When the evidence has been presented, the prosecutor, followed by the defense counsel and the accused shall have the opportunity to speak about the results of the evidence and about the legal issues in the case (the closing arguments). Once the closing arguments are concluded, the case is set down for judgment."

41.        All criminal cases about economic crime are decided by the court. There are no jury trials.[5]

**SECTION II: Do the Police have discretion to discontinue the investigation of a person who has not been preliminarily charged?**

42.        Section 749 of the Administration of Justice Act governs when the police can reject or discontinue the investigation of a person who has not yet been preliminarily charged:

---

[5] See Section 686, Subsection 5, No. 1, of the Administration of Justice Act, which reads as follows:

"Juries do not participate in
1) criminal cases concerning violations of Sections 172, 173, 191, 191a, 286, 289, 290 or 290a, Subsection 2, of the Danish Criminal Code, unless the case involves other offenses which, according to Subsection 4, must be decided with the participation of juries."

Ret&Råd
ADVOKATER

"Section 749. The police shall reject a report if there is no basis for initiating an investigation.

Subsection 2. If there is no basis for continuing an initiated investigation, the decision to discontinue the investigation may be made by the police, provided that no preliminary charges have been brought. If preliminary charges have been brought, the provisions of sections 721 and 722 shall apply."

43.          I can refer to Ib Henricson, Police Law (*Politiret*), 7th edition, 2022, page 153 f (Appendix 8):

"On the other hand, whether a crime has been committed is primarily a matter of police discretion, and a report may therefore be rejected immediately or later if there is no reasonable suspicion that a publicly prosecuted offense has been committed. With this exception, the police are subject to the so-called principle of legality, i.e. a duty to investigate the matter under the given circumstances."

44.          It is clear that the only discretion the police have to discontinue an investigation is if there is no reasonable suspicion that a criminal offense has been committed. Payment of compensation or cooperation will thus in no way affect the police's obligation to pursue an investigation and preliminarily charge a suspect.

**SECTION III: Does the Prosecution Service have discretion not to preliminarily charge or indict a person who has cooperated and paid restitution?**

45.          I have been asked by SKAT whether, in circumstances where the Prosecution Service believes it has sufficient suspicion to preliminarily charge a person with a serious economic crime or sufficient evidence to indict a person, the Prosecution Service has the discretion not to preliminarily charge or indict based on the person's efforts to provide restitution to the victim or to cooperate with the victim's efforts to obtain restitution from others.  The answer is no, the Prosecution Service does not have such discretion.  Any efforts by the person to provide restitution or to cooperate can only be considered by the Court as mitigating factors in determining an accused's sentence after conviction.  Danish prosecutors must follow what is referred to as the principle of opportunity, whereby there are limited exceptions to the general rule that, when the conditions for conviction are present, the Prosecution Service must preliminarily charge, and file and pursue an indictment.  The circumstances under which these limited exceptions might apply are specifically set forth in the Danish Administration of Justice Act, and none of the limited exceptions apply here.

46.          As described below, section 721 of the Act addresses the discontinuation of preliminary charges, and section 722 addresses the discontinuation of an indictment.

Ret&Råd
A D V O K A T E R

#### i. Discontinuation of preliminary charges under Section 721

47.       Section 721 of the Danish Administration of Justice Act sets forth the specific and limited circumstances under which a prosecutor can decide to drop a preliminary charge, none of which circumstances exist in the case of Stein, Lhôte, and McGee.

48.       The Danish Administration of Justice Act, section 721, Subsections 1-4 states:

> "Section 721. Prosecution in a matter may be wholly or partially abandoned in cases where:
>     1. The preliminary charge has proven to be unfounded.
>     2. Further pursuit of the matter is not expected to result in the preliminarily charged person being found guilty.
>     3. The Danish Criminal Code sections 10b or 89, would be applicable if the preliminarily charged person was found guilty where it is assessed that no or only an insignificant penalty would be imposed, and that conviction would not otherwise be of significant importance.
>     4. The pursuit of the case would involve difficulties, costs or processing times that are not proportionate to the importance of the case and the expected penalty."

49.       The first two permitted reasons to drop a preliminary charge under section 721 are based on the merits of the case itself – *i.e.,* whether the charge is unfounded or the prosecutor does not believe that the person will be convicted of the offense. It is clear that the cooperation of a charged person is not a permitted factor for dropping a preliminary charge under those two subsections.

50.       Subsection (3) of Section 721 also does not apply here. That subsection refers to sections 10b and 89 of the Danish Criminal Code. Section 10b concerns individuals who have been punished abroad for the same act. I have been informed by SKAT's counsel that Stein, Lhôte, and McGee have not been punished outside of Denmark for the acts for which they are criminally charged in Denmark. Section 89 of the Danish Criminal Code deals with individuals who have been convicted and punished for a different criminal offense in Denmark and, if the new offense had been included in the original judgment, would not have received a more significant sentence.

51.       The text of subsection (4) is the same exact wording that appears in Section 722(1)(5), which Section concerns indictments. The scope of Section 722(1)(5) is

Ret&Råd
ADVOKATER

described in report no. 1066/1986 on combating financial crime[6] (*betænkning nr. 1066/1986 om bekæmpelse af økonomisk kriminalitet*).   The report states on page 189 among other things (appendix 9):

> "The Committee therefore proposes that a new provision be added to section 723 of the Administration of Justice Act, according to which the prosecuting authority may wholly or partially abandon or waive an indictment if the pursuit of the case would result in difficulties, costs or processing times that are not proportionate to the importance of the case and the expected penalty."

52.        The section 723 proposed in the report was subsequently inserted in the Administration of Justice Act as section 721(1)(4) and section 722(1)(5).

53.        Page 191 of report no. 1066/1986 continues:

> "Although the proposed provision formally provides the legal basis for dropping the entire indictment, the typical situation in practice will be that the abandonment of the indictment or the waiver under the new provision does not cover the entire case, but only some of several matters in a large set of related cases or part of a matter."

54.        And page 192:

> "Of course, it is not the intention of the proposal that cases can be pruned to such an extent that an expected multi-year prison sentence is reduced to a fine. On the other hand, it will not be excluded to reduce a case, even if this means that the expected sentence is reduced from, for example, 4 years in prison to 1-2 years in prison."

55.        As can be seen, the prosecutor has the option of dropping the prosecution based on resource considerations, but even then a balance must also be made in relation to the importance of the case and the expected punishment.

56.        The criminal charges in the Danish dividend cases are of the utmost importance to Denmark, and the expected punishments in such cases are significant.   For example, to demonstrate the significance of the cases, I refer to the Ministry of Justice's press release of December 6, 2023 (Appendix 10), where Minister of Justice Peter Hummelgaard, among other things, states:

---

[6] Report no. 1066/1986 was written by a committee appointed by the Minister of Justice. The committee was tasked with considering regulations for intensifying efforts against economic crime.

> "The dividend case is an important case for Denmark, and it is one of the largest and most serious criminal cases of fraud. It is our treasury, our welfare society and our trusting community that are at stake."

57.        With respect to the expected punishment, I refer to the two cases related to the dividend refund scheme in which defendants were indicted and have been convicted and sentenced.  The two cases were brought against Guenther Klar and Anthony Mark Patterson. Each was indicted with similar crimes and under the same provisions as in the indictment against Stein, Lhôte and McGee. Guenther Klar was convicted after trial in the Court in Glostrup on February 2, 2024, and sentenced to 6 years in prison. Anthony Mark Patterson pled guilty in the Court in Glostrup on March 1, 2024, and was sentenced to 8 years in prison. The sentence against Anthony Mark Patterson is, to my knowledge, the longest sentence for economic crime handed down in Denmark's history.

58.        In my opinion, the investigation and eventual charges against Stein, Lhôte and McGee could not have been dropped under subsection (4) because there are not resource constraints in pursuing an economic crime of this magnitude and for which the Danish government was the victim, the case is too important to the country to be dropped, and the potential penalties are significant.

### ii.      Discontinuation of an indictment under Section 722

59.        The rules for the discontinuation of prosecution of an indicted person are similar to those under section 721.  Other than minor cases, the only relevant basis on which the Prosecution Service may discontinue, in whole or in part, a prosecution once an indictment has been brought is based on the same considerations discussed under Section 721(1)(4).

60.        Section 722 of the Danish Administration of Justice Act provides for the possibility of dropping the indictment in cases where the evidentiary and legal conditions for a conviction must be assumed to be present.

61.        The provision on dismissal of indictment is found in section 722, of the Danish Administration of Justice Act, which states:

> "(1) Indictment in a matter may be wholly or partially dropped in cases where:
> The alleged offence cannot result in a penalty higher than a fine according to the law, and the offence is of minor penal significance.

Ret&Råd
A D V O K A T E R

2. It is stipulated as a condition under section 723(1), that the preliminarily charged person is subject to measures pursuant to section 32 and Part 5 of the Child Act.

3. The preliminarily charged person was under 18 years old at the time of the offense, and conditions are stipulated under section 723(1).

4. The Danish Criminal Code section 10b or section 89, is applicable, where it is assessed that no or only an insignificant penalty would be imposed, and that conviction would not otherwise be of significant importance.

5. The pursuit of the matter would involve difficulties, costs or processing times that are not proportionate to the importance of the matter and the expected penalty.

6. The legislation contains specific provisions allowing the waiver of indictment.

7. This follows from regulations stipulated by the Minister of Justice or the Director of Public Prosecutions.

(2) In other cases, indictment may only be waived if there are particularly mitigating circumstances or other special conditions, and prosecution is not deemed necessary for reasons of public interest.

(3) The Minister of Justice or the person authorized by the Minister of Justice shall set detailed rules on the competency to waive indictments."

62.        It is clear on its face that most of these provisions do not apply to the current case.

    a.  Subsection (1) does not apply as the potential penalties are much more severe than a fine and the offense is not of minor penal significance.  It should also be noted that for such minor offenses, the prosecution can consider whether the accused has paid compensation to a victim in assessing whether to drop the indictment.  However, in this context, "dropping" the indictment means that the prosecutor deems the accused guilty of the offense but does not pursue the indictment in court and therefore the court does not impose a sentence. The accused, however, has a conviction which is recorded in the Central Criminal Register, and as a result the offender can appeal the prosecutor's decision.

    b.  Subsection (2) does not apply because the provision concerns initiatives for children.

    c.  Subsection (3) does not apply because the defendants were older than 18 at the time of the offense.

    d.  Subsection (4) does not apply for the same reasons Section 721(3) does not apply, as described in paragraph 51 above.

Ret&Råd
A D V O K A T E R

    e.  As noted earlier, section 722(1)(5) is worded in the same way as section 721(1)(4) of the Administration of Justice Act, addressed in paragraphs 51-54 above.

    f.  Subsection (6) does not apply because the statute under which the defendants were indicted does not contain specific provisions permitting indictment to be dropped.

    g.  Finally, reference can be made to section 722, subsection 1, no. 7 of the Administration of Justice Act, according to which indictment may be dropped if it follows from provisions laid down by the Minister of Justice or the Director of Public Prosecutions.  Pursuant to the provision, the Director of Public Prosecutions has issued Executive Order no. 792 of June 18, 2018, on the right of chiefs of police and public prosecutors to drop indictment.  The Executive Order (Appendix 11) covers non-applicable cases such as cases of minor criminality and cases committed by persons who are mentally unbalanced, and thus does not apply to the indictment of April 13, 2021.

63.      The exception identified in Section 722 (2) also does not apply to this case.  First, the provision incorporates the principle of objectivity by which the Prosecution Service is obligated to bring an indictment if there is a legal basis for it unless the prosecution is not required in the public interest.

64.      Second, the scope of Section 722 (2) has been described as follows in The Commentary on the Administration of Justice Act (*Kommenteret Retsplejelov*), 11th edition, Volume 4, 2024, page 64 (Appendix 12)[7]:

> "Waiver of indictment pursuant to subsection (2) falls into different categories. Among the most important are the following:
>
> – "Technical" waiver of indictments, where the preliminarily charged person is already subject to the measure – for example, placement in a psychiatric hospital – that would likely be the outcome if indictment were brought.
>
> – Cases against foreigners where the preliminarily charged person has left the country, making prosecution impossible or at least so difficult that the costs and efforts of pursuing it would not be proportionate to the significance of the matter.

---

[7] Volume 4 of the Commentary on the Administration of Justice Act (*Kommenteret Retsplejelov*) is authored by Anne Louise Bormann, Jens-Christian Bülow, Jesper Hjortenberg, Mette Lyster Knudsen, Jens Røn, og Thomas Rørdam, who are all highly experienced and recognized within this field. They have experience as a Supreme Court Judge, State Prosecutor, High Court Judge, President of the Supreme Court and High Court.

Ret&Råd
ADVOKATER

– Traffic matters where the preliminarily charged person causes the death or serious bodily harm of a close relative or possibly inflicts serious injury on him/herself.

– Matters where the mental state of the preliminarily charged person is deviant, but the nature of the alleged crime does not require special measures."

65.     In the case against Matthew Stein, Jerôme Lhôte and Luke McGee, the indictment of April 13, 2021, charges have been brought under the most serious provisions of the Danish Criminal Code on economic crime.  As a result, it is clear that the case is not covered by the provision in section 722(2) of the Danish Administration of Justice Act.

66.     This means that the Prosecution Service is obligated to bring an indictment in the case, even though the defendants have paid restitution and assisted with the investigation.

67.     In this regard, reference can also be made to The Criminal Procedure (*Straffeprocessen*) by Michael Kistrup, Jakob Lund Poulsen, Thomas Rørdam, and Jens Røn[8], 4th edition, 2023, page 129 (Appendix 13).

> "The principle of objectivity entails, as one of its elements, that the Prosecution Service cannot, as a rule, refrain from taking steps to prosecute persons whom the Prosecution Service believes are guilty of a criminal offense. In these cases, the person must normally either be indicted or a waiver of indictment pursuant to Section 722 must be issued. Thus, there is no general rule to do nothing in response to a detected crime, but Section 721(4), paragraph 4, provides for the possibility of abandoning prosecution for resource-related reasons, even if there is a presumption of guilt."

68.     And on page 136:

> "If the Prosecution Service's considerations lead to the conclusion that a criminal offense has been committed, and that a conviction can be obtained against the

---

[8] Chapter 4 in The Criminal Procedure (*Straffeprocessen*) is authored by Jens Røn, who is a High Court Judge and the Chief Justice at the Western High Court. Jens Røn has previously worked for 8 years as a state prosecutor at the Office of the Director of Public Prosecutions, and prior to that, he worked in the Ministry of Justice for nearly ten years. For six of those years, Røn held a position as Head of Office.

Ret&Råd
ADVOKATER

perpetrator, the perpetrator must be indicted, or, in special circumstances, a waiver of indictment must be issued."

69.        Thus, the Prosecution Service cannot refrain from issuing and fully pursuing an indictment in a case where it believes there is a basis to preliminarily charge or indict a person, unless the conditions of Section 721 or Section 722 of the Administration of Justice Act are met.

70.        In addition to the source materials supporting this opinion, I also draw from my personal experience.  As stated in the introduction to this Report, I worked in the Prosecution Service for 22 years, including as the Director of Public Prosecutions and SØIK (now NSK), and have since worked as a defense attorney for five years.

71.        In connection with my work in the Prosecution Service, at no time did I encounter a case where the Prosecution Service believed it had sufficient evidence to indict and convict a person but chose not to indict that person because the person had made partial or full restitution to the victim or had cooperated with the victim's efforts to obtain restitution from others, or cooperated with the police or prosecutor's investigation. I also have not seen such a case since I started working as a defense attorney approximately five years ago.  It was and is my understanding that the Prosecution Service does not have the discretion to do so.

72.        This does not mean that an accused's prior efforts to pay restitution or cooperate with the victim's efforts to obtain restitution are never taken into account.  In the Danish criminal system, efforts by an accused to cooperate with authorities, to provide restitution to a victim, or to cooperate with a victim's efforts to obtain restitution from others are considered only at the sentencing stage as mitigating circumstances if the court has determined the person to be guilty of the offense.

73.        Section 82(1) of the Danish Criminal Code contains a number of provisions that are generally to be included as mitigating circumstances when determining the sentence.

74.        In the present context, the relevant provisions are no. 10 and 11, which read as follows:

> "When determining a sentence, it must normally be considered a mitigating circumstance,
> ...
> 10) that the offender has provided information crucial to solving criminal acts committed by others,

11) the offender has remedied or attempted to remedy the damage caused by the criminal act."

75.     The provisions just referred to are only applied at sentencing when the court has determined that the person concerned is guilty of one or more charges in the indictment.

### iii.    The Prosecution Service's email of December 21, 2020

76.     Based on a document produced in this case that I have reviewed, one of the prosecutors responsible for the matter correctly informed the attorneys for Luke McGee that any cooperation efforts are only considered as a mitigating circumstance at sentence.  In an e-mail dated December 21, 2020 to Attorney Jan Schneider, Special Prosecutor Anders Møllmann seems to respond to a request from Mr. McGee's counsel for a formalized agreement whereby Mr. McGee would cooperate with the criminal authorities. *See* Stein_Lhote0009020 (attached as Appendix 14 along with an uncertified translation of the document). Mr. Møllmann explains that there are various conditions Mr. McGee must meet in order to enter into any such agreement, including that Mr. McGee must admit to the charges against him.

77.     Mr. Møllmann further explains that even if Mr. McGee does not enter into any formal agreement to cooperate, "any cooperation by McGee in investigating the case against other persons could have a *mitigating* impact on the sentence.  Thus, as is generally known, there is practice in Danish law for the courts to take into account the contributions of the accused with decisive information about the criminal acts of others as a mitigating factor…
In the event that McGee comes forward with decisive information - *and* documentation - about the complicity of other persons in the unlawful recovery of dividend tax from Denmark, the attending prosecutor, even without the above formalization, will in good faith highlight McGee's cooperation in the investigation as a mitigating factor, and the prosecutor will similarly take any cooperation into consideration when claiming the sentence during the trial hearings. In this instance too, it is of course solely for the court to decide whether and to what extent it will impact sentencing."

78.     What is stated in the email is in accordance with the rules applicable in Denmark on plea bargaining.  *See* Section IV below.  Mr. Møllmann's statements to Mr. McGee's lawyer is also consistent with my experience as both a prosecutor and criminal defense attorney in Denmark.

**SECTION IV: Plea Bargaining in Denmark**

Ret&Råd
ADVOKATER

79.        Unlike in the United States there is no formal plea bargaining in the Danish criminal system.  I refer to Jørn Vestergaard[9], Criminal Procedure – Basic Features of Danish Criminal Justice (*Straffeproces – grundtræk af dansk strafferetspleje*), 2018, 2nd edition, which on pages 164 ff. states the following (Appendix 15):

> "In Danish criminal procedure, as previously mentioned, it is expressly forbidden to make promises solely for the purpose of extracting a confession. And sentencing, as already emphasized, is a matter for the courts, not a matter available to the police or the Prosecution Service by promising the preliminarily charged person a certain sentence. So, a prosecutor is not allowed to offer to cut the case by dropping parts of the indictment in exchange for a guilty plea on the remaining part. In principle, it is simply not accepted that the outcome of a case is negotiated. However, the police and the Prosecution Service are allowed to indicate to the preliminarily charged person that if the person is cooperative during the investigation, there may be grounds for the prosecutor to point out in court that this should be taken into account in sentencing.
>
> …
>
> There is no doubt that in practice the police and Prosecution Service will often be prepared to reduce the indictment after a discussion with the preliminarily charged person or the person's defense counsel, if it can be expected that the preliminarily charged person will then be willing to make a partial confession. The actual effect of the preliminarily charged person agreeing through his defense counsel to plead guilty to a part of the preliminary charge will then be that the Prosecution Service will drop the rest. This also applies to a certain extent with regard to matters that the prosecutor had reasonably good prospects of being able to prove.
>
> …
>
> Under no circumstances can the principle of opportunity justify a promise not to prosecute more serious crimes as part of an agreement with a preliminarily charged person."

80.        The Danish Supreme Court has distinguished this aspect of the Danish criminal system from that in the United States.  In the case of (U 2009.941 H), the Court considered whether witnesses who had entered into plea bargains in the United States should be permitted to testify in a court proceeding in Denmark since Denmark does not permit plea agreements in its criminal system.  In its January 9, 2009 opinion, the Court stated the following about the use of such agreements in Denmark:

---

[9] Jørn Vestergaard (b. 1948) is a Danish jurist and former professor emeritus of criminal law at the University of Copenhagen (2007-2020). He co-founded the Danish Association for Legal Policy and has been a prominent public commentator. He served on various committees and councils, including for the Danish state, and has published extensively on criminal law.

"The four persons whom the Prosecution Service wishes to call as witnesses in the trial against T1, T2 and T3 have been convicted in the USA in the same set of related cases, after having entered into so-called plea bargains with the US State Attorney. These agreements entail, among other things, that the persons concerned have undertaken to cooperate with the authorities by giving statements in cases against joint perpetrators, and that a breach of this obligation may result in the loss of the benefits in terms of waiver of prosecution and reduction of sentence that have been obtained or promised."

...

"Even though plea bargain agreements such as those in question cannot legally be entered into by a Danish Prosecution Service, they cannot be considered contrary to fundamental Danish legal principles. Schemes that to a certain extent have the same character and purpose as the US plea bargain agreements are also known in Danish law. Thus, section 82, paragraph (10) of the Danish Criminal Code contains a provision for a reduced sentence in cases where the perpetrator has provided information that is crucial to the investigation of criminal offenses committed by others."

81.        Thus, the Supreme Court has held that while formal plea bargain agreements are not legal in Denmark, the sentence of those who provide cooperation can be reduced by a court under section 82(1)(10) of the Danish Criminal Code.

82.        The Danish Ministry of Justice has made clear the same point in a matter related to the Danish tax refund scheme.  The Danish State Auditors posed various questions to the Ministry of Justice in connection with the refund scheme, including the following:

"3. (...) Can settlements have criminal consequences, e.g. preclude subsequent prosecution of the debtors?"

83.        In its response dated August 31, 2020, the Ministry of Justice stated, in relevant part, the following (Appendix 16):

"The Ministry of Justice in general terms states that the competency to prosecute in criminal cases generally rests with the Prosecution Service, cf. section 719 of the Danish Administration of Justice Act. It is thus for the Prosecution Service to decide whether an indictment should be brought in a criminal case, including who should be indicted. In this connection, it should be noted that so-called plea bargaining, where the Prosecution Service enters into an actual agreement on



impunity or a reduced sentence, does not apply in Danish law. The question of criminal liability is for the court to decide. A settlement agreement cannot change this."

84.      The quote from Vestergaard's treatise on Criminal Procedure above (paragraph 79) shows that the Prosecution Service may indicate to the accused person that they will make the court aware of the accused person's willingness to cooperate, and that this should be included as a mitigating circumstance at sentencing.

85.      This conclusion is confirmed by the Director of Public Prosecutions' Notice No. 11/1998, issued on October 21, 1998, which states (Appendix 17):

> "(…) that it may be indicated to a preliminarily charged person that the Prosecution Service will emphasize the person's assistance in providing information about accomplices as a factor that may lead to a reduced sentence. Such indication should only be given in cases of more serious crimes, such as major drug cases, cases involving serious violent crime and murder, or cases involving extensive or serious financial crime
> …
> It must be made very clear to the preliminarily charged person that there is no guarantee that statements about accomplices will lead to a reduction in sentence, as that is a matter for the court to decide."[10]

86.      In the email from the Special Prosecutor, Mr. Møllmann, to Mr. McGee's lawyer referenced in paragraphs 77 and 78 above (appendix 14), Mr. Møllmann references this circular from the Director of Public Prosecutions, correctly noting that any cooperation must be within the framework set out in that circular.

Copenhagen on September 6, 2024

*Per Justesen*

Per Justesen

Attorney (H)

---

[10] A circular, such as Notice No. 11/1998 cited above, is a general service directive issued by a superior administrative authority and is directed at subordinate authorities. A circular issued by an administrative authority is binding on those who work for that authority.  This circular remains in force and is partially reproduced on page 31 in the Director of Public Prosecutions' Notice section on sentencing from July 2, 2024 (Appendix 11).