# Exhibit 506

**Per Justesen**

---

**October 15, 2024**

## Contents

Introduction to the rebuttal report ................................................................... 3
SECTION I – Summary of issues not disputed by Madsen ........................................ 3
SECTION II – Disputed issues ............................................................................... 4

**Introduction to the rebuttal report**

1. I have been asked by the Danish Customs and Tax Administration *(Skatteforvaltningen)*, referred to below as "SKAT", to review the expert report of Professor Lasse Lund Madsen ("Madsen"), dated September 6, 2024 ("the Madsen Report"), and provide my opinions on it in this expert rebuttal report ("the Rebuttal Report").

2. I separately submitted an expert report on September 6, 2024 ("the Expert Report"), on certain aspects of Danish criminal law and procedure. My Expert Report and the findings therein should be read in conjunction with this Rebuttal Report, which together form my expert opinions in this case.

3. My qualifications, compensation, and curriculum vitae were provided in my Expert Report and are therefore by reference incorporated in this Rebuttal Report.

4. The additional document that I considered in rendering my opinions in this Rebuttal Report is attached in appendix 1. I previously included Appendix 1-17 to my Expert Report.

**SECTION I – Summary of issues not disputed by Madsen**

5. Madsen does not dispute the majority of the key issues in my Expert Report.

6. The principle of absolute obligation to prosecute *(in Danish: "legalitetsprincippet)* basically means that the Prosecution Service must bring charges if, in the opinion of the Prosecution Service, the evidence for conviction is present. The principle of discretionary power to waive prosecution *(in Danish: "opportunitetsprincippet)* grants the Prosecution Service, in limited circumstances, certain discretionary power to decide not to indict or prosecute after indictment. These limited circumstances are set forth in Sections 721 and 722 of the Danish Administration of Justice Act. Madsen agrees that these are the only two sections in which such discretionary power is found. (Madsen Report, p. 10).

7. In my Expert Report, I went through each provision under Sections 721 and 722 and demonstrated that they could not apply to this case. Madsen agrees that most of the listed exceptions in sections 721 and 722, on their face, could not be applicable to this case. (Madsen Report, p. 10). Thus, Madsen concedes that the only possible provisions available to defendants here are Sections 721(1)(4) and 722(1)(5), which have the identical language which permits a prosecutor to not pursue charges "if the pursuit of the case would result in difficulties, costs, or processing times *that are not proportionate to the importance of the case and the expected penalty*."

8. Madsen further concedes that it is a fundamental requirement for the application of section 722 of the Administration of Justice Act that the accused pleads guilty, which the accused in this case do not. Thus, 722(1)(5) is also inapplicable to the defendants in this case. As a result, the lone remaining provision that could apply to them is section 721(1), paragraph (4) of the Administration of Justice Act, on which Madsen agrees. (Madsen Report, pp. 13-14).

9. In my Expert Report I noted that the offender's vital assistance in solving criminal offenses committed by others, the offender's payment of compensation and the case processing time may be taken into account by the court when determining the sentence, see section 82(1), paragraphs (10) and (11) of the Danish Criminal Code. Madsen agrees. (Madsen Report, p. 16).

**SECTION II – Disputed issues**

*Danish criminal law*

10.    On page 8 of his report, Madsen suggests that it is atypical that SKAT has reported the accused in this case for violation of section 279, cf. section 286(2), of the Criminal Code on fraud of a particularly aggravating nature, as opposed to a criminal tax violation.

11.    Based on the alleged conduct, however, the applicable crime is fraud, not a tax violation. According to the indictment, Stein, Lhote and McGee engaged fictitious share trades in order to mislead SKAT into believing that US pension plans owned Danish shares, received dividends on those shares, and had dividend tax withheld in Denmark. Based on these allegations, the accused never owed any tax to Denmark and have no real tax connection to Denmark. In my opinion, this is not a criminal tax case, but rather a case of fraud.

12.    In this connection, it should be noted that the Prosecution Service is not bound by the criminal law provision indicated in the report submitted by SKAT. The Prosecution Service could thus have brought an indictment for tax fraud if the Prosecution Service had thought that this was the right course of action.

*Section 721(1), paragraph (4) of the Administration of Justice Act*

13.    As stated above and as Madsen concedes, the only provision that could have given the prosecutors in this case any discretion to refrain from prosecuting is section 721(1), paragraph (4) of the Administration of Justice Act.

14.    Both Madsen and I rely upon Report no. 1066/1986 on combating economic crime (Appendix 1) to understand the scope of Section 721(1)(4). (See Madsen pages 14 and 15, and my Expert Report paragraphs 51 to 56).

15.    Report no. 1066/1986 states that:

> "the typical situation in practice will be that the abandonment of the indictment or the waiver under the new provision does not cover the entire case, but only some of several matters in a large set of related cases or part of a matter."

16.    Although Madsen cites this section of the Report, he ignores that it clearly refers to trimming, rather than dropping entirely, a case. Trimming a case means that where there are numerous possible charges, the prosecutor determines not to bring one or some of those possible charges, not that no charges are brought.

17.    The fact that the actual purpose of section 721(1)(4) is to trim cases also follows from the heading of chapters 19 and 19.1 of the Report, which reads as follows (Appendix 1):

> "19. The Committee's considerations and proposals.
> 19.1 The Committee's assessment of the need for increased provision for trimming of criminal cases for resource reasons."

18.    Chapter 19.2 of the Report is headed: "The Committee's assessment of the existing regulatory framework and case law."

19.    In the last paragraph of the chapter (p. 185), the following is stated:

> "Extensive trimming of the cases for resource reasons must therefore, in the Committee's opinion, require a change to the current regulatory framework."

20.     Before the introduction of the provision in section 721(1)(4), there was thus no legal basis for trimming the cases for resource reasons.

*Madsen's "reasonableness" consideration is not found under the relevant law*

21.     Madsen mentions on page 16 that when deciding whether to bring an indictment, the Prosecution Service must weigh the importance of the case and the expected penalty against the expected use of resources and considerations of reasonableness. As set out below, "considerations of reasonableness" is not a factor under Section 721(1)(4) or any other provision in Sections 721 or 722. Rather, both Section 721 and 722 list specific limited circumstances under which prosecutors have discretion not to prosecute. General notions of "reasonableness" are not included in either Section 721 or Section 722.

22.     Madsen's "considerations of reasonableness" do not appear in section 721(1), paragraph (4) of the Administration of Justice Act, nor are considerations of reasonableness mentioned in Report no. 1066/1986 on combating economic crime or the legislative history of the provision.

23.     As stated above, the purpose of the law is to allow the Prosecution Service to trim cases for resource reasons.

24.     Considerations of reasonableness therefore cannot be applied when the Prosecution Service must decide whether or to what extent an indictment should be brought.

25.     As shown directly below, the case against Stein, Lhôte and McGee is of such nature that it makes no sense at all to talk about reasonableness in a Danish administrative and criminal law context.

*The application of section 721(1), paragraph (4) in the case against Stein, Lhôte and McGee*

26.     Although Madsen acknowledges that under Section 721(1)(4), resource considerations are to be balanced against the importance of the case and the expected penalty, when analyzing Section 721(1)(4) Madsen fails to balance those factors at all, instead focusing solely on resource considerations and the inapplicable "considerations of reasonableness."

27.     In my report, I have stated that the indictment in this case has been brought pursuant to the most serious provisions of the Danish Criminal Code and that a very severe penalty may be expected in the event of conviction. In addition, the case has great political attention. Madsen also notes that the case has received extensive political and press attention in Denmark, and carries the most severe possible penalties, but he does not weigh those factors against the resource considerations.

28.     As a result of the indictment against Stein, Lhôte and McGee, the Prosecution Service has specifically concluded that the difficulties, costs and expected case processing time are proportionate to the importance of the case and the expected penalty.

29.     Regarding the application of Section 721(1), paragraph (4) of the Administration of Justice Act, I refer in general to what is stated in my Expert Report under paragraphs 47 to 58, adding that I am not aware of any specific cases where the payment of compensation has led to no indictment being brought or the dismissal of an indictment.

30.     In other words, it is not possible to avoid charges by subsequently repaying the criminal proceeds, but as agreed, the court may, when sentencing, give weight to the offender's vital assistance in solving criminal offenses committed by others, the offender's payment of compensation and the case processing time, see Section 82(1), paragraphs (10), (11) and (13) of the Criminal Code.

*The case of the bust*

31.     On page 11 of his report, Madsen discusses a case of vandalism to a bust belonging to the Royal Danish Academy of Fine Arts, where the Prosecution Service at the Copenhagen Police dropped the charges on the grounds that the accused had reached a settlement with the victim and paid full compensation.

32.     It should initially be noted that court files are not publicly available for this case. However, according to a press article about the case the charges were dropped.[1] Based on the article it appears that the police considered the accused to be guilty. In those circumstances, the charges must have been dropped based on section 722(2) of the Administration of Justice Act. As stated above, Madsen agrees that section 722(2) of the Administration of Justice Act does not apply in this case.

33.     In addition, the case only concerned DKK 44,350 and the settlement entailed that the victim recognized that the action of the accused was a happening that could be considered a work of art. By comparison, Stein, Lhote and McGee, as well as others involved in the fraudulent scheme, were charged with the most serious criminal fraud violation possible, and one of the other charged defendants was convicted and given the largest sentence for a fraud case in the history of Denmark.

Copenhagen on October 15, 2024

*Per Justesen*
Per Justesen
Attorney (H)

---

[1] Article, BT, May 31, 2024: "Buste blev smidt i havnen: Retssag om hærværk opgives" ("Bust thrown into the harbor: trial for vandalism abandoned").