# Exhibit 550

CERTIFIED TRANSLATION

**SKATTESTYRELSEN**

The Public Prosecutor for Special Economic and International Crimes
Att.: Deputy Prosecutor Malene Stage Christensen and Special Prosecutor Stine Winther

Sent via email: swi007@politi.dk

Executive Secretariat Special Audit

Helgeshøj Allé 9
2630 Taastrup

Telephone 72 22 18 18
Skat.dk

Our case nr. 21-0008933

Date: 3 February 2021

**Request for Information regarding the Danish Tax Agency's Settlement**

By letter of 6 January 2021, The Public Prosecutor for Special Economic and International Crimes (SØIK) requested that the Danish Tax Agency respond to a number of questions regarding the settlement that the Danish Tax Agency entered into in may 2019 with 61 US pension plans and a number of related individuals and companies.

By letter of 19 January 2021 the Danish Tax Agency responded to the particular questions.

By letter of 28 January 2021 SØIK posed the follow-up questions (nos. 10 – 24) below.

SØIK has stated that the Danish Tax Agency's response is crucial for SØIK's financial investigation in the case regarding the notifications that SØIK received from the former SKAT (now the Danish Tax Agency) regarding suspected fraud committed against SKAT, whereby SKAT suffered a total loss of around DKK 12.7 billion.

10. Is the Danish Tax Agency continuing a compensation claim based on the alleged shareholdings held by the German bank North Channel Bank, and if so against whom and for what amount?
11. Does the Danish Tax Agency intend to drop the compensation claim in the event of any possible criminal case concerning the alleged shareholdings held by North Channel Bank, if the settlement agreement cannot be considered to have been breached at this time?
12. From the National Audit Office's note on January 2020 about the Danish Tax Agency's settlement of May 2019 with 61 pension plans etc., (point 20), it appears that the Danish Tax Agency's US counsel in cooperation with Kammeradvokaten shall review a quantity of material and based on this determine the final settlement amount. Has this task been completed and has this in any case resulted in an adjustment to the compensation claim?
13. In the same note (point 22) it appears that the settlement sum is expected in several installments: an immediate payment of DKK 950 million and a residual payment of DKK 650 million, which must be settled within a period of four

Side 1 / 4

years. From the same note (point 24) it appears that a minimum of DKK 50 million of the DKK 650 million residual amount must be paid directly by the German bank (North Channel Bank). Has the bank paid an amount, and if so, how much?
14. It appears further from the note (point 24) that the bank's main shareholders are liable for payment of the residual amount, but to a maximum of DKK 600 million. What is the Danish Tax Agency's total compensation claim against the three main shareholders at the current time based on the ownership of and alleged shareholdings held by the German bank North Channel Bank?
15. Which dividend tax refunds are covered by the settlement? The Danish Tax Agency is asked to please specify this by indication of SKAT's batch numbers. Alternatively the Danish Tax Agency is asked to forward the analysis and the underlying material that is referenced in question 12.
16. Have the settlement parties agreed under which principles the claims shall be reduced? In this context, information is requested as to whether the payers have indicated which claims the repayments shall be reduced against, or is this up to the Danish Tax Agency? Additionally, please specify which claims have been reduced thus far.
17. Which national law governs the settlement?
18. Are the settlement parties (the settlement parties aside from the Danish Tax Agency) still represented by legal counsel in the US in connection with fulfillment of the settlement?
19. Is there on-going contact between the additional settlement parties and the Danish Tax Agency's legal counsel in the US?
20. Have the other settlement parties helped contribute documents for the collection of the Danish Tax Agency's claims against individuals or entities not covered by the settlement?
21. Have the other settlement parties consented to the use of materials in the collection of the Danish Tax Agency's claims against individuals or entities not covered by the settlement?
22. Have the other settlement parties helped contribute information and answer questions from the Danish Tax Agency for the identification of and collection of the Danish Tax Agency's claims against individuals or entities not covered by the settlement?
23. Have the other settlement parties answered questions and presented documentation of their own financial circumstances?
24. Has the Danish Tax Agency or the Danish Tax Agency's US legal counsel been involved in discussions about, or received information about, or otherwise come into possession of information about what efforts are being made to fulfill the settlement?

The Danish Tax Agency states in response the following:

*Re 10.*
The Danish Tax Agency has continued a civil claim regarding the refunds of allegedly withheld dividend taxes that were made based on documentation (credit advices) issued by North Channel Bank. The civil claims equal the total amount paid out to 27 US pension plans based on the documentation that was issued by North Channel bank.

The claims would be reduced by the proportional share of the settlement payments in the US settlement that can be attributed to these 27 pension plans.

CONFIDENTIAL   SKAT_MAPLEPOINT_00000744_T_R

A final calculation of the claims is still not possible, as the total settlement sum has not yet been paid to the Danish Tax Agency.

The claims are maintained against all parties that appear to have been involved in the dividend refunds in question and that are not a part of the settlement agreement.
This includes, amongst others, North Channel Bank, Bech-Bruun, Indigo and Lindisfarne as well as a number of connected individuals.

*Re 11.*
The Danish Tax Agency does not expect that there will be any need to file a compensation claim during any criminal proceedings regarding the alleged shareholdings held by North Channel Bank, as there are pending civil actions regarding the claims in England in part because the three suspected principals in the US settlement have signed the equivalent of a court settlement for the outstanding settlement sum of up to DKK 600 million.

*Re 12.*
The Danish Tax Agency can state that the task in question is still on-going. It is currently expected that the process will lead to a certain increase in the settlement sum. The timeline for the clarification of this is not known at the current point in time.

*Re 13.*
The Danish Tax Agency can state that the amount that North Channel Bank shall pay and which is not to be credited to the US settlement parties when calculating payment obligations under the settlement agreement, shall be paid once the bank is sold. The bank has not yet been sold.

*Re 14.*
The Danish Tax Agency can state that the Danish Tax Agency's unpaid claim against the three suspected principals currently comprises DKK 600 million.

*Re 15.*
There are 27 US pension plans that used North Channel Bank. These 27 US pension plans are a subset of the 61 pension plans that are included in the settlement. Reference is made to the attached list of the 27 pension plans, of which the batch numbers have also been inserted, likewise " sum of refunded dividend tax" also appears. It should be noted that there can be minimal rounding off differences between the calculations and the claims the Danish Tax Agency have filed against this in question.

*Re 16.*
The payments under the US settlement are reduced proportionately in relation to the total 61 pension plans included in the settlement based on each plan's proportional share of the total paid out of around DKK 2.9 billion.

*Re 17.*
The Danish Tax Agency can state that New York State Law governs the settlement and any conflicts that might arise from the agreement.

CONFIDENTIAL                                                                SKAT_MAPLEPOINT_00000745_T_R

*Re 18.*
The Danish Tax Agency can state that the settlement parties (aside from the Danish Tax Agency now and hereafter) continue to be represented by legal counsel in New York. This is in fact the firm Kaplan Hecker & Fink LLP.

*Re 19.*
The Danish Tax Agency can confirm that there is on-going contact with the law firm in question.

*Re 20.*
The Danish Tax Agency can confirm that the settlement parties helped contribute documents for use in the collection of the Danish Tax Agency's claims against individuals or entities not covered by the settlement.

*Re 21.*
The Danish Tax Agency can state that the settlement parties consented to the Danish Tax Agency's use of provided materials against individuals or entities not covered by the settlement.

*Re 22.*
The Danish Tax Agency can confirm that the settlement parties helped contribute information and answer questions from the Danish Tax Agency for the identification of and collection of the Danish Tax Agency's claims against individuals or entities not covered by the settlement?

*Re 23.*
The Danish Tax Agency can state that the settlement parties have not answered questions and presented documentation of their own financial circumstances. It should be noted that the settlement agreement does not contain requirements for this.

*Re 24.*
The Danish Tax Agency's legal counsel receives quarterly updates about the sales process for a number of assets described in more detail that the settlement parties are expected to co-finance the outstanding portion of the settlement sum.

Regarding the sale of the North Channel Bank, Kammeradvokaten is receiving continuous updates on the sales process.

With best<br>
regards,<br>
<br>
Bettina Spang<br>
Chief Consultant

CONFIDENTIAL    SKAT_MAPLEPOINT_00000746_T_R

**SKATTESTYRELSEN**

Statsadvokaten for Særlig Økonomisk og International Kriminalitet
Att.: Vicestatsadvokat Malene Stage Christensen og specialanklager Stine Winther

Sendt pr. e-mail: swi007@politi.dk

Ledelsessekretariat Særlig Kontrol

Helgeshøj Allé 9
2630 Taastrup

Telefon 72 22 18 18
Skat.dk

Vores sagsnr. 21-0008933

Dato: 3. februar 2021

### Anmodning om oplysninger vedrørende Skattestyrelsens forlig

Ved brev af 6. januar 2021 anmodede Statsadvokaten for Særlig Økonomisk og International Kriminalitet (SØIK) Skattestyrelsen om besvarelse af en række spørgsmål vedrørende det forlig, som Skattestyrelsen indgik i maj 2019 med 61 amerikanske pensionsplaner og en række dertil knyttede personer og selskaber.

Ved brev af 19. januar 2021 besvarede Skattestyrelsen de pågældende spørgsmål.

Ved brev af 28. januar 2021 har SØIK stillet nedenstående opfølgende spørgsmål (nr. 10 – 24).

SØIK har oplyst, at Skattestyrelsens besvarelse er afgørende for SØIKs finansielle efterforskning i sagen vedrørende de anmeldelser, som SØIK har modtaget fra det daværende SKAT (nu Skattestyrelsen) vedrørende formodet bedrageri begået overfor SKAT, hvorved SKAT led et samlet tab på ca. 12,7 mia. kr.

10. Har Skattestyrelsen fortsat et erstatningskrav på baggrund af påståede aktiebesiddelser i beholdning hos den tyske bank North Channel Bank, og i så fald mod hvem og med hvilket beløb?
11. Agter Skattestyrelsen at nedlægge erstatningskravet under en eventuel straffesag omhandlende de påståede aktiebesiddelser i beholdning hos North Channel Bank, hvis forligsaftalen ikke kan anses for at være misligholdt på dette tidspunkt?
12. Af Rigsrevisionens notat fra januar 2020 om Skattestyrelsens forlig med 61 pensionsplaner mfl. fra maj 2019 (punkt 20) fremgår, at Skattestyrelsens amerikanske repræsentanter i samarbejde med Kammeradvokaten skal gennemgå en mængde materiale og på baggrund af dette fastslå det endelige forligsbeløb. Er dette arbejde udført, og har det i givet fald givet en ændring i det samlede erstatningskrav?
13. I samme notat (punkt 22) fremgår, at forligssummen på 1,6 mia. kr. skal falde i flere rater: En straksbetaling på 950 mio. kr. og en restbetaling på 650 mio. kr., som skal afvikles inden for en periode på op til 4 år. Af samme notat (punkt 24) fremgår, at

Side 1 / 4

   minimum 50 mio. kr. af restbeløbet på 650 mio. kr. skal betales direkte af den tyske bank (North Channel Bank). Har banken indbetalt et beløb og i så fald hvor meget?
14. Det fremgår endvidere af notatet (punkt 24), at bankens hovedaktionærer hæfter for betalingen af det resterende beløb, dog maksimalt 600 mio. kr. Hvad er Skattestyrelsens samlede erstatningskrav mod de tre hovedaktionærer på nuværende tidspunkt på baggrund af ejerskabet af og påståede aktiebesiddelser i beholdning hos den tyske bank North Channel Bank?
15. Hvilke refusioner af udbytteskat er omfattet af forliget? Skattestyrelsen bedes anføre dette ved angivelse af SKAT's bundtnumre. Alternativt anmodes Skattestyrelsen om at fremsende analysen og det underliggende materiale som omtalt ovenfor i spørgsmål 12.
16. Har forligsparterne aftalt efter hvilke principper, fordringerne skal nedskrives? I den forbindelse bedes det oplyst, om indbetalerne har oplyst hvilke fordringer, indbetalingerne skal nedskrives på, eller er dette op til Skattestyrelsen? Herudover bedes det angivet, hvilke fordringer der indtil nu er nedskrevet.
17. Hvilket lands lov regulerer forliget?
18. Er de øvrige forligsparter (forligsparterne ud over Skattestyrelsen) fortsat repræsenteret ved advokat i USA i forbindelse med opfyldelse af forliget?
19. Er der løbende kontakt mellem de øvrige forligsparters advokater og Skattestyrelsens advokat i USA?
20. Har de øvrige forligsparter bidraget med dokumenter til brug for inddrivelse af Skattestyrelsens krav mod personer eller enheder, der ikke er omfattet af forliget?
21. Har de øvrige forligsparter samtykket i benyttelse af materiale til brug for inddrivelse af Skattestyrelsens krav mod personer eller enheder, der ikke er omfattet af forliget?
22. Har de øvrige forligsparter bidraget med oplysninger og besvaret spørgsmål fra Skattestyrelsen til identifikation af og til brug for inddrivelse af Skattestyrelsens krav mod personer eller enheder, der ikke er omfattet af forliget?
23. Har de øvrige forligsparter besvaret forespørgsler og fremlagt dokumentation for egne økonomiske forhold?
24. Har Skattestyrelsen eller Skattestyrelsens amerikanske advokatforbindelse været inddraget i drøftelser om eller modtaget oplysninger om eller i øvrigt kommet i besiddelse af oplysninger om, hvilke bestræbelser der udfoldes for at opfylde forliget?

Skattestyrelsen skal i den anledning oplyse følgende:

*Ad. 10.*
Skattestyrelsen har forsat et civilretligt krav i anledning af de refusioner af angiveligt indeholdt udbytteskat, der skete baseret på dokumentation (credit advices) udstedt af North Channel Bank. Det civilretlige krav modsvarer det samlede udbetalte refusionsbeløb til 27 amerikanske pensionsplaner baseret på den dokumentation, der blev udstedt af North Channel Bankn.

Kravet vil skulle reduceres med den forholdsmæssige andel af forligsbetalingen i det amerikanske forlig, der kan henføres til disse 27 pensionsplaner.

CONFIDENTIAL                                                                                          SKAT_MAPLEPOINT_00000744

Kravet kan endnu ikke opgøres endeligt, da den samlede forligssum endnu ikke er indbetalt til Skattestyrelsen.

Kravet fastholdes over for alle parter, der ses at have været involveret i de pågældende udbytterefusioner og som ikke er en del af forligsaftalen. Dette omfatter bl.a. North Channel Bank, Bech-Bruun, Indigo og Lindisfarne samt en række personer med tilknytning hertil.

*Ad. 11.*
Skattestyrelsen forventer ikke umiddelbart, at det bliver aktuelt at nedlægge et erstatningskrav under en eventuel straffesag omhandlende de påståede aktiebesiddelser i beholdning hos North Channel Bank, da der dels verserer civile retssager om kravene i England, dels fordi de tre formodede hovedmænd i det amerikanske forlig har underskrevet, hvad der svarer til et retsforlig på den udestående forligssum på op til 600 mio. kr.

*Ad. 12.*
Skattestyrelsen kan oplyse, at det pågældende arbejde fortsat pågår. Det forventes aktuelt, at processen vil føre til en vis forhøjelse af forligssummen. Tidshorisonten for afklaring heraf kendes ikke på nuværende tidspunkt.

*Ad. 13.*
Skattestyrelsen kan oplyse, at det beløb, som North Channel Bank skal betale og som ikke krediteres de amerikanske forligsparter ved opgørelsen af betalingsforpligtigelsen under forligsaftalen, først skal betales, når banken sælges. Banken er endnu ikke solgt.

*Ad. 14.*
Skattestyrelsen kan oplyse, at Skattestyrelses ubetalte krav mod de tre formodede hovedmænd aktuelt udgør 600 mio. kr.

*Ad. 15.*
Der er 27 amerikanske pensionsplaner, der har anvendt North Channel Bank. Disse 27 amerikanske pensionsplaner er en delmængde af de 61 pensionsplaner, der er omfattet af forliget. Der henvises til vedhæftede liste over de 27 pensionsplaner, hvoraf bundtnumrene tillige er indsat, ligesom "sum af refunderet udbytteskat" tillige fremgår. Det bemærkes, at der kan være mindre afrundingsdifferencer mellem denne opgørelse, og det krav Skattestyrelsen har rettet mod de pågældende.

*Ad. 16.*
Betalingerne under det amerikanske forlig afskrives pro ratarisk i forhold til samtlige 61 pensionsplaner omfattet af forliget baseret på hver plans forholdsmæssige andel af den samlede udbetaling på ca. 2,9 mia. kr.

*Ad. 17.*
Skattestyrelsen kan oplyse, at New York State Law regulerer forliget og eventuelle uoverensstemmelser, der måtte udspringe af aftalen.

CONFIDENTIAL                                                                                                    SKAT_MAPLEPOINT_00000745

*Ad. 18.*
Skattestyrelsen kan oplyse, at de forligsparterne (udover Skattestyrelsen nu og herefter) fortsat er repræsenteret af advokater i New York. Der er tale om firmaet Kaplan Hecker & Fink LLP.

*Ad. 19.*
Skattestyrelsen kan bekræfte, at der løbende er kontakt med det pågældende advokatfirma.

*Ad. 20.*
Skattestyrelsen kan bekræfte, at forligsparterne har bidraget med dokumenter til brug for inddrivelse af Skattestyrelsens krav mod personer eller enheder, der ikke er omfattet af forliget.

*Ad 21.*
Skattestyrelsen kan oplyse, at forligsparterne har samtykket i Skattestyrelsens benyttelse af udleveret materiale i forhold til personer og enheder, der ikke er omfattet af forliget.

*Ad. 22.*
Skattestyrelsen kan bekræfte, at forligsparterne har bidraget med oplysninger og besvaret spørgsmål fra Skattestyrelsen til identifikation af og til brug for inddrivelse af Skattestyrelsens krav mod personer eller enheder, der ikke er omfattet af forliget.

*Ad. 23.*
Skattestyrelsen kan oplyse, at forligsparterne ikke har besvaret forespørgsler og fremlagt dokumentation for egne økonomiske forhold. Det skal hertil bemærkes, at forligsaftalen ikke indeholder krav herom.

*Ad. 24.*
Skattestyrelsens advokater modtager kvartalsvis orientering om salgsprocessen for en række nærmere beskrevne aktiver, der af forligsparterne forventes at skulle medfinansiere den udestående del af forligssummen.

I forhold til salget af North Channel Bank modtager Kammeradvokaten løbende opdateringer på salgsprocessen.

Med venlig hilsen


Bettina Spang
Chefkonsulent

CONFIDENTIAL

SKAT_MAPLEPOINT_00000746

I, the undersigned, Julius Holm Nørremark, certify that I am fluent in both the English and Danish languages and that the preceding text in the English language is to the best of my knowledge and belief a true and faithful translation of the attached exhibit, with the bates stamp SKAT_MAPLEPOINT_00000743, in the Danish language.

Copenhagen, 1 April 2025

*Julius Holm Nørremark*

Assistant Attorney, LL.M.