

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

April 28, 2025

**BY ECF**

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:     <u>Stein et al. v. Skatteforvaltningen</u>, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

      We write on behalf of defendant/counterclaim plaintiff Skatteforvaltningen ("SKAT") in response to Stein, Lhote and McGee's April 25, 2025 letter (ECF No. 179) objecting to select portions of the direct testimony of SKAT's witnesses and related exhibits. Stein, Lhote and McGee allege in this action that they are excused from paying the substantial amounts they agreed to pay SKAT in the settlement agreement because SKAT supposedly breached by failing to communicate to SØIK what it was required to communicate under section 8(f) of the agreement. Now, however, Stein, Lhote and McGee object to portions of the testimony of SKAT's witnesses and the exhibits SKAT seeks to admit through their testimony demonstrating that SKAT did communicate with SØIK, repeatedly, about the topics covered by section 8(f).

**Gry Ahlefeld-Engel (ECF No. 167)**:

      <u>First</u>, Stein, Lhote, and McGee's hearsay objections to Ms. Ahlefeld-Engel's testimony should be overruled. For instance, Ms. Ahlefeld-Engel's testimony about Mr. Bechmann Jacobsen's February 26, 2019 email to the Ministry of Taxation stating that "SKAT 'regularly inform[s] SØIK about the progress in the [dividend] cases, including as well in relation to any settlement possibilities, and provided that the current negotiations should lead to a specific proposal, we will of course coordinate this with SØIK as well," (¶ 25 (quoting SKAT's Ex. 528), is not inadmissible hearsay. For one thing, Mr. Bechmann Jacobsen himself will testify at trial about his February 2019 communications with the Ministry of Taxation, to which testimony Stein, Lhote and McGee do not object. (ECF No. 164, ¶ 10.) And Mr. Bechmann Jacobsen's statements in his February 2019 email are separately admissible under Federal Rule of Evidence 803(6) as a record of a regularly conducted activity or 803(8) as "a record or statement of a

public office that sets out the office's activities." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 4511308, at *1 (E.D.N.Y. Oct. 1, 2012) (internal quotations omitted) ("The public records exception is applicable to reports of foreign public offices and agencies that otherwise come within its terms."). Further, his statement that "provided that the current negotiations should lead to a specific proposal, [SKAT] will of course coordinate this with SØIK as well" is also admissible under Rule 803(3) as a statement of Mr. Bechmann Jacobsen's then-existing statement of mind, *i.e.*, his intent to inform SØIK of any specific settlement proposal.

Ms. Ahlefeld-Engel's testimony about Mr. Bechmann Jacobsen's May 14, 2019 email stating that "he had been in contact with Morten Jakobsen at SØIK" concerning SKAT's May 2019 press release (¶ 36 (quoting SKAT's Ex. 534)), is admissible for much the same reasons. Mr. Bechmann Jacobsen himself will testify about his communications with SØIK and his email is independently admissible under Rule 803(6)'s business records or 803(8)'s public records exception.[1] And Mr. Bechmann Jacobsen's statement in his May 14, 2019 email that "we may exclude the criminal aspect from the press release, especially considering that SØIK has significant concerns if the criminal track is perceived as part of a settlement, which is not the case," (*id.*) is likewise admissible under Rule 803(3) as evidence of Mr. Bechmann Jacobsen's intent.[2]

Ms. Ahlefeld-Engel's testimony recounting that "[o]n April 24, 2019, . . . [she] emailed Per Fiig, the Chief Prosecutor at SØIK, advising him on behalf of SKAT that the 'settlement negotiations have picked up again' and would culminate in a 'final negotiation meeting' in New York," (¶ 27 (quoting SKAT's Ex. 529)), is not inadmissible hearsay because Ms. Ahlefeld-Engel is making this statement during her testimony, thus it is not an out-of-court statement in the first place. The same is true with respect to Ms. Ahlefeld Engel's testimony in paragraph 28 of her statement that she responded to Mr. Fiig's question "by stating that: 'If your question is whether we release [Stein, Lhote, and McGee] from criminal liability with the settlement, the answer is no. They hope their cooperation in the civil track will have a mitigating effect in the criminal, but nothing more.'" (¶ 28 (quoting SKAT's Ex. 530).) Further, SKAT is not offering Ms. Ahlefeld-Engel's emails to Mr. Fiig for the truth of anything asserted therein, but rather for the fact that she told Mr. Fiig that Stein, Lhote and McGee were agreeing to cooperate "in the civil track." And her recounting of Mr. Fiig's question in her testimony is not hearsay because his question was not a statement. *U.S. v. Amirov*, S8 22 Cr. 438 (CM), 2025 WL 660197, at *12 (S.D.N.Y. Feb. 28, 2025) ("out of court statements that consist of questions, requests, instructions, or demands, are not hearsay and so are admissible").

Nor is Ms. Ahlefeld-Engel's testimony about SKAT's April 12, 2023 letter to SØIK inadmissible hearsay. (¶ 76 (quoting SKAT's Ex. 554).) SKAT is not offering the April 12, 2023 letter for the truth of any matter asserted therein, but rather just for the fact that it was sent.

---

1. The same is true for Ms. Ahlefeld-Engel's testimony about Mr. Bechmann Jacobsen's email to Mr. Jakobsen concerning "the non-disparagement principles for communication." (¶ 37 (quoting SKAT's Ex. 535).)

2. Likewise, Ms. Ahlefeld-Engel's testimony that "[o]n May 15, 2019, Mr. Bechmann Jacobsen wrote that after the May 2019 Press Release was updated, he would send it to Morten Jakobsen to get approval from the Ministry of Justice" (¶ 38 (citing SKAT's Ex. 536)), is also admissible under Rule 803(3) as a statement of Mr. Bechmann Jacobsen's intent.

Second, the relevance objections to Ms. Ahlefeld-Engel's testimony likewise should be overruled. The testimony concerning Stein, Lhote, and McGee's participation in the supposed dividend arbitrage scheme and the criminal and civil fraud judgments against their former business partners provide relevant context for the settlement and the true-up disputes. (¶¶ 9 (citing SKAT's Ex. 510) & 11).) And the Court can take judicial notice of Shah's and North Channel Bank's Danish criminal judgments and the civil fraud judgments Judge Kaplan entered against their former U.S. business partners. *See U.S. v. Chang*, No. 18-CR-00681 (NGG) (CLP), 2024 WL 3303717, at *17 (S.D.N.Y. July 3, 2024) ("judicial notice . . . under Rule 201 . . . . extends to criminal judgments in other cases, including foreign judgments, where the court may take judicial notice of the judgment to establish the fact of such litigation, but not to prove the truth of the matters asserted in that litigation").

Finally, there is no merit to the objections that Ms. Ahlefeld-Engel's testimony is speculative and not based on her personal knowledge. "Rule 602 does not require the witness' personal knowledge to rise to the level of certainty to be admissible." *Sec. & Exch. Comm'n v. Singer*, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992). Ms. Ahlefeld-Engel was the head of SKAT's team "that handled the civil claims arising from the dividend withholding tax fraud scheme." (¶ 8.) It is thus not surprising that she knows the high-level details about the scheme and SKAT's claims arising from it. (¶¶ 9-11.) Nor is there anything speculative about her testimony that she does "not recall the details" of a particular meeting, but that it is clear to her from the email in which it was scheduled "that the purpose . . . was to discuss the impending settlement agreement." (¶ 29.) The same is true with respect to her testimony that she does not "specifically recall" a referenced discussion, but it is "consistent with [her] general recollection that [she] had numerous discussions with Per Fiig about various aspects of the Settlement Agreement." (¶ 37.) "What" Stein, Lhote and McGee "focus[] on as" her "absence of recollection—[her] *belief* that [s]he told" Mr. Fiig about various aspects of the settlement agreement "without recollection of the circumstances—is insufficient to bar the testimony under Rule 602." *Singer*, 786 F. Supp. at 1167. "There is no question that" Ms. Ahlefeld-Engel "had an opportunity to observe the facts upon which [s]he bases [her] testimony, insofar as those include [her] own behavior (allegedly disclosing to" Mr. Fiig the terms of the settlement agreement) "and the observable interactions between [her]self and" Mr. Fiig. *Id.* And there is likewise nothing objectionable about Ms. Ahlefeld-Engel's testimony about her recollections of June 2019 and July 2020 meetings with SØIK. (¶¶ 48, 60.) That she testified to her "best belief," rather than to what she "knows," as far as SKAT's updates to SØIK at the June 2019 and July 2020 meetings, (¶¶ 48, 60), "is not a basis for excluding her testimony, so long as she testified, as here, from general observation and knowledge, and not upon conjecture or hearsay." *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991).

### **Steen Bechmann Jacobsen (ECF No. 164)**:

Stein, Lhote and McGee's hearsay and personal knowledge objections to Mr. Bechmann Jacobsen's testimony should be overruled for the same reasons as the objections to Ms. Ahlefeld-Engel's testimony. For instance, Mr. Bechmann Jacobsen's testimony that he wrote to Ms. Ahlefeld-Engel that "once the press release 'is as clear as it can be,' I will have it directed over to'" SØIK is not an out-of-court statement—Mr. Bechmann Jacobsen is testifying that is what he said during his direct testimony. (¶ 14 (quoting SKAT's Ex. 556).) Nor is Mr. Bechmann Jacobsen's testimony about what he wrote to Ms. Ahlefled-Engel about his discussions with SØIK's Morten Jakobsen an out of court statement. (¶ 19(a).) Further, the exhibits from which

he quotes are admissible under the Federal Rule of Evidence 803(6) or 803(8) hearsay exceptions. And Mr. Jakobsen's statement, recounted by Mr. Bechmann Jacobsen in his testimony, that the "text snippets" of the settlement agreement "were approved by the public prosecutor and the Ministry of Justice" is likewise admissible hearsay under Rule 803(8)'s exception for records setting out a public office's activities. (¶ 15 (quoting SKAT's Ex. 556).)

Mr. Bechmann Jacobsen's testimony that while he does not remember the details, he "generally" recalls having had discussions with SØIK's Morten Jakobsen "about aspects of the Settlement Agreement" and "having discussed and edited draft press releases" is in no way speculative or beyond his personal knowledge. (¶ 9; *see also* ¶ 19(d).) There is likewise nothing objectionable about Mr. Bechmann Jacobsen testifying to his "general recollection" that "the top officials at SØIK were aware" at the time of the Covered Parties' cooperation obligations under the agreement or that he believes he attended a June 2019 meeting with SØIK but does not recall "the meeting itself." (¶¶ 21, 24.)

**Marc E. Landy (ECF No. 166)**:

Finally, Stein, Lhote and McGee's objections to Mr. Landy's testimony are all smoke. There is no requirement that Mr. Landy use a "spreadsheet, summary chart, or other document[]" to explain every number in his testimony. (ECF No. 179 at 4.) For example, Stein, Lhote and McGee object to Mr. Landy's testimony that based on their own true-up spreadsheets, "the Covered Parties calculated their total Net Proceeds to be DKK 1,576,008,293.39." (*Id.* (objecting to ¶ 9).) But that Mr. Landy did not include a spreadsheet or chart to explain this straightforward testimony does not mean there is no way to tell "how the calculations were performed, how the figures were arrived at, or the factual basis for the conclusions." (*Id.*) All one would need to do is add up the Net Proceeds amount from each true-up spreadsheet. That Mr. Landy did not provide a summary chart does not mean that the testimony "lack[s] foundation under Rule 602," is "not proper expert testimony under Rule 702," or violate[s] the best evidence rule under Rule 1002." (*Id.*) Nor does it paradoxically make the testimony an "improper summar[y] under Rule 1006." (*Id.*)

Stein, Lhote and McGee interposed this same baseless series of objections to virtually every paragraph of Mr. Landy's testimony that includes any number whatsoever related to the true-up amount. For instance, Stein, Lhote and McGee objected on these same grounds even to Mr. Landy's testimony that he has been informed by SKAT's counsel that Stein, Lhote and McGee "no longer concede that the Net Proceeds exceed the Preliminary Settlement Amount by at least DKK 26,008,293.39." (*Id.* (objecting to ¶ 11).) But Mr. Landy's testimony describes in detail how he performed the various calculations related to the true-up disputes and the factual bases for his conclusions.

Stein, Lhote and McGee's objections to their own true-up spreadsheets likewise should be overruled. SKAT's exhibits include excerpts of the true-up spreadsheets the Covered Parties produced during the true-up process through their counsel at Wachtell—the full versions of the true-up spreadsheets will be available at trial. Under the dispute resolution provisions in section 10(a) of the agreement, either side may seek relief from this Court for any "claim, controversy, or dispute arising out of or relating to the True-Up process" that "exceeds" DKK 20 million—for smaller disputes, the parties agreed to arbitration, at least in the first instance. The starting point for any such claim, controversy or dispute and determining whether it crosses the DKK 20

million threshold is thus the true-up spreadsheets Wachtell produced.  Those spreadsheets are opposing party statements excluded from the definition of hearsay under Rule 801(d)(2)(A), (C), or (D) and there is no dispute about their authenticity.  Rather, Stein, Lhote and McGee object that the true-up spreadsheets are improper Rule 1006 summary exhibits, as if SKAT created them to prove the contents of some other evidence, and violate Rule 1002, which provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  But SKAT seeks to admit the true-up spreadsheets to prove the content of the true-up spreadsheets, not some other documents, thus Rule 1002 has no applicability.

\* \* \*

      For the reasons set forth above, SKAT respectfully requests that the Court overrule Stein, Lhote and McGee's objections to SKAT's witnesses' direct testimony and related exhibits.

                                  Respectfully submitted,

                                  /s/ Marc A. Weinstein
                                Marc A. Weinstein

cc:  all counsel of record (via ECF)