---

Message

---

| | |
|---|---|
| **From:** | Camilla Lindrum Bay [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C79291E81DAE42B0BAB250A8013008EA-W26745] |
| **Sent:** | 4/22/2021 11:37:13 AM |
| **To:** | Gry Ahlefeld-Engel [gry.ahlefeld-engel@sktst.dk] |
| **Subject:** | FW: Complete package SØIK |
| **Attachments:** | Response to SØIK re. Settlement with 61 pension plans et al (Final) [DOK317827058].PDF; Par. 8 on confidentiality [DOK317827057].PDF; Exhibits 2 [DOK317827056].PDF; Exhibit 1 [DOK317827055].PDF; Response to SØIK re. Settlement [DOK317827053].pdf; Mail to SØIK [DOK317827337].pdf; Mail to SØIK [DOK317827614].pdf; Request for additional information.msg; Request for additional information re. the Danish Tax Agency's settlement agreement.msg; Request for information re. the Danish Tax Agency's settlement.msg |

Dear Gry

New complete package

Best regards

**Camilla Lindrum Bay**
Clerk
Executive Secretariat Special Audit

+45 72 37 55 15
Camilla.Bay@sktst.dk

 **SKATTE** STYRELSEN

The Danish Tax Agency
Helgeshøj Allé 9, 2630 Taastrup
www.sktst.dk

This is how we handle personal data
The Danish Tax Agency is a part of the Danish Tax Administration

---

**From:** Camilla Lindrum Bay
**Sent:** 21 April 2021 15:20
**To:** Gry Ahlefeld-Engel <Gry.Ahlefeld-Engel@SKTST.DK>
**Subject:** Complete package SØIK

Dear Gry

Attached a complete package.

In the attached you will find two letters to SØIK in which we answer 24 questions. In connection with the first response there are as attached file forwarded Exhibits 1 and 2, in which the settlement parties are shown. Also attached is para. 8 of the settlement on confidentiality.

There is currently nothing else exchanged with SØIK.

SØIK has also forwarded on 26 February 2021 request for additional information regarding the Danish Tax Agency's settlement agreement in which material is requested concerning Guenther Klar, Rajen Shah, Anupe Dhorajiwala and Graham Horn, that the Danish Tax Agency or their counsel must be in possession of. This request has not been responded to.

/Camilla

CONFIDENTIAL

CONFIDENTIAL

SKATTE
STYRELSEN

The Public Prosecutor for Special Financial and International Crimes
Att.: Deputy Prosecutor Malene Stage Christensen and Special Prosecutor Stine
Winther

Sent via email: swi007@politi.dk

**Executive Secretariat Special Audit**

Helgeshøj Allé 9
2630 Taastrup

Telephone 72 22 18 18
Skat.dk

Our case nr. 21-0008933

Date: 19 January 2021

### Request for Information regarding the Danish Tax Agency's Settlement

By letter of 6 January 2021, The Public Prosecutor for Special Financial and International
Crimes (SØIK) has requested that the Danish Tax Agency respond to the questions below
regarding the settlement that the Danish Tax Agency entered into in May 2019 with 61 US
pension plans and a number of related individuals and companies.

SØIK has stated that the Danish Tax Agency's response will be used for SØIK's
continuing investigation of the notifications that SØIK received from the former SKAT
(now the Danish Tax Agency) regarding suspected fraud committed against SKAT,
whereby SKAT suffered a total loss of around DKK 12.7 billion.

1. Which natural or legal persons has the Danish Tax Agency entered into the
   referenced settlement with?
2. Which refunds are covered by the settlement (for example by indication of
   SKAT's batch number)?
3. How is the settlement sum composed (does it include for example reimbursement
   of expenses other than the received dividend refunds)?
4. How much of the total settlement sum of DKK 1.6 billion has been paid to the
   Danish Tax Agency, and when does the remaining amount fall due for payment?
5. Which claims are the payments written off against
6. Are claims beyond the settlement amount waived, and if so in what manner?
7. Is the settlement an expression of a final decision in the civil case, or will further
   compensation claims against the settlement parties arise later?
8. Has the Danish Tax Agency been provided with security for fulfillment of the
   settlement, including guarantees, collateral or the like? In such event, has the
   Danish Tax Agency undertaken any form of perfection in this regard?
9. Has the Danish Tax Agency pursued a compensation claim in the case, and if so,
   against whom and for what amount?

Lastly, SØIK requested information about what, if any, confidential clauses have been
agreed to in the settlement.

Side 1 / 3

*Ad. 1.*

In May 2019, the Danish Tax Agency entered into a settlement with a group of 61 US pension plans and a number of related companies and individuals. Reference is made to the attached exhibits 1a – 1c to the settlement agreement. In relation to this group of pension plans etc., the settlement meant that the Danish Tax Agency waived further claims against this group in exchange for the Danish Tax Agency being paid an amount corresponding to what had been directly or indirectly paid out to this group based on the refund applications submitted by the 61 pension plans.

For an additional group of 19 pension plans that were partly owned by individuals included in the group of around 61 pension plans, the settlement also meant that, in relation to these individuals, repayment was made of the amounts paid out to the 19 pension plans that went to these individuals. In this regard, reference is made to exhibit 2 to the settlement agreement. The settlement did not prevent the Danish Tax Agency from maintaining or raising claims against the 19 pension plans or against the individuals who were co-owners or the like of the pension plans and who were not included in the group of around 61 pension plans. Legal actions have been filed against the 19 pension plans and these other individuals.

*Ad. 2.*

The settlement includes total payments to the 61 pension plans of DKK 2,937,851,407.

As stated above, in addition to receiving part of the refund amount of approximately DKK 2.9 billion, some of the settlement parties also participated in claiming refund amounts via 19 other American pension plans that are not part of the settlement. These 19 pension plans were independently refunded approximately DKK 1.2 billion.

The settlement also includes a waiver of claims against the individuals behind the 61 pension plans in relation to the smaller part they received from payments to the 19 pension plans for a total of DKK 1,179,089,882. This is done against repayment of the lesser amount that the individuals in question directly or indirectly received from these applications.

*Ad. 3.*

The settlement concerns only the refunds paid out.

*Ad. 4.*

The Danish Tax Agency can state that in relation to the settlement sum of DKK 1.6 billion has been repaid, respectively DKK 950 million in 2019 and approx. DKK 35 million in 2020.

The rest of the settlement amount is to be paid over a period of up to four years after the agreement is entered into, i.e. no later than May 2023.

*Ad. 5.*

Once the final calculation of the settlement amount is available, the repaid amount will be set off against the compensation claim, etc., that the Danish Tax Agency has against each individual pension plan.

*Ad. 6.*

The settlement provides that, against payment of the settlement amount, the Danish Tax Agency waives additional claims against the 61 pension plans and the respective circle of

individuals and companies that are parties to the settlement. The Danish Tax Agency has not waived claims against other pension plans, individuals, or companies.

For the 19 pension plans, the agreement provides that the claim against the 19 pension plans, etc., be reduced by the lesser amount from the settlement amount that can be attributed to payments made to the 19 pension plans.

*Ad. 7.*

The Danish Tax Agency can state that, against receipt of a total settlement sum of DKK 1.6 billion (subject to adjustment following verification of the settlement sum), the agency is committed to waive all civil claims that the agency may have against the settlement parties as part of the dividend case complex, as provided above under question 1.

This does not prevent the Danish Tax Agency from raising other claims against settlement parties or others, if it is subsequently shown that the parties have been involved in other refund requests than those covered in the settlement.

*Ad. 8.*

The Danish Tax Agency can state that the agency has not received security for fulfillment of the settlement, including guarantees, collateral, or the like.

In the event that repayment of the remaining settlement sum does not occur, as part of the settlement, the Danish Tax Agency has received a "Confession of judgment" equivalent to a court settlement from some of the settlement parties on the remaining amount, thus direct and personal liability for payment of the full settlement sum.

*Ad. 9.*

The Danish Tax Agency has maintained a claim in the case corresponding to the full amounts paid out, however the claim would have to be reduced by the amount received as a result of the settlement. The final settlement amount is currently not yet known. The Danish Tax Agency is currently pursuing the full claim with legal actions in the US, Canada, England, Dubai, and Malaysia. The claims in these cases are classified differently in the respective jurisdictions, but have the character of what would correspond under Danish law to either a restitution claim or compensation claim.

Lastly, regarding SØIK´s question about any agreed confidentiality clauses, the Danish Tax Agency must make reference to the attached excerpt on confidentiality (point 8) from the settlement agreement itself.

In conclusion, for the sake of good order, it should be noted that the attached exhibits and excerpt from the settlement agreement itself must be treated with confidentiality, which means that SØIK may not give information beyond the obligations under the Civil Procedure Code, just as the Danish Tax Agency must request to be heard in the event of future document access requests.

With best regards

Steen Bechmann Jacobsen
Area Director

CONFIDENTIAL

8. <u>Confidentiality</u>. The Parties agree that this Agreement is, and is intended to be maintained as, confidential to the fullest extent possible under Danish law, New York law or the law applicable in any jurisdiction in which Skatteforvaltningen seeks to use Cooperation Information and agree to use their respective best efforts to maintain such confidentiality consistent with the terms set forth in this Section 8. No Party shall be permitted to, directly or indirectly, make any generic or specific statement of any type with respect to this Agreement and the settlement contemplated herein, or in any way disclose this Agreement or the contents thereof, provided, however, that:

   a. Skatteforvaltningen may disclose this Agreement or the contents thereof to the Ministry of Taxation and any other Danish governmental committees, commissions, officials, departments, agencies or other bodies to which Skatteforvaltningen believes that disclosure is appropriate for this Agreement to be approved for the sole purpose of seeking authority for the entry into this Agreement by Skatteforvaltningen or if compelled by operation of law or regulation.

   b. Skatteforvaltningen may disclose: (i) the existence of this Agreement; (ii) the nature of the Claims; (iii) the principles set forth in Whereas clause F, *supra;* (iv) the number of Pension Plans involved; (v) the number of Covered Parties; (vi) the amount sought in any Reclaim Applications; (vii) the Final Settlement Amount; (viii) the amount of the Initial Cash Payment; (ix) the fact that the Additional Cash Payment will be paid over time not to exceed three (3) years, unless extended; (x) the provision for Applicable Interest; (xi) the amount of Gross Reclaims; and (xii) the fact that the Covered Parties have an obligation to provide Skatteforvaltningen with full and complete cooperation in its investigation of third parties not subject to any release, but not any other terms of this Agreement, including the identities of the Covered Parties. In the event that Skatteforvaltningen intends to issue a press release, Skatteforvaltningen will give the Covered Parties advance notice and the opportunity to consult on and consent to ( which consent shall not be unreasonably withheld) the wording of such press release before it is made public.

   c. In the event that disclosure of this Agreement or the contents thereof is sought by any person or entity not listed in this Section 8 or any media, press or public interest organization, Skatteforvaltningen shall promptly notify the Covered Parties' Designees in writing of the existence of, and terms and circumstances relating to, any other request for disclosure of this Agreement or the contents thereof, and shall pursue all available measures and remedies to prevent such disclosure, including, without !imitation, bringing any legal or other proceedings to challenge the validity or scope of any such request or requirement for disclosure or seeking a protective order or other appropriate remedy preventing disclosure. Skatteforvaltningen shall consult with the Covered Parties' Designees as to, and the Covered Parties' Designees shall cooperate with respect to, pursuit of such available measures and remedies to prevent disclosure of this Agreement or the contents thereof and Skatteforvaltningen shall not make any such disclosure until all available appeals have been exhausted, except that Skatteforvaltningen may disclose this Agreement to any tribunal hearing Skatteforvaltningen's request to maintain confidentiality. Each Party shall bear its own costs. If Skatteforvaltningen is ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable Danish court order or administrative order, Skatteforvaltningen may disclose only the portion of this Agreement that is legally required to be disclosed.

   d. The Covered Parties may disclose this Agreement or the contents thereof to their tax advisors, legal advisors, accountants and financial advisors, provided, in each case, that such recipients agree to keep confidential the terms of this Agreement,

SKAT_MAPLEPOINT_00000589_T

e.  The Covered Parties may disclose this Agreement or the contents thereof (i) in the event that such disclosure is compelled by operation of law or regulation or by a final non-appealable court order or administrative order, provided that the Covered Parties give Skatteforvaltningen timely notice of such compelled disclosure and take reasonable steps, consistent with their legal obligations, to avoid, oppose, or limit such disclosure, or (ii) to any law enforcement authority investigating Reclaim Applications or related matters, even if such disclosure is not compelled by operation of law or regulation or by a final non-appealable court order. If the Covered Parties are ultimately compelled to make disclosure of this Agreement, by operation of law or regulation or by a final non-appealable court order or administrative order, the Covered Parties may disclose only the portion of this Agreement that is legally required to be disclosed.

f.  Notwithstanding the confidentiality obligations of this Section 8, promptly upon the execution of this Agreement, Skatteforvaltningen will, in writing, bring to the attention of the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK") this Agreement and its terms, and represent, in writing, that this Agreement reflects good-faith negotiation by the Covered Parties, that the Covered Parties' cooperation may result in the recovery by Skatteforvaltningen of additional funds from third parties and that this Agreement is in the best interests of Skatteforvaltningen. Upon request by SØIK, Skatteforvaltningen may provide and/or disclose the entirety of this Agreement to SØIK.

**Exhibit 2: Covered Parties that are entities (i.e., Pension Plans, pension plan partnerships and partners) in which one or more other persons or entities who are not Covered Parties have an interest**

|  | Pension Plans | Partnerships | Partners* |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |



CONFIDENTIAL

11.

12.

13.

14.

15.

16.

17.

18.

19.



-10-

SKAT_MAPLEPOINT_00000591_T

**Exhibit 1: Covered Parties**

**Exhibit 1A: Fully released Pension Plans, pension plan partnerships and partners**

| | Pension Plans | Partnerships | Partners |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |

-2-



SKAT_MAPLEPOINT_00000593_T

| 14. |
| 15. |
| 16. |
| 17. |
| 18. |
| 19. |
| 20. |
| 21. |
| 22. |
| 23. |
| 24. |
| 25. |
| 26. |
| 27. |
| 28. |

-3-

CONFIDENTIAL

SKAT_MAPLEPOINT_00000593_T



29.

30.

31.

32.

33.

34.

35.

36.

37.

38.

39.

40.

41.

42.

43.

-4-

CONFIDENTIAL

44.

45.

46.

47.

48.

49.

50.

51.

52.

53.

54.

55.

56.

57.

58.





CONFIDENTIAL