

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

August 15, 2025

**BY ECF AND HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re:  *Stein et al. v. Skatteforvaltningen*, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

   We write on behalf of defendant/counterclaim-plaintiff Skatteforvaltningen ("SKAT") in opposition to plaintiffs Matthew Stein and Jerome Lhote's request for a pre-motion conference on their proposed motion to reopen the trial record to receive irrelevant evidence concerning SKAT's supposed "violations" of its non-disparagement obligations in section 9 of the settlement agreement.  (ECF Nos. 211–211-1.)[1]

   The proposed motion is transparently frivolous.  Leaving to one side the substantive point that SKAT did not violate the non-disparagement provision by its counsel posting on its website a June 2025 article describing the parties' claims and positions in this case, as presented at trial and in their public pleadings and pre- and post-trial submissions, even if somehow that could amount to a violation by SKAT, it would be entirely irrelevant to the issues before the Court, which fully disposes of plaintiffs' proposed motion.  As plaintiffs note, "a motion to reopen to submit additional proof is addressed to" the Court's "sound discretion." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 331 (1971).  But courts "typically reserve this discretion for the rare occasion in which corrective information must be introduced into the record to avoid reaching a decision based on misleading or mistaken information." *Blain v. State University of New York Downstate Med. Ctr.*, No. 22-CV-3022-FB-MMH, 2023 WL 1967528, at *2 (E.D.N.Y. Feb. 13, 2023).  Thus, in determining whether reopening is warranted, courts consider "where the interests of justice lie," including "the extent to which reopening the record might prejudice the nonmovant," *John v. Sotheby's, Inc.*, 858 F. Supp. 1283, 1288 (S.D.N.Y. 1994),

---

1. SKAT notes that plaintiffs' substitute counsel, separate from plaintiffs' trial counsel, filed this motion without having filed a notice of appearance in the case, much less waiting for the Court to so-order the stipulation of substitution they filed just hours before filing this motion.

*aff'd* 52 F.3d 312 (2d Cir. 1995), and "the importance and probative value of the evidence."
*Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294 (PKL), 2003 WL 22928735, at *1
(S.D.N.Y. Dec. 10, 2003) (internal quotation omitted).[2]

       Reopening the record for the Court to hear evidence concerning the June 2025 article
plainly would not serve the interests of justice because the article lacks any probative value with
respect to any issue in this case, including the central issue before the Court of whether SKAT,
as plaintiffs allege, materially breached section 8(f) of the settlement agreement before the May
2023 deadline for plaintiffs (and counterclaim defendant Luke McGee) to make the final
settlement payment, thus relieving them of their obligation to do so.[3]  Plaintiffs fail to offer any
cogent argument to the contrary.  Instead, the best plaintiffs can muster are vague arguments that
if SKAT breached the non-disparagement provision in June 2025, then that tends to show that
SKAT breached section 8(f) years earlier.  But that makes no sense—the two have nothing to do
with each other.  The Court has before it the extensive, relevant evidence presented at trial
showing that SKAT performed its section 8(f) obligations, to which the June 2025 article adds
nothing.  Thus, plaintiffs' protests that "SKAT's self-determined and purported compliance"
"drives its central argument" and the statements in the June 2025 article "call into question the
veracity of SKAT's interpretation of the contractual terms . . . and its compliance therewith" ring
hollow.  (ECF No. 211 at 1-2.)  It is the Court, not SKAT, that will decide whether SKAT
complied with section 8(f) based on the evidence presented at trial.  Nor does the article "belie[]
the very essence of SKAT's defense and claim that it has acted in accordance with the Settlement
Agreement" for the same reasons—the June 2025 article is irrelevant to the dispute over whether
SKAT complied with section 8(f).  (*Id.* at 2.)  And plaintiffs only confuse things further in
arguing that SKAT asserts "that the Settlement Agreement is a binding contract with current
obligations thereunder[] and that SKAT has complied with those obligations," (*id.* at 1), as if to
imply, without saying so explicitly, that SKAT's purported breach of the non-disparagement
provision in June 2025 could have somehow relieved them of their obligation to pay the
settlement two years earlier in May 2023.[4]

       Rather than shed any light on the issues before the Court, reopening the record would
serve only to prejudice SKAT, which is still trying to recover hundreds of millions of dollars in
losses from Stein and Lhote a decade after their fraudulent scheme was halted, and waste the

---

2.    Courts also consider "whether or not the moving party's failure to submit [the] evidence was the result of its
own lack of diligence."  *John*, 858 F. Supp. at 1288.

3.    Indeed, SKAT's purported breach of section 8(f) is the only claim of breach that plaintiffs presented at trial and
included in their pleading.  There is no claim in this case that SKAT breached the non-disparagement provision
in section 9 of the agreement.

4.    In the process, plaintiffs misconstrue SKAT's position to no apparent purpose.  No doubt that the non-
disparagement provisions in section 9 survive under section 17, which provides that those provisions "shall
remain in full force and effect notwithstanding the termination" of the agreement.  But, for the avoidance of
doubt, SKAT's position is that the settlement agreement terminated in May 2023 upon plaintiffs and McGee's
material breach.  *See, e.g., ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 397 (S.D.N.Y.
1999) ("it is black-letter law that when one party to a contract materially breaches, the nonbreaching party has
two options: it can terminate the agreement and sue for total breach, or it can continue the contract and sue for
partial breach").  When read in context, the assertion in SKAT's post-trial submission to which plaintiffs cite
that there "is no dispute that a valid contract . . . exists" clearly was meant to convey that the first element of
SKAT's breach of contract claim, *i.e.*, the existence of a contract, is satisfied, not that the settlement agreement
is a continuing contract.

Court's and the parties' resources. *See Wechsler*, 2003 WL 22928735, at *2 ("the Court . . . perceives the risk in reopening without justification a case that has already awaited a resolution for more than nine years"). The trial is over, and the parties already have submitted proposed findings of fact and conclusions of law based on the evidence presented at trial. There is no point in the Court hearing new evidence and the parties supplementing their post-trial submissions when the new evidence could not possibly affect the outcome, particularly given that the parties' stipulated extension of the CPLR 3218 deadline for entry of the confession of judgment to December 10, 2025 is approaching.

Further, even setting aside that SKAT's counsel was not, as plaintiffs assume, acting as "its representative or agent" when it published the June 2025 article (ECF No. 211 at 2), the article did not breach the non-disparagement provisions in the agreement. Under section 9(b) of the agreement, SKAT is "not restricted in any way, shape or form from making factual statements it believes are reasonably necessary to support claims or rebut any defenses to such claims it is pursuing in other legal proceedings relating to the subject matter of the Settled Claims." Presumably for that reason, if not others as well, Stein and Lhote's trial counsel did not allege that SKAT's various pleadings and trial briefings constituted a breach of the settlement agreement. And the statements in the June 2025 article just mirror SKAT's allegations and arguments set forth in its pleadings and pre- and post-trial submissions. (*Compare, e.g.*, ECF No. 163 (SKAT's Pretrial Proposed Findings of Fact and Conclusions of Law) at 1-3 ("Matthew Stein and Jerome Lhote pulled off a years' long, two-pronged fraud against SKAT.") *and* ECF No. 48 (SKAT's First Amended Answer, Affirmative Defenses & Counterclaims) ¶¶ 142-48 ("Stein, Lhote and McGee participated in a massive fraud on SKAT") *with* ECF No. 211-1 (June 2025 article).)

Finally, because plaintiffs' pre-motion letter concerns a non-dispositive issue, sets forth all their "relevant arguments," and there is a "clear lack of merit" supporting those arguments, SKAT respectfully requests that the Court treat plaintiffs' pre-motion letter as the motion itself and deny it. *Stein v. Skatteforvaltningen*, No. 23 Civ. 2508 (NRB), 2024 WL 382090, at *1 n.1 (S.D.N.Y. Feb. 1, 2024) (internal quotations omitted).

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

Cc: All counsel of record (by ECF)