UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW STEIN AND JEROME LHOTE,

      *Plaintiffs/Counterclaim-Defendants*,

    -against-

SKATTEFORVALTNINGEN,

      *Defendant/ Counterclaim-Plaintiff*,

    -against-

LUKE MCGEE,

      *Nominal Defendant/ Counterclaim-Defendant.*

Case No. 1:23-cv-02508-NRB

**REPLY IN SUPPORT OF NON-PARTY FRESH POND INVESTMENT LLC'S MOTION FOR ORDER TO SHOW CAUSE PURSUANT TO FRCP 69 AND CPRL § 5240**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................... 1

ARGUMENT ............................................................................................................................ 4

    I.  Skat does not dispute that the Separate Entity Rule applies and deprives this
       Court of jurisdiction over Non-Party Fresh Pond's Florida bank accounts ................... 4

    II.  McGee has no direct financial interest in, nor does he control, Non-Party
        Fresh Pond; therefore, Skat cannot restrain Non-Party Fresh Pond's accounts............ 5

    III.  Skat has not established that Non-Party Fresh Pond is in possession of
        concealed or fraudulently transferred assets; therefore, it cannot restrain Non-
        Party Fresh Pond's accounts on this basis, either .......................................................... 8

    IV.  Skat acknowledges that the Information Subpoenas are legally deficient, and
        accordingly, they should be quashed .......................................................................... 10

CONCLUSION........................................................................................................................ 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baltazar v. Houslanger & Associates, PLLC*,
No. 16-4982 (JMA) (AKT), 2018 WL 3941943 (E.D.N.Y. Aug. 16, 2018) .............................. 4

*Blue Giant Equip. Corp. v. Tec–Ser, Inc.*,
92 A.D.2d 630 (3d Dep't 1983) ..................................................................................... 9

*Capitol Records, LLC v. Defries*,
No. 11-CV-6808 PKC, 2014 WL 5608137 (S.D.N.Y. Nov. 4, 2014) ........................................ 7

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
879 F.3d 462 (2d Cir. 2018) .................................................................................. 5, 6

*Freeman v. Giuliani*,
No. 24-MC-00353 (LJL), 2024 WL 4467191 (S.D.N.Y. Oct. 10, 2024) .................................. 4

*KLS Diversified Master Fund, L.P. v. McDevitt*,
2022 WL 220058 (S.D.N.Y. 2022) ................................................................................. 6

*Preferred Display, Inc. v. CVS Pharmacy, Inc.*,
923 F. Supp. 2d 505 (S.D.N.Y. 2013) ............................................................................. 6

*Refco Group Ltd., LLC v Cantor Fitzgerald, L.P.*,
2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014) ..................................................................... 10

*Saadeh v. Kagan*,
No. 20-CV-01945 (PAE)(SN), 2025 WL 1442713 (S.D.N.Y. May 20, 2025) .......................... 9

*Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*,
650 F. Supp. 3d 199 (S.D.N.Y. 2023) ............................................................................. 10

*Verizon New England Inc. v. Transcom Enhanced Servs., Inc.*,
98 A.D.3d 203 (1st Dep't 2012) ..................................................................................... 9

*WAG SPV I, LLC v. Fortune Glob. Shipping & Logistics, Ltd.*,
612 F. Supp. 3d 321 (S.D.N.Y. 2020) ............................................................................. 4

**Rules**

CPLR § 5222.................................................................................................................. 6, 8

CPLR § 5222(a)-(b) ........................................................................................................ 6

CPLR § 5224(3)(i) .......................................................................................................... 10

CPLR § 5225(b) ........................................................................................................................ 3

CPLR § 5240 ............................................................................................................................ 5

F.R.C.P. 69 ................................................................................................................................. i

**Regulations**

17 C.F.R. § 240.16a-8(b) ......................................................................................................... 6

17 CFR 240.16a-1(a)(2) ............................................................................................................ 5

Non-Party Fresh Pond Investment LLC ("Non-Party Fresh Pond") respectfully submits this Reply in support of its Motion for Order to Show Cause.

**<u>PRELIMINARY STATEMENT</u>**

Skatteforvaltningen ("Skat"), the Danish Tax Agency, attempts to paint Defendants as co-conspirators in a vast scheme to commit fraud on the Danish government to the tune of hundreds of millions of dollars, but, critically, Defendants have never been adjudicated liable for that or any other fraudulent scheme. The judgment at issue in this matter results from a negotiated Settlement Agreement voluntarily entered into by Luke McGee, Matthew Stein and Jerome Lhote (the "Co-Defendants"), which expressly provides that "[n]othing in [it] … shall be claimed or otherwise deemed to be evidence of an admission by any Party of any liability, violation of law or wrongdoing whatsoever, or of the truth or untruth, or the merit or lack of merit, of any claim or defense or any party." *See* Settlement Agreement [Dkt. 47]. The Settlement Agreement further provides that, because initial payment was made, *Skat released McGee's wife, children, and any and all affiliated entities and trusts of McGee and the other Co-Defendants. Id.* The only persons that remain liable under the judgment are the Co-Defendants. Furthermore, while the Co-Defendants entered into the Settlement Agreement to avoid dissipating every asset they have on protracted litigation and to buy peace for the Covered Parties,[1] others that Skat pursued for the same alleged tax scheme have successfully defended such fraud claims (after expending hundreds of millions of dollars in attorneys' fees Skat is now responsible for paying) (the "UK Case").[2] *See* April 27, 2021 Judgment in UK Case, Exhibit A ("<u>Ex. A</u>").

---

[1] *See* Settlement Agreement, Section 4, Releases. The Covered Parties on Exhibit 1B include Gabrielle Raymond (now McGee), McGee's wife, as a fully released individual. Non-Party Fresh Pond, which is owned by a trust for which Mrs. McGee is a beneficiary, is included within this expansive release.

[2] Amiyre White, *What Denmark's £400 Million High Court Defeat Reveals About Cross-Border Legal Risk*, The BluePrint Brief (Nov. 15, 2025), https://theblueprintbrief.com/articles/what-denmarks-400-million-high-court-defeat-reve/ (Skat ordered to pay £400 million in legal costs based upon its loss in the UK Case).

In the UK Case, Justice Andrew Baker, in his order on fees awarded against Skat, described similar claims brought by Skat against other defendants for the same alleged tax scheme as litigation that was "brought and aggressively pursued, by a sovereign state with a willingness to expend effectively unlimited resources, as much to set an example to the world and make an example of all of those involved (whether said to be guilty of dishonesty or not). . ."  It was litigation that was politically as well as financially motivated." *See* May 11, 2021 Judgment in UK Case, Exhibit B ("Ex. B"), para. 18(iii).  Justice Baker found after a lengthy trial (and litigation that lasted nine years) that Skat's "controls for assessing and paying dividend tax refund claims were so flimsy as to be almost non-existent," that "Skat was not misled by misrepresentations made to it through the tax refund claims it received, as it alleged," and that he was "not persuaded that the [trading] strategy would have been pursued if [the defendant] … thought that it would or did involve false statements being made to Skat or mislead it into paying claims." *See* February 10, 2025 Judgment in UK Case, Exhibit C ("Ex. C"), para. 9.  Justice Baker further said of the defendants in devising and implementing the tax strategy that "they did not consider that anything untrue would be or was being stated to Skat." *See* Ex. C, para. 8.

Nevertheless, Skat paints the Co-Defendants as fraudsters in an effort to justify its aggressive collection efforts against released parties, including Non-Party Fresh Pond.[3]  Non-Party Fresh Pond is a separate, legally distinct entity with its own operations that was released from liability under the Settlement Agreement.  Skat has set forth no facts to assert that Non-Party Fresh Pond is an alter ego of McGee.  Further, Skat has not established that Non-Party Fresh Pond is in possession of concealed or fraudulently transferred assets, and it cannot establish that McGee has

---

[3] Skat has similarly pursued aggressive collection efforts against Mrs. McGee, whose exempt tenancies-by-the-entirety Florida bank accounts that are used for day-to-day expenses for their family were frozen by Skat without notice and prior to serving a restraining notice on McGee.  While those restraining notices were similarly deficient, given the urgency in unfreezing those funds, the parties agreed to a mutual resolution.

a direct financial interest in, nor that he controls, Non-Party Fresh Pond.

Requiring released Non-Party Fresh Pond to refute the allegations in the Declaration of Marc Weinstein ("M. Weinstein Dec.") [Dkt. 246] allows Skat to skirt discovery rules to obtain informal discovery, which further deprives Non-Party Fresh Pond of due process.[4]    CPLR § 5225(b) sets forth a procedure for securing property that is not in possession of the judgment debtor to avoid exactly this, and Skat declined to follow this procedure.  Instead, Skat restrained Non-Party Fresh-Pond's Florida bank accounts and sought confidential financial information (some of which it obtained and now published publicly through its Response) without any legal basis.

Skat admitted to violating legal requirements throughout its Response.  For example, Skat acknowledged that the Restraining Notices and Information Subpoenas are legally defective.  The law is clear that these legal deficiencies render the Restraining Notices and Information Subpoenas void *ab initio*.  Further, and perhaps most critically, Skat did not dispute that the Separate Entity Rule applies and deprives this Court of jurisdiction over the Fresh Pond accounts (and Skat is now seeking leave of this Court to domesticate its judgment in Florida to remedy that deficiency).  Rather, Skat merely claimed that Non-Party Fresh Pond lacks standing to raise this argument.  That is simply not so, and as such, the Restraining Notices must be vacated.  Otherwise, judgment debtors will be incentivized to jettison the legal process.

As set forth in the UK Case, Skat has a history of aggressive litigation and has "unlimited resources" to do its bidding.  Without restricting Skat's further post-judgment actions, Skat can continue to render meaningless legal requirements that should be properly afforded to released parties such as Non-Party Fresh Pond.  Accordingly, Non-Party Fresh Pond requests that this Court revoke Skat's ability to further seek to restrain its assets without leave of Court and grant Non-

---

[4] Non-Party Fresh Pond can provide substantive documentation to the Court in an in-camera review but is not required to provide this informal discovery to Skat.  If Skat seeks such documentation, it should do so through proper discovery.

Party Fresh Pond's request for sanctions for having to respond to Skat's legally deficient restraints.

## ARGUMENT

**I.      Skat does not dispute that the Separate Entity Rule applies and deprives this Court of jurisdiction over Non-Party Fresh Pond's Florida bank accounts.**

Skat does not dispute that the Separate Entity Rule applies and deprives this Court of jurisdiction over the Fresh Pond accounts. Rather, Skat merely claims that Non-Party Fresh Pond lacks standing to raise this argument.[5] That is simply not so, and as such, the Restraining Notices must be vacated. Skat cites only one case to support its contention—*Freeman*—and in so doing, misstates the basis of the ruling court's holding. *Freeman v. Giuliani*, No. 24-mc-00353 (LJL), 2024 WL 4467191 at *3 (S.D.N.Y. Oct. 10, 2024). In *Freeman*, the judgment debtor contested a restraining notice affecting an account that did not belong to him. *See id.* ("Defendant admits he 'has no account at Parkside'"). *Freeman* specifically states that the holder of the restrained account could have brought an action and chose not to. *Id.* at *4. Here, Non-Party Fresh Pond contests Restraining Notices imposed upon its own accounts. This is common practice and countless cases support that Non-Party Fresh Pond has standing to do so. *See, e.g.*, *WAG SPV I, LLC v. Fortune Glob. Shipping & Logistics, Ltd.*, 612 F. Supp. 3d 321, 332 (S.D.N.Y. 2020) (court recognized party's argument that a restraining notice served upon a bank affecting *that party's* account violates the Separate Entity Rule); *Baltazar v. Houslanger & Associates, PLLC*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *11 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 16CV04982JMAAKT, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) (same).

Further, the Second Circuit, when discussing restraining notices, has explained that "[a] court has broad authority to regulate the use of enforcement devices" and that "[t]he court may at

---

[5] Fresh Pond's standing to contest the Restraining Notices and Fresh Pond's standing to contest the Information Subpoenas are separate issues, despite Skat's attempts to blur them into the same.

any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470 (2d Cir. 2018); CPLR § 5240 ("The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."). Because Skat's standing argument fails, and because Skat otherwise failed to dispute that the Separate Entity Rule applies, the Restraining Notices must be vacated.

II.    **McGee has no direct financial interest in, nor does he control, Non-Party Fresh Pond; therefore, Skat cannot restrain Non-Party Fresh Pond's accounts.**

Securities and Exchange Commission ("SEC") rules require individuals holding even ***an indirect interest*** in a security to file a beneficial ownership form if certain circumstances are met. In McGee's case, his wife's status as a trust beneficiary *combined with* his status as an investment trustee obligated him to file a beneficial ownership form with the SEC. Beneficial ownership under the Securities and Exchange Commission ("SEC") rules in this instance are governed by 17 CFR 240.16a-1(a)(2), which states:

> [T]he term beneficial owner shall mean any person who, directly or *indirectly*, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or *indirect* pecuniary interest in the equity securities, subject to the following:
>
> > (ii) The term *indirect pecuniary interest* in any class of equity securities shall include, but not be limited to:
> >
> > > (A) Securities held by members of a person's immediate family sharing the same household;
> > >
> > > …
> > >
> > > (E) A person's interest in securities held by a trust, as specified in § 240.16a-8(b).

5

(emphasis added).  17 C.F.R. § 240.16a-8(b) provides that a trust is subject to Section 16 of the Act if the trust is a beneficial owner and, if so, the trustee is required to be reported by the trustee on behalf of the trust.  The holdings of the trust are attributed to the trustee and reported by the trustee in his individual capacity if at least one trust beneficiary is a member of the trustee's immediate family, and the pecuniary interest of the immediate family member is attributed to and reported by the trustee.  *Id*.  Accordingly, McGee was required by the SEC rules to file a beneficial ownership form on behalf of Non-Party Fresh Pond.  But despite Skat's attempts to convince the Court otherwise, the SEC's overly broad disclosure rules do not determine whether McGee has sufficient interest in the Fresh Pond accounts to support issuance of restraining notices under CPLR § 5222.

"Under CPLR § 5222, an attorney for the judgment creditor may, as an officer of the court, serve a restraining notice on a third party who 'owes a debt to the judgment debtor or … is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor … has an interest.'"  *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470 (2d Cir. 2018) (quoting CPLR § 5222(a)-(b)).  Critically, "[t]he legal 'interest' owned by the judgment debtor in the property held by the third party 'must be … ***a direct interest*** in the property itself which ... is leviable and ***not an indirect interest***.'"  *Preferred Display, Inc. v. CVS Pharmacy, Inc.*, 923 F. Supp. 2d 505, 509 (S.D.N.Y. 2013) ((emphasis added) (internal citations and quotation marks omitted)).  "If, by contrast, the right to payment runs only to a third party and if the only interest the judgment debtor has is an indirect interest, and the judgment debtor benefits only to the extent that he receives benefits from the third party, the judgment creditor has no right or interest that can be restrained."  *KLS Diversified Master Fund, L.P. v. McDevitt*, 2022 WL 220058, at *8 (S.D.N.Y. 2022).  Skat seemingly abandons this direct interest standard and instead suggests

6

that it can issue restraining notices against Non-Party Fresh Pond's accounts because, according to Skat, McGee indirectly "controls" Fresh Pond.  This is not the applicable standard, and in any event, Skat's allegation that McGee indirectly controls Fresh Pond is factually incorrect.

Skat suggests that, because Steve Feldman ("Feldman") and McGee have worked together at other healthcare companies, McGee must possess indirect "control" over Fresh Pond through Feldman.  This is meritless.  The companies identified by Skat are legitimate healthcare businesses, not shell entities or personal holding vehicles.  Skat cannot treat them as such for purposes of upholding a restraining notice absent an adjudication supporting its contention.  *See Capitol Records, LLC v. Defries*, No. 11-cv-6808 (PKC), 2014 WL 5608137, at *1 (S.D.N.Y. Nov. 4, 2014) (plaintiff could not serve restraining notice preventing third party from paying a debt to another entity where plaintiff alleged that entity was the alter ego of the judgment debtor because plaintiff did not possess an adjudication to that effect).  Here, each entity Skat identifies has a board of directors and officers that are charged with fiduciary duties to those companies.  Feldman's executive roles and McGee's board service at those companies reflect industry specialization, not clandestine asset control.  Accepting Skat's theory would mean that any executive who later works with a judgment debtor in an unrelated, lawful enterprise could become presumptively subject to post-judgment restraint, a result wholly unsupported by CPLR Article 52 or due process.  At most, Skat alleges that (i) Feldman and McGee have professional familiarity, (ii) Feldman holds roles in companies where McGee also served, and (iii) Feldman is currently a manager of Fresh Pond.  None of these facts demonstrate that McGee controls Feldman, let alone that McGee controls Fresh Pond.  Control cannot simply be inferred by association, inference, or occupational proximity.  *See Capitol Records, LLC*, 2014 WL 5608137, at *1.  And again, even if Skat could establish that McGee possesses indirect control over Fresh Pond (it cannot), that would

7

be insufficient to support issuance of a restraining notice under CPLR § 5222, which requires McGee to have a direct interest in Non-Party Fresh Pond's restrained property.

**III.   Skat has not established that Non-Party Fresh Pond is in possession of concealed or fraudulently transferred assets; therefore, it cannot restrain Non-Party Fresh Pond's accounts on this basis, either.**

Skat cannot establish that Non-Party Fresh Pond is in possession of concealed or fraudulently transferred assets. No stock transfers were made to shield assets from Skat, and all stocks were either always owned by Non-Party Fresh Pond or were otherwise authorized exchanges for fair market value. Despite the baseless allegations in the M. Weinstein Dec., the alleged transfers in paragraphs 13(i) through 13(x) relating to Fresh Pond[6] were deposits of shares of AdaptHealth Corp. ("Adapt") that were already owned by Fresh Pond and held by Continental Stock Transfer & Trust, a clearing agent that was holding the stock, that were then deposited into Fresh Pond's Chase brokerage account. *See* Declaration of Mark Talucci, Exhibit D ("Ex. D"). Fresh Pond still owns those shares. *Id*. The transfers set forth in the M. Weinstein Dec. paragraphs 13(xi) through (xiv) were not nefarious, either. McGee has a right under the Trust documents to substitute assets at fair market value with approval of the independent trustees. *Id*. These transfers were substitutions of assets approved by the independent trustees whereby McGee contributed his Adapt shares to the Trust (through Fresh Pond) and received the value of those shares in cash from the Trust as of the date of transfer (determined by calculating the highest and lowest price at which a unit of Adapt stock was bought and sold on a public exchange on that date). *Id*. The transfers in (xi-xiv) do not align exactly because of the way Chase Bank accounted for the fluctuation in stock price on the transfer date. *Id*.

---

[6] It is unclear why the M. Weinstein Dec. has allegations relating to 2321 Capital or McGee, but given the undersigned does not represent them, they are not addressed herein. However, this Court should not take as true any of the baseless assertions set forth therein (or in the Response) that lack any documentary support, including the preposterous assertion that McGee obtained his stock in Adapt fraudulently.

To the extent Skat attempts to argue that Non-Party Fresh Pond is in possession of fraudulently obtained assets and that such can form the basis for a restraining notice, Skat's repeated attempts to penalize the Co-Defendants for a fraud they have never been adjudicated liable for is a blatant violation of due process. Skat cannot establish even a prima facie showing of fraud. The judgment at issue in this matter results from a negotiated Settlement Agreement voluntarily entered into by the Co-Defendants. *See* Dkt. 47. The Settlement Agreement itself may not be used as evidence of wrongdoing, and the releases in the Settlement Agreement further provide that Skat "forever and finally" waived and discharged the Co-Defendants of the very claims that form Skat's basis for alleging fraud in this dispute. *Id.* Skat cannot profit from the Settlement Agreement while also attempting to enforce a judgment of liability that it never obtained for claims that it explicitly released.

Because Skat has not established that Non-Party Fresh Pond is in possession of concealed or fraudulently transferred assets, it cannot restrain Non-Party Fresh Pond's accounts on that basis. *See Saadeh v. Kagan*, No. 20-CV-01945 (PAE)(SN), 2025 WL 1442713, at *3 (S.D.N.Y. May 20, 2025) ("Without evidence of transferred assets in Mrs. Kagan's possession, Plaintiff cannot seek a restraining notice."); *Verizon New England Inc. v. Transcom Enhanced Servs., Inc.*, 98 A.D.3d 203, 204 (1st Dep't 2012) (affirming that "a restraining notice is effective only if, at the time of service, the [non-party] on whom the notice is served owes a debt to, or is in possession of property of, the judgment debtor"); *Blue Giant Equip. Corp. v. Tec–Ser, Inc.*, 92 A.D.2d 630 (3d Dep't 1983) (court required a prima facie showing of a fraudulent conveyance by the judgment debtor to support restraining notices against a non-party). While the M. Weinstein Dec., in a conclusory fashion,[7] attempts to lay out transfers by and between McGee and Non-Party Fresh Pond, those

---

[7] Several instances in the M. Weinstein Dec. set forth allegations purporting to be facts without any documentary support. For example, see para. 11 relating to McGee's receipt of equity from Adapt and held by three entities

claims are easily refuted.  *See* <u>Ex. D</u>.  This is why Skat should be required to go through proper discovery against the judgment debtor first, rather than seeking to restrain and obtain information about released Non-Party Fresh Pond based upon flimsy allegations.

### IV.    Skat acknowledges that the Information Subpoenas are legally deficient, and accordingly, they should be quashed.

Non-Party Fresh Pond has standing to contest the Information Subpoenas.[8]  Skat admits in a footnote that its Information Subpoenas do not comply with the certification requirement imposed by CPLR § 5224(3)(i).  This renders the Information Subpoenas defective, and they should be quashed.

### <u>CONCLUSION</u>

For the foregoing reasons, Non-Party Fresh Pond respectfully requests that the Court enter an Order granting the relief requested in its initial Motion, including (i) vacating the Restraining Notices; (ii) quashing the Information Subpoenas; (iii) revoking Counsel for Judgment Creditor's privilege of restraint; (iv) imposing sanctions in the amount of its attorneys' fees and costs; and (v) such and other relief the Court deems proper.

Dated:  January 14, 2026

*/s/ Christopher A. DeGennaro*
FOLEY & LARDNER LLP
Christopher A. DeGennaro
Benjamin I. Basoff
90 Park Ave., New York, NY 10016

---

controlled by McGee with no documentary support.

[8] Courts have consistently held that individuals and corporations have standing to challenge subpoenas of banking records based on privacy interests.  *See Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) (third party standing based on privacy to challenge subpoena issued to a bank where the subpoena "sought records of any account for which [judgment debtor] had 'signatory authority'" and applying balancing test of privacy interest versus relevance) (collecting cases); *Refco Group Ltd., LLC v Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) ("Information regarding a party's financial records may give rise to a privacy interest. Courts in this Circuit have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution.").

Tel.: (212) 682-7474
Fax: (212) 687-2329
cdegennaro@foley.com
bbassoff@foley.com
*Attorneys for Non-Party Fresh Pond
Investments, LLC*

11

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1.(c), I hereby certify that this memorandum contains 3,492 words, exclusive of the caption, table of contents, table of authorities, and this certification. This complies with the word count limit. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Date: New York, New York              By:   *s/ Christopher DeGennaro*
      January 14, 2026                     Christopher DeGennaro

12