

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

May 18, 2026

**VIA ECF**

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Stein et al. v. Skatteforvaltningen*, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

We write on behalf of Defendant/Counterclaim-Plaintiff Skatteforvaltningen ("SKAT"), pursuant to section 2.B of the Court's Individual Practices, respectfully to request a pre-motion conference regarding SKAT's proposed motion, pursuant to Rule 69 of the Federal Rules of Civil Procedure and Sections 5225(b) and 5240 of the New York Civil Practice Law and Rules ("CPLR"), for an order directing the 470 S. Ocean Boulevard Trust (the "470 Trust") and Jonathan Gopman, as trustee for the 470 Trust ("Gopman"), to turn over the $3.75 million purportedly loaned to the 470 Trust by Quadrant Holdings Inc. ("Quadrant"), in partial satisfaction of the Court's judgment dated October 9, 2025 (the "Judgment") for which Luke McGee ("McGee") remains liable to SKAT in the amount of $163,837,354.05.

It has become abundantly clear that the 470 Trust—which McGee established as a vehicle to transfer approximately $30 million into an 8,804-square foot, oceanfront townhouse in Palm Beach, Florida (the "Palm Beach Mansion") to shield his assets from SKAT and take improper advantage of the state's homestead protections—is McGee's alter ego.  Thus, the 470 Trust must turn over the $3.75 million that, as SKAT recently learned, it obtained as a result of McGee's continued efforts to stymie SKAT's ability to enforce the Judgment by mortgaging the Palm Beach Mansion.  McGee's latest machinations—which were set in motion on April 20, 2026 and which the 470 Trust and Gopman withheld from the Court in their recent request to transfer the homestead action to Florida and during the conference held by the Court on April 30, 2026—are described below.

**The Homestead Action**

As the Court is aware, on July 9, 2024, SKAT commenced an action (the "Homestead Action") in the United States District Court for the Southern District of Florida (the "Florida Court") seeking, among other things, to avoid McGee's transfer of approximately $30 million to the 470 Trust to purchase the Palm Beach Mansion, which transfer occurred leading up to McGee's breach of the May 28, 2019 settlement agreement (the "Settlement Agreement") which, ultimately, led to the Judgment. The 470 Trust and Gopman moved to dismiss, arguing, among other things, that SKAT's claims were barred by Florida's homestead exemption and that venue in the Florida Court was improper under the Settlement Agreement's forum-selection clause. On February 21, 2025, the Florida Court granted the 470 Trust and Gopman's motion solely on venue grounds, denied all pending motions as moot, and ordered the Homestead Action transferred to this Court. The Florida homestead issue at the heart of the Homestead Action remains unresolved.

On March 16, 2026, the 470 Trust and Gopman—discontent with their decision to transfer the Homestead Action to this Court—filed a request for a pre-motion conference and requested that the Court transfer the Homestead Action *back* to Florida because, among other things, the Judgment purportedly extinguished the Settlement Agreement, including its forum-selection clause, and because, they claimed, "[a] Florida court is better suited to adjudicate" the homestead issue.[1] On April 30, 2026, the Court held a conference (the "April 30 Conference"), during which the Court expressed skepticism regarding the 470 Trust and Gopman's various theories for returning the Homestead Action to Florida. Neither in its pre-motion letter nor at the April 30 conference did counsel for the Trust and Gopman inform the Court of the details below.

**The Notice of Homestead**

On May 5, 2026, the 470 Trust and Gopman's counsel provided SKAT a "Notice of Homestead," in which Gopman claimed the Palm Beach Mansion "as homestead exempt from levy and execution under Section 4, Article X of the [Florida] State Constitution." (*See* Ex. 1 at 1.) In the Notice of Homestead, Gopman explained that Quadrant—an entity closely tied to McGee[2]—was to provide a $3.75 million loan to the 470 Trust in exchange for a mortgage over the Palm Beach Mansion, which transaction was set to close on April 30, 2026, *i.e.*, the same day as the April 30 Conference. (*Id.* at 1-2.)

Gopman further certified that the Judgment, which SKAT had filed in Palm Beach County, Florida, purportedly "does not constitute a valid lien on the" Palm Beach Mansion and that, pursuant to Section 222 of the Florida Statutes, SKAT is required to commence a declaratory judgment action in Florida state court to determine the Palm Beach Mansion's homestead status within 45 days after the mailing of the Notice of Homestead—*i.e.*, the exact issue before the Court by way of the Homestead Action—lest Quadrant or any buyer take the Palm Beach Mansion "free and clear" of SKAT's judgment lien. (*Id.* at 2.) Gopman executed

---

1. *Skatteforvaltningen v. 470 South Ocean Boulevard Tr., et al.*, No. 1:25-cv-01498-NRB, ECF No. 84 at 2-3 (S.D.N.Y.).

2. McGee is an investment team member and advisor to Quadrant's affiliate, Quadrant Management LLC.

the Notice of Homestead on April 20, 2026 and mailed it to SKAT on May 1, 2026, the day after the April 30 Conference. (*Id.* at 3.)

It is now clear that the 470 Trust and Gopman—at the direction of McGee—anticipating that their re-transfer request would fail, have been engineering an attempt to deprive this Court of jurisdiction to resolve the homestead issue in the Homestead Action and to frustrate SKAT's ability to enforce the Judgment.

**The Court should direct the 470 Trust and**
**<u>Gopman to turn over the $3.75 million Quadrant "loan"</u>**

SKAT will address the Notice of Homestead in due course. In the meantime, the Court should direct the 470 Trust—McGee's alter ego—and Gopman to turn over the $3.75 million obtained purportedly as a loan from Quadrant. "Under New York law, which is made applicable in this Court by Federal Rule of Civil Procedure 69, a judgment creditor may seek the turnover of property not in possession of the judgment debtor, in which the judgment debtor has an interest." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *8 (S.D.N.Y. Aug. 7, 2014). In federal court, a judgment debtor "may initiate a turnover proceeding by motion, rather than by initiating a new proceeding." *Id.*; *see N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under New York state law.").

CPLR 5225(b) "provides for a two-step analysis in determining whether property belonging to a judgment debtor—but in the possession of a third party—should be turned over to a judgment creditor." *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 1:22-CV-08842 (JLR), 2025 WL 2813765, at *12 (S.D.N.Y. Oct. 3, 2025) (quoting *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991)). The first step—"that the judgment debtor 'has an interest' in the property the creditor seeks to reach"—is satisfied here because the 470 Trust, as discussed above, is McGee's alter ego and a vehicle to defraud SKAT. *Id.* at *7-10, *12 (because third-party was judgment debtor's alter ego, the judgment debtor "'ha[d] an interest' in the property the creditor s[ought] to reach"). The second step—"that the judgment debtor is entitled to the possession of such property" or "the judgment creditor's rights to the property are superior to those of the party in whose possession it is," *id.* at *13—is satisfied for the same reason, namely, the 470 Trust is McGee's alter ego. *See, e.g.*, *Advanced Video Techs. LLC v. HTC Corp.*, No. 11 CIV. 06604 (CM), 2019 WL 4198769, at *13 (S.D.N.Y. Aug. 12, 2019) ("Accordingly, if HTC establishes that AVT's principals were indeed alter egos of AVT, that would suffice to entitle it to a turnover order under § 5225(b).").

As such, SKAT respectfully requests that the Court order the 470 Trust and Gopman to turn over the $3.75 million Quadrant "loan" or, alternatively, hold an evidentiary hearing on SKAT's request. *See Universitas Educ., LLC*, 2014 WL 3883371, at *1 (rendering decision on turnover motion following evidentiary hearing).

\* \* \*

SKAT's counsel is available for a pre-motion conference at the Court's convenience.

4

Respectfully submitted,


/s/ Marc A. Weinstein
Marc A. Weinstein

cc:    All counsel of record (via ECF)
       Foley & Lardner LLP (via email)