# Hughes
# Hubbard

**Hughes Hubbard & Reed LLP**
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Marc A. Weinstein
Partner
Direct Dial: +1 (212) 837-6460
Direct Fax: +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

June 12, 2026

**VIA ECF**

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Stein et al. v. Skatteforvaltningen*, No. 23-cv-02508 (NRB)

Dear Judge Buchwald:

We write on behalf of Defendant/Counterclaim Plaintiff Skatteforvaltningen ("SKAT") in response to the 470 South Ocean Boulevard Trust's (the "470 Trust") letter dated May 21, 2026 (the "May 21 Letter," ECF No. 280). SKAT of course does not dispute that there can be no turnover of the purported $3.75 million Quadrant loan from the 470 Trust if it is not in possession or custody of those funds. As such, if the 470 Trust or McGee produces documents demonstrating that Quadrant sent the money to a person or entity other than the 470 Trust—as now suggested by McGee's latest game of peek-a-boo—SKAT does not intend to move for a turnover from the 470 Trust and will instead seek turnover from the actual recipient.

That said, as is now customary from McGee's cabal, the May 21 Letter provides little actual proof and raises more questions than answers. For starters, the 470 Trust represents that McGee personally "borrowed [the] $3.75 million . . . in September 2025"—prior to the entry of the Judgment—"to pay [his] legal fees" (May 21 Letter at 2), but fails to provide any account statements showing the movement of those funds from Quadrant to McGee and/or from McGee to his counsel, nor has SKAT seen any such transfers in the various bank account statements it has obtained. Instead, the 470 Trust submits the declaration of its trustee, Jonathan E. Gopman, claiming simply that the 470 Trust "did not receive any proceeds of the loan referenced in the Notice of Homestead," without providing any evidence of where those funds were sent. (ECF No. 280-2, ¶ 10.) The 470 Trust, in effect, asks that SKAT and the Court take its word about the purpose of the purported loan, the amount of the loan, the timing of any transfers related to the loan, and where the proceeds went. Gopman maintains a steadfast silence on critical questions,

such as whether all the $3.75 million was sent by McGee to his lawyers, when those monies were sent, and whether and to what extent those funds have been applied to fees incurred.

This approach of providing as little information as possible to narrowly address an issue while dancing around the actual facts is not new. As the Court is aware, Fresh Pond Investment LLC ("Fresh Pond"), through the same counsel, submitted the declaration of Steve Feldman (Fresh Pond's current Manager and McGee's close business associate) stating that "McGee is not an officer, manager or member of Fresh Pond and has no interest in any asset in the accounts" (ECF No. 236, ¶ 5), suggesting that McGee has no connection with Fresh Pond. Once SKAT proffered evidence of the extensive ties between McGee and Fresh Pond (*see* ECF Nos. 245-46), Feldman was replaced by Mark Talucci—a close friend of McGee yet a purported "independent" trustee of the LBM Family Trust—who entirely failed to address in his declaration the extensive evidence of McGee's control over Fresh Pond (*see* ECF No. 251-4). To the extent there is a "*modus operandi*" at play here (May 21 Letter at 1), it is McGee's repeated use of his cronies— including Quadrant, to which McGee has extensive ties—to obfuscate the record and frustrate SKAT's ability to enforce its approximately $164 million judgment.

Indeed, contrary to the 470 Trust's assertion (May 21 Letter at 1), SKAT requested in its discovery demands in this action that McGee identify "any material transfers (*i.e.* aggregating $10,000 or more to any transferee from January 1, 2012 to the present) to any third parties" (*see* Ex. 1 at 5-6), which request plainly covers the purported $3.75 million Quadrant loan, whether by way of the security interests McGee purportedly transferred to Quadrant or the legal fees he purportedly paid with the proceeds. McGee failed to provide any information in response to SKAT's discovery demands "relating to the loan referenced in the Notice of Homestead." (May 21 Letter at 1.) And as noted above, these transfers do not appear in the various bank statements SKAT has obtained in discovery.

The suggestion that SKAT could have simply contacted opposing counsel, which "[w]ould have clarified" SKAT's purported "erroneous conclusions" (May 21 Letter at 1), is breathtaking. For years, McGee has used his various counsel—just as he uses his circle of friends—to structure his assets to avoid judgment enforcement, and there is no reason to believe that counsel would not have continued its mantra that McGee is penniless and judgment proof, and that there is nothing here to see. It is counsel who put forward the less than forthcoming affidavits of Feldman, Talucci, and Gopman, and counsel who did not disclose to this Court, much less SKAT, the existence of this mortgage and Notice of Homestead in its request for a pre-motion conference regarding its motion to retransfer the Homestead Action back to Florida or at the Court's April 30, 2026 conference regarding the same.[1] And it is the same counsel who have done everything to avoid producing information to which SKAT is entitled.

Finally, the 470 Trust's representations regarding the Quadrant loan are inconsistent with the records SKAT has been able to obtain through third-party discovery. Specifically, the September 12, 2025 loan from Quadrant Management LLC was for $2.5 million, not $3.75 million as the 470 Trust claims (*see* May 21 Letter at 2) and as stated in the Notice of Homestead

---

1. *See Skatteforvaltningen v. 470 S. Ocean Blvd. Tr.*, 25-cv-01498-NRB, ECF No. 95 at 8-9 (S.D.N.Y.) (discussing history of the Notice of Homestead).

(*see* ECF No. 277-1 at 1), suggesting either an entirely different transaction or, at the very least, one different in character and/or scope than described.[2]   Far from "fil[ing] first" and investigat[ing] later" (May 21 Letter at 1), SKAT continues to peel back the onion and discover the means by which McGee moves his money and shields it from SKAT, despite McGee's efforts to stymie SKAT's ability to do so or to obtain meaningful information about these transactions.[3]

The questions remain as to where the $3.75 million purported loan proceeds went, when the money was transferred from Quadrant, and whether those funds remain in McGee's possession and control and thus available for SKAT to satisfy a portion of its Judgment. Accordingly, SKAT respectfully maintains its request for a conference before the Court to address the issues set forth above.

Respectfully submitted,

/s/ Marc A. Weinstein
Marc A. Weinstein

cc:  All counsel of record (via ECF)

SKAT's request for a conference before the Court is granted.  A conference is hereby scheduled for Monday, June 22, 2026, at 12:30 PM in Courtroom 21A.  Any response from Foley & Lardner LLP to SKAT's June 12, 2026 letter shall be filed no later than Wednesday, June 17, 2026, at 5:00 PM.

Dated:      June 15, 2026
            New York, New York

SO ORDERED.

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

2.   SKAT has not attached the actual loan agreement as Quadrant produced the document to SKAT through a third-party subpoena and will not consent to removing its confidentiality designation.

3.   Contrary to the 470 Trust's assertion (May 21 Letter at 2), the Quadrant UCC statement sheds little light on the existence of the purported loan.  For one thing, the entity listed on the Quadrant UCC statement is Quadrant Management LLC, not Quadrant Holdings Inc., as referenced in the Notice of Homestead.  (*Contrast* ECF No. 277-1 *with* ECF No. 280-1.)  Nor does the Quadrant UCC statement state the purported loan amount.  (*See* ECF No. 280-1.)