**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATTHEW STEIN and JEROME LHOTE,

        Plaintiffs/Counterclaim-Defendants,

        vs.

SKATTEFORVALTNINGEN,

        Defendant/Counterclaim-Plaintiff,

        vs.

LUKE MCGEE,

        Counterclaim-Defendant.

Case No. 23-cv-02508 (NRB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/COUNTERCLAIM-PLAINTIFF SKATTEFORVALTNINGEN'S MOTION BY ORDER TO SHOW CAUSE FOR CONTEMPT AND FOR TURNOVER OF PROPERTY <u>PURSUANT TO FRCP 69 AND CPLR §§ 5225(a) AND 5251</u>**

HUGHES HUBBARD & REED LLP
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Defendant / Counterclaim-Plaintiff Skatteforvaltningen*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

    The Judgment....................................................................................................................2

    SKAT's Restraining Notice ...............................................................................................3

    McGee's Missing Millions ................................................................................................4

    McGee's Currently Identified Sources of Funds ..............................................................5

    McGee's Cash Accounts....................................................................................................6

    McGee's Investment Accounts ..........................................................................................9

    McGee's Digital Assets ...................................................................................................11

    McGee's Vehicles............................................................................................................12

ARGUMENT............................................................................................................................13

    **I.**     The Court Should Hold McGee in Contempt for His Repeated and
            Ongoing Violations of the Restraining Notice........................................................13

    **II.**    The Court Should Order McGee to Turn Over Certain Funds and
            Property to Partially Satisfy the Judgment.............................................................17

            A.    SKAT is entitled to an order directing McGee to turn over
                  all funds he holds in the McGee Cash Accounts. .....................................19

            B.    SKAT is entitled to an order directing McGee to turn over
                  all funds and assets he holds in the McGee Investment
                  Accounts. .................................................................................................21

            C.    SKAT is entitled to an order directing McGee to turn over
                  all funds and assets he holds in the McGee Digital Asset
                  Accounts. .................................................................................................23

            D.    SKAT is entitled to an order directing McGee to turn over
                  each of his vehicles. ..................................................................................24

            E.    SKAT is entitled to an order directing McGee to turn over
                  future payments from the McGee Payment Sources.................................24

CONCLUSION.........................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*,
674 F. Supp. 3d 28 (S.D.N.Y. 2023)..................................................................................18

*245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*,
No. 23-842, 2024 WL 1506798 (2d Cir. Apr. 8, 2024) ...............................................18, 24, 25

*ABKCO Indus. v. Apple Films*,
350 N.E.2d 899 (1976)......................................................................................................25

*Advance Serv. Grp., LLC v. Vision Home Builders LLC*,
212 N.Y.S.3d 918, slip op. (Sup. Ct., Kings Cnty. 2024).....................................................19, 21

*Bainbridge Fund Ltd. v. Republic of Argentina*,
690 F. Supp. 3d 411 (S.D.N.Y 2023)..................................................................................20, 24

*Bank of Am., N.A. v. City View Blinds of N.Y. Inc.*,
No. 22-cv-09871, 2025 WL 2771442 (S.D.N.Y. Sept. 29, 2025) ...........................................21

*Belen v. Herman*,
No. 22-cv-6455, 2024 WL 182588 (S.D.N.Y. Jan. 17, 2024) ...................................................22

*Benthos Master Fund, Ltd. v. Etra*,
No. 20-cv-3384, 2022 WL 17819592 (S.D.N.Y. Dec. 20, 2022).................................... *passim*

*In re Breslin Realty Corp. v. Smith & De Groat, Inc.*,
No. 14-008594, 2015 WL 2441885 (Sup. Ct., Nassau Cnty. Jan. 8, 2015)............................26

*Breslin Realty Dev. Corp. v. Morgan Stanley*,
10 N.Y.S.3d 841 (Sup. Ct., Nassau Cnty. 2015)...................................................................23

*Cadle Co. v. Newhouse*,
20 Fed. Appx. 69 (2d Cir. 2001).........................................................................................26

*Chevron Corp. v. Donziger*,
384 F. Supp. 3d 465 (S.D.N.Y. 2019)..............................................................................13, 14

*Cordius Tr. v. Kummerfeld Assocs.*,
658 F. Supp. 2d 512 (S.D.N.Y. 2009)..................................................................................13

*Cordius Tr. v. Kummerfeld*,
No. 99-cv-3200, 2009 WL 3416235 (S.D.N.Y. Oct. 23, 2009)..............................................15

*Creditors v. Wells Fargo Clearing Servs. LLC*,
  No. 56792/2023, 2023 N.Y. Misc. LEXIS 39921 (Sup. Ct., Westchester Cnty.
  Mar. 1, 2023)........................................................................................................22

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
  879 F.3d 462 (2d Cir. 2018)................................................................................13

*Deep v. Boies*,
  No. 09-MC-0073, 2009 WL 10675920 (N.D.N.Y Dec. 18, 2009)........................17

*E. Cap. Invs. Corp. v. Gentech Holdings, Inc.*,
  No. 21-cv-10300, 2024 WL 5010130 (S.D.N.Y. Nov. 19, 2024)....................14, 17

*Freeman v. Giuliani*,
  No. 24-mc-00353, 2024 WL 4546883 (S.D.N.Y. Oct. 22, 2024)....................24, 25

*Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*,
  836 N.Y.S.2d 4 (1st Dep't 2007) ....................................................................20, 22

*IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*,
  982 N.E.2d 609 (2012).........................................................................................19

*JPR Old Riverhead, Ltd. v. Hudson City Sav. Bank*,
  965 N.Y.S.2d 176 (2d Dep't 2013).......................................................................21

*Kassover v. Prism Ventures Partners, LLC*,
  No. 602434/2005, 2017 WL 4011218 (Sup. Ct., N.Y. Cnty. Sept. 12, 2017) .............19, 21, 25

*Keawsri v. Ramen-Ya Inc.*,
  No. 17-cv-02406, 2022 WL 17813236 (S.D.N.Y. Dec. 19, 2022) ........................20, 22, 23, 24

*KLS Diversified Master Fund, L.P. v. McDevitt*,
  No. 19-cv-3774, 2022 WL 220058 (S.D.N.Y. Jan. 25, 2022) .................................17

*Koehler v. Bank of Bermuda Ltd.*,
  911 N.E.2d 825 (2009).....................................................................................18, 25

*MacArthur I, Inc. v. Fields*,
  135 N.Y.S.3d 393 (1st Dep't 2020) ..................................................................14, 15

*Miller v. Doniger*,
  814 N.Y.S.2d 141 (1st Dep't 2006) ..................................................................22, 23

*Ministers & Missionaries Ben. Bd. v. Snow*,
  45 N.E.3d 917 (2015)............................................................................................19

*N.Y. State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989)................................................................................18

iii

*New Era Lending LLC v. Cavallino Auto Servs. LLC*,
   No. CV-003613-16/NY, 2024 WL 4097368 (NYC Civ. Ct. Aug. 29, 2024)..........................24

*Pegaso Dev. Inc. v. Moriah Edu. Mgmt. LP*,
   No. 19-cv-7787, 2022 WL 1306571 (S.D.N.Y. May 22, 2022) ...............................................17

*In re Portnoy*,
   201 B.R. 685 (Bankr. S.D.N.Y. 1996)...................................................................................27

*Potter v. MacLean*,
   904 N.Y.S.2d 551 (3d Dep't 2010) .......................................................................................15

*Schwarz v. ThinkStrategy Cap. Mgmt. LLC*,
   No. 09-cv-9346, 2015 WL 4040558 (S.D.N.Y. July 1, 2015).................................................16

*SEC v. Princeton Econ. Int'l Ltd.*,
   84 F. Supp. 2d 443 (S.D.N.Y. 2000)......................................................................................21

*Shamrock Power Sales, LLC v. Scherer*,
   No. 12-cv-8959, 2016 WL 11484445 (S.D.N.Y. June 15, 2016) .....................................26, 27

*Signature Bank v. HSBC Bank USA, N.A.*,
   889 N.Y.S.2d 242 (2d Dep't 2009).......................................................................14, 20, 21, 25

*Starbare II Partners, L.P. v. Sloan*,
   629 N.Y.S.2d 23 (1st Dep't 1995) .........................................................................................25

*Swig v. Properties Asset Mgmt. Servs., LLC*,
   924 N.Y.S.2d 368 (1st Dep't 2011) .......................................................................................26

*TBG Funding LLC v. Kenwood Commons, LLC*,
   No. 902353-19, 2026 WL 504166 (Sup. Ct., Albany Cnty. Feb. 12, 2026)...........................22

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*,
   No. 22-cv-1761, 2026 WL 161298 (S.D.N.Y. Jan. 21, 2026) ...............................................18

*VNB Loan Servs., Inc. v. Charles Schwab & Co.*,
   No. 608328/2019, 2019 N.Y. Misc. LEXIS 66624 (Sup. Ct., Suffolk Cnty.
   Sept. 25, 2019) ....................................................................................................................22

**Statutes and Rules**

CPLR Article 52 ......................................................................................................13, 24

CPLR § 5201(b)...........................................................................................................24, 25

CPLR § 5205(a)(8) ............................................................................................................24

CPLR § 5205(c)(5) ............................................................................................................23

CPLR § 5205(d)................................................................................................................26

CPLR § 5205(d)(2) ..........................................................................................................26

CPLR § 5222.......................................................................................................1, 3, 13, 15

CPLR § 5222(b)...........................................................................................................3, 15

CPLR § 5225.......................................................................................................21, 24

CPLR § 5225(a) .......................................................................................................... *passim*

CPLR § 5225(c) ..............................................................................................................22

CPLR § 5240..................................................................................................................22

CPLR § 5251.............................................................................................................1, 13

Federal Rule of Civil Procedure 62(a) ...............................................................................3

Federal Rule of Civil Procedure 69(a)(1) .........................................................................13

Defendant/Counterclaim-Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in support of its motion by order to show cause why Counterclaim-Defendant Luke McGee ("McGee") should not be:  (i) held in contempt pursuant to Section 5251 of the New York Civil Practice Law and Rules ("CPLR") for violating the restraining notice SKAT served on him pursuant to CPLR § 5222; and (ii) ordered, pursuant to Rule 69 of the Federal Rules of Civil Procedure and CPLR § 5225(a), to turn over certain funds and personal property in partial satisfaction of the Court's October 9, 2025 judgment (the "Judgment").

## PRELIMINARY STATEMENT

McGee is a judgment debtor who owes SKAT approximately $164 million for breaching a settlement agreement that resolved SKAT's potential civil claims against him (the "Settlement Agreement").  Since entry of the Judgment, far from satisfying that obligation, McGee instead has spent more than $2.5 million—dissipating assets that should be preserved for SKAT's recovery.

By this motion by order to show cause, SKAT seeks an order:  (i) holding McGee in contempt pursuant to CPLR § 5251 for his repeated and ongoing violations of the restraining notice served on December 4, 2025 under CPLR § 5222, so that assets to which SKAT is entitled are preserved; and (ii) directing McGee, pursuant to CPLR § 5225(a), to liquidate assets and turn over the proceeds, together with funds held in specified accounts and other personal property, in partial satisfaction of the Judgment.  SKAT's motion by order to show cause is warranted given McGee's repeated and ongoing dissipation of assets and funds, which threatens to leave SKAT holding an empty bag by the time ordinary motion practice concludes.

McGee's conduct warrants the Court's exercise of its contempt power under CPLR § 5251.  That provision permits the Court to punish, as a contempt of court, a judgment debtor's disobedience of a restraining notice.  A contempt order is appropriate where, as here, a judgment

1

debtor willfully disobeys a valid restraining notice by receiving funds into his accounts, failing to pay those funds to the judgment creditor, dissipating or transferring funds and assets from those accounts, and transferring or encumbering property, including real property, in which he has an interest.  On December 4, 2025, SKAT served McGee with a valid restraining notice.  Since then, McGee has received more than $1.6 million into his known accounts, paid none of those funds to SKAT, and dissipated, transferred or withdrawn more than $1.3 million from those accounts. Additionally, in September and December 2025, McGee personally borrowed $3.75 million, $1.25 million of which he directed to be transferred directly to third parties after receiving the restraining notice, and subsequently he secured the full principal of the loan by mortgaging his Palm Beach residence.  The Court should hold McGee in contempt for his blatant disregard of SKAT's restraining notice.

SKAT also satisfies the standard for an order directing McGee to turn over property to satisfy the Judgment under CPLR § 5225(a).  To obtain that relief, a judgment creditor need only establish that the judgment debtor possesses, and has an interest in, the property at issue.  That standard is met here.  McGee admits that he owns each account and item of personal property targeted by SKAT, including cash accounts, investment accounts, digital asset accounts and vehicles, and he possesses a contingent interest in future purported payroll payments he may receive into his accounts.  The Court should direct McGee to turn over the contents of those accounts and the other personal property identified in SKAT's motion by order to show cause.

## FACTUAL BACKGROUND

### The Judgment

Under the Settlement Agreement, McGee and his co-conspirators, Matthew Stein ("Stein") and Jerome Lhote ("Lhote"), agreed, jointly and severally, to repay SKAT the "net proceeds" they received from SKAT's payment of fraudulent tax refund applications—totaling

2

approximately $250 million.  (Opinion & Order, dated Sept. 22, 2025 ("Opinion & Order") at 28-29, ECF No. 215.)  Their final payment under the Settlement Agreement was due by May 28, 2023.  (Opinion & Order at 31-32.)

Rather than satisfy that obligation, Stein and Lhote commenced this action on March 24, 2023.  (*See* Compl., ECF No. 11.)  On April 12, 2023, SKAT asserted counterclaims against Stein and Lhote and impleaded McGee, alleging multiple breaches of the Settlement Agreement and seeking more than DKK 1 billion owed to SKAT thereunder.  (*See, e.g.*, First Am. Answer, Aff. Defenses & Countercls., ECF No. 21.)

Following a bench trial, the Court issued an Opinion & Order on September 22, 2025, finding in SKAT's favor on all counts and holding that judgment should be entered against McGee, Stein and Lhote, jointly and severally, in the amount of approximately DKK 1 billion. (Opinion & Order at 115-16.)  On October 9, 2025, the Clerk of Court entered judgment in the amount of $163,984,894.05.  (*See* ECF No. 221.)  Today, $163,837,354.05 remains outstanding. (Declaration of Marc A. Weinstein, dated June 24, 2026 ("Weinstein Decl.") ¶ 5.)

**SKAT's Restraining Notice**

In mid-November 2025, after waiting thirty days as required by Federal Rule of Civil Procedure 62(a), SKAT began enforcing the Judgment against McGee, Stein and Lhote.  On December 4, 2025, SKAT served McGee with a restraining notice pursuant to CPLR § 5222, along with the required exemption notice (the "Restraining Notice"). (Weinstein Decl. ¶ 7.)  The Restraining Notice prohibited McGee—and continues to prohibit him—from making or suffering any sale, assignment, transfer or interference with property in which he has an interest.  (*Id.*, Ex. 2); *see* CPLR § 5222(b).  As described below, McGee almost immediately disregarded that obligation and continues to do so.  (*See, e.g.,* Weinstein Decl. ¶¶ 21, 23, 25-27, 32, 38, 40, 49, 54.)

**McGee's Missing Millions**

McGee worked as an investment banker at Merrill Lynch and Deutsche Bank from 2005 to 2010. (*Id.* ¶ 13.) In 2010, he joined the private equity firm Quadrant Management, Inc., where he met Stein and Lhote and began perpetrating the fraud against SKAT. (*Id.*) While at Quadrant Management, Inc., McGee promoted the fund's involvement in the durable medical equipment ("DME") sector, including the acquisition of QMES LLC and its acquisition of several smaller DME companies. (*Id.*)

In 2014, McGee became Chief Executive Officer of QMES LLC, later renamed AdaptHealth LLC. (*Id.* ¶ 14.) In November 2019, McGee restructured and took AdaptHealth Corp. public, becoming its Chief Executive Officer and a Director. (*Id.*) Through the public offering and his role as Chief Executive Officer, McGee, personally, and entities he formed and controlled, received at least $150 million in cash, shares and warrants of AdaptHealth Corp. (*Id.*) Together with the proceeds of his fraud against SKAT, that compensation allowed McGee to amass substantial wealth. (*Id.* ¶ 15.)

McGee's document productions and discovery responses—which remain deficient and incomplete—purport to tell a very different story. They identify accounts and assets worth less than $1 million, a figure irreconcilable with his known compensation and financial gains. (*Id.* ¶¶ 14-15.) SKAT seeks turnover of the limited assets McGee has identified through this motion by order to show cause.

But McGee's deficient discovery responses, summarized below, reveal that most of his wealth remains unaccounted for. SKAT anticipates seeking further relief, including to compel McGee's compliance with his discovery obligations and against third parties who may be McGee's alter egos or recipients of his fraudulent transfers.

4

**McGee's Currently Identified Sources of Funds**

McGee currently receives purported payroll payments from at least three entities:

- MedBridge Healthcare LLC ("Medbridge"), a sleep laboratory management services provider in which McGee publicly identifies himself as a "founding investor." (*Id.* ¶¶ 16, 44, Ex. 4.) McGee admits holding an investment in ███ ████████, which appears to be a holding entity for Medbridge. (*Id.*) Steve Feldman—trustee to McGee's alter ego, the LBM Family Trust—is Medbridge's president. (*Id.*, Ex. 5) Since service of the Restraining Notice, Medbridge has paid McGee between $2,610.83 and $3,028.07 every two weeks. (*Id.* ¶ 26(a).)

- 3B Medical, Inc. d/b/a React Health ("3B Medical"), a sleep and respiratory medical device company in which McGee publicly identifies himself as a "founding investor." (*Id.* ¶¶ 17, 47, Ex. 4.) McGee admits holding an investment in █████████████████, which appears to be a holding entity for 3B Medical. (*Id.*) Since service of the Restraining Notice, 3B Medical has paid McGee between $1,812.53 and $3,359.64 every two weeks. (*Id.* ¶ 26(b).)

- The McGee 2021 NGCG Nevada Trust, a trust for which McGee acted as grantor. (*Id.* ¶¶ 18, 45.) Steve Feldman is an investment advisor to the McGee 2021 NGCG Nevada Trust. (*Id.*) Since service of the Restraining Notice, the McGee 2021 NGCG Nevada Trust has paid McGee between $17,255.48 and $48,447.48 each month. (*Id.* ¶ 26(c).)

Between December 2025 and March 2026, McGee received nearly $140,000 in purported payroll payments from Medbridge, 3B Medical and the McGee 2021 NGCG Nevada Trust—an average of approximately $35,000 per month. (*Id.* ¶ 26.) Presumably such payments have

5

continued to the present, which would almost double the amount received since the Restraining Notice was served.

On September 12, 2025, McGee executed a senior secured loan agreement and term promissory note with Quadrant Management LLC ("Quadrant") wherein Quadrant agreed to loan McGee $2.5 million. (*Id.* ¶ 19, Ex. 6.) That day, McGee directed Quadrant to disburse the proceeds of that loan to ███████████████████████████ (*Id.*, Ex. 7.) On December 26, 2025, McGee directed Quadrant to disburse an additional $500,000 to ████████ ██████████████████, and $750,000 to ██████████████ (*Id.*, Ex. 8.) McGee and Quadrant formalized the increase in the loan's principal—from $2.5 million to $3.75 million—in an amended and restated senior secured term promissory note dated December 30, 2025. (*Id.*, Ex. 9.) McGee subsequently caused the loan to be secured by his Palm Beach mansion at 470 S. Ocean Boulevard. (*See* Letter from Luke McGee (June 18, 2026), ECF No. 286.)

**McGee's Cash Accounts**

McGee owns and maintains saving, checking and money market accounts at various financial institutions. Through this motion by order to show cause, SKAT seeks all funds McGee holds in the following accounts (collectively, the "McGee Cash Accounts"):

- An American Express Savings account ending in ███ ("Account ███"). As of April 23, 2026, Account ███ contained ████████. (*Id.* ¶ 20.) McGee asserts that he owns Account ███ jointly with his wife. (*Id.*) Since service of the Restraining Notice, McGee has received at least $115,000 into Account ███ and transferred at least $74,589.12 out of it. (*Id.* ¶ 21.)

6

- An American Express Savings account ending in ▇▇ ("Account ▇▇"). As of April 23, 2026, Account ▇▇ contained ▇▇▇▇. (*Id.* ¶ 22.) McGee is the sole owner of Account ▇▇. (*Id.*) Since service of the Restraining Notice, McGee has received at least $230,201.57 into Account ▇▇ and transferred at least $222,518.68 out of it. (*Id.* ¶ 23.)

- A Citizens Bank Checking account ending in ▇▇ ("Account ▇▇"). As of April 10, 2026, Account ▇▇ contained ▇▇▇▇. (*Id.* ¶ 24.) McGee asserts that he owns Account ▇▇ jointly with his wife. (*Id.*) Since service of the Restraining Notice, McGee has received at least $1,257,246.43 into Account ▇▇ and transferred at least $978,014.46 out of it—including paying more than $50,000 in personal credit card bills, paying approximately $90,000 as unspecified payroll payments, and paying $550,000 to his lawyers in this action and others.[1] (*Id.* ¶¶ 25, 27.) Medbridge, 3B Medical and the McGee 2021 NGCG Nevada Trust each pay their respective purported payroll distributions to McGee into Account ▇▇. (*Id.* ¶ 26.)

- A Citizens Bank Money Market account ending in ▇▇ ("Account ▇▇"). As of April 10, 2026, Account ▇▇ contained ▇▇▇▇. (*Id.* ¶ 28.) McGee asserts that he owns Account ▇▇ jointly with his wife. (*Id.*)

---

1. These payments come on top of the apparent $3.75 million in loans from Quadrant, $1.25 million of which McGee borrowed after the Restraining Notice was served, and all of which he directed be paid to ▇▇ different law firms, purportedly to fund McGee's legal fees. (*See* Weinstein Decl. ¶ 19; ECF No. 286; Letter from SKAT (June 19, 2026), ECF No. 287.)



- A J.P. Morgan account ending in ▮▮ ("Account ▮▮"). As of April 30, 2026, Account ▮▮ contained ▮. (*Id.* ¶ 29.) McGee is the sole owner of Account ▮▮. (*Id.*)

- A J.P. Morgan account ending in ▮▮ ("Account ▮▮"). As of November 28, 2025, Account ▮▮ contained ▮. (*Id.* ¶ 30.) McGee is the sole owner of Account ▮▮. (*Id.*)

- A J.P. Morgan account ending in ▮▮ ("Account ▮▮"). As of March 31, 2026, Account ▮▮ contained ▮. (*Id.* ¶ 31.) McGee ostensibly holds Account ▮▮ in trust for his wife. (*Id.*) Since service of the Restraining Notice, McGee has transferred at least $1,870.20 out of Account ▮▮, draining the account balance to ▮. (*Id.* ¶ 32.)

- A Mercury Checking account ending in ▮▮ ("Account ▮▮"). As of April 30, 2026, Account ▮▮ contained ▮▮. (*Id.* ¶ 33.) McGee is the sole owner of Account ▮▮. (*Id.*)

- A Mercury Savings account ending in ▮▮ ("Account ▮▮"). As of April 30, 2026, Account ▮▮ contained ▮▮. (*Id.* ¶ 34.) McGee is the sole owner of Account ▮▮. (*Id.*)

- A Robinhood Financial LLC savings account ending in ▮▮ ("Account ▮▮"). As of March 31, 2026, Account ▮▮ contained ▮▮. (*Id.* ¶ 35.) McGee is the sole owner of Account ▮▮. (*Id.*)

- A Robinhood Financial LLC joint checking account ending in ▮▮ ("Account ▮▮"). As of March 31, 2026, Account ▮▮ contained ▮ (*Id.* ¶ 36.) McGee asserts that he owns Account ▮▮ jointly with his wife. (*Id.*)

8

- A TD Bank Savings account ending in ▮▮ ("Account ▮▮"). As of March 31, 2026, Account ▮▮ contained ▮▮▮▮. (*Id.* ¶ 37.) McGee asserts that he owns Account ▮▮ jointly with his wife. (*Id.*) Since service of the Restraining Notice, McGee has transferred at least $14,000 out of Account ▮▮. (*Id.* ¶ 38.)

- A TD Bank Checking account ending in ▮▮ ("Account ▮▮"). As of April 17, 2026, Account ▮▮ contained ▮▮▮▮. (*Id.* ¶ 39.) McGee asserts that he owns Account ▮▮ jointly with his wife. (*Id.*) Since service of the Restraining Notice, McGee has transferred at least $129.99 out of Account ▮▮. (*Id.* ¶ 40.)

McGee has violated the Restraining Notice by receiving and failing to pay to SKAT at least $1,602,448, by transferring at least $1,291,122.45 out of the McGee Cash Accounts, and by encumbering his Palm Beach mansion with a $3.75 million mortgage in favor of Quadrant while directing the proceeds of that mortgage be disbursed directly to law firms for his benefit. (*Id.* ¶¶ 21, 23, 25, 27, 32, 38, 40.) The funds remaining in McGee's Cash Accounts must be turned over to SKAT in partial satisfaction of the Judgment, and the Court should order McGee to demand that ▮▮▮▮ return all of his money to Account ▮▮ and to turn that money over to SKAT immediately.

**McGee's Investment Accounts**

McGee individually owns and maintains brokerage and investment accounts with various financial institutions. Through this motion by order to show cause, SKAT seeks all funds and assets that McGee holds in the following accounts (collectively, the "McGee Investment Accounts"):

9

- An Ameriflex HSA investment account in the name of Luke McGee ("HSA Account"). (*Id.* ¶ 42.) As of March 31, 2026, the HSA Account held ████. (*Id.*)

- A Medalist Partners Harvest Fund, LP account ending in ████ ("Account ████"). (*Id.* ¶ 43.) On November 30, 2025, McGee liquidated the assets in Account ████ and transferred $1,060.11 to Account ████. (*Id.*) Since then, Account ████ has held no assets or funds.

- A Medbridge Healthcare LLC 401k plan ("Medbridge 401k"). (*Id.* ¶ 44.) McGee began contributing to the Medbridge 401k in October 2024. (*Id.*) As of March 31, 2026, the Medbridge 401k held ████ worth of American Funds 2050 Target Date Retirement Fund – R6. (*Id.*)

- A Paychex Pooled Employer 401k plan ("Paychex 401k"). (*Id.* ¶ 45.) McGee began contributing to the Paychex 401k in October 2025. (*Id.*) As of December 31, 2025, the Paychex 401k held ████ worth of SSDLX SSGA Target Retirement 2050 K. (*Id.*)

- A Raymond James Rollover IRA account ████ ("Account ████"). (*Id.* ¶ 46.) McGee opened Account ████ in April 2025. (*Id.*) As of April 30, 2026, Account ████ held ████. (*Id.*)

- A React Health 401k plan ("React Health 401k"). (*Id.* ¶ 47.) McGee began contributing to the React Health 401k in January 2025. (*Id.*) As of March 31, 2026, the React Health 401k held ████ worth of T. Rowe Price Retirement Hybrid 2040 Tr-T14. (*Id.*)

- A Robinhood Financial LLC brokerage account ending in ▮▮ ("Account ▮▮"). (*Id.* ¶ 48.) As of April 30, 2026, Account ▮▮ held ▮▮. (*Id.*) McGee is the sole owner of Account ▮▮. (*Id.*) Since service of the Restraining Notice, McGee has transferred at least $106,200 out of Account ▮▮ and sold assets held in that account. (*Id.* ¶ 49.)

- A Robinhood Financial LLC traditional IRA account ending in ▮▮ ("Account ▮▮"). (*Id.* ¶ 50.) McGee began contributing to Account ▮▮ in September 2025. (*Id.*) As of March 31, 2026, Account ▮▮ held a cash balance of ▮▮. (*Id.*)

McGee has violated the Restraining Notice by transferring at least $106,200 out of the McGee Investment Accounts. (*Id.* ¶ 49.) The funds and assets remaining in those accounts must be turned over to SKAT in partial satisfaction of the Judgment.

**McGee's Digital Assets**

McGee owns and maintains digital assets, including cryptocurrencies, at various institutions. Through this motion by order to show cause, SKAT seeks all funds and assets McGee holds in the following digital asset accounts (collectively, the "McGee Digital Asset Accounts"):

- A Coinbase account ending in ▮▮ ("Account ▮▮"). (*Id.* ¶ 52.) As of March 31, 2026, Account ▮▮ contained cash and cryptocurrencies valued at ▮▮, including ▮▮ Bitcoin, ▮▮ Ethereum, ▮▮ Gemini Dollar, ▮▮ Solana and ▮▮ USD Coin. (*Id.*) McGee is the sole owner of Account ▮▮. (*Id.*)

11

- A Robinhood Crypto account ending in ████ ("Account ████"). (*Id.* ¶ 53.) As of March 31, 2026, Account ████ contained cryptocurrencies valued at ████████, including ██████ Ethereum. (*Id.*) In December 2025, McGee transferred at least ████████ Bitcoin—then worth approximately $217,000—from Account ████.[2] (*Id.* ¶ 54.) McGee is the sole owner of Account ████. (*Id.* ¶ 53.)

McGee has violated the Restraining Notice by transferring assets worth approximately $217,000 out of the McGee Digital Asset Accounts. (*Id.* ¶ 54.) The funds and assets remaining in those accounts must be turned over to SKAT in partial satisfaction of the Judgment.

**McGee's Vehicles**

McGee owns and possesses several vehicles. Through this motion by order to show cause, SKAT seeks McGee's turnover of the following vehicles:

- 2020 Tesla Model X. (*Id.* ¶ 56.) McGee asserts that he owns the 2020 Tesla Model X jointly with his wife. (*Id.*)

- 2020 Moke LSV.[3] (*Id.* ¶ 57.)

- 2024 LSV. (*Id.* ¶ 58.) McGee asserts that he owns the 2024 LSV jointly with his wife. (*Id.*)

- Golf carts. (*Id.* ¶ 59.) McGee asserts that he owns the golf carts jointly with his wife. (*Id.*)

- Inflatable hull boat. (*Id.* ¶ 60.)

---

2.  SKAT cannot identify the exact date on which McGee dissipated the Bitcoin because he failed to produce Account ████'s December 2025 account statement, despite producing account statements for several months before and after December 2025. (Weinstein Decl. ¶ 54.) McGee's dissipation of ████████ Bitcoin can be deduced by comparing Account ████'s November 2025 account statement—which reflects his ownership of ████████ Bitcoin—with the January 2026 account statement—which reflects him owning no Bitcoin. (*Id.*)

3.  LSV is an acronym for low-speed vehicle.

Each of McGee's vehicles should be turned over to the United States Marshal in the Southern District of New York for sale in partial satisfaction of the Judgment.

## ARGUMENT

Federal Rule of Civil Procedure 69(a)(1) authorizes federal courts enforcing a judgment to use the enforcement procedures of the state in which the court sits. *See* Fed. R. Civ. P. 69(a)(1). In New York, CPLR Article 52 governs enforcement and collection of money judgments. *See* CPLR §§ 5201-53; *see also CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468 (2d Cir. 2018).

### I.    The Court Should Hold McGee in Contempt for His Repeated and Ongoing Violations of the Restraining Notice

CPLR § 5222 permits a judgment creditor—here, SKAT—to serve a judgment debtor— here, McGee—with a restraining notice prohibiting the debtor from selling, assigning, transferring or otherwise interfering with any property in which the debtor has an interest. *See Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 500 (S.D.N.Y. 2019), *rev'd on other grounds*, 990 F.3d 191, 206 (2d Cir. 2021). Under CPLR § 5251, a court "may find a party in civil contempt for violating a restraining notice issued under New York law if it was 'initiated by the judgment creditor as a means of executing a judgment entered in federal court.'" *Benthos Master Fund, Ltd. v. Etra*, No. 20-cv-3384, 2022 WL 17819592, at *14 (S.D.N.Y. Dec. 20, 2022) (quoting *Cordius Tr. v. Kummerfeld Assocs.*, 658 F. Supp. 2d 512, 518 (S.D.N.Y. 2009)).

Civil contempt is warranted where "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner." *Id.* at *8 (citation modified). Fines, imprisonment, or both are appropriate sanctions for violation of a

restraining notice.  *See Chevron*, 384 F. Supp. 3d at 500 n.188; *Benthos Master Fund*, 2022 WL 17819592, at \*17.

McGee has repeatedly violated, and continues to violate, the Restraining Notice.  The Court should hold him in contempt.

First, the Restraining Notice is a "clear and unambiguous" order.  It forbids McGee from disposing of or interfering with any non-exempt property in which he has, or will have, an interest.  *See E. Cap. Invs. Corp. v. Gentech Holdings, Inc.*, No. 21-cv-10300, 2024 WL 5010130, at \*1 (S.D.N.Y. Nov. 19, 2024) (concluding a restraining notice was "clear and unambiguous" where it explained the statutory restrictions on the debtor's transfer of property). The Restraining Notice applies to funds in each of the McGee Cash Accounts, McGee Investment Accounts and McGee Digital Asset Accounts, regardless of McGee's assertion that any account is jointly held with his wife.  *See Signature Bank v. HSBC Bank USA, N.A.*, 889 N.Y.S.2d 242, 244 (2d Dep't 2009) (noting the presumption that each holder of a joint account owns the whole account).  The Restraining Notice also applies to the funds that McGee personally borrowed from Quadrant in late December 2025 and directed to be transferred to ███████████ for his benefit, notwithstanding that McGee did not receive those funds directly into one of his accounts.  *Cf. MacArthur I, Inc. v. Fields*, 135 N.Y.S.3d 393, 394-95 (1st Dep't 2020).

Second, the record provides "clear and convincing" evidence of McGee's violation of the Restraining Notice.  Since December 2025, McGee has received over $1.6 million into his accounts without turning those funds over to SKAT, sold assets, and transferred over $1.3 million out of his accounts, as reflected in statements for the McGee Cash Accounts, McGee Investment Accounts and McGee Digital Asset Accounts.  (Weinstein Decl. ¶¶ 21, 23, 25-27, 32, 38, 40, 49,

14

54); *Benthos Master Fund*, 2022 WL 17819592, at *15 (holding that a debtor's receipt of funds not paid to the judgment creditor and post-restraining notice spending constituted "clear and convincing" evidence of the debtor's restraining notice violation).  McGee also directed $1.25 million that he personally borrowed be transferred to law firms after receiving the Restraining Notice.  (Weinstein Decl. ¶ 19); *MacArthur I*, 135 N.Y.S.3d at 394.  Moreover, McGee "subsequently secured" the $3.75 million loan by causing his Palm Beach mansion to be mortgaged in favor of Quadrant.  (ECF No. 286); *see Cordius Tr. v. Kummerfeld*, No. 99-cv-3200, 2009 WL 3416235, at *11-12 (S.D.N.Y. Oct. 23, 2009) (concluding encumbrance of debtor's real property with multiple mortgages violated restraining notice).

Third, McGee has not "diligently attempted to comply in a reasonable manner."  To the contrary, he has flagrantly violated the Restraining Notice by, among other things, paying more than $200,000 in personal credit card bills, making unspecified payroll payments totaling approximately $90,000, paying at least $1.8 million to various law firms (the bulk of which was applied as a retainer to a firm that has not appeared in this or any other related action)[4]—presumably to evade his joint and several obligation under the Judgment and other obligations[5]—and liquidating several investment and digital asset holdings.  (Weinstein Decl. ¶¶ 19, 27, 49, 54); *Benthos Master Fund*, 2022 WL 17819592, at *17 (concluding that a debtor

---

4.  CPLR § 5222 provides limited statutory exceptions to the rule that a debtor served with a restraining notice is "forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest."  CPLR § 5222(b).  Payment of attorneys' fees is not among those exceptions.  Accordingly, McGee's payments to attorneys violate the Restraining Notice.  *See Potter v. MacLean*, 904 N.Y.S.2d 551, 553 (3d Dep't 2010) (holding that funds held in escrow to retain counsel are not exempt under CPLR § 5222 and therefore properly restrained).

5.  On June 2, 2026, McGee failed to appear for his criminal trial in Denmark relating to his, Stein and Lhote's fraudulent tax refund scheme perpetrated against SKAT despite his past assurances that he would appear for and stand trial voluntarily.  (Weinstein Decl. ¶ 10.)  McGee is now a fugitive from justice wanted throughout the European Union.  (*Id.*)

failed to diligently comply with a restraining notice where bank records reflected "flagrant violations" through routine purchases such as meals, haircuts and rideshares).

Because McGee's conduct demonstrates continuing, open and egregious breaches of his obligations, SKAT requests that the Court hold him in contempt and order him to:  (i) comply with the Restraining Notice; (ii) demand that ███████████ send the ████████ that McGee directed Quadrant transfer to that firm to Account ███, and to do nothing with that money, once returned, other than turn it over to SKAT; (iii) obtain the Court's approval prior to making any sale, assignment, payment, transfer of or interference with any property in which he has an interest; (iv) produce to SKAT each month account statements for all accounts in which he has any interest or, in the alternative if the Court permits McGee a monthly spending allowance, to produce to SKAT each month account statements for all accounts in which he has any interest and an accounting of all receipts and disbursements affecting any property in which he has an interest; and (v) direct the sender of any future funds he is due personally to deposit such funds to accounts held in his name alone, and to do nothing with those funds other than turn them over to SKAT.[6]  The Court should direct McGee to prepare and produce his monthly account statements or accounting himself, making no exception to the Restraining Notice for McGee's payments to counsel—the use of which continues to deplete the pool of assets and funds available for SKAT's recovery.

Courts in this District routinely impose comparable—and more stringent—measures to compel a recalcitrant debtor's compliance.  In *East Capital Investments*, for example, the court

---

[6]. Although SKAT does not currently seek McGee's arrest and imprisonment—sanctions that are appropriate where a judgment debtor is able but unwilling to satisfy a judgment or disregards post-judgment enforcement mechanisms, including discovery and restraining notices, *see, e.g., Benthos Master Fund*, 2022 WL 17819592, at *17; *Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, No. 09-cv-9346, 2015 WL 4040558, at *21 (S.D.N.Y. July 1, 2015) (collecting cases)—SKAT submits that such relief may become necessary if McGee's noncompliance continues.

16

prohibited the debtor from "making any sales, assignments, or transfers of funds or assets" unless and until the judgment was satisfied. 2024 WL 5010130, at *1. The court in *KLS Diversified Master Fund, L.P. v. McDevitt* denied the debtor's request to exempt payments to his attorneys from restraint. No. 19-cv-3774, 2022 WL 220058, at *5-6 (S.D.N.Y. Jan. 25, 2022). And in *Benthos Master Fund*, the court ordered coercive incarceration and, among other remedies, required the debtor to make ongoing productions of his monthly account statements, provide a full accounting of his receipt of funds from certain accounts, and make ongoing, monthly transfers of any non-exempt funds flowing into his restrained accounts to the judgment creditor. 2022 WL 17819592, at *10, 19.

These sanctions are "reasonable in relation to the facts" and properly coercive because: (1) McGee's ongoing violations threaten SKAT's ability to satisfy the Judgment; (2) an order requiring the Court's prior approval for any sale, assignment, payment, transfer of or interference with McGee's property and directing him to produce monthly accountings is likely to halt McGee's violations and promote satisfaction of the Judgment; and (3) compelling McGee to abide by the plain language of CPLR § 5222(b) and produce his monthly account statements himself will not be unduly burdensome. *See Benthos Master Fund*, 2022 WL 17819592, at *17 (citing *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989)).

## II.    The Court Should Order McGee to Turn Over Certain Funds and Property to Partially Satisfy the Judgment

CPLR § 5225(a) permits a judgment creditor to recover money or property owned by a judgment debtor through a court order directing the debtor to pay money or deliver property.[7] To

---

7.    CPLR § 5225(a) provides in relevant part:

Property in possession of judgment debtor. Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is

obtain that relief, the judgment creditor need only establish that the judgment debtor owns and possesses the property at issue. *See 245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*, 674 F. Supp. 3d 28, 39 (S.D.N.Y. 2023), *aff'd*, No. 23-842, 2024 WL 1506798 (2d Cir. Apr. 8, 2024). Once that showing is made, "the court 'shall' order the turnover" of that property. *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-cv-1761, 2026 WL 161298, at *2 (S.D.N.Y. Jan. 21, 2026) (quoting CPLR § 5225(a)). The Court may do so regardless of where the property is located. *See Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 830 (2009) ("A New York court has the authority to issue a turnover order pertaining to extraterritorial property, if it has personal jurisdiction over a judgment debtor in possession of the property.").

McGee and his personal property are subject to the Court's jurisdiction and to the exclusive application of New York law. The Settlement Agreement provides that it "shall be governed by, construed and interpreted in accordance with the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof," and that the parties knowingly and irrevocably submit themselves and their property to the jurisdiction of the New York courts. (Weinstein Decl. ¶ 3, Ex. 1 at 15.) New York courts enforce such choice-of-law provisions as written and do not conduct a conflicts analysis where, as here, the parties have contractually selected New York law. *See IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 612 (2012); *Ministers & Missionaries Ben. Bd. v. Snow*, 45 N.E.3d 917, 922-23 (2015) ("New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract."). That rule applies in the post-judgment enforcement context. *See Advance Serv. Grp., LLC v. Vision Home Builders LLC*, 212 N.Y.S.3d 918, slip op.

---

sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff . . . .

at *3-4 (Sup. Ct., Kings Cnty. 2024); *see also Kassover v. Prism Ventures Partners, LLC*, No. 602434/2005, 2017 WL 4011218, at *5-6 (Sup. Ct., N.Y. Cnty. Sept. 12, 2017).

SKAT is entitled to an order directing McGee to turn over:  (i) all funds held in the McGee Cash Accounts, including, upon return, all funds McGee receives to Account ▮▮▮ from ▮▮▮▮▮▮▮▮ out of the ▮▮▮▮▮ he directed Quadrant to transfer to that firm on his behalf in September and December 2025; (ii) all funds and proceeds held in the McGee Investment Accounts following liquidation; (iii) all funds and proceeds held in the McGee Digital Asset Accounts following liquidation; (iv) all of McGee's vehicles; and (v) all future funds McGee receives as purported payroll payments.

### A.  SKAT is entitled to an order directing McGee to turn over all funds he holds in the McGee Cash Accounts.

New York courts routinely order judgment debtors to turn over funds held in bank accounts, including accounts outside New York, to partially satisfy a judgment.  *See, e.g. Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*, 836 N.Y.S.2d 4, 12 (1st Dep't 2007); *Bainbridge Fund Ltd. v. Republic of Argentina*, 690 F. Supp. 3d 411, 415 (S.D.N.Y 2023) ("New York courts routinely order parties subject to New York courts' jurisdiction to satisfy money judgments with funds located in bank accounts outside of New York[.]").

SKAT satisfies CPLR § 5225(a) because McGee possesses and maintains an ownership interest in each of the McGee Cash Accounts.  (Weinstein Decl. ¶¶ 20, 22, 24, 28-31, 33-37, 39); *see Keawsri v. Ramen-Ya Inc.*, No. 17-cv-02406, 2022 WL 17813236, at *2 (S.D.N.Y. Dec. 19, 2022) (ordering turnover of a judgment debtor's funds held in a New Jersey bank account); *Gryphon Domestic*, 836 N.Y.S.2d at 12 (concluding that a turnover order should have included the debtor's Indonesian bank accounts).  Accordingly, SKAT is entitled to an order directing

19

McGee to turn over all funds he holds in the McGee Cash Accounts to SKAT in partial satisfaction of the Judgment.

SKAT is entitled to all funds in Accounts ███ , ███ , ███ , ███ , ███ and ███ regardless of McGee's assertion that those accounts are owned jointly with his wife.[8] *See Signature Bank*, 889 N.Y.S.2d at 244 ("Even jointly owned assets are vulnerable to levy by a judgment creditor pursuant to CPLR [§] 5225.")  New York law applies to each of those accounts, regardless of their location, by operation of the Settlement Agreement—███████████ ███████████████████ (Weinstein Decl. ¶ 3); *see Advance Serv. Grp.*, 212 N.Y.S.3d 918, slip op. at *3-4 (Sup. Ct., Kings Cnty. 2024) (applying New York law to Pennsylvania bank accounts because underlying agreement giving rise to the creditor and debtor's dispute contained a New York choice-of-law provision); *Kassover*, 2017 WL 4011218, at *5-6 (applying New York law to Florida-based assets by operation of underlying agreement's choice-of-law provision).  Under New York law, "opening [] a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account," such that a creditor of one joint tenant may obtain all funds held in the joint account.  *Signature Bank*, 889 N.Y.S.2d at 244.  Moreover, the funds in each alleged joint account are attributable to McGee.  (Weinstein Decl. ¶¶ 21, 25, 28, 37, 39); *JPR Old Riverhead, Ltd. v. Hudson City Sav. Bank*, 965 N.Y.S.2d 176, 177 (2d Dep't 2013).

Accordingly, all funds in the McGee Cash Accounts that McGee owns jointly with his wife must be deemed wholly available to satisfy SKAT's Judgment.  *See Bank of Am., N.A. v. City View Blinds of N.Y. Inc.*, No. 22-cv-09871, 2025 WL 2771442, at *10 (S.D.N.Y. Sept. 29,

---

8.  To the extent McGee contends that his wife holds a joint or other interest in any of the McGee Cash Accounts or other property targeted by this motion, Gabrielle McGee should be ordered to appear in this proceeding and show cause why any such property should not be turned over to SKAT in its entirety.

2025) (concluding that a judgment creditor was entitled to turnover of all funds held in the judgment debtor's joint bank account held with his wife); *Signature Bank*, 889 N.Y.S.2d at 244-45 (affirming turnover of all funds in a joint bank account held by the debtor and her children).

SKAT is also entitled to turn over of the ███████ that McGee personally borrowed from Quadrant and then caused to be transferred directly to ███████████, where McGee maintains an ownership interest in all funds ████████████████.[9] *See SEC v. Princeton Econ. Int'l Ltd.*, 84 F. Supp. 2d 443, 446 (S.D.N.Y. 2000) ("It is clear that funds held in an attorney's trust account remain[] the property of the payor.")  CPLR § 5225(c) permits the Court to "order any person to execute and deliver any document necessary to effect payment or delivery," of property in which the judgment debtor has an interest.  *See Gryphon Domestic*, 836 N.Y.S.2d at 11-12 (1st Dep't 2007); *Belen v. Herman*, No. 22-cv-6455, 2024 WL 182588, at *12 (S.D.N.Y. Jan. 17, 2024).  Accordingly, the Court should order McGee to demand from ████████ ████████ that all remaining funds held on McGee's behalf be sent to Account ████ and, upon receipt, turned over directly to SKAT.

### B.  SKAT is entitled to an order directing McGee to turn over all funds and assets he holds in the McGee Investment Accounts.

New York courts routinely order debtors to turn over assets and funds held in investment accounts to satisfy a judgment.  *See Keawsri*, 2022 WL 17813236, at *2 (ordering the debtor to turn over funds and assets held in out-of-state investment accounts); *Miller v. Doniger*, 814 N.Y.S.2d 141 (1st Dep't 2006).  To facilitate satisfaction, New York courts also order securities held in investment accounts to be liquidated, with the proceeds and remaining funds to be turned

---

9.  This remedy is appropriate both as a sanction for McGee's contemptuous violations of the Restraining Notice by directing the transfer of $1.25 million to law firms on December 26, 2025 and subsequently encumbering his Palm Beach mansion with a $3.75 million mortgage, and, independently, pursuant to CPLR § 5225 as to all remaining funds of the ████████ that McGee caused to be transferred to ████████████ where McGee continues to maintain an ownership interest in those funds held on retainer.

over to the judgment creditor.[10]  *See, e.g., VNB Loan Servs., Inc. v. Charles Schwab & Co.*, No. 608328/2019, 2019 N.Y. Misc. LEXIS 66624 (Sup. Ct., Suffolk Cnty. Sept. 25, 2019); *Creditors v. Wells Fargo Clearing Servs. LLC*, No. 56792/2023, 2023 N.Y. Misc. LEXIS 39921 (Sup. Ct., Westchester Cnty. Mar. 1, 2023).

SKAT satisfies CPLR § 5225(a) because McGee possesses and maintains an ownership interest in each of the McGee Investment Accounts.  (Weinstein Decl. ¶¶ 42-48, 50); *see Keawsri*, 2022 WL 17813236, at *2; *Miller*, 814 N.Y.S.2d 141 (affirming an order directing the judgment debtor to turn over an out-of-state account holding assets).

SKAT is entitled to all funds and assets McGee holds in the Medbridge 401k, Paychex 401k, Account ███, React Health 401k and Account ███, notwithstanding their status as retirement accounts, because McGee established and funded each account only after SKAT asserted the claims underlying the Judgment.  (Weinstein Decl. ¶¶ 44-47, 50.)  Under CPLR § 5205(c)(5), contributions made to a retirement account after ninety days before the claim against the debtor was initiated—here, January 12, 2023, as SKAT filed its third-party complaint against McGee on April 12, 2023—are not exempt from turnover.  *See* CPLR § 5205(c)(5); *Breslin Realty Dev. Corp. v. Morgan Stanley*, 10 N.Y.S.3d 841, 842 (Sup. Ct., Nassau Cnty.

---

10. CPLR §§ 5225(c) and 5240 permit the Court to make such an order.  CPLR § 5225(c) provides:  "[t]he court may order any person to execute and deliver any document necessary to effect payment or delivery."  CPLR § 5225(c); *see also Gryphon Domestic*, 836 N.Y.S.2d at 12 (1st Dep't 2007).  Separately, CPLR § 5240 permits a court to "at any time, on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, <u>regulating, extending or modifying</u> the use of any enforcement procedure."  CPLR § 5240 (emphasis added); *see also TBG Funding LLC v. Kenwood Commons, LLC*, No. 902353-19, 2026 WL 504166, at *3 (Sup. Ct., Albany Cnty. Feb. 12, 2026) ("CPLR [§] 5240 empowers the court to modify the use of any enforcement procedure[.]").

2015). Because each account was first established in 2024 or 2025, none of the funds in those accounts could have been contributed before January 12, 2023.[11] (Weinstein Decl. ¶¶ 44-47, 50.)

Accordingly, SKAT is entitled to an order directing McGee to liquidate all assets and turn over the proceeds, together with all remaining funds he holds in the McGee Investment Accounts, in partial satisfaction of the Judgment.

### C. SKAT is entitled to an order directing McGee to turn over all funds and assets he holds in the McGee Digital Asset Accounts.

New York courts recognize that cryptocurrency is personal property subject to turnover under CPLR § 5225. *See New Era Lending LLC v. Cavallino Auto Servs. LLC*, No. CV-003613-16/NY, 2024 WL 4097368, at *1-2 (NYC Civ. Ct. Aug. 29, 2024) ("In New York, cryptocurrency is recognized as property in the same vein as stocks[.]"). The Court therefore may order McGee to turn over the funds and assets held in the McGee Digital Asset Accounts to partially satisfy the Judgment. *See id.*; *245 Park Member*, 2024 WL 1506798, at *2 ("'A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested . . .'" (quoting CPLR § 5201(b)).

SKAT satisfies CPLR § 5225(a) because McGee possesses and maintains an ownership interest in the McGee Digital Asset Accounts. (Weinstein Decl. ¶¶ 51-52); *Bainbridge Fund*, 690 F. Supp. 3d at 415-16; *Keawsri*, 2022 WL 17813236, at *2. Accordingly, SKAT is entitled to an order directing McGee to liquidate all assets and turn over the proceeds, together with all remaining funds he holds in the McGee Digital Asset Accounts, in partial satisfaction of the Judgment.

---

11. SKAT does not waive any argument that all contributions to these trust accounts, and any other trust account McGee owns or has contributed to, also constitute voidable fraudulent transfers.

23

**D. SKAT is entitled to an order directing McGee to turn over each of his vehicles.**

New York courts routinely order debtors to turn over vehicles for sale at auction in satisfaction of a judgment.[12]  *See Freeman v. Giuliani*, No. 24-mc-00353, 2024 WL 4546883, at *6-8 (S.D.N.Y. Oct. 22, 2024) (ordering a debtor to turn over a collectible Mercedes Benz and noting that "[i]t is, after all, the underlying policy of [CPLR Article 52] that 'no man should be permitted to live at the same time in luxury and in debt.'" (citation omitted)).  That McGee's vehicles are not located in New York is immaterial.  *See Koehler*, 911 N.E.3d at 830.  Nor, by operation of New York law, does it matter that McGee asserts that he and his wife jointly own several of the vehicles.  *See Kassover*, 2017 WL 4011218, at *5-6; *Signature Bank*, 889 N.Y.S.2d at 244.

SKAT satisfies CPLR § 5225(a) because McGee possesses and maintains an ownership interest in each vehicle targeted by this motion by order to show cause.  (Weinstein Decl. ¶¶ 56-60); *Freeman*, 2024 WL 4546883, at *8; *Starbare II Partners, L.P. v. Sloan*, 629 N.Y.S.2d 23 (1st Dep't 1995) (concluding that a debtor's out-of-state artwork should have been turned over to Sheriff for sale to satisfy a judgment).  Accordingly, SKAT is entitled to an order directing McGee to turn over his vehicles to the U.S. Marshal in the Southern District of New York for sale in partial satisfaction of the Judgment.

**E. SKAT is entitled to an order directing McGee to turn over future payments from the McGee Payment Sources.**

McGee's right to receive future payments is property subject to turnover.  CPLR § 5201(b) permits enforcement against "any property which could be assigned or transferred,"

---

12. CPLR § 5205(a)(8) provides an exemption from turnover for "one motor vehicle not exceeding four thousand dollars in value above liens and encumbrances of the debtor."

including a "present or future right or interest" and "whether or not it is vested, unless it is exempt."  CPLR § 5225(a), in turn, authorizes an order requiring the judgment debtor to pay or deliver such property to the judgment creditor.  New York courts apply those provisions to contingent contractual payment rights.  *See ABKCO Indus. v. Apple Films*, 350 N.E.2d 899, 901-02 (1976) (holding that a contingent contractual right to future payment is an assignable property interest subject to attachment); *245 Park Member LLC*, 2024 WL 1506798, at *2 (affirming turnover of judgment debtor's property interest).

The Court therefore may order McGee to turn over his contractual interests in purported payroll payments from Medbridge, 3B Medical and the McGee 2021 NGCG Nevada Trust (collectively, the "McGee Payment Sources").  Unless and until the Judgment is satisfied, McGee should be required to turn over to SKAT all non-exempt payments he receives from those entities, including payments accrued before any termination of the relevant relationship.  *See In re Breslin Realty Corp. v. Smith & De Groat, Inc.*, No. 14-008594, 2015 WL 2441885, at *5 (Sup. Ct., Nassau Cnty. Jan. 8, 2015).

McGee bears the burden of proving that any payments are exempt as earnings for personal services under CPLR § 5205(d)(2).  *See Swig v. Properties Asset Mgmt. Servs., LLC*, 924 N.Y.S.2d 368, 369 (1st Dep't 2011).  If McGee cannot carry that burden, SKAT is entitled to the payments in full.  *Id*. at 369-70 (concluding compensation was not for personal services where tied to performance of the company paying the debtor); *In re Breslin Realty*, 2015 WL 2441885, at *5 (ordering garnishee to pay debtor's non-exempt earned compensation to creditor on a going-forward basis).

Even if McGee proves that some payments are compensation for personal services, the exemption is not absolute.  CPLR § 5205(d); *see Cadle Co. v. Newhouse*, 20 Fed. Appx. 69, 73

25

(2d Cir. 2001). CPLR § 5205(d) exempts earnings, "except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents." Courts applying that provision focus on the amount necessary for reasonable support, not preservation of the debtor's preferred lifestyle. *See Shamrock Power Sales, LLC v. Scherer*, No. 12-cv-8959, 2016 WL 11484445, at *5 (S.D.N.Y. June 15, 2016) ("'[T]he appropriate inquiry is the quantum necessary for the debtor's and his family's 'reasonable requirements' for support, keeping in mind that 'no man should be permitted to live at the same time in luxury and in debt.'" (quoting *In re Portnoy*, 201 B.R. 685, 693 (Bankr. S.D.N.Y. 1996))).

Here, McGee's average after-tax receipts of $35,000 per month, or approximately $420,000 annually, far exceed any reasonable-support requirement. McGee purchased his Palm Beach mansion in 2021 for nearly $30 million in cash and has made no apparent mortgage payments from his accounts since that purchase. (Weinstein Decl. ¶ 4.) His account statements reflect no health insurance payments or other substantial reasonable expense. (*See, e.g.,* Weinstein Decl. ¶ 27.) Accordingly, if the Court finds that the payments constitute personal-service earnings, McGee should be permitted to retain only modest amounts necessary for basic living expenses: $850 per month for food and $400 per month for gas, for a total of $1,250 per month, consistent with *Shamrock* and adjusted for inflation. In *Shamrock*, the Southern District of New York exempted $6,000 per month of the husband-and-wife debtors' income to pay their mortgage, health insurance, food, gas and discretionary debt expenses. 2016 WL 11484445, at *6. Unlike the debtors in *Shamrock*, McGee's primary liability is the Judgement owed to SKAT, which exceeds $163 million. (Weinstein Decl. ¶ 5.)

The Court should order McGee to turn over all non-exempt funds he receives from the McGee Payment Sources going forward until the Judgment is satisfied or the relevant payment

26

relationship terminates.  In the alternative, if the Court finds that the payments constitute personal-service earnings, it should order McGee to turn over all such payments in excess of $1,250 per month.

## CONCLUSION

For the foregoing reasons, SKAT respectfully requests that the Court enter an Order holding McGee in contempt and directing him to:  (i) comply with the Restraining Notice; (ii) demand that ██████████ send the ████████ that McGee directed Quadrant transfer to that firm to Account ████, and to do nothing with that money, once returned, other than turn it over to SKAT; (iii) obtain the Court's approval prior to making any sale, assignment, payment, transfer of or interference with any property in which he has an interest; (iv) produce to SKAT each month account statements for all accounts in which he has any interest or, in the alternative if the Court permits McGee a monthly spending allowance, to produce to SKAT each month account statements for all accounts in which he has any interest and an accounting of all receipts and disbursements affecting any property in which he has an interest; (v) direct the sender of any future funds he is due personally to deposit such funds to accounts held in his name alone, and to do nothing with those funds other than turn them over to SKAT; (vi) turn over all funds in the McGee Cash Accounts, including, upon demand and return, all funds McGee receives to Account ████ from ██████████ out of the ████████ he directed Quadrant to transfer to that firm on his behalf in September and December 2025; (vii) liquidate and turn over all proceeds and remaining funds in the McGee Investment Accounts; (viii) liquidate and turn over all proceeds and remaining funds in the McGee Digital Asset Accounts; (ix) turn over his vehicles to the U.S. Marshal in the Southern District of New York for sale; and (x) turn over all future non-exempt funds he receives from the McGee Payment Sources.

Dated: New York, New York
      June 24, 2026

HUGHES HUBBARD & REED LLP

By:   /s/ Marc A. Weinstein
       Marc A. Weinstein

One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
marc.weinstein@hugheshubbard.com

*Counsel for Defendant / Counterclaim-Plaintiff Skatteforvaltningen*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains **8,346**, excluding the parts of the brief exempted under Rule 7.1(c).

Dated:  New York, New York
        June 24, 2026

                        HUGHES HUBBARD & REED LLP


                        By:   /s/ Marc A. Weinstein
                              Marc A. Weinstein

                        One Battery Park Plaza
                        New York, New York 10004-1482
                        Telephone: (212) 837-6000
                        Fax:  (212) 422-4726
                        marc.weinstein@hugheshubbard.com

                        *Counsel for Defendant / Counterclaim-
                        Plaintiff Skatteforvaltningen*