UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

MATTHEW STEIN and JEROME LHOTE,

Plaintiffs/Counterclaim-Defendants,

- against -

SKATTEFORVALTNINGEN

Defendant/Counterclaim-Plaintiff,

- against -

LUKE MCGEE

Nominal Defendant/Counterclaim-Defendant.

----------------------------------------X

**MEMORANDUM AND ORDER**

23 Civ. 02508(NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This Memorandum and Order is addressed to certain aspects of defendant and counterclaim-plaintiff Skatteforvaltningen's ("SKAT") Motion by Order to Show Cause for Contempt and Turnover of Property pursuant to Rule 69 of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules ("CPLR") 5225(a) and 5251. ECF No. 290 (the "Order to Show Cause" or "OSC").

SKAT is the tax authority of the Kingdom of Denmark and this application is part of SKAT's efforts to collect on a $163,984,894.05 judgment ("the Judgment") entered in its favor and against the counterclaim-defendants Matthew Stein, Jerome Lhote, and Luke McGee, following a non-jury trial. Briefly, this Court

found that the counterclaim-defendants breached a 2019 Settlement Agreement (the "Settlement Agreement") between the parties, which if complied with would have resolved the civil obligations of these three defendants to SKAT concerning a massive tax refund scheme perpetrated against SKAT. ECF No. 215 at 2–5.

The OSC, which was entered on July 9, 2026, sought orders directing McGee to turn over assets and other personal property. OSC at 2–4. Previously, on December 4, 2025, SKAT had served McGee with a restraining notice pursuant to CPLR 5222 (the "Restraining Notice"). ECF No. 297.

Following requested adjournments, this Court held oral argument on the OSC on August 18, 2026, after which attorneys for SKAT and McGee engaged in negotiations that resolved many, but not all, of the turnover demands listed in the OSC. See ECF No. 351 at 1–2. Remaining for resolution by the Court is SKAT's demand for the turnover of the following assets:

1) Mr. and Mrs. McGee's American Express Savings Account (x2736);
2) Mr. and Mrs. McGee's Citizens Bank Checking Account (x5574);
3) Mr. and Mrs. McGee's Citizens Bank Money Market Account (x6106);
4) Funds in McGee's Ameriflex Health Savings Account;
5) Mr. and Mrs. McGee's 2020 Tesla Model;
6) McGee's future wages.[1]

[1] The parties did not reach agreement on SKAT's request to hold McGee in contempt for violations of the Restraining Notice. Given the number of open issues, even after the issuance of this decision, SKAT's contempt application

SKAT seeks a turnover order for these six assets under CPLR 5225(a), which permits a court to order a judgment debtor, "where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest," to deliver this money or personal property to the judgment creditor sufficient to satisfy a judgment. N.Y. CPLR 5225(a). According to SKAT, CPLR 5225(a) can be utilized to obtain assets held outside of New York, including assets co-owned by McGee and his wife. ECF No. 297 at 2-3; ECF No. 298 at 20.

In rebuttal, while McGee accepts that this Court has jurisdiction over him for certain purposes under the Settlement Agreement, he maintains that such jurisdiction does not extend to the Court's exercise of authority over property that McGee and his wife co-own and that is located outside of New York. ECF No. 321 ("McGee Opp.") at 18-23. Moreover, McGee points out that the jurisdictions in which the assets are located, Florida and Pennsylvania, provide by statutory law that assets held as tenants by the entirety ("TBE") property, as they are here, shield the TBE property -- including bank accounts -- from creditors that have a claim against only one of the account holders. See id.

McGee also contends that the turnover SKAT seeks is procedurally improper, because turnover of assets held at out-of-

is not ripe for resolution. Those issues include a separately briefed issue related to McGee's payments to a third-party law firm. See ECF Nos. 356, 360.

state banks and financial institutions must be pursued under CPLR 5225**(b)** (due to the third parties' actual possession of the assets)[2] and not through the individual judgment debtor's interest in those assets under CPLR 5225**(a)**.[3] McGee Opp. at 12-14.

## DISCUSSION

The Court now addresses the issues and law applicable to the assets at issue.

### I. The Three Bank Accounts and Tesla Model X

The first assets at issue are three bank accounts and a Tesla Model X, which have the following undisputed features in common:

First, all are located in another state, Florida or Pennsylvania, and, in the case of the bank accounts, are in the possession of a third party.[4]

Second, McGee's wife, Gabrielle McGee, is a co-owner of the assets at issue.

---

[2] A turnover order under CPLR 5225(b) allows a judgment creditor to execute upon property that belongs to a judgment debtor but is in the possession of a third party. Ladjevardian v. The Republic of Argentina, No. 04-CV-2710 (TPG), 2016 WL 3039189, at *2 (S.D.N.Y. May 26, 2016), aff'd sub nom. Mohammad Ladjevardian, Laina Corp. v. Republic of Argentina, 663 F. App'x 77 (2d Cir. 2016).

[3] Further, McGee argues that in addition to seeking a turnover order under CPLR 5225(b), and not CPLR 5225(a), SKAT must also comply with the "separate entity rule" which requires the Court to have jurisdiction over the specific bank branch holding the assets.

[4] Mr. and Mrs. McGee's Citizens bank accounts (x5574 and x6106) are held by Citizens Bank in Florida, while their American Express bank account (x2736) is held by American Express in Pennsylvania. ECF No. 301. The Tesla Model X is registered and located in Florida. See ECF No. 323-27 (The Tesla's Florida Certificate of Title lists the registered owners as Luke McGee "and" Gabrielle McGee).

Third, under the laws of Florida and Pennsylvania, the ownership status of each of these assets is one of tenants by the entirety. Fla. Stat. § 655.79 ("Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing."); Constitution Bank v. Olson, 423 Pa. Super. 134, 140, 620 A.2d 1146, 1149-50 (1993) ("An intention to create [a tenancy by the entirety] is assumed from the deposit of an asset in both the names of a husband and wife, without more, and from the fact of a marital relationship."); Amsouth Bank of Fla. v. Hepner, 647 So. 2d 907, 910 (Fla. Dist. Ct. App. 1994) ("Creation of an estate by the entirety in an automobile registered in Florida [is achieved by] an intention to create an estate by the entirety [and] also registration in the names of husband and wife[.]").

Fourth, under the laws of Florida and Pennsylvania, property owned as TBE is not subject to a turnover order unless both of the asset holders are judgment debtors, which is not the case here. Beal Bank, SSB v. Almand & Assocs., 780 So. 2d 45, 53 (Fla. 2001) ("[O]nly the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse."); In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 849 (3d Cir. 2020) ("Pursuant to Pennsylvania law, property owned as tenants by the

entirety cannot be accessed by the creditors of only one spouse.”). See Amsouth Bank, 647 So. 2d at 910 (applying the same protection to TBE vehicles).

While there is also no dispute that McGee is subject to personal jurisdiction in the State of New York, central to the Court’s analysis is our determination in another decision issued today, that neither this Court nor the State of New York has personal jurisdiction over Mrs. McGee. In the absence of personal jurisdiction of one of the owners of out-of-state property owned as tenants by the entirety, this Court does not have jurisdiction to order the turnover of the out-of-state asset.

The basic analytical deficit in SKAT’s argument is its failure to address the structural facts relating to these assets, namely, that the Court only has jurisdiction over one of the tenants by entirety, and that the assets at issue are all located in other states whose laws protect those properties from collection by a judgment creditor of only one of the spouses when the asset is owned as tenants by the entirety.

At the most fundamental level, SKAT’s requested relief raises due process concerns which have been recognized in this Circuit and in the courts of New York. Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com., 990 N.E.2d 114, 120 (N.Y. 2013) (“No case supports the Commonwealth's attempt to broadly construe Koehler . . . to direct another entity, which is not subject to

this state's personal jurisdiction, to deliver assets held in a foreign jurisdiction."); Waldman v. Palestine Liberation Org., 171 F.4th 575, 592 (2d Cir. 2026) ("[E]nforcing a judgment of a court lacking personal jurisdiction violates due process."); Plymouth Venture Partners, II, L.P. v. GTR Source, LLC, 183 N.E.3d 1185, 1201 (N.Y. 2021) (Wilson, J., dissenting) ("Entities that are not under New York's jurisdiction cannot be directed to turn over assets of the judgment debtor held out-of-state . . . The recognition in the CPLR and our caselaw that a New York court cannot authorize the levy on property held in a sister state by a person or entity over whom New York lacks jurisdiction is the necessary complement to the traditional practice of commencing a plenary action in the sister state."); Glob. Tech., Inc. v. Royal Bank of Canada, 943 N.Y.S.2d 791 (N.Y. Sup. Ct. 2012) (finding that if a creditor seeks action over out-of-state assets with multiple ownership interests, the rights of "innocent, out-of-state third parties" must be recognized to avoid due process concerns under International Shoe and its progeny.).

Rather than addressing this fundamental issue, SKAT cites to cases that stand for the proposition that this Court could order McGee to take personal action with respect to his singularly owned assets located in another state to make them available to SKAT. Keawsri v. Ramen-Ya Inc., 2022 WL 17813236, at *1 (S.D.N.Y. Dec. 19, 2022) (ordering payment to judgment creditors with funds

from the defendant's out-of-state investment account); Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V., 836 N.Y.S.2d 4, 15 (1st Dep't 2007) (noting that turnover of defendants' foreign property is permissible when defendants subject themselves to jurisdiction in New York); Miller v. Doniger, 814 N.Y.S.2d 141, 142 (1st Dep't 2006) (directing judgment debtor's out-of-state Wachovia account and other funds, that were improperly transferred to co-defendants, to be turned over to the Sheriff of New York County).

SKAT's citation to Signature Bank v. HSBC Bank USA, N.A. 67 889 N.Y.S.2d 242 (2nd Dep't 2009) is inapplicable and readily distinguishable. The accounts at issue here are not owned as "joint accounts" under New York law, rather as TBE outside of New York, and Mrs. McGee has vigorously asserted her ownership rights.

Finally, SKAT claims that the Settlement Agreement's choice-of-law provision applying New York law circumvents the need for a choice-of-law analysis here. ECF No. 298 at 18-19. We agree that no choice-of-law analysis is required but for a different reason: New York law itself does not permit the relief that SKAT seeks.[5]

[5] To the extent SKAT is relying on CPLR 5225(b) to seek turnover of these bank accounts, and not CPLR 5225(a), the "separate entity rule" would bar such reliance. See Shaheen Sports, Inc. v. Asia Ins. Co., 2012 WL 919664, at *3 (S.D.N.Y. Mar. 14, 2012) ("It has also long been considered settled law in New York . . . that where that garnishee is a bank, the court must obtain jurisdiction over the specific bank branch holding the asset before it may order any turnover . . . the key to the reach of the turnover order is personal jurisdiction over a particular defendant.") (internal citations omitted); Parbulk II AS v. Heritage Maritime, SA, 935 N.Y.S.2d 829, 832 (N.Y.Sup.Ct.

Accordingly, the request for a turnover order with respect to the three bank accounts and Tesla is denied.

## II. McGee's Ameriflex Health Savings Account

We next address SKAT's request that McGee be directed to liquidate and turn over his individually owned Ameriflex health savings account established by React Health (the "HSA"). As of March 31, 2026, McGee's HSA had a balance of $17,523.91. ECF No. 301-23.

An HSA is a tax-advantaged savings tool for individuals with high-deductible health plans that can be used to pay for qualified medical expenses. See How Does a Health Savings Account (HSA) Work, HealthInsurance.org (July 14, 2026), healthinsurance.org. Congress created HSAs in 2003 to encourage individuals to save for healthcare expenses by offering tax-preferred treatment for such savings. 26 U.S.C. § 223; Pub. L. 108–173, § 1201, 117 Stat. 2066, 2469–79 (2003). If funds from an HSA are used for non-qualified medical expenses, they are generally taxable as gross income and subject to an additional 20 percent tax penalty.[6] 26 U.S.C. § 223(f)(4)(A).

---

2011)("[E]ach branch of a bank is considered in no way concerned with the accounts maintained by depositors in other branches").

[6] The Court notes that the parties have not addressed the tax consequences of the granting of SKAT's turnover request. The Court assumes no further involvement unless requested by either party.

New York law does not provide an affirmative exemption for HSAs in the context of money judgment collection. See CPLR 5205(c)(2). Nor does federal law shield HSAs from a creditor's reach. The federal Employee Retirement Income Security Act's ("ERISA") "anti-alienation" provision, 29 U.S.C. § 1056(d)(1), does not include a reference to HSAs. Rather, the anti-alienation provision applies only to qualified pension plans, and HSAs are not included in the definition of such plans. See 29 U.S.C. § 1002(2) (defining applicable pension plans).

Given the result dictated by New York law and the absence of ERISA protection, McGee endeavors to rely on Florida state law, which expands the anti-alienation protections provided by ERISA to HSAs, thereby protecting HSA funds from levy or garnishment by a creditor for an action in Florida. ECF No. 321 (citing Fla. Stat. § 222.22). However, as McGee is well aware, it is New York law that is applicable under the choice-of-law provision of the Settlement Agreement. McGee further argues that ERISA's federal exemption of retirement accounts supersedes New York law and renders CPLR 5205 inapplicable. Yet, as noted, HSAs are not protected by ERISA's anti-alienation provision. See 29 U.S.C. § 1002(2). As a result, there is no conflict between New York law and federal law with respect to the treatment of HSAs, and a preemption analysis is not necessary.

In sum, the HSA account is the exclusive property of McGee, over whom the Court has personal jurisdiction, and its funds are not exempt from collection by a judgment creditor under the applicable law of New York nor under federal law. SKAT's request for an order directing McGee to liquidate and turnover the proceeds of the Ameriflex HSA is granted.

## III. **McGee's Future Wages**

SKAT does not concede that the payments made to McGee by Medbridge Healthcare LLC, 3B Medical Inc. (d/b/a React Health), and the McGee 2021 NGCG Nevada Trust are wages for personal services, citing to McGee's considerable ties to each entity. ECF No. 336 at 15; ECF No. 355 at 2-4. Rather, SKAT contends that these payments should be treated as a "future right or interest" under CPLR 5201(b). ECF No. 299 at 25. If, however, these payments are treated as wages for personal services, they are wholly or 90% exempt from garnishment or a turnover order under Florida or New York law respectively. Fla. Stat. § 222.11(a) (all head-of-household income is exempt); CPLR 5205(d)(2) (ninety percent of income is presumptively exempt).

McGee has produced W-2 forms, bank statements showing deposits of periodic payments, and declarations from each of the entities to support his position that the payments from these entities are wages for his personal services. ECF Nos. 323, 352. In response, SKAT asserts that, "[t]he Court should not credit

McGee's untimely declarations absent an opportunity for SKAT to obtain additional document discovery and cross-examine each declarant." ECF No. 355 at 3.

Regardless of whether SKAT's request for discovery prior to a decision by the Court should be read as an acknowledgement of the significance of McGee's submissions, the caselaw in New York indicates that McGee's submissions are sufficient to shift the burden to SKAT to establish that the payments should not be treated as wages for personal services. See Swig v. Props. Asset Mgmt. Servs., LLC, 924 N.Y.S.2d 368, 370 (1st Dep't 2011) (noting that providing a W-2 where an employee reported his wages can be sufficient in shifting the burden to the judgment creditor to show why those funds are not exempt).

In any event, the Court has no objection to SKAT pursuing this issue by discovery or otherwise. The Court will await further briefing from the parties.[7]

[7] Though the proper characterization of these payments is unresolved, the Court nonetheless believes that it would be helpful to foreshadow issues that may need to be faced in the future. If the payments are wages, which state's law applies to SKAT's right, if any, to obtain these payments? If New York law applies, 90% of wages are presumptively exempt. However, the more interesting question is whether SKAT can rely on the garnishment provisions of New York law to obtain wages paid by an out-of-state company to an out-of-state resident. CPLR 5205(d)(2). If the answer is "no", what is SKAT's mechanism for collection of McGee's wages assuming the application of New York law? (We note that SKAT proposes that "the Court need only order McGee to transfer all nonexempt funds he receives into his accounts to SKAT going forward." ECF No. 355 at n.1.) Further, if collection proceedings must be commenced in Florida, are the wages wholly exempt from garnishment? Fla. Stat. § 222.11(a). More practically, one wonders whether the stream of wages from these entities to McGee will continue at all if the ultimate resolution is that all future wages are not exempt in whole or in part and are ordered to be transmitted to SKAT, while McGee is still required by law to pay taxes on those wages.

**CONCLUSION**

Accordingly, the Court denies the request for a turnover order for the three bank accounts and the Telsa, grants the request for a turnover order for the HSA funds, and reserves on the request for a turnover order for future wages.

Dated: November 12, 2026
New York, New York



NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE